HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
CAROLINE LEE, SBN 293297
clee@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone: (916) 442-3333
Facsimile:  (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone: (310) 378-8533
Facsimile:  (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>          Plaintiffs,<br><br>          v.<br><br>LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) OF DEFENDANTS ALAN JOHNSTON AND MICHAEL R. PAPAYANS**<br><br>Judge:   Hon. S. James Otero<br>Date:    July 25. 2016 |

LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N. F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10,

Defendants.

Time:     10:00 a.m.
Place:    Ctrm. 1
          Second Floor
          312 North Spring Street
          Los Angeles, CA  90012

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................... 1

II.     STANDARD OF REVIEW ..................................................... 3

III.    FACTUAL AND PROCEDURAL BACKGROUND........................ 4

IV.     LEGAL ARGUMENT .............................................................. 6

        A.      The Complaint Alleges Torts Subject To Admiralty
                Jurisdiction ............................................................... 6

                1.      The Complaint Alleges Facts Satisfying the "Locality"
                        Requirement..................................................... 6

                2.      The Complaint Properly Alleges that Defendants
                        Engaged in Tortious Conduct that Is Potentially
                        Disruptive to Maritime Commerce and Related to
                        Maritime Activity .............................................. 7

        B.      Plaintiffs' Claims Against Defendants Are Also Supported
                By Supplemental Jurisdiction, Which Defendants Offer No
                Valid Reason For This Court To Decline ................................ 11

        C.      If The Complaint Does Not Adequately Allege Facts
                Sufficient To Support Either Admiralty Or Supplemental
                Jurisdiction, Plaintiffs Should Be Granted Leave To Amend..... 15

V.      CONCLUSION ..................................................................... 15

PLAINTIFFS' OPPOSITION TO JOHNSTON AND PAPAYANS MOTIONS TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................... 3

*Ayers v. United States*,
  277 F.3d 821 (6th Cir. 2002) ...................................................... 10

*Banchi v. Miller*,
  388 F. Supp. 645 (E.D. Pa. 1974) ................................................ 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................... 3

*Brady v. Brown*,
  51 F.3d 810 (9th Cir. 1995) ........................................................ 13

*Chapman v. City of Grosse Pointe Farms*,
  385 F.2d 962 (6th Cir. 1967) ..................................................... 6, 7

*Colony Cove Properties, LLC v. City Of Carson*,
  640 F.3d 948 (9th Cir. 2011) ....................................................... 3

*Davis v. City of Jacksonville Beach, Fla.*,
  251 F. Supp. 327 (M.D. Fla. 1965) .............................................. 9

*Doe v. Holy*,
  557 F.3d 1066 (9th Cir. 2009) ..................................................... 3

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005)................................................................... 12

*In re FEMA Trailer Formaldehyde Products Liab. Litig.*
  *(Mississippi Plaintiffs)*,
  668 F.3d 281 (5th Cir. 2012) ....................................................... 4

*In re First All. Mortgage Co.*,
  269 B.R. 449 (C.D. Cal. 2001) ................................................... 12

*Foremost Ins. Co. v. Richardson*,
  457 U.S. 668 (1982)............................................................... 8, 11

*Gammon v. GC Servs. Ltd. P'ship*,
  27 F.3d 1254 (7th Cir. 1994) ....................................................... 4

*Imagineering, Inc. v. Kiewit Pac. Co.*,
  976 F.2d 1303 (9th Cir. 1992) ................................................... 14

*Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*,
  380 F. Supp. 2d 74 (1st Cir. 2006) .............................................. 8

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
    513 U.S. 527 (1995) ................................................................ 6, 11

*Kirschner v. Klemons*,
    225 F.3d 227 (2d Cir. 2000) .................................................... 12

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) .................................................. 3

*Miller v. Stanmore*,
    636 F.2d 986 (5th Cir. 1981) ................................................... 15

*In re Mission Bay Jet Sports, LLC*,
    570 F.3d 1124 (9th Cir. 2009) ......................................... 8, 10, 11

*In re Nucorp Energy Sec. Litig.*,
    772 F.2d 1486 (9th Cir. 1985) ................................................. 14

*Pride v. Correa*,
    719 F.3d 1130 (9th Cir. 2013) .................................................. 3

*Schneider v. TRW, Inc.*,
    938 F.2d 986 (9th Cir. 1991) ................................................... 14

*Sisson v. Ruby*,
    497 U.S. 358 (1990) ................................................................ 8

*Smith v. Lampe*,
    64 F.2d 201 (6th Cir. 1933) ...................................................... 6

*Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*,
    711 F.2d 138 (9th Cir. 1983) .................................................... 4

*Terenkian v. Republic of Iraq*,
    694 F.3d 1122 (9th Cir. 2012) .................................................. 3

*United States v. Matson Nav. Co.*,
    201 F.2d 610 (9th Cir. 1953) .................................................... 6

**Statutes**

28 U.S.C. § 1333 ................................................................. 5, 6, 11, 12

28 U.S.C. § 1367 ..................................................................... 6, 12, 13

28 U.S.C. § 1367(a) ......................................................................... 12

28 U.S.C. § 1367(c) ......................................................................... 13

28 U.S.C. § 1653 ............................................................................. 15

42 U.S.C. § 1983 ................................................................. 2, 12, 13, 14

PLAINTIFFS' OPPOSITION TO JOHNSTON AND PAPAYANS MOTIONS TO DISMISS

**Other Authorities**

Fed. R. Civ. P. 8(a)(1) ..................................................... 3

Fed. R. Civ. P. 12(b)(1) ............................................. 3, 4, 15

Fed. R. Civ. P. 12(b)(6) .............................................. 3, 4

Fed. R. Civ. P. 15 ......................................................... 15

U.S. Const. art. III, § 2 ................................................. 5

# I.  INTRODUCTION

Under California law, anyone may use a public beach to access the Pacific Ocean.[1]  But, in Palos Verdes Estates, in order to maintain an illegal private beach and bay that excludes persons that do not look like the local residents, the Lunada Bay Boys and the individual Defendants have conspired in assaults and other activity to block non-local beachgoers from this right.

Using intimidation and crime against non-residents, the Lunada Bay Boys have kept non-residents away from Lunada Bay for more than 40 years.  During this time, the assaults and threats have taken place on both land and sea.  As to the exclusively water-side activity, the lead Plaintiffs and putative class allege that the Lunada Bay Boys and individual Defendants have:

- assaulted lead Plaintiff Cory Spencer with a surfboard in the water, injuring Mr. Spencer, and then feigned that their assault was an accident (Compl., 12:19-21)
- been negligent in the operation of surfboards, boats, and other vessels (Compl., 20:8-10)
- threatened, intimidated, and harassed non-local beachgoers while using ocean-going vessels (Compl., 9:6-13)
- operated ocean-going vessels in a dangerous and negligent manner, so as to impede boat traffic (Compl., 9:17-21)
- targeted non-local beachgoers by running them over with surfboards, and have committed other water-side assaults

---

[1]  Because they are substantially the same, in an effort to avoid filing duplicative oppositions, this brief addresses both Defendant Johnston's and Defendant Papayans' Motions to Dismiss.

1        (shoves, slaps, punches, and throwing rocks, etc.) (Compl., 9:21-

2        25; 10:10-13)

3       Moreover, Plaintiffs bring this lawsuit as a class action to return

4 Lunada Bay to the public.  The putative class includes many types of

5 beachgoers that use various ocean-going vessels, *e.g.*, boats, kayaks,

6 surfboards, etc.  (Compl., 19:1-7)  And, a common issue to the class is

7 whether the Lunada Bay Boys are negligent in their operation of surfboards,

8 boats, and other vessels in the navigable waters of Lunada Bay.  (Compl.,

9 20:8-10)

10       Here, the Plaintiffs ask the Court to deny the Lunada Bay Boys' and

11 each individual member's motion to dismiss because (1) the Complaint

12 alleges the Lunada Bay Boys and each member have engaged in torts and

13 unlawful conduct occurring on ocean waters; (2) the water-side assaults

14 have a connection to traditional maritime activity, as any rescue of a victim is

15 likely to involve public safety personnel using boats and rescue helicopters

16 (*e.g.*, the Coast Guard, Los Angeles County Sheriff, Los Angeles County

17 Fire Department's Lifeguard Division, Los Angeles Police Department's

18 Harbor Division, Long Beach Fire, etc.); (3) surfboards operate almost

19 exclusively on the high seas and navigable waters; and (4) Plaintiffs accuse

20 Defendants of impeding boat traffic, and negligently operating their vessels.

21 Moreover, beyond admiralty jurisdiction, supplemental jurisdiction is

22 appropriate because Plaintiffs' properly assert a 42 U.S.C. section 1983

23 claim against  the City and Chief Kepley, wherein the lead Plaintiffs allege

24 that the City Defendants and the Bay Boys have implemented a plan to

25 unlawfully discourage and exclude outside visitors to the local beaches

26 through the City's policies, customs, and practices – and that these are not

27 rationally related to a legitimate governmental purpose.

28 / / /

## II.  STANDARD OF REVIEW

To state a claim for relief, a pleading need only recite "a short and plain statement of the grounds for the court's jurisdiction."  Fed. R. Civ. P. 8(a)(1).  "[T]he plaintiff's factual allegations will ordinarily be accepted as true unless challenged by the defendant."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Where, as here, a defendant moving to dismiss under Rule 12(b)(1) introduces no evidence challenging the allegations contained in a complaint, but claims that those allegations are insufficient on their face to invoke federal jurisdiction, courts treat the challenge the same as any other motion to dismiss on the pleadings for lack of jurisdiction.  *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (citing *Doe v. Holy*, 557 F.3d 1066, 1073 (9th Cir. 2009)). District courts resolve such facial attacks to subject matter jurisdiction the same as they would "a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite*, 749 F.3d at 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

Thus, this Court need only determine whether Plaintiffs' complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Colony Cove Properties, LLC v. City Of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (applying *Iqbal*'s standard to a motion to dismiss for lack of subject matter jurisdiction); *Doe*, 557 F.3d at 1073 (where moving party contends that federal court lacks subject matter jurisdiction on the fact of the complaint and "has introduced no evidence contesting any of the allegations," a motion

1   to dismiss for lack of jurisdiction "is no different from any other motion to
2   dismiss on the pleadings for lack of jurisdiction").

3       "Although similar to the standard for dismissal for failure to state a
4   claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the
5   standard for dismissal for want of subject matter jurisdiction is considerably
6   more rigorous . . ." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1256
7   (7th Cir. 1994) (*see also In re FEMA Trailer Formaldehyde Products Liab.*
8   *Litig. (Mississippi Plaintiffs),* 668 F.3d 281, 287 (5th Cir. 2012) ("A motion to
9   dismiss for lack of subject-matter jurisdiction should only be granted if it
10  appears certain that the plaintiff cannot prove any set of facts in support of
11  his claims entitling him to relief"); *Sun Valley Gasoline, Inc. v. Ernst*
12  *Enterprises, Inc.*, 711 F.2d 138, 140 (9th Cir. 1983) (jurisdictional dismissals
13  in cases premised on federal question jurisdiction are "exceptional")).

14      As explained below, Plaintiffs exceed the threshold necessary to
15  establish subject matter jurisdiction in their pleadings.  This case is about
16  beachgoer access to navigable waters, and a substantial part of the illegal
17  activity by the Bay Boys takes place in the ocean using surfboards and other
18  vessels.  Defendants' motions to dismiss for purported lack of subject matter
19  jurisdiction under Federal Rule of Civil Procedure 12(b)(1) should therefore
20  be denied.

### III.  FACTUAL AND PROCEDURAL BACKGROUND

22      Defendants Johnston and Papayans are members of a criminal
23  organization known as the Lunada Bay Boys (the "Bay Boys").  (Compl.,
24  ¶¶ 6-7)  The Bay Boys are a group of local surfers who have claimed
25  Lunada Bay as their "turf," and who, for decades, have prevented non-
26  resident surfers and other non-resident beachgoers from accessing Lunada
27  Bay's waters and other public spaces around the bay through threats,
28  intimidation, violence, and other criminal acts.  (Compl., ¶¶ 4-6; 17-19)

On March 29, 2016, Plaintiffs filed the Class Action Complaint (Dkt. No. 1) (the "Complaint") initiating this action.  The Complaint alleges six claims against the Bay Boys and eight of its individual members: (1) Violation of the Bane Act (Compl., ¶¶ 43-50); (2) Public Nuisance (Compl., ¶¶ 54-60); (3) Violation of the California Coastal Act (Compl., ¶¶ 70-94); (4) Assault (Compl., ¶¶ 95-98); (5) Battery (Compl., ¶¶ 99-101); and (6) Negligence (Compl., ¶¶ 102-106).  The Complaint is replete with allegations in support of all of these claims describing how individual members of the Bay Boys, and their co-conspirators, have engaged in unlawful conduct occurring on ocean waters and otherwise impacting commerce and activities in the sea.  (*See*, *e.g.*, Compl., ¶¶ 3; 8; 16; 29; 50; 57; 83 (Defendants blocking non-local visiting beachgoers from access to the ocean); ¶¶ 18; 30 (Defendants threaten, intimidate, and harass non-local visiting surfers, boaters, kneeboarders, stand-up paddle boarders, boogie boarders, bodysurfers, windsurfers, kite surfers, kayakers, and others engaging in recreational activities on ocean waters and in navigable sea vessels); ¶¶ 18; 30 (Defendants impede boat traffic in and through the bay); ¶¶ 18; 33; 102-106 (Defendants negligently operate boats, surfboards, and other navigable sea vessels); ¶¶ 18; 21; 23; 95-98; 99-101 (Defendants assault and batter visitors in ocean waters, including striking them and running them over with surfboards, pushing, hitting, and slapping them, circling them, and holding them underwater).)

Thus, the Complaint alleges that this Court has original jurisdiction over all six of the claims alleged against the Bay Boys and their individual members (including all of the individually named Defendants) under 28 U.S.C. § 1333 (admiralty jurisdiction) and Article III, § 2 of the United States Constitution.  (Compl., ¶ 11)  Additionally and alternatively, the Complaint alleges that this Court has supplemental jurisdiction over each of these

1  claims brought under California law arising from the same nucleus of

2  operative facts as claims subject to this Court's original jurisdiction under

3  28 U.S.C. § 1367.

## IV.  LEGAL ARGUMENT

4

## A.    The Complaint Alleges Torts Subject To Admiralty Jurisdiction

5

6         Defendants' primary basis for their respective motions is their

7  erroneous contention that the Complaint fails to allege a sufficient basis for

8  admiralty jurisdiction under 28 U.S.C. § 1333.  Not so.

9         Federal district courts have "original jurisdiction" over "[a]ny civil case

10  of admiralty or maritime jurisdiction . . ."  28 U.S.C. § 1333.  Defendants both

11  cite *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S.

12  527, 534 (1995) for the proposition that a party seeking to invoke federal

13  admiralty jurisdiction over a tort claim "must satisfy conditions both of

14  location and of connection with maritime activity."  However, both

15  Defendants simply disregard that the Complaint alleges, at length, tortious

16  conduct satisfying both of these requirements.

### 1.    The Complaint Alleges Facts Satisfying the "Locality" Requirement

17

18

19         With regard to the "locality" requirement, it has long been the rule that

20  "[a]dmiralty jurisdiction extends to every species of tort committed upon the

21  high seas or on navigable waters."  *United States v. Matson Nav. Co.*, 201

22  F.2d 610, 613 (9th Cir. 1953).  Moreover, where a negligent act "originates

23  on land and the damage occurs on water, the cause of action is within the

24  admiralty jurisdiction."  *Chapman v. City of Grosse Pointe Farms*, 385 F.2d

25  962, 964 (6th Cir. 1967) (citing *Smith v. Lampe*, 64 F.2d 201, 202 (6th Cir.

26  1933)).

27         Here, the locality element identified in *Jerome B. Grubart* is readily

28  satisfied.  The Complaint alleges, both generally and specifically, numerous

1   specific torts and ongoing patterns and practices of tortious conduct

2   committed upon the high seas and on navigable waters by Defendants and

3   their fellow gang members and co-conspirators.  (*See* Compl., ¶¶ 18; 30

4   (Defendants threaten, intimidate, and harass individuals engaging in

5   recreational activities on navigable waters); ¶¶ 18; 30 (Defendants impede

6   oceanic boat traffic); ¶¶ 18; 33; 102-106 (Defendants negligently operate

7   boats, surfboards, and other vessels in navigable ocean waters); ¶¶ 18; 21;

8   23; 95-98; 99-101 (Defendants assault and batter visitors while engaging in

9   recreational activities in the ocean); ¶ 21 (member of Bay Boys intentionally

10  runs over Plaintiff Spencer with his surfboard while in the water, injuring

11  Plaintiff Spencer)).  Additionally, the Complaint repeatedly alleges that

12  Defendants and their fellow gang members and co-conspirators engage in

13  tortious acts preventing individuals and vessels from accessing the ocean

14  (*see* Compl., ¶¶ 3; 8; 16; 29; 50; 57; 83).  While some of the tortious acts in

15  furtherance of Defendants' illegal efforts to block out of town beachgoers

16  from accessing the ocean may occur on land, the intent and effect of these

17  tortious acts is to prevent direct tort victims and other would-be beachgoers

18  from accessing the water.  Thus, even insofar as some of Defendants'

19  conduct originates on the shore, its damage occurs on water, and admiralty

20  jurisdiction therefore applies to those acts as well.  *See Chapman*, 385 F.2d

21  at 965 ("a tort is deemed to occur at the place where injury is sustained,

22  regardless of the place of origin of the negligent act").

23      **2.      The Complaint Properly Alleges that Defendants Engaged in
            Tortious Conduct that Is Potentially Disruptive to Maritime**
24      **Commerce and Related to Maritime Activity**

25      Tacitly recognizing that the Complaint properly alleges tortious conduct

26  on navigable waters, Defendants both focus on the "connection" requirement

27  by asserting in conclusory fashion that the Complaint does not allege

28  "traditional maritime activity."  However, Defendants' simplistic argument not

1   only misstates the legal standard for alleging sufficient "connection" to

2   maritime activity to invoke admiralty jurisdiction but also disregards

3   extensive allegations in the Complaint directly relating to such activity.

4          Determining whether a party asserting admiralty jurisdiction has met

5   the "connection" requirement involves an assessment of whether the

6   incident has a "potentially disruptive impact on maritime commerce," and

7   whether the "general character" of the alleged activity shows a "substantial

8   relationship to traditional maritime activity."  *In re Mission Bay Jet Sports,*

9   *LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009) (internal quotes omitted).  Courts

10   have consistently applied these principles broadly in favor of finding the

11   requisite connection whenever activities on navigable waters could have any

12   potential or theoretical impact on maritime commerce.  *Isla Nena Air Servs.,*

13   *Inc. v. Cessna Aircraft Co.*, 380 F. Supp. 2d 74, 78 (1st Cir. 2006) ("the

14   Supreme Court has made clear that the test is a broad one and concerns

15   "potential impact" and not actual impact on maritime commerce"); *see also*

16   *In re Mission Bay Jet Sports, LLC*, 570 F.3d at 1129 ("the disruption prong

17   does not turn on what happened in this particular case but on whether the

18   general features of the incident have a *potentially* disruptive effect.")

19   (emphasis in original).  Courts have also consistently found a sufficient

20   nexus to maritime activity in cases involving recreational activities in

21   navigable waters.  *See*, *e.g.*, *Sisson v. Ruby*, 497 U.S. 358, 362-367 (1990)

22   (storage of yacht used for recreational purposes at a marina substantially

23   related to "traditional maritime activity"); *Foremost Ins. Co. v. Richardson*,

24   457 U.S. 668, 674 (1982) (negligent operation of recreational pleasure boat

25   on Louisiana river that collided with another recreational pleasure boat "has

26   a sufficient nexus to traditional maritime activity to sustain admiralty

27   jurisdiction"); *Banchi v. Miller*, 388 F. Supp. 645, 646 (E.D. Pa. 1974)

28   (activity of vessel "engaged in a pleasure fishing trip for recreational

1  purposes and not in furtherance of maritime commerce" nonetheless falls
2  within admiralty jurisdiction).

3        The nexus between tortious acts involving surfing and traditional
4  maritime activity and commerce was directly addressed in *Davis v. City of*
5  *Jacksonville Beach, Fla.*, 251 F. Supp. 327 (M.D. Fla. 1965), which held that
6  tort claims arising from an individual on a surfboard inadvertently striking a
7  swimmer in the ocean were within federal admiralty jurisdiction.  The *Davis*
8  court found that the requisite locality was easily established because "any
9  tort whatever, occurring on the high seas or navigable waters, is within the
10 admiralty jurisdiction."  *Davis*, 251 F. Supp. at 328.  The *Davis* court further
11 reasoned that, to the extent any further "maritime connection other than
12 locality" was needed to sustain admiralty jurisdiction, "a surfboard, by its
13 very nature, operates almost exclusively on the high seas and navigable
14 waters, and, just like a small canoe or raft, potentially can interfere with trade
15 and commerce."  *Id.*

16       Here, the connection between Defendants' tortious conduct and
17 maritime commerce and activity is even more apparent than in *Davis*, 251 F.
18 Supp. 327 court found sufficient "maritime connection" in a single accident
19 between a surfer and a swimmer, the Complaint in this matter alleges that
20 Defendants' gang, while on surfboards and in ocean waters, *intentionally*
21 *and repeatedly* hit other surfers and individuals engaged in recreational
22 activities in the water.  *See* Compl., ¶¶ 18; 21; 23; 95-98; 99-101
23 (Defendants and their gang and co-conspirators assault and batter
24 individuals in navigable waters by, among other things, running them over
25 with surfboards).  Defendants and their fellow gang members engage in this
26 conduct specifically for the purpose of interfering with access to the waters;
27 thus, the resulting interference with maritime trade and commerce is not
28 merely incidental as in *Davis*, 251 F. Supp. 327 but is actually the intended

effect of the tortious conduct.  *See*, *e.g.*, Compl., ¶ 19 (co-defendant states that that gang will "hassle people" to maintain "a lot of space" in the bay by preventing others from accessing the water).

Defendants and their fellow gang members physically harming people in and near the navigable ocean waters brings about the potential need for emergency response by sea.  This, too, has been found by multiple courts to implicate maritime commerce and involve traditional maritime activity in a manner sufficient to warrant admiralty jurisdiction.  *See*, *e.g.*, *Ayers v. United States*, 277 F.3d 821, 827-28 (6th Cir. 2002) (drowning downstream from a lock and dam "requires vessels to engage in some rescue and recovery effort, and . . . some not-insignificant interruption of commercial activity might result . . . sufficient to satisfy the first part of the connection test."); *In re Mission Bay Jet Sports, LLC*, 570 F.3d at 1129 (activity likely to cause vessel to "stop to search and rescue, call for assistance from others" and thereby "ensnarl maritime traffic" has sufficient nexus to maritime activity and commerce to invoke admiralty jurisdiction).  Here, for example, had lead Plaintiff Spencer been more seriously injured or been knocked unconscious *see* Compl., ¶ 21), given the 100-foot cliffs that surround Lunada Bay and the difficulty public safety personnel have had accessing the location, it is likely that assistance would have come by sea.  Indeed, in high surf it is common for rescues of beachgoers to be conducted by emergency support boats.

Moreover, the tortious conduct of Defendants and their gang includes negligent operation of navigable sea vessels, including boats.  *See* Compl., ¶¶ 18; 33; 102-106.  The purpose and effect of this conduct is to impede boat traffic through navigable waters.  *See* Compl., ¶¶ 18; 30.  These tortious activities directly involving sea vessels unquestionably relate to traditional maritime activity and have an obvious, direct, and intentional

impact on maritime commerce.  *See Foremost Ins. Co.*, 457 U.S. at 674 (negligent operation of recreational boat "has a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction in the District Court."); *In re Mission Bay Jet Sports, LLC*, 570 F.3d at 1129 (activity with potential to "ensnarl maritime traffic" has sufficient nexus to maritime activity and commerce to invoke admiralty jurisdiction).

The Complaint alleges extensive tortious activity on the part of Defendants and their criminal gang occurring on the navigable waters of the Pacific Ocean and resulting in damages in those waters.  The Lunada Bay Boys criminal gang, including Defendants, has long engaged in violent and oppressive criminal activity set forth in the Complaint for the purpose of interfering with maritime activities and commerce, and their rampant criminal behavior has, in fact, been extremely effective in bringing about the intended interference.  Defendants cannot claim that their misconduct, which they and their gang engage in for the very purpose of preventing individuals outside of the gang and area from enjoying the recreational and commercial benefits of a large area of ocean waters, does not implicate traditional maritime activity. Plaintiffs have alleged claims in the Complaint that easily satisfy all requirements identified in *Jerome B. Grubart* for invoking admiralty jurisdiction.  In sum, this Court has original jurisdiction over these claims under 28 U.S.C. § 1333.

**B.  Plaintiffs' Claims Against Defendants Are Also Supported By Supplemental Jurisdiction, Which Defendants Offer No Valid Reason For This Court To Decline**

Although all the statutory and tort claims brought against Defendants in the Complaint are subject to admiralty jurisdiction under 28 U.S.C. § 1333, to the extent necessary this Court can and should exercise supplemental jurisdiction over these claims as well.

"[I]n any civil action of which the district courts have original

jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367.  28 U.S.C. § 1367(a) "is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005).  Thus, a plaintiff may bring state law claims against a defendant in federal court where its claims against another defendant are "supported by a federal cause of action" and "derive from a common nucleus of operative fact".  *In re First All. Mortgage Co.*, 269 B.R. 449, 453 (C.D. Cal. 2001); *see also Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000) (28 U.S.C. § 1367(a) "makes pendent party jurisdiction possible where the claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party.")

Here, all of the statutory and tort claims asserted against Defendants arise from the same case and controversy as the claims asserted against the City of Palos Verdes Estates and Chief of Police Kepley under 42 U.S.C. § 1983, which are subject to federal question jurisdiction.[2]  Accordingly, even if the statutory and tort claims against Defendants were not subject to admiralty jurisdiction (which they are), they would still be properly before this

---

[2]  All of the statutory and tort claims asserted against Defendants in the Complaint also arise from the same case and controversy as one another, and this Court has original jurisdiction over each under 28 U.S.C. § 1333. Should this Court conclude that one or more of the statutory or tort claims asserted against Defendants are not subject to admiralty jurisdiction, but that others are, any claims not subject to admiralty jurisdiction would also be subject to supplemental jurisdiction under 28 U.S.C. § 1367 because they would arise from the same case and controversy as other claims subject to the original jurisdiction of this Court under 28 U.S.C. § 1333.

1   Court under 28 U.S.C. § 1367 as claims arising from the same case and

2   controversy as the section 1983 claims.[3]

3       Defendants apparently do not dispute that supplemental jurisdiction

4   under 28 U.S.C. § 1367 is available as a basis for this Court to assume

5   jurisdiction over the statutory and tort claims brought against them in the

6   Complaint.  Rather, Defendants ask this Court to exercise discretion to

7   decline such jurisdiction under 28 U.S.C. § 1367(c), which provides such

8   discretion under certain narrow circumstances, including where "the [state

9   law] claim substantially predominates over the claim or claims over which

10  the district court has original jurisdiction" or other "exceptional

11  circumstances" where there are "compelling reasons" to decline jurisdiction.

12  Those circumstances do not exist here.  Even assuming, *arguendo*, that this

13  Court has original jurisdiction only over the section 1983 claims in the

14  _____

15  [3]  Defendant Papayans also argues that Plaintiffs' section 1983 claims do
    not raise a substantial case or controversy, notwithstanding that these
16  section 1983 claims are alleged only against Defendants City of Palos
    Verdes Estates and Chief of Police Jeff Kepley, not against Defendant
17  Papayans.  Neither the City of Palos Verdes Estates nor Kepley have
    argued that Plaintiffs' section 1983 claims fail to raise a substantial case or
18  controversy, and with good reason.  Plaintiffs' Complaint alleges, at length,
    actual injury sustained by Plaintiffs caused by Defendants.  Each individual
19  Plaintiff has been "unlawfully excluded from recreational opportunities at
    Palos Verdes Estates parks, beaches, and access to the ocean." (Compl.,
20  ¶¶ 1-2)  The City knowingly permits the Bay Boys to harass, intimidate, and
    assault non-residents, including Plaintiffs, causing them to suffer harm at the
21  time they attempted to access the public property, as well as subsequent
    pain and suffering, loss of sleep, emotional distress, and mental anguish.
22  (Compl., ¶¶ 18-28)  Moreover, even if Plaintiffs' section 1983 claims against
    the City and Kepley were ultimately defeated, this Court could still maintain
23  supplemental jurisdiction over claims against Defendant Papayans.  *See*
    *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) ("The ultimate lack of merit
24  of the federal claim does not mean that pendent jurisdiction cannot
    attach . . .").

1   Complaint, those claims are at the heart of this litigation matter.  A primary
2   purpose of this litigation is to compel the City of Palos Verdes Estates to
3   treat non-resident beachgoers and resident beachgoers the same with
4   respect to their ability to access Lunada Bay.  These section 1983 claims
5   are far from an "appendage"; they are central to this case, and necessarily
6   intertwined with the statutory and tort claims brought against Defendants.

7         Moreover, were this Court inclined to consider its discretion to decline
8   jurisdiction over the claims raised against Defendants, the principles of
9   judicial economy, convenience, fairness, and comity would all weigh against
10  exercising it.  *See Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303,
11  1309 (9th Cir. 1992) (factors district courts consider in determining whether
12  to exercise discretion to decline supplemental jurisdiction include economy,
13  convenience, fairness, and comity); *Schneider v. TRW, Inc.*, 938 F.2d 986,
14  994 (9th Cir. 1991) (Ninth Circuit has "consistently upheld decisions to retain
15  pendent claims on the basis that returning them to state court would be a
16  waste of judicial resources").  The inevitable effect of declining jurisdiction
17  over the state law claims asserted against Defendants would be to create
18  unnecessary judicial inefficiency by necessitating parallel and simultaneous
19  litigation matters concerning the exact same facts and circumstances in
20  federal and state court.  Witnesses would be required to testify twice
21  regarding the same subject matter, repetitive discovery would be taken in
22  multiple venues, and multiple juries would hear substantially the same
23  evidence, and potentially come to inconsistent and irreconcilable
24  conclusions.  Avoiding such results is precisely the reason supplemental
25  jurisdiction exists.  *See In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1491
26  (9th Cir. 1985) (where "district court was familiar with the facts and issues
27  underlying the . . . state claims" it was "right in not imposing unnecessarily
28  on a state court or on [the parties] a repetition of pleadings, motions,

1  discovery and other pre-trial proceedings.")

2  **C.    If The Complaint Does Not Adequately Allege Facts Sufficient To Support Either Admiralty Or Supplemental Jurisdiction, Plaintiffs Should Be Granted Leave To Amend**

3

4          Finally, even if the Complaint did not state facts sufficient to establish

5  federal jurisdiction, Plaintiffs should be given leave to amend and an

6  opportunity to cure any defect.  Where, as here, a Rule 12(b)(1) motion is

7  limited to the face of the pleadings, "[d]efective allegations of jurisdiction

8  may be amended, upon terms, in the trial or appellate courts."  28 U.S.C.

9  § 1653.  "The court should freely give leave when justice so requires."  Fed.

10  R. Civ. P. 15; *see also Miller v. Stanmore*, 636 F.2d 986, 990 (5th Cir. 1981)

11  (leave to amend pleadings to correct defective allegations of jurisdiction).

12                              **V.  CONCLUSION**

13          This Court has jurisdiction over the individual Defendants and the

14  Lunada Bay Boys based on admiralty and based on supplemental

15  jurisdiction.  For all of the foregoing reasons, the Complaint alleges a proper

16  basis for federal jurisdiction as to all claims against Defendants, and

17  Defendants' motions to dismiss under Federal Rule of Civil Procedure

18  12(b)(1) should therefore be denied.

19  DATED:  July 1, 2016              HANSON BRIDGETT LLP

20

21                          By:_____*/s/ Kurt A. Franklin*_____
                                 KURT A. FRANKLIN
22                               SAMANTHA D. WOLFF
                                 CAROLINE ELIZABETH LEE
23                               TYSON M. SHOWER
                                 LANDON D. BAILEY
24                               Attorneys for Plaintiffs
                                 CORY SPENCER, DIANA MILENA
25                               REED, and COASTAL PROTECTION
                                 RANGERS, INC.
26

27

28