UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | |
|---|---|
| **CASE NO.:** CV 16-02129 SJO (RAOx) | **DATE:** July 11, 2016 |
| **TITLE:** Spencer et al. v. Lunada Bad Boys et al. | |

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Victor Paul Cruz<br>Courtroom Clerk | Not Present<br>Court Reporter |
| **COUNSEL PRESENT FOR PLAINTIFFS:** | **COUNSEL PRESENT FOR DEFENDANTS:** |
| Not Present | Not Present |

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOTION TO DISMISS COMPLAINT** [Docket No. 30]

This matter is before the Court on Defendants City of Palos Verdes Estates ("City") and Chief of Police Jeff Kepley's ("Chief Kepley") (together, "City Defendants") Motion to Dismiss Complaint ("Motion"), filed June 3, 2016.  Plaintiffs Cory Spencer ("Spencer"), Diana Milena Reed ("Reed"), and Coastal Protection Rangers, Inc. ("CPRI") (together, "Plaintiffs") opposed the Motion ("Opposition") on June 20, 2016, and City Defendants replied ("Reply") on June 27, 2016.  The Court found this matter suitable for disposition without oral argument and vacated the hearing set for July 11, 2016.  *See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants' Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege the following in their Class Action Complaint ("Complaint"), filed March 29, 2016. California residents Spencer and Reed are, among other things, experienced surfers and avid beachgoers who have been unlawfully excluded from recreational opportunities at Palos Verdes Estates parks, beaches, and access to the ocean.  (*See* Compl. ¶¶ 1-2, ECF No. 1.)  CPRI is a California non-profit entity "dedicated to enforcing the California Coastal Act and protecting California's beaches and ensuring that they are safe and accessible to all visitors." (Compl. ¶ 3; Request for Judicial Notice ("RJN"), Ex. A, ECF No. 31.[1])

---

[1] City Defendants filed a Request for Judicial Notice in tandem with their Motion, asking the Court to take judicial notice of the California Secretary of State's Business Entity Detail report for CPRI, among other materials.  (*See* RJN.)  Plaintiffs do not challenge the RJN, and the Court finds that judicial notice of this publicly available document to be proper pursuant to Federal Rule of Evidence 201(b).

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>July 11, 2016</u>

The City, renowned for its natural beauty, is home to approximately 13,500 residents and more than 40 police personnel. (Compl. ¶ 15.) The City owns Lunada Bay, a public beach that constitutes Southern California's "premier big-wave break." (Compl. ¶¶ 16-17.) Lunada Bay is also, however, one of the surfing world's "best-known area[s] for localism," a territorial practice whereby resident surfers attempt to exclude nonresident beachgoers and surfers through threats, intimidation, and violence. (Compl. ¶ 17.)

Defendant Lunada Bay Boys ("LBB") is a criminal street gang that has practiced a particularly "severe" form of localism since the early 1970s. (Compl. ¶¶ 3-5, 17-18.) LBB "knowingly built and maintains an unpermitted masonry-rock-and-wood fort and seating area ('Rock Fort') in violation of the California Coastal Act," where it conducts criminal activity. (Compl. ¶¶ 3-5.) Moreover, LBB has built and maintains a steep trail from a 100-foot bluff called the "Goat Trail," and stores recreational items and maintains a campfire ring with seating near the base of this trail. (Compl. ¶ 18.) LBB sells, markets, and uses illegal controlled substances from the Lunada Bay bluffs and the Rock Fort, and uses the gang's name to confront, threaten, intimidate, and harass non-local beachgoers through a variety of tactics. (Compl. ¶ 18.) Some of the more egregious tactics include (1) throwing rocks; (2) running people over with surfboards; (3) punching non-locals; (4) shooting surfers and beachgoers with pellet guns; (5) stealing wallets, wetsuits and surfboards; (6) vandalizing vehicles and personal property, including by slashing tires and waxing ethnic slurs onto windows; (7) levying threats against non-locals; and (8) sharing photographs and videos that they take of visitors. (Compl. ¶ 18.)

LBB is not unfamiliar to the City's Police Department, but "[f]or many decades" complaints made by victims of LBB have gone unanswered. (Compl. ¶ 15.) For example, several of the aforementioned tactics were caught on camera and shown to officers of the City's Police Department. (Compl. ¶¶ 19-20.) In response to this report, one officer stated the following:

> We know all of them. They are infamous around here. They are pretty much grown men in little men's mindset. They don't like anyone that's not one of The Bay Boys, surfing down there. It literally is like a game with kids on a school yard to them and they don't want you playing on their swing set, but, you know, **it is what it is. If you feel uncomfortable, you know, then don't do it.**

(Compl. ¶ 20 (emphasis added).) Spencer and Reed have also been victimized by LBB, but their reports to the police department fell on deaf ears. (Compl. ¶¶ 21-27.) When Spencer complained to Chief Kepley and encouraged an undercover investigation after he was verbally and physically assaulted by members of the LBB, Chief Kepley responded merely by noting that the City's police department had considered various enforcement strategies, and "had talked with various surfers in an effort to educate them on the position we are in, and what needs to change in terms of acceptable behavior on their part." (Compl. ¶ 21.) Similarly, after Reed was verbally assaulted by members of LBB in the presence of a police officer, the officer asked her if she wanted to make a "citizen's arrest," which is permitted under California Penal Code section 837, notwithstanding that police were already on the scene and that other members of LBB were nearby. (Compl. ¶ 22,

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 16-02129 SJO (RAOx) | **DATE:** July 11, 2016 |

n. 19.) Chief Kepley has described LBB as "a long term problem," and stated that "[i]f I could fix this, I would." (Compl. ¶ 27.)

Plaintiffs seek to represent a class of at least several thousand members who reside outside the City and who desire "lawful, safe, and secure access to Lunada Bay to engage in recreational activities." (Compl. ¶ 30.) Plaintiffs assert the following eight causes of action against defendants: (1) violation of the Bane Act, California Civil Code § 52.1(b), against LBB and ceratin members of the group ("Individual Defendants");[2] (2) public nuisance pursuant to California Civil Code §§ 3479 and 3480 against LBB and Individual Defendants; (3) violation of the Equal Protection Clause of the Fourteen Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983") against City Defendants ("Equal Protection Claim"); (4) violation of the Privileges and Immunities Clause of Article IV of the United States Constitution pursuant to § 1983 against City Defendants ("P&I Claim"); (5) violation of various provisions of the California Coast Act against all defendants ("Coastal Act Claim"); (6) assault against LBB and Individual Defendants; (7) battery against LBB and Individual Defendants; and (8) negligence against LBB and Individual Defendants. (*See generally* Compl. ¶¶ 43-106.) Plaintiffs allege this Court has subject-matter jurisdiction over Individual Defendants under 28 U.S.C. § 1333 (admiralty or maritime jurisdiction), Article III, § 2 of the United States Constitution, and 28 U.S.C. § 1367 (supplemental jurisdiction). (Compl. ¶¶ 11-12.)

II.  DISCUSSION

City Defendants ask the Court to dismiss Plaintiffs' Equal Protection, P&I, and Coastal Act Claims—the sole claims asserted against the them—for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (*See generally* Mot., ECF No. 30.) With respect to both the **Equal Protection** and **P&I Claims**, City Defendants argue (1) that liability does not attach to a city official or to the city based on a theory of respondeat superior; (2) that events that occurred more than two years prior to the filing of the Complaint are time-barred; and (3) that CPRI, which is not an individual, lacks standing to pursue these claims. (*See generally* Mot.) With respect to the **Equal Protection Claim**, City Defendants further argue that Plaintiffs allege no facts to establish an equal protection claim because they have not alleged (1) that they are members of a protected class; (2) that either the City or Chief Kepley acted with discriminatory intent; (3) that a governmental action cause any violation; (4) that any specific federal or constitutional right has been violated; (5) that they were treated differently from other similarly situated individuals to establish a "class of one" equal protection claim; or (6) that the City or Chief Kepley acted with malice, which is required to satisfy a "class of one" equal protection claim. (*See generally* Mot.) With respect to the **P&I Claim**, City Defendants contend that Plaintiffs fail to state a claim because (1) they are not out-of-state residents; (2) they have failed to identify a protectable right; and (3) no duty to protect applies because there is no allegation that the City or

---

[2] The Individual Members identified in the Complaint are Alan Johnston, Sang Lee, Brant Blakeman, Angelo Ferrara, Frank Ferrara, Charlie Ferrara, N. F., and Michael Rae Papayans. (Compl. ¶ 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 16-02129 SJO (RAOx)          DATE: July 11, 2016

Chief Kepley affirmatively created a dangerous environment that would not otherwise have existed. (*See generally* Mot.) Finally, with respect to the **Coastal Act Claim**, City Defendants argue dismissal is warranted (1) because *Burford* abstention applies; (2) the claim is not ripe because Plaintiffs have failed to exhaust their administrative remedies; (3) no basis for injunctive relief has been sufficiently pled; (4) there is no basis for fines and penalties for any violation occurring more than three years before Plaintiffs knew of the alleged violation; and (5) any administrative fines under the California Coastal Act would not be payable to Plaintiffs. (*See generally* Mot.)

Plaintiffs respond by arguing that courts should not apply a heightened pleading standard to civil rights complaints against municipalities, and that the bulk of City Defendants' cases concerned the summary judgment stage. (Opp'n 2, ECF No. 48.) Plaintiffs further contend that City Defendants fail to address Plaintiffs' § 1983 claims which are based on (1) a policy, practice, or custom of the City that distinguishes one group of persons (residents) from another (non-residents) without any rational basis; and (2) that such policy, practice or custom arbitrarily and unreasonably interferes with Plaintiffs' right to enter public lands. (Opp'n 2.) Plaintiffs additionally argue that the City's arguments concerning statutes of limitations ignore the continuing violations doctrine. (Opp'n 2.) Finally, Plaintiffs argue that (1) the Coastal Act invites citizens' lawsuits like this one; (2) the City has failed to obtain coastal development permits for structures in the coastal zone; and (3) the City's response has encouraged the Bay Boys to block access to the beach. (Opp'n 2.)

    A.    <u>Legal Standards</u>

        1.    <u>Rule 12(b)(6)</u>

"Rule 12(b)(6), which tests the legal sufficiency of the claims asserted in the complaint, must be read in conjunction with Rule 8, which requires a 'short and plain statement showing that the pleader is entitled to relief . . .'" *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Although the pleader is not required to plead "detailed factual allegations" under Rule 8, this standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Pleadings that contain nothing more than legal conclusions or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* (citation and quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a complaint pleads sufficient facts "to raise a right to relief above the speculative level," a court may not dismiss the complaint under Rule 12(b)(6). *See Twombly*, 550 U.S. at 545. In reviewing a motion to dismiss under Rule 12, a court may only consider the complaint, documents incorporated by reference in the complaint, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Federal courts may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u> | **DATE:** <u>July 11, 2016</u> |

rights cases alleging municipal liability." *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

      2.    <u>§ 1983 and Municipal Liability</u>

42 U.S.C. § 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). Moreover, local governments "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 691. That said, "a municipality cannot be held liable **solely** because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a **respondeat superior** theory." *Id.* (emphasis in original).

      3.    <u>The Equal Protection Clause of the Fourteenth Amendment</u>

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). "Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection." *Id.* at 439-40. "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* (citations omitted). "When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude . . . and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process." *Id.* (citations omitted). Where, however, a statute classifies by race, alienage, national origin, gender, or other "suspect statuses," a heightened standard of review is applied. *Id.* at 440-42 (noting that laws classifying by race, alienage, and national origin "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest," while those classifying based on gender "will survive equal protection scrutiny to the extent they are substantially related to a legitimate state interest").

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 16-02129 SJO (RAOx)　　　　　**DATE:** July 11, 2016

"Although *City of Cleburne* involved a challenge to legislation, the rational basis test is equally applicable to an unwritten policy or practice." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1111-12 (E.D. Cal. 2012). For example, in *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008), the Ninth Circuit Court of Appeals applied a rational basis analysis to an applicant's challenge to an Idaho land management agency's unwritten practice of requiring more specific grazing management plans from permit applicants associated with conservation interests than from those without such associations. California district courts adhere to this principle. *See O'Haire v. Napa State Hosp.*, No. C 07-00002 RMW (PR), 2009 WL 2447752 (N.D. Cal. Aug. 7, 2009) (challenge to unwritten policy intentionally discriminating against homosexuals without rational basis stated valid equal protection claim).

An equal protection claim can lie where plaintiff can establish that he is a "class of one" in that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

　　　　4.　　The Privileges and Immunities Clause of the Fourteenth Amendment

The Privileges and Immunities Clause of Article IV of the United States Constitution provides that "[t]he citizens of each State shall be entitled to all the Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. "Application of the Privileges and Immunities Clause to a particular instance of discrimination against out-of-state residents entails a two-step inquiry." *United Bldg. & Constr. Trades Council of Camden County and Vicinity v. Mayor & Council of City of Camden* ("*Camden*"), 465 U.S. 208, 218 (1984). "As an initial matter, the court must decide whether the ordinance burdens one of those privileges and immunities protected by the Clause." *Id.* (citing *Baldwin v. Montana Fish and Game Comm'n*, 436 U.S. 371, 383 (1978)). If the court finds that the contested restriction falls within the Clause's ambit, the court will deem the restriction unconstitutional if the state cannot show that it is "'closely related to the advancement of a substantial state interest.'" *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 936 (9th Cir. 2008) (quoting *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988)).

　　B.　　Analysis

　　　　1.　　Plaintiffs Have Adequately Alleged an Equal Protection Claim

In their Motion, City Defendants first argue that Plaintiffs' Equal Protection Claim must be dismissed because Plaintiffs fail to allege (1) that they are members of a protected class; (2) that any of their fundamental rights have been violated; or (3) that they are a "class of one." (*See* Mot. 3-9.) City Defendants also contend that Plaintiffs' Equal Protection Claim is time-barred as to events occurring prior to March 29, 2014. (Mot. 12.)

In response, Plaintiffs admit that their Equal Protection Claim, as currently pled, "is not borne out of their membership in a protected class, a fundamental right, or a 'class of one' theory." (Opp'n 7.) Rather, they contend that their claim arises from the premise "when a policy [practice, or

CASE NO.: CV 16-02129 SJO (RAOx)          DATE: July 11, 2016

custom] distinguishes one group of persons from another, that distinction must be rationally related to a legitimate governmental purpose," citing *Sanchez v. City of Fresno*. (Opp'n 7.)

The Court agrees with Plaintiffs that the only the "rational basis" test is being invoked in the Complaint, and concludes that Plaintiffs have succeeded in alleging their Equal Protection Claim to the satisfaction of Rule 8(a), *Twombly*, and *Iqbal*. "The first step in equal protection analysis is to identify the [defendants'] classification of groups." *Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). "To accomplish this, a plaintiff can show that the law is applied in a discriminatory manner or imposes different burdens on different classes of people." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

The Ninth Circuit has held that "in an equal protection claim based on selective enforcement of the law, a plaintiff can show that a defendant's alleged rational basis for his acts is a pretext for an impermissible motive." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007) (citing *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004)). Moreover, in *Romer v. Evans*, 517 U.S. 620 (1996), the United States Supreme Court found that an amendment to the Colorado Constitution prohibiting all legislative, executive, or judicial action designed to protect homosexual individuals from discrimination violated the Equal Protection Clause of the Fourteenth Amendment. The Court held that such a law "raise[d] the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected." *Id.* at 634. The Court went on to note that "if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Id.*

In this case, Plaintiffs allege that the City Defendants treat one group—residents of the City—differently than they treat another group—nonresidents visiting the City's beaches, including Lunada Bay. In particular, Plaintiffs allege that the City has a "long history of deliberate indifference of not investigating or otherwise policing acts of violence and vandalism against visiting beachgoers." (Compl. ¶ 15.) Plaintiffs also allege that the City "tolerates the unlawful activity of the LUNADA BAY BOYS against nonlocal beachgoers because the 40-member police force is designed to keep [the City] for locals only." (Compl. ¶ 15.) Other allegations in the Complaint detail with some particularity the police departments' refusals to respond to attacks by members of the LBB upon nonresident beachgoers. (*See* Compl. ¶¶ 19-22, 24-27.) Indeed, Plaintiffs allege that one officer, after admitting that the police department "know[s] all" of the "infamous" LBB members, who famously "don't like anyone that's not one of The Bay Boys," stated that "it is what it is," and "[i]f you feel uncomfortable, you know, then don't do it." (Compl. ¶ 20.) Plaintiffs additionally allege that a group officers, after witnessing Plaintiff Reed being assaulted by members of the LBB, (1) declined to arrest the assailant; (2) asked her if she would like to make a "citizen's arrest;" and (3) mistakenly assured her that her case "would be handled by the District Attorney with the same result." (Compl. ¶ 22.) When Reed returned to Lunada Bay to document the LBB's activities, an officer asked her "[w]hy would a woman want to go to that beach and the Rock Fort anyways," and the police thereafter failed to return her calls to set a time to identify the LBB members who had harassed her. (Compl. ¶ 27.) When Reed was finally

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   <u>CV 16-02129 SJO (RAOx)</u>          DATE:   <u>July 11, 2016</u>

granted an audience with the police department, Chief Kepley stated that he "wish[ed] it was safe [at Lunada Bay], but it's not," and another officer stated that "there are judges and lawyers that surf out there."  (Compl. ¶ 27.)

Even after removing the conclusory language from these allegations, the factual content contained therein is sufficient to provide City Defendants "fair notice of what the . . . claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Although City Defendants bemoan the absence of allegations regarding how members of the LBB and residents of the City are treated by City Defendants, in light of the nature of the charges in this case, such allegations are not required.  Plaintiffs allege that members of the LBB are dedicated to keeping nonresidents away from Lunada Bay, and that the City tolerates this behavior with the like-minded intent "to keep [the City] for locals only."  (Compl. ¶ 15.)

Plaintiffs have thus plausibly alleged an Equal Protection Claim against City Defendants, and the Court **DENIES** City Defendants' Motion on this basis.[3,4]

///
///
///
///
///
///

---

[3] City Defendants argue that Plaintiffs' Equal Protection and Privileges and Immunities Claims "are time-barred for any claimed violation occurring two years before March 4, 2016." (Mot. 12.)  City Defendants do not, however, dispute that the vast majority of the allegations in Plaintiffs' Complaint occurred within the past two years, and thus do not contend that Plaintiffs cannot seek declaratory and injunctive relief based upon such alleged conduct.  (*See generally* Mot. 12; Reply 3-4, ECF No. 74.)  Rather, they appear to request summary adjudication that Plaintiffs cannot recover against City Defendants for events occurring prior to this critical date.  (*See* Reply 4.)  Plaintiffs, however, do not seek monetary relief from City Defendants for their alleged violations of the Equal Protection and Privileges and Immunities Clauses.  (*See* Compl. pp. 40-42.)  Accordingly, the Court **DENIES** City Defendants' Motion as to this issue.

[4] The Court also rejects City Defendants' Article III standing argument, (*see* Mot. 12-13), both because Article III standing is not among the bases on which City Defendants moved for dismissal, (*see* Mot. 2-3), and because the cases they cite are inapposite to this case, in which Plaintiffs allege that they have been and will continue to be directly harmed by City Defendants' selective enforcement of their laws vis-a-vis residents and nonresidents, (*see* Compl. ¶¶ 1-2, 18-28, 61-69).  To the extent City Defendants' challenge is predicated on a belief that Plaintiffs have not suffered an "actual injury," such an argument concerns the merits of Plaintiffs' claims.  The Court thus **DENIES** City Defendants' Motion on this basis.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 16-02129 SJO (RAOx)</u>     DATE: <u>July 11, 2016</u>

    2.    <u>Plaintiffs' Privileges and Immunities Claim Fails for Two Reasons</u>

City Defendants next challenge Plaintiffs' Privileges and Immunities Claim, arguing (1) that Plaintiffs Spencer and Reed lack standing because they are residents of California; (2) that the right to recreate is not a protected right; and (3) that the City Defendants have no duty to protect Plaintiffs. (*See* Mot. 9.)  Plaintiffs respond by arguing (1) that "the fact that Plaintiffs are in-state residents nonetheless entitles them to the protection of the Privileges and Immunities Clause of Article IV of the U.S. Constitution just the same as if they were out-of-state residents;" (2) that their right to enter public lands is a protectable interest; and (3) that City Defendants' "duty to protect" argument is misplaced.

Plaintiffs misunderstand the purpose and scope of the Privileges and Immunities Clause. *Camden*, a case cited by both Plaintiffs and City Defendants, concerned an ordinance adopted by the city of Camden, New Jersey, that required at least 40% of the employees of contractors and subcontractors working on city construction projects be Camden residents.  The United States Supreme Court began by "quickly reject[ing]" the respondents' argument that the "Clause only applies to laws passed by a **State**." 465 U.S. 208, 214 (1984) (emphasis in original).  The Court held that "[t]he fact that the ordinance in question is a municipal, rather than a state, law does not somehow place it outside the scope of the Privileges and Immunities Clause."  *Id.*

The Court also rejected respondents' effort to have the "Clause only appl[y] to laws that discriminate on the basis of **state** citizenship." *Id.* (emphasis in original).  In rejecting such a literal interpretation, the Court noted that "the terms 'citizen' and 'resident' are 'essentially interchangeable' . . . for purposes of analysis of most cases under the Privileges and Immunities Clause." *Id.* at 216.  The Court noted, however, that although "New Jersey citizens not residing in Camden will be affected by the ordinance as well as out-of-state citizens," such "**disadvantaged New Jersey residents have no claim under the Privileges and Immunities Clause**."  *Id.* at 217 (emphasis added) (citing *The Slaughter-House Cases*, 16 Wall. 36, 77, 21 L.Ed. 394 (1872)).  This is because such residents "at least have a chance to remedy at the polls any discrimination against them," while "[o]ut-of-state citizens have no similar opportunity."  *Id.*  Thus, the Court "conclude[d] that Camden's ordinance is not immune from constitutional review **at the behest of out-of-state residents** merely because some in-state residents are similarly disadvantaged."  *Id.* (emphasis added).

Plaintiffs allege that Spencer and Reed are residents of California. (Compl. ¶¶ 1-2.) As such, they are not capable of challenging a California municipality's policy or practice under the Privileges and Immunities Clause.  Moreover, because CPRI is a corporation, (RJN, Ex. A), it is not considered a "citizen" within the meaning of the Privileges and Immunities Clause, and therefore is not entitled "to all privileges and immunities . . . in the several states."  *Blake v. McClung*, 172 U.S. 239, 19 S. Ct. 165 (1898); *see also Pelican Chapter, Associated Builders & Contractors, Inc. v. Edwards*, 901 F. Supp. 1125, 1133 (M.D. La. 1995).

Moreover, Plaintiffs assert in their Opposition that "the right to enter public lands, including tidal lands, is a well-established protectable right in California." (Opp'n 12 (citing Cal. Const., art. X § 4;

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>July 11, 2016</u>

Cal. Gov't Code § 66478.3; *Gion v. Santa Cruz*, 2 Cal.3d 29, 42 (1970)).)  Section 1983, however, "safeguards certain rights conferred by federal statutes," and "in order to seek redress through § 1983 . . ., a plaintiff must assert the violation of a federal **right**, not merely a violation of federal **law**."  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original).  Plaintiffs have not identified a federal right that is protectable under the Privileges and Immunities Clause

The Court therefore **GRANTS IN PART** the City Defendants' Motion and **DISMISSES** Plaintiffs' Privileges and Immunities Claim **without leave to amend**.

        3.    <u>The Court Abstains from Hearing Plaintiffs' California Coastal Act Claim</u>

City Defendants raise five arguments in support of their Motion as to why Plaintiffs' California Coastal Act Claim should be dismissed.  First, City Defendants contend that the Court should apply the *Burford* abstention doctrine and abstain from exercising jurisdiction as to this cause of action. (Mot. 13-15.)  City Defendants next argue that this cause of action is not ripe and that there is no definite and concrete controversy to adjudicate. (Mot. 16-18.)  They further contend that Plaintiffs have not demonstrated a basis for injunctive relief, both because they have not alleged facts regarding how they would be irreparably injured by the continued existence of the structures on the beach at Lunada Bay and because they have an adequate remedy at law that has not been exhausted. (Mot. 18.)  Fourth and fifth, City Defendants argue that Plaintiffs' request for civil fines or penalties are time-barred, and in any event, any administrative fines would not be payable to Plaintiffs. (Mot. 18-19.)  Plaintiffs respond in kind. (Opp'n 16-20.)  Because the Court concludes that abstention under *Burford* is appropriate in this case, it need not consider City Defendants' subsidiary arguments.

        a.    <u>*Burford* Abstention</u>

The *Burford* abstention doctrine stems from *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), a case in which the United States Supreme Court held that "[a]lthough a federal equity court does have jurisdiction over a particular proceeding, it may, in its sound discretion . . . refuse to enforce or protect legal rights, the exercise of which may be prejudicial interest; for it is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." 319 U.S. 315, 317-18 (1943) (internal citations and quotation marks omitted).  In *New Orleans Public Service, Inc. v. Council of City of New Orleans* ("*NOPSI*"), the Supreme Court summarized the requirements of the *Burford* abstention doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies:  (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

CASE NO.: **CV 16-02129 SJO (RAOx)**          DATE: **July 11, 2016**

491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). The Court of Appeals for the Ninth Circuit takes a slightly more restrictive approach, requiring showings "(1) that the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) that federal review might disrupt state efforts to establish a coherent policy." *Tucker v. First Md. Savings & Loan, Inc.*, 942 F.2d 1401, 1405 (9th Cir. 1991). Application of these factors "only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (quoting *Colorado River*, 424 U.S. at 813).

The parties dispute the applicability of *Beck v. State of California*, 479 F. Supp. 392 (C.D. Cal. 1980), to the instant case. In *Beck*, the plaintiff, an individual desiring to construct a single-family residence on his Malibu real property, brought a challenge to the then-recently enacted California Coastal Act of 1976 after his applications to construct the residence were denied by both the Regional and State Commissions. Plaintiff argued that various defendants (1) deprived him of all use and enjoyment of his property in violation of the Fourteenth Amendment's Due Process Clause; (2) deprived him under § 1983 of a valuable civil right; and (3) acting in concert, conspired under 42 U.S.C. section 1985 to deprive him of his civil rights. *Id.* at 395. The district court in *Beck* found that abstention under the *Burford* doctrine was appropriate in light of the following:

> The California coastline is a unique and valuable resource of that state. In order to protect that resource, the people of that state enacted extensive legislation providing for a complex system of regulation with state controls ultimately yielding to local control with state supervision through the local adoption and state approval of local coastal plans. The legislation provides for an interim permit procedure until those local plans are adopted and approved. The coastal acts specifically provide a system of recourse for the permit applicant and a particularized system of review. Furthermore, the California Supreme Court in *Agins v. City of Tiburon*, 23 Cal.3d 605, 157 Cal. Rptr. 372, 598 P.2d 25 (1979), in holding that a plaintiff may not recover damages on the theory of inverse condemnation, has established a policy in the state which dictates that "taking" actions must be handled in a particularized fashion.

*Id.* at 400. Plaintiffs attempt to distinguish *Beck* by noting that the district court in that case (1) considered a pending parallel state court action; (2) was dealing with a then-new California regulatory scheme; (3) was evaluating California land use issues; and (4) noted that the dispute was primarily about money, and that an action seeking prospective injunctive relief if the state proceedings were stayed would be appropriate. (Opp'n 17.)

The Court does not find any of these arguments to be persuasive. First, the district court in *Beck* did not rely on either the first or fourth point in reaching its conclusion as to the appropriateness of abstaining on *Burford* grounds. Accordingly, that Plaintiffs seek only injunctive, rather than monetary, relief is inapposite to the *Burford* abstention inquiry. Nor did the Court in *Beck* suggest

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  **CV 16-02129 SJO (RAOx)**    **DATE:**  **July 11, 2016**

that the "newness" of the California Coastal Act bore any relation to its decision whether to abstain; indeed, the notion that California "enacted **extensive legislation** providing for a **complex system of regulation** with state controls ultimately yielding to local control with state supervision through the local adoption and state approval of local coastal plans" has not changed since the enactment of the California Coastal Act.  *Beck*, 479 F. Supp. at 400 (emphasis added).  Plaintiffs' unsupported assertion that "these Coastal Act claims are not complex or controversial" in light of allegations contained in a letter sent by one California Coastal Commission employee thus misses the mark.  (*See* Opp'n 17.)

Moreover, Plaintiffs ask the Court in this case to "evaluat[e] California land use issues," including (1) whether the City should have required members of the LBB to obtain a coastal development permit before constructing the Rock Fort; (2) whether the Rock Fort is exempt from these permitting requirements as an "excluded development;" (3) whether the LBB's conduct toward non-residents constitutes "development" under the Coastal Act and the Palos Verdes Estates' Local Coastal Program; and (4) whether the Rock Fort should be demolished.  Plaintiffs allege that on January 21, 2016, an enforcement analyst for the California Coastal Commission sent Chief Kepley a letter noting that "[p]recluding full public use of the coastline . . . whether through physical devices . . . or nonphysical impediments, such as threatening behavior intended to discourage public use of the coastline, . . . constitutes development under the Coastal Act and the Palos Verdes Estates LCP." (Compl., Ex. 18.)  The letter also states that the Commission has received reports of unpermitted structures, including stone forts, constructed on the shoreline of Lunada Bay, and invites Chief Kepley to "meet to discuss this matter and collaborate with the City in their efforts to ensure enjoyment of the coastline by all Californians and visitors alike." (Compl. Ex. 18.)  The possibility that the City, Chief Kepley, and the Commission might come together to address access issues and Lunada Bay and determine which permits are or are not required under the Act and the City's LCP—as part of the Commission's administrative process or otherwise—underscores both the importance of the administrative process to the City's efforts to "establish a coherent policy" and the intricate relationship between the federal and state issues presented in this case—namely, providing nonresidents access to public waters.  *Tucker*, 942 F.2d at 1405.  Notably, although Plaintiffs correctly state that California Public Resources Code section 30803 authorizes "[a]ny person [to] maintain an action for declaratory and equitable relief to restrain any violation of this division," Cal. Pub. Res. Code § 30803, they cite no authority indicating that an individual or group may challenge a municipality's failure to require others' obtaining a coastal development permit prior to constructing a "development" in a coastal zone.

Here, as in *Beck*, the Court concludes that *Burford* abstention is appropriate given the Court's reticence "to interfere with the local administration of local laws."  *Beck*, 479 F. Supp. at 400.  Unlike in *Beck*, however, the Court concludes that dismissal of Plaintiffs' Coastal Act Claim—the typical remedy in *Burford* abstention cases—is appropriate, particularly given the uncertainty surrounding enforcement efforts that might be taken by the Commission and/or the City itself vis-a-vis the Rock Fort and the actions of the LBB.  The Court accordingly **DISMISSES** Plaintiffs' fifth cause of action for violation of the California Coastal Act as to the City Defendants **without leave to amend**.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   **CV 16-02129 SJO (RAOx)**           DATE:   **July 11, 2016**

III.     <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants City of Palos Verdes Estates and Chief of Police Jeff Kepley's Motion to Dismiss Complaint. Plaintiffs' fourth cause of action for violation of the Privileges and Immunities Clause pursuant to 42 U.S.C. § 1983 and fifth cause of action for violation of the California Coastal Act are **DISMISSED without leave to amend** as to Defendants City of Palos Verdes Estates and Chief of Police Jeff Kepley, in his representative capacity. Defendants City of Palos Verdes Estates and Chief of Police Jeff Kepley have fourteen (14) days from the issuance of this Order to respond to the remainder of Plaintiffs' Complaint.

IT IS SO ORDERED.