UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

===============================================================

**CASE NO.:** CV 16-02129 SJO (RAOx)  **DATE:** July 22, 2016

**TITLE:** <u>Spencer et al. v. Lunada Bay Boys et al.</u>

===============================================================

**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                      Not Present
Courtroom Clerk                                       Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                           Not Present

===============================================================

**PROCEEDINGS (in chambers): ORDER DENYING INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** [Docket Nos. 41, 42, 43, 72]

These matters are before the Court on (1) Defendant Alan Johnston's ("Johnston") Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Johnston Motion"), filed June 16, 2016; (2) Defendant Brant Blakeman's ("Blakeman") Motion to Dismiss for Subject Matter Jurisdiction ("Blakeman Motion"), filed June 17, 2016; (3) Defendant Michael R. Papayans' ("Papayans") Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Papayans Motion"), also filed June 17, 2016; and (4) Defendants Angelo Ferrara and N.F.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Ferrara Motion") (together, "Motions"), filed June 24, 2016. Plaintiffs Cory Spencer ("Spencer"), Diana Milena Reed ("Reed"), and Coastal Protection Rangers, Inc. ("CPRI") (together, "Plaintiffs") opposed the Motions ("Opposition") on July 1, 2016.[1] Papayans replied ("Papayans Reply") on July 11, 2016. The Court found these matters suitable for disposition without oral argument and vacated the hearings set for July 25 and August 1, 2016. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **DENIES** the Motions.

I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiffs allege the following in their Class Action Complaint ("Complaint"), filed March 29, 2016. California residents Spencer and Reed are, among other things, experienced surfers and avid beachgoers who have been unlawfully excluded from recreational opportunities at Palos Verdes Estates parks, beaches, and access to the ocean. (*See* Compl. ¶¶ 1-2, ECF No. 1.) CPRI is an entity "dedicated to enforcing the California Coastal Act and protecting California's beaches and ensuring that they are safe and accessible to all visitors." (Compl. ¶ 3.)

---

[1] Although Plaintiffs only opposed the Johnston and Papayans Motions on July 1, 2016, they filed a statement in opposition to the Blakeman and Ferrara Motions on July 8, 2016, contending that the arguments raised in support of the each of the Motions were identical, and that only a single response was therefore required. The Court thus references the arguments raised in the substantive opposition, filed as ECF No. 80.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 16-02129 SJO (RAOx)        DATE: July 22, 2016

The City of Palos Verdes Estates (the "City"), renowned for its natural beauty, is home to approximately 13,500 residents and more than 40 police personnel. (Compl. ¶ 15.) The City owns Lunada Bay, a public beach that constitutes Southern California's "premier big-wave break." (Compl. ¶¶ 16-17.) Lunada Bay is also, however, one of the surfing world's "best-known area[s] for localism," a territorial practice whereby resident surfers attempt to exclude nonresident beachgoers and surfers through threats, intimidation, and violence. (Compl. ¶ 17.)

Defendant Lunada Bay Boys ("LBB") is a criminal street gang that has practiced a particularly "severe" form of localism since the early 1970s. (Compl. ¶¶ 3-5, 17-18.) LBB "knowingly built and maintains an unpermitted masonry-rock-and-wood fort and seating area ('Rock Fort') in violation of the California Coastal Act," where it conducts criminal activity. (Compl. ¶¶ 3-5.) Moreover, LBB has built and maintains a steep trail from a 100-foot bluff called the "Goat Trail," and stores recreational items and maintains a campfire ring with seating near the base of this trail. (Compl. ¶ 18.) LBB sells, markets, and uses illegal controlled substances from the Lunada Bay bluffs and the Rock Fort, and uses the gang's name to confront, threaten, intimidate, and harass non-local beachgoers through a variety of tactics. (Compl. ¶ 18.) Some of the more egregious tactics include (1) throwing rocks; (2) running people over with surfboards; (3) punching non-locals; (4) shooting surfers and beachgoers with pellet guns; (5) stealing wallets, wetsuits and surfboards; (6) vandalizing vehicles and personal property, including by slashing tires and waxing ethnic slurs onto windows; (7) levying threats against non-locals; and (8) sharing photographs and videos that they take of visitors. (Compl. ¶ 18.)

LBB is not unfamiliar to the City's Police Department, but "[f]or many decades" complaints made by victims of LBB have gone unanswered. (Compl. ¶ 15.) For example, several of the aforementioned tactics were caught on camera and shown to officers of the City's Police Department. (Compl. ¶¶ 19-20.) In response to this report, one officer stated the following:

> We know all of them. They are infamous around here. They are pretty much grown men in little men's mindset. They don't like anyone that's not one of The Bay Boys, surfing down there. It literally is like a game with kids on a school yard to them and they don't want you playing on their swing set, but, you know, **it is what it is. If you feel uncomfortable, you know, then don't do it.**

(Compl. ¶ 20.) Spencer and Reed have also been victimized by LBB, but their reports to the police department fell on deaf ears. (Compl. ¶¶ 21-27.) Indeed, when Reed was verbally assaulted by members of LBB in the presence of a police officer, the officer asked her if she wanted to make a "citizen's arrest," which is permitted under California Penal Code section 837, notwithstanding that police were already on the scene and that other members of LBB were nearby. (Compl. ¶ 22, n. 19.) Defendant Chief of Police Jeff Kepley ("Chief Kepley") has described LBB as "a long term problem," and stated that "[i]f I could fix this, I would." (Compl. ¶ 27.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 16-02129 SJO (RAOx)          DATE:   July 22, 2016

Plaintiffs seek to represent a class of at least several thousand members who reside outside the City and who desire "lawful, safe, and secure access to Lunada Bay to engage in recreational activities." (Compl. ¶ 30.)  Plaintiffs assert the following eight causes of action against the City, Chief Kepley, and the LBB and certain members of the group ("Individual Defendants"):[2]  (1) violation of the Bane Act, California Civil Code § 52.1(b), against LBB and Individual Defendants ("Bane Act Claim"); (2) public nuisance pursuant to California Civil Code §§ 3479 and 3480 against LBB and Individual Defendants ("Nuisance Claim"); (3) violation of the Equal Protection Clause of the Fourteen Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983") against the City and Chief Kepley (together, "City Defendants") ("Equal Protection Claim"); (4) violation of the Privileges and Immunities Clause of Article IV of the United States Constitution pursuant to § 1983 against City Defendants ("P&I Claim"); (5) violation of various provisions of the California Coast Act against all defendants ("Coastal Act Claim"); (6) assault against LBB and Individual Defendants ("Assault Claim"); (7) battery against LBB and Individual Defendants ("Battery Claim"); and (8) negligence against LBB and Individual Defendants ("Negligence Claim").  (*See generally* Compl. ¶¶ 43-106.)  Plaintiffs allege this Court has subject-matter jurisdiction over Individual Defendants under 28 U.S.C. § 1333 (admiralty or maritime jurisdiction), Article III, § 2 of the United States Constitution, and 28 U.S.C. § 1367 (supplemental jurisdiction).  (Compl. ¶¶ 11-12.)

On June 3, 2016, City Defendants filed a Motion to Dismiss Complaint ("City Motion"), asking the Court to dismiss the three causes of action brought against them.  (*See* City Mot., ECF No. 30.)  On July 11, 2016, the Court granted in part and denied in part the City Motion, dismissing Plaintiffs' P&I and Coastal Act Claims as to City Defendants without leave to amend, but not dismissing Plaintiffs' Equal Protection Claim as to these defendants.  (*See* Order Granting in Part & Den. in Part City Mot., ECF No. 84.)

II.     DISCUSSION

Although Individual Defendants have brought several independent motions to dismiss, the arguments presented in each motion are nearly identical.  Johnston, who filed the first motion, contends that the Court lacks subject-matter jurisdiction over him, as (1) the Complaint does not allege activity that has a potentially disruptive impact on maritime commerce or a substantial relationship to traditional maritime activity; and (2) the state law tort and statutory claims against Individual Defendants substantially predominate over the alleged federal claims such that the

---

[2]  The Individual Defendants identified in the Complaint are Johnston, Blakeman, Papayans, Angelo Ferrara, N.F., Sang Lee, Frank Ferrara, and Charlie Ferrara. (Compl. ¶ 7.)  Although Sang Lee, Frank Ferrara, and Charlie Ferrara have neither filed motions to dismiss nor joined in any of the instant Motions, the Court nevertheless refers to Johnston, Blakeman, Papayans, Angelo Ferrara, and N.F. as "Individual Defendants" for the purpose of ruling on the Motions.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>     **DATE:** <u>July 22, 2016</u>

Court should not exercise supplemental jurisdiction over the state law claims.  (*See generally* Johnston Mot., ECF No. 41.)  Blakeman and Papayans raise the same arguments, and join in the motions to dismiss brought by similarly situated Individual Defendants, citing *Vazquez v. Central States Joint Bd.*, 547 F. Supp. 2d 833, 867 (N.D. Ill. 2008), for the proposition that "[i]t is permissible for a party to adopt the motion of another party when the facts between the parties are essentially the same and the adoption would promote judicial efficiency." (Blakeman Mot. 3, ECF No. 42; Papayans Mot. 2, ECF No. 43.)  Angelo Ferrara and N.F. bring their motion "on the same grounds" as the other Individual Defendants' motions.  (Ferrara Mot. 2, ECF No. 72.)

In their Oppositions, Plaintiffs contend that their Complaint alleges torts subject to admiralty jurisdiction, arguing that they allege facts sufficient to satisfy both the "locality" requirement and to show tortious conduct that is potentially disruptive to maritime commerce and related to maritime activity.  (Opp'n 7-10, ECF No. 80.)  Plaintiffs additionally argue that the Court can and should exercise supplemental jurisdiction over these non-federal causes of action. (Opp'n 11-14.)

    A.    <u>Legal Standards</u>

        1.    <u>Motion to Dismiss for Lack of Subject-Matter Jurisdiction</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a party to move to dismiss a complaint based on a lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "The burden of establishing subject matter jurisdiction rests on the party asserting that the court has jurisdiction."  *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013) (citing *McNutt v. GM Acceptance Corp.*, 298 U.S. 178, 182-83, 56 S. Ct. 780, 80 L.Ed. 1135 (1936)).

           a.    <u>Admiralty Jurisdiction</u>

"A federal court's authority to hear cases in admiralty flows initially from the Constitution, which 'extend[s]' federal judicial power 'to all Cases of admiralty and maritime Jurisdiction.'" *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S. Ct. 1043, 130 L.Ed.2d 1024 (1995) (quoting U.S. Const., Art. III, § 2).  "Congress has embodied that power in a statute giving federal district courts 'original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction. . . .'"  *Id.* (quoting 28 U.S.C. § 1333(1)).

Although "[t]he traditional test for admiralty tort jurisdiction asked only whether the tort occurred on navigable waters," a "party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must [now] satisfy conditions both of **location** and of **connection with maritime activity**."  *Id.* at 531, 534 (emphasis added).  Supreme Court precedent now requires that

> [a] court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on

navigable water. . . .  The connection test raises two issues.  A court, first, must "assess the general features of the type of incident involved," . . . to determine whether the incident has "a potentially disruptive impact on maritime commerce," . . . .  Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

*Id.* at 534 (citations omitted).

### b.     Supplemental Jurisdiction

28 U.S.C. § 1367(a) provides that

> [e]xcept as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  Subsection (c) authorizes district courts to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(2).

### B.     Analysis

#### 1.     The Court Can Exercise Admiralty Jurisdiction Over Plaintiffs' Tort Claims

Individual Defendants first argue that the Court cannot exercise admiralty jurisdiction over Plaintiffs' state law causes of action levied against them—namely, the Bane Act, Public Nuisance, Coastal Act, Assault, Battery, and Negligence Claims—because the Complaint "does not allege traditional maritime activity."  (Johnston Mot. 7-8; Blakeman Mot. 6-7, ECF No. 42; *see also* Papayans Mot. 6-7, ECF No. 43.)  Though Individual Defendants correctly cite the standard for determining whether a federal court can properly exercise admiralty jurisdiction over an action pursuant to 28 U.S.C. § 1331, they offer no analysis in support of their contention that the Complaint falls short of alleging any traditional maritime activity.  The Court concludes that the Complaint, as currently constituted, satisfies the second prong of the maritime connection test.

Plaintiffs allege that Individual Defendants engage in the following "exclusively water-side activity": (1) "imped[ing] boat traffic with threats and by circling the boats on surfboards, kneeboards, boogey boards, kayaks, rowboats, and other manual powered vessels," which are "operated in a dangerous and negligent manner;" and (2) assaulting visiting beachgoers by "running people over with surfboards," "circling them," and "hold[ing] visitors underwater." (Compl. ¶ 18.) Plaintiff

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 16-02129 SJO (RAOx)     **DATE:** July 22, 2016

Spencer further alleges that one LBB member "intentionally ran [him] over with his surfboard and sliced open [his] hand." (Compl. ¶ 21.)

There is no dispute that the "location test" is satisfied in this case, as Lunada Bay is a body of navigable water. *See In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1127 (9th Cir. 2009) ("Nor is there a serious question that Mission Bay, including the reserved area where the accident in this case occurred, is a body of navigable water because it is open to the Pacific Ocean and subject to the ebb and flow of tides. As we held in *Stone v. Paradise Holdings, Inc. (In re Complaint of Paradise Holdings, Inc.)*, 'in tidal waters, the ebb and flow of the tides remains the standard.' 795 F.2d 756, 759 (9th Cir.1986).").

Whether Plaintiffs' Complaint satisfies the "connection test" presents a more difficult question, but one which the Court must answer in the affirmative in light of Supreme Court and Ninth Circuit precedent. As noted by the Supreme Court in *Grubart*, courts analyzing the connection test must "first[ ] must 'assess the general features of the type of incident involved,' . . . to determine whether the incident has 'a potentially disruptive impact on maritime commerce.'" 513 U.S. at 534. This first inquiry is commonly referred to as the commercial impact prong. Three Supreme Court—*Foremost Ins. Co. v. Richardson*, *Sisson v. Ruby*, and *Grubart*—have provided guidance to courts as to how to properly describe the incident in question.

In *Foremost*, the Court upheld admiralty jurisdiction over the collision of two pleasure boats, neither of which had ever engaged in any "commercial maritime activity," on the navigable waters of the Amite River in Louisiana. 457 U.S. 668 (1982). In doing so, the Court reiterated that the wrong must have a significant relationship with traditional maritime activity, but that the maritime activity need not be a commercial one. *Id.* at 674. It sufficed that the wrong in that case involved the negligent operation of a vessel on navigable waters. As the Court explained:

> The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually engaged in commercial maritime activity. This interest can be fully vindicated only if all operators of vessels on navigable waters are subject to uniform rules of conduct. The failure to recognize the breadth of this federal interest ignores the potential effect of noncommercial maritime activity on maritime commerce. For example, if these two boats collided at the mouth of the St. Lawrence Seaway, there would be a substantial effect on maritime commerce, without regard to whether either boat was actively, or had been previously, engaged in commercial activity.

*Id.* at 674-75.

In *Sisson*, the Supreme Court considered whether a fire aboard a docked, noncommercial vessel in a marina could give rise to admiralty jurisdiction. 497 U.S. 358 (1990). With respect to the commercial impact prong, the Court rejected categorizing the incident simply as a "fire," finding

such a description to be too general to meaningfully differentiate cases. 497 U.S. 358, 363-64 (1990). The Court also rejected applying an overly factual characterization, noting that the court "must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Id.* at 363.

Finally, in *Grubart*, the Court was tasked with determining whether admiralty jurisdiction existed over a suit brought by owners of downtown Chicago buildings that were flooded as a result of work done by a crane that was sitting on a barge in the Chicago River. The crane drove piles into the riverbed, but this activity weakened an underwater tunnel such that eventually the tunnel (and buildings in the Loop) were opened to river water. 513 U.S. at 529. Noting that the first prong of the *Sisson* test goes to potential effects, not the particular facts of the actual incident, the Court indicated that the incident being examined should be described "at an intermediate level of possible generality." *Id.* at 538. Thus, *Grubart* described the "general features" of the flooding incident "as damage by a vessel in navigable water to an underwater structure." *Id.* at 539. So described, the Court concluded this is the sort of incident that has a potentially disrupting impact on maritime commerce. *Id.* According to the Court, the proper inquiry is thus "whether the incident could be seen within a class of incidents that pose[s] more than a fanciful risk to commercial shipping." *Id.*

Following this trioka, the Ninth Circuit has "taken an inclusive view of what general features of an incident have a potentially disruptive effect on maritime commerce." *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1128 (9th Cir. 2009); *see also Taghadomi v. United States*, 401 F.3d 1080, 1086 (9th Cir. 2005) (injury to boaters, whose vessel capsized at sea, caused by a potential rescuer's negligence in carrying out its rescue operation could potentially affect maritime commerce because the "efficacy of search-and-rescue operations has a direct effect on the health and lives of seamen," and "insofar as the rescuer can preserve the vessel, it prevents economic loss to the vessel's owner"). In *Mission Bay*, for example, the Ninth Circuit found admiralty jurisdiction to exist over a suit arising out of the purportedly negligent operation of non-commercial jet skis in an area reserved for the use of such vessels in San Diego's Mission Bay. With respect to the commercial impact prong, the court noted that "[a]lthough the particular incident did not **actually** disrupt commercial activity, the disruption prong does not turn on what happened in this particular case but on whether the general features of the incident have a **potentially** disruptive effect." 570 F.3d at 1129. The court stated that an incident of this class could have a potentially disruptive effect, including, "[a]mong other things, a vessel from which a passenger goes overboard in navigable waters would likely stop to search and rescue, call for assistance from others—which, in this area, could include the Coast Guard and in fact did involve another vessel—and ensnarl maritime traffic in the lanes affected." *Id.*

The Court finds *Mission Bay* to be particularly applicable to this case, at least with respect to the commercial impact prong. Here, as in *Mission Bay*, the plaintiffs allege that the navigable vessels were negligently operated and that others were injured as a result of such operation. In this case, however, Plaintiffs allege that a member of the LBB intentionally injured Spencer by running him

over with a surfboard and slicing open his hand while Spencer was swimming in the Pacific Ocean. (Compl. ¶ 21.)  According to Plaintiffs, these tactics are commonly employed by the LBB to keep surfers, boaters, fishermen, sightseers, and others who might have a commercial interest in using the waters surrounding Lunada Bay away from the bay.  (*See* Compl. ¶¶ 18, 30.) Moreover, unlike in *Mission Bay*, there is no indication that the incident involving Spencer or any other incident occurred in a portion of Lunada Bay that is closed to commercial vessels, increasing the likelihood that maritime commerce could be affected by offshore incidents involving the LBB members and their aquatic equipment.  Thus, the Court concludes that the incidents alleged in the Complaint, viewed at an intermediate level of generality, have the potential to disrupt maritime commerce.

The Court now examines the second aspect of the "connection test," which requires determining "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."  *Grubart*, 513 U.S. at 539.  This requires "ask[ing] whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand."  *Id.* at 539-40; *see also Gruver v. Lesman Fisheries, Inc.*, 489 F.3d 978, 983 (9th Cir. 2007) ("To warrant jurisdiction, the tortfeasor's activity must be 'so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply.'" (quoting *Grubart*, 513 U.S. at 539)).  According to the Supreme Court, "[n]avigation of boats in navigable waters clearly falls within the substantial relationship . . .; storing them at a marina on navigable waters is close enough . . .; whereas in flying an airplane over the water . . ., as in swimming . . ., the relationship is too attenuated." *Grubart*, 513 U.S. at 540 (internal citations omitted).

The Court concludes that Plaintiffs' Complaint alleges a number of facts surrounding the incidents in question that bear a "substantial relationship to traditional maritime activity."  Although it may be true that the relationship between torts committed by individuals on surfboards and traditional maritime activity "is too attenuated" to require applying special admiralty rules to the case at hand, Plaintiffs allege that members of the LBB "**impede boat traffic** with threats and by circling the boats on surfboards, kneeboards, boogey boards, **kayaks**, **rowboats**, and **other manual powered vessels**," which are "operated in a dangerous and negligent manner."  (Compl. ¶ 18 (emphasis added).)  Because the "[n]avigation of boats in navigable waters clearly falls within the substantial relationship," *Grubart*, 513 U.S. at 540, the Court concludes that Plaintiffs' Complaint meets both prongs of the connection test.

Plaintiffs have met their burden of demonstrating that the Court has admiralty jurisdiction over their claims, and the Court accordingly **DENIES** Individual Defendants' Motions.

        2.     <u>The Court Exercises Supplemental Jurisdiction Over the State Law Causes of Action in Light of Plaintiffs' Paramount Equal Protection Claim</u>

Even if the Court were to conclude that it lacks admiralty jurisdiction over Plaintiffs' state law claims, the Court would nevertheless exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a). § 1367(a) "is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts have original jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). Individual Defendants do not contend, and the Court does not conclude, that Plaintiffs' state law claims do not arise from the same case or controversy as their Equal Protection Claim. Rather, they ask the Court to exercise its discretion pursuant to § 1367(c) to decline to exercise supplemental jurisdiction over the state law claims, contending that Plaintiffs' federal claims asserted against City Defendants, which at this juncture includes only Plaintiffs' Equal Protection Claim, (*see* Order Granting in Part & Den. in Part City Mot*.),* "are only appendages to the State law causes of action," (Johnson Mot. 8-9). Individual Defendants further argue that because Plaintiffs will need to prove their state law claims to support or establish the federal claims, and because "questions of fact will predominate as to each and every Individual Defendant," the Court should exercise its discretion and decline supplemental jurisdiction. (Johnson Mot. 9.)

Contrary to Individual Defendants' specious suggestion, the Court agrees with Plaintiffs that their Equal Protection Claim is "at the heart of this litigation matter," which Plaintiffs have brought on behalf of themselves and all other similarly situated non-resident beachgoers. (Opp'n 13.) Plaintiffs seek an injunction against City Defendants requiring them to treat non-resident and resident beachgoers alike with respect to their ability to access Lunada Bay, including by investigating and prosecuting complaints against LBB as appropriate. (*See* Compl. 41:13-18.) Plaintiffs' Equal Protection Claim is far from appendicular to their state law claims.

Moreover, Individual Defendants fail to address a number of factors commonly considered by courts when determining whether to decline supplemental jurisdiction pursuant to § 1367(c). These factors include judicial economy, convenience, fairness, and comity. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988). Judicial economy would undoubtedly be served by exercising supplemental jurisdiction over Plaintiffs' state law claims, for as Individual Defendants themselves note, Plaintiffs may need to prove their tort claims in order to establish their Equal Protection Claim. The convenience factor also weighs in favor of exercising supplemental jurisdiction, for it would be more convenient for these parties and their witnesses to litigate the related federal and state law disputes in one judicial forum versus two or more fora. The Court also concludes that it would be fair to exercise supplemental jurisdiction over Plaintiffs' state law claims, for Plaintiffs allegations center on localism practiced by Individual Defendants and, at the very least, tolerated by City Defendants.

///
///
III.     CONCLUSION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 16-02129 SJO (RAOx)   **DATE:** July 22, 2016

For the foregoing reasons, the Court **DENIES** Individual Defendants' Motions to Dismiss for Lack of Subject-Matter Jurisdiction. Individual Defendants Sang Lee, Brant Blakeman, Alan Johnston, Michael Ray Papayans, Angelo Ferrara, Frank Ferrara, Charlie Ferrara, and N.F. are **ORDERED** to respond to Plaintiffs' Complaint within ten (10) days of the issuance of this Order.

IT IS SO ORDERED.