**Exhibit 1-a**

## Samantha Wolff

**From:** Samantha Wolff
**Sent:** Wednesday, June 8, 2016 12:35 PM
**To:** 'Pat Carey'
**Subject:** RE: Lunada Bay - Litigation Hold

Thanks Pat

**From:** Pat Carey [mailto:pat@patcareylaw.com]
**Sent:** Wednesday, June 8, 2016 11:38 AM
**To:** Samantha Wolff
**Cc:** Kurt A. Franklin; Victor Otten (vic@ottenlawpc.com) (vic@ottenlawpc.com); Tyson M. Shower; Landon D. Bailey; Caroline Lee
**Subject:** Re: Lunada Bay - Litigation Hold

Received, thank you.

Sincerely,


Pat Carey
Law Offices of J. Patrick Carey
1230 Rosecrans Avenue, Suite 300
Manhattan Beach, California 90266
Phone/Fax 310.526.2237


www.southbaydefenselawyer.com


Sent from my iPhone

On Jun 8, 2016, at 11:10 AM, Samantha Wolff <SWolff@hansonbridgett.com> wrote:

> Pat,
>
> Please see the attached correspondence in the above-referenced matter.
>
> Thanks,
> Samantha
>
>
> **Samantha Wolff**
> **Senior Counsel**
> Hanson Bridgett LLP
> (415) 995-5020 Direct
> (415) 995-3547 Fax
> swolff@hansonbridgett.com

1

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have.

The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

 **HansonBridgett**

SAMANTHA D. WOLFF
SENIOR COUNSEL
DIRECT DIAL (415) 995-5020
DIRECT FAX (415) 995-3547
E-MAIL swolff@hansonbridgett.com

June 8, 2016

VIA ELECTRONIC MAIL ONLY

J. Patrick Carey
Law Offices of J. Patrick Carey
Attorney for Defendant Alan Johnston
pat@patcareylaw.com

Re:   *Spencer, et al. v. Lunada Bay Boys, et al.,* United States District Court for the Central District of California, Case No. 2:16-cv-02129-SJO-RAO

Dear Mr. Carey:

Following up on our call last week, this letter is intended to remind your client, Mr. Johnston, not to alter, delete or destroy any evidence relating to the lawsuit.

As you are aware, the lawsuit includes claims for violations of the Bane Act, California Coastal Act, 42 USC § 1983, and Public Nuisance.  Evidence germane to the lawsuit is anything having to do with this lawsuit, including communication related to non-locals surfing or using the beach/ocean/park at Lunada Bay, any reference to this lawsuit, any reference to Cory Spencer, any reference to Diana Milena Read, any reference to media interest in Lunada Bay, any reference to "Aloha Point," any reference to Rory Carroll, any reference to Noah Smith, any reference to Christopher Taloa, any reference to Jordan Wright, any reference to Seth Krel, any reference to the Bay Boys or "Lunada Pirates," communication with Lunada Bay "locals," communication with the City of Palos Verdes Estates including any member of its police department, communication with co-defendants, communication with D.J. Dreiling, communication with retired Chief of Police Dan Dreiling, communication with David Melo, communication with Luke Millican, communication with Aaron Rourke, communication with David Dickey, communication with Robert Johnston, communication with Paul Hamilton, communication with Nicholas Sinclair, communication with Nicholas Modisette, communication with Hank Harper, communication with Mark Griep, communication with Adam Dia, communication with Peter McCullom, communication with Brooke Bennett, communication with Kelly Logan, communication with Dave Jessup, communication with Paul Higaboom, communication with Cole Fiers, communication with Zen Del Rio, communication with Alex Gray, communication with Joe Bark, communication with Frank Ponce, communication with Amanda Calhoun, communication related to construction or maintenance of the "patio" or rock fort at Lunada Bay, communication related to the trails for ingress and egress to Lunada Bay, communication related to complaints about beach access for non-residents, including incidents involving alleged intimidation, violence, assault, battery, verbal disagreements, and/or harassment occurring at Lunada Bay or other Palos Verdes Estates beaches; the rock fort structure at Lunada Bay; vandalism to private property (including, but not limited to, automobiles) occurring at or near Lunada Bay; and any coordinated actions among the individually-named Defendants intended to dissuade non-locals from visiting, exploring and/or

Litigation Hold – Alan Johnston
June 8, 2016
Page 2

enjoying Lunada Bay and the surrounding areas. The foregoing shall be collectively referred to as "Potential Evidence" hereinafter in this letter.

I.     Demand For Preservation Of Evidence

Mr. Johnston is hereby given notice to immediately take all steps necessary to prevent the destruction, loss, concealment, or alteration of any paper, document, or electronically stored information ("ESI") related to Potential Evidence. Because ESI is an important and irreplaceable source of discovery and/or evidence in connection with the lawsuit described above, Plaintiffs may seek information from computer systems, removable electronic media and other locations controlled by Mr. Johnston, as well as from anyone who is involved in the with matters relevant to the lawsuit described above. ESI should be afforded the broadest possible definition and includes, but is not limited to, the following: all e-mail, instant messaging, text messages, voice mail messages, image files (including PDF, TIFF, JPG, and GIF images), other electronic communications of the persons or entities identified above, word processing documents, spreadsheets, databases, calendars, telephone logs, video or audio files, and all other data or information generated by and/or stored on your existing or prior computers and storage media, or hosted on online storage systems, or existing on an Internet-based application, as well as any other media (e.g., hard disks, flash drives, backup tapes, etc.), as well as any social media posts or comments (e.g., Facebook, Instagram, Snapchat).

This directive extends to all ESI within Mr. Johnston's possession and/or control. Because paper copies do not preserve electronic searchability or metadata, they are not an adequate substitute for ESI. If information exists in both electronic and paper form, Mr. Johnston should preserve them both.

II.     Instituting a "Litigation Hold"

Adequate preservation of ESI related to Potential Evidence requires more than simply refraining from efforts to destroy or dispose of such evidence. Mr. Johnston must also intervene to prevent loss due to routine operations, whether automated or not, and employ proper techniques to safeguard all such evidence. Examples of such routine operations include, but are not limited to, purging the contents of e-mail repositories by age, capacity, or other criteria; using data or media wiping, disposal, erasure, or encryption utilities or devices; overwriting, erasing, destroying, or discarding backup media; reassigning, re-imaging or disposing of systems, servers, devices, or media; running antivirus or other programs that alter metadata; using metadata stripper utilities; and destroying documents or any ESI by age or other criteria. Mr. Johnston should not pack, compress, purge, or dispose of any file or any part thereof.

Accordingly, Mr. Johnston is requested to immediately institute a litigation hold for potentially relevant ESI, documents, and tangible things related to Potential Evidence, and to act diligently and in good faith to secure and audit compliance with that litigation hold. Because documents and ESI relevant to this lawsuit may stretch back a number of years, it is possible that relevant documents and ESI may only be preserved on ESI backup systems (e.g., backup tapes) or other media, or in other locations. Thus, backup data should be preserved until this determination can be made.

Mr. Johnston is also requested to preserve and not destroy all passwords, decryption procedures (including, if necessary, the software to decrypt the files), network access codes, ID names,

Litigation Hold -- Alan Johnston
June 8, 2016
Page 3

manuals, tutorials, written instructions, decompression or reconstruction software, and any and all
other information and things necessary to access, view, and (if necessary) reconstruct any ESI
related to Potential Evidence.

It is also imperative that any and all persons who have access to relevant documents and ESI be
informed of the obligation to preserve those documents and ESI related to Potential Evidence
and that sufficient steps are taken to ensure compliance now, and as this matter progresses.

III.     Types of Data Preserved

         A.     Native Form

Mr. Johnston should anticipate that certain ESI, including but not limited to photos, videos, and
e-mails, will be sought in the form or forms in which they are ordinarily maintained (i.e., native
form). Accordingly, Mr. Johnston should preserve ESI of Potential Evidence in such native
forms, and should not employ methods to preserve ESI that remove or degrade the ability to
search the ESI by electronic means or that make it difficult or burdensome to access or use the
information.
Mr. Johnston should additionally refrain from actions that shift ESI from reasonably accessible
media and forms to less accessible media and forms if the effect of such actions is to make
such ESI not reasonably accessible.

         B.     Metadata

Mr. Johnston should further anticipate the need to disclose and produce system and application
metadata and act to preserve it.  System metadata is information describing the history and
characteristics of other ESI.  This information is typically associated with tracking or managing
an electronic file and often includes data reflecting a file's name, size, custodian, location and
dates of creation and last modification or access.  Application metadata is information
automatically included or embedded in electronic files, but which may not be apparent to a user,
including deleted content, draft language, commentary, collaboration and distribution data and
dates of creation and printing.  For e-mail, metadata includes all header routing data and
encoded attachment data, in addition to the To, From, Subject, Received Date, CC, and BCC
fields. Metadata may be overwritten or corrupted by careless handling or improper preservation,
including by moving, copying or examining the contents of files.

IV.     Servers

With respect to servers like those used to manage e-mail (e.g., Microsoft Exchange) and
network storage, the entire contents of each network share and Mr. Johnston's e-mail account
should be preserved and not modified.

V.     Storage

With respect to on-line storage and/or direct access storage devices attached to Mr. Johnston's
mainframe computer, in addition to the above, he is not to modify or delete any ESI, "deleted"
files, and/or file fragments existing on the date of this letter's delivery that contain Potential
Evidence.

Litigation Hold -- Alan Johnston
June 8, 2016
Page 4

With regard to all electronic media used for off-line storage, including magnetic tapes and
cartridges, optical media, electronic media, and other media or combinations of media containing
Potential Evidence, Mr. Johnston is requested to stop any activity which may result in the loss of
any ESI, including rotation, destruction, overwriting and erasure in whole or in part. This request
is intended to cover all media used for data or information storage in connection with Mr.
Johnston's computer systems, including magnetic tapes and cartridges, magneto-optical disks,
and all other media, whether used with personal computers, mainframes or other computers,
and whether containing backup and/or archival ESI.

VI.     Computers

Mr. Johnston should take immediate steps to preserve all ESI related to Potential Evidence on
all computers used by him that in any way relate to the lawsuit. As to fixed devices: (1) a true
and correct copy is to be made of all such ESI, including all active files and completely restored
versions of all deleted electronic files and file fragments; (2) full directory listings (including
hidden files) for all directories and subdirectories (including hidden directories) on such fixed
devices should be written; and (3) all such copies and listings are to be preserved until all
litigation is ended.

With respect to local hard drives, one way to protect existing data is by the creation and
authentication of forensically sound images of the drives. Be advised that a conventional back
up of a hard drive is not a forensically sound image. "Forensically sound ESI preservation"
means duplication of all data stored on the evidence media while employing a proper chain of
custody and using tools and methods that make no changes to the evidence and support
authentication of the duplicate as a true and complete image of the original. A forensically
sound preservation method guards against changes to metadata evidence and preserves all
parts of the electronic evidence.

Mr. Johnston should similarly take steps to preserve ESI on any and all portable systems. To the
extent he has sent or received potentially relevant e-mails or created or reviewed potentially
relevant documents on portable systems, he must preserve the contents of systems, devices,
and media used for these purposes (including not only potentially relevant data from portable and
home computers, but also from portable thumb drives, CDs, DVDs, PDAs, smartphones, voice
mailboxes, or any other forms of ESI storage) using Forensically sound ESI preservation.
Additionally, if Mr. Johnston used online or browser-based e-mail accounts (Gmail, etc.) or
services to send or receive potentially relevant messages and attachments, including social
media accounts (Facebook, Twitter, etc.), the contents of these account mailboxes must be
preserved using Forensically sound ESI preservation.

VII.    Evidence Created Or Acquired In The Future

With regard to documents, tangible things, and ESI that are created or come into Mr. Johnston's
custody, possession, or control subsequent to the date of delivery of this letter, he must
preserve all Potential Evidence and take all appropriate action to avoid its destruction.

VIII.   Do Not Delay Preservation

Mr. Johnston should not defer preservation steps. Should his failure to preserve Potential
Evidence result in the corruption, loss or delay in production of evidence to which Plaintiffs are

Litigation Hold -- Alan Johnston
June 8, 2016
Page 5

entitled, such failure would constitute spoliation of evidence, for which sanctions may be available.

Please contact me if you have any questions regarding this letter.

Sincerely,

/s/ Samantha Wolff

Samantha Wolff

cc:     Kurt Franklin, Esq.
        Victor Otten, Esq.
        Tyson Shower, Esq.
        Landon Bailey, Esq.
        Caroline Lee, Esq.

# Exhibit 1-b

1  HANSON BRIDGETT LLP
   KURT A. FRANKLIN, SBN 172715
2  kfranklin@hansonbridgett.com
   TYSON SHOWER, SBN 190375
3  tshower@hansonbridgett.com
   SAMANTHA WOLFF, SBN 240280
4  swolff@hansonbridgett.com
   LANDON D. BAILEY, SBN 240236
5  lbailey@hansonbridgett.com
   CAROLINE LEE, SBN 293297
6  clee@hansonbridgett.com
   425 Market Street, 26th Floor
7  San Francisco, California 94105
   Telephone:    (415) 777-3200
8  Facsimile:    (415) 541-9366

9  OTTEN LAW, PC
   VICTOR OTTEN, SBN 165800
10 vic@ottenlawpc.com
   3620 Pacific Coast Highway, #100
11 Torrance, California 90505
   Telephone:    (310) 378-8533
12 Facsimile:    (310) 347-4225

13 Attorneys for Plaintiffs
   CORY SPENCER, DIANA REED,
14 AND COASTAL PROTECTION RANGERS, INC.

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 0 4 2016

Sherri R. Carter, executive Officer/Clerk

By: _____, Deputy
Ishayla Chambers

15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16              COUNTY OF LOS ANGELES, CENTRAL DISTRICT

17                              BC 6 2 9 5 9 6

18 CORY SPENCER, DIANA REED,              CASE NO.
   COASTAL PROTECTION RANGERS, INC.,
19 a California non-profit public benefit
   corporation,
20
              Plaintiffs,
21
        v.                                CLASS ACTION COMPLAINT FOR
22                                        DECLARATORY AND INJUNCTIVE
   LUNADA BAY BOYS; THE INDIVIDUAL        RELIEF, CIVIL FINES,
23 MEMBERS OF THE LUNADA BAY BOYS,        AND JURY DEMAND
   including but not limited to DAVID MELO,
24 MARK GRIEP, SANG LEE, BRANT
   BLAKEMAN, MICHAEL RAE PAPAYANS,
25 ANGELO FERRARA, FRANK FERRARA,
   CHARLIE FERRARA, NF; CITY OF PALOS
26 VERDES ESTATES; CHIEF OF POLICE
   JEFF KEPLEY, in his representative capacity;
27 and DOES 1-100,

28              Defendants.

12577638.2

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

1  Plaintiffs Cory Spencer, Diana Milena Reed, and Coastal Protection Rangers, Inc.
2  (collectively referred to as "Plaintiffs"), by and through their attorneys, allege based upon their
3  own personal knowledge as to their own acts, upon information and belief, and upon their
4  attorneys' investigation as to all other facts.

5  ## INTRODUCTION

6  The City of Palos Verdes Estates (the "City"), renowned for its natural beauty, is home to
7  approximately 13,500 residents and more than 40 police personnel.  The City owns Lunada Bay, a
8  public beach that constitutes Southern California's premier big-wave break.  More than 20 years
9  ago, the *Los Angeles Times* described the neighborhood as follows:  "[T]he neighborhood is one of
10 the most exclusive in Southern California, with a sense of superiority infusing the air like sea
11 spray."  Lunada Bay is also, however, one of the surfing world's best-known areas for localism, a
12 territorial practice whereby resident surfers attempt to exclude nonresident beachgoers and surfers
13 through threats, intimidation, and violence.  More specifically, with City knowledge and without
14 proper permit, Defendant Lunada Bay Boys and the Individual Members of the Lunada Bay Boys
15 knowingly built and maintain an illegal and unpermitted masonry-rock-and-wood fort and seating
16 area ("Rock Fort") in violation of the California Coastal Act.  The steep switch backed trails that
17 lack proper improvements act as perfect pinch points, which the Lunada Bay Boys use to block
18 access.  From the Rock Fort and the bluffs above, the Individual Members of the Lunada Bay
19 Boys orchestrate criminal activity that is intended to keep the public away.  Some of the more
20 egregious tactics include (1) obstructing non-locals' access to the beach trails; (2) throwing rocks;
21 (3) allowing Individual Members dogs to attack non-locals; (4) running people over with
22 surfboards; (5) punching non-locals; (6) shooting surfers and beachgoers with pellet guns;
23 (7) stealing wallets, wetsuits and surfboards; (8) vandalizing vehicles and personal property,
24 including by slashing tires and waxing pejorative slurs onto windows; (9) levying threats against
25 non-locals; (10) sharing photographs and videos that they take of visitors; and (11) intimidating
26 non-locals with verbal insults, gestures, and threats of serious injury.  In short, members of the
27 Lunada Bay Boys are dedicated to keeping nonresidents away from Lunada Bay, while the City
28

-2-
CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

1   tolerates this behavior with the like-minded intent to keep the City for locals only. But neither the

2   City, nor the Lunada Bay Boys can lawfully exclude non-residents from a public beach.

3       In California, the coast belongs to the people: The California Constitution states that

4   "access to the navigable waters of this State shall be always attainable for the people thereof."

5   (Cal. Const., art. X, § 4.) The Coastal Act provides that in carrying out this constitutional

6   requirement, "maximum access . . . and recreational opportunities shall be provided for all the

7   people consistent with public safety needs." (Pub. Resources Code, § 30210.) Moreover, while it

8   is disregarded when it comes to non-locals, the land use policies for the City of Palos Verdes

9   Estates seek to preserve the public's enjoyment of the shoreline and bluff top. Further, amongst

10  many local laws not enforced when it comes to the Lunada Bay Boys, the City's Municipal Code

11  prohibits anyone from blocking or impeding access to the beach. Yet, for nearly 40 years the

12  Lunada Bay Boys have used violence, threats, and acts of intimidation to obstruct access to the

13  beaches of Palos Verdes Estates with complete impunity from the City and its police.[1]

14      This state court lawsuit is limited to a Coastal Act claim. The Coastal Act recognizes that

15  the coast is a distinct and valuable resource of interest to all the people. It was enacted to protect

16  and enhance California's natural and scenic coastal resources. The Coastal Act requires that "any

17  person . . . wishing to perform or undertake any development in the coastal zone . . . shall obtain a

18  coastal development permit." The Lunada Bay Boys, the Individual Defendants, and the City

19  failed to obtain a permit. Instead, the Lunada Bay Boys and various others have built and

20  maintained structures on City property in the coastal zone without obtaining coastal development

21  permits. Further, the Coastal Act is interpreted broadly where municipal policies and inaction and

22  threats by individuals may be interpreted as illegal "development" under the Act. Finally, the

23

24  ─────────────────────

[1] Examples of local laws not enforced when it comes to the Lunada Bay Boys include illegal
25  construction on City property, drinking in public, illegal campfires, etc. At least one member of
the PVE City Council, James F. Goodhart, is not bothered if the Lunada Bay Boys drink beer on
26  the beach. (*See*, Garret Therolf, Los Angeles Times, Surfer gang harassment allegations dismissed
by Palos Verdes officals, records show) http://www.latimes.com/local/california/la-me-surf-gang-
27  20160509-story.html

28  (footnote continued)

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

12577638.2

1  Coastal Act provides for citizen suits: under sections 30111, 30803, 30804, and 30805 of the

2  Public Resources Code; citizens can bring legal action for declaratory relief, injunctive relief, and

3  civil fines and penalties to address violations of the Coastal Act[2] -- which are in addition to any

4  other remedies available at law. This is such a lawsuit.

5  ## SUMMARY OF RELATED FEDERAL LITIGATION

6  On March 29, 2016, Plaintiffs filed a class action lawsuit in the United States District

7  Court, Central District of California seeking to represent a class of at least several thousand

8  members who reside outside the City and who desire "lawful, safe, and secure access to Lunada

9  Bay to engage in recreational activities." *Spencer v. Lunada Bay Boys*, United States District

10 Court for the Central District of California Case No. CV 16-02129 SJO (RAOx) (the "Federal

11 Litigation"). In the Federal Litigation, Plaintiffs brought claims against Defendants City of Palos

12 Verdes Estates, Chief of Police Jeff Kepley in his representative capacity, the Lunada Bay Boys

13 and the following individual members of the Lunada Bay Boys: (1) Alan Johnston; (2) Brant

14 Blakeman; (3) Michael Rae Papayans; (4) Angelo Ferrara, (5) N.F. (currently a minor); (6) Sang

15 Lee; (7) Frank Ferrara; and (8) Charlie Ferrara ("Individual Defendants").[3] In the Federal

16 Litigation, Plaintiffs asserted the following causes of action against the City, Chief Kepley, the

17 Lunada Bay Boys, and the Individual Defendants: (a) violation of the Bane Act, California Civil

18 Code § 52.1(b), against Lunada Bay Boys and Individual Defendants ("Bane Act Claim");

19 (b) public nuisance pursuant to California Civil Code §§ 3479 and 3480 against Lunada Bay Boys

20 and Individual Defendants ("Nuisance Claim"); (c) violation of the Equal Protection Clause of the

21

22  _____

23  [2] Public Resources Code section 30803 provides in relevant part: "[a]ny person may maintain an action for declaratory and equitable relief to restrain any violation of this division, of a cease and desist order issued pursuant to Section 30809 or 30810, or of a restoration order issued pursuant to

24  Section 30811." (Pub. Resources Code, § 30803(a).) Section 30803 embodies the equitable enforcement tool which *members of the public* may use against landowners or other persons who

25  fail to obtain a permit before developing within the coastal zone or who obtain a permit but violate

26  the permit's conditions. *See, California Coastal Comm. v. Tahmassebi* (1998) 69 Cal.App.4th 255, 259.

27  [3] Defendants David Melo and Mark Griep have not yet been added as named defendants in the

28  Federal Litigation, but Plaintiffs intend to do so.

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

1   Fourteen Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983")

2   against the City and Chief Kepley (together, "City Defendants") ("Equal Protection Claim");

3   (d) violation of the Privileges and Immunities Clause of Article IV of the United States

4   Constitution pursuant to § 1983 against City Defendants ("P & I Claim"); (e) violation of various

5   provisions of the California Coastal Act against all defendants ("Coastal Act Claim"); (f) assault

6   against Lunada Bay Boys and Individual Defendants ("Assault Claim"); (g) battery against Lunada

7   Bay Boys and Individual Defendants ("Battery Claim"); and (h) negligence against Lunada Bay

8   Boys and Individual Defendants ("Negligence Claim").

9          On June 3, 2016, in the Federal Litigation, City Defendants filed a Motion to Dismiss

10  Complaint ("City Motion"), asking the Court to dismiss the three causes of action brought against

11  them.  On July 11, 2016, the Court denied the City Defendants' motion as to Plaintiffs' Equal

12  Protection Claim.  In denying the City Motion as to the Equal Protection Claim, the Court stated

13  "Plaintiffs allege that members of the LBB [Lunada Bay Boys] are dedicated to keeping

14  nonresidents away from Lunada Bay, and that the City tolerates this behavior with the like-minded

15  intent 'to keep [the City] for locals only.'"  The Court also noted that Lunada Bay Boys is not

16  unfamiliar to the City's Police Department, but "[f]or many decades" complaints made by victims

17  of LBB [Lunada Bay Boys] have gone unanswered.  The Court granted the City Motion with

18  respect to the P & I Claim.  Based on *Burford v. Sun Oil Company,* the Court declined

19  supplemental jurisdiction as to the City and abstained from hearing the Coastal Act Claim stating

20  they raise complex or controversial matters of State law.  *Burford v. Sun Oil Company,* 319 U.S.

21  315 (1943); 28 U.S.C. § 1367.

22          On June 16, 2016, the Individual Defendants started filing their own Motions to Dismiss.

23  Although Individual Defendants had brought several independent motions to dismiss, the

24  arguments presented in each motion were nearly identical.  On July 22, 2016, the Court denied the

25  Individual Defendants' motions in their entirety.  "The Court also concludes that it would be fair to

26  exercise supplemental jurisdiction over Plaintiffs' state law claims, for Plaintiffs allegations center

27  on localism practiced by Individual Defendants and, at the very least, tolerated by City

28  Defendants."

12577638.2

-5-

1    Because the federal court declined to exercise supplemental jurisdiction and abstained

2  from hearing Plaintiffs' Coastal Act Claims against the City Defendants on the merits in the

3  Federal Litigation, Plaintiffs bring this state court lawsuit as class action against the Defendants on

4  the Coastal Act Claims alone.  Further, in this state court lawsuit Plaintiffs add David Melo, and

5  Mark Griep as Individual Defendants who are members of the Lunada Bay Boys.[4]

6                                    **THE PARTIES**

7    Plaintiffs.

8    1.    Plaintiff Cory Spencer is a 45-year old resident of Norco, California, an El Segundo

9  police officer, experienced surfer, and avid beachgoer.  On behalf of himself and on behalf of a

10  class of visiting beachgoers to the City of Palos Verdes Estates, Spencer alleges that he has been

11  unlawfully excluded from recreational opportunities at Palos Verdes Estates parks, beaches, and

12  access to the ocean.

13    2.    Plaintiff Diana Milena Reed is a 29-year old resident of Malibu, California, a

14  filmmaker, photographer, aspiring big wave surfer, and avid beachgoer.  She surfs and trains

15  extensively with the goal of becoming a competitive big wave surfer.  On behalf of herself and a

16  class of visiting beachgoers to the City of Palos Verdes Estates, Reed alleges that she has been

17  unlawfully excluded from recreational opportunities at Palos Verdes Estates parks, beaches, and

18  access to the ocean.

19    3.    Plaintiff Coastal Protection Rangers, is dedicated to enforcing the California

20  Coastal Act and protecting California's beaches and ensuring that they are safe and accessible to

21  all visitors.  The Coastal Protection Rangers alleges that non-resident, non-local visiting

22  beachgoers to Palos Verdes Estates have been unlawfully excluded from recreational opportunities

23  at Palos Verdes Estates parks, beaches, and access to the ocean in violation of Cal. Const., art. X,

24  _____

25  [4] Plaintiffs intend to seek clarification from the federal court with respect to the status of the
    Coastal Act claims against the Individual Defendants at the Initial Scheduling Conference set for
26  August 29, 2016.  Plaintiffs understand that the Coastal Act claims against the Individual
    Defendants and the Lunada Bay Boys might still remain in federal court.  If Plaintiffs'
27  understanding is correct, they will amend this complaint to reflect that the only state-court Coastal
    Act defendants are the City Defendants.
28

12577638.2

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

1  § 4, the Coastal Act and other laws. Plaintiff Coastal Protection Rangers also alleges that

2  Defendant LUNADA BAY BOYS, with the okay of Defendant PALOS VERDES ESTATES

3  which owns the beach-park area, knowingly built and maintains several unpermitted masonry-

4  rock-and-wood fort and seating areas ("Rock Fort") and access trails and other structures in

5  violation of the California Coastal Act. Further, also in violation of the California Constitution

6  and the Coastal Act, the Coastal Protection Rangers allege other actions of the LUNADA BAY

7  BOYS, PALOS VERDES ESTATE, and the Individual Defendants illegally obstruct the Plaintiffs

8  and other beachgoers from using Lunada Bay.

9      Defendants

10     4.    As alleged in the Federal Litigation, Defendant LUNADA BAY BOYS was, and at

11  all times mentioned herein is, an unincorporated association within the meaning of Code of Civil

12  Procedure § 369.5 acting by and through its respective members and associates. Defendant

13  LUNADA BAY BOYS acts by and through its respective members, individually, collectively, and

14  in concert, and conducts its affairs and activities in the City of Palos Verdes Estates, County of

15  Los Angeles, State of California. Defendant LUNADA BAY BOYS claims gang territory, or

16  "turf" within the City of Palos Verdes Estates' Lunada Bay neighborhood (Lunada Bay) depicted

17  in Exhibit 1, which is attached and incorporated herein.

18     5.    As alleged in the Federal Litigation, Defendant LUNADA BAY BOYS is, and at

19  all times mentioned herein was, a criminal street gang as defined in California Penal Code

20  § 186.22, subdivision (f), inasmuch as it is a group of three or more individuals with a common

21  name or common symbol and whose members, individually or collectively, engage in or have

22  engaged in a pattern of criminal gang activity, and has as one of its primary activities the

23  commission of enumerated "predicate crimes," including but not limited to assault, battery,

24  vandalism, intimidation, harassment, extortion, and, upon information and belief, the sale and use

25  of illegal controlled substances. Upon information and belief, Defendant LUNADA BAY BOYS

26  uses the unpermitted Rock Fort to conduct criminal activity. Defendant LUNADA BAY BOYS'

27  and the Individual Defendants' activities also violate the California Coastal Act.

28

12577638.2

6.  As alleged in the Federal Litigation, Defendant LUNADA BAY BOYS is, and at all times mentioned herein is, also an unincorporated association within the meaning of Corporations Code § 18035, subdivision (a), inasmuch as it consists of two or more individuals joined by mutual consent for some common lawful purposes, such as attending social gatherings, and recreational events.  However, notwithstanding any common lawful purpose, Defendant LUNADA BAY BOYS is a criminal gang whose members are primarily engaged in criminal and nuisance activities which constitute Bane Act violations and a public nuisance.

7.  Defendant LUNADA BAY BOYS is comprised of members including, but not limited to David Melo, Mark Griep, Sang Lee, Brant Blakeman, Angelo Ferrara, Frank Ferrara, N.F. (currently a minor), Charlie Ferrara, Michael Rae Papayans, Alan Johnston aka Jalian Johnston (collectively hereinafter known as "Designated Lunada Bay Boys Gang Members" or "the Individual Defendants"), each of whom has been within the Lunada Bay and is responsible in some manner for the Coastal Act violations described in this Complaint.

8.  Defendant PALOS VERDES ESTATES is a general law city bound by the State's general law.  By its policies, customs, and practices, and in deliberate indifference to Plaintiffs' rights under state and federal law, PALOS VERDES ESTATES has excluded Plaintiffs, and persons like them, from their right to recreational opportunities at Palos Verdes Estates' parks, beaches, and access to the ocean.

9.  Defendant Jeff Kepley, named in his representative capacity, serves as the Chief of Police of Defendant PALOS VERDES ESTATES.  Defendant Kepley has failed to enforce the State's laws when it comes to crimes committed by Defendant LUNADA BAY BOYS against visiting beachgoers like Plaintiffs.

10.  Defendants Does 1 through 100 are individuals, the true identities of whom are presently unknown to Plaintiffs, who therefore sue these defendants by such fictitious names.  The Plaintiffs will amend this complaint to allege their true names when such information is ascertained.  The Plaintiffs are informed and believe that each of the defendants designated as Does 1 through 100, inclusive, as well as others to be named, is a member of Defendant

12577638.2

-8-

1  LUNADA BAY BOYS and is responsible in some manner for the Coastal Act violations alleged
2  herein.

3  **JURISDICTION AND VENUE**

4       11.    In the Federal Litigation, the court has declined supplemental jurisdiction over the
5  Coastal Act claims against the City Defendants.  Plaintiffs are seeking clarification from the
6  federal court on its intent with respect to the Coastal Act claim against the LUNADA BAY BOYS
7  and the Individual Defendants.

8       12.    The Superior Court for the State of California has jurisdiction over this action
9  under the California Constitution, Article VI, Section 10, which grants the Superior Courts
10  "original jurisdiction in all cases except those given by statute to other trial courts."

11       13.    Plaintiffs bring this lawsuit under Public Resources Code section 30803(a),  which
12  provides that "any person may maintain an action for declaratory and equitable relief to  restrain
13  any violation of this division."  As described below and in Paragraphs 1, 2, and 3, Plaintiffs are
14  persons under the Coastal Act.

15       14.    Venue is proper because all occurrences alleged in the Complaint occurred in this
16  county.  Further, because this case is a class action involving numerous parties and claims, it
17  should be designated a Complex Case and should be managed in the Central Civil West
18  Courthouse.

19  **STATEMENT OF FACTS**

20       15.    Incorporated in 1939, Defendant PALOS VERDES ESTATES is a city of
21  approximately 13,500 residents.  Its median household income is more than $170,000.  The City's
22  natural beauty is a unique respite from nearby Long Beach, Los Angeles, and the other Los
23  Angeles industrialized and flatland communities.  Protected by more than 40 police personnel,[5]
24  residents enjoy the rugged ocean-cliff views, parklands, pathways, magnificent views of the Los
25
26  _____
27  [5]  In 2014, Palos Verdes Estates employed 3 different chiefs, 4 sergeants, 2 captains, 3 corporals,
      12 officers, 9 reserve officers, 1 traffic control officer, 9 service officers, 1 police intern, and 1
28  police cadet.

12577638.2

-9-

1   Angeles Basin and Pacific Ocean, low density, rural character, and preserved open space. The

2   beaches, shoreline, and surfing areas along the Palos Verdes Estates coastline are open to the

3   public. But the police department of PALOS VERDES ESTATES has a long history of deliberate

4   indifference in not investigating or otherwise policing acts of violence and vandalism against

5   visiting beachgoers. For many decades, victims of the LUNADA BAY BOYS have complained

6   to Defendant PALOS VERDES ESTATES police and city officials. The response is always the

7   same: City leaders acknowledge the problem, promise to do something, and then do little or

8   nothing. DEFENDANT PALOS VERDES ESTATES' complicity, custom, policy, and deliberate

9   indifference amounts to illegal municipal exclusivity that is a Coastal Act violation. Defendant

10   PALOS VERDES ESTATES' police force tolerates the unlawful activity of the LUNADA BAY

11   BOYS against nonlocal beachgoers because the 40-member police force is designed to keep

12   PALOS VERDES ESTATES for locals only. Along with the DEFENDANT LUNADA BAY

13   BOYS and the Individual Defendants, Defendant PALOS VERDES ESTATES considers non-

14   residents "trolls," "suspicious persons," "graffiti artists," or "riffraff." They do not want to

15   welcome "outsiders" to the City's beaches, and they enforce the laws accordingly. Moreover,

16   because of Defendant PALOS VERDES ESTATES' complicit approval and deliberate

17   indifference to enforcing state, federal, and local laws in crimes committed against non-residents

18   and other visitors, in violation of the Coastal Act, Plaintiffs and similarly situated beachgoers

19   suffer exclusion from the city's public parks, beaches, and waters, and do not enjoy equal access to

20   the city's public parks, beaches, waters, and surf in the area.

21          16.     Lunada Bay is a rugged bay located on the northwest tip of the Palos Verdes

22   Peninsula in the City of Palos Verdes Estates – between Resort Point on the south, and Palos

23   Verdes Point on the north. It has been described as "a gleaming stretch of polished pewter

24   spotlighted by large areas of sparkling silver," its beach stones tumbled smooth by the sea nestled

25   against its 100-foot cliffs.[6] The beach, surrounding bluffs, and access points are public and owned

26

27   [6] *See,* Michael Goodman, Los Angeles Magazine, Palos Verdes Surf Wars (June 1996, Vol. 41,

28   No. 6). See also, Exhibits 1-4.

12577638.2

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

1    by Defendant PALOS VERDES ESTATES.  By law, Lunada Bay is open to all.  In reality, in
2    violation of the Coastal Act, it is open to few.

3          17.     Beyond its beauty, Lunada Bay is Southern California's premier big-wave break.
4    The Lunada Bay local surfers include local government employees (such as firemen and teachers),
5    airline pilots, medical doctors, lawyers, and other people in the public trust.  It is also the State's,
6    and perhaps the surfing world's, best known area for localism.[7]  Localism is a territorial practice
7    whereby resident surfers attempt to exclude nonresident beachgoers and surfers through threats,
8    intimidation, and violence.[8]  "Lunada Bay in Southern California is generally recognized as the
9    surfing world's most localized break."[9]  In essence, severe localism initiated by Defendant
10   LUNADA BAY BOYS and the Individual Defendants, combined with PALOS VERDES
11   ESTATES' historic failure in investigating and prosecuting crimes against visiting beachgoers, in
12   violation of the Coastal Act, has created a private beach on public property that denies Plaintiffs
13   and the members of the class their state and federal constitutional rights.

14         18.     On the north side of Lunada Bay nearest Palos Verdes Point, the LUNADA BAY
15   BOYS, its members, and the Individual Defendants have built and maintain an illegal rock-
16   masonry-and-wood fort structure at the base of the 100-foot bluff.[10]  LUNADA BAY BOYS and
17   the Individual Defendants congregate here to recreate, drink beer, eat, store food, and both plan
18   and conduct illegal activity.  In the middle of Lunada Bay, LUNADA BAY BOYS and the
19   Individual Defendants have built and maintain a steep trail down the 100-foot bluff called the Goat
20   Trail.[11]  Next, Defendant LUNADA BAY BOYS and Individual Defendants have built a campfire

21

22

23   [7] *See,* Warshaw, Matt, The Encyclopedia of Surfing, p. 445 (2003); Warshaw, Matt, The History
24   of Surfing, p. 263 (2010).
25   [8] *See,* Warshaw, Matt, The Encyclopedia of Surfing, p. 340 (2003).
26   [9] *See,* Warshaw, Matt, The Encyclopedia of Surfing, p. 341 (2003).
     [10] *See,* Exhibits 5-8.
27   [11] *See,* Exhibit 9.
28   (footnote continued)

1   ring with seating in the middle of Lunada Bay, near the base of the Goat Trail.[12]  Further,

2   Defendant LUNADA BAY BOYS and Individual Defendants store sea kayaks, crab pots, lobster

3   traps, coolers, and other recreational items near the base of the Goat Trail.[13]  On the south side of

4   Lunada Bay, there is another trail down to Lunada Bay ("South Trail"),[14] and additional sea

5   kayaks and items stored in this area.[15]  DEFENDANT LUNADA BAY BOYS and its members

6   frequently invoke the gang name "Bay Boys," and upon information and belief wear inscribed

7   clothing with the gang name "Bay Boys"[16] as they commit their criminal and nuisance activities.

8   Upon information and belief, the "Bay Boys" generally only surf on boards built by its members,

9   or locals that surf their spot, primarily Joe Bark, Zen Del Rio, Dan Dreiling,[17] or Individual

10   Defendant Angelo Ferrara surfboards.[18]  Further, upon information and belief, the "Bay Boys"

11   generally only wear black wetsuits with hoods.[19]  Also upon information and belief, by custom,

12   the "Bay Boys" insist that their members change into wetsuits and beach attire at ocean level

13   rather than the top of the cliff.  Upon information and belief, certain Individual Defendants of the

14   gang sell market and use illegal controlled substances from the Lunada Bay bluffs and the Rock

15

16

_____

17   [12] *See,* Exhibit 10.

18   [13] *See,* Exhibits 11, 12, 13 & 14.

    [14] *See,* Exhibit 15.
19
    [15] *See,* Exhibit 16.
20
    [16] Upon information and belief, the Bay Boys have also used the names "Lunada Pirates,"
21   "Lunada Bay Surf Club," and the trident symbol to mark their claim to Lunada Bay.

22   [17] Plaintiffs are informed and believe that while Dan "DJ" Dreiling is not a Bay Boy, he was
     allowed to surf Lunada Bay because his father, Dan Dreiling Sr., was a 31-year member of the
23   Palos Verdes Estates Police Department, and a recent police chief.  The younger Dreiling ("DJ")
     made kneeboards for Individual Defendant Brant Blakeman.

24   [18] Outsiders can be spotted by the type of boards they ride.

25   [19] As a general rule, wetsuit hoods are not needed by experienced surfers in Southern California.
     Palos Verdes ocean temperatures peak in the range 63 to 70°F in the summer and are at their
26   minimum in early February in the range 55 to 61°F.  Here, the hoods are used to help conceal their
     identity when committing acts of violence in the water.  In contrast, experienced surfers in
27   Northern California, north of Santa Cruz, are more likely to use wetsuit hoods for legitimate
     purposes during winter and spring months.
28

12577638.2

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

1   Fort.  Upon information and belief, members of the gang use the gang's name to confront,

2   threaten, intimidate, and harass non-local beachgoers (surfers, boaters, sunbathers, fisherman,

3   picnickers, kneeboarders, stand-up paddle boarders, boogie boarders, bodysurfers, windsurfers,

4   kite surfers, kayakers, dog walkers, walkers, hikers, beachcombers, photographers, sightseers,

5   etc.), and other individuals who work in, visit and pass through Palos Verdes Estates and Lunada

6   Bay.  On top of the 100-foot bluff, LUNADA BAY BOYS, its members, and the Individual

7   Defendants intimidate visiting beachgoers with threats and taunts, by taking photos and video of

8   beachgoers, and by congregating near the entrances to both the Goat Trail and South Trail.  Upon

9   information and belief, when out-of-town visitors arrive by boat to avoid the bluff- side attacks,

10   the LUNADA BAY BOYS impede boat traffic with threats and by circling the boats on

11   surfboards, kneeboards, boogey boards, kayaks, rowboats, and other manual powered vessels.

12   These vessels are operated in a dangerous and negligent manner.  The LUNADA BAY BOYS

13   enforce localism by targeting out-of-town beachgoers to prevent them from enjoying the local

14   waters.  Upon information and belief, their assaults (throwing rocks, running people over with

15   surfboards, shoves, slaps, punches, etc.), thefts (wallets, wetsuits, and surfboards), vandalism to

16   vehicles and personal property, and threats are for the purpose of establishing a curtain of

17   intimidation to drive out-of-area beachgoers, which they label riffraff,[20] away from the coastal

18   area of Lunada Bay.  Indeed, upon information and belief, since the early 1970s, visiting surfers

19   and other beachgoers have had rocks thrown at them while walking down the 100-foot cliff-side

20   Lunada trails, have been shot by pellet guns, have returned to find their car windows waxed with

21   the word "kook" or windows broken, their tires slashed or air let out, barefoot trails covered in

22   glass, property stolen (wallets, wetsuits, surfboards), and beach towels, backpacks, and bags

23   dumped in the water.  In the water, the LUNADA BAY BOYS dangerously disregard surfing rules

24

25

26

27   [20]  Upon information and belief, in describing non-locals, Defendants have also used the words "trolls," "suspicious persons," "graffiti artists," and "kooks."

28   (footnote continued)

12577638.2

1  when it comes to visitors, threaten visitors with violence,[21] run over visitors with their surfboards,

2  push visitors, turn their dogs lose on visitors, hit visitors, slap visitors, harass visitors by circling

3  them, and hold visitors underwater.  Upon information and belief, the LUNADA BAY BOYS

4  have posted a discrete municipal-style sign at the top of the bluff that stated "Unlocals Will Be

5  Hassled."  Upon information and belief, members of the LUNADA BAY BOYS coordinate their

6  attacks on visitors by sharing photographs and video that they take of visitors, monitoring police

7  and fire radios to learn if the police may start to enforce the laws or visit the bluff, communicating

8  via walkie talkies, text message group chats, email, mobile phones, and other electronic devices.[22]

9  **A PARTIAL DOCUMENTATION OF VIOLENT ALTERCATIONS, THREATS AND**

10  **INTIMIDATION FOR THE PURPOSE OF PREVENTING BEACH ACCESS**

11  19.   On January 22, 1995 a Brazilian surfer was accosted by several LUNADA BAY

12  BOYS.  Plaintiffs are informed and believe that one of the LUNADA BAY BOYS was David

13  Hilton.  The Brazilian surfer reported to the police that suspect #1 told him angrily, "If you go out,

14  no more car, no more tires, no more glass, your car will be trash."  He said that the suspect #1 was

15  much taller and bigger than he was and he was afraid of the suspect.  He said he backed away

16  from suspect #1 and suspect #2 walked up to him and deliberately knocked his surfboard into his

17  [surfboard].  He said the suspect #2 told him, "If you cross, I will fight you.  I will break your

18  face."  He said he was afraid that suspect would hurt him and backed away from him.  He said the

19  suspect #3 yelled at him, "Fuck Brazil."  The Brazilian surfer told the police that approximately 15

20  other LUNADA BAY BOYS were standing around them.  He said he was fearful that he and his

21  friends were going to be hurt, went back to their car, drove to a local gas station and called the

22  police.[23]

23

24

___

25  [21] *See, e.g.,* police reports attached as Exhibits 17-20, describing nonresidents' complaints of
26  assault, vandalism, and criminal threats by the LUNADA BAY BOYS.

[22] *See,* Warshaw, Matt, The Encyclopedia of Surfing (2003); Surfer Magazines Guide to Southern
27  California Surf Spots, pp. 92-96 (2006).

28  [23] *See,* Exhibit 17.

12577638.2

20.     Another well-documented incident at Lunada Bay occurred in in March 1995 when a Channel 13 TV news crew filmed LUNADA BAY BOY Peter McCullom assault Geoff Hagins, his nephew and several others including Mike Bernard, a Viet Nam combat veteran, who was there watching his son surf. Plaintiffs are informed and believe that among the LUNADA BAY BOYS present with Bay Boy McCollum was Kelly Logan. Bay Boy McCollum confronted the surfers screaming: "Don't surf on the hill." He was pounding his fists together very close to Mr. Hagins' face. Bay Boy McCullom then said "this is what will happen to you if I see you again." He continued yelling numerous things including, "Come back and you will be killed." In an offensive attempt to defend his actions, Bay Boy McCollum boasted to the *Los Angeles Times*: "We've protected this beach for years. This is why: so we can have driftwood on the beach rather than Kentucky Fried Chicken boxes. If this place was ever opened up, it would be packed with lowriders . . ., the rocks would be marked with graffiti and this place would not be safe at night.[24]

21.     On or about 2006, an aspiring professional body boarder, attempted to surf "Wally's" a right hand point break located in the cove just south of Lunada Bay. As he walked down the trail, the body boarder noticed several men sitting in another unpermitted rock hut built at the base of the trail. Plaintiffs are informed and believe and thereon allege that these men were members of the LUNADA BAY BOYS. One of the men said to the body boarder "Where the fuck do you think you are going?" the body boarder replied, "I am going to surf that spot," and changed into his wetsuit. Then, a man from the hut came and took a swing at him. The body boarder blocked the punch and threw the man to the ground. At that point, in typical LUNADA BAY BOYS style, the other men attacked the body boarder, who grabbed his board and escaped into the safety of water. The men from the shore yelled "Boogie go home." The body boarder stayed in the water until dark.

22.     On January 20, 2014, Christopher Taloa organized a public surfing event at Lunada Bay for Martin Luther King, Jr. Day. Taloa asked for "loving individuals to play in loving waters

---

[24] *See,* Exhibit 18.

12577638.2

1  of aloha." His mission was to peacefully unlock Lunada Bay for beachgoers everywhere. Writer
2  Rory Parker, also a surfer, helped publicize the Martin Luther King, Jr. Day event on surfing
3  websites. Upon information and belief, almost immediately, Parker received threats of violence,
4  including a death threat, against him. On the day of the event, when Taloa entered the ocean, he
5  was surrounded by LUNADA BAY BOYS. Members of the LUNADA BAY BOYS kicked
6  Taloa, splashed water into his face, and taunted and harassed him. And while he does not yet
7  know the names of all of the individual members present that day, Taloa believes that Individual
8  Defendants Mark Griep and Jalian Johnston were present. Moreover, in an extremely offensive
9  gesture, but consistent with the views expressed by Peter McCullom years earlier, LUNADA BAY
10 BOY Anthony Beukema had his face painted in black makeup and wore a black Afro wig.
11 Beukema stated to Taloa, "You don't pay enough taxes to be here."

12       23.     On March 6, 2014, Christopher Taloa returned to Lunada Bay to surf and was
13 confronted by three LUNADA BAY BOYS including Individual Defendant Michael Rae
14 Papayans who blocked Taloa's access and told him that he could not surf there. Taloa responded,
15 "You can do whatever you want, it doesn't make a difference. I am going to surf out here."
16 Papayans went into a rant yelling among other things that he would "fuck him up right here."
17 Taloa called the police.

18       24.     On or around November 15, 2014, attorney Sef Krell arrived at Lunada Bay and
19 proceeded down the Goat Trail with his surfboard, back pack, wetsuit and gear. On his way down
20 the trail, he came across two LUNADA BAY BOYS. These men stood in Krell's path of travel, in
21 violation of the Coastal Act, Palos Verdes Estates Municipal Code and other laws, and started to
22 yell profanities at him. They told him, "don't surf here" and "bad things will happen if you do."
23 Krell passed the two individuals and continued down the trail but when he was in the narrow part
24 of the path, most exposed, the two individuals began throwing dirt clods and rocks at him. The
25 rocks were roughly half the size of his palm.

26       25.     At the base of the cliff, Krell was confronted by a third individual. The man had
27 blond hair, had fairly white to reddish complexion, blue eyes, was wearing a straw hat, and was
28 probably 5'7 to 5'10, and weighed between 145 to 160 pounds. This LUNADA BAY BOY told

12577638.2
-16-

1    him "no one wants you surfing here." Krell tried to make conversation with him in a polite

2    manner, but the man continued to hassle him repeating "fuck you, fuck you, get out here." Krell

3    changed into his wetsuit and paddled towards the waves, leaving his personal items in his

4    backpack. From the water, he saw his personal gear being destroyed or tossed into the ocean by

5    the LUNADA BAY BOY that was harassing him on the shoreline; this included a pair of Nike

6    shoes valued at $150, a cell phone - IPhone 4 valued at $350, a classic Seiko divers watch valued

7    at $800, which he had owned for 25 years, as well as Ray-Ban sunglasses valued at $150. Krell

8    filed a complaint with the Palos Verdes Estates Police Department and was given DR

9    No. 2014-11980.[25] Not having heard from the police, in March of 2015, he inquired regarding the

10   status of the investigation. He was told that Detective Velda was handling his complaint and that

11   it had been closed.

12        26.    On December 30, 2015, the *Los Angeles Times* published an article called "Palos

13   Verdes police chief promises to take on the 'Bay Boys' of Lunada" which describes what happened

14   to Krell. The article states: "Krell said he will wait and see if the police are serious — but he has

15   his doubts. He filed a complaint last year and his case remains unsolved, in part, he says, because

16   detectives didn't follow up adequately." Once the article in the *Los Angeles Times* was published,

17   more than a year after the incident, Krell was contacted by Sergeant Barber to view a series of

18   photographs of maybe 12 to 18 people; Krell was not able to identify any of the people that were

19   involved in the incident.

20        27.    On or about May 2015, another reporter, Rory Carroll, and his friend Noah Smith

21   went to Lunada Bay with a hidden video to document their experience. The video shows what

22   happened to these to individuals as they approached the beach on this particular day. One of the

23   LUNADA BAY BOYS, who Plaintiffs contend on information and belief is Defendant Sang Lee,

24   made the following comments to Carroll and Smith:[26]

25

26   _____

[25] *See,* Exhibit 19.

27   [26] The video can be viewed at http://www.theinertia.com/surf/palos-verdespolice-respond-to-

28   lunada-bay-localism/.

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

i.   "You shouldn't fucking come down here.  Stay away from this area, this bay right here."

ii.  "The reason there's a lot of space is because we keep it like that.  We fucking hassle people."

iii. "We'll burn you every single wave."

iv.  "There's still fights down here.  People will just fucking duke it out, fucking work your car and get in fights."

28.   After receiving the harassment and threats from the LUNADA BAY BOYS, Rory Carroll and his friend reported the incident to the City of Palos Verdes Police Department.[27]  In response to their report, the following comment was made by a Defendant PALOS VERDES ESTATE officer, transcribed in the video as follows:[28]

> Officer: "We know all of them.  They are infamous around here. They are pretty much grown men in little men's mindset.  They don't like anyone that's not one of the Bay Boys, surfing down there.  It literally is like a game with kids on a school yard to them and they don't want you playing on their swing set, but, you know, it is what it is.  If you feel uncomfortable, you know, then don't do it."[29]

29.   Plaintiff Spencer has worked as a police officer for the City of Los Angeles Police Department in the South Central Division.  Presently, he works as a police officer for the City of El Segundo.  For more than 30 years, he has wanted to surf the waves off the coast of the City of Palos Verdes Estates – specifically Lunada Bay.  But Spencer – who has worked gang infested neighborhoods in the toughest parts of Los Angeles – had avoided Palos Verdes Estates' Lunada Bay because of fear, intimidation, vandalism, and Lunada Bay's well-known reputation for violence and beach localism.  But in January 2016, Spencer worked up his courage to surf Lunada Bay during a large winter swell.  To surf Lunada Bay, even though Palos Verdes Estates is an

---

[27] The video can be viewed at http://www.theinertia.com/surf/palos-verdespolice-respond-to-lunada-bay-localism/.

[28] The video can be viewed at http://www.theinertia.com/surf/palos-verdespolice-respond-to-lunada-bay-localism/.

[29] The video can be viewed at http://www.theinertia.com/surf/palos-verdespolice-respond-to-lunada-bay-localism/.

12577638.2

1  exclusive community with more than 40 police personnel, Spencer and other surfers had to pay a

2  security guard $100 to watch their vehicles to protect the vehicles from vandalism while they

3  surfed. Upon arrival, members of the Defendant LUNADA BAY BOYS told him "you can't surf

4  here kook." Once in the water, the harassment began. Defendant Brant Blakeman sat right next to

5  Spencer and his friend shadowing their movements in the water. On his second wave, a member

6  of Defendant LUNADA BAY BOYS intentionally ran Spencer over with his surfboard and sliced

7  open Spencer's hand.

8      30.    In February, Spencer returned a second time with Jordan Wright and others to

9  observe and watch the outsiders' cars parked on the bluff above Lunada Bay. Spencer observed

10 Defendant LUNADA BAY BOYS threaten and taunt surfers. Spencer has complained to PALOS

11 VERDES ESTATES police officers. Later, on March 4, 2016, Spencer wrote to Defendant Chief

12 of Police Kepley and encouraged an undercover investigation. Upon information and belief,

13 Defendant Chief of Police Kepley did not take the complaint seriously and took no action. He

14 said that they have considered various enforcement strategies. And, he said: "I have been down

15 the patio [Rock Fort] on several occasions and talked with various surfers in an effort to educate

16 them on the position we are all in, and what needs to change in terms of acceptable behavior on

17 their part." That's it. Defendants' conduct has caused Spencer pain and suffering, loss of sleep,

18 emotional distress, and mental anguish.

19     31.    On January 29, 2016, Plaintiff Diana Milena Reed and her friend, Jordan Wright,

20 went to surf Lunada Bay. Large surf was forecasted for that day, and they were excited to surf the

21 big waves. But, when they parked their car at the 2300 block of Paseo Del Mar, a man started

22 shouting, "Get the fuck out of here." "You shouldn't be surfing here, kook." "Fucking assholes."

23 "Leave."

24     32.    After some time, Reed and Wright put on their wetsuits and started down the trail.

25 After Reed and Wright made it to the bottom of the trail and were about halfway to the Rock Fort,

26 they were confronted by a member of the LUNADA BAY BOYS, Defendant David Melo, who

27 walked up to them with his hands in the air and started screaming at them. The screaming by

28

12577638.2

-19-

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, CIVIL FINES, AND JURY DEMAND

1  defendant Melo was so loud that a peace officer who was standing on top of the cliff above could

2  hear the altercation despite the noise of the crashing waves.[30] Melo screamed:

3          "Fucking Assholes, you kooks."

4          "Get out of here.  This is our surf break, don't surf here."

5          "You're going to regret surfing here."

6          "Its dangerous out here."

7          "If you stay here you're going to get hurt."

8  Reed was extremely frightened and afraid Melo would assault them.  Never in her life had she

9  been screamed and yelled at in such a manner.  A group of men were watching, along with police

10  in the distance.  PALOS VERDES ESTATES police witnessed the harassment, but rather than

11  take action, they approached Reed after the incident asked whether Reed and Wright would like to

12  make a "citizen's arrest."  Reed declined to make the arrest and instead chose to file a report,

13  having been assured by the police that the case would be handled by the District Attorney with the

14  same result.  Reed was surprised that the police did not arrest the man, especially because they had

15  witnessed the incident.

16        33.     On or about February 5, 2016, Reed and Wright returned to Lunada Bay with a

17  photographer and writer from The Los Angeles Times.  There were no other surfers at Lunada Bay

18  that day.  Subsequently, the *Los Angeles Times* printed a newspaper story on February 13, 2016,

19  that contained several photographs of Reed, including one that showed her in "the locals hangout

20  fort" and stated that she was an "outsider" who had filed a police report for harassment against the

21  LUNADA BAY BOYS.  The newspaper reported that LUNADA BAY BOYS "bombard outsiders

22  with dirt clods, slash their car tires, and assault them in the water — sometimes coordinating the

23  attacks with walkie talkies...Surfers who say they have been victimized over the years have

24  accused local authorities of complacency, cowardice, and even complicity."

25

26

27  _____

28  [30] *See*, Exhibit 20.

-20-

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

1      34.   Reed and Wright returned to Lunada Bay on February 13, 2016.  While walking
2  across Lunada Beach to the fort, LUNADA BAY BOYS called her a "bitch," said "fuck you" and
3  "you are a liar" -- in reference to the *Los Angeles Times* article which had been printed that day.
4  Reed was also told to "keep walking."  After arriving at the fort, Reed was approached by a
5  brown-haired man in his late 40s or early 50s.  The man started asking her various questions,
6  including why she was there, what was her motivation, and what was her mission objective.  The
7  man told her that the LUNADA BAY BOYS were mad at her.  Reed told the man that she was
8  simply there to take photos of Wright and to watch him surf and enjoy the beach.  The man
9  eventually left the fort.

10      35.   About two hours later, certain Individual Defendants approached Reed with a case
11  of beer and feigned celebration of the *Los Angeles Times* article.  But these Defendants blamed
12  Reed for unwanted attention the article brought upon the LUNADA BAY BOYS and PALOS
13  VERDES ESTATES.  In an attempt to intimidate Reed, the Individual Defendants, including
14  Brant Blakeman and Jalian Johnston, asked Reed to drink with them.  When she declined,
15  Johnston shook up a can of beer and sprayed Reed and her camera with it, and poured beer on
16  Reed's arm.  They filmed the incident.  Reed asked them to stop filming her.  They told her they
17  thought she was "sexy," and filmed her while they told her she "excited them."  Defendant
18  Johnston then made comments about his penis, stating that it was big enough to "get the job done,"
19  and he rubbed his torso and belly in a sexually-suggestive manner, telling Reed that she made him
20  "excited" and "hard," which made it easier for him to get into his wetsuit.  Defendant Johnston
21  briefly exposed himself to Reed while he was changing into his wetsuit before Reed quickly
22  turned away.  Defendant Charlie Ferrara witnessed the entire event from the roof of the fort.  Reed
23  attempted to contact the police from her cell phone during the incident but was unable to obtain a
24  signal.  Reed had requested a police escort to the beach upon her arrival at Lunada Bay earlier that
25  day because of her previous experiences but the police refused her request.

26      36.   After walking back up the cliff following this incident, Reed was in tears and
27  visibly upset.  Reed saw a police officer sitting inside a patrol car on the side of the road.  The
28  officer was completely unaware of the events occurring below the cliff in the fort and on the

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

12577638.2

1    beach. Reed complained to Defendant PALOS VERDES ESTATES and told the police officer

2    what happened. The police officer proceeded to take Reed's information. After approximately 30

3    minutes, the police officer walked down the cliff with Reed but the LUNADA BAY BOY

4    aggressors were gone. Only Defendant Charlie Ferrara remained, but he refused to cooperate with

5    the police and told them he did not see anything, though he apologized to Reed.

6            37.    PALOS VERDES ESTATES initially attempted to investigate the incident. A

7    police officer identified the man who was videoing her as LUNADA BAY BOY Individual

8    Member and Defendant Brant Blakeman, a local resident who owns a home in Palos Verdes

9    Estates. The PALOS VERDES ESTATES police officer then offered to allow Reed to identify

10   the other men from photos that the police kept on all the members of LUNADA BAY BOYS. But

11   ultimately, PALOS VERDES ESTATES police showed no interest or ability in following up on

12   Reed's complaint. They would not commit to a date to identify the other member of the

13   LUNADA BAY BOYS who poured beer on her, and exposed himself to her, or other Individual

14   Defendants who had harassed her. Indeed, PALOS VERDES ESTATES police detective Venegas

15   said words to the effect, "Why would a woman want to go to that beach and the Rock Fort

16   anyways? There are only rocks down there." When PALOS VERDES ESTATES failed to return

17   Reed's calls to set a time to identify the LUNADA BAY BOY member who poured beer on her

18   and exposed himself to her, as well as identify the other Individual Defendants who had harassed

19   her, she had her lawyer write a letter on March 10, 2016. Defendant PALOS VERDES ESTATES

20   finally agreed to a meeting on March 21, 2016, in which Reed and her lawyer met with Defendant

21   Chief of Police Kepley and Captain Tony Best. Defendant Chief of Police Kepley and Captain

22   Best were friendly and respectful. But it appeared that Chief Kepley and Captain Best knew little

23   about Reed's complaint and the incident; and they claimed that while they had photographs of the

24   LUNADA BAY BOYS members, they would not permit Reed to review their photos so she could

25   identify the man that assaulted her in the Rock Fort, stating only that they would speak to the

26   detective in charge of the investigation. Defendant Kepley said words to the effect that there was

27   "little we can do because we only have 25 full-time POST certified staff," and that PALOS

28   VERDES ESTATES could only afford to send two officers at a time to inspect Lunada Bay.

12577638.2

-22-

1    While cell phones do not work well at the Rock Fort, Defendant Chief of Police Kepley and

2    Captain Best encouraged Reed to carry a cell phone and travel in large groups. Captain Best

3    stated that "there are judges and lawyers that surf out there" – the implication being that made the

4    situation even more difficult to remedy. Reed asked Defendant Chief Kepley: "Is it safe for me to

5    go down there?" Defendant Chief Kepley responded with the following: "I wish it was safe, but

6    it's not. I wouldn't even tell a man to go down there." Defendant Chief Kepley also said words to

7    the effect, "If I could fix this, I would. I view this as a long term problem." The conduct of

8    Defendants has caused Reed pain and suffering, loss of sleep, emotional distress, and mental

9    anguish.

10        38.    With more than 40 police personnel and its own jail, PALOS VERDES ESTATES

11   is aware of the LUNADA BAY BOYS' criminal activity against visiting beachgoers, but in

12   violation of the Coastal Act has a policy, custom, and practice of taking no action when it involves

13   the LUNADA BAY BOYS and the Individual Defendants.

14        39.    Upon information and belief, over the last 40 years, Plaintiffs estimate that several

15   hundred beachgoers have attempted to recreate in and near Lunada Bay, and like Spencer and

16   Reed, all have suffered similar encounters with Defendants. Upon information and belief, these

17   persons have suffered loss of sleep, emotional distress, and mental anguish. Moreover, upon

18   information and belief, many thousands of beachgoers want to visit Lunada Bay to enjoy its

19   beauty and recreational activities but are afraid to do so because of Defendants' conduct.

20        40.    On at least one occasion, Defendant Charlie Ferrara attempted to explain to Reed

21   the LUNADA BAY BOYS' philosophy as taught to him by his father and uncle and by other

22   members of the gang. He told her that many of the locals, especially the younger ones, "take it to

23   the extreme" because "they got hazed by the elder LUNADA BAY BOYS and they want to prove

24   themselves." Defendant Charlie Ferrara also told Reed that many of the LUNADA BAY BOYS

25   have "had to do things that were unthinkable to show that they cared. To show some respect." He

26   compared it to a fraternity stating: "they are going to make you drink piss to see how bad you

27   want to be in this frat." Regarding the treatment of outsiders defendant Charlie Ferrara explained

28   that because of all the media, they had recently become more careful: "Back in the day you could

-23-

1  drink and drive, things were cooler back in the day – you could get in a fight and not deal with the

2  cops; today you say the wrong words and you get sued." Defendant Charlie Ferrara stated,

3  however, "if you come here you, we will make sure that you don't have fun. We will burn[31] you

4  on every wave. We will make sure that you have a bad session. We stick together. We are a

5  pack. We are a family."

6       41.    The next bay over to the south of Lunda Bay has a surf spot known as "Wally's"

7  which is also frequented by some of LUNADA BAY BOYS, although not as often. The steep trail

8  leads to another unpermitted structure built of stone with a campfire ring with and seating.

9                        **COASTAL COMMISSION**

10      42.    By letter dated January 21, 2016,[32] enforcement analyst Jordan Sanchez of the

11  California Coastal Commission wrote Chief Jeff Kepley of the Palos Verdes Police Department

12  that, among other things:

13       Precluding full public use of the coastline at Palos Verdes Estates, including the
         waters of Lunada Bay, whether through physical devices, such as construction of a
14       fence, or nonphysical impediments, such as threatening behavior intended to
         discourage public use of the coastline, represents a change of access to water, and,
15       thus, constitutes development under the Coastal Act and the Palos Verdes Estates
         LPC [Local Coastal Program]. No coastal development permit has been issued to
16       authorize this activity, therefore, it is a violation of the LCP . . . We have also
         received reports of unpermitted structures, including stone forts, constructed on the
17       shoreline of Lunada Bay . . . the construction of a structure is also development that
         is within the power of the City to address . . .
18

19      43.    By letter dated June 6, 2016, Mr. Sanchez wrote City Manager Anton Dahlerbruch,

20  and gave the City a deadline of July 6, 2016 to begin the process of addressing permitting process

21  related to the Rock Fort (either removing it or making it available to the public) to eliminate the

22  negative any negative effect it has as a "quasi-private structure on public access to the coast." The

23  letter also addressed developing solutions to make Lunada Bay generally more available to the

24  _____

25  [31]  Under standard surf etiquette, the surfer closest to the wave's peak generally has the right of
26  way. "Burn" someone means to disregard surfing's rules, and drop in on the wave in front of a
    surfer who has the right of way.

27  [32] *See*, Exhibit 21.

28  (footnote continued)

1  public.[33]  Specifically, regarding making Lunada Bay more accessible to the visiting public, the
2  letter suggested the addition of public access amenities such as signage inviting the public, picnic
3  tables and benches, and observation binoculars.

4      44.  On June 7, 2016, City Manager Dahlerbruch wrote a short letter to Mr. Sanchez
5  saying the City could not comply with the deadline relating to the fort structure.[34]  Instead,
6  Mr. Dahlerbruch stated that the City was implementing a beach clean-up in the area. By letter
7  dated June 9, 2015, Mr. Sanchez responded to Mr. Dahlerbruch's letter stating that the City's June
8  7, letter failed to include a response regarding the public access improvements suggested by Mr.
9  Sanchez.[35]  The letter concludes by giving the City a July 6, 2016 deadline to address the issues.

10      45.  On July 12, 2016 Sheri Repp-Loadsmann, Deputy City Manager/Planning and
11  Building Director issued a Memorandum to the City's Mayor and City Council.  The memorandum
12  recommended that the City Council direct staff to schedule a public hearing before the Planning
13  Commission to be held on September 20, 2016 for removal of the unpermitted Rock Fort.

14  **CLASS ACTION ALLEGATIONS**

15      46.  On behalf of themselves and the ascertainable class, Plaintiffs seek to maintain this
16  action as a class action under Code of Civil Procedure section 382 and other applicable law.  The
17  class consists of all visiting beachgoers to Lunada Bay who do not live in Palos Verdes Estates, as
18  well as those who have been deterred from visiting Lunada Bay because of the LUNADA BAY
19  BOYS' actions, the Individual Defendants' actions, PALOS VERDES ESTATES' action and
20  inaction, and Defendant Chief of Police Kepley's action and inaction, and subsequently denied
21  during the liability period, or are currently being denied, on the basis of them living outside of
22  Palos Verdes Estates, full and equal enjoyment of rights under the State constitution, to services,
23  facilities, privileges, advantages, or recreational opportunities at Lunada Bay.  For purposes of the
24  class, visiting beachgoers includes persons who do not reside in the City of Palos Verdes Estates,

25  _____

26  [33] *See,* Exhibit 22.

27  [34] *See,* Exhibit 23.

28  [35] *See,* Exhibit 24.

-25-

1   and who are not members of the LUNADA BAY BOYS, but want lawful, safe, and secure access

2   to Lunada Bay to engage in recreational activities, including, but not limited to surfers, boaters,

3   sunbathers, fisherman, picnickers, kneeboarders, stand-up paddle boarders, boogie boarders,

4   bodysurfers, windsurfers, kite surfers, kayakers, dog walkers, walkers, hikers, beachcombers,

5   photographers, and sightseers.

6       47.    The class identified in Paragraph 46 is believed to consist of at least several

7   thousand members who are dispersed across the State of California, as well outside California.

8   Joinder of all of such class members in this lawsuit is impracticable.

9       48.    The Plaintiffs will fairly and adequately protect the interests of the class because

10   they have retained counsel with extensive experience in litigation, including class action litigation,

11   and because Plaintiffs have no interests that conflict in any way with those of the class.

12       49.    In this state court claim, there are numerous questions of law and fact common to

13   the class, including without limitation, the following:

14           a.    Whether LUNADA BAY BOYS was, and at all times mentioned herein is,

15                also an unincorporated association within the meaning of Corporations

16                Code § 18035, subdivision (a).

17           b.    Whether the Individual Defendants are members or associated with

18                LUNADA BAY BOYS.

19           c.    Whether the LUNADA BAY BOYS individually or collectively, illegally

20                block access to Lunada Bay in violation of the Coastal Act.

21           d.    Whether the LUNADA BAY BOYS, through unlawful conduct, have

22                claimed the Lunada Bay area as their "turf" and attempt to unlawfully

23                dissuade beachgoers that live outside of Palos Verdes Estates from

24                recreating in the park, bluff, beach, and ocean areas in and around Lunada

25                Bay.

26           e.    Whether LUNADA BAY BOYS, and the Individual Defendants, have built

27                and maintain the illegal Rock Fort at the base of the 100-foot bluff of

28                Lunada Bay.

-26-

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

f. Whether LUNADA BAY BOYS, and the Individual Defendants, have built and maintain illegal trails down the 100-foot bluff of Lunada Bay.

g. Whether the LUNADA BAY BOYS, and the Individual Defendants, have illegally extorted money from beachgoers who wish to use Lunada Bay for recreational purposes.

h. Whether the LUNADA BAY BOYS, and the Individual Defendants, have civilly conspired in their intimidating threats, and follow through on these threats.

i. Whether the beaches, shoreline, bluff, park, street, and surfing areas in Palos Verdes Estates, specifically Lunada Bay, are open to the public.

j. Whether the beaches, shoreline, bluff, park, street, and surfing areas along Lunada Bay are owned by PALOS VERDES ESTATES.

k. Whether PALOS VERDES ESTATES has illegal and unpermitted structures on its beaches.

l. Whether, acting under color of law, by its policies, customs, and/or longstanding practices, and in deliberate indifference towards Plaintiffs' rights under the Coastal Act and unlawfully excluded Plaintiffs, and persons like them, from their right to recreational opportunities at Palos Verdes Estates' parks, beaches, and access to the ocean.

m. Whether Defendant Chief of Police Kepley had final policymaking authority from PALOS VERDES ESTATES concerning investigations and policing activities related non-resident beachgoer complaints against LUNADA BAY BOYS, and the Individual Defendants.

n. Whether in his representative capacity, Defendant Chief of Police Kepley has failed to enforce the State's laws when it comes to crimes committed by Defendant LUNADA BAY BOYS against visiting non-resident beachgoers, which block access to Lunada Bay.

-27-

1  50. The Plaintiffs' claims are typical of the claims of the members of the class.  Like all

2 other members of the class, Plaintiffs are beachgoers who do not reside in Palos Verdes Estates

3 who want to safely visit the Lunada Bay area.  Plaintiffs desire to lawfully use the Lunada Bay

4 Area, and other PALOS VERDES ESTATES beaches, for recreational purposes, free from the

5 assault, battery, vandalism, intimidation, harassment, and extortion by LUNADA BAY BOYS and

6 the Individual Defendants.

7  51. The Plaintiffs' claims are typical of the claims of the members of the class.  Like all

8 other members of the class, Plaintiffs are beachgoers who desire requisite permitting of the Rock

9 Fort and bluff trails to Lunada Bay by the California Coastal Commission, along with permitting

10 of other structures on PALOS VERDES ESTATES beaches, in addition to any other equitable

11 relief appropriate to ensure access to Lunada Bay, which may include improved trails, restrooms,

12 parking, lighting, and the installation of 24-hour video cameras.

13  52. The Plaintiffs' claims are typical of the claims of the members of the class.  Like all

14 other members of the class, Plaintiffs are beachgoers who desire PALOS VERDES ESTATES and

15 Chief of Police Kepley to investigate and prosecute crimes committed by the LUNADA BAY

16 BOYS and/or the Individual Defendants against non-resident beachgoers.

17  53. This action may be maintained as a class action pursuant to Code of Civil

18 Procedure section 382 because Defendants' unlawful activity is applicable to all members of the

19 class.  Therefore, an injunction requiring compliance with the Coastal Act is appropriate – namely

20 access to Lunada Bay for recreational purposes – and the primary relief sought is injunctive relief.

21  54. This action may be maintained as a class action pursuant to Code of Civil

22 Procedure section 382 because the many questions of law and fact that are common to class

23 members clearly predominate over individual questions affecting members of the class.  The

24 common issues of law and fact relate to issues central to the case, such as whether LUNADA

25 BAY BOYS and PALOS VERDES ESTATES have unlawfully denied members of the class full

26 and equal access to the coast, and to recreate in Lunada Bay, as well as whether Defendants

27 maintain longstanding customs, policies and practices and other measures intended to deny non-

28

1  resident beachgoers full and equal access to Lunada Bay and the surrounding areas, as provided by

2  the Coastal Act, City ordinances and other laws.

3       55.  Judicial economy will be served by maintenance of this lawsuit as a class action in

4  that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the

5  filing of numerous similar Coastal Act suits by beachgoers who have been denied full and equal

6  access to Lunada Bay.

7       56.  Maintaining this lawsuit as a class action will also avoid the risk of inconsistent

8  outcomes if class members were forced to bring individual Coastal Act actions in various forums.

9       57.  There are no obstacles to effective and efficient management of this lawsuit as a

10  class action by this Court.

11       58.  Plaintiffs contemplate notice to the class by news media publication, including

12  (1) social networking sites, such as Facebook and Twitter, (2) ocean-oriented Internet sites such as

13  Surfline.com, Magicseaweed.com, Surfingmagazine.com, Surfermagazine.com,

14  Worldsurfleague.com, Surfertoday.com, and Sufersjournal.com; (3) a California newspaper such

15  as The Los Angeles Times; and (4) a coordinated email campaign with a non-profit ocean

16  advocacy group such as Surfrider Foundation, and Surfrider Southbay.

17       **CIVIL CONSPIRACY ALLEGATIONS**

18       59.  Plaintiffs repeat, re-allege and incorporate herein by this reference each and every

19  allegation contained in Paragraphs 1 through 58, inclusive.

20       60.  Defendant LUNADA BAY BOYS is a criminal gang whose members are primarily

21  engaged in criminal and nuisance activities. Moreover, in violation of the Coastal Act, municipal

22  ordinances, and other laws, Defendants' members regularly confront, attack, harass and assault

23  people attempting to access the beach, but also confront, threaten to kill, assault, vandalize

24  property, extort, and bring harm to other persons who live in, work in, or pass through the Lunada

25  Bay area for the primary purpose of preventing those people from accessing the beach area and for

26  the purpose of committing torts and other wrongs on them. Defendants' criminal and other gang-

27  related activities against visiting beachgoers to Lunada Bay violates the Coastal Act, the California

28  Constitution, municipal ordinances, and other laws. Defendants' activities create a threatening and

-29-

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

1   intimidating atmosphere for visiting beachgoers, and therefore, infringe upon their rights

2   constitutional right to recreate on California's public beaches.

3        61.    Each Individual Member of LUNADA BAY BOYS is aware that people attempting

4   to access the beach at Lunada Bay will be confronted, attacked, harassed, assaulted by other

5   LUNADA BAY BOY Individual Members.

6        62.    The City Defendants are aware of the actions by the other Defendants and have not

7   stopped them.

### FIRST CAUSE OF ACTION

### (Violation of California Coastal Act—All Defendants)

10        63.    Plaintiffs repeat, re-allege and incorporate herein by this reference each and every

11   allegation contained in Paragraphs 1 through 62, inclusive.

12        64.    The California Constitution ensures that "access to the navigable waters of this

13   State shall be always attainable for the people thereof." (Cal. Const., art. X, § 4.)

### CALIFORNIA COASTAL ACT

15        65.    The California legislature adopted the Coastal Act in 1976 to protect and enhance

16   California's natural and scenic coastal resources. The California Coastal Act created the

17   California Coastal Commission (hereafter, "the Commission") in addition to an elaborate planning

18   process to ensure that development in the "coastal zone" is consistent with and reflects the

19   findings and declarations made by the Legislature as stated clearly in Public Resources Code

20   Section 30001:

21          (a)    That the California coastal zone is a distinct and valuable natural resource

22               of vital and enduring interest to all the people and exists as a delicately balanced ecosystem.

23          (b)    That the permanent protection of the state's natural and scenic resources is a

24               paramount concern to present and future residents of the state and nation.

25          (c)    That to promote the public safety, health, and welfare, and to protect public

26               and private property, wildlife marine fisheries, and other ocean resources, and the natural environment, it is necessary to protect the ecological balance of the coastal zone and prevent its deterioration and destruction.

27          (d)    That existing developed uses, and future developments that are carefully

28               planned and developed consistent with the policies of [the Coastal Act], are

1  essential to the economic and social wellbeing of the people of this state and especially to working persons employed within the coastal zone.

2

3  66.   The Coastal Act provides that the Act "shall be liberally construed to accomplish its

4  purposes and objectives." (Pub. Resources Code §30009.)

5  67.   The "Coastal Zone" is that land specified on maps identified and set forth in section

6  17 of Chapter 1330 of the Statutes of 1975-1976 Regular Session enacting Division 20 of the

7  Public Resources Code and subsequent amendments.  In significant coastal estuarine, habitat, and

8  recreational areas it extends inland to the first major ridgeline paralleling the sea, or five miles

9  from the mean high tide line of the sea, whichever is less; and in developed urban areas the zone

10  generally extends inland less than 1,000 yards. (Pub. Resources Code § 30103, subd. (a).) The

11  section of Palos Verdes Estates which is the subject of this lawsuit is located within the Coastal

12  Zone.

13  68.   The Coastal Act requires that "any person...wishing to perform or undertake any

14  development in the coastal zone... shall obtain a coastal development permit." (Pub. Resources

15  Code § 30600, subd., (a).)

16  69.   The Coastal Act defines "person" as "any person, firm, association, organization,

17  partnership, business, trust, corporation, limited liability company, company, district, county, city

18  and county, city, town, the state, and any of the agencies and political subdivisions of those

19  entities, and, to the extent permitted by federal law, the United States, or any of its agencies or

20  political subdivisions." (Pub. Resources Code § 30111.) Defendants are persons under the Coastal

21  Act.

22  70.   The Coastal Act defines "development" as:

23  [O]n land, in or under water, the placement or erection of any solid material or structure; discharge or disposal or any dredged material

24  or any gaseous, liquid, solid, or thermal waste; grading, removing, dredging, mining, or extraction of any materials; change in the

25  density or intensity of use of land, including, but not limited to, subdivision pursuant to the Subdivision Map Act... and any other

26  division of land, including lot splits, except where the land division is brought about in the connection with the purchase of such land by

27  a public agency for public recreational use; change in the intensity use of water, or of access thereto; construction, reconstruction,

28  demolition, or alteration of the size of any structure, including any

12577638.2

-31-
CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, CIVIL FINES, AND JURY DEMAND

1    facility of any private, public, or municipal utility; and the removal
     or harvesting of major vegetation other than for agricultural
2    purposes, kelp harvesting, and timber operations which are in
     accordance with a timber harvesting plan... As used in section,
3    'structure' includes, but is not limited to, any building, road, pipe,
     flume, conduit, siphon, aqueduct, telephone line, and electrical
4    power transmission and distribution line. (Pub. Resources Code
     § 30106)
5

6    Moreover, by case law and Coastal Commission interpretation, "development" is interpreted

7    broadly to include any action (or inaction) that impedes access to the beach or public recreation

8    trails. (Pub. Resources Code §§ 30210, 30211, 30212.5, 30213.)

9         71.    The Municipal Code for Palos Verdes Estates defines "development" as:

10   Whether lying on land outside of the water, or in or under water,
     each of the following shall be a 'development' for purposes of this
11   chapter:

12        A.    The placement or erecting of any solid material or structure;

13        B.    The discharge or disposal of any dredged material or any
                gaseous, liquid, solid or thermal waste;
14

15        C.    Grading, removing, dredging, mining or extraction of any
                materials;

16        D.    A change in density or intensity of the use of any land,
                including but not limited to (1) any subdivision created
17              pursuant to the Subdivision Map Act commencing with Cal.
                Gov. Code § 66410, (2) any other division of land, including
18              lot splits; provided, however, that where a land division is
                brought in connection with the purchase of said land by a
19              public agency for public recreational use, such division shall
                not constitute a development for purposes of this chapter.
20

21                        **UNPERMITTED DEVELOPMENTS**

22                              **(Lunada Bay)**

23        72.    On the north side of Lunada Bay nearest Palos Verdes Point, the LUNADA BAY

24   BOYS, its members, and the Individual Defendants have built and maintain an illegal rock-

25   masonry-and-wood fort structure at the base of the 100-foot bluff. Plaintiffs are informed and

26   believe and thereon alleged that this structure is on property owned by PALOS VERDES

27   ESTATES.

28

-32-
CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

73.   In the middle of Lunada Bay, LUNADA BAY BOYS and the Individual Defendants have built and maintain a steep trail down the 100-foot bluff called the Goat Trail. Plaintiffs are informed and believe and thereon alleged that this trail is on property owned by PALOS VERDES ESTATES.

74.   Defendant LUNADA BAY BOYS and Individual Defendants have built a campfire ring with seating in the middle of Lunada Bay, near the base of the Goat Trail.  Plaintiffs are informed and believe and thereon alleged that this trail is on property owned by PALOS VERDES ESTATES.

75.   On the south side of Lunada Bay, there is another trail down to Lunada Bay ("South Trail").  Plaintiffs are informed and believe and thereon alleged that this trail is on property owned by PALOS VERDES ESTATES.

**(Other Unpermitted Development in the City)**

76.   Plaintiffs are informed and believe and thereon allege that there are various other unpermitted developments in Palos Verdes Estates which are being investigated.

77.   One such illegal and unpermitted development is the trail leading to the surf spot called Wally's, another City-owned beach which is south of Lunada Bay.  The steep trail to Wally's leads to another unpermitted structure built of stone with a campfire ring and seating.[36]

## BLOCKING FULL PUBLIC ACCESS TO COAST

78.   The California Constitution ensures that "access to the navigable waters of this State shall be always attainable for the people thereof."  (Cal. Const., art. X, § 4.) The Coastal Act states that in carrying out this constitutional requirement, "maximum access . . . and recreational opportunities shall be provided for all the people consistent with public safety needs and the need to protect public rights, rights of private property owners, and natural resource areas from overuse."  (Pub. Resources Code, § 30210.)

[36] *See*, Exhibit 25.

12577638.2

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, CIVIL FINES, AND JURY DEMAND

79. The Municipal Code for Palos Verdes also prohibits anyone from blocking access to the beach and provides:

> A. No person shall stand, sit, lie, or congregate on any path, trail, or other way providing access to or from any beach in such a manner as to interfere with or impede the free flow of travel along such access way.
>
> B. Unless the prior consent of the city is first received, no person shall place, throw, leave, keep or maintain any object of any type upon any path, trail, or other way which provides access to or from any beach. (Ord. 701 § 2, 2012; Ord. 640 § 1, 2002)

**(Lunada Bay)**

80. Defendants' LUNADA BAY BOYS members regularly confront, attack, harass and assault people attempting to access the beach, but also confront, threaten to kill, assault, vandalize property, extort, and bring harm to other persons who work in, visit or pass through the Lunada Bay area for the primary purpose of preventing those people from accessing the beach area and for the purpose of committing torts and other wrongs on them. Defendants' criminal and other gang-related activities against visiting beachgoers to Lunada Bay, and the City's inaction, violates the Coastal Act, the City's Municipal Code, and other laws. Defendants' activities create a threatening and intimidating atmosphere for visiting beachgoers, and therefore, infringe upon their rights constitutional right to recreate on California's public beaches.

81. By letter dated January 21, 2016, enforcement analyst Jordan Sanchez of the California Coastal Commission notified Chief Jeff Kepley of the Palos Verdes Police Department that, among other things:

> Precluding full public use of the coastline at Palos Verdes Estates, including the waters of Lunada Bay, whether through physical devices, such as construction of a fence, or nonphysical impediments, such as threatening behavior intended to discourage public use of the coastline, represents a change of access to water, and, thus, constitutes development under the Coastal Act and the Palos Verdes Estates LPC [Local Coastal Program]. No coastal development permit has been issued to authorize this activity, therefore, it is a violation of the LCP . . . We have also received reports of unpermitted structures, including stone forts, constructed on the shoreline of Lunada Bay . . . the construction of a structure is also development that is within the power of the City to address . . .

-34-

**(Declaratory Relief)**

82.     Pursuant to Public Resources Code Section 30803(a), the California Coastal Act provides, in relevant part that, "any person may maintain an action for declaratory and equitable relief to restrain any violation of this division…"

83.     An actual controversy exists between the Plaintiffs and the Defendants in that these Defendants have violated and are violating the California Coastal Act but refuse to admit and remedy the illegal nature of their activities.

84.     Because of the controversy that exists among the parties, a declaration of the rights and responsibilities of the parties with respect to the California Coastal Act is necessary. Specifically, Plaintiffs seek a declaration from this Court that the Defendants' acts as alleged herein are separate and continuing violations of the California Coastal Act.

**(Injunctive Relief)**

85.     Plaintiffs have no adequate remedy at law to require the Defendants to comply with the Coastal Act as alleged in this Complaint and, therefore, civil fines alone will not remedy the wrongs about which Plaintiffs complain.

86.     Unless this Court grants the equitable relief sought by Plaintiffs and the public generally, they will be irreparably harmed in that it will be deprived of both the aesthetic enjoyment of the natural resources in this part of the California Coastal Zone.

87.     Pursuant to California Public Resources Code Section 30803(a), the Coastal Act provides in relevant part: ". . . On a prima facie showing of a violation of this division, preliminary equitable relief shall be issued to restrain any further violation of the division. No bond shall be required for an action under this section."

88.     As a consequence of the Defendants' activities, Plaintiffs are entitled to a temporary restraining order to prevent any further development in the affected area while the Court considers any application by Plaintiffs for preliminary and permanent injunctive relief.

**(Civil Fines)**

89.     Pursuant to California Public Resources Code section 30820(a), the California Coastal Act provides in relevant part for civil fines as follows:

12577638.2

-35-

> Any person who violates any provision of this division may be civilly liable in accordance with this subdivision as follows: Civil liability may be imposed by the superior court in accordance with this article on any person who performs or undertakes development that is in violation of this division ... in an amount that shall not exceed thirty thousand dollars ($30,000) and shall not be less than five hundred dollars ($500) . . . Civil liability may be imposed for any violation of this division other than that specified in paragraph (1) in an amount that shall not exceed thirty thousand dollars ($30,000).

90.  Plaintiffs are informed and believe and on such information and belief allege that the Defendants are liable for civil fines by virtue of the fact that they have failed to obtain and comply with the terms and conditions of a Coastal Development Permit, and allow non-resident beachgoers to be blocked from Lunada Bay as alleged herein.

**(Daily Fines)**

91.  Pursuant to California Public Resources Code section 30820(b), the California Coastal Act provides in relevant part for additional civil fines as follows:

> Any persons who performs or undertakes development that is in violation of this division ... when that person intentionally and knowingly performs or undertakes the development in violation of this division ... may, in addition to any other penalties, be civilly liable in accordance with this subdivision. Civil liability may be imposed by the superior court in accordance with this article for a violation as specified in this subdivision in an amount which shall not be less than one thousand dollars ($1,000.00), nor more than fifteen thousand dollars ($15,000.00), per day for each day in which the violation persists.

92.  Plaintiffs are informed and believe and on such information and belief allege that the Defendants, by virtue of their knowing, intentional, and continuing violation(s) of the California Coastal Act, are liable for daily fines of up to $15,000.00 for each day in which the alleged violations(s) have occurred and continue without abatement.

WHEREFORE, Plaintiffs pray for relief as set forth below:

1.  That this Court certify the class identified in Paragraph 46.

2.  That this Court certify that Plaintiffs Spencer and Reed are representative of this class.

12577638.2

-36-

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, CIVIL FINES, AND JURY DEMAND

3.    A declaration of the rights and responsibilities of the parties with respect to the California Coastal Act. Specifically, Plaintiffs seek a declaration from the Court that the Defendants' actions as set forth in this Complaint are separate and continuing violations of the California Coastal Act.

4.    Specifically an injunction requiring Defendants to cease and desist refusing to allow access to the beach.

5.    A preliminary and permanent injunctive relief mandating the Defendants to refrain from any further activities in the affected area without first complying with the provisions of the Coastal Act and for a permanent injunction requiring the Defendants to obtain a lawfully issued Coastal Development Permit.

6.    A civil fine of up to $30,000.00 against each Defendant for each act authorizing or engaging in or performing activities in violation of the California Coastal Act.

7.    A civil fine of up to $15,000.00 per day against each Defendant for each day from the commencement of the violation(s) of the California Coastal Act to the date each Defendant complies with the requirements of the California Coastal Act.

8.    As to the Individual Members of the Lunada Bay Boys, exemplary damages as allowed under Public Resources Code Section 30822.

9.    For costs and attorney's fees incurred by Plaintiffs in prosecuting the instant action as allowed by Code of Civil Procedure section 1021.5 and/or any other applicable provision(s) of law.

10.   For interest as allowed by law.

11.   That this Court award such additional or alternative relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury on all issues which can be heard by a jury.

1 | DATED: August 3, 2016                    HANSON BRIDGETT LLP

2

3                                            By:_____/s/_____

4                                               KURT A. FRANKLIN

5

6 | DATED: August 3, 2016

7                                            OTTEN LAW, PC

8

9                                            By:_____

                                                VICTOR OTTEN

10                                           Attorneys for Plaintiffs
                                             CORY SPENCER, DIANA MILENA REED, and
11                                           COASTAL PROTECTION RANGERS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12577638.2

-38-

CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL FINES, AND JURY DEMAND

# Exhibit 1-c



# PALOS VERDES ESTATES POLICE DEPARTMENT

Officer Report for Incident 16-02164

| | | |
|---|---|---|
| Nature: SURFING RELATED Location: | | Address: LUNADA BAY |

Offense Codes:

Received By: C. Placek   How Received: O   Agency: PVEP

Responsible Officers:

Responsible Officers: S. Crisfield   Disposition: ACT 02/13/16

When Reported: 10:17:15 02/13/16   Occurred Between: 09:40:00 02/13/16 and 10:00:00 02/13/16

| Assigned To: | Detail: | Date Assigned: **/**/** |
|---|---|---|
| Status: | Status Date: **/**/** | Due Date: **/**/** |

Complainant:

Last:   First:   Mid:

DOB: **/**/**   Dr Lic:   Address:

Race:   Sex:   Phone:   City: ,

Alert Codes:

**Offense Codes**

Reported:   Observed:

Additional Offense: ASS8 242 Assault, Misdemeanor

Additional Offense: SEX5 314 Indecent Exposure

**Circumstances**

DAY Day (6 a.m. - 6 p.m.)

Responding Officers:   Unit :

S. Crisfield   7L11

A. Belda   7L9

Responsible Officer: S. Crisfield   Agency: PVEP

Received By: C. Placek   Last Radio Log: 12:17:22 02/13/16 CMPLT

How Received: O Officer Report   Clearance: RTF Report To Follow

When Reported: 10:17:15 02/13/16   Disposition: ACT Date: 02/13/16

Judicial Status: DONE   Occurred between: 09:40:00 02/13/16

Misc Entry: Gaunt   and: 10:00:00 02/13/16

02/14/16

CITY265

*Officer Report for Incident 16-02164*

| Modus Operandi: | | Description : | Method : |
|---|---|---|---|

**Involvements**

| Date | Type | Description | |
|---|---|---|---|
| 02/14/16 | Name | REED, DIANA | Victim |
| 02/14/16 | Name | Vel, Jen | Witness |
| 02/13/16 | Cad Call | 10:17:15 02/13/16 SURFING RELATED | Initiating Call |

02/14/16

**CITY266**

*Officer Report for Incident 16-02164*

## Narrative

Palos Verdes Estates Police Department
Investigation Narrative

SOURCE: On Saturday, 02-13-2016, I (Officer Crisfield #745) was working
uniformed patrol in marked police vehicle #726.  At approximately 1015 hours, I
was flagged down in the 2300 block of Paseo Del Mar (Lunada Bay) by R-P/Diana
Reed, in reference to a surfing related incident.

M.O.: Unknown suspect pours beer on victim and her camera.  Suspect then changes
into a wetsuit at which time he purposely exposed his penis to the victim.

VICTIM'S STATEMENT: I met and spoke with the victim, Diana Reed (DOB:
01-22-1967), and the following is a summary of her statement: On today's date,
at approximately 0945 hours, Reed and Jen Vel (NFD) were taking pictures of the
surf, from the Lunada Bay patio. While on the patio she was confronted by an
unknown suspect who shook up a can of beer and opened it in her face, spraying
her with its content. The suspect then took the opened beer and poured it on
Reed's left arm and camera, however, the camera was not damaged. The suspect
then stated, "I saw you on the front page of the LA Times, now you're done."
Reed asked the suspect multiple times to stop harassing her at which time he
began to undress and change into his wetsuit. While changing into his wetsuit,
the suspect stated, "It's easier to get into my wetsuit because you make me
hard." The suspect then asked Reed "you want to see it", and as she was turning
around to see what he was talking about, she saw the suspect's exposed penis.
Reed described the suspect's penis as a white, approximately 3" in length and
flaccid at the time of the incident. During this incident, there was a
second subject who was associated with the suspect, who was filming the entire
incident. Reed then became frightened and extremely uncomfortable at which time
she walked up the trail back to the top of cliff of Lunada Bay (2300 PDM). Reed
stated she would be able to positively identify the suspect if seen again and if
identified, she is desirous of prosecution of the suspect for violation of 314.1
PC - Indecent Exposure and 242 PC - Battery.

Reed described the suspect as:

Adult male, white, mid 20's, 5'9"-5'11", stocky build, medium length light
blonde hair, light facial hair, possibly with tattoos on his chest or arms,
wearing a black Rip Curl Flash Bomb wetsuit with a hood (NFD). The subject had a
white short board style surfboard.

Reed described the subject holding the video camera as:

Adult male, white, mid 50's, 5'7"-5'9", medium build, short blonde hair and
clean shaven.

WITNESS STATEMENT: I contacted Jen Vel via telephone (323-308-9326), who stated
she was on the patio with Reed and witnessed the incident, but was unwilling to
provide a statement.

OFFICER'S STATEMENT: After obtaining the victim's statement, Officer Belda
(#731), Reed, and I went descended down to the Lunada Bay Patio in an attempt to
locate the suspect but she did not recognize anyone. The Lunada Bay Patio is a
man-made stone patio / platform located at the shoreline of the
north-westernmost corner of Lunada Bay's crescent-shaped cove. While on the
patio, Reed observed a snapped white Ferrara surfboard that she believed was the

02/14/16

CITY267

suspects surfboard. I asked the subjects on the patio if they knew who the surfboard belonged to and they were all unsure. I then provided Reed with a PVEPD card containing this report number.

EVIDENCE: None

ADDITIONAL INFORMATION: In the event the suspect is able to be identified, it is my recommendation this case be forwarded to the district Attorney's Office for filing.

_CRISFIELD_
Responsible LEO:

_Grant_
Approved by:

_02/14/16_
Date

02/14/16

CITY268

## Supplement
CAD Call info/comments
========================================

11:28:45 02/13/2016 - C. Placek
UNITS ARE DOWN IN LUNADA BAY CANYON
11:44:43 02/13/2016 - C. Placek - From: A. Belda
CODE 4
12:16:55 02/13/2016 - C. Placek - From: S. Crisfield
SEE REPORT

CITY269

*Officer Report for Incident 16-02164*                                    *Page 6 of 6*

## Name Involvements:

Victim : *96756*

| | | |
|---|---|---|
| **Last:** REED | **First:** DIANA | **Mid:** |
| **DOB:** 01/22/87 | **Dr Lic:** F8603002 | **Address:** 22837 PACIFIC COAST HIGHWAY |
| **Race:** W    **Sex:** F | **Phone:** (310)883-3995 | **City:** MALIBU, CA 90265 |

Witness : *97691*

| | | |
|---|---|---|
| **Last:** Vel | **First:** Jen | **Mid:** |
| **DOB:** **/**/** | **Dr Lic:** | **Address:** |
| **Race:**    **Sex:** | **Phone:** ()- | **City:** , |

02/14/16

CITY270



# PALOS VERDES ESTATES POLICE DEPARTMENT

Officer Report for Incident 16-02164

| Nature: SURFING RELATED | Address: LUNADA BAY |
|---|---|
| Location: | |

Offense Codes:
Received By: C. Placek     How Received: O       Agency: PVEP
Responding Officers:
Responsible Officers: S. Crisfield      Disposition: ACT 02/13/16
When Reported: 10:17:15 02/13/16    Occurred Between: 09:40:00 02/13/16 and 10:00:00 02/13/16

| Assigned To: | Detail: | Date Assigned: **/**/** |
|---|---|---|
| Status: | Status Date: **/**/** | Due Date: **/**/** |

Complainant:
Last:      First:      Mid:
DOB: **/**/**    Dr Lic:     Address:
Race:    Sex:    Phone:     City: ,
Alert Codes:

## Offense Codes
Reported:            Observed:
Additional Offense: ASS8 242 Assault, Misdemeanor
Additional Offense: SEX5 314 Indecent Exposure

## Circumstances
DAY Day (6 a.m. - 6 p.m.)

Responding Officers:       Unit :
    S. Crisfield           7L11
    A. Belda            7L9

Responsible Officer: S. Crisfield        Agency: PVEP
Received By: C. Placek      Last Radio Log: 12:17:22 02/13/16 CMPLT
How Received: O Officer Report    Clearance: RTF Report To Follow
When Reported: 10:17:15 02/13/16    Disposition: ACT Date: 02/13/16
Judicial Status: DONE     Occurred between: 09:40:00 02/13/16
Misc Entry: Gaunt           and: 10:00:00 02/13/16

02/14/16

CITY271

## Narrative

REDACTED

Palos Verdes Estates Police Department
Investigation Narrative

SOURCE: On Saturday, 02-13-2016, I (Officer Crisfield #745) was working
uniformed patrol in marked police vehicle #726. At approximately 1015 hours, I
was flagged down in the 2300 block of Paseo Del Mar (Lunada Bay) by R-P/
in reference to a surfing related incident.

M.O.: Unknown suspect pours beer on victim and her camera. Suspect then changes
into a wetsuit at which time he purposely exposed his penis to the victim.

VICTIM'S STATEMENT: I met and spoke with the victim,                (DOB:
), and the following is a summary of her statement: On today's date,
at approximately 0945 hours,        and        (NFD) were taking pictures of the
surf, from the Lunada Bay patio. While on the patio she was confronted by an
unknown suspect who shook up a can of beer and opened it in her face, spraying
her with its content. The suspect then took the opened beer and poured it on
' left arm and camera, however, the camera was not damaged. The suspect
then stated, "I saw you on the front page of the LA Times, now you're done."
asked the suspect multiple times to stop harassing her at which time he
began to undress and change into his wetsuit. While changing into his wetsuit,
the suspect stated, "It's easier to get into my wetsuit because you make me
hard." The suspect then asked    ! "you want to see it", and as she was turning
around to see what he was talking about, she saw the suspect's exposed penis.
described the suspect's penis as a white, approximately 3" in length and
flaccid at the time of the incident. During this incident, there was a
second subject who was associated with the suspect, who was filming the entire
incident.    then became frightened and extremely uncomfortable at which time
she walked up the trail back to the top of cliff of Lunada Bay (2300 PDM).
stated she would be able to positively identify the suspect if seen again and if
identified, she is desirous of prosecution of the suspect for violation of 314.1
PC - Indecent Exposure and 242 PC - Battery.

Reed described the suspect as:

Adult male, white, mid 20's, 5'9"-5'11", stocky build, medium length light
blonde hair, light facial hair, possibly with tattoos on his chest or arms,
wearing a black Rip Curl Flash Bomb wetsuit with a hood (NFD). The subject had a
white short board style surfboard.

described the subject holding the video camera as:

Adult male, white, mid 50's, 5'7"-5'9", medium build, short blonde hair and
clean shaven.

WITNESS STATEMENT: I contacted        via telephone {        . who stated
she was on the patio with ·    and witnessed the incident, but was unwilling to
provide a statement.

OFFICER'S STATEMENT: After obtaining the victim's statement, Officer Belda
(#731),     , and I went descended down to the Lunada Bay Patio in an attempt to
locate the suspect but she did not recognize anyone. The Lunada Bay Patio is a
man-made stone patio / platform located at the shoreline of the
north-westernmost corner of Lunada Bay's crescent-shaped cove. While on the
patio,     observed a snapped white Ferrara surfboard that she believed was the

02/14/16

suspects surfboard. I asked the subjects on the patio if they knew who the surfboard belonged to and they were all unsure. I then provided     with a PVEPD card containing this report number.

EVIDENCE: None

ADDITIONAL INFORMATION: In the event the suspect is able to be identified, it is my recommendation this case be forwarded to the district Attorney's Office for filing.


*CRISFIELD*
Responsible LEO:


*(signature)*
Approved by:


*02/14/16*
Date

02/14/16

**CITY273**

## Supplement

CAD Call info/comments
=========================================

```
11:28:48 02/13/2016 - C. Placek
UNITS ARE DOWN IN LUNADA BAY CANYON
11:44:43 02/13/2016 - C. Placek - From: A. Belda
CODE 4
12:16:55 02/13/2016 - C. Placek - From: S. Crisfield
SEE REPORT
```

02/14/16

CITY274

*Officer Report for Incident 16-02164*                    REDACTED                    *Page 6 of 6*

## Name Involvements:

Victim :
    Last:                First:           Mid:
    DOB:               Dr Lic:         Address:

    Race:  W     Sex:  F    Phone:        ;    City:

Witness :
    Last:                First:           Mid:
    DOB:  **/**/**     Dr Lic:         Address:
    Race:        Sex:    Phone:  ( ) -      City:  ,

02/14/16

CITY275



# PALOS VERDES ESTATES POLICE DEPARTMENT

Officer Report for Incident 16-02164

| | |
|---|---|
| Nature: SURFING RELATED | |
| Location: | Address: LUNADA BAY |

Offense Codes:
    Received By: C. Placek     How Received: O     Agency: PVEP
Responding Officers:
Responsible Officers: S. Crisfield     Disposition: ACT 02/13/16
    When Reported: 10:17:15 02/13/16     Occurred Between: 09:40:00 02/13/16 and 10:00:00 02/13/16

Assigned To:     Detail:     Date Assigned: **/**/**
    Status:     Status Date: **/**/**     Due Date: **/**/**

Complainant:
    Last:     First:     Mid:
    DOB: **/**/**     Dr Lic:     Address:
    Race:     Sex:     Phone:     City: ,
Alert Codes:

## Offense Codes
    Reported:     Observed:
Additional Offense: ASS8 242 Assault, Misdemeanor
Additional Offense: SEX5 314 Indecent Exposure

## Circumstances
    DAY Day (6 a.m. - 6 p.m.)

Responding Officers:     Unit:
    S. Crisfield     7L11
    A. Belda     7L9

Responsible Officer: S. Crisfield
    Received By: C. Placek     Agency: PVEP
    How Received: O Officer Report     Last Radio Log: 12:17:22 02/13/16 CMPLT
    When Reported: 10:17:15 02/13/16     Clearance: RTF Report To Follow
    Judicial Status: DONE     Disposition: ACT Date: 02/13/16
    Misc Entry: Gaunt     Occurred between: 09:40:00 02/13/16
    and: 10:00:00 02/13/16

04/28/16

*Officer Report for Incident 16-02164*

| Modus Operandi: | Description : | Method : |
|---|---|---|

**Involvements**

| Date | Type | Description |
|---|---|---|

04/28/16

CITY277

### Narrative

Palos Verdes Estates Police Department
Investigation Narrative

SOURCE: On Saturday, 02-13-2016, I (Officer Crisfield #745) was working uniformed patrol in marked police vehicle #726. At approximately 1015 hours, I was flagged down in the 2300 block of Paseo Del Mar (Lunada Bay) by R-P/Diana Reed, in reference to a surfing related incident.

M.O.: Unknown suspect pours beer on victim and her camera. Suspect then changes into a wetsuit at which time he purposely exposed his penis to the victim.

VICTIM'S STATEMENT: I met and spoke with the victim, Diana Reed (DOB: 01-22-1987), and the following is a summary of her statement: On today's date, at approximately 0945 hours, Reed and _____ (NFD) were taking pictures of the surf, from the Lunada Bay patio. While on the patio she was confronted by an unknown suspect who shook up a can of beer and opened it in her face, spraying her with its content. The suspect then took the opened beer and poured it on Reed's left arm and camera, however, the camera was not damaged. The suspect then stated, "I saw you on the front page of the LA Times, now you're done." Reed asked the suspect multiple times to stop harassing her at which time he began to undress and change into his wetsuit. While changing into his wetsuit, the suspect stated, "It's easier to get into my wetsuit because you make me hard." The suspect then asked Reed "you want to see it", and as she was turning around to see what he was talking about, she saw the suspect's exposed penis. Reed described the suspect's penis as a white, approximately 3" in length and flaccid at the time of the incident. During this incident, there was a second subject who was associated with the suspect, who was filming the entire incident. Reed then became frightened and extremely uncomfortable at which time she walked up the trail back to the top of cliff of Lunada Bay (2300 PDM). Reed stated she would be able to positively identify the suspect if seen again and if identified, she is desirous of prosecution of the suspect for violation of 314.1 PC - Indecent Exposure and 242 PC - Battery.

Reed described the suspect as:

Adult male, white, mid 20's, 5'9"-5'11", stocky build, medium length light blonde hair, light facial hair, possibly with tattoos on his chest or arms, wearing a black Rip Curl Flash Bomb wetsuit with a hood (NFD). The subject had a white short board style surfboard.

Reed described the subject holding the video camera as:

Adult male, white, mid 50's, 5'7"-5'9", medium build, short blonde hair and clean shaven.

WITNESS STATEMENT: I contacted _____ via telephone _____, who stated she was on the patio with Reed and witnessed the incident, but was unwilling to provide a statement.

OFFICER'S STATEMENT: After obtaining the victim's statement, Officer Belda (#731), Reed, and I went descended down to the Lunada Bay Patio in an attempt to locate the suspect but she did not recognize anyone. The Lunada Bay Patio is a man-made stone patio / platform located at the shoreline of the north-westernmost corner of Lunada Bay's crescent-shaped cove. While on the patio, Reed observed a snapped white Ferrara surfboard that she believed was the

REDACTED

04/28/16

suspects surfboard. I asked the subjects on the patio if they knew who the
surfboard belonged to and they were all unsure. I then provided Reed with a
PVBPD card containing this report number.

EVIDENCE: None

ADDITIONAL INFORMATION: In the event the suspect is able to be identified, it is
my recommendation this case be forwarded to the district Attorney's Office for
filing.

Responsible LEO:

Approved by:

Date

04/28/16



Incident Number: 16-02164

CITY280



Incident Number: 16-02164

CITY281



Incident Number: 16-02164

CITY282



Incident Number: 16-02164

CITY283



Incident Number: 16-02164

CITY284

●●○○○ Sprint Wi-Fi 📶          12:33          44% 🔋

‹ Messages          **Jen**          Details

iMessage
Saturday 10:55



My friend knows the names of those guys. I can probably get his name for you. He asked me if he was short and kind of fat and I would say yeah right about that guy do you think that's the same guy? There's already an email circulating about what happen today with your name in it. My friend just read me the group email and they're saying how they need to do something about these "bad" guys and get cops down closer to the water.



Incident Number: 16-02164

●●○○○ Sprint Wi-Fi 🤶          12:35          43% 🔋

< Messages          **Jen**          Details



Sunday 09:44

I haven't had the chance to ask him. He's had a lot going on.

Sunday 11:38

Ok no worries

Yesterday 11:33

Hey did you hear back from your friend ? Any way you can ask him to forward you that email? Hopefully we can figure out the name of the beer guy.

Yesterday 14:00

Ah I keep forgetting when we talk it's been rushed lately we've both been super busy. I'll try to get the guys name but not sure he'll want to send me the email, who knows.

Ok. Yeah just ask him and see what he says.

Thanks for your help :)



Incident Number: 16-02164

●●●○○ Verizon 🤶    1:39 PM    ↳ 93% 🔋

< Messages    **Group MMS**    Details

To: (213) 447-7607, (213) 842-4935 & 7 more...

Forgot to tell you about that cops hangouts on their bong hit patio the place like some medium type not too low or not too high bring all the foam you have tell your boys if anyone messes with them say the weasel knows where you live and we know him I shanked one of the biggest boys 25 years ago still living off the rip There's an Asian guy he'll talk shit his name is sang know some jujitsu but not really tough tell him to go get some heroin There's a fat thick short guy their toughest his name is grant Blakeman tell him to go sell some crystal meth two kids I heard Borno Ron Bornstein used to live with your boogie friend I used to chase that little bich around If you get the chance say you heard the whole Ferrara family is nothing but a

Send

Incident Number: 16-02164

CITY287

●●●○○ Verizon 📶          1:39 PM          🔋 93% 🔋

‹ Messages      **Group MMS**      · Details

To: (213) 447-7607, (213) 842-4935 & 7 more...

bitch around if you get the chance say you heard the whole Ferrara family is nothing but a bunch of drug addict losers He's the main shaper and good surfer kids are losers and his brothers kids are all losers One of the Ferrara kids Nick Ferrara in friends beat up a Persian liquor store guy up the street miners put guy in hos! pital getting them for hate crime One time the Ferrara kid talk shit to me one day I said I used to smoke crack with your dad Angelo and dead uncle Sal I have all the dirt from 1979 up I can make a movie find me somebody

Tell your bros to say even sells weed he lives on 10th Street in San Pedro he'll lose it Come up with all that shit those guys will freak out inside info

Send

Incident Number: 16-02164

CITY288

•●○○○ Sprint Wi-Fi 📶          12:34              44% 🔋

❮ Messages      **Jen**              Details



GoPro guy

That's all I have for pics of these assholes



Incident Number: 16-02164

CITY289

●●○○○ Sprint Wi-Fi 📶    12:34    44% 🔋

‹ Messages    **Jen**    Details



Beer guy

Saturday 13:46


Ok awesome!!

It will help.

If I'm able to get there names I'll let you know. My friend knows the locals there that aren't dicks. He had an



Incident Number: 16-02164

CITY290

●○○○○ Sprint Wi-Fi 🛜          12:34          43% 🔋

❮ Messages          **Jen**          · Details

If I'm able to get there names I'll let
you know. My friend knows the locals
there that aren't dicks. He had an
email about what happen before I
even got home, word gets out fast.

Ok lol

I told the cops about the beer guy

The GoPro video I hope is deleted but
if not its all recorded. They should
ask that guy for the footage.
Dumbass recorded themselves
harassing. Brilliant.

You have it recorded ?

No the old guy was recording

They couldn't find the guy with the
camera or the younger guy

I wonder how hard they tried. They
were there so....probably their friends
covering for them. Did the cops
actually walk down to the beach?

Saturday 16:59

Incident Number: 16-02164

●○○○○ Sprint Wi-Fi 📶     **12:34**      43% 🔋

‹ Messages     **Jen**     Details

The GoPro video I hope is deleted but if not its all recorded. They should ask that guy for the footage. Dumbass recorded themselves harassing. Brilliant.

 You have it recorded?

No the old guy was recording

They couldn't find the guy with the camera or the younger guy

I wonder how hard they tried. They were there so....probably their friends covering for them. Did the cops actually walk down to the beach?

Saturday 16:59





Incident Number: 16-02164

CITY292

●oooo Sprint Wi-Fi 🤶            12:35            43% 🔋

❮ Messages            **Jen**            Details

Omg. Wow.

That was on the front page of the LA times today. I went down with the cops. Everyone was gone by then.

What???!! Oh shit.

The younger guy was there but he refused to cooperate as a witness. He denied anything.

How'd they get that on the front page so fast?

It was an article from last time we were there

The photo is from today? So now you've been on the LA times twice?

Anyway I gave the police your phone number so they might contact you. I told them that the guy spilled beer on me and my camera on purpose, and then eventually exposed himself as he was changing

The photo in the la times is from last week

Incident Number: 16-02164

CITY293

●○○○○ Sprint Wi-Fi 🛜    **12:35**    43% 🔋

< Messages    **Jen**    Details

The photo is from today? So now you've been on the LA times twice?

Anyway I gave the police your phone number so they might contact you. I told them that the guy spilled beer on me and my camera on purpose, and then eventually exposed himself as he was changing

The photo in the la times is from last week

It's a coincidence that the article came out today and was featured on the front page.

Yeah that's crazy.

But the guys were talking about it, was it a diff article or this one?

You're famous 😁

Yes it was the article from today that they were talking about

Ohhhh ok. Was confused for a sec. Got it.

Did that pudgy little fuck actually



CITY294

●oooo Sprint Wi-Fi 📶          12:35          43% 🔋⬛

‹ Messages          **Jen**          Details

Ohhhh ok. Was confused for a sec. Got it.

Did that pudgy little fuck actually expose his wiener? I missed that.

Yes he did

Gross

Eeewwww!!!!

He was a disgusting bag of shit. My friend said he sells crack to the neighborhood kids

Really. Do you know his name?

I'm pretty sure my friend knows his name. I think I can get it. My friend has been busy all day but we'll talk later today when he's done. He knows the "good locals" there and is the person who got the group email about us as soon as it happen.

Whoa what did the group email say?

So your friend is a bay boy?

He read it to me but I don't remember



Incident Number: 16-02164

CITY295

●oooo Sprint Wi-Fi 🛜          12:35          43% 🔋⟩

‹ Messages          **Jen**          Details

He read it to me but I don't remember exactly. I'll see if he'll forward it to me. It mentioned 2 girls being harassed and your name was in it and it was talking about how they need to stop these bully's. My friend told me his buddies already "took out" the worst one. I think they just mean they beat his ass.
My friend surfs there but not often but is good friends with guys that surf there all the time.

That's so crazy

Yeah get as much info as you can. See if he'll forward the email to you.

Ok

Saturday 20:59

Hey any word from your friend ?

Saturday 22:01

Hey did you hear back from your friend ?

Sunday 09:44

Incident Number: 16-02164

**Exhibit 1-d**

# OTTEN LAW, PC

## ATTORNEYS

October 17, 2016

Email: pat@patcareylaw.com and Regular Mail
J. Patrick Carey, Esq.
LAW OFFICES OF J. PATRICK CAREY
1230 Rosecrans Avenue, Suite 300
Manhattan Beach, CA  90266

Re:  Cory Spencer, et al. vs. Lunada Bay Boys, et al.
Case No. 2:16-cv-02129-SJO-RAO

Dear Mr. Carey,

We are in receipt of your client's responses to Plaintiff Cory Spencer's First Request for
Production of Documents. This letter is our request pursuant to the Federal Rules of Civil
Procedure and the Local Rules of the Central District of California to meet at my office within the
next 10-days in a good faith effort to eliminate or narrow the issues raised in this letter. (*See*, L.R.
37-1 and Fed. R. Civ. P. 37(a)(2)(A),(B))

What follows is a brief overview of the problems that we have with your client's responses. As a
preliminary matter, your client has failed to provide a single document. That might be an adequate
response if your client was not in the possession, custody or control of any documents responsive
to our discovery request, but your client's responses do not provide enough information to even
make that determination. Your client's responses to Demands 10, 12, 13, 15, 22, 24, 26, 28, 30
and 32 fail to assert any meaningful objections and in the responses where a privilege is asserted,
your client fails to provide a privilege log as required. You should be advised that the failure to
provide sufficient information related to documents being withheld under the claim of privacy or
other privilege may constitute waiver of the privilege.

For example, "DEMAND NO. 10: Any and all texts amongst anyone who surfs, or has surfed,
Lunada Bay REFERRING or RELATED TO efforts to keep anyone from surfing Lunada Bay."
Your client's response: "Defendant objects to this request as it is overbroad, and vague and
ambiguous. Further, Defendant objects as it requires the production of documents or
correspondence potentially containing confidential information of third parties prior to the entry
of a Protective Order by the Court."

Regarding your objections that the demand is overbroad, and vague and ambiguous, Fed. R. Civ.
P. 34(b)(1)(A), requires a request for production to describe an item "with reasonable

J. Patrick Carey, Esq.
LAW OFFICES OF J. PATRICK CAREY
October 17, 2016
P a g e | 2

particularity," which this RFP does. There is nothing vague or ambiguous about the meaning of this demand. Is there something you do not understand? Perhaps I can clarify it.

Your client's response also withholds records based upon "confidential information of third parties." The fact that the response states the word "potentially" indicates that you have not even reviewed the text messages.

To the extent that your client is going to withhold documents on this basis, you must produce a privilege log. Parties withholding documents are required to identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection." (Fed. R. Civ. P. 26(b)(5); *Ramirez v. County of Los Angeles* (CD CA 2005) 231 F.R.D 407, 410—failure to provide sufficient information may constitute waiver of privilege) The party who withholds discovery materials must provide sufficient information (i.e., a privilege log) to enable the other party to evaluate the applicability of the privilege or protection. *Id.*; see also *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992). Failure to provide sufficient information may constitute a waiver of the privilege. See *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 182-83 (E.D.Cal.1991) (a "blanket objection" to each document on the ground of attorney-client privilege with no further description is clearly insufficient)

Your responses to DEMAND NOS. 12 and 13 are also inappropriate. The fact that there are photos and videos of Lunada Bay available on the internet does not excuse your client of his obligation to provide any photos or videos in his possession, custody or control to Plaintiffs. In fact, there is nothing in the wording of this to suggest that your client is expected to go collect images from the internet. Regarding your objections that the demand is overbroad and vague and ambiguous, Fed. R. Civ. P. 34(b)(1)(A), requires a request for production to describe an item "with reasonable particularity," which this RFP does. There is nothing vague or ambiguous about what the meaning of this demand. If you have suggestions on how to clarify the demand, we can discuss them at our meeting.

Your responses to DEMAND NOS. 15, 22, 24, 26, 28, 30 and 32 are not appropriate. As set forth above, your client is required to produce a privilege log.

As set forth above, this is our request to meet in person within 10-days at my office to discuss these matters. We request that you provide a privilege log <u>prior</u> to our meeting so that the necessity of a protective order can be discussed.

Very truly yours,

OTTEN LAW, PC

Victor Otten, Esq.

---

J. Patrick Carey, Esq.
LAW OFFICES OF J. PATRICK CAREY
October 17, 2016
P a g e | **3**


Cc:      Kurt Franklin, Esq. (kfranklin@hansonbridgett.com)
         Samantha Wolff (SWolff@hansonbridgett.com)

# Exhibit 1-e

Defendant Allen Johnston Privilege Log
Dated 11/3/2016

| | Document Type | Date | Author | Recipient | Persons with access | Subject Matter | Category of Privilege |
|---|---|---|---|---|---|---|---|
| 1 | Wireless Statement | 6/6/15-7/5/15 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 2 | Wireless Statement | 7/6/15-8/5/15 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 3 | Wireless Statement | 8/6/15-9/5/15 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 4 | Wireless Statement | 9/6/15-10/5/15 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 5 | Wireless Statement | 10/6/15-11/5/15 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 6 | Wireless Statement | 11/6/15-12/5/15 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 7 | Wireless Statement | 12/6/15-1/5/16 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 8 | Wireless Statement | 1/6/16-2/5/16 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 9 | Wireless Statement | 2/6/16-3/5/16 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 10 | Wireless Statement | 3/6/16-4/5/16 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 11 | Wireless Statement | 4/6/16-5/5/16 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 12 | Wireless Statement | 5/6/16-6/5/15 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 13 | Wireless Statement | 6/6/16-7/5/16 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 14 | Wireless Statement | 7/6/16-8/5/16 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 15 | Wireless Statement | 8/6/16-9/5/16 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account Statement | Privacy |
| 16 | Wireless Statement | 9/6/16-10/5/16 | AT&T | Mr. Marty Weekley | Marty Weekley and Jan Weekley | Wireless Bill Account | Privacy |

Defendant Allen Johnston Privilege Log
Dated 11/3/2016

| | | | | | | Statement | |
|---|---|---|---|---|---|---|---|

**Exhibit 1-f**

**Victor Otten**

| | |
|---|---|
| **From:** | Pat Carey <pat@patcareylaw.com> |
| **Sent:** | Wednesday, November 2, 2016 3:12 PM |
| **To:** | Victor Otten |
| **Cc:** | Kurt A. Franklin; Samantha L. Hubley; Kavita Tekchandan |
| **Subject:** | Re: Pat Carey has shared a file with you using Dropbox |

Hi Vic -

Tones don't bother me, you are doing your job.

1. As far as cell phone records, I cannot produce anything until the parties have agreed on the terms of a protective order.

2. As far as photos and videos, given what you said in our meet and confer that you are only interested in photos that show people, property, or cars, or anything that can identify people, Mr. Johnston does not have any photos or videos responsive.

3. Finally, Mr. Johnston gets back in town on Sunday, December 18. Our preferred date for Deposition would be one day on December 19, 20, or 22.

Thank you!

Pat

---

J. Patrick Carey
Law Offices of J. Patrick Carey
Manhattan Towers
1230 Rosecrans Avenue, Suite 300
Manhattan Beach, California 90266
310-526-2237

*California State Bar Board Certified Criminal Law Specialist*

www.southbaydefenselawyer.com



THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND CONFIDENTIAL. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, or distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and promptly delete the message. Thank you.

On Wed, Oct 26, 2016 at 2:55 PM, Victor Otten <vic@ottenlawpc.com> wrote:

**Exhibit 1-g**

**Victor Otten**

| | |
|---|---|
| **From:** | Victor Otten |
| **Sent:** | Thursday, November 10, 2016 8:15 PM |
| **To:** | Pat Carey; Kurt A. Franklin |
| **Subject:** | RE: Joint Stipulation - Allen Johnston |

Pat,
Your approach to responding to the Request for Production of Documents is not consistent with the FRCP. But I will refrain from rehashing those arguments here. You should also know that your statement in your prior email that your client is not in possession of any responsive photographs is not a verified response. Unfortunately, you have put us in a position where a motion to compel is necessary.
Vic

**From:** Pat Carey [mailto:pat@patcareylaw.com]
**Sent:** Thursday, November 10, 2016 4:27 PM
**To:** Victor Otten <vic@ottenlawpc.com>; Kurt A. Franklin <kfranklin@hansonbridgett.com>
**Subject:** Joint Stipulation - Allen Johnston

Hi Vic -

I received a personally delivered copy of your joint stipulation on 11/3/16 at appoximately 5:30pm. The document referred to several exhibits which were not attached. I then received another copy via mail on Tuesday 11/8 without the exhibits. Nonetheless, as a precaution to give you my portion within 7 days of receiving your original draft. attached is a word document so you can copy and paste my portion into your document.

As I refer to several times in the attached, once there is a protective order I'm not going to have any issues.

Also, what was your thoughts with regards to potentially Dec. 20 for deposition?

Thanks, and have a nice weekend.

Pat

J. Patrick Carey
Law Offices of J. Patrick Carey
Manhattan Towers
1230 Rosecrans Avenue, Suite 300
Manhattan Beach, California 90266
310-526-2237

*California State Bar Board Certified Criminal Law Specialist*

www.southbaydefenselawyer.com

1

**Exhibit 1-h**

Case 2:16-cv-02129-SJO-RAO Document 120 Filed 08/29/16 Page 2 of 2 Page ID #:1087

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 16-02129 SJO (RAOx) | Date | August 29, 2016 |
|---|---|---|---|
| Title | Cory Spencer et al v. Lunada Bay Boys et al | | |

Motion Cutoff:          Monday, August 21, 2017 @ 10:00 a.m.

Discovery Cutoff:       Monday, August 7, 2017

Last Date to Amend:     Not provided

Reference of the above case to the Alternative Dispute Resolution Program is vacated. Settlement is referred to Private Mediation for all further proceedings.

All discovery disputes are to be brought before the Magistrate Judge assigned to the case. The parties are reminded of their obligations under Fed. R. Civ. P. 26-1(a) to disclose information without a discovery request.

      Court advises counsel that all Pretrial documents must be filed in compliance with the Court's standing order, including but not limited to:

1. All Jury Instructions, agreed and opposed;
2. Verdict Forms;
3. Proposed Voir Dire Questions;
4. Agreed-To Statement of Case;
5. Witness List, listing each witness and time estimates to conduct direct, cross, redirect and recross;
6. Trial Brief and Memorandum of Contentions;
7. Joint Rule 26(f) Report;
8. If Court Trial, file Findings of Fact and Conclusions of Law and summaries of direct testimony at Pretrial Conference;
9. Motions in Limine are to be filed according to Local Rule 7 and will be heard at 9:00 a.m. the first day of trial;
10. Exhibits properly labeled, tagged, and in binders.

cc:   ADR Coordinator

|  | : | 0/23 |
|---|---|---|
| Initials of Preparer | | vpc |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 16-02129 SJO (RAOx) | Date | August 29, 2016 |
|---|---|---|---|
| Title | Cory Spencer et al v. Lunada Bay Boys et al | | |

| Present: The Honorable | S. JAMES OTERO |
|---|---|

| Victor Paul Cruz | Carol Zurborg | |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Kurt A. Franklin | Tera A. Lutz |
| Victor J. Otten | John P. Worgul |
| | Richard P. Dieffenbach |
| | Peter T. Haven |
| | Mark Fields |
| | Edwin J. Richards, Jr. |
| | L. William Locke |

**Proceedings:**          SCHEDULING CONFERENCE

Matter called.

Counsel for Defendant Alan Johnston is not present.

Attorney William Locke advises the Court that his firm will represent defendants Frank Ferrara and Charlie Ferrara.  The Court Orders that two said defendants will file an answer to the complaint by Friday, September 2, 2016.

The parties stipulate that the Court's order of 7/11/16 shall apply to all defendants.

The Court sets the following schedule:

The filing of a Motion for Class Certification shall be Friday, December 30, 2016; Opposition shall be due by January 13, 2017; Reply due Friday, January 20, 2017; Hearing on motion shall be set for Tuesday, February 21, 2017 @ 10:00 a.m.

Jury Trial:                    Tuesday, November 7, 2017  @ 9:00 a.m.

Pretrial Conference:      Monday, October 23, 2017 @ 9:00 a.m.

1

PROOF OF SERVICE

STATE OF CALIFORNIA

2

3

COUNTY OF LOS ANGELES

4

5

At the time of service, I was over 18 years of age and not a party of this action. I am employed in the county of Los Angeles, State of California. My business Address is 20550 Earl Street, #200, Torrance CA 90503.

6

7

On November 15, 2016, I served true copies of the following document(s)
Described as JOINT STIPULATION OF PARTIES RE: PLAINTIFFS' MOTION TO COMPEL DEMAND FOR PRODUCTION OF DOCUMENTS SET NO. 1 on the interested parties in this action as follows:

8

9

10

J. Patrick Carey, Esq.                              Peter Haven, Esq.
LAW OFFICES OF J. PATRICK CAREY           HAVEN LAW
1230 Rosecrans Avenue, Suite 300             1230 Rosecrans Avenue, Suite 300
Manhattan Beach, CA  90266                    Manhattan Beach, CA  90266

11

12

13

X _____ BY MAIL: I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with J Patrick Carey's practice for collecting and processing correspondence for mailing. On the same day that correspondence is places for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

14

15

16

17

18

X   BY PERSONAL SERVICE: I caused such envelope to be delivered to a commercial messenger service with instructions to personally deliver same to the offices of the addressee on this date.

19

20

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

21

22

Executed on November 15, 2016 at Torrance, California.

23

24

_Keith Weaver_
Keith Weaver

25

26

27

28

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party of this action. I am employed in the county of Los Angeles, State of California. My business Address is 3620 Pacific Coast Highway, Suite 100, Torrance CA 90505.

On November 15, 2016, I served true copies of the following document(s)
Described as **JOINT STIPULATION OF PARTIES RE: PLAINTIFF'S MOTION TO COMPEL DEMAND FOR PRODUCTION OF DOCUMENTS** on the interested parties in this action as follows:

SEE ATTACHED SERVICE LIST

[ X ]  BY MAIL: I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is places for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

[  ]   BY PERSONAL SERVICE: I caused such envelope to be delivered to a commercial messenger service with instructions to personally deliver same to the offices of the addressee on this date.

[  ]   BY EMAIIL OR ELECTRONIC TRANSMISSION: I caused a copy of the document(s) to be sent form e-mail address _____ to the personas at the email addresses listed in the Service List. The document(s) were transmitted at approximately 8:00 p.m. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

Executed on November 15, 2016, at Torrance, California.

Vanessa Marquez

PROOF OF SERVICE

List of Counsel in *Spencer, et al. v. Lunada Bay Boys, et al.*
U.S.D.C. for the Central District of California, Western Division
Case #2:16-cv-02129-SJO (RAOx)

| Party | Counsel, Firm, Address & Telephone | Email |
|---|---|---|
| Plaintiffs CORY SPENCER, DIANA MILENA REED, and COASTAL PROTECTION RANGERS, INC. | Kurt A. Franklin, Esq.<br>Samantha Wolff, Esq.<br>Caroline Lee, Esq.<br>HANSON BRIDGETT LLP<br>425 Market Street, 26th Floor<br>San Francisco, CA 94105<br>Telephone:      (415) 777-3200<br>Facsimile:      (415) 541-9366 | kfranklin@hansonbridgett.com<br>swolff@hansonbridgett.com<br>clee@hansonbridgett.com |
|  | Tyson M. Shower, Esq.<br>Landon Bailey, Esq.<br>HANSON BRIDGETT LLP<br>500 Capitol Mall, Suite 1500<br>Sacramento, CA 95814<br>Telephone:      (916) 442-3333<br>Facsimile:      (916) 442-2348 | tshower@hansonbridgett.com<br>lbailey@hansonbridgett.com |
| Defendant LUNADA BAY BOYS | Victor Otten, Esq.<br>Kavita Tekchandani, Esq.<br>OTTEN LAW, PC<br>3620 Pacific Coast Highway, #100<br>Torrance, CA 90505<br>Telephone:      (310) 378-8533<br>Facsimile:      (310) 347-4225 | vic@ottenlawpc.com<br>kavita@ottenlawpc.com |

12391436.1

List of Counsel in *Spencer, et al. v. Lunada Bay Boys, et al.*
U.S.D.C. for the Central District of California, Western Division
Case #2:16-cv-02129-SJO (RAOx)

| Party | Counsel (law firm, address, telephone, fax) | Email |
|---|---|---|
| Defendant SANG LEE | Dana Alden Fox, Esq.<br>Edward E. Ward, Jr., Esq.<br>Eric Y. Kizirian, Esq.<br>Tera Lutz, Esq.<br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>633 W. 5th Street, Suite 4000<br>Los Angeles, CA 90071<br>Telephone:   (213) 580-3858<br>Facsimile:   (213) 250-7900 | dana.fox@lewisbrisbois.com<br>edward.ward@lewisbrisbois.com<br>eric.kizirian@lewisbrisbois.com<br>tera.lutz@lewisbrisbois.com |
| | Daniel M. Crowley, Esq.[1]<br>BOOTH, MITCHEL, & STRANGE LLP<br>707 Wilshire Boulevard, Suite 4450<br>Los Angeles, CA 90017<br>Telephone:   (213) 738-0100<br>Facsimile:   (213) 380-3308 | dmcrowley@boothmitchel.com |
| Defendant BRANT BLAKEMAN | Robert T. Mackey, Esq.[2]<br>Peter H. Crossin, Esq.<br>Richard P. Dieffenbach, Esq.<br>John P. Worgul, Esq.<br>VEATCH CARLSON, LLP<br>1055 Wilshire Boulevard, 11th Floor<br>Los Angeles, CA 90017<br>Telephone:   (213) 381-2861<br>Facsimile:   (213) 383-6370 | rmackey@veatchfirm.com<br>pcrossin@veatchfirm.com<br>rdieffenbach@veatchfirm.com<br>jworgul@veatchfirm.com |

12391436.1

List of Counsel in *Spencer, et al. v. Lunada Bay Boys, et al.*
U.S.D.C. for the Central District of California, Western Division
Case #2:16-cv-02129-SJO (RAOx)

| Party | Counsel of Record, Address, Telephone, Fax | Email |
|---|---|---|
| Defendant ALAN JOHNSTON a/k/a JALIAN JOHNSTON | J. Patrick Carey, Esq.<br>LAW OFFICES OF J. PATRICK CAREY<br>1230 Rosecrans Avenue, Suite 300<br>Manhattan Beach, CA 90266<br>Telephone:    (310) 526-2237<br>Facsimile:    (424) 456-3131 | pat@patcareylaw.com |
| Defendant MICHAEL RAY PAPAYANS | Peter T. Haven, Esq.<br>HAVEN LAW<br>1230 Rosecrans Avenue, Suite 300<br>Manhattan Beach, CA 90266<br>Telephone:    (213) 842-4617<br>Facsimile:    (213) 477-2137 | peter@havenlaw.com |
| Defendant ANGELO FERRARA | Mark C. Fields, Esq.<br>LAW OFFICES OF MARK C. FIELDS, APC<br>333 South Hope Street, 35th Floor<br>Los Angeles, CA 90071<br>Telephone:    (213) 617-5225<br>Facsimile:    (213) 629-4520<br><br>Thomas M. Phillips, Esq.<br>Aaron G. Miller, Esq.<br>THE PHILLIPS FIRM<br>800 Wilshire Boulevard, Suite 1550<br>Los Angeles, CA 90017<br>Telephone:    (213) 244-9913<br>Facsimile:    (213) 244-9915 | fields@markfieldslaw.com<br><br>tphillips@thephillipsfirm.com<br>amiller@thephillipsfirm.com |

12391436.1

**List of Counsel in *Spencer, et al. v. Lunada Bay Boys, et al.***
**U.S.D.C. for the Central District of California, Western Division**
**Case #2:16-cv-02129-SJO (RAOx)**

| Party | Counsel (with firm, address, telephone, fax) | E-mail |
|---|---|---|
| Defendant N.F. [Petitioner's Mother Leonora Ferrara As His Guardian Ad Litem] | Mark C. Fields, Esq.[3] LAW OFFICES OF MARK C. FIELDS, APC 333 South Hope Street, 35th Floor Los Angeles, CA 90071 Telephone: (213) 617-5225 Facsimile: (213) 629-4520 | fields@markfieldslaw.com |
| Defendants CHARLIE FERRARA and FRANK FERRARA | Patrick Au, Esq. Laura L. Bell, Esq.[4] BREMER WHYTE BROWN & O'MEARA, LLP 21271 Burbank Blvd. Suite 110 Woodland Hills, CA 91367 Telephone: (818) 712-9800 Facsimile: (818) 712-9900 | pau@bremerwhyte.com lbell@bremerwhyte.com |
| Defendants CITY OF PALOS VERDES and CHIEF OF POLICE JEFF KEPLEY | Edwin J. Richards, Esq. Antoinette P. Hewitt, Esq. Rebecca L. Wilson, Esq. Jacob Song, Esq. Christopher D. Glos, Esq.[5] KUTAK ROCK LLP 5 Park Plaza, Suite 1500 Irvine, CA 92614-8595 Telephone: (949) 417-0999 Facsimile: (949) 417-5394 | ed.richards@kutakrock.com antoinette.hewitt@kutakrock.com rebecca.wilson@kutakrock.com jacob.song@kutakrock.com christopher.glos@kutakrock.com |

12391436.1