HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
JENNIFER ANIKO FOLDVARY, SBN 292216
jfoldvary@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:   (916) 442-3333
Facsimile:   (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone:   (310) 378-8533
Facsimile:   (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>              Plaintiffs, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        February 21, 2017<br>Time:        10:00 a.m.<br>Judge:       Honorable S. James Otero<br>Ctrm.:       10C<br>              1st Street Courthouse |

Case No. 2:16-cv-02129-SJO (RAOx)

12989390.1

1        v.

2   LUNADA BAY BOYS; THE
3   INDIVIDUAL MEMBERS OF THE
    LUNADA BAY BOYS, including but
4   not limited to SANG LEE, BRANT
5   BLAKEMAN, ALAN JOHNSTON
    AKA JALIAN JOHNSTON,
6   MICHAEL RAE PAPAYANS,
7   ANGELO FERRARA, FRANK
    FERRARA, CHARLIE FERRARA,
8   and N. F.; CITY OF PALOS VERDES
9   ESTATES; CHIEF OF POLICE JEFF
    KEPLEY, in his representative
10  capacity; and DOES 1-10,

11

12          Defendants.

Complaint Filed:    March 29, 2016
Trial Date:        November 7, 2017

12989390.1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION ................................................................................ 1

I.     INTRODUCTION AND SUMMARY ................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................... 3

    A.    Lunada Bay – One of the World's Most "Localized" Beaches. .............. 3

    B.    The Bay Boys Conspire to Exclude Outsiders Under a Set of Rules Established in the 1970s. ................................................ 4

    C.    The Plaintiff Class Representatives Suffered Violence, Intimidation, Harassment and Exclusion by the Lunada Bay Boys........................................................................................ 7

    D.    The City and Chief Kepley Are Complicit in the Bay Boys' Bad Acts. .......................................................................................... 9

III.   ARGUMENT ....................................................................................... 12

    A.    The Class Satisfies All Requirements of Rule 23(a). ........................... 12

        1.    The Class is Sufficiently Numerous. ........................................... 13

        2.    There Are Questions of Fact and Law Common Within the Class That Satisfy Rule 23(a)(2). .................................................. 13

        3.    The Representative Plaintiffs' Claims are Typical of the Class.............................................................................................. 15

        4.    The Representative Plaintiffs and Their Counsel are Adequate Representatives of the Class........................................ 16

        5.    Ascertainability is not Required, Yet Met Here Nonetheless. ............................................................................... 17

    B.    The Court Should Also Certify the Class Pursuant to Rule 23(b)(3) to Pursue Monetary Damages........................................... 18

        1.    The Class Members Have Little or No Interest in Controlling the Prosecution of Separate Actions. ..................... 18

        2.    This Forum is Ideal For Resolving the Issues Raised in This Litigation. ...................................................................... 19

        3.    Managing the Class Will Not Be Unduly Difficult. ................... 19

IV.   CONCLUSION ................................................................................... 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguirre v. Amscan Holdings, Inc.*,
  234 Cal.App.4th 1290 (2015) ................................................................ 18

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) ......................................................................... 13

*Brazil v. Dole Packaged Foods, LLC*,
  2014 WL 2466559 (N.D. Cal. May 30, 2014) ...................................... 17

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) .............................................................. 13

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................. 15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................. 14, 15, 16

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ......................................................... 13, 15

*Jones v. Diamond*,
  519 F.2d 1090 (5th Cir. 1975) .............................................................. 13

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ................................................................ 16

*Moore v. Hughes Helicopters, Inc.*,
  708 F.2d 475 (9th Cir.1983) ................................................................. 13

*O'Connor v. Boeing N. Am., Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998)........................................................... 17

*Ortega v. J.B. Hunt Transp., Inc.*,
  258 F.R.D. 361 (C.D. Cal. 2009).......................................................... 19

12989390.1

*P.P. v. Compton Unified Sch. Dist.*,
  No. CV-15-3726-MWF, 2015 WL 5752770 (C.D. Cal. Sept. 29,
  2015) ............................................................................................................... 17

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ......................................................................... 15

*Red v. Kraft Foods, Inc.*,
  No. CV 10-1028-GW, 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) ............... 17

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D.Cal.1985) ...................................................................... 15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ........................................................................................ 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................ 14

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ......................................................................... 14

*Weinberger v. Thornton*,
  114 F.R.D. 599 (S.D.Cal.1986) ...................................................................... 15

*In re Yahoo Mail Litig.*,
  No. 13–CV–04980–LHK, 2015 WL 3523908 (N.D. Cal. May 26,
  2015) ............................................................................................................... 17

**Statutes**

Federal Rule of Civil Procedure
  Rule 23 ............................................................................................................ 12
  Rule 23(a) ........................................................................................... 12, 13, 15
  Rule 23(a)(1) ................................................................................................... 13
  Rule 23(a)(2) ............................................................................................. 13, 14
  Rule 23(a)(3) ................................................................................................... 15
  Rule 23(a)(4) ............................................................................................... 1, 16
  Rule 23(b)(2) ............................................................................................... 1, 20
  Rule 23(b)(3) ............................................................................................ *passim*
  Rule 23(b)(3)(A) ............................................................................................. 18
  Rule 23(b)(3)(B) ....................................................................................... 18, 19

Local Rule 7-3 .................................................................................................... 1

**<u>NOTICE OF MOTION</u>**

Please take notice that on February 17, 2017, at 10:00 a.m. before the Honorable Judge S. James Otero, United States District Court, Courtroom 10c, 350 W. 1st Street, Los Angeles, California 90012, Plaintiffs Cory Spencer, Diana Milena Reed, and Coastal Protection Rangers, Inc. ("CPR") (collectively, "Plaintiffs") will seek an order certifying this case as a class action under Federal Rule of Civil Procedure 23(b)(2) and/or Rule 23(b)(3) as to all Defendants in this matter.[1] Plaintiffs' Motion For Class Certification is based upon this notice of motion and motion, the memorandum of points and authorities, accompanying declarations, and other briefing and arguments of counsel.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 16, 2016. (*See* Decl. Franklin, ¶¶ 11-13, Ex. 3.)

## I. INTRODUCTION AND SUMMARY

Class actions are a tool for efficiently resolving claims that warrant systemic reform. This is such a case. Plaintiffs bring this civil rights lawsuit and seek class certification under Rules 23(b)(2) and 23(b)(3).

Each of the Individual Defendants is a member of the Lunada Bay Boys gang. Like other gangs, they protect their "turf" from outsiders. And, they use secrecy as they conspire to guard their territory. To protect "their" beach they use fear, violence, and intimidation. Supported by neighbors and police with whom they grew up, they use behavior learned from the "older boys" who "made up the rules [and] term[s] of engagement" decades ago. (Decl. Otten, Ex. 3.) Because it has the likeminded intent on keeping the City of Palos Verdes Estates ("City") exclusive "to

---

[1] The Individual Defendants are Sang Lee, Brant Blakeman, Alan Johnston AKA Jalian Johnston, Michael Rae Papayans, Angelo Ferrara, Frank Ferrara, Charlie Ferrara, and N. F. In addition, Plaintiffs name the City of Palos Verdes Estates (the "City") and Chief of Police Jeff Kepley as Defendants.

1  protect this utopian landscape and future property values" consistent with the local
2  Palos Verdes Homes Association, for more than 40 years the City has not taken
3  action against the Bay Boys.  (*See id.* at Ex. 22.)  But for visiting beachgoers,
4  Lunada Bay is far from "utopia."

5      By law, in this state the public beaches belong to all, not just the wealthy
6  locals who lay claim to Lunada Bay.  Yet for decades, the City of Palos Verdes
7  Estates and the Lunada Bay Boys have eliminated public access except for a select
8  few.  With this civil rights lawsuit, Plaintiffs' goal is to stop the decades of bullying
9  and other illegal activity and return Lunada Bay to the public.

10      Plaintiffs meet the prerequisites for class certification:

11  • **Numerosity.**  Plaintiffs ask to represent many thousands of people who have
12  been, and continue to be denied, access to Lunada Bay.  There are over
13  3,000,000 surfers in the United States, an estimated 1,000,000 surfers in
      Southern California, and an estimated 238,000,000 visitor days[2] to
14  California's beaches each year.  But due to localism, fewer than 100 surfers
      regularly use Lunada Bay without being harassed.
15

16  • **Commonality and Typicality.**  The Plaintiffs' claims are similar to those of
      the class: they want to safely visit Lunada Bay free from harassment.  The
17  class consists of out-of-area beachgoers who want to visit and recreate in
      Lunada Bay without being harassed.  The Plaintiffs and the Class Members
18  have been, and continue to be, deprived the opportunity to enjoy the
      recreational opportunities and beauty of Lunada Bay by virtue of the Bay
19  Boys' unlawful conduct.
20

21  • **Adequacy.**  The named representatives are dedicated beachgoers who will
      prosecute the action vigorously through qualified counsel.
22

23  • **Incidental Damages.**  The Plaintiffs seek incidental non-individualized
      monetary damages.  By applying an economic recreation value, Plaintiffs
24  _____

25  [2] The number of "visitors" to a beach is the number of unique individuals who visit
26  the beach in a given year.  A visitor-day, in contrast, is the total number of all-day
      visits by everyone.  For beach count studies, attendance is typically kept in visitor-
27  days as opposed to identifying unique individual visitors.

28

preliminarily estimate damages at $50 to $80 per visit for each class member.

In sum, Plaintiffs suffered threats, intimidation, and assault. Their efforts to seek redress from the City went unanswered. Their experiences are like those of other members of the class. (*See*, Section II.B, supra; see also Decl. Otten, ¶ 23 (additional witnesses are too afraid to submit declarations for fear of retribution by Bay Boys). As more fully explained below, Plaintiffs ask the Court to grant this class certification motion and name Hanson Bridgett LLP and Otten Law PC as class counsel.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Lunada Bay – One of the World's Most "Localized" Beaches.

Established in 1923 and located on the Palos Verdes Peninsula on the south end of Los Angeles County, the City is well known for its exclusivity. (*See*, *e.g.*, Decl. Akhavan, ¶ 15.) It is also the only city on the Palos Verdes Peninsula with its own police department. (Decl. Otten, Ex. 1 at 121:5-6.)

Lunada Bay is a City-owned beach purportedly open to the public. (Decl. Otten, Exs. 16 at 106:22-107:5 & 1 at 21:18-24.) In addition to its striking views, Lunada Bay is known around the world for good surf. (*See*, *e.g.*, Expert Decl. P. Neushul, ¶ 13; Expert Decl. King, ¶ 15.) Lunada Bay's waves often reach as high as 15 to 20 feet during prime season. (Decl. P. Neushul at ¶ 17.) Lunada Bay can host a barreling right-breaking, rock-reef point-break type wave and hold a large swell. (*Id*. ¶ 13.) Lunada Bay is also known for its sheer cliffs, pristine shoreline, beautiful tide pools, and unspoiled shoreline adjacent to hiking trials. (*Id*.; Decl. King, ¶ 16.)

Given Lunada Bay's proximity to densely-populated Los Angeles, its natural beauty, and the unique beach recreation that it offers, one would expect Lunada Bay to be a popular destination for visitors. But it is not. (Decl. King, ¶ 17.) Even though it is a public beach, Luanda Bay is available to few.

Consistent with a practice known in surf culture as "localism," the Bay Boys employ a campaign of harassing conduct toward "outsiders" for the purpose of

1 excluding them from Lunada Bay.  (Decl. P. Neushul, ¶¶ 14, 17.)  Through this

2 behavior, the Bay Boys have a reputation for barring out-of-town would-be

3 beachgoers from "their turf" through "localism."  (*Id.* ¶ 17; Decls. Sisson, ¶ 4; Will,

4 ¶ 4; K. Claypool, ¶ 3; Carpenter, ¶ 5.)

**B.    The Bay Boys Conspire to Exclude Outsiders Under a Set of Rules Established in the 1970s.**

7       As part of the Bay Boys, the Individual Defendants take great pride in

8 purging Lunada Bay of visitors.  (*See* Decl. P. Neushul, ¶ 16.)  The Bay Boys state

9 that they protect "their turf" at all costs and "WILL DIE BY" the set of "rules" and

10 "term[s] of engagement" that they established in the 1970s.  (Decl. Otten, Ex. 3

11 (emphasis in original).)   Defendant Charlie Ferrara explained to Plaintiff Reed that

12 the Bay Boys are "like a fraternity": they haze those who seek to join, including

13 making them "drink frickin' piss to see how bad you want to be in this fraternity."

14 (Decl. Reed, Exs. 5, 6.)  The Bay Boys are "family members," friends, and

15 "pirate[s]."  (Decls. Otten, Ex. 3; Hagins, Ex. 6 (Frank Ferrara referring to "pirates"

16 of Lunada Bay)).  To the Bay Boys, Lunada Bay "is not just a surf spot" but it is

17 their "church/home/sanctuary/temple" and they are "not going to share it."  (Decl.

18 Otten, Exs. 3, 4, emphasis omitted.)

19       The Bay Boys employ various "options to deterr [sic] outsiders from surfing

20 our home."  (Decl. Otten, Ex. 5.)  Their goal is to repel visitors by making them

21 miserable that they never return.  As Charlie Ferrara stated, "I can't tell you that you

22 can't go surfing, but what I can do is make sure you don't have fun out there . . .

23 [a]nd then what's the point of that?  You're going to come here when the surf's good

24 everywhere else and get bummed and have a bad day?"  (Decl. Reed, Exs. 5, 6.)

25 The Bay Boys "do not feel guilty" excluding visitors from Lunada Bay because they

26 believe it "was ours in the first place." *(Decl. Otten, Ex. 4)*

27       These words have been put into action for decades and visitors have

28 experienced a long history of intimidation, assault, battery and vandalism, among

other crimes:

- Bay Boys harass visitors immediately upon their arrival to Paseo Del Mar, the street that parallels the bluffs above Lunada Bay. (Decls. Spencer, ¶ 11; K. Claypool, ¶ 18; Taloa, ¶ 20; Reed, ¶ 8; Bacon, ¶¶ 4-5; Gero, ¶¶ 6, 9-11.)

- Visitors who take photographs are blocked, told they cannot photograph local surfers or waves, and/or are interrogated. (Decls. Innis, ¶ 4; Reed, ¶ 20.)

- Visitors' cars are vandalized. Their windows are covered in surfboard wax, derogatory words are scrawled across their windshield. (Decls. Jongeward, ¶ 6; K. Claypool, ¶ 6; Carpenter, ¶ 9.) The air in their tires is let out or their tires are slashed. (Decls. Young, ¶ 11; K. Claypool, ¶ 6; Bacon, ¶ 7; Gero, ¶ 7.) Dog feces is smeared on vehicles, door panels are kicked in, windshields are scored, paint is damaged by keys, and taillights and mirrors are broken. (*Id.*; Decl. Pastor, ¶ 8.) Visitors hire security guards to watch their cars while they surf or stand guard over friends' vehicles. (Decl. Spencer, ¶¶ 10, 21.)

- Bay Boys block the paths to the beach and shout at visitors, call them "kooks" (a derogatory surfing term), ask them what they're doing there, and tell them to "fucking go home." (Decls. Jongeward, ¶ 4; Spencer, ¶ 11; Wright, ¶ 8; Young, ¶ 6; Conn, ¶ 6; Taloa, ¶ 19; Reed, ¶¶ 8, 9, 19; Will, ¶ 7.) Bay Boys tell visitors "it's really dangerous," "you shouldn't surf here," and "the people out there will make sure you don't have fun." (Decl. Wright, ¶ 8.) Some surfers are punched in the face and told "[t]his is my fucking house and my fucking yard." (Decl. Akhavan, ¶ 9.) Bay Boys stand guard while others assault visitors. (*Id.* ¶ 12.)

- Boy Boys like Defendant Blakeman stand within several feet of visitors holding a camera in their face and film them in a harassing manner while on the bluffs, walking down the trail, on the beach, and in the Rock Fort. (Decls. Wright, ¶¶ 8, 18; K. Claypool, ¶¶ 25, 28; Reed, ¶¶ 9, 21; C. Claypool, ¶ 12.)

- Bay Boys pelt visitors with rocks, dirt clods, and glass while they navigate the steep and unmarked paths from the bluffs to the shoreline. (Decls. Jongeward, ¶ 6; Pastor, ¶ 4; Conn, ¶ 7; S. Neushul, ¶ 8; Gersch, ¶ 5; Gero, ¶ 8; Perez, ¶ 4.)

- Bay Boys hurl obscenities at visitors, calling them "whores" and "fucking faggots," and dare them to go in the water "and see what happens." (Decls. Wright, ¶¶ 13, 19; Young, ¶ 9; K. Claypool, ¶¶ 5, 20; Reed, ¶ 11.)

- Visitors in the water are encircled by Bay Boys, including Defendants Blakeman, Papayans, Lee, Charlie Ferrara, and Johnston, among others, who intentionally obstruct visitors' movements, shadow them, block them from

surfing, yell racially-charged insults, tell them they're "not fucking welcome," "get the fuck out of here," "we'll beat your ass," drop in on them while surfing, intentionally collide with them, shoot surf boards, and put them at great risk.  (Decls. Spencer, ¶¶ 12-14; Taloa, ¶¶ 18, 20; S. Neushul, ¶¶ 9, 11; Pastor, ¶ 5; Jongeward, ¶ 8; Wright, ¶¶ 9, 11-12, 18; Young, ¶¶ 7-8; K. Claypool, ¶¶ 5, 9, 13, 23-24; MacHarg, ¶¶ 6-7; Will, ¶ 8; Carpenter, ¶ 8; Marsch, ¶ 3; C. Claypool, ¶¶ 9, 11.)

- Bay Boys provoke visitors to throw the first punch through extreme harassment and intimidation.  (Decls. Taloa, ¶ 19; MacHarg, ¶¶ 5-7.)  Bay Boys then become physically violent with self-proclaimed impunity.  (Decl. Otten, Ex. 5.)

These unlawful acts are well organized and coordinated via email and text. (Decls. Spencer, ¶ 22; Wright, ¶ 8.)

The Bay Boys also rummage through social media to watch for visitors who try to organize surf outings to Lunada Bay.  (Decl. K. Claypool, ¶ 19.)  In January 2014, through his Facebook page "Aloha Point," Christopher Taloa organized a peaceful surf outing for visitors who desired to safely surf Lunada Bay.  (*See* Decls. Spencer, ¶ 7; Taloa, ¶ 17.)  This surf outing was planned for Martin Luther King, Jr. Day – January 20, 2014.  (*Id.*)  Bay Boys tracked Taloa's Aloha Point Facebook page and circulated notification of the event via email on January 16, 2014 "to the whole crew so everyone knows and we can all be on the same page."  (Decl. Otten, Ex. 4.)  Bay Boy Charlie Mowat, who received this email along with Defendant Lee and 18 others, responded, "I will be on the patio alllllllllllll [sic] day on Monday throwing out heckles and sporting a BBQ.  I'm already warming up.  Don't miss the fun."  (*Id.*; *see also* Decl. Otten, Ex. 6.)  Defendant Lee also reminded 26 friends via email on January 17, 2016 that "everyone should all try to surf this coming Monday."  (Decl. Otten, Ex. 7.)  The day of the event, a Bay Boy harangued Taloa by wearing "Blackface" and wearing an Afro wig after getting ready at Defendant Angelo Ferrara's house.  (Decls. Taloa, ¶ 17; Otten, Ex. 8 at 165:8-18.)  Other Bay Boys were present, kicking visiting surfers under the water and shouting that they "don't pay enough taxes to be here."  (Decl. Taloa, ¶ 17.)  Defendant Johnston

1  verbally harassed and kicked Taloa in the water.  (*Id.*)

2      The Bay Boys also coordinated via text message upon learning of this lawsuit.

3  Bay Boy Mowat, Defendant Johnston, and eight others, including someone believed

4  to be Michael Thiel, said that this lawsuit was "[p]robably [brought by] that Diana

5  bitch" and cautioned everyone "to be on the ultra down-low."  (Decls. Otten, Ex. 9;

6  Franklin, ¶ 10 & Ex. 1.)  Another on the group text, who is believed to be David

7  Hilton, chimed in: "[t]here is hopefully no evidence that those named barred the

8  plaintiffs from going surfing and no proof of any physical or economic damage."

9  (Decls. Otten, Ex. 9; Franklin, ¶ 10 & Ex. 2.)

10 **C.    The Plaintiff Class Representatives Suffered Violence, Intimidation, Harassment and Exclusion by the Lunada Bay Boys.**

11

12      Plaintiffs Spencer's and Reed's experiences mirror those of other visitors.

13 Growing up, Plaintiff Spencer desired to surf Lunada Bay for decades but avoided it

14 out of fear of the Bay Boys.  (Decl. Spencer, ¶¶ 3-4.)  When he finally surfed

15 Lunada Bay in January 2016, the Bay Boys' harassment began immediately upon his

16 arrival.  (*Id.*, ¶ 11.)  He was called a "kook" and told to "fucking go home."  (*Id.*)  In

17 the water, he was shadowed by Defendant Blakeman who impeded his movement in

18 any direction and prevented him from catching waves.  (*Id.*, ¶ 12.)  Another Bay

19 Boy maneuvered his surfboard directly toward Spencer, slicing Spencer's wrist.

20 (*Id.*, ¶ 13.)  Both Blakeman and the other Bay Boy were communicating with each

21 other and other Bay Boys in the Rock Fort that morning.  (*Id.*, ¶ 16.)  Spencer

22 notified City police in advance of his arrival seeking extra patrols but none were

23 present in the water, along the shoreline, or near the Rock Fort so these incidents

24 went unnoticed.  (*Id.*, ¶ 17.)  Spencer returned a week later, only to be harassed

25 again.  (*Id.*, ¶¶ 21-23.)

26      Plaintiff Reed also first visited Lunada Bay in January 2016.  (Decl. Reed,

27 ¶ 7.)  She, too, was immediately harassed upon her arrival at Lunada Bay on January

28 29, 2016, called a "kook," and told she couldn't surf there.  (*Id.*, ¶ 8.)  Blakeman

1   filmed Reed on the bluffs and made her feel uncomfortable.  (*Id.*, ¶ 9.)  When she

2   walked down to the beach, Bay Boy David Mello screamed "whore" and other

3   profanities at Reed while City police witnessed the incident but did not intervene.

4   (*Id.*, ¶¶ 11-12.)  After the incident, a City policeman asked Reed if she wanted to

5   make a citizen's arrest.  (*Id.*, ¶ 13.)  When she said she did, the officer discouraged

6   her from doing so.  (*Id.*, ¶ 14.)

7        Reed returned to Lunada Bay in mid-February 2016 to take photos while her

8   friends surfed.  (*Id.*, ¶ 18.)  Upon her arrival, she was again filmed by Blakeman and

9   told that she was "done."  (*Id.*, ¶ 19.)  Later that morning, Defendant Charlie Ferrara

10  watched Defendants Blakeman and Johnston rush into the Rock Fort toward Reed in

11  a hostile manner.  (*Id.*, ¶ 21.)  Johnston was loud, seemed drunk, sprayed beer on

12  Reed, said she was "fucking sexy baby," that he was "big enough to get the job

13  done," and mimicked an orgasm.  (*Id.*, ¶ 24.)  He exposed his penis to her while

14  changing into his wetsuit.  (*Id.*)  Blakeman filmed the incident and kept the camera

15  close to Reed.  (*Id.*, ¶ 21.)  When she asked why he was filming her, he responded

16  "because I feel like it."  (*Id.*, ¶ 22.)

17        Reed complained to the police who instantly identified Blakeman.  (*Id.*, ¶ 27.)

18  The police also knew Charlie Ferrara.  (*Id.*, ¶ 28.)  A policeman who took a written

19  report told Reed that the police have a "book containing driver's license photographs

20  of all Lunada Bay Boys" that she could use to identify the third Bay Boy.  (*Id.*, ¶

21  29.)  But no one from the City Police Department followed up, despite Reed's

22  repeated efforts to contact them.  (*Id.*, ¶ 30.)  Finally, after she retained an attorney

23  who facilitated a meeting with Chief Kepley and Captain Velez, she was still told

24  she could not review photos and that Lunada Bay was unsafe.  (*Id.*, ¶ 31.)

25        CPR is a nonprofit dedicated to ensuring beach access for the public and

26  environmental justice.  (Decl. Slatten, ¶¶ 6, 10.)  CPR believes all visitors should be

27  able to visit Lunada Bay without fear of attack or vandalism.  (*Id.*, ¶ 12.)

28  / / /

**D.     The City and Chief Kepley Are Complicit in the Bay Boys' Bad Acts.**

The City and its Police Department are long aware of the Bay Boys targeting visitors for exclusion.  (*See*, *e.g.*, Decl. Otten, Ex. 10.)  The City and Police may say they do not tolerate the Bay Boys' behavior, but then they fail to address the problem.  (Decl. Sisson, ¶ 8.)  Other times, City officials dismiss the Bay Boys and localism as "urban legend."  Ultimately, this "legacy problem" persists unabated. (Decl. Otten, Ex. 11.)

City employees, including a police dispatcher, admit a problem exists but do little more than caution visitors:

> We know all of them.  They are infamous around here.
> They are pretty much grown men in little mens' mindset.
> They don't like anyone that's not one of the Bay Boys
> surfing down there.  It literally is like a game with kids on
> a schoolyard to them.  And they don't want you playing on
> their swing set.  But, you know, it is what it is.  If you feel
> uncomfortable, you know, then don't do it.

(Decl. Otten, Ex. 12.)  Police Chief Kepley "acknowledge[d] [he has] much work to do here with these bullies, and [that] this has been going on intermittently for probably fifty years."  (Decl. Otten, Exs. 20, 1 at 62-65.)  Chief Kepley even agreed that there "may be some truth" to the fact that the Bay Boys are "like an organized street gang."  (*Id.*)  Chief Kepley advised the City Council that he was considering "making contact with the surfers" but was hesitant to do so for fear of "alienat[ing] many of our long-term residents."  (Decl. Otten, Ex. 13.)

The City officials' feigned pledges to eradicate the Bay Boys always give way to its concern with public image.  (*See*, *e.g.*, Decl. Otten, Ex. 14 (City rejected Assemblyman's offer of state resources to address localism because the "attention might even cause more unwanted publicity").)  When Chief Kepley was first exposed to the localism problem at Lunada Bay as the new Chief, he condemned the Bay Boys' unlawful acts of exclusion.  He stated that "'[h]opefully, it won't take that long to resolve, but I think it's very important to get the word out as aggressively and enthusiastically as we can that the status quo is going to be mixed up around

1    here.'"  (Decl. Otten, Ex. 1 at 50:2-51:16.)  Chief Kepley cautioned: "'We will make

2    an example out of anyone who behaves criminally down there.'"  (*Id.* at 54:8-14.)

3         Chief Kepley's comments were not well-received.  The Palos Verdes Estates

4    community, including Bay Boys Charlie Mowat, Michael Thiel, and Michael S.

5    Papayans, sent letters and/or emails to the City Manager questioning the Chief's

6    motives and demanding his resignation.  Mowat was "outraged" by the Chief's

7    efforts to "railroad[] the local surfers that have policed and protected these shores

8    for over 5 decades!"  (Decl. Otten, Exs. 17, 1 at 70-74.)  Thiel questioned the Chief's

9    public statements and efforts to address the "surfing issues in Lunada Bay."  (Decl.

10   Otten, Exs. 18, 1 at 194:13-195:13.)  And Michael S. Papayans "voice[d] [his]

11   disgust with the way our police resources are being utilized by the current police

12   chief Kepley."  (Decl. Otten, Exs. 19, 1 at 77-79.)  He was concerned that "with

13   [Kepley's] words written in the newspapers, and his actions, he is inviting surfers

14   from outside our community to be escorted to the surf."  (*Id.*)

15        Chief Kepley softened his get-tough-on-crime message following this

16   backlash.  (*See* Decl. Otten, Ex. 1 at 61:16-19.)  He "didn't want to jeopardize any

17   preexisting relationships or relationships we may form in the future [in order] to

18   gain compliance," and decided it would be better to "work collaboratively" with the

19   Bay Boys.  (*Id.* at 86:4-87:1.)

20        Chief Kepley's "collaborative" message was in line with the City's historical

21   symbiotic relationship with the Bay Boys.  Many current and former City police

22   officers grew up with Bay Boys.  (Decl. Otten, Exs. 15 at 243-244 (Blakeman

23   acknowledging he has known a number of police officers for many years) & 17

24   (Charlie Mowat explaining he "[grew] up with a number of the fine police officers

25   of PVE").)  Defendant Blakeman's personal cell phone is provided by the City,

26   though he is not a City employee.  (Decl. Otten, Ex. 15 at 15:9-13.)  And, when the

27   City surreptitiously planned an undercover surfing operation at Lunada Bay in

28   January 2016, word of the operation leaked to Bay Boy Michael Thiel.  (Decl.

1    Otten, Ex. 1 at 42-43.)  Only four or five City employees were aware of the
2    undercover operation.  (Decl. Otten, Ex. 1 at 43.)  Yet, the City Manager received a
3    visit from Mr. Thiel – the same individual who texted with Defendant Johnston and
4    others when this lawsuit was filed – asking why the police were planning an
5    undercover operation the next day at Lunada Bay.  (*See* Decl. Otten, Exs. 1 at 42 &
6    16 at 139-141.)  The operation was canceled.  (*Id.* at Ex. 1 at 42:22-23.)

7         Next, visitors who endure and report harassment to the police receive
8    indifference, a platitude, or no response.  (Decl. Young, ¶ 12; *see also* Decl. Conn, ¶
9    8.)  Other reports of harassment receive a passive investigation without any follow
10   up.  (*See*, *e.g.*, Decls. Innis, ¶ 6; Bacon, ¶ 10; Carpenter, ¶ 15; Gero, ¶ 12.)
11   Eventually, victims stop reporting the crimes.  (Decl. Young, ¶ 12; *see also* Decl.
12   Conn, ¶ 8.)  The City police then claim there's nothing they can do because people
13   are not reporting the Bay Boys' acts and say "[w]ith no victim, there is no crime."
14   (*See* Decl. Otten, Ex. 10.)

15        Visitors who dare complain about the Bay Boys to the City police may find
16   themselves the target of a police investigation for alleged wrongdoing or are
17   blatantly ignored.  (Decls. Sisson, ¶ 8; Wright, ¶ 22.)  When Ricardo Pastor called
18   the police to report Bay Boys' harassment, the police officer asked where he was
19   from.  Upon learning that Mr. Pastor lived in Manhattan Beach, the officer told him
20   "maybe you shouldn't be surfing here" and said that he would not take a report
21   because "we're not required to carry stationary."  (Decl. Pastor, ¶ 6.)

22        Even when officers observe wrongdoing by the Bay Boys, they ignore it.
23   Although officers were present nearby and witnessed Plaintiff Reed being verbally
24   accosted by Bay Boy David Mello, they did not intervene to stop him.  (Decl. Reed,
25   ¶ 11.)  Instead, they waited for Mello to finish his verbal assault before approaching
26   Reed to ask her "what was going on."  (*Id.*, ¶ 13; *see also* Decls. Spencer, ¶ 24;
27   MacHarg, Ex. 1 (police acknowledged Defendant Sang Lee committed a battery in
28   their presence but did not intervene).)

12989390.1

Sometimes, City police overtly act to exclude visitors, telling them they "are a long way from home," "it's getting late so you need to leave," or telling them to "walk towards Torrance."  (Decl. Gersch, ¶¶ 7-8; *see also*, Decl. Carpenter, ¶ 15.)  City police will conduct traffic stops to ask people if they are lost or what business they have in Palos Verdes.  (Decl. Will, ¶ 9.)

City Police also dissuade victims from pursuing legal remedies against the Bay Boys, stressing the civil liability they could face since residents of Lunada Bay are wealthy and can afford to hire good lawyers.  (Decl. Reed, ¶¶ 11-14.)

## III.   ARGUMENT

This action is primarily about equitable relief.  Plaintiffs ask the Court to certify a class pursuant under FRCP 23(b)(2) and FRCP 23(b)(3).  Damages are incidental, and do not require individualized determination.  The class consists of:

> All visiting beachgoers to Lunada Bay who do not live in Palos Verdes Estates, as well as those who have been deterred from visiting Lunada Bay because of the Bay Boys' actions, the Individual Defendants' actions, the City of PVE's actions and inaction, and Defendant Chief of Police Kepley's action and inaction, and subsequently denied during the Liability Period, and/or are currently being denied, on the basis of them living outside of the City of PVE, full and equal enjoyment of rights under the state and federal constitution, to services, facilities, privileges, advantages, and/or recreational opportunities at Lunada Bay. For purposes of this class, "visiting beachgoers" includes all persons who do not reside in the City of PVE, and who are not members of the Bay Boys, but want lawful, safe, and secure access to Lunada Bay to engage in recreational activities, including, but not limited to, surfers, boaters, sunbathers, fisherman, picnickers, kneeboarders, stand-up paddle boarders, boogie boarders, bodysurfers, windsurfers, kite surfers, kayakers, walkers, dog walkers, hikers, beachcombers, photographers, and sightseers.

As a civil rights class action that primarily seeks equitable relief, Plaintiffs' Motion for Class Certification should be granted.

## A.   The Class Satisfies All Requirements of Rule 23(a).

FRCP 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).  For a named plaintiff to meet the requirements for class certification under FRCP 23, the court must find:

"(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992).  For class actions in the civil rights field, "the general rules on burden of proof must not be applied rigidly or blindly.  The court too bears a great responsibility to insure the just resolution of the claims presented . . ." *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975).

While some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the certification stage.  *Moore v. Hughes Helicopters, Inc*., 708 F.2d 475, 480 (9th Cir.1983); *see also Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

### 1.    The Class is Sufficiently Numerous.

The requirement that a class be "numerous" under Rule 23(a)(1) "is met if the class is so large that joinder of all members is impracticable." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012).  Here, numerosity is satisfied.  There are more than 30,000,000 residents in Southern California, more than 230,000,000 day visitors to California beaches, more than 3,000,000 surfers in the United States, and an estimated 1,000,000 surfers in Southern California, yet because of localism at Lunada Bay and the City's complicity, fewer than 100 people regularly surf that beach.  (Decl. King, ¶¶ 9-10.)  But, there should minimally be somewhere between 20,000 and 25,000 annual surfers plus other hikers and visitors. (*Id.*, ¶ 19.)  Thus, this beach-going class is minimally more than 20,000.

### 2.    There Are Questions of Fact and Law Common Within the Class That Satisfy Rule 23(a)(2).

Class certification is appropriate where "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide

resolution.  So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013); see also *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (single common question sufficient to establish the requisite commonality to satisfy Rule 23(a)(2)).

The commonality requirement under Rule 23(a)(2) "has been construed permissively.  All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, the common questions of law and fact are extensive, as set forth in the Complaint. *See* Complaint, Dkt. No. 39-2, ¶ 33 (listing 16 separate questions of fact and law common to the class).  Common questions of fact and law predominate the inquiry into all of the Class Members' claims, including, most notably, "Whether the Bay Boys, through unlawful conduct, have claimed the Lunada Bay area as their 'turf' and attempt to unlawfully dissuade beachgoers that live outside of Palos Verdes Estates from recreating in the park, bluff, beach, and ocean areas in and around Lunada Bay" and "Whether, acting under color of law, by its policies, customs, and/or longstanding practices, and in deliberate indifference towards Plaintiffs' rights under state and federal law, [the City] has, under the laws of the United States and/or the United States Constitution, unlawfully excluded Plaintiffs, and persons like them, from their right to recreational opportunities at Palos Verdes Estates' parks, beaches, and access to the ocean."

The many victim declarations submitted with this brief demonstrate that all had similar experiences when they attempted to recreate at Lunada Bay.  In short, by the concerted efforts of the Bay Boys and each Individual Defendant, combined with City complicity, Plaintiffs and the class are barred from using Lunada Bay.

/ / /

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

12989390.1

### 3.    The Representative Plaintiffs' Claims are Typical of the Class.

Rule 23(a)(3) further provides that class certification is appropriate where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The Rule 23(a)(3) "typicality" requirement is evaluated under "permissive standards" whereby representative claims are considered "typical" if they "are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

Typicality is adequately shown where, as here, "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon*, 976 F.2d at 508 (citing *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985)).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Id.* (citing *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D.Cal.1986)).  "Thus, '[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'"  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanon*, 976 F.2d at 508).  Moreover, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 178 n.13 (1982).

Here, Plaintiffs and all of the Class Members have been harmed the same way by the actions of the Bay Boys and the complicit conduct of the City and its police.  All have been (and are) deprived the opportunity to enjoy the recreational opportunities and unique natural beauty of Lunada Bay by virtue of the unlawful,

1  abusive conduct of the Bay Boys.

2      The City and its police, including Chief Kepley, show their complicity in this

3  conduct by consistently and uniformly turning a blind eye to the Bay Boys' reign

4  over Lunada Bay despite knowing that it persists and is unlawful.

5      **4.      The Representative Plaintiffs and Their Counsel are Adequate Representatives of the Class.**

6

7      To satisfy Rule 23(a)(4), "the named representatives must appear able to

8  prosecute the action vigorously through qualified counsel, and second, the

9  representatives must not have antagonistic or conflicting interests with the unnamed

10  members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512

11  (9th Cir. 1978); see also *Hanlon*, 150 F.3d at 1020 ("[r]esolution of two questions

12  determines legal adequacy: (1) do the named plaintiffs and their counsel have any

13  conflicts of interest with other class members and (2) will the named plaintiffs and

14  their counsel prosecute the action vigorously on behalf of the class?")

15      After substantial investigation, Class Counsel brought this action on behalf of

16  the Plaintiffs and the class for the purpose of returning Lunada Bay to the public,

17  and Class Counsel intends to prosecute this action vigorously in furtherance of this

18  objective.  (Decl. Franklin, ¶ 7; Decl. Otten, ¶ 25.)  Class counsel have no conflicts

19  with unnamed members of the class here.  (*Id.*)  Nor do the named plaintiffs in this

20  matter have any conflicts with unnamed members of the class.  (*Id.*)  Plaintiffs,

21  Class Counsel, and the class all have the same common goal in this matter:

22  Stopping the Bay Boys from continuing to misappropriate the public property of

23  Lunada Bay for their own private use through unlawful and otherwise socially

24  unacceptable means.  Further, they want the City and its law enforcement agencies

25  to enforce existing laws and protect the safety and security of *all* members of the

26  public who wish to enjoy Lunada Bay, regardless of their residency, income, gender,

27  race, or other protected category, and to ensure that this unique coastal area will be

28  available for public use and enjoyment, as it should be, and as it always should have

1   been.  (Decl. Spencer, ¶ 32; Decl. Reed, ¶ 40; Decl. Slatten, ¶¶ 12-13.)

2       Moreover, on behalf of the class, Class Counsel and the Representative

3   Plaintiffs seek incidental damages that can be established on a non-individualized

4   basis to compensate for the losses suffered at the hands of the Bay Boys, the City,

5   and Chief Kepley.  Finally, Class Counsel are experienced, well-qualified class

6   action attorneys with sufficient resources to litigate this matter effectively.  (Decl.

7   Franklin, ¶¶ 2-5, 7; Decl. Otten, ¶ 1.)  The interests of the classes, and each

8   individual member therein, will be well-represented in this matter.

9       **5.      Ascertainability is not Required, Yet Met Here Nonetheless.**

10       Ascertainability is not required for class certification under Rule 23(b)(2).

11   *P.P. v. Compton Unified Sch. Dist.*, No. CV-15-3726-MWF (PLAx), 2015 WL

12   5752770 (C.D. Cal. Sept. 29, 2015) at *23; *In re Yahoo Mail Litig.*, No. 13–CV–

13   04980–LHK, 2015 WL 3523908 at *16 (N.D. Cal. May 26, 2015).  Even on

14   damages classes under Rule 23(b)(3), the Ninth Circuit has not explicitly recognized

15   ascertainability as a requirement for class certification in a published decision.  And

16   under Rule 23(b)(3), ascertainability is not a formal prerequisite to certification.

17   *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW (AGRx), 2012 WL 8019257, at *6

18   (C.D. Cal. Apr. 12, 2012) ("A lack of ascertainability alone will generally not scuttle

19   class certification.").

20       Still, here, the class is ascertainable.  A class "need not be so ascertainable

21   that every potential member can be identified at the commencement of the action."

22   *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (quotation

23   omitted).  Rather, all that is necessary is that "the general outlines of the

24   membership of the class are determinable at the outset of the litigation."  *Id*.  Thus, a

25   class is sufficiently ascertainable if its description is "definite enough so that it is

26   administratively feasible for the court to ascertain whether an individual is a

27   member."  *Id*.; *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559 (N.D. Cal.

28   May 30, 2014) ("In this Circuit, it is enough that the class definition describes a set

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

12989390.1

of common characteristics sufficient to allow a prospective plaintiff to identify [herself as a member of the class."]); *see also*, *Aguirre v. Amscan Holdings, Inc.*, 234 Cal.App.4th 1290 (2015) (Class was, in fact, ascertainable because (1) the class definition contained a set of "common characteristics" that would allow class members to self-identify themselves, and (2) because the plaintiff had suggested an objective method for identifying class members.)

Here, the class is well-defined: Surfers and other visiting beachgoers who are not from Palos Verdes Estates and who have been deterred from enjoying Lunada Bay because of the localism problem created by the Bay Boys and the City.  If a beachgoer seeks to opt out of the damage claim after self-identifying, he or she can do so.

**B.**   **The Court Should Also Certify the Class Pursuant to Rule 23(b)(3) to Pursue Monetary Damages.**

Certification under Rule 23(b)(3) is also proper because "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  As with incidental damages under Rule 23(b)(2), the Plaintiffs seek precisely the same thing:  Compensation for the value of the public asset that has been misappropriated from them for decades.  Being conservative, "the estimate of the recreational value of the surfing at Lunada Bay is between $50 to $80 per person per visit [or denied visit] during the high season."  (Decl. King, ¶ 19.)

**1.**   **The Class Members Have Little or No Interest in Controlling the Prosecution of Separate Actions.**

Rule 23(b)(3)(A) provides that in considering whether certification of a class pursuant to Rule 23(b)(3) is appropriate, courts should consider "the class members' interests in individually controlling the prosecution or defense of separate action." Fed. R. Civ. P. 23(b)(3)(A).  Additionally, Rule 23(b)(3)(B) provides that courts

1  should also consider "the extent and nature of any litigation concerning the
2  controversy already begun by or against class members."  Fed. R. Civ. P.
3  23(b)(3)(B).

4      Here, these factors weigh heavily in favor of certifying under Rule 23(b)(3),
5  as no class member has shown any interest in maintaining an individual action
6  arising from the Bay Boys' ongoing conduct.  Few are willing to stand up to the Bay
7  Boys and the City.  Indeed, many victims of the Bay Boys' harassment are too afraid
8  to come forward.  (*See*, Decl. Otten, ¶ 23.)

9      **2.      This Forum is Ideal For Resolving the Issues Raised in This
          Litigation.**
10

11      In the course of evaluating whether a class should be certified under Rule
12  23(b)(3), courts are also asked to consider "the desirability or undesirability of
13  concentrating the litigation of the claims in the particular forum."  Fed. R. Civ. P.
14  23(b)(3)(C).  This forum is ideal for resolving claims brought by the 23(b)(3) class.
15  The actions giving rise to the claims all take place within the Central District of
16  California.  Yet, the claims implicate the Constitutional rights of citizens throughout
17  the United States.  (Decl. King, ¶¶ 8, 9, 15, & 17.)  This Court is well-equipped to
18  adjudicate this matter and provide justice to all parties involved, including the
19  named Plaintiffs and all Rule 23(b)(3) Class members.

20      **3.      Managing the Class Will Not Be Unduly Difficult.**

21      Finally, Rule 23(b)(3) identifies "the likely difficulties in managing a class
22  action" as a matter pertinent to class certification.  Fed. R. Civ. P. 23(b)(3)(D).
23  Courts find that this factor weighs in favor of class certification where, as here, "a
24  class action is superior to other available methods for the fair and efficient
25  adjudication" and "questions of law and fact common to all potential class members
26  predominate over any questions affecting only individual members."  *Ortega v. J.B.*
27  *Hunt Transp., Inc*., 258 F.R.D. 361, 371 (C.D. Cal. 2009).

28      Here, despite the large size of the class, management of this action is within

this Court's capabilities.  The class will consist of individuals who have been deterred from visiting Lunada Bay by the Bay Boys' conduct and the City's enabling of such conduct through deliberate indifference and complicity.  The legal standards applicable to each member of the class will be the same – regardless of the class member's state of origin, all of the acts complained of took place in California and are subject to California law.  Damage calculation is reasonably simple, and identifying members of the class will be no more difficult than a typical class action matter.  Notice can be provided through publicity on social media sites, ocean-oriented sites, newspapers, non-profit advocacy group email lists, and the California Coastal Commission.  The class action procedural vehicle is the superior method (and, realistically, the only method) of addressing the claims of all under Rule 23(b)(3).

## IV.   CONCLUSION

This lawsuit seeks to stop illegal bullying that affects thousands of beachgoers, and can positively affect many thousands more by giving them access to open space and nature in densely-populated Los Angeles County.  The harm suffered by the named Plaintiffs is the same as that of the class members.  And so is the equitable relief sought, which is making Lunada Bay truly a public beach.  Plaintiffs ask the Court to grant their motion for class certification under Rules 23(b)(2) and 23(b)(3), and to appoint Hanson Bridgett LLP and Otten Law PC as class counsel.

DATED:  December 29, 2016                    HANSON BRIDGETT LLP


By:    */s/ Kurt A. Franklin*
KURT A. FRANKLIN
Attorneys for Plaintiffs
Cory Spencer, Diana Milena Reed, and the
Coastal Protection Rangers, Inc.