1  HANSON BRIDGETT LLP
   KURT A. FRANKLIN, SBN 172715
2  kfranklin@hansonbridgett.com
   SAMANTHA WOLFF, SBN 240280
3  swolff@hansonbridgett.com
   JENNIFER ANIKO FOLDVARY, SBN 292216
4  jfoldvary@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, California 94105
   Telephone: (415) 777-3200
6  Facsimile:  (415) 541-9366

7  HANSON BRIDGETT LLP
   TYSON M. SHOWER, SBN 190375
8  tshower@hansonbridgett.com
   LANDON D. BAILEY, SBN 240236
9  lbailey@hansonbridgett.com
   500 Capitol Mall, Suite 1500
10 Sacramento, California 95814
   Telephone: (916) 442-3333
11 Facsimile:  (916) 442-2348

12 OTTEN LAW, PC
   VICTOR OTTEN, SBN 165800
13 vic@ottenlawpc.com
   KAVITA TEKCHANDANI, SBN 234873
14 kavita@ottenlawpc.com
   3620 Pacific Coast Highway, #100
15 Torrance, California 90505
   Telephone: (310) 378-8533
16 Facsimile:  (310) 347-4225

17 Attorneys for Plaintiffs
   CORY SPENCER, DIANA MILENA
18 REED, and COASTAL PROTECTION
   RANGERS, INC.

19

20              **UNITED STATES DISTRICT COURT**

21      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

22

| | |
|---|---|
| 23  CORY SPENCER, an individual; | CASE NO. 2:16-cv-02129-SJO (RAOx) |
| 24  DIANA MILENA REED, an | **DECLARATION OF BRUCE BACON** |
|     individual; and COASTAL | **IN SUPPORT OF PLAINTIFFS'** |
| 25  PROTECTION RANGERS, INC., a | **MOTION FOR CLASS** |
|                                 | **CERTIFICATION** |
| 26  California non-profit public benefit | |
|     corporation, | Judge: Hon. S. James Otero |
| 27                              | Date:  February 21, 2017 |
|                Plaintiffs,      | Time:  10:00 a.m. |
| 28                              | Crtrm.:10C. 1st Street Courthouse |

v.

LUNADA BAY BOYS; THE
INDIVIDUAL MEMBERS OF THE
LUNADA BAY BOYS, including but
not limited to SANG LEE, BRANT
BLAKEMAN, ALAN JOHNSTON
AKA JALIAN JOHNSTON,
MICHAEL RAE PAPAYANS,
ANGELO FERRARA, FRANK
FERRARA, CHARLIE FERRARA,
and N. F.; CITY OF PALOS
VERDES ESTATES; CHIEF OF
POLICE JEFF KEPLEY, in his
representative capacity; and DOES
1-10,

       Defendants.

Complaint Filed:   March 29, 2016
Trial Date:         November 7, 2017

I, Bruce Bacon, declare as follows:

1.     I am a 63-year old Southern California native and a lifelong surfer.  I currently reside in Harbor City, which is roughly 10 miles east of Lunada Bay in the City of Palos Verdes Estates, California.  I have personal knowledge of the matters stated in this declaration and, if called as a witness, could and would testify competently as to its contents.

2.     I began surfing at the age of 16, and I continue to surf today.  As a graduate of San Pedro High School, I was very familiar with Lunada Bay because of its proximity to my high school and the natural beauty of the location.  I estimate that I have visited Lunada Bay at least one dozen times per year since I was 16 years old, either to go walking, hiking, cycling, skin diving, or to attempt to surf.

3.     In the late 1970s and early 1980s, my friends and I attempted to surf at Lunada Bay, but we were never able to successfully surf because of

DECLARATION OF BRUCE BACON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1  the locals.  We would drive from San Pedro to the South Bay area, including
2  Torrance, Manhattan Beach, Hermosa Beach, and Redondo Beach, looking
3  for the place with the best surfing conditions that day.  We would look for
4  waves by driving to different locations and assessing the surf conditions.  If
5  the surfing conditions were not ideal, we would get back into our car and
6  continue driving north to the next known surfing location.  Lunada Bay was a
7  15-minute drive from San Pedro, so we would inevitably stop there in our
8  search for a good surf.  However, we encountered so much resistance from
9  the locals every time we went there that we eventually gave up trying to surf
10  at Lunada Bay after about six separate attempts.
11       4.      The locals at Lunada Bay would interfere with our attempts to
12  surf in several ways.  On one occasion, my friends and I exited our car to
13  assess the waves at Lunada Bay from the bluff.  Several men approached
14  us and said, "Don't surf here."  I told the men, "We're not going to surf
15  here—we're just looking at the waves."  The local men responded, "If you do
16  try to surf here, there are going to be problems."  We took that as a threat,
17  so we left to avoid getting into an altercation.
18       5.      In our subsequent visits to Lunada Bay, I observed that if I
19  arrived with a group, the locals tended to be less aggressive.  Therefore, I
20  always tried to go to Lunada Bay with at least three friends in the car.  If I
21  was in a group of four or more, the locals would stay about 20 feet away
22  from us.  The locals would still approach us and tell us that we were not
23  welcome there or shouldn't surf there, but they did not get as physically
24  close when we were in a group.  I also observed that when surfing
25  conditions were not ideal, more of the locals would congregate at the top of
26  the bluff near the parking area.  They would begin harassing me and other
27  visitors as soon as we exited our vehicles.  If surfing conditions were good,
28  however, I found that more of the locals would congregate at the bottom of

DECLARATION OF BRUCE BACON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1   the trail down by the beach.  I believe this was to keep visitors out of the
2   water and to take the good waves all for themselves.

3      6.   My friends and I once attempted to bypass the locals at the top
4   of the bluff and go down the rocky trail onto the beach, in spite of their
5   threats.  However, there was such a large group of local men at the bottom
6   of the trail that we decided that it would be safer to leave than to risk getting
7   into a fight with them.  After being repeatedly harassed and rebuffed every
8   time I tried to surf Lunada Bay, I ultimately gave up trying to surf at that
9   location.

10     7.   Around 1997, I had another occasion to visit Lunada Bay in my
11  capacity as a licensed contractor.  I was hired by a Palos Verdes Estates
12  development company to work on a house directly across the road from
13  Lunada Bay.  On my first day on the job, I parked my work truck on the
14  Lunada Bay side of the road on a 25-30 foot area of dirt that is adjacent to
15  the main asphalt road.  As I was offloading my tools from my truck, three or
16  four local men came up to me and surrounded my truck.  They said, "We do
17  damage here."  I said, "Excuse me, what is that supposed to mean?"  They
18  said, "We break windows; we let the air out of tires.  You know, we do
19  damage."  I told them that I was just there to do a job across the street, and
20  they were welcome to watch me go.  They did not immediately move out of
21  my way.  As I made my way past them, the local men said, "Screw you—
22  we're watching you" as I walked across the street to my job site.

23     8.   When I arrived at the job site, I immediately told my foreman
24  about the encounter with the local men.  The foreman suggested that I move
25  my vehicle.  When I went back to my truck there were about seven local
26  men hanging around my truck.  They did not immediately move out of the
27  way when I approached.  Instead, they glared at me in an intimidating way.
28  Fortunately, I was able to get into my truck without incident, and I moved my

DECLARATION OF BRUCE BACON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

vehicle to the job site.  Thereafter, the foreman would not allow any of us to park on the Lunada Bay side of the street, even though there was public parking, because he did not want our tools or vehicles to get damaged.

9.    Around 1999, I had another hostile encounter with local men when I was attempting to surf Indicator, which is just north of Lunada Bay.  It is my belief that the local men that I encountered that day were members of the same group of men who harass and intimidate people at Lunada Bay. On that particular day, my 16-year-old son and I entered the water to surf. We were met with immediate hostility.  First, the local men sneered at us and asked, "What the hell are you doing out here?"  Next, several men got very close to us in the water.  Although they did not touch us, it was clear that they were trying to invade our personal space and make our surfing experience uncomfortable.  Finally, a member of the group came very close to my son and me and began jabbing his surfboard at us.  I had reached my breaking point.  I told my son, "Let's just leave."  I exited the water with my son, climbed to the top of the hill, and immediately called the police from the nearest pay phone.

10.    A female police officer arrived in her patrol car to respond to the disturbance call.  I identified myself to the officer as the person who had called the police.  As she began to take my statement, the local man who had gotten physical with my son and me in the water was coming up the path.  I told her, "That's the guy right there!"  The officer instructed my son and me to go to our car and said she would handle it.  The officer approached the man and I could see that they were exchanging words, but she again waved me and my son off and told us to get in our car.  Therefore, I never heard what was actually said, nor did I find out if the man was arrested.  The police never followed up with me for a formal statement or a police report.

DECLARATION OF BRUCE BACON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

11.     The parking lot harassment of visitors to Lunada Bay has been consistent for years.  Around 2010, I went to Lunada Bay for a walk with my girlfriend.  There were two local men on the opposite side of the parking lot, but when we pulled up in our car, they immediately crossed to our area of the parking lot.  The local men walked from about 100 feet away to stand in direct proximity of my vehicle.  The men did not say anything, but they stood within arm's reach of my passenger-side door.  Because there was plenty of open space in the area, I immediately knew that their actions were intended to intimidate us.  The men were so close to my girlfriend's side of the truck that I genuinely felt concerned for our safety.  Rather than taking a walk as we had planned, I re-started the vehicle and drove away.

12.     In the more than 40 years that I have been visiting the area in and around Lunada Bay, I have been met with harassment, verbal assaults, physical intimidation, and threats.  These actions have continued from my teenage years well into adulthood.  The harassment needs to stop.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

12956454.3

2:16-cv-02129-SJO (RAOx)

DECLARATION OF BRUCE BACON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   13.   I would like to see people have free access to the beach and the
2   waters of Lunada Bay without the threat of bodily harm.  I would like to see
3   an end to the harassment that keeps teenagers and families from using the
4   area for sports, walking, and beachgoing.  Most importantly, I would like to
5   see the public's right to free access of our beaches and shores restored.
6   Lunada Bay is being limited to and controlled by the local surfers in the area,
7   and I do not feel this is right.  I hope that this legal action results in greater
8   protection for the public.  The beach belongs to all of us, and we should be
9   able to visit without fear that a few local guys will ruin the experience for all
10  of us.
11      I declare under penalty of perjury under the laws of the United States
12  of America that the foregoing is true and correct.
13      Executed in Harbor City, California on December 24 2016.
14
15  *Bruce Bacon*
16  BRUCE BACON  (310) 891-0843  bbaconsurf@aol.
17  State Lic. #734593: C-33, C-36, ASB
18  Graduate UC Irvine  BA, Arts/Arch
19
20
21
22
23
24
25
26
27
28

DECLARATION OF BRUCE BACON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION