HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
CAROLINE LEE, SBN 293297
clee@hansonbridgett.com
JENNIFER ANIKO FOLDVARY, SBN 292216
jfoldvary@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone: (916) 442-3333
Facsimile:  (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone: (310) 378-8533
Facsimile:  (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA REED, and COASTAL PROTECTION RANGERS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**DECLARATION OF STEPHEN NEUSHUL IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**Date**:   February 21, 2017<br>**Time**:   10:00 a.m. |

|   |   |   |
|---|---|---|
| Plaintiffs, | **Judge**: Honorable S. James Otero |
| v. | **Ctrm**.: 10C |
|   | 1st Street Courthouse |
| LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N. F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10, | Complaint Filed: March 29, 2016 |
|   | Trial Date: November 7, 2017 |
| Defendants. |   |

I, Stephen Neushul, declare as follows:

1. I grew up in Santa Barbara and attended the University of California at Santa Barbara (UCSB) where I played water polo. I currently live and work in Santa Barbara County, having moved back to Santa Barbara from Palos Verdes Estates about three years ago. I have personal knowledge of the matters set forth in this declaration and, if called as a witness, could and would testify competently as to its contents.

2. I am the founder and CEO of Image Capture Review, iCRco, which creates high-resolution image management software for various care delivery systems. Among other things, using technology that I develop, my company makes and sells digital scanners used in the medical industry. Before founding iCRco, I designed deployable, sustainable, lightweight structures for use by NASA at the international space station.

3. I am now 54 years old but since age 21, I have been an avid

beachgoer and regular surfer. I am passionate about water sports and surfing, and I have surfed all over California, Hawaii, and other places around the world. I have enjoyed surfing larger waves and I enjoy surfing with family and friends. In fact, few things in life give me greater joy than surfing. Surfing is one of my most favored forms of exercise and entertainment, and is part of my lifestyle. I surf every day that conditions allow. At my peak, I probably surfed 4 days per week. When I cannot surf, I am in a worse mood and am generally less happy.

4. My grandfather owned a house in Palos Verdes Estates, which is where my father and my uncle grew up. My father used to surf Palos Verdes Cove on a longboard. Palos Verdes Cove, which is located within Palos Verdes Estates, is a place where a visiting beachgoer might be able to surf without undue harassment.

5. Although I grew up in Santa Barbara, I was aware that Lunada Bay had a reputation for "localism" where surfers from outside the community or new to the community would be threatened physically, have their property damaged, and be threatened verbally.

6. About eight years ago, in 2008, I purchased a home in Palos Verdes Estates near the public library. I knew that Lunada Bay still had a "locals only" reputation but I wanted to surf there and my house was right around the corner from the ocean. I understood that I might face harassment, but I believed that I was just as entitled to surf there as anyone else and my desire to surf there outweighed any fear I had.

7. I remember a large swell on a clear day in January or February in 2008 or 2009, shortly after moving to Palo Verdes Estates. I have a very vivid memory of how beautiful the conditions were at Lunada Bay that day. The waves were exceptionally good: three feet overhead (meaning an approximately nine-foot wave measured from the trough of the wave to its

crest), hollow breaking over a shallow reef, and challenging. These make for excellent surfing conditions. The waves reminded me of Sunset Beach in Hawaii, which I had surfed just a few weeks before. But instead of having to travel to Hawaii, these waves were close to my home in Los Angeles County. Indeed, they were in my new neighborhood. With my more than 20 years of significant surfing experience, and given that I had just returned from surfing several weeks on the North Shore of Hawaii, the waves at Lunada Bay that day fell easily within my skill level. I was in good condition and had the ability to safely catch many waves. Notwithstanding Lunada Bay's reputation for violence and related threats, I decided to surf there by myself that day. But I was considered an uninvited guest.

8. I drove to Lunada Bay from my new home – approximately a seven-minute drive – and I parked my car along Paseo del Mar. I changed into my wetsuit on top of the bluff near my car and headed down a steep trail nearest the north point of Lunada Bay. As I made my way down the trail, small rocks starting landing near me and one even hit my board. More rocks started coming at me as I reached the shoreline. I believed someone or a group of people were heckling me by throwing the rocks, but I ignored it and got into the water with my surfboard. I paddled straight out, south of where the waves were breaking, through deeper water. I then sat on my board while I respectfully waited for my turn to catch a wave.

9. Almost immediately upon paddling out, a young high-school-age surfer who I estimate was about 18 years old approached me on his surfboard and began yelling obscenities at me. I did not know him, but he started calling me a "kook" and told me that I could not surf Lunada Bay. With his threats and gestures, he was attempting to provoke and intimidate me in an effort to get me to leave. This young surfer then started shadowing my movements, as if he was assigned to me, and was sitting uncomfortably

close to me on his surfboard, purposefully blocking my paddling to prevent me from catching waves.  An older surfer joined with similar hostile comments and movements.  The older surfer became even more aggressive in his comments and actions.  Their efforts appeared coordinated and others in the water then joined in.  I believed they were picking on me because I was new.  If this had happened on land, it would have been similar to being "jumped" in a rough neighborhood.  That is how it felt to me.  It felt lawless.

10. Then, I saw a familiar face.  I saw a surfer about my age who I recognized as the real estate agent, Brooks Bennett, who had sold me a previous home in nearby Redondo Beach.  He was in the water, sitting on his surfboard further away from the coast, waiting for larger waves.  I yelled an acknowledgment to the familiar face and he pretended not to know me and paddled further away.

11. At that point, having been in the water for about 30 minutes, I was positioned for a good wave and I paddled into it.  I was standing up and riding the wave first.  By traditional surf standards, it was my wave to surf.  But one of the local surfers purposefully dropped in on that wave right in front of me, dangerously causing me to fall over a shallow rock reef.  The fall substantially damaged my surfboard and I cut my hand.  In my experience as a lifelong surfer, combined with the harassment I had just suffered, I am confident the other surfer dropped in on me purposefully to ruin my experience at Lunada Bay, to discourage me from coming back, and to put me in harm's way.  I believed this surfer's acts and those of the others who had been harassing me were coordinated.

12. At that point I had had enough and so I paddled back to the shore.  As I started walking back up towards my car, my former real estate agent, Brooks Bennett, approached me from behind.  He explained that I couldn't just come to Lunada Bay expecting to surf, that there was a certain

protocol to follow. He said that first I would have sit on my board and watch others catch waves. After some period of time of "showing respect" and only after being granted permission, I might then be allowed to surf. I was furious and found his explanation of this process to be abhorrent.

13. I did not file a complaint with the Palos Verdes Estates Police Department because the experience was so unpleasant that I wanted to forget about it. Unfortunately, I have been unable to do so.

14. A good friend of mine had a similar experience at Lunada Bay, but he has since passed away.

15. The efforts of the Lunada Bay local surfers that day worked. Their actions were so unpleasant and upsetting to me that I never went back to Lunada Bay to surf. I lost sleep because of it. While I have surfed all over California and the world, I have never experienced localism like that anyplace else.

16. Eventually, about three years ago in 2013, I moved out of Palos Verdes Estates and returned to Santa Barbara County.

17. I am passionate about visiting different beaches, surfing, and being outdoors. Beyond exercise, I view surfing as a way to enjoy nature, the beauty of the Pacific Ocean, and as a way to express myself. Lunada Bay is a unique, large, Southern California right-breaking point wave in a beautiful setting surrounded by urban Los Angeles. I hope to return to Lunada Bay with my children and safely surf there one day free of threats from local gang members. In my view, because it is a public beach, everyone should be allowed to enjoy it.

18. In addition to surfing without threats, I want the Palos Verdes Estates Police Department to enforce the law at Lunada Bay and make it safe for the public to access the area. I also want the City to improve signage, trail access, landscaping, seating, and similar amenities to make it

clear to the public that Lunada Bay is a public place for all to enjoy. In particular, trail improvements would help. I want to visit Lunada Bay freely without fear of the harassment that I have already suffered.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Santa Barbara, California on December 13th, 2016.

_____
STEPHEN NEUSHUL