**VEATCH CARLSON, LLP**
A Partnership Including Professional Corporations
1055 Wilshire Blvd., 11th Floor
Los Angeles, California 90017
Telephone (213) 381-2861
Facsimile (213) 383-6370

ROBERT T. MACKEY, State Bar No. 210810
*rmackey@veatchfirm.com*
RICHARD P. DIEFFENBACH, State Bar No. 102663
*rdieffenbach@veatchfirm.com*
JOHN E. STOBART, State Bar No. 248741
*jstobart@veatchfirm.com*
JOHN P. WORGUL, State Bar No. 259150
*jworgul@veatchfirm.com*

Attorneys for Defendant,
BRANT BLAKEMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>    Plaintiffs,<br><br> vs.<br><br>LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N.F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10,<br><br>    Defendants. | **CASE NO.: 2:16-CV-2129-SJO-RAO**<br>**Hon. S. James Otero, Ctrm. 10C**<br><br>**DEFENDANT BRANT BLAKEMAN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>DATE: February 21, 2017<br>TIME: 10:00 a.m.<br>CTRM: 10C<br>   1st Street Courthouse<br><br>**Action Commenced: 3/29/2016**<br>**Discovery Cutoff: 8/17/17**<br>**Pretrial Conf.: 10/23/17**<br>**Trial Date: 11/7/2017** |

---

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# **TABLE OF CONTENTS**

PAGE

1. INTRODUCTION ................................................................. 1

2. PLAINTIFFS' REQUEST FOR CLASS CERTIFICATION ................................... 2

3. SUMMARY OF OPPOSITION TO CLASS CERTIFICATION ............................ 3

4. SUMMARY OF PLAINTIFFS' CLASS ACTION COMPLAINT ........................ 3

    A. Claims Against the City of Palos Verdes Estates and Its Police Chief .......... 4

    B. Claims Against Mr. Blakeman and the Alleged Lunada Bay Boys .............. 4

    C. The Alleged Conspiracy and Criminal Gang Activity ................................. 4

    D. Class Action Allegations ........................................................ 4

    E. Causes of Action ................................................................. 5

        1. First Cause of Action for Violations of the Bane Act.......................... 5

        2. Second Cause of Action for Public Nuisance ..................................... 5

        3. Sixth Cause of Action for Assault................................................. 6

        4. Seventh Cause of Action for Battery ............................................. 6

        5. Eighth Cause of Action for Negligence .......................................... 6

5. RELIEF SOUGHT ON BEHALF OF THE CLA ......................................... 7

6. OVERVIEW OF PLAINTIFFS' EVIDENCE ............................................. 7

7. STANDARD FOR CERTIFICATION ................................................... 7

8. ARGUMENT IN SUPPORT OF DENYING CLASS ACTION
   CERTIFICATION ................................................................... 7

    A. A CLASS ACTION IS NOT A SUPERIOR MEANS OF
       ADJUDICATION ............................................................... 8

        1. The Class is Unmanageable ..................................................... 8

        2. The Class Definition Is Impermissible Fail-Safe................................. 9

        3. The Class is Unidentifiable due to Subjective Class Criteria ............. 11

    B. TOO MANY PUTATIVE CLASS MEMBERS LACK STANDING......... 12

        1. Class Includes Beachgoers Who Have Suffered No Injury In
           Fact................................................................................. 12

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

2.  Class Includes Members Whose Claims, if any, are Not Ripe ...........13

3.  Class Includes Members Whose Clams Are Stale .............................14

14.  The Bottom Line Is The Class Definition Is Overly Broad .............14

C.  PLAINTIFFS LACK EVIDENCE OF NUMEROSITY .............................15

D.  PLAINTIFFS LACK COMMONALITY ......................................................17

E.  THE CLASS LACKS TYPICALITY ...........................................................17

F.  THE DEFENDANTS LACK TYPICALITY .................................................18

G.  CERTIFICATION WOULD DEPRIVE DEFENDANT
     BLAKEMAN OF DUE PROCESS ...........................................................19

H.  ADEQUACY ................................................................................................20

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF AUTHORITIES

PAGE(S)

## FEDERAL CASES

*Adashunas v. Negley*,
626 F.2d 600, 604 (7th Cir .1980) ................................................................. 10

*Akerman v. Oryx Communications, Inc.*,
609 F. Supp. 363, 374 (S.D.NY. 1984) ........................................................ 20

*Amchem Products, Inc. v. Windsor*,
521. U.S. 591, 606-07, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) .............. 7, 8, 12

*Astiana v. Kashi Co*,
291 F.R.D. 493, 500 (S.D. Cal. 2013) ........................................................ 11

*Barsamian v. City of Kingsburg*,
597 F.Supp.2d 1054, 1064 (E.D.Cal.2009) ................................................ 5

*Bee, Denning, Inc. v. Capital Alliance Group*,
310 F.R.D. 614, 622 (S.D. Cal. 2015) ........................................................ 11

*Blackie v. Barrack*,
524 F.2d 891, 901 n.17 (9th Cir. 1975) ...................................................... 3, 17

*Briseno v. ConAgra Foods, Inc.*,
2017 WL 24618, at *6 (9th Cir., Jan. 3, 2017, No. 15-55727) ................... 8

*Burdick v. Union Sec. Ins. Co.*,
2009 WL 4798873, at *4 (C.D. Cal., Dec. 9, 2009, No. CV 07-4028) ........ 12, 13

*Campbell v. Feld Entertainment, Inc.*,
75 F.Supp.3d 1193, 1211(N.D. Cal. 2014) ................................................ 5

*Celano v. Marriott Intern., Inc.*,
242 F.R.D. 544, 548 (N.D. Cal. 2007) ........................................................ 15, 16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229, 245 (2d Cir. 2007) ............................................................... 18

*Colapinto v. Esquire Deposition Servs.*,
09-cv-07584, 2011 WL 913251, at *4 (C.D. Cal., 2011); *Red v. Kraft Foods, Inc.*, 2011 U.S. Dist. LEXIS 116965, 2011 WL 4599833 (C.D. Cal. 2011) ..... 15

*Dafforn v. Rousseau Assocs., Inc.*,
1976 U.S. Dist. LEXIS 13910 1976-2 Trade Cases P 61, at 219, 1976 WL 1358
(N.D. Ind. 1976) ......................................................................................... 10

*Davis v. Federal Election Com'n*,
(2008) 554 U.S. 724, 734, 128 S.Ct. 2759, 2769, 171 L.Ed.2d 737 (2008) ...... 12

iii

# <u>TABLE OF AUTHORITIES (Con't.)</u>

**PAGE(S)**

*Elizabeth M. v. Montenez*,
    458 F.3d 779, 787 (8th Cir. 2006) ...................................................................... 18

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970, 984 (9th Cir. 2011) .................................................................. 17-18

*Fosmire v. Progressive Max Ins. Co.*,
    (W.D. Wash. 2011) 277 F.R.D. 625, 632 .......................................................... 18

*Greater Los Angeles Agency on Deafness, Inc. v. Reel Services Management LLC*,
    2014 WL 12561074, at *3 (C.D. Cal., May 6, 2014, No. CV 13-7172)............ 12

*Howard v. CVS Caremark Corporation*,
    2014 WL 11497793, at *3 (C.D. Cal., Dec. 19, 2014) ...................................... 10

*Ileto v. Glock, Inc.*,
    194 F.Supp.2d 1040, 1056 (C.D. Cal. 2002)........................................................ 6

*In re Unioil Sec. Litig.*,
    107 F.R.D. 615, 618 (C.D. Cal.1985) .................................................................. 8

*K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.*,
    2007 WL 915399, at *3 (N.D. Cal. 2007) .......................................................... 14

*Kamar v. RadioShack Corp.*,
    375 Fed.Appx. 734, 736 (9th Cir. 2010) .............................................................. 9

*Kline v. Coldwell Banker & Co.*,
    508 F. 2d 226, 233-236 (9th Cir. 1974)............................................................... 20

*Kpadeh v. Emmanuel*,
    261 F.R.D. 687 (S.D. Fla. 2009) ........................................................................ 20

*La Mar v. H & B Novelty & Loan Co.*,
    489 F2.d 461, 466 (9th Cri. 1973) ...................................................................... 18

*Lewis Tree Serv., Inc. v. Lucent Tech. Inc.*,
    211 F.R.D. 228, 234 (S.D.N.Y. 2002).................................................................. 18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)..................................... 12

*Marchwinski v. Oliver Tyrone Corporation*,
    81 F.R.D. 487, 489 (W.D. Pa. 1979)................................................................... 20

*Mazur v. eBay, Inc.*,
    257 F.R.D. 563, 567 (N.D. Cal. 2009) ................................................................ 14

*Moreno v. G&M Oil Co.*,
    88 F. Supp. 2d 1116, 1117-118 (C.D. Cal. 2000)) .............................................. 18

# <u>TABLE OF AUTHORITIES (Con't.)</u>

**PAGE(S)**

*N.A.A.C.P. v. Claiborne Hardware Co.,*
   (1982) 458 U.S. 88, 925–926, 102 S.Ct. 3409, 73 L.Ed.2d 1215.) .................. 19

*Ortega v. Natural Balance, Inc.,*
   300 F.R.D. 422, 426 (C.D. Cal. 2014) .............................................................. 11

*Reno v. Catholic Servs., Inc.,*
   509 U.S. 43, 66, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) ........................... 13-14

*Rosario v. Livaditis,*
   963 F.2d 1013, 1018 (1992) ............................................................................. 17

*Schwartz v. Upper Deck Co.,*
   83 F.R.D. 672, 675 (S.D. Cal. 1999) ............................................................. 8, 12

*Texas v. United States,*
   523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) ........................... 13

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) ............................. 8

*Xavier v. Philip Morris USA Inc.,* 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011) ....... 11

*Young v. Nationwide Mut. Ins. Co.,*
   693 F.3d 532, 538 (6th Cir. 2012) ................................................................... 10

*Zarichny v. Complete Payment Recovery Servs., Inc.,*
   No. 14-3197, 2015 BL 14031, at *5 (E.D. Pa. Jan. 21, 2015) ......................... 10

Zinser v. Accufix Research Institute, Inc.,
   253 F.3d 1180, 1186 (9th Cir.) ......................................................................... 7

# <u>STATE CASES</u>

*Ashcraft v. King*
   (1991) 228 Cal.App.3d 604, 611, 278 Cal.Rptr. 900 (1991) .............................. 6

*Austin B. v. Escondido Union School Dist.*
   149 Cal.App.4th 860, 883, 57 Cal.Rptr.3d 454 (2007) ...................................... 5

*Lowry v. Standard Oil Co. of California*
   63 Cal.App.2d 1, 6-7, 229 P.2d 97 (1944) ........................................................ 6

*Tomblinson v. Nobile*
   103 Cal.App.2d 266, 269, 229 P.2d 97(1951)................................................... 6

# TABLE OF AUTHORITIES (Con't.)

**PAGE(S)**

## FEDERAL STATUTES

42 U.S.C. § 1983 .................................................................................. 4

Federal Rule of Civil Procedure 23 ................................... 3, 8, 12, 15
    Rule 23(a) ...................................................................................... 7
    23(a)(2) .................................................................................. 3, 17
    Rule 23(b) ...................................................................................... 7
    Rule 23(b)(2) ................................................................................ 5
    Rule 23(b) (3) ............................................................................... 5

## STATE STATUTES

California Civil Code §52.1 ..................................................... passim

California Code of Civil Procedure §335.1 .................................... 14

California Penal Code §632 ............................................................ 7

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## 1.    INTRODUCTION

Plaintiffs in this unprecedented putative class action are surf and environmental activists who seek certification of an amorphous worldwide class that they claim constitutes 20,000-25,000 prospective "beachgoers." Plaintiffs further claim entitlement to upwards of $50,000,000 in daily "enjoyment" damages as well as injunctive relief against the City of Palos Verdes Estates and its police chief Jeff Kepley. Plaintiffs have also sued a fictional, unrepresented entity that they have dubbed the "Lunada Bay Boys," as well as eight nearby residents who are surfers.

This opposition is provided by defendant Brant Blakeman, a local resident of Palos Verdes Estates and surfer who serves as an emergency responder for the City and lives at a residence in the neighborhood of Lunada Bay where he grew up. While Plaintiffs claim to be merely some local surfers who reside in other cities in the South Bay area of Los Angeles, they are in fact a well-funded and organized group who on various occasions went to Lunada Bay with media and the police in the hopes of provoking incidents that would support their cause.[1]

In truth, it is doubtful that the handful of allegations leveled against Mr. Blakeman personally would actually rise to the level of tortious conduct even if true, but regardless of that fact, each such allegation mandates an individualized inquiry into the merits of such claims, such as the claim that his video- taping of Plaintiffs when they surfed at Lunada Bay was "intimidating;" or that he 'dropped in" on another surfer at the Bay and  by extension, hundreds or even thousands of such mini-trials would be necessary in prosecuting this action on behalf of each plaintiff and putative plaintiff as against each defendant, as well as a determination of whether each such act was in furtherance of an organized conspiracy perpetrated by the undefined group alleged to exist as the "Lunada Bay Boys."

---

[1]Indeed, Plaintiff Reed styles herself as an "actress' and "aspiring big wave surfer," although she has never actually surfed at Lunada Bay or even tried to and has a history of civil fraud.

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## 2.    PLAINTIFFS' REQUEST FOR CLASS CERTIFICATION

This is an action brought by surfers against surfers over a very desirable wave that happens to break off the coast of Lunada Bay, located in the Palos Verdes Estates. Plaintiffs Cory Spencer[2], Diana Milena Reed[3], and the Coastal Protection Rangers, Inc.[4] allege that the phenomenon referred to in the surfing community as "localism" is a violation of their Constructional rights, an assault, a battery, a public nuisance, a violation of *Cal. Civ. Code* §52.1 ("the Bane Act"), *etc*.

Plaintiffs classify this as a "civil rights lawsuit" regarding an alleged unlawful denial of the right to access the Lunada Bay beach and, more specifically, the "right-breaking rock-reef point break" found just off the coast. *Motion for Certification*, Doc. 159, at pp. 1:15, 3:15-22; Doc. 159-8, ¶14. Plaintiffs seek certification of a class consisting of "all visiting beachgoers to Lunada Bay who do not live in Palos Verdes Estates." *Id.* at p. 12:13-21. A "visiting beachgoer" is anybody from a surfer to a sightseer (*i.e.*, literally anybody) who "wants lawful, safe and secure access to Lunada bay" but are "deterred" by the defendants. Plaintiffs' class is poorly defined and is not reasonably limited geographically, not by state, not even by country. Plaintiffs are trying to certify a worldwide class of "beachgoers" seeking both monetary damages of $50-$80 per plaintiff and injunctive relief "making Lunada Bay truly a public beach." *Motion to Certify*, Doc. 159, at pp. 18:19-22 and 20:18.

As fully set forth herein, plaintiffs have failed to meet their burden on any of the Fed. R. Civ. P. 23 requirements, let alone all of them. To the extent any plaintiff or citizen seeks redress for any torts or crimes committed against them, they have ample opportunity to avail themselves to individual civil and criminal remedies, which as plaintiffs' evidence suggests, others have successfully chosen to do. Indeed, the reasons for denying class certification are both numerous and compelling.

---

[2] Cory Spencer is a 45-year old experienced surfer and a beachgoer. *Complaint*, ¶1.
[3] Diana Milena Reed is a 29-year old big wave surfer and a beachgoer. *Complaint*, ¶2.
[4] Costal Protection Rangers is a non-profit corporation dedicated to enforcing the California Costal Act (which is not a part of this lawsuit). Complaint, Doc. 1, at ¶3

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

### 3.    SUMMARY OF OPPOSITION TO CLASS CERTIFICATION

First, a class action is not a superior method of adjudicating this dispute between surfers who live near Lunada Bay and "beachgoers" who do not. At face value and without any legal analysis whatsoever, common sense alone dictates this class is hopelessly overbroad, utterly unascertainable and completely unmanageable.

Second, too many putative class members lack Article III standing due to no injury in fact, unripe claims and stale causes of action.

Third, the class definition itself precludes certification. The class definition is impermissibly fail-safe and relies on subjective criteria.

Fourth, the evidence of numerosity is speculative and lacks foundation. From the evidence presented, it is impossible to tell how many "beachgoers" may exist.

Fifth, plaintiffs cannot establish commonality under Rule 23(a)(2) because they cannot show that all "beachgoers" have suffered the same injury, or even that all "beachgoers" are or were subject to a common negligent or intentional actionable act.

Sixth, class membership is neither typical regarding the plaintiffs nor the defendants. The plaintiffs' injuries, if any, are too personalized to be typical of the class. Furthermore, plaintiffs have no evidence of conspiracy, which is the only claim plaintiffs have making the individual defendants typical to the class.

For these reasons and more, including significant due process implications as to Mr. Blakeman and his neighbors, class certification would not achieve the goals of fairness and efficiency. It is requested the Court deny the motion for certification.

### 4.    SUMMARY OF PLAINTIFFS' CLASS ACTION COMPLAINT

In considering a certification motion, the court first looks to the pleadings to determine whether sufficient allegations exist to form a reasonable determination on Rule 23's requirements. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

Plaintiffs bring this action for equitable remedies and monetary damages they allegedly suffered from being "unlawfully excluded from recreational opportunities at Palos Verdes Estates." *Id.* at ¶¶ 1-2. *Complaint*, Doc. 1, at ¶¶ 21, 22.

3

### A.   Claims Against the City of Palos Verdes Estates and Its Police Chief

Plaintiffs assert 42 U.S.C. § 1983 claims against the City and the Police, alleging the City and the Police have "engaged in unlawful municipal exclusion" and seeking declaratory relief and an "injunction requiring" the City and the Police to "investigate complaints … and prosecute these complaints." *Complaint*, Doc. 1, at ¶¶  7, 8, 65, 69.[5]

### B.   Claims Against Mr. Blakeman and the Alleged Lunada Bay Boys

Plaintiffs allege the Lunada Bay Boys are an unincorporated, criminal street gang. *Complaint*, Doc. 1, at ¶¶ 4-6. According to the complaint, the alleged Lunada Bay Boys are comprised of the eight individually named defendants and Does 1-10. *Id.* ¶¶ 7, 10. Mr. Blakeman is both a named defendant and an alleged member of the group. *Id.* The only facts alleged against Mr. Blakeman are that he was present on February 13, 2016, and when plaintiff Reed visited Lunada Bay, he allegedly asked her "to drink with them" while he videotaped the encounter. *Complaint*, Doc. 1, ¶¶ 24-27.

### C.   The Alleged Conspiracy and Criminal Gang Activity

Plaintiffs claim the alleged Lunada Bay Boys are "a criminal gang whose members are primarily engaged in criminal and nuisance activities which constitute *Bane Act* violations and a public nuisance." *Complaint*, Doc. 1, ¶52. Plaintiffs further allege the defendants infringe upon their rights [sic] constitutional right to recreate on California's public beaches." *Id*. According to plaintiffs, this common, illegal goal of the defendants is accomplished by "criminal and other gang-related activities." *Id*.

### D.   Class Action Allegations

The class is comprised of "all visiting beachgoers to Lunada Bay who do not live in Palos Verdes Estates." *Complaint*, Doc. 1, at ¶30. Beachgoers are defined as people who "want lawful, safe, and secure access to Lunada Bay to engage in recreational activities," which includes a multitude of beach related activities. *Id.* Plaintiffs believe

---

[5] Again, since this opposition is brought by Mr. Blakeman, the allegations against the city and the police are not directly addressed.

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

the class consists of "at least several thousand members." *Id.* at ¶32. There are no geographical restrictions on class membership. *Id.* Plaintiffs request class action treatment per Rule 23(b)(2) and (b)(3). *Complaint*, Doc. 1, at ¶ 30.

The primary relief sought in the complaint is injunctive relief in the form of "access to Lunada Bay for recreational purposes." *Id.* at ¶37.

**E. Causes of Action**

Plaintiffs assert causes of action for violations of the Bane Act, public nuisance, assault, battery, and negligence against Mr. Blakeman and the alleged Lunada Bay Boys. Apparently, all of these causes of action are applicable to the putative class.

**1. First Cause of Action for Violations of the Bane Act**

The Bane Act provides a civil cause of action for relief when an "individual whose exercise or enjoyment of rights … has been interfered with, or attempted to be interfered with" through actual or attempted "threats, intimidation, or coercion." In this context, the terms "interfered with" means to "violate." *Barsamian v. City of Kingsburg,* 597 F.Supp.2d 1054, 1064 (E.D.Cal.2009), quoting *Austin B. v. Escondido Union School Dist.* 149 Cal.App.4th 860, 883, 57 Cal.Rptr.3d 454 (2007). Plaintiffs must show: (1) Defendants interfered with their rights; and (2) that interference was accompanied by actual or attempted threats, intimidation, or coercion. *Campbell v. Feld Entertainment, Inc.*; 75 F.Supp.3d 1193, 1211(N.D. Cal. 2014).

For the first element, plaintiffs claim a "constitutional right to recreate on California's public beaches." Complaint, Doc. 1, ¶44. For the second element, plaintiffs allege the defendants created a "threatening and intimidating atmosphere for visiting beachgoers" via threats to "kill, assault, vandalize property, extort, and bring harm to other persons who…  and therefore, infringe upon their rights." *Id.* It is further alleged they "vandalize public and private property, sell and use narcotics, loiter, and drink alcohol on the beach and bluff." *Complaint*, Doc. 1, ¶46.

**2. Second Cause of Action for Public Nuisance**

A nuisance in California is "[a]nything which is injurious to health, including but

5

not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway...." *Ileto v. Glock, Inc.*, 194 F.Supp.2d 1040, 1056 (C.D. Cal. 2002).

Plaintiffs claim that defendants obstruct the "free passage and use of the public park and ocean access" by threats to "kill, assault, vandalize public and private property, extort, loiter, drink alcohol in public areas and bring harm to other persons who work in, visit or pass through the Lunada Bay area." *Complaint,* Doc. 1, ¶55.

### 3. Sixth Cause of Action for Assault

"Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." *Lowry v. Standard Oil Co. of California*; 63 Cal.App.2d 1, 6-7, 229 P.2d 97 (1944). (emphasis added.) Words alone do not amount to an assault. *Tomblinson v. Nobile,* 103 Cal.App.2d 266, 269, 229 P.2d 97(1951). To support their assault cause of action, plaintiffs allege they "reasonably believed that they were about to be touched in a harmful offensive manner" and the defendants "were about to carry out the threat." *Complaint*, Doc. 1, ¶97.

### 4. Seventh Cause of Action for Battery

"A battery is any intentional, unlawful and harmful contact by one person with the person of another." *Ashcraft v. King* (1991) 228 Cal.App.3d 604, 611, 278 Cal.Rptr. 900 (1991). Plaintiffs claim the defendants "at various different times touched Plaintiffs and various class members with the intent to harm or offend." *Complaint*, Doc. 1, ¶ 100.

### 5. Eighth Cause of Action for Negligence

To prevail on their negligence claim, Plaintiffs must show defendants owed them a legal duty, breached that duty, and that the breach was a proximate or legal cause of their injuries. *Ileto v. Glock, Inc.* (C.D. Cal. 2002) 194 F.Supp.2d 1040, 1050.

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs assert that "defendants failed to exercise ordinary and reasonable care in complying with the aforementioned statutorily imposed duties, and, therefore, breached the same." *Complaint*, Doc. 1, ¶103.

## 5.   RELIEF SOUGHT ON BEHALF OF THE CLASS

Plaintiffs do not specify which causes of action will apply to the class. Thus, presumably, the class is bringing all causes of action on behalf of all members.

Plaintiffs seek the equitable relief of "making Lunada Bay truly a public beach." *Motion to Certify*, Doc. 159, at p. 20:18. The monetary damages sought consist of "$50 to $80 per person per visit" for "the value of the public asset that has been misappropriated from them for decades." *Motion to Certify*, Doc. 159, at p. 18:19-22.

## 6.   OVERVIEW OF PLAINTIFFS' EVIDENCE

In support of certification, plaintiffs offer their own testimony, declarations from fellow "beachgoers," police reports, private email chains, two instant message or "text" conversations, letters to the police and the City of Palos Verdes Estates, three videos, and one illegally recorded conversation. See, Doc. 159-5, Ex. 5/6 at p. 4, *Cal. Penal Code* §632. Yet, despite the volume, it is difficult to locate much, if any, admissible evidence relevant to class certification. See, *Objections to Evidence*.

It should be noted that plaintiffs have undertaken a worldwide campaign to find "beachgoers" and this is the best "evidence" they could provide. See *Dieffenbach Decl.*

## 7.   STANDARD FOR CERTIFICATION

A case may be certified only if it satisfies all four requirements of Federal Rules of Civil Procedure 23(a)— numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521. U.S. 591, 606-07, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

"The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.) Class certification requires a plaintiff to "affirmatively demonstrate compliance with Rule

23." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).  The court must perform a "rigorous analysis" to establish that Rule 23(a) has been satisfied. *Id.* The court's analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 2551.

Further, the court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 618 (C.D. Cal.1985). "Failure to prove any one of Rule 23's requirements destroys the alleged class action." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 675 (S.D. Cal. 1999).

## 8.  ARGUMENT IN SUPPORT OF DENYING CLASS CERTIFICATION

### A.  A CLASS ACTION IS NOT A SUPERIOR MEANS OF ADJUDICATION

The Court must take a "close look" at whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods.*, *supra*, 21 U.S. at 615. Here, the primary relief sought is injunctive. *Complaint*, Doc. 1, ¶ 37. What is the benefit of certifying the class for injunctive relief? If the equitable relief of "making Lunada Bay truly a public beach," whatever that means, is actually granted, the putative class will have their remedy regardless if they are actually plaintiffs. *Motion to Certify*, Doc. 159, at p. 20:18. Thus, class treatment is not a superior method. In fact, it is actually an unnecessarily burdensome and wasteful way to achieve the exact same relief the named plaintiffs can seek on their own. As for the monetary damages, those are illusory and cannot be awarded on a classwide basis.

Factors to be considered are "the interest of members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." *Amchem* at 521 U.S. at 616. These factors are insurmountable for plaintiffs in this proposed class action.

### 1.  The Class is Unmanageable.

Courts must consider "the likely difficulties in managing a class action." *Briseno v. ConAgra Foods, Inc.*, 2017 WL 24618, at *6 (9th Cir., Jan. 3, 2017, No. 15-55727).

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Management of this class would be untenable. The class includes "beachgoers" of the world who "want" to surf Lunada Bay but have been "deterred" by the defendants because they reasonably believed they would be harmed if they did visit. How will class members be identified without individual inquiry as to each member? The Bane Act has a "reasonable belief of violence" element; do plaintiffs contend that can be adjudicated on a class-wide basis? Assault requires more than just words, battery requires actual contact, and both require individual inquiry as to each class member. None of these causes of action can be maintained class-wide.

What if plaintiffs' social media post goes viral[6] and five million people reply saying, "Yeah, I'm a beachgoer and I want to surf Lunada Bay! Please send me a check for $80." How in the world could that class possibly be managed? It cannot.

Furthermore, this class is a hotbed for fraud. Anybody who does not live in Palos Verdes Estates could claim to be a member of the class and would thereby be invited to make a claim for monetary compensation in the form of a $50 to $80 check. It is like a free giveaway at the expense of Mr. Blakeman, his neighbors, the City and its police. The idea that this case could be managed as a class action offends the concept of justice.

### 2.  The Class Definition Is Impermissible Fail-Safe

A "fail-safe" class is defined so that the class only includes members whose claims would be successful on the merits. "The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.* 375 Fed.Appx. 734, 736 (9th Cir. 2010). Such "fail-safe" classes are impermissible because "once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class." *Id.* "That is palpably unfair to the defendant, and is also unmanageable."

---

[6] Plaintiffs expect to give class notice via social media on Facebook and Twitter. *Complaint*, Doc. 1, at ¶42;  *Motion for Certification*, Doc. 159, at  p. 20:8-12.

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Other circuits have held that "fail-safe" class definitions are impermissible. See, *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 538 (6th Cir. 2012); *Dafforn v. Rousseau Assocs., Inc.,* 1976 U.S. Dist. LEXIS 13910 1976-2 Trade Cases P 61, at 219, 1976 WL 1358 (N.D. Ind. 1976) (holding that because class would consist of only those homeowners who paid illegal fees, a jury determination that defendants did not charge illegal fees would mean there was no class); *see also Adashunas v. Negley,* 626 F.2d 600, 604 (7th Cir .1980) (holding that class definition of children with learning disabilities who were not receiving adequate special education was deficient)."

The "fail-safe" doctrine was recently applied in *Zarichny v. Complete Payment Recovery Servs., Inc.*, No. 14-3197, 2015 BL 14031, at *5 (E.D. Pa. Jan. 21, 2015). The plaintiff in *Zarichny* filed a putative class action on behalf of all persons "who received one or more telephone calls from [d]efendants on the individual's cellular telephone that was initiated using an automatic telephone dialing system without prior consent." *Id.* at 11 (citations omitted). Because of the "prior consent" language, the court agreed that the proposed class definition was an impermissible fail-safe class and would require "extensive and individualized fact-finding or 'mini-trials.'" *Id.* at 12-13.

Here, the class is "fail-safe" because it requires a finding that each putative member was, in fact, "deterred" from visiting Lunada Bay because of the alleged Lunada Bay Boys before they can become a member. *Motion to Certify*, Doc. 159, at p. 12:13-21. This definition mirrors the *Bane Act*, which recognizes a private right of action for interference with civil rights. (*Cal. Civ. Code* §52.1.) Thus, to establish class membership, plaintiffs must prove a violation of the Bane Act that was directed towards them individually. Such a "fail-safe" class cannot be solidified, let alone certified.

Defendant recognizes that "the Ninth Circuit has not expressly held that fail-safe classes are impermissible" and that this Court has previously declined an "invitation to deny certification on this ground alone." *Howard v. CVS Caremark Corporation* 2014 WL 11497793, at *3 (C.D. Cal., Dec. 19, 2014). However, in this case the "obvious problems" that come with the "fail-safe" class definition crosses over into other grounds

10

for denying, such as rendering the class too broad, too subjective, and unidentifiable.

### 3. The Class is Unidentifiable due to Subjective Class Criteria

Defendant recognizes the Districts within the Court of Appeals for the Ninth Circuit have applied the "ascertainability" requirement differently. Compare, e.g., *Xavier v. Philip Morris USA Inc*., 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011) (declining to certify a class on ascertainability grounds), with *Ortega v. Natural Balance, Inc*., 300 F.R.D. 422, 426 (C.D. Cal. 2014) (overruling an ascertainability argument by finding the class was readily identifiable by objective criteria).

For another example, the Southern District agreed that class actions cannot be defeated merely because membership is difficult to ascertain. *Astiana v. Kashi Co* 291 F.R.D. 493, 500 (S.D. Cal. 2013). However, the defendant *Kashi Co.* argued that there was "no feasible mechanism for identifying class members" because the defendant did not have "records of consumer purchases, and potential class members will likely lack proof of their purchases." This prompted the court to hold "[t]here is no requirement that 'the identity of the class members … be known at the time of certification.'" *Id.*

Here, the *Ortega* rationale is not applicable because the class is not based on objective criteria. The *Astiana* rationale is not applicable because the argument is not that there exists no list of potential class members, although that is true. Instead, the argument is that it is *impossible to objectively identify* whom to put on that list.

Indeed, a party seeking class certification must demonstrate that the class is readily identifiable. *Bee, Denning, Inc. v. Capital Alliance Group,* 310 F.R.D. 614, 622 (S.D. Cal. 2015). "However, if a court must substantially investigate the merits of individual claims to determine class membership, or if membership in the class depends upon subjective factors such as a prospective member's intent or state of mind, then the class likely lacks ascertainability and class certification is improper." *Id.* at *9.

Here, the class is based entirely on subjective criteria. First, class members must have "wanted to visit" Lunada bay. To "want" is clearly a state of mind that lacks objectivity. Second, the class member must have been "deterred" by the defendants.

11

"Individual [deterrents] may be based on a variety of reasons." *Schwartz, supra*, at 676.

Here there are many deterrents that would keep "beachgoers" who "wanted" to visit Lunada away. First, Southern California is an expensive place to visit and Palos Verdes Estates is remote, and is one of the more affluent neighborhoods in the region. For many far-away class members, finances alone may be the ultimate deterrent. Not every "beachgoer" can afford a surf safari. Second, there are no public facilities or infrastructure. What about the lack of parking? What about the 100 ft. cliff without a maintained trail? There are no lifeguards. The waves are dangerously high. How many "beachgoers" are actually good enough to surf Lunada Bay? How many actually "want" to? Even if the "beachgoer" truly "wants" to surf Lunada Bay, would they ever do it?

These are all subjective inquiries that must be determined before any plaintiff can gain membership of the class. A class definition that requires the Court to assess subjective criteria will not be certified. *Schwartz, supra,* 183 F.R.D. at 679.

## B.  TOO MANY PUTATIVE CLASS MEMBERS LACK STANDING

"Standing is a threshold matter central to the Court's subject matter jurisdiction." *Greater Los Angeles Agency on Deafness, Inc. v. Reel Services Management LLC* 2014 WL 12561074, at *3 (C.D. Cal., May 6, 2014, No. CV 13-7172). Standing requires an injury in fact, traceability, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Federal Election Com'n* (2008) 554 U.S. 724, 734, 128 S.Ct. 2759, 2769, 171 L.Ed.2d 737 (2008). "Rule 23's requirements must be interpreted in keeping with Article III constraints." *Amchem Prods, supra,* at 591.

Class definitions should be tailored to exclude putative class members who lack standing. *Burdick v. Union Sec. Ins. Co.*, 2009 WL 4798873, at *4 (C.D. Cal., Dec. 9, 2009, No. CV 07-4028). Here, not all named plaintiffs, let alone the putative class members, have standing for all causes of action asserted.

## 1.  Class Includes Beachgoers Who Have Suffered No Injury In Fact

12

As defined, many of the "beachgoers" that seek to become a member of the class lack Article III standing because there is no injury in fact. Evidence of this can be found in the declarations and other "evidence" submitted by plaintiffs.

Take Joseph Lanning, for example. He "wants" to visit Lunada Bay and is "deterred" but has never actually been to Lunada Bay. Doc. 172, ¶4. "Beachgoers" like Mr. Lanning are included in the class but have never been injured by any of the defendants. "Beachgoers" like Mr. Lanning have no cause of action for assault, battery, negligence, or violations of the *Bane Act*. The case of Mr. Lanning is a prime example of how this class definition is impermissibly overly broad. If this class was certified, it would be filled with "beachgoers" who have never even been to Lunada Bay, and therefore have no standing, just like Mr. Lanning.

As for other examples, many of the declarations provided by the plaintiffs provide testimony wherein the "beachgoers" were not deterred and successfully visited and surfed Lunada Bay, some many times. See, Docs. 159-10 (Taloa); 160 (MacHarg) 163 (Will), 165, at ¶7 (Inns); 166 (Claypool), 167 (Young), 168 (Bacon), 170 (Gero), 176 (Claypool), and 177 (Jongeward). These "beachgoers" kept going to Lunada Bay. Thus, they were not "deterred" by the Lunada Bay Boys. "Beachgoers" who were not "deterred" have no injury in fact common to the class and therefore lack standing.

**2.  Class Includes Members Whose Claims, if any, are Not Ripe**

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). "That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Id.* In this way, ripeness and standing are intertwined. *Id.*

"As with standing, ripeness is determined on a claim-by-claim basis." *Burdick v. Union Sec., supra,* at *2–3. "Class members lacking justiciable claims under Article III should be excised from the case." *Id.* at *4. For example, in *Reno v. Catholic Servs.,*

*Inc.*, 509 U.S. 43, 66, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993), the Supreme Court found that "only those class members (if any) who were [actually harmed] have ripe claims over which the District Courts should exercise jurisdiction."

Here, any "beachgoers" that have not visited Lunada Bay, like Mr. Lanning, cannot possibly have claims for assault, battery or violations of the *Bane Act*. They have never been threatened by actual violence (not mere words), touched by a defendant, nor have been affected by any alleged nuisance. They have no standing, yet they are included in the class and, if certified, possibly entitled to damages.

### 3.  Class Includes Members Whose Clams Are Stale

Under *Cal. Code Civ. Proc.* §335.1, a plaintiff has two years from the date of the intentional act, such as assault or battery, or negligent act to file a lawsuit. As for the *Bane Act*, for liability arising out of neglect or personal injury, a two-year statute of limitations applies, but for statutory actions, a three-year limitation applies. *See, K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.*, 2007 WL 915399, at *3 (N.D. Cal. 2007).

Here, many of the "beachgoers" who submitted declarations were "deterred" by actions that occurred long beyond the reach of any applicable statute of limitations. For example, see, Docs. 161, at ¶12 (Carpenter – has not been back since early 1980s); 163, at ¶10 (Blake - 10 years ago); 164, at ¶8 (Perez – has not been back since 1986); 170, at ¶13 (Alexander - last visited in 1999); 175, at ¶7 (Pastor – never went back after 1983-4 incident); 177, at ¶10 (Jongeward - has not surfed since 1980); and 179, at ¶5 (Marsch - last visit was in 1995). All of these "beachgoers" have no claim against the defendants for assault, battery, negligence, *Bane Act, etc*. because of the statute of limitations.

### 4.  The Bottom Line Is The Class Definition Is Overly Broad

As demonstrated above, plaintiffs' proposed class is overly broad because it includes class members with no injury, unripe claims, stale claims, and otherwise lack standing for one reason or another. Due to the overbreadth, these "beachgoers" have no standing. See *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (denying class certification on grounds that the class definition was overbroad because it included

14

unharmed individuals); *Colapinto v. Esquire Deposition Servs*., 09-cv-07584, 2011 WL 913251, at *4 (C.D. Cal., 2011); *Red v. Kraft Foods, Inc*., 2011 U.S. Dist. LEXIS 116965, 2011 WL 4599833 (C.D. Cal. 2011) (holding that it was doubtful that all members of the proposed class would have Article III standing).

## C.  PLAINTIFFS LACK EVIDENCE OF NUMEROSITY

Certification requires that a class be so numerous that joinder of all members is impracticable. . "The numerosity requirement ensures that the class action device is used only where it would be inequitable and impracticable to require every member of the class to be joined individually." *Celano v. Marriott Intern., Inc*., 242 F.R.D. 544, 548 (N.D. Cal. 2007).

Plaintiffs have not established how many "beachgoers" actually "want" to access Lunada Bay but were "deterred" by the alleged Lunada Bay Boys. The data provided by plaintiffs via their expert is overbroad and insufficient to establish numerosity. Beyond this speculative data, plaintiffs can only point to a handful of individuals who would be class members (and many of those have no justiciable claim). This is true even though proposed class counsel has been trying to identify putative class members since the onset of this litigation. See, *Declaration of Dieffenbach*, filed concurrently.

This case is very similar to *Celano v. Marriott Intern., Inc*., 242 F.R.D. 544, 546 (N.D. Cal. 2007), wherein the plaintiffs alleged that defendant's failure to provide "accessible" golf carts for disabled persons violated the ADA. Plaintiffs sought a declaration that Marriott's policies are unlawful and an injunction requiring defendant to provide single-rider carts at each of its golf facilities. *Id*. The Court noted:

> While the potential class is likely geographically diverse because
> Marriott has courses throughout the United States, and the class is not
> readily identifiable, plaintiffs have submitted declarations of only 21
> individuals in support of numerosity. Assuming these declarations
> establish that these individuals attempted to play at the Marriott and
> could not, or wanted to play there but were deterred by the absence of

single-rider carts, these facts are still limited to these 21 individuals.
This is insufficient for class certification, as it would not be im-
racticable to join these individuals in suit. *Celano, supra*, at p. 549.

The same is true here. The handful of "beachgoers" who appear in support of this motion could easily be joined. Nevertheless, plaintiffs present a potential class of 20,000 but their analysis to derive this number is inadequate. They presume that an estimated 20,000 "beachgoers" would visit the area if not for the actions of the defendants but consider no other factors related to the uniqueness of the locations such as remoteness, terrain, and difficulty of the surf, to justify this number. Again, the analysis in *Celano, supra,* at p. 549, is directly applicable [issues and facts exchanged]:

Plaintiffs' census data and statistics are too ambiguous and speculative to establish numerosity. Plaintiffs first ask the court to infer from them that [beachgoers] who do not currently [visit Lunada Bay], would like to. … More significantly, plaintiffs' data provides no insight into how many [beachgoers] who would like to [surf at Lunada Bay], are deterred from doing so because of [the Lunada Bay Boys].

Furthermore, plaintiffs presume that Lunada Bay could support 20,000 "beachgoers" per year as surfers. There is no evidence of that. Indeed, all of the other beaches listed by plaintiffs have infrastructure, bathrooms, lifeguard towers, parking lots, garages, wider roads, traffic signals, crosswalks, stairs, sidewalks, etc. There is no evidence that Lunada Bay could support such amenities.

In fact, the evidence shows Lunada Bay is less than a half-mile of California's 1,100 miles of shoreline (*i.e.* 0.045%) and is only accessible by boat or two unmarked trails that lead down a steep, 100-foot cliff. Doc. 159-7, ¶ 10; 159-8 ¶12. None of these facts and circumstances are taken into account while formulating the 20,000 "beachgoers" a year tally speculatively provided by plaintiffs and their experts.

Without some evidentiary showing by the plaintiffs of how many "beachgoers" would actually "want" to visit Lunada Bay but have been "deterred" by the local

16

residence, this class action cannot be certified.

## D.  PLAINTIFFS LACK COMMONALITY

Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class." Interpreting Rule 23(a)(2), the Court stated that its commonality language is "easy to misread, since '[a]ny competently crafted class complaint literally raises common questions.'" *Id.* at 2551. However, what matters in class certification "is not the raising of common 'questions' – even in droves – but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* In *Blackie v. Barrack* 524 F.2d 891, 911, (9th Cir. 1975) the Court gave an example of a common question: "if plaintiffs prove their allegation of X, X will be a question of fact or law common to the class."

Here, there are no material common questions. Plaintiffs ignore the true questions of proof at issue. For example, if Mr. Spencer proves he was unlawfully "deterred" from visiting Lunada Bay by its residents, that is not common to anybody else. If Mrs. Reed proves she was assaulted and battered by one of the defendants, that is not common to anybody else. If the Costal Rangers, Inc., prove that the defendants negligently blocked the waterways of Lunada Bay with a dingy, which, by the way, is the only claim upon which federal jurisdiction was obtained, that fact is not common to anything. There are no material common questions and class treatment is completely improper under these issues.

## E.  THE CLASS LACKS TYPICALITY

The question of typicality is closely related to the question of commonality and fails here for the same reasons. See *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (1992). Moreover, Rule 23 (a)(3) requires a showing that the claims of the representative parties are typical of the claims of the class. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th

Cir. 2011); quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (internal citation and quotation marks omitted). "Thus, typicality is lacking where the adjudication of claims entails a fact-specific analysis requiring a case-by-case assessment." *Fosmire v. Progressive Max Ins. Co.* 277 F.R.D. 625, 632 (W.D. Wash. 2011) . Here, every class member will be subject to a fact-specific analysis as to the specific harm they suffered and whether they were unlawfully "deterred" by defendants.

These individual inquiries defeat the typicality requirement because persons' claims are "highly individualized  and differ[] from case to case." *Lewis Tree Serv., Inc. v. Lucent Tech. Inc.*, 211 F.R.D. 228, 234 (S.D.N.Y. 2002). Even the assertion of "a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006); see generally *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (typicality requires that "each class member's claim arises from the same course of events").

## F.  THE DEFENDANTS LACK TYPICALITY

As a general rule, a proposed class representative's claims will not be deemed to be typical of those of the class when the representative had no dealing with a particular defendant. *La Mar v. H & B Novelty & Loan Co*., 489 F. 2d 461, 466 (9th Cri. 1973). "A plaintiff who has no cause of action against the defendant can not 'fairly and adequately protect the interests' of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect." *Id.* In *Moreno v. G&M Oil Co*, this Court found the plaintiff did not have standing to challenge barriers at the 82 sites he did not visit. *Moreno v. G&M Oil Co.*, 88 F. Supp. 2d 1116, 1117-118 (C.D. Cal. 2000)).

An exception to this rule is if the defendants act in a conspiracy. *La Mar v. H & B*

18

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1    *Novelty & Loan Co.*, 489 F2.d 461, 466 (9th Cri. 1973). However, "mere association

2    with [the] group—absent a specific intent to further an unlawful aim embraced by that

3    group—is an insufficient predicate for liability." *N.A.A.C.P. v. Claiborne Hardware Co.*

4    (1982) 458 U.S. 88, 925–926, 102 S.Ct. 3409, 73 L.Ed.2d 1215.) The state court had

5    "relied on isolated acts of violence during a limited period to uphold [plaintiffs']

6    recovery of all business losses sustained over a 7–year span.... The court's judgment

7    'screens reality' and cannot stand." *Id.,* at p. 924. Here, the 30 years of isolated instances

8    of bullying cannot implicate a defendant such as Mr. Blakeman.

9           This is especially true when considering the only alleged acts by Mr. Blakeman

10   himself, who has no criminal history, as set forth in the complaint and declarations are

11   that he, (1) videotaped plaintiff Reed down at the Bay in January 2016, which she

12   claimed was "intimidating" although the video shows her laughing—(she had brought

13   her own photographer to the Bay that morning, apparently in the hopes of shooting

14   some lawsuit-worthy photos); (2) that he "hassled" Jordan Wright, Ms. Reed's

15   boyfriend, but no details are provided; (3) that he tried to paddle in the water near Chris

16   Taloa (but Taloa, a professional body border, stated that Blakeman was not in good

17   enough shape to keep up with him) and paddled near plaintiff Spencer on the same date;

18   and that he (4) paddled near brothers Ken and Chris Claypool on that same date in

19   January 2016, surfed recklessly near them and yelled at them that "they better not try to

20   catch any waves." Other than hearsay and conclusory statements, there is no evidence

21   that Mr. Blakeman was at any time acting in a conspiracy with respect to these disputed

22   events or that actionable acts by other defendants somehow involved Mr. Blakeman.

23   **G.  Certification Would Deprive Defendant Blakeman Of Due Process**

24          Federal courts have long recognized that class actions naming multiple

25   defendants or a class of defendants, as here, create due process issues that mandate

26   against class certification. "The reluctance of many courts to certify defendant classes is

27   rooted in the fact that the creation of defendant classes raises due process concerns not

28   encountered when the designation of a plaintiff class is sought." *Akerman v. Oryx*

*Communications, Inc*. 609 F. Supp. 363, 374 (S.D.NY. 1984); *Marchwinski v. Oliver Tyrone Corporation*, 81 F.R.D. 487, 489 (W.D. Pa. 1979). Class certification has been denied due to the repercussions of joint and several liability which would make each defendant potentially liable for astronomical damages. See *Kline v. Coldwell Banker & Co*. 508 F. 2d 226, 233-236 (9th Cir. 1974). Here, plaintiffs claim they are entitled to $50,000,000.

In a similar vein, cases involving attempted certification of matters involving individual criminal liability have been found inimical to class treatment and wanting under due process principles. *Kpadeh v. Emmanuel*, 261 F.R.D. 687 (S.D. Fla. 2009). "In cases where the determination of liability and/or damages requires a case-by-case inquiry for each prospective plaintiff, courts have generally found the predominance and superiority requirements of Rule 23(b)(3) unsatisfied." *Id.*

Plaintiffs are attempting to make individual defendants such as Mr. Blakeman liable for the acts not only of other defendants, but liable to a claimed 20,000-25,000 potential claimants, in violation of his due process rights. Affording Mr. Blakeman his due process rights requires an individualized inquiry to assess which, if any, of the acts attributed to Mr. Blakeman actually occurred, or violated the Bane Act, or constituted a Nuisance under the individual elements of those claims, and which, if any, were done in furtherance of an alleged conspiracy, or were done at all for that matter. Due process would require mini-trial on each and every allegation mad by each and every plaintiff.

**H.  ADEQUACY**

Although Mr. Blakeman disputes the adequacy of the class representatives and class counsel, he has run out of room to do so. Here hereby joins any argument made by his co-defendants regarding this issue.

Dated:  January 13, 2017                    **VEATCH CARLSON, LLP**

                                    By: /s/ John E. Stobart
                                    _____
                                    JOHN E. STOBART
                                    Attorneys for Defendant,
                                    BRANT BLAKEMAN

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Dated:  January 13, 2017

**BUCHALTER NEMER**

By: /s/ Robert S. Cooper
ROBERT S. COOPER
Attorneys for Defendant,
BRANT BLAKEMAN

**DEF. BLAKEMAN'S OPP TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**