# EXHIBIT 3

1 | HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
2 | kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
3 | swolff@hansonbridgett.com
CAROLINE LEE, SBN 293297
4 | clee@hansonbridgett.com
JENNIFER ANIKO FOLDVARY, SBN 292216
5 | jfoldvary@hansonbridgett.com
425 Market Street, 26th Floor
6 | San Francisco, California 94105
Telephone: (415) 777-3200
7 | Facsimile:  (415) 541-9366

8 | HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
9 | tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
10 | lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
11 | Sacramento, California 95814
Telephone: (916) 442-3333
12 | Facsimile:  (916) 442-2348

13 | OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
14 | vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
15 | kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
16 | Torrance, California 90505
Telephone: (310) 378-8533
17 | Facsimile:  (310) 347-4225

18 | Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
19 | REED, and COASTAL PROTECTION
RANGERS, INC.

20 |

21 | **UNITED STATES DISTRICT COURT**

22 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

23 |

24 | CORY SPENCER, an individual;
25 | DIANA MILENA REED, an
individual; and COASTAL
26 | PROTECTION RANGERS, INC., a
27 | California non-profit public benefit
corporation,
28 |

CASE NO. 2:16-cv-02129-SJO (RAOx)

**PLAINTIFF COREY SPENCER
SUPPLEMENTAL RESPONSES TO
INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT
BLAKE BLAKEMAN**

13002697.1

| | | |
|---|---|---|
| 1 | Plaintiffs, | |
| 2 | | Complaint Filed: March 29, 2016 |
| 3 | v. | Trial Date: November 7, 2017 |

4  LUNADA BAY BOYS; THE
5  INDIVIDUAL MEMBERS OF THE
   LUNADA BAY BOYS, including but
6  not limited to SANG LEE, BRANT
7  BLAKEMAN, ALAN JOHNSTON
   AKA JALIAN JOHNSTON,
8  MICHAEL RAE PAPAYANS,
9  ANGELO FERRARA, FRANK
   FERRARA, CHARLIE FERRARA,
10 and N. F.; CITY OF PALOS
11 VERDES ESTATES; CHIEF OF
   POLICE JEFF KEPLEY, in his
12 representative capacity; and DOES
13 1-10,

14          Defendants.

15

16   PROPOUNDING PARTY:     Defendant BRANT BLAKEMAN

17   RESPONDING PARTY:      Plaintiff CORY SPENCER

18   SET NO.:               SUPPLEMENTAL

19       Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff

20   CORY SPENCER ("Responding Party") hereby submits these objections

21   and responses to Interrogatories, Set One, propounded by Defendant

22   BRANT BLAKEMAN ("Propounding Party").

23                       **PRELIMINARY STATEMENT**

24       Nothing in this response should be construed as an admission by

25   Responding Party with respect to the admissibility or relevance of any fact,

26   or of the truth or accuracy of any characterization or statement of any kind

27   contained in Propounding Party's Interrogatories. Responding Party has not

28   completed its investigation of the facts relating to this case, its discovery or

its preparation for trial. All responses and objections contained herein are based only upon information that is presently available to and specifically known by Responding Party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts and add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the responses set forth herein. The following objections and responses are made without prejudice to Responding Party's right to produce at trial, or otherwise, evidence regarding any subsequently discovered information. Responding Party accordingly reserves the right to modify and amend any and all responses herein as research is completed and contentions are made.

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

IDENTIFY ALL PERSONS that have knowledge of any facts that support your contention that BRANT BLAKEMAN participated in any way in the "commission of enumerated 'predicate crimes'" as alleged in paragraph 5 of the Complaint, and for each such PERSON identified state all facts you contend are within that PERSON's knowledge.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so. See *Kmiec v. Powerwave Techs. Inc. et al.*, 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

1  interrogatory need not be answered until designated discovery is complete,
2  or until a pretrial conference or some other time.").

3      Responding Party further objects to this interrogatory as unduly
4  burdensome, harassing, and duplicative of information disclosed in
5  Responding Party's Rule 26(a) disclosures and supplemental disclosures.
6  Propounding Party may look to Responding Party's Rule 26(a) disclosures
7  and supplemental disclosures for the information sought by this
8  interrogatory.  Moreover, Responding Party had the opportunity to depose
9  Mr. Spencer on this topic.

10      Responding Party further objects to this interrogatory as compound.
11  This "interrogatory" contains multiple impermissible subparts, which
12  Propounding Party has propounded to circumvent the numerical limitations
13  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

14      Responding Party further objects to this interrogatory on the grounds
15  that it seeks information that is outside of Responding Party's knowledge.

16      Responding Party further objects to the extent that this interrogatory
17  invades attorney-client privilege and/or violates the work product doctrine by
18  compelling Responding Party to disclose privileged communications and/or
19  litigation strategy.

20      Subject to and without waiver of the foregoing objections, Responding
21  Party responds as follows:

22      In addition to each defendant named in his individual capacity and
23  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,
24  and the evidence submitted in support of Plaintiffs motion for class
25  certification, Responding Party identifies the following individuals:

26      Cory Spencer: Spencer believes that Blakeman engaged in a
27  concerted effort with other Bay Boys to obstruct his free passage and use in
28  the customary manner of a public space.  Spencer also believes that

1 | Blakeman coordinated with other Bay Boys to assault him while he was
2 | surfing. Spencer believes that the conduct directed at him and others trying
3 | to surf Lunada Bay is part of an agreement among Blakeman and the other
4 | Bay Boys, which at a minimum, may be implied by the conduct of the parties
5 | and other members of the Bay Boys. Spencer believes that the Bay Boys
6 | concerted efforts to stop the public from accessing the beach are
7 | documented in text messages and emails being withheld by the Defendants
8 | in this case. For example, Plaintiffs are informed and believe that a text
9 | message was sent to Defendant Papayans on February 7, 2016, by a Bay
10 | Boy inquiring "How was all that Taloa shit? Charley called me and my dad
11 | said why weren't you down there."  In addition, Plaintiffs believe that the Bay
12 | Boys take photos and/or video tape people as a form of harassment and
13 | intimidation. For example, plaintiffs are also informed and believe that a
14 | Lunada Bay local named Joshua Berstein was taking pictures at the MLK
15 | 2014 paddle out. Plaintiffs are also informed and believe that Berstein told
16 | several people after he photographed them "know we know who you are."

17 |     The specific acts directed against Spencer include but are not limited
18 | to the following:

19 |     Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly
20 | after they arrived at Lunada Bay, they started getting harassed by Bay Boys.
21 | They were told that they couldn't surf there, and Spencer was called a
22 | "kook," which is a derogatory surfing term. Spencer was also told: "why don't
23 | you fucking go home, you fucking kook" and asked "how many other good
24 | places did you pass to come here?" These are the same types of statements
25 | made by Defendant Sang Lee and others that can be observed on the video

26 |
27 |
28 |

PLAINTIFF COREY SPENCER SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

1  published by the Guardian.[1] These taunts started while Spencer and Taloa
2  were on the bluffs getting ready to surf. One individual continued to heckle
3  Spencer and Taloa on their way down to the beach and into the water.

4  Blakeman was already in the water and began paddling around
5  Spencer and Taloa in a tight circle – staying just a few feet away from them.
6  There was no legitimate reason for this conduct. Spencer believes that this
7  is a tactic used by the Bay Boys to harass people.[2] Blakeman impeded
8  Spencer's movement in any direction and was intentionally blocking him
9  from catching any waves. It was clear to Spencer that Blakeman was not
10 there to surf that morning. Instead, his mission was to prevent Spencer and
11 Taloa from surfing and to keep them from enjoying their time in the water,
12 the open space, the waves, and nature. This the type of concerted effort was
13 described by Charlie Ferrara to Reed as the way the Bay Boys act to keep
14 people from surfing at Lunada Bay. In the approximately 90 minutes that
15 Spencer was in the water that day, Blakeman was focused on Spencer and
16 Taloa and continued to shadow their movements, and sit uncomfortably
17 close to them. Spencer had never experienced anything like that before in
18 his life. It was bizarre but also incredibly frightening and disturbing. It
19 appeared to Spencer that Blakeman was coordinating his actions with a
20 group of guys who were standing in the Rock Fort, along with others in the
21 water. They were all talking to each other and it was clear they all knew
22 each other.

23

24

---

25 [1] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.
26

27 [2] Plaintiffs are informed and believe that Defendant Papayans sent a text
message describing similar conduct: "We just had a kook out in the water
28 and me and Jack just sat on his ass."

1    At one point while Spencer was in the water and was paddling west
2    out to the ocean, he saw a man surfing, coming in east towards the shore.
3    The Bay Boy ran over his hand/wrist that was holding his surfboard and one
4    of the fins on his surfboard sliced open his right wrist. Spencer has about a
5    half-inch scar from where this man ran him over. As soon as the Bay Boy
6    ran him over, he started berating Spencer, saying things like "what are you
7    fucking doing out here? I told you to go home. I should have run you over.
8    Why are you paddling in the sun glare where I can't see you?" The Bay Boy
9    was pretending that he didn't see Spencer but it was obvious that he did and
10   intentionally ran him over. With over 30 years of surfing experience, Spencer
11   knew that this collision was intentional on his part. Fearful of being further
12   injured at that point, and not wanting to get into an argument with him,
13   Spencer just paddled away. Spencer and Taloa caught one more wave after
14   that and then decided it was getting too dangerous to surf. More men started
15   showing up at the Rock Fort and Spencer and Taloa were growing
16   increasingly fearful for their safety. Spencer was also bleeding and in pain.
17   These incidents are described in the declarations filed with Plaintiffs motion
18   for class certification and the deposition of Spencer.

19   Spencer further identifies the following individuals as having
20   knowledge of concerted efforts by the Bay Boys, including Blakeman:

21   Christopher Taloa. As set forth above, Taloa and Spencer went surfing
22   at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman
23   shadowing Spencer's movement in the water. Blakeman was in the water
24   with four or five other Lunada Bay Locals.  At one point, Blakeman paddled
25   toward Taloa, at which point Taloa told him that he was too close.
26   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."
27   Taloa kept moving in the water, and Blakeman attempted to keep up with
28   him but was not in good enough shape to do so.

1  Diana Milena Reed. As set forth in the Complaint, Reed was harassed
2  by Blakeman and other Lunada Bay locals on multiple occasions.  On
3  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan
4  Wright and harassed them. Blakeman was there filming the incident.[3]  On
5  February 13, 2016, Reed and Wright returned to Lunada Bay and Blakeman
6  and a teenage boy attempted to block their pathway on the trail.  Blakeman
7  and the other boy were filming Reed and Wright, and Blakeman told them
8  that they were "done," in a hostile and threatening manner.  Later that
9  morning, after Reed and Wright had continued down the path, Blakeman
10  and Defendant Alan Johnston rushed into the Rock Fort where Reed was
11  taking photos; the assault appeared to be a coordinated and orchestrated
12  and in retaliation for an article that appeared in the Los Angeles Times.
13  Blakeman was filming Reed and had his camera close to her face.  Reed
14  asked why he was filming her, and Blakeman responded, "Because I feel
15  like it," and Johnston responded, "Because you're hot."  Charlie Ferrara was
16  present during this incident, and observed the entire thing.  Although Ferrara
17  apologized later for their behavior, he appeared to be complicit in Blakeman
18  and Johnston's actions. These incidents are described in the declarations
19  filed with Plaintiffs motion for class certification and the deposition of Reed.

20  Jen Bell. The incident described above was witnessed by a woman
21  named Jen Bell who had gone to Lunada Bay that same day to photograph
22  a guy from Malibu. When she attempted sit down on the beach with her
23  pack, a man said: "You are practically sitting in a men's locker-room. You

24

25

26  [3] Plaintiffs are informed and believe that there were text message sent on
   January 29, 2016 asking Defendant Papayans "Where are you? Kooks
27  trying to get to the Bay." Plaintiffs are informed and believe that Papayans
28  responded with a "LOL" and said he would be there.

-8-

1  don't make me feel comfortable".  Bell continued to sit there for another 10
2  minutes because she refused to be intimated but eventually decided to head
3  over to the fort because she saw another woman, Diana Reed, was taking
4  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It
5  was obvious from the start that Johnston and Blakeman were there with the
6  intent to harass Reed. Johnston was making rude comments to both her and
7  Reed. Blakeman was putting the GoPro in their faces. Johnston was
8  chugging multiple beers and it was early in the morning. Johnston asked her
9  to help him with his wetsuit. He said "Can you help me with this?" and
10 handed her the leg of his wetsuit. Johnston made moaning sounds when
11 she took it like he was having an orgasm.

12      Jordan Wright. Wright attempted to surf Lunada Bay in January 2015
13 with Chris Claypool and Kenneth Claypool. He observed Blakeman
14 harassing Chris and Ken. Wright was sitting on the outside waiting his turn
15 for waves. By regular surfing norms, he had priority. He caught a10- to 12-
16 foot-high wave and was up riding for several seconds. Alan Johnston
17 paddled the wrong way on this wave, dropped in on him going the wrong
18 way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
19 while going the wrong way violates normal surf etiquette. Johnston then
20 collided with Wright, and their leashes got tangled. After they surfaced from
21 the collision, Johnston then got close to Wright and yelled, "You had to
22 fucking take that wave, didn't you!" The next wave that came through then
23 broke Wrights leash plug and the board was carried into the rocks, which
24 destroyed a new surfboard. Wright had to swim in over rocks to get his
25 board and cut his hands on the rocks doing so. Wright is confident that
26 Johnston attempted to purposefully injure him. What he did was extremely
27 dangerous.

28      Wright has observed Blakeman on many occasions. Blakeman is easy

13002697.1

1  to identify because he rides a kneeboard and he is regularly filming visitors
2  on land with a camcorder. Wright believes his filming is an effort to intimidate
3  visitors. In the water, Wright has observed what appears to be Blakeman
4  directing other Bay Boys to sit close to visiting surfers. Wright has observed
5  Bay Boys who seem to be assigned to visiting surfers—they'll sit
6  too close to the visitors, impede their movements, block their surfing, kick at
7  them, splash water at them, and dangerously drop in on them. In addition to
8  Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,
9  Charlie Ferrara, and David Mello engage in this activity. These incidents are
10 described in the declarations filed with Plaintiffs motion for class certification.

11       Ken Claypool has been harassed and filmed by Blakeman in an
12 attempt to intimidate him at Lunada Bay on multiple occasions. In January
13 2015, Claypool and his brother Chris Claypool along with Jordan Wright
14 went to surf Lunada Bay.  There were about five Lunada Bay locals in the
15 water, including Blakeman who paddled over and threatened them. Claypool
16 observed Blakeman intentionally dropped in on Wright at least twice.

17       On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa
18 and Jordan Wright. There was a photographer from the Los Angeles Times
19 that was there. Also in attendance was Cory Spencer and Diana Reed.
20 Spencer was there to watch the cars.  Blakeman was there filming in an
21 effort to intimidate visitors. Blakeman can be seen in one of the pictures
22 taken by the photographer. Also present was Defendant Papayans. Plaintiffs
23 are informed and believe that there was a text message sent that day to
24 Papayans, Michael Theil and 11 other people stating that there were 5
25 kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are
26 informed that the text states: "Things could get ugly. We all need to surf."
27 These incidents are described in the declarations filed with Plaintiffs motion
28 for class certification.

1   Chris Claypool, his brother Ken, and Jordan Wright attempted to surf
2   Lunada Bay in January 2015.  There were about five locals in the water,
3   including Blakeman who paddled over and was yelling "Try and catch a
4   wave and see what happens. There is no fucking way you are getting a
5   wave. Just go in. Just go. You better not cut me off."  Blakeman looked
6   possessed or possibly on drugs. His behavior got more bizarre throughout
7   the morning. He seemed to be paddling for every wave that he could
8   physically push himself into, perhaps to make a point, but he was wiping out
9   a lot and falling down the face and tumbling across the rock reef. Blakeman
10  looked dangerous to himself. When Blakeman would actually catch a wave
11  in, he would paddle back to where Claypool and his brother were sitting, and
12  continue his insane rant. On one occasion, Blakeman came less than 12
13  inches from Claypool's ear and was screaming. It was so loud, Claypool had
14  to put his fingers in his ear to protect them from being damaged. Claypool is
15  a sound engineer and to put this in perspective, a rock concert creates about
16  120 decibels of noise - this was louder; a jet engine creates about 150
17  decibels. At one point Blakeman caught a wave and drew a line aiming right
18  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"
19  as he narrowly missed Claypool's head. Claypool watched as Blakeman
20  intentionally dropped in on Jordan at least twice. It seemed obvious to
21  Claypool that Blakeman and the other Bay Boy wanted to make sure none of
22  them were having fun. Because of the danger, they decided to leave.

23  When Claypool and his brother got out of water, they saw people
24  gathering on top of the cliff. One person was videotaping them from the top
25  of the cliff; it was clear to Claypool that he was doing this to try and
26  intimidate them. The people were watching them from the cliff. It was
27  obvious that Blakeman engaged in a concerted effort with other Bay Boys to
28  obstruct his free passage and use in the customary manner of a public

-11-                  Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

1   space. It also seemed clear that Blakeman engaged in a concerted effort
2   with other Bay Boys to try and injure him. These incidents are described in
3   the declarations filed with Plaintiffs motion for class certification.

4        Jason Gersch. While observing the surf, Gersch was approached by
5   two local Bay Boys named Peter McCollum and Brant Blakeman. These
6   individuals made it known to Gersch that he could not surf there. These
7   incidents are described in the declarations filed with Plaintiffs motion for
8   class certification.

9        Plaintiffs are informed and believe and on that basis allege that
10  Defendant Blakeman and his attorneys are attempting to intimidate
11  witnesses in this case. On at least two occasions, an investigator hired by
12  Blakeman's attorneys contacted witnesses they knew were represented by
13  Plaintiffs' attorneys. The investigator also showed up at the home of a
14  reporter that has not been listed as a witness.

15       The request is premature. Because Blakeman and the other
16  defendants are refusing to comply with their obligations to produce
17  documents under the federal rules and are impermissibly withholding
18  evidence and/or possibly spoliating evidence, we are not able to fully
19  respond to discovery requests which necessarily rely on our ability to fully
20  investigate the facts. As discovery is continuing, Spencer reserves the right
21  to update this response.

22  **INTERROGATORY NO. 2**:   IDENTIFY ALL PERSONS that have
23  knowledge of any facts that support your contention in paragraph 7 of the
24  Complaint that BRANT BLAKEMAN "is responsible in some manner for the
25  Bane Act violations and public nuisance described in the Complaint" and for
26  each such PERSON identified state all facts you contend are within that
27  PERSON's knowledge.

28

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so. See *Kmiec v. Powerwave Techs. Inc. et al.*, 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

Responding Party further objects to this interrogatory as unduly burdensome, harassing, and duplicative of information disclosed in Responding Party's Rule 26(a) disclosures and supplemental disclosures. Propounding Party may look to Responding Party's Rule 26(a) disclosures and supplemental disclosures for the information sought by this interrogatory. Moreover, Responding Party had the opportunity to depose Mr. Spencer on this topic.

Responding Party further objects to this interrogatory as compound. This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by compelling Responding Party to disclose privileged communications and/or litigation strategy.

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

1    Subject to and without waiver of the foregoing objections, Responding
2  Party responds as follows:

3    In addition to each defendant named in his individual capacity and
4  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,
5  and the evidence submitted in support of Plaintiffs motion for class
6  certification, Responding Party identifies the following individuals:

7    Cory Spencer: Spencer believes that Blakeman engaged in a
8  concerted effort with other Bay Boys to obstruct his free passage and use in
9  the customary manner of a public space.  Spencer also believes that
10  Blakeman coordinated with other Bay Boys to assault him while he was
11  surfing. Spencer believes that the conduct directed at him others trying to
12  surf Lunada Bay is part of an agreement among Blakeman and the other
13  Bay Boys, which at a minimum, may be implied by the conduct of the parties
14  and other members of the Bay Boys. Spencer believes that the Bay Boys
15  concerted efforts to stop the public from accessing the beach are
16  documented in text messages and emails being withheld by the Defendants
17  in this case. For example, Plaintiffs are informed and believe that a text
18  message was sent to Defendant Papayans on February 7, 2016, by a Bay
19  Boy inquiring "How was all that Taloa shit? Charley called me and my dad
20  said why weren't you down there."  In addition, Plaintiffs believe that the Bay
21  Booys take photos and/or video tape people to harass and intimadt them.
22  For example, Plaintiffs are also informed and believe that a Lunada Bay
23  local named Joshua Berstein was taking pictures at the MLK 2014 paddle
24  out. Plaintiffs are also informed and believe that Berstein told several people
25  after he photographed them "know we know who you are." Plaintiffs are
26  informed and believe that the Bay Boys use cameras to harass and
27  intimidate people. These incidents are described in the declarations filed
28  with Plaintiffs motion for class certification and the deposition of Taloa.

-14-    Case No. 2:16-cv-02129-SJO (RAOx)

1    The specific acts directed against Spencer include but are not limited
2    to the following:

3    Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly
4    after they arrived at Lunada Bay, they started getting harassed by Bay Boys.
5    They were told that they couldn't surf there, and Spencer was called a
6    "kook," which is a derogatory surfing term. Spencer was also told: "why don't
7    you fucking go home, you fucking kook" and asked "how many other good
8    places did you pass to come here?" These are the same types of statements
9    made by Defendant Sang Lee and others that can be observed on the video
10   published by the Guardian.[4]  These taunts started while Spencer and Taloa
11   were on the bluffs getting ready to surf. One individual continued to heckle
12   Spencer and Taloa on their way down to the beach and into the water.

13   Blakeman was already in the water and began paddling around
14   Spencer and Taloa in a tight circle – staying just a few feet away from them.
15   There was no legitimate reason for this conduct.[5] Spencer believes that this
16   is a tactic used by the Bay Boys to harass people.  Blakeman impeded
17   Spencer's movement in any direction and was intentionally blocking him
18   from catching any waves. It was clear to Spencer that Blakeman was not
19   there to surf that morning. Instead, his mission was to prevent Spencer and
20   Taloa from surfing and to keep them from enjoying their time in the water,
21   the open space, the waves, and nature. This the type of concerted effort was
22   described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

23

24

---

25   [4] https://www.theguardian.com/travel/video/2015/may/18/california-surf-
26   wars-lunada-bay-localism-video.

27   [5] Plaintiffs are informed and believe that Defendant Papayans sent a text
28   message describing similar conduct: "We just had a kook out in the water
     and me and Jack just sat on his ass."

-15-                    Case No. 2:16-cv-02129-SJO (RAOx)

1 | people from surfing at Lunada Bay. In the approximately 90 minutes that
2 | Spencer was in the water that day, Blakeman was focused on Spencer and
3 | Taloa and continued to shadow their movements, and sit uncomfortably
4 | close to them. Spencer had never experienced anything like that before in
5 | his life. It was bizarre but also incredibly frightening and disturbing. It
6 | appeared to Spencer that Blakeman was coordinating his actions with a
7 | group of guys who were standing in the Rock Fort, along with others in the
8 | water. They were all talking to each other and it was clear they all knew
9 | each other.

10 | At one point while Spencer was in the water and was paddling west
11 | out to the ocean, he saw a man surfing, coming in east towards the shore.
12 | The Bay Boy ran over his hand/wrist that was holding his surfboard and one
13 | of the fins on his surfboard sliced open his right wrist. Spencer has about a
14 | half-inch scar from where this man ran him over. As soon as the Bay Boy
15 | ran him over, he started berating Spencer, saying things like "what are you
16 | fucking doing out here? I told you to go home. I should have run you over.
17 | Why are you paddling in the sun glare where I can't see you?" The Bay Boy
18 | was pretending that he didn't see Spencer but it was obvious that he did and
19 | intentionally ran him over. With over 30 years of surfing experience, Spencer
20 | knew that this collision was intentional on his part. Fearful of being further
21 | injured at that point, and not wanting to get into an argument with him,
22 | Spencer just paddled away. Spencer and Taloa caught one more wave after
23 | that and then decided it was getting too dangerous to surf. More men started
24 | showing up at the Rock Fort and Spencer and Taloa were growing
25 | increasingly fearful for their safety. Spencer was also bleeding and in pain.
26 | These incidents are described in the declarations filed with Plaintiffs motion
27 | for class certification and the deposition of Spencer.

28 | Spencer further identifies the following individuals as having

-16-

1   knowledge of concerted efforts by the Bay Boys, including Blakeman:

2   **Christopher Taloa.** As set forth above, Taloa and Spencer went surfing
3   at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman
4   shadowing Spencer's movement in the water. Blakeman was in the water
5   with four or five other Lunada Bay Locals.  At one point, Blakeman paddled
6   toward Taloa, at which point Taloa told him that he was too close.
7   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."
8   Taloa kept moving in the water, and Blakeman attempted to keep up with
9   him but was not in good enough shape to do so.

10   **Diana Milena Reed.** As set forth in the Complaint, Reed was harassed
11   by Blakeman and other Lunada Bay locals on multiple occasions.  On
12   January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan
13   Wright and harassed them. Blakeman was there filming the incident.[6]   On
14   February 13, 2016, Reed and Wright returned to Lunada Bay and Blakeman
15   and a teenage boy attempted to block their pathway on the trail.  Blakeman
16   and the other boy were filming Reed and Wright, and Blakeman told them
17   that they were "done," in a hostile and threatening manner.  Later that
18   morning, after Reed and Wright had continued down the path, Blakeman
19   and Defendant Alan Johnston rushed into the Rock Fort where Reed was
20   taking photos; the assualt appeared to be a coordinated and orchestrated
21   and in retaliation for an article that appeared in the Los Angeles Times.
22   Blakeman was filming Reed and had his camera close to her face.  Reed
23   asked why he was filming her, and Blakeman responded, "Because I feel
24
25

26   [6] Plaintiffs are informed and believe that there were text message sent on
27   January 29, 2016 asking Defendant Papayans "Where are you? Kooks trying to get to the Bay." Plaintiffs are informed and believe that Papayans
28   responded with a "LOL" and said he would be there.

1   like it," and Johnston responded, "Because you're hot."  Charlie Ferrara was
2   present during this incident, and observed the entire thing.  Although Ferrara
3   apologized later for their behavior, he appeared to be complicit in Blakeman
4   and Johnston's actions. These incidents are described in the declarations
5   filed with Plaintiffs motion for class certification and the deposition of Reed.

6       Jen Bell. The incident described above was witnessed by a woman
7   named Jen Bell who had gone to Lunada Bay that same day to photograph
8   a guy from Malibu. When she attempted sit down on the beach with her
9   pack, a man said: "You are practically sitting in a men's locker-room. You
10  don't make me feel comfortable".  Bell continued to sit there for another 10
11  mins because she refused to be intimated but decided to head over to the
12  fort because she saw another woman, Diana Reed, was taking photos.  Bell
13  was in the Rock Fort when Blakeman and Johnston arrived. It was obvious
14  from the start that Johnston and Blakeman were there with the intent to
15  harass Reed. Johnston was making rude comments to both her and Reed.
16  Blakeman was putting the GoPro in their faces. Johnston was chugging
17  multiple beers and it was early in the morning. Johnston asked her to help
18  him with his wetsuit. He said "Can you help me with this?" and handed her
19  the leg of his wetsuit. Johnston made moaning sounds when she took it like
20  he was having an orgasm.

21      Jordan Wright. Wright attempted to surf Lunada Bay in January 2015
22  with Chris Claypool and Kenneth Claypool. He observed Blakeman
23  harassing Chris and Ken. Wright was sitting on the outside waiting his turn
24  for waves. By regular surfing norms, he had priority. He caught a10- to 12-
25  foot-high wave and was up riding for several seconds. Alan Johnston
26  paddled the wrong way on this wave, dropped in on him going the wrong
27  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
28  while going the wrong way violates normal surf etiquette. Johnston then

-18-
Case No. 2:16-cv-02129-SJO (RAOx)

1  collided with Wright, and their leashes got tangled. After they surfaced from
2  the collision, Johnston then got close to Wright and yelled, "You had to
3  fucking take that wave, didn't you!" The next wave that came through then
4  broke Wrights leash plug and the board was carried into the rocks, which
5  destroyed a new surfboard. Wright had to swim in over rocks to get his
6  board and cut his hands on the rocks doing so. Wright is confident that
7  Johnston was attempted to purposefully injure him. What he did was
8  extremely dangerous.

9  Wright has observed Blakeman on many occasions. Blakeman is easy
10  to identify because he rides a kneeboard and he is regularly filming visitors
11  on land with a camcorder. Wright believes his filming is an effort to intimidate
12  visitors. In the water, Wright has observed what appears to be Blakeman
13  directing other Bay Boys to sit close to visiting surfers. Wright has observed
14  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to
15  the visitors, impede their movements, block their surfing, kick at them,
16  splash water at them, and dangerously drop in on them. In addition to
17  Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,
18  Charlie Ferrara, and David Mello engage in this activity. These incidents are
19  described in the declarations filed with Plaintiffs motion for class certification.

20  Ken Claypool has been harassed and filmed by Blakeman in an
21  attempt to intimidate him at Lunada Bay on multiple occasions. In January
22  2015, Claypool and his brother Chris Claypool along with Jordan Wright
23  went to surf Lunada Bay.  There were about five Lunada Bay locals in the
24  water, including Blakeman who paddled over and threatened them. Claypool
25  observed Blakeman intentionally dropped in on Wright at least twice.

26  On February 5, 2016. Claypool went to Lunada Bay with Chris Taloa
27  and Jordan Wright. There was a photographer from the Los Angeles Times
28  that was there. Also in attendance was Cory Spencer and Diana Reed.

**-19-**  Case No. 2:16-cv-02129-SJO (RAOx)

1   Spencer was there to watch the cars.  Blakeman was there filming in an
2   effort to intimidate visitors. Blakeman can be seen in one of the pictures
3   taken by the photographer. Also present was Defendant Papayans. Plaintiffs
4   are informed and believe that there was a text message sent that day to
5   Papayans, Michael Theil and 11 other people stating that there were 5
6   kooks standing on the bluff taking pictures, including Taloa. The text states:
7   "Things could get ugly. We all need to surf." These incidents are described
8   in the declarations filed with Plaintiffs motion for class certification.

9        Chris Claypool, his brother Ken, and Jordan Wright attempted to surf
10  Lunada Bay in January 2015.  There were about five locals in the water,
11  including Blakeman who paddled over and was yelling "Try and catch a
12  wave and see what happens. There is no fucking way you are getting a
13  wave. Just go in. Just go. You better not cut me off."  Blakeman looked
14  possessed or possibly on drugs. His behavior got more bizarre throughout
15  the morning. He seemed to be paddling for every wave that he could
16  physically push himself into, perhaps to make a point, but he was wiping out
17  a lot and falling down the face and tumbling across the rock reef. Blakeman
18  looked dangerous to himself. When Blakeman would actually catch a wave
19  in, he would paddle back to where Claypool and his brother were sitting, and
20  continue his insane rant. On one occasion, Blakeman came less than 12
21  inches from Claypool's ear and was screaming. It was so loud, Claypool had
22  to put his fingers in his ear to protect them from being damaged. Claypool is
23  a sound engineer and to put this in perspective, a rock concert creates about
24  120 decibels of noise - this was louder; a jet engine creates about 150
25  decibels. At one point Blakeman caught a wave and drew a line aiming right
26  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"
27  as he narrowly missed Claypool's head. Claypool watched as Blakeman
28  intentionally dropped in on Jordan at least twice. It seemed obvious to

-20-                          Case No. 2:16-cv-02129-SJO (RAOx)

1  Claypool that Blakeman and the other Bay Boy wanted to make sure none of
2  them were having fun. Because this was getting dangerous, they decided to
3  leave.

4      When Claypool and his brother got out of water, they saw people
5  gathering on top of the cliff. One person was videotaping them from the top
6  of the cliff; it was clear to Claypool that he was doing this to try and
7  intimidate them. The people were watching them from the cliff. It was
8  obvious that Blakeman engaged in a concerted effort with other Bay Boys to
9  obstruct his free passage and use in the customary manner of a public
10 space. It also seemed clear that Blakeman engaged in a concerted effort
11 with other Bay Boys to try and injure him. These incidents are described in
12 the declarations filed with Plaintiffs motion for class certification.

13     Jason Gersch. While observing the surf, Gersch was approached by
14 two local Bay Boys named Peter McCollum and Brant Blakeman. These
15 individuals made it known to Gersch that he could not surf there. These
16 incidents are described in the declarations filed with Plaintiffs motion for
17 class certification.

18     Plaintiffs are informed and believe and on that basis allege that
19 Defendant Blakeman and his attorneys are attempting to intimidate
20 witnesses in this case. On at least two occasions, an investigator hired by
21 Blakeman's attorneys contacted witnesses represented by Plaintiffs'
22 attorneys. The investigator also showed up at the home of a reporter that
23 has not been listed as a witness.

24     The request is premature. Because Blakeman and the other
25 defendants are refusing to comply with their obligations to produce
26 documents under the federal rules and are impermissibly withholding
27 evidence and/or possibly spoliating evidence, we are not able to fully
28 respond to discovery requests which necessarily rely on our ability to fully

1 investigate the facts. As discovery is continuing, Spencer reserves the right
2 to update this response.

3 **INTERROGATORY NO. 3:**

4     IDENTIFY ALL PERSONS that have knowledge of any facts that
5 support your contention in paragraph 18 of the Complaint that BRANT
6 BLAKEMAN "sell[s] market[s] and use[s] illegal controlled substances from
7 the Lunada Bay Bluffs and the Rock Fort" and for each such PERSON
8 identified state all facts you contend are within the PERSON's knowledge.

9 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

10     Responding Party objects to this interrogatory as premature. Because
11 this interrogatory seeks or necessarily relies upon a contention, and
12 because this matter is in its early stages and pretrial discovery has only just
13 begun, Responding Party is unable to provide a complete response at this
14 time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,
15 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*
16 *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see
17 also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]
18 interrogatory need not be answered until designated discovery is complete,
19 or until a pretrial conference or some other time.").

20     Responding Party further objects to this interrogatory as unduly
21 burdensome, harassing, and duplicative of information disclosed in
22 Responding Party's Rule 26(a) disclosures and supplemental disclosures.
23 Propounding Party may look to Responding Party's Rule 26(a) disclosures
24 and supplemental disclosures for the information sought by this
25 interrogatory.  Moreover, Responding Party had the opportunity to depose
26 Mr. Spencer on this topic.

27     Responding Party further objects to this interrogatory as compound.
28 This "interrogatory" contains multiple impermissible subparts, which

1 | Propounding Party has propounded to circumvent the numerical limitations
2 | on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

3 | Responding Party further objects to this interrogatory on the grounds
4 | that it seeks information that is outside of Responding Party's knowledge.

5 | Responding Party further objects to the extent that this interrogatory
6 | invades attorney-client privilege and/or violates the work product doctrine by
7 | compelling Responding Party to disclose privileged communications and/or
8 | litigation strategy.

9 | Subject to and without waiver of the foregoing objections, Responding
10 | Party responds as follows:

11 | In addition to each defendant named in his individual capacity and
12 | other persons identified in Plaintiffs' Initial and Supplemental Disclosures,
13 | and the evidence submitted in support of Plaintiffs motion for class
14 | certification, Responding Party identifies the following individuals: an
15 | individual that is goes by the name The Weasel.

16 | The request is premature. Because Blakeman and the other
17 | defendants are refusing to comply with their obligations to produce
18 | documents under the federal rules and are impermissibly withholding
19 | evidence and/or possibly spoliating evidence, we are not able to fully
20 | respond to discovery requests which necessarily rely on our ability to fully
21 | investigate the facts. As discovery is continuing, Spencer reserves the right
22 | to update this response.

23 | **INTERROGATORY NO. 4:**

24 | IDENTIFY ALL PERSONS that have knowledge of any facts that
25 | support your contention in paragraph 18 of the Complaint that BRANT
26 | BLAKEMAN "impede[d] boat traffic" at any time, and for each such PERSON
27 | identified state all facts you contend are within that PERSON's knowledge.

28 |

-23-     Case No. 2:16-cv-02129-SJO (RAOx)

1  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

2       Responding Party objects to this interrogatory as premature. Because
3  this interrogatory seeks or necessarily relies upon a contention, and
4  because this matter is in its early stages and pretrial discovery has only just
5  begun, Responding Party is unable to provide a complete response at this
6  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,
7  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*
8  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see
9  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]
10 interrogatory need not be answered until designated discovery is complete,
11 or until a pretrial conference or some other time.").

12      Responding Party further objects to this interrogatory as unduly
13 burdensome, harassing, and duplicative of information disclosed in
14 Responding Party's Rule 26(a) disclosures and supplemental disclosures.
15 Propounding Party may look to Responding Party's Rule 26(a) disclosures
16 and supplemental disclosures for the information sought by this
17 interrogatory.  Moreover, Responding Party had the opportunity to depose
18 Mr. Spencer on this topic.

19      Responding Party further objects to this interrogatory as compound.
20 This "interrogatory" contains multiple impermissible subparts, which
21 Propounding Party has propounded to circumvent the numerical limitations
22 on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

23      Responding Party further objects to this interrogatory on the grounds
24 that it seeks information that is outside of Responding Party's knowledge.

25      Responding Party further objects to the extent that this interrogatory
26 invades attorney-client privilege and/or violates the work product doctrine by
27 compelling Responding Party to disclose privileged communications and/or
28 litigation strategy.  Responding Party will not provide any such information.

1   Subject to and without waiver of the foregoing objections, Responding

2   Party responds as follows:

3   In addition to each defendant named in his individual capacity and

4   other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

5   and the evidence submitted in support of Plaintiffs motion for class

6   certification, Responding Party identifies the following individuals: Jordan

7   Wright, Ken Claypool.

8   The request is premature. Because Blakeman and the other

9   defendants are refusing to comply with their obligations to produce

10   documents under the federal rules and are impermissibly withholding

11   evidence and/or possibly spoliating evidence, we are not able to fully

12   respond to discovery requests which necessarily rely on our ability to fully

13   investigate the facts. As discovery is continuing, Spencer reserves the right

14   to update this response.

15   **INTERROGATORY NO. 5:**

16   IDENTIFY ALL PERSONS that have knowledge of any facts that

17   support your contention in paragraph 18 of the Complaint that BRANT

18   BLAKEMAN "dangerously disregard[ed] surfing rules" at any time, and for

19   each such PERSON identified state all facts you contend are within that

20   PERSON's knowledge.

21   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

22   Responding Party objects to this interrogatory as premature. Because

23   this interrogatory seeks or necessarily relies upon a contention, and

24   because this matter is in its early stages and pretrial discovery has only just

25   begun, Responding Party is unable to provide a complete response at this

26   time, nor is it required to do so. See *Kmiec v. Powerwave Techs. Inc. et al.*,

27   2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

28   *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

1 | also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]
2 | interrogatory need not be answered until designated discovery is complete,
3 | or until a pretrial conference or some other time.").

4 | Responding Party further objects to this interrogatory as unduly
5 | burdensome, harassing, and duplicative of information disclosed in
6 | Responding Party's Rule 26(a) disclosures and supplemental disclosures.
7 | Propounding Party may look to Responding Party's Rule 26(a) disclosures
8 | and supplemental disclosures for the information sought by this
9 | interrogatory. Moreover, Responding Party had the opportunity to depose
10 | Mr. Spencer on this topic.

11 | Responding Party further objects to this interrogatory as compound.
12 | This "interrogatory" contains multiple impermissible subparts, which
13 | Propounding Party has propounded to circumvent the numerical limitations
14 | on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

15 | Responding Party further objects to this interrogatory on the grounds
16 | that it seeks information that is outside of Responding Party's knowledge.

17 | Responding Party further objects to the extent that this interrogatory
18 | invades attorney-client privilege and/or violates the work product doctrine by
19 | compelling Responding Party to disclose privileged communications and/or
20 | litigation strategy.

21 | Subject to and without waiver of the foregoing objections, Responding
22 | Party responds as follows:

23 | In addition to each defendant named in his individual capacity and
24 | other persons identified in Plaintiffs' Initial and Supplemental Disclosures,
25 | and the evidence submitted in support of Plaintiffs motion for class
26 | certification, Responding Party identifies the following individuals:

27 | Cory Spencer: Spencer believes that Blakeman engaged in a
28 | concerted effort with other Bay Boys to obstruct his free passage and use in

-26-

1  the customary manner of a public space. Spencer also believes that
2  Blakeman coordinated with other Bay Boys to assault him while he was
3  surfing. Spencer believes that the conduct directed at him others trying to
4  surf Lunada Bay is part of an agreement among Blakeman and the other
5  Bay Boys, which at a minimum, may be implied by the conduct of the parties
6  and other members of the Bay Boys. Spencer believes that the Bay Boys
7  concerted efforts to stop the public from accessing the beach are
8  documented in text messages and emails being withheld by the Defendants
9  in this case. For example, Plaintiffs are informed and believe that a text
10  message was sent to Defendant Papayans on February 7, 2016, by a Bay
11  Boy inquiring "How was all that Taloa shit? Charley called me and my dad
12  said why weren't you down there."

13       The specific acts directed against Spencer include but are not limited
14  to the following:

15       Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly
16  after they arrived at Lunada Bay, they started getting harassed by Bay Boys.
17  They were told that they couldn't surf there, and Spencer was called a
18  "kook," which is a derogatory surfing term. Spencer was also told: "why don't
19  you fucking go home, you fucking kook" and asked "how many other good
20  places did you pass to come here?" These are the same types of statements
21  made by Defendant Sang Lee and others that can be observed on the video
22  published by the Guardian.[7]   These taunts started while Spencer and Taloa
23  were on the bluffs getting ready to surf. One individual continued to heckle
24  Spencer and Taloa on their way down to the beach and into the water.

25

26
27  [7] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

28  (footnote continued)

13002697.1

1    Blakeman was already in the water and began paddling around

2  Spencer and Taloa in a tight circle – staying just a few feet away from them.

3  There was no legitimate reason for this conduct.[8]  Spencer believes that this

4  is a tactic used by the Bay Boys to harass people.  Blakeman impeded

5  Spencer's movement in any direction and was intentionally blocking him

6  from catching any waves. It was clear to Spencer that Blakeman was not

7  there to surf that morning. Instead, his mission was to prevent Spencer and

8  Taloa from surfing and to keep them from enjoying their time in the water,

9  the open space, the waves, and nature. This the type of concerted effort was

10  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

11  people from surfing at Lunada Bay. In the approximately 90 minutes that

12  Spencer was in the water that day, Blakeman was focused on Spencer and

13  Taloa and continued to shadow their movements, and sit uncomfortably

14  close to them. Spencer had never experienced anything like that before in

15  his life. It was bizarre but also incredibly frightening and disturbing. It

16  appeared to Spencer that Blakeman was coordinating his actions with a

17  group of guys who were standing in the Rock Fort, along with others in the

18  water. They were all talking to each other and it was clear they all knew

19  each other.

20    At one point while Spencer was in the water and was paddling west

21  out to the ocean, he saw a man surfing, coming in east towards the shore.

22  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

23  of the fins on his surfboard sliced open his right wrist. Spencer has about a

24  half-inch scar from where this man ran him over. As soon as the Bay Boy

25

26  ─────────────────────

27  [8] Plaintiffs are informed and believe that Defendant Papayans sent a text
message describing similar conduct: "We just had a kook out in the water

28  and me and Jack just sat on his ass."

1 | ran him over, he started berating Spencer, saying things like "what are you
2 | fucking doing out here? I told you to go home. I should have run you over.
3 | Why are you paddling in the sun glare where I can't see you?" The Bay Boy
4 | was pretending that he didn't see Spencer but it was obvious that he did and
5 | intentionally ran him over. With over 30 years of surfing experience, Spencer
6 | knew that this collision was intentional on his part. Fearful of being further
7 | injured at that point, and not wanting to get into an argument with him,
8 | Spencer just paddled away. Spencer and Taloa caught one more wave after
9 | that and then decided it was getting too dangerous to surf. More men started
10 | showing up at the Rock Fort and Spencer and Taloa were growing
11 | increasingly fearful for their safety. Spencer was also bleeding and in pain.
12 | These incidents are described in the declarations filed with Plaintiffs motion
13 | for class certification and the deposition of Spencer.

14 |      Spencer further identifies the following individuals as having
15 | knowledge of concerted efforts by the Bay Boys, including Blakeman:

16 |      Christopher Taloa. As set forth above, Taloa and Spencer went surfing
17 | at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman
18 | shadowing Spencer's movement in the water. Blakeman was in the water
19 | with four or five other Lunada Bay Locals.  At one point, Blakeman paddled
20 | toward Taloa, at which point Taloa told him that he was too close.
21 | Blakeman replied, "This is the ocean. We are surfing. I can be wherever."
22 | Taloa kept moving in the water, and Blakeman attempted to keep up with
23 | him but was not in good enough shape to do so.

24 |      Jordan Wright. Wright attempted to surf Lunada Bay in January 2015
25 | with Chris Claypool and Kenneth Claypool. He observed Blakeman
26 | harassing Chris and Ken. Wright was sitting on the outside waiting his turn
27 | for waves. By regular surfing norms, he had priority. He caught a 10- to 12-
28 | foot-high wave and was up riding for several seconds. Alan Johnston

1   paddled the wrong way on this wave, dropped in on him going the wrong
2   way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
3   while going the wrong way violates normal surf etiquette. Johnston then
4   collided with Wright, and their leashes got tangled. After they surfaced from
5   the collision, Johnston then got close to Wright and yelled, "You had to
6   fucking take that wave, didn't you!" The next wave that came through then
7   broke Wrights leash plug and the board was carried into the rocks, which
8   destroyed a new surfboard. Wright had to swim in over rocks to get his
9   board and cut his hands on the rocks doing so. Wright is confident that
10   Johnston was attempted to purposefully injure him. What he did was
11   extremely dangerous.

12   Wright has observed Blakeman on many occasions. Blakeman is easy
13   to identify because he rides a kneeboard and he is regularly filming visitors
14   on land with a camcorder. Wright believes his filming is an effort to intimidate
15   visitors. In the water, Wright has observed what appears to be Blakeman
16   directing other Bay Boys to sit close to visiting surfers. Wright has observed
17   Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to
18   the visitors, impede their movements, block their surfing, kick at them,
19   splash water at them, and dangerously drop in on them. In addition to
20   Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,
21   Charlie Ferrara, and David Mello engage in this activity. These incidents are
22   described in the declarations filed with Plaintiffs motion for class certification.

23   Ken Claypool has been harassed and filmed by Blakeman in an
24   attempt to intimidate him at Lunada Bay on multiple occasions. In January
25   2015, Claypool and his brother Chris Claypool along with Jordan Wright
26   went to surf Lunada Bay.  There were about five Lunada Bay locals in the
27   water, including Blakeman who paddled over and threatened them. Claypool
28   observed Blakeman intentionally dropped in on Wright at least twice.

1     Chris Claypool, his brother Ken, and Jordan Wright attempted to surf
2 Lunada Bay in January 2015. There were about five locals in the water,
3 including Blakeman who paddled over and was yelling "Try and catch a
4 wave and see what happens. There is no fucking way you are getting a
5 wave. Just go in. Just go. You better not cut me off." Blakeman looked
6 possessed or possibly on drugs. His behavior got more bizarre throughout
7 the morning. He seemed to be paddling for every wave that he could
8 physically push himself into, perhaps to make a point, but he was wiping out
9 a lot and falling down the face and tumbling across the rock reef. Blakeman
10 looked dangerous to himself. When Blakeman would actually catch a wave
11 in, he would paddle back to where Claypool and his brother were sitting, and
12 continue his insane rant. On one occasion, Blakeman came less than 12
13 inches from Claypool's ear and was screaming. It was so loud, Claypool had
14 to put his fingers in his ear to protect them from being damaged. Claypool is
15 a sound engineer and to put this in perspective, a rock concert creates about
16 120 decibels of noise - this was louder; a jet engine creates about 150
17 decibels. At one point Blakeman caught a wave and drew a line aiming right
18 at Claypool. Another Bay Boy tried the same thing and said "mother fucker"
19 as he narrowly missed Claypool's head. Claypool watched as Blakeman
20 intentionally dropped in on Jordan at least twice. It seemed obvious to
21 Claypool that Blakeman and the other Bay Boy wanted to make sure none of
22 them were having fun. Because this was getting dangerous, they decided to
23 leave.

24     When Claypool and his brother got out of water, they saw people
25 gathering on top of the cliff. One person was videotaping them from the top
26 of the cliff; it was clear to Claypool that he was doing this to try and
27 intimidate them. The people were watching them from the cliff. It was
28 obvious that Blakeman engaged in a concerted effort with other Bay Boys to

-31-

1  obstruct his free passage and use in the customary manner of a public
2  space. It also seemed clear that Blakeman engaged in a concerted effort
3  with other Bay Boys to try and injure him. These incidents are described in
4  the declarations filed with Plaintiffs motion for class certification.

5  Plaintiffs are informed and believe and on that basis allege that
6  Defendant Blakeman and his attorneys are attempting to intimidate
7  witnesses in this case. On at least two occasions, an investigator hired by
8  Blakeman's attorneys contacted witnesses represented by Plaintiffs'
9  attorneys. The investigator also showed up at the home of a reporter that
10  has not been listed as a witness.

11  The request is premature. Because Blakeman and the other
12  defendants are refusing to comply with their obligations to produce
13  documents under the federal rules and are impermissibly withholding
14  evidence and/or possibly spoliating evidence, we are not able to fully
15  respond to discovery requests which necessarily rely on our ability to fully
16  investigate the facts. As discovery is continuing, Spencer reserves the right
17  to update this response.

18  **INTERROGATORY NO. 6:**

19  IDENTIFY ALL PERSONS that have knowledge of any facts that
20  support your contention that BRANT BLAKEMAN has illegally extorted
21  money from beachgoers who wish to use Lunada Bay for recreational
22  purposes (See paragraph 33 j. of the Complaint), and for each such
23  PERSON identified state all facts you contend are within that PERSON's
24  knowledge.

25  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

26  Responding Party objects to this interrogatory as premature. Because
27  this interrogatory seeks or necessarily relies upon a contention, and
28  because this matter is in its early stages and pretrial discovery has only just

1  begun, Responding Party is unable to provide a complete response at this

2  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et* al.,

3  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

4  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

5  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

6  interrogatory need not be answered until designated discovery is complete,

7  or until a pretrial conference or some other time.").

8       Responding Party further objects to this interrogatory as unduly

9  burdensome, harassing, and duplicative of information disclosed in

10  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

11  Propounding Party may look to Responding Party's Rule 26(a) disclosures

12  and supplemental disclosures for the information sought by this

13  interrogatory.  Moreover, Responding Party had the opportunity to depose

14  Mr. Spencer on this topic.

15       Responding Party further objects to this interrogatory as compound.

16  This "interrogatory" contains multiple impermissible subparts, which

17  Propounding Party has propounded to circumvent the numerical limitations

18  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

19       Responding Party further objects to this interrogatory on the grounds

20  that it seeks information that is outside of Responding Party's knowledge.

21       Responding Party further objects to the extent that this interrogatory

22  invades attorney-client privilege and/or violates the work product doctrine by

23  compelling Responding Party to disclose privileged communications and/or

24  litigation strategy.  Responding Party will not provide any such information.

25       The request is premature. Because Blakeman and the other

26  defendants are refusing to comply with their obligations to produce

27  documents under the federal rules and are impermissibly withholding

28  evidence and/or possibly spoliating evidence, we are not able to fully

-33-

1  respond to discovery requests which necessarily rely on our ability to fully
2  investigate the facts. As discovery is continuing, Spencer reserves the right
3  to update this response.

4  **INTERROGATORY NO. 7:**

5  IDENTIFY ALL PERSONS that have knowledge of any facts that
6  support your contention that BRANT BLAKEMAN was a part of a Civil
7  Conspiracy as identified in your complaint in paragraphs 51 through 53, and
8  for each such PERSON identified state all facts you contend are within that
9  PERSON's knowledge.

10  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

11  Responding Party objects to this interrogatory as premature. Because
12  this interrogatory seeks or necessarily relies upon a contention, and
13  because this matter is in its early stages and pretrial discovery has only just
14  begun, Responding Party is unable to provide a complete response at this
15  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,
16  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*
17  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see
18  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]
19  interrogatory need not be answered until designated discovery is complete,
20  or until a pretrial conference or some other time.").

21  Responding Party further objects to this interrogatory as unduly
22  burdensome, harassing, and duplicative of information disclosed in
23  Responding Party's Rule 26(a) disclosures and supplemental disclosures.
24  Propounding Party may look to Responding Party's Rule 26(a) disclosures
25  and supplemental disclosures for the information sought by this
26  interrogatory.  Moreover, Responding Party had the opportunity to depose
27  Mr. Spencer on this topic.

28  Responding Party further objects to this interrogatory as compound.

This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by compelling Responding Party to disclose privileged communications and/or litigation strategy.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

In addition to each defendant named in his individual capacity and other persons identified in Plaintiffs' initial and supplemental disclosures, and the evidence submitted in support of Plaintiffs motion for class certification, Responding Party identifies the following individuals:

Cory Spencer: Spencer believes that Blakeman engaged in a concerted effort with other Bay Boys to obstruct his free passage and use in the customary manner of a public space.  Spencer also believes that Blakeman coordinated with other Bay Boys to assault Spencer while he was surfing. Spencer believes that the conduct directed at him others trying to surf Lunada Bay is part of an agreement among Blakeman and the other Bay Boys, which at a minimum, may be implied by the conduct of the parties and other members of the Bay Boys. Spencer believes that the Bay Boys concerted efforts to stop the public from accessing the beach are documented in text messages and emails being withheld by the Defendants in this case. For example, Plaintiffs are informed and believe that a text message was sent to Defendant Papayans on February 7, 2016, by a Bay Boy inquiring "How was all that Taloa shit? Charley called me and my dad

1 | said why weren't you down there."  In addition, plaintiffs believe that the Bay

2 | Boys take photos and/or video tape people as a form of harassment and

3 | intimidation. For example, plaintiffs are also informed and believe that a

4 | Lunada Bay local named Joshua Berstein was taking pictures at the MLK

5 | 2014 paddle out. Plaintiffs are also informed and believe that Berstein told

6 | several people after he photographed them "know we know who you are."

7 | As another example, there are emails from Sang Lee discussing the Bay

8 | Boys concerted efforts to stop the public from accessing the beach.

9 | The specific acts directed against Spencer include but are not limited

10 | to the following:

11 | Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

12 | after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

13 | They were told that they couldn't surf there, and Spencer was called a

14 | "kook," which is a derogatory surfing term. Spencer was also told: "why don't

15 | you fucking go home, you fucking kook" and asked "how many other good

16 | places did you pass to come here?" These are the same types of statements

17 | made by Defendant Sang Lee and others that can be observed on the video

18 | published by the Guardian.[9]  These taunts started while Spencer and Taloa

19 | were on the bluffs getting ready to surf. One individual continued to heckle

20 | Spencer and Taloa on their way down to the beach and into the water.

21 | Blakeman was already in the water and began paddling around

22 | Spencer and Taloa in a tight circle – staying just a few feet away from them.

23 | There was no legitimate reason for this conduct.[10] Spencer believes that this

24 |

25 | [9] https://www.theguardian.com/travel/video/2015/may/18/california-surf-
26 | wars-lunada-bay-localism-video.

27 | [10] Plaintiffs are informed and believe that Defendant Papayans sent a text
    | message describing similar conduct: "We just had a kook out in the water
28 | (footnote continued)

1  is a tactic used by the Bay Boys to harass people.  Blakeman impeded
2  Spencer's movement in any direction and was intentionally blocking him
3  from catching any waves. It was clear to Spencer that Blakeman was not
4  there to surf that morning. Instead, his mission was to prevent Spencer and
5  Taloa from surfing and to keep them from enjoying their time in the water,
6  the open space, the waves, and nature. This the type of concerted effort was
7  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep
8  people from surfing at Lunada Bay. In the approximately 90 minutes that
9  Spencer was in the water that day, Blakeman was focused on Spencer and
10  Taloa and continued to shadow their movements, and sit uncomfortably
11  close to them. Spencer had never experienced anything like that before in
12  his life. It was bizarre but also incredibly frightening and disturbing. It
13  appeared to Spencer that Blakeman was coordinating his actions with a
14  group of guys who were standing in the Rock Fort, along with others in the
15  water. They were all talking to each other and it was clear they all knew
16  each other.

17      At one point while Spencer was in the water and was paddling west
18  out to the ocean, he saw a man surfing, coming in east towards the shore.
19  The Bay Boy ran over his hand/wrist that was holding his surfboard and one
20  of the fins on his surfboard sliced open his right wrist. Spencer has about a
21  half-inch scar from where this man ran him over. As soon as the Bay Boy
22  ran him over, he started berating Spencer, saying things like "what are you
23  fucking doing out here? I told you to go home. I should have run you over.
24  Why are you paddling in the sun glare where I can't see you?" The Bay Boy
25  was pretending that he didn't see Spencer but it was obvious that he did and
26
27  _____
28  and me and Jack just sat on his ass."

1   intentionally ran him over. With over 30 years of surfing experience, Spencer
2   knew that this collision was intentional on his part. Fearful of being further
3   injured at that point, and not wanting to get into an argument with him,
4   Spencer just paddled away. Spencer and Taloa caught one more wave after
5   that and then decided it was getting too dangerous to surf. More men started
6   showing up at the Rock Fort and Spencer and Taloa were growing
7   increasingly fearful for their safety. Spencer was also bleeding and in pain.
8   These incidents are described in the declarations filed with Plaintiffs motion
9   for class certification and the deposition of Spencer.

10       Spencer further identifies the following individuals as having
11   knowledge of concerted efforts by the Bay Boys, including Blakeman:

12       Christopher Taloa. As set forth above, Taloa and Spencer went surfing
13   at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman
14   shadowing Spencer's movement in the water. Blakeman was in the water
15   with four or five other Lunada Bay Locals.  At one point, Blakeman paddled
16   toward Taloa, at which point Taloa told him that he was too close.
17   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."
18   Taloa kept moving in the water, and Blakeman attempted to keep up with
19   him but was not in good enough shape to do so.

20       Plaintiffs are also informed and believe that a Lunada Bay local named
21   Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs
22   are also informed and believe that Berstein told several people after he
23   photographed them "know we know who you are." Plaintiffs are informed
24   and believe that the Bay Boys use cameras to harass and intimidate people.
25   These incidents are described in the declarations filed with Plaintiffs motion
26   for class certification and the deposition of Taloa.

27       Diana Milena Reed. As set forth in the Complaint, Reed was harassed
28   by Blakeman and other Lunada Bay locals on multiple occasions.  On

1  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan
2  Wright and harassed them. Blakeman was there filming the incident.[11]   On
3  February 13, 2016, Reed and Wright returned to Lunada Bay and Blakeman
4  and a teenage boy attempted to block their pathway on the trail.  Blakeman
5  and the other boy were filming Reed and Wright, and Blakeman told them
6  that they were "done," in a hostile and threatening manner.  Later that
7  morning, after Reed and Wright had continued down the path, Blakeman
8  and Defendant Alan Johnston rushed into the Rock Fort where Reed was
9  taking photos; the assault appeared to be a coordinated and orchestrated
10  and in retaliation for an article that appeared in the Los Angeles Times.
11  Blakeman was filming Reed and had his camera close to her face.  Reed
12  asked why he was filming her, and Blakeman responded, "Because I feel
13  like it," and Johnston responded, "Because you're hot."  Charlie Ferrara was
14  present during this incident, and observed the entire thing.  Although Ferrara
15  apologized later for their behavior, he appeared to be complicit in Blakeman
16  and Johnston's actions. These incidents are described in the declarations
17  filed with Plaintiffs motion for class certification and the deposition of Reed.

18      Jen Bell. The incident described above was witnessed by a woman
19  named Jen Bell who had gone to Lunada Bay that same day to photograph
20  a guy from Malibu. When she attempted sit down on the beach with her
21  pack, a man said: "You are practically sitting in a men's locker-room. You
22  don't make me feel comfortable".  Bell continued to sit there for another 10
23  mins because she refused to be intimated but decided to head over to the
24
25

26  [11] Plaintiffs are informed and believe that there were text message sent on
27  January 29, 2016 asking Defendant Papayans "Where are you? Kooks
    trying to get to the Bay." Plaintiffs are informed and believe that Papayans
28  responded with a "LOL" and said he would be there.

13002697.1

1  fort because she saw another woman, Diana Reed, was taking photos.  Bell
2  was in the Rock Fort when Blakeman and Johnston arrived. It was obvious
3  from the start that Johnston and Blakeman were there with the intent to
4  harass Reed. Johnston was making rude comments to both her and Reed.
5  Blakeman was putting the GoPro in their faces. Johnston was chugging
6  multiple beers and it was early in the morning. Johnston asked her to help
7  him with his wetsuit. He said "Can you help me with this?" and handed her
8  the leg of his wetsuit. Johnston made moaning sounds when she took it like
9  he was having an orgasm.

10    Jordan Wright. Wright attempted to surf Lunada Bay in January 2015
11  with Chris Claypool and Kenneth Claypool. He observed Blakeman
12  harassing Chris and Ken. Wright was sitting on the outside waiting his turn
13  for waves. By regular surfing norms, he had priority. He caught a10- to 12-
14  foot-high wave and was up riding for several seconds. Alan Johnston
15  paddled the wrong way on this wave, dropped in on him going the wrong
16  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
17  while going the wrong way violates normal surf etiquette. Johnston then
18  collided with Wright, and their leashes got tangled. After they surfaced from
19  the collision, Johnston then got close to Wright and yelled, "You had to
20  fucking take that wave, didn't you!" The next wave that came through then
21  broke Wrights leash plug and the board was carried into the rocks, which
22  destroyed a new surfboard. Wright had to swim in over rocks to get his
23  board and cut his hands on the rocks doing so. Wright is confident that
24  Johnston was attempted to purposefully injure him. What he did was
25  extremely dangerous.

26    Wright has observed Blakeman on many occasions. Blakeman is easy
27  to identify because he rides a kneeboard and he is regularly filming visitors
28  on land with a camcorder. Wright believes his filming is an effort to intimidate

-40-    Case No. 2:16-cv-02129-SJO (RAOx)

1   visitors. In the water, Wright has observed what appears to be Blakeman
2   directing other Bay Boys to sit close to visiting surfers. Wright has observed
3   Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to
4   the visitors, impede their movements, block their surfing, kick at them,
5   splash water at them, and dangerously drop in on them. In addition to
6   Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,
7   Charlie Ferrara, and David Mello engage in this activity. These incidents are
8   described in the declarations filed with Plaintiffs motion for class certification.

9       Ken Claypool has been harassed and filmed by Blakeman in an
10  attempt to intimidate him at Lunada Bay on multiple occasions. In January
11  2015, Claypool and his brother Chris Claypool along with Jordan Wright
12  went to surf Lunada Bay.  There were about five Lunada Bay locals in the
13  water, including Blakeman who paddled over and threatened them. Claypool
14  observed Blakeman intentionally dropped in on Wright at least twice.

15      On February 5, 2016. Claypool went to Lunada Bay with Chris Taloa
16  and Jordan Wright. There was a photographer from the Los Angeles Times
17  that was there. Also in attendance was Cory Spencer and Diana Reed.
18  Spencer was there to watch the cars.  Blakeman was there filming in an
19  effort to intimidate visitors. Blakeman can be seen in one of the pictures
20  taken by the photographer. Also present was Defendant Papayans. Plaintiffs
21  are informed and believe that there was a text message sent that day to
22  Papayans, Michael Theil and 11 other people stating that there were 5
23  kooks standing on the bluff taking pictures, including Taloa. The text states:
24  "Things could get ugly. We all need to surf." These incidents are described
25  in the declarations filed with Plaintiffs motion for class certification.

26      Chris Claypool, his brother Ken, and Jordan Wright attempted to surf
27  Lunada Bay in January 2015.  There were about five locals in the water,
28  including Blakeman who paddled over and was yelling "Try and catch a

1   wave and see what happens. There is no fucking way you are getting a
2   wave. Just go in. Just go. You better not cut me off."  Blakeman looked
3   possessed or possibly on drugs. His behavior got more bizarre throughout
4   the morning. He seemed to be paddling for every wave that he could
5   physically push himself into, perhaps to make a point, but he was wiping out
6   a lot and falling down the face and tumbling across the rock reef. Blakeman
7   looked dangerous to himself. When Blakeman would actually catch a wave
8   in, he would paddle back to where Claypool and his brother were sitting, and
9   continue his insane rant. On one occasion, Blakeman came less than 12
10  inches from Claypool's ear and was screaming. It was so loud, Claypool had
11  to put his fingers in his ear to protect them from being damaged. Claypool is
12  a sound engineer and to put this in perspective, a rock concert creates about
13  120 decibels of noise - this was louder; a jet engine creates about 150
14  decibels. At one point Blakeman caught a wave and drew a line aiming right
15  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"
16  as he narrowly missed Claypool's head. Claypool watched as Blakeman
17  intentionally dropped in on Jordan at least twice. It seemed obvious to
18  Claypool that Blakeman and the other Bay Boy wanted to make sure none of
19  them were having fun. Because this was getting dangerous, they decided to
20  leave.

21      When Claypool and his brother got out of water, they saw people
22  gathering on top of the cliff. One person was videotaping them from the top
23  of the cliff; it was clear to Claypool that he was doing this to try and
24  intimidate them. The people were watching them from the cliff. It was
25  obvious that Blakeman engaged in a concerted effort with other Bay Boys to
26  obstruct his free passage and use in the customary manner of a public
27  space. It also seemed clear that Blakeman engaged in a concerted effort
28  with other Bay Boys to try and injure him. These incidents are described in