HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
JENNIFER ANIKO FOLDVARY, SBN 292216
jfoldvary@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:  (415) 777-3200
Facsimile:  (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:  (916) 442-3333
Facsimile:  (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone:  (310) 378-8533
Facsimile:  (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>Plaintiffs, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**PLAINTIFFS' OPPOSITION TO CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOTION TO STRIKE THE DECLARATION OF PHILIP KING**<br><br>Date:  February 21, 2017<br>Time:  10:00 a.m. |

Case No. 2:16-cv-02129-SJO (RAOx)

|  |  |
|---|---|
| v. | Judge: Honorable S. James Otero<br>Ctrm.: 10C<br>1st Street Courthouse |
| LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N. F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10,<br><br>Defendants. | Complaint Filed: March 29, 2016<br>Trial Date: November 7, 2017 |

13123287.1

Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' OPPOSITION TO CITY OF PALOS VERDES ESTATES AND KEPLEY'S
MOTION TO STRIKE THE DECLARATION OF KING

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND .................................. 2

    A. Dr. King's Expertise And Opinions Offered In This Matter ................. 2

        1. Dr. King's Experience And Expertise ......................................... 2

        2. Dr. King's Research And Preliminary Findings Are Based On Standard, Generally Accepted Methods ................................ 3

    B. Defendants' Meet And Confer ............................................................... 5

III. ARGUMENT ................................................................................................ 6

    A. Defendants' "Motion To Strike" Is An Effort To Circumvent This Court's Instructions Relating To Page Limitations, And Does Not Comply With Local Rule 7-3 Or This Court's Standing Order ...................................................................................................... 6

    B. Plaintiffs Were Not Required To Disclose Dr. King, Or Any Other Expert Witness, Prior To Filing A Motion For Class Certification ............................................................................................ 7

    C. Dr. King's Expert Opinions Withstand Appropriately Tailored *Daubert* Scrutiny Applicable In The Class Certification Context, And Are Admissible Pursuant To Federal Rule Of Evidence 702 ......... 9

        1. Dr. King's Declaration Provides Reliable, Admissible Expert Opinion Testimony That Is Relevant And Helpful With Regard To Issues Underlying Plaintiffs' Class Certification Motion ...................................................................... 9

        2. Defendants' Contention That Dr. King Lacks "Specialized Knowledge" Relating To Valuation Of Beach Recreation And Estimation Is Meritless ...................................................... 11

        3. Dr. King's Valuation Of Beach Recreation At Lunada Bay Is Based Upon Standard Methods Widely Accepted By Economists, Public Agencies, And Other Organizations Interested In Beach Valuation ................................................... 12

        4. Dr. King's Conservative Preliminary Quantification Of Estimated Would-Be Visiting Beachgoers At Lunada Bay Under Normal Conditions Is Also Reliable And Useful To The Court ................................................................................... 13

IV. CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) .................................................................. 10

*Bruce v. Harley-Davidson Motor Co.*,
  No. CV 09-6588 CAS RZX, 2012 WL 769604 (C.D. Cal. Jan. 23, 2012) ......................................................................................................... 9

*California Dep't of Toxic Substances Control v. Alco Pac., Inc.*,
  217 F. Supp. 2d 1028 (C.D. Cal. 2002) ..................................................... 6

*Colaprico v. Sun Microsystems, Inc.*,
  758 F. Supp. 1335 (N.D. Cal. 1991) .......................................................... 6

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978) ................................................................................... 9

*Dukes v. Wal–Mart, Inc.*,
  222 F.R.D. 189 (N.D. Cal. 2004) ..................................................... 10, 13

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..................................................................... 6

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) .................................................................. 13

*Guido v. L'Oreal, USA, Inc.*,
  No. 2:11-CV-01067-CAS, 2014 WL 6603730 (C.D. Cal. July 24, 2014) ......................................................................................................... 9

*Jones v. Diamond*,
  519 F.2d 1090 (5th Cir. 1975) .................................................................. 14

*Leite v. Crane Co.*,
  868 F. Supp. 2d 1023 (D. Haw. 2012), aff'd, 749 F.3d 1117 (9th Cir. 2014) ..................................................................................................... 10

*Montecino v. Spherion Corp.*,
  427 F. Supp. 2d 965 (N.D. Cal. 2006) ....................................................... 6

*Ocean Harbor House Homeowners Ass'n v. California Coastal Comm'n*,
  163 Cal. App. 4th 215 (2008) ........................................................ 1, 11, 12

*Ortega v. J.B. Hunt Transp., Inc.*,
  258 F.R.D. 361 (C.D. Cal. 2009) ............................................................. 14

*Price v. Peerson*,
  643 F. App'x 637 (9th Cir. 2016) ............................................................... 6

*Stoyas v. Toshiba Corp.*,
  191 F. Supp. 3d 1080 (C.D. Cal. 2016) ................................................................ 6

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) ............................................................... 9, 10, 13

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ................................................................................ 6

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
  644 F.3d 604 (8th Cir. 2011) ........................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12 ........................................................................................................ 6

Fed. R. Civ. P. 12(f) .................................................................................................... 6

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 13

Fed. R. Civ. P. 26(a) ................................................................................................... 8

Fed. R. Civ. P. 26(a)(2) ............................................................................................... 8

Fed. R. Evid. 702 ................................................................................................. 9, 11

-iii- Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' OPPOSITION TO CITY OF PALOS VERDES ESTATES AND KEPLEY'S
MOTION TO STRIKE THE DECLARATION OF KING

13123287.1

## I. INTRODUCTION

For over two decades, Dr. Philip King has been working in in the field of coastal recreation economics. He is uniquely qualified to provide helpful expert opinion testimony to quantify estimated visitors and visitor-days at Lunada Bay under normal conditions (*i.e.*, without localism and harassment of visitors by the Lunada Bay Boys and City complicity), and to provide economic analysis revealing the substantial value of the beach access denied to the public. Nonetheless, the City of Palos Verdes Estates and Chief of Police Kepley ("Defendants") move to strike Dr. King's testimony, arguing that he lacks "specialized knowledge" in the specific field where he has a lifetime of expertise, and questioning methodologies that are generally accepted and used by the National Oceanographic and Atmospheric Administration ("NOAA"), the Army Corps of Engineers, the California Coastal Commission, and other entities and organizations known to have an interest in recreational valuation relating to coastal regions. Dr. King's "specialized knowledge" has also been recognized by the Sixth District Court of Appeal, which directly cited two of his articles in *Ocean Harbor House Homeowners Ass'n v. California Coastal Comm'n*, 163 Cal. App. 4th 215 (2008) as part of its discussion of accepted methods to ascertain the economic value of beaches.

Tellingly, Defendants offer no countervailing expert's opinion testimony to criticize or undermine Dr. King's opinion testimony. Instead of presenting any evidence, Defendants offer nothing but argument that ignores Dr. King's actual testimony, mischaracterizes his methodologies, avoids a State court appellate decision on the topic, and applies the wrong legal standard. Defendants' truncated meet and confer effort, in which they showed no interest in Plaintiffs' offer to provide a supplemental declaration addressing Defendants' purported concerns, further reveals the truth about their meritless motion: Defendants challenge Dr. King's opinion testimony not because they have a reasonable basis for questioning his expertise or his methods, but because they do not like his results.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Dr. King's Expertise And Opinions Offered In This Matter

The declaration of Dr. King that Defendants are moving to strike was originally filed on December 29, 2017 concurrently with Plaintiffs' Motion for Class Certification. *See* Dkt. No. 159-7 (King Decl.). Plaintiffs filed a corrected version on January 5, 2017, attaching Dr. King's *curriculum vitae*. *See* Dkt. No. 184-2 (King Decl.) (hereinafter "King Decl. (Dkt. No. 184-2)").

#### 1. Dr. King's Experience And Expertise

As explained in his declaration, Dr. King is currently a Professor of Economics at San Francisco State University (where he served as Chair of the Department of Economics for four years), and holds a PhD in Economics from Cornell University. King Decl. (Dkt. No. 184-2), ¶ 2. Dr. King has been teaching Economics at the collegiate level since 1983. *Id*. Dr. King's *curriculum vitae* provides a representative sample of his scholarly articles, policy papers, and books he authored and edited, including extensive literature directly relating to economic valuation of beaches, as well as analysis relating to beach attendance estimates, which he has produced over more than two decades of experience in the field of economic valuation of beaches and coastal recreation. *Id*., ¶ 3, Exh. 1 (Dr. King CV); *see also* Declaration of Philip King in Support of Plaintiffs' Opposition to Motion to Strike ("King Decl. 2/3/17"), ¶ 2.

Dr. King has "served as an expert witness in the field of economics in approximately 40 different matters," including presenting "evidence for the California Coastal Commission pertaining to the economic recreation value of beaches." King Decl. (Dkt. No. 184-2), ¶ 4. In addition, "for more than 20 years, using various models, including economic recreation value," Dr. King has "specifically studied the economic value of California beaches." *Id*., ¶¶ 4, 11. Dr. King's decades of work "in accurately assessing the value of beaches necessarily involves estimating annual attendance at coastal sites." King Decl. 2/3/17, ¶ 13. He

-2- Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' OPPOSITION TO CITY OF PALOS VERDES ESTATES AND KEPLEY'S
MOTION TO STRIKE THE DECLARATION OF KING

13123287.1

has "over twenty years of experience providing professional estimates of annual attendance at coastal sites" and has "been involved in numerous projects funded by State, local and Federal agencies involving application of estimates of the number of visitors to a particular beach."  *Id*., Exh. C.

### 2. Dr. King's Research And Preliminary Findings Are Based On Standard, Generally Accepted Methods

Dr. King's declaration provides reliable opinion testimony from an expert using trusted, standard methodologies in the field, and offers evidence directly relevant to Plaintiffs' class certification motion and useful for this Court's assessment of that motion.

Dr. King begins by explaining that he was "recently retained," and thus his "research is preliminary and conservative" but nonetheless sufficient to "express an opinion related to recreational beach/surfing economic valuation" using analysis centering around "examining studies at similar sites."  King Decl. (Dkt. No. 184-2), ¶ 6. Dr. King explains that this method is known in the field of recreational economic valuation as "benefits transfer" and "is an accepted method used by economists and public agencies to value recreational beach resources."  *Id*.; *see also* King Decl. 2/3/17, ¶¶ 3-6 (further describing standard methods of recreational economic evaluation and explaining why "benefits transfer" is the preferred methodology under the circumstances present in this matter).

Dr. King explains that he reviewed relevant census data, read the Complaint in this matter, studied various resources reporting on Lunada Bay and its localism problem, spoke with other experts, and drew upon his own experience of over twenty years of performing economic valuations of coastal recreational resources and beach attendance estimates, as well as his personal experience visiting beaches, including hiking the bluffs of the Palos Verdes Peninsula.  King Decl. (Dkt. No. 184-2), ¶¶ 7-13.  His initial research led him to the non-controversial conclusion that Lunada Bay "is an elite, world-class surfing location" and "the opportunity to surf

Lunada Bay, even if only once, is important to many surfers, both expert and novice." *Id.*, ¶ 14.  "Applying standard tools used by economists," Dr. King discerned that Lunada Bay is highly valuable due to several unique features making it ideal for surfing, and additional features conducive to other beach-related activities. *Id.*, ¶¶ 15-16; *see also* King Decl. 2/3/17, ¶¶ 14-15 (further explaining his methodology for beach attendance estimation using "a standard technique which allows one to estimate the total attendance at a beach (or other recreational site) in a given day by applying periodic counts throughout the day").

      Given these characteristics, and based on an assessment of the attendance rates at comparable beaches, Dr. King "conservatively estimated" that under normal circumstances (*i.e.*, absent localism), "a range of 20 to 25 surfers" would be expected in the water on the main point at any given time when good surfing conditions exist at Lunada Bay, which "should equate to between 60 and 75 surfers per day using Lunada Bay plus some additional surfers surfing at non-peak hours." King Decl. (Dkt. No. 184-2), ¶ 17.  Dr. King observed, based on preliminary research, that "the current number of surfers in the water [at Lunada Bay] is typically far fewer at 4 to 8 surfers during a regular morning or evening session . . ." *Id*.  And, notably, Defendants do not provide any evidence to the contrary.

      Additionally, based on his "experience, data, and information . . . reviewed to date," Dr. King "preliminarily concluded that a reasonable, likely conservative estimate of the recreational value of the surfing at Lunada Bay is between $50 and $80 per person per visit during the high season . . . and approximately half that during the rest of the year." King Decl. (Dkt. No. 184-2), ¶ 19.  Based on these findings, Dr. King opines that "a beach like Lunada Bay should conservatively have at least 20,000 to 25,000 annual surfers plus other hikers and visitors," and the "estimated . . . lost surfing recreational value" is "at least $1 million per year." *Id*. Finally, Dr. King again emphasizes that his research was just beginning and he had only conducted "preliminary analysis," and for that reason the conclusions

expressed in his declaration were "intentionally conservative." King Decl. (Dkt. No. 184-2), ¶ 20.

Since submitting his preliminary findings in late December, Dr. King has continued gathering information relevant to his analysis, and has further confirmed his conclusion that Lunada Bay is a premier, world class surfing location, and that his initial estimates concerning attendance of surfers and other beachgoers at Lunada Bay was likely very conservative. King Decl. 2/3/17, ¶¶ 18-19.

**B.      Defendants' Meet And Confer**

Counsel for Defendants first contacted counsel for Plaintiffs regarding Dr. King's declaration around noon on January 12, 2017 – *two weeks after* Plaintiffs filed their class certification motion, and *the day before* Defendants' opposition to Plaintiffs' Motion for Class Certification was due. *See* Declaration of Samantha Wolff in Support of Plaintiffs' Opposition to Motion to Strike ("Wolff Decl."), ¶ 3. Defendants' counsel advised that Defendants "intend[] to bring a motion to strike portions of the Declaration of Peter [sic] King" and asking if Plaintiffs' counsel was available that afternoon, or the next day, "to conduct the L.R. 7-3 conference of counsel." *See* Wolff Decl., ¶ 3, Exh. A (Email Exchange). Counsel for Plaintiffs made themselves available almost immediately. *Id*., ¶ 4. The substance of the conversation consisted essentially of Defendants' counsel demanding that Plaintiffs withdraw Dr. King's declaration, and Plaintiffs' counsel declining to do so. *Id*.

Less than an hour after the "meet and confer" call, Plaintiffs' counsel offered to address Defendants' counsel's purported concerns regarding the level of detail in Dr. King's declaration relating to his methodology with a supplemental declaration, and asked if Defendants would be interested in discussing this as a means of addressing Defendants' concerns to avoid an unnecessary motion. Wolff Decl., ¶ 5, Exh. B (Email Exchange). Defendants' counsel declined, citing the fact that their opposition was "due in less than 24 hours." *Id*.

In short, Defendants' counsel made clear from the outset that they would be

13123287.1

-5-     Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' OPPOSITION TO CITY OF PALOS VERDES ESTATES AND KEPLEY'S
MOTION TO STRIKE THE DECLARATION OF KING

filing their motion and excused themselves from any substantive discussion that might have avoided the need for this motion on the grounds of exigency that their own delay created.

### III. ARGUMENT

**A. Defendants' "Motion To Strike" Is An Effort To Circumvent This Court's Instructions Relating To Page Limitations, And Does Not Comply With Local Rule 7-3 Or This Court's Standing Order**

Defendants "move to strike" Dr. King's declaration under Federal Rule of Civil Procedure 12(f), which authorizes this Court to "strike *from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12 (emphasis added).  Defendants cite *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) to show that moving to strike declarations is not entirely unprecedented.  However, motions to strike are "generally regarded with disfavor" and materials should not be stricken "unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 967 (N.D. Cal. 2006); *see also Price v. Peerson*, 643 F. App'x 637, 638 (9th Cir. 2016) ("[w]e disfavor motions to strike"); *Stoyas v. Toshiba Corp.*, 191 F. Supp. 3d 1080 (C.D. Cal. 2016) ("motions to strike are 'disfavored' and 'courts are reluctant to determine disputed or substantial questions of law on a motion to strike.'") (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-975 (9th Cir. 2010)); *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) ("motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.").  "Given their disfavored status, courts often require 'a showing of prejudice by the moving party' before granting the requested relief." *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).

Here, Defendants' motion to strike serves no legitimate purpose.  Defendants had the opportunity to challenge Plaintiffs' evidentiary submissions, including Dr.

King's declaration, with evidentiary objections. In fact, Defendants (and some of their co-defendants) *did* object to Dr. King's declaration. See Dkt. No. 188 (Def.'s Evid. Objections), at 2:5-37:10. Having already submitted over 35 pages of evidentiary objections challenging Dr. King's declaration specifically, Defendants' motion accomplishes nothing other than providing them with an opportunity to file yet another brief restating the same erroneous evidentiary objections they already raised a week before, and burdening the Court and the parties with yet another motion. Defendants' superfluous motion disregards this Court's Standing Order, which articulates this Court's expectation that evidentiary objections of the nature raised in Defendants' motion to strike be raised "in a separate statement." See Dkt. 9 (Standing Order) at 12:19-22 (instructing on format for objections to evidence).

Defendants' determination to file this motion whether necessary or not is further evidenced by their failure to meet and confer reasonably or in good faith, and refusal to even consider a potential supplemental declaration addressing their purported concerns. Wolff Decl., ¶¶ 3-5, Exhs. A-B (Email Exchanges). Defendants' last minute, pro forma "meet and confer" effort over the phone fell well short of this Court's stated expectations in its Standing Order. See Dkt. No. 9 (Standing Order) at 10:5-21 ("counsel contemplating filing of any motion . . . shall first contact opposing counsel to 'discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution' . . . Half-hearted attempts at compliance with this rule will not satisfy counsel's obligation.") Defendants' motion can and should be denied on this basis. *Id*. at 10:20-21 ("[f]ilings not in compliance . . . will be denied.").

**B.  Plaintiffs Were Not Required To Disclose Dr. King, Or Any Other Expert Witness, Prior To Filing A Motion For Class Certification**

Next, Defendants complain that Dr. King was not "disclosed" in response to an interrogatory requesting that Plaintiffs "IDENTIFY all witnesses" who support various contentions concerning Plaintiffs' motion for class certification. See Dkt.

No. 204 (Mot. to Strike) at 4:27-5:23; *see also* Dkt. No. 204-1 (Song Decl.). Defendants are wrong for several reasons.

First, Defendants' interrogatories request that Defendants identify "witnesses," not retained experts. Thus, the interrogatories Defendants rely on do not even call for the information they claim was withheld.

Moreover, Plaintiffs objected to Defendants' interrogatories on several grounds, including that they were duplicative of Rule 26(a) disclosure obligations, overbroad, unduly burdensome, compound, and constituted premature "contention" interrogatories inappropriate for early stages of litigation. Plaintiffs specifically indicated that, due to the premature nature of the interrogatories, their responses would necessarily be incomplete.

Further, to the extent Defendants did intend to seek disclosure of retained experts in response to their interrogatories, such a request would have been a premature an objectionable attempt to improperly impose disclosure requirements beyond those required by Federal Rule of Civil Procedure 26(a)(2) and this Court's Scheduling Order.

Nonetheless, Defendants claim that they were "prejudiced" because Plaintiffs' purported "failure" to disclose Dr. King – which Plaintiffs were under no obligation to do – deprived Defendants the opportunity to conduct discovery on Dr. King. *See* Dkt. No. 204 (Mot. to Strike) at 5:12-23. However, Plaintiffs retained Dr. King on December 20, 2016. Wolff Decl., ¶ 5. Dr. King's declaration was submitted eight days later. Further, in advance of Plaintiffs' motion for class certification, nothing precluded Defendants from hiring an expert to evaluate the economic loss to the public due to the Bay Boys' and Defendants' treatment of Lunada Bay as if it were a private beach. Defendants' insistence that Plaintiffs immediately disclose all witnesses discovered in the month between serving their responses to the interrogatories (November 29, 2016) and the time their Motion for Class Certification was filed (December 29, 2016) is simply not reasonable, and does not

13123287.1

-8-   Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' OPPOSITION TO CITY OF PALOS VERDES ESTATES AND KEPLEY'S
MOTION TO STRIKE THE DECLARATION OF KING

serve as a basis for exclusion of valuable expert testimony.

**C.  Dr. King's Expert Opinions Withstand Appropriately Tailored *Daubert* Scrutiny Applicable In The Class Certification Context, And Are Admissible Pursuant To Federal Rule Of Evidence 702**

Defendants' motion is substantively meritless as well.  As articulated below, Dr. King's declaration meets the required standard of reliability and helpfulness under *Daubert*, particularly at the class certification stage.

**1.  Dr. King's Declaration Provides Reliable, Admissible Expert Opinion Testimony That Is Relevant And Helpful With Regard To Issues Underlying Plaintiffs' Class Certification Motion**

District Courts within the Ninth Circuit applying *Daubert* analysis at the class certification stage adopt and apply the standard articulated by the Eighth Circuit in *In re Zurn Pex Plumbing Prod. Liab. Litig*., 644 F.3d 604 (8th Cir. 2011) ("*In re Zurn*").[1]  The Eighth Circuit observes in *In re Zurn* that "[c]lass certification 'is inherently tentative'" and emphasizes that "an exhaustive and conclusive *Daubert* inquiry before the completion of merits discovery cannot be reconciled with the inherently preliminary nature of pretrial evidentiary and class certification rulings." *In re Zurn*, 644 F.3d 604, 613 (8th Cir. 2011) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)).  The *In re Zurn* Court also notes that "[t]he main purpose of *Daubert* exclusion is to protect juries from being swayed by

---

[1]  *See*, *e.g*., *Bruce v. Harley-Davidson Motor Co*., No. CV 09-6588 CAS RZX, 2012 WL 769604, at *4 (C.D. Cal. Jan. 23, 2012) (holding that "the approach . . . affirmed by the Eighth Circuit in *In re Zurn* is the appropriate application of *Daubert* at the class certification stage"); *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 495 (C.D. Cal. 2012) ("the Eighth Circuit's decision in [*In re Zurn*] perfectly encapsulates the Ninth Circuit's rule regarding the tailored *Daubert* analysis at class certification stage"); *but see Guido v. L'Oreal, USA, Inc*., No. 2:11-CV-01067-CAS, 2014 WL 6603730, at *6 (C.D. Cal. July 24, 2014) (observing that "[t]he interaction between *Daubert* and class certification is an area of considerable uncertainty at the moment" but holding that expert testimony is admissible under any level of *Daubert* scrutiny).

13123287.1

-9-  Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' OPPOSITION TO CITY OF PALOS VERDES ESTATES AND KEPLEY'S
MOTION TO STRIKE THE DECLARATION OF KING

dubious scientific testimony. That interest is not implicated at the class certification stage where the judge is the decision maker." *Id*. Thus, "the requisite 'rigorous analysis'" of class certification motions applicable to expert opinions is accomplished through "a focused *Daubert* analysis which scrutinize[s] the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Id*. at 614.

Given the inherently preliminary nature of class certification rulings, district courts within the Ninth Circuit "have applied a tailored inquiry assessing whether the opinions offered, based on their areas of expertise and reliability of their analyses of the available evidence, should be considered in deciding the issues relating to class certification." *Leite v. Crane Co*., 868 F. Supp. 2d 1023, 1035 (D. Haw. 2012), aff'd, 749 F.3d 1117 (9th Cir. 2014). At the class certification stage, courts " . . . are not required to conduct a full *Daubert* analysis" but instead should "conduct an analysis tailored to whether an expert's opinion was sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and predominance." *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 495 (C.D. Cal. 2012). The "robust gatekeeping of expert evidence" necessary on summary judgment or at trial on the merits "is not required; rather, the court should ask only if expert evidence is 'useful in evaluating whether class certification requirements have been met.'" *Id.* at 492-93 (citing *Dukes v. Wal–Mart, Inc*., 222 F.R.D. 189, 191 (N.D. Cal. 2004)).

In conducting this tailored analysis, courts must recognize that "class certification decisions are generally made before the close of merits discovery" and thus "the court's analysis is necessarily prospective and subject to change . . . and there is bound to be some evidentiary uncertainty." *In re Zurn*, 644 F.3d at 613 (citing *Blades v. Monsanto Co*., 400 F.3d 562, 567 (8th Cir. 2005)).

Applying these principles, Dr. King has identified an appropriate methodology for determining and applying damages across the class that is accepted

by local, state and federal government. Dr. King's expert opinions providing an estimated number of individuals who would visit Lunada Bay for surfing or other recreational purposes under normal conditions, and providing a preliminary estimate of the recreational value of surfing at Lunada Bay, meets the applicable *Daubert*/*In re Zurn* test and constitutes admissible expert opinion evidence pursuant to Federal Rule of Evidence 702.

### 2. Defendants' Contention That Dr. King Lacks "Specialized Knowledge" Relating To Valuation Of Beach Recreation And Estimation Is Meritless

Defendants' contention that the evidence presented does not support Dr. King's specialized knowledge in the field of economic value of recreation at beaches not only evidences their limited knowledge of the field, but simply disregards the declaration itself. Dr. King's declaration clearly states the Dr. King "presented evidence for the California Coastal Commission pertaining to the economic recreation value of beaches. Further, for more than 20 years, using various models, including economic recreation value, I have specifically studied the economic value of California beaches." King Decl. (Dkt. No. 184-2), ¶ 4.

Indeed, Dr. King has been one of the most respected economists in the field of the economics of coastal recreation for over two decades. King Decl. 2/3/17, ¶ 2. His work has been published in scholarly journals and cited repeatedly as an authoritative source for coastal recreation valuation, including by the Sixth District Court of Appeal. *Id.*; *see also Ocean Harbor House Homeowners Ass'n v. California Coastal Com'n*, 163 Cal. App. 4th 215, 234 (2008) (citing two of Dr. King's articles). Dr. King has developed a strong reputation for reliably estimating attendance at coastal sites, and has frequently been brought in by government agencies and other organizations on coastal attendance estimation projects. *Id.*, Exh. C (Illustrative Sample List). Dr. King has also authored scholarly literature on the subject of estimating coastal site attendance. *Id.*, Exh. D ("Who's Counting" Article). There are few economists in America who can claim to have anywhere

13123287.1

-11-  Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' OPPOSITION TO CITY OF PALOS VERDES ESTATES AND KEPLEY'S
MOTION TO STRIKE THE DECLARATION OF KING

near the level of experience and expertise Dr. King has in the field of economic valuation of coastal sites and beach attendance estimation.

### 3. Dr. King's Valuation Of Beach Recreation At Lunada Bay Is Based Upon Standard Methods Widely Accepted By Economists, Public Agencies, And Other Organizations Interested In Beach Valuation

As explained in Plaintiffs' response to Defendants' evidentiary objections filed concurrently with their opposition to Plaintiffs' class certification motion, Dr. King's economic valuation methods are well established and accepted, and Defendants' contentions to the contrary are meritless.

California courts have already acknowledged Dr. King as a leader in the field of coastal recreation economics. In *Ocean Harbor House Homeowners Ass'n v. California Coastal Com'n*, 163 Cal. App. 4th 215, 234 (2008), the California Court of Appeal analyzed various methods used to calculate a mitigation fee related to the loss of recreational use of a beach in Monterey County. In so doing, the court cited two articles by Dr. King about the economic impact of a beach in its analysis. *Id*. (citing Philip King and Michael Potepan, *The Economic Value of California's Beaches*, Public Research Institute Report Commissioned by the California Department of Boating and Waterways, May 1997; Philip King, *The Fiscal Impact of Beaches in California*, Public Research Institute Report Commissioned by the California Department of Boating and Waterways, September 1999).

Dr. King's preliminary analysis of the economic value of Lunada Bay as a recreational site was performed using the "benefits transfer" method, which is a standard and typical methodology used by economists, particularly where, as here, the travel cost method is not feasible. King Decl. 2/3/17, ¶¶ 3-5. Based on reliable data and his decades of experience, Dr. King identified and analyzed valuation studies of multiple appropriate comparable sites, and extrapolated a conservative preliminary range for the recreational value of surfing at Lunada Bay. *Id.*, ¶¶ 6-13. Dr. King used the best available data and methodology of analysis in developing his opinions concerning Lunada Bay's estimated recreational value, and his results are

1  more than sufficiently reliable for all purposes relevant to Plaintiffs' class
2  certification motion.
3       Dr. King was qualified to present evidence to the California Coastal
4  Commission pertaining to the economic recreation value of beaches, a California
5  court has relied on his expertise, and he is likewise qualified here.  And, given the
6  obvious applications of Dr. King's opinion testimony concerning the economic
7  value of recreational opportunities at Lunada Bay to the issues underlying Plaintiffs'
8  class certification motion, Dr. King's declaration easily meets the *Daubert*/*In re*
9  *Zurn* standard of providing evidence "useful in evaluating whether class certification
10 requirements have been met."  *Tait*, 289 F.R.D. at 492-93 (citing *Dukes v. Wal–*
11 *Mart, Inc.*, 222 F.R.D. 189, 191 (N.D. Cal. 2004)).

     **4.**    **Dr. King's Conservative Preliminary Quantification Of Estimated Would-Be Visiting Beachgoers At Lunada Bay Under Normal Conditions Is Also Reliable And Useful To The Court**

14      Similarly, Dr. King's expert opinion testimony relating his preliminary
15 findings and conservative estimates of daily and annual visitors to Lunada Bay
16 under normal circumstances, in contrast with the minimal daily and annual visitors
17 currently seen at Lunada Bay due to localism, is directly relevant to Plaintiffs'
18 contentions concerning the size of the putative class in satisfaction of the
19 "numerosity" requirement codified under Federal Rule of Civil Procedure 23(a)(1).
20 *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)
21 ("numerousity" requirement under Rule 23(a)(1) "is met if the class is so large that
22 joinder of all members is impracticable.")  Dr. King's testimony is helpful to this
23 Court in assessing that issue.
24      Dr. King's testimony is also offered to aid the Court in understanding the
25 scope of the problem at Lunada Bay caused by the Bay Boys, and enabled by
26 Defendants' neglect, abrogation of basic duties, and related deprivation of the civil
27 rights of would-be Lunada Bay beachgoers from outside Palos Verdes Estates,
28 whose interests Defendants have willfully disregarded for over four decades.  This is

13123287.1

-13-    Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' OPPOSITION TO CITY OF PALOS VERDES ESTATES AND KEPLEY'S
MOTION TO STRIKE THE DECLARATION OF KING

also instructive with regard to this Court's ultimate decision regarding the appropriateness of utilizing class action procedure to manage this litigation. *See Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975) (for class action suits implicating broad civil rights issues, "the court . . . bears a great responsibility to insure the just resolution of the claims presented . . ."); *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 371 (C.D. Cal. 2009) (class action certification appropriate where "a class action is superior to other available methods for the fair and efficient adjudication").

Dr. King employed techniques for estimating beach attendance at Lunada Bay under normal circumstances that are standard, widely accepted, and very conservative. King Decl. 2/3/17, ¶¶ 14-15. Dr. King cautiously provided an annual attendance estimate for Lunada Bay well *below* the known attendance rates at comparable beach sites. *See id.*, ¶ 16 (Trestles "receives 330,000 surf day visits annually). Although Dr. King's findings are preliminary in nature, the figures he presents at this time are intentionally conservative for that reason (*see* King Decl. (Dkt. No. 184-2), ¶ 6)), and are more than sufficiently reliable for the limited purpose of aiding the Court in determining specific issues relevant to class action certification. *See In re Zurn*, 644 F.3d at 613 (where class certification decisions are made prior to close of discovery, the court's analysis is "necessarily prospective and subject to change" and "some evidentiary uncertainty" is no basis for excluding supporting expert opinion).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV.  CONCLUSION

For all of the foregoing reasons, Defendants Palos Verdes Estates and Chief of Police Jeff Kepley's Motion to Strike the Declaration of Philip King should be denied.

DATED:  February 3, 2017            HANSON BRIDGETT LLP

By:    */s/ Samantha Wolff*
KURT A. FRANKLIN
SAMANTHA D. WOLFF
LANDON D. BAILEY
Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA REED, and COASTAL PROTECTION RANGERS, INC.