EXHIBIT "3"

HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
CAROLINE LEE, SBN 293297
clee@hansonbridgett.com
JENNIFER ANIKO FOLDVARY, SBN 292216
jfoldvary@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone: (916) 442-3333
Facsimile:  (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone: (310) 378-8533
Facsimile:  (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**PLAINTIFF COREY SPENCER SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN** |

|  |  |
|---|---|
| Plaintiffs, | Complaint Filed: March 29, 2016 |
| v. | Trial Date: November 7, 2017 |

LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N. F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10,

Defendants.

PROPOUNDING PARTY:     Defendant BRANT BLAKEMAN

RESPONDING PARTY:      Plaintiff CORY SPENCER

SET NO.:               SUPPLEMENTAL (FURTHER)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff CORY SPENCER ("Responding Party") hereby submits these objections and responses to Interrogatories, Set One, propounded by Defendant BRANT BLAKEMAN ("Propounding Party").

## **PRELIMINARY STATEMENT**

Nothing in this response should be construed as an admission by Responding Party with respect to the admissibility or relevance of any fact, or of the truth or accuracy of any characterization or statement of any kind contained in Propounding Party's Interrogatories. Responding Party has not completed its investigation of the facts relating to this case, its discovery or

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00029

its preparation for trial. All responses and objections contained herein are based only upon information that is presently available to and specifically known by Responding Party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts and add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the responses set forth herein. The following objections and responses are made without prejudice to Responding Party's right to produce at trial, or otherwise, evidence regarding any subsequently discovered information. Responding Party accordingly reserves the right to modify and amend any and all responses herein as research is completed and contentions are made.

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

IDENTIFY ALL PERSONS that have knowledge of any facts that support your contention that BRANT BLAKEMAN participated in any way in the "commission of enumerated 'predicate crimes'" as alleged in paragraph 5 of the Complaint, and for each such PERSON identified state all facts you contend are within that PERSON's knowledge.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so. See *Kmiec v. Powerwave Techs. Inc. et al.*, 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

-3-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00030

1  interrogatory need not be answered until designated discovery is complete,

2  or until a pretrial conference or some other time.").

3      Responding Party further objects to this interrogatory as unduly

4  burdensome, harassing, and duplicative of information disclosed in

5  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

6  Propounding Party may look to Responding Party's Rule 26(a) disclosures

7  and supplemental disclosures for the information sought by this

8  interrogatory.  Moreover, Responding Party had the opportunity to depose

9  Mr. Spencer on this topic.

10     Responding Party further objects to this interrogatory as compound.

11  This "interrogatory" contains multiple impermissible subparts, which

12  Propounding Party has propounded to circumvent the numerical limitations

13  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

14     Responding Party further objects to this interrogatory on the grounds

15  that it seeks information that is outside of Responding Party's knowledge.

16     Responding Party further objects to the extent that this interrogatory

17  invades attorney-client privilege and/or violates the work product doctrine by

18  compelling Responding Party to disclose privileged communications and/or

19  litigation strategy.

20     Subject to and without waiver of the foregoing objections, Responding

21  Party responds as follows:

22     In addition to each defendant named in his individual capacity and

23  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

24  and the evidence submitted in support of Plaintiffs motion for class

25  certification, Responding Party identifies the following individuals:

26     Cory Spencer: Spencer believes that Blakeman engaged in a

27  concerted effort with other Bay Boys to obstruct his free passage and use in

28  the customary manner of a public space.  Spencer also believes that

-4-

13002697.1

Exhibit 3 - Page 00031

1  Blakeman coordinated with other Bay Boys to assault him while he was

2  surfing. Spencer believes that the conduct directed at him and others trying

3  to surf Lunada Bay is part of an agreement among Blakeman and the other

4  Bay Boys, which at a minimum, may be implied by the conduct of the parties

5  and other members of the Bay Boys. Spencer believes that the Bay Boys

6  concerted efforts to stop the public from accessing the beach are

7  documented in text messages and emails some of which have been

8  destroyed or are being withheld by the Defendants in this case. For

9  example, on February 5, 2016, plaintiffs are informed and believe that

10 Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

11 Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

12 several others that said "There are 5 kooks standing on the bluff taking

13 pictures...I think that same Taloa guy. Things could get ugly."  A Los

14 Angeles Times photographer captured a pictured of Defendant Blakeman of

15 the bluff filming plaintiffs.  Plaintiffs believe that the Bay Boys take photos

16 and/or video tape people as a form of harassment and intimidation. For

17 example, plaintiffs are also informed and believe that a Lunada Bay local

18 named Joshua Berstein was taking pictures at the MLK 2014 paddle out.

19 Plaintiffs are also informed and believe that Berstein told several people

20 after he photographed them "know we know who you are."

21     The specific acts directed against Spencer include but are not limited

22 to the following:

23     Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

24 after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

25 They were told that they couldn't surf there, and Spencer was called a

26 "kook," which is a derogatory surfing term. Spencer was also told: "why don't

27 you fucking go home, you fucking kook" and asked "how many other good

28 places did you pass to come here?" These are the same types of statements

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00032

1   made by Defendant Sang Lee and others that can be observed on the video

2   published by the Guardian.[1] These taunts started while Spencer and Taloa

3   were on the bluffs getting ready to surf. One individual continued to heckle

4   Spencer and Taloa on their way down to the beach and into the water.

5         Blakeman was already in the water and began paddling around

6   Spencer and Taloa in a tight circle – staying just a few feet away from them.

7   There was no legitimate reason for this conduct. Spencer believes that this

8   is a tactic used by the Bay Boys to harass people.[2] Blakeman impeded

9   Spencer's movement in any direction and was intentionally blocking him

10  from catching any waves. It was clear to Spencer that Blakeman was not

11  there to surf that morning. Instead, his mission was to prevent Spencer and

12  Taloa from surfing and to keep them from enjoying their time in the water,

13  the open space, the waves, and nature. This the type of concerted effort was

14  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

15  people from surfing at Lunada Bay. In the approximately 90 minutes that

16  Spencer was in the water that day, Blakeman was focused on Spencer and

17  Taloa and continued to shadow their movements, and sit uncomfortably

18  close to them. Spencer had never experienced anything like that before in

19  his life. It was bizarre but also incredibly frightening and disturbing. It

20  appeared to Spencer that Blakeman was coordinating his actions with a

21  group of guys who were standing in the Rock Fort, along with others in the

22  water. They were all talking to each other and it was clear they all knew

23

24  _____

25  [1] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

26  [2] Plaintiffs are informed and believe that Defendant Papayans sent a text

27  message describing similar conduct: "We just had a kook out in the water

28  and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00033

each other.

At one point while Spencer was in the water and was paddling west out to the ocean, he saw a man surfing, coming in east towards the shore. The Bay Boy ran over his hand/wrist that was holding his surfboard and one of the fins on his surfboard sliced open his right wrist. Spencer has about a half-inch scar from where this man ran him over. As soon as the Bay Boy ran him over, he started berating Spencer, saying things like "what are you fucking doing out here? I told you to go home. I should have run you over. Why are you paddling in the sun glare where I can't see you?" The Bay Boy was pretending that he didn't see Spencer but it was obvious that he did and intentionally ran him over. With over 30 years of surfing experience, Spencer knew that this collision was intentional on his part. Fearful of being further injured at that point, and not wanting to get into an argument with him, Spencer just paddled away. Spencer and Taloa caught one more wave after that and then decided it was getting too dangerous to surf. More men started showing up at the Rock Fort and Spencer and Taloa were growing increasingly fearful for their safety. Spencer was also bleeding and in pain. These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Spencer.

Spencer further identifies the following individuals as having knowledge of concerted efforts by the Bay Boys, including Blakeman:

Christopher Taloa.[3] As set forth above, Taloa and Spencer went surfing at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman shadowing Spencer's movement in the water. Blakeman was in the water with four or five other Lunada Bay Locals.  At one point, Blakeman

---

[3] Mr. Talo is represented by Hanson Bridgett LLP and Otten Law PC.

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Exhibit 3 - Page 00034

1  paddled toward Taloa, at which point Taloa told him that he was too close.

2  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

3  Taloa kept moving in the water, and Blakeman attempted to keep up with

4  him but was not in good enough shape to do so.

5        Diana Milena Reed. As set forth in the Complaint, Reed was harassed

6  by Blakeman and other Lunada Bay locals on multiple occasions.  On

7  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

8  Wright and harassed them. Blakeman was there filming the incident.[4]  On or

9  about February 12, 2016, The Los Angeles Times published an article called

10  "Bay Boys surfer gang cannot block access to upscale beach, Coastal

11  Commission says." Jordan Wright and Cory Spencer are quoted in the

12  article. Mr. Wright and a few others had planned to surf Lunada Bay the

13  following morning. Plaintiffs are informed and believe that Defendants

14  Johnston and Blakeman learned that Jordan Wright and Diana Reed were

15  going to Lunada Bay and planned to be there to harass them. On February

16  12, 2016, Defendant Alan Johnston sent the following text messages to an

17  unknown recipient: "No fucking way Taloa is back this year" and "If u really

18  wanna be a bay boy we might meet help tomm." On February 13, 2016,

19  Reed and Wright returned to Lunada Bay. After Reed and Wright had

20  continued down the path, Blakeman and Defendant Alan Johnston rushed

21  into the Rock Fort where Reed was taking photos; the assault appeared to

22  be a coordinated and orchestrated and in retaliation for an article that

23  appeared in the Los Angeles Times.  Blakeman was filming Reed and had

24

25  _____

26  [4] Plaintiffs are informed and believe that there were text message sent on January 29, 2016 asking Defendant Papayans "Where are you? Kooks

27  trying to get to the Bay." Plaintiffs are informed and believe that Papayans responded with a "LOL" and said he would be there.

28

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00035

1   his camera close to her face.  Reed asked why he was filming her, and

2   Blakeman responded, "Because I feel like it," and Johnston responded,

3   "Because you're hot."  Charlie Ferrara was present during this incident, and

4   observed the entire thing.  Although Ferrara apologized later for their

5   behavior, he appeared to be complicit in Blakeman and Johnston's actions.

6   These incidents are described in the declarations filed with Plaintiffs motion

7   for class certification and the deposition of Reed. Plaintiffs are informed and

8   believe that after the incident Defendant Johnston started calling and/or

9   texting other Lunada Bay locals to check for police to plan a getaway. At

10  around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

11  see any cops at the top." Plaintiffs are informed and believe that later that

12  day Johnston received a text from his mother asking him "What happened at

13  the bay?" Johnston replied "Nothing happened really just couple of trolls

14  they got nothing."

15      Jen Bell, address unknown (323) 308-9326. The incident described

16  above was witnessed by a woman named Jen Bell who had gone to Lunada

17  Bay that same day to photograph a guy from Malibu. When she attempted

18  sit down on the beach with her pack, a man said: "You are practically sitting

19  in a men's locker-room. You don't make me feel comfortable".  Bell

20  continued to sit there for another 10 minutes because she refused to be

21  intimated but eventually decided to head over to the fort because she saw

22  another woman, Diana Reed, was taking photos.  Bell was in the Rock Fort

23  when Blakeman and Johnston arrived. It was obvious from the start that

24  Johnston and Blakeman were there with the intent to harass Reed. Johnston

25  was making rude comments to both her and Reed. Blakeman was putting

26  the GoPro in their faces. Johnston was chugging multiple beers and it was

27  early in the morning. Johnston asked her to help him with his wetsuit. He

28  said "Can you help me with this?" and handed her the leg of his wetsuit.

-9-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00036

1   Johnston made moaning sounds when she took it like he was having an

2   orgasm.

3      Jordan Wright.[5] Wright attempted to surf Lunada Bay in January 2015

4   with Chris Claypool and Kenneth Claypool. He observed Blakeman

5   harassing Chris and Ken. Wright was sitting on the outside waiting his turn

6   for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

7   foot-high wave and was up riding for several seconds. Alan Johnston

8   paddled the wrong way on this wave, dropped in on him going the wrong

9   way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

10  while going the wrong way violates normal surf etiquette. Johnston then

11  collided with Wright, and their leashes got tangled. After they surfaced from

12  the collision, Johnston then got close to Wright and yelled, "You had to

13  fucking take that wave, didn't you!" The next wave that came through then

14  broke Wrights leash plug and the board was carried into the rocks, which

15  destroyed a new surfboard. Wright had to swim in over rocks to get his

16  board and cut his hands on the rocks doing so. Wright is confident that

17  Johnston attempted to purposefully injure him. What he did was extremely

18  dangerous.

19     Wright has observed Blakeman on many occasions. Blakeman is easy

20  to identify because he rides a kneeboard and he is regularly filming visitors

21  on land with a camcorder. Wright believes his filming is an effort to intimidate

22  visitors. In the water, Wright has observed what appears to be Blakeman

23  directing other Bay Boys to sit close to visiting surfers. Wright has observed

24  Bay Boys who seem to be assigned to visiting surfers—they'll sit

25  too close to the visitors, impede their movements, block their surfing, kick at

26  _____

27  [5] Mr. Wright, Chris Claypool and Ken Claypool are all represented by

28  Hanson Bridgett LLP and Otten Law PC.

13002697.1

Exhibit 3 - Page 00037

1  them, splash water at them, and dangerously drop in on them. In addition to

2  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

3  Charlie Ferrara, and David Mello engage in this activity. These incidents are

4  described in the declarations filed with Plaintiffs motion for class certification.

5      Ken Claypool has been harassed and filmed by Blakeman in an

6  attempt to intimidate him at Lunada Bay on multiple occasions. In January

7  2015, Claypool and his brother Chris Claypool along with Jordan Wright

8  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

9  water, including Blakeman who paddled over and threatened them. Claypool

10  observed Blakeman intentionally dropped in on Wright at least twice.

11      On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

12  and Jordan Wright. There was a photographer from the Los Angeles Times

13  that was there. Also in attendance was Cory Spencer and Diana Reed.

14  Spencer was there to watch the cars.  Blakeman was there filming in an

15  effort to intimidate visitors. Blakeman can be seen in one of the pictures

16  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

17  are informed and believe that there was a text message sent that day to

18  Papayans, Michael Theil and 11 other people stating that there were 5

19  kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

20  informed that the text states: "Things could get ugly. We all need to surf."

21  These incidents are described in the declarations filed with Plaintiffs motion

22  for class certification.

23      Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

24  Lunada Bay in January 2015.  There were about five locals in the water,

25  including Blakeman who paddled over and was yelling "Try and catch a

26  wave and see what happens. There is no fucking way you are getting a

27  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

28  possessed or possibly on drugs. His behavior got more bizarre throughout

-11-                    Case No. 2:16-cv-02129-SJO (RAOx)

1  the morning. He seemed to be paddling for every wave that he could

2  physically push himself into, perhaps to make a point, but he was wiping out

3  a lot and falling down the face and tumbling across the rock reef. Blakeman

4  looked dangerous to himself. When Blakeman would actually catch a wave

5  in, he would paddle back to where Claypool and his brother were sitting, and

6  continue his insane rant. On one occasion, Blakeman came less than 12

7  inches from Claypool's ear and was screaming. It was so loud, Claypool had

8  to put his fingers in his ear to protect them from being damaged. Claypool is

9  a sound engineer and to put this in perspective, a rock concert creates about

10  120 decibels of noise - this was louder; a jet engine creates about 150

11  decibels. At one point Blakeman caught a wave and drew a line aiming right

12  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

13  as he narrowly missed Claypool's head. Claypool watched as Blakeman

14  intentionally dropped in on Jordan at least twice. It seemed obvious to

15  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

16  them were having fun. Because of the danger, they decided to leave.

17     When Claypool and his brother got out of water, they saw people

18  gathering on top of the cliff. One person was videotaping them from the top

19  of the cliff; it was clear to Claypool that he was doing this to try and

20  intimidate them. The people were watching them from the cliff. It was

21  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

22  obstruct his free passage and use in the customary manner of a public

23  space. It also seemed clear that Blakeman engaged in a concerted effort

24  with other Bay Boys to try and injure him. These incidents are described in

25  the declarations filed with Plaintiffs motion for class certification.

26

27

28

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00039

1  Jason Gersch.[6] While observing the surf, Gersch was approached by

2  two local Bay Boys named Peter McCollum and Brant Blakeman. These

3  individuals made it known to Gersch that he could not surf there. These

4  incidents are described in the declarations filed with Plaintiffs motion for

5  class certification.

6  Plaintiffs are informed and believe and on that basis allege that

7  Defendant Blakeman and his attorneys are attempting to intimidate

8  witnesses in this case. On at least two occasions, an investigator hired by

9  Blakeman's attorneys contacted witnesses they knew were represented by

10  Plaintiffs' attorneys. The investigator also showed up at the home of a

11  reporter that has not been listed as a witness.

12  The request is premature. Because Blakeman and the other

13  defendants are refusing to comply with their obligations to produce

14  documents under the federal rules and are impermissibly withholding

15  evidence and/or possibly spoliating evidence, we are not able to fully

16  respond to discovery requests which necessarily rely on our ability to fully

17  investigate the facts. As discovery is continuing, Spencer reserves the right

18  to update this response.

19  **INTERROGATORY NO. 2**:

20  IDENTIFY ALL PERSONS that have knowledge of any facts that

21  support your contention in paragraph 7 of the Complaint that BRANT

22  BLAKEMAN "is responsible in some manner for the Bane Act violations and

23  public nuisance described in the Complaint" and for each such PERSON

24  identified state all facts you contend are within that PERSON's knowledge.

25

26

27  _____

28  [6] Mr. Gersch is represented by Hanson Bridgett LLP and Otten Law PC.

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00040

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et a*l., 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

Responding Party further objects to this interrogatory as unduly burdensome, harassing, and duplicative of information disclosed in Responding Party's Rule 26(a) disclosures and supplemental disclosures. Propounding Party may look to Responding Party's Rule 26(a) disclosures and supplemental disclosures for the information sought by this interrogatory.  Moreover, Responding Party had the opportunity to depose Mr. Spencer on this topic.

Responding Party further objects to this interrogatory as compound. This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by compelling Responding Party to disclose privileged communications and/or litigation strategy.

1   Subject to and without waiver of the foregoing objections, Responding

2   Party responds as follows:

3   In addition to each defendant named in his individual capacity and

4   other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

5   and the evidence submitted in support of Plaintiffs motion for class

6   certification, Responding Party identifies the following individuals:

7   Cory Spencer: Spencer believes that Blakeman engaged in a

8   concerted effort with other Bay Boys to obstruct his free passage and use in

9   the customary manner of a public space.  Spencer also believes that

10  Blakeman coordinated with other Bay Boys to assault him while he was

11  surfing. Spencer believes that the conduct directed at him others trying to

12  surf Lunada Bay is part of an agreement among Blakeman and the other

13  Bay Boys, which at a minimum, may be implied by the conduct of the parties

14  and other members of the Bay Boys. Spencer believes that the Bay Boys

15  concerted efforts to stop the public from accessing the beach are

16  documented in text messages and emails some of which have been

17  destroyed or are being withheld by the Defendants in this case. For

18  example, on February 5, 2016, plaintiffs are informed and believe that

19  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

20  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

21  several others that said "There are 5 kooks standing on the bluff taking

22  pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles

23  Times photographer captured a pictured of Defendant Blakeman of the bluff

24  filming plaintiffs.  Plaintiffs believe that the Bay Boys take photos and/or

25  video tape people to harass and intimidate them. For example, Plaintiffs are

26  also informed and believe that a Lunada Bay local named Joshua Berstein

27  was taking pictures at the MLK 2014 paddle out. Plaintiffs are also informed

28  and believe that Berstein told several people after he photographed them

-15-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00042

"know we know who you are." Plaintiffs are informed and believe that the Bay Boys use cameras to harass and intimidate people. These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Taloa.

The specific acts directed against Spencer include but are not limited to the following:

Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer was also told: "why don't you fucking go home, you fucking kook" and asked "how many other good places did you pass to come here?" These are the same types of statements made by Defendant Sang Lee and others that can be observed on the video published by the Guardian.[7]  These taunts started while Spencer and Taloa were on the bluffs getting ready to surf. One individual continued to heckle Spencer and Taloa on their way down to the beach and into the water.

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct.[8] Spencer believes that this is a tactic used by the Bay Boys to harass people.  Blakeman impeded Spencer's movement in any direction and was intentionally blocking him from catching any waves. It was clear to Spencer that Blakeman was not

---

[7] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

[8] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Exhibit 3 - Page 00043

1   there to surf that morning. Instead, his mission was to prevent Spencer and
2   Taloa from surfing and to keep them from enjoying their time in the water,
3   the open space, the waves, and nature. This the type of concerted effort was
4   described by Charlie Ferrara to Reed as the way the Bay Boys act to keep
5   people from surfing at Lunada Bay. In the approximately 90 minutes that
6   Spencer was in the water that day, Blakeman was focused on Spencer and
7   Taloa and continued to shadow their movements, and sit uncomfortably
8   close to them. Spencer had never experienced anything like that before in
9   his life. It was bizarre but also incredibly frightening and disturbing. It
10  appeared to Spencer that Blakeman was coordinating his actions with a
11  group of guys who were standing in the Rock Fort, along with others in the
12  water. They were all talking to each other and it was clear they all knew
13  each other.

14       At one point while Spencer was in the water and was paddling west
15  out to the ocean, he saw a man surfing, coming in east towards the shore.
16  The Bay Boy ran over his hand/wrist that was holding his surfboard and one
17  of the fins on his surfboard sliced open his right wrist. Spencer has about a
18  half-inch scar from where this man ran him over. As soon as the Bay Boy
19  ran him over, he started berating Spencer, saying things like "what are you
20  fucking doing out here? I told you to go home. I should have run you over.
21  Why are you paddling in the sun glare where I can't see you?" The Bay Boy
22  was pretending that he didn't see Spencer but it was obvious that he did and
23  intentionally ran him over. With over 30 years of surfing experience, Spencer
24  knew that this collision was intentional on his part. Fearful of being further
25  injured at that point, and not wanting to get into an argument with him,
26  Spencer just paddled away. Spencer and Taloa caught one more wave after
27  that and then decided it was getting too dangerous to surf. More men started
28  showing up at the Rock Fort and Spencer and Taloa were growing

-17-                          Case No. 2:16-cv-02129-SJO (RAOx)

Exhibit 3 - Page 00044

1 increasingly fearful for their safety. Spencer was also bleeding and in pain.

2 These incidents are described in the declarations filed with Plaintiffs motion

3 for class certification and the deposition of Spencer.

4       Spencer further identifies the following individuals as having

5 knowledge of concerted efforts by the Bay Boys, including Blakeman:

6       Christopher Taloa. As set forth above, Taloa and Spencer went surfing

7 at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

8 shadowing Spencer's movement in the water. Blakeman was in the water

9 with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

10 toward Taloa, at which point Taloa told him that he was too close.

11 Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

12 Taloa kept moving in the water, and Blakeman attempted to keep up with

13 him but was not in good enough shape to do so.

14       Diana Milena Reed. As set forth in the Complaint, Reed was harassed

15 by Blakeman and other Lunada Bay locals on multiple occasions.  On

16 January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

17 Wright and harassed them. Blakeman was there filming the incident.[9]  On or

18 about February 12, 2016, The Los Angeles Times published an article called

19 "Bay Boys surfer gang cannot block access to upscale beach, Coastal

20 Commission says." Jordan Wright and Cory Spencer are quoted in the

21 article. Mr. Wright and a few others had planned to surf Lunada Bay the

22 following morning. Plaintiffs are informed and believe that Defendants

23 Johnston and Blakeman learned that Jordan Wright and Diana Reed were

24

25 _____

26 [9] Plaintiffs are informed and believe that there were text message sent on
January 29, 2016 asking Defendant Papayans "Where are you? Kooks

27 trying to get to the Bay." Plaintiffs are informed and believe that Papayans

28 responded with a "LOL" and said he would be there.

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00045

going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm." On February 13, 2016, Reed and Wright returned to Lunada Bay. After Reed and Wright had continued down the path, Blakeman and Defendant Alan Johnston rushed into the Rock Fort where Reed was taking photos; the assault appeared to be a coordinated and orchestrated and in retaliation for an article that appeared in the Los Angeles Times.  Blakeman was filming Reed and had his camera close to her face.  Reed asked why he was filming her, and Blakeman responded, "Because I feel like it," and Johnston responded, "Because you're hot."  Charlie Ferrara was present during this incident, and observed the entire thing.  Although Ferrara apologized later for their behavior, he appeared to be complicit in Blakeman and Johnston's actions. These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Reed. Plaintiffs are informed and believe that after the incident Defendant Johnston started calling and/or texting other Lunada Bay locals to check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are informed and believe that later that day Johnston received a text from his mother asking him "What happened at the bay?" Johnston replied "Nothing happened really just couple of trolls they got nothing."

Jen Bell.  The incident described above was witnessed by a woman named Jen Bell who had gone to Lunada Bay that same day to photograph a guy from Malibu. When she attempted sit down on the beach with her pack, a man said: "You are practically sitting in a men's locker-room. You don't make me feel comfortable".  Bell continued to sit there for another 10

-19-

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00046

mins because she refused to be intimated but decided to head over to the fort because she saw another woman, Diana Reed, was taking photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It was obvious from the start that Johnston and Blakeman were there with the intent to harass Reed. Johnston was making rude comments to both her and Reed. Blakeman was putting the GoPro in their faces. Johnston was chugging multiple beers and it was early in the morning. Johnston asked her to help him with his wetsuit. He said "Can you help me with this?" and handed her the leg of his wetsuit. Johnston made moaning sounds when she took it like he was having an orgasm.

Jordan Wright. Wright attempted to surf Lunada Bay in January 2015 with Chris Claypool and Kenneth Claypool. He observed Blakeman harassing Chris and Ken. Wright was sitting on the outside waiting his turn for waves. By regular surfing norms, he had priority. He caught a 10- to 12-foot-high wave and was up riding for several seconds. Alan Johnston paddled the wrong way on this wave, dropped in on him going the wrong way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer while going the wrong way violates normal surf etiquette. Johnston then collided with Wright, and their leashes got tangled. After they surfaced from the collision, Johnston then got close to Wright and yelled, "You had to fucking take that wave, didn't you!" The next wave that came through then broke Wrights leash plug and the board was carried into the rocks, which destroyed a new surfboard. Wright had to swim in over rocks to get his board and cut his hands on the rocks doing so. Wright is confident that Johnston was attempted to purposefully injure him. What he did was extremely dangerous.

Wright has observed Blakeman on many occasions. Blakeman is easy to identify because he rides a kneeboard and he is regularly filming visitors

-20-

13002697.1

on land with a camcorder. Wright believes his filming is an effort to intimidate visitors. In the water, Wright has observed what appears to be Blakeman directing other Bay Boys to sit close to visiting surfers. Wright has observed Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to the visitors, impede their movements, block their surfing, kick at them, splash water at them, and dangerously drop in on them. In addition to Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston, Charlie Ferrara, and David Mello engage in this activity. These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Ken Claypool has been harassed and filmed by Blakeman in an attempt to intimidate him at Lunada Bay on multiple occasions. In January 2015, Claypool and his brother Chris Claypool along with Jordan Wright went to surf Lunada Bay.  There were about five Lunada Bay locals in the water, including Blakeman who paddled over and threatened them. Claypool observed Blakeman intentionally dropped in on Wright at least twice.

On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa and Jordan Wright. There was a photographer from the Los Angeles Times that was there. Also in attendance was Cory Spencer and Diana Reed. Spencer was there to watch the cars.  Blakeman was there filming in an effort to intimidate visitors. Blakeman can be seen in one of the pictures taken by the photographer. Also present was Defendant Papayans. Plaintiffs are informed and believe that there was a text message sent that day to Papayans, Michael Theil and 11 other people stating that there were 5 kooks standing on the bluff taking pictures, including Taloa. The text states: "Things could get ugly. We all need to surf." These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Chris Claypool, his brother Ken, and Jordan Wright attempted to surf Lunada Bay in January 2015.  There were about five locals in the water,

-21-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00048

13002697.1

1  including Blakeman who paddled over and was yelling "Try and catch a

2  wave and see what happens. There is no fucking way you are getting a

3  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

4  possessed or possibly on drugs. His behavior got more bizarre throughout

5  the morning. He seemed to be paddling for every wave that he could

6  physically push himself into, perhaps to make a point, but he was wiping out

7  a lot and falling down the face and tumbling across the rock reef. Blakeman

8  looked dangerous to himself. When Blakeman would actually catch a wave

9  in, he would paddle back to where Claypool and his brother were sitting, and

10  continue his insane rant. On one occasion, Blakeman came less than 12

11  inches from Claypool's ear and was screaming. It was so loud, Claypool had

12  to put his fingers in his ear to protect them from being damaged. Claypool is

13  a sound engineer and to put this in perspective, a rock concert creates about

14  120 decibels of noise - this was louder; a jet engine creates about 150

15  decibels. At one point Blakeman caught a wave and drew a line aiming right

16  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

17  as he narrowly missed Claypool's head. Claypool watched as Blakeman

18  intentionally dropped in on Jordan at least twice. It seemed obvious to

19  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

20  them were having fun. Because this was getting dangerous, they decided to

21  leave.

22        When Claypool and his brother got out of water, they saw people

23  gathering on top of the cliff. One person was videotaping them from the top

24  of the cliff; it was clear to Claypool that he was doing this to try and

25  intimidate them. The people were watching them from the cliff. It was

26  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

27  obstruct his free passage and use in the customary manner of a public

28  space. It also seemed clear that Blakeman engaged in a concerted effort

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00049

1 with other Bay Boys to try and injure him. These incidents are described in

2 the declarations filed with Plaintiffs motion for class certification.

3      Jason Gersch. While observing the surf, Gersch was approached by

4 two local Bay Boys named Peter McCollum and Brant Blakeman. These

5 individuals made it known to Gersch that he could not surf there. These

6 incidents are described in the declarations filed with Plaintiffs motion for

7 class certification.

8      Plaintiffs are informed and believe and on that basis allege that

9 Defendant Blakeman and his attorneys are attempting to intimidate

10 witnesses in this case. On at least two occasions, an investigator hired by

11 Blakeman's attorneys contacted witnesses represented by Plaintiffs'

12 attorneys. The investigator also showed up at the home of a reporter that

13 has not been listed as a witness.

14      The request is premature. Because Blakeman and the other

15 defendants are refusing to comply with their obligations to produce

16 documents under the federal rules and are impermissibly withholding

17 evidence and/or possibly spoliating evidence, we are not able to fully

18 respond to discovery requests which necessarily rely on our ability to fully

19 investigate the facts. As discovery is continuing, Spencer reserves the right

20 to update this response.

21 **INTERROGATORY NO. 3:**

22      IDENTIFY ALL PERSONS that have knowledge of any facts that

23 support your contention in paragraph 18 of the Complaint that BRANT

24 BLAKEMAN "sell[s] market[s] and use[s] illegal controlled substances from

25 the Lunada Bay Bluffs and the Rock Fort" and for each such PERSON

26 identified state all facts you contend are within the PERSON's knowledge.

27 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

28      Responding Party objects to this interrogatory as premature. Because

Exhibit 3 - Page 00050

1   this interrogatory seeks or necessarily relies upon a contention, and

2   because this matter is in its early stages and pretrial discovery has only just

3   begun, Responding Party is unable to provide a complete response at this

4   time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

5   2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

6   *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

7   also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

8   interrogatory need not be answered until designated discovery is complete,

9   or until a pretrial conference or some other time.").

10       Responding Party further objects to this interrogatory as unduly

11   burdensome, harassing, and duplicative of information disclosed in

12   Responding Party's Rule 26(a) disclosures and supplemental disclosures.

13   Propounding Party may look to Responding Party's Rule 26(a) disclosures

14   and supplemental disclosures for the information sought by this

15   interrogatory.  Moreover, Responding Party had the opportunity to depose

16   Mr. Spencer on this topic.

17       Responding Party further objects to this interrogatory as compound.

18   This "interrogatory" contains multiple impermissible subparts, which

19   Propounding Party has propounded to circumvent the numerical limitations

20   on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

21       Responding Party further objects to this interrogatory on the grounds

22   that it seeks information that is outside of Responding Party's knowledge.

23       Responding Party further objects to the extent that this interrogatory

24   invades attorney-client privilege and/or violates the work product doctrine by

25   compelling Responding Party to disclose privileged communications and/or

26   litigation strategy.

27       Subject to and without waiver of the foregoing objections, Responding

28   Party responds as follows:

13002697.1       PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00051

1       In addition to each defendant named in his individual capacity and

2   other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

3   and the evidence submitted in support of Plaintiffs motion for class

4   certification, Responding Party identifies the following individuals: There is a

5   copy of a Group MMS included in Officer Report for Incident 16-02164. In

6   that report an individual who identifies himself as "the Weasel" makes a

7   statement about Blakeman and meth. The Weasel also states: "Ferrara

8   family is nothing put a bunch of drug addict losers. He's main shaper and

9   good surfer kids are losers and his brothers kids are all losers One of the

10  Ferrara kids [sic] friends beat up a Persian liquor store guy… One time the

11  Ferrara kid talk shit to me one day I said I used to smoke crack with your

12  dad Angelo and dead uncle Sal I have all the dirt from 1979 up. The Weasel

13  then states; "Tell your bros to say even sells weed he lives on 10th Street in

14  San Pedro." Plaintiffs are informed and believe that the word "even" is a typo

15  which is supposed to be Evan and referring to Bay Boy Evan Levy. Plaintiffs

16  are informed and believe and thereon allege that the Weasel might be an

17  individual named Glen Morris. (424) 263-5152.

18      The request is premature. Because Blakeman and the other

19  defendants are refusing to comply with their obligations to produce

20  documents under the federal rules and are impermissibly withholding

21  evidence and/or possibly spoliating evidence, we are not able to fully

22  respond to discovery requests which necessarily rely on our ability to fully

23  investigate the facts. As discovery is continuing, Spencer reserves the right

24  to update this response.

25  **INTERROGATORY NO. 4:**

26      IDENTIFY ALL PERSONS that have knowledge of any facts that

27  support your contention in paragraph 18 of the Complaint that BRANT

28  BLAKEMAN "impede[d] boat traffic" at any time, and for each such PERSON

-25-

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00052

1 | identified state all facts you contend are within that PERSON's knowledge.

2 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

3 | Responding Party objects to this interrogatory as premature. Because

4 | this interrogatory seeks or necessarily relies upon a contention, and

5 | because this matter is in its early stages and pretrial discovery has only just

6 | begun, Responding Party is unable to provide a complete response at this

7 | time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

8 | 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

9 | *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

10 | also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

11 | interrogatory need not be answered until designated discovery is complete,

12 | or until a pretrial conference or some other time.").

13 | Responding Party further objects to this interrogatory as unduly

14 | burdensome, harassing, and duplicative of information disclosed in

15 | Responding Party's Rule 26(a) disclosures and supplemental disclosures.

16 | Propounding Party may look to Responding Party's Rule 26(a) disclosures

17 | and supplemental disclosures for the information sought by this

18 | interrogatory.  Moreover, Responding Party had the opportunity to depose

19 | Mr. Spencer on this topic.

20 | Responding Party further objects to this interrogatory as compound.

21 | This "interrogatory" contains multiple impermissible subparts, which

22 | Propounding Party has propounded to circumvent the numerical limitations

23 | on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

24 | Responding Party further objects to this interrogatory on the grounds

25 | that it seeks information that is outside of Responding Party's knowledge.

26 | Responding Party further objects to the extent that this interrogatory

27 | invades attorney-client privilege and/or violates the work product doctrine by

28 | compelling Responding Party to disclose privileged communications and/or

-26-

13002697.1

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00053

1  litigation strategy.  Responding Party will not provide any such information.

2      Subject to and without waiver of the foregoing objections, Responding

3  Party responds as follows:

4      In addition to each defendant named in his individual capacity and

5  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

6  and the evidence submitted in support of Plaintiffs motion for class

7  certification, Responding Party identifies the following individuals: Jordan

8  Wright, Ken Claypool.

9      The request is premature. Because Blakeman and the other

10  defendants are refusing to comply with their obligations to produce

11  documents under the federal rules and are impermissibly withholding

12  evidence and/or possibly spoliating evidence, we are not able to fully

13  respond to discovery requests which necessarily rely on our ability to fully

14  investigate the facts. As discovery is continuing, Spencer reserves the right

15  to update this response.

16  **INTERROGATORY NO. 5:**

17      IDENTIFY ALL PERSONS that have knowledge of any facts that

18  support your contention in paragraph 18 of the Complaint that BRANT

19  BLAKEMAN "dangerously disregard[ed] surfing rules" at any time, and for

20  each such PERSON identified state all facts you contend are within that

21  PERSON's knowledge.

22  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

23      Responding Party objects to this interrogatory as premature. Because

24  this interrogatory seeks or necessarily relies upon a contention, and

25  because this matter is in its early stages and pretrial discovery has only just

26  begun, Responding Party is unable to provide a complete response at this

27  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

28  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

-27-

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00054

1  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

2  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

3  interrogatory need not be answered until designated discovery is complete,

4  or until a pretrial conference or some other time.").

5      Responding Party further objects to this interrogatory as unduly

6  burdensome, harassing, and duplicative of information disclosed in

7  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

8  Propounding Party may look to Responding Party's Rule 26(a) disclosures

9  and supplemental disclosures for the information sought by this

10  interrogatory.  Moreover, Responding Party had the opportunity to depose

11  Mr. Spencer on this topic.

12      Responding Party further objects to this interrogatory as compound.

13  This "interrogatory" contains multiple impermissible subparts, which

14  Propounding Party has propounded to circumvent the numerical limitations

15  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

16      Responding Party further objects to this interrogatory on the grounds

17  that it seeks information that is outside of Responding Party's knowledge.

18      Responding Party further objects to the extent that this interrogatory

19  invades attorney-client privilege and/or violates the work product doctrine by

20  compelling Responding Party to disclose privileged communications and/or

21  litigation strategy.

22      Subject to and without waiver of the foregoing objections, Responding

23  Party responds as follows:

24      In addition to each defendant named in his individual capacity and

25  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

26  and the evidence submitted in support of Plaintiffs motion for class

27  certification, Responding Party identifies the following individuals:

28      Cory Spencer: Spencer believes that Blakeman engaged in a

-28-

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00055

concerted effort with other Bay Boys to obstruct his free passage and use in the customary manner of a public space.  Spencer also believes that Blakeman coordinated with other Bay Boys to assault him while he was surfing. Spencer believes that the conduct directed at him others trying to surf Lunada Bay is part of an agreement among Blakeman and the other Bay Boys, which at a minimum, may be implied by the conduct of the parties and other members of the Bay Boys. Spencer believes that the Bay Boys concerted efforts to stop the public from accessing the beach are documented in text messages and emails some of which have been destroyed or are being withheld by the Defendants in this case. For example, on February 5, 2016, Charles Mowat sent a text message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and several others that said "There are 5 kooks standing on the bluff taking pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles Times photographer captured a pictured of Defendant Blakeman of the bluff filming plaintiffs.

The specific acts directed against Spencer include but are not limited to the following:

Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer was also told: "why don't you fucking go home, you fucking kook" and asked "how many other good places did you pass to come here?" These are the same types of statements made by Defendant Sang Lee and others that can be observed on the video

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00056

1   published by the Guardian.[10]   These taunts started while Spencer and Taloa

2   were on the bluffs getting ready to surf. One individual continued to heckle

3   Spencer and Taloa on their way down to the beach and into the water.

4          Blakeman was already in the water and began paddling around

5   Spencer and Taloa in a tight circle – staying just a few feet away from them.

6   There was no legitimate reason for this conduct.[11]   Spencer believes that

7   this is a tactic used by the Bay Boys to harass people.  Blakeman impeded

8   Spencer's movement in any direction and was intentionally blocking him

9   from catching any waves. It was clear to Spencer that Blakeman was not

10   there to surf that morning. Instead, his mission was to prevent Spencer and

11   Taloa from surfing and to keep them from enjoying their time in the water,

12   the open space, the waves, and nature. This the type of concerted effort was

13   described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

14   people from surfing at Lunada Bay. In the approximately 90 minutes that

15   Spencer was in the water that day, Blakeman was focused on Spencer and

16   Taloa and continued to shadow their movements, and sit uncomfortably

17   close to them. Spencer had never experienced anything like that before in

18   his life. It was bizarre but also incredibly frightening and disturbing. It

19   appeared to Spencer that Blakeman was coordinating his actions with a

20   group of guys who were standing in the Rock Fort, along with others in the

21   water. They were all talking to each other and it was clear they all knew

22   each other.

23

24   _____

25   [10] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

26

27   [11] Plaintiffs are informed and believe that Defendant Papayans sent a text
     message describing similar conduct: "We just had a kook out in the water

28   and me and Jack just sat on his ass."

                                                    -30-        Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00057

1       At one point while Spencer was in the water and was paddling west

2   out to the ocean, he saw a man surfing, coming in east towards the shore.

3   The Bay Boy ran over his hand/wrist that was holding his surfboard and one

4   of the fins on his surfboard sliced open his right wrist. Spencer has about a

5   half-inch scar from where this man ran him over. As soon as the Bay Boy

6   ran him over, he started berating Spencer, saying things like "what are you

7   fucking doing out here? I told you to go home. I should have run you over.

8   Why are you paddling in the sun glare where I can't see you?" The Bay Boy

9   was pretending that he didn't see Spencer but it was obvious that he did and

10  intentionally ran him over. With over 30 years of surfing experience, Spencer

11  knew that this collision was intentional on his part. Fearful of being further

12  injured at that point, and not wanting to get into an argument with him,

13  Spencer just paddled away. Spencer and Taloa caught one more wave after

14  that and then decided it was getting too dangerous to surf. More men started

15  showing up at the Rock Fort and Spencer and Taloa were growing

16  increasingly fearful for their safety. Spencer was also bleeding and in pain.

17  These incidents are described in the declarations filed with Plaintiffs motion

18  for class certification and the deposition of Spencer.

19      Spencer further identifies the following individuals as having

20  knowledge of concerted efforts by the Bay Boys, including Blakeman:

21      Christopher Taloa. As set forth above, Taloa and Spencer went surfing

22  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

23  shadowing Spencer's movement in the water. Blakeman was in the water

24  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

25  toward Taloa, at which point Taloa told him that he was too close.

26  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

27  Taloa kept moving in the water, and Blakeman attempted to keep up with

28  him but was not in good enough shape to do so.

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Exhibit 3 - Page 00058

1    Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

2  with Chris Claypool and Kenneth Claypool. He observed Blakeman

3  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

4  for waves. By regular surfing norms, he had priority. He caught a10- to 12-

5  foot-high wave and was up riding for several seconds. Alan Johnston

6  paddled the wrong way on this wave, dropped in on him going the wrong

7  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

8  while going the wrong way violates normal surf etiquette. Johnston then

9  collided with Wright, and their leashes got tangled. After they surfaced from

10  the collision, Johnston then got close to Wright and yelled, "You had to

11  fucking take that wave, didn't you!" The next wave that came through then

12  broke Wrights leash plug and the board was carried into the rocks, which

13  destroyed a new surfboard. Wright had to swim in over rocks to get his

14  board and cut his hands on the rocks doing so. Wright is confident that

15  Johnston was attempted to purposefully injure him. What he did was

16  extremely dangerous.

17    Wright has observed Blakeman on many occasions. Blakeman is easy

18  to identify because he rides a kneeboard and he is regularly filming visitors

19  on land with a camcorder. Wright believes his filming is an effort to intimidate

20  visitors. In the water, Wright has observed what appears to be Blakeman

21  directing other Bay Boys to sit close to visiting surfers. Wright has observed

22  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

23  the visitors, impede their movements, block their surfing, kick at them,

24  splash water at them, and dangerously drop in on them. In addition to

25  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

26  Charlie Ferrara, and David Mello engage in this activity. These incidents are

27  described in the declarations filed with Plaintiffs motion for class certification.

28    Ken Claypool has been harassed and filmed by Blakeman in an

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00059

attempt to intimidate him at Lunada Bay on multiple occasions. In January 2015, Claypool and his brother Chris Claypool along with Jordan Wright went to surf Lunada Bay.  There were about five Lunada Bay locals in the water, including Blakeman who paddled over and threatened them. Claypool observed Blakeman intentionally dropped in on Wright at least twice.

Chris Claypool, his brother Ken, and Jordan Wright attempted to surf Lunada Bay in January 2015.  There were about five locals in the water, including Blakeman who paddled over and was yelling "Try and catch a wave and see what happens. There is no fucking way you are getting a wave. Just go in. Just go. You better not cut me off."  Blakeman looked possessed or possibly on drugs. His behavior got more bizarre throughout the morning. He seemed to be paddling for every wave that he could physically push himself into, perhaps to make a point, but he was wiping out a lot and falling down the face and tumbling across the rock reef. Blakeman looked dangerous to himself. When Blakeman would actually catch a wave in, he would paddle back to where Claypool and his brother were sitting, and continue his insane rant. On one occasion, Blakeman came less than 12 inches from Claypool's ear and was screaming. It was so loud, Claypool had to put his fingers in his ear to protect them from being damaged. Claypool is a sound engineer and to put this in perspective, a rock concert creates about 120 decibels of noise - this was louder; a jet engine creates about 150 decibels. At one point Blakeman caught a wave and drew a line aiming right at Claypool. Another Bay Boy tried the same thing and said "mother fucker" as he narrowly missed Claypool's head. Claypool watched as Blakeman intentionally dropped in on Jordan at least twice. It seemed obvious to Claypool that Blakeman and the other Bay Boy wanted to make sure none of them were having fun. Because this was getting dangerous, they decided to leave.

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00060

1    When Claypool and his brother got out of water, they saw people

2    gathering on top of the cliff. One person was videotaping them from the top

3    of the cliff; it was clear to Claypool that he was doing this to try and

4    intimidate them. The people were watching them from the cliff. It was

5    obvious that Blakeman engaged in a concerted effort with other Bay Boys to

6    obstruct his free passage and use in the customary manner of a public

7    space. It also seemed clear that Blakeman engaged in a concerted effort

8    with other Bay Boys to try and injure him. These incidents are described in

9    the declarations filed with Plaintiffs motion for class certification.

10    Plaintiffs are informed and believe and on that basis allege that

11    Defendant Blakeman and his attorneys are attempting to intimidate

12    witnesses in this case. On at least two occasions, an investigator hired by

13    Blakeman's attorneys contacted witnesses represented by Plaintiffs'

14    attorneys. The investigator also showed up at the home of a reporter that

15    has not been listed as a witness.

16    The request is premature. Because Blakeman and the other

17    defendants are refusing to comply with their obligations to produce

18    documents under the federal rules and are impermissibly withholding

19    evidence and/or possibly spoliating evidence, we are not able to fully

20    respond to discovery requests which necessarily rely on our ability to fully

21    investigate the facts. As discovery is continuing, Spencer reserves the right

22    to update this response.

23    **INTERROGATORY NO. 6:**

24    IDENTIFY ALL PERSONS that have knowledge of any facts that

25    support your contention that BRANT BLAKEMAN has illegally extorted

26    money from beachgoers who wish to use Lunada Bay for recreational

27    purposes (See paragraph 33 j. of the Complaint), and for each such

28    PERSON identified state all facts you contend are within that PERSON's

-34-                    Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1            PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00061

1 | knowledge.

2 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

3 | Responding Party objects to this interrogatory as premature. Because

4 | this interrogatory seeks or necessarily relies upon a contention, and

5 | because this matter is in its early stages and pretrial discovery has only just

6 | begun, Responding Party is unable to provide a complete response at this

7 | time, nor is it required to do so. See *Kmiec v. Powerwave Techs. Inc. et a*l.,

8 | 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

9 | *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

10 | also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

11 | interrogatory need not be answered until designated discovery is complete,

12 | or until a pretrial conference or some other time.").

13 | Responding Party further objects to this interrogatory as unduly

14 | burdensome, harassing, and duplicative of information disclosed in

15 | Responding Party's Rule 26(a) disclosures and supplemental disclosures.

16 | Propounding Party may look to Responding Party's Rule 26(a) disclosures

17 | and supplemental disclosures for the information sought by this

18 | interrogatory. Moreover, Responding Party had the opportunity to depose

19 | Mr. Spencer on this topic.

20 | Responding Party further objects to this interrogatory as compound.

21 | This "interrogatory" contains multiple impermissible subparts, which

22 | Propounding Party has propounded to circumvent the numerical limitations

23 | on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

24 | Responding Party further objects to this interrogatory on the grounds

25 | that it seeks information that is outside of Responding Party's knowledge.

26 | Responding Party further objects to the extent that this interrogatory

27 | invades attorney-client privilege and/or violates the work product doctrine by

28 | compelling Responding Party to disclose privileged communications and/or

-35-

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00062

1  litigation strategy.  Responding Party will not provide any such information.

2        The request is premature. Because Blakeman and the other

3  defendants are refusing to comply with their obligations to produce

4  documents under the federal rules and are impermissibly withholding

5  evidence and/or possibly spoliating evidence, we are not able to fully

6  respond to discovery requests which necessarily rely on our ability to fully

7  investigate the facts. As discovery is continuing, Spencer reserves the right

8  to update this response.

9  **INTERROGATORY NO. 7:**

10        IDENTIFY ALL PERSONS that have knowledge of any facts that

11  support your contention that BRANT BLAKEMAN was a part of a Civil

12  Conspiracy as identified in your complaint in paragraphs 51 through 53, and

13  for each such PERSON identified state all facts you contend are within that

14  PERSON's knowledge.

15  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

16        Responding Party objects to this interrogatory as premature. Because

17  this interrogatory seeks or necessarily relies upon a contention, and

18  because this matter is in its early stages and pretrial discovery has only just

19  begun, Responding Party is unable to provide a complete response at this

20  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

21  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

22  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

23  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

24  interrogatory need not be answered until designated discovery is complete,

25  or until a pretrial conference or some other time.").

26        Responding Party further objects to this interrogatory as unduly

27  burdensome, harassing, and duplicative of information disclosed in

28  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Exhibit 3 - Page 00063

1 Propounding Party may look to Responding Party's Rule 26(a) disclosures

2 and supplemental disclosures for the information sought by this

3 interrogatory.  Moreover, Responding Party had the opportunity to depose

4 Mr. Spencer on this topic.

5      Responding Party further objects to this interrogatory as compound.

6 This "interrogatory" contains multiple impermissible subparts, which

7 Propounding Party has propounded to circumvent the numerical limitations

8 on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

9      Responding Party further objects to this interrogatory on the grounds

10 that it seeks information that is outside of Responding Party's knowledge.

11      Responding Party further objects to the extent that this interrogatory

12 invades attorney-client privilege and/or violates the work product doctrine by

13 compelling Responding Party to disclose privileged communications and/or

14 litigation strategy.

15      Subject to and without waiver of the foregoing objections, Responding

16 Party responds as follows:

17      In addition to each defendant named in his individual capacity and

18 other persons identified in Plaintiffs' initial and supplemental disclosures, and

19 the evidence submitted in support of Plaintiffs motion for class certification,

20 Responding Party identifies the following individuals:

21      Cory Spencer: Spencer believes that Blakeman engaged in a

22 concerted effort with other Bay Boys to obstruct his free passage and use in

23 the customary manner of a public space.  Spencer also believes that

24 Blakeman coordinated with other Bay Boys to assault Spencer while he was

25 surfing. Spencer believes that the conduct directed at him others trying to

26 surf Lunada Bay is part of an agreement among Blakeman and the other

27 Bay Boys, which at a minimum, may be implied by the conduct of the parties

28 and other members of the Bay Boys. Spencer believes that the Bay Boys

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00064

1  concerted efforts to stop the public from accessing the beach are

2  documented in text messages and emails some of which have been

3  destroyed or are being withheld by the Defendants in this case. For

4  example, on February 5, 2016, Charles Mowat sent a text message to

5  Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy Patch,

6  Defendant Michael Papayans and several others that said "There are 5

7  kooks standing on the bluff taking pictures...I think that same Taloa guy.

8  Things could get ugly." A Los Angeles Times photographer captured a

9  pictured of Defendant Blakeman of the bluff filming plaintiffs.   Plaintiffs

10  believe that the Bay Boys take photos and/or video tape people as a form of

11  harassment and intimidation. For example, plaintiffs are also informed and

12  believe that a Lunada Bay local named Joshua Berstein was taking pictures

13  at the MLK 2014 paddle out. Plaintiffs are also informed and believe that

14  Berstein told several people after he photographed them "know we know

15  who you are." As another example, there are emails from Sang Lee

16  discussing the Bay Boys concerted efforts to stop the public from accessing

17  the beach.

18       The specific acts directed against Spencer include but are not limited

19  to the following:

20       Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

21  after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

22  They were told that they couldn't surf there, and Spencer was called a

23  "kook," which is a derogatory surfing term. Spencer was also told: "why don't

24  you fucking go home, you fucking kook" and asked "how many other good

25  places did you pass to come here?" These are the same types of statements

26  made by Defendant Sang Lee and others that can be observed on the video

27

28

-38-                    Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00065

1  published by the Guardian.[12]  These taunts started while Spencer and Taloa

2  were on the bluffs getting ready to surf. One individual continued to heckle

3  Spencer and Taloa on their way down to the beach and into the water.

4      Blakeman was already in the water and began paddling around

5  Spencer and Taloa in a tight circle – staying just a few feet away from them.

6  There was no legitimate reason for this conduct.[13] Spencer believes that this

7  is a tactic used by the Bay Boys to harass people.  Blakeman impeded

8  Spencer's movement in any direction and was intentionally blocking him

9  from catching any waves. It was clear to Spencer that Blakeman was not

10 there to surf that morning. Instead, his mission was to prevent Spencer and

11 Taloa from surfing and to keep them from enjoying their time in the water,

12 the open space, the waves, and nature. This the type of concerted effort was

13 described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

14 people from surfing at Lunada Bay. In the approximately 90 minutes that

15 Spencer was in the water that day, Blakeman was focused on Spencer and

16 Taloa and continued to shadow their movements, and sit uncomfortably

17 close to them. Spencer had never experienced anything like that before in

18 his life. It was bizarre but also incredibly frightening and disturbing. It

19 appeared to Spencer that Blakeman was coordinating his actions with a

20 group of guys who were standing in the Rock Fort, along with others in the

21 water. They were all talking to each other and it was clear they all knew

22 each other.

23

24  _____

25 [12] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

26

27 [13] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water

28 and me and Jack just sat on his ass."

-39-

1    At one point while Spencer was in the water and was paddling west

2   out to the ocean, he saw a man surfing, coming in east towards the shore.

3   The Bay Boy ran over his hand/wrist that was holding his surfboard and one

4   of the fins on his surfboard sliced open his right wrist. Spencer has about a

5   half-inch scar from where this man ran him over. As soon as the Bay Boy

6   ran him over, he started berating Spencer, saying things like "what are you

7   fucking doing out here? I told you to go home. I should have run you over.

8   Why are you paddling in the sun glare where I can't see you?" The Bay Boy

9   was pretending that he didn't see Spencer but it was obvious that he did and

10   intentionally ran him over. With over 30 years of surfing experience, Spencer

11   knew that this collision was intentional on his part. Fearful of being further

12   injured at that point, and not wanting to get into an argument with him,

13   Spencer just paddled away. Spencer and Taloa caught one more wave after

14   that and then decided it was getting too dangerous to surf. More men started

15   showing up at the Rock Fort and Spencer and Taloa were growing

16   increasingly fearful for their safety. Spencer was also bleeding and in pain.

17   These incidents are described in the declarations filed with Plaintiffs motion

18   for class certification and the deposition of Spencer.

19    Spencer further identifies the following individuals as having

20   knowledge of concerted efforts by the Bay Boys, including Blakeman:

21    Christopher Taloa. As set forth above, Taloa and Spencer went surfing

22   at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

23   shadowing Spencer's movement in the water. Blakeman was in the water

24   with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

25   toward Taloa, at which point Taloa told him that he was too close.

26   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

27   Taloa kept moving in the water, and Blakeman attempted to keep up with

28   him but was not in good enough shape to do so.

-40-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00067

Plaintiffs are also informed and believe that a Lunada Bay local named Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs are also informed and believe that Berstein told several people after he photographed them "know we know who you are." Plaintiffs are informed and believe that the Bay Boys use cameras to harass and intimidate people. These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Taloa.

Diana Milena Reed. As set forth in the Complaint, Reed was harassed by Blakeman and other Lunada Bay locals on multiple occasions.  On January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan Wright and harassed them. Blakeman was there filming the incidentOn or about February 12, 2016, The Los Angeles Times published an article called "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm." On February 13, 2016, Reed and Wright returned to Lunada Bay. After Reed and Wright had continued down the path, Blakeman and Defendant Alan Johnston rushed into the Rock Fort where Reed was taking photos; the assault appeared to be a coordinated and orchestrated and in retaliation for an article that appeared in the Los Angeles Times.  Blakeman was filming Reed and had his camera close to her face.  Reed asked why he was filming her, and Blakeman responded, "Because I feel like it," and Johnston responded,

-41-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00068

1  "Because you're hot."  Charlie Ferrara was present during this incident, and

2  observed the entire thing.  Although Ferrara apologized later for their

3  behavior, he appeared to be complicit in Blakeman and Johnston's actions.

4  These incidents are described in the declarations filed with Plaintiffs motion

5  for class certification and the deposition of Reed. Plaintiffs are informed and

6  believe that after the incident Defendant Johnston started calling and/or

7  texting other Lunada Bay locals to check for police to plan a getaway. At

8  around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

9  see any cops at the top." Plaintiffs are informed and believe that later that

10  day Johnston received a text from his mother asking him "What happened at

11  the bay?" Johnston replied "Nothing happened really just couple of trolls

12  they got nothing."

13      Jen Bell. The incident described above was witnessed by a woman

14  named Jen Bell who had gone to Lunada Bay that same day to photograph

15  a guy from Malibu. When she attempted sit down on the beach with her

16  pack, a man said: "You are practically sitting in a men's locker-room. You

17  don't make me feel comfortable".  Bell continued to sit there for another 10

18  mins because she refused to be intimated but decided to head over to the

19  fort because she saw another woman, Diana Reed, was taking photos.  Bell

20  was in the Rock Fort when Blakeman and Johnston arrived. It was obvious

21  from the start that Johnston and Blakeman were there with the intent to

22  harass Reed. Johnston was making rude comments to both her and Reed.

23  Blakeman was putting the GoPro in their faces. Johnston was chugging

24  multiple beers and it was early in the morning. Johnston asked her to help

25  him with his wetsuit. He said "Can you help me with this?" and handed her

26  the leg of his wetsuit. Johnston made moaning sounds when she took it like

27  he was having an orgasm.

28      Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

-42-

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00069

1    with Chris Claypool and Kenneth Claypool. He observed Blakeman

2    harassing Chris and Ken. Wright was sitting on the outside waiting his turn

3    for waves. By regular surfing norms, he had priority. He caught a10- to 12-

4    foot-high wave and was up riding for several seconds. Alan Johnston

5    paddled the wrong way on this wave, dropped in on him going the wrong

6    way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

7    while going the wrong way violates normal surf etiquette. Johnston then

8    collided with Wright, and their leashes got tangled. After they surfaced from

9    the collision, Johnston then got close to Wright and yelled, "You had to

10   fucking take that wave, didn't you!" The next wave that came through then

11   broke Wrights leash plug and the board was carried into the rocks, which

12   destroyed a new surfboard. Wright had to swim in over rocks to get his

13   board and cut his hands on the rocks doing so. Wright is confident that

14   Johnston was attempted to purposefully injure him. What he did was

15   extremely dangerous.

16        Wright has observed Blakeman on many occasions. Blakeman is easy

17   to identify because he rides a kneeboard and he is regularly filming visitors

18   on land with a camcorder. Wright believes his filming is an effort to intimidate

19   visitors. In the water, Wright has observed what appears to be Blakeman

20   directing other Bay Boys to sit close to visiting surfers. Wright has observed

21   Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

22   the visitors, impede their movements, block their surfing, kick at them,

23   splash water at them, and dangerously drop in on them. In addition to

24   Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

25   Charlie Ferrara, and David Mello engage in this activity. These incidents are

26   described in the declarations filed with Plaintiffs motion for class certification.

27        Ken Claypool has been harassed and filmed by Blakeman in an

28   attempt to intimidate him at Lunada Bay on multiple occasions. In January

-43-    Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00070

1   2015, Claypool and his brother Chris Claypool along with Jordan Wright
2   went to surf Lunada Bay.  There were about five Lunada Bay locals in the
3   water, including Blakeman who paddled over and threatened them. Claypool
4   observed Blakeman intentionally dropped in on Wright at least twice.

5        On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa
6   and Jordan Wright. There was a photographer from the Los Angeles Times
7   that was there. Also in attendance was Cory Spencer and Diana Reed.
8   Spencer was there to watch the cars.  Blakeman was there filming in an
9   effort to intimidate visitors. Blakeman can be seen in one of the pictures
10  taken by the photographer. Also present was Defendant Papayans. Plaintiffs
11  are informed and believe that there was a text message sent that day to
12  Papayans, Michael Theil and 11 other people stating that there were 5
13  kooks standing on the bluff taking pictures, including Taloa. The text states:
14  "Things could get ugly. We all need to surf." These incidents are described
15  in the declarations filed with Plaintiffs motion for class certification.

16       Chris Claypool, his brother Ken, and Jordan Wright attempted to surf
17  Lunada Bay in January 2015.  There were about five locals in the water,
18  including Blakeman who paddled over and was yelling "Try and catch a
19  wave and see what happens. There is no fucking way you are getting a
20  wave. Just go in. Just go. You better not cut me off."  Blakeman looked
21  possessed or possibly on drugs. His behavior got more bizarre throughout
22  the morning. He seemed to be paddling for every wave that he could
23  physically push himself into, perhaps to make a point, but he was wiping out
24  a lot and falling down the face and tumbling across the rock reef. Blakeman
25  looked dangerous to himself. When Blakeman would actually catch a wave
26  in, he would paddle back to where Claypool and his brother were sitting, and
27  continue his insane rant. On one occasion, Blakeman came less than 12
28  inches from Claypool's ear and was screaming. It was so loud, Claypool had

-44-

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00071

1  to put his fingers in his ear to protect them from being damaged. Claypool is

2  a sound engineer and to put this in perspective, a rock concert creates about

3  120 decibels of noise - this was louder; a jet engine creates about 150

4  decibels. At one point Blakeman caught a wave and drew a line aiming right

5  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

6  as he narrowly missed Claypool's head. Claypool watched as Blakeman

7  intentionally dropped in on Jordan at least twice. It seemed obvious to

8  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

9  them were having fun. Because this was getting dangerous, they decided to

10 leave.

11      When Claypool and his brother got out of water, they saw people

12 gathering on top of the cliff. One person was videotaping them from the top

13 of the cliff; it was clear to Claypool that he was doing this to try and

14 intimidate them. The people were watching them from the cliff. It was

15 obvious that Blakeman engaged in a concerted effort with other Bay Boys to

16 obstruct his free passage and use in the customary manner of a public

17 space. It also seemed clear that Blakeman engaged in a concerted effort

18 with other Bay Boys to try and injure him. These incidents are described in

19 the declarations filed with Plaintiffs motion for class certification.

20      Jason Gersch. While observing the surf, Gersch was approached by

21 two local Bay Boys named Peter McCollum and Brant Blakeman. These

22 individuals made it known to Gersch that he could not surf there. These

23 incidents are described in the declarations filed with Plaintiffs motion for

24 class certification.

25      Plaintiffs are informed and believe and on that basis allege that

26 Defendant Blakeman and his attorneys are attempting to intimidate

27 witnesses in this case. On at least two occasions, an investigator hired by

28 Blakeman's attorneys contacted witnesses represented by Plaintiffs'

Exhibit 3 - Page 00072

1   attorneys. The investigator also showed up at the home of a reporter that

2   has not been listed as a witness.

3        The request is premature. Because Blakeman and the other

4   defendants are refusing to comply with their obligations to produce

5   documents under the federal rules and are impermissibly withholding

6   evidence and/or possibly spoliating evidence, we are not able to fully

7   respond to discovery requests which necessarily rely on our ability to fully

8   investigate the facts. As discovery is continuing, Spencer reserves the right

9   to update this response.

10   **INTERROGATORY NO. 8**:

11        IDENTIFY ALL PERSONS that have knowledge of any facts that

12   support plaintiffs' First Cause of Action in the Complaint (Bane Act

13   Violations) against BRANT BLAKEMAN, and for each such PERSON

14   identified state all facts you contend are within that PERSON's knowledge.

15   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8**:

16        Responding Party objects to this interrogatory as premature. Because

17   this interrogatory seeks or necessarily relies upon a contention, and

18   because this matter is in its early stages and pretrial discovery has only just

19   begun, Responding Party is unable to provide a complete response at this

20   time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

21   2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

22   *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

23   also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

24   interrogatory need not be answered until designated discovery is complete,

25   or until a pretrial conference or some other time.").

26        Responding Party further objects to this interrogatory as unduly

27   burdensome, harassing, and duplicative of information disclosed in

28   Responding Party's Rule 26(a) disclosures and supplemental disclosures.

-46-

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00073

Propounding Party may look to Responding Party's Rule 26(a) disclosures and supplemental disclosures for the information sought by this interrogatory.  Moreover, Responding Party had the opportunity to depose Mr. Spencer on this topic.

Responding Party further objects to this interrogatory as compound. This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by compelling Responding Party to disclose privileged communications and/or litigation strategy.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

In addition to each defendant named in his individual capacity and other persons identified in Plaintiffs' initial and supplemental disclosures, and the evidence submitted in support of Plaintiffs motion for class certification, Responding Party identifies the following individuals:

Cory Spencer: Spencer believes that Blakeman engaged in a concerted effort with other Bay Boys to obstruct his free passage and use in the customary manner of a public space.  Spencer also believes that Blakeman coordinated with other Bay Boys to assault Spencer while he was surfing. Spencer believes that the conduct directed at him others trying to surf Lunada Bay is part of an agreement among Blakeman and the other Bay Boys, which at a minimum, may be implied by the conduct of the parties and other members of the Bay Boys. Spencer believes that the Bay Boys

-47-

13002697.1

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00074

concerted efforts to stop the public from accessing the beach are documented in text messages and emails some of which have been destroyed or are being withheld by the Defendants in this case. On February 5, 2016, Charles Mowat sent a text message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and several others that said "There are 5 kooks standing on the bluff taking pictures...I think that same Taloa guy. Things could get ugly. " A Los Angeles Times photographer captured a pictured of Defendant Blakeman of the bluff filming plaintiffs.   As another example, there are emails from Sang Lee discussing the Bay Boys concerted efforts to stop the public from accessing the beach.

The specific acts directed against Spencer include but are not limited to the following:

Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer was also told: "why don't you fucking go home, you fucking kook" and asked "how many other good places did you pass to come here?" These are the same types of statements made by Defendant Sang Lee and others that can be observed on the video published by the Guardian.[14]   These taunts started while Spencer and Taloa were on the bluffs getting ready to surf. One individual continued to heckle Spencer and Taloa on their way down to the beach and into the water.

Blakeman was already in the water and began paddling around

---

[14] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

(footnote continued)

-48-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00075

13002697.1

1  Spencer and Taloa in a tight circle – staying just a few feet away from them.
2  There was no legitimate reason for this conduct.  Spencer believes that this
3  is a tactic used by the Bay Boys to harass people.[15]  Blakeman impeded
4  Spencer's movement in any direction and was intentionally blocking him
5  from catching any waves. It was clear to Spencer that Blakeman was not
6  there to surf that morning. Instead, his mission was to prevent Spencer and
7  Taloa from surfing and to keep them from enjoying their time in the water,
8  the open space, the waves, and nature. This the type of concerted effort was
9  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep
10 people from surfing at Lunada Bay. In the approximately 90 minutes that
11 Spencer was in the water that day, Blakeman was focused on Spencer and
12 Taloa and continued to shadow their movements, and sit uncomfortably
13 close to them. Spencer had never experienced anything like that before in
14 his life. It was bizarre but also incredibly frightening and disturbing. It
15 appeared to Spencer that Blakeman was coordinating his actions with a
16 group of guys who were standing in the Rock Fort, along with others in the
17 water. They were all talking to each other and it was clear they all knew
18 each other.

19        At one point while Spencer was in the water and was paddling west
20 out to the ocean, he saw a man surfing, coming in east towards the shore.
21 The Bay Boy ran over his hand/wrist that was holding his surfboard and one
22 of the fins on his surfboard sliced open his right wrist. Spencer has about a
23 half-inch scar from where this man ran him over. As soon as the Bay Boy
24 ran him over, he started berating Spencer, saying things like "what are you

25 ─────────────────

26 [15] Plaintiffs are informed and believe that Defendant Papayans sent a text
27 message describing similar conduct: "We just had a kook out in the water
28 and me and Jack just sat on his ass."

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00076

1  fucking doing out here? I told you to go home. I should have run you over.

2  Why are you paddling in the sun glare where I can't see you?" The Bay Boy

3  was pretending that he didn't see Spencer but it was obvious that he did and

4  intentionally ran him over. With over 30 years of surfing experience, Spencer

5  knew that this collision was intentional on his part. Fearful of being further

6  injured at that point, and not wanting to get into an argument with him,

7  Spencer just paddled away. Spencer and Taloa caught one more wave after

8  that and then decided it was getting too dangerous to surf. More men started

9  showing up at the Rock Fort and Spencer and Taloa were growing

10  increasingly fearful for their safety. Spencer was also bleeding and in pain.

11  These incidents are described in the declarations filed with Plaintiffs motion

12  for class certification and the deposition of Spencer.

13          Spencer further identifies the following individuals as having

14  knowledge of concerted efforts by the Bay Boys, including Blakeman:

15          Christopher Taloa. As set forth above, Taloa and Spencer went surfing

16  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

17  shadowing Spencer's movement in the water. Blakeman was in the water

18  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

19  toward Taloa, at which point Taloa told him that he was too close.

20  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

21  Taloa kept moving in the water, and Blakeman attempted to keep up with

22  him but was not in good enough shape to do so.

23          Plaintiffs are also informed and believe that a Lunada Bay local named

24  Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs

25  are also informed and believe that Berstein told several people after he

26  photographed them "know we know who you are." Plaintiffs are informed

27  and believe that the Bay Boys use cameras to harass and intimidate people.

28  These incidents are described in the declarations filed with Plaintiffs motion

-50-

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00077

1  for class certification and the deposition of Taloa.

2       Diana Milena Reed. As set forth in the Complaint, Reed was harassed

3  by Blakeman and other Lunada Bay locals on multiple occasions.  On

4  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

5  Wright and harassed them. Blakeman was there filming the incident.[16]  On

6  or about February 12, 2016, The Los Angeles Times published an article

7  called "Bay Boys surfer gang cannot block access to upscale beach, Coastal

8  Commission says." Jordan Wright and Cory Spencer are quoted in the

9  article. Mr. Wright and a few others had planned to surf Lunada Bay the

10 following morning. Plaintiffs are informed and believe that Defendants

11 Johnston and Blakeman learned that Jordan Wright and Diana Reed were

12 going to Lunada Bay and planned to be there to harass them. On February

13 12, 2016, Defendant Alan Johnston sent the following text messages to an

14 unknown recipient: "No fucking way Taloa is back this year" and "If u really

15 wanna be a bay boy we might meet help tomm." On February 13, 2016,

16 Reed and Wright returned to Lunada Bay. After Reed and Wright had

17 continued down the path, Blakeman and Defendant Alan Johnston rushed

18 into the Rock Fort where Reed was taking photos; the assault appeared to

19 be a coordinated and orchestrated and in retaliation for an article that

20 appeared in the Los Angeles Times.  Blakeman was filming Reed and had

21 his camera close to her face.  Reed asked why he was filming her, and

22 Blakeman responded, "Because I feel like it," and Johnston responded,

23 "Because you're hot."  Charlie Ferrara was present during this incident, and

24

25

26 [16] Plaintiffs are informed and believe that there were text message sent on January 29, 2016 asking Defendant Papayans "Where are you? Kooks
27 trying to get to the Bay." Plaintiffs are informed and believe that Papayans responded with a "LOL" and said he would be there.
28

13002697.1          PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00078

1   observed the entire thing.  Although Ferrara apologized later for their

2   behavior, he appeared to be complicit in Blakeman and Johnston's actions.

3   These incidents are described in the declarations filed with Plaintiffs motion

4   for class certification and the deposition of Reed. Plaintiffs are informed and

5   believe that after the incident Defendant Johnston started calling and/or

6   texting other Lunada Bay locals to check for police to plan a getaway. At

7   around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

8   see any cops at the top." Plaintiffs are informed and believe that later that

9   day Johnston received a text from his mother asking him "What happened at

10  the bay?" Johnston replied "Nothing happened really just couple of trolls

11  they got nothing."

12      Jen Bell. The incident described above was witnessed by a woman

13  named Jen Bell who had gone to Lunada Bay that same day to photograph

14  a guy from Malibu. When she attempted sit down on the beach with her

15  pack, a man said: "You are practically sitting in a men's locker-room. You

16  don't make me feel comfortable".  Bell continued to sit there for another 10

17  mins because she refused to be intimated but decided to head over to the

18  fort because she saw another woman, Diana Reed, was taking photos.  Bell

19  was in the Rock Fort when Blakeman and Johnston arrived. It was obvious

20  from the start that Johnston and Blakeman were there with the intent to

21  harass Reed. Johnston was making rude comments to both her and Reed.

22  Blakeman was putting the GoPro in their faces. Johnston was chugging

23  multiple beers and it was early in the morning. Johnston asked her to help

24  him with his wetsuit. He said "Can you help me with this?" and handed her

25  the leg of his wetsuit. Johnston made moaning sounds when she took it like

26  he was having an orgasm.

27      Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

28  with Chris Claypool and Kenneth Claypool. He observed Blakeman

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00079

1   harassing Chris and Ken. Wright was sitting on the outside waiting his turn

2   for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

3   foot-high wave and was up riding for several seconds. Alan Johnston

4   paddled the wrong way on this wave, dropped in on him going the wrong

5   way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

6   while going the wrong way violates normal surf etiquette. Johnston then

7   collided with Wright, and their leashes got tangled. After they surfaced from

8   the collision, Johnston then got close to Wright and yelled, "You had to

9   fucking take that wave, didn't you!" The next wave that came through then

10  broke Wrights leash plug and the board was carried into the rocks, which

11  destroyed a new surfboard. Wright had to swim in over rocks to get his

12  board and cut his hands on the rocks doing so. Wright is confident that

13  Johnston was attempted to purposefully injure him. What he did was

14  extremely dangerous.

15      Wright has observed Blakeman on many occasions. Blakeman is easy

16  to identify because he rides a kneeboard and he is regularly filming visitors

17  on land with a camcorder. Wright believes his filming is an effort to intimidate

18  visitors. In the water, Wright has observed what appears to be Blakeman

19  directing other Bay Boys to sit close to visiting surfers. Wright has observed

20  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

21  the visitors, impede their movements, block their surfing, kick at them,

22  splash water at them, and dangerously drop in on them. In addition to

23  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

24  Charlie Ferrara, and David Mello engage in this activity. These incidents are

25  described in the declarations filed with Plaintiffs motion for class certification.

26      Ken Claypool has been harassed and filmed by Blakeman in an

27  attempt to intimidate him at Lunada Bay on multiple occasions. In January

28  2015, Claypool and his brother Chris Claypool along with Jordan Wright

-53-

13002697.1

Exhibit 3 - Page 00080

1   went to surf Lunada Bay.  There were about five Lunada Bay locals in the

2   water, including Blakeman who paddled over and threatened them. Claypool

3   observed Blakeman intentionally dropped in on Wright at least twice.

4        On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

5   and Jordan Wright. There was a photographer from the Los Angeles Times

6   that was there. Also in attendance was Cory Spencer and Diana Reed.

7   Spencer was there to watch the cars.  Blakeman was there filming in an

8   effort to intimidate visitors. Blakeman can be seen in one of the pictures

9   taken by the photographer. Also present was Defendant Papayans. Plaintiffs

10  are informed and believe that there was a text message sent that day to

11  Papayans, Michael Theil and 11 other people stating that there were 5

12  kooks standing on the bluff taking pictures, including Taloa. The text states:

13  "Things could get ugly. We all need to surf." These incidents are described

14  in the declarations filed with Plaintiffs motion for class certification.

15        Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

16  Lunada Bay in January 2015.  There were about five locals in the water,

17  including Blakeman who paddled over and was yelling "Try and catch a

18  wave and see what happens. There is no fucking way you are getting a

19  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

20  possessed or possibly on drugs. His behavior got more bizarre throughout

21  the morning. He seemed to be paddling for every wave that he could

22  physically push himself into, perhaps to make a point, but he was wiping out

23  a lot and falling down the face and tumbling across the rock reef. Blakeman

24  looked dangerous to himself. When Blakeman would actually catch a wave

25  in, he would paddle back to where Claypool and his brother were sitting, and

26  continue his insane rant. On one occasion, Blakeman came less than 12

27  inches from Claypool's ear and was screaming. It was so loud, Claypool had

28  to put his fingers in his ear to protect them from being damaged. Claypool is

-54-

Exhibit 3 - Page 00081

a sound engineer and to put this in perspective, a rock concert creates about 120 decibels of noise - this was louder; a jet engine creates about 150 decibels. At one point Blakeman caught a wave and drew a line aiming right at Claypool. Another Bay Boy tried the same thing and said "mother fucker" as he narrowly missed Claypool's head. Claypool watched as Blakeman intentionally dropped in on Jordan at least twice. It seemed obvious to Claypool that Blakeman and the other Bay Boy wanted to make sure none of them were having fun. Because this was getting dangerous, they decided to leave.

When Claypool and his brother got out of water, they saw people gathering on top of the cliff. One person was videotaping them from the top of the cliff; it was clear to Claypool that he was doing this to try and intimidate them. The people were watching them from the cliff. It was obvious that Blakeman engaged in a concerted effort with other Bay Boys to obstruct his free passage and use in the customary manner of a public space. It also seemed clear that Blakeman engaged in a concerted effort with other Bay Boys to try and injure him. These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Jason Gersch. While observing the surf, Gersch was approached by two local Bay Boys named Peter McCollum and Brant Blakeman. These individuals made it known to Gersch that he could not surf there. These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Plaintiffs are informed and believe and on that basis allege that Defendant Blakeman and his attorneys are attempting to intimidate witnesses in this case. On at least two occasions, an investigator hired by Blakeman's attorneys contacted witnesses represented by Plaintiffs' attorneys. The investigator also showed up at the home of a reporter that

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00082

1 | has not been listed as a witness.

2 |     The request is premature. Because Blakeman and the other

3 | defendants are refusing to comply with their obligations to produce

4 | documents under the federal rules and are impermissibly withholding

5 | evidence and/or possibly spoliating evidence, we are not able to fully

6 | respond to discovery requests which necessarily rely on our ability to fully

7 | investigate the facts. As discovery is continuing, Spencer reserves the right

8 | to update this response.

9 | **INTERROGATORY NO. 9:**

10 |     IDENTIFY ALL PERSONS that have knowledge of any facts that

11 | support plaintiffs' Second Cause of Action in the Complaint (Public

12 | Nuisance) against BRANT BLAKEMAN, and for each such PERSON

13 | identified state all facts you contend are within that PERSON's knowledge

14 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

15 |     Responding Party objects to this interrogatory as premature. Because

16 | this interrogatory seeks or necessarily relies upon a contention, and

17 | because this matter is in its early stages and pretrial discovery has only just

18 | begun, Responding Party is unable to provide a complete response at this

19 | time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

20 | 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; Folz v. Union Pacific

21 | Railroad Company, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

22 | also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

23 | interrogatory need not be answered until designated discovery is complete,

24 | or until a pretrial conference or some other time.").

25 |     Responding Party further objects to this interrogatory as unduly

26 | burdensome, harassing, and duplicative of information disclosed in

27 | Responding Party's Rule 26(a) disclosures and supplemental disclosures.

28 | Propounding Party may look to Responding Party's Rule 26(a) disclosures

-56-

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00083

1 | and supplemental disclosures for the information sought by this
2 | interrogatory.  Moreover, Responding Party had the opportunity to depose
3 | Mr. Spencer on this topic.

4 |      Responding Party further objects to this interrogatory as compound.
5 | This "interrogatory" contains multiple impermissible subparts, which
6 | Propounding Party has propounded to circumvent the numerical limitations
7 | on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

8 |      Responding Party further objects to this interrogatory on the grounds
9 | that it seeks information that is outside of Responding Party's knowledge.

10 |      Responding Party further objects to the extent that this interrogatory
11 | invades attorney-client privilege and/or violates the work product doctrine by
12 | compelling Responding Party to disclose privileged communications and/or
13 | litigation strategy.

14 |      Subject to and without waiver of the foregoing objections, Responding
15 | Party responds as follows:

16 |      In addition to each defendant named in his individual capacity and
17 | other persons identified in Plaintiffs' Initial and Supplemental Disclosures,
18 | and the evidence submitted in support of Plaintiffs motion for class
19 | certification, Responding Party identifies the following individuals:

20 |      Cory Spencer: Spencer believes that Blakeman engaged in a
21 | concerted effort with other Bay Boys to obstruct his free passage and use in
22 | the customary manner of a public space.  Spencer also believes that
23 | Blakeman coordinated with other Bay Boys to assault him while he was
24 | surfing. Spencer believes that the conduct directed at him and others trying
25 | to surf Lunada Bay is part of an agreement among Blakeman and the other
26 | Bay Boys, which at a minimum, may be implied by the conduct of the parties
27 | and other members of the Bay Boys. Spencer believes that the Bay Boys
28 | concerted efforts to stop the public from accessing the beach are

13002697.1

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00084

1   documented in text messages and emails some of which have been

2   destroyed or are being withheld by the Defendants in this case. On February

3   5, 2016, Charles Mowat sent a text message to Defendant Brant Blakeman,

4   Tom Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans

5   and several others that said "There are 5 kooks standing on the bluff taking

6   pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles

7   Times photographer captured a pictured of Defendant Blakeman of the bluff

8   filming plaintiffs.  Plaintiffs believe that the Bay Boys take photos and/or

9   video tape people as a form of harassment and intimidation. For example,

10   plaintiffs are also informed and believe that a Lunada Bay local named

11   Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs

12   are also informed and believe that Berstein told several people after he

13   photographed them "know we know who you are."

14        The specific acts directed against Spencer include but are not limited

15   to the following:

16        Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

17   after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

18   They were told that they couldn't surf there, and Spencer was called a

19   "kook," which is a derogatory surfing term. Spencer was also told: "why don't

20   you fucking go home, you fucking kook" and asked "how many other good

21   places did you pass to come here?" These are the same types of statements

22   made by Defendant Sang Lee and others that can be observed on the video

23   published by the Guardian.[17]  These taunts started while Spencer and Taloa

24   were on the bluffs getting ready to surf. One individual continued to heckle

25   Spencer and Taloa on their way down to the beach and into the water.

_____

27   [17] https://www.theguardian.com/travel/video/2015/may/18/california-surf-
28   wars-lunada-bay-localism-video.

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00085

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct. Spencer believes that this is a tactic used by the Bay Boys to harass people.[18]  Blakeman impeded Spencer's movement in any direction and was intentionally blocking him from catching any waves. It was clear to Spencer that Blakeman was not there to surf that morning. Instead, his mission was to prevent Spencer and Taloa from surfing and to keep them from enjoying their time in the water, the open space, the waves, and nature. This the type of concerted effort was described by Charlie Ferrara to Reed as the way the Bay Boys act to keep people from surfing at Lunada Bay. In the approximately 90 minutes that Spencer was in the water that day, Blakeman was focused on Spencer and Taloa and continued to shadow their movements, and sit uncomfortably close to them. Spencer had never experienced anything like that before in his life. It was bizarre but also incredibly frightening and disturbing. It appeared to Spencer that Blakeman was coordinating his actions with a group of guys who were standing in the Rock Fort, along with others in the water. They were all talking to each other and it was clear they all knew each other.

At one point while Spencer was in the water and was paddling west out to the ocean, he saw a man surfing, coming in east towards the shore. The Bay Boy ran over his hand/wrist that was holding his surfboard and one of the fins on his surfboard sliced open his right wrist. Spencer has about a half-inch scar from where this man ran him over. As soon as the Bay Boy

---

[18] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00086

1   ran him over, he started berating Spencer, saying things like "what are you
2   fucking doing out here? I told you to go home. I should have run you over.
3   Why are you paddling in the sun glare where I can't see you?" The Bay Boy
4   was pretending that he didn't see Spencer but it was obvious that he did and
5   intentionally ran him over. With over 30 years of surfing experience, Spencer
6   knew that this collision was intentional on his part. Fearful of being further
7   injured at that point, and not wanting to get into an argument with him,
8   Spencer just paddled away. Spencer and Taloa caught one more wave after
9   that and then decided it was getting too dangerous to surf. More men started
10   showing up at the Rock Fort and Spencer and Taloa were growing
11   increasingly fearful for their safety. Spencer was also bleeding and in pain.
12   These incidents are described in the declarations filed with Plaintiffs motion
13   for class certification and the deposition of Spencer.

14         Spencer further identifies the following individuals as having
15   knowledge of concerted efforts by the Bay Boys, including Blakeman:

16         Christopher Taloa. As set forth above, Taloa and Spencer went surfing
17   at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman
18   shadowing Spencer's movement in the water. Blakeman was in the water
19   with four or five other Lunada Bay Locals.  At one point, Blakeman paddled
20   toward Taloa, at which point Taloa told him that he was too close.
21   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."
22   Taloa kept moving in the water, and Blakeman attempted to keep up with
23   him but was not in good enough shape to do so.

24         Diana Milena Reed. As set forth in the Complaint, Reed was harassed
25   by Blakeman and other Lunada Bay locals on multiple occasions.  On
26   January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

27

28

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00087

Wright and harassed them. Blakeman was there filming the incident.[19]   On or about February 12, 2016, The Los Angeles Times published an article called "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm." On February 13, 2016, Reed and Wright returned to Lunada Bay. After Reed and Wright had continued down the path, Blakeman and Defendant Alan Johnston rushed into the Rock Fort where Reed was taking photos; the assault appeared to be a coordinated and orchestrated and in retaliation for an article that appeared in the Los Angeles Times.  Blakeman was filming Reed and had his camera close to her face.  Reed asked why he was filming her, and Blakeman responded, "Because I feel like it," and Johnston responded, "Because you're hot."  Charlie Ferrara was present during this incident, and observed the entire thing.  Although Ferrara apologized later for their behavior, he appeared to be complicit in Blakeman and Johnston's actions. These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Reed. Plaintiffs are informed and

---

[19] Plaintiffs are informed and believe that there were text message sent on January 29, 2016 asking Defendant Papayans "Where are you? Kooks trying to get to the Bay." Plaintiffs are informed and believe that Papayans responded with a "LOL" and said he would be there.

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Exhibit 3 - Page 00088

1   believe that after the incident Defendant Johnston started calling and/or

2   texting other Lunada Bay locals to check for police to plan a getaway. At

3   around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

4   see any cops at the top." Plaintiffs are informed and believe that later that

5   day Johnston received a text from his mother asking him "What happened at

6   the bay?" Johnston replied "Nothing happened really just couple of trolls

7   they got nothing."

8        Jen Bell. The incident described above was witnessed by a woman

9   named Jen Bell who had gone to Lunada Bay that same day to photograph

10  a guy from Malibu. When she attempted sit down on the beach with her

11  pack, a man said: "You are practically sitting in a men's locker-room. You

12  don't make me feel comfortable".  Bell continued to sit there for another 10

13  minutes because she refused to be intimated but eventually decided to head

14  over to the fort because she saw another woman, Diana Reed, was taking

15  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

16  was obvious from the start that Johnston and Blakeman were there with the

17  intent to harass Reed. Johnston was making rude comments to both her and

18  Reed. Blakeman was putting the GoPro in their faces. Johnston was

19  chugging multiple beers and it was early in the morning. Johnston asked her

20  to help him with his wetsuit. He said "Can you help me with this?" and

21  handed her the leg of his wetsuit. Johnston made moaning sounds when

22  she took it like he was having an orgasm.

23        Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

24  with Chris Claypool and Kenneth Claypool. He observed Blakeman

25  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

26  for waves. By regular surfing norms, he had priority. He caught a10- to 12-

27  foot-high wave and was up riding for several seconds. Alan Johnston

28  paddled the wrong way on this wave, dropped in on him going the wrong

-62-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00089

13002697.1

way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer while going the wrong way violates normal surf etiquette. Johnston then collided with Wright, and their leashes got tangled. After they surfaced from the collision, Johnston then got close to Wright and yelled, "You had to fucking take that wave, didn't you!" The next wave that came through then broke Wrights leash plug and the board was carried into the rocks, which destroyed a new surfboard. Wright had to swim in over rocks to get his board and cut his hands on the rocks doing so. Wright is confident that Johnston attempted to purposefully injure him. What he did was extremely dangerous.

Wright has observed Blakeman on many occasions. Blakeman is easy to identify because he rides a kneeboard and he is regularly filming visitors on land with a camcorder. Wright believes his filming is an effort to intimidate visitors. In the water, Wright has observed what appears to be Blakeman directing other Bay Boys to sit close to visiting surfers. Wright has observed Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to the visitors, impede their movements, block their surfing, kick at them, splash water at them, and dangerously drop in on them. In addition to Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston, Charlie Ferrara, and David Mello engage in this activity. These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Ken Claypool has been harassed and filmed by Blakeman in an attempt to intimidate him at Lunada Bay on multiple occasions. In January 2015, Claypool and his brother Chris Claypool along with Jordan Wright went to surf Lunada Bay.  There were about five Lunada Bay locals in the water, including Blakeman who paddled over and threatened them. Claypool observed Blakeman intentionally dropped in on Wright at least twice.

On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

-63-

Exhibit 3 - Page 00090

1   and Jordan Wright. There was a photographer from the Los Angeles Times

2   that was there. Also in attendance was Cory Spencer and Diana Reed.

3   Spencer was there to watch the cars.  Blakeman was there filming in an

4   effort to intimidate visitors. Blakeman can be seen in one of the pictures

5   taken by the photographer. Also present was Defendant Papayans. Plaintiffs

6   are informed and believe that there was a text message sent that day to

7   Papayans, Michael Theil and 11 other people stating that there were 5

8   kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

9   informed that the text states: "Things could get ugly. We all need to surf."

10   These incidents are described in the declarations filed with Plaintiffs motion

11   for class certification.

12       Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

13   Lunada Bay in January 2015.  There were about five locals in the water,

14   including Blakeman who paddled over and was yelling "Try and catch a

15   wave and see what happens. There is no fucking way you are getting a

16   wave. Just go in. Just go. You better not cut me off."  Blakeman looked

17   possessed or possibly on drugs. His behavior got more bizarre throughout

18   the morning. He seemed to be paddling for every wave that he could

19   physically push himself into, perhaps to make a point, but he was wiping out

20   a lot and falling down the face and tumbling across the rock reef. Blakeman

21   looked dangerous to himself. When Blakeman would actually catch a wave

22   in, he would paddle back to where Claypool and his brother were sitting, and

23   continue his insane rant. On one occasion, Blakeman came less than 12

24   inches from Claypool's ear and was screaming. It was so loud, Claypool had

25   to put his fingers in his ear to protect them from being damaged. Claypool is

26   a sound engineer and to put this in perspective, a rock concert creates about

27   120 decibels of noise - this was louder; a jet engine creates about 150

28   decibels. At one point Blakeman caught a wave and drew a line aiming right

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00091

1    at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

2    as he narrowly missed Claypool's head. Claypool watched as Blakeman

3    intentionally dropped in on Jordan at least twice. It seemed obvious to

4    Claypool that Blakeman and the other Bay Boy wanted to make sure none of

5    them were having fun. Because of the danger, they decided to leave.

6        When Claypool and his brother got out of water, they saw people

7    gathering on top of the cliff. One person was videotaping them from the top

8    of the cliff; it was clear to Claypool that he was doing this to try and

9    intimidate them. The people were watching them from the cliff. It was

10   obvious that Blakeman engaged in a concerted effort with other Bay Boys to

11   obstruct his free passage and use in the customary manner of a public

12   space. It also seemed clear that Blakeman engaged in a concerted effort

13   with other Bay Boys to try and injure him. These incidents are described in

14   the declarations filed with Plaintiffs motion for class certification.

15       Jason Gersch. While observing the surf, Gersch was approached by

16   two local Bay Boys named Peter McCollum and Brant Blakeman. These

17   individuals made it known to Gersch that he could not surf there. These

18   incidents are described in the declarations filed with Plaintiffs motion for

19   class certification.

20       Plaintiffs are informed and believe and on that basis allege that

21   Defendant Blakeman and his attorneys are attempting to intimidate

22   witnesses in this case. On at least two occasions, an investigator hired by

23   Blakeman's attorneys contacted witnesses they knew were represented by

24   Plaintiffs' attorneys. The investigator also showed up at the home of a

25   reporter that has not been listed as a witness.

26       The request is premature. Because Blakeman and the other

27   defendants are refusing to comply with their obligations to produce

28   documents under the federal rules and are impermissibly withholding

-65-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00092

1  evidence and/or possibly spoliating evidence, we are not able to fully

2  respond to discovery requests which necessarily rely on our ability to fully

3  investigate the facts. As discovery is continuing, Spencer reserves the right

4  to update this response.

5  **INTERROGATORY NO. 10:**

6      IDENTIFY ALL PERSONS that have knowledge of any facts that

7  support plaintiffs' Sixth Cause of Action in the Complaint (Assault) against

8  BRANT BLAKEMAN, and for each such PERSON identified state all facts

9  you contend are within that PERSON's knowledge.

10  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

11      Responding Party objects to this interrogatory as premature. Because

12  this interrogatory seeks or necessarily relies upon a contention, and

13  because this matter is in its early stages and pretrial discovery has only just

14  begun, Responding Party is unable to provide a complete response at this

15  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

16  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; Folz v. Union Pacific

17  Railroad Company, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

18  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

19  interrogatory need not be answered until designated discovery is complete,

20  or until a pretrial conference or some other time.").

21      Responding Party further objects to this interrogatory as unduly

22  burdensome, harassing, and duplicative of information disclosed in

23  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

24  Propounding Party may look to Responding Party's Rule 26(a) disclosures

25  and supplemental disclosures for the information sought by this

26  interrogatory.  Moreover, Responding Party had the opportunity to depose

27  Mr. Spencer on this topic.

28      Responding Party further objects to this interrogatory as compound.

-66-

13002697.1

Exhibit 3 - Page 00093

This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by compelling Responding Party to disclose privileged communications and/or litigation strategy.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

In addition to each defendant named in his individual capacity and other persons identified in Plaintiffs' Initial and Supplemental Disclosures, and the evidence submitted in support of Plaintiffs motion for class certification, Responding Party identifies the following individuals:

Cory Spencer: Spencer believes that Blakeman engaged in a concerted effort with other Bay Boys to obstruct his free passage and use in the customary manner of a public space.  Spencer also believes that Blakeman coordinated with other Bay Boys to assault him while he was surfing. Spencer believes that the conduct directed at him and others trying to surf Lunada Bay is part of an agreement among Blakeman and the other Bay Boys, which at a minimum, may be implied by the conduct of the parties and other members of the Bay Boys. Spencer believes that the Bay Boys concerted efforts to stop the public from accessing the beach are documented in text messages and emails some of which have been destroyed or are being withheld by the Defendants in this case. For example, on February 5, 2016, Charles Mowat sent a text message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy Patch,

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Exhibit 3 - Page 00094

1   Defendant Michael Papayans and several others that said "There are 5

2   kooks standing on the bluff taking pictures...I think that same Taloa guy.

3   Things could get ugly." A Los Angeles Times photographer captured a

4   pictured of Defendant Blakeman of the bluff filming plaintiffs.  Plaintiffs

5   believe that the Bay Boys take photos and/or video tape people as a form of

6   harassment and intimidation. For example, plaintiffs are also informed and

7   believe that a Lunada Bay local named Joshua Berstein was taking pictures

8   at the MLK 2014 paddle out. Plaintiffs are also informed and believe that

9   Berstein told several people after he photographed them "know we know

10  who you are."

11         The specific acts directed against Spencer include but are not limited

12  to the following:

13         Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

14  after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

15  They were told that they couldn't surf there, and Spencer was called a

16  "kook," which is a derogatory surfing term. Spencer was also told: "why don't

17  you fucking go home, you fucking kook" and asked "how many other good

18  places did you pass to come here?" These are the same types of statements

19  made by Defendant Sang Lee and others that can be observed on the video

20  published by the Guardian.[20]  These taunts started while Spencer and Taloa

21  were on the bluffs getting ready to surf. One individual continued to heckle

22  Spencer and Taloa on their way down to the beach and into the water.

23         Blakeman was already in the water and began paddling around

24  Spencer and Taloa in a tight circle – staying just a few feet away from them.

25  

26  

[20] https://www.theguardian.com/travel/video/2015/may/18/california-surf-

27  wars-lunada-bay-localism-video.

28  (footnote continued)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00095

13002697.1

1   There was no legitimate reason for this conduct. Spencer believes that this

2   is a tactic used by the Bay Boys to harass people.[21]  Blakeman impeded

3   Spencer's movement in any direction and was intentionally blocking him

4   from catching any waves. It was clear to Spencer that Blakeman was not

5   there to surf that morning. Instead, his mission was to prevent Spencer and

6   Taloa from surfing and to keep them from enjoying their time in the water,

7   the open space, the waves, and nature. This the type of concerted effort was

8   described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

9   people from surfing at Lunada Bay. In the approximately 90 minutes that

10  Spencer was in the water that day, Blakeman was focused on Spencer and

11  Taloa and continued to shadow their movements, and sit uncomfortably

12  close to them. Spencer had never experienced anything like that before in

13  his life. It was bizarre but also incredibly frightening and disturbing. It

14  appeared to Spencer that Blakeman was coordinating his actions with a

15  group of guys who were standing in the Rock Fort, along with others in the

16  water. They were all talking to each other and it was clear they all knew

17  each other.

18      At one point while Spencer was in the water and was paddling west

19  out to the ocean, he saw a man surfing, coming in east towards the shore.

20  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

21  of the fins on his surfboard sliced open his right wrist. Spencer has about a

22  half-inch scar from where this man ran him over. As soon as the Bay Boy

23  ran him over, he started berating Spencer, saying things like "what are you

24  fucking doing out here? I told you to go home. I should have run you over.

25

26  ─────────────────

27  [21] Plaintiffs are informed and believe that Defendant Papayans sent a text
    message describing similar conduct: "We just had a kook out in the water

28  and me and Jack just sat on his ass."

Exhibit 3 - Page 00096

1   Why are you paddling in the sun glare where I can't see you?" The Bay Boy

2   was pretending that he didn't see Spencer but it was obvious that he did and

3   intentionally ran him over. With over 30 years of surfing experience, Spencer

4   knew that this collision was intentional on his part. Fearful of being further

5   injured at that point, and not wanting to get into an argument with him,

6   Spencer just paddled away. Spencer and Taloa caught one more wave after

7   that and then decided it was getting too dangerous to surf. More men started

8   showing up at the Rock Fort and Spencer and Taloa were growing

9   increasingly fearful for their safety. Spencer was also bleeding and in pain.

10   These incidents are described in the declarations filed with Plaintiffs motion

11   for class certification and the deposition of Spencer.

12        Spencer further identifies the following individuals as having

13   knowledge of concerted efforts by the Bay Boys, including Blakeman:

14        Christopher Taloa. As set forth above, Taloa and Spencer went surfing

15   at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

16   shadowing Spencer's movement in the water. Blakeman was in the water

17   with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

18   toward Taloa, at which point Taloa told him that he was too close.

19   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

20   Taloa kept moving in the water, and Blakeman attempted to keep up with

21   him but was not in good enough shape to do so.

22        Diana Milena Reed. As set forth in the Complaint, Reed was harassed

23   by Blakeman and other Lunada Bay locals on multiple occasions.  On

24   January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

25   Wright and harassed them. Blakeman was there filming the incident.[22]   On

26   _____

27   [22] Plaintiffs are informed and believe that there were text message sent on

28   (footnote continued)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00097

1  or about February 12, 2016, The Los Angeles Times published an article

2  called "Bay Boys surfer gang cannot block access to upscale beach, Coastal

3  Commission says." Jordan Wright and Cory Spencer are quoted in the

4  article. Mr. Wright and a few others had planned to surf Lunada Bay the

5  following morning. Plaintiffs are informed and believe that Defendants

6  Johnston and Blakeman learned that Jordan Wright and Diana Reed were

7  going to Lunada Bay and planned to be there to harass them. On February

8  12, 2016, Defendant Alan Johnston sent the following text messages to an

9  unknown recipient: "No fucking way Taloa is back this year" and "If u really

10  wanna be a bay boy we might meet help tomm." On February 13, 2016,

11  Reed and Wright returned to Lunada Bay. After Reed and Wright had

12  continued down the path, Blakeman and Defendant Alan Johnston rushed

13  into the Rock Fort where Reed was taking photos; the assault appeared to

14  be a coordinated and orchestrated and in retaliation for an article that

15  appeared in the Los Angeles Times.  Blakeman was filming Reed and had

16  his camera close to her face.  Reed asked why he was filming her, and

17  Blakeman responded, "Because I feel like it," and Johnston responded,

18  "Because you're hot."  Charlie Ferrara was present during this incident, and

19  observed the entire thing.  Although Ferrara apologized later for their

20  behavior, he appeared to be complicit in Blakeman and Johnston's actions.

21  These incidents are described in the declarations filed with Plaintiffs motion

22  for class certification and the deposition of Reed. Plaintiffs are informed and

23  believe that after the incident Defendant Johnston started calling and/or

24  texting other Lunada Bay locals to check for police to plan a getaway. At

25  _____

26
27  January 29, 2016 asking Defendant Papayans "Where are you? Kooks
    trying to get to the Bay." Plaintiffs are informed and believe that Papayans

28  responded with a "LOL" and said he would be there.

-71-  Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00098

1   around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't
2   see any cops at the top." Plaintiffs are informed and believe that later that
3   day Johnston received a text from his mother asking him "What happened at
4   the bay?" Johnston replied "Nothing happened really just couple of trolls
5   they got nothing."

6       Jen Bell. The incident described above was witnessed by a woman
7   named Jen Bell who had gone to Lunada Bay that same day to photograph
8   a guy from Malibu. When she attempted sit down on the beach with her
9   pack, a man said: "You are practically sitting in a men's locker-room. You
10  don't make me feel comfortable".  Bell continued to sit there for another 10
11  minutes because she refused to be intimated but eventually decided to head
12  over to the fort because she saw another woman, Diana Reed, was taking
13  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It
14  was obvious from the start that Johnston and Blakeman were there with the
15  intent to harass Reed. Johnston was making rude comments to both her and
16  Reed. Blakeman was putting the GoPro in their faces. Johnston was
17  chugging multiple beers and it was early in the morning. Johnston asked her
18  to help him with his wetsuit. He said "Can you help me with this?" and
19  handed her the leg of his wetsuit. Johnston made moaning sounds when
20  she took it like he was having an orgasm.

21      Jordan Wright. Wright attempted to surf Lunada Bay in January 2015
22  with Chris Claypool and Kenneth Claypool. He observed Blakeman
23  harassing Chris and Ken. Wright was sitting on the outside waiting his turn
24  for waves. By regular surfing norms, he had priority. He caught a10- to 12-
25  foot-high wave and was up riding for several seconds. Alan Johnston
26  paddled the wrong way on this wave, dropped in on him going the wrong
27  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
28  while going the wrong way violates normal surf etiquette. Johnston then

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00099

1   collided with Wright, and their leashes got tangled. After they surfaced from

2   the collision, Johnston then got close to Wright and yelled, "You had to

3   fucking take that wave, didn't you!" The next wave that came through then

4   broke Wrights leash plug and the board was carried into the rocks, which

5   destroyed a new surfboard. Wright had to swim in over rocks to get his

6   board and cut his hands on the rocks doing so. Wright is confident that

7   Johnston attempted to purposefully injure him. What he did was extremely

8   dangerous.

9        Wright has observed Blakeman on many occasions. Blakeman is easy

10  to identify because he rides a kneeboard and he is regularly filming visitors

11  on land with a camcorder. Wright believes his filming is an effort to intimidate

12  visitors. In the water, Wright has observed what appears to be Blakeman

13  directing other Bay Boys to sit close to visiting surfers. Wright has observed

14  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

15  the visitors, impede their movements, block their surfing, kick at them,

16  splash water at them, and dangerously drop in on them. In addition to

17  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

18  Charlie Ferrara, and David Mello engage in this activity. These incidents are

19  described in the declarations filed with Plaintiffs motion for class certification.

20       Ken Claypool has been harassed and filmed by Blakeman in an

21  attempt to intimidate him at Lunada Bay on multiple occasions. In January

22  2015, Claypool and his brother Chris Claypool along with Jordan Wright

23  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

24  water, including Blakeman who paddled over and threatened them. Claypool

25  observed Blakeman intentionally dropped in on Wright at least twice.

26       On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

27  and Jordan Wright. There was a photographer from the Los Angeles Times

28  that was there. Also in attendance was Cory Spencer and Diana Reed.

-73-

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Exhibit 3 - Page 00100

1   Spencer was there to watch the cars.  Blakeman was there filming in an

2   effort to intimidate visitors. Blakeman can be seen in one of the pictures

3   taken by the photographer. Also present was Defendant Papayans. Plaintiffs

4   are informed and believe that there was a text message sent that day to

5   Papayans, Michael Theil and 11 other people stating that there were 5

6   kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

7   informed that the text states: "Things could get ugly. We all need to surf."

8   These incidents are described in the declarations filed with Plaintiffs motion

9   for class certification.

10          Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

11   Lunada Bay in January 2015.  There were about five locals in the water,

12   including Blakeman who paddled over and was yelling "Try and catch a

13   wave and see what happens. There is no fucking way you are getting a

14   wave. Just go in. Just go. You better not cut me off."  Blakeman looked

15   possessed or possibly on drugs. His behavior got more bizarre throughout

16   the morning. He seemed to be paddling for every wave that he could

17   physically push himself into, perhaps to make a point, but he was wiping out

18   a lot and falling down the face and tumbling across the rock reef. Blakeman

19   looked dangerous to himself. When Blakeman would actually catch a wave

20   in, he would paddle back to where Claypool and his brother were sitting, and

21   continue his insane rant. On one occasion, Blakeman came less than 12

22   inches from Claypool's ear and was screaming. It was so loud, Claypool had

23   to put his fingers in his ear to protect them from being damaged. Claypool is

24   a sound engineer and to put this in perspective, a rock concert creates about

25   120 decibels of noise - this was louder; a jet engine creates about 150

26   decibels. At one point Blakeman caught a wave and drew a line aiming right

27   at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

28   as he narrowly missed Claypool's head. Claypool watched as Blakeman

-74-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00101

1   intentionally dropped in on Jordan at least twice. It seemed obvious to

2   Claypool that Blakeman and the other Bay Boy wanted to make sure none of

3   them were having fun. Because of the danger, they decided to leave.

4        When Claypool and his brother got out of water, they saw people

5   gathering on top of the cliff. One person was videotaping them from the top

6   of the cliff; it was clear to Claypool that he was doing this to try and

7   intimidate them. The people were watching them from the cliff. It was

8   obvious that Blakeman engaged in a concerted effort with other Bay Boys to

9   obstruct his free passage and use in the customary manner of a public

10  space. It also seemed clear that Blakeman engaged in a concerted effort

11  with other Bay Boys to try and injure him. These incidents are described in

12  the declarations filed with Plaintiffs motion for class certification.

13       Jason Gersch. While observing the surf, Gersch was approached by

14  two local Bay Boys named Peter McCollum and Brant Blakeman. These

15  individuals made it known to Gersch that he could not surf there. These

16  incidents are described in the declarations filed with Plaintiffs motion for

17  class certification.

18       Plaintiffs are informed and believe and on that basis allege that

19  Defendant Blakeman and his attorneys are attempting to intimidate

20  witnesses in this case. On at least two occasions, an investigator hired by

21  Blakeman's attorneys contacted witnesses they knew were represented by

22  Plaintiffs' attorneys. The investigator also showed up at the home of a

23  reporter that has not been listed as a witness.

24       The request is premature. Because Blakeman and the other

25  defendants are refusing to comply with their obligations to produce

26  documents under the federal rules and are impermissibly withholding

27  evidence and/or possibly spoliating evidence, we are not able to fully

28  respond to discovery requests which necessarily rely on our ability to fully

-75-        Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00102

1  investigate the facts. As discovery is continuing, Spencer reserves the right

2  to update this response.

3  **INTERROGATORY NO. 11:**

4       IDENTIFY ALL PERSONS that have knowledge of any facts that

5  support plaintiffs' Seventh Cause of Action in the Complaint (Battery) against

6  BRANT BLAKEMAN, and for each such PERSON identified state all facts

7  you contend are within that PERSON's knowledge.

8  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

9       Responding Party objects to this interrogatory as premature. Because

10 this interrogatory seeks or necessarily relies upon a contention, and

11 because this matter is in its early stages and pretrial discovery has only just

12 begun, Responding Party is unable to provide a complete response at this

13 time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

14 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

15 *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

16 also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

17 interrogatory need not be answered until designated discovery is complete,

18 or until a pretrial conference or some other time.").

19      Responding Party further objects to this interrogatory as unduly

20 burdensome, harassing, and duplicative of information disclosed in

21 Responding Party's Rule 26(a) disclosures and supplemental disclosures.

22 Propounding Party may look to Responding Party's Rule 26(a) disclosures

23 and supplemental disclosures for the information sought by this

24 interrogatory.  Moreover, Responding Party had the opportunity to depose

25 Mr. Spencer on this topic.

26      Responding Party further objects to this interrogatory as compound.

27 This "interrogatory" contains multiple impermissible subparts, which

28 Propounding Party has propounded to circumvent the numerical limitations

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00103

1  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

2     Responding Party further objects to this interrogatory on the grounds

3  that it seeks information that is outside of Responding Party's knowledge.

4     Responding Party further objects to the extent that this interrogatory

5  invades attorney-client privilege and/or violates the work product doctrine by

6  compelling Responding Party to disclose privileged communications and/or

7  litigation strategy.

8     Subject to and without waiver of the foregoing objections, Responding

9  Party responds as follows:

10    In addition to each defendant named in his individual capacity and

11 other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

12 and the evidence submitted in support of Plaintiffs motion for class

13 certification, Responding Party identifies the following individuals:

14    Cory Spencer: Spencer believes that Blakeman engaged in a

15 concerted effort with other Bay Boys to obstruct his free passage and use in

16 the customary manner of a public space.  Spencer also believes that

17 Blakeman coordinated with other Bay Boys to assault him while he was

18 surfing. Spencer believes that the conduct directed at him and others trying

19 to surf Lunada Bay is part of an agreement among Blakeman and the other

20 Bay Boys, which at a minimum, may be implied by the conduct of the parties

21 and other members of the Bay Boys. Spencer believes that the Bay Boys

22 concerted efforts to stop the public from accessing the beach are

23 documented in text messages and emails some of which have been

24 destroyed or are being withheld by the Defendants in this case. For example

25 on February 5, 2016, Charles Mowat sent a text message to Defendant

26 Brant Blakeman, Tom Sullivan, David Yoakley, Andy Patch, Defendant

27 Michael Papayans and several others that said "There are 5 kooks standing

28 on the bluff taking pictures...I think that same Taloa guy. Things could get

13002697.1     PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00104

ugly." A Los Angeles Times photographer captured a pictured of Defendant Blakeman of the bluff filming plaintiffs. Plaintiffs believe that the Bay Boys take photos and/or video tape people as a form of harassment and intimidation. For example, plaintiffs are also informed and believe that a Lunada Bay local named Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs are also informed and believe that Berstein told several people after he photographed them "know we know who you are."

The specific acts directed against Spencer include but are not limited to the following:

Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer was also told: "why don't you fucking go home, you fucking kook" and asked "how many other good places did you pass to come here?" These are the same types of statements made by Defendant Sang Lee and others that can be observed on the video published by the Guardian.[23]  These taunts started while Spencer and Taloa were on the bluffs getting ready to surf. One individual continued to heckle Spencer and Taloa on their way down to the beach and into the water.

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct. Spencer believes that this is a tactic used by the Bay Boys to harass people.[24]  Blakeman impeded

_____

[23] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

[24] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water (footnote continued)

Exhibit 3 - Page 00105

1  Spencer's movement in any direction and was intentionally blocking him

2  from catching any waves. It was clear to Spencer that Blakeman was not

3  there to surf that morning. Instead, his mission was to prevent Spencer and

4  Taloa from surfing and to keep them from enjoying their time in the water,

5  the open space, the waves, and nature. This the type of concerted effort was

6  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

7  people from surfing at Lunada Bay. In the approximately 90 minutes that

8  Spencer was in the water that day, Blakeman was focused on Spencer and

9  Taloa and continued to shadow their movements, and sit uncomfortably

10 close to them. Spencer had never experienced anything like that before in

11 his life. It was bizarre but also incredibly frightening and disturbing. It

12 appeared to Spencer that Blakeman was coordinating his actions with a

13 group of guys who were standing in the Rock Fort, along with others in the

14 water. They were all talking to each other and it was clear they all knew

15 each other.

16     At one point while Spencer was in the water and was paddling west

17 out to the ocean, he saw a man surfing, coming in east towards the shore.

18 The Bay Boy ran over his hand/wrist that was holding his surfboard and one

19 of the fins on his surfboard sliced open his right wrist. Spencer has about a

20 half-inch scar from where this man ran him over. As soon as the Bay Boy

21 ran him over, he started berating Spencer, saying things like "what are you

22 fucking doing out here? I told you to go home. I should have run you over.

23 Why are you paddling in the sun glare where I can't see you?" The Bay Boy

24 was pretending that he didn't see Spencer but it was obvious that he did and

25 intentionally ran him over. With over 30 years of surfing experience, Spencer

26

27 _____

28 and me and Jack just sat on his ass."

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1                                          Exhibit 3 - Page 00106

1  knew that this collision was intentional on his part. Fearful of being further

2  injured at that point, and not wanting to get into an argument with him,

3  Spencer just paddled away. Spencer and Taloa caught one more wave after

4  that and then decided it was getting too dangerous to surf. More men started

5  showing up at the Rock Fort and Spencer and Taloa were growing

6  increasingly fearful for their safety. Spencer was also bleeding and in pain.

7  These incidents are described in the declarations filed with Plaintiffs motion

8  for class certification and the deposition of Spencer.

9  　　　Spencer further identifies the following individuals as having

10  knowledge of concerted efforts by the Bay Boys, including Blakeman:

11  　　　Christopher Taloa. As set forth above, Taloa and Spencer went surfing

12  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

13  shadowing Spencer's movement in the water. Blakeman was in the water

14  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

15  toward Taloa, at which point Taloa told him that he was too close.

16  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

17  Taloa kept moving in the water, and Blakeman attempted to keep up with

18  him but was not in good enough shape to do so.

19  　　　Diana Milena Reed. As set forth in the Complaint, Reed was harassed

20  by Blakeman and other Lunada Bay locals on multiple occasions.  On

21  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

22  Wright and harassed them. Blakeman was there filming the incident.[25]   On

23  or about February 12, 2016, The Los Angeles Times published an article

24

25  ────────────────

26  [25] Plaintiffs are informed and believe that there were text message sent on
January 29, 2016 asking Defendant Papayans "Where are you? Kooks

27  trying to get to the Bay." Plaintiffs are informed and believe that Papayans
responded with a "LOL" and said he would be there.

28

13002697.1

Exhibit 3 - Page 00107

called "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm." On February 13, 2016, Reed and Wright returned to Lunada Bay. After Reed and Wright had continued down the path, Blakeman and Defendant Alan Johnston rushed into the Rock Fort where Reed was taking photos; the assault appeared to be a coordinated and orchestrated and in retaliation for an article that appeared in the Los Angeles Times.  Blakeman was filming Reed and had his camera close to her face.  Reed asked why he was filming her, and Blakeman responded, "Because I feel like it," and Johnston responded, "Because you're hot."  Charlie Ferrara was present during this incident, and observed the entire thing.  Although Ferrara apologized later for their behavior, he appeared to be complicit in Blakeman and Johnston's actions. These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Reed. Plaintiffs are informed and believe that after the incident Defendant Johnston started calling and/or texting other Lunada Bay locals to check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are informed and believe that later that day Johnston received a text from his mother asking him "What happened at the bay?" Johnston replied "Nothing happened really just couple of trolls they got nothing."

13002697.1

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00108

1   Jen Bell. The incident described above was witnessed by a woman

2   named Jen Bell who had gone to Lunada Bay that same day to photograph

3   a guy from Malibu. When she attempted sit down on the beach with her

4   pack, a man said: "You are practically sitting in a men's locker-room. You

5   don't make me feel comfortable".  Bell continued to sit there for another 10

6   minutes because she refused to be intimated but eventually decided to head

7   over to the fort because she saw another woman, Diana Reed, was taking

8   photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

9   was obvious from the start that Johnston and Blakeman were there with the

10  intent to harass Reed. Johnston was making rude comments to both her and

11  Reed. Blakeman was putting the GoPro in their faces. Johnston was

12  chugging multiple beers and it was early in the morning. Johnston asked her

13  to help him with his wetsuit. He said "Can you help me with this?" and

14  handed her the leg of his wetsuit. Johnston made moaning sounds when

15  she took it like he was having an orgasm.

16  Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

17  with Chris Claypool and Kenneth Claypool. He observed Blakeman

18  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

19  for waves. By regular surfing norms, he had priority. He caught a10- to 12-

20  foot-high wave and was up riding for several seconds. Alan Johnston

21  paddled the wrong way on this wave, dropped in on him going the wrong

22  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

23  while going the wrong way violates normal surf etiquette. Johnston then

24  collided with Wright, and their leashes got tangled. After they surfaced from

25  the collision, Johnston then got close to Wright and yelled, "You had to

26  fucking take that wave, didn't you!" The next wave that came through then

27  broke Wrights leash plug and the board was carried into the rocks, which

28  destroyed a new surfboard. Wright had to swim in over rocks to get his

-82-

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Exhibit 3 - Page 00109

board and cut his hands on the rocks doing so. Wright is confident that
Johnston attempted to purposefully injure him. What he did was extremely
dangerous.

Wright has observed Blakeman on many occasions. Blakeman is easy
to identify because he rides a kneeboard and he is regularly filming visitors
on land with a camcorder. Wright believes his filming is an effort to intimidate
visitors. In the water, Wright has observed what appears to be Blakeman
directing other Bay Boys to sit close to visiting surfers. Wright has observed
Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to
the visitors, impede their movements, block their surfing, kick at
them, splash water at them, and dangerously drop in on them. In addition to
Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,
Charlie Ferrara, and David Mello engage in this activity. These incidents are
described in the declarations filed with Plaintiffs motion for class certification.

Ken Claypool has been harassed and filmed by Blakeman in an
attempt to intimidate him at Lunada Bay on multiple occasions. In January
2015, Claypool and his brother Chris Claypool along with Jordan Wright
went to surf Lunada Bay.  There were about five Lunada Bay locals in the
water, including Blakeman who paddled over and threatened them. Claypool
observed Blakeman intentionally dropped in on Wright at least twice.

On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa
and Jordan Wright. There was a photographer from the Los Angeles Times
that was there. Also in attendance was Cory Spencer and Diana Reed.
Spencer was there to watch the cars.  Blakeman was there filming in an
effort to intimidate visitors. Blakeman can be seen in one of the pictures
taken by the photographer. Also present was Defendant Papayans. Plaintiffs
are informed and believe that there was a text message sent that day to
Papayans, Michael Theil and 11 other people stating that there were 5

-83-

13002697.1

Exhibit 3 - Page 00110

1   kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

2   informed that the text states: "Things could get ugly. We all need to surf."

3   These incidents are described in the declarations filed with Plaintiffs motion

4   for class certification.

5       Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

6   Lunada Bay in January 2015.  There were about five locals in the water,

7   including Blakeman who paddled over and was yelling "Try and catch a

8   wave and see what happens. There is no fucking way you are getting a

9   wave. Just go in. Just go. You better not cut me off."  Blakeman looked

10  possessed or possibly on drugs. His behavior got more bizarre throughout

11  the morning. He seemed to be paddling for every wave that he could

12  physically push himself into, perhaps to make a point, but he was wiping out

13  a lot and falling down the face and tumbling across the rock reef. Blakeman

14  looked dangerous to himself. When Blakeman would actually catch a wave

15  in, he would paddle back to where Claypool and his brother were sitting, and

16  continue his insane rant. On one occasion, Blakeman came less than 12

17  inches from Claypool's ear and was screaming. It was so loud, Claypool had

18  to put his fingers in his ear to protect them from being damaged. Claypool is

19  a sound engineer and to put this in perspective, a rock concert creates about

20  120 decibels of noise - this was louder; a jet engine creates about 150

21  decibels. At one point Blakeman caught a wave and drew a line aiming right

22  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

23  as he narrowly missed Claypool's head. Claypool watched as Blakeman

24  intentionally dropped in on Jordan at least twice. It seemed obvious to

25  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

26  them were having fun. Because of the danger, they decided to leave.

27      When Claypool and his brother got out of water, they saw people

28  gathering on top of the cliff. One person was videotaping them from the top

-84-

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00111

1  of the cliff; it was clear to Claypool that he was doing this to try and

2  intimidate them. The people were watching them from the cliff. It was

3  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

4  obstruct his free passage and use in the customary manner of a public

5  space. It also seemed clear that Blakeman engaged in a concerted effort

6  with other Bay Boys to try and injure him. These incidents are described in

7  the declarations filed with Plaintiffs motion for class certification.

8      Jason Gersch. While observing the surf, Gersch was approached by

9  two local Bay Boys named Peter McCollum and Brant Blakeman. These

10  individuals made it known to Gersch that he could not surf there. These

11  incidents are described in the declarations filed with Plaintiffs motion for

12  class certification.

13      Plaintiffs are informed and believe and on that basis allege that

14  Defendant Blakeman and his attorneys are attempting to intimidate

15  witnesses in this case. On at least two occasions, an investigator hired by

16  Blakeman's attorneys contacted witnesses they knew were represented by

17  Plaintiffs' attorneys. The investigator also showed up at the home of a

18  reporter that has not been listed as a witness. The request is premature.

19  Because Blakeman and the other defendants are refusing to comply with

20  their obligations to produce documents under the federal rules and are

21  impermissibly withholding evidence and/or possibly spoliating evidence, we

22  are not able to fully respond to discovery requests which necessarily rely on

23  our ability to fully investigate the facts. As discovery is continuing, Spencer

24  reserves the right to update this response.

25  **INTERROGATORY NO. 12:**

26      IDENTIFY ALL PERSONS that have knowledge of any facts that

27  support plaintiffs' Eight Cause of Action in the Complaint (Negligence)

28  against BRANT BLAKEMAN, and for each such PERSON identified state all

1   facts you contend are within that PERSON's knowledge.

2   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

3       Responding Party objects to this interrogatory as premature. Because

4   this interrogatory seeks or necessarily relies upon a contention, and

5   because this matter is in its early stages and pretrial discovery has only just

6   begun, Responding Party is unable to provide a complete response at this

7   time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et a*l.,

8   2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

9   *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

10  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

11  interrogatory need not be answered until designated discovery is complete,

12  or until a pretrial conference or some other time.").

13      Responding Party further objects to this interrogatory as unduly

14  burdensome, harassing, and duplicative of information disclosed in

15  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

16  Propounding Party may look to Responding Party's Rule 26(a) disclosures

17  and supplemental disclosures for the information sought by this

18  interrogatory.  Moreover, Responding Party had the opportunity to depose

19  Mr. Spencer on this topic.

20      Responding Party further objects to this interrogatory as compound.

21  This "interrogatory" contains multiple impermissible subparts, which

22  Propounding Party has propounded to circumvent the numerical limitations

23  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

24      Responding Party further objects to this interrogatory on the grounds

25  that it seeks information that is outside of Responding Party's knowledge.

26      Responding Party further objects to the extent that this interrogatory

27  invades attorney-client privilege and/or violates the work product doctrine by

28  compelling Responding Party to disclose privileged communications and/or

13002697.1   PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00113

1 litigation strategy.

2    Subject to and without waiver of the foregoing objections, Responding

3 Party responds as follows:

4    In addition to each defendant named in his individual capacity and

5 other persons identified in Plaintiffs' initial and supplemental disclosures, and

6 the evidence submitted in support of Plaintiffs motion for class certification,

7 Responding Party identifies the following individuals:

8    Cory Spencer: Spencer believes that Blakeman engaged in a

9 concerted effort with other Bay Boys to obstruct his free passage and use in

10 the customary manner of a public space.  Spencer also believes that

11 Blakeman coordinated with other Bay Boys to assault Spencer while he was

12 surfing. Spencer believes that the conduct directed at him others trying to

13 surf Lunada Bay is part of an agreement among Blakeman and the other

14 Bay Boys, which at a minimum, may be implied by the conduct of the parties

15 and other members of the Bay Boys. Spencer believes that the Bay Boys

16 concerted efforts to stop the public from accessing the beach are

17 documented in text messages and emails some of which have been

18 destroyed or are being withheld by the Defendants in this case. For

19 example, on February 5, 2016, Charles Mowat sent a text message to

20 Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy Patch,

21 Defendant Michael Papayans and several others that said "There are 5

22 kooks standing on the bluff taking pictures...I think that same Taloa guy.

23 Things could get ugly.." A Los Angeles Times photographer captured a

24 pictured of Defendant Blakeman of the bluff filming plaintiffs.   As another

25 example, there are emails from Sang Lee discussing the Bay Boys

26 concerted efforts to stop the public from accessing the beach.

27    The specific acts directed against Spencer include but are not limited

28 to the following:

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00114

1    Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

2    after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

3    They were told that they couldn't surf there, and Spencer was called a

4    "kook," which is a derogatory surfing term. Spencer was also told: "why don't

5    you fucking go home, you fucking kook" and asked "how many other good

6    places did you pass to come here?" These are the same types of statements

7    made by Defendant Sang Lee and others that can be observed on the video

8    published by the Guardian.[26]   These taunts started while Spencer and Taloa

9    were on the bluffs getting ready to surf. One individual continued to heckle

10   Spencer and Taloa on their way down to the beach and into the water.

11   Blakeman was already in the water and began paddling around

12   Spencer and Taloa in a tight circle – staying just a few feet away from them.

13   There was no legitimate reason for this conduct.  Spencer believes that this

14   is a tactic used by the Bay Boys to harass people.[27]   Blakeman impeded

15   Spencer's movement in any direction and was intentionally blocking him

16   from catching any waves. It was clear to Spencer that Blakeman was not

17   there to surf that morning. Instead, his mission was to prevent Spencer and

18   Taloa from surfing and to keep them from enjoying their time in the water,

19   the open space, the waves, and nature. This the type of concerted effort was

20   described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

21   people from surfing at Lunada Bay. In the approximately 90 minutes that

22   Spencer was in the water that day, Blakeman was focused on Spencer and

23

24   _____

25   [26]https://www.theguardian.com/travel/video/2015/may/18/california-surf-
     wars-lunada-bay-localism-video.

26

27   [27] Plaintiffs are informed and believe that Defendant Papayans sent a text
     message describing similar conduct: "We just had a kook out in the water

28   and me and Jack just sat on his ass."

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00115

1   Taloa and continued to shadow their movements, and sit uncomfortably
2   close to them. Spencer had never experienced anything like that before in
3   his life. It was bizarre but also incredibly frightening and disturbing. It
4   appeared to Spencer that Blakeman was coordinating his actions with a
5   group of guys who were standing in the Rock Fort, along with others in the
6   water. They were all talking to each other and it was clear they all knew
7   each other.

8        At one point while Spencer was in the water and was paddling west
9   out to the ocean, he saw a man surfing, coming in east towards the shore.
10  The Bay Boy ran over his hand/wrist that was holding his surfboard and one
11  of the fins on his surfboard sliced open his right wrist. Spencer has about a
12  half-inch scar from where this man ran him over. As soon as the Bay Boy
13  ran him over, he started berating Spencer, saying things like "what are you
14  fucking doing out here? I told you to go home. I should have run you over.
15  Why are you paddling in the sun glare where I can't see you?" The Bay Boy
16  was pretending that he didn't see Spencer but it was obvious that he did and
17  intentionally ran him over. With over 30 years of surfing experience, Spencer
18  knew that this collision was intentional on his part. Fearful of being further
19  injured at that point, and not wanting to get into an argument with him,
20  Spencer just paddled away. Spencer and Taloa caught one more wave after
21  that and then decided it was getting too dangerous to surf. More men started
22  showing up at the Rock Fort and Spencer and Taloa were growing
23  increasingly fearful for their safety. Spencer was also bleeding and in pain.
24  These incidents are described in the declarations filed with Plaintiffs motion
25  for class certification and the deposition of Spencer.

26       Spencer further identifies the following individuals as having
27  knowledge of concerted efforts by the Bay Boys, including Blakeman:

28       Christopher Taloa. As set forth above, Taloa and Spencer went surfing

-89-                    Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00116

1   at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman
2   shadowing Spencer's movement in the water. Blakeman was in the water
3   with four or five other Lunada Bay Locals.  At one point, Blakeman paddled
4   toward Taloa, at which point Taloa told him that he was too close.
5   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."
6   Taloa kept moving in the water, and Blakeman attempted to keep up with
7   him but was not in good enough shape to do so.

8       Plaintiffs are also informed and believe that a Lunada Bay local named
9   Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs
10  are also informed and believe that Berstein told several people after he
11  photographed them "know we know who you are." Plaintiffs are informed
12  and believe that the Bay Boys use cameras to harass and intimidate people.
13  These incidents are described in the declarations filed with Plaintiffs motion
14  for class certification and the deposition of Taloa.

15      Diana Milena Reed. As set forth in the Complaint, Reed was harassed
16  by Blakeman and other Lunada Bay locals on multiple occasions.  On
17  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan
18  Wright and harassed them. Blakeman was there filming the incident.[28]   On
19  or about February 12, 2016, The Los Angeles Times published an article
20  called "Bay Boys surfer gang cannot block access to upscale beach, Coastal
21  Commission says." Jordan Wright and Cory Spencer are quoted in the
22  article. Mr. Wright and a few others had planned to surf Lunada Bay the
23  following morning. Plaintiffs are informed and believe that Defendants
24
25  _____

26  [28] Plaintiffs are informed and believe that there were text message sent on
    January 29, 2016 asking Defendant Papayans "Where are you? Kooks
27  trying to get to the Bay." Plaintiffs are informed and believe that Papayans
28  responded with a "LOL" and said he would be there.

13002697.1

Exhibit 3 - Page 00117

Johnston and Blakeman learned that Jordan Wright and Diana Reed were

going to Lunada Bay and planned to be there to harass them. On February

12, 2016, Defendant Alan Johnston sent the following text messages to an

unknown recipient: "No fucking way Taloa is back this year" and "If u really

wanna be a bay boy we might meet help tomm." On February 13, 2016,

Reed and Wright returned to Lunada Bay. After Reed and Wright had

continued down the path, Blakeman and Defendant Alan Johnston rushed

into the Rock Fort where Reed was taking photos; the assault appeared to

be a coordinated and orchestrated and in retaliation for an article that

appeared in the Los Angeles Times.  Blakeman was filming Reed and had

his camera close to her face.  Reed asked why he was filming her, and

Blakeman responded, "Because I feel like it," and Johnston responded,

"Because you're hot."  Charlie Ferrara was present during this incident, and

observed the entire thing.  Although Ferrara apologized later for their

behavior, he appeared to be complicit in Blakeman and Johnston's actions.

These incidents are described in the declarations filed with Plaintiffs motion

for class certification and the deposition of Reed. Plaintiffs are informed and

believe that after the incident Defendant Johnston started calling and/or

texting other Lunada Bay locals to check for police to plan a getaway. At

around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

see any cops at the top." Plaintiffs are informed and believe that later that

day Johnston received a text from his mother asking him "What happened at

the bay?" Johnston replied "Nothing happened really just couple of trolls

they got nothing."

     Jen Bell. The incident described above was witnessed by a woman

named Jen Bell who had gone to Lunada Bay that same day to photograph

a guy from Malibu. When she attempted sit down on the beach with her

pack, a man said: "You are practically sitting in a men's locker-room. You

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00118

don't make me feel comfortable".  Bell continued to sit there for another 10

mins because she refused to be intimated but decided to head over to the

fort because she saw another woman, Diana Reed, was taking photos.  Bell

was in the Rock Fort when Blakeman and Johnston arrived. It was obvious

from the start that Johnston and Blakeman were there with the intent to

harass Reed. Johnston was making rude comments to both her and Reed.

Blakeman was putting the GoPro in their faces. Johnston was chugging

multiple beers and it was early in the morning. Johnston asked her to help

him with his wetsuit. He said "Can you help me with this?" and handed her

the leg of his wetsuit. Johnston made moaning sounds when she took it like

he was having an orgasm.

    Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

with Chris Claypool and Kenneth Claypool. He observed Blakeman

harassing Chris and Ken. Wright was sitting on the outside waiting his turn

for waves. By regular surfing norms, he had priority. He caught a10- to 12-

foot-high wave and was up riding for several seconds. Alan Johnston

paddled the wrong way on this wave, dropped in on him going the wrong

way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

while going the wrong way violates normal surf etiquette. Johnston then

collided with Wright, and their leashes got tangled. After they surfaced from

the collision, Johnston then got close to Wright and yelled, "You had to

fucking take that wave, didn't you!" The next wave that came through then

broke Wrights leash plug and the board was carried into the rocks, which

destroyed a new surfboard. Wright had to swim in over rocks to get his

board and cut his hands on the rocks doing so. Wright is confident that

Johnston was attempted to purposefully injure him. What he did was

extremely dangerous.

    Wright has observed Blakeman on many occasions. Blakeman is easy

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Exhibit 3 - Page 00119

1  to identify because he rides a kneeboard and he is regularly filming visitors

2  on land with a camcorder. Wright believes his filming is an effort to intimidate

3  visitors. In the water, Wright has observed what appears to be Blakeman

4  directing other Bay Boys to sit close to visiting surfers. Wright has observed

5  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

6  the visitors, impede their movements, block their surfing, kick at them,

7  splash water at them, and dangerously drop in on them. In addition to

8  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

9  Charlie Ferrara, and David Mello engage in this activity. These incidents are

10  described in the declarations filed with Plaintiffs motion for class certification.

11      Ken Claypool has been harassed and filmed by Blakeman in an

12  attempt to intimidate him at Lunada Bay on multiple occasions. In January

13  2015, Claypool and his brother Chris Claypool along with Jordan Wright

14  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

15  water, including Blakeman who paddled over and threatened them. Claypool

16  observed Blakeman intentionally dropped in on Wright at least twice.

17      On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

18  and Jordan Wright. There was a photographer from the Los Angeles Times

19  that was there. Also in attendance was Cory Spencer and Diana Reed.

20  Spencer was there to watch the cars.  Blakeman was there filming in an

21  effort to intimidate visitors. Blakeman can be seen in one of the pictures

22  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

23  are informed and believe that there was a text message sent that day to

24  Papayans, Michael Theil and 11 other people stating that there were 5

25  kooks standing on the bluff taking pictures, including Taloa. The text states:

26  "Things could get ugly. We all need to surf." These incidents are described

27  in the declarations filed with Plaintiffs motion for class certification.

28      Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

-93-

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00120

1  Lunada Bay in January 2015.  There were about five locals in the water,
2  including Blakeman who paddled over and was yelling "Try and catch a
3  wave and see what happens. There is no fucking way you are getting a
4  wave. Just go in. Just go. You better not cut me off."  Blakeman looked
5  possessed or possibly on drugs. His behavior got more bizarre throughout
6  the morning. He seemed to be paddling for every wave that he could
7  physically push himself into, perhaps to make a point, but he was wiping out
8  a lot and falling down the face and tumbling across the rock reef. Blakeman
9  looked dangerous to himself. When Blakeman would actually catch a wave
10 in, he would paddle back to where Claypool and his brother were sitting, and
11 continue his insane rant. On one occasion, Blakeman came less than 12
12 inches from Claypool's ear and was screaming. It was so loud, Claypool had
13 to put his fingers in his ear to protect them from being damaged. Claypool is
14 a sound engineer and to put this in perspective, a rock concert creates about
15 120 decibels of noise - this was louder; a jet engine creates about 150
16 decibels. At one point Blakeman caught a wave and drew a line aiming right
17 at Claypool. Another Bay Boy tried the same thing and said "mother fucker"
18 as he narrowly missed Claypool's head. Claypool watched as Blakeman
19 intentionally dropped in on Jordan at least twice. It seemed obvious to
20 Claypool that Blakeman and the other Bay Boy wanted to make sure none of
21 them were having fun. Because this was getting dangerous, they decided to
22 leave.
23        When Claypool and his brother got out of water, they saw people
24 gathering on top of the cliff. One person was videotaping them from the top
25 of the cliff; it was clear to Claypool that he was doing this to try and
26 intimidate them. The people were watching them from the cliff. It was
27 obvious that Blakeman engaged in a concerted effort with other Bay Boys to
28 obstruct his free passage and use in the customary manner of a public

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00121

1  space. It also seemed clear that Blakeman engaged in a concerted effort

2  with other Bay Boys to try and injure him. These incidents are described in

3  the declarations filed with Plaintiffs motion for class certification.

4       Jason Gersch. While observing the surf, Gersch was approached by

5  two local Bay Boys named Peter McCollum and Brant Blakeman. These

6  individuals made it known to Gersch that he could not surf there. These

7  incidents are described in the declarations filed with Plaintiffs motion for

8  class certification.

9       Plaintiffs are informed and believe and on that basis allege that

10  Defendant Blakeman and his attorneys are attempting to intimidate

11  witnesses in this case. On at least two occasions, an investigator hired by

12  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

13  attorneys. The investigator also showed up at the home of a reporter that

14  has not been listed as a witness.

15       The request is premature. Because Blakeman and the other

16  defendants are refusing to comply with their obligations to produce

17  documents under the federal rules and are impermissibly withholding

18  evidence and/or possibly spoliating evidence, we are not able to fully

19  respond to discovery requests which necessarily rely on our ability to fully

20  investigate the facts. As discovery is continuing, Spencer reserves the right

21  to update this response.

22

23

24

25

26

27

28

13002697.1  PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00122

1 | DATED: February 24, 2017          OTTEN LAW, PC

2

3

4                                           By: /s/ *Victor Otten*

5                                              VICTOR OTTEN
                                               KAVITA TEKCHANDANI
6                                              Attorneys for Plaintiffs
                                               CORY SPENCER, DIANA MILENA
7                                              REED, and COASTAL PROTECTION
                                               RANGERS, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00123

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**
*Spencer, et al. v. Lunada Bay Boys, et al.*
**U.S.D.C. for the Central District of California**
**Case No. 2:16-cv-02129-SJO (RAOx)**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is: 3620 Pacific Coast Highway, Suite 100, Torrance, CA 90505.

On February 24, 2017, I served the original or a true copy of the following document(s) described as:

**PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **February 24, 2017**, at Torrance, California.

/s/*Victor Otten*
Victor Otten

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00124

**SERVICE LIST**
*Spencer, et al. v. Lunada Bay Boys, et al.*
**U.S.D.C. for the Central District of California**
**Case No. 2:16-cv-02129-SJO (RAOx)**

| | |
|---|---|
| Robert T. Mackey, Esq.<br>Peter H. Crossin, Esq.<br>Richard P. Dieffenbach, Esq.<br>John P. Worgul, Esq.<br>VEATCH CARLSON, LLP<br>1055 Wilshire Blvd., 11th Floor<br>Los Angeles, CA 90017 | *(Attorneys for Defendant BRANT*<br>*BLAKEMAN)*<br>(served original) |
| Robert S. Cooper, Esq.<br>BUCHALTER NEMER, APC<br>1000 Wilshire Blvd., Suite 1500<br>Los Angeles, CA 90017 | *(Attorneys for Defendant BRANT*<br>*BLAKEMAN)*<br>(served true copy) |
| J. Patrick Carey, Esq.<br>LAW OFFICES OF<br> J. PATRICK CAREY<br>1230 Rosecrans Ave., Suite 300<br>Manhattan Beach, CA 90266 | *(Attorney for Defendant ALAN*<br>*JOHNSTON a/k/a JALIAN*<br>*JOHNSTON)*<br>(served true copy) |
| Peter T. Haven, Esq.<br>HAVEN LAW<br>1230 Rosecrans Ave., Suite 300<br>Manhattan Beach, CA 90266 | *(Attorney for Defendant MICHAEL*<br>*RAY PAPAYANS)*<br>(served true copy) |
| Dana Alden Fox, Esq.<br>Edward E. Ward, Jr., Esq.<br>Eric Y. Kizirian, Esq.<br>Tera Lutz, Esq.<br>LEWIS BRISBOIS<br> BISGAARD & SMITH LLP<br>633 W. 5th Street, Suite 4000<br>Los Angeles, CA 90071 | *(Attorneys for Defendant SANG LEE)*<br>(served true copy) |
| Daniel M. Crowley, Esq.<br>BOOTH, MITCHEL &<br> STRANGE LLP<br>707 Wilshire Blvd., Suite 4450<br>Los Angeles, CA 90017 | *(Attorneys for Defendant SANG LEE)*<br>(served true copy) |
| Mark C. Fields, Esq.<br>LAW OFFICES OF<br> MARK C. FIELDS, APC<br>333 South Hope Street, 35th Floor<br>Los Angeles, CA 90071 | *(Attorney for Defendant ANGELO*<br>*FERRARA and Defendant N. F.*<br>*appearing through Guardian Ad*<br>*Litem, Leonora Ferrara)*<br>(served true copy) |

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY
DEFENDANT BLAKE BLAKEMAN

13002697.1

Exhibit 3 - Page 00125

1  Thomas M. Phillip, Esq.                    *(Attorneys for Defendant ANGELO*
2  Aaron G. Miller, Esq.                      *FERRARA)*
   THE PHILLIPS FIRM                          (served true copy)
3  800 Wilshire Blvd., Suite 1550
   Los Angeles, CA  90017

4  Patrick Au, Esq.                           *(Attorneys for Defendants FRANK*
5  Laura L. Bell, Esq.                        *FERRARA and CHARLIE FERRARA)*
   BREMER WHYTE                               (served true copy)
6    BROWN & O'MEARA, LLP
   21271 Burbank Blvd., Suite 110
7  Woodland Hills, CA  91367

8  Edwin J. Richards, Esq.                    *(Attorneys for Defendants CITY OF*
   Antoinette P. Hewitt, Esq.                 *PALOS VERDES and CHIEF OF*
9  Rebecca L. Wilson, Esq.                    *POLICE JEFF KEPLEY)*
   Jacob Song, Esq.                           (served true copy)
10 Christopher D. Glos, Esq.
   KUTAK ROCK LLP
11 5 Park Plaza, Suite 1500
   Irvine, CA  92614-8595

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13002697.1    PLAINTIFF COREY SPENCER (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Exhibit 3 - Page 00126

## <u>VERIFICATION</u>

1

2      I, Cory Spencer, have read PLAINTIFF CORY SPENCER'S

3  RESPONSE TO INTERROGATORIES, SET ONE, PROPOUNDED BY

4  DEFENDANT BRANT BLAKEMAN and know its contents.

5      I am a party to this action and I make this verification for that reason.  I

6  am informed and believe and on that ground allege that the matters stated in

7  the foregoing document are true.

8      I declare under penalty of perjury under the laws of the State of

9  California that the foregoing is true and correct.

10     Executed on February 24, 2016, in _____TORRANCE_____,

11  California.

12

13

14     _____

15              CORY SPENCER

16

17

18

19

20

21

22

23

24

25

26

27

28