EXHIBIT "4"

HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
CAROLINE LEE, SBN 293297
clee@hansonbridgett.com
JENNIFER ANIKO FOLDVARY, SBN 292216
jfoldvary@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone: (916) 442-3333
Facsimile:  (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone: (310) 378-8533
Facsimile:  (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**PLAINTIFF DIANA MILENA REED'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN** |

| | |
|---|---|
| 1 | Plaintiffs, |
| 2 | |
| 3 | v. |
| 4 | LUNADA BAY BOYS; THE |
| 5 | INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but |
| 6 | not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON |
| 7 | AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, |
| 8 | ANGELO FERRARA, FRANK |
| 9 | FERRARA, CHARLIE FERRARA, |
| 10 | and N. F.; CITY OF PALOS VERDES ESTATES; CHIEF OF |
| 11 | POLICE JEFF KEPLEY, in his |
| 12 | representative capacity; and DOES 1-10, |
| 13 | |
| 14 | Defendants. |

Complaint Filed:     March 29, 2016
Trial Date:             November 7, 2017

PROPOUNDING PARTY:      Defendant BRANT BLAKEMAN

RESPONDING PARTY:       Plaintiff DIANA MILENA REED

SET NO.:                SUPPLEMENTAL

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff DIANA MILENA REED ("Responding Party") hereby submits these supplemental objections and responses to Interrogatories, Set One, propounded by Defendant BRANT BLAKEMAN ("Propounding Party").

**PRELIMINARY STATEMENT**

Nothing in this response should be construed as an admission by Responding Party with respect to the admissibility or relevance of any fact, or of the truth or accuracy of any characterization or statement of any kind contained in Propounding Party's Interrogatories. Responding Party has not

1  completed its investigation of the facts relating to this case, its discovery or

2  its preparation for trial. All responses and objections contained herein are

3  based only upon information that is presently available to and specifically

4  known by Responding Party. It is anticipated that further discovery,

5  independent investigation, legal research and analysis will supply additional

6  facts and add meaning to known facts, as well as establish entirely new

7  factual conclusions and legal contentions, all of which may lead to

8  substantial additions to, changes in and variations from the responses set

9  forth herein. The following objections and responses are made without

10  prejudice to Responding Party's right to produce at trial, or otherwise,

11  evidence regarding any subsequently discovered information. Responding

12  Party accordingly reserves the right to modify and amend any and all

13  responses herein as research is completed and contentions are made.

14  **SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

15  **INTERROGATORY NO. 1:**

16  IDENTIFY ALL PERSONS that have knowledge of any facts that

17  support your contention that BRANT BLAKEMAN participated in any way in

18  the "commission of enumerated 'predicate crimes'" as alleged in paragraph

19  5 of the Complaint, and for each such PERSON identified state all facts you

20  contend are within that PERSON's knowledge.

21  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

22  Responding Party objects to this interrogatory as premature. Because

23  this interrogatory seeks or necessarily relies upon a contention, and

24  because this matter is in its early stages and pretrial discovery has only just

25  begun, Responding Party is unable to provide a complete response at this

26  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

27  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

28

13002592.1

1  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

2  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

3  interrogatory need not be answered until designated discovery is complete,

4  or until a pretrial conference or some other time.").

5      Responding Party further objects to this interrogatory as unduly

6  burdensome, harassing, and duplicative of information disclosed in

7  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

8  Propounding Party may look to Responding Party's Rule 26(a) disclosures

9  and supplemental disclosures for the information sought by this

10 interrogatory.  Moreover, Responding Party had the opportunity to depose

11 Ms. Reed on this topic.

12     Responding Party further objects to this interrogatory as compound.

13 This "interrogatory" contains multiple impermissible subparts, which

14 Propounding Party has propounded to circumvent the numerical limitations

15 on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

16     Responding Party further objects to this interrogatory on the grounds

17 that it seeks information that is outside of Responding Party's knowledge.

18     Responding Party further objects to the extent that this interrogatory

19 invades attorney-client privilege and/or violates the work product doctrine by

20 compelling Responding Party to disclose privileged communications and/or

21 litigation strategy.

22     Subject to and without waiver of the foregoing objections, Responding

23 Party responds as follows:

24     In addition to each defendant named in his individual capacity and

25 other persons identified in Plaintiffs' initial and Supplemental Disclosures,

26 and the evidence submitted in support of Plaintiffs motion for class

27 certification, Responding Party identifies the following individuals:

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN
Exhibit 4 - Page 00131

1    Diana Reed: believes that Blakeman engaged in a concerted effort

2    with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

3    and use in the customary manner of a public space.  Reed also believes that

4    Blakeman coordinated with other Bay Boys to harass and assault the

5    plaintiffs and the public when they were visiting Lunada Bay. Reed believes

6    that the conduct directed at the plaintiffs and others trying to surf Lunada

7    Bay is part of an agreement among Blakeman and the other Bay Boys,

8    which at a minimum, may be implied by the conduct of the parties and other

9    members of the Bay Boys. Reed believes that the Bay Boys concerted

10   efforts to stop the public from accessing the beach are documented in text

11   messages and emails some of which have been destroyed or are being

12   withheld by the Defendants in this case. For example, on February 5, 2016,

13   Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

14   Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

15   several others that said "There are 5 kooks standing on the bluff taking

16   pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles

17   Times photographer captured a pictured of Defendant Blakeman of the bluff

18   filming plaintiffs.  Plaintiffs believe that the Bay Boys take photos and/or

19   video tape people as a form of harassment and intimidation. Plaintiffs are

20   also informed and believe that a Lunada Bay local named Joshua Berstein

21   was taking pictures at the MLK 2014 paddle out. Plaintiffs are also informed

22   and believe that Berstein told several people after he photographed them,

23   "Now we know who you are." Plaintiffs believe that the conducted directed at

24   Reed by Blakeman and the individual Bay Boys is because she is a woman.

25   Plaintiff is informed and believes that there are numerous text messages

26   where the Bay Boys refer to Reed as a "bitch" and make sexual comments

27   about her.

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00132

1    The specific acts directed against Reed include but are not limited to
2    the following:

3    i)    Reed went to Lunada Bay on January 29, 2016 with Jordan
4    Wright.[1]  Reed had intended to surf at Lunada Bay that day because the
5    conditions were such that she felt comfortable surfing. Immediately after
6    they parked their car along the bluffs, the harassment began. Several men
7    drove by and circled around their car. This was the day that she and Wright
8    were harassed and intimidated by David Melo. Blakeman was recording
9    them on land with his camera. It was very disturbing to Reed and made her
10   feel very uncomfortable. Plaintiffs are informed and believe that this was
11   witnessed by John MacHarg.[2]

12   ii)    On or about February 12, 2016, The Los Angeles Times
13   published an article called "Bay Boys surfer gang cannot block access to
14   upscale beach, Coastal Commission says." Jordan Wright and Cory
15   Spencer are quoted in the article. Mr. Wright and a few others had planned
16   to surf Lunada Bay the following morning. Plaintiffs are informed and believe
17   that Defendants Johnston and Blakeman learned that Jordan Wright and
18   Diana Reed were going to Lunada Bay and planned to be there to harass
19   them. On February 12, 2016, Defendant Alan Johnston sent the following
20   text messages to an unknown recipient: "No fucking way Taloa is back this
21   year" and "If u really wanna be a bay boy we might meet help tomm."

22   iii)    On February 13, 2016, Reed returned to Lunada Bay with
23   Jordan Wright to watch him surf and take photographs. Prior to her arrival,
24   she contacted the Palos Verdes Estates Police and requested an escort

25

26   _____

27   [1] Jordan Wright is represented by Hanson Bridgett LLP and Otten Law PC.
28   [2] John McHarg is represented by Hanson Bridgett LLP and Otten Law PC.

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00133

1  from the bluffs to the beach. She was concerned about her safety given the

2  January 29, 2016 incident. She was told that the police were unavailable

3  and no officers were present when they arrived.

4      When Reed and Wright reached the beach, they encountered angry

5  locals who were yelling at them. Reed and Wright ignored the harassment

6  and Wright got into the water to surf and Reed made her way to the Rock

7  Fort where she planned to watch Wright and photograph him.

8      Approximately two hours after Reed had arrived at Lunada Bay, while

9  she was standing in the Rock Fort taking photos, Blakeman and defendant

10 Alan Johnston rushed into the fort and ran towards her in a hostile and

11 aggressive manner. It seemed that they had coordinated and orchestrated

12 the attack which completely caught Reed off guard. Blakeman was filming

13 Reed again, and at times, held his camera right in her face. It was

14 intimidating and harassing to Reed, and she feared for her safety.

15     Reed asked Blakeman and Johnston why they were filming her,

16 because it made her uncomfortable. Blakeman responded, "because I feel

17 like it." Johnston responded, "Because you're hot. Because you're fucking

18 sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

19 way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

20 fear, was unable to leave the Rock Fort as Blakeman and Johnston were

21 standing closest to the exit.

22     iv)    Plaintiffs are informed and believe that after the incident

23 Defendant Johnston started calling and/or texting other Lunada Bay locals to

24 check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

25 Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

26 informed and believe that later that day Johnston received a text from his

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00134

1  mother asking him "What happened at the bay?" Johnston replied "Nothing

2  happened really just couple of trolls they got nothing."

3      Reed further identifies the following individuals as having knowledge of

4  concerted efforts by the Bay Boys, including Blakeman:

5      Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

6  Bay. Almost instantly after they arrived at Lunada Bay, they started getting

7  harassed by Bay Boys. They were told that they couldn't surf there, and

8  Spencer was called a "kook," which is a derogatory surfing term. Spencer

9  was also told: "why don't you fucking go home, you fucking kook;" and was

10 asked, "how many other good places did you pass to come here?" These

11 are the same types of statements made by Defendant Sang Lee and others

12 that can be observed on the video published by the Guardian.[3]  These

13 taunts started while Spencer and Taloa were on the bluffs getting ready to

14 surf. One individual continued to heckle Spencer and Taloa on their way

15 down to the beach and into the water.

16      Blakeman was already in the water and began paddling around

17 Spencer and Taloa in a tight circle – staying just a few feet away from them.

18 There was no legitimate reason for this conduct. Reed believes that this is a

19 tactic used by the Bay Boys to harass people.[4]  Blakeman impeded

20 Spencer's movement in any direction and was intentionally blocking him

21 from catching any waves. It was clear to Spencer that Blakeman was not

22 there to surf that morning. Instead, his mission was to prevent Spencer and

23

24  _____

25 [3] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

26 [4] Plaintiffs are informed and believe that Defendant Papayans sent a text

27 message describing similar conduct: "We just had a kook out in the water

28 and me and Jack just sat on his ass."

13002592.1

Exhibit 4 - Page 00135

1  Taloa from surfing and to keep them from enjoying their time in the water,
2  the open space, the waves, and nature. This the type of concerted effort was
3  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep
4  people from surfing at Lunada Bay. In the approximately 90 minutes that
5  Spencer was in the water that day, Blakeman was focused on Spencer and
6  Taloa and continued to shadow their movements and sit uncomfortably
7  close to them. Spencer had never experienced anything like that before in
8  his life. It was bizarre but also incredibly frightening and disturbing. It
9  appeared to Spencer that Blakeman was coordinating his actions with a
10 group of guys who were standing in the Rock Fort, along with others in the
11 water. They were all talking to each other and it was clear they all knew
12 each other.

13      At one point while Spencer was in the water and was paddling west
14 out to the ocean, he saw a man surfing, coming in east towards the shore.
15 The Bay Boy ran over his hand/wrist that was holding his surfboard and one
16 of the fins on his surfboard sliced open his right wrist. Spencer has about a
17 half-inch scar from where this man ran him over. As soon as the Bay Boy
18 ran him over, he started berating Spencer, saying things like "what are you
19 fucking doing out here? I told you to go home. I should have run you over.
20 Why are you paddling in the sun glare where I can't see you?" The Bay Boy
21 was pretending that he didn't see Spencer but it was obvious that he did and
22 intentionally ran him over. With over 30 years of surfing experience, Spencer
23 knew that this collision was intentional on his part. Fearful of being further
24 injured at that point, and not wanting to get into an argument with him,
25 Spencer just paddled away. Spencer and Taloa caught one more wave after
26 that and then decided it was getting too dangerous to surf. More men started
27 showing up at the Rock Fort and Spencer and Taloa were growing
28

-9-                    Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1                                                      Exhibit 4 - Page 00136

1   increasingly fearful for their safety. Spencer was also bleeding and in pain.

2   These incidents are described in the declarations filed with Plaintiffs' motion

3   for class certification and the deposition of Spencer.

4       Christopher Taloa[5]: As set forth above, Taloa and Spencer went

5   surfing at Lunada Bay and were harassed by Blakeman. Taloa witnessed

6   Blakeman shadowing Spencer's movement in the water. Blakeman was in

7   the water with four or five other Lunada Bay Locals.  At one point, Blakeman

8   paddled toward Taloa, at which point Taloa told him that he was too close.

9   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

10  Taloa kept moving in the water, and Blakeman attempted to keep up with

11  him but was not in good enough shape to do so.

12      Jen Bell: The incident described above was witnessed by a woman

13  named Jen Bell who had gone to Lunada Bay that same day to photograph

14  a guy from Malibu. When she attempted sit down on the beach with her

15  pack, a man said: "You are practically sitting in a men's locker-room. You

16  don't make me feel comfortable."  Bell continued to sit there for another 10

17  minutes because she refused to be intimated but eventually decided to head

18  over to the fort because she saw another woman, Diana Reed, was taking

19  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

20  was obvious from the start that Johnston and Blakeman were there with the

21  intent to harass Reed. Johnston was making rude comments to both her and

22  Reed. Blakeman was putting the GoPro in their faces. Johnston was

23  chugging multiple beers and it was early in the morning. Johnston asked her

24  to help him with his wetsuit. He said "Can you help me with this?" and

25  handed her the leg of his wetsuit. Johnston made moaning sounds when

26  _____

27  [5] Mr. Taloa is represented by Hanson Bridgett LLP and Otten Law PC.

28  (footnote continued)

-10-

13002592.1

1    she took it like he was having an orgasm.

2        Jordan Wright[6]: Wright attempted to surf Lunada Bay in January 2015

3    with Chris Claypool and Kenneth Claypool. He observed Blakeman

4    harassing Chris and Ken. Wright was sitting on the outside waiting his turn

5    for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

6    foot-high wave and was up riding for several seconds. Alan Johnston

7    paddled the wrong way on this wave, dropped in on him going the wrong

8    way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

9    while going the wrong way violates normal surf etiquette. Johnston then

10   collided with Wright, and their leashes got tangled. After they surfaced from

11   the collision, Johnston then got close to Wright and yelled, "You had to

12   fucking take that wave, didn't you!" The next wave that came through then

13   broke Wright's leash plug and the board was carried into the rocks, which

14   destroyed a new surfboard. Wright had to swim in over rocks to get his

15   board and cut his hands on the rocks doing so. Wright is confident that

16   Johnston attempted to purposefully injure him. What he did was extremely

17   dangerous.

18       Wright has observed Blakeman on many occasions. Blakeman is easy

19   to identify because he rides a kneeboard and he is regularly filming visitors

20   on land with a camcorder. Wright believes his filming is an effort to intimidate

21   visitors. In the water, Wright has observed what appears to be Blakeman

22   directing other Bay Boys to sit close to visiting surfers. Wright has observed

23   Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

24   the visitors, impede their movements, block their surfing, kick at them,

25   splash water at them, and dangerously drop in on them. In addition to

26   _____

27   [6] Mr. Wright, Chris Claypool and Ken Claypool are represented by Hanson
28   Bridgett LLP and Otten Law PC.

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00138

1 | Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

2 | Charlie Ferrara, and David Melo engage in this activity. These incidents are

3 | described in the declarations filed with Plaintiffs' motion for class

4 | certification.

5 |  Ken Claypool: has been harassed and filmed by Blakeman in an

6 | attempt to intimidate him at Lunada Bay on multiple occasions. In January

7 | 2015, Claypool and his brother Chris Claypool along with Jordan Wright

8 | went to surf Lunada Bay.  There were about five Lunada Bay locals in the

9 | water, including Blakeman who paddled over and threatened them. Claypool

10 | observed Blakeman intentionally drop in on Wright at least twice.

11 |  On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

12 | and Jordan Wright. There was a photographer from the Los Angeles Times

13 | that was there. Also in attendance was Cory Spencer and Diana Reed.

14 | Spencer was there to watch the cars.  Blakeman was there filming in an

15 | effort to intimidate visitors. Blakeman can be seen in one of the pictures

16 | taken by the photographer. Also present was Defendant Papayans. Plaintiffs

17 | are informed and believe that there was a text message sent that day to

18 | Papayans, Michael Theil and 11 other people stating that there were 5

19 | kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

20 | informed that the text states: "Things could get ugly." These incidents are

21 | described in the declarations filed with Plaintiffs' motion for class

22 | certification.

23 |  Chris Claypool: he and his brother Ken and Jordan Wright attempted

24 | to surf Lunada Bay in January 2015.  There were about five locals in the

25 | water, including Blakeman who paddled over and was yelling, "Try and catch

26 | a wave and see what happens. There is no fucking way you are getting a

27 | wave. Just go in. Just go. You better not cut me off."  Blakeman looked

28 |

-12-

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00139

1   possessed or possibly on drugs. His behavior got more bizarre throughout

2   the morning. He seemed to be paddling for every wave that he could

3   physically push himself into, perhaps to make a point, but he was wiping out

4   a lot and falling down the face and tumbling across the rock reef. Blakeman

5   looked dangerous to himself. When Blakeman would actually catch a wave

6   in, he would paddle back to where Claypool and his brother were sitting, and

7   continue his insane rant. On one occasion, Blakeman came less than 12

8   inches from Claypool's ear and was screaming. It was so loud, Claypool had

9   to put his fingers in his ear to protect them from being damaged. Claypool is

10  a sound engineer and to put this in perspective, a rock concert creates about

11  120 decibels of noise - this was louder; a jet engine creates about 150

12  decibels. At one point Blakeman caught a wave and drew a line aiming right

13  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

14  as he narrowly missed Claypool's head. Claypool watched as Blakeman

15  intentionally dropped in on Jordan at least twice. It seemed obvious to

16  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

17  them were having fun. Because of the danger, they decided to leave.

18         When Claypool and his brother got out of water, they saw people

19  gathering on top of the cliff. One person was videotaping them from the top

20  of the cliff; it was clear to Claypool that he was doing this to try and

21  intimidate them. The people were watching them from the cliff. It was

22  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

23  obstruct his free passage and use in the customary manner of a public

24  space. It also seemed clear that Blakeman engaged in a concerted effort

25  with other Bay Boys to try and injure him. These incidents are described in

26  the declarations filed with Plaintiffs' motion for class certification.

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

Exhibit 4 - Page 00140

1     Jason Gersch:[7] While observing the surf, Gersch was approached by

2  two local Bay Boys named Peter McCollum and Brant Blakeman. These

3  individuals made it known to Gersch that he could not surf there. These

4  incidents are described in the declarations filed with Plaintiffs' motion for

5  class certification.

6     Plaintiffs are informed and believe and on that basis allege that

7  Defendant Blakeman and his attorneys are attempting to intimidate

8  witnesses in this case. On at least two occasions, an investigator hired by

9  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

10  attorneys. The investigator also showed up at the home of a reporter that

11  has not been listed as a witness.

12     The request is premature. Because Blakeman and the other

13  defendants are refusing to comply with their obligations to produce

14  documents under the federal rules and are impermissibly withholding

15  evidence and/or possibly spoilating evidence, we are not able to fully

16  respond to discovery requests which necessarily rely on our ability to fully

17  investigate the facts. As discovery is continuing, Reed reserves the right to

18  update this response.

19  **INTERROGATORY NO. 2:**

20     IDENTIFY ALL PERSONS that have knowledge of any facts that

21  support your contention in paragraph 7 of the Complaint that BRANT

22  BLAKEMAN "is responsible in some manner for the Bane Act violations and

23  public nuisance described in the Complaint" and for each such PERSON

24  identified state all facts you contend are within that PERSON's knowledge.

25

26

27

28  [7] Mr. Gersch is represented by Hanson Bridgett LLP and Otten Law PC.

-14-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN
Exhibit 4 - Page 00141

13002592.1

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*, 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

Responding Party further objects to this interrogatory as unduly burdensome, harassing, and duplicative of information disclosed in Responding Party's Rule 26(a) disclosures and supplemental disclosures. Propounding Party may look to Responding Party's Rule 26(a) disclosures and supplemental disclosures for the information sought by this interrogatory.  Moreover, Responding Party had the opportunity to depose Ms. Reed on this topic.

Responding Party further objects to this interrogatory as compound. This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by

-15-

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00142

1  compelling Responding Party to disclose privileged communications and/or

2  litigation strategy.

3       Subject to and without waiver of the foregoing objections, Responding

4  Party responds as follows:

5       In addition to each defendant named in his individual capacity and

6  other persons identified in Plaintiff's Initial and Supplemental Disclosures,

7  and the evidence submitted in support of Plaintiffs' motion for class

8  certification, Responding Party identifies the following individuals:

9       Diana Reed: believes that Blakeman engaged in a concerted effort

10  with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

11  and use in the customary manner of a public space.  Reed also believes that

12  Blakeman coordinated with other Bay Boys to harass and assault the

13  plaintiffs and the public when they were visiting Lunada Bay. Reed believes

14  that the conduct directed at the plaintiffs and others trying to surf Lunada

15  Bay is part of an agreement among Blakeman and the other Bay Boys,

16  which at a minimum, may be implied by the conduct of the parties and other

17  members of the Bay Boys. Reed believes that the Bay Boys concerted

18  efforts to stop the public from accessing the beach are documented in text

19  messages and emails some of which have been destroyed or are being

20  withheld by the Defendants in this case. For example, on February 5, 2016,

21  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

22  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

23  several others that said "There are 5 kooks standing on the bluff taking

24  pictures...I think that same Taloa guy. Things could get ugly.." A Los

25  Angeles Times photographer captured a pictured of Defendant Blakeman of

26  the bluff filming plaintiffs. Plaintiffs believe that the Bay Boys take photos

27  and/or video tape people as a form of harassment and intimidation. For

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00143

1  example, plaintiffs are also informed and believe that a Lunada Bay local

2  named Joshua Berstein was taking pictures at the MLK 2014 paddle out.

3  Plaintiffs are also informed and believe that Berstein told several people

4  after he photographed them, "Now we know who you are." Plaintiffs believe

5  that the conducted directed at Reed by Blakeman and the individual Bay

6  Boys is because she is a woman. Plaintiff is informed and believes that there

7  are numerous text messages where the Bay Boys refer to Reed as a "bitch"

8  and make sexual comments about her.

9       The specific acts directed against Reed include but are not limited to

10  the following:

11       i)    Reed went to Lunada Bay on January 29, 2016 with Jordan

12  Wright.  Reed had intended to surf at Lunada Bay that day because the

13  conditions were such that she felt comfortable surfing immediately after they

14  parked their car along the bluffs, the harassment began. Several men drove

15  by and circled around their car. This was the day that she and Wright were

16  harassed and intimidated by David Melo. Blakeman was recording them on

17  land with his camera. It was very disturbing to Reed and made her feel very

18  uncomfortable. Plaintiffs are informed and believe that this was witnessed by

19  John MacHarg.

20       ii)   On or about February 12, 2016, The Los Angeles Times

21  published an article called  "Bay Boys surfer gang cannot block access to

22  upscale beach, Coastal Commission says." Jordan Wright and Cory

23  Spencer are quoted in the article. Mr. Wright and a few others had planned

24  to surf Lunada Bay the following morning. Plaintiffs are informed and believe

25  that Defendants Johnston and Blakeman learned that Jordan Wright and

26  Diana Reed were going to Lunada Bay and planned to be there to harass

27  them. On February 12, 2016, Defendant Alan Johnston sent the following

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00144

1  text messages to an unknown recipient: "No fucking way Taloa is back this

2  year" and "If u really wanna be a bay boy we might meet help tomm."

3       iii)    On February 13, 2016, Reed returned to Lunada Bay with

4  Jordan Wright to watch him surf and take photographs. Prior to her arrival,

5  she contacted the Palos Verdes Estates Police and requested an escort

6  from the bluffs to the beach. She was concerned about her safety given the

7  January 29, 2016 incident. She was told that the police were unavailable

8  and no officers were present when they arrived.

9       When Reed and Wright reached the beach, they encountered angry

10 locals who were yelling at them. Reed and Wright ignored the harassment

11 and Wright got into the water to surf and Reed made her way to the Rock

12 Fort where she planned to watch Wright and photograph him.

13      Approximately two hours after Reed had arrived at Lunada Bay, while

14 she was standing in the Rock Fort taking photos, Blakeman and defendant

15 Alan Johnston rushed into the fort and ran towards her in a hostile and

16 aggressive manner. It seemed that they had coordinated and orchestrated

17 the attack which completely caught Reed off guard. Blakeman was filming

18 Reed again, and at times, held his camera right in her face. It was

19 intimidating and harassing to Reed, and she feared for her safety.

20      Reed asked Blakeman and Johnston why they were filming her,

21 because it made her uncomfortable. Blakeman responded, "because I feel

22 like it." Johnston responded, "because you're hot. Because you're fucking

23 sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

24 way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

25 fear, was unable to leave the Rock Fort as Blakeman and Johnston were

26 standing closest to the exit.

27 ///

28

Case No. 2:16-cv-02129-SJO (RAOx)
13002592.1     PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN
Exhibit 4 - Page 00145

1

2      iv)      Plaintiffs are informed and believe that after the incident

3  Defendant Johnston started calling and/or texting other Lunada Bay locals to

4  check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

5  Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

6  informed and believe that later that day Johnston received a text from his

7  mother asking him "What happened at the bay?" Johnston replied "Nothing

8  happened really just couple of trolls they got nothing."

9      Reed further identifies the following individuals as having knowledge of

10  concerted efforts by the Bay Boys, including Blakeman:

11      Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

12  Bay. Almost instantly after they arrived at Lunada Bay, they started getting

13  harassed by Bay Boys. They were told that they couldn't surf there, and

14  Spencer was called a "kook," which is a derogatory surfing term. Spencer

15  was also told: "why don't you fucking go home, you fucking kook;" and  was

16  asked, "how many other good places did you pass to come here?" These

17  are the same types of statements made by Defendant Sang Lee and others

18  that can be observed on the video published by the Guardian.[8]  These

19  taunts started while Spencer and Taloa were on the bluffs getting ready to

20  surf. One individual continued to heckle Spencer and Taloa on their way

21  down to the beach and into the water.

22      Blakeman was already in the water and began paddling around

23  Spencer and Taloa in a tight circle – staying just a few feet away from them.

24  There was no legitimate reason for this conduct. Reed believes that this is a

25  _____

26  [8] https://www.theguardian.com/travel/video/2015/may/18/california-surf-

27  wars-lunada-bay-localism-video.

28  (footnote continued)

-19-                    Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00146

13002592.1

1  tactic used by the Bay Boys to harass people.[9]  Blakeman impeded
2  Spencer's movement in any direction and was intentionally blocking him
3  from catching any waves. It was clear to Spencer that Blakeman was not
4  there to surf that morning. Instead, his mission was to prevent Spencer and
5  Taloa from surfing and to keep them from enjoying their time in the water,
6  the open space, the waves, and nature. This the type of concerted effort was
7  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep
8  people from surfing at Lunada Bay. In the approximately 90 minutes that
9  Spencer was in the water that day, Blakeman was focused on Spencer and
10 Taloa and continued to shadow their movements and sit uncomfortably
11 close to them. Spencer had never experienced anything like that before in
12 his life. It was bizarre but also incredibly frightening and disturbing. It
13 appeared to Spencer that Blakeman was coordinating his actions with a
14 group of guys who were standing in the Rock Fort, along with others in the
15 water. They were all talking to each other and it was clear they all knew
16 each other.

17       At one point while Spencer was in the water and was paddling west
18 out to the ocean, he saw a man surfing, coming in east towards the shore.
19 The Bay Boy ran over his hand/wrist that was holding his surfboard and one
20 of the fins on his surfboard sliced open his right wrist. Spencer has about a
21 half-inch scar from where this man ran him over. As soon as the Bay Boy
22 ran him over, he started berating Spencer, saying things like "what are you
23 fucking doing out here? I told you to go home. I should have run you over.
24 Why are you paddling in the sun glare where I can't see you?" The Bay Boy
25
26 _____
27 [9] Plaintiffs are informed and believe that Defendant Papayans sent a text
   message describing similar conduct: "We just had a kook out in the water
28 and me and Jack just sat on his ass."

-20-                                  Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1  was pretending that he didn't see Spencer but it was obvious that he did and

2  intentionally ran him over. With over 30 years of surfing experience, Spencer

3  knew that this collision was intentional on his part. Fearful of being further

4  injured at that point, and not wanting to get into an argument with him,

5  Spencer just paddled away. Spencer and Taloa caught one more wave after

6  that and then decided it was getting too dangerous to surf. More men started

7  showing up at the Rock Fort and Spencer and Taloa were growing

8  increasingly fearful for their safety. Spencer was also bleeding and in pain.

9  These incidents are described in the declarations filed with Plaintiffs' motion

10  for class certification and the deposition of Spencer.

11      Christopher Taloa: As set forth above, Taloa and Spencer went surfing

12  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

13  shadowing Spencer's movement in the water. Blakeman was in the water

14  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

15  toward Taloa, at which point Taloa told him that he was too close.

16  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

17  Taloa kept moving in the water, and Blakeman attempted to keep up with

18  him but was not in good enough shape to do so.

19      Jen Bell: The incident described above was witnessed by a woman

20  named Jen Bell who had gone to Lunada Bay that same day to photograph

21  a guy from Malibu. When she attempted sit down on the beach with her

22  pack, a man said: "You are practically sitting in a men's locker-room. You

23  don't make me feel comfortable."  Bell continued to sit there for another 10

24  minutes because she refused to be intimated but eventually decided to head

25  over to the fort because she saw another woman, Diana Reed, was taking

26  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

27  was obvious from the start that Johnston and Blakeman were there with the

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00148

13002592.1

1   intent to harass Reed. Johnston was making rude comments to both her and
2   Reed. Blakeman was putting the GoPro in their faces. Johnston was
3   chugging multiple beers and it was early in the morning. Johnston asked her
4   to help him with his wetsuit. He said "Can you help me with this?" and
5   handed her the leg of his wetsuit. Johnston made moaning sounds when
6   she took it like he was having an orgasm.

7        Jordan Wright: Wright attempted to surf Lunada Bay in January 2015
8   with Chris Claypool and Kenneth Claypool. He observed Blakeman
9   harassing Chris and Ken. Wright was sitting on the outside waiting his turn
10  for waves. By regular surfing norms, he had priority. He caught a 10- to 12-
11  foot-high wave and was up riding for several seconds. Alan Johnston
12  paddled the wrong way on this wave, dropped in on him going the wrong
13  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
14  while going the wrong way violates normal surf etiquette. Johnston then
15  collided with Wright, and their leashes got tangled. After they surfaced from
16  the collision, Johnston then got close to Wright and yelled, "You had to
17  fucking take that wave, didn't you!" The next wave that came through then
18  broke Wright's leash plug and the board was carried into the rocks, which
19  destroyed a new surfboard. Wright had to swim in over rocks to get his
20  board and cut his hands on the rocks doing so. Wright is confident that
21  Johnston attempted to purposefully injure him. What he did was extremely
22  dangerous.

23       Wright has observed Blakeman on many occasions. Blakeman is easy
24  to identify because he rides a kneeboard and he is regularly filming visitors
25  on land with a camcorder. Wright believes his filming is an effort to intimidate
26  visitors. In the water, Wright has observed what appears to be Blakeman
27  directing other Bay Boys to sit close to visiting surfers. Wright has observed

28

-22-

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00149

1  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

2  the visitors, impede their movements, block their surfing, kick at them,

3  splash water at them, and dangerously drop in on them. In addition to

4  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

5  Charlie Ferrara, and David Melo engage in this activity. These incidents are

6  described in the declarations filed with Plaintiffs' motion for class

7  certification.

8      Ken Claypool: has been harassed and filmed by Blakeman in an

9  attempt to intimidate him at Lunada Bay on multiple occasions. In January

10  2015, Claypool and his brother Chris Claypool along with Jordan Wright

11  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

12  water, including Blakeman who paddled over and threatened them. Claypool

13  observed Blakeman intentionally drop in on Wright at least twice.

14      On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

15  and Jordan Wright. There was a photographer from the Los Angeles Times

16  that was there. Also in attendance was Cory Spencer and Diana Reed.

17  Spencer was there to watch the cars.  Blakeman was there filming in an

18  effort to intimidate visitors. Blakeman can be seen in one of the pictures

19  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

20  are informed and believe that there was a text message sent that day to

21  Papayans, Michael Theil and 11 other people stating that there were 5

22  kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

23  informed that the text states: "Things could get ugly. We all need to surf."

24  These incidents are described in the declarations filed with Plaintiffs' motion

25  for class certification.

26      Chris Claypool: he and his brother Ken and Jordan Wright attempted

27  to surf Lunada Bay in January 2015.  There were about five locals in the

28

-23-

1   water, including Blakeman who paddled over and was yelling, "Try and catch

2   a wave and see what happens. There is no fucking way you are getting a

3   wave. Just go in. Just go. You better not cut me off."  Blakeman looked

4   possessed or possibly on drugs. His behavior got more bizarre throughout

5   the morning. He seemed to be paddling for every wave that he could

6   physically push himself into, perhaps to make a point, but he was wiping out

7   a lot and falling down the face and tumbling across the rock reef. Blakeman

8   looked dangerous to himself. When Blakeman would actually catch a wave

9   in, he would paddle back to where Claypool and his brother were sitting, and

10   continue his insane rant. On one occasion, Blakeman came less than 12

11   inches from Claypool's ear and was screaming. It was so loud, Claypool had

12   to put his fingers in his ear to protect them from being damaged. Claypool is

13   a sound engineer and to put this in perspective, a rock concert creates about

14   120 decibels of noise - this was louder; a jet engine creates about 150

15   decibels. At one point Blakeman caught a wave and drew a line aiming right

16   at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

17   as he narrowly missed Claypool's head. Claypool watched as Blakeman

18   intentionally dropped in on Jordan at least twice. It seemed obvious to

19   Claypool that Blakeman and the other Bay Boy wanted to make sure none of

20   them were having fun. Because of the danger, they decided to leave.

21        When Claypool and his brother got out of water, they saw people

22   gathering on top of the cliff. One person was videotaping them from the top

23   of the cliff; it was clear to Claypool that he was doing this to try and

24   intimidate them. The people were watching them from the cliff. It was

25   obvious that Blakeman engaged in a concerted effort with other Bay Boys to

26   obstruct his free passage and use in the customary manner of a public

27   space. It also seemed clear that Blakeman engaged in a concerted effort

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00151

1   with other Bay Boys to try and injure him. These incidents are described in

2   the declarations filed with Plaintiffs' motion for class certification.

3         Jason Gersch: While observing the surf, Gersch was approached by

4   two local Bay Boys named Peter McCollum and Brant Blakeman. These

5   individuals made it known to Gersch that he could not surf there. These

6   incidents are described in the declarations filed with Plaintiffs' motion for

7   class certification.

8         Plaintiffs are informed and believe and on that basis allege that

9   Defendant Blakeman and his attorneys are attempting to intimidate

10  witnesses in this case. On at least two occasions, an investigator hired by

11  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

12  attorneys. The investigator also showed up at the home of a reporter that

13  has not been listed as a witness.

14        The request is premature. Because Blakeman and the other

15  defendants are refusing to comply with their obligations to produce

16  documents under the federal rules and are impermissibly withholding

17  evidence and/or possibly spoliating evidence, we are not able to fully

18  respond to discovery requests which necessarily rely on our ability to fully

19  investigate the facts. As discovery is continuing, Reed reserves the right to

20  update this response.

21  **INTERROGATORY NO. 3:**

22        IDENTIFY ALL PERSONS that have knowledge of any facts that

23  support your contention in paragraph 18 of the Complaint that BRANT

24  BLAKEMAN "sell[s] market[s] and use[s] illegal controlled substances from

25  the Lunada Bay Bluffs and the Rock Fort" and for each such PERSON

26  identified state all facts you contend are within the PERSON's knowledge.

27

28

-25-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00152

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**:

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*, 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

Responding Party further objects to this interrogatory as unduly burdensome, harassing, and duplicative of information disclosed in Responding Party's Rule 26(a) disclosures and supplemental disclosures. Propounding Party may look to Responding Party's Rule 26(a) disclosures and supplemental disclosures for the information sought by this interrogatory.  Moreover, Responding Party had the opportunity to depose Ms. Reed on this topic.

Responding Party further objects to this interrogatory as compound. This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00153

1  compelling Responding Party to disclose privileged communications and/or
2  litigation strategy.

3         Subject to and without waiver of the foregoing objections, Responding
4  Party responds as follows:

5         In addition to each defendant named in his individual capacity and
6  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,
7  and the evidence submitted in support of Plaintiffs' motion for class
8  certification, Responding party identifies the following individuals: There is a
9  copy of a Group MMS included in Officer Report for Incident 16-02164. In
10  that report an individual who identifies  himself as "the Weasel" makes a
11  statement about Blakeman and meth. The Weasel also states: "Ferrara
12  family is nothing put a bunch of drug addict losers. He's main shaper and
13  good surfer kids are losers and his brothers kids are all losers One of the
14  Ferrara kids [sic] friends beat up a Persian liquor store guy… One time the
15  Ferrara kid talk shit to me one day I said I used to smoke crack with your
16  dad Angelo and dead uncle Sal I have all the dirt from 1979 up. The Weasel
17  then states; "Tell your bros to say even sells weed he lives on  10th Street in
18  San Pedro." Plaintiffs are informed and believe that the word "even" is a typo
19  which is supposed to be Evan and referring to Bay Boy Evan Levy. Plaintiffs
20  are informed and believe and thereon allege that the Weasel might be an
21  individual named Glen Morris. (424) 263-5152.

22         The request is premature. Because Blakeman and the other
23  defendants are refusing to comply with their obligations to produce
24  documents under the federal rules and are impermissibly withholding
25  evidence and/or possibly spoliating evidence, we are not able to fully
26  respond to discovery requests which necessarily rely on our ability to fully
27  investigate the facts. As discovery is continuing, Reed reserves the right to
28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00154

1  update this response.

2  **INTERROGATORY NO. 4:**

3       IDENTIFY ALL PERSONS that have knowledge of any facts that

4  support your contention in paragraph 18 of the Complaint that BRANT

5  BLAKEMAN "impede[d] boat traffic" at any time, and for each such PERSON

6  identified state all facts you contend are within that PERSON's knowledge.

7  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

8       Responding Party objects to this interrogatory as premature. Because

9  this interrogatory seeks or necessarily relies upon a contention, and

10  because this matter is in its early stages and pretrial discovery has only just

11  begun, Responding Party is unable to provide a complete response at this

12  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

13  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

14  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

15  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

16  interrogatory need not be answered until designated discovery is complete,

17  or until a pretrial conference or some other time.").

18       Responding Party further objects to this interrogatory as unduly

19  burdensome, harassing, and duplicative of information disclosed in

20  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

21  Propounding Party may look to Responding Party's Rule 26(a) disclosures

22  and supplemental disclosures for the information sought by this

23  interrogatory.  Moreover, Responding Party had the opportunity to depose

24  Ms. Reed on this topic.

25       Responding Party further objects to this interrogatory as compound.

26  This "interrogatory" contains multiple impermissible subparts, which

27  Propounding Party has propounded in an effort to circumvent the numerical

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00155

1  limitations on interrogatories provided by Federal Rule of Civil Procedure

2  33(a)(1).

3       Responding Party further objects to this interrogatory on the grounds

4  that it seeks information that is outside of Responding Party's knowledge.

5       Responding Party further objects to the extent that this interrogatory

6  invades attorney-client privilege and/or violates the work product doctrine by

7  compelling Responding Party to disclose privileged communications and/or

8  litigation strategy.  Responding Party will not provide any such information.

9       Subject to and without waiver of the foregoing objections,  Responding

10 Party responds as follows:

11      In addition to each defendant named in his individual capacity and

12 other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

13 and the evidence submitted in support of Plaintiffs' motion for class

14 certification, Responding Party identifies the following individuals: Jordan

15 Wright, Ken Claypool.

16      The request is premature. Because Blakeman and the other

17 defendants are refusing to comply with their obligations to produce

18 documents under the federal rules and are impermissibly withholding

19 evidence and/or possibly spoliating evidence, we are not able to fully

20 respond to discovery requests which necessarily rely on our ability to fully

21 investigate the facts. As discovery is continuing, Reed reserves the right to

22 update this response.

23 **INTERROGATORY NO. 5:**

24      IDENTIFY ALL PERSONS that have knowledge of any facts that

25 support your contention in paragraph 18 of the Complaint that BRANT

26 BLAKEMAN "dangerously disregard[ed] surfing rules" at any time, and for

27 each such PERSON identified state all facts you contend are within that

28

-29-

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00156

1  PERSON's knowledge.

2  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

3      Responding Party objects to this interrogatory as premature. Because

4  this interrogatory seeks or necessarily relies upon a contention, and

5  because this matter is in its early stages and pretrial discovery has only just

6  begun, Responding Party is unable to provide a complete response at this

7  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

8  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

9  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

10  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

11  interrogatory need not be answered until designated discovery is complete,

12  or until a pretrial conference or some other time.").

13      Responding Party further objects to this interrogatory as unduly

14  burdensome, harassing, and duplicative of information disclosed in

15  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

16  Propounding Party may look to Responding Party's Rule 26(a) disclosures

17  and supplemental disclosures for the information sought by this

18  interrogatory.  Moreover, Responding Party had the opportunity to depose

19  Ms. Reed on this topic.

20      Responding Party further objects to this interrogatory as compound.

21  This "interrogatory" contains multiple impermissible subparts, which

22  Propounding Party has propounded in an effort to circumvent the numerical

23  limitations on interrogatories provided by Federal Rule of Civil Procedure

24  33(a)(1).

25      Responding Party further objects to this interrogatory on the grounds

26  that it seeks information that is outside of Responding Party's knowledge.

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00157

1      Responding Party further objects to the extent that this interrogatory

2 invades attorney-client privilege and/or violates the work product doctrine by

3 compelling Responding Party to disclose privileged communications and/or

4 litigation strategy.  Responding Party will not provide any such information.

5      Subject to and without waiver of the foregoing objections,  Responding

6 Party responds as follows:

7      In addition to each defendant named in his individual capacity and

8 other persons identified in Plaintiff's Initial and Supplemental Disclosures,

9 and the evidence submitted in support of Plaintiffs' motion for class

10 certification, Responding Party identifies the following individuals:

11      Diana Reed: believes that Blakeman engaged in a concerted effort

12 with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

13 and use in the customary manner of a public space.  Reed also believes that

14 Blakeman coordinated with other Bay Boys to harass and assault the

15 plaintiffs and the public when they were visiting Lunada Bay. Reed believes

16 that the conduct directed at the plaintiffs and others trying to surf Lunada

17 Bay is part of an agreement among Blakeman and the other Bay Boys,

18 which at a minimum, may be implied by the conduct of the parties and other

19 members of the Bay Boys. Reed believes that the Bay Boys concerted

20 efforts to stop the public from accessing the beach are documented in text

21 messages and emails some of which have been destroyed or are being

22 withheld by the Defendants in this case. For example, on February 5, 2016,

23 Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

24 Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

25 several others that said "There are 5 kooks standing on the bluff taking

26 pictures...I think that same Taloa guy. Things could get ugly. " A Los

27 Angeles Times photographer captured a pictured of Defendant Blakeman of

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00158

1   the bluff filming plaintiffs.  Plaintiffs are also informed and believe that a

2   Lunada Bay local named Joshua Berstein was taking pictures at the MLK

3   2014 paddle out. Plaintiffs are also informed and believe that Berstein told

4   several people after he photographed them, "Now we know who you are."

5   Plaintiffs believe that the conducted directed at Reed by Blakeman and the

6   individual Bay Boys is because she is a woman. Plaintiff is informed and

7   believes that there are numerous text messages where the Bay Boys refer

8   to Reed as a "bitch" and make sexual comments about her.

9        The specific acts directed against Reed include but are not limited to

10  the following:

11       i)      Reed went to Lunada Bay on January 29, 2016 with Jordan

12  Wright.  Reed had intended to surf at Lunada Bay that day because the

13  conditions were such that she felt comfortable surfing.[10] Immediately after

14  they parked their car along the bluffs, the harassment began. Several men

15  drove by and circled around their car. This was the day that she and Wright

16  were harassed and intimidated by David Melo. Blakeman was recording

17  them on land with his camera. It was very disturbing to Reed and made her

18  feel very uncomfortable. Plaintiffs are informed and believe that this was

19  witnessed by John MacHarg.

20       ii)     On or about February 12, 2016, The Los Angeles Times

21  published an article called "Bay Boys surfer gang cannot block access to

22  upscale beach, Coastal Commission says." Jordan Wright and Cory

23  Spencer are quoted in the article. Mr. Wright and a few others had planned

24

25

26  [10] Plaintiffs are informed and believe that there were text message sent on
    January 29, 2016 asking Defendant Papayans "Where are you? Kooks

27  trying to get to the Bay." Plaintiffs are informed and believe that Papayans
    responded with a "LOL" and said he would be there.

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1   to surf Lunada Bay the following morning. Plaintiffs are informed and believe

2   that Defendants Johnston and Blakeman learned that Jordan Wright and

3   Diana Reed were going to Lunada Bay and planned to be there to harass

4   them. On February 12, 2016, Defendant Alan Johnston sent the following

5   text messages to an unknown recipient: "No fucking way Taloa is back this

6   year" and "If u really wanna be a bay boy we might meet help tomm."

7        iii)     On February 13, 2016, Reed returned to Lunada Bay with

8   Jordan Wright to watch him surf and take photographs. Prior to her arrival,

9   she contacted the Palos Verdes Estates Police and requested an escort

10  from the bluffs to the beach. She was concerned about her safety given the

11  January 29, 2016 incident. She was told that the police were unavailable

12  and no officers were present when they arrived. When Reed and Wright

13  reached the beach, they encountered angry locals who were yelling at them.

14  Reed and Wright ignored the harassment and Wright got into the water to

15  surf and Reed made her way to the Rock Fort where she planned to watch

16  Wright and photograph him.

17       Approximately two hours after Reed had arrived at Lunada Bay, while

18  she was standing in the Rock Fort taking photos, Blakeman and defendant

19  Alan Johnston rushed into the fort and ran towards her in a hostile and

20  aggressive manner. It seemed that they had coordinated and orchestrated

21  the attack which completely caught Reed off guard. Blakeman was filming

22  Reed again, and at times, held his camera right in her face. It was

23  intimidating and harassing to Reed, and she feared for her safety.

24       Reed asked Blakeman and Johnston why they were filming her,

25  because it made her uncomfortable. Blakeman responded, "because I feel

26  like it." Johnston responded, "because you're hot. Because you're fucking

27  sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

28

-33-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00160

1  way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

2  fear, was unable to leave the Rock Fort as Blakeman and Johnston were

3  standing closest to the exit.

4        iv)    Plaintiffs are informed and believe that after the incident

5  Defendant Johnston started calling and/or texting other Lunada Bay locals to

6  check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

7  Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

8  informed and believe that later that day Johnston received a text from his

9  mother asking him "What happened at the bay?" Johnston replied "Nothing

10  happened really just couple of trolls they got nothing."

11        Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

12  Bay. Almost instantly after they arrived at Lunada Bay, they started getting

13  harassed by Bay Boys. They were told that they couldn't surf there, and

14  Spencer was called a "kook," which is a derogatory surfing term. Spencer

15  was also told: "why don't you fucking go home, you fucking kook;" and was

16  asked, "how many other good places did you pass to come here?" These

17  are the same types of statements made by Defendant Sang Lee and others

18  that can be observed on the video published by the Guardian.[11]  These

19  taunts started while Spencer and Taloa were on the bluffs getting ready to

20  surf. One individual continued to heckle Spencer and Taloa on their way

21  down to the beach and into the water.

22        Blakeman was already in the water and began paddling around

23  Spencer and Taloa in a tight circle – staying just a few feet away from them.

24  There was no legitimate reason for this conduct. Reed believes that this is a

25  

26  [11] https://www.theguardian.com/travel/video/2015/may/18/california-surf-

27  wars-lunada-bay-localism-video.

28  (footnote continued)

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00161

1    tactic used by the Bay Boys to harass people.[12]  Blakeman impeded

2    Spencer's movement in any direction and was intentionally blocking him

3    from catching any waves. It was clear to Spencer that Blakeman was not

4    there to surf that morning. Instead, his mission was to prevent Spencer and

5    Taloa from surfing and to keep them from enjoying their time in the water,

6    the open space, the waves, and nature. This the type of concerted effort was

7    described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

8    people from surfing at Lunada Bay. In the approximately 90 minutes that

9    Spencer was in the water that day, Blakeman was focused on Spencer and

10   Taloa and continued to shadow their movements and sit uncomfortably

11   close to them. Spencer had never experienced anything like that before in

12   his life. It was bizarre but also incredibly frightening and disturbing. It

13   appeared to Spencer that Blakeman was coordinating his actions with a

14   group of guys who were standing in the Rock Fort, along with others in the

15   water. They were all talking to each other and it was clear they all knew

16   each other.

17        At one point while Spencer was in the water and was paddling west

18   out to the ocean, he saw a man surfing, coming in east towards the shore.

19   The Bay Boy ran over his hand/wrist that was holding his surfboard and one

20   of the fins on his surfboard sliced open his right wrist. Spencer has about a

21   half-inch scar from where this man ran him over. As soon as the Bay Boy

22   ran him over, he started berating Spencer, saying things like "what are you

23   fucking doing out here? I told you to go home. I should have run you over.

24   Why are you paddling in the sun glare where I can't see you?" The Bay Boy

25   _____

26   [12] Plaintiffs are informed and believe that Defendant Papayans sent a text

27   message describing similar conduct: "We just had a kook out in the water

28   and me and Jack just sat on his ass."

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00162

1  was pretending that he didn't see Spencer but it was obvious that he did and

2  intentionally ran him over. With over 30 years of surfing experience, Spencer

3  knew that this collision was intentional on his part. Fearful of being further

4  injured at that point, and not wanting to get into an argument with him,

5  Spencer just paddled away. Spencer and Taloa caught one more wave after

6  that and then decided it was getting too dangerous to surf. More men started

7  showing up at the Rock Fort and Spencer and Taloa were growing

8  increasingly fearful for their safety. Spencer was also bleeding and in pain.

9  These incidents are described in the declarations filed with Plaintiffs' motion

10  for class certification and the deposition of Spencer.

11        Christopher Taloa: As set forth above, Taloa and Spencer went surfing

12  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

13  shadowing Spencer's movement in the water. Blakeman was in the water

14  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

15  toward Taloa, at which point Taloa told him that he was too close.

16  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

17  Taloa kept moving in the water, and Blakeman attempted to keep up with

18  him but was not in good enough shape to do so.

19        Jen Bell: The incident described above was witnessed by a woman

20  named Jen Bell who had gone to Lunada Bay that same day to photograph

21  a guy from Malibu. When she attempted sit down on the beach with her

22  pack, a man said: "You are practically sitting in a men's locker-room. You

23  don't make me feel comfortable."  Bell continued to sit there for another 10

24  minutes because she refused to be intimated but eventually decided to head

25  over to the fort because she saw another woman, Diana Reed, was taking

26  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

27  was obvious from the start that Johnston and Blakeman were there with the

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00163

1   intent to harass Reed. Johnston was making rude comments to both her and
2   Reed. Blakeman was putting the GoPro in their faces. Johnston was
3   chugging multiple beers and it was early in the morning. Johnston asked her
4   to help him with his wetsuit. He said "Can you help me with this?" and
5   handed her the leg of his wetsuit. Johnston made moaning sounds when
6   she took it like he was having an orgasm.

7       Jordan Wright: Wright attempted to surf Lunada Bay in January 2015
8   with Chris Claypool and Kenneth Claypool. He observed Blakeman
9   harassing Chris and Ken. Wright was sitting on the outside waiting his turn
10  for waves. By regular surfing norms, he had priority. He caught a 10- to 12-
11  foot-high wave and was up riding for several seconds. Alan Johnston
12  paddled the wrong way on this wave, dropped in on him going the wrong
13  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
14  while going the wrong way violates normal surf etiquette. Johnston then
15  collided with Wright, and their leashes got tangled. After they surfaced from
16  the collision, Johnston then got close to Wright and yelled, "You had to
17  fucking take that wave, didn't you!" The next wave that came through then
18  broke Wright's leash plug and the board was carried into the rocks, which
19  destroyed a new surfboard. Wright had to swim in over rocks to get his
20  board and cut his hands on the rocks doing so. Wright is confident that
21  Johnston attempted to purposefully injure him. What he did was extremely
22  dangerous.

23      Wright has observed Blakeman on many occasions. Blakeman is easy
24  to identify because he rides a kneeboard and he is regularly filming visitors
25  on land with a camcorder. Wright believes his filming is an effort to intimidate
26  visitors. In the water, Wright has observed what appears to be Blakeman
27  directing other Bay Boys to sit close to visiting surfers. Wright has observed

28

-37-   Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00164

1  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

2  the visitors, impede their movements, block their surfing, kick at them,

3  splash water at them, and dangerously drop in on them. In addition to

4  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

5  Charlie Ferrara, and David Melo engage in this activity. These incidents are

6  described in the declarations filed with Plaintiffs' motion for class

7  certification.

8        Ken Claypool: has been harassed and filmed by Blakeman in an

9  attempt to intimidate him at Lunada Bay on multiple occasions. In January

10  2015, Claypool and his brother Chris Claypool along with Jordan Wright

11  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

12  water, including Blakeman who paddled over and threatened them. Claypool

13  observed Blakeman intentionally drop in on Wright at least twice.

14        On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

15  and Jordan Wright. There was a photographer from the Los Angeles Times

16  that was there. Also in attendance was Cory Spencer and Diana Reed.

17  Spencer was there to watch the cars.  Blakeman was there filming in an

18  effort to intimidate visitors. Blakeman can be seen in one of the pictures

19  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

20  are informed and believe that there was a text message sent that day to

21  Papayans, Michael Theil and 11 other people stating that there were 5

22  kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

23  informed that the text states: "Things could get ugly." These incidents are

24  described in the declarations filed with Plaintiffs' motion for class

25  certification.

26        Chris Claypool: he and his brother Ken and Jordan Wright attempted

27  to surf Lunada Bay in January 2015.  There were about five locals in the

28

-38-

water, including Blakeman who paddled over and was yelling, "Try and catch a wave and see what happens. There is no fucking way you are getting a wave. Just go in. Just go. You better not cut me off."  Blakeman looked possessed or possibly on drugs. His behavior got more bizarre throughout the morning. He seemed to be paddling for every wave that he could physically push himself into, perhaps to make a point, but he was wiping out a lot and falling down the face and tumbling across the rock reef. Blakeman looked dangerous to himself. When Blakeman would actually catch a wave in, he would paddle back to where Claypool and his brother were sitting, and continue his insane rant. On one occasion, Blakeman came less than 12 inches from Claypool's ear and was screaming. It was so loud, Claypool had to put his fingers in his ear to protect them from being damaged. Claypool is a sound engineer and to put this in perspective, a rock concert creates about 120 decibels of noise - this was louder; a jet engine creates about 150 decibels. At one point Blakeman caught a wave and drew a line aiming right at Claypool. Another Bay Boy tried the same thing and said "mother fucker" as he narrowly missed Claypool's head. Claypool watched as Blakeman intentionally dropped in on Jordan at least twice. It seemed obvious to Claypool that Blakeman and the other Bay Boy wanted to make sure none of them were having fun. Because of the danger, they decided to leave.

When Claypool and his brother got out of water, they saw people gathering on top of the cliff. One person was videotaping them from the top of the cliff; it was clear to Claypool that he was doing this to try and intimidate them. The people were watching them from the cliff. It was obvious that Blakeman engaged in a concerted effort with other Bay Boys to obstruct his free passage and use in the customary manner of a public space. It also seemed clear that Blakeman engaged in a concerted effort

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00166

1 | with other Bay Boys to try and injure him. These incidents are described in

2 | the declarations filed with Plaintiffs' motion for class certification.

3 |       Plaintiffs are informed and believe and on that basis allege that

4 | Defendant Blakeman and his attorneys are attempting to intimidate

5 | witnesses in this case. On at least two occasions, an investigator hired by

6 | Blakeman's attorneys contacted witnesses represented by Plaintiffs'

7 | attorneys. The investigator also showed up at the home of a reporter that

8 | has not been listed as a witness.

9 |       The request is premature. Because Blakeman and the other

10 | defendants are refusing to comply with their obligations to produce

11 | documents under the federal rules and are impermissibly withholding

12 | evidence and/or possibly spoliating evidence, we are not able to fully

13 | respond to discovery requests which necessarily rely on our ability to fully

14 | investigate the facts. As discovery is continuing, Reed reserves the right to

15 | update this response.

16 | **INTERROGATORY NO. 6:**

17 |       IDENTIFY ALL PERSONS that have knowledge of any facts that

18 | support your contention that BRANT BLAKEMAN has illegally extorted

19 | money from beachgoers who wish to use Lunada Bay for recreational

20 | purposes (See paragraph 33j. of the Complaint), and for each such

21 | PERSON identified state all facts you contend are within that PERSON's

22 | knowledge.

23 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

24 |       Responding Party objects to this interrogatory as premature. Because

25 | this interrogatory seeks or necessarily relies upon a contention, and

26 | because this matter is in its early stages and pretrial discovery has only just

27 | begun, Responding Party is unable to provide a complete response at this

28 |

-40-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00167

13002592.1

1   time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

2   2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

3   *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

4   also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

5   interrogatory need not be answered until designated discovery is complete,

6   or until a pretrial conference or some other time.").

7           Responding Party further objects to this interrogatory as unduly

8   burdensome, harassing, and duplicative of information disclosed in

9   Responding Party's Rule 26(a) disclosures and supplemental disclosures.

10  Propounding Party may look to Responding Party's Rule 26(a) disclosures

11  and supplemental disclosures for the information sought by this

12  interrogatory.  Moreover, Responding Party had the opportunity to depose

13  Ms. Reed on this topic.

14          Responding Party further objects to this interrogatory as compound.

15  This "interrogatory" contains multiple impermissible subparts, which

16  Propounding Party has propounded in an effort to circumvent the numerical

17  limitations on interrogatories provided by Federal Rule of Civil Procedure

18  33(a)(1).

19          Responding Party further objects to this interrogatory on the grounds

20  that it seeks information that is outside of Responding Party's knowledge.

21          Responding Party further objects to the extent that this interrogatory

22  invades attorney-client privilege and/or violates the work product doctrine by

23  compelling Responding Party to disclose privileged communications and/or

24  litigation strategy.  Responding Party will not provide any such information.

25          The request is premature. Because Blakeman and the other

26  defendants are refusing to comply with their obligations to produce

27  documents under the federal rules and are impermissibly withholding

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00168

1  evidence and/or possibly spoliating evidence, we are not able to fully

2  respond to discovery requests which necessarily rely on our ability to fully

3  investigate the facts. As discovery is continuing, Reed reserves the right to

4  update this response.

5  **INTERROGATORY NO. 7:**

6  　　IDENTIFY ALL PERSONS that have knowledge of any facts that

7  support your contention that BRANT BLAKEMAN was a part of a Civil

8  Conspiracy as identified in your complaint in paragraphs 51 through 53, and

9  for each such PERSON identified state all facts you contend are within that

10  PERSON's knowledge.

11  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

12  　　Responding Party objects to this interrogatory as premature. Because

13  this interrogatory seeks or necessarily relies upon a contention, and

14  because this matter is in its early stages and pretrial discovery has only just

15  begun, Responding Party is unable to provide a complete response at this

16  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

17  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

18  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

19  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

20  interrogatory need not be answered until designated discovery is complete,

21  or until a pretrial conference or some other time.").

22  　　Responding Party further objects to this interrogatory as unduly

23  burdensome, harassing, and duplicative of information disclosed in

24  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

25  Propounding Party may look to Responding Party's Rule 26(a) disclosures

26  and supplemental disclosures for the information sought by this

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00169

1    interrogatory.  Moreover, Responding Party had the opportunity to depose

2    Ms. Reed on this topic.

3        Responding Party further objects to this interrogatory as compound.

4    This "interrogatory" contains multiple impermissible subparts, which

5    Propounding Party has propounded to circumvent the numerical limitations

6    on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

7        Responding Party further objects to this interrogatory on the grounds

8    that it seeks information that is outside of Responding Party's knowledge.

9        Responding Party further objects to the extent that this interrogatory

10   invades attorney-client privilege and/or violates the work product doctrine by

11   compelling Responding Party to disclose privileged communications and/or

12   litigation strategy.

13       Subject to and without waiver of the foregoing objections, Responding

14   Party responds as follows:

15       In addition to each defendant named in his individual capacity and

16   other persons identified in Plaintiffs' initial and Supplemental Disclosures,

17   and the evidence submitted in support of Plaintiffs motion for class

18   certification, Responding Party identifies the following individuals:

19       Diana Reed: believes that Blakeman engaged in a concerted effort

20   with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

21   and use in the customary manner of a public space.  Reed also believes that

22   Blakeman coordinated with other Bay Boys to harass and assault the

23   plaintiffs and the public when they were visiting Lunada Bay. Reed believes

24   that the conduct directed at the plaintiffs and others trying to surf Lunada

25   Bay is part of an agreement among Blakeman and the other Bay Boys,

26   which at a minimum, may be implied by the conduct of the parties and other

27   members of the Bay Boys. Reed believes that the Bay Boys concerted

28

-43-                                    Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00170

1  efforts to stop the public from accessing the beach are documented in text
2  messages and emails some of which have been destroyed or are being
3  withheld by the Defendants in this case. For example, on February 5, 2016,
4  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom
5  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and
6  several others that said "There are 5 kooks standing on the bluff taking
7  pictures...I think that same Taloa guy. Things could get ugly. " A Los
8  Angeles Times photographer captured a pictured of Defendant Blakeman of
9  the bluff filming plaintiffs.  Plaintiffs believe that the Bay Boys take photos
10 and/or video tape people as a form of harassment and intimidation. For
11 example, plaintiffs are also informed and believe that a Lunada Bay local
12 named Joshua Berstein was taking pictures at the MLK 2014 paddle out.
13 Plaintiffs are also informed and believe that Berstein told several people
14 after he photographed them, "Now we know who you are." Plaintiffs believe
15 that the conducted directed at Reed by Blakeman and the individual Bay
16 Boys is because she is a woman. Plaintiff is informed and believes that there
17 are numerous text messages where the Bay Boys refer to Reed as a "bitch"
18 and make sexual comments about her.

19       The specific acts directed against Reed include but are not limited to
20 the following:

21       i)      Reed went to Lunada Bay on January 29, 2016 with Jordan
22 Wright.  Reed had intended to surf at Lunada Bay that day because the
23 conditions were such that she felt comfortable surfing.[13] Immediately after

24

25

---

26 [13] Plaintiffs are informed and believe that there were text message sent on
   January 29, 2016 asking Defendant Papayans "Where are you? Kooks
27 trying to get to the Bay." Plaintiffs are informed and believe that Papayans
28 responded with a "LOL" and said he would be there.

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00171

1  they parked their car along the bluffs, the harassment began. Several men

2  drove by and circled around their car. This was the day that she and Wright

3  were harassed and intimidated by David Melo. Blakeman was recording

4  them on land with his camera. It was very disturbing to Reed and made her

5  feel very uncomfortable. Plaintiffs are informed and believe that this was

6  witnessed by John MacHarg.

7        ii)     On or about February 12, 2016, The Los Angeles Times

8  published an article called "Bay Boys surfer gang cannot block access to

9  upscale beach, Coastal Commission says." Jordan Wright and Cory

10  Spencer are quoted in the article. Mr. Wright and a few others had planned

11  to surf Lunada Bay the following morning. Plaintiffs are informed and believe

12  that Defendants Johnston and Blakeman learned that Jordan Wright and

13  Diana Reed were going to Lunada Bay and planned to be there to harass

14  them. On February 12, 2016, Defendant Alan Johnston sent the following

15  text messages to an unknown recipient: "No fucking way Taloa is back this

16  year" and "If u really wanna be a bay boy we might meet help tomm."

17        iii)    On February 13, 2016, Reed returned to Lunada Bay with

18  Jordan Wright to watch him surf and take photographs. Prior to her arrival,

19  she contacted the Palos Verdes Estates Police and requested an escort

20  from the bluffs to the beach. She was concerned about her safety given the

21  January 29, 2016 incident. She was told that the police were unavailable

22  and no officers were present when they arrived. When Reed and Wright

23  reached the beach, they encountered angry locals who were yelling at them.

24  Reed and Wright ignored the harassment and Wright got into the water to

25  surf and Reed made her way to the Rock Fort where she planned to watch

26  Wright and photograph him.

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00172

Approximately two hours after Reed had arrived at Lunada Bay, while she was standing in the Rock Fort taking photos, Blakeman and defendant Alan Johnston rushed into the fort and ran towards her in a hostile and aggressive manner. It seemed that they had coordinated and orchestrated the attack which completely caught Reed off guard. Blakeman was filming Reed again, and at times, held his camera right in her face. It was intimidating and harassing to Reed, and she feared for her safety.

Reed asked Blakeman and Johnston why they were filming her, because it made her uncomfortable. Blakeman responded, "because I feel like it." Johnston responded, "because you're hot. Because you're fucking sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful way so that it sprayed Reed's arm and her camera. Reed, paralyzed with fear, was unable to leave the Rock Fort as Blakeman and Johnston were standing closest to the exit.

iii)    Plaintiffs are informed and believe that after the incident Defendant Johnston started calling and/or texting other Lunada Bay locals to check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are informed and believe that later that day Johnston received a text from his mother asking him "What happened at the bay?" Johnston replied "Nothing happened really just couple of trolls they got nothing."

Reed further identifies the following individuals as having knowledge of concerted efforts by the Bay Boys, including Blakeman:

Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer

-46-                    Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00173

1  was also told: "why don't you fucking go home, you fucking kook;" and  was

2  asked, "how many other good places did you pass to come here?" These

3  are the same types of statements made by Defendant Sang Lee and others

4  that can be observed on the video published by the Guardian.[14]  These

5  taunts started while Spencer and Taloa were on the bluffs getting ready to

6  surf. One individual continued to heckle Spencer and Taloa on their way

7  down to the beach and into the water.

8       Blakeman was already in the water and began paddling around

9  Spencer and Taloa in a tight circle – staying just a few feet away from them.

10  There was no legitimate reason for this conduct. Reed believes that this is a

11  tactic used by the Bay Boys to harass people.[15]  Blakeman impeded

12  Spencer's movement in any direction and was intentionally blocking him

13  from catching any waves. It was clear to Spencer that Blakeman was not

14  there to surf that morning. Instead, his mission was to prevent Spencer and

15  Taloa from surfing and to keep them from enjoying their time in the water,

16  the open space, the waves, and nature. This the type of concerted effort was

17  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

18  people from surfing at Lunada Bay. In the approximately 90 minutes that

19  Spencer was in the water that day, Blakeman was focused on Spencer and

20  Taloa and continued to shadow their movements and sit uncomfortably

21  close to them. Spencer had never experienced anything like that before in

22  his life. It was bizarre but also incredibly frightening and disturbing. It

23

24  _____

25  [14] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

26  [15] Plaintiffs are informed and believe that Defendant Papayans sent a text

27  message describing similar conduct: "We just had a kook out in the water

28  and me and Jack just sat on his ass."

Exhibit 4 - Page 00174

1   appeared to Spencer that Blakeman was coordinating his actions with a

2   group of guys who were standing in the Rock Fort, along with others in the

3   water. They were all talking to each other and it was clear they all knew

4   each other.

5       At one point while Spencer was in the water and was paddling west

6   out to the ocean, he saw a man surfing, coming in east towards the shore.

7   The Bay Boy ran over his hand/wrist that was holding his surfboard and one

8   of the fins on his surfboard sliced open his right wrist. Spencer has about a

9   half-inch scar from where this man ran him over. As soon as the Bay Boy

10  ran him over, he started berating Spencer, saying things like "what are you

11  fucking doing out here? I told you to go home. I should have run you over.

12  Why are you paddling in the sun glare where I can't see you?" The Bay Boy

13  was pretending that he didn't see Spencer but it was obvious that he did and

14  intentionally ran him over. With over 30 years of surfing experience, Spencer

15  knew that this collision was intentional on his part. Fearful of being further

16  injured at that point, and not wanting to get into an argument with him,

17  Spencer just paddled away. Spencer and Taloa caught one more wave after

18  that and then decided it was getting too dangerous to surf. More men started

19  showing up at the Rock Fort and Spencer and Taloa were growing

20  increasingly fearful for their safety. Spencer was also bleeding and in pain.

21  These incidents are described in the declarations filed with Plaintiffs' motion

22  for class certification and the deposition of Spencer.

23      Christopher Taloa: As set forth above, Taloa and Spencer went surfing

24  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

25  shadowing Spencer's movement in the water. Blakeman was in the water

26  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

27  toward Taloa, at which point Taloa told him that he was too close.

28

-48-

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00175

1 Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

2 Taloa kept moving in the water, and Blakeman attempted to keep up with

3 him but was not in good enough shape to do so.

4          Jen Bell: The incident described above was witnessed by a woman

5 named Jen Bell who had gone to Lunada Bay that same day to photograph

6 a guy from Malibu. When she attempted sit down on the beach with her

7 pack, a man said: "You are practically sitting in a men's locker-room. You

8 don't make me feel comfortable."  Bell continued to sit there for another 10

9 minutes because she refused to be intimated but eventually decided to head

10 over to the fort because she saw another woman, Diana Reed, was taking

11 photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

12 was obvious from the start that Johnston and Blakeman were there with the

13 intent to harass Reed. Johnston was making rude comments to both her and

14 Reed. Blakeman was putting the GoPro in their faces. Johnston was

15 chugging multiple beers and it was early in the morning. Johnston asked her

16 to help him with his wetsuit. He said "Can you help me with this?" and

17 handed her the leg of his wetsuit. Johnston made moaning sounds when

18 she took it like he was having an orgasm.

19          Jordan Wright: Wright attempted to surf Lunada Bay in January 2015

20 with Chris Claypool and Kenneth Claypool. He observed Blakeman

21 harassing Chris and Ken. Wright was sitting on the outside waiting his turn

22 for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

23 foot-high wave and was up riding for several seconds. Alan Johnston

24 paddled the wrong way on this wave, dropped in on him going the wrong

25 way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

26 while going the wrong way violates normal surf etiquette. Johnston then

27 collided with Wright, and their leashes got tangled. After they surfaced from

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00176

1 | the collision, Johnston then got close to Wright and yelled, "You had to
2 | fucking take that wave, didn't you!" The next wave that came through then
3 | broke Wright's leash plug and the board was carried into the rocks, which
4 | destroyed a new surfboard. Wright had to swim in over rocks to get his
5 | board and cut his hands on the rocks doing so. Wright is confident that
6 | Johnston attempted to purposefully injure him. What he did was extremely
7 | dangerous.

8 | Wright has observed Blakeman on many occasions. Blakeman is easy
9 | to identify because he rides a kneeboard and he is regularly filming visitors
10 | on land with a camcorder. Wright believes his filming is an effort to intimidate
11 | visitors. In the water, Wright has observed what appears to be Blakeman
12 | directing other Bay Boys to sit close to visiting surfers. Wright has observed
13 | Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to
14 | the visitors, impede their movements, block their surfing, kick at them,
15 | splash water at them, and dangerously drop in on them. In addition to
16 | Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,
17 | Charlie Ferrara, and David Melo engage in this activity. These incidents are
18 | described in the declarations filed with Plaintiffs' motion for class
19 | certification.

20 | Ken Claypool: has been harassed and filmed by Blakeman in an
21 | attempt to intimidate him at Lunada Bay on multiple occasions. In January
22 | 2015, Claypool and his brother Chris Claypool along with Jordan Wright
23 | went to surf Lunada Bay.  There were about five Lunada Bay locals in the
24 | water, including Blakeman who paddled over and threatened them. Claypool
25 | observed Blakeman intentionally drop in on Wright at least twice.

26 | On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa
27 | and Jordan Wright. There was a photographer from the Los Angeles Times

28 |

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00177

1  that was there. Also in attendance was Cory Spencer and Diana Reed.

2  Spencer was there to watch the cars.  Blakeman was there filming in an

3  effort to intimidate visitors. Blakeman can be seen in one of the pictures

4  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

5  are informed and believe that there was a text message sent that day to

6  Papayans, Michael Theil and 11 other people stating that there were 5

7  kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

8  informed that the text states: "Things could get ugly. We all need to surf."

9  These incidents are described in the declarations filed with Plaintiffs' motion

10 for class certification.

11      Chris Claypool: he and his brother Ken and Jordan Wright attempted

12 to surf Lunada Bay in January 2015.  There were about five locals in the

13 water, including Blakeman who paddled over and was yelling, "Try and catch

14 a wave and see what happens. There is no fucking way you are getting a

15 wave. Just go in. Just go. You better not cut me off."  Blakeman looked

16 possessed or possibly on drugs. His behavior got more bizarre throughout

17 the morning. He seemed to be paddling for every wave that he could

18 physically push himself into, perhaps to make a point, but he was wiping out

19 a lot and falling down the face and tumbling across the rock reef. Blakeman

20 looked dangerous to himself. When Blakeman would actually catch a wave

21 in, he would paddle back to where Claypool and his brother were sitting, and

22 continue his insane rant. On one occasion, Blakeman came less than 12

23 inches from Claypool's ear and was screaming. It was so loud, Claypool had

24 to put his fingers in his ear to protect them from being damaged. Claypool is

25 a sound engineer and to put this in perspective, a rock concert creates about

26 120 decibels of noise - this was louder; a jet engine creates about 150

27 decibels. At one point Blakeman caught a wave and drew a line aiming right

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00178

1   at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

2   as he narrowly missed Claypool's head. Claypool watched as Blakeman

3   intentionally dropped in on Jordan at least twice. It seemed obvious to

4   Claypool that Blakeman and the other Bay Boy wanted to make sure none of

5   them were having fun. Because of the danger, they decided to leave.

6       When Claypool and his brother got out of water, they saw people

7   gathering on top of the cliff. One person was videotaping them from the top

8   of the cliff; it was clear to Claypool that he was doing this to try and

9   intimidate them. The people were watching them from the cliff. It was

10  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

11  obstruct his free passage and use in the customary manner of a public

12  space. It also seemed clear that Blakeman engaged in a concerted effort

13  with other Bay Boys to try and injure him. These incidents are described in

14  the declarations filed with Plaintiffs' motion for class certification.

15      Jason Gersch: While observing the surf, Gersch was approached by

16  two local Bay Boys named Peter McCollum and Brant Blakeman. These

17  individuals made it known to Gersch that he could not surf there. These

18  incidents are described in the declarations filed with Plaintiffs' motion for

19  class certification.

20      Plaintiffs are informed and believe and on that basis allege that

21  Defendant Blakeman and his attorneys are attempting to intimidate

22  witnesses in this case. On at least two occasions, an investigator hired by

23  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

24  attorneys. The investigator also showed up at the home of a reporter that

25  has not been listed as a witness.

26      The request is premature. Because Blakeman and the other

27  defendants are refusing to comply with their obligations to produce

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00179

1  documents under the federal rules and are impermissibly withholding

2  evidence and/or possibly spoliating evidence, we are not able to fully

3  respond to discovery requests which necessarily rely on our ability to fully

4  investigate the facts. As discovery is continuing, Reed reserves the right to

5  update this response.

6  **INTERROGATORY NO. 8:**

7      IDENTIFY ALL PERSONS that have knowledge of any facts that

8  support plaintiffs' First Cause of Action in the Complaint (Bane Act

9  Violations) against BRANT BLAKEMAN, and for each such PERON

10 identified state all facts you contend are within that PERSON's knowledge.

11 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

12     Responding Party objects to this interrogatory as premature. Because

13 this interrogatory seeks or necessarily relies upon a contention, and

14 because this matter is in its early stages and pretrial discovery has only just

15 begun, Responding Party is unable to provide a complete response at this

16 time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

17 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

18 *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

19 also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

20 interrogatory need not be answered until designated discovery is complete,

21 or until a pretrial conference or some other time.").

22     Responding Party further objects to this interrogatory as unduly

23 burdensome, harassing, and duplicative of information disclosed in

24 Responding Party's Rule 26(a) disclosures and supplemental disclosures.

25 Propounding Party may look to Responding Party's Rule 26(a) disclosures

26 and supplemental disclosures for the information sought by this

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00180

1   interrogatory.  Moreover, Responding Party had the opportunity to depose

2   Ms. Reed on this topic.

3       Responding Party further objects to this interrogatory as compound.

4   This "interrogatory" contains multiple impermissible subparts, which

5   Propounding Party has propounded to circumvent the numerical limitations

6   on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

7       Responding Party further objects to this interrogatory on the grounds

8   that it seeks information that is outside of Responding Party's knowledge.

9       Responding Party further objects to the extent that this interrogatory

10  invades attorney-client privilege and/or violates the work product doctrine by

11  compelling Responding Party to disclose privileged communications and/or

12  litigation strategy.

13      Subject to and without waiver of the foregoing objections, Responding

14  Party responds as follows:

15      In addition to each defendant named in his individual capacity and

16  other persons identified in Plaintiffs' initial and Supplemental Disclosures,

17  and the evidence submitted in support of Plaintiffs motion for class

18  certification, Responding Party identifies the following individuals:

19      Diana Reed: believes that Blakeman engaged in a concerted effort

20  with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

21  and use in the customary manner of a public space.  Reed also believes that

22  Blakeman coordinated with other Bay Boys to harass and assault the

23  plaintiffs and the public when they were visiting Lunada Bay. Reed believes

24  that the conduct directed at the plaintiffs and others trying to surf Lunada

25  Bay is part of an agreement among Blakeman and the other Bay Boys,

26  which at a minimum, may be implied by the conduct of the parties and other

27  members of the Bay Boys. Reed believes that the Bay Boys concerted

28

-54-

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

Exhibit 4 - Page 00181

1  efforts to stop the public from accessing the beach are documented in text

2  messages and emails some of which have been destroyed or are being

3  withheld by the Defendants in this case. For example, on February 5, 2016,

4  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

5  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

6  several others that said "There are 5 kooks standing on the bluff taking

7  pictures...I think that same Taloa guy. Things could get ugly. " A Los

8  Angeles Times photographer captured a pictured of Defendant Blakeman of

9  the bluff filming plaintiffs. Plaintiffs believe that the Bay Boys take photos

10  and/or video tape people as a form of harassment and intimidation. For

11  example, plaintiffs are also informed and believe that a Lunada Bay local

12  named Joshua Berstein was taking pictures at the MLK 2014 paddle out.

13  Plaintiffs are also informed and believe that Berstein told several people

14  after he photographed them, "Now we know who you are." Plaintiffs believe

15  that the conducted directed at Reed by Blakeman and the individual Bay

16  Boys is because she is a woman. Plaintiff is informed and believes that there

17  are numerous text messages where the Bay Boys refer to Reed as a "bitch"

18  and make sexual comments about her.

19        The specific acts directed against Reed include but are not limited to

20  the following:

21        i)      Reed went to Lunada Bay on January 29, 2016 with Jordan

22  Wright.  Reed had intended to surf at Lunada Bay that day because the

23  conditions were such that she felt comfortable surfing.[16] Immediately after

24

25

26  [16] Plaintiffs are informed and believe that there were text message sent on
January 29, 2016 asking Defendant Papayans "Where are you? Kooks

27  trying to get to the Bay." Plaintiffs are informed and believe that Papayans
responded with a "LOL" and said he would be there.

28

-55-                        Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00182

1  they parked their car along the bluffs, the harassment began. Several men

2  drove by and circled around their car. This was the day that she and Wright

3  were harassed and intimidated by David Melo. Blakeman was recording

4  them on land with his camera. It was very disturbing to Reed and made her

5  feel very uncomfortable. Plaintiffs are informed and believe that this was

6  witnessed by John MacHarg.

7        ii)     On or about February 12, 2016, The Los Angeles Times

8  published an article called "Bay Boys surfer gang cannot block access to

9  upscale beach, Coastal Commission says." Jordan Wright and Cory

10  Spencer are quoted in the article. Mr. Wright and a few others had planned

11  to surf Lunada Bay the following morning. Plaintiffs are informed and believe

12  that Defendants Johnston and Blakeman learned that Jordan Wright and

13  Diana Reed were going to Lunada Bay and planned to be there to harass

14  them. On February 12, 2016, Defendant Alan Johnston sent the following

15  text messages to an unknown recipient: "No fucking way Taloa is back this

16  year" and "If u really wanna be a bay boy we might meet help tomm."

17        iii)    On February 13, 2016, Reed returned to Lunada Bay with

18  Jordan Wright to watch him surf and take photographs. Prior to her arrival,

19  she contacted the Palos Verdes Estates Police and requested an escort

20  from the bluffs to the beach. She was concerned about her safety given the

21  January 29, 2016 incident. She was told that the police were unavailable

22  and no officers were present when they arrived. When Reed and Wright

23  reached the beach, they encountered angry locals who were yelling at them.

24  Reed and Wright ignored the harassment and Wright got into the water to

25  surf and Reed made her way to the Rock Fort where she planned to watch

26  Wright and photograph him.

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00183

1    Approximately two hours after Reed had arrived at Lunada Bay, while

2   she was standing in the Rock Fort taking photos, Blakeman and defendant

3   Alan Johnston rushed into the fort and ran towards her in a hostile and

4   aggressive manner. It seemed that they had coordinated and orchestrated

5   the attack which completely caught Reed off guard. Blakeman was filming

6   Reed again, and at times, held his camera right in her face. It was

7   intimidating and harassing to Reed, and she feared for her safety.

8    Reed asked Blakeman and Johnston why they were filming her,

9   because it made her uncomfortable. Blakeman responded, "because I feel

10  like it." Johnston responded, "because you're hot. Because you're fucking

11  sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

12  way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

13  fear, was unable to leave the Rock Fort as Blakeman and Johnston were

14  standing closest to the exit.

15    iii)    Plaintiffs are informed and believe that after the incident

16  Defendant Johnston started calling and/or texting other Lunada Bay locals to

17  check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

18  Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

19  informed and believe that later that day Johnston received a text from his

20  mother asking him "What happened at the bay?" Johnston replied "Nothing

21  happened really just couple of trolls they got nothing."

22    Reed further identifies the following individuals as having knowledge of

23  concerted efforts by the Bay Boys, including Blakeman:

24    Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

25  Bay. Almost instantly after they arrived at Lunada Bay, they started getting

26  harassed by Bay Boys. They were told that they couldn't surf there, and

27  Spencer was called a "kook," which is a derogatory surfing term. Spencer

28

-57-    Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1    Exhibit 4 - Page 00184

1   was also told: "why don't you fucking go home, you fucking kook;" and  was

2   asked, "how many other good places did you pass to come here?" These

3   are the same types of statements made by Defendant Sang Lee and others

4   that can be observed on the video published by the Guardian.[17]  These

5   taunts started while Spencer and Taloa were on the bluffs getting ready to

6   surf. One individual continued to heckle Spencer and Taloa on their way

7   down to the beach and into the water.

8         Blakeman was already in the water and began paddling around

9   Spencer and Taloa in a tight circle – staying just a few feet away from them.

10  There was no legitimate reason for this conduct. Reed believes that this is a

11  tactic used by the Bay Boys to harass people.[18]  Blakeman impeded

12  Spencer's movement in any direction and was intentionally blocking him

13  from catching any waves. It was clear to Spencer that Blakeman was not

14  there to surf that morning. Instead, his mission was to prevent Spencer and

15  Taloa from surfing and to keep them from enjoying their time in the water,

16  the open space, the waves, and nature. This the type of concerted effort was

17  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

18  people from surfing at Lunada Bay. In the approximately 90 minutes that

19  Spencer was in the water that day, Blakeman was focused on Spencer and

20  Taloa and continued to shadow their movements and sit uncomfortably

21  close to them. Spencer had never experienced anything like that before in

22  his life. It was bizarre but also incredibly frightening and disturbing. It

23

24  _____

25  [17] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

26  [18] Plaintiffs are informed and believe that Defendant Papayans sent a text

27  message describing similar conduct: "We just had a kook out in the water

28  and me and Jack just sat on his ass."

13002592.1

Exhibit 4 - Page 00185

1  appeared to Spencer that Blakeman was coordinating his actions with a

2  group of guys who were standing in the Rock Fort, along with others in the

3  water. They were all talking to each other and it was clear they all knew

4  each other.

5        At one point while Spencer was in the water and was paddling west

6  out to the ocean, he saw a man surfing, coming in east towards the shore.

7  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

8  of the fins on his surfboard sliced open his right wrist. Spencer has about a

9  half-inch scar from where this man ran him over. As soon as the Bay Boy

10 ran him over, he started berating Spencer, saying things like "what are you

11 fucking doing out here? I told you to go home. I should have run you over.

12 Why are you paddling in the sun glare where I can't see you?" The Bay Boy

13 was pretending that he didn't see Spencer but it was obvious that he did and

14 intentionally ran him over. With over 30 years of surfing experience, Spencer

15 knew that this collision was intentional on his part. Fearful of being further

16 injured at that point, and not wanting to get into an argument with him,

17 Spencer just paddled away. Spencer and Taloa caught one more wave after

18 that and then decided it was getting too dangerous to surf. More men started

19 showing up at the Rock Fort and Spencer and Taloa were growing

20 increasingly fearful for their safety. Spencer was also bleeding and in pain.

21 These incidents are described in the declarations filed with Plaintiffs' motion

22 for class certification and the deposition of Spencer.

23       Christopher Taloa: As set forth above, Taloa and Spencer went surfing

24 at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

25 shadowing Spencer's movement in the water. Blakeman was in the water

26 with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

27 toward Taloa, at which point Taloa told him that he was too close.

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00186

1 | Blakeman replied, "This is the ocean. We are surfing. I can be wherever."
2 | Taloa kept moving in the water, and Blakeman attempted to keep up with
3 | him but was not in good enough shape to do so.

4 |      Jen Bell: The incident described above was witnessed by a woman
5 | named Jen Bell who had gone to Lunada Bay that same day to photograph
6 | a guy from Malibu. When she attempted sit down on the beach with her
7 | pack, a man said: "You are practically sitting in a men's locker-room. You
8 | don't make me feel comfortable."  Bell continued to sit there for another 10
9 | minutes because she refused to be intimated but eventually decided to head
10 | over to the fort because she saw another woman, Diana Reed, was taking
11 | photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It
12 | was obvious from the start that Johnston and Blakeman were there with the
13 | intent to harass Reed. Johnston was making rude comments to both her and
14 | Reed. Blakeman was putting the GoPro in their faces. Johnston was
15 | chugging multiple beers and it was early in the morning. Johnston asked her
16 | to help him with his wetsuit. He said "Can you help me with this?" and
17 | handed her the leg of his wetsuit. Johnston made moaning sounds when
18 | she took it like he was having an orgasm.

19 |      Jordan Wright: Wright attempted to surf Lunada Bay in January 2015
20 | with Chris Claypool and Kenneth Claypool. He observed Blakeman
21 | harassing Chris and Ken. Wright was sitting on the outside waiting his turn
22 | for waves. By regular surfing norms, he had priority. He caught a 10- to 12-
23 | foot-high wave and was up riding for several seconds. Alan Johnston
24 | paddled the wrong way on this wave, dropped in on him going the wrong
25 | way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
26 | while going the wrong way violates normal surf etiquette. Johnston then
27 | collided with Wright, and their leashes got tangled. After they surfaced from

28 |

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00187

1  the collision, Johnston then got close to Wright and yelled, "You had to

2  fucking take that wave, didn't you!" The next wave that came through then

3  broke Wright's leash plug and the board was carried into the rocks, which

4  destroyed a new surfboard. Wright had to swim in over rocks to get his

5  board and cut his hands on the rocks doing so. Wright is confident that

6  Johnston attempted to purposefully injure him. What he did was extremely

7  dangerous.

8      Wright has observed Blakeman on many occasions. Blakeman is easy

9  to identify because he rides a kneeboard and he is regularly filming visitors

10  on land with a camcorder. Wright believes his filming is an effort to intimidate

11  visitors. In the water, Wright has observed what appears to be Blakeman

12  directing other Bay Boys to sit close to visiting surfers. Wright has observed

13  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

14  the visitors, impede their movements, block their surfing, kick at them,

15  splash water at them, and dangerously drop in on them. In addition to

16  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

17  Charlie Ferrara, and David Melo engage in this activity. These incidents are

18  described in the declarations filed with Plaintiffs' motion for class

19  certification.

20      Ken Claypool: has been harassed and filmed by Blakeman in an

21  attempt to intimidate him at Lunada Bay on multiple occasions. In January

22  2015, Claypool and his brother Chris Claypool along with Jordan Wright

23  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

24  water, including Blakeman who paddled over and threatened them. Claypool

25  observed Blakeman intentionally drop in on Wright at least twice.

26      On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

27  and Jordan Wright. There was a photographer from the Los Angeles Times

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00188

that was there. Also in attendance was Cory Spencer and Diana Reed.
Spencer was there to watch the cars.  Blakeman was there filming in an
effort to intimidate visitors. Blakeman can be seen in one of the pictures
taken by the photographer. Also present was Defendant Papayans. Plaintiffs
are informed and believe that there was a text message sent that day to
Papayans, Michael Theil and 11 other people stating that there were 5
kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are
informed that the text states: "Things could get ugly. We all need to surf."
These incidents are described in the declarations filed with Plaintiffs' motion
for class certification.

Chris Claypool: he and his brother Ken and Jordan Wright attempted
to surf Lunada Bay in January 2015.  There were about five locals in the
water, including Blakeman who paddled over and was yelling, "Try and catch
a wave and see what happens. There is no fucking way you are getting a
wave. Just go in. Just go. You better not cut me off."  Blakeman looked
possessed or possibly on drugs. His behavior got more bizarre throughout
the morning. He seemed to be paddling for every wave that he could
physically push himself into, perhaps to make a point, but he was wiping out
a lot and falling down the face and tumbling across the rock reef. Blakeman
looked dangerous to himself. When Blakeman would actually catch a wave
in, he would paddle back to where Claypool and his brother were sitting, and
continue his insane rant. On one occasion, Blakeman came less than 12
inches from Claypool's ear and was screaming. It was so loud, Claypool had
to put his fingers in his ear to protect them from being damaged. Claypool is
a sound engineer and to put this in perspective, a rock concert creates about
120 decibels of noise - this was louder; a jet engine creates about 150
decibels. At one point Blakeman caught a wave and drew a line aiming right

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00189

1   at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

2   as he narrowly missed Claypool's head. Claypool watched as Blakeman

3   intentionally dropped in on Jordan at least twice. It seemed obvious to

4   Claypool that Blakeman and the other Bay Boy wanted to make sure none of

5   them were having fun. Because of the danger, they decided to leave.

6       When Claypool and his brother got out of water, they saw people

7   gathering on top of the cliff. One person was videotaping them from the top

8   of the cliff; it was clear to Claypool that he was doing this to try and

9   intimidate them. The people were watching them from the cliff. It was

10  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

11  obstruct his free passage and use in the customary manner of a public

12  space. It also seemed clear that Blakeman engaged in a concerted effort

13  with other Bay Boys to try and injure him. These incidents are described in

14  the declarations filed with Plaintiffs' motion for class certification.

15      Jason Gersch: While observing the surf, Gersch was approached by

16  two local Bay Boys named Peter McCollum and Brant Blakeman. These

17  individuals made it known to Gersch that he could not surf there. These

18  incidents are described in the declarations filed with Plaintiffs' motion for

19  class certification.

20      Plaintiffs are informed and believe and on that basis allege that

21  Defendant Blakeman and his attorneys are attempting to intimidate

22  witnesses in this case. On at least two occasions, an investigator hired by

23  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

24  attorneys. The investigator also showed up at the home of a reporter that

25  has not been listed as a witness.

26      The request is premature. Because Blakeman and the other

27  defendants are refusing to comply with their obligations to produce

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00190

1  documents under the federal rules and are impermissibly withholding

2  evidence and/or possibly spoliating evidence, we are not able to fully

3  respond to discovery requests which necessarily rely on our ability to fully

4  investigate the facts. As discovery is continuing, Reed reserves the right to

5  update this response.

6  **INTERROGATORY NO. 9:**

7      IDENTIFY ALL PERSONS that have knowledge of any facts that

8  support plaintiffs' Second Cause of Action in the Complaint (Public

9  Nuisance) against BRANT BLAKEMAN, and for each such PERSON

10  identified state all facts you contend are within that PERSON's knowledge.

11  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

12      Responding Party objects to this interrogatory as premature. Because

13  this interrogatory seeks or necessarily relies upon a contention, and

14  because this matter is in its early stages and pretrial discovery has only just

15  begun, Responding Party is unable to provide a complete response at this

16  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

17  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific

18  Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

19  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

20  interrogatory need not be answered until designated discovery is complete,

21  or until a pretrial conference or some other time.").

22      Responding Party further objects to this interrogatory as unduly

23  burdensome, harassing, and duplicative of information disclosed in

24  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

25  Propounding Party may look to Responding Party's Rule 26(a) disclosures

26  and supplemental disclosures for the information sought by this

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00191

1  interrogatory.  Moreover, Responding Party had the opportunity to depose

2  Ms. Reed on this topic.

3      Responding Party further objects to this interrogatory as compound.

4  This "interrogatory" contains multiple impermissible subparts, which

5  Propounding Party has propounded to circumvent the numerical limitations

6  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

7      Responding Party further objects to this interrogatory on the grounds

8  that it seeks information that is outside of Responding Party's knowledge.

9      Responding Party further objects to the extent that this interrogatory

10  invades attorney-client privilege and/or violates the work product doctrine by

11  compelling Responding Party to disclose privileged communications and/or

12  litigation strategy.

13      Subject to and without waiver of the foregoing objections, Responding

14  Party responds as follows:

15      In addition to each defendant named in his individual capacity and

16  other persons identified in Plaintiffs' initial and Supplemental Disclosures,

17  and the evidence submitted in support of Plaintiffs motion for class

18  certification, Responding Party identifies the following individuals:

19      Diana Reed: believes that Blakeman engaged in a concerted effort

20  with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

21  and use in the customary manner of a public space.  Reed also believes that

22  Blakeman coordinated with other Bay Boys to harass and assault the

23  plaintiffs and the public when they were visiting Lunada Bay. Reed believes

24  that the conduct directed at the plaintiffs and others trying to surf Lunada

25  Bay is part of an agreement among Blakeman and the other Bay Boys,

26  which at a minimum, may be implied by the conduct of the parties and other

27  members of the Bay Boys. Reed believes that the Bay Boys concerted

28

-65-                          Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

Exhibit 4 - Page 00192

1  efforts to stop the public from accessing the beach are documented in text

2  messages and emails some of which have been destroyed or are being

3  withheld by the Defendants in this case. For example, on February 5, 2016,

4  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

5  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

6  several others that said "There are 5 kooks standing on the bluff taking

7  pictures...I think that same Taloa guy. Things could get ugly. " A Los

8  Angeles Times photographer captured a pictured of Defendant Blakeman of

9  the bluff filming plaintiffs. Plaintiffs believe that the Bay Boys take photos

10  and/or video tape people as a form of harassment and intimidation. For

11  example, plaintiffs are also informed and believe that a Lunada Bay local

12  named Joshua Berstein was taking pictures at the MLK 2014 paddle out.

13  Plaintiffs are also informed and believe that Berstein told several people

14  after he photographed them, "Now we know who you are." Plaintiffs believe

15  that the conducted directed at Reed by Blakeman and the individual Bay

16  Boys is because she is a woman. Plaintiff is informed and believes that there

17  are numerous text messages where the Bay Boys refer to Reed as a "bitch"

18  and make sexual comments about her.

19       The specific acts directed against Reed include but are not limited to

20  the following:

21       i)       Reed went to Lunada Bay on January 29, 2016 with Jordan

22  Wright.  Reed had intended to surf at Lunada Bay that day because the

23  conditions were such that she felt comfortable surfing.[19] Immediately after

24

25

26  [19] Plaintiffs are informed and believe that there were text message sent on
January 29, 2016 asking Defendant Papayans "Where are you? Kooks

27  trying to get to the Bay." Plaintiffs are informed and believe that Papayans
responded with a "LOL" and said he would be there.

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00193

they parked their car along the bluffs, the harassment began. Several men drove by and circled around their car. This was the day that she and Wright were harassed and intimidated by David Melo. Blakeman was recording them on land with his camera. It was very disturbing to Reed and made her feel very uncomfortable. Plaintiffs are informed and believe that this was witnessed by John MacHarg.

ii)     On or about February 12, 2016, The Los Angeles Times published an article called  "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm."

iii)     On February 13, 2016, Reed returned to Lunada Bay with Jordan Wright to watch him surf and take photographs. Prior to her arrival, she contacted the Palos Verdes Estates Police and requested an escort from the bluffs to the beach. She was concerned about her safety given the January 29, 2016 incident. She was told that the police were unavailable and no officers were present when they arrived. When Reed and Wright reached the beach, they encountered angry locals who were yelling at them. Reed and Wright ignored the harassment and Wright got into the water to surf and Reed made her way to the Rock Fort where she planned to watch Wright and photograph him.

-67-

1      Approximately two hours after Reed had arrived at Lunada Bay, while

2  she was standing in the Rock Fort taking photos, Blakeman and defendant

3  Alan Johnston rushed into the fort and ran towards her in a hostile and

4  aggressive manner. It seemed that they had coordinated and orchestrated

5  the attack which completely caught Reed off guard. Blakeman was filming

6  Reed again, and at times, held his camera right in her face. It was

7  intimidating and harassing to Reed, and she feared for her safety.

8      Reed asked Blakeman and Johnston why they were filming her,

9  because it made her uncomfortable. Blakeman responded, "because I feel

10  like it." Johnston responded, "because you're hot. Because you're fucking

11  sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

12  way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

13  fear, was unable to leave the Rock Fort as Blakeman and Johnston were

14  standing closest to the exit.

15      iii)    Plaintiffs are informed and believe that after the incident

16  Defendant Johnston started calling and/or texting other Lunada Bay locals to

17  check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

18  Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

19  informed and believe that later that day Johnston received a text from his

20  mother asking him "What happened at the bay?" Johnston replied "Nothing

21  happened really just couple of trolls they got nothing."

22      Reed further identifies the following individuals as having knowledge of

23  concerted efforts by the Bay Boys, including Blakeman:

24      Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

25  Bay. Almost instantly after they arrived at Lunada Bay, they started getting

26  harassed by Bay Boys. They were told that they couldn't surf there, and

27  Spencer was called a "kook," which is a derogatory surfing term. Spencer

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00195

was also told: "why don't you fucking go home, you fucking kook;" and was
asked, "how many other good places did you pass to come here?" These
are the same types of statements made by Defendant Sang Lee and others
that can be observed on the video published by the Guardian.[20]  These
taunts started while Spencer and Taloa were on the bluffs getting ready to
surf. One individual continued to heckle Spencer and Taloa on their way
down to the beach and into the water.

Blakeman was already in the water and began paddling around
Spencer and Taloa in a tight circle – staying just a few feet away from them.
There was no legitimate reason for this conduct. Reed believes that this is a
tactic used by the Bay Boys to harass people.[21]  Blakeman impeded
Spencer's movement in any direction and was intentionally blocking him
from catching any waves. It was clear to Spencer that Blakeman was not
there to surf that morning. Instead, his mission was to prevent Spencer and
Taloa from surfing and to keep them from enjoying their time in the water,
the open space, the waves, and nature. This the type of concerted effort was
described by Charlie Ferrara to Reed as the way the Bay Boys act to keep
people from surfing at Lunada Bay. In the approximately 90 minutes that
Spencer was in the water that day, Blakeman was focused on Spencer and
Taloa and continued to shadow their movements and sit uncomfortably
close to them. Spencer had never experienced anything like that before in
his life. It was bizarre but also incredibly frightening and disturbing. It

---

[20] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

[21] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

13002592.1

1  appeared to Spencer that Blakeman was coordinating his actions with a

2  group of guys who were standing in the Rock Fort, along with others in the

3  water. They were all talking to each other and it was clear they all knew

4  each other.

5       At one point while Spencer was in the water and was paddling west

6  out to the ocean, he saw a man surfing, coming in east towards the shore.

7  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

8  of the fins on his surfboard sliced open his right wrist. Spencer has about a

9  half-inch scar from where this man ran him over. As soon as the Bay Boy

10 ran him over, he started berating Spencer, saying things like "what are you

11 fucking doing out here? I told you to go home. I should have run you over.

12 Why are you paddling in the sun glare where I can't see you?" The Bay Boy

13 was pretending that he didn't see Spencer but it was obvious that he did and

14 intentionally ran him over. With over 30 years of surfing experience, Spencer

15 knew that this collision was intentional on his part. Fearful of being further

16 injured at that point, and not wanting to get into an argument with him,

17 Spencer just paddled away. Spencer and Taloa caught one more wave after

18 that and then decided it was getting too dangerous to surf. More men started

19 showing up at the Rock Fort and Spencer and Taloa were growing

20 increasingly fearful for their safety. Spencer was also bleeding and in pain.

21 These incidents are described in the declarations filed with Plaintiffs' motion

22 for class certification and the deposition of Spencer.

23       Christopher Taloa: As set forth above, Taloa and Spencer went surfing

24 at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

25 shadowing Spencer's movement in the water. Blakeman was in the water

26 with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

27 toward Taloa, at which point Taloa told him that he was too close.

28

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

Exhibit 4 - Page 00197

1  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."
2  Taloa kept moving in the water, and Blakeman attempted to keep up with
3  him but was not in good enough shape to do so.

4      Jen Bell: The incident described above was witnessed by a woman
5  named Jen Bell who had gone to Lunada Bay that same day to photograph
6  a guy from Malibu. When she attempted sit down on the beach with her
7  pack, a man said: "You are practically sitting in a men's locker-room. You
8  don't make me feel comfortable."  Bell continued to sit there for another 10
9  minutes because she refused to be intimated but eventually decided to head
10 over to the fort because she saw another woman, Diana Reed, was taking
11 photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It
12 was obvious from the start that Johnston and Blakeman were there with the
13 intent to harass Reed. Johnston was making rude comments to both her and
14 Reed. Blakeman was putting the GoPro in their faces. Johnston was
15 chugging multiple beers and it was early in the morning. Johnston asked her
16 to help him with his wetsuit. He said "Can you help me with this?" and
17 handed her the leg of his wetsuit. Johnston made moaning sounds when
18 she took it like he was having an orgasm.

19     Jordan Wright: Wright attempted to surf Lunada Bay in January 2015
20 with Chris Claypool and Kenneth Claypool. He observed Blakeman
21 harassing Chris and Ken. Wright was sitting on the outside waiting his turn
22 for waves. By regular surfing norms, he had priority. He caught a 10- to 12-
23 foot-high wave and was up riding for several seconds. Alan Johnston
24 paddled the wrong way on this wave, dropped in on him going the wrong
25 way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
26 while going the wrong way violates normal surf etiquette. Johnston then
27 collided with Wright, and their leashes got tangled. After they surfaced from

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00198

1  the collision, Johnston then got close to Wright and yelled, "You had to

2  fucking take that wave, didn't you!" The next wave that came through then

3  broke Wright's leash plug and the board was carried into the rocks, which

4  destroyed a new surfboard. Wright had to swim in over rocks to get his

5  board and cut his hands on the rocks doing so. Wright is confident that

6  Johnston attempted to purposefully injure him. What he did was extremely

7  dangerous.

8      Wright has observed Blakeman on many occasions. Blakeman is easy

9  to identify because he rides a kneeboard and he is regularly filming visitors

10  on land with a camcorder. Wright believes his filming is an effort to intimidate

11  visitors. In the water, Wright has observed what appears to be Blakeman

12  directing other Bay Boys to sit close to visiting surfers. Wright has observed

13  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

14  the visitors, impede their movements, block their surfing, kick at them,

15  splash water at them, and dangerously drop in on them. In addition to

16  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

17  Charlie Ferrara, and David Melo engage in this activity. These incidents are

18  described in the declarations filed with Plaintiffs' motion for class

19  certification.

20      Ken Claypool: has been harassed and filmed by Blakeman in an

21  attempt to intimidate him at Lunada Bay on multiple occasions. In January

22  2015, Claypool and his brother Chris Claypool along with Jordan Wright

23  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

24  water, including Blakeman who paddled over and threatened them. Claypool

25  observed Blakeman intentionally drop in on Wright at least twice.

26      On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

27  and Jordan Wright. There was a photographer from the Los Angeles Times

28

-72-

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00199

1   that was there. Also in attendance was Cory Spencer and Diana Reed.

2   Spencer was there to watch the cars.  Blakeman was there filming in an

3   effort to intimidate visitors. Blakeman can be seen in one of the pictures

4   taken by the photographer. Also present was Defendant Papayans. Plaintiffs

5   are informed and believe that there was a text message sent that day to

6   Papayans, Michael Theil and 11 other people stating that there were 5

7   kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

8   informed that the text states: "Things could get ugly. We all need to surf."

9   These incidents are described in the declarations filed with Plaintiffs' motion

10  for class certification.

11         Chris Claypool: he and his brother Ken and Jordan Wright attempted

12  to surf Lunada Bay in January 2015.  There were about five locals in the

13  water, including Blakeman who paddled over and was yelling, "Try and catch

14  a wave and see what happens. There is no fucking way you are getting a

15  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

16  possessed or possibly on drugs. His behavior got more bizarre throughout

17  the morning. He seemed to be paddling for every wave that he could

18  physically push himself into, perhaps to make a point, but he was wiping out

19  a lot and falling down the face and tumbling across the rock reef. Blakeman

20  looked dangerous to himself. When Blakeman would actually catch a wave

21  in, he would paddle back to where Claypool and his brother were sitting, and

22  continue his insane rant. On one occasion, Blakeman came less than 12

23  inches from Claypool's ear and was screaming. It was so loud, Claypool had

24  to put his fingers in his ear to protect them from being damaged. Claypool is

25  a sound engineer and to put this in perspective, a rock concert creates about

26  120 decibels of noise - this was louder; a jet engine creates about 150

27  decibels. At one point Blakeman caught a wave and drew a line aiming right

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00200

13002592.1

1  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

2  as he narrowly missed Claypool's head. Claypool watched as Blakeman

3  intentionally dropped in on Jordan at least twice. It seemed obvious to

4  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

5  them were having fun. Because of the danger, they decided to leave.

6      When Claypool and his brother got out of water, they saw people

7  gathering on top of the cliff. One person was videotaping them from the top

8  of the cliff; it was clear to Claypool that he was doing this to try and

9  intimidate them. The people were watching them from the cliff. It was

10  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

11  obstruct his free passage and use in the customary manner of a public

12  space. It also seemed clear that Blakeman engaged in a concerted effort

13  with other Bay Boys to try and injure him. These incidents are described in

14  the declarations filed with Plaintiffs' motion for class certification.

15      Jason Gersch: While observing the surf, Gersch was approached by

16  two local Bay Boys named Peter McCollum and Brant Blakeman. These

17  individuals made it known to Gersch that he could not surf there. These

18  incidents are described in the declarations filed with Plaintiffs' motion for

19  class certification.

20      Plaintiffs are informed and believe and on that basis allege that

21  Defendant Blakeman and his attorneys are attempting to intimidate

22  witnesses in this case. On at least two occasions, an investigator hired by

23  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

24  attorneys. The investigator also showed up at the home of a reporter that

25  has not been listed as a witness.

26      The request is premature. Because Blakeman and the other

27  defendants are refusing to comply with their obligations to produce

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00201

1  documents under the federal rules and are impermissibly withholding

2  evidence and/or possibly spoliating evidence, we are not able to fully

3  respond to discovery requests which necessarily rely on our ability to fully

4  investigate the facts. As discovery is continuing, Reed reserves the right to

5  update this response.

6  **INTERROGATORY NO. 10:**

7       IDENTIFY ALL PERSONS that have knowledge of any facts that

8  support plaintiffs' Sixth Cause of Action in the Complaint (Assault) against

9  BRANT BLAKEMAN, and for each such PERSON identified state all facts

10  you contend are within that PERSON's knowledge.

11  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

12       Responding Party objects to this interrogatory as premature. Because

13  this interrogatory seeks or necessarily relies upon a contention, and

14  because this matter is in its early stages and pretrial discovery has only just

15  begun, Responding Party is unable to provide a complete response at this

16  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

17  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

18  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

19  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

20  interrogatory need not be answered until designated discovery is complete,

21  or until a pretrial conference or some other time.").

22       Responding Party further objects to this interrogatory as unduly

23  burdensome, harassing, and duplicative of information disclosed in

24  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

25  Propounding Party may look to Responding Party's Rule 26(a) disclosures

26  and supplemental disclosures for the information sought by this

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00202

1  interrogatory.  Moreover, Responding Party had the opportunity to depose

2  Ms. Reed on this topic.

3       Responding Party further objects to this interrogatory as compound.

4  This "interrogatory" contains multiple impermissible subparts, which

5  Propounding Party has propounded to circumvent the numerical limitations

6  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

7       Responding Party further objects to this interrogatory on the grounds

8  that it seeks information that is outside of Responding Party's knowledge.

9       Responding Party further objects to the extent that this interrogatory

10 invades attorney-client privilege and/or violates the work product doctrine by

11 compelling Responding Party to disclose privileged communications and/or

12 litigation strategy.

13      Subject to and without waiver of the foregoing objections, Responding

14 Party responds as follows:

15      In addition to each defendant named in his individual capacity and

16 other persons identified in Plaintiffs' initial and Supplemental Disclosures,

17 and the evidence submitted in support of Plaintiffs motion for class

18 certification, Responding Party identifies the following individuals:

19      Diana Reed: believes that Blakeman engaged in a concerted effort

20 with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

21 and use in the customary manner of a public space.  Reed also believes that

22 Blakeman coordinated with other Bay Boys to harass and assault the

23 plaintiffs and the public when they were visiting Lunada Bay. Reed believes

24 that the conduct directed at the plaintiffs and others trying to surf Lunada

25 Bay is part of an agreement among Blakeman and the other Bay Boys,

26 which at a minimum, may be implied by the conduct of the parties and other

27 members of the Bay Boys. Reed believes that the Bay Boys concerted

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00203

1   efforts to stop the public from accessing the beach are documented in text

2   messages and emails some of which have been destroyed or are being

3   withheld by the Defendants in this case. For example, on February 5, 2016,

4   Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

5   Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

6   several others that said "There are 5 kooks standing on the bluff taking

7   pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles

8   Times photographer captured a pictured of Defendant Blakeman of the bluff

9   filming plaintiffs. Plaintiffs believe that the Bay Boys take photos and/or

10  video tape people as a form of harassment and intimidation. For example,

11  plaintiffs are also informed and believe that a Lunada Bay local named

12  Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs

13  are also informed and believe that Berstein told several people after he

14  photographed them, "Now we know who you are." Plaintiffs believe that the

15  conducted directed at Reed by Blakeman and the individual Bay Boys is

16  because she is a woman. Plaintiff is informed and believes that there are

17  numerous text messages where the Bay Boys refer to Reed as a "bitch" and

18  make sexual comments about her.

19         The specific acts directed against Reed include but are not limited to

20  the following:

21         i)      Reed went to Lunada Bay on January 29, 2016 with Jordan

22  Wright.  Reed had intended to surf at Lunada Bay that day because the

23  conditions were such that she felt comfortable surfing.[22] Immediately after

24

25  _____

26  [22] Plaintiffs are informed and believe that there were text message sent on
    January 29, 2016 asking Defendant Papayans "Where are you? Kooks
27  trying to get to the Bay." Plaintiffs are informed and believe that Papayans
    responded with a "LOL" and said he would be there.
28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00204

they parked their car along the bluffs, the harassment began. Several men drove by and circled around their car. This was the day that she and Wright were harassed and intimidated by David Melo. Blakeman was recording them on land with his camera. It was very disturbing to Reed and made her feel very uncomfortable. Plaintiffs are informed and believe that this was witnessed by John MacHarg.

ii)      On or about February 12, 2016, The Los Angeles Times published an article called  "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm."

iii)      On February 13, 2016, Reed returned to Lunada Bay with Jordan Wright to watch him surf and take photographs. Prior to her arrival, she contacted the Palos Verdes Estates Police and requested an escort from the bluffs to the beach. She was concerned about her safety given the January 29, 2016 incident. She was told that the police were unavailable and no officers were present when they arrived. When Reed and Wright reached the beach, they encountered angry locals who were yelling at them. Reed and Wright ignored the harassment and Wright got into the water to surf and Reed made her way to the Rock Fort where she planned to watch Wright and photograph him.

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00205

1    Approximately two hours after Reed had arrived at Lunada Bay, while

2   she was standing in the Rock Fort taking photos, Blakeman and defendant

3   Alan Johnston rushed into the fort and ran towards her in a hostile and

4   aggressive manner. It seemed that they had coordinated and orchestrated

5   the attack which completely caught Reed off guard. Blakeman was filming

6   Reed again, and at times, held his camera right in her face. It was

7   intimidating and harassing to Reed, and she feared for her safety.

8    Reed asked Blakeman and Johnston why they were filming her,

9   because it made her uncomfortable. Blakeman responded, "because I feel

10  like it." Johnston responded, "because you're hot. Because you're fucking

11  sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

12  way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

13  fear, was unable to leave the Rock Fort as Blakeman and Johnston were

14  standing closest to the exit.

15    iii)    Plaintiffs are informed and believe that after the incident

16  Defendant Johnston started calling and/or texting other Lunada Bay locals to

17  check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

18  Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

19  informed and believe that later that day Johnston received a text from his

20  mother asking him "What happened at the bay?" Johnston replied "Nothing

21  happened really just couple of trolls they got nothing."

22    Reed further identifies the following individuals as having knowledge of

23  concerted efforts by the Bay Boys, including Blakeman:

24    Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

25  Bay. Almost instantly after they arrived at Lunada Bay, they started getting

26  harassed by Bay Boys. They were told that they couldn't surf there, and

27  Spencer was called a "kook," which is a derogatory surfing term. Spencer

28

-79-

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

Exhibit 4 - Page 00206

1  was also told: "why don't you fucking go home, you fucking kook;" and was

2  asked, "how many other good places did you pass to come here?" These

3  are the same types of statements made by Defendant Sang Lee and others

4  that can be observed on the video published by the Guardian.[23]  These

5  taunts started while Spencer and Taloa were on the bluffs getting ready to

6  surf. One individual continued to heckle Spencer and Taloa on their way

7  down to the beach and into the water.

8       Blakeman was already in the water and began paddling around

9  Spencer and Taloa in a tight circle – staying just a few feet away from them.

10 There was no legitimate reason for this conduct. Reed believes that this is a

11 tactic used by the Bay Boys to harass people.[24]  Blakeman impeded

12 Spencer's movement in any direction and was intentionally blocking him

13 from catching any waves. It was clear to Spencer that Blakeman was not

14 there to surf that morning. Instead, his mission was to prevent Spencer and

15 Taloa from surfing and to keep them from enjoying their time in the water,

16 the open space, the waves, and nature. This the type of concerted effort was

17 described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

18 people from surfing at Lunada Bay. In the approximately 90 minutes that

19 Spencer was in the water that day, Blakeman was focused on Spencer and

20 Taloa and continued to shadow their movements and sit uncomfortably

21 close to them. Spencer had never experienced anything like that before in

22 his life. It was bizarre but also incredibly frightening and disturbing. It

23

24 _____

25 [23] https://www.theguardian.com/travel/video/2015/may/18/california-surf-
   wars-lunada-bay-localism-video.

26 [24] Plaintiffs are informed and believe that Defendant Papayans sent a text

27 message describing similar conduct: "We just had a kook out in the water

28 and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN
Exhibit 4 - Page 00207

13002592.1

1 | appeared to Spencer that Blakeman was coordinating his actions with a
2 | group of guys who were standing in the Rock Fort, along with others in the
3 | water. They were all talking to each other and it was clear they all knew
4 | each other.

5 | At one point while Spencer was in the water and was paddling west
6 | out to the ocean, he saw a man surfing, coming in east towards the shore.
7 | The Bay Boy ran over his hand/wrist that was holding his surfboard and one
8 | of the fins on his surfboard sliced open his right wrist. Spencer has about a
9 | half-inch scar from where this man ran him over. As soon as the Bay Boy
10 | ran him over, he started berating Spencer, saying things like "what are you
11 | fucking doing out here? I told you to go home. I should have run you over.
12 | Why are you paddling in the sun glare where I can't see you?" The Bay Boy
13 | was pretending that he didn't see Spencer but it was obvious that he did and
14 | intentionally ran him over. With over 30 years of surfing experience, Spencer
15 | knew that this collision was intentional on his part. Fearful of being further
16 | injured at that point, and not wanting to get into an argument with him,
17 | Spencer just paddled away. Spencer and Taloa caught one more wave after
18 | that and then decided it was getting too dangerous to surf. More men started
19 | showing up at the Rock Fort and Spencer and Taloa were growing
20 | increasingly fearful for their safety. Spencer was also bleeding and in pain.
21 | These incidents are described in the declarations filed with Plaintiffs' motion
22 | for class certification and the deposition of Spencer.

23 | Christopher Taloa: As set forth above, Taloa and Spencer went surfing
24 | at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman
25 | shadowing Spencer's movement in the water. Blakeman was in the water
26 | with four or five other Lunada Bay Locals.  At one point, Blakeman paddled
27 | toward Taloa, at which point Taloa told him that he was too close.

28 |

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00208

1 Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

2 Taloa kept moving in the water, and Blakeman attempted to keep up with

3 him but was not in good enough shape to do so.

4      Jen Bell: The incident described above was witnessed by a woman

5 named Jen Bell who had gone to Lunada Bay that same day to photograph

6 a guy from Malibu. When she attempted sit down on the beach with her

7 pack, a man said: "You are practically sitting in a men's locker-room. You

8 don't make me feel comfortable."  Bell continued to sit there for another 10

9 minutes because she refused to be intimated but eventually decided to head

10 over to the fort because she saw another woman, Diana Reed, was taking

11 photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

12 was obvious from the start that Johnston and Blakeman were there with the

13 intent to harass Reed. Johnston was making rude comments to both her and

14 Reed. Blakeman was putting the GoPro in their faces. Johnston was

15 chugging multiple beers and it was early in the morning. Johnston asked her

16 to help him with his wetsuit. He said "Can you help me with this?" and

17 handed her the leg of his wetsuit. Johnston made moaning sounds when

18 she took it like he was having an orgasm.

19      Jordan Wright: Wright attempted to surf Lunada Bay in January 2015

20 with Chris Claypool and Kenneth Claypool. He observed Blakeman

21 harassing Chris and Ken. Wright was sitting on the outside waiting his turn

22 for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

23 foot-high wave and was up riding for several seconds. Alan Johnston

24 paddled the wrong way on this wave, dropped in on him going the wrong

25 way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

26 while going the wrong way violates normal surf etiquette. Johnston then

27 collided with Wright, and their leashes got tangled. After they surfaced from

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00209

1   the collision, Johnston then got close to Wright and yelled, "You had to

2   fucking take that wave, didn't you!" The next wave that came through then

3   broke Wright's leash plug and the board was carried into the rocks, which

4   destroyed a new surfboard. Wright had to swim in over rocks to get his

5   board and cut his hands on the rocks doing so. Wright is confident that

6   Johnston attempted to purposefully injure him. What he did was extremely

7   dangerous.

8       Wright has observed Blakeman on many occasions. Blakeman is easy

9   to identify because he rides a kneeboard and he is regularly filming visitors

10  on land with a camcorder. Wright believes his filming is an effort to intimidate

11  visitors. In the water, Wright has observed what appears to be Blakeman

12  directing other Bay Boys to sit close to visiting surfers. Wright has observed

13  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

14  the visitors, impede their movements, block their surfing, kick at them,

15  splash water at them, and dangerously drop in on them. In addition to

16  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

17  Charlie Ferrara, and David Melo engage in this activity. These incidents are

18  described in the declarations filed with Plaintiffs' motion for class

19  certification.

20      Ken Claypool: has been harassed and filmed by Blakeman in an

21  attempt to intimidate him at Lunada Bay on multiple occasions. In January

22  2015, Claypool and his brother Chris Claypool along with Jordan Wright

23  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

24  water, including Blakeman who paddled over and threatened them. Claypool

25  observed Blakeman intentionally drop in on Wright at least twice.

26      On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

27  and Jordan Wright. There was a photographer from the Los Angeles Times

28

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN
Exhibit 4 - Page 00210

1   that was there. Also in attendance was Cory Spencer and Diana Reed.

2   Spencer was there to watch the cars.  Blakeman was there filming in an

3   effort to intimidate visitors. Blakeman can be seen in one of the pictures

4   taken by the photographer. Also present was Defendant Papayans. Plaintiffs

5   are informed and believe that there was a text message sent that day to

6   Papayans, Michael Theil and 11 other people stating that there were 5

7   kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

8   informed that the text states: "Things could get ugly. We all need to surf."

9   These incidents are described in the declarations filed with Plaintiffs' motion

10  for class certification.

11       Chris Claypool: he and his brother Ken and Jordan Wright attempted

12  to surf Lunada Bay in January 2015.  There were about five locals in the

13  water, including Blakeman who paddled over and was yelling, "Try and catch

14  a wave and see what happens. There is no fucking way you are getting a

15  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

16  possessed or possibly on drugs. His behavior got more bizarre throughout

17  the morning. He seemed to be paddling for every wave that he could

18  physically push himself into, perhaps to make a point, but he was wiping out

19  a lot and falling down the face and tumbling across the rock reef. Blakeman

20  looked dangerous to himself. When Blakeman would actually catch a wave

21  in, he would paddle back to where Claypool and his brother were sitting, and

22  continue his insane rant. On one occasion, Blakeman came less than 12

23  inches from Claypool's ear and was screaming. It was so loud, Claypool had

24  to put his fingers in his ear to protect them from being damaged. Claypool is

25  a sound engineer and to put this in perspective, a rock concert creates about

26  120 decibels of noise - this was louder; a jet engine creates about 150

27  decibels. At one point Blakeman caught a wave and drew a line aiming right

28

-84-                          Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00211

1   at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

2   as he narrowly missed Claypool's head. Claypool watched as Blakeman

3   intentionally dropped in on Jordan at least twice. It seemed obvious to

4   Claypool that Blakeman and the other Bay Boy wanted to make sure none of

5   them were having fun. Because of the danger, they decided to leave.

6         When Claypool and his brother got out of water, they saw people

7   gathering on top of the cliff. One person was videotaping them from the top

8   of the cliff; it was clear to Claypool that he was doing this to try and

9   intimidate them. The people were watching them from the cliff. It was

10   obvious that Blakeman engaged in a concerted effort with other Bay Boys to

11   obstruct his free passage and use in the customary manner of a public

12   space. It also seemed clear that Blakeman engaged in a concerted effort

13   with other Bay Boys to try and injure him. These incidents are described in

14   the declarations filed with Plaintiffs' motion for class certification.

15         Jason Gersch: While observing the surf, Gersch was approached by

16   two local Bay Boys named Peter McCollum and Brant Blakeman. These

17   individuals made it known to Gersch that he could not surf there. These

18   incidents are described in the declarations filed with Plaintiffs' motion for

19   class certification.

20         Plaintiffs are informed and believe and on that basis allege that

21   Defendant Blakeman and his attorneys are attempting to intimidate

22   witnesses in this case. On at least two occasions, an investigator hired by

23   Blakeman's attorneys contacted witnesses represented by Plaintiffs'

24   attorneys. The investigator also showed up at the home of a reporter that

25   has not been listed as a witness.

26         The request is premature. Because Blakeman and the other

27   defendants are refusing to comply with their obligations to produce

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00212

1   documents under the federal rules and are impermissibly withholding

2   evidence and/or possibly spoliating evidence, we are not able to fully

3   respond to discovery requests which necessarily rely on our ability to fully

4   investigate the facts. As discovery is continuing, Reed reserves the right to

5   update this response.

6   **INTERROGATORY NO. 11:**

7        IDENTIFY ALL PERSONS that have knowledge of any facts that

8   support plaintiffs' Seventh Cause of Action in the Complaint (Battery) against

9   BRANT BLAKEMAN, and for each such PERSON identified state all facts

10  you contend are within that PERSON's knowledge.

11  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

12       Responding Party objects to this interrogatory as premature. Because

13  this interrogatory seeks or necessarily relies upon a contention, and

14  because this matter is in its early stages and pretrial discovery has only just

15  begun, Responding Party is unable to provide a complete response at this

16  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

17  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

18  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

19  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

20  interrogatory need not be answered until designated discovery is complete,

21  or until a pretrial conference or some other time.").

22       Responding Party further objects to this interrogatory as unduly

23  burdensome, harassing, and duplicative of information disclosed in

24  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

25  Propounding Party may look to Responding Party's Rule 26(a) disclosures

26  and supplemental disclosures for the information sought by this

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00213

1 | interrogatory.  Moreover, Responding Party had the opportunity to depose
2 | Ms. Reed on this topic.

3 | Responding Party further objects to this interrogatory as compound.
4 | This "interrogatory" contains multiple impermissible subparts, which
5 | Propounding Party has propounded to circumvent the numerical limitations
6 | on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

7 | Responding Party further objects to this interrogatory on the grounds
8 | that it seeks information that is outside of Responding Party's knowledge.

9 | Responding Party further objects to the extent that this interrogatory
10 | invades attorney-client privilege and/or violates the work product doctrine by
11 | compelling Responding Party to disclose privileged communications and/or
12 | litigation strategy.

13 | Subject to and without waiver of the foregoing objections, Responding
14 | Party responds as follows:

15 | In addition to each defendant named in his individual capacity and
16 | other persons identified in Plaintiffs' initial and Supplemental Disclosures,
17 | and the evidence submitted in support of Plaintiffs motion for class
18 | certification, Responding Party identifies the following individuals:

19 | Diana Reed: believes that Blakeman engaged in a concerted effort
20 | with other Bay Boys to obstruct the plaintiffs' and the publics' free passage
21 | and use in the customary manner of a public space.  Reed also believes that
22 | Blakeman coordinated with other Bay Boys to harass and assault the
23 | plaintiffs and the public when they were visiting Lunada Bay. Reed believes
24 | that the conduct directed at the plaintiffs and others trying to surf Lunada
25 | Bay is part of an agreement among Blakeman and the other Bay Boys,
26 | which at a minimum, may be implied by the conduct of the parties and other
27 | members of the Bay Boys. Reed believes that the Bay Boys concerted

28 |

-87-

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

Exhibit 4 - Page 00214

efforts to stop the public from accessing the beach are documented in text messages and emails some of which have been destroyed or are being withheld by the Defendants in this case. For example, on February 5, 2016, Charles Mowat sent a text message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and several others that said "There are 5 kooks standing on the bluff taking pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles Times photographer captured a pictured of Defendant Blakeman of the bluff filming plaintiffs. Plaintiffs believe that the Bay Boys take photos and/or video tape people as a form of harassment and intimidation. For example, plaintiffs are also informed and believe that a Lunada Bay local named Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs are also informed and believe that Berstein told several people after he photographed them, "Now we know who you are." Plaintiffs believe that the conducted directed at Reed by Blakeman and the individual Bay Boys is because she is a woman. Plaintiff is informed and believes that there are numerous text messages where the Bay Boys refer to Reed as a "bitch" and make sexual comments about her.

The specific acts directed against Reed include but are not limited to the following:

i)   Reed went to Lunada Bay on January 29, 2016 with Jordan Wright.  Reed had intended to surf at Lunada Bay that day because the conditions were such that she felt comfortable surfing. Immediately after they parked their car along the bluffs, the harassment began. Several men drove by and circled around their car. This was the day that she and Wright were harassed and intimidated by David Melo. Blakeman was recording them on land with his camera. It was very disturbing to Reed and made her

-88-

13002592.1

1  feel very uncomfortable. Plaintiffs are informed and believe that this was

2  witnessed by John MacHarg.

3      ii)    On or about February 12, 2016, The Los Angeles Times

4  published an article called "Bay Boys surfer gang cannot block access to

5  upscale beach, Coastal Commission says." Jordan Wright and Cory

6  Spencer are quoted in the article. Mr. Wright and a few others had planned

7  to surf Lunada Bay the following morning. Plaintiffs are informed and believe

8  that Defendants Johnston and Blakeman learned that Jordan Wright and

9  Diana Reed were going to Lunada Bay and planned to be there to harass

10 them. On February 12, 2016, Defendant Alan Johnston sent the following

11 text messages to an unknown recipient: "No fucking way Taloa is back this

12 year" and "If u really wanna be a bay boy we might meet help tomm."

13     iii)   On February 13, 2016, Reed returned to Lunada Bay with

14 Jordan Wright to watch him surf and take photographs. Prior to her arrival,

15 she contacted the Palos Verdes Estates Police and requested an escort

16 from the bluffs to the beach. She was concerned about her safety given the

17 January 29, 2016 incident. She was told that the police were unavailable

18 and no officers were present when they arrived. When Reed and Wright

19 reached the beach, they encountered angry locals who were yelling at them.

20 Reed and Wright ignored the harassment and Wright got into the water to

21 surf and Reed made her way to the Rock Fort where she planned to watch

22 Wright and photograph him.

23     Approximately two hours after Reed had arrived at Lunada Bay, while

24 she was standing in the Rock Fort taking photos, Blakeman and defendant

25 Alan Johnston rushed into the fort and ran towards her in a hostile and

26 aggressive manner. It seemed that they had coordinated and orchestrated

27 the attack which completely caught Reed off guard. Blakeman was filming

28

-89-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00216

1 | Reed again, and at times, held his camera right in her face. It was
2 | intimidating and harassing to Reed, and she feared for her safety.

3 |      Reed asked Blakeman and Johnston why they were filming her,
4 | because it made her uncomfortable. Blakeman responded, "because I feel
5 | like it." Johnston responded, "because you're hot. Because you're fucking
6 | sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful
7 | way so that it sprayed Reed's arm and her camera. Reed, paralyzed with
8 | fear, was unable to leave the Rock Fort as Blakeman and Johnston were
9 | standing closest to the exit.

10 |      iii)    Plaintiffs are informed and believe that after the incident
11 | Defendant Johnston started calling and/or texting other Lunada Bay locals to
12 | check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers
13 | Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are
14 | informed and believe that later that day Johnston received a text from his
15 | mother asking him "What happened at the bay?" Johnston replied "Nothing
16 | happened really just couple of trolls they got nothing."

17 |      Reed further identifies the following individuals as having knowledge of
18 | concerted efforts by the Bay Boys, including Blakeman:

19 |      Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada
20 | Bay. Almost instantly after they arrived at Lunada Bay, they started getting
21 | harassed by Bay Boys. They were told that they couldn't surf there, and
22 | Spencer was called a "kook," which is a derogatory surfing term. Spencer
23 | was also told: "why don't you fucking go home, you fucking kook;" and was
24 | asked, "how many other good places did you pass to come here?" These
25 | are the same types of statements made by Defendant Sang Lee and others

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00217

1  that can be observed on the video published by the Guardian.[25]  These

2  taunts started while Spencer and Taloa were on the bluffs getting ready to

3  surf. One individual continued to heckle Spencer and Taloa on their way

4  down to the beach and into the water.

5      Blakeman was already in the water and began paddling around

6  Spencer and Taloa in a tight circle – staying just a few feet away from them.

7  There was no legitimate reason for this conduct. Reed believes that this is a

8  tactic used by the Bay Boys to harass people.[26]  Blakeman impeded

9  Spencer's movement in any direction and was intentionally blocking him

10  from catching any waves. It was clear to Spencer that Blakeman was not

11  there to surf that morning. Instead, his mission was to prevent Spencer and

12  Taloa from surfing and to keep them from enjoying their time in the water,

13  the open space, the waves, and nature. This the type of concerted effort was

14  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

15  people from surfing at Lunada Bay. In the approximately 90 minutes that

16  Spencer was in the water that day, Blakeman was focused on Spencer and

17  Taloa and continued to shadow their movements and sit uncomfortably

18  close to them. Spencer had never experienced anything like that before in

19  his life. It was bizarre but also incredibly frightening and disturbing. It

20  appeared to Spencer that Blakeman was coordinating his actions with a

21  group of guys who were standing in the Rock Fort, along with others in the

22  water. They were all talking to each other and it was clear they all knew

23

24  _____

25  [25] https://www.theguardian.com/travel/video/2015/may/18/california-surf-
   wars-lunada-bay-localism-video.

26  [26] Plaintiffs are informed and believe that Defendant Papayans sent a text

27  message describing similar conduct: "We just had a kook out in the water

28  and me and Jack just sat on his ass."

1   each other.

2       At one point while Spencer was in the water and was paddling west

3   out to the ocean, he saw a man surfing, coming in east towards the shore.

4   The Bay Boy ran over his hand/wrist that was holding his surfboard and one

5   of the fins on his surfboard sliced open his right wrist. Spencer has about a

6   half-inch scar from where this man ran him over. As soon as the Bay Boy

7   ran him over, he started berating Spencer, saying things like "what are you

8   fucking doing out here? I told you to go home. I should have run you over.

9   Why are you paddling in the sun glare where I can't see you?" The Bay Boy

10  was pretending that he didn't see Spencer but it was obvious that he did and

11  intentionally ran him over. With over 30 years of surfing experience, Spencer

12  knew that this collision was intentional on his part. Fearful of being further

13  injured at that point, and not wanting to get into an argument with him,

14  Spencer just paddled away. Spencer and Taloa caught one more wave after

15  that and then decided it was getting too dangerous to surf. More men started

16  showing up at the Rock Fort and Spencer and Taloa were growing

17  increasingly fearful for their safety. Spencer was also bleeding and in pain.

18  These incidents are described in the declarations filed with Plaintiffs' motion

19  for class certification and the deposition of Spencer.

20      Christopher Taloa: As set forth above, Taloa and Spencer went surfing

21  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

22  shadowing Spencer's movement in the water. Blakeman was in the water

23  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

24  toward Taloa, at which point Taloa told him that he was too close.

25  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

26  Taloa kept moving in the water, and Blakeman attempted to keep up with

27  him but was not in good enough shape to do so.

28

-92-                          Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1     Jen Bell: The incident described above was witnessed by a woman

2  named Jen Bell who had gone to Lunada Bay that same day to photograph

3  a guy from Malibu. When she attempted sit down on the beach with her

4  pack, a man said: "You are practically sitting in a men's locker-room. You

5  don't make me feel comfortable."  Bell continued to sit there for another 10

6  minutes because she refused to be intimated but eventually decided to head

7  over to the fort because she saw another woman, Diana Reed, was taking

8  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

9  was obvious from the start that Johnston and Blakeman were there with the

10  intent to harass Reed. Johnston was making rude comments to both her and

11  Reed. Blakeman was putting the GoPro in their faces. Johnston was

12  chugging multiple beers and it was early in the morning. Johnston asked her

13  to help him with his wetsuit. He said "Can you help me with this?" and

14  handed her the leg of his wetsuit. Johnston made moaning sounds when

15  she took it like he was having an orgasm.

16     Jordan Wright: Wright attempted to surf Lunada Bay in January 2015

17  with Chris Claypool and Kenneth Claypool. He observed Blakeman

18  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

19  for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

20  foot-high wave and was up riding for several seconds. Alan Johnston

21  paddled the wrong way on this wave, dropped in on him going the wrong

22  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

23  while going the wrong way violates normal surf etiquette. Johnston then

24  collided with Wright, and their leashes got tangled. After they surfaced from

25  the collision, Johnston then got close to Wright and yelled, "You had to

26  fucking take that wave, didn't you!" The next wave that came through then

27  broke Wright's leash plug and the board was carried into the rocks, which

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00220

1  destroyed a new surfboard. Wright had to swim in over rocks to get his

2  board and cut his hands on the rocks doing so. Wright is confident that

3  Johnston attempted to purposefully injure him. What he did was extremely

4  dangerous.

5       Wright has observed Blakeman on many occasions. Blakeman is easy

6  to identify because he rides a kneeboard and he is regularly filming visitors

7  on land with a camcorder. Wright believes his filming is an effort to intimidate

8  visitors. In the water, Wright has observed what appears to be Blakeman

9  directing other Bay Boys to sit close to visiting surfers. Wright has observed

10  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

11  the visitors, impede their movements, block their surfing, kick at them,

12  splash water at them, and dangerously drop in on them. In addition to

13  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

14  Charlie Ferrara, and David Melo engage in this activity. These incidents are

15  described in the declarations filed with Plaintiffs' motion for class

16  certification.

17       Ken Claypool: has been harassed and filmed by Blakeman in an

18  attempt to intimidate him at Lunada Bay on multiple occasions. In January

19  2015, Claypool and his brother Chris Claypool along with Jordan Wright

20  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

21  water, including Blakeman who paddled over and threatened them. Claypool

22  observed Blakeman intentionally drop in on Wright at least twice.

23       On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

24  and Jordan Wright. There was a photographer from the Los Angeles Times

25  that was there. Also in attendance was Cory Spencer and Diana Reed.

26  Spencer was there to watch the cars.  Blakeman was there filming in an

27  effort to intimidate visitors. Blakeman can be seen in one of the pictures

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00221

taken by the photographer. Also present was Defendant Papayans. Plaintiffs

are informed and believe that there was a text message sent that day to

Papayans, Michael Theil and 11 other people stating that there were 5

kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

informed that the text states: "Things could get ugly. We all need to surf."

These incidents are described in the declarations filed with Plaintiffs' motion

for class certification.

     Chris Claypool: he and his brother Ken and Jordan Wright attempted

to surf Lunada Bay in January 2015.  There were about five locals in the

water, including Blakeman who paddled over and was yelling, "Try and catch

a wave and see what happens. There is no fucking way you are getting a

wave. Just go in. Just go. You better not cut me off."  Blakeman looked

possessed or possibly on drugs. His behavior got more bizarre throughout

the morning. He seemed to be paddling for every wave that he could

physically push himself into, perhaps to make a point, but he was wiping out

a lot and falling down the face and tumbling across the rock reef. Blakeman

looked dangerous to himself. When Blakeman would actually catch a wave

in, he would paddle back to where Claypool and his brother were sitting, and

continue his insane rant. On one occasion, Blakeman came less than 12

inches from Claypool's ear and was screaming. It was so loud, Claypool had

to put his fingers in his ear to protect them from being damaged. Claypool is

a sound engineer and to put this in perspective, a rock concert creates about

120 decibels of noise - this was louder; a jet engine creates about 150

decibels. At one point Blakeman caught a wave and drew a line aiming right

at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

as he narrowly missed Claypool's head. Claypool watched as Blakeman

intentionally dropped in on Jordan at least twice. It seemed obvious to

-95-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00222

1 Claypool that Blakeman and the other Bay Boy wanted to make sure none of
2 them were having fun. Because of the danger, they decided to leave.

3     When Claypool and his brother got out of water, they saw people
4 gathering on top of the cliff. One person was videotaping them from the top
5 of the cliff; it was clear to Claypool that he was doing this to try and
6 intimidate them. The people were watching them from the cliff. It was
7 obvious that Blakeman engaged in a concerted effort with other Bay Boys to
8 obstruct his free passage and use in the customary manner of a public
9 space. It also seemed clear that Blakeman engaged in a concerted effort
10 with other Bay Boys to try and injure him. These incidents are described in
11 the declarations filed with Plaintiffs' motion for class certification.

12     Jason Gersch: While observing the surf, Gersch was approached by
13 two local Bay Boys named Peter McCollum and Brant Blakeman. These
14 individuals made it known to Gersch that he could not surf there. These
15 incidents are described in the declarations filed with Plaintiffs' motion for
16 class certification.

17     Plaintiffs are informed and believe and on that basis allege that
18 Defendant Blakeman and his attorneys are attempting to intimidate
19 witnesses in this case. On at least two occasions, an investigator hired by
20 Blakeman's attorneys contacted witnesses represented by Plaintiffs'
21 attorneys. The investigator also showed up at the home of a reporter that
22 has not been listed as a witness.

23     The request is premature. Because Blakeman and the other
24 defendants are refusing to comply with their obligations to produce
25 documents under the federal rules and are impermissibly withholding
26 evidence and/or possibly spoliating evidence, we are not able to fully
27 respond to discovery requests which necessarily rely on our ability to fully

28

-96-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00223

1  investigate the facts. As discovery is continuing, Reed reserves the right to

2  update this response.

3  **INTERROGATORY NO. 12:**

4       IDENTIFY ALL PERSONS that have knowledge of any facts that

5  support plaintiffs' Eight Cause of Action in the Complaint (Negligence)

6  against BRANT BLAKEMAN, and for each such PERSON identified state all

7  facts you contend are within that PERSON's knowledge.

8  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

9       Responding Party objects to this interrogatory as premature. Because

10  this interrogatory seeks or necessarily relies upon a contention, and

11  because this matter is in its early stages and pretrial discovery has only just

12  begun, Responding Party is unable to provide a complete response at this

13  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

14  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

15  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

16  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

17  interrogatory need not be answered until designated discovery is complete,

18  or until a pretrial conference or some other time.").

19       Responding Party further objects to this interrogatory as unduly

20  burdensome, harassing, and duplicative of information disclosed in

21  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

22  Propounding Party may look to Responding Party's Rule 26(a) disclosures

23  and supplemental disclosures for the information sought by this

24  interrogatory.  Moreover, Responding Party had the opportunity to depose

25  Ms. Reed on this topic.

26       Responding Party further objects to this interrogatory as compound.

27  This "interrogatory" contains multiple impermissible subparts, which

28

1  Propounding Party has propounded to circumvent the numerical limitations

2  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

3       Responding Party further objects to this interrogatory on the grounds

4  that it seeks information that is outside of Responding Party's knowledge.

5       Responding Party further objects to the extent that this interrogatory

6  invades attorney-client privilege and/or violates the work product doctrine by

7  compelling Responding Party to disclose privileged communications and/or

8  litigation strategy.

9       Subject to and without waiver of the foregoing objections, Responding

10  Party responds as follows:

11       In addition to each defendant named in his individual capacity and

12  other persons identified in Plaintiffs' initial and Supplemental Disclosures,

13  and the evidence submitted in support of Plaintiffs motion for class

14  certification, Responding Party identifies the following individuals:

15       Diana Reed: believes that Blakeman engaged in a concerted effort

16  with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

17  and use in the customary manner of a public space.  Reed also believes that

18  Blakeman coordinated with other Bay Boys to harass and assault the

19  plaintiffs and the public when they were visiting Lunada Bay. Reed believes

20  that the conduct directed at the plaintiffs and others trying to surf Lunada

21  Bay is part of an agreement among Blakeman and the other Bay Boys,

22  which at a minimum, may be implied by the conduct of the parties and other

23  members of the Bay Boys. Reed believes that the Bay Boys concerted

24  efforts to stop the public from accessing the beach are documented in text

25  messages and emails some of which have been destroyed or are being

26  withheld by the Defendants in this case. For example, on February 5, 2016,

27  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

28

-98-                    Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

Exhibit 4 - Page 00225

1  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

2  several others that said "There are 5 kooks standing on the bluff taking

3  pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles

4  Times photographer captured a pictured of Defendant Blakeman of the bluff

5  filming plaintiffs.  Plaintiffs believe that the Bay Boys take photos and/or

6  video tape people as a form of harassment and intimidation. For example,

7  plaintiffs are also informed and believe that a Lunada Bay local named

8  Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs

9  are also informed and believe that Berstein told several people after he

10 photographed them, "Now we know who you are." Plaintiffs believe that the

11 conducted directed at Reed by Blakeman and the individual Bay Boys is

12 because she is a woman. Plaintiff is informed and believes that there are

13 numerous text messages where the Bay Boys refer to Reed as a "bitch" and

14 make sexual comments about her.

15      The specific acts directed against Reed include but are not limited to

16 the following:

17      i)      Reed went to Lunada Bay on January 29, 2016 with Jordan

18 Wright.  Reed had intended to surf at Lunada Bay that day because the

19 conditions were such that she felt comfortable surfing.[27] Immediately after

20 they parked their car along the bluffs, the harassment began. Several men

21 drove by and circled around their car. This was the day that she and Wright

22 were harassed and intimidated by David Melo. Blakeman was recording

23 them on land with his camera. It was very disturbing to Reed and made her

24

25

_____

26 [27] Plaintiffs are informed and believe that there were text message sent on January 29, 2016 asking Defendant Papayans "Where are you? Kooks

27 trying to get to the Bay." Plaintiffs are informed and believe that Papayans

28 responded with a "LOL" and said he would be there.

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00226

1  feel very uncomfortable. Plaintiffs are informed and believe that this was

2  witnessed by John MacHarg.

3          ii)     On or about February 12, 2016, The Los Angeles Times

4  published an article called "Bay Boys surfer gang cannot block access to

5  upscale beach, Coastal Commission says." Jordan Wright and Cory

6  Spencer are quoted in the article. Mr. Wright and a few others had planned

7  to surf Lunada Bay the following morning. Plaintiffs are informed and believe

8  that Defendants Johnston and Blakeman learned that Jordan Wright and

9  Diana Reed were going to Lunada Bay and planned to be there to harass

10  them. On February 12, 2016, Defendant Alan Johnston sent the following

11  text messages to an unknown recipient: "No fucking way Taloa is back this

12  year" and "If u really wanna be a bay boy we might meet help tomm."

13          iii)    On February 13, 2016, Reed returned to Lunada Bay with

14  Jordan Wright to watch him surf and take photographs. Prior to her arrival,

15  she contacted the Palos Verdes Estates Police and requested an escort

16  from the bluffs to the beach. She was concerned about her safety given the

17  January 29, 2016 incident. She was told that the police were unavailable

18  and no officers were present when they arrived. When Reed and Wright

19  reached the beach, they encountered angry locals who were yelling at them.

20  Reed and Wright ignored the harassment and Wright got into the water to

21  surf and Reed made her way to the Rock Fort where she planned to watch

22  Wright and photograph him.

23          Approximately two hours after Reed had arrived at Lunada Bay, while

24  she was standing in the Rock Fort taking photos, Blakeman and defendant

25  Alan Johnston rushed into the fort and ran towards her in a hostile and

26  aggressive manner. It seemed that they had coordinated and orchestrated

27  the attack which completely caught Reed off guard. Blakeman was filming

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00227

1  Reed again, and at times, held his camera right in her face. It was

2  intimidating and harassing to Reed, and she feared for her safety.

3      Reed asked Blakeman and Johnston why they were filming her,

4  because it made her uncomfortable. Blakeman responded, "because I feel

5  like it." Johnston responded, "because you're hot. Because you're fucking

6  sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

7  way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

8  fear, was unable to leave the Rock Fort as Blakeman and Johnston were

9  standing closest to the exit.

10     iii)   Plaintiffs are informed and believe that after the incident

11 Defendant Johnston started calling and/or texting other Lunada Bay locals to

12 check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

13 Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

14 informed and believe that later that day Johnston received a text from his

15 mother asking him "What happened at the bay?" Johnston replied "Nothing

16 happened really just couple of trolls they got nothing."

17     Reed further identifies the following individuals as having knowledge of

18 concerted efforts by the Bay Boys, including Blakeman:

19     Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

20 Bay. Almost instantly after they arrived at Lunada Bay, they started getting

21 harassed by Bay Boys. They were told that they couldn't surf there, and

22 Spencer was called a "kook," which is a derogatory surfing term. Spencer

23 was also told: "why don't you fucking go home, you fucking kook;" and was

24 asked, "how many other good places did you pass to come here?" These

25 are the same types of statements made by Defendant Sang Lee and others

26

27

28

-101-

that can be observed on the video published by the Guardian.[28]  These taunts started while Spencer and Taloa were on the bluffs getting ready to surf. One individual continued to heckle Spencer and Taloa on their way down to the beach and into the water.

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct. Reed believes that this is a tactic used by the Bay Boys to harass people.[29]  Blakeman impeded Spencer's movement in any direction and was intentionally blocking him from catching any waves. It was clear to Spencer that Blakeman was not there to surf that morning. Instead, his mission was to prevent Spencer and Taloa from surfing and to keep them from enjoying their time in the water, the open space, the waves, and nature. This the type of concerted effort was described by Charlie Ferrara to Reed as the way the Bay Boys act to keep people from surfing at Lunada Bay. In the approximately 90 minutes that Spencer was in the water that day, Blakeman was focused on Spencer and Taloa and continued to shadow their movements and sit uncomfortably close to them. Spencer had never experienced anything like that before in his life. It was bizarre but also incredibly frightening and disturbing. It appeared to Spencer that Blakeman was coordinating his actions with a group of guys who were standing in the Rock Fort, along with others in the water. They were all talking to each other and it was clear they all knew

---

[28] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

[29] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00229

1 | each other.

2 |     At one point while Spencer was in the water and was paddling west

3 | out to the ocean, he saw a man surfing, coming in east towards the shore.

4 | The Bay Boy ran over his hand/wrist that was holding his surfboard and one

5 | of the fins on his surfboard sliced open his right wrist. Spencer has about a

6 | half-inch scar from where this man ran him over. As soon as the Bay Boy

7 | ran him over, he started berating Spencer, saying things like "what are you

8 | fucking doing out here? I told you to go home. I should have run you over.

9 | Why are you paddling in the sun glare where I can't see you?" The Bay Boy

10 | was pretending that he didn't see Spencer but it was obvious that he did and

11 | intentionally ran him over. With over 30 years of surfing experience, Spencer

12 | knew that this collision was intentional on his part. Fearful of being further

13 | injured at that point, and not wanting to get into an argument with him,

14 | Spencer just paddled away. Spencer and Taloa caught one more wave after

15 | that and then decided it was getting too dangerous to surf. More men started

16 | showing up at the Rock Fort and Spencer and Taloa were growing

17 | increasingly fearful for their safety. Spencer was also bleeding and in pain.

18 | These incidents are described in the declarations filed with Plaintiffs' motion

19 | for class certification and the deposition of Spencer.

20 |     Christopher Taloa: As set forth above, Taloa and Spencer went surfing

21 | at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

22 | shadowing Spencer's movement in the water. Blakeman was in the water

23 | with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

24 | toward Taloa, at which point Taloa told him that he was too close.

25 | Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

26 | Taloa kept moving in the water, and Blakeman attempted to keep up with

27 | him but was not in good enough shape to do so.

28 |

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00230

1    Jen Bell: The incident described above was witnessed by a woman
2  named Jen Bell who had gone to Lunada Bay that same day to photograph
3  a guy from Malibu. When she attempted sit down on the beach with her
4  pack, a man said: "You are practically sitting in a men's locker-room. You
5  don't make me feel comfortable."  Bell continued to sit there for another 10
6  minutes because she refused to be intimated but eventually decided to head
7  over to the fort because she saw another woman, Diana Reed, was taking
8  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It
9  was obvious from the start that Johnston and Blakeman were there with the
10  intent to harass Reed. Johnston was making rude comments to both her and
11  Reed. Blakeman was putting the GoPro in their faces. Johnston was
12  chugging multiple beers and it was early in the morning. Johnston asked her
13  to help him with his wetsuit. He said "Can you help me with this?" and
14  handed her the leg of his wetsuit. Johnston made moaning sounds when
15  she took it like he was having an orgasm.

16    Jordan Wright: Wright attempted to surf Lunada Bay in January 2015
17  with Chris Claypool and Kenneth Claypool. He observed Blakeman
18  harassing Chris and Ken. Wright was sitting on the outside waiting his turn
19  for waves. By regular surfing norms, he had priority. He caught a 10- to 12-
20  foot-high wave and was up riding for several seconds. Alan Johnston
21  paddled the wrong way on this wave, dropped in on him going the wrong
22  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
23  while going the wrong way violates normal surf etiquette. Johnston then
24  collided with Wright, and their leashes got tangled. After they surfaced from
25  the collision, Johnston then got close to Wright and yelled, "You had to
26  fucking take that wave, didn't you!" The next wave that came through then
27  broke Wright's leash plug and the board was carried into the rocks, which
28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00231

1  destroyed a new surfboard. Wright had to swim in over rocks to get his

2  board and cut his hands on the rocks doing so. Wright is confident that

3  Johnston attempted to purposefully injure him. What he did was extremely

4  dangerous.

5      Wright has observed Blakeman on many occasions. Blakeman is easy

6  to identify because he rides a kneeboard and he is regularly filming visitors

7  on land with a camcorder. Wright believes his filming is an effort to intimidate

8  visitors. In the water, Wright has observed what appears to be Blakeman

9  directing other Bay Boys to sit close to visiting surfers. Wright has observed

10  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

11  the visitors, impede their movements, block their surfing, kick at them,

12  splash water at them, and dangerously drop in on them. In addition to

13  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

14  Charlie Ferrara, and David Melo engage in this activity. These incidents are

15  described in the declarations filed with Plaintiffs' motion for class

16  certification.

17      Ken Claypool: has been harassed and filmed by Blakeman in an

18  attempt to intimidate him at Lunada Bay on multiple occasions. In January

19  2015, Claypool and his brother Chris Claypool along with Jordan Wright

20  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

21  water, including Blakeman who paddled over and threatened them. Claypool

22  observed Blakeman intentionally drop in on Wright at least twice.

23      On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

24  and Jordan Wright. There was a photographer from the Los Angeles Times

25  that was there. Also in attendance was Cory Spencer and Diana Reed.

26  Spencer was there to watch the cars.  Blakeman was there filming in an

27  effort to intimidate visitors. Blakeman can be seen in one of the pictures

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00232

1  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

2  are informed and believe that there was a text message sent that day to

3  Papayans, Michael Theil and 11 other people stating that there were 5

4  kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

5  informed that the text states: "Things could get ugly. We all need to surf."

6  These incidents are described in the declarations filed with Plaintiffs' motion

7  for class certification.

8       Chris Claypool: he and his brother Ken and Jordan Wright attempted

9  to surf Lunada Bay in January 2015.  There were about five locals in the

10  water, including Blakeman who paddled over and was yelling, "Try and catch

11  a wave and see what happens. There is no fucking way you are getting a

12  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

13  possessed or possibly on drugs. His behavior got more bizarre throughout

14  the morning. He seemed to be paddling for every wave that he could

15  physically push himself into, perhaps to make a point, but he was wiping out

16  a lot and falling down the face and tumbling across the rock reef. Blakeman

17  looked dangerous to himself. When Blakeman would actually catch a wave

18  in, he would paddle back to where Claypool and his brother were sitting, and

19  continue his insane rant. On one occasion, Blakeman came less than 12

20  inches from Claypool's ear and was screaming. It was so loud, Claypool had

21  to put his fingers in his ear to protect them from being damaged. Claypool is

22  a sound engineer and to put this in perspective, a rock concert creates about

23  120 decibels of noise - this was louder; a jet engine creates about 150

24  decibels. At one point Blakeman caught a wave and drew a line aiming right

25  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

26  as he narrowly missed Claypool's head. Claypool watched as Blakeman

27  intentionally dropped in on Jordan at least twice. It seemed obvious to

28

-106-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00233

1   Claypool that Blakeman and the other Bay Boy wanted to make sure none of

2   them were having fun. Because of the danger, they decided to leave.

3       When Claypool and his brother got out of water, they saw people

4   gathering on top of the cliff. One person was videotaping them from the top

5   of the cliff; it was clear to Claypool that he was doing this to try and

6   intimidate them. The people were watching them from the cliff. It was

7   obvious that Blakeman engaged in a concerted effort with other Bay Boys to

8   obstruct his free passage and use in the customary manner of a public

9   space. It also seemed clear that Blakeman engaged in a concerted effort

10  with other Bay Boys to try and injure him. These incidents are described in

11  the declarations filed with Plaintiffs' motion for class certification.

12      Jason Gersch: While observing the surf, Gersch was approached by

13  two local Bay Boys named Peter McCollum and Brant Blakeman. These

14  individuals made it known to Gersch that he could not surf there. These

15  incidents are described in the declarations filed with Plaintiffs' motion for

16  class certification.

17      Plaintiffs are informed and believe and on that basis allege that

18  Defendant Blakeman and his attorneys are attempting to intimidate

19  witnesses in this case. On at least two occasions, an investigator hired by

20  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

21  attorneys. The investigator also showed up at the home of a reporter that

22  has not been listed as a witness.

23      The request is premature. Because Blakeman and the other

24  defendants are refusing to comply with their obligations to produce

25  documents under the federal rules and are impermissibly withholding

26  evidence and/or possibly spoliating evidence, we are not able to fully

27  respond to discovery requests which necessarily rely on our ability to fully

28

1  investigate the facts. As discovery is continuing, Reed reserves the right to
2  update this response.
3
4
5  DATED:  Febuaryd 24, 2017          OTTEN LAW, PC
6
7
8
9
10                              By:    /s/Victor Otten
11                                     VICTOR OTTEN
                                       KAVITA TEKCHANDANI
12                                     Attorneys for Plaintiffs
                                       CORY SPENCER, DIANA MILENA
13                                     REED, and COASTAL PROTECTION
                                       RANGERS, INC.
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-108-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Exhibit 4 - Page 00235

PROOF OF SERVICE

*Spencer, et al. v. Lunada Bay Boys, et al.*

U.S.D.C. for the Central District of California

Case No. 2:16-cv-02129-SJO (RAOx)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is: 3620 Pacific Coast Highway, Suite 100, Torrance, CA 90505.

On February 24, 2017, I served the original or a true copy of the following document(s) described as:

**PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **February 24, 2017**, at Torrance, California.

/s/ Victor Otten

Victor Otten

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00236

1

## SERVICE LIST
### *Spencer, et al. v. Lunada Bay Boys, et al.*
**U.S.D.C. for the Central District of California**
**Case No. 2:16-cv-02129-SJO (RAOx)**

2

3

4

5

Robert T. Mackey, Esq.
Peter H. Crossin, Esq.
Richard P. Dieffenbach, Esq.
John P. Worgul, Esq.
VEATCH CARLSON, LLP
1055 Wilshire Blvd., 11th Floor
Los Angeles, CA  90017

*(Attorneys for Defendant BRANT BLAKEMAN)*

(served original)

6

7

8

9

10

Robert S. Cooper, Esq.
BUCHALTER NEMER, APC
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA  90017

*(Attorneys for Defendant BRANT BLAKEMAN)*

(served true copy)

11

12

13

J. Patrick Carey, Esq.
LAW OFFICES OF
 J. PATRICK CAREY
1230 Rosecrans Ave., Suite 300
Manhattan Beach, CA  90266

*(Attorney for Defendant ALAN JOHNSTON a/k/a JALIAN JOHNSTON)*

(served true copy)

14

15

16

17

Peter T. Haven, Esq.
HAVEN LAW
1230 Rosecrans Ave., Suite 300
Manhattan Beach, CA  90266

*(Attorney for Defendant MICHAEL RAY PAPAYANS)*

(served true copy)

18

19

20

21

Dana Alden Fox, Esq.
Edward E. Ward, Jr., Esq.
Eric Y. Kizirian, Esq.
Tera Lutz, Esq.
LEWIS BRISBOIS
 BISGAARD & SMITH LLP
633 W. 5th Street, Suite 4000
Los Angeles, CA  90071

*(Attorneys for Defendant SANG LEE)*

(served true copy)

22

23

24

25

26

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00237

| | |
|---|---|
| 1 | |
| 2 | Daniel M. Crowley, Esq.<br>BOOTH, MITCHEL &<br>  STRANGE LLP<br>707 Wilshire Blvd., Suite 4450<br>Los Angeles, CA  90017 | *(Attorneys for Defendant SANG LEE)*<br><br>(served true copy) |
| 3 | |
| 4 | |
| 5 | Mark C. Fields, Esq.<br>LAW OFFICES OF<br>  MARK C. FIELDS, APC<br>333 South Hope Street, 35th Floor<br>Los Angeles, CA  90071 | *(Attorney for Defendant ANGELO FERRARA and Defendant N. F. appearing through Guardian Ad Litem, Leonora Ferrara)*<br><br>(served true copy) |
| 6 | |
| 7 | |
| 8 | |
| 9 | Thomas M. Phillip, Esq.<br>Aaron G. Miller, Esq.<br>THE PHILLIPS FIRM<br>800 Wilshire Blvd., Suite 1550<br>Los Angeles, CA  90017 | *(Attorneys for Defendant ANGELO FERRARA)*<br><br>(served true copy) |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | Patrick Au, Esq.<br>Laura L. Bell, Esq.<br>BREMER WHYTE<br>  BROWN & O'MEARA, LLP<br>21271 Burbank Blvd., Suite 110<br>Woodland Hills, CA  91367 | *(Attorneys for Defendants FRANK FERRARA and CHARLIE FERRARA)*<br><br>(served true copy) |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | Edwin J. Richards, Esq.<br>Antoinette P. Hewitt, Esq.<br>Rebecca L. Wilson, Esq.<br>Jacob Song, Esq.<br>Christopher D. Glos, Esq.<br>KUTAK ROCK LLP<br>5 Park Plaza, Suite 1500<br>Irvine, CA  92614-8595 | *(Attorneys for Defendants CITY OF PALOS VERDES and CHIEF OF POLICE JEFF KEPLEY)*<br><br>(served true copy) |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Exhibit 4 - Page 00238