EXHIBIT "5"

HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
CAROLINE LEE, SBN 293297
clee@hansonbridgett.com
JENNIFER ANIKO FOLDVARY, SBN 292216
jfoldvary@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone: (916) 442-3333
Facsimile:  (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone: (310) 378-8533
Facsimile:  (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation, | CASE NO. 2:16-cv-02129-SJO (RAOx) **PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN** |

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO
INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00238

| | |
|---|---|
| Plaintiffs, | |
| v. | Complaint Filed:   March 29, 2016<br>Trial Date:         November 7, 2017 |
| LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N. F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10, | |
| Defendants. | |

PROPOUNDING PARTY:    Defendant BRANT BLAKEMAN

RESPONDING PARTY:     Plaintiff COASTAL PROTECTION RANGERS

SET NO.:              SUPPLEMENTAL

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff COASTAL PROTECTION RANGERS ("CPR" or "Responding Party") hereby submits these objections and responses to Interrogatories, Set One, propounded by Defendant BRANT BLAKEMAN ("Propounding Party").

## **PRELIMINARY STATEMENT**

Nothing in this response should be construed as an admission by Responding Party with respect to the admissibility or relevance of any fact, or of the truth or accuracy of any characterization or statement of any kind contained in Propounding Party's Interrogatories. Responding Party has not

-2-

completed its investigation of the facts relating to this case, its discovery or its preparation for trial. All responses and objections contained herein are based only upon information that is presently available to and specifically known by Responding Party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts and add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the responses set forth herein. The following objections and responses are made without prejudice to Responding Party's right to produce at trial, or otherwise, evidence regarding any subsequently discovered information. Responding Party accordingly reserves the right to modify and amend any and all responses herein as research is completed and contentions are made.

**SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

IDENTIFY ALL PERSONS that have knowledge of any facts that support your contention that BRANT BLAKEMAN participated in any way in the "commission of enumerated 'predicate crimes'" as alleged in paragraph 5 of the Complaint, and for each such PERSON identified state all facts you contend are within that PERSON's knowledge.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*, 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00240

1  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]
2  interrogatory need not be answered until designated discovery is complete,
3  or until a pretrial conference or some other time.").

4      Responding Party further objects to this interrogatory as unduly
5  burdensome, harassing, and duplicative of information disclosed in
6  Responding Party's Rule 26(a) disclosures and supplemental disclosures.
7  Propounding Party may look to Responding Party's Rule 26(a) disclosures
8  and supplemental disclosures for the information sought by this
9  interrogatory.  Moreover, Responding Party had the opportunity to depose
10  CPR on this topic.

11      Responding Party further objects to this interrogatory as compound.
12  This "interrogatory" contains multiple impermissible subparts, which
13  Propounding Party has propounded to circumvent the numerical limitations
14  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

15      Responding Party further objects to this interrogatory on the grounds
16  that it seeks information that is outside of Responding Party's knowledge.

17      Responding Party further objects to the extent that this interrogatory
18  invades attorney-client privilege and/or violates the work product doctrine by
19  compelling Responding Party to disclose privileged communications and/or
20  litigation strategy.

21      Subject to and without waiver of the foregoing objections, Responding
22  Party responds as follows:

23      In addition to each defendant named in his individual capacity and
24  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,
25  and the evidence submitted in support of Plaintiffs motion for class
26  certification, Responding Party identifies the following individuals:

27      CPR believes that Blakeman and other Bay Boys engaged in a
28  concerted effort to obstruct the plaintiffs' and the publics free passage and

-4-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00241

use in the customary manner of a public space.  CPR also believes that Blakeman coordinated with other Bay Boys to the plaintiffs and the public when they were visiting Lunada Bay. CPR believes that the conduct directed at the plaintiffs and others trying to surf Lunada Bay is part of an agreement among Blakeman and the other Bay Boys, which at a minimum, may be implied by the conduct of the parties and other members of the Bay Boys. CPR believes that the Bay Boys concerted efforts to stop the public from accessing the beach are documented in text messages and emails some of which have been destroyed or are being withheld by the Defendants in this case. For example, on February 5, 2016, Charles Mowat sent a text message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and several others that said "There are 5 kooks standing on the bluff taking pictures...I think that same Taloa guy. Things could get ugly."  A Los Angeles Times photographer captured a pictured of Defendant Blakeman of the bluff filming plaintiffs.  Plaintiffs believe that the Bay Boys take photos and/or video tape people as a form of harassment and intimidation. Plaintiffs are also informed and believe that a Lunada Bay local named Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs are also informed and believe that Berstein told several people after he photographed them "know we know who you are."

The specific acts directed against the individual plaintiffs include but are not limited to the following:

Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer was also told: "why don't you fucking go home, you fucking kook" and asked "how many other good places did you pass to come here?" These are the same types of statements

-5-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00242

1  made by Defendant Sang Lee and others that can be observed on the video

2  published by the Guardian.[1] These taunts started while Spencer and Taloa

3  were on the bluffs getting ready to surf. One individual continued to heckle

4  Spencer and Taloa on their way down to the beach and into the water.

5      Blakeman was already in the water and began paddling around

6  Spencer and Taloa in a tight circle – staying just a few feet away from them.

7  There was no legitimate reason for this conduct. CPR believes that this is a

8  tactic used by the Bay Boys to harass people.[2] Blakeman impeded

9  Spencer's movement in any direction and was intentionally blocking him

10 from catching any waves. It was clear to Spencer that Blakeman was not

11 there to surf that morning. Instead, his mission was to prevent Spencer and

12 Taloa from surfing and to keep them from enjoying their time in the water,

13 the open space, the waves, and nature. This the type of concerted effort was

14 described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

15 people from surfing at Lunada Bay. In the approximately 90 minutes that

16 Spencer was in the water that day, Blakeman was focused on Spencer and

17 Taloa and continued to shadow their movements, and sit uncomfortably

18 close to them. Spencer had never experienced anything like that before in

19 his life. It was bizarre but also incredibly frightening and disturbing. It

20 appeared to Spencer that Blakeman was coordinating his actions with a

21 group of guys who were standing in the Rock Fort, along with others in the

22 water. They were all talking to each other and it was clear they all knew

23

24

25  [1] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

26

27  [2] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water

28  and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00243

1  each other.

2        At one point while Spencer was in the water and was paddling west

3  out to the ocean, he saw a man surfing, coming in east towards the shore.

4  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

5  of the fins on his surfboard sliced open his right wrist. Spencer has about a

6  half-inch scar from where this man ran him over. As soon as the Bay Boy

7  ran him over, he started berating Spencer, saying things like "what are you

8  fucking doing out here? I told you to go home. I should have run you over.

9  Why are you paddling in the sun glare where I can't see you?" The Bay Boy

10  was pretending that he didn't see Spencer but it was obvious that he did and

11  intentionally ran him over. With over 30 years of surfing experience, Spencer

12  knew that this collision was intentional on his part. Fearful of being further

13  injured at that point, and not wanting to get into an argument with him,

14  Spencer just paddled away. Spencer and Taloa caught one more wave after

15  that and then decided it was getting too dangerous to surf. More men started

16  showing up at the Rock Fort and Spencer and Taloa were growing

17  increasingly fearful for their safety. Spencer was also bleeding and in pain.

18  These incidents are described in the declarations filed with Plaintiffs motion

19  for class certification and the deposition of Spencer.

20        CPR further identifies the following individuals as having knowledge of

21  concerted efforts by the Bay Boys, including Blakeman:

22        Christopher Taloa.[3] As set forth above, Taloa and Spencer went

23  surfing at Lunada Bay and were harassed by Blakeman. Taloa witnessed

24  Blakeman shadowing Spencer's movement in the water. Blakeman was in

25  the water with four or five other Lunada Bay Locals.  At one point, Blakeman

26

27  _____

28  [3] Mr. Taloa is represented by Hanson Bridgett LLP and Otten Law PC.

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00244

1  paddled toward Taloa, at which point Taloa told him that he was too close.

2  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

3  Taloa kept moving in the water, and Blakeman attempted to keep up with

4  him but was not in good enough shape to do so.

5       Diana Milena Reed. As set forth in the Complaint, Reed was harassed

6  by Blakeman and other Lunada Bay locals on multiple occasions.  On

7  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

8  Wright and harassed them. Blakeman was there filming the incident.[4]  On or

9  about February 12, 2016, The Los Angeles Times published an article called

10  "Bay Boys surfer gang cannot block access to upscale beach, Coastal

11  Commission says." Jordan Wright and Cory Spencer are quoted in the

12  article. Mr. Wright and a few others had planned to surf Lunada Bay the

13  following morning. Plaintiffs are informed and believe that Defendants

14  Johnston and Blakeman learned that Jordan Wright and Diana Reed were

15  going to Lunada Bay and planned to be there to harass them. On February

16  12, 2016, Defendant Alan Johnston sent the following text messages to an

17  unknown recipient: "No fucking way Taloa is back this year" and "If u really

18  wanna be a bay boy we might meet help tomm." On February 13, 2016,

19  Reed and Wright returned to Lunada Bay. After Reed and Wright had

20  continued down the path, Blakeman and Defendant Alan Johnston rushed

21  into the Rock Fort where Reed was taking photos; the assault appeared to

22  be a coordinated and orchestrated and in retaliation for an article that

23  appeared in the Los Angeles Times.  Blakeman was filming Reed and had

24

25  _____

26  [4] Plaintiffs are informed and believe that there were text message sent on
    January 29, 2016 asking Defendant Papayans "Where are you? Kooks

27  trying to get to the Bay." Plaintiffs are informed and believe that Papayans

28  responded with a "LOL" and said he would be there.

13002697.1

1   his camera close to her face.  Reed asked why he was filming her, and

2   Blakeman responded, "Because I feel like it," and Johnston responded,

3   "Because you're hot."  Charlie Ferrara was present during this incident, and

4   observed the entire thing.  Although Ferrara apologized later for their

5   behavior, he appeared to be complicit in Blakeman and Johnston's actions.

6   These incidents are described in the declarations filed with Plaintiffs motion

7   for class certification and the deposition of Reed. Plaintiffs are informed and

8   believe that after the incident Defendant Johnston started calling and/or

9   texting other Lunada Bay locals to check for police to plan a getaway. At

10  around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

11  see any cops at the top." Plaintiffs are informed and believe that later that

12  day Johnston received a text from his mother asking him "What happened at

13  the bay?" Johnston replied "Nothing happened really just couple of trolls

14  they got nothing."

15      Jen Bell. The incident described above was witnessed by a woman

16  named Jen Bell who had gone to Lunada Bay that same day to photograph

17  a guy from Malibu. When she attempted sit down on the beach with her

18  pack, a man said: "You are practically sitting in a men's locker-room. You

19  don't make me feel comfortable".  Bell continued to sit there for another 10

20  minutes because she refused to be intimated but eventually decided to head

21  over to the fort because she saw another woman, Diana Reed, was taking

22  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

23  was obvious from the start that Johnston and Blakeman were there with the

24  intent to harass Reed. Johnston was making rude comments to both her and

25  Reed. Blakeman was putting the GoPro in their faces. Johnston was

26  chugging multiple beers and it was early in the morning. Johnston asked her

27  to help him with his wetsuit. He said "Can you help me with this?" and

28  handed her the leg of his wetsuit. Johnston made moaning sounds when

13002697.1

1  she took it like he was having an orgasm.

2  Jordan Wright.[5] Wright attempted to surf Lunada Bay in January 2015

3  with Chris Claypool and Kenneth Claypool. He observed Blakeman

4  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

5  for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

6  foot-high wave and was up riding for several seconds. Alan Johnston

7  paddled the wrong way on this wave, dropped in on him going the wrong

8  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

9  while going the wrong way violates normal surf etiquette. Johnston then

10  collided with Wright, and their leashes got tangled. After they surfaced from

11  the collision, Johnston then got close to Wright and yelled, "You had to

12  fucking take that wave, didn't you!" The next wave that came through then

13  broke Wrights leash plug and the board was carried into the rocks, which

14  destroyed a new surfboard. Wright had to swim in over rocks to get his

15  board and cut his hands on the rocks doing so. Wright is confident that

16  Johnston attempted to purposefully injure him. What he did was extremely

17  dangerous.

18  Wright has observed Blakeman on many occasions. Blakeman is easy

19  to identify because he rides a kneeboard and he is regularly filming visitors

20  on land with a camcorder. Wright believes his filming is an effort to intimidate

21  visitors. In the water, Wright has observed what appears to be Blakeman

22  directing other Bay Boys to sit close to visiting surfers. Wright has observed

23  Bay Boys who seem to be assigned to visiting surfers—they'll sit

24  too close to the visitors, impede their movements, block their surfing, kick at

25  them, splash water at them, and dangerously drop in on them. In addition to

26  ─────────────────

27  [5] Jordan Wright, Chris Claypool and Ken Claypool are represented by
28  Hanson Bridgett LLP and Otten Law PC.

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00247

Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston, Charlie Ferrara, and David Mello engage in this activity. These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Ken Claypool has been harassed and filmed by Blakeman in an attempt to intimidate him at Lunada Bay on multiple occasions. In January 2015, Claypool and his brother Chris Claypool along with Jordan Wright went to surf Lunada Bay.  There were about five Lunada Bay locals in the water, including Blakeman who paddled over and threatened them. Claypool observed Blakeman intentionally dropped in on Wright at least twice.

On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa and Jordan Wright. There was a photographer from the Los Angeles Times that was there. Also in attendance was Cory Spencer and Diana Reed. Spencer was there to watch the cars.  Blakeman was there filming in an effort to intimidate visitors. Blakeman can be seen in one of the pictures taken by the photographer. Also present was Defendant Papayans. Plaintiffs are informed and believe that there was a text message sent that day to Papayans, Michael Theil and 11 other people stating that there were 5 kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are informed that the text states: "Things could get ugly. We all need to surf." These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Chris Claypool, his brother Ken, and Jordan Wright attempted to surf Lunada Bay in January 2015.  There were about five locals in the water, including Blakeman who paddled over and was yelling "Try and catch a wave and see what happens. There is no fucking way you are getting a wave. Just go in. Just go. You better not cut me off."  Blakeman looked possessed or possibly on drugs. His behavior got more bizarre throughout the morning. He seemed to be paddling for every wave that he could

-11-

1   physically push himself into, perhaps to make a point, but he was wiping out

2   a lot and falling down the face and tumbling across the rock reef. Blakeman

3   looked dangerous to himself. When Blakeman would actually catch a wave

4   in, he would paddle back to where Claypool and his brother were sitting, and

5   continue his insane rant. On one occasion, Blakeman came less than 12

6   inches from Claypool's ear and was screaming. It was so loud, Claypool had

7   to put his fingers in his ear to protect them from being damaged. Claypool is

8   a sound engineer and to put this in perspective, a rock concert creates about

9   120 decibels of noise - this was louder; a jet engine creates about 150

10  decibels. At one point Blakeman caught a wave and drew a line aiming right

11  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

12  as he narrowly missed Claypool's head. Claypool watched as Blakeman

13  intentionally dropped in on Jordan at least twice. It seemed obvious to

14  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

15  them were having fun. Because of the danger, they decided to leave.

16       When Claypool and his brother got out of water, they saw people

17  gathering on top of the cliff. One person was videotaping them from the top

18  of the cliff; it was clear to Claypool that he was doing this to try and

19  intimidate them. The people were watching them from the cliff. It was

20  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

21  obstruct his free passage and use in the customary manner of a public

22  space. It also seemed clear that Blakeman engaged in a concerted effort

23  with other Bay Boys to try and injure him. These incidents are described in

24  the declarations filed with Plaintiffs motion for class certification.

25       Jason Gersch.[6] While observing the surf, Gersch was approached by

26

27  _____

28  [6] Jason Gersch is represented by Hanson Bridgett LLP and Otten Law PC.

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1                                                                    Ex. 5 - Page 00249

1   two local Bay Boys named Peter McCollum and Brant Blakeman. These

2   individuals made it known to Gersch that he could not surf there. These

3   incidents are described in the declarations filed with Plaintiffs motion for

4   class certification.

5       Plaintiffs are informed and believe and on that basis allege that

6   Defendant Blakeman and his attorneys are attempting to intimidate

7   witnesses in this case. On at least two occasions, an investigator hired by

8   Blakeman's attorneys contacted witnesses they knew were represented by

9   Plaintiffs' attorneys. The investigator also showed up at the home of a

10   reporter that has not been listed as a witness.

11       The request is premature. Because Blakeman and the other

12   defendants are refusing to comply with their obligations to produce

13   documents under the federal rules and are impermissibly withholding

14   evidence and/or possibly spoliating evidence, we are not able to fully

15   respond to discovery requests which necessarily rely on our ability to fully

16   investigate the facts. As discovery is continuing, CPR reserves the right to

17   update this response.

18   **INTERROGATORY NO. 2**:

19       IDENTIFY ALL PERSONS that have knowledge of any facts that

20   support your contention in paragraph 7 of the Complaint that BRANT

21   BLAKEMAN "is responsible in some manner for the Bane Act violations and

22   public nuisance described in the Complaint" and for each such PERSON

23   identified state all facts you contend are within that PERSON's knowledge.

24   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

25       Responding Party objects to this interrogatory as premature. Because

26   this interrogatory seeks or necessarily relies upon a contention, and

27   because this matter is in its early stages and pretrial discovery has only just

28   begun, Responding Party is unable to provide a complete response at this

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Ex. 5 - Page 00250

1  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et a*l.,

2  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

3  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

4  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

5  interrogatory need not be answered until designated discovery is complete,

6  or until a pretrial conference or some other time.").

7      Responding Party further objects to this interrogatory as unduly

8  burdensome, harassing, and duplicative of information disclosed in

9  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

10  Propounding Party may look to Responding Party's Rule 26(a) disclosures

11  and supplemental disclosures for the information sought by this

12  interrogatory.  Moreover, Responding Party had the opportunity to depose

13  Mr. CPR on this topic.

14      Responding Party further objects to this interrogatory as compound.

15  This "interrogatory" contains multiple impermissible subparts, which

16  Propounding Party has propounded to circumvent the numerical limitations

17  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

18      Responding Party further objects to this interrogatory on the grounds

19  that it seeks information that is outside of Responding Party's knowledge.

20      Responding Party further objects to the extent that this interrogatory

21  invades attorney-client privilege and/or violates the work product doctrine by

22  compelling Responding Party to disclose privileged communications and/or

23  litigation strategy.

24      Subject to and without waiver of the foregoing objections, Responding

25  Party responds as follows:

26      In addition to each defendant named in his individual capacity and

27  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

28  and the evidence submitted in support of Plaintiffs motion for class

-14-

1  certification, Responding Party identifies the following individuals:

2      CPR believes that Blakeman engaged in a concerted effort with other

3  Bay Boys to obstruct the plaintiffs' and the publics free passage and use in

4  the customary manner of a public space.  CPR also believes that Blakeman

5  coordinated with other Bay Boys to the plaintiffs and the public when they

6  were visiting Lunada Bay. CPR believes that the conduct directed at the

7  plaintiffs and others trying to surf Lunada Bay is part of an agreement

8  among Blakeman and the other Bay Boys, which at a minimum, may be

9  implied by the conduct of the parties and other members of the Bay Boys.

10  CPR believes that the Bay Boys concerted efforts to stop the public from

11  accessing the beach are documented in text messages and emails some of

12  which have been destroyed or are being withheld by the Defendants in this

13  case. For example, on February 5, 2016, Charles Mowat sent a text

14  message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy

15  Patch, Defendant Michael Papayans and several others that said "There are

16  5 kooks standing on the bluff taking pictures...I think that same Taloa guy.

17  Things could get ugly. " I think he also tells someone to "get to the bay and

18  roast the kook." A Los Angeles Times photographer captured a pictured of

19  Defendant Blakeman of the bluff filming plaintiffs.

20      The specific acts directed against the individual plaintiffs include but

21  are not limited to the following:

22      Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

23  after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

24  They were told that they couldn't surf there, and Spencer was called a

25  "kook," which is a derogatory surfing term. Spencer was also told: "why don't

26  you fucking go home, you fucking kook" and asked "how many other good

27  places did you pass to come here?" These are the same types of statements

28  made by Defendant Sang Lee and others that can be observed on the video

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00252

published by the Guardian.[7]  These taunts started while Spencer and Taloa were on the bluffs getting ready to surf. One individual continued to heckle Spencer and Taloa on their way down to the beach and into the water.

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct.[8] CPR believes that this is a tactic used by the Bay Boys to harass people.  Blakeman impeded Spencer's movement in any direction and was intentionally blocking him from catching any waves. It was clear to Spencer that Blakeman was not there to surf that morning. Instead, his mission was to prevent Spencer and Taloa from surfing and to keep them from enjoying their time in the water, the open space, the waves, and nature. This the type of concerted effort was described by Charlie Ferrara to Reed as the way the Bay Boys act to keep people from surfing at Lunada Bay. In the approximately 90 minutes that Spencer was in the water that day, Blakeman was focused on Spencer and Taloa and continued to shadow their movements, and sit uncomfortably close to them. Spencer had never experienced anything like that before in his life. It was bizarre but also incredibly frightening and disturbing. It appeared to Spencer that Blakeman was coordinating his actions with a group of guys who were standing in the Rock Fort, along with others in the water. They were all talking to each other and it was clear they all knew each other.

---

[7] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

[8] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

At one point while Spencer was in the water and was paddling west out to the ocean, he saw a man surfing, coming in east towards the shore. The Bay Boy ran over his hand/wrist that was holding his surfboard and one of the fins on his surfboard sliced open his right wrist. Spencer has about a half-inch scar from where this man ran him over. As soon as the Bay Boy ran him over, he started berating Spencer, saying things like "what are you fucking doing out here? I told you to go home. I should have run you over. Why are you paddling in the sun glare where I can't see you?" The Bay Boy was pretending that he didn't see Spencer but it was obvious that he did and intentionally ran him over. With over 30 years of surfing experience, Spencer knew that this collision was intentional on his part. Fearful of being further injured at that point, and not wanting to get into an argument with him, Spencer just paddled away. Spencer and Taloa caught one more wave after that and then decided it was getting too dangerous to surf. More men started showing up at the Rock Fort and Spencer and Taloa were growing increasingly fearful for their safety. Spencer was also bleeding and in pain. These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Spencer.

CPR further identifies the following individuals as having knowledge of concerted efforts by the Bay Boys, including Blakeman:

Christopher Taloa. As set forth above, Taloa and Spencer went surfing at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman shadowing Spencer's movement in the water. Blakeman was in the water with four or five other Lunada Bay Locals.  At one point, Blakeman paddled toward Taloa, at which point Taloa told him that he was too close. Blakeman replied, "This is the ocean. We are surfing. I can be wherever." Taloa kept moving in the water, and Blakeman attempted to keep up with him but was not in good enough shape to do so.

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00254

1    Diana Milena Reed. As set forth in the Complaint, Reed was harassed
2  by Blakeman and other Lunada Bay locals on multiple occasions.  On
3  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan
4  Wright and harassed them. Blakeman was there filming the incident.[9]   On or
5  about February 12, 2016, The Los Angeles Times published an article called
6  "Bay Boys surfer gang cannot block access to upscale beach, Coastal
7  Commission says." Jordan Wright and Cory Spencer are quoted in the
8  article. Mr. Wright and a few others had planned to surf Lunada Bay the
9  following morning. Plaintiffs are informed and believe that Defendants
10  Johnston and Blakeman learned that Jordan Wright and Diana Reed were
11  going to Lunada Bay and planned to be there to harass them. On February
12  12, 2016, Defendant Alan Johnston sent the following text messages to an
13  unknown recipient: "No fucking way Taloa is back this year" and "If u really
14  wanna be a bay boy we might meet help tomm." On February 13, 2016,
15  Reed and Wright returned to Lunada Bay. After Reed and Wright had
16  continued down the path, Blakeman and Defendant Alan Johnston rushed
17  into the Rock Fort where Reed was taking photos; the assault appeared to
18  be a coordinated and orchestrated and in retaliation for an article that
19  appeared in the Los Angeles Times.  Blakeman was filming Reed and had
20  his camera close to her face.  Reed asked why he was filming her, and
21  Blakeman responded, "Because I feel like it," and Johnston responded,
22  "Because you're hot."  Charlie Ferrara was present during this incident, and
23  observed the entire thing.  Although Ferrara apologized later for their
24
25

26  [9] Plaintiffs are informed and believe that there were text message sent on
27  January 29, 2016 asking Defendant Papayans "Where are you? Kooks
   trying to get to the Bay." Plaintiffs are informed and believe that Papayans
28  responded with a "LOL" and said he would be there.

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00255

1  behavior, he appeared to be complicit in Blakeman and Johnston's actions.

2  These incidents are described in the declarations filed with Plaintiffs motion

3  for class certification and the deposition of Reed. Plaintiffs are informed and

4  believe that after the incident Defendant Johnston started calling and/or

5  texting other Lunada Bay locals to check for police to plan a getaway. At

6  around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

7  see any cops at the top." Plaintiffs are informed and believe that later that

8  day Johnston received a text from his mother asking him "What happened at

9  the bay?" Johnston replied "Nothing happened really just couple of trolls

10 they got nothing."

11     Jen Bell. The incident described above was witnessed by a woman

12 named Jen Bell who had gone to Lunada Bay that same day to photograph

13 a guy from Malibu. When she attempted sit down on the beach with her

14 pack, a man said: "You are practically sitting in a men's locker-room. You

15 don't make me feel comfortable".  Bell continued to sit there for another 10

16 mins because she refused to be intimated but decided to head over to the

17 fort because she saw another woman, Diana Reed, was taking photos.  Bell

18 was in the Rock Fort when Blakeman and Johnston arrived. It was obvious

19 from the start that Johnston and Blakeman were there with the intent to

20 harass Reed. Johnston was making rude comments to both her and Reed.

21 Blakeman was putting the GoPro in their faces. Johnston was chugging

22 multiple beers and it was early in the morning. Johnston asked her to help

23 him with his wetsuit. He said "Can you help me with this?" and handed her

24 the leg of his wetsuit. Johnston made moaning sounds when she took it like

25 he was having an orgasm.

26     Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

27 with Chris Claypool and Kenneth Claypool. He observed Blakeman

28 harassing Chris and Ken. Wright was sitting on the outside waiting his turn

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

for waves. By regular surfing norms, he had priority. He caught a10- to 12-foot-high wave and was up riding for several seconds. Alan Johnston paddled the wrong way on this wave, dropped in on him going the wrong way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer while going the wrong way violates normal surf etiquette. Johnston then collided with Wright, and their leashes got tangled. After they surfaced from the collision, Johnston then got close to Wright and yelled, "You had to fucking take that wave, didn't you!" The next wave that came through then broke Wrights leash plug and the board was carried into the rocks, which destroyed a new surfboard. Wright had to swim in over rocks to get his board and cut his hands on the rocks doing so. Wright is confident that Johnston was attempted to purposefully injure him. What he did was extremely dangerous.

Wright has observed Blakeman on many occasions. Blakeman is easy to identify because he rides a kneeboard and he is regularly filming visitors on land with a camcorder. Wright believes his filming is an effort to intimidate visitors. In the water, Wright has observed what appears to be Blakeman directing other Bay Boys to sit close to visiting surfers. Wright has observed Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to the visitors, impede their movements, block their surfing, kick at them, splash water at them, and dangerously drop in on them. In addition to Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston, Charlie Ferrara, and David Mello engage in this activity. These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Ken Claypool has been harassed and filmed by Blakeman in an attempt to intimidate him at Lunada Bay on multiple occasions. In January 2015, Claypool and his brother Chris Claypool along with Jordan Wright went to surf Lunada Bay.  There were about five Lunada Bay locals in the

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00257

1   water, including Blakeman who paddled over and threatened them. Claypool

2   observed Blakeman intentionally dropped in on Wright at least twice.

3       On February 5, 2016 Claypool went to Lunada Bay with Chris Taloa

4   and Jordan Wright. There was a photographer from the Los Angeles Times

5   that was there. Also in attendance was Cory Spencer and Diana Reed.

6   Spencer was there to watch the cars.  Blakeman was there filming in an

7   effort to intimidate visitors. Blakeman can be seen in one of the pictures

8   taken by the photographer. Also present was Defendant Papayans. Plaintiffs

9   are informed and believe that there was a text message sent that day to

10  Papayans, Michael Theil and 11 other people stating that there were 5

11  kooks standing on the bluff taking pictures, including Taloa. The text states:

12  "Things could get ugly. We all need to surf." These incidents are described

13  in the declarations filed with Plaintiffs motion for class certification.

14      Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

15  Lunada Bay in January 2015.  There were about five locals in the water,

16  including Blakeman who paddled over and was yelling "Try and catch a

17  wave and see what happens. There is no fucking way you are getting a

18  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

19  possessed or possibly on drugs. His behavior got more bizarre throughout

20  the morning. He seemed to be paddling for every wave that he could

21  physically push himself into, perhaps to make a point, but he was wiping out

22  a lot and falling down the face and tumbling across the rock reef. Blakeman

23  looked dangerous to himself. When Blakeman would actually catch a wave

24  in, he would paddle back to where Claypool and his brother were sitting, and

25  continue his insane rant. On one occasion, Blakeman came less than 12

26  inches from Claypool's ear and was screaming. It was so loud, Claypool had

27  to put his fingers in his ear to protect them from being damaged. Claypool is

28  a sound engineer and to put this in perspective, a rock concert creates about

-21-

13002697.1

120 decibels of noise - this was louder; a jet engine creates about 150 decibels. At one point Blakeman caught a wave and drew a line aiming right at Claypool. Another Bay Boy tried the same thing and said "mother fucker" as he narrowly missed Claypool's head. Claypool watched as Blakeman intentionally dropped in on Jordan at least twice. It seemed obvious to Claypool that Blakeman and the other Bay Boy wanted to make sure none of them were having fun. Because this was getting dangerous, they decided to leave.

When Claypool and his brother got out of water, they saw people gathering on top of the cliff. One person was videotaping them from the top of the cliff; it was clear to Claypool that he was doing this to try and intimidate them. The people were watching them from the cliff. It was obvious that Blakeman engaged in a concerted effort with other Bay Boys to obstruct his free passage and use in the customary manner of a public space. It also seemed clear that Blakeman engaged in a concerted effort with other Bay Boys to try and injure him. These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Jason Gersch. While observing the surf, Gersch was approached by two local Bay Boys named Peter McCollum and Brant Blakeman. These individuals made it known to Gersch that he could not surf there. These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Plaintiffs are informed and believe and on that basis allege that Defendant Blakeman and his attorneys are attempting to intimidate witnesses in this case. On at least two occasions, an investigator hired by Blakeman's attorneys contacted witnesses represented by Plaintiffs' attorneys. The investigator also showed up at the home of a reporter that has not been listed as a witness.

1   The request is premature. Because Blakeman and the other

2   defendants are refusing to comply with their obligations to produce

3   documents under the federal rules and are impermissibly withholding

4   evidence and/or possibly spoliating evidence, we are not able to fully

5   respond to discovery requests which necessarily rely on our ability to fully

6   investigate the facts. As discovery is continuing, CPR reserves the right to

7   update this response.

8   **INTERROGATORY NO. 3:**

9   IDENTIFY ALL PERSONS that have knowledge of any facts that

10   support your contention in paragraph 18 of the Complaint that BRANT

11   BLAKEMAN "sell[s] market[s] and use[s] illegal controlled substances from

12   the Lunada Bay Bluffs and the Rock Fort" and for each such PERSON

13   identified state all facts you contend are within the PERSON's knowledge.

14   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

15   Responding Party objects to this interrogatory as premature. Because

16   this interrogatory seeks or necessarily relies upon a contention, and

17   because this matter is in its early stages and pretrial discovery has only just

18   begun, Responding Party is unable to provide a complete response at this

19   time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

20   2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

21   *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

22   also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

23   interrogatory need not be answered until designated discovery is complete,

24   or until a pretrial conference or some other time.").

25   Responding Party further objects to this interrogatory as unduly

26   burdensome, harassing, and duplicative of information disclosed in

27   Responding Party's Rule 26(a) disclosures and supplemental disclosures.

28   Propounding Party may look to Responding Party's Rule 26(a) disclosures

-23-

1  and supplemental disclosures for the information sought by this

2  interrogatory.  Moreover, Responding Party had the opportunity to depose

3  CPR on this topic.

4      Responding Party further objects to this interrogatory as compound.

5  This "interrogatory" contains multiple impermissible subparts, which

6  Propounding Party has propounded to circumvent the numerical limitations

7  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

8      Responding Party further objects to this interrogatory on the grounds

9  that it seeks information that is outside of Responding Party's knowledge.

10     Responding Party further objects to the extent that this interrogatory

11 invades attorney-client privilege and/or violates the work product doctrine by

12 compelling Responding Party to disclose privileged communications and/or

13 litigation strategy.

14     Subject to and without waiver of the foregoing objections, Responding

15 Party responds as follows:

16     In addition to each defendant named in his individual capacity and

17 other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

18 and the evidence submitted in support of Plaintiffs motion for class

19 certification, Responding Party identifies the following individuals: There is a

20 copy of a Group MMS included in Officer Report for Incident 16-02164. In

21 that report an individual who identifies himself as "the Weasel" makes a

22 statement about Blakeman and meth. The Weasel also states: "Ferrara

23 family is nothing put a bunch of drug addict losers. He's main shaper and

24 good surfer kids are losers and his brothers kids are all losers One of the

25 Ferrara kids [sic] friends beat up a Persian liquor store guy… One time the

26 Ferrara kid talk shit to me one day I said I used to smoke crack with your

27 dad Angelo and dead uncle Sal I have all the dirt from 1979 up. The Weasel

28 then states; "Tell your bros to say even sells weed he lives on  10th Street in

-24-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00261

1  San Pedro." Plaintiffs are informed and believe that the word "even" is a typo

2  which is supposed to be Evan and referring to Bay Boy Evan Levy. Plaintiffs

3  are informed and believe and thereon allege that the Weasel might be an

4  individual named Glen Morris. (424) 263-5152.

5       The request is premature. Because Blakeman and the other

6  defendants are refusing to comply with their obligations to produce

7  documents under the federal rules and are impermissibly withholding

8  evidence and/or possibly spoliating evidence, we are not able to fully

9  respond to discovery requests which necessarily rely on our ability to fully

10 investigate the facts. As discovery is continuing, CPR reserves the right to

11 update this response.

12 **INTERROGATORY NO. 4:**

13      IDENTIFY ALL PERSONS that have knowledge of any facts that

14 support your contention in paragraph 18 of the Complaint that BRANT

15 BLAKEMAN "impede[d] boat traffic" at any time, and for each such PERSON

16 identified state all facts you contend are within that PERSON's knowledge.

17 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

18      Responding Party objects to this interrogatory as premature. Because

19 this interrogatory seeks or necessarily relies upon a contention, and

20 because this matter is in its early stages and pretrial discovery has only just

21 begun, Responding Party is unable to provide a complete response at this

22 time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

23 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

24 *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

25 also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

26 interrogatory need not be answered until designated discovery is complete,

27 or until a pretrial conference or some other time.").

28      Responding Party further objects to this interrogatory as unduly

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00262

1   burdensome, harassing, and duplicative of information disclosed in

2   Responding Party's Rule 26(a) disclosures and supplemental disclosures.

3   Propounding Party may look to Responding Party's Rule 26(a) disclosures

4   and supplemental disclosures for the information sought by this

5   interrogatory.  Moreover, Responding Party had the opportunity to depose

6   Mr. Spencer on this topic.

7       Responding Party further objects to this interrogatory as compound.

8   This "interrogatory" contains multiple impermissible subparts, which

9   Propounding Party has propounded to circumvent the numerical limitations

10   on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

11       Responding Party further objects to this interrogatory on the grounds

12   that it seeks information that is outside of Responding Party's knowledge.

13       Responding Party further objects to the extent that this interrogatory

14   invades attorney-client privilege and/or violates the work product doctrine by

15   compelling Responding Party to disclose privileged communications and/or

16   litigation strategy.  Responding Party will not provide any such information.

17       Subject to and without waiver of the foregoing objections, Responding

18   Party responds as follows:

19       In addition to each defendant named in his individual capacity and

20   other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

21   and the evidence submitted in support of Plaintiffs motion for class

22   certification, Responding Party identifies the following individuals: Jordan

23   Wright, Ken Claypool.

24       The request is premature. Because Blakeman and the other

25   defendants are refusing to comply with their obligations to produce

26   documents under the federal rules and are impermissibly withholding

27   evidence and/or possibly spoliating evidence, we are not able to fully

28   respond to discovery requests which necessarily rely on our ability to fully

13002697.1

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00263

1 investigate the facts. As discovery is continuing, CPR reserves the right to
2 update this response.

3 **INTERROGATORY NO. 5:**

4     IDENTIFY ALL PERSONS that have knowledge of any facts that
5 support your contention in paragraph 18 of the Complaint that BRANT
6 BLAKEMAN "dangerously disregard[ed] surfing rules" at any time, and for
7 each such PERSON identified state all facts you contend are within that
8 PERSON's knowledge.

9 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

10     Responding Party objects to this interrogatory as premature. Because
11 this interrogatory seeks or necessarily relies upon a contention, and
12 because this matter is in its early stages and pretrial discovery has only just
13 begun, Responding Party is unable to provide a complete response at this
14 time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,
15 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*
16 *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see
17 also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]
18 interrogatory need not be answered until designated discovery is complete,
19 or until a pretrial conference or some other time.").

20     Responding Party further objects to this interrogatory as unduly
21 burdensome, harassing, and duplicative of information disclosed in
22 Responding Party's Rule 26(a) disclosures and supplemental disclosures.
23 Propounding Party may look to Responding Party's Rule 26(a) disclosures
24 and supplemental disclosures for the information sought by this
25 interrogatory.  Moreover, Responding Party had the opportunity to depose
26 plaintiffs on this topic.

27     Responding Party further objects to this interrogatory as compound.
28 This "interrogatory" contains multiple impermissible subparts, which

-27-

1  Propounding Party has propounded to circumvent the numerical limitations

2  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

3          Responding Party further objects to this interrogatory on the grounds

4  that it seeks information that is outside of Responding Party's knowledge.

5          Responding Party further objects to the extent that this interrogatory

6  invades attorney-client privilege and/or violates the work product doctrine by

7  compelling Responding Party to disclose privileged communications and/or

8  litigation strategy.

9          Subject to and without waiver of the foregoing objections, Responding

10 Party responds as follows:

11         In addition to each defendant named in his individual capacity and

12 other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

13 and the evidence submitted in support of Plaintiffs motion for class

14 certification, Responding Party identifies the following individuals:

15         CPR believes that Blakeman engaged in a concerted effort with other

16 Bay Boys to obstruct the plaintiffs' and the publics free passage and use in

17 the customary manner of a public space.  CPR also believes that Blakeman

18 coordinated with other Bay Boys to the plaintiffs and the public when they

19 were visiting Lunada Bay. CPR believes that the conduct directed at the

20 plaintiffs and others trying to surf Lunada Bay is part of an agreement

21 among Blakeman and the other Bay Boys, which at a minimum, may be

22 implied by the conduct of the parties and other members of the Bay Boys.

23 CPR believes that the Bay Boys concerted efforts to stop the public from

24 accessing the beach are documented in text messages and emails some of

25 which have been destroyed or are being withheld by the Defendants in this

26 case. For example, on February 5, 2016, Charles Mowat sent a text

27 message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy

28 Patch, Defendant Michael Papayans and several others that said "There are

-28-

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

5 kooks standing on the bluff taking pictures...I think that same Taloa guy. Things could get ugly. " A Los Angeles Times photographer captured a pictured of Defendant Blakeman of the bluff filming plaintiffs. Plaintiffs believe that the Bay Boys take photos and/or video tape people as a form of harassment and intimidation. For example, plaintiffs are also informed and believe that a Lunada Bay local named Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs are also informed and believe that Berstein told several people after he photographed them "know we know who you are." The specific acts directed against the individual plaintiffs include but are not limited to the following:

Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer was also told: "why don't you fucking go home, you fucking kook" and asked "how many other good places did you pass to come here?" These are the same types of statements made by Defendant Sang Lee and others that can be observed on the video published by the Guardian.[10]   These taunts started while Spencer and Taloa were on the bluffs getting ready to surf. One individual continued to heckle Spencer and Taloa on their way down to the beach and into the water.

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct.[11]   CPR believes that this is

_____

[10] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

[11] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water (footnote continued)

13002697.1

Ex. 5 - Page 00266

1  a tactic used by the Bay Boys to harass people.  Blakeman impeded

2  Spencer's movement in any direction and was intentionally blocking him

3  from catching any waves. It was clear to Spencer that Blakeman was not

4  there to surf that morning. Instead, his mission was to prevent Spencer and

5  Taloa from surfing and to keep them from enjoying their time in the water,

6  the open space, the waves, and nature. This the type of concerted effort was

7  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

8  people from surfing at Lunada Bay. In the approximately 90 minutes that

9  Spencer was in the water that day, Blakeman was focused on Spencer and

10  Taloa and continued to shadow their movements, and sit uncomfortably

11  close to them. Spencer had never experienced anything like that before in

12  his life. It was bizarre but also incredibly frightening and disturbing. It

13  appeared to Spencer that Blakeman was coordinating his actions with a

14  group of guys who were standing in the Rock Fort, along with others in the

15  water. They were all talking to each other and it was clear they all knew

16  each other.

17       At one point while Spencer was in the water and was paddling west

18  out to the ocean, he saw a man surfing, coming in east towards the shore.

19  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

20  of the fins on his surfboard sliced open his right wrist. Spencer has about a

21  half-inch scar from where this man ran him over. As soon as the Bay Boy

22  ran him over, he started berating Spencer, saying things like "what are you

23  fucking doing out here? I told you to go home. I should have run you over.

24  Why are you paddling in the sun glare where I can't see you?" The Bay Boy

25  was pretending that he didn't see Spencer but it was obvious that he did and

26

27  _____

28  and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00267

13002697.1

1  intentionally ran him over. With over 30 years of surfing experience, Spencer

2  knew that this collision was intentional on his part. Fearful of being further

3  injured at that point, and not wanting to get into an argument with him,

4  Spencer just paddled away. Spencer and Taloa caught one more wave after

5  that and then decided it was getting too dangerous to surf. More men started

6  showing up at the Rock Fort and Spencer and Taloa were growing

7  increasingly fearful for their safety. Spencer was also bleeding and in pain.

8  These incidents are described in the declarations filed with Plaintiffs motion

9  for class certification and the deposition of Spencer.

10       CPR further identifies the following individuals as having knowledge of

11  concerted efforts by the Bay Boys, including Blakeman:

12       Christopher Taloa. As set forth above, Taloa and Spencer went surfing

13  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

14  shadowing Spencer's movement in the water. Blakeman was in the water

15  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

16  toward Taloa, at which point Taloa told him that he was too close.

17  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

18  Taloa kept moving in the water, and Blakeman attempted to keep up with

19  him but was not in good enough shape to do so.

20       Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

21  with Chris Claypool and Kenneth Claypool. He observed Blakeman

22  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

23  for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

24  foot-high wave and was up riding for several seconds. Alan Johnston

25  paddled the wrong way on this wave, dropped in on him going the wrong

26  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

27  while going the wrong way violates normal surf etiquette. Johnston then

28  collided with Wright, and their leashes got tangled. After they surfaced from

13002697.1

1   the collision, Johnston then got close to Wright and yelled, "You had to

2   fucking take that wave, didn't you!" The next wave that came through then

3   broke Wrights leash plug and the board was carried into the rocks, which

4   destroyed a new surfboard. Wright had to swim in over rocks to get his

5   board and cut his hands on the rocks doing so. Wright is confident that

6   Johnston was attempted to purposefully injure him. What he did was

7   extremely dangerous.

8       Wright has observed Blakeman on many occasions. Blakeman is easy

9   to identify because he rides a kneeboard and he is regularly filming visitors

10  on land with a camcorder. Wright believes his filming is an effort to intimidate

11  visitors. In the water, Wright has observed what appears to be Blakeman

12  directing other Bay Boys to sit close to visiting surfers. Wright has observed

13  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

14  the visitors, impede their movements, block their surfing, kick at them,

15  splash water at them, and dangerously drop in on them. In addition to

16  Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,

17  Charlie Ferrara, and David Mello engage in this activity. These incidents are

18  described in the declarations filed with Plaintiffs motion for class certification.

19      Ken Claypool has been harassed and filmed by Blakeman in an

20  attempt to intimidate him at Lunada Bay on multiple occasions. In January

21  2015, Claypool and his brother Chris Claypool along with Jordan Wright

22  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

23  water, including Blakeman who paddled over and threatened them. Claypool

24  observed Blakeman intentionally dropped in on Wright at least twice.

25      Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

26  Lunada Bay in January 2015.  There were about five locals in the water,

27  including Blakeman who paddled over and was yelling "Try and catch a

28  wave and see what happens. There is no fucking way you are getting a

13002697.1

1   wave. Just go in. Just go. You better not cut me off."  Blakeman looked
2   possessed or possibly on drugs. His behavior got more bizarre throughout
3   the morning. He seemed to be paddling for every wave that he could
4   physically push himself into, perhaps to make a point, but he was wiping out
5   a lot and falling down the face and tumbling across the rock reef. Blakeman
6   looked dangerous to himself. When Blakeman would actually catch a wave
7   in, he would paddle back to where Claypool and his brother were sitting, and
8   continue his insane rant. On one occasion, Blakeman came less than 12
9   inches from Claypool's ear and was screaming. It was so loud, Claypool had
10  to put his fingers in his ear to protect them from being damaged. Claypool is
11  a sound engineer and to put this in perspective, a rock concert creates about
12  120 decibels of noise - this was louder; a jet engine creates about 150
13  decibels. At one point Blakeman caught a wave and drew a line aiming right
14  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"
15  as he narrowly missed Claypool's head. Claypool watched as Blakeman
16  intentionally dropped in on Jordan at least twice. It seemed obvious to
17  Claypool that Blakeman and the other Bay Boy wanted to make sure none of
18  them were having fun. Because this was getting dangerous, they decided to
19  leave.

20          When Claypool and his brother got out of water, they saw people
21  gathering on top of the cliff. One person was videotaping them from the top
22  of the cliff; it was clear to Claypool that he was doing this to try and
23  intimidate them. The people were watching them from the cliff. It was
24  obvious that Blakeman engaged in a concerted effort with other Bay Boys to
25  obstruct his free passage and use in the customary manner of a public
26  space. It also seemed clear that Blakeman engaged in a concerted effort
27  with other Bay Boys to try and injure him. These incidents are described in
28  the declarations filed with Plaintiffs motion for class certification.

1   Plaintiffs are informed and believe and on that basis allege that

2   Defendant Blakeman and his attorneys are attempting to intimidate

3   witnesses in this case. On at least two occasions, an investigator hired by

4   Blakeman's attorneys contacted witnesses represented by Plaintiffs'

5   attorneys. The investigator also showed up at the home of a reporter that

6   has not been listed as a witness.

7   The request is premature. Because Blakeman and the other

8   defendants are refusing to comply with their obligations to produce

9   documents under the federal rules and are impermissibly withholding

10   evidence and/or possibly spoliating evidence, we are not able to fully

11   respond to discovery requests which necessarily rely on our ability to fully

12   investigate the facts. As discovery is continuing, CPR reserves the right to

13   update this response.

14   **INTERROGATORY NO. 6:**

15   IDENTIFY ALL PERSONS that have knowledge of any facts that

16   support your contention that BRANT BLAKEMAN has illegally extorted

17   money from beachgoers who wish to use Lunada Bay for recreational

18   purposes (See paragraph 33 j. of the Complaint), and for each such

19   PERSON identified state all facts you contend are within that PERSON's

20   knowledge.

21   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

22   Responding Party objects to this interrogatory as premature. Because

23   this interrogatory seeks or necessarily relies upon a contention, and

24   because this matter is in its early stages and pretrial discovery has only just

25   begun, Responding Party is unable to provide a complete response at this

26   time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et a*l.,

27   2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

28   *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

1  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

2  interrogatory need not be answered until designated discovery is complete,

3  or until a pretrial conference or some other time.").

4        Responding Party further objects to this interrogatory as unduly

5  burdensome, harassing, and duplicative of information disclosed in

6  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

7  Propounding Party may look to Responding Party's Rule 26(a) disclosures

8  and supplemental disclosures for the information sought by this

9  interrogatory.  Moreover, Responding Party had the opportunity to depose

10 plaintiffs on this topic.

11       Responding Party further objects to this interrogatory as compound.

12 This "interrogatory" contains multiple impermissible subparts, which

13 Propounding Party has propounded to circumvent the numerical limitations

14 on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

15       Responding Party further objects to this interrogatory on the grounds

16 that it seeks information that is outside of Responding Party's knowledge.

17       Responding Party further objects to the extent that this interrogatory

18 invades attorney-client privilege and/or violates the work product doctrine by

19 compelling Responding Party to disclose privileged communications and/or

20 litigation strategy.  Responding Party will not provide any such information.

21       The request is premature. Because Blakeman and the other

22 defendants are refusing to comply with their obligations to produce

23 documents under the federal rules and are impermissibly withholding

24 evidence and/or possibly spoliating evidence, we are not able to fully

25 respond to discovery requests which necessarily rely on our ability to fully

26 investigate the facts. As discovery is continuing, CPR reserves the right to

27 update this response.

28

-35-

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00272

**INTERROGATORY NO. 7:**

IDENTIFY ALL PERSONS that have knowledge of any facts that support your contention that BRANT BLAKEMAN was a part of a Civil Conspiracy as identified in your complaint in paragraphs 51 through 53, and for each such PERSON identified state all facts you contend are within that PERSON's knowledge.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*, 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

Responding Party further objects to this interrogatory as unduly burdensome, harassing, and duplicative of information disclosed in Responding Party's Rule 26(a) disclosures and supplemental disclosures. Propounding Party may look to Responding Party's Rule 26(a) disclosures and supplemental disclosures for the information sought by this interrogatory.  Moreover, Responding Party had the opportunity to depose Spencer on this topic.

Responding Party further objects to this interrogatory as compound. This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

13002697.1

1    Responding Party further objects to this interrogatory on the grounds
2    that it seeks information that is outside of Responding Party's knowledge.

3    Responding Party further objects to the extent that this interrogatory
4    invades attorney-client privilege and/or violates the work product doctrine by
5    compelling Responding Party to disclose privileged communications and/or
6    litigation strategy.

7    Subject to and without waiver of the foregoing objections, Responding
8    Party responds as follows:

9    In addition to each defendant named in his individual capacity and
10   other persons identified in Plaintiffs' initial and supplemental disclosures, and
11   the evidence submitted in support of Plaintiffs motion for class certification,
12   Responding Party identifies the following individuals:

13   CPR believes that Blakeman engaged in a concerted effort with other
14   Bay Boys to obstruct the plaintiffs' and the publics free passage and use in
15   the customary manner of a public space.  CPR also believes that Blakeman
16   coordinated with other Bay Boys to the plaintiffs and the public when they
17   were visiting Lunada Bay. CPR believes that the conduct directed at the
18   plaintiffs and others trying to surf Lunada Bay is part of an agreement
19   among Blakeman and the other Bay Boys, which at a minimum, may be
20   implied by the conduct of the parties and other members of the Bay Boys.
21   CPR believes that the Bay Boys concerted efforts to stop the public from
22   accessing the beach are documented in text messages and emails some of
23   which have been destroyed or are being withheld by the Defendants in this
24   case. For example, on February 5, 2016, Charles Mowat sent a text
25   message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy
26   Patch, Defendant Michael Papayans and several others that said "There are
27   5 kooks standing on the bluff taking pictures...I think that same Taloa guy.
28   Things could get ugly. " A Los Angeles Times photographer captured a

-37-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00274

1  pictured of Defendant Blakeman of the bluff filming plaintiffs. Plaintiffs

2  believe that the Bay Boys take photos and/or video tape people as a form of

3  harassment and intimidation. For example, plaintiffs are also informed and

4  believe that a Lunada Bay local named Joshua Berstein was taking pictures

5  at the MLK 2014 paddle out. Plaintiffs are also informed and believe that

6  Berstein told several people after he photographed them "know we know

7  who you are." The specific acts directed against the individual plaintiffs

8  include but are not limited to the following:

9      Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

10  after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

11  They were told that they couldn't surf there, and Spencer was called a

12  "kook," which is a derogatory surfing term. Spencer was also told: "why don't

13  you fucking go home, you fucking kook" and asked "how many other good

14  places did you pass to come here?" These are the same types of statements

15  made by Defendant Sang Lee and others that can be observed on the video

16  published by the Guardian.[12]  These taunts started while Spencer and Taloa

17  were on the bluffs getting ready to surf. One individual continued to heckle

18  Spencer and Taloa on their way down to the beach and into the water.

19      Blakeman was already in the water and began paddling around

20  Spencer and Taloa in a tight circle – staying just a few feet away from them.

21  There was no legitimate reason for this conduct.[13] CPR believes that this is

22  a tactic used by the Bay Boys to harass people.  Blakeman impeded

23

24  _____

25  [12] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

26

27  [13] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water

28  and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00275

1   Spencer's movement in any direction and was intentionally blocking him

2   from catching any waves. It was clear to Spencer that Blakeman was not

3   there to surf that morning. Instead, his mission was to prevent Spencer and

4   Taloa from surfing and to keep them from enjoying their time in the water,

5   the open space, the waves, and nature. This the type of concerted effort was

6   described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

7   people from surfing at Lunada Bay. In the approximately 90 minutes that

8   Spencer was in the water that day, Blakeman was focused on Spencer and

9   Taloa and continued to shadow their movements, and sit uncomfortably

10  close to them. Spencer had never experienced anything like that before in

11  his life. It was bizarre but also incredibly frightening and disturbing. It

12  appeared to Spencer that Blakeman was coordinating his actions with a

13  group of guys who were standing in the Rock Fort, along with others in the

14  water. They were all talking to each other and it was clear they all knew

15  each other.

16       At one point while Spencer was in the water and was paddling west

17  out to the ocean, he saw a man surfing, coming in east towards the shore.

18  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

19  of the fins on his surfboard sliced open his right wrist. Spencer has about a

20  half-inch scar from where this man ran him over. As soon as the Bay Boy

21  ran him over, he started berating Spencer, saying things like "what are you

22  fucking doing out here? I told you to go home. I should have run you over.

23  Why are you paddling in the sun glare where I can't see you?" The Bay Boy

24  was pretending that he didn't see Spencer but it was obvious that he did and

25  intentionally ran him over. With over 30 years of surfing experience, Spencer

26  knew that this collision was intentional on his part. Fearful of being further

27  injured at that point, and not wanting to get into an argument with him,

28  Spencer just paddled away. Spencer and Taloa caught one more wave after

-39-

13002697.1

1  that and then decided it was getting too dangerous to surf. More men started

2  showing up at the Rock Fort and Spencer and Taloa were growing

3  increasingly fearful for their safety. Spencer was also bleeding and in pain.

4  These incidents are described in the declarations filed with Plaintiffs motion

5  for class certification and the deposition of Spencer.

6      CPR further identifies the following individuals as having knowledge of

7  concerted efforts by the Bay Boys, including Blakeman:

8      Christopher Taloa. As set forth above, Taloa and Spencer went surfing

9  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

10  shadowing Spencer's movement in the water. Blakeman was in the water

11  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

12  toward Taloa, at which point Taloa told him that he was too close.

13  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

14  Taloa kept moving in the water, and Blakeman attempted to keep up with

15  him but was not in good enough shape to do so.

16      Plaintiffs are also informed and believe that a Lunada Bay local named

17  Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs

18  are also informed and believe that Berstein told several people after he

19  photographed them "know we know who you are." Plaintiffs are informed

20  and believe that the Bay Boys use cameras to harass and intimidate people.

21  These incidents are described in the declarations filed with Plaintiffs motion

22  for class certification and the deposition of Taloa.

23      Diana Milena Reed. As set forth in the Complaint, Reed was harassed

24  by Blakeman and other Lunada Bay locals on multiple occasions.  On

25  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

26

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00277

Wright and harassed them. Blakeman was there filming the incident.[14]   On or about February 12, 2016, The Los Angeles Times published an article called "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm." On February 13, 2016, Reed and Wright returned to Lunada Bay. After Reed and Wright had continued down the path, Blakeman and Defendant Alan Johnston rushed into the Rock Fort where Reed was taking photos; the assault appeared to be a coordinated and orchestrated and in retaliation for an article that appeared in the Los Angeles Times.  Blakeman was filming Reed and had his camera close to her face.  Reed asked why he was filming her, and Blakeman responded, "Because I feel like it," and Johnston responded, "Because you're hot."  Charlie Ferrara was present during this incident, and observed the entire thing.  Although Ferrara apologized later for their behavior, he appeared to be complicit in Blakeman and Johnston's actions. These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Reed. Plaintiffs are informed and

---

[14] Plaintiffs are informed and believe that there were text message sent on January 29, 2016 asking Defendant Papayans "Where are you? Kooks trying to get to the Bay." Plaintiffs are informed and believe that Papayans responded with a "LOL" and said he would be there.

1  believe that after the incident Defendant Johnston started calling and/or

2  texting other Lunada Bay locals to check for police to plan a getaway. At

3  around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

4  see any cops at the top." Plaintiffs are informed and believe that later that

5  day Johnston received a text from his mother asking him "What happened at

6  the bay?" Johnston replied "Nothing happened really just couple of trolls

7  they got nothing."

8      Jen Bell. The incident described above was witnessed by a woman

9  named Jen Bell who had gone to Lunada Bay that same day to photograph

10  a guy from Malibu. When she attempted sit down on the beach with her

11  pack, a man said: "You are practically sitting in a men's locker-room. You

12  don't make me feel comfortable".  Bell continued to sit there for another 10

13  mins because she refused to be intimated but decided to head over to the

14  fort because she saw another woman, Diana Reed, was taking photos.  Bell

15  was in the Rock Fort when Blakeman and Johnston arrived. It was obvious

16  from the start that Johnston and Blakeman were there with the intent to

17  harass Reed. Johnston was making rude comments to both her and Reed.

18  Blakeman was putting the GoPro in their faces. Johnston was chugging

19  multiple beers and it was early in the morning. Johnston asked her to help

20  him with his wetsuit. He said "Can you help me with this?" and handed her

21  the leg of his wetsuit. Johnston made moaning sounds when she took it like

22  he was having an orgasm.

23      Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

24  with Chris Claypool and Kenneth Claypool. He observed Blakeman

25  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

26  for waves. By regular surfing norms, he had priority. He caught a10- to 12-

27  foot-high wave and was up riding for several seconds. Alan Johnston

28  paddled the wrong way on this wave, dropped in on him going the wrong

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00279

1   way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

2   while going the wrong way violates normal surf etiquette. Johnston then

3   collided with Wright, and their leashes got tangled. After they surfaced from

4   the collision, Johnston then got close to Wright and yelled, "You had to

5   fucking take that wave, didn't you!" The next wave that came through then

6   broke Wrights leash plug and the board was carried into the rocks, which

7   destroyed a new surfboard. Wright had to swim in over rocks to get his

8   board and cut his hands on the rocks doing so. Wright is confident that

9   Johnston was attempted to purposefully injure him. What he did was

10   extremely dangerous.

11         Wright has observed Blakeman on many occasions. Blakeman is easy

12   to identify because he rides a kneeboard and he is regularly filming visitors

13   on land with a camcorder. Wright believes his filming is an effort to intimidate

14   visitors. In the water, Wright has observed what appears to be Blakeman

15   directing other Bay Boys to sit close to visiting surfers. Wright has observed

16   Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

17   the visitors, impede their movements, block their surfing, kick at them,

18   splash water at them, and dangerously drop in on them. In addition to

19   Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,

20   Charlie Ferrara, and David Mello engage in this activity. These incidents are

21   described in the declarations filed with Plaintiffs motion for class certification.

22         Ken Claypool has been harassed and filmed by Blakeman in an

23   attempt to intimidate him at Lunada Bay on multiple occasions. In January

24   2015, Claypool and his brother Chris Claypool along with Jordan Wright

25   went to surf Lunada Bay.  There were about five Lunada Bay locals in the

26   water, including Blakeman who paddled over and threatened them. Claypool

27   observed Blakeman intentionally dropped in on Wright at least twice.

28         On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

and Jordan Wright. There was a photographer from the Los Angeles Times that was there. Also in attendance was Cory Spencer and Diana Reed. Spencer was there to watch the cars.  Blakeman was there filming in an effort to intimidate visitors. Blakeman can be seen in one of the pictures taken by the photographer. Also present was Defendant Papayans. Plaintiffs are informed and believe that there was a text message sent that day to Papayans, Michael Theil and 11 other people stating that there were 5 kooks standing on the bluff taking pictures, including Taloa. The text states: "Things could get ugly. We all need to surf." These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Chris Claypool, his brother Ken, and Jordan Wright attempted to surf Lunada Bay in January 2015.  There were about five locals in the water, including Blakeman who paddled over and was yelling "Try and catch a wave and see what happens. There is no fucking way you are getting a wave. Just go in. Just go. You better not cut me off."  Blakeman looked possessed or possibly on drugs. His behavior got more bizarre throughout the morning. He seemed to be paddling for every wave that he could physically push himself into, perhaps to make a point, but he was wiping out a lot and falling down the face and tumbling across the rock reef. Blakeman looked dangerous to himself. When Blakeman would actually catch a wave in, he would paddle back to where Claypool and his brother were sitting, and continue his insane rant. On one occasion, Blakeman came less than 12 inches from Claypool's ear and was screaming. It was so loud, Claypool had to put his fingers in his ear to protect them from being damaged. Claypool is a sound engineer and to put this in perspective, a rock concert creates about 120 decibels of noise - this was louder; a jet engine creates about 150 decibels. At one point Blakeman caught a wave and drew a line aiming right at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

1   as he narrowly missed Claypool's head. Claypool watched as Blakeman

2   intentionally dropped in on Jordan at least twice. It seemed obvious to

3   Claypool that Blakeman and the other Bay Boy wanted to make sure none of

4   them were having fun. Because this was getting dangerous, they decided to

5   leave.

6       When Claypool and his brother got out of water, they saw people

7   gathering on top of the cliff. One person was videotaping them from the top

8   of the cliff; it was clear to Claypool that he was doing this to try and

9   intimidate them. The people were watching them from the cliff. It was

10  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

11  obstruct his free passage and use in the customary manner of a public

12  space. It also seemed clear that Blakeman engaged in a concerted effort

13  with other Bay Boys to try and injure him. These incidents are described in

14  the declarations filed with Plaintiffs motion for class certification.

15      Jason Gersch. While observing the surf, Gersch was approached by

16  two local Bay Boys named Peter McCollum and Brant Blakeman. These

17  individuals made it known to Gersch that he could not surf there. These

18  incidents are described in the declarations filed with Plaintiffs motion for

19  class certification.

20      Plaintiffs are informed and believe and on that basis allege that

21  Defendant Blakeman and his attorneys are attempting to intimidate

22  witnesses in this case. On at least two occasions, an investigator hired by

23  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

24  attorneys. The investigator also showed up at the home of a reporter that

25  has not been listed as a witness.

26      The request is premature. Because Blakeman and the other

27  defendants are refusing to comply with their obligations to produce

28  documents under the federal rules and are impermissibly withholding

13002697.1

Ex. 5 - Page 00282

1  evidence and/or possibly spoliating evidence, we are not able to fully

2  respond to discovery requests which necessarily rely on our ability to fully

3  investigate the facts. As discovery is continuing, CPR reserves the right to

4  update this response.

5  **INTERROGATORY NO. 8**:

6       IDENTIFY ALL PERSONS that have knowledge of any facts that

7  support plaintiffs' First Cause of Action in the Complaint (Bane Act

8  Violations) against BRANT BLAKEMAN, and for each such PERSON

9  identified state all facts you contend are within that PERSON's knowledge.

10 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

11      Responding Party objects to this interrogatory as premature. Because

12 this interrogatory seeks or necessarily relies upon a contention, and

13 because this matter is in its early stages and pretrial discovery has only just

14 begun, Responding Party is unable to provide a complete response at this

15 time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

16 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific

17 Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

18 also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

19 interrogatory need not be answered until designated discovery is complete,

20 or until a pretrial conference or some other time.").

21      Responding Party further objects to this interrogatory as unduly

22 burdensome, harassing, and duplicative of information disclosed in

23 Responding Party's Rule 26(a) disclosures and supplemental disclosures.

24 Propounding Party may look to Responding Party's Rule 26(a) disclosures

25 and supplemental disclosures for the information sought by this

26 interrogatory.  Moreover, Responding Party had the opportunity to depose

27 plaintiffs on this topic.

28      Responding Party further objects to this interrogatory as compound.

This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by compelling Responding Party to disclose privileged communications and/or litigation strategy.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

In addition to each defendant named in his individual capacity and other persons identified in Plaintiffs' initial and supplemental disclosures, and the evidence submitted in support of Plaintiffs motion for class certification, Responding Party identifies the following individuals:

CPR believes that Blakeman engaged in a concerted effort with other Bay Boys to obstruct the plaintiffs' and the publics free passage and use in the customary manner of a public space.  CPR also believes that Blakeman coordinated with other Bay Boys to the plaintiffs and the public when they were visiting Lunada Bay. CPR believes that the conduct directed at the plaintiffs and others trying to surf Lunada Bay is part of an agreement among Blakeman and the other Bay Boys, which at a minimum, may be implied by the conduct of the parties and other members of the Bay Boys. CPR believes that the Bay Boys concerted efforts to stop the public from accessing the beach are documented in text messages and emails some of which have been destroyed or are being withheld by the Defendants in this case. For example, on February 5, 2016, Charles Mowat sent a text message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy

Patch, Defendant Michael Papayans and several others that said "There are 5 kooks standing on the bluff taking pictures...I think that same Taloa guy. Things could get ugly. " A Los Angeles Times photographer captured a pictured of Defendant Blakeman of the bluff filming plaintiffs. Plaintiffs believe that the Bay Boys take photos and/or video tape people as a form of harassment and intimidation. For example, plaintiffs are also informed and believe that a Lunada Bay local named Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs are also informed and believe that Berstein told several people after he photographed them "know we know who you are." The specific acts directed against the individual plaintiffs include but are not limited to the following:

Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer was also told: "why don't you fucking go home, you fucking kook" and asked "how many other good places did you pass to come here?" These are the same types of statements made by Defendant Sang Lee and others that can be observed on the video published by the Guardian.[15]   These taunts started while Spencer and Taloa were on the bluffs getting ready to surf. One individual continued to heckle Spencer and Taloa on their way down to the beach and into the water.

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct.  CPR believes that this is a

_____

[15] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

(footnote continued)

-48-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00285

13002697.1

1  tactic used by the Bay Boys to harass people.[16]  Blakeman impeded
2  Spencer's movement in any direction and was intentionally blocking him
3  from catching any waves. It was clear to Spencer that Blakeman was not
4  there to surf that morning. Instead, his mission was to prevent Spencer and
5  Taloa from surfing and to keep them from enjoying their time in the water,
6  the open space, the waves, and nature. This the type of concerted effort was
7  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep
8  people from surfing at Lunada Bay. In the approximately 90 minutes that
9  Spencer was in the water that day, Blakeman was focused on Spencer and
10  Taloa and continued to shadow their movements, and sit uncomfortably
11  close to them. Spencer had never experienced anything like that before in
12  his life. It was bizarre but also incredibly frightening and disturbing. It
13  appeared to Spencer that Blakeman was coordinating his actions with a
14  group of guys who were standing in the Rock Fort, along with others in the
15  water. They were all talking to each other and it was clear they all knew
16  each other.

17      At one point while Spencer was in the water and was paddling west
18  out to the ocean, he saw a man surfing, coming in east towards the shore.
19  The Bay Boy ran over his hand/wrist that was holding his surfboard and one
20  of the fins on his surfboard sliced open his right wrist. Spencer has about a
21  half-inch scar from where this man ran him over. As soon as the Bay Boy
22  ran him over, he started berating Spencer, saying things like "what are you
23  fucking doing out here? I told you to go home. I should have run you over.
24  Why are you paddling in the sun glare where I can't see you?" The Bay Boy

25
26  _____

27  [16] Plaintiffs are informed and believe that Defendant Papayans sent a text
    message describing similar conduct: "We just had a kook out in the water
28  and me and Jack just sat on his ass."

13002697.1

Ex. 5 - Page 00286

1  was pretending that he didn't see Spencer but it was obvious that he did and

2  intentionally ran him over. With over 30 years of surfing experience, Spencer

3  knew that this collision was intentional on his part. Fearful of being further

4  injured at that point, and not wanting to get into an argument with him,

5  Spencer just paddled away. Spencer and Taloa caught one more wave after

6  that and then decided it was getting too dangerous to surf. More men started

7  showing up at the Rock Fort and Spencer and Taloa were growing

8  increasingly fearful for their safety. Spencer was also bleeding and in pain.

9  These incidents are described in the declarations filed with Plaintiffs motion

10  for class certification and the deposition of Spencer.

11        CPR further identifies the following individuals as having knowledge of

12  concerted efforts by the Bay Boys, including Blakeman:

13        Christopher Taloa. As set forth above, Taloa and Spencer went surfing

14  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

15  shadowing Spencer's movement in the water. Blakeman was in the water

16  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

17  toward Taloa, at which point Taloa told him that he was too close.

18  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

19  Taloa kept moving in the water, and Blakeman attempted to keep up with

20  him but was not in good enough shape to do so.

21        Plaintiffs are also informed and believe that a Lunada Bay local named

22  Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs

23  are also informed and believe that Berstein told several people after he

24  photographed them "know we know who you are." Plaintiffs are informed

25  and believe that the Bay Boys use cameras to harass and intimidate people.

26  These incidents are described in the declarations filed with Plaintiffs motion

27  for class certification and the deposition of Taloa.

28        Diana Milena Reed. As set forth in the Complaint, Reed was harassed

-50-

by Blakeman and other Lunada Bay locals on multiple occasions.  On January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan Wright and harassed them. Blakeman was there filming the incident.[17]   On or about February 12, 2016, The Los Angeles Times published an article called "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm." On February 13, 2016, Reed and Wright returned to Lunada Bay. After Reed and Wright had continued down the path, Blakeman and Defendant Alan Johnston rushed into the Rock Fort where Reed was taking photos; the assault appeared to be a coordinated and orchestrated and in retaliation for an article that appeared in the Los Angeles Times.  Blakeman was filming Reed and had his camera close to her face.  Reed asked why he was filming her, and Blakeman responded, "Because I feel like it," and Johnston responded, "Because you're hot."  Charlie Ferrara was present during this incident, and observed the entire thing.  Although Ferrara apologized later for their behavior, he appeared to be complicit in Blakeman and Johnston's actions.

---

[17] Plaintiffs are informed and believe that there were text message sent on January 29, 2016 asking Defendant Papayans "Where are you? Kooks trying to get to the Bay." Plaintiffs are informed and believe that Papayans responded with a "LOL" and said he would be there.

-51-       Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00288

These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Reed. Plaintiffs are informed and believe that after the incident Defendant Johnston started calling and/or texting other Lunada Bay locals to check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are informed and believe that later that day Johnston received a text from his mother asking him "What happened at the bay?" Johnston replied "Nothing happened really just couple of trolls they got nothing."

Jen Bell. The incident described above was witnessed by a woman named Jen Bell who had gone to Lunada Bay that same day to photograph a guy from Malibu. When she attempted sit down on the beach with her pack, a man said: "You are practically sitting in a men's locker-room. You don't make me feel comfortable".  Bell continued to sit there for another 10 mins because she refused to be intimated but decided to head over to the fort because she saw another woman, Diana Reed, was taking photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It was obvious from the start that Johnston and Blakeman were there with the intent to harass Reed. Johnston was making rude comments to both her and Reed. Blakeman was putting the GoPro in their faces. Johnston was chugging multiple beers and it was early in the morning. Johnston asked her to help him with his wetsuit. He said "Can you help me with this?" and handed her the leg of his wetsuit. Johnston made moaning sounds when she took it like he was having an orgasm.

Jordan Wright. Wright attempted to surf Lunada Bay in January 2015 with Chris Claypool and Kenneth Claypool. He observed Blakeman harassing Chris and Ken. Wright was sitting on the outside waiting his turn for waves. By regular surfing norms, he had priority. He caught a10- to 12-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00289

1  foot-high wave and was up riding for several seconds. Alan Johnston
2  paddled the wrong way on this wave, dropped in on him going the wrong
3  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
4  while going the wrong way violates normal surf etiquette. Johnston then
5  collided with Wright, and their leashes got tangled. After they surfaced from
6  the collision, Johnston then got close to Wright and yelled, "You had to
7  fucking take that wave, didn't you!" The next wave that came through then
8  broke Wrights leash plug and the board was carried into the rocks, which
9  destroyed a new surfboard. Wright had to swim in over rocks to get his
10 board and cut his hands on the rocks doing so. Wright is confident that
11 Johnston was attempted to purposefully injure him. What he did was
12 extremely dangerous.

13       Wright has observed Blakeman on many occasions. Blakeman is easy
14 to identify because he rides a kneeboard and he is regularly filming visitors
15 on land with a camcorder. Wright believes his filming is an effort to intimidate
16 visitors. In the water, Wright has observed what appears to be Blakeman
17 directing other Bay Boys to sit close to visiting surfers. Wright has observed
18 Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to
19 the visitors, impede their movements, block their surfing, kick at them,
20 splash water at them, and dangerously drop in on them. In addition to
21 Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,
22 Charlie Ferrara, and David Mello engage in this activity. These incidents are
23 described in the declarations filed with Plaintiffs motion for class certification.

24       Ken Claypool has been harassed and filmed by Blakeman in an
25 attempt to intimidate him at Lunada Bay on multiple occasions. In January
26 2015, Claypool and his brother Chris Claypool along with Jordan Wright
27 went to surf Lunada Bay.  There were about five Lunada Bay locals in the
28 water, including Blakeman who paddled over and threatened them. Claypool

-53-

13002697.1

Ex. 5 - Page 00290

1  observed Blakeman intentionally dropped in on Wright at least twice.

2      On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

3  and Jordan Wright. There was a photographer from the Los Angeles Times

4  that was there. Also in attendance was Cory Spencer and Diana Reed.

5  Spencer was there to watch the cars.  Blakeman was there filming in an

6  effort to intimidate visitors. Blakeman can be seen in one of the pictures

7  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

8  are informed and believe that there was a text message sent that day to

9  Papayans, Michael Theil and 11 other people stating that there were 5

10 kooks standing on the bluff taking pictures, including Taloa. The text states:

11 "Things could get ugly. We all need to surf." These incidents are described

12 in the declarations filed with Plaintiffs motion for class certification.

13      Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

14 Lunada Bay in January 2015.  There were about five locals in the water,

15 including Blakeman who paddled over and was yelling "Try and catch a

16 wave and see what happens. There is no fucking way you are getting a

17 wave. Just go in. Just go. You better not cut me off."  Blakeman looked

18 possessed or possibly on drugs. His behavior got more bizarre throughout

19 the morning. He seemed to be paddling for every wave that he could

20 physically push himself into, perhaps to make a point, but he was wiping out

21 a lot and falling down the face and tumbling across the rock reef. Blakeman

22 looked dangerous to himself. When Blakeman would actually catch a wave

23 in, he would paddle back to where Claypool and his brother were sitting, and

24 continue his insane rant. On one occasion, Blakeman came less than 12

25 inches from Claypool's ear and was screaming. It was so loud, Claypool had

26 to put his fingers in his ear to protect them from being damaged. Claypool is

27 a sound engineer and to put this in perspective, a rock concert creates about

28 120 decibels of noise - this was louder; a jet engine creates about 150

-54-

13002697.1

Ex. 5 - Page 00291

1  decibels. At one point Blakeman caught a wave and drew a line aiming right

2  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

3  as he narrowly missed Claypool's head. Claypool watched as Blakeman

4  intentionally dropped in on Jordan at least twice. It seemed obvious to

5  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

6  them were having fun. Because this was getting dangerous, they decided to

7  leave.

8      When Claypool and his brother got out of water, they saw people

9  gathering on top of the cliff. One person was videotaping them from the top

10  of the cliff; it was clear to Claypool that he was doing this to try and

11  intimidate them. The people were watching them from the cliff. It was

12  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

13  obstruct his free passage and use in the customary manner of a public

14  space. It also seemed clear that Blakeman engaged in a concerted effort

15  with other Bay Boys to try and injure him. These incidents are described in

16  the declarations filed with Plaintiffs motion for class certification.

17      Jason Gersch. While observing the surf, Gersch was approached by

18  two local Bay Boys named Peter McCollum and Brant Blakeman. These

19  individuals made it known to Gersch that he could not surf there. These

20  incidents are described in the declarations filed with Plaintiffs motion for

21  class certification.

22      Plaintiffs are informed and believe and on that basis allege that

23  Defendant Blakeman and his attorneys are attempting to intimidate

24  witnesses in this case. On at least two occasions, an investigator hired by

25  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

26  attorneys. The investigator also showed up at the home of a reporter that

27  has not been listed as a witness.

28      The request is premature. Because Blakeman and the other

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00292

1  defendants are refusing to comply with their obligations to produce

2  documents under the federal rules and are impermissibly withholding

3  evidence and/or possibly spoliating evidence, we are not able to fully

4  respond to discovery requests which necessarily rely on our ability to fully

5  investigate the facts. As discovery is continuing, CPR reserves the right to

6  update this response.

7  **INTERROGATORY NO. 9:**

8      IDENTIFY ALL PERSONS that have knowledge of any facts that

9  support plaintiffs' Second Cause of Action in the Complaint (Public

10  Nuisance) against BRANT BLAKEMAN, and for each such PERSON

11  identified state all facts you contend are within that PERSON's knowledge

12  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

13      Responding Party objects to this interrogatory as premature. Because

14  this interrogatory seeks or necessarily relies upon a contention, and

15  because this matter is in its early stages and pretrial discovery has only just

16  begun, Responding Party is unable to provide a complete response at this

17  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

18  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

19  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

20  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

21  interrogatory need not be answered until designated discovery is complete,

22  or until a pretrial conference or some other time.").

23      Responding Party further objects to this interrogatory as unduly

24  burdensome, harassing, and duplicative of information disclosed in

25  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

26  Propounding Party may look to Responding Party's Rule 26(a) disclosures

27  and supplemental disclosures for the information sought by this

28  interrogatory.  Moreover, Responding Party had the opportunity to depose

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00293

1   Spencer on this topic.

2       Responding Party further objects to this interrogatory as compound.

3   This "interrogatory" contains multiple impermissible subparts, which

4   Propounding Party has propounded to circumvent the numerical limitations

5   on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

6       Responding Party further objects to this interrogatory on the grounds

7   that it seeks information that is outside of Responding Party's knowledge.

8       Responding Party further objects to the extent that this interrogatory

9   invades attorney-client privilege and/or violates the work product doctrine by

10  compelling Responding Party to disclose privileged communications and/or

11  litigation strategy.

12      Subject to and without waiver of the foregoing objections, Responding

13  Party responds as follows:

14      In addition to each defendant named in his individual capacity and

15  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

16  and the evidence submitted in support of Plaintiffs motion for class

17  certification, Responding Party identifies the following individuals:

18      CPR believes that Blakeman engaged in a concerted effort with other

19  Bay Boys to obstruct the plaintiffs' and the publics free passage and use in

20  the customary manner of a public space.  CPR also believes that Blakeman

21  coordinated with other Bay Boys to the plaintiffs and the public when they

22  were visiting Lunada Bay. CPR believes that the conduct directed at the

23  plaintiffs and others trying to surf Lunada Bay is part of an agreement

24  among Blakeman and the other Bay Boys, which at a minimum, may be

25  implied by the conduct of the parties and other members of the Bay Boys.

26  CPR believes that the Bay Boys concerted efforts to stop the public from

27  accessing the beach are documented in text messages and emails some of

28  which have been destroyed or are being withheld by the Defendants in this

-57-   Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Ex. 5 - Page 00294

1  case. For example, on February 5, 2016, Charles Mowat sent a text

2  message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy

3  Patch, Defendant Michael Papayans and several others that said "There are

4  5 kooks standing on the bluff taking pictures...I think that same Taloa guy.

5  Things could get ugly. " A Los Angeles Times photographer captured a

6  pictured of Defendant Blakeman of the bluff filming plaintiffs. Plaintiffs

7  believe that the Bay Boys take photos and/or video tape people as a form of

8  harassment and intimidation. For example, plaintiffs are also informed and

9  believe that a Lunada Bay local named Joshua Berstein was taking pictures

10  at the MLK 2014 paddle out. Plaintiffs are also informed and believe that

11  Berstein told several people after he photographed them "know we know

12  who you are." The specific acts directed against the individual plaintiffs

13  include but are not limited to the following:

14          Cory Spencer and Chris Taloa went to surf Lunada Bay. Almost

15  instantly after they arrived at Lunada Bay, they started getting harassed by

16  Bay Boys. They were told that they couldn't surf there, and Spencer was

17  called a "kook," which is a derogatory surfing term. Spencer was also told:

18  "why don't you fucking go home, you fucking kook" and asked "how many

19  other good places did you pass to come here?" These are the same types of

20  statements made by Defendant Sang Lee and others that can be observed

21  on the video published by the Guardian.[18]  These taunts started while

22  Spencer and Taloa were on the bluffs getting ready to surf. One individual

23  continued to heckle Spencer and Taloa on their way down to the beach and

24  into the water.

25  _____

26  [18] https://www.theguardian.com/travel/video/2015/may/18/california-surf-

27  wars-lunada-bay-localism-video.

28  (footnote continued)

-58-

Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Ex. 5 - Page 00295

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct. CPR believes that this is a tactic used by the Bay Boys to harass people.[19]  Blakeman impeded Spencer's movement in any direction and was intentionally blocking him from catching any waves. It was clear to Spencer that Blakeman was not there to surf that morning. Instead, his mission was to prevent Spencer and Taloa from surfing and to keep them from enjoying their time in the water, the open space, the waves, and nature. This the type of concerted effort was described by Charlie Ferrara to Reed as the way the Bay Boys act to keep people from surfing at Lunada Bay. In the approximately 90 minutes that Spencer was in the water that day, Blakeman was focused on Spencer and Taloa and continued to shadow their movements, and sit uncomfortably close to them. Spencer had never experienced anything like that before in his life. It was bizarre but also incredibly frightening and disturbing. It appeared to Spencer that Blakeman was coordinating his actions with a group of guys who were standing in the Rock Fort, along with others in the water. They were all talking to each other and it was clear they all knew each other.

At one point while Spencer was in the water and was paddling west out to the ocean, he saw a man surfing, coming in east towards the shore. The Bay Boy ran over his hand/wrist that was holding his surfboard and one of the fins on his surfboard sliced open his right wrist. Spencer has about a half-inch scar from where this man ran him over. As soon as the Bay Boy

---

[19] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

13002697.1

1  ran him over, he started berating Spencer, saying things like "what are you

2  fucking doing out here? I told you to go home. I should have run you over.

3  Why are you paddling in the sun glare where I can't see you?" The Bay Boy

4  was pretending that he didn't see Spencer but it was obvious that he did and

5  intentionally ran him over. With over 30 years of surfing experience, Spencer

6  knew that this collision was intentional on his part. Fearful of being further

7  injured at that point, and not wanting to get into an argument with him,

8  Spencer just paddled away. Spencer and Taloa caught one more wave after

9  that and then decided it was getting too dangerous to surf. More men started

10  showing up at the Rock Fort and Spencer and Taloa were growing

11  increasingly fearful for their safety. Spencer was also bleeding and in pain.

12  These incidents are described in the declarations filed with Plaintiffs motion

13  for class certification and the deposition of Spencer.

14      CPR further identifies the following individuals as having knowledge of

15  concerted efforts by the Bay Boys, including Blakeman:

16      Christopher Taloa. As set forth above, Taloa and Spencer went surfing

17  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

18  shadowing Spencer's movement in the water. Blakeman was in the water

19  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

20  toward Taloa, at which point Taloa told him that he was too close.

21  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

22  Taloa kept moving in the water, and Blakeman attempted to keep up with

23  him but was not in good enough shape to do so.

24      Diana Milena Reed. As set forth in the Complaint, Reed was harassed

25  by Blakeman and other Lunada Bay locals on multiple occasions.  On

26  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00297

1   Wright and harassed them. Blakeman was there filming the incident.[20]   On

2   or about February 12, 2016, The Los Angeles Times published an article

3   called "Bay Boys surfer gang cannot block access to upscale beach, Coastal

4   Commission says." Jordan Wright and Cory Spencer are quoted in the

5   article. Mr. Wright and a few others had planned to surf Lunada Bay the

6   following morning. Plaintiffs are informed and believe that Defendants

7   Johnston and Blakeman learned that Jordan Wright and Diana Reed were

8   going to Lunada Bay and planned to be there to harass them. On February

9   12, 2016, Defendant Alan Johnston sent the following text messages to an

10   unknown recipient: "No fucking way Taloa is back this year" and "If u really

11   wanna be a bay boy we might meet help tomm." On February 13, 2016,

12   Reed and Wright returned to Lunada Bay. After Reed and Wright had

13   continued down the path, Blakeman and Defendant Alan Johnston rushed

14   into the Rock Fort where Reed was taking photos; the assault appeared to

15   be a coordinated and orchestrated and in retaliation for an article that

16   appeared in the Los Angeles Times.  Blakeman was filming Reed and had

17   his camera close to her face.  Reed asked why he was filming her, and

18   Blakeman responded, "Because I feel like it," and Johnston responded,

19   "Because you're hot."  Charlie Ferrara was present during this incident, and

20   observed the entire thing.  Although Ferrara apologized later for their

21   behavior, he appeared to be complicit in Blakeman and Johnston's actions.

22   These incidents are described in the declarations filed with Plaintiffs motion

23   for class certification and the deposition of Reed. Plaintiffs are informed and

24

25   _____

26   [20] Plaintiffs are informed and believe that there were text message sent on
     January 29, 2016 asking Defendant Papayans "Where are you? Kooks
27   trying to get to the Bay." Plaintiffs are informed and believe that Papayans
     responded with a "LOL" and said he would be there.
28

13002697.1

Ex. 5 - Page 00298

1   believe that after the incident Defendant Johnston started calling and/or

2   texting other Lunada Bay locals to check for police to plan a getaway. At

3   around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

4   see any cops at the top." Plaintiffs are informed and believe that later that

5   day Johnston received a text from his mother asking him "What happened at

6   the bay?" Johnston replied "Nothing happened really just couple of trolls

7   they got nothing."

8       Jen Bell. The incident described above was witnessed by a woman

9   named Jen Bell who had gone to Lunada Bay that same day to photograph

10  a guy from Malibu. When she attempted sit down on the beach with her

11  pack, a man said: "You are practically sitting in a men's locker-room. You

12  don't make me feel comfortable".  Bell continued to sit there for another 10

13  minutes because she refused to be intimated but eventually decided to head

14  over to the fort because she saw another woman, Diana Reed, was taking

15  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

16  was obvious from the start that Johnston and Blakeman were there with the

17  intent to harass Reed. Johnston was making rude comments to both her and

18  Reed. Blakeman was putting the GoPro in their faces. Johnston was

19  chugging multiple beers and it was early in the morning. Johnston asked her

20  to help him with his wetsuit. He said "Can you help me with this?" and

21  handed her the leg of his wetsuit. Johnston made moaning sounds when

22  she took it like he was having an orgasm.

23      Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

24  with Chris Claypool and Kenneth Claypool. He observed Blakeman

25  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

26  for waves. By regular surfing norms, he had priority. He caught a10- to 12-

27  foot-high wave and was up riding for several seconds. Alan Johnston

28  paddled the wrong way on this wave, dropped in on him going the wrong

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00299

1  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

2  while going the wrong way violates normal surf etiquette. Johnston then

3  collided with Wright, and their leashes got tangled. After they surfaced from

4  the collision, Johnston then got close to Wright and yelled, "You had to

5  fucking take that wave, didn't you!" The next wave that came through then

6  broke Wrights leash plug and the board was carried into the rocks, which

7  destroyed a new surfboard. Wright had to swim in over rocks to get his

8  board and cut his hands on the rocks doing so. Wright is confident that

9  Johnston attempted to purposefully injure him. What he did was extremely

10  dangerous.

11       Wright has observed Blakeman on many occasions. Blakeman is easy

12  to identify because he rides a kneeboard and he is regularly filming visitors

13  on land with a camcorder. Wright believes his filming is an effort to intimidate

14  visitors. In the water, Wright has observed what appears to be Blakeman

15  directing other Bay Boys to sit close to visiting surfers. Wright has observed

16  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

17  the visitors, impede their movements, block their surfing, kick at them,

18  splash water at them, and dangerously drop in on them. In addition to

19  Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,

20  Charlie Ferrara, and David Mello engage in this activity. These incidents are

21  described in the declarations filed with Plaintiffs motion for class certification.

22       Ken Claypool has been harassed and filmed by Blakeman in an

23  attempt to intimidate him at Lunada Bay on multiple occasions. In January

24  2015, Claypool and his brother Chris Claypool along with Jordan Wright

25  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

26  water, including Blakeman who paddled over and threatened them. Claypool

27  observed Blakeman intentionally dropped in on Wright at least twice.

28       On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

-63-

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00300

and Jordan Wright. There was a photographer from the Los Angeles Times that was there. Also in attendance was Cory Spencer and Diana Reed. Spencer was there to watch the cars.  Blakeman was there filming in an effort to intimidate visitors. Blakeman can be seen in one of the pictures taken by the photographer. Also present was Defendant Papayans. Plaintiffs are informed and believe that there was a text message sent that day to Papayans, Michael Theil and 11 other people stating that there were 5 kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are informed that the text states: "Things could get ugly. We all need to surf." These incidents are described in the declarations filed with Plaintiffs motion for class certification.

Chris Claypool, his brother Ken, and Jordan Wright attempted to surf Lunada Bay in January 2015.  There were about five locals in the water, including Blakeman who paddled over and was yelling "Try and catch a wave and see what happens. There is no fucking way you are getting a wave. Just go in. Just go. You better not cut me off."  Blakeman looked possessed or possibly on drugs. His behavior got more bizarre throughout the morning. He seemed to be paddling for every wave that he could physically push himself into, perhaps to make a point, but he was wiping out a lot and falling down the face and tumbling across the rock reef. Blakeman looked dangerous to himself. When Blakeman would actually catch a wave in, he would paddle back to where Claypool and his brother were sitting, and continue his insane rant. On one occasion, Blakeman came less than 12 inches from Claypool's ear and was screaming. It was so loud, Claypool had to put his fingers in his ear to protect them from being damaged. Claypool is a sound engineer and to put this in perspective, a rock concert creates about 120 decibels of noise - this was louder; a jet engine creates about 150 decibels. At one point Blakeman caught a wave and drew a line aiming right

-64-

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00301

13002697.1

1   at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

2   as he narrowly missed Claypool's head. Claypool watched as Blakeman

3   intentionally dropped in on Jordan at least twice. It seemed obvious to

4   Claypool that Blakeman and the other Bay Boy wanted to make sure none of

5   them were having fun. Because of the danger, they decided to leave.

6        When Claypool and his brother got out of water, they saw people

7   gathering on top of the cliff. One person was videotaping them from the top

8   of the cliff; it was clear to Claypool that he was doing this to try and

9   intimidate them. The people were watching them from the cliff. It was

10   obvious that Blakeman engaged in a concerted effort with other Bay Boys to

11   obstruct his free passage and use in the customary manner of a public

12   space. It also seemed clear that Blakeman engaged in a concerted effort

13   with other Bay Boys to try and injure him. These incidents are described in

14   the declarations filed with Plaintiffs motion for class certification.

15        Jason Gersch. While observing the surf, Gersch was approached by

16   two local Bay Boys named Peter McCollum and Brant Blakeman. These

17   individuals made it known to Gersch that he could not surf there. These

18   incidents are described in the declarations filed with Plaintiffs motion for

19   class certification.

20        Plaintiffs are informed and believe and on that basis allege that

21   Defendant Blakeman and his attorneys are attempting to intimidate

22   witnesses in this case. On at least two occasions, an investigator hired by

23   Blakeman's attorneys contacted witnesses they knew were represented by

24   Plaintiffs' attorneys. The investigator also showed up at the home of a

25   reporter that has not been listed as a witness.

26        The request is premature. Because Blakeman and the other

27   defendants are refusing to comply with their obligations to produce

28   documents under the federal rules and are impermissibly withholding

1  evidence and/or possibly spoliating evidence, we are not able to fully

2  respond to discovery requests which necessarily rely on our ability to fully

3  investigate the facts. As discovery is continuing, CPR reserves the right to

4  update this response.

5  **INTERROGATORY NO. 10:**

6      IDENTIFY ALL PERSONS that have knowledge of any facts that

7  support plaintiffs' Sixth Cause of Action in the Complaint (Assault) against

8  BRANT BLAKEMAN, and for each such PERSON identified state all facts

9  you contend are within that PERSON's knowledge.

10  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

11      Responding Party objects to this interrogatory as premature. Because

12  this interrogatory seeks or necessarily relies upon a contention, and

13  because this matter is in its early stages and pretrial discovery has only just

14  begun, Responding Party is unable to provide a complete response at this

15  time, nor is it required to do so.  See Kmiec v. Powerwave Techs. Inc. et al.,

16  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; Folz v. Union Pacific

17  Railroad Company, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

18  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

19  interrogatory need not be answered until designated discovery is complete,

20  or until a pretrial conference or some other time.").

21      Responding Party further objects to this interrogatory as unduly

22  burdensome, harassing, and duplicative of information disclosed in

23  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

24  Propounding Party may look to Responding Party's Rule 26(a) disclosures

25  and supplemental disclosures for the information sought by this

26  interrogatory.  Moreover, Responding Party had the opportunity to depose

27  Spencer on this topic.

28      Responding Party further objects to this interrogatory as compound.

13002697.1

This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by compelling Responding Party to disclose privileged communications and/or litigation strategy.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

In addition to each defendant named in his individual capacity and other persons identified in Plaintiffs' Initial and Supplemental Disclosures, and the evidence submitted in support of Plaintiffs motion for class certification, Responding Party identifies the following individuals:

CPR believes that Blakeman engaged in a concerted effort with other Bay Boys to obstruct the plaintiffs' and the publics free passage and use in the customary manner of a public space.  CPR also believes that Blakeman coordinated with other Bay Boys to the plaintiffs and the public when they were visiting Lunada Bay. CPR believes that the conduct directed at the plaintiffs and others trying to surf Lunada Bay is part of an agreement among Blakeman and the other Bay Boys, which at a minimum, may be implied by the conduct of the parties and other members of the Bay Boys. CPR believes that the Bay Boys concerted efforts to stop the public from accessing the beach are documented in text messages and emails some of which have been destroyed or are being withheld by the Defendants in this case. For example, on February 5, 2016, Charles Mowat sent a text message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00304

1  Patch, Defendant Michael Papayans and several others that said "There are

2  5 kooks standing on the bluff taking pictures...I think that same Taloa guy.

3  Things could get ugly. " I think he also tells someone to "get to the bay and

4  roast the kook." A Los Angeles Times photographer captured a pictured of

5  Defendant Blakeman of the bluff filming plaintiffs.  Plaintiffs believe that the

6  Bay Boys take photos and/or video tape people as a form of harassment

7  and intimidation. For example, plaintiffs are also informed and believe that a

8  Lunada Bay local named Joshua Berstein was taking pictures at the MLK

9  2014 paddle out. Plaintiffs are also informed and believe that Berstein told

10 several people after he photographed them "know we know who you are."

11 The specific acts directed against the individual plaintiffs include but are not

12 limited to the following:

13      Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

14 after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

15 They were told that they couldn't surf there, and Spencer was called a

16 "kook," which is a derogatory surfing term. Spencer was also told: "why don't

17 you fucking go home, you fucking kook" and asked "how many other good

18 places did you pass to come here?" These are the same types of statements

19 made by Defendant Sang Lee and others that can be observed on the video

20 published by the Guardian.[21]  These taunts started while Spencer and Taloa

21 were on the bluffs getting ready to surf. One individual continued to heckle

22 Spencer and Taloa on their way down to the beach and into the water.

23      Blakeman was already in the water and began paddling around

24 Spencer and Taloa in a tight circle – staying just a few feet away from them.

25 _____

26 [21] https://www.theguardian.com/travel/video/2015/may/18/california-surf-

27 wars-lunada-bay-localism-video.

28 (footnote continued)

13002697.1

Ex. 5 - Page 00305

1   There was no legitimate reason for this conduct. CPR believes that this is a

2   tactic used by the Bay Boys to harass people.[22]  Blakeman impeded

3   Spencer's movement in any direction and was intentionally blocking him

4   from catching any waves. It was clear to Spencer that Blakeman was not

5   there to surf that morning. Instead, his mission was to prevent Spencer and

6   Taloa from surfing and to keep them from enjoying their time in the water,

7   the open space, the waves, and nature. This the type of concerted effort was

8   described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

9   people from surfing at Lunada Bay. In the approximately 90 minutes that

10  Spencer was in the water that day, Blakeman was focused on Spencer and

11  Taloa and continued to shadow their movements, and sit uncomfortably

12  close to them. Spencer had never experienced anything like that before in

13  his life. It was bizarre but also incredibly frightening and disturbing. It

14  appeared to Spencer that Blakeman was coordinating his actions with a

15  group of guys who were standing in the Rock Fort, along with others in the

16  water. They were all talking to each other and it was clear they all knew

17  each other.

18        At one point while Spencer was in the water and was paddling west

19  out to the ocean, he saw a man surfing, coming in east towards the shore.

20  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

21  of the fins on his surfboard sliced open his right wrist. Spencer has about a

22  half-inch scar from where this man ran him over. As soon as the Bay Boy

23  ran him over, he started berating Spencer, saying things like "what are you

24  fucking doing out here? I told you to go home. I should have run you over.

25  _____

26  [22] Plaintiffs are informed and believe that Defendant Papayans sent a text

27  message describing similar conduct: "We just had a kook out in the water

28  and me and Jack just sat on his ass."

13002697.1

Ex. 5 - Page 00306

1   Why are you paddling in the sun glare where I can't see you?" The Bay Boy

2   was pretending that he didn't see Spencer but it was obvious that he did and

3   intentionally ran him over. With over 30 years of surfing experience, Spencer

4   knew that this collision was intentional on his part. Fearful of being further

5   injured at that point, and not wanting to get into an argument with him,

6   Spencer just paddled away. Spencer and Taloa caught one more wave after

7   that and then decided it was getting too dangerous to surf. More men started

8   showing up at the Rock Fort and Spencer and Taloa were growing

9   increasingly fearful for their safety. Spencer was also bleeding and in pain.

10  These incidents are described in the declarations filed with Plaintiffs motion

11  for class certification and the deposition of Spencer.

12      CPR further identifies the following individuals as having knowledge of

13  concerted efforts by the Bay Boys, including Blakeman:

14      Christopher Taloa. As set forth above, Taloa and Spencer went surfing

15  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

16  shadowing Spencer's movement in the water. Blakeman was in the water

17  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

18  toward Taloa, at which point Taloa told him that he was too close.

19  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

20  Taloa kept moving in the water, and Blakeman attempted to keep up with

21  him but was not in good enough shape to do so.

22      Diana Milena Reed. As set forth in the Complaint, Reed was harassed

23  by Blakeman and other Lunada Bay locals on multiple occasions.  On

24  January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

25  Wright and harassed them. Blakeman was there filming the incident.[23]   On

26  _____

27  [23] Plaintiffs are informed and believe that there were text message sent on

28  (footnote continued)

-70-
                                               Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1                                                              Ex. 5 - Page 00307

or about February 12, 2016, The Los Angeles Times published an article called "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm." On February 13, 2016, Reed and Wright returned to Lunada Bay. After Reed and Wright had continued down the path, Blakeman and Defendant Alan Johnston rushed into the Rock Fort where Reed was taking photos; the assault appeared to be a coordinated and orchestrated and in retaliation for an article that appeared in the Los Angeles Times.  Blakeman was filming Reed and had his camera close to her face.  Reed asked why he was filming her, and Blakeman responded, "Because I feel like it," and Johnston responded, "Because you're hot."  Charlie Ferrara was present during this incident, and observed the entire thing.  Although Ferrara apologized later for their behavior, he appeared to be complicit in Blakeman and Johnston's actions. These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Reed. Plaintiffs are informed and believe that after the incident Defendant Johnston started calling and/or texting other Lunada Bay locals to check for police to plan a getaway. At

_____

January 29, 2016 asking Defendant Papayans "Where are you? Kooks trying to get to the Bay." Plaintiffs are informed and believe that Papayans responded with a "LOL" and said he would be there.

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00308

1   around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

2   see any cops at the top." Plaintiffs are informed and believe that later that

3   day Johnston received a text from his mother asking him "What happened at

4   the bay?" Johnston replied "Nothing happened really just couple of trolls

5   they got nothing."

6       Jen Bell. The incident described above was witnessed by a woman

7   named Jen Bell who had gone to Lunada Bay that same day to photograph

8   a guy from Malibu. When she attempted sit down on the beach with her

9   pack, a man said: "You are practically sitting in a men's locker-room. You

10  don't make me feel comfortable".  Bell continued to sit there for another 10

11  minutes because she refused to be intimated but eventually decided to head

12  over to the fort because she saw another woman, Diana Reed, was taking

13  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

14  was obvious from the start that Johnston and Blakeman were there with the

15  intent to harass Reed. Johnston was making rude comments to both her and

16  Reed. Blakeman was putting the GoPro in their faces. Johnston was

17  chugging multiple beers and it was early in the morning. Johnston asked her

18  to help him with his wetsuit. He said "Can you help me with this?" and

19  handed her the leg of his wetsuit. Johnston made moaning sounds when

20  she took it like he was having an orgasm.

21      Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

22  with Chris Claypool and Kenneth Claypool. He observed Blakeman

23  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

24  for waves. By regular surfing norms, he had priority. He caught a10- to 12-

25  foot-high wave and was up riding for several seconds. Alan Johnston

26  paddled the wrong way on this wave, dropped in on him going the wrong

27  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

28  while going the wrong way violates normal surf etiquette. Johnston then

1   collided with Wright, and their leashes got tangled. After they surfaced from

2   the collision, Johnston then got close to Wright and yelled, "You had to

3   fucking take that wave, didn't you!" The next wave that came through then

4   broke Wrights leash plug and the board was carried into the rocks, which

5   destroyed a new surfboard. Wright had to swim in over rocks to get his

6   board and cut his hands on the rocks doing so. Wright is confident that

7   Johnston attempted to purposefully injure him. What he did was extremely

8   dangerous.

9       Wright has observed Blakeman on many occasions. Blakeman is easy

10  to identify because he rides a kneeboard and he is regularly filming visitors

11  on land with a camcorder. Wright believes his filming is an effort to intimidate

12  visitors. In the water, Wright has observed what appears to be Blakeman

13  directing other Bay Boys to sit close to visiting surfers. Wright has observed

14  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

15  the visitors, impede their movements, block their surfing, kick at them,

16  splash water at them, and dangerously drop in on them. In addition to

17  Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,

18  Charlie Ferrara, and David Mello engage in this activity. These incidents are

19  described in the declarations filed with Plaintiffs motion for class certification.

20      Ken Claypool has been harassed and filmed by Blakeman in an

21  attempt to intimidate him at Lunada Bay on multiple occasions. In January

22  2015, Claypool and his brother Chris Claypool along with Jordan Wright

23  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

24  water, including Blakeman who paddled over and threatened them. Claypool

25  observed Blakeman intentionally dropped in on Wright at least twice.

26      On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

27  and Jordan Wright. There was a photographer from the Los Angeles Times

28  that was there. Also in attendance was Cory Spencer and Diana Reed.

-73-

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00310

1   Spencer was there to watch the cars.  Blakeman was there filming in an

2   effort to intimidate visitors. Blakeman can be seen in one of the pictures

3   taken by the photographer. Also present was Defendant Papayans. Plaintiffs

4   are informed and believe that there was a text message sent that day to

5   Papayans, Michael Theil and 11 other people stating that there were 5

6   kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

7   informed that the text states: "Things could get ugly. We all need to surf."

8   These incidents are described in the declarations filed with Plaintiffs motion

9   for class certification.

10          Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

11   Lunada Bay in January 2015.  There were about five locals in the water,

12   including Blakeman who paddled over and was yelling "Try and catch a

13   wave and see what happens. There is no fucking way you are getting a

14   wave. Just go in. Just go. You better not cut me off."  Blakeman looked

15   possessed or possibly on drugs. His behavior got more bizarre throughout

16   the morning. He seemed to be paddling for every wave that he could

17   physically push himself into, perhaps to make a point, but he was wiping out

18   a lot and falling down the face and tumbling across the rock reef. Blakeman

19   looked dangerous to himself. When Blakeman would actually catch a wave

20   in, he would paddle back to where Claypool and his brother were sitting, and

21   continue his insane rant. On one occasion, Blakeman came less than 12

22   inches from Claypool's ear and was screaming. It was so loud, Claypool had

23   to put his fingers in his ear to protect them from being damaged. Claypool is

24   a sound engineer and to put this in perspective, a rock concert creates about

25   120 decibels of noise - this was louder; a jet engine creates about 150

26   decibels. At one point Blakeman caught a wave and drew a line aiming right

27   at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

28   as he narrowly missed Claypool's head. Claypool watched as Blakeman

-74-

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00311

1   intentionally dropped in on Jordan at least twice. It seemed obvious to

2   Claypool that Blakeman and the other Bay Boy wanted to make sure none of

3   them were having fun. Because of the danger, they decided to leave.

4        When Claypool and his brother got out of water, they saw people

5   gathering on top of the cliff. One person was videotaping them from the top

6   of the cliff; it was clear to Claypool that he was doing this to try and

7   intimidate them. The people were watching them from the cliff. It was

8   obvious that Blakeman engaged in a concerted effort with other Bay Boys to

9   obstruct his free passage and use in the customary manner of a public

10  space. It also seemed clear that Blakeman engaged in a concerted effort

11  with other Bay Boys to try and injure him. These incidents are described in

12  the declarations filed with Plaintiffs motion for class certification.

13       Jason Gersch. While observing the surf, Gersch was approached by

14  two local Bay Boys named Peter McCollum and Brant Blakeman. These

15  individuals made it known to Gersch that he could not surf there. These

16  incidents are described in the declarations filed with Plaintiffs motion for

17  class certification.

18       Plaintiffs are informed and believe and on that basis allege that

19  Defendant Blakeman and his attorneys are attempting to intimidate

20  witnesses in this case. On at least two occasions, an investigator hired by

21  Blakeman's attorneys contacted witnesses they knew were represented by

22  Plaintiffs' attorneys. The investigator also showed up at the home of a

23  reporter that has not been listed as a witness.

24       The request is premature. Because Blakeman and the other

25  defendants are refusing to comply with their obligations to produce

26  documents under the federal rules and are impermissibly withholding

27  evidence and/or possibly spoliating evidence, we are not able to fully

28  respond to discovery requests which necessarily rely on our ability to fully

1  investigate the facts. As discovery is continuing, CPR reserves the right to

2  update this response.

3  **INTERROGATORY NO. 11:**

4      IDENTIFY ALL PERSONS that have knowledge of any facts that

5  support plaintiffs' Seventh Cause of Action in the Complaint (Battery) against

6  BRANT BLAKEMAN, and for each such PERSON identified state all facts

7  you contend are within that PERSON's knowledge.

8  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

9      Responding Party objects to this interrogatory as premature. Because

10  this interrogatory seeks or necessarily relies upon a contention, and

11  because this matter is in its early stages and pretrial discovery has only just

12  begun, Responding Party is unable to provide a complete response at this

13  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

14  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific

15  Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

16  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

17  interrogatory need not be answered until designated discovery is complete,

18  or until a pretrial conference or some other time.").

19      Responding Party further objects to this interrogatory as unduly

20  burdensome, harassing, and duplicative of information disclosed in

21  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

22  Propounding Party may look to Responding Party's Rule 26(a) disclosures

23  and supplemental disclosures for the information sought by this

24  interrogatory.  Moreover, Responding Party had the opportunity to depose

25  Spencer on this topic.

26      Responding Party further objects to this interrogatory as compound.

27  This "interrogatory" contains multiple impermissible subparts, which

28  Propounding Party has propounded to circumvent the numerical limitations

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN
Ex. 5 - Page 00313

1  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

2      Responding Party further objects to this interrogatory on the grounds

3  that it seeks information that is outside of Responding Party's knowledge.

4      Responding Party further objects to the extent that this interrogatory

5  invades attorney-client privilege and/or violates the work product doctrine by

6  compelling Responding Party to disclose privileged communications and/or

7  litigation strategy.

8      Subject to and without waiver of the foregoing objections, Responding

9  Party responds as follows:

10     In addition to each defendant named in his individual capacity and

11  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

12  and the evidence submitted in support of Plaintiffs motion for class

13  certification, Responding Party identifies the following individuals:

14     CPR believes that Blakeman engaged in a concerted effort with other

15  Bay Boys to obstruct the plaintiffs' and the publics free passage and use in

16  the customary manner of a public space.  CPR also believes that Blakeman

17  coordinated with other Bay Boys to the plaintiffs and the public when they

18  were visiting Lunada Bay. CPR believes that the conduct directed at the

19  plaintiffs and others trying to surf Lunada Bay is part of an agreement

20  among Blakeman and the other Bay Boys, which at a minimum, may be

21  implied by the conduct of the parties and other members of the Bay Boys.

22  CPR believes that the Bay Boys concerted efforts to stop the public from

23  accessing the beach are documented in text messages and emails some of

24  which have been destroyed or are being withheld by the Defendants in this

25  case. For example, on February 5, 2016, Charles Mowat sent a text

26  message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy

27  Patch, Defendant Michael Papayans and several others that said "There are

28  5 kooks standing on the bluff taking pictures...I think that same Taloa guy.

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00314

1   Things could get ugly." A Los Angeles Times photographer captured a

2   pictured of Defendant Blakeman of the bluff filming plaintiffs. Plaintiffs

3   believe that the Bay Boys take photos and/or video tape people as a form of

4   harassment and intimidation. For example, plaintiffs are also informed and

5   believe that a Lunada Bay local named Joshua Berstein was taking pictures

6   at the MLK 2014 paddle out. Plaintiffs are also informed and believe that

7   Berstein told several people after he photographed them "know we know

8   who you are." The specific acts directed against the individual plaintiffs

9   include but are not limited to the following:

10         Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

11   after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

12   They were told that they couldn't surf there, and Spencer was called a

13   "kook," which is a derogatory surfing term. Spencer was also told: "why don't

14   you fucking go home, you fucking kook" and asked "how many other good

15   places did you pass to come here?" These are the same types of statements

16   made by Defendant Sang Lee and others that can be observed on the video

17   published by the Guardian.[24]  These taunts started while Spencer and Taloa

18   were on the bluffs getting ready to surf. One individual continued to heckle

19   Spencer and Taloa on their way down to the beach and into the water.

20         Blakeman was already in the water and began paddling around

21   Spencer and Taloa in a tight circle – staying just a few feet away from them.

22   There was no legitimate reason for this conduct. CPR believes that this is a

23   tactic used by the Bay Boys to harass people.[25]  Blakeman impeded

24   _____

25   [24] https://www.theguardian.com/travel/video/2015/may/18/california-surf-
     wars-lunada-bay-localism-video.
26

27   [25] Plaintiffs are informed and believe that Defendant Papayans sent a text
     message describing similar conduct: "We just had a kook out in the water
28   (footnote continued)

13002697.1

Ex. 5 - Page 00315

1    Spencer's movement in any direction and was intentionally blocking him

2    from catching any waves. It was clear to Spencer that Blakeman was not

3    there to surf that morning. Instead, his mission was to prevent Spencer and

4    Taloa from surfing and to keep them from enjoying their time in the water,

5    the open space, the waves, and nature. This the type of concerted effort was

6    described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

7    people from surfing at Lunada Bay. In the approximately 90 minutes that

8    Spencer was in the water that day, Blakeman was focused on Spencer and

9    Taloa and continued to shadow their movements, and sit uncomfortably

10   close to them. Spencer had never experienced anything like that before in

11   his life. It was bizarre but also incredibly frightening and disturbing. It

12   appeared to Spencer that Blakeman was coordinating his actions with a

13   group of guys who were standing in the Rock Fort, along with others in the

14   water. They were all talking to each other and it was clear they all knew

15   each other.

16        At one point while Spencer was in the water and was paddling west

17   out to the ocean, he saw a man surfing, coming in east towards the shore.

18   The Bay Boy ran over his hand/wrist that was holding his surfboard and one

19   of the fins on his surfboard sliced open his right wrist. Spencer has about a

20   half-inch scar from where this man ran him over. As soon as the Bay Boy

21   ran him over, he started berating Spencer, saying things like "what are you

22   fucking doing out here? I told you to go home. I should have run you over.

23   Why are you paddling in the sun glare where I can't see you?" The Bay Boy

24   was pretending that he didn't see Spencer but it was obvious that he did and

25   intentionally ran him over. With over 30 years of surfing experience, Spencer

26

27   _____

28   and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00316

1   knew that this collision was intentional on his part. Fearful of being further

2   injured at that point, and not wanting to get into an argument with him,

3   Spencer just paddled away. Spencer and Taloa caught one more wave after

4   that and then decided it was getting too dangerous to surf. More men started

5   showing up at the Rock Fort and Spencer and Taloa were growing

6   increasingly fearful for their safety. Spencer was also bleeding and in pain.

7   These incidents are described in the declarations filed with Plaintiffs motion

8   for class certification and the deposition of Spencer.

9       CPR further identifies the following individuals as having knowledge of

10   concerted efforts by the Bay Boys, including Blakeman:

11       Christopher Taloa. As set forth above, Taloa and Spencer went surfing

12   at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

13   shadowing Spencer's movement in the water. Blakeman was in the water

14   with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

15   toward Taloa, at which point Taloa told him that he was too close.

16   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

17   Taloa kept moving in the water, and Blakeman attempted to keep up with

18   him but was not in good enough shape to do so.

19       Diana Milena Reed. As set forth in the Complaint, Reed was harassed

20   by Blakeman and other Lunada Bay locals on multiple occasions.  On

21   January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

22   Wright and harassed them. Blakeman was there filming the incident.[26]   On

23   or about February 12, 2016, The Los Angeles Times published an article

24

25

26   [26] Plaintiffs are informed and believe that there were text message sent on
       January 29, 2016 asking Defendant Papayans "Where are you? Kooks
27   trying to get to the Bay." Plaintiffs are informed and believe that Papayans
       responded with a "LOL" and said he would be there.
28

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00317

1  called "Bay Boys surfer gang cannot block access to upscale beach, Coastal

2  Commission says." Jordan Wright and Cory Spencer are quoted in the

3  article. Mr. Wright and a few others had planned to surf Lunada Bay the

4  following morning. Plaintiffs are informed and believe that Defendants

5  Johnston and Blakeman learned that Jordan Wright and Diana Reed were

6  going to Lunada Bay and planned to be there to harass them. On February

7  12, 2016, Defendant Alan Johnston sent the following text messages to an

8  unknown recipient: "No fucking way Taloa is back this year" and "If u really

9  wanna be a bay boy we might meet help tomm." On February 13, 2016,

10  Reed and Wright returned to Lunada Bay. After Reed and Wright had

11  continued down the path, Blakeman and Defendant Alan Johnston rushed

12  into the Rock Fort where Reed was taking photos; the assault appeared to

13  be a coordinated and orchestrated and in retaliation for an article that

14  appeared in the Los Angeles Times.  Blakeman was filming Reed and had

15  his camera close to her face.  Reed asked why he was filming her, and

16  Blakeman responded, "Because I feel like it," and Johnston responded,

17  "Because you're hot."  Charlie Ferrara was present during this incident, and

18  observed the entire thing.  Although Ferrara apologized later for their

19  behavior, he appeared to be complicit in Blakeman and Johnston's actions.

20  These incidents are described in the declarations filed with Plaintiffs motion

21  for class certification and the deposition of Reed. Plaintiffs are informed and

22  believe that after the incident Defendant Johnston started calling and/or

23  texting other Lunada Bay locals to check for police to plan a getaway. At

24  around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

25  see any cops at the top." Plaintiffs are informed and believe that later that

26  day Johnston received a text from his mother asking him "What happened at

27  the bay?" Johnston replied "Nothing happened really just couple of trolls

28  they got nothing."

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00318

1    Jen Bell. The incident described above was witnessed by a woman

2    named Jen Bell who had gone to Lunada Bay that same day to photograph

3    a guy from Malibu. When she attempted sit down on the beach with her

4    pack, a man said: "You are practically sitting in a men's locker-room. You

5    don't make me feel comfortable".  Bell continued to sit there for another 10

6    minutes because she refused to be intimated but eventually decided to head

7    over to the fort because she saw another woman, Diana Reed, was taking

8    photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

9    was obvious from the start that Johnston and Blakeman were there with the

10   intent to harass Reed. Johnston was making rude comments to both her and

11   Reed. Blakeman was putting the GoPro in their faces. Johnston was

12   chugging multiple beers and it was early in the morning. Johnston asked her

13   to help him with his wetsuit. He said "Can you help me with this?" and

14   handed her the leg of his wetsuit. Johnston made moaning sounds when

15   she took it like he was having an orgasm.

16   Jordan Wright. Wright attempted to surf Lunada Bay in January 2015

17   with Chris Claypool and Kenneth Claypool. He observed Blakeman

18   harassing Chris and Ken. Wright was sitting on the outside waiting his turn

19   for waves. By regular surfing norms, he had priority. He caught a10- to 12-

20   foot-high wave and was up riding for several seconds. Alan Johnston

21   paddled the wrong way on this wave, dropped in on him going the wrong

22   way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

23   while going the wrong way violates normal surf etiquette. Johnston then

24   collided with Wright, and their leashes got tangled. After they surfaced from

25   the collision, Johnston then got close to Wright and yelled, "You had to

26   fucking take that wave, didn't you!" The next wave that came through then

27   broke Wrights leash plug and the board was carried into the rocks, which

28   destroyed a new surfboard. Wright had to swim in over rocks to get his

-82-

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00319

1   board and cut his hands on the rocks doing so. Wright is confident that

2   Johnston attempted to purposefully injure him. What he did was extremely

3   dangerous.

4       Wright has observed Blakeman on many occasions. Blakeman is easy

5   to identify because he rides a kneeboard and he is regularly filming visitors

6   on land with a camcorder. Wright believes his filming is an effort to intimidate

7   visitors. In the water, Wright has observed what appears to be Blakeman

8   directing other Bay Boys to sit close to visiting surfers. Wright has observed

9   Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

10  the visitors, impede their movements, block their surfing, kick at

11  them, splash water at them, and dangerously drop in on them. In addition to

12  Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,

13  Charlie Ferrara, and David Mello engage in this activity. These incidents are

14  described in the declarations filed with Plaintiffs motion for class certification.

15      Ken Claypool has been harassed and filmed by Blakeman in an

16  attempt to intimidate him at Lunada Bay on multiple occasions. In January

17  2015, Claypool and his brother Chris Claypool along with Jordan Wright

18  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

19  water, including Blakeman who paddled over and threatened them. Claypool

20  observed Blakeman intentionally dropped in on Wright at least twice.

21      On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

22  and Jordan Wright. There was a photographer from the Los Angeles Times

23  that was there. Also in attendance was Cory Spencer and Diana Reed.

24  Spencer was there to watch the cars.  Blakeman was there filming in an

25  effort to intimidate visitors. Blakeman can be seen in one of the pictures

26  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

27  are informed and believe that there was a text message sent that day to

28  Papayans, Michael Theil and 11 other people stating that there were 5

-83-

1  kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

2  informed that the text states: "Things could get ugly. We all need to surf."

3  These incidents are described in the declarations filed with Plaintiffs motion

4  for class certification.

5      Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

6  Lunada Bay in January 2015.  There were about five locals in the water,

7  including Blakeman who paddled over and was yelling "Try and catch a

8  wave and see what happens. There is no fucking way you are getting a

9  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

10 possessed or possibly on drugs. His behavior got more bizarre throughout

11 the morning. He seemed to be paddling for every wave that he could

12 physically push himself into, perhaps to make a point, but he was wiping out

13 a lot and falling down the face and tumbling across the rock reef. Blakeman

14 looked dangerous to himself. When Blakeman would actually catch a wave

15 in, he would paddle back to where Claypool and his brother were sitting, and

16 continue his insane rant. On one occasion, Blakeman came less than 12

17 inches from Claypool's ear and was screaming. It was so loud, Claypool had

18 to put his fingers in his ear to protect them from being damaged. Claypool is

19 a sound engineer and to put this in perspective, a rock concert creates about

20 120 decibels of noise - this was louder; a jet engine creates about 150

21 decibels. At one point Blakeman caught a wave and drew a line aiming right

22 at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

23 as he narrowly missed Claypool's head. Claypool watched as Blakeman

24 intentionally dropped in on Jordan at least twice. It seemed obvious to

25 Claypool that Blakeman and the other Bay Boy wanted to make sure none of

26 them were having fun. Because of the danger, they decided to leave.

27      When Claypool and his brother got out of water, they saw people

28 gathering on top of the cliff. One person was videotaping them from the top

13002697.1

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00321

1   of the cliff; it was clear to Claypool that he was doing this to try and

2   intimidate them. The people were watching them from the cliff. It was

3   obvious that Blakeman engaged in a concerted effort with other Bay Boys to

4   obstruct his free passage and use in the customary manner of a public

5   space. It also seemed clear that Blakeman engaged in a concerted effort

6   with other Bay Boys to try and injure him. These incidents are described in

7   the declarations filed with Plaintiffs motion for class certification.

8       Jason Gersch. While observing the surf, Gersch was approached by

9   two local Bay Boys named Peter McCollum and Brant Blakeman. These

10   individuals made it known to Gersch that he could not surf there. These

11   incidents are described in the declarations filed with Plaintiffs motion for

12   class certification.

13       Plaintiffs are informed and believe and on that basis allege that

14   Defendant Blakeman and his attorneys are attempting to intimidate

15   witnesses in this case. On at least two occasions, an investigator hired by

16   Blakeman's attorneys contacted witnesses they knew were represented by

17   Plaintiffs' attorneys. The investigator also showed up at the home of a

18   reporter that has not been listed as a witness. The request is premature.

19   Because Blakeman and the other defendants are refusing to comply with

20   their obligations to produce documents under the federal rules and are

21   impermissibly withholding evidence and/or possibly spoliating evidence, we

22   are not able to fully respond to discovery requests which necessarily rely on

23   our ability to fully investigate the facts. As discovery is continuing, CPR

24   reserves the right to update this response.

25   **INTERROGATORY NO. 12:**

26       IDENTIFY ALL PERSONS that have knowledge of any facts that

27   support plaintiffs' Eight Cause of Action in the Complaint (Negligence)

28   against BRANT BLAKEMAN, and for each such PERSON identified state all

-85-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00322

1  facts you contend are within that PERSON's knowledge.

2  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

3      Responding Party objects to this interrogatory as premature. Because

4  this interrogatory seeks or necessarily relies upon a contention, and

5  because this matter is in its early stages and pretrial discovery has only just

6  begun, Responding Party is unable to provide a complete response at this

7  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

8  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

9  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

10  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

11  interrogatory need not be answered until designated discovery is complete,

12  or until a pretrial conference or some other time.").

13      Responding Party further objects to this interrogatory as unduly

14  burdensome, harassing, and duplicative of information disclosed in

15  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

16  Propounding Party may look to Responding Party's Rule 26(a) disclosures

17  and supplemental disclosures for the information sought by this

18  interrogatory.  Moreover, Responding Party had the opportunity to depose

19  Spencer on this topic.

20      Responding Party further objects to this interrogatory as compound.

21  This "interrogatory" contains multiple impermissible subparts, which

22  Propounding Party has propounded to circumvent the numerical limitations

23  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

24      Responding Party further objects to this interrogatory on the grounds

25  that it seeks information that is outside of Responding Party's knowledge.

26      Responding Party further objects to the extent that this interrogatory

27  invades attorney-client privilege and/or violates the work product doctrine by

28  compelling Responding Party to disclose privileged communications and/or

-86-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00323

1    litigation strategy.

2         Subject to and without waiver of the foregoing objections, Responding

3    Party responds as follows:

4         In addition to each defendant named in his individual capacity and

5    other persons identified in Plaintiffs' initial and supplemental disclosures, and

6    the evidence submitted in support of Plaintiffs motion for class certification,

7    Responding Party identifies the following individuals:

8         CPR believes that Blakeman engaged in a concerted effort with other

9    Bay Boys to obstruct the plaintiffs' and the publics free passage and use in

10   the customary manner of a public space.  CPR also believes that Blakeman

11   coordinated with other Bay Boys to the plaintiffs and the public when they

12   were visiting Lunada Bay. CPR believes that the conduct directed at the

13   plaintiffs and others trying to surf Lunada Bay is part of an agreement

14   among Blakeman and the other Bay Boys, which at a minimum, may be

15   implied by the conduct of the parties and other members of the Bay Boys.

16   CPR believes that the Bay Boys concerted efforts to stop the public from

17   accessing the beach are documented in text messages and emails some of

18   which have been destroyed or are being withheld by the Defendants in this

19   case. For example, on February 5, 2016, Charles Mowat sent a text

20   message to Defendant Brant Blakeman, Tom Sullivan, David Yoakley, Andy

21   Patch, Defendant Michael Papayans and several others that said "There are

22   5 kooks standing on the bluff taking pictures...I think that same Taloa guy.

23   Things could get ugly. " A Los Angeles Times photographer captured a

24   pictured of Defendant Blakeman of the bluff filming plaintiffs.  Plaintiffs

25   believe that the Bay Boys take photos and/or video tape people as a form of

26   harassment and intimidation. For example, plaintiffs are also informed and

27   believe that a Lunada Bay local named Joshua Berstein was taking pictures

28   at the MLK 2014 paddle out. Plaintiffs are also informed and believe that

-87-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN
Ex. 5 - Page 00324

13002697.1

1   Berstein told several people after he photographed them "know we know

2   who you are." The specific acts directed against CPR include but are not

3   limited to the following:

4       Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly

5   after they arrived at Lunada Bay, they started getting harassed by Bay Boys.

6   They were told that they couldn't surf there, and Spencer was called a

7   "kook," which is a derogatory surfing term. Spencer was also told: "why don't

8   you fucking go home, you fucking kook" and asked "how many other good

9   places did you pass to come here?" These are the same types of statements

10   made by Defendant Sang Lee and others that can be observed on the video

11   published by the Guardian.[27]   These taunts started while Spencer and Taloa

12   were on the bluffs getting ready to surf. One individual continued to heckle

13   Spencer and Taloa on their way down to the beach and into the water.

14       Blakeman was already in the water and began paddling around

15   Spencer and Taloa in a tight circle – staying just a few feet away from them.

16   There was no legitimate reason for this conduct.  CPR believes that this is a

17   tactic used by the Bay Boys to harass people.[28]  Blakeman impeded

18   Spencer's movement in any direction and was intentionally blocking him

19   from catching any waves. It was clear to Spencer that Blakeman was not

20   there to surf that morning. Instead, his mission was to prevent Spencer and

21   Taloa from surfing and to keep them from enjoying their time in the water,

22   the open space, the waves, and nature. This the type of concerted effort was

23

24   _____

25   [27]https://www.theguardian.com/travel/video/2015/may/18/california-surf-
     wars-lunada-bay-localism-video.

26

27   [28] Plaintiffs are informed and believe that Defendant Papayans sent a text
     message describing similar conduct: "We just had a kook out in the water

28   and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00325

described by Charlie Ferrara to Reed as the way the Bay Boys act to keep people from surfing at Lunada Bay. In the approximately 90 minutes that Spencer was in the water that day, Blakeman was focused on Spencer and Taloa and continued to shadow their movements, and sit uncomfortably close to them. Spencer had never experienced anything like that before in his life. It was bizarre but also incredibly frightening and disturbing. It appeared to Spencer that Blakeman was coordinating his actions with a group of guys who were standing in the Rock Fort, along with others in the water. They were all talking to each other and it was clear they all knew each other.

At one point while Spencer was in the water and was paddling west out to the ocean, he saw a man surfing, coming in east towards the shore. The Bay Boy ran over his hand/wrist that was holding his surfboard and one of the fins on his surfboard sliced open his right wrist. Spencer has about a half-inch scar from where this man ran him over. As soon as the Bay Boy ran him over, he started berating Spencer, saying things like "what are you fucking doing out here? I told you to go home. I should have run you over. Why are you paddling in the sun glare where I can't see you?" The Bay Boy was pretending that he didn't see Spencer but it was obvious that he did and intentionally ran him over. With over 30 years of surfing experience, Spencer knew that this collision was intentional on his part. Fearful of being further injured at that point, and not wanting to get into an argument with him, Spencer just paddled away. Spencer and Taloa caught one more wave after that and then decided it was getting too dangerous to surf. More men started showing up at the Rock Fort and Spencer and Taloa were growing increasingly fearful for their safety. Spencer was also bleeding and in pain. These incidents are described in the declarations filed with Plaintiffs motion for class certification and the deposition of Spencer.

1    CPR further identifies the following individuals as having knowledge of

2    concerted efforts by the Bay Boys, including Blakeman:

3    Christopher Taloa. As set forth above, Taloa and Spencer went surfing

4    at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

5    shadowing Spencer's movement in the water. Blakeman was in the water

6    with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

7    toward Taloa, at which point Taloa told him that he was too close.

8    Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

9    Taloa kept moving in the water, and Blakeman attempted to keep up with

10   him but was not in good enough shape to do so.

11   Plaintiffs are also informed and believe that a Lunada Bay local named

12   Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs

13   are also informed and believe that Berstein told several people after he

14   photographed them "know we know who you are." Plaintiffs are informed

15   and believe that the Bay Boys use cameras to harass and intimidate people.

16   These incidents are described in the declarations filed with Plaintiffs motion

17   for class certification and the deposition of Taloa.

18   Diana Milena Reed. As set forth in the Complaint, Reed was harassed

19   by Blakeman and other Lunada Bay locals on multiple occasions.  On

20   January 29, 2016, a group of Bay Boys, surrounded Reed and Jordan

21   Wright and harassed them. Blakeman was there filming the incident.[29]   On

22   or about February 12, 2016, The Los Angeles Times published an article

23   called "Bay Boys surfer gang cannot block access to upscale beach, Coastal

24

25   _____

26   [29] Plaintiffs are informed and believe that there were text message sent on
     January 29, 2016 asking Defendant Papayans "Where are you? Kooks
27   trying to get to the Bay." Plaintiffs are informed and believe that Papayans
     responded with a "LOL" and said he would be there.
28

13002697.1

Ex. 5 - Page 00327

1    Commission says." Jordan Wright and Cory Spencer are quoted in the

2    article. Mr. Wright and a few others had planned to surf Lunada Bay the

3    following morning. Plaintiffs are informed and believe that Defendants

4    Johnston and Blakeman learned that Jordan Wright and Diana Reed were

5    going to Lunada Bay and planned to be there to harass them. On February

6    12, 2016, Defendant Alan Johnston sent the following text messages to an

7    unknown recipient: "No fucking way Taloa is back this year" and "If u really

8    wanna be a bay boy we might meet help tomm." On February 13, 2016,

9    Reed and Wright returned to Lunada Bay. After Reed and Wright had

10   continued down the path, Blakeman and Defendant Alan Johnston rushed

11   into the Rock Fort where Reed was taking photos; the assault appeared to

12   be a coordinated and orchestrated and in retaliation for an article that

13   appeared in the Los Angeles Times.  Blakeman was filming Reed and had

14   his camera close to her face.  Reed asked why he was filming her, and

15   Blakeman responded, "Because I feel like it," and Johnston responded,

16   "Because you're hot."  Charlie Ferrara was present during this incident, and

17   observed the entire thing.  Although Ferrara apologized later for their

18   behavior, he appeared to be complicit in Blakeman and Johnston's actions.

19   These incidents are described in the declarations filed with Plaintiffs motion

20   for class certification and the deposition of Reed. Plaintiffs are informed and

21   believe that after the incident Defendant Johnston started calling and/or

22   texting other Lunada Bay locals to check for police to plan a getaway. At

23   around 1:00 pm Brad Travers (Travers Tree Service) texted Johnston: "Don't

24   see any cops at the top." Plaintiffs are informed and believe that later that

25   day Johnston received a text from his mother asking him "What happened at

26   the bay?" Johnston replied "Nothing happened really just couple of trolls

27   they got nothing."

28          Jen Bell. The incident described above was witnessed by a woman

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00328

named Jen Bell who had gone to Lunada Bay that same day to photograph a guy from Malibu. When she attempted sit down on the beach with her pack, a man said: "You are practically sitting in a men's locker-room. You don't make me feel comfortable".  Bell continued to sit there for another 10 mins because she refused to be intimated but decided to head over to the fort because she saw another woman, Diana Reed, was taking photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It was obvious from the start that Johnston and Blakeman were there with the intent to harass Reed. Johnston was making rude comments to both her and Reed. Blakeman was putting the GoPro in their faces. Johnston was chugging multiple beers and it was early in the morning. Johnston asked her to help him with his wetsuit. He said "Can you help me with this?" and handed her the leg of his wetsuit. Johnston made moaning sounds when she took it like he was having an orgasm.

Jordan Wright. Wright attempted to surf Lunada Bay in January 2015 with Chris Claypool and Kenneth Claypool. He observed Blakeman harassing Chris and Ken. Wright was sitting on the outside waiting his turn for waves. By regular surfing norms, he had priority. He caught a10- to 12-foot-high wave and was up riding for several seconds. Alan Johnston paddled the wrong way on this wave, dropped in on him going the wrong way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer while going the wrong way violates normal surf etiquette. Johnston then collided with Wright, and their leashes got tangled. After they surfaced from the collision, Johnston then got close to Wright and yelled, "You had to fucking take that wave, didn't you!" The next wave that came through then broke Wrights leash plug and the board was carried into the rocks, which destroyed a new surfboard. Wright had to swim in over rocks to get his board and cut his hands on the rocks doing so. Wright is confident that

13002697.1

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00329

1  Johnston was attempted to purposefully injure him. What he did was

2  extremely dangerous.

3      Wright has observed Blakeman on many occasions. Blakeman is easy

4  to identify because he rides a kneeboard and he is regularly filming visitors

5  on land with a camcorder. Wright believes his filming is an effort to intimidate

6  visitors. In the water, Wright has observed what appears to be Blakeman

7  directing other Bay Boys to sit close to visiting surfers. Wright has observed

8  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

9  the visitors, impede their movements, block their surfing, kick at them,

10  splash water at them, and dangerously drop in on them. In addition to

11  Blakeman, he has seen Michae Papayans, Sang Lee, Alan Johnston,

12  Charlie Ferrara, and David Mello engage in this activity. These incidents are

13  described in the declarations filed with Plaintiffs motion for class certification.

14      Ken Claypool has been harassed and filmed by Blakeman in an

15  attempt to intimidate him at Lunada Bay on multiple occasions. In January

16  2015, Claypool and his brother Chris Claypool along with Jordan Wright

17  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

18  water, including Blakeman who paddled over and threatened them. Claypool

19  observed Blakeman intentionally dropped in on Wright at least twice.

20      On February 5, 2016.  Claypool went to Lunada Bay with Chris Taloa

21  and Jordan Wright. There was a photographer from the Los Angeles Times

22  that was there. Also in attendance was Cory Spencer and Diana Reed.

23  Spencer was there to watch the cars.  Blakeman was there filming in an

24  effort to intimidate visitors. Blakeman can be seen in one of the pictures

25  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

26  are informed and believe that there was a text message sent that day to

27  Papayans, Michael Theil and 11 other people stating that there were 5

28  kooks standing on the bluff taking pictures, including Taloa. The text states:

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00330

1  "Things could get ugly. We all need to surf." These incidents are described

2  in the declarations filed with Plaintiffs motion for class certification.

3      Chris Claypool, his brother Ken, and Jordan Wright attempted to surf

4  Lunada Bay in January 2015.  There were about five locals in the water,

5  including Blakeman who paddled over and was yelling "Try and catch a

6  wave and see what happens. There is no fucking way you are getting a

7  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

8  possessed or possibly on drugs. His behavior got more bizarre throughout

9  the morning. He seemed to be paddling for every wave that he could

10  physically push himself into, perhaps to make a point, but he was wiping out

11  a lot and falling down the face and tumbling across the rock reef. Blakeman

12  looked dangerous to himself. When Blakeman would actually catch a wave

13  in, he would paddle back to where Claypool and his brother were sitting, and

14  continue his insane rant. On one occasion, Blakeman came less than 12

15  inches from Claypool's ear and was screaming. It was so loud, Claypool had

16  to put his fingers in his ear to protect them from being damaged. Claypool is

17  a sound engineer and to put this in perspective, a rock concert creates about

18  120 decibels of noise - this was louder; a jet engine creates about 150

19  decibels. At one point Blakeman caught a wave and drew a line aiming right

20  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

21  as he narrowly missed Claypool's head. Claypool watched as Blakeman

22  intentionally dropped in on Jordan at least twice. It seemed obvious to

23  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

24  them were having fun. Because this was getting dangerous, they decided to

25  leave.

26      When Claypool and his brother got out of water, they saw people

27  gathering on top of the cliff. One person was videotaping them from the top

28  of the cliff; it was clear to Claypool that he was doing this to try and

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00331

1  intimidate them. The people were watching them from the cliff. It was

2  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

3  obstruct his free passage and use in the customary manner of a public

4  space. It also seemed clear that Blakeman engaged in a concerted effort

5  with other Bay Boys to try and injure him. These incidents are described in

6  the declarations filed with Plaintiffs motion for class certification.

7         Jason Gersch. While observing the surf, Gersch was approached by

8  two local Bay Boys named Peter McCollum and Brant Blakeman. These

9  individuals made it known to Gersch that he could not surf there. These

10 incidents are described in the declarations filed with Plaintiffs motion for

11 class certification.

12        Plaintiffs are informed and believe and on that basis allege that

13 Defendant Blakeman and his attorneys are attempting to intimidate

14 witnesses in this case. On at least two occasions, an investigator hired by

15 Blakeman's attorneys contacted witnesses represented by Plaintiffs'

16 attorneys. The investigator also showed up at the home of a reporter that

17 has not been listed as a witness.

18        The request is premature. Because Blakeman and the other

19 defendants are refusing to comply with their obligations to produce

20 documents under the federal rules and are impermissibly withholding

21 evidence and/or possibly spoliating evidence, we are not able to fully

22 respond to discovery requests which necessarily rely on our ability to fully

23 investigate the facts. As discovery is continuing, CPR reserves the right to

24 update this response.

25

26

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN
Ex. 5 - Page 00332

1  DATED: February 24, 2017                OTTEN LAW, PC

2

3

4                                          By: /s/ Victor Otten
                                               VICTOROTTEN
5                                              KAVITA TEKCHANDANI
                                               Attorneys for Plaintiffs
6                                              CORY SPENCER, DIANA MILENA
                                               REED, and COASTAL PROTECTION
7                                              RANGERS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00333

## VERIFICATION

I, Mark Slatten, have read PLAINTIFF California Protection Rangers RESPONSE TO ~~REQUEST FOR PRODUCTION~~ *INTERROGATORIES* SET ONE, PROPOUNDED BY DEFENDANT BRANT BLAKEMAN and know its contents.

I am the President of Coastal Protection Rangers which is a party to this action and I make this verification for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 24, 2017, in ___Murrieta___, California.


_____
Mark Slatten

12755241.1

Ex. 5 - Page 00334

**PROOF OF SERVICE**
*Spencer, et al. v. Lunada Bay Boys, et al.*
**U.S.D.C. for the Central District of California**
**Case No. 2:16-cv-02129-SJO (RAOx)**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is: 3620 Pacific Coast Highway, Suite 100, Torrance, CA 90505.

On February 24, 2017, I served the original or a true copy of the following document(s) described as:

**PLAINTIFF COASTAL PROTECTION RANGERS (FURTHER) SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **February 24, 2017**, at Torrance, California.

/s/*Victor Otten*
Victor Otten

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

13002697.1

Ex. 5 - Page 00335

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SERVICE LIST**
***Spencer, et al. v. Lunada Bay Boys, et al.***
**U.S.D.C. for the Central District of California**
**Case No. 2:16-cv-02129-SJO (RAOx)**

Robert T. Mackey, Esq.                    *(Attorneys for Defendant BRANT*
Peter H. Crossin, Esq.                    *BLAKEMAN)*
Richard P. Dieffenbach, Esq.              (served original)
John P. Worgul, Esq.
VEATCH CARLSON, LLP
1055 Wilshire Blvd., 11th Floor
Los Angeles. CA  90017

Robert S. Cooper, Esq.                    *(Attorneys for Defendant BRANT*
BUCHALTER NEMER, APC                      *BLAKEMAN)*
1000 Wilshire Blvd., Suite 1500           (served true copy)
Los Angeles. CA  90017

J. Patrick Carey, Esq.                    *(Attorney for Defendant ALAN*
LAW OFFICES OF                            *JOHNSTON a/k/a JALIAN*
  J. PATRICK CAREY                        *JOHNSTON)*
1230 Rosecrans Ave., Suite 300            (served true copy)
Manhattan Beach. CA  90266

Peter T. Haven, Esq.                      *(Attorney for Defendant MICHAEL*
HAVEN LAW                                 *RAY PAPAYANS)*
1230 Rosecrans Ave., Suite 300            (served true copy)
Manhattan Beach. CA  90266

Dana Alden Fox, Esq.                      *(Attorneys for Defendant SANG LEE)*
Edward E. Ward, Jr., Esq.                 (served true copy)
Eric Y. Kizirian, Esq.
Tera Lutz, Esq.
LEWIS BRISBOIS
  BISGAARD & SMITH LLP
633 W. 5th Street, Suite 4000
Los Angeles. CA  90071

Daniel M. Crowley, Esq.                   *(Attorneys for Defendant SANG LEE)*
BOOTH, MITCHEL &                          (served true copy)
  STRANGE LLP
707 Wilshire Blvd., Suite 4450
Los Angeles. CA  90017

Mark C. Fields, Esq.                      *(Attorney for Defendant ANGELO*
LAW OFFICES OF                            *FERRARA and Defendant N. F.*
  MARK C. FIELDS, APC                     *appearing through Guardian Ad*
333 South Hope Street, 35th Floor         *Litem, Leonora Ferrara)*
Los Angeles. CA  90071                    (served true copy)

-98-                              Case No. 2:16-cv-02129-SJO (RAOx)

13002697.1

Ex. 5 - Page 00336

1  Thomas M. Phillip, Esq.              *(Attorneys for Defendant ANGELO*
   Aaron G. Miller, Esq.                *FERRARA)*
2  THE PHILLIPS FIRM                    (served true copy)
   800 Wilshire Blvd., Suite 1550
3  Los Angeles. CA  90017

4  Patrick Au, Esq.                     *(Attorneys for Defendants FRANK*
   Laura L. Bell, Esq.                  *FERRARA and CHARLIE FERRARA)*
5  BREMER WHYTE                         (served true copy)
     BROWN & O'MEARA, LLP
6  21271 Burbank Blvd., Suite 110
   Woodland Hills. CA  91367
7
   Edwin J. Richards, Esq.              *(Attorneys for Defendants CITY OF*
8  Antoinette P. Hewitt, Esq.           *PALOS VERDES and CHIEF OF*
   Rebecca L. Wilson, Esq.              *POLICE JEFF KEPLEY)*
9  Jacob Song, Esq.                     (served true copy)
   Christopher D. Glos, Esq.
10 KUTAK ROCK LLP
   5 Park Plaza, Suite 1500
11 Irvine. CA  92614-8595

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13002697.1

PLAINTIFF COASTAL PROTECTION RANGERS SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE
PROPOUNDED BY DEFENDANT BLAKE BLAKEMAN

Ex. 5 - Page 00337