# EXHIBIT 3

HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
CAROLINE LEE, SBN 293297
clee@hansonbridgett.com
JENNIFER ANIKO FOLDVARY, SBN 292216
jfoldvary@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone: (916) 442-3333
Facsimile:  (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone: (310) 378-8533
Facsimile:  (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation, | CASE NO. 2:16-cv-02129-SJO (RAOx) **PLAINTIFF DIANA MILENA REED'S SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN** |

| | |
|---|---|
| 1       Plaintiffs, | |
| 2 | Complaint Filed:    March 29, 2016 |
| 3       v. | Trial Date:         November 7, 2017 |

4  LUNADA BAY BOYS; THE
5  INDIVIDUAL MEMBERS OF THE
   LUNADA BAY BOYS, including but
6  not limited to SANG LEE, BRANT
   BLAKEMAN, ALAN JOHNSTON
7  AKA JALIAN JOHNSTON,
8  MICHAEL RAE PAPAYANS,
9  ANGELO FERRARA, FRANK
   FERRARA, CHARLIE FERRARA,
10 and N. F.; CITY OF PALOS
   VERDES ESTATES; CHIEF OF
11 POLICE JEFF KEPLEY, in his
12 representative capacity; and DOES
   1-10,
13

14       Defendants.

15

16     PROPOUNDING PARTY:    Defendant BRANT BLAKEMAN

17     RESPONDING PARTY:     Plaintiff DIANA MILENA REED

18     SET NO.:                 SUPPLEMENTAL

19       Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff

20 DIANA MILENA REED ("Responding Party") hereby submits these

21 supplemental objections and responses to Interrogatories, Set One,

22 propounded by Defendant BRANT BLAKEMAN ("Propounding Party").

23                     **PRELIMINARY STATEMENT**

24       Nothing in this response should be construed as an admission by

25 Responding Party with respect to the admissibility or relevance of any fact,

26 or of the truth or accuracy of any characterization or statement of any kind

27 contained in Propounding Party's Interrogatories. Responding Party has not

28

13002592.1

completed its investigation of the facts relating to this case, its discovery or its preparation for trial. All responses and objections contained herein are based only upon information that is presently available to and specifically known by Responding Party. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts and add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the responses set forth herein. The following objections and responses are made without prejudice to Responding Party's right to produce at trial, or otherwise, evidence regarding any subsequently discovered information. Responding Party accordingly reserves the right to modify and amend any and all responses herein as research is completed and contentions are made.

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

IDENTIFY ALL PERSONS that have knowledge of any facts that support your contention that BRANT BLAKEMAN participated in any way in the "commission of enumerated 'predicate crimes'" as alleged in paragraph 5 of the Complaint, and for each such PERSON identified state all facts you contend are within that PERSON's knowledge.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*, 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

1   *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

2   also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

3   interrogatory need not be answered until designated discovery is complete,

4   or until a pretrial conference or some other time.").

5       Responding Party further objects to this interrogatory as unduly

6   burdensome, harassing, and duplicative of information disclosed in

7   Responding Party's Rule 26(a) disclosures and supplemental disclosures.

8   Propounding Party may look to Responding Party's Rule 26(a) disclosures

9   and supplemental disclosures for the information sought by this

10  interrogatory.  Moreover, Responding Party had the opportunity to depose

11  Ms. Reed on this topic.

12      Responding Party further objects to this interrogatory as compound.

13  This "interrogatory" contains multiple impermissible subparts, which

14  Propounding Party has propounded to circumvent the numerical limitations

15  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

16      Responding Party further objects to this interrogatory on the grounds

17  that it seeks information that is outside of Responding Party's knowledge.

18      Responding Party further objects to the extent that this interrogatory

19  invades attorney-client privilege and/or violates the work product doctrine by

20  compelling Responding Party to disclose privileged communications and/or

21  litigation strategy.

22      Subject to and without waiver of the foregoing objections, Responding

23  Party responds as follows:

24      In addition to each defendant named in his individual capacity and

25  other persons identified in Plaintiffs' initial and Supplemental Disclosures,

26  and the evidence submitted in support of Plaintiffs motion for class

27  certification, Responding Party identifies the following individuals:

28

1    Diana Reed: believes that Blakeman engaged in a concerted effort

2   with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

3   and use in the customary manner of a public space.  Reed also believes that

4   Blakeman coordinated with other Bay Boys to harass and assault the

5   plaintiffs and the public when they were visiting Lunada Bay. Reed believes

6   that the conduct directed at the plaintiffs and others trying to surf Lunada

7   Bay is part of an agreement among Blakeman and the other Bay Boys,

8   which at a minimum, may be implied by the conduct of the parties and other

9   members of the Bay Boys. Reed believes that the Bay Boys concerted

10   efforts to stop the public from accessing the beach are documented in text

11   messages and emails some of which have been destroyed or are being

12   withheld by the Defendants in this case. For example, on February 5, 2016,

13   Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

14   Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

15   several others that said "There are 5 kooks standing on the bluff taking

16   pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles

17   Times photographer captured a pictured of Defendant Blakeman of the bluff

18   filming plaintiffs.  Plaintiffs believe that the Bay Boys take photos and/or

19   video tape people as a form of harassment and intimidation. Plaintiffs are

20   also informed and believe that a Lunada Bay local named Joshua Berstein

21   was taking pictures at the MLK 2014 paddle out. Plaintiffs are also informed

22   and believe that Berstein told several people after he photographed them,

23   "Now we know who you are." Plaintiffs believe that the conduct directed at

24   Reed by Blakeman and the individual Bay Boys is because she is a woman.

25   Plaintiff is informed and believes that there are numerous text messages

26   where the Bay Boys refer to Reed as a "bitch" and make sexual comments

27   about her.

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

The specific acts directed against Reed include but are not limited to the following:

i)      Reed went to Lunada Bay on January 29, 2016 with Jordan Wright.  Reed had intended to surf at Lunada Bay that day because the conditions were such that she felt comfortable surfing. Immediately after they parked their car along the bluffs, the harassment began. Several men drove by and circled around their car. This was the day that she and Wright were harassed and intimidated by David Melo. Blakeman was recording them on land with his camera. It was very disturbing to Reed and made her feel very uncomfortable. Plaintiffs are informed and believe that this was witnessed by John MacHarg.

ii)      On or about February 12, 2016, The Los Angeles Times published an article called "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm."

iii)      On February 13, 2016, Reed returned to Lunada Bay with Jordan Wright to watch him surf and take photographs. Prior to her arrival, she contacted the Palos Verdes Estates Police and requested an escort from the bluffs to the beach. She was concerned about her safety given the January 29, 2016 incident. She was told that the police were unavailable and no officers were present when they arrived.

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1   When Reed and Wright reached the beach, they encountered angry
2   locals who were yelling at them. Reed and Wright ignored the harassment
3   and Wright got into the water to surf and Reed made her way to the Rock
4   Fort where she planned to watch Wright and photograph him.

5   Approximately two hours after Reed had arrived at Lunada Bay, while
6   she was standing in the Rock Fort taking photos, Blakeman and defendant
7   Alan Johnston rushed into the fort and ran towards her in a hostile and
8   aggressive manner. It seemed that they had coordinated and orchestrated
9   the attack which completely caught Reed off guard. Blakeman was filming
10  Reed again, and at times, held his camera right in her face. It was
11  intimidating and harassing to Reed, and she feared for her safety.

12  Reed asked Blakeman and Johnston why they were filming her,
13  because it made her uncomfortable. Blakeman responded, "because I feel
14  like it." Johnston responded, "Because you're hot. Because you're fucking
15  sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful
16  way so that it sprayed Reed's arm and her camera. Reed, paralyzed with
17  fear, was unable to leave the Rock Fort as Blakeman and Johnston were
18  standing closest to the exit.

19  iv)   Plaintiffs are informed and believe that after the incident
20  Defendant Johnston started calling and/or texting other Lunada Bay locals to
21  check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers
22  Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are
23  informed and believe that later that day Johnston received a text from his
24  mother asking him "What happened at the bay?" Johnston replied "Nothing
25  happened really just couple of trolls they got nothing."

26  Reed further identifies the following individuals as having knowledge of
27  concerted efforts by the Bay Boys, including Blakeman:

28

-7-

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer was also told: "why don't you fucking go home, you fucking kook;" and was asked, "how many other good places did you pass to come here?" These are the same types of statements made by Defendant Sang Lee and others that can be observed on the video published by the Guardian.[1]  These taunts started while Spencer and Taloa were on the bluffs getting ready to surf. One individual continued to heckle Spencer and Taloa on their way down to the beach and into the water.

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct. Reed believes that this is a tactic used by the Bay Boys to harass people.[2]  Blakeman impeded Spencer's movement in any direction and was intentionally blocking him from catching any waves. It was clear to Spencer that Blakeman was not there to surf that morning. Instead, his mission was to prevent Spencer and Taloa from surfing and to keep them from enjoying their time in the water, the open space, the waves, and nature. This type of concerted effort was described by Charlie Ferrara to Reed as the way the Bay Boys act to keep people from surfing at Lunada Bay. In the approximately 90 minutes that

_____

[1] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

[2] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

13002592.1

Spencer was in the water that day, Blakeman was focused on Spencer and Taloa and continued to shadow their movements and sit uncomfortably close to them. Spencer had never experienced anything like that before in his life. It was bizarre but also incredibly frightening and disturbing. It appeared to Spencer that Blakeman was coordinating his actions with a group of guys who were standing in the Rock Fort, along with others in the water. They were all talking to each other and it was clear they all knew each other.

At one point while Spencer was in the water and was paddling west out to the ocean, he saw a man surfing, coming in east towards the shore. The Bay Boy ran over his hand/wrist that was holding his surfboard and one of the fins on his surfboard sliced open his right wrist. Spencer has about a half-inch scar from where this man ran him over. As soon as the Bay Boy ran him over, he started berating Spencer, saying things like "what are you fucking doing out here? I told you to go home. I should have run you over. Why are you paddling in the sun glare where I can't see you?" The Bay Boy was pretending that he didn't see Spencer but it was obvious that he did and intentionally ran him over. With over 30 years of surfing experience, Spencer knew that this collision was intentional on his part. Fearful of being further injured at that point, and not wanting to get into an argument with him, Spencer just paddled away. Spencer and Taloa caught one more wave after that and then decided it was getting too dangerous to surf. More men started showing up at the Rock Fort and Spencer and Taloa were growing increasingly fearful for their safety. Spencer was also bleeding and in pain. These incidents are described in the declarations filed with Plaintiffs' motion for class certification and the deposition of Spencer.

Christopher Taloa: As set forth above, Taloa and Spencer went surfing

13002592.1

at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman shadowing Spencer's movement in the water. Blakeman was in the water with four or five other Lunada Bay Locals.  At one point, Blakeman paddled toward Taloa, at which point Taloa told him that he was too close. Blakeman replied, "This is the ocean. We are surfing. I can be wherever." Taloa kept moving in the water, and Blakeman attempted to keep up with him but was not in good enough shape to do so.

Jen Bell: The incident described above was witnessed by a woman named Jen Bell who had gone to Lunada Bay that same day to photograph a guy from Malibu. When she attempted sit down on the beach with her pack, a man said: "You are practically sitting in a men's locker-room. You don't make me feel comfortable."  Bell continued to sit there for another 10 minutes because she refused to be intimated but eventually decided to head over to the fort because she saw another woman, Diana Reed, was taking photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It was obvious from the start that Johnston and Blakeman were there with the intent to harass Reed. Johnston was making rude comments to both her and Reed. Blakeman was putting the GoPro in their faces. Johnston was chugging multiple beers and it was early in the morning. Johnston asked her to help him with his wetsuit. He said "Can you help me with this?" and handed her the leg of his wetsuit. Johnston made moaning sounds when she took it like he was having an orgasm.

Jordan Wright: Wright attempted to surf Lunada Bay in January 2015 with Chris Claypool and Kenneth Claypool. He observed Blakeman harassing Chris and Ken. Wright was sitting on the outside waiting his turn for waves. By regular surfing norms, he had priority. He caught a 10- to 12-foot-high wave and was up riding for several seconds. Alan Johnston

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

paddled the wrong way on this wave, dropped in on him going the wrong way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer while going the wrong way violates normal surf etiquette. Johnston then collided with Wright, and their leashes got tangled. After they surfaced from the collision, Johnston then got close to Wright and yelled, "You had to fucking take that wave, didn't you!" The next wave that came through then broke Wright's leash plug and the board was carried into the rocks, which destroyed a new surfboard. Wright had to swim in over rocks to get his board and cut his hands on the rocks doing so. Wright is confident that Johnston attempted to purposefully injure him. What he did was extremely dangerous.

Wright has observed Blakeman on many occasions. Blakeman is easy to identify because he rides a kneeboard and he is regularly filming visitors on land with a camcorder. Wright believes his filming is an effort to intimidate visitors. In the water, Wright has observed what appears to be Blakeman directing other Bay Boys to sit close to visiting surfers. Wright has observed Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to the visitors, impede their movements, block their surfing, kick at them, splash water at them, and dangerously drop in on them. In addition to Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston, Charlie Ferrara, and David Melo engage in this activity. These incidents are described in the declarations filed with Plaintiffs' motion for class certification.

Ken Claypool: has been harassed and filmed by Blakeman in an attempt to intimidate him at Lunada Bay on multiple occasions. In January 2015, Claypool and his brother Chris Claypool along with Jordan Wright went to surf Lunada Bay.  There were about five Lunada Bay locals in the

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1 | water, including Blakeman who paddled over and threatened them. Claypool
2 | observed Blakeman intentionally drop in on Wright at least twice.

3 | On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa
4 | and Jordan Wright. There was a photographer from the Los Angeles Times
5 | that was there. Also in attendance was Cory Spencer and Diana Reed.
6 | Spencer was there to watch the cars.  Blakeman was there filming in an
7 | effort to intimidate visitors. Blakeman can be seen in one of the pictures
8 | taken by the photographer. Also present was Defendant Papayans. Plaintiffs
9 | are informed and believe that there was a text message sent that day to
10 | Papayans, Michael Thiel and 11 other people stating that there were 5
11 | kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are
12 | informed that the text states: "Things could get ugly." These incidents are
13 | described in the declarations filed with Plaintiffs' motion for class
14 | certification.

15 | Chris Claypool: he and his brother Ken and Jordan Wright attempted
16 | to surf Lunada Bay in January 2015.  There were about five locals in the
17 | water, including Blakeman who paddled over and was yelling, "Try and catch
18 | a wave and see what happens. There is no fucking way you are getting a
19 | wave. Just go in. Just go. You better not cut me off."  Blakeman looked
20 | possessed or possibly on drugs. His behavior got more bizarre throughout
21 | the morning. He seemed to be paddling for every wave that he could
22 | physically push himself into, perhaps to make a point, but he was wiping out
23 | a lot and falling down the face and tumbling across the rock reef. Blakeman
24 | looked dangerous to himself. When Blakeman would actually catch a wave
25 | in, he would paddle back to where Claypool and his brother were sitting, and
26 | continue his insane rant. On one occasion, Blakeman came less than 12
27 | inches from Claypool's ear and was screaming. It was so loud, Claypool had

28 |

-12-

13002592.1

1  to put his fingers in his ear to protect them from being damaged. Claypool is

2  a sound engineer and to put this in perspective, a rock concert creates about

3  120 decibels of noise - this was louder; a jet engine creates about 150

4  decibels. At one point Blakeman caught a wave and drew a line aiming right

5  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

6  as he narrowly missed Claypool's head. Claypool watched as Blakeman

7  intentionally dropped in on Jordan at least twice. It seemed obvious to

8  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

9  them were having fun. Because of the danger, they decided to leave.

10       When Claypool and his brother got out of water, they saw people

11  gathering on top of the cliff. One person was videotaping them from the top

12  of the cliff; it was clear to Claypool that he was doing this to try and

13  intimidate them. The people were watching them from the cliff. It was

14  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

15  obstruct his free passage and use in the customary manner of a public

16  space. It also seemed clear that Blakeman engaged in a concerted effort

17  with other Bay Boys to try and injure him. These incidents are described in

18  the declarations filed with Plaintiffs' motion for class certification.

19       Jason Gersch: While observing the surf, Gersch was approached by

20  two local Bay Boys named Peter McCollum and Brant Blakeman. These

21  individuals made it known to Gersch that he could not surf there. These

22  incidents are described in the declarations filed with Plaintiffs' motion for

23  class certification.

24       Plaintiffs are informed and believe and on that basis allege that

25  Defendant Blakeman and his attorneys are attempting to intimidate

26  witnesses in this case. On at least two occasions, an investigator hired by

27  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  attorneys. The investigator also showed up at the home of a reporter that

2  has not been listed as a witness.

3       The request is premature. Because Blakeman and the other

4  defendants are refusing to comply with their obligations to produce

5  documents under the federal rules and are impermissibly withholding

6  evidence and/or possibly spoilating evidence, we are not able to fully

7  respond to discovery requests which necessarily rely on our ability to fully

8  investigate the facts. As discovery is continuing, Reed reserves the right to

9  update this response.

10  Witness Contact Information

11  Defendant Brant Blakeman, represented by Veatch Carlson LLP and

12  Buchalter Nemer APC.

13  Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices

14  of J. Patrick Carey.

15  Defendant Michael Ray Papayans, represented by Haven Law.

16  Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP

17  and Booth, Mitchel & Strange LLP.

18  Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,

19  APC and The Phillips Firm.

20  Defendant N.F., represented by Law Offices of Mark C. Fields, APC.

21  Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara

22  LLP.

23  Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara

24  LLP.

25  David Melo, represented by Ken Gaugh, Attorney at Law.

26  The following witnesses are represented by Hanson Bridget LLP and Otten

27  Law PC: Plaintiff Cory Spencer, Plaintiff Diana Reed, Christopher Taloa,

28

-14-

13002592.1

1  Jordan Wright, Ken Claypool, Chris Claypool, Jason Gersch, John MacHarg

2  Charles Thomas Mowat aka "Chach." Contact info believed to be: 2337 Via

3  Rivera, Palos Verdes Peninsula, CA 90274.

4  Thomas J. Sullivan Jr.  Contact info believed to be: 617 Paseo Lunado,

5  Palos Verdes Estates, CA 90274, (310) 947-0087, sully@fire-usa.com.

6  David Yoakley. Contact info believed to be: 2850 Winlock Rd., Torrance,

7  CA, 310-963-6889.

8  Andy Patch. Contact info believed to be (310) 213-1505,

9  patchman@socal.rr.com.

10  Josh Berstein. Contact info believed to be (310) 351-8004.

11  Brad Travers. Contact info believed to be (310) 704-7393.

12  Jen Bell, address unknown (323) 308-9326.

13  Michael Thiel. Contact info believed to be: 841 Rivera Place, Palos Verdes

14  Estates, CA 90274; (310) 480-3027.

15  **INTERROGATORY NO. 2:**

16      IDENTIFY ALL PERSONS that have knowledge of any facts that

17  support your contention in paragraph 7 of the Complaint that BRANT

18  BLAKEMAN "is responsible in some manner for the Bane Act violations and

19  public nuisance described in the Complaint" and for each such PERSON

20  identified state all facts you contend are within that PERSON's knowledge.

21  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

22      Responding Party objects to this interrogatory as premature. Because

23  this interrogatory seeks or necessarily relies upon a contention, and

24  because this matter is in its early stages and pretrial discovery has only just

25  begun, Responding Party is unable to provide a complete response at this

26  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

27  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

28

13002592.1

1     *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

2     also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

3     interrogatory need not be answered until designated discovery is complete,

4     or until a pretrial conference or some other time.").

5          Responding Party further objects to this interrogatory as unduly

6     burdensome, harassing, and duplicative of information disclosed in

7     Responding Party's Rule 26(a) disclosures and supplemental disclosures.

8     Propounding Party may look to Responding Party's Rule 26(a) disclosures

9     and supplemental disclosures for the information sought by this

10     interrogatory.  Moreover, Responding Party had the opportunity to depose

11     Ms. Reed on this topic.

12          Responding Party further objects to this interrogatory as compound.

13     This "interrogatory" contains multiple impermissible subparts, which

14     Propounding Party has propounded to circumvent the numerical limitations

15     on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

16          Responding Party further objects to this interrogatory on the grounds

17     that it seeks information that is outside of Responding Party's knowledge.

18          Responding Party further objects to the extent that this interrogatory

19     invades attorney-client privilege and/or violates the work product doctrine by

20     compelling Responding Party to disclose privileged communications and/or

21     litigation strategy.

22          Subject to and without waiver of the foregoing objections, Responding

23     Party responds as follows:

24          In addition to each defendant named in his individual capacity and

25     other persons identified in Plaintiff's Initial and Supplemental Disclosures,

26     and the evidence submitted in support of Plaintiffs' motion for class

27     certification, Responding Party identifies the following individuals:

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1        Diana Reed: believes that Blakeman engaged in a concerted effort

2  with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

3  and use in the customary manner of a public space.  Reed also believes that

4  Blakeman coordinated with other Bay Boys to harass and assault the

5  plaintiffs and the public when they were visiting Lunada Bay. Reed believes

6  that the conduct directed at the plaintiffs and others trying to surf Lunada

7  Bay is part of an agreement among Blakeman and the other Bay Boys,

8  which at a minimum, may be implied by the conduct of the parties and other

9  members of the Bay Boys. Reed believes that the Bay Boys concerted

10  efforts to stop the public from accessing the beach are documented in text

11  messages and emails some of which have been destroyed or are being

12  withheld by the Defendants in this case. For example, on February 5, 2016,

13  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

14  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

15  several others that said "There are 5 kooks standing on the bluff taking

16  pictures...I think that same Taloa guy. Things could get ugly.." A Los

17  Angeles Times photographer captured a pictured of Defendant Blakeman of

18  the bluff filming plaintiffs. Plaintiffs believe that the Bay Boys take photos

19  and/or video tape people as a form of harassment and intimidation. For

20  example, plaintiffs are also informed and believe that a Lunada Bay local

21  named Joshua Berstein was taking pictures at the MLK 2014 paddle out.

22  Plaintiffs are also informed and believe that Berstein told several people

23  after he photographed them, "Now we know who you are." Plaintiffs believe

24  that the conduct directed at Reed by Blakeman and the individual Bay Boys

25  is because she is a woman. Plaintiff is informed and believes that there are

26  numerous text messages where the Bay Boys refer to Reed as a "bitch" and

27  make sexual comments about her.

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1    The specific acts directed against Reed include but are not limited to
2 the following:

3    i)    Reed went to Lunada Bay on January 29, 2016 with Jordan
4 Wright.  Reed had intended to surf at Lunada Bay that day because the
5 conditions were such that she felt comfortable surfing immediately after they
6 parked their car along the bluffs, the harassment began. Several men drove
7 by and circled around their car. This was the day that she and Wright were
8 harassed and intimidated by David Melo. Blakeman was recording them on
9 land with his camera. It was very disturbing to Reed and made her feel very
10 uncomfortable. Plaintiffs are informed and believe that this was witnessed by
11 John MacHarg.

12    ii)    On or about February 12, 2016, The Los Angeles Times
13 published an article called "Bay Boys surfer gang cannot block access to
14 upscale beach, Coastal Commission says." Jordan Wright and Cory
15 Spencer are quoted in the article. Mr. Wright and a few others had planned
16 to surf Lunada Bay the following morning. Plaintiffs are informed and believe
17 that Defendants Johnston and Blakeman learned that Jordan Wright and
18 Diana Reed were going to Lunada Bay and planned to be there to harass
19 them. On February 12, 2016, Defendant Alan Johnston sent the following
20 text messages to an unknown recipient: "No fucking way Taloa is back this
21 year" and "If u really wanna be a bay boy we might meet help tomm."

22    iii)    On February 13, 2016, Reed returned to Lunada Bay with
23 Jordan Wright to watch him surf and take photographs. Prior to her arrival,
24 she contacted the Palos Verdes Estates Police and requested an escort
25 from the bluffs to the beach. She was concerned about her safety given the
26 January 29, 2016 incident. She was told that the police were unavailable
27 and no officers were present when they arrived.

28

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1    When Reed and Wright reached the beach, they encountered angry

2    locals who were yelling at them. Reed and Wright ignored the harassment

3    and Wright got into the water to surf and Reed made her way to the Rock

4    Fort where she planned to watch Wright and photograph him.

5    Approximately two hours after Reed had arrived at Lunada Bay, while

6    she was standing in the Rock Fort taking photos, Blakeman and defendant

7    Alan Johnston rushed into the fort and ran towards her in a hostile and

8    aggressive manner. It seemed that they had coordinated and orchestrated

9    the attack which completely caught Reed off guard. Blakeman was filming

10   Reed again, and at times, held his camera right in her face. It was

11   intimidating and harassing to Reed, and she feared for her safety.

12   Reed asked Blakeman and Johnston why they were filming her,

13   because it made her uncomfortable. Blakeman responded, "because I feel

14   like it." Johnston responded, "because you're hot. Because you're fucking

15   sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

16   way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

17   fear, was unable to leave the Rock Fort as Blakeman and Johnston were

18   standing closest to the exit.

19   iv)    Plaintiffs are informed and believe that after the incident

20   Defendant Johnston started calling and/or texting other Lunada Bay locals to

21   check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

22   Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

23   informed and believe that later that day Johnston received a text from his

24   mother asking him "What happened at the bay?" Johnston replied "Nothing

25   happened really just couple of trolls they got nothing."

26   Reed further identifies the following individuals as having knowledge of

27   concerted efforts by the Bay Boys, including Blakeman:

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer was also told: "why don't you fucking go home, you fucking kook;" and  was asked, "how many other good places did you pass to come here?" These are the same types of statements made by Defendant Sang Lee and others that can be observed on the video published by the Guardian.[3]  These taunts started while Spencer and Taloa were on the bluffs getting ready to surf. One individual continued to heckle Spencer and Taloa on their way down to the beach and into the water.

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct. Reed believes that this is a tactic used by the Bay Boys to harass people.[4]  Blakeman impeded Spencer's movement in any direction and was intentionally blocking him from catching any waves. It was clear to Spencer that Blakeman was not there to surf that morning. Instead, his mission was to prevent Spencer and Taloa from surfing and to keep them from enjoying their time in the water, the open space, the waves, and nature. This type of concerted effort was described by Charlie Ferrara to Reed as the way the Bay Boys act to keep people from surfing at Lunada Bay. In the approximately 90 minutes that

---

[3] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

[4] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  Spencer was in the water that day, Blakeman was focused on Spencer and
2  Taloa and continued to shadow their movements and sit uncomfortably
3  close to them. Spencer had never experienced anything like that before in
4  his life. It was bizarre but also incredibly frightening and disturbing. It
5  appeared to Spencer that Blakeman was coordinating his actions with a
6  group of guys who were standing in the Rock Fort, along with others in the
7  water. They were all talking to each other and it was clear they all knew
8  each other.

9      At one point while Spencer was in the water and was paddling west
10  out to the ocean, he saw a man surfing, coming in east towards the shore.
11  The Bay Boy ran over his hand/wrist that was holding his surfboard and one
12  of the fins on his surfboard sliced open his right wrist. Spencer has about a
13  half-inch scar from where this man ran him over. As soon as the Bay Boy
14  ran him over, he started berating Spencer, saying things like "what are you
15  fucking doing out here? I told you to go home. I should have run you over.
16  Why are you paddling in the sun glare where I can't see you?" The Bay Boy
17  was pretending that he didn't see Spencer but it was obvious that he did and
18  intentionally ran him over. With over 30 years of surfing experience, Spencer
19  knew that this collision was intentional on his part. Fearful of being further
20  injured at that point, and not wanting to get into an argument with him,
21  Spencer just paddled away. Spencer and Taloa caught one more wave after
22  that and then decided it was getting too dangerous to surf. More men started
23  showing up at the Rock Fort and Spencer and Taloa were growing
24  increasingly fearful for their safety. Spencer was also bleeding and in pain.
25  These incidents are described in the declarations filed with Plaintiffs' motion
26  for class certification and the deposition of Spencer.

27      Christopher Taloa: As set forth above, Taloa and Spencer went surfing
28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman shadowing Spencer's movement in the water. Blakeman was in the water with four or five other Lunada Bay Locals.  At one point, Blakeman paddled toward Taloa, at which point Taloa told him that he was too close. Blakeman replied, "This is the ocean. We are surfing. I can be wherever." Taloa kept moving in the water, and Blakeman attempted to keep up with him but was not in good enough shape to do so.

Jen Bell: The incident described above was witnessed by a woman named Jen Bell who had gone to Lunada Bay that same day to photograph a guy from Malibu. When she attempted sit down on the beach with her pack, a man said: "You are practically sitting in a men's locker-room. You don't make me feel comfortable."  Bell continued to sit there for another 10 minutes because she refused to be intimated but eventually decided to head over to the fort because she saw another woman, Diana Reed, was taking photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It was obvious from the start that Johnston and Blakeman were there with the intent to harass Reed. Johnston was making rude comments to both her and Reed. Blakeman was putting the GoPro in their faces. Johnston was chugging multiple beers and it was early in the morning. Johnston asked her to help him with his wetsuit. He said "Can you help me with this?" and handed her the leg of his wetsuit. Johnston made moaning sounds when she took it like he was having an orgasm.

Jordan Wright: Wright attempted to surf Lunada Bay in January 2015 with Chris Claypool and Kenneth Claypool. He observed Blakeman harassing Chris and Ken. Wright was sitting on the outside waiting his turn for waves. By regular surfing norms, he had priority. He caught a 10- to 12-foot-high wave and was up riding for several seconds. Alan Johnston

-22-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   paddled the wrong way on this wave, dropped in on him going the wrong
2   way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer
3   while going the wrong way violates normal surf etiquette. Johnston then
4   collided with Wright, and their leashes got tangled. After they surfaced from
5   the collision, Johnston then got close to Wright and yelled, "You had to
6   fucking take that wave, didn't you!" The next wave that came through then
7   broke Wright's leash plug and the board was carried into the rocks, which
8   destroyed a new surfboard. Wright had to swim in over rocks to get his
9   board and cut his hands on the rocks doing so. Wright is confident that
10  Johnston attempted to purposefully injure him. What he did was extremely
11  dangerous.

12        Wright has observed Blakeman on many occasions. Blakeman is easy
13  to identify because he rides a kneeboard and he is regularly filming visitors
14  on land with a camcorder. Wright believes his filming is an effort to intimidate
15  visitors. In the water, Wright has observed what appears to be Blakeman
16  directing other Bay Boys to sit close to visiting surfers. Wright has observed
17  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to
18  the visitors, impede their movements, block their surfing, kick at them,
19  splash water at them, and dangerously drop in on them. In addition to
20  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,
21  Charlie Ferrara, and David Melo engage in this activity. These incidents are
22  described in the declarations filed with Plaintiffs' motion for class
23  certification.

24        Ken Claypool: has been harassed and filmed by Blakeman in an
25  attempt to intimidate him at Lunada Bay on multiple occasions. In January
26  2015, Claypool and his brother Chris Claypool along with Jordan Wright
27  went to surf Lunada Bay.  There were about five Lunada Bay locals in the
28

-23-

13002592.1

1  water, including Blakeman who paddled over and threatened them. Claypool

2  observed Blakeman intentionally drop in on Wright at least twice.

3      On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

4  and Jordan Wright. There was a photographer from the Los Angeles Times

5  that was there. Also in attendance was Cory Spencer and Diana Reed.

6  Spencer was there to watch the cars.  Blakeman was there filming in an

7  effort to intimidate visitors. Blakeman can be seen in one of the pictures

8  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

9  are informed and believe that there was a text message sent that day to

10  Papayans, Michael Thiel and 11 other people stating that there were 5

11  kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

12  informed that the text states: "Things could get ugly. We all need to surf."

13  These incidents are described in the declarations filed with Plaintiffs' motion

14  for class certification.

15      Chris Claypool: he and his brother Ken and Jordan Wright attempted

16  to surf Lunada Bay in January 2015.  There were about five locals in the

17  water, including Blakeman who paddled over and was yelling, "Try and catch

18  a wave and see what happens. There is no fucking way you are getting a

19  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

20  possessed or possibly on drugs. His behavior got more bizarre throughout

21  the morning. He seemed to be paddling for every wave that he could

22  physically push himself into, perhaps to make a point, but he was wiping out

23  a lot and falling down the face and tumbling across the rock reef. Blakeman

24  looked dangerous to himself. When Blakeman would actually catch a wave

25  in, he would paddle back to where Claypool and his brother were sitting, and

26  continue his insane rant. On one occasion, Blakeman came less than 12

27  inches from Claypool's ear and was screaming. It was so loud, Claypool had

28

-24-

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1  to put his fingers in his ear to protect them from being damaged. Claypool is

2  a sound engineer and to put this in perspective, a rock concert creates about

3  120 decibels of noise - this was louder; a jet engine creates about 150

4  decibels. At one point Blakeman caught a wave and drew a line aiming right

5  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

6  as he narrowly missed Claypool's head. Claypool watched as Blakeman

7  intentionally dropped in on Jordan at least twice. It seemed obvious to

8  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

9  them were having fun. Because of the danger, they decided to leave.

10         When Claypool and his brother got out of water, they saw people

11  gathering on top of the cliff. One person was videotaping them from the top

12  of the cliff; it was clear to Claypool that he was doing this to try and

13  intimidate them. The people were watching them from the cliff. It was

14  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

15  obstruct his free passage and use in the customary manner of a public

16  space. It also seemed clear that Blakeman engaged in a concerted effort

17  with other Bay Boys to try and injure him. These incidents are described in

18  the declarations filed with Plaintiffs' motion for class certification.

19         Jason Gersch: While observing the surf, Gersch was approached by

20  two local Bay Boys named Peter McCollum and Brant Blakeman. These

21  individuals made it known to Gersch that he could not surf there. These

22  incidents are described in the declarations filed with Plaintiffs' motion for

23  class certification.

24         Plaintiffs are informed and believe and on that basis allege that

25  Defendant Blakeman and his attorneys are attempting to intimidate

26  witnesses in this case. On at least two occasions, an investigator hired by

27  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  attorneys. The investigator also showed up at the home of a reporter that
2  has not been listed as a witness.

3      The request is premature. Because Blakeman and the other
4  defendants are refusing to comply with their obligations to produce
5  documents under the federal rules and are impermissibly withholding
6  evidence and/or possibly spoliating evidence, we are not able to fully
7  respond to discovery requests which necessarily rely on our ability to fully
8  investigate the facts. As discovery is continuing, Reed reserves the right to
9  update this response.

10  Witness Contact Information

11  Defendant Brant Blakeman, represented by Veatch Carlson LLP and
12  Buchalter Nemer APC.

13  Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices
14  of J. Patrick Carey.

15  Defendant Michael Ray Papayans, represented by Haven Law.

16  Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP
17  and Booth, Mitchel & Strange LLP.

18  Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,
19  APC and The Phillips Firm.

20  Defendant N.F., represented by Law Offices of Mark C. Fields, APC.

21  Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara
22  LLP.

23  Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara
24  LLP.

25  David Melo, represented by Ken Gaugh, Attorney at Law.

26  The following witnesses are represented by Hanson Bridget LLP and Otten
27  Law PC: Plaintiff Cory Spencer, Plaintiff Diana Reed, Christopher Taloa,

28

-26-

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1 Jordan Wright, Ken Claypool, Chris Claypool, Jason Gersch, John MacHarg.

2 Charles Thomas Mowat aka "Chach." Contact info believed to be: 2337 Via

3 Rivera, Palos Verdes Peninsula, CA 90274.

4 Thomas J. Sullivan Jr.  Contact info believed to be: 617 Paseo Lunado,

5 Palos Verdes Estates, CA 90274, (310) 947-0087, sully@fire-usa.com.

6 David Yoakley. Contact info believed to be: 2850 Winlock Rd., Torrance,

7 CA, 310-963-6889.

8 Andy Patch. Contact info believed to be (310) 213-1505,

9 patchman@socal.rr.com.

10 Josh Berstein. Contact info believed to be (310) 351-8004.

11 Brad Travers. Contact info believed to be (310) 704-7393.

12 Jen Bell, address unknown (323) 308-9326.

13 Michael Thiel. Contact info believed to be: 841 Rivera Place, Palos Verdes

14 Estates, CA 90274; (310) 480-3027.

15 **INTERROGATORY NO. 3:**

16     IDENTIFY ALL PERSONS that have knowledge of any facts that

17 support your contention in paragraph 18 of the Complaint that BRANT

18 BLAKEMAN "sell[s] market[s] and use[s] illegal controlled substances from

19 the Lunada Bay Bluffs and the Rock Fort" and for each such PERSON

20 identified state all facts you contend are within the PERSON's knowledge.

21 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**:

22     Responding Party objects to this interrogatory as premature. Because

23 this interrogatory seeks or necessarily relies upon a contention, and

24 because this matter is in its early stages and pretrial discovery has only just

25 begun, Responding Party is unable to provide a complete response at this

26 time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

27 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

28

13002592.1

1  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

2  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

3  interrogatory need not be answered until designated discovery is complete,

4  or until a pretrial conference or some other time.").

5      Responding Party further objects to this interrogatory as unduly

6  burdensome, harassing, and duplicative of information disclosed in

7  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

8  Propounding Party may look to Responding Party's Rule 26(a) disclosures

9  and supplemental disclosures for the information sought by this

10  interrogatory.  Moreover, Responding Party had the opportunity to depose

11  Ms. Reed on this topic.

12      Responding Party further objects to this interrogatory as compound.

13  This "interrogatory" contains multiple impermissible subparts, which

14  Propounding Party has propounded to circumvent the numerical limitations

15  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

16      Responding Party further objects to this interrogatory on the grounds

17  that it seeks information that is outside of Responding Party's knowledge.

18      Responding Party further objects to the extent that this interrogatory

19  invades attorney-client privilege and/or violates the work product doctrine by

20  compelling Responding Party to disclose privileged communications and/or

21  litigation strategy.

22      Subject to and without waiver of the foregoing objections, Responding

23  Party responds as follows:

24      In addition to each defendant named in his individual capacity and

25  other persons identified in Plaintiffs' Initial and Supplemental Disclosures,

26  and the evidence submitted in support of Plaintiffs' motion for class

27  certification, Responding party identifies the following individuals: There is a

28

-28-                                     Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1    copy of a Group MMS included in Officer Report for Incident 16-02164. In

2    that report an individual who identifies  himself as "the Weasel" makes a

3    statement about Blakeman and meth. The Weasel also states: "Ferrara

4    family is nothing put a bunch of drug addict losers. He's main shaper and

5    good surfer kids are losers and his brothers kids are all losers One of the

6    Ferrara kids [sic] friends beat up a Persian liquor store guy… One time the

7    Ferrara kid talk shit to me one day I said I used to smoke crack with your

8    dad Angelo and dead uncle Sal I have all the dirt from 1979 up. The Weasel

9    then states; "Tell your bros to say even sells weed he lives on  10th Street in

10   San Pedro." Plaintiffs are informed and believe that the word "even" is a typo

11   which is supposed to be Evan and referring to Bay Boy Evan Levy. Plaintiffs

12   are informed and believe and thereon allege that the Weasel might be an

13   individual named Glen Morris. (424) 263-5152.

14        The request is premature. Because Blakeman and the other

15   defendants are refusing to comply with their obligations to produce

16   documents under the federal rules and are impermissibly withholding

17   evidence and/or possibly spoliating evidence, we are not able to fully

18   respond to discovery requests which necessarily rely on our ability to fully

19   investigate the facts. As discovery is continuing, Reed reserves the right to

20   update this response.

21   Defendant Brant Blakeman, represented by Veatch Carlson LLP and

22   Buchalter Nemer APC.

23   Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices

24   of J. Patrick Carey.

25   Defendant Michael Ray Papayans, represented by Haven Law.

26   Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP

27   and Booth, Mitchel & Strange LLP.

28

1  Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,

2  APC and The Phillips Firm.

3  Defendant N.F., represented by Law Offices of Mark C. Fields, APC.

4  Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara

5  LLP.

6  Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara

7  LLP.

8  Glen Morris, (424) 263-5152.

9  **INTERROGATORY NO. 4:**

10      IDENTIFY ALL PERSONS that have knowledge of any facts that

11  support your contention in paragraph 18 of the Complaint that BRANT

12  BLAKEMAN "impede[d] boat traffic" at any time, and for each such PERSON

13  identified state all facts you contend are within that PERSON's knowledge.

14  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

15      Responding Party objects to this interrogatory as premature. Because

16  this interrogatory seeks or necessarily relies upon a contention, and

17  because this matter is in its early stages and pretrial discovery has only just

18  begun, Responding Party is unable to provide a complete response at this

19  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

20  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

21  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

22  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

23  interrogatory need not be answered until designated discovery is complete,

24  or until a pretrial conference or some other time.").

25      Responding Party further objects to this interrogatory as unduly

26  burdensome, harassing, and duplicative of information disclosed in

27  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   Propounding Party may look to Responding Party's Rule 26(a) disclosures
2   and supplemental disclosures for the information sought by this
3   interrogatory.  Moreover, Responding Party had the opportunity to depose
4   Ms. Reed on this topic.

5        Responding Party further objects to this interrogatory as compound.
6   This "interrogatory" contains multiple impermissible subparts, which
7   Propounding Party has propounded in an effort to circumvent the numerical
8   limitations on interrogatories provided by Federal Rule of Civil Procedure
9   33(a)(1).

10        Responding Party further objects to this interrogatory on the grounds
11   that it seeks information that is outside of Responding Party's knowledge.

12        Responding Party further objects to the extent that this interrogatory
13   invades attorney-client privilege and/or violates the work product doctrine by
14   compelling Responding Party to disclose privileged communications and/or
15   litigation strategy.  Responding Party will not provide any such information.

16        Subject to and without waiver of the foregoing objections,  Responding
17   Party responds as follows:

18        In addition to each defendant named in his individual capacity and
19   other persons identified in Plaintiffs' Initial and Supplemental Disclosures,
20   and the evidence submitted in support of Plaintiffs' motion for class
21   certification, Responding Party identifies the following individuals: Jordan
22   Wright, Ken Claypool.

23        The request is premature. Because Blakeman and the other
24   defendants are refusing to comply with their obligations to produce
25   documents under the federal rules and are impermissibly withholding
26   evidence and/or possibly spoliating evidence, we are not able to fully
27   respond to discovery requests which necessarily rely on our ability to fully

28

13002592.1   PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1  investigate the facts. As discovery is continuing, Reed reserves the right to

2  update this response.

3  Witness Contact Information

4  Defendant Brant Blakeman, represented by Veatch Carlson LLP and

5  Buchalter Nemer APC.

6  Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices

7  of J. Patrick Carey.

8  Defendant Michael Ray Papayans, represented by Haven Law.

9  Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP

10  and Booth, Mitchel & Strange LLP.

11  Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,

12  APC and The Phillips Firm.

13  Defendant N.F., represented by Law Offices of Mark C. Fields, APC.

14  Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara

15  LLP.

16  Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara

17  LLP.

18  Jordan Wright, represented by Hanson Bridgett LLP and Otten Law PC.

19  Ken Claypool, represented by Hanson Bridgett LLP and Otten Law PC.

20  **INTERROGATORY NO. 5:**

21      IDENTIFY ALL PERSONS that have knowledge of any facts that

22  support your contention in paragraph 18 of the Complaint that BRANT

23  BLAKEMAN "dangerously disregard[ed] surfing rules" at any time, and for

24  each such PERSON identified state all facts you contend are within that

25  PERSON's knowledge.

26

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*, 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

Responding Party further objects to this interrogatory as unduly burdensome, harassing, and duplicative of information disclosed in Responding Party's Rule 26(a) disclosures and supplemental disclosures. Propounding Party may look to Responding Party's Rule 26(a) disclosures and supplemental disclosures for the information sought by this interrogatory.  Moreover, Responding Party had the opportunity to depose Ms. Reed on this topic.

Responding Party further objects to this interrogatory as compound. This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded in an effort to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   compelling Responding Party to disclose privileged communications and/or

2   litigation strategy.  Responding Party will not provide any such information.

3       Subject to and without waiver of the foregoing objections,  Responding

4   Party responds as follows:

5       In addition to each defendant named in his individual capacity and

6   other persons identified in Plaintiff's Initial and Supplemental Disclosures,

7   and the evidence submitted in support of Plaintiffs' motion for class

8   certification, Responding Party identifies the following individuals:

9       Diana Reed: believes that Blakeman engaged in a concerted effort

10   with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

11   and use in the customary manner of a public space.  Reed also believes that

12   Blakeman coordinated with other Bay Boys to harass and assault the

13   plaintiffs and the public when they were visiting Lunada Bay. Reed believes

14   that the conduct directed at the plaintiffs and others trying to surf Lunada

15   Bay is part of an agreement among Blakeman and the other Bay Boys,

16   which at a minimum, may be implied by the conduct of the parties and other

17   members of the Bay Boys. Reed believes that the Bay Boys concerted

18   efforts to stop the public from accessing the beach are documented in text

19   messages and emails some of which have been destroyed or are being

20   withheld by the Defendants in this case. For example, on February 5, 2016,

21   Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

22   Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

23   several others that said "There are 5 kooks standing on the bluff taking

24   pictures...I think that same Taloa guy. Things could get ugly. " A Los

25   Angeles Times photographer captured a pictured of Defendant Blakeman of

26   the bluff filming plaintiffs.  Plaintiffs are also informed and believe that a

27   Lunada Bay local named Joshua Berstein was taking pictures at the MLK

28

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1  2014 paddle out. Plaintiffs are also informed and believe that Berstein told

2  several people after he photographed them, "Now we know who you are."

3  Plaintiffs believe that the conduct directed at Reed by Blakeman and the

4  individual Bay Boys is because she is a woman. Plaintiff is informed and

5  believes that there are numerous text messages where the Bay Boys refer

6  to Reed as a "bitch" and make sexual comments about her.

7       The specific acts directed against Reed include but are not limited to

8  the following:

9       i)     Reed went to Lunada Bay on January 29, 2016 with Jordan

10  Wright.  Reed had intended to surf at Lunada Bay that day because the

11  conditions were such that she felt comfortable surfing.[5] Immediately after

12  they parked their car along the bluffs, the harassment began. Several men

13  drove by and circled around their car. This was the day that she and Wright

14  were harassed and intimidated by David Melo. Blakeman was recording

15  them on land with his camera. It was very disturbing to Reed and made her

16  feel very uncomfortable. Plaintiffs are informed and believe that this was

17  witnessed by John MacHarg.

18       ii)    On or about February 12, 2016, The Los Angeles Times

19  published an article called "Bay Boys surfer gang cannot block access to

20  upscale beach, Coastal Commission says." Jordan Wright and Cory

21  Spencer are quoted in the article. Mr. Wright and a few others had planned

22  to surf Lunada Bay the following morning. Plaintiffs are informed and believe

23  that Defendants Johnston and Blakeman learned that Jordan Wright and

24  _____

25  [5] Plaintiffs are informed and believe that there were text message sent on
January 29, 2016 asking Defendant Papayans "Where are you? Kooks

26  trying to get to the Bay." Plaintiffs are informed and believe that Papayans

27  responded with a "LOL" and said he would be there.

28

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  Diana Reed were going to Lunada Bay and planned to be there to harass

2  them. On February 12, 2016, Defendant Alan Johnston sent the following

3  text messages to an unknown recipient: "No fucking way Taloa is back this

4  year" and "If u really wanna be a bay boy we might meet help tomm."

5        iii)    On February 13, 2016, Reed returned to Lunada Bay with

6  Jordan Wright to watch him surf and take photographs. Prior to her arrival,

7  she contacted the Palos Verdes Estates Police and requested an escort

8  from the bluffs to the beach. She was concerned about her safety given the

9  January 29, 2016 incident. She was told that the police were unavailable

10  and no officers were present when they arrived. When Reed and Wright

11  reached the beach, they encountered angry locals who were yelling at them.

12  Reed and Wright ignored the harassment and Wright got into the water to

13  surf and Reed made her way to the Rock Fort where she planned to watch

14  Wright and photograph him.

15        Approximately two hours after Reed had arrived at Lunada Bay, while

16  she was standing in the Rock Fort taking photos, Blakeman and defendant

17  Alan Johnston rushed into the fort and ran towards her in a hostile and

18  aggressive manner. It seemed that they had coordinated and orchestrated

19  the attack which completely caught Reed off guard. Blakeman was filming

20  Reed again, and at times, held his camera right in her face. It was

21  intimidating and harassing to Reed, and she feared for her safety.

22        Reed asked Blakeman and Johnston why they were filming her,

23  because it made her uncomfortable. Blakeman responded, "because I feel

24  like it." Johnston responded, "because you're hot. Because you're fucking

25  sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

26  way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1  fear, was unable to leave the Rock Fort as Blakeman and Johnston were

2  standing closest to the exit.

3      iv)    Plaintiffs are informed and believe that after the incident

4  Defendant Johnston started calling and/or texting other Lunada Bay locals to

5  check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

6  Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

7  informed and believe that later that day Johnston received a text from his

8  mother asking him "What happened at the bay?" Johnston replied "Nothing

9  happened really just couple of trolls they got nothing."

10      Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

11  Bay. Almost instantly after they arrived at Lunada Bay, they started getting

12  harassed by Bay Boys. They were told that they couldn't surf there, and

13  Spencer was called a "kook," which is a derogatory surfing term. Spencer

14  was also told: "why don't you fucking go home, you fucking kook;" and was

15  asked, "how many other good places did you pass to come here?" These

16  are the same types of statements made by Defendant Sang Lee and others

17  that can be observed on the video published by the Guardian.[6]  These

18  taunts started while Spencer and Taloa were on the bluffs getting ready to

19  surf. One individual continued to heckle Spencer and Taloa on their way

20  down to the beach and into the water.

21      Blakeman was already in the water and began paddling around

22  Spencer and Taloa in a tight circle – staying just a few feet away from them.

23  There was no legitimate reason for this conduct. Reed believes that this is a

24

25  _____

26  [6] https://www.theguardian.com/travel/video/2015/may/18/california-surf-

27  wars-lunada-bay-localism-video.

28

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   tactic used by the Bay Boys to harass people.[7]  Blakeman impeded

2   Spencer's movement in any direction and was intentionally blocking him

3   from catching any waves. It was clear to Spencer that Blakeman was not

4   there to surf that morning. Instead, his mission was to prevent Spencer and

5   Taloa from surfing and to keep them from enjoying their time in the water,

6   the open space, the waves, and nature. This type of concerted effort was

7   described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

8   people from surfing at Lunada Bay. In the approximately 90 minutes that

9   Spencer was in the water that day, Blakeman was focused on Spencer and

10  Taloa and continued to shadow their movements and sit uncomfortably

11  close to them. Spencer had never experienced anything like that before in

12  his life. It was bizarre but also incredibly frightening and disturbing. It

13  appeared to Spencer that Blakeman was coordinating his actions with a

14  group of guys who were standing in the Rock Fort, along with others in the

15  water. They were all talking to each other and it was clear they all knew

16  each other.

17        At one point while Spencer was in the water and was paddling west

18  out to the ocean, he saw a man surfing, coming in east towards the shore.

19  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

20  of the fins on his surfboard sliced open his right wrist. Spencer has about a

21  half-inch scar from where this man ran him over. As soon as the Bay Boy

22  ran him over, he started berating Spencer, saying things like "what are you

23  fucking doing out here? I told you to go home. I should have run you over.

24  Why are you paddling in the sun glare where I can't see you?" The Bay Boy

25  _____

26  [7] Plaintiffs are informed and believe that Defendant Papayans sent a text
    message describing similar conduct: "We just had a kook out in the water
27  and me and Jack just sat on his ass."

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  was pretending that he didn't see Spencer but it was obvious that he did and

2  intentionally ran him over. With over 30 years of surfing experience, Spencer

3  knew that this collision was intentional on his part. Fearful of being further

4  injured at that point, and not wanting to get into an argument with him,

5  Spencer just paddled away. Spencer and Taloa caught one more wave after

6  that and then decided it was getting too dangerous to surf. More men started

7  showing up at the Rock Fort and Spencer and Taloa were growing

8  increasingly fearful for their safety. Spencer was also bleeding and in pain.

9  These incidents are described in the declarations filed with Plaintiffs' motion

10 for class certification and the deposition of Spencer.

11     Christopher Taloa: As set forth above, Taloa and Spencer went surfing

12 at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

13 shadowing Spencer's movement in the water. Blakeman was in the water

14 with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

15 toward Taloa, at which point Taloa told him that he was too close.

16 Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

17 Taloa kept moving in the water, and Blakeman attempted to keep up with

18 him but was not in good enough shape to do so.

19     Jen Bell: The incident described above was witnessed by a woman

20 named Jen Bell who had gone to Lunada Bay that same day to photograph

21 a guy from Malibu. When she attempted sit down on the beach with her

22 pack, a man said: "You are practically sitting in a men's locker-room. You

23 don't make me feel comfortable."  Bell continued to sit there for another 10

24 minutes because she refused to be intimated but eventually decided to head

25 over to the fort because she saw another woman, Diana Reed, was taking

26 photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

27 was obvious from the start that Johnston and Blakeman were there with the

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  intent to harass Reed. Johnston was making rude comments to both her and

2  Reed. Blakeman was putting the GoPro in their faces. Johnston was

3  chugging multiple beers and it was early in the morning. Johnston asked her

4  to help him with his wetsuit. He said "Can you help me with this?" and

5  handed her the leg of his wetsuit. Johnston made moaning sounds when

6  she took it like he was having an orgasm.

7          Jordan Wright: Wright attempted to surf Lunada Bay in January 2015

8  with Chris Claypool and Kenneth Claypool. He observed Blakeman

9  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

10  for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

11  foot-high wave and was up riding for several seconds. Alan Johnston

12  paddled the wrong way on this wave, dropped in on him going the wrong

13  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

14  while going the wrong way violates normal surf etiquette. Johnston then

15  collided with Wright, and their leashes got tangled. After they surfaced from

16  the collision, Johnston then got close to Wright and yelled, "You had to

17  fucking take that wave, didn't you!" The next wave that came through then

18  broke Wright's leash plug and the board was carried into the rocks, which

19  destroyed a new surfboard. Wright had to swim in over rocks to get his

20  board and cut his hands on the rocks doing so. Wright is confident that

21  Johnston attempted to purposefully injure him. What he did was extremely

22  dangerous.

23          Wright has observed Blakeman on many occasions. Blakeman is easy

24  to identify because he rides a kneeboard and he is regularly filming visitors

25  on land with a camcorder. Wright believes his filming is an effort to intimidate

26  visitors. In the water, Wright has observed what appears to be Blakeman

27  directing other Bay Boys to sit close to visiting surfers. Wright has observed

28

-40-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1    Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

2    the visitors, impede their movements, block their surfing, kick at them,

3    splash water at them, and dangerously drop in on them. In addition to

4    Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

5    Charlie Ferrara, and David Melo engage in this activity. These incidents are

6    described in the declarations filed with Plaintiffs' motion for class

7    certification.

8         Ken Claypool: has been harassed and filmed by Blakeman in an

9    attempt to intimidate him at Lunada Bay on multiple occasions. In January

10   2015, Claypool and his brother Chris Claypool along with Jordan Wright

11   went to surf Lunada Bay.  There were about five Lunada Bay locals in the

12   water, including Blakeman who paddled over and threatened them. Claypool

13   observed Blakeman intentionally drop in on Wright at least twice.

14        On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

15   and Jordan Wright. There was a photographer from the Los Angeles Times

16   that was there. Also in attendance was Cory Spencer and Diana Reed.

17   Spencer was there to watch the cars.  Blakeman was there filming in an

18   effort to intimidate visitors. Blakeman can be seen in one of the pictures

19   taken by the photographer. Also present was Defendant Papayans. Plaintiffs

20   are informed and believe that there was a text message sent that day to

21   Papayans, Michael Thiel and 11 other people stating that there were 5

22   kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

23   informed that the text states: "Things could get ugly." These incidents are

24   described in the declarations filed with Plaintiffs' motion for class

25   certification.

26        Chris Claypool: he and his brother Ken and Jordan Wright attempted

27   to surf Lunada Bay in January 2015.  There were about five locals in the

28

13002592.1

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1   water, including Blakeman who paddled over and was yelling, "Try and catch

2   a wave and see what happens. There is no fucking way you are getting a

3   wave. Just go in. Just go. You better not cut me off."  Blakeman looked

4   possessed or possibly on drugs. His behavior got more bizarre throughout

5   the morning. He seemed to be paddling for every wave that he could

6   physically push himself into, perhaps to make a point, but he was wiping out

7   a lot and falling down the face and tumbling across the rock reef. Blakeman

8   looked dangerous to himself. When Blakeman would actually catch a wave

9   in, he would paddle back to where Claypool and his brother were sitting, and

10  continue his insane rant. On one occasion, Blakeman came less than 12

11  inches from Claypool's ear and was screaming. It was so loud, Claypool had

12  to put his fingers in his ear to protect them from being damaged. Claypool is

13  a sound engineer and to put this in perspective, a rock concert creates about

14  120 decibels of noise - this was louder; a jet engine creates about 150

15  decibels. At one point Blakeman caught a wave and drew a line aiming right

16  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

17  as he narrowly missed Claypool's head. Claypool watched as Blakeman

18  intentionally dropped in on Jordan at least twice. It seemed obvious to

19  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

20  them were having fun. Because of the danger, they decided to leave.

21        When Claypool and his brother got out of water, they saw people

22  gathering on top of the cliff. One person was videotaping them from the top

23  of the cliff; it was clear to Claypool that he was doing this to try and

24  intimidate them. The people were watching them from the cliff. It was

25  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

26  obstruct his free passage and use in the customary manner of a public

27  space. It also seemed clear that Blakeman engaged in a concerted effort

28

-42-                    Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1 | with other Bay Boys to try and injure him. These incidents are described in
2 | the declarations filed with Plaintiffs' motion for class certification.

3 |      Plaintiffs are informed and believe and on that basis allege that
4 | Defendant Blakeman and his attorneys are attempting to intimidate
5 | witnesses in this case. On at least two occasions, an investigator hired by
6 | Blakeman's attorneys contacted witnesses represented by Plaintiffs'
7 | attorneys. The investigator also showed up at the home of a reporter that
8 | has not been listed as a witness.

9 |      The request is premature. Because Blakeman and the other
10 | defendants are refusing to comply with their obligations to produce
11 | documents under the federal rules and are impermissibly withholding
12 | evidence and/or possibly spoliating evidence, we are not able to fully
13 | respond to discovery requests which necessarily rely on our ability to fully
14 | investigate the facts. As discovery is continuing, Reed reserves the right to
15 | update this response.

16 | <u>Witness Contact Information</u>

17 | Defendant Brant Blakeman, represented by Veatch Carlson LLP and
18 | Buchalter Nemer APC.

19 | Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices
20 | of J. Patrick Carey.

21 | Defendant Michael Ray Papayans, represented by Haven Law.

22 | Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP
23 | and Booth, Mitchel & Strange LLP.

24 | Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,
25 | APC and The Phillips Firm.

26 | Defendant N.F., represented by Law Offices of Mark C. Fields, APC.

27 | Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara

28 |

-43-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  LLP.

2  Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara

3  LLP.

4  David Melo, represented by Ken Gaugh, Attorney at Law.

5  The following witnesses are represented by Hanson Bridget LLP and Otten

6  Law PC: Plaintiff Cory Spencer, Plaintiff Diana Reed, Christopher Taloa,

7  Jordan Wright, Ken Claypool, Chris Claypool, John MacHarg.

8  Charles Thomas Mowat aka "Chach." Contact info believed to be: 2337 Via

9  Rivera, Palos Verdes Peninsula, CA 90274.

10 Thomas J. Sullivan Jr.  Contact info believed to be: 617 Paseo Lunado,

11 Palos Verdes Estates, CA 90274, (310) 947-0087, sully@fire-usa.com.

12 David Yoakley. Contact info believed to be: 2850 Winlock Rd., Torrance,

13 CA, 310-963-6889.

14 Andy Patch. Contact info believed to be (310) 213-1505,

15 patchman@socal.rr.com.

16 Josh Berstein. Contact info believed to be (310) 351-8004.

17 Brad Travers. Contact info believed to be (310) 704-7393.

18 Jen Bell, address unknown (323) 308-9326.

19 Michael Thiel. Contact info believed to be: 841 Rivera Place, Palos Verdes

20 Estates, CA 90274; (310) 480-3027.

21      **INTERROGATORY NO. 6:**IDENTIFY ALL PERSONS that have

22 knowledge of any facts that support your contention that BRANT

23 BLAKEMAN has illegally extorted money from beachgoers who wish to use

24 Lunada Bay for recreational purposes (See paragraph 33j. of the

25 Complaint), and for each such PERSON identified state all facts you

26 contend are within that PERSON's knowledge.

27

28

-44-

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Responding Party objects to this interrogatory as premature. Because this interrogatory seeks or necessarily relies upon a contention, and because this matter is in its early stages and pretrial discovery has only just begun, Responding Party is unable to provide a complete response at this time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*, 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

Responding Party further objects to this interrogatory as unduly burdensome, harassing, and duplicative of information disclosed in Responding Party's Rule 26(a) disclosures and supplemental disclosures. Propounding Party may look to Responding Party's Rule 26(a) disclosures and supplemental disclosures for the information sought by this interrogatory.  Moreover, Responding Party had the opportunity to depose Ms. Reed on this topic.

Responding Party further objects to this interrogatory as compound. This "interrogatory" contains multiple impermissible subparts, which Propounding Party has propounded in an effort to circumvent the numerical limitations on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

Responding Party further objects to this interrogatory on the grounds that it seeks information that is outside of Responding Party's knowledge.

Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   compelling Responding Party to disclose privileged communications and/or

2   litigation strategy.   Responding Party will not provide any such information.

3        The request is premature. Because Blakeman and the other

4   defendants are refusing to comply with their obligations to produce

5   documents under the federal rules and are impermissibly withholding

6   evidence and/or possibly spoliating evidence, we are not able to fully

7   respond to discovery requests which necessarily rely on our ability to fully

8   investigate the facts. As discovery is continuing, Reed reserves the right to

9   update this response.

10  **INTERROGATORY NO. 7:**

11       IDENTIFY ALL PERSONS that have knowledge of any facts that

12  support your contention that BRANT BLAKEMAN was a part of a Civil

13  Conspiracy as identified in your complaint in paragraphs 51 through 53, and

14  for each such PERSON identified state all facts you contend are within that

15  PERSON's knowledge.

16  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

17       Responding Party objects to this interrogatory as premature. Because

18  this interrogatory seeks or necessarily relies upon a contention, and

19  because this matter is in its early stages and pretrial discovery has only just

20  begun, Responding Party is unable to provide a complete response at this

21  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

22  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

23  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

24  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

25  interrogatory need not be answered until designated discovery is complete,

26  or until a pretrial conference or some other time.").

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1      Responding Party further objects to this interrogatory as unduly

2  burdensome, harassing, and duplicative of information disclosed in

3  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

4  Propounding Party may look to Responding Party's Rule 26(a) disclosures

5  and supplemental disclosures for the information sought by this

6  interrogatory.  Moreover, Responding Party had the opportunity to depose

7  Ms. Reed on this topic.

8      Responding Party further objects to this interrogatory as compound.

9  This "interrogatory" contains multiple impermissible subparts, which

10  Propounding Party has propounded to circumvent the numerical limitations

11  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

12      Responding Party further objects to this interrogatory on the grounds

13  that it seeks information that is outside of Responding Party's knowledge.

14      Responding Party further objects to the extent that this interrogatory

15  invades attorney-client privilege and/or violates the work product doctrine by

16  compelling Responding Party to disclose privileged communications and/or

17  litigation strategy.

18      Subject to and without waiver of the foregoing objections, Responding

19  Party responds as follows:

20      In addition to each defendant named in his individual capacity and

21  other persons identified in Plaintiffs' initial and Supplemental Disclosures,

22  and the evidence submitted in support of Plaintiffs motion for class

23  certification, Responding Party identifies the following individuals:

24      Diana Reed: believes that Blakeman engaged in a concerted effort

25  with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

26  and use in the customary manner of a public space.  Reed also believes that

27  Blakeman coordinated with other Bay Boys to harass and assault the

28

-47-     Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  plaintiffs and the public when they were visiting Lunada Bay. Reed believes

2  that the conduct directed at the plaintiffs and others trying to surf Lunada

3  Bay is part of an agreement among Blakeman and the other Bay Boys,

4  which at a minimum, may be implied by the conduct of the parties and other

5  members of the Bay Boys. Reed believes that the Bay Boys concerted

6  efforts to stop the public from accessing the beach are documented in text

7  messages and emails some of which have been destroyed or are being

8  withheld by the Defendants in this case. For example, on February 5, 2016,

9  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

10  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

11  several others that said "There are 5 kooks standing on the bluff taking

12  pictures...I think that same Taloa guy. Things could get ugly. " A Los

13  Angeles Times photographer captured a pictured of Defendant Blakeman of

14  the bluff filming plaintiffs.  Plaintiffs believe that the Bay Boys take photos

15  and/or video tape people as a form of harassment and intimidation. For

16  example, plaintiffs are also informed and believe that a Lunada Bay local

17  named Joshua Berstein was taking pictures at the MLK 2014 paddle out.

18  Plaintiffs are also informed and believe that Berstein told several people

19  after he photographed them, "Now we know who you are." Plaintiffs believe

20  that the conduct directed at Reed by Blakeman and the individual Bay Boys

21  is because she is a woman. Plaintiff is informed and believes that there are

22  numerous text messages where the Bay Boys refer to Reed as a "bitch" and

23  make sexual comments about her.

24      The specific acts directed against Reed include but are not limited to

25  the following:

26      i)     Reed went to Lunada Bay on January 29, 2016 with Jordan

27  Wright.  Reed had intended to surf at Lunada Bay that day because the

28

13002592.1      PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1   conditions were such that she felt comfortable surfing.[8] Immediately after

2   they parked their car along the bluffs, the harassment began. Several men

3   drove by and circled around their car. This was the day that she and Wright

4   were harassed and intimidated by David Melo. Blakeman was recording

5   them on land with his camera. It was very disturbing to Reed and made her

6   feel very uncomfortable. Plaintiffs are informed and believe that this was

7   witnessed by John MacHarg.

8          ii)     On or about February 12, 2016, The Los Angeles Times

9   published an article called "Bay Boys surfer gang cannot block access to

10  upscale beach, Coastal Commission says." Jordan Wright and Cory

11  Spencer are quoted in the article. Mr. Wright and a few others had planned

12  to surf Lunada Bay the following morning. Plaintiffs are informed and believe

13  that Defendants Johnston and Blakeman learned that Jordan Wright and

14  Diana Reed were going to Lunada Bay and planned to be there to harass

15  them. On February 12, 2016, Defendant Alan Johnston sent the following

16  text messages to an unknown recipient: "No fucking way Taloa is back this

17  year" and "If u really wanna be a bay boy we might meet help tomm."

18         iii)    On February 13, 2016, Reed returned to Lunada Bay with

19  Jordan Wright to watch him surf and take photographs. Prior to her arrival,

20  she contacted the Palos Verdes Estates Police and requested an escort

21  from the bluffs to the beach. She was concerned about her safety given the

22  January 29, 2016 incident. She was told that the police were unavailable

23  and no officers were present when they arrived. When Reed and Wright

24  _____

25  [8] Plaintiffs are informed and believe that there were text message sent on
    January 29, 2016 asking Defendant Papayans "Where are you? Kooks
26  trying to get to the Bay." Plaintiffs are informed and believe that Papayans
27  responded with a "LOL" and said he would be there.

28

13002592.1

1  reached the beach, they encountered angry locals who were yelling at them.

2  Reed and Wright ignored the harassment and Wright got into the water to

3  surf and Reed made her way to the Rock Fort where she planned to watch

4  Wright and photograph him.

5        Approximately two hours after Reed had arrived at Lunada Bay, while

6  she was standing in the Rock Fort taking photos, Blakeman and defendant

7  Alan Johnston rushed into the fort and ran towards her in a hostile and

8  aggressive manner. It seemed that they had coordinated and orchestrated

9  the attack which completely caught Reed off guard. Blakeman was filming

10 Reed again, and at times, held his camera right in her face. It was

11 intimidating and harassing to Reed, and she feared for her safety.

12       Reed asked Blakeman and Johnston why they were filming her,

13 because it made her uncomfortable. Blakeman responded, "because I feel

14 like it." Johnston responded, "because you're hot. Because you're fucking

15 sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

16 way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

17 fear, was unable to leave the Rock Fort as Blakeman and Johnston were

18 standing closest to the exit.

19       iii)     Plaintiffs are informed and believe that after the incident

20 Defendant Johnston started calling and/or texting other Lunada Bay locals to

21 check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

22 Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

23 informed and believe that later that day Johnston received a text from his

24 mother asking him "What happened at the bay?" Johnston replied "Nothing

25 happened really just couple of trolls they got nothing."

26       Reed further identifies the following individuals as having knowledge of

27 concerted efforts by the Bay Boys, including Blakeman:

28

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada Bay. Almost instantly after they arrived at Lunada Bay, they started getting harassed by Bay Boys. They were told that they couldn't surf there, and Spencer was called a "kook," which is a derogatory surfing term. Spencer was also told: "why don't you fucking go home, you fucking kook;" and  was asked, "how many other good places did you pass to come here?" These are the same types of statements made by Defendant Sang Lee and others that can be observed on the video published by the Guardian.[9]  These taunts started while Spencer and Taloa were on the bluffs getting ready to surf. One individual continued to heckle Spencer and Taloa on their way down to the beach and into the water.

Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them. There was no legitimate reason for this conduct. Reed believes that this is a tactic used by the Bay Boys to harass people.[10]  Blakeman impeded Spencer's movement in any direction and was intentionally blocking him from catching any waves. It was clear to Spencer that Blakeman was not there to surf that morning. Instead, his mission was to prevent Spencer and Taloa from surfing and to keep them from enjoying their time in the water, the open space, the waves, and nature. This type of concerted effort was described by Charlie Ferrara to Reed as the way the Bay Boys act to keep people from surfing at Lunada Bay. In the approximately 90 minutes that

---

[9] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

[10] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1  Spencer was in the water that day, Blakeman was focused on Spencer and
2  Taloa and continued to shadow their movements and sit uncomfortably
3  close to them. Spencer had never experienced anything like that before in
4  his life. It was bizarre but also incredibly frightening and disturbing. It
5  appeared to Spencer that Blakeman was coordinating his actions with a
6  group of guys who were standing in the Rock Fort, along with others in the
7  water. They were all talking to each other and it was clear they all knew
8  each other.

9       At one point while Spencer was in the water and was paddling west
10  out to the ocean, he saw a man surfing, coming in east towards the shore.
11  The Bay Boy ran over his hand/wrist that was holding his surfboard and one
12  of the fins on his surfboard sliced open his right wrist. Spencer has about a
13  half-inch scar from where this man ran him over. As soon as the Bay Boy
14  ran him over, he started berating Spencer, saying things like "what are you
15  fucking doing out here? I told you to go home. I should have run you over.
16  Why are you paddling in the sun glare where I can't see you?" The Bay Boy
17  was pretending that he didn't see Spencer but it was obvious that he did and
18  intentionally ran him over. With over 30 years of surfing experience, Spencer
19  knew that this collision was intentional on his part. Fearful of being further
20  injured at that point, and not wanting to get into an argument with him,
21  Spencer just paddled away. Spencer and Taloa caught one more wave after
22  that and then decided it was getting too dangerous to surf. More men started
23  showing up at the Rock Fort and Spencer and Taloa were growing
24  increasingly fearful for their safety. Spencer was also bleeding and in pain.
25  These incidents are described in the declarations filed with Plaintiffs' motion
26  for class certification and the deposition of Spencer.
27       Christopher Taloa: As set forth above, Taloa and Spencer went surfing
28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

2  shadowing Spencer's movement in the water. Blakeman was in the water

3  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

4  toward Taloa, at which point Taloa told him that he was too close.

5  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

6  Taloa kept moving in the water, and Blakeman attempted to keep up with

7  him but was not in good enough shape to do so.

8      Jen Bell: The incident described above was witnessed by a woman

9  named Jen Bell who had gone to Lunada Bay that same day to photograph

10  a guy from Malibu. When she attempted sit down on the beach with her

11  pack, a man said: "You are practically sitting in a men's locker-room. You

12  don't make me feel comfortable."  Bell continued to sit there for another 10

13  minutes because she refused to be intimated but eventually decided to head

14  over to the fort because she saw another woman, Diana Reed, was taking

15  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

16  was obvious from the start that Johnston and Blakeman were there with the

17  intent to harass Reed. Johnston was making rude comments to both her and

18  Reed. Blakeman was putting the GoPro in their faces. Johnston was

19  chugging multiple beers and it was early in the morning. Johnston asked her

20  to help him with his wetsuit. He said "Can you help me with this?" and

21  handed her the leg of his wetsuit. Johnston made moaning sounds when

22  she took it like he was having an orgasm.

23      Jordan Wright: Wright attempted to surf Lunada Bay in January 2015

24  with Chris Claypool and Kenneth Claypool. He observed Blakeman

25  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

26  for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

27  foot-high wave and was up riding for several seconds. Alan Johnston

28

-53-

13002592.1

paddled the wrong way on this wave, dropped in on him going the wrong

way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

while going the wrong way violates normal surf etiquette. Johnston then

collided with Wright, and their leashes got tangled. After they surfaced from

the collision, Johnston then got close to Wright and yelled, "You had to

fucking take that wave, didn't you!" The next wave that came through then

broke Wright's leash plug and the board was carried into the rocks, which

destroyed a new surfboard. Wright had to swim in over rocks to get his

board and cut his hands on the rocks doing so. Wright is confident that

Johnston attempted to purposefully injure him. What he did was extremely

dangerous.

Wright has observed Blakeman on many occasions. Blakeman is easy

to identify because he rides a kneeboard and he is regularly filming visitors

on land with a camcorder. Wright believes his filming is an effort to intimidate

visitors. In the water, Wright has observed what appears to be Blakeman

directing other Bay Boys to sit close to visiting surfers. Wright has observed

Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

the visitors, impede their movements, block their surfing, kick at them,

splash water at them, and dangerously drop in on them. In addition to

Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

Charlie Ferrara, and David Melo engage in this activity. These incidents are

described in the declarations filed with Plaintiffs' motion for class

certification.

Ken Claypool: has been harassed and filmed by Blakeman in an

attempt to intimidate him at Lunada Bay on multiple occasions. In January

2015, Claypool and his brother Chris Claypool along with Jordan Wright

went to surf Lunada Bay.  There were about five Lunada Bay locals in the

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1  water, including Blakeman who paddled over and threatened them. Claypool

2  observed Blakeman intentionally drop in on Wright at least twice.

3      On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

4  and Jordan Wright. There was a photographer from the Los Angeles Times

5  that was there. Also in attendance was Cory Spencer and Diana Reed.

6  Spencer was there to watch the cars.  Blakeman was there filming in an

7  effort to intimidate visitors. Blakeman can be seen in one of the pictures

8  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

9  are informed and believe that there was a text message sent that day to

10  Papayans, Michael Thiel and 11 other people stating that there were 5

11  kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

12  informed that the text states: "Things could get ugly. We all need to surf."

13  These incidents are described in the declarations filed with Plaintiffs' motion

14  for class certification.

15      Chris Claypool: he and his brother Ken and Jordan Wright attempted

16  to surf Lunada Bay in January 2015.  There were about five locals in the

17  water, including Blakeman who paddled over and was yelling, "Try and catch

18  a wave and see what happens. There is no fucking way you are getting a

19  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

20  possessed or possibly on drugs. His behavior got more bizarre throughout

21  the morning. He seemed to be paddling for every wave that he could

22  physically push himself into, perhaps to make a point, but he was wiping out

23  a lot and falling down the face and tumbling across the rock reef. Blakeman

24  looked dangerous to himself. When Blakeman would actually catch a wave

25  in, he would paddle back to where Claypool and his brother were sitting, and

26  continue his insane rant. On one occasion, Blakeman came less than 12

27  inches from Claypool's ear and was screaming. It was so loud, Claypool had

28

-55-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  to put his fingers in his ear to protect them from being damaged. Claypool is

2  a sound engineer and to put this in perspective, a rock concert creates about

3  120 decibels of noise - this was louder; a jet engine creates about 150

4  decibels. At one point Blakeman caught a wave and drew a line aiming right

5  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

6  as he narrowly missed Claypool's head. Claypool watched as Blakeman

7  intentionally dropped in on Jordan at least twice. It seemed obvious to

8  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

9  them were having fun. Because of the danger, they decided to leave.

10        When Claypool and his brother got out of water, they saw people

11  gathering on top of the cliff. One person was videotaping them from the top

12  of the cliff; it was clear to Claypool that he was doing this to try and

13  intimidate them. The people were watching them from the cliff. It was

14  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

15  obstruct his free passage and use in the customary manner of a public

16  space. It also seemed clear that Blakeman engaged in a concerted effort

17  with other Bay Boys to try and injure him. These incidents are described in

18  the declarations filed with Plaintiffs' motion for class certification.

19        Jason Gersch: While observing the surf, Gersch was approached by

20  two local Bay Boys named Peter McCollum and Brant Blakeman. These

21  individuals made it known to Gersch that he could not surf there. These

22  incidents are described in the declarations filed with Plaintiffs' motion for

23  class certification.

24        Plaintiffs are informed and believe and on that basis allege that

25  Defendant Blakeman and his attorneys are attempting to intimidate

26  witnesses in this case. On at least two occasions, an investigator hired by

27  Blakeman's attorneys contacted witnesses represented by Plaintiffs'

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1  attorneys. The investigator also showed up at the home of a reporter that

2  has not been listed as a witness.

3       The request is premature. Because Blakeman and the other

4  defendants are refusing to comply with their obligations to produce

5  documents under the federal rules and are impermissibly withholding

6  evidence and/or possibly spoliating evidence, we are not able to fully

7  respond to discovery requests which necessarily rely on our ability to fully

8  investigate the facts. As discovery is continuing, Reed reserves the right to

9  update this response.

10  Witness Contact Information

11  Defendant Brant Blakeman, represented by Veatch Carlson LLP and

12  Buchalter Nemer APC.

13  Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices

14  of J. Patrick Carey.

15  Defendant Michael Ray Papayans, represented by Haven Law.

16  Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP

17  and Booth, Mitchel & Strange LLP.

18  Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,

19  APC and The Phillips Firm.

20  Defendant N.F., represented by Law Offices of Mark C. Fields, APC.

21  Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara

22  LLP.

23  Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara

24  LLP.

25  David Melo, represented by Ken Gaugh, Attorney at Law.

26  The following witnesses are represented by Hanson Bridget LLP and Otten

27  Law PC: Plaintiff Cory Spencer, Plaintiff Diana Reed, Christopher Taloa,

28

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1  Jordan Wright, Ken Claypool, Chris Claypool, Jason Gersch, John MacHarg.

2  Charles Thomas Mowat aka "Chach." Contact info believed to be: 2337 Via

3  Rivera, Palos Verdes Peninsula, CA 90274.

4  Thomas J. Sullivan Jr.  Contact info believed to be: 617 Paseo Lunado,

5  Palos Verdes Estates, CA 90274, (310) 947-0087, sully@fire-usa.com.

6  David Yoakley. Contact info believed to be: 2850 Winlock Rd., Torrance,

7  CA, 310-963-6889.

8  Andy Patch. Contact info believed to be (310) 213-1505,

9  patchman@socal.rr.com.

10  Josh Berstein. Contact info believed to be (310) 351-8004.

11  Brad Travers. Contact info believed to be (310) 704-7393.

12  Jen Bell, address unknown (323) 308-9326.

13  Michael Thiel. Contact info believed to be: 841 Rivera Place, Palos Verdes

14  Estates, CA 90274; (310) 480-3027.

15  **INTERROGATORY NO. 8:**

16      IDENTIFY ALL PERSONS that have knowledge of any facts that

17  support plaintiffs' First Cause of Action in the Complaint (Bane Act

18  Violations) against BRANT BLAKEMAN, and for each such PERON

19  identified state all facts you contend are within that PERSON's knowledge.

20  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

21      Responding Party objects to this interrogatory as premature. Because

22  this interrogatory seeks or necessarily relies upon a contention, and

23  because this matter is in its early stages and pretrial discovery has only just

24  begun, Responding Party is unable to provide a complete response at this

25  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

26  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

27  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

2  interrogatory need not be answered until designated discovery is complete,

3  or until a pretrial conference or some other time.").

4     Responding Party further objects to this interrogatory as unduly

5  burdensome, harassing, and duplicative of information disclosed in

6  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

7  Propounding Party may look to Responding Party's Rule 26(a) disclosures

8  and supplemental disclosures for the information sought by this

9  interrogatory.  Moreover, Responding Party had the opportunity to depose

10  Ms. Reed on this topic.

11     Responding Party further objects to this interrogatory as compound.

12  This "interrogatory" contains multiple impermissible subparts, which

13  Propounding Party has propounded to circumvent the numerical limitations

14  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

15     Responding Party further objects to this interrogatory on the grounds

16  that it seeks information that is outside of Responding Party's knowledge.

17     Responding Party further objects to the extent that this interrogatory

18  invades attorney-client privilege and/or violates the work product doctrine by

19  compelling Responding Party to disclose privileged communications and/or

20  litigation strategy.

21     Subject to and without waiver of the foregoing objections, Responding

22  Party responds as follows:

23     In addition to each defendant named in his individual capacity and

24  other persons identified in Plaintiffs' initial and Supplemental Disclosures,

25  and the evidence submitted in support of Plaintiffs motion for class

26  certification, Responding Party identifies the following individuals:

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1   PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1      Diana Reed: believes that Blakeman engaged in a concerted effort

2 with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

3 and use in the customary manner of a public space.  Reed also believes that

4 Blakeman coordinated with other Bay Boys to harass and assault the

5 plaintiffs and the public when they were visiting Lunada Bay. Reed believes

6 that the conduct directed at the plaintiffs and others trying to surf Lunada

7 Bay is part of an agreement among Blakeman and the other Bay Boys,

8 which at a minimum, may be implied by the conduct of the parties and other

9 members of the Bay Boys. Reed believes that the Bay Boys concerted

10 efforts to stop the public from accessing the beach are documented in text

11 messages and emails some of which have been destroyed or are being

12 withheld by the Defendants in this case. For example, on February 5, 2016,

13 Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

14 Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

15 several others that said "There are 5 kooks standing on the bluff taking

16 pictures...I think that same Taloa guy. Things could get ugly. " A Los

17 Angeles Times photographer captured a pictured of Defendant Blakeman of

18 the bluff filming plaintiffs. Plaintiffs believe that the Bay Boys take photos

19 and/or video tape people as a form of harassment and intimidation. For

20 example, plaintiffs are also informed and believe that a Lunada Bay local

21 named Joshua Berstein was taking pictures at the MLK 2014 paddle out.

22 Plaintiffs are also informed and believe that Berstein told several people

23 after he photographed them, "Now we know who you are." Plaintiffs believe

24 that the conduct directed at Reed by Blakeman and the individual Bay Boys

25 is because she is a woman. Plaintiff is informed and believes that there are

26 numerous text messages where the Bay Boys refer to Reed as a "bitch" and

27 make sexual comments about her.

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

The specific acts directed against Reed include but are not limited to the following:

i)      Reed went to Lunada Bay on January 29, 2016 with Jordan Wright.  Reed had intended to surf at Lunada Bay that day because the conditions were such that she felt comfortable surfing.[11] Immediately after they parked their car along the bluffs, the harassment began. Several men drove by and circled around their car. This was the day that she and Wright were harassed and intimidated by David Melo. Blakeman was recording them on land with his camera. It was very disturbing to Reed and made her feel very uncomfortable. Plaintiffs are informed and believe that this was witnessed by John MacHarg.

ii)      On or about February 12, 2016, The Los Angeles Times published an article called "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following text messages to an unknown recipient: "No fucking way Taloa is back this year" and "If u really wanna be a bay boy we might meet help tomm."

iii)      On February 13, 2016, Reed returned to Lunada Bay with Jordan Wright to watch him surf and take photographs. Prior to her arrival,

---

[11] Plaintiffs are informed and believe that there were text message sent on January 29, 2016 asking Defendant Papayans "Where are you? Kooks trying to get to the Bay." Plaintiffs are informed and believe that Papayans responded with a "LOL" and said he would be there.

13002592.1

1   she contacted the Palos Verdes Estates Police and requested an escort

2   from the bluffs to the beach. She was concerned about her safety given the

3   January 29, 2016 incident. She was told that the police were unavailable

4   and no officers were present when they arrived. When Reed and Wright

5   reached the beach, they encountered angry locals who were yelling at them.

6   Reed and Wright ignored the harassment and Wright got into the water to

7   surf and Reed made her way to the Rock Fort where she planned to watch

8   Wright and photograph him.

9         Approximately two hours after Reed had arrived at Lunada Bay, while

10  she was standing in the Rock Fort taking photos, Blakeman and defendant

11  Alan Johnston rushed into the fort and ran towards her in a hostile and

12  aggressive manner. It seemed that they had coordinated and orchestrated

13  the attack which completely caught Reed off guard. Blakeman was filming

14  Reed again, and at times, held his camera right in her face. It was

15  intimidating and harassing to Reed, and she feared for her safety.

16        Reed asked Blakeman and Johnston why they were filming her,

17  because it made her uncomfortable. Blakeman responded, "because I feel

18  like it." Johnston responded, "because you're hot. Because you're fucking

19  sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

20  way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

21  fear, was unable to leave the Rock Fort as Blakeman and Johnston were

22  standing closest to the exit.

23        iii)    Plaintiffs are informed and believe that after the incident

24  Defendant Johnston started calling and/or texting other Lunada Bay locals to

25  check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

26  Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

27  informed and believe that later that day Johnston received a text from his

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1  mother asking him "What happened at the bay?" Johnston replied "Nothing

2  happened really just couple of trolls they got nothing."

3      Reed further identifies the following individuals as having knowledge of

4  concerted efforts by the Bay Boys, including Blakeman:

5      Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

6  Bay. Almost instantly after they arrived at Lunada Bay, they started getting

7  harassed by Bay Boys. They were told that they couldn't surf there, and

8  Spencer was called a "kook," which is a derogatory surfing term. Spencer

9  was also told: "why don't you fucking go home, you fucking kook;" and  was

10  asked, "how many other good places did you pass to come here?" These

11  are the same types of statements made by Defendant Sang Lee and others

12  that can be observed on the video published by the Guardian.[12]  These

13  taunts started while Spencer and Taloa were on the bluffs getting ready to

14  surf. One individual continued to heckle Spencer and Taloa on their way

15  down to the beach and into the water.

16      Blakeman was already in the water and began paddling around

17  Spencer and Taloa in a tight circle – staying just a few feet away from them.

18  There was no legitimate reason for this conduct. Reed believes that this is a

19  tactic used by the Bay Boys to harass people.[13]  Blakeman impeded

20  Spencer's movement in any direction and was intentionally blocking him

21  from catching any waves. It was clear to Spencer that Blakeman was not

22  there to surf that morning. Instead, his mission was to prevent Spencer and

23  _____

24  [12] https://www.theguardian.com/travel/video/2015/may/18/california-surf-

25  wars-lunada-bay-localism-video.

26  [13] Plaintiffs are informed and believe that Defendant Papayans sent a text
message describing similar conduct: "We just had a kook out in the water

27  and me and Jack just sat on his ass."

28

13002592.1

1   Taloa from surfing and to keep them from enjoying their time in the water,

2   the open space, the waves, and nature. This type of concerted effort was

3   described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

4   people from surfing at Lunada Bay. In the approximately 90 minutes that

5   Spencer was in the water that day, Blakeman was focused on Spencer and

6   Taloa and continued to shadow their movements and sit uncomfortably

7   close to them. Spencer had never experienced anything like that before in

8   his life. It was bizarre but also incredibly frightening and disturbing. It

9   appeared to Spencer that Blakeman was coordinating his actions with a

10  group of guys who were standing in the Rock Fort, along with others in the

11  water. They were all talking to each other and it was clear they all knew

12  each other.

13      At one point while Spencer was in the water and was paddling west

14  out to the ocean, he saw a man surfing, coming in east towards the shore.

15  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

16  of the fins on his surfboard sliced open his right wrist. Spencer has about a

17  half-inch scar from where this man ran him over. As soon as the Bay Boy

18  ran him over, he started berating Spencer, saying things like "what are you

19  fucking doing out here? I told you to go home. I should have run you over.

20  Why are you paddling in the sun glare where I can't see you?" The Bay Boy

21  was pretending that he didn't see Spencer but it was obvious that he did and

22  intentionally ran him over. With over 30 years of surfing experience, Spencer

23  knew that this collision was intentional on his part. Fearful of being further

24  injured at that point, and not wanting to get into an argument with him,

25  Spencer just paddled away. Spencer and Taloa caught one more wave after

26  that and then decided it was getting too dangerous to surf. More men started

27  showing up at the Rock Fort and Spencer and Taloa were growing

28

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1   increasingly fearful for their safety. Spencer was also bleeding and in pain.

2   These incidents are described in the declarations filed with Plaintiffs' motion

3   for class certification and the deposition of Spencer.

4        Christopher Taloa: As set forth above, Taloa and Spencer went surfing

5   at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

6   shadowing Spencer's movement in the water. Blakeman was in the water

7   with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

8   toward Taloa, at which point Taloa told him that he was too close.

9   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

10  Taloa kept moving in the water, and Blakeman attempted to keep up with

11  him but was not in good enough shape to do so.

12       Jen Bell: The incident described above was witnessed by a woman

13  named Jen Bell who had gone to Lunada Bay that same day to photograph

14  a guy from Malibu. When she attempted sit down on the beach with her

15  pack, a man said: "You are practically sitting in a men's locker-room. You

16  don't make me feel comfortable."  Bell continued to sit there for another 10

17  minutes because she refused to be intimated but eventually decided to head

18  over to the fort because she saw another woman, Diana Reed, was taking

19  photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

20  was obvious from the start that Johnston and Blakeman were there with the

21  intent to harass Reed. Johnston was making rude comments to both her and

22  Reed. Blakeman was putting the GoPro in their faces. Johnston was

23  chugging multiple beers and it was early in the morning. Johnston asked her

24  to help him with his wetsuit. He said "Can you help me with this?" and

25  handed her the leg of his wetsuit. Johnston made moaning sounds when

26  she took it like he was having an orgasm.

27       Jordan Wright: Wright attempted to surf Lunada Bay in January 2015

28

-65-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   with Chris Claypool and Kenneth Claypool. He observed Blakeman

2   harassing Chris and Ken. Wright was sitting on the outside waiting his turn

3   for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

4   foot-high wave and was up riding for several seconds. Alan Johnston

5   paddled the wrong way on this wave, dropped in on him going the wrong

6   way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

7   while going the wrong way violates normal surf etiquette. Johnston then

8   collided with Wright, and their leashes got tangled. After they surfaced from

9   the collision, Johnston then got close to Wright and yelled, "You had to

10  fucking take that wave, didn't you!" The next wave that came through then

11  broke Wright's leash plug and the board was carried into the rocks, which

12  destroyed a new surfboard. Wright had to swim in over rocks to get his

13  board and cut his hands on the rocks doing so. Wright is confident that

14  Johnston attempted to purposefully injure him. What he did was extremely

15  dangerous.

16       Wright has observed Blakeman on many occasions. Blakeman is easy

17  to identify because he rides a kneeboard and he is regularly filming visitors

18  on land with a camcorder. Wright believes his filming is an effort to intimidate

19  visitors. In the water, Wright has observed what appears to be Blakeman

20  directing other Bay Boys to sit close to visiting surfers. Wright has observed

21  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

22  the visitors, impede their movements, block their surfing, kick at them,

23  splash water at them, and dangerously drop in on them. In addition to

24  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

25  Charlie Ferrara, and David Melo engage in this activity. These incidents are

26  described in the declarations filed with Plaintiffs' motion for class

27  certification.

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

Ken Claypool: has been harassed and filmed by Blakeman in an attempt to intimidate him at Lunada Bay on multiple occasions. In January 2015, Claypool and his brother Chris Claypool along with Jordan Wright went to surf Lunada Bay.  There were about five Lunada Bay locals in the water, including Blakeman who paddled over and threatened them. Claypool observed Blakeman intentionally drop in on Wright at least twice.

On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa and Jordan Wright. There was a photographer from the Los Angeles Times that was there. Also in attendance was Cory Spencer and Diana Reed. Spencer was there to watch the cars.  Blakeman was there filming in an effort to intimidate visitors. Blakeman can be seen in one of the pictures taken by the photographer. Also present was Defendant Papayans. Plaintiffs are informed and believe that there was a text message sent that day to Papayans, Michael Thiel and 11 other people stating that there were 5 kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are informed that the text states: "Things could get ugly. We all need to surf." These incidents are described in the declarations filed with Plaintiffs' motion for class certification.

Chris Claypool: he and his brother Ken and Jordan Wright attempted to surf Lunada Bay in January 2015.  There were about five locals in the water, including Blakeman who paddled over and was yelling, "Try and catch a wave and see what happens. There is no fucking way you are getting a wave. Just go in. Just go. You better not cut me off."  Blakeman looked possessed or possibly on drugs. His behavior got more bizarre throughout the morning. He seemed to be paddling for every wave that he could physically push himself into, perhaps to make a point, but he was wiping out a lot and falling down the face and tumbling across the rock reef. Blakeman

13002592.1

1  looked dangerous to himself. When Blakeman would actually catch a wave

2  in, he would paddle back to where Claypool and his brother were sitting, and

3  continue his insane rant. On one occasion, Blakeman came less than 12

4  inches from Claypool's ear and was screaming. It was so loud, Claypool had

5  to put his fingers in his ear to protect them from being damaged. Claypool is

6  a sound engineer and to put this in perspective, a rock concert creates about

7  120 decibels of noise - this was louder; a jet engine creates about 150

8  decibels. At one point Blakeman caught a wave and drew a line aiming right

9  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

10  as he narrowly missed Claypool's head. Claypool watched as Blakeman

11  intentionally dropped in on Jordan at least twice. It seemed obvious to

12  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

13  them were having fun. Because of the danger, they decided to leave.

14        When Claypool and his brother got out of water, they saw people

15  gathering on top of the cliff. One person was videotaping them from the top

16  of the cliff; it was clear to Claypool that he was doing this to try and

17  intimidate them. The people were watching them from the cliff. It was

18  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

19  obstruct his free passage and use in the customary manner of a public

20  space. It also seemed clear that Blakeman engaged in a concerted effort

21  with other Bay Boys to try and injure him. These incidents are described in

22  the declarations filed with Plaintiffs' motion for class certification.

23        Jason Gersch: While observing the surf, Gersch was approached by

24  two local Bay Boys named Peter McCollum and Brant Blakeman. These

25  individuals made it known to Gersch that he could not surf there. These

26  incidents are described in the declarations filed with Plaintiffs' motion for

27  class certification.

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   Plaintiffs are informed and believe and on that basis allege that

2   Defendant Blakeman and his attorneys are attempting to intimidate

3   witnesses in this case. On at least two occasions, an investigator hired by

4   Blakeman's attorneys contacted witnesses represented by Plaintiffs'

5   attorneys. The investigator also showed up at the home of a reporter that

6   has not been listed as a witness.

7   The request is premature. Because Blakeman and the other

8   defendants are refusing to comply with their obligations to produce

9   documents under the federal rules and are impermissibly withholding

10   evidence and/or possibly spoliating evidence, we are not able to fully

11   respond to discovery requests which necessarily rely on our ability to fully

12   investigate the facts. As discovery is continuing, Reed reserves the right to

13   update this response.

14   <u>Witness Contact Information</u>

15   Defendant Brant Blakeman, represented by Veatch Carlson LLP and

16   Buchalter Nemer APC.

17   Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices

18   of J. Patrick Carey.

19   Defendant Michael Ray Papayans, represented by Haven Law.

20   Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP

21   and Booth, Mitchel & Strange LLP.

22   Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,

23   APC and The Phillips Firm.

24   Defendant N.F., represented by Law Offices of Mark C. Fields, APC.

25   Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara

26   LLP.

27   Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

LLP.

David Melo, represented by Ken Gaugh, Attorney at Law.

The following witnesses are represented by Hanson Bridget LLP and Otten

Law PC: Plaintiff Cory Spencer, Plaintiff Diana Reed, Christopher Taloa,

Jordan Wright, Ken Claypool, Chris Claypool, Jason Gersch, John MacHarg.

Charles Thomas Mowat aka "Chach." Contact info believed to be: 2337 Via

Rivera, Palos Verdes Peninsula, CA 90274.

Thomas J. Sullivan Jr.  Contact info believed to be: 617 Paseo Lunado,

Palos Verdes Estates, CA 90274, (310) 947-0087, sully@fire-usa.com.

David Yoakley. Contact info believed to be: 2850 Winlock Rd., Torrance,

CA, 310-963-6889.

Andy Patch. Contact info believed to be (310) 213-1505,

patchman@socal.rr.com.

Josh Berstein. Contact info believed to be (310) 351-8004.

Brad Travers. Contact info believed to be (310) 704-7393.

Jen Bell, address unknown (323) 308-9326

Michael Thiel. Contact info believed to be: 841 Rivera Place, Palos Verdes

Estates, CA 90274; (310) 480-3027.

**INTERROGATORY NO. 9:**

IDENTIFY ALL PERSONS that have knowledge of any facts that

support plaintiffs' Second Cause of Action in the Complaint (Public

Nuisance) against BRANT BLAKEMAN, and for each such PERSON

identified state all facts you contend are within that PERSON's knowledge.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

Responding Party objects to this interrogatory as premature. Because

this interrogatory seeks or necessarily relies upon a contention, and

because this matter is in its early stages and pretrial discovery has only just

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   begun, Responding Party is unable to provide a complete response at this

2   time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

3   2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

4   *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

5   also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

6   interrogatory need not be answered until designated discovery is complete,

7   or until a pretrial conference or some other time.").

8       Responding Party further objects to this interrogatory as unduly

9   burdensome, harassing, and duplicative of information disclosed in

10   Responding Party's Rule 26(a) disclosures and supplemental disclosures.

11   Propounding Party may look to Responding Party's Rule 26(a) disclosures

12   and supplemental disclosures for the information sought by this

13   interrogatory.  Moreover, Responding Party had the opportunity to depose

14   Ms. Reed on this topic.

15       Responding Party further objects to this interrogatory as compound.

16   This "interrogatory" contains multiple impermissible subparts, which

17   Propounding Party has propounded to circumvent the numerical limitations

18   on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

19       Responding Party further objects to this interrogatory on the grounds

20   that it seeks information that is outside of Responding Party's knowledge.

21       Responding Party further objects to the extent that this interrogatory

22   invades attorney-client privilege and/or violates the work product doctrine by

23   compelling Responding Party to disclose privileged communications and/or

24   litigation strategy.

25       Subject to and without waiver of the foregoing objections, Responding

26   Party responds as follows:

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1     In addition to each defendant named in his individual capacity and

2   other persons identified in Plaintiffs' initial and Supplemental Disclosures,

3   and the evidence submitted in support of Plaintiffs motion for class

4   certification, Responding Party identifies the following individuals:

5     Diana Reed: believes that Blakeman engaged in a concerted effort

6   with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

7   and use in the customary manner of a public space.  Reed also believes that

8   Blakeman coordinated with other Bay Boys to harass and assault the

9   plaintiffs and the public when they were visiting Lunada Bay. Reed believes

10  that the conduct directed at the plaintiffs and others trying to surf Lunada

11  Bay is part of an agreement among Blakeman and the other Bay Boys,

12  which at a minimum, may be implied by the conduct of the parties and other

13  members of the Bay Boys. Reed believes that the Bay Boys concerted

14  efforts to stop the public from accessing the beach are documented in text

15  messages and emails some of which have been destroyed or are being

16  withheld by the Defendants in this case. For example, on February 5, 2016,

17  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

18  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

19  several others that said "There are 5 kooks standing on the bluff taking

20  pictures...I think that same Taloa guy. Things could get ugly. " A Los

21  Angeles Times photographer captured a pictured of Defendant Blakeman of

22  the bluff filming plaintiffs. Plaintiffs believe that the Bay Boys take photos

23  and/or video tape people as a form of harassment and intimidation. For

24  example, plaintiffs are also informed and believe that a Lunada Bay local

25  named Joshua Berstein was taking pictures at the MLK 2014 paddle out.

26  Plaintiffs are also informed and believe that Berstein told several people

27  after he photographed them, "Now we know who you are." Plaintiffs believe

28

13002592.1

that the conduct directed at Reed by Blakeman and the individual Bay Boys is because she is a woman. Plaintiff is informed and believes that there are numerous text messages where the Bay Boys refer to Reed as a "bitch" and make sexual comments about her.

The specific acts directed against Reed include but are not limited to the following:

i)      Reed went to Lunada Bay on January 29, 2016 with Jordan Wright.  Reed had intended to surf at Lunada Bay that day because the conditions were such that she felt comfortable surfing.[14] Immediately after they parked their car along the bluffs, the harassment began. Several men drove by and circled around their car. This was the day that she and Wright were harassed and intimidated by David Melo. Blakeman was recording them on land with his camera. It was very disturbing to Reed and made her feel very uncomfortable. Plaintiffs are informed and believe that this was witnessed by John MacHarg.

ii)      On or about February 12, 2016, The Los Angeles Times published an article called "Bay Boys surfer gang cannot block access to upscale beach, Coastal Commission says." Jordan Wright and Cory Spencer are quoted in the article. Mr. Wright and a few others had planned to surf Lunada Bay the following morning. Plaintiffs are informed and believe that Defendants Johnston and Blakeman learned that Jordan Wright and Diana Reed were going to Lunada Bay and planned to be there to harass them. On February 12, 2016, Defendant Alan Johnston sent the following

---

[14] Plaintiffs are informed and believe that there were text message sent on January 29, 2016 asking Defendant Papayans "Where are you? Kooks trying to get to the Bay." Plaintiffs are informed and believe that Papayans responded with a "LOL" and said he would be there.

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1  text messages to an unknown recipient: "No fucking way Taloa is back this

2  year" and "If u really wanna be a bay boy we might meet help tomm."

3      iii)    On February 13, 2016, Reed returned to Lunada Bay with

4  Jordan Wright to watch him surf and take photographs. Prior to her arrival,

5  she contacted the Palos Verdes Estates Police and requested an escort

6  from the bluffs to the beach. She was concerned about her safety given the

7  January 29, 2016 incident. She was told that the police were unavailable

8  and no officers were present when they arrived. When Reed and Wright

9  reached the beach, they encountered angry locals who were yelling at them.

10  Reed and Wright ignored the harassment and Wright got into the water to

11  surf and Reed made her way to the Rock Fort where she planned to watch

12  Wright and photograph him.

13      Approximately two hours after Reed had arrived at Lunada Bay, while

14  she was standing in the Rock Fort taking photos, Blakeman and defendant

15  Alan Johnston rushed into the fort and ran towards her in a hostile and

16  aggressive manner. It seemed that they had coordinated and orchestrated

17  the attack which completely caught Reed off guard. Blakeman was filming

18  Reed again, and at times, held his camera right in her face. It was

19  intimidating and harassing to Reed, and she feared for her safety.

20      Reed asked Blakeman and Johnston why they were filming her,

21  because it made her uncomfortable. Blakeman responded, "because I feel

22  like it." Johnston responded, "because you're hot. Because you're fucking

23  sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

24  way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

25  fear, was unable to leave the Rock Fort as Blakeman and Johnston were

26  standing closest to the exit.

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1      iii)    Plaintiffs are informed and believe that after the incident

2  Defendant Johnston started calling and/or texting other Lunada Bay locals to

3  check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

4  Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

5  informed and believe that later that day Johnston received a text from his

6  mother asking him "What happened at the bay?" Johnston replied "Nothing

7  happened really just couple of trolls they got nothing."

8      Reed further identifies the following individuals as having knowledge of

9  concerted efforts by the Bay Boys, including Blakeman:

10      Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

11  Bay. Almost instantly after they arrived at Lunada Bay, they started getting

12  harassed by Bay Boys. They were told that they couldn't surf there, and

13  Spencer was called a "kook," which is a derogatory surfing term. Spencer

14  was also told: "why don't you fucking go home, you fucking kook;" and was

15  asked, "how many other good places did you pass to come here?" These

16  are the same types of statements made by Defendant Sang Lee and others

17  that can be observed on the video published by the Guardian.[15]  These

18  taunts started while Spencer and Taloa were on the bluffs getting ready to

19  surf. One individual continued to heckle Spencer and Taloa on their way

20  down to the beach and into the water.

21      Blakeman was already in the water and began paddling around

22  Spencer and Taloa in a tight circle – staying just a few feet away from them.

23  There was no legitimate reason for this conduct. Reed believes that this is a

24

25

26  [15] https://www.theguardian.com/travel/video/2015/may/18/california-surf-

27  wars-lunada-bay-localism-video.

28

-75-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

tactic used by the Bay Boys to harass people.[16]  Blakeman impeded Spencer's movement in any direction and was intentionally blocking him from catching any waves. It was clear to Spencer that Blakeman was not there to surf that morning. Instead, his mission was to prevent Spencer and Taloa from surfing and to keep them from enjoying their time in the water, the open space, the waves, and nature. This type of concerted effort was described by Charlie Ferrara to Reed as the way the Bay Boys act to keep people from surfing at Lunada Bay. In the approximately 90 minutes that Spencer was in the water that day, Blakeman was focused on Spencer and Taloa and continued to shadow their movements and sit uncomfortably close to them. Spencer had never experienced anything like that before in his life. It was bizarre but also incredibly frightening and disturbing. It appeared to Spencer that Blakeman was coordinating his actions with a group of guys who were standing in the Rock Fort, along with others in the water. They were all talking to each other and it was clear they all knew each other.

At one point while Spencer was in the water and was paddling west out to the ocean, he saw a man surfing, coming in east towards the shore. The Bay Boy ran over his hand/wrist that was holding his surfboard and one of the fins on his surfboard sliced open his right wrist. Spencer has about a half-inch scar from where this man ran him over. As soon as the Bay Boy ran him over, he started berating Spencer, saying things like "what are you fucking doing out here? I told you to go home. I should have run you over. Why are you paddling in the sun glare where I can't see you?" The Bay Boy

---

[16] Plaintiffs are informed and believe that Defendant Papayans sent a text message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1 │ was pretending that he didn't see Spencer but it was obvious that he did and

2 │ intentionally ran him over. With over 30 years of surfing experience, Spencer

3 │ knew that this collision was intentional on his part. Fearful of being further

4 │ injured at that point, and not wanting to get into an argument with him,

5 │ Spencer just paddled away. Spencer and Taloa caught one more wave after

6 │ that and then decided it was getting too dangerous to surf. More men started

7 │ showing up at the Rock Fort and Spencer and Taloa were growing

8 │ increasingly fearful for their safety. Spencer was also bleeding and in pain.

9 │ These incidents are described in the declarations filed with Plaintiffs' motion

10 │ for class certification and the deposition of Spencer.

11 │      Christopher Taloa: As set forth above, Taloa and Spencer went surfing

12 │ at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

13 │ shadowing Spencer's movement in the water. Blakeman was in the water

14 │ with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

15 │ toward Taloa, at which point Taloa told him that he was too close.

16 │ Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

17 │ Taloa kept moving in the water, and Blakeman attempted to keep up with

18 │ him but was not in good enough shape to do so.

19 │      Jen Bell: The incident described above was witnessed by a woman

20 │ named Jen Bell who had gone to Lunada Bay that same day to photograph

21 │ a guy from Malibu. When she attempted sit down on the beach with her

22 │ pack, a man said: "You are practically sitting in a men's locker-room. You

23 │ don't make me feel comfortable."  Bell continued to sit there for another 10

24 │ minutes because she refused to be intimated but eventually decided to head

25 │ over to the fort because she saw another woman, Diana Reed, was taking

26 │ photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

27 │ was obvious from the start that Johnston and Blakeman were there with the

28 │

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1  intent to harass Reed. Johnston was making rude comments to both her and

2  Reed. Blakeman was putting the GoPro in their faces. Johnston was

3  chugging multiple beers and it was early in the morning. Johnston asked her

4  to help him with his wetsuit. He said "Can you help me with this?" and

5  handed her the leg of his wetsuit. Johnston made moaning sounds when

6  she took it like he was having an orgasm.

7      Jordan Wright: Wright attempted to surf Lunada Bay in January 2015

8  with Chris Claypool and Kenneth Claypool. He observed Blakeman

9  harassing Chris and Ken. Wright was sitting on the outside waiting his turn

10  for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

11  foot-high wave and was up riding for several seconds. Alan Johnston

12  paddled the wrong way on this wave, dropped in on him going the wrong

13  way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

14  while going the wrong way violates normal surf etiquette. Johnston then

15  collided with Wright, and their leashes got tangled. After they surfaced from

16  the collision, Johnston then got close to Wright and yelled, "You had to

17  fucking take that wave, didn't you!" The next wave that came through then

18  broke Wright's leash plug and the board was carried into the rocks, which

19  destroyed a new surfboard. Wright had to swim in over rocks to get his

20  board and cut his hands on the rocks doing so. Wright is confident that

21  Johnston attempted to purposefully injure him. What he did was extremely

22  dangerous.

23      Wright has observed Blakeman on many occasions. Blakeman is easy

24  to identify because he rides a kneeboard and he is regularly filming visitors

25  on land with a camcorder. Wright believes his filming is an effort to intimidate

26  visitors. In the water, Wright has observed what appears to be Blakeman

27  directing other Bay Boys to sit close to visiting surfers. Wright has observed

28

-78-

13002592.1

Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to the visitors, impede their movements, block their surfing, kick at them, splash water at them, and dangerously drop in on them. In addition to Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston, Charlie Ferrara, and David Melo engage in this activity. These incidents are described in the declarations filed with Plaintiffs' motion for class certification.

Ken Claypool: has been harassed and filmed by Blakeman in an attempt to intimidate him at Lunada Bay on multiple occasions. In January 2015, Claypool and his brother Chris Claypool along with Jordan Wright went to surf Lunada Bay.  There were about five Lunada Bay locals in the water, including Blakeman who paddled over and threatened them. Claypool observed Blakeman intentionally drop in on Wright at least twice.

On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa and Jordan Wright. There was a photographer from the Los Angeles Times that was there. Also in attendance was Cory Spencer and Diana Reed. Spencer was there to watch the cars.  Blakeman was there filming in an effort to intimidate visitors. Blakeman can be seen in one of the pictures taken by the photographer. Also present was Defendant Papayans. Plaintiffs are informed and believe that there was a text message sent that day to Papayans, Michael Thiel and 11 other people stating that there were 5 kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are informed that the text states: "Things could get ugly. We all need to surf." These incidents are described in the declarations filed with Plaintiffs' motion for class certification.

Chris Claypool: he and his brother Ken and Jordan Wright attempted to surf Lunada Bay in January 2015.  There were about five locals in the

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1    water, including Blakeman who paddled over and was yelling, "Try and catch

2    a wave and see what happens. There is no fucking way you are getting a

3    wave. Just go in. Just go. You better not cut me off."  Blakeman looked

4    possessed or possibly on drugs. His behavior got more bizarre throughout

5    the morning. He seemed to be paddling for every wave that he could

6    physically push himself into, perhaps to make a point, but he was wiping out

7    a lot and falling down the face and tumbling across the rock reef. Blakeman

8    looked dangerous to himself. When Blakeman would actually catch a wave

9    in, he would paddle back to where Claypool and his brother were sitting, and

10   continue his insane rant. On one occasion, Blakeman came less than 12

11   inches from Claypool's ear and was screaming. It was so loud, Claypool had

12   to put his fingers in his ear to protect them from being damaged. Claypool is

13   a sound engineer and to put this in perspective, a rock concert creates about

14   120 decibels of noise - this was louder; a jet engine creates about 150

15   decibels. At one point Blakeman caught a wave and drew a line aiming right

16   at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

17   as he narrowly missed Claypool's head. Claypool watched as Blakeman

18   intentionally dropped in on Jordan at least twice. It seemed obvious to

19   Claypool that Blakeman and the other Bay Boy wanted to make sure none of

20   them were having fun. Because of the danger, they decided to leave.

21        When Claypool and his brother got out of water, they saw people

22   gathering on top of the cliff. One person was videotaping them from the top

23   of the cliff; it was clear to Claypool that he was doing this to try and

24   intimidate them. The people were watching them from the cliff. It was

25   obvious that Blakeman engaged in a concerted effort with other Bay Boys to

26   obstruct his free passage and use in the customary manner of a public

27   space. It also seemed clear that Blakeman engaged in a concerted effort

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1 with other Bay Boys to try and injure him. These incidents are described in

2 the declarations filed with Plaintiffs' motion for class certification.

3      Jason Gersch: While observing the surf, Gersch was approached by

4 two local Bay Boys named Peter McCollum and Brant Blakeman. These

5 individuals made it known to Gersch that he could not surf there. These

6 incidents are described in the declarations filed with Plaintiffs' motion for

7 class certification.

8      Plaintiffs are informed and believe and on that basis allege that

9 Defendant Blakeman and his attorneys are attempting to intimidate

10 witnesses in this case. On at least two occasions, an investigator hired by

11 Blakeman's attorneys contacted witnesses represented by Plaintiffs'

12 attorneys. The investigator also showed up at the home of a reporter that

13 has not been listed as a witness.

14      The request is premature. Because Blakeman and the other

15 defendants are refusing to comply with their obligations to produce

16 documents under the federal rules and are impermissibly withholding

17 evidence and/or possibly spoliating evidence, we are not able to fully

18 respond to discovery requests which necessarily rely on our ability to fully

19 investigate the facts. As discovery is continuing, Reed reserves the right to

20 update this response.

21 Witness Contact Information

22 Defendant Brant Blakeman, represented by Veatch Carlson LLP and

23 Buchalter Nemer APC.

24 Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices

25 of J. Patrick Carey.

26 Defendant Michael Ray Papayans, represented by Haven Law.

27 Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   and Booth, Mitchel & Strange LLP.

2   Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,

3   APC and The Phillips Firm.

4   Defendant N.F., represented by Law Offices of Mark C. Fields, APC.

5   Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara

6   LLP.

7   Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara

8   LLP.

9   David Melo, represented by Ken Gaugh, Attorney at Law.

10  The following witnesses are represented by Hanson Bridget LLP and Otten

11  Law PC: Plaintiff Cory Spencer, Plaintiff Diana Reed, Christopher Taloa,

12  Jordan Wright, Ken Claypool, Chris Claypool, Jason Gersch, John MacHarg.

13  Charles Thomas Mowat aka "Chach." Contact info believed to be: 2337 Via

14  Rivera, Palos Verdes Peninsula, CA 90274.

15  Thomas J. Sullivan Jr.  Contact info believed to be: 617 Paseo Lunado,

16  Palos Verdes Estates, CA 90274, (310) 947-0087, sully@fire-usa.com.

17  David Yoakley. Contact info believed to be: 2850 Winlock Rd., Torrance,

18  CA, 310-963-6889.

19  Andy Patch. Contact info believed to be (310) 213-1505,

20  patchman@socal.rr.com.

21  Josh Berstein. Contact info believed to be (310) 351-8004.

22  Brad Travers. Contact info believed to be (310) 704-7393.

23  Jen Bell, address unknown (323) 308-9326.

24  Michael Thiel. Contact info believed to be: 841 Rivera Place, Palos Verdes

25  Estates, CA 90274; (310) 480-3027.

26  **INTERROGATORY NO. 10:**

27          IDENTIFY ALL PERSONS that have knowledge of any facts that

28

13002592.1

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1  support plaintiffs' Sixth Cause of Action in the Complaint (Assault) against

2  BRANT BLAKEMAN, and for each such PERSON identified state all facts

3  you contend are within that PERSON's knowledge.

4  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

5       Responding Party objects to this interrogatory as premature. Because

6  this interrogatory seeks or necessarily relies upon a contention, and

7  because this matter is in its early stages and pretrial discovery has only just

8  begun, Responding Party is unable to provide a complete response at this

9  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

10 2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

11 *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

12 also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

13 interrogatory need not be answered until designated discovery is complete,

14 or until a pretrial conference or some other time.").

15      Responding Party further objects to this interrogatory as unduly

16 burdensome, harassing, and duplicative of information disclosed in

17 Responding Party's Rule 26(a) disclosures and supplemental disclosures.

18 Propounding Party may look to Responding Party's Rule 26(a) disclosures

19 and supplemental disclosures for the information sought by this

20 interrogatory.  Moreover, Responding Party had the opportunity to depose

21 Ms. Reed on this topic.

22      Responding Party further objects to this interrogatory as compound.

23 This "interrogatory" contains multiple impermissible subparts, which

24 Propounding Party has propounded to circumvent the numerical limitations

25 on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

26      Responding Party further objects to this interrogatory on the grounds

27 that it seeks information that is outside of Responding Party's knowledge.

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1    Responding Party further objects to the extent that this interrogatory

2  invades attorney-client privilege and/or violates the work product doctrine by

3  compelling Responding Party to disclose privileged communications and/or

4  litigation strategy.

5    Subject to and without waiver of the foregoing objections, Responding

6  Party responds as follows:

7    In addition to each defendant named in his individual capacity and

8  other persons identified in Plaintiffs' initial and Supplemental Disclosures,

9  and the evidence submitted in support of Plaintiffs motion for class

10  certification, Responding Party identifies the following individuals:

11    Diana Reed: believes that Blakeman engaged in a concerted effort

12  with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

13  and use in the customary manner of a public space.  Reed also believes that

14  Blakeman coordinated with other Bay Boys to harass and assault the

15  plaintiffs and the public when they were visiting Lunada Bay. Reed believes

16  that the conduct directed at the plaintiffs and others trying to surf Lunada

17  Bay is part of an agreement among Blakeman and the other Bay Boys,

18  which at a minimum, may be implied by the conduct of the parties and other

19  members of the Bay Boys. Reed believes that the Bay Boys concerted

20  efforts to stop the public from accessing the beach are documented in text

21  messages and emails some of which have been destroyed or are being

22  withheld by the Defendants in this case. For example, on February 5, 2016,

23  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

24  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

25  several others that said "There are 5 kooks standing on the bluff taking

26  pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles

27  Times photographer captured a pictured of Defendant Blakeman of the bluff

28

13002592.1

1  filming plaintiffs. Plaintiffs believe that the Bay Boys take photos and/or

2  video tape people as a form of harassment and intimidation. For example,

3  plaintiffs are also informed and believe that a Lunada Bay local named

4  Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs

5  are also informed and believe that Berstein told several people after he

6  photographed them, "Now we know who you are." Plaintiffs believe that the

7  conduct directed at Reed by Blakeman and the individual Bay Boys is

8  because she is a woman. Plaintiff is informed and believes that there are

9  numerous text messages where the Bay Boys refer to Reed as a "bitch" and

10  make sexual comments about her.

11       The specific acts directed against Reed include but are not limited to

12  the following:

13       i)       Reed went to Lunada Bay on January 29, 2016 with Jordan

14  Wright.  Reed had intended to surf at Lunada Bay that day because the

15  conditions were such that she felt comfortable surfing.[17] Immediately after

16  they parked their car along the bluffs, the harassment began. Several men

17  drove by and circled around their car. This was the day that she and Wright

18  were harassed and intimidated by David Melo. Blakeman was recording

19  them on land with his camera. It was very disturbing to Reed and made her

20  feel very uncomfortable. Plaintiffs are informed and believe that this was

21  witnessed by John MacHarg.

22       ii)      On or about February 12, 2016, The Los Angeles Times

23  published an article called "Bay Boys surfer gang cannot block access to

24  _____

25  [17] Plaintiffs are informed and believe that there were text message sent on
    January 29, 2016 asking Defendant Papayans "Where are you? Kooks
26  trying to get to the Bay." Plaintiffs are informed and believe that Papayans
27  responded with a "LOL" and said he would be there.

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   upscale beach, Coastal Commission says." Jordan Wright and Cory

2   Spencer are quoted in the article. Mr. Wright and a few others had planned

3   to surf Lunada Bay the following morning. Plaintiffs are informed and believe

4   that Defendants Johnston and Blakeman learned that Jordan Wright and

5   Diana Reed were going to Lunada Bay and planned to be there to harass

6   them. On February 12, 2016, Defendant Alan Johnston sent the following

7   text messages to an unknown recipient: "No fucking way Taloa is back this

8   year" and "If u really wanna be a bay boy we might meet help tomm."

9        iii)    On February 13, 2016, Reed returned to Lunada Bay with

10   Jordan Wright to watch him surf and take photographs. Prior to her arrival,

11   she contacted the Palos Verdes Estates Police and requested an escort

12   from the bluffs to the beach. She was concerned about her safety given the

13   January 29, 2016 incident. She was told that the police were unavailable

14   and no officers were present when they arrived. When Reed and Wright

15   reached the beach, they encountered angry locals who were yelling at them.

16   Reed and Wright ignored the harassment and Wright got into the water to

17   surf and Reed made her way to the Rock Fort where she planned to watch

18   Wright and photograph him.

19        Approximately two hours after Reed had arrived at Lunada Bay, while

20   she was standing in the Rock Fort taking photos, Blakeman and defendant

21   Alan Johnston rushed into the fort and ran towards her in a hostile and

22   aggressive manner. It seemed that they had coordinated and orchestrated

23   the attack which completely caught Reed off guard. Blakeman was filming

24   Reed again, and at times, held his camera right in her face. It was

25   intimidating and harassing to Reed, and she feared for her safety.

26        Reed asked Blakeman and Johnston why they were filming her,

27   because it made her uncomfortable. Blakeman responded, "because I feel

28

-86-

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   like it." Johnston responded, "because you're hot. Because you're fucking

2   sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

3   way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

4   fear, was unable to leave the Rock Fort as Blakeman and Johnston were

5   standing closest to the exit.

6         iii)    Plaintiffs are informed and believe that after the incident

7   Defendant Johnston started calling and/or texting other Lunada Bay locals to

8   check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

9   Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

10  informed and believe that later that day Johnston received a text from his

11  mother asking him "What happened at the bay?" Johnston replied "Nothing

12  happened really just couple of trolls they got nothing."

13        Reed further identifies the following individuals as having knowledge of

14  concerted efforts by the Bay Boys, including Blakeman:

15        Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

16  Bay. Almost instantly after they arrived at Lunada Bay, they started getting

17  harassed by Bay Boys. They were told that they couldn't surf there, and

18  Spencer was called a "kook," which is a derogatory surfing term. Spencer

19  was also told: "why don't you fucking go home, you fucking kook;" and was

20  asked, "how many other good places did you pass to come here?" These

21  are the same types of statements made by Defendant Sang Lee and others

22  that can be observed on the video published by the Guardian.[18]  These

23  taunts started while Spencer and Taloa were on the bluffs getting ready to

24  surf. One individual continued to heckle Spencer and Taloa on their way

25  ────────────────────

26  [18] https://www.theguardian.com/travel/video/2015/may/18/california-surf-

27  wars-lunada-bay-localism-video.

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  down to the beach and into the water.

2       Blakeman was already in the water and began paddling around

3  Spencer and Taloa in a tight circle – staying just a few feet away from them.

4  There was no legitimate reason for this conduct. Reed believes that this is a

5  tactic used by the Bay Boys to harass people.[19]  Blakeman impeded

6  Spencer's movement in any direction and was intentionally blocking him

7  from catching any waves. It was clear to Spencer that Blakeman was not

8  there to surf that morning. Instead, his mission was to prevent Spencer and

9  Taloa from surfing and to keep them from enjoying their time in the water,

10  the open space, the waves, and nature. This type of concerted effort was

11  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

12  people from surfing at Lunada Bay. In the approximately 90 minutes that

13  Spencer was in the water that day, Blakeman was focused on Spencer and

14  Taloa and continued to shadow their movements and sit uncomfortably

15  close to them. Spencer had never experienced anything like that before in

16  his life. It was bizarre but also incredibly frightening and disturbing. It

17  appeared to Spencer that Blakeman was coordinating his actions with a

18  group of guys who were standing in the Rock Fort, along with others in the

19  water. They were all talking to each other and it was clear they all knew

20  each other.

21       At one point while Spencer was in the water and was paddling west

22  out to the ocean, he saw a man surfing, coming in east towards the shore.

23  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

24  of the fins on his surfboard sliced open his right wrist. Spencer has about a

25  _____

26  [19] Plaintiffs are informed and believe that Defendant Papayans sent a text
message describing similar conduct: "We just had a kook out in the water
27  and me and Jack just sat on his ass."

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

half-inch scar from where this man ran him over. As soon as the Bay Boy ran him over, he started berating Spencer, saying things like "what are you fucking doing out here? I told you to go home. I should have run you over. Why are you paddling in the sun glare where I can't see you?" The Bay Boy was pretending that he didn't see Spencer but it was obvious that he did and intentionally ran him over. With over 30 years of surfing experience, Spencer knew that this collision was intentional on his part. Fearful of being further injured at that point, and not wanting to get into an argument with him, Spencer just paddled away. Spencer and Taloa caught one more wave after that and then decided it was getting too dangerous to surf. More men started showing up at the Rock Fort and Spencer and Taloa were growing increasingly fearful for their safety. Spencer was also bleeding and in pain. These incidents are described in the declarations filed with Plaintiffs' motion for class certification and the deposition of Spencer.

Christopher Taloa: As set forth above, Taloa and Spencer went surfing at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman shadowing Spencer's movement in the water. Blakeman was in the water with four or five other Lunada Bay Locals.  At one point, Blakeman paddled toward Taloa, at which point Taloa told him that he was too close. Blakeman replied, "This is the ocean. We are surfing. I can be wherever." Taloa kept moving in the water, and Blakeman attempted to keep up with him but was not in good enough shape to do so.

Jen Bell: The incident described above was witnessed by a woman named Jen Bell who had gone to Lunada Bay that same day to photograph a guy from Malibu. When she attempted sit down on the beach with her pack, a man said: "You are practically sitting in a men's locker-room. You don't make me feel comfortable."  Bell continued to sit there for another 10

13002592.1

1    minutes because she refused to be intimated but eventually decided to head

2    over to the fort because she saw another woman, Diana Reed, was taking

3    photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

4    was obvious from the start that Johnston and Blakeman were there with the

5    intent to harass Reed. Johnston was making rude comments to both her and

6    Reed. Blakeman was putting the GoPro in their faces. Johnston was

7    chugging multiple beers and it was early in the morning. Johnston asked her

8    to help him with his wetsuit. He said "Can you help me with this?" and

9    handed her the leg of his wetsuit. Johnston made moaning sounds when

10   she took it like he was having an orgasm.

11        Jordan Wright: Wright attempted to surf Lunada Bay in January 2015

12   with Chris Claypool and Kenneth Claypool. He observed Blakeman

13   harassing Chris and Ken. Wright was sitting on the outside waiting his turn

14   for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

15   foot-high wave and was up riding for several seconds. Alan Johnston

16   paddled the wrong way on this wave, dropped in on him going the wrong

17   way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

18   while going the wrong way violates normal surf etiquette. Johnston then

19   collided with Wright, and their leashes got tangled. After they surfaced from

20   the collision, Johnston then got close to Wright and yelled, "You had to

21   fucking take that wave, didn't you!" The next wave that came through then

22   broke Wright's leash plug and the board was carried into the rocks, which

23   destroyed a new surfboard. Wright had to swim in over rocks to get his

24   board and cut his hands on the rocks doing so. Wright is confident that

25   Johnston attempted to purposefully injure him. What he did was extremely

26   dangerous.

27        Wright has observed Blakeman on many occasions. Blakeman is easy

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  to identify because he rides a kneeboard and he is regularly filming visitors

2  on land with a camcorder. Wright believes his filming is an effort to intimidate

3  visitors. In the water, Wright has observed what appears to be Blakeman

4  directing other Bay Boys to sit close to visiting surfers. Wright has observed

5  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

6  the visitors, impede their movements, block their surfing, kick at them,

7  splash water at them, and dangerously drop in on them. In addition to

8  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

9  Charlie Ferrara, and David Melo engage in this activity. These incidents are

10 described in the declarations filed with Plaintiffs' motion for class

11 certification.

12      Ken Claypool: has been harassed and filmed by Blakeman in an

13 attempt to intimidate him at Lunada Bay on multiple occasions. In January

14 2015, Claypool and his brother Chris Claypool along with Jordan Wright

15 went to surf Lunada Bay.  There were about five Lunada Bay locals in the

16 water, including Blakeman who paddled over and threatened them. Claypool

17 observed Blakeman intentionally drop in on Wright at least twice.

18      On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

19 and Jordan Wright. There was a photographer from the Los Angeles Times

20 that was there. Also in attendance was Cory Spencer and Diana Reed.

21 Spencer was there to watch the cars.  Blakeman was there filming in an

22 effort to intimidate visitors. Blakeman can be seen in one of the pictures

23 taken by the photographer. Also present was Defendant Papayans. Plaintiffs

24 are informed and believe that there was a text message sent that day to

25 Papayans, Michael Thiel and 11 other people stating that there were 5

26 kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

27 informed that the text states: "Things could get ugly. We all need to surf."

28

13002592.1

1   These incidents are described in the declarations filed with Plaintiffs' motion

2   for class certification.

3        Chris Claypool: he and his brother Ken and Jordan Wright attempted

4   to surf Lunada Bay in January 2015.  There were about five locals in the

5   water, including Blakeman who paddled over and was yelling, "Try and catch

6   a wave and see what happens. There is no fucking way you are getting a

7   wave. Just go in. Just go. You better not cut me off."  Blakeman looked

8   possessed or possibly on drugs. His behavior got more bizarre throughout

9   the morning. He seemed to be paddling for every wave that he could

10  physically push himself into, perhaps to make a point, but he was wiping out

11  a lot and falling down the face and tumbling across the rock reef. Blakeman

12  looked dangerous to himself. When Blakeman would actually catch a wave

13  in, he would paddle back to where Claypool and his brother were sitting, and

14  continue his insane rant. On one occasion, Blakeman came less than 12

15  inches from Claypool's ear and was screaming. It was so loud, Claypool had

16  to put his fingers in his ear to protect them from being damaged. Claypool is

17  a sound engineer and to put this in perspective, a rock concert creates about

18  120 decibels of noise - this was louder; a jet engine creates about 150

19  decibels. At one point Blakeman caught a wave and drew a line aiming right

20  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

21  as he narrowly missed Claypool's head. Claypool watched as Blakeman

22  intentionally dropped in on Jordan at least twice. It seemed obvious to

23  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

24  them were having fun. Because of the danger, they decided to leave.

25       When Claypool and his brother got out of water, they saw people

26  gathering on top of the cliff. One person was videotaping them from the top

27  of the cliff; it was clear to Claypool that he was doing this to try and

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  intimidate them. The people were watching them from the cliff. It was

2  obvious that Blakeman engaged in a concerted effort with other Bay Boys to

3  obstruct his free passage and use in the customary manner of a public

4  space. It also seemed clear that Blakeman engaged in a concerted effort

5  with other Bay Boys to try and injure him. These incidents are described in

6  the declarations filed with Plaintiffs' motion for class certification.

7          Jason Gersch: While observing the surf, Gersch was approached by

8  two local Bay Boys named Peter McCollum and Brant Blakeman. These

9  individuals made it known to Gersch that he could not surf there. These

10 incidents are described in the declarations filed with Plaintiffs' motion for

11 class certification.

12         Plaintiffs are informed and believe and on that basis allege that

13 Defendant Blakeman and his attorneys are attempting to intimidate

14 witnesses in this case. On at least two occasions, an investigator hired by

15 Blakeman's attorneys contacted witnesses represented by Plaintiffs'

16 attorneys. The investigator also showed up at the home of a reporter that

17 has not been listed as a witness.

18         The request is premature. Because Blakeman and the other

19 defendants are refusing to comply with their obligations to produce

20 documents under the federal rules and are impermissibly withholding

21 evidence and/or possibly spoliating evidence, we are not able to fully

22 respond to discovery requests which necessarily rely on our ability to fully

23 investigate the facts. As discovery is continuing, Reed reserves the right to

24 update this response.

25 Witness Contact Information

26 Defendant Brant Blakeman, represented by Veatch Carlson LLP and

27 Buchalter Nemer APC.

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices
2  of J. Patrick Carey.
3  Defendant Michael Ray Papayans, represented by Haven Law.
4  Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP
5  and Booth, Mitchel & Strange LLP.
6  Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,
7  APC and The Phillips Firm.
8  Defendant N.F., represented by Law Offices of Mark C. Fields, APC.
9  Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara
10  LLP.
11  Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara
12  LLP.
13  David Melo, represented by Ken Gaugh, Attorney at Law.
14  The following witnesses are represented by Hanson Bridget LLP and Otten
15  Law PC: Plaintiff Cory Spencer, Plaintiff Diana Reed, Christopher Taloa,
16  Jordan Wright, Ken Claypool, Chris Claypool, Jason Gersch, John MacHarg.
17  Charles Thomas Mowat aka "Chach." Contact info believed to be: 2337 Via
18  Rivera, Palos Verdes Peninsula, CA 90274.
19  Thomas J. Sullivan Jr.  Contact info believed to be: 617 Paseo Lunado,
20  Palos Verdes Estates, CA 90274, (310) 947-0087, sully@fire-usa.com.
21  David Yoakley. Contact info believed to be: 2850 Winlock Rd., Torrance,
22  CA, 310-963-6889.
23  Andy Patch. Contact info believed to be (310) 213-1505,
24  patchman@socal.rr.com.
25  Josh Berstein. Contact info believed to be (310) 351-8004.
26  Brad Travers. Contact info believed to be (310) 704-7393.
27  Jen Bell, address unknown (323) 308-9326.
28

1  Michael Thiel. Contact info believed to be: 841 Rivera Place, Palos Verdes

2  Estates, CA 90274; (310) 480-3027.

3  **INTERROGATORY NO. 11:**

4      IDENTIFY ALL PERSONS that have knowledge of any facts that

5  support plaintiffs' Seventh Cause of Action in the Complaint (Battery) against

6  BRANT BLAKEMAN, and for each such PERSON identified state all facts

7  you contend are within that PERSON's knowledge.

8  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

9      Responding Party objects to this interrogatory as premature. Because

10  this interrogatory seeks or necessarily relies upon a contention, and

11  because this matter is in its early stages and pretrial discovery has only just

12  begun, Responding Party is unable to provide a complete response at this

13  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

14  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

15  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

16  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

17  interrogatory need not be answered until designated discovery is complete,

18  or until a pretrial conference or some other time.").

19      Responding Party further objects to this interrogatory as unduly

20  burdensome, harassing, and duplicative of information disclosed in

21  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

22  Propounding Party may look to Responding Party's Rule 26(a) disclosures

23  and supplemental disclosures for the information sought by this

24  interrogatory.  Moreover, Responding Party had the opportunity to depose

25  Ms. Reed on this topic.

26      Responding Party further objects to this interrogatory as compound.

27  This "interrogatory" contains multiple impermissible subparts, which

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  Propounding Party has propounded to circumvent the numerical limitations

2  on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

3      Responding Party further objects to this interrogatory on the grounds

4  that it seeks information that is outside of Responding Party's knowledge.

5      Responding Party further objects to the extent that this interrogatory

6  invades attorney-client privilege and/or violates the work product doctrine by

7  compelling Responding Party to disclose privileged communications and/or

8  litigation strategy.

9      Subject to and without waiver of the foregoing objections, Responding

10  Party responds as follows:

11      In addition to each defendant named in his individual capacity and

12  other persons identified in Plaintiffs' initial and Supplemental Disclosures,

13  and the evidence submitted in support of Plaintiffs motion for class

14  certification, Responding Party identifies the following individuals:

15      Diana Reed: believes that Blakeman engaged in a concerted effort

16  with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

17  and use in the customary manner of a public space.  Reed also believes that

18  Blakeman coordinated with other Bay Boys to harass and assault the

19  plaintiffs and the public when they were visiting Lunada Bay. Reed believes

20  that the conduct directed at the plaintiffs and others trying to surf Lunada

21  Bay is part of an agreement among Blakeman and the other Bay Boys,

22  which at a minimum, may be implied by the conduct of the parties and other

23  members of the Bay Boys. Reed believes that the Bay Boys concerted

24  efforts to stop the public from accessing the beach are documented in text

25  messages and emails some of which have been destroyed or are being

26  withheld by the Defendants in this case. For example, on February 5, 2016,

27  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

28

-96-

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1   Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

2   several others that said "There are 5 kooks standing on the bluff taking

3   pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles

4   Times photographer captured a pictured of Defendant Blakeman of the bluff

5   filming plaintiffs. Plaintiffs believe that the Bay Boys take photos and/or

6   video tape people as a form of harassment and intimidation. For example,

7   plaintiffs are also informed and believe that a Lunada Bay local named

8   Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs

9   are also informed and believe that Berstein told several people after he

10  photographed them, "Now we know who you are." Plaintiffs believe that the

11  conduct directed at Reed by Blakeman and the individual Bay Boys is

12  because she is a woman. Plaintiff is informed and believes that there are

13  numerous text messages where the Bay Boys refer to Reed as a "bitch" and

14  make sexual comments about her.

15      The specific acts directed against Reed include but are not limited to

16  the following:

17      i)   Reed went to Lunada Bay on January 29, 2016 with Jordan

18  Wright.  Reed had intended to surf at Lunada Bay that day because the

19  conditions were such that she felt comfortable surfing. Immediately after

20  they parked their car along the bluffs, the harassment began. Several men

21  drove by and circled around their car. This was the day that she and Wright

22  were harassed and intimidated by David Melo. Blakeman was recording

23  them on land with his camera. It was very disturbing to Reed and made her

24  feel very uncomfortable. Plaintiffs are informed and believe that this was

25  witnessed by John MacHarg.

26      ii)   On or about February 12, 2016, The Los Angeles Times

27  published an article called "Bay Boys surfer gang cannot block access to

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  upscale beach, Coastal Commission says." Jordan Wright and Cory

2  Spencer are quoted in the article. Mr. Wright and a few others had planned

3  to surf Lunada Bay the following morning. Plaintiffs are informed and believe

4  that Defendants Johnston and Blakeman learned that Jordan Wright and

5  Diana Reed were going to Lunada Bay and planned to be there to harass

6  them. On February 12, 2016, Defendant Alan Johnston sent the following

7  text messages to an unknown recipient: "No fucking way Taloa is back this

8  year" and "If u really wanna be a bay boy we might meet help tomm."

9       iii)    On February 13, 2016, Reed returned to Lunada Bay with

10  Jordan Wright to watch him surf and take photographs. Prior to her arrival,

11  she contacted the Palos Verdes Estates Police and requested an escort

12  from the bluffs to the beach. She was concerned about her safety given the

13  January 29, 2016 incident. She was told that the police were unavailable

14  and no officers were present when they arrived. When Reed and Wright

15  reached the beach, they encountered angry locals who were yelling at them.

16  Reed and Wright ignored the harassment and Wright got into the water to

17  surf and Reed made her way to the Rock Fort where she planned to watch

18  Wright and photograph him.

19       Approximately two hours after Reed had arrived at Lunada Bay, while

20  she was standing in the Rock Fort taking photos, Blakeman and defendant

21  Alan Johnston rushed into the fort and ran towards her in a hostile and

22  aggressive manner. It seemed that they had coordinated and orchestrated

23  the attack which completely caught Reed off guard. Blakeman was filming

24  Reed again, and at times, held his camera right in her face. It was

25  intimidating and harassing to Reed, and she feared for her safety.

26       Reed asked Blakeman and Johnston why they were filming her,

27  because it made her uncomfortable. Blakeman responded, "because I feel

28

-98-     Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1    like it." Johnston responded, "because you're hot. Because you're fucking

2    sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

3    way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

4    fear, was unable to leave the Rock Fort as Blakeman and Johnston were

5    standing closest to the exit.

6         iii)    Plaintiffs are informed and believe that after the incident

7    Defendant Johnston started calling and/or texting other Lunada Bay locals to

8    check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

9    Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

10   informed and believe that later that day Johnston received a text from his

11   mother asking him "What happened at the bay?" Johnston replied "Nothing

12   happened really just couple of trolls they got nothing."

13        Reed further identifies the following individuals as having knowledge of

14   concerted efforts by the Bay Boys, including Blakeman:

15        Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

16   Bay. Almost instantly after they arrived at Lunada Bay, they started getting

17   harassed by Bay Boys. They were told that they couldn't surf there, and

18   Spencer was called a "kook," which is a derogatory surfing term. Spencer

19   was also told: "why don't you fucking go home, you fucking kook;" and was

20   asked, "how many other good places did you pass to come here?" These

21   are the same types of statements made by Defendant Sang Lee and others

22   that can be observed on the video published by the Guardian.[20]  These

23   taunts started while Spencer and Taloa were on the bluffs getting ready to

24   surf. One individual continued to heckle Spencer and Taloa on their way

25   

26   _____

27   [20] https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video.

28   

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  down to the beach and into the water.

2  Blakeman was already in the water and began paddling around

3  Spencer and Taloa in a tight circle – staying just a few feet away from them.

4  There was no legitimate reason for this conduct. Reed believes that this is a

5  tactic used by the Bay Boys to harass people.[21]  Blakeman impeded

6  Spencer's movement in any direction and was intentionally blocking him

7  from catching any waves. It was clear to Spencer that Blakeman was not

8  there to surf that morning. Instead, his mission was to prevent Spencer and

9  Taloa from surfing and to keep them from enjoying their time in the water,

10  the open space, the waves, and nature. This type of concerted effort was

11  described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

12  people from surfing at Lunada Bay. In the approximately 90 minutes that

13  Spencer was in the water that day, Blakeman was focused on Spencer and

14  Taloa and continued to shadow their movements and sit uncomfortably

15  close to them. Spencer had never experienced anything like that before in

16  his life. It was bizarre but also incredibly frightening and disturbing. It

17  appeared to Spencer that Blakeman was coordinating his actions with a

18  group of guys who were standing in the Rock Fort, along with others in the

19  water. They were all talking to each other and it was clear they all knew

20  each other.

21  At one point while Spencer was in the water and was paddling west

22  out to the ocean, he saw a man surfing, coming in east towards the shore.

23  The Bay Boy ran over his hand/wrist that was holding his surfboard and one

24  of the fins on his surfboard sliced open his right wrist. Spencer has about a

25  _____

26  [21] Plaintiffs are informed and believe that Defendant Papayans sent a text

27  message describing similar conduct: "We just had a kook out in the water and me and Jack just sat on his ass."

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1    half-inch scar from where this man ran him over. As soon as the Bay Boy

2    ran him over, he started berating Spencer, saying things like "what are you

3    fucking doing out here? I told you to go home. I should have run you over.

4    Why are you paddling in the sun glare where I can't see you?" The Bay Boy

5    was pretending that he didn't see Spencer but it was obvious that he did and

6    intentionally ran him over. With over 30 years of surfing experience, Spencer

7    knew that this collision was intentional on his part. Fearful of being further

8    injured at that point, and not wanting to get into an argument with him,

9    Spencer just paddled away. Spencer and Taloa caught one more wave after

10   that and then decided it was getting too dangerous to surf. More men started

11   showing up at the Rock Fort and Spencer and Taloa were growing

12   increasingly fearful for their safety. Spencer was also bleeding and in pain.

13   These incidents are described in the declarations filed with Plaintiffs' motion

14   for class certification and the deposition of Spencer.

15       Christopher Taloa: As set forth above, Taloa and Spencer went surfing

16   at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

17   shadowing Spencer's movement in the water. Blakeman was in the water

18   with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

19   toward Taloa, at which point Taloa told him that he was too close.

20   Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

21   Taloa kept moving in the water, and Blakeman attempted to keep up with

22   him but was not in good enough shape to do so.

23       Jen Bell: The incident described above was witnessed by a woman

24   named Jen Bell who had gone to Lunada Bay that same day to photograph

25   a guy from Malibu. When she attempted sit down on the beach with her

26   pack, a man said: "You are practically sitting in a men's locker-room. You

27   don't make me feel comfortable."  Bell continued to sit there for another 10

28

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

minutes because she refused to be intimated but eventually decided to head over to the fort because she saw another woman, Diana Reed, was taking photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It was obvious from the start that Johnston and Blakeman were there with the intent to harass Reed. Johnston was making rude comments to both her and Reed. Blakeman was putting the GoPro in their faces. Johnston was chugging multiple beers and it was early in the morning. Johnston asked her to help him with his wetsuit. He said "Can you help me with this?" and handed her the leg of his wetsuit. Johnston made moaning sounds when she took it like he was having an orgasm.

Jordan Wright: Wright attempted to surf Lunada Bay in January 2015 with Chris Claypool and Kenneth Claypool. He observed Blakeman harassing Chris and Ken. Wright was sitting on the outside waiting his turn for waves. By regular surfing norms, he had priority. He caught a 10- to 12-foot-high wave and was up riding for several seconds. Alan Johnston paddled the wrong way on this wave, dropped in on him going the wrong way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer while going the wrong way violates normal surf etiquette. Johnston then collided with Wright, and their leashes got tangled. After they surfaced from the collision, Johnston then got close to Wright and yelled, "You had to fucking take that wave, didn't you!" The next wave that came through then broke Wright's leash plug and the board was carried into the rocks, which destroyed a new surfboard. Wright had to swim in over rocks to get his board and cut his hands on the rocks doing so. Wright is confident that Johnston attempted to purposefully injure him. What he did was extremely dangerous.

Wright has observed Blakeman on many occasions. Blakeman is easy

-102-

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1  to identify because he rides a kneeboard and he is regularly filming visitors

2  on land with a camcorder. Wright believes his filming is an effort to intimidate

3  visitors. In the water, Wright has observed what appears to be Blakeman

4  directing other Bay Boys to sit close to visiting surfers. Wright has observed

5  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

6  the visitors, impede their movements, block their surfing, kick at them,

7  splash water at them, and dangerously drop in on them. In addition to

8  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

9  Charlie Ferrara, and David Melo engage in this activity. These incidents are

10  described in the declarations filed with Plaintiffs' motion for class

11  certification.

12      Ken Claypool: has been harassed and filmed by Blakeman in an

13  attempt to intimidate him at Lunada Bay on multiple occasions. In January

14  2015, Claypool and his brother Chris Claypool along with Jordan Wright

15  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

16  water, including Blakeman who paddled over and threatened them. Claypool

17  observed Blakeman intentionally drop in on Wright at least twice.

18      On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

19  and Jordan Wright. There was a photographer from the Los Angeles Times

20  that was there. Also in attendance was Cory Spencer and Diana Reed.

21  Spencer was there to watch the cars.  Blakeman was there filming in an

22  effort to intimidate visitors. Blakeman can be seen in one of the pictures

23  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

24  are informed and believe that there was a text message sent that day to

25  Papayans, Michael Thiel and 11 other people stating that there were 5

26  kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

27  informed that the text states: "Things could get ugly. We all need to surf."

28

-103-

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1   These incidents are described in the declarations filed with Plaintiffs' motion

2   for class certification.

3      Chris Claypool: he and his brother Ken and Jordan Wright attempted

4   to surf Lunada Bay in January 2015.  There were about five locals in the

5   water, including Blakeman who paddled over and was yelling, "Try and catch

6   a wave and see what happens. There is no fucking way you are getting a

7   wave. Just go in. Just go. You better not cut me off."  Blakeman looked

8   possessed or possibly on drugs. His behavior got more bizarre throughout

9   the morning. He seemed to be paddling for every wave that he could

10  physically push himself into, perhaps to make a point, but he was wiping out

11  a lot and falling down the face and tumbling across the rock reef. Blakeman

12  looked dangerous to himself. When Blakeman would actually catch a wave

13  in, he would paddle back to where Claypool and his brother were sitting, and

14  continue his insane rant. On one occasion, Blakeman came less than 12

15  inches from Claypool's ear and was screaming. It was so loud, Claypool had

16  to put his fingers in his ear to protect them from being damaged. Claypool is

17  a sound engineer and to put this in perspective, a rock concert creates about

18  120 decibels of noise - this was louder; a jet engine creates about 150

19  decibels. At one point Blakeman caught a wave and drew a line aiming right

20  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

21  as he narrowly missed Claypool's head. Claypool watched as Blakeman

22  intentionally dropped in on Jordan at least twice. It seemed obvious to

23  Claypool that Blakeman and the other Bay Boy wanted to make sure none of

24  them were having fun. Because of the danger, they decided to leave.

25     When Claypool and his brother got out of water, they saw people

26  gathering on top of the cliff. One person was videotaping them from the top

27  of the cliff; it was clear to Claypool that he was doing this to try and

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  intimidate them. The people were watching them from the cliff. It was
2  obvious that Blakeman engaged in a concerted effort with other Bay Boys to
3  obstruct his free passage and use in the customary manner of a public
4  space. It also seemed clear that Blakeman engaged in a concerted effort
5  with other Bay Boys to try and injure him. These incidents are described in
6  the declarations filed with Plaintiffs' motion for class certification.

7      Jason Gersch: While observing the surf, Gersch was approached by
8  two local Bay Boys named Peter McCollum and Brant Blakeman. These
9  individuals made it known to Gersch that he could not surf there. These
10  incidents are described in the declarations filed with Plaintiffs' motion for
11  class certification.

12      Plaintiffs are informed and believe and on that basis allege that
13  Defendant Blakeman and his attorneys are attempting to intimidate
14  witnesses in this case. On at least two occasions, an investigator hired by
15  Blakeman's attorneys contacted witnesses represented by Plaintiffs'
16  attorneys. The investigator also showed up at the home of a reporter that
17  has not been listed as a witness.

18      The request is premature. Because Blakeman and the other
19  defendants are refusing to comply with their obligations to produce
20  documents under the federal rules and are impermissibly withholding
21  evidence and/or possibly spoliating evidence, we are not able to fully
22  respond to discovery requests which necessarily rely on our ability to fully
23  investigate the facts. As discovery is continuing, Reed reserves the right to
24  update this response.

25  Witness Contact Information
26  Defendant Brant Blakeman, represented by Veatch Carlson LLP and
27  Buchalter Nemer APC.
28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices
of J. Patrick Carey.

Defendant Michael Ray Papayans, represented by Haven Law.

Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP
and Booth, Mitchel & Strange LLP.

Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,
APC and The Phillips Firm.

Defendant N.F., represented by Law Offices of Mark C. Fields, APC.

Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara
LLP.

Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara
LLP.

David Melo, represented by Ken Gaugh, Attorney at Law.

The following witnesses are represented by Hanson Bridget LLP and Otten
Law PC: Plaintiff Cory Spencer, Plaintiff Diana Reed, Christopher Taloa,
Jordan Wright, Ken Claypool, Chris Claypool, Jason Gersch, John MacHarg.

Charles Thomas Mowat aka "Chach." Contact info believed to be: 2337 Via
Rivera, Palos Verdes Peninsula, CA 90274.

Thomas J. Sullivan Jr.  Contact info believed to be: 617 Paseo Lunado,
Palos Verdes Estates, CA 90274, (310) 947-0087, sully@fire-usa.com.

David Yoakley. Contact info believed to be: 2850 Winlock Rd., Torrance,
CA, 310-963-6889.

Andy Patch. Contact info believed to be (310) 213-1505,
patchman@socal.rr.com.

Josh Berstein. Contact info believed to be (310) 351-8004.

Brad Travers. Contact info believed to be (310) 704-7393.

Jen Bell, address unknown (323) 308-9326.

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  Michael Thiel. Contact info believed to be: 841 Rivera Place, Palos Verdes

2  Estates, CA 90274; (310) 480-3027.

3  **INTERROGATORY NO. 12:**

4      IDENTIFY ALL PERSONS that have knowledge of any facts that

5  support plaintiffs' Eight Cause of Action in the Complaint (Negligence)

6  against BRANT BLAKEMAN, and for each such PERSON identified state all

7  facts you contend are within that PERSON's knowledge.

8  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

9      Responding Party objects to this interrogatory as premature. Because

10  this interrogatory seeks or necessarily relies upon a contention, and

11  because this matter is in its early stages and pretrial discovery has only just

12  begun, Responding Party is unable to provide a complete response at this

13  time, nor is it required to do so.  See *Kmiec v. Powerwave Techs. Inc. et al.*,

14  2014 WL 11512195 (C.D. Cal. Dec. 2, 2014) at *1; *Folz v. Union Pacific*

15  *Railroad Company*, 2014 WL 357929 (S.D. Cal. Jan. 31, 2014) at *1-2.; see

16  also Fed. R. Civ. P. 33(a)(2) ("the court may order that [a contention]

17  interrogatory need not be answered until designated discovery is complete,

18  or until a pretrial conference or some other time.").

19      Responding Party further objects to this interrogatory as unduly

20  burdensome, harassing, and duplicative of information disclosed in

21  Responding Party's Rule 26(a) disclosures and supplemental disclosures.

22  Propounding Party may look to Responding Party's Rule 26(a) disclosures

23  and supplemental disclosures for the information sought by this

24  interrogatory.  Moreover, Responding Party had the opportunity to depose

25  Ms. Reed on this topic.

26      Responding Party further objects to this interrogatory as compound.

27  This "interrogatory" contains multiple impermissible subparts, which

28

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1   Propounding Party has propounded to circumvent the numerical limitations

2   on interrogatories provided by Federal Rule of Civil Procedure 33(a)(1).

3       Responding Party further objects to this interrogatory on the grounds

4   that it seeks information that is outside of Responding Party's knowledge.

5       Responding Party further objects to the extent that this interrogatory

6   invades attorney-client privilege and/or violates the work product doctrine by

7   compelling Responding Party to disclose privileged communications and/or

8   litigation strategy.

9       Subject to and without waiver of the foregoing objections, Responding

10  Party responds as follows:

11      In addition to each defendant named in his individual capacity and

12  other persons identified in Plaintiffs' initial and Supplemental Disclosures,

13  and the evidence submitted in support of Plaintiffs motion for class

14  certification, Responding Party identifies the following individuals:

15      Diana Reed: believes that Blakeman engaged in a concerted effort

16  with other Bay Boys to obstruct the plaintiffs' and the publics' free passage

17  and use in the customary manner of a public space.  Reed also believes that

18  Blakeman coordinated with other Bay Boys to harass and assault the

19  plaintiffs and the public when they were visiting Lunada Bay. Reed believes

20  that the conduct directed at the plaintiffs and others trying to surf Lunada

21  Bay is part of an agreement among Blakeman and the other Bay Boys,

22  which at a minimum, may be implied by the conduct of the parties and other

23  members of the Bay Boys. Reed believes that the Bay Boys concerted

24  efforts to stop the public from accessing the beach are documented in text

25  messages and emails some of which have been destroyed or are being

26  withheld by the Defendants in this case. For example, on February 5, 2016,

27  Charles Mowat sent a text message to Defendant Brant Blakeman, Tom

28

-108-   Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

1  Sullivan, David Yoakley, Andy Patch, Defendant Michael Papayans and

2  several others that said "There are 5 kooks standing on the bluff taking

3  pictures...I think that same Taloa guy. Things could get ugly." A Los Angeles

4  Times photographer captured a pictured of Defendant Blakeman of the bluff

5  filming plaintiffs.  Plaintiffs believe that the Bay Boys take photos and/or

6  video tape people as a form of harassment and intimidation. For example,

7  plaintiffs are also informed and believe that a Lunada Bay local named

8  Joshua Berstein was taking pictures at the MLK 2014 paddle out. Plaintiffs

9  are also informed and believe that Berstein told several people after he

10  photographed them, "Now we know who you are." Plaintiffs believe that the

11  conduct directed at Reed by Blakeman and the individual Bay Boys is

12  because she is a woman. Plaintiff is informed and believes that there are

13  numerous text messages where the Bay Boys refer to Reed as a "bitch" and

14  make sexual comments about her.

15      The specific acts directed against Reed include but are not limited to

16  the following:

17      i)      Reed went to Lunada Bay on January 29, 2016 with Jordan

18  Wright.  Reed had intended to surf at Lunada Bay that day because the

19  conditions were such that she felt comfortable surfing.[22] Immediately after

20  they parked their car along the bluffs, the harassment began. Several men

21  drove by and circled around their car. This was the day that she and Wright

22  were harassed and intimidated by David Melo. Blakeman was recording

23  them on land with his camera. It was very disturbing to Reed and made her

24  _____

25  [22] Plaintiffs are informed and believe that there were text message sent on

26  January 29, 2016 asking Defendant Papayans "Where are you? Kooks
   trying to get to the Bay." Plaintiffs are informed and believe that Papayans

27  responded with a "LOL" and said he would be there.

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   feel very uncomfortable. Plaintiffs are informed and believe that this was
2   witnessed by John MacHarg.

3       ii)    On or about February 12, 2016, The Los Angeles Times
4   published an article called "Bay Boys surfer gang cannot block access to
5   upscale beach, Coastal Commission says." Jordan Wright and Cory
6   Spencer are quoted in the article. Mr. Wright and a few others had planned
7   to surf Lunada Bay the following morning. Plaintiffs are informed and believe
8   that Defendants Johnston and Blakeman learned that Jordan Wright and
9   Diana Reed were going to Lunada Bay and planned to be there to harass
10  them. On February 12, 2016, Defendant Alan Johnston sent the following
11  text messages to an unknown recipient: "No fucking way Taloa is back this
12  year" and "If u really wanna be a bay boy we might meet help tomm."

13      iii)    On February 13, 2016, Reed returned to Lunada Bay with
14  Jordan Wright to watch him surf and take photographs. Prior to her arrival,
15  she contacted the Palos Verdes Estates Police and requested an escort
16  from the bluffs to the beach. She was concerned about her safety given the
17  January 29, 2016 incident. She was told that the police were unavailable
18  and no officers were present when they arrived. When Reed and Wright
19  reached the beach, they encountered angry locals who were yelling at them.
20  Reed and Wright ignored the harassment and Wright got into the water to
21  surf and Reed made her way to the Rock Fort where she planned to watch
22  Wright and photograph him.

23      Approximately two hours after Reed had arrived at Lunada Bay, while
24  she was standing in the Rock Fort taking photos, Blakeman and defendant
25  Alan Johnston rushed into the fort and ran towards her in a hostile and
26  aggressive manner. It seemed that they had coordinated and orchestrated
27  the attack which completely caught Reed off guard. Blakeman was filming
28

13002592.1

1   Reed again, and at times, held his camera right in her face. It was

2   intimidating and harassing to Reed, and she feared for her safety.

3        Reed asked Blakeman and Johnston why they were filming her,

4   because it made her uncomfortable. Blakeman responded, "because I feel

5   like it." Johnston responded, "because you're hot. Because you're fucking

6   sexy baby, woooh!"  Johnston then opened a can of beer in a purposeful

7   way so that it sprayed Reed's arm and her camera. Reed, paralyzed with

8   fear, was unable to leave the Rock Fort as Blakeman and Johnston were

9   standing closest to the exit.

10        iii)    Plaintiffs are informed and believe that after the incident

11   Defendant Johnston started calling and/or texting other Lunada Bay locals to

12   check for police to plan a getaway. At around 1:00 pm Brad Travers (Travers

13   Tree Service) texted Johnston: "Don't see any cops at the top." Plaintiffs are

14   informed and believe that later that day Johnston received a text from his

15   mother asking him "What happened at the bay?" Johnston replied "Nothing

16   happened really just couple of trolls they got nothing."

17        Reed further identifies the following individuals as having knowledge of

18   concerted efforts by the Bay Boys, including Blakeman:

19        Cory Spencer: Cory Spencer and Chris Taloa went to surf Lunada

20   Bay. Almost instantly after they arrived at Lunada Bay, they started getting

21   harassed by Bay Boys. They were told that they couldn't surf there, and

22   Spencer was called a "kook," which is a derogatory surfing term. Spencer

23   was also told: "why don't you fucking go home, you fucking kook;" and was

24   asked, "how many other good places did you pass to come here?" These

25   are the same types of statements made by Defendant Sang Lee and others

26

27

28

-111-

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  that can be observed on the video published by the Guardian.[23]  These

2  taunts started while Spencer and Taloa were on the bluffs getting ready to

3  surf. One individual continued to heckle Spencer and Taloa on their way

4  down to the beach and into the water.

5       Blakeman was already in the water and began paddling around

6  Spencer and Taloa in a tight circle – staying just a few feet away from them.

7  There was no legitimate reason for this conduct. Reed believes that this is a

8  tactic used by the Bay Boys to harass people.[24]  Blakeman impeded

9  Spencer's movement in any direction and was intentionally blocking him

10 from catching any waves. It was clear to Spencer that Blakeman was not

11 there to surf that morning. Instead, his mission was to prevent Spencer and

12 Taloa from surfing and to keep them from enjoying their time in the water,

13 the open space, the waves, and nature. This type of concerted effort was

14 described by Charlie Ferrara to Reed as the way the Bay Boys act to keep

15 people from surfing at Lunada Bay. In the approximately 90 minutes that

16 Spencer was in the water that day, Blakeman was focused on Spencer and

17 Taloa and continued to shadow their movements and sit uncomfortably

18 close to them. Spencer had never experienced anything like that before in

19 his life. It was bizarre but also incredibly frightening and disturbing. It

20 appeared to Spencer that Blakeman was coordinating his actions with a

21 group of guys who were standing in the Rock Fort, along with others in the

22 water. They were all talking to each other and it was clear they all knew

23 ————————————

24 [23] https://www.theguardian.com/travel/video/2015/may/18/california-surf-
   wars-lunada-bay-localism-video.

25

26 [24] Plaintiffs are informed and believe that Defendant Papayans sent a text
   message describing similar conduct: "We just had a kook out in the water
27 and me and Jack just sat on his ass."

28

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1   each other.

2       At one point while Spencer was in the water and was paddling west

3   out to the ocean, he saw a man surfing, coming in east towards the shore.

4   The Bay Boy ran over his hand/wrist that was holding his surfboard and one

5   of the fins on his surfboard sliced open his right wrist. Spencer has about a

6   half-inch scar from where this man ran him over. As soon as the Bay Boy

7   ran him over, he started berating Spencer, saying things like "what are you

8   fucking doing out here? I told you to go home. I should have run you over.

9   Why are you paddling in the sun glare where I can't see you?" The Bay Boy

10  was pretending that he didn't see Spencer but it was obvious that he did and

11  intentionally ran him over. With over 30 years of surfing experience, Spencer

12  knew that this collision was intentional on his part. Fearful of being further

13  injured at that point, and not wanting to get into an argument with him,

14  Spencer just paddled away. Spencer and Taloa caught one more wave after

15  that and then decided it was getting too dangerous to surf. More men started

16  showing up at the Rock Fort and Spencer and Taloa were growing

17  increasingly fearful for their safety. Spencer was also bleeding and in pain.

18  These incidents are described in the declarations filed with Plaintiffs' motion

19  for class certification and the deposition of Spencer.

20      Christopher Taloa: As set forth above, Taloa and Spencer went surfing

21  at Lunada Bay and were harassed by Blakeman. Taloa witnessed Blakeman

22  shadowing Spencer's movement in the water. Blakeman was in the water

23  with four or five other Lunada Bay Locals.  At one point, Blakeman paddled

24  toward Taloa, at which point Taloa told him that he was too close.

25  Blakeman replied, "This is the ocean. We are surfing. I can be wherever."

26  Taloa kept moving in the water, and Blakeman attempted to keep up with

27  him but was not in good enough shape to do so.

28

-113-    Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1   Jen Bell: The incident described above was witnessed by a woman

2   named Jen Bell who had gone to Lunada Bay that same day to photograph

3   a guy from Malibu. When she attempted sit down on the beach with her

4   pack, a man said: "You are practically sitting in a men's locker-room. You

5   don't make me feel comfortable."  Bell continued to sit there for another 10

6   minutes because she refused to be intimated but eventually decided to head

7   over to the fort because she saw another woman, Diana Reed, was taking

8   photos.  Bell was in the Rock Fort when Blakeman and Johnston arrived. It

9   was obvious from the start that Johnston and Blakeman were there with the

10   intent to harass Reed. Johnston was making rude comments to both her and

11   Reed. Blakeman was putting the GoPro in their faces. Johnston was

12   chugging multiple beers and it was early in the morning. Johnston asked her

13   to help him with his wetsuit. He said "Can you help me with this?" and

14   handed her the leg of his wetsuit. Johnston made moaning sounds when

15   she took it like he was having an orgasm.

16   Jordan Wright: Wright attempted to surf Lunada Bay in January 2015

17   with Chris Claypool and Kenneth Claypool. He observed Blakeman

18   harassing Chris and Ken. Wright was sitting on the outside waiting his turn

19   for waves. By regular surfing norms, he had priority. He caught a 10- to 12-

20   foot-high wave and was up riding for several seconds. Alan Johnston

21   paddled the wrong way on this wave, dropped in on him going the wrong

22   way on the wave, and yelled, "Oh no, you don't!" Dropping in on a surfer

23   while going the wrong way violates normal surf etiquette. Johnston then

24   collided with Wright, and their leashes got tangled. After they surfaced from

25   the collision, Johnston then got close to Wright and yelled, "You had to

26   fucking take that wave, didn't you!" The next wave that came through then

27   broke Wright's leash plug and the board was carried into the rocks, which

28

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  destroyed a new surfboard. Wright had to swim in over rocks to get his

2  board and cut his hands on the rocks doing so. Wright is confident that

3  Johnston attempted to purposefully injure him. What he did was extremely

4  dangerous.

5      Wright has observed Blakeman on many occasions. Blakeman is easy

6  to identify because he rides a kneeboard and he is regularly filming visitors

7  on land with a camcorder. Wright believes his filming is an effort to intimidate

8  visitors. In the water, Wright has observed what appears to be Blakeman

9  directing other Bay Boys to sit close to visiting surfers. Wright has observed

10  Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to

11  the visitors, impede their movements, block their surfing, kick at them,

12  splash water at them, and dangerously drop in on them. In addition to

13  Blakeman, he has seen Michael Papayans, Sang Lee, Alan Johnston,

14  Charlie Ferrara, and David Melo engage in this activity. These incidents are

15  described in the declarations filed with Plaintiffs' motion for class

16  certification.

17      Ken Claypool: has been harassed and filmed by Blakeman in an

18  attempt to intimidate him at Lunada Bay on multiple occasions. In January

19  2015, Claypool and his brother Chris Claypool along with Jordan Wright

20  went to surf Lunada Bay.  There were about five Lunada Bay locals in the

21  water, including Blakeman who paddled over and threatened them. Claypool

22  observed Blakeman intentionally drop in on Wright at least twice.

23      On February 5, 2016, Claypool went to Lunada Bay with Chris Taloa

24  and Jordan Wright. There was a photographer from the Los Angeles Times

25  that was there. Also in attendance was Cory Spencer and Diana Reed.

26  Spencer was there to watch the cars.  Blakeman was there filming in an

27  effort to intimidate visitors. Blakeman can be seen in one of the pictures

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  taken by the photographer. Also present was Defendant Papayans. Plaintiffs

2  are informed and believe that there was a text message sent that day to

3  Papayans, Michael Thiel and 11 other people stating that there were 5

4  kooks standing on the bluff taking pictures, including Taloa. Plaintiffs are

5  informed that the text states: "Things could get ugly. We all need to surf."

6  These incidents are described in the declarations filed with Plaintiffs' motion

7  for class certification.

8      Chris Claypool: he and his brother Ken and Jordan Wright attempted

9  to surf Lunada Bay in January 2015.  There were about five locals in the

10  water, including Blakeman who paddled over and was yelling, "Try and catch

11  a wave and see what happens. There is no fucking way you are getting a

12  wave. Just go in. Just go. You better not cut me off."  Blakeman looked

13  possessed or possibly on drugs. His behavior got more bizarre throughout

14  the morning. He seemed to be paddling for every wave that he could

15  physically push himself into, perhaps to make a point, but he was wiping out

16  a lot and falling down the face and tumbling across the rock reef. Blakeman

17  looked dangerous to himself. When Blakeman would actually catch a wave

18  in, he would paddle back to where Claypool and his brother were sitting, and

19  continue his insane rant. On one occasion, Blakeman came less than 12

20  inches from Claypool's ear and was screaming. It was so loud, Claypool had

21  to put his fingers in his ear to protect them from being damaged. Claypool is

22  a sound engineer and to put this in perspective, a rock concert creates about

23  120 decibels of noise - this was louder; a jet engine creates about 150

24  decibels. At one point Blakeman caught a wave and drew a line aiming right

25  at Claypool. Another Bay Boy tried the same thing and said "mother fucker"

26  as he narrowly missed Claypool's head. Claypool watched as Blakeman

27  intentionally dropped in on Jordan at least twice. It seemed obvious to

28

-116-

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES,
SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1  Claypool that Blakeman and the other Bay Boy wanted to make sure none of
2  them were having fun. Because of the danger, they decided to leave.

3      When Claypool and his brother got out of water, they saw people
4  gathering on top of the cliff. One person was videotaping them from the top
5  of the cliff; it was clear to Claypool that he was doing this to try and
6  intimidate them. The people were watching them from the cliff. It was
7  obvious that Blakeman engaged in a concerted effort with other Bay Boys to
8  obstruct his free passage and use in the customary manner of a public
9  space. It also seemed clear that Blakeman engaged in a concerted effort
10 with other Bay Boys to try and injure him. These incidents are described in
11 the declarations filed with Plaintiffs' motion for class certification.

12     Jason Gersch: While observing the surf, Gersch was approached by
13 two local Bay Boys named Peter McCollum and Brant Blakeman. These
14 individuals made it known to Gersch that he could not surf there. These
15 incidents are described in the declarations filed with Plaintiffs' motion for
16 class certification.

17     Plaintiffs are informed and believe and on that basis allege that
18 Defendant Blakeman and his attorneys are attempting to intimidate
19 witnesses in this case. On at least two occasions, an investigator hired by
20 Blakeman's attorneys contacted witnesses represented by Plaintiffs'
21 attorneys. The investigator also showed up at the home of a reporter that
22 has not been listed as a witness.

23     The request is premature. Because Blakeman and the other
24 defendants are refusing to comply with their obligations to produce
25 documents under the federal rules and are impermissibly withholding
26 evidence and/or possibly spoliating evidence, we are not able to fully
27 respond to discovery requests which necessarily rely on our ability to fully
28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1 investigate the facts. As discovery is continuing, Reed reserves the right to

2 update this response.

3 Witness Contact Information

4 Defendant Brant Blakeman, represented by Veatch Carlson LLP and

5 Buchalter Nemer APC.

6 Defendant Alan Johnston a/k/a Jalian Johnston, represented by Law Offices

7 of J. Patrick Carey.

8 Defendant Michael Ray Papayans, represented by Haven Law.

9 Defendant Sang Lee, represented by Lewis Brisbois Bisgaard & Smith LLP

10 and Booth, Mitchel & Strange LLP.

11 Defendant Angelo Ferrara, represented by Law Offices of Mark C. Fields,

12 APC and The Phillips Firm.

13 Defendant N.F., represented by Law Offices of Mark C. Fields, APC.

14 Defendant Frank Ferrara, represented by Bremer Whyte Brown & O'Meara

15 LLP.

16 Defendant Charlie Ferrara, represented by Bremer Whyte Brown & O'Meara

17 LLP.

18 David Melo, represented by Ken Gaugh, Attorney at Law.

19 The following witnesses are represented by Hanson Bridget LLP and Otten

20 Law PC: Plaintiff Cory Spencer, Plaintiff Diana Reed, Christopher Taloa,

21 Jordan Wright, Ken Claypool, Chris Claypool, Jason Gersch, John MacHarg.

22 Charles Thomas Mowat aka "Chach." Contact info believed to be: 2337 Via

23 Rivera, Palos Verdes Peninsula, CA 90274.

24 Thomas J. Sullivan Jr.  Contact info believed to be: 617 Paseo Lunado,

25 Palos Verdes Estates, CA 90274, (310) 947-0087, sully@fire-usa.com.

26 David Yoakley. Contact info believed to be: 2850 Winlock Rd., Torrance,

27 CA, 310-963-6889.

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1 | Andy Patch. Contact info believed to be (310) 213-1505,

2 | patchman@socal.rr.com.

3 | Josh Berstein. Contact info believed to be (310) 351-8004.

4 | Brad Travers. Contact info believed to be (310) 704-7393.

5 | Jen Bell, address unknown (323) 308-9326.

6 | Michael Thiel. Contact info believed to be: 841 Rivera Place, Palos Verdes

7 | Estates, CA 90274; (310) 480-3027.

8

9

10 | DATED:  March 2, 2017                 OTTEN LAW, PC

11

12

13

14

15 | By:  _____/s/Victor Otten_____

16 | VICTOR OTTEN

17 | KAVITA TEKCHANDANI

18 | Attorneys for Plaintiffs

19 | CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

20

21

22

23

24

25

26

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

13002592.1

1

## VERIFICATION

2       [Fed. R. Civ. P. 33(b)]

3

4  **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

5       I, Diana Milena Reed, have read **PLAINTIFF DIANA MILENA REED**

6  **SUPPLEMENTAL RESPONSES TO INTERROGATORIES, SET ONE**

7  **PROPOUNDED BY DEFENDANT BRANT BLAKEMAN** and know its

8  contents.

9       I am a party to this action and I make this verification for that reason. I

10 am informed and believe and on that ground allege that the matters stated in

11 the foregoing document are true.

12      I declare under penalty of perjury under the laws of the State of

13 California that the foregoing is true and correct.

14      Executed on March 2, 2017, at _____Malibu_____(City),

15 California.

16

17

18                                DIANA MILENA REED

19

20

21

22

23

24

25

26

27

28                                              Case No. 2:16-cv-02129-SJO (RAOx)

PROOF OF SERVICE

*Spencer, et al. v. Lunada Bay Boys, et al.*

U.S.D.C. for the Central District of California

Case No. 2:16-cv-02129-SJO (RAOx)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is: 3620 Pacific Coast Highway, Suite 100, Torrance, CA  90505.

On March 2, 2017, I served the original or a true copy of the following document(s) described as:

**PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **March 2, 2017**, at Torrance, California.

*/s/ Victor Otten*
_____

Victor Otten

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

1

**SERVICE LIST**
*Spencer, et al. v. Lunada Bay Boys, et al.*
U.S.D.C. for the Central District of California
<u>Case No. 2:16-cv-02129-SJO (RAOx)</u>

2

3

4

5

6

7

8

9

Robert T. Mackey, Esq.
Peter H. Crossin, Esq.
Richard P. Dieffenbach, Esq.
John P. Worgul, Esq.
VEATCH CARLSON, LLP
1055 Wilshire Blvd., 11th Floor
Los Angeles, CA  90017

*(Attorneys for Defendant BRANT BLAKEMAN)*

(served original)

10

11

12

Robert S. Cooper, Esq.
BUCHALTER NEMER, APC
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA  90017

*(Attorneys for Defendant BRANT BLAKEMAN)*

(served true copy)

13

14

15

16

J. Patrick Carey, Esq.
LAW OFFICES OF
  J. PATRICK CAREY
1230 Rosecrans Ave., Suite 300
Manhattan Beach, CA  90266

*(Attorney for Defendant ALAN JOHNSTON a/k/a JALIAN JOHNSTON)*

(served true copy)

17

18

19

Peter T. Haven, Esq.
HAVEN LAW
1230 Rosecrans Ave., Suite 300
Manhattan Beach, CA  90266

*(Attorney for Defendant MICHAEL RAY PAPAYANS)*

(served true copy)

20

21

22

23

24

25

Dana Alden Fox, Esq.
Edward E. Ward, Jr., Esq.
Eric Y. Kizirian, Esq.
Tera Lutz, Esq.
LEWIS BRISBOIS
  BISGAARD & SMITH LLP
633 W. 5th Street, Suite 4000
Los Angeles, CA  90071

*(Attorneys for Defendant SANG LEE)*

(served true copy)

26

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1

| 1 | Daniel M. Crowley, Esq. | *(Attorneys for Defendant SANG LEE)* |
| 2 | BOOTH, MITCHEL & STRANGE LLP | (served true copy) |
| 3 | 707 Wilshire Blvd., Suite 4450 Los Angeles, CA  90017 | |
| 4 | | |
| 5 | Mark C. Fields, Esq. | *(Attorney for Defendant ANGELO* |
| 6 | LAW OFFICES OF MARK C. FIELDS, APC | *FERRARA and Defendant N. F. appearing through Guardian Ad Litem,* |
| 7 | 333 South Hope Street, 35th Floor Los Angeles, CA  90071 | *Leonora Ferrara)* |
| 8 | | (served true copy) |
| 9 | | |
| 10 | Thomas M. Phillip, Esq. Aaron G. Miller, Esq. | *(Attorneys for Defendant ANGELO FERRARA)* |
| 11 | THE PHILLIPS FIRM 800 Wilshire Blvd., Suite 1550 | (served true copy) |
| 12 | Los Angeles, CA  90017 | |
| 13 | | |
| 14 | Patrick Au, Esq. | *(Attorneys for Defendants FRANK* |
| 15 | Laura L. Bell, Esq. BREMER WHYTE | *FERRARA and CHARLIE FERRARA)* |
| 16 | BROWN & O'MEARA, LLP 21271 Burbank Blvd., Suite 110 | (served true copy) |
| 17 | Woodland Hills, CA  91367 | |
| 18 | | |
| 19 | Edwin J. Richards, Esq. Antoinette P. Hewitt, Esq. | *(Attorneys for Defendants CITY OF PALOS VERDES and CHIEF OF* |
| 20 | Rebecca L. Wilson, Esq. Jacob Song, Esq. | *POLICE JEFF KEPLEY)* |
| 21 | Christopher D. Glos, Esq. KUTAK ROCK LLP | (served true copy) |
| 22 | 5 Park Plaza, Suite 1500 | |
| 23 | Irvine, CA  92614-8595 | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

Case No. 2:16-cv-02129-SJO (RAOx)

PLAINTIFF DIANA MILENA REED'S (FURTHER) SUPPLEMENTAL RESPONSE TO INTERROGATORIES, SET ONE PROPOUNDED BY DEFENDANT BRANT BLAKEMAN

13002592.1