EDWIN J. RICHARDS (SBN 43855)
Email: Ed.Richards@kutakrock.com
ANTOINETTE P. HEWITT (SBN 181099)
Email: Antoinette.hewitt@kutakrock.com
CHRISTOPHER D. GLOS (SBN 210877)
Email: Christopher.Glos@kutakrock.com
KUTAK ROCK LLP
5 Park Plaza, Suite 1500
Irvine, CA  92614-8595
Telephone:  (949) 417-0999
Facsimile:   (949) 417-5394

**[EXEMPT FROM FILING FEES PURSUANT TO GOVERNMENT CODE § 6103]**

Attorneys for Defendants
CITY OF PALOS VERDES ESTATES and
CHIEF OF POLICE JEFF KEPLEY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA; WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>        Plaintiffs,<br><br>        v.<br><br>LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON aka JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA and N.F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10,<br><br>        Defendants. | Case No.  2:16-cv-02129-SJO-RAO<br><br>Assigned to District Judge:<br>Hon. S. James Otero; Courtroom: 10C @ 350 W. First Street, L.A., CA  90012<br><br>Assigned Discovery:<br>Magistrate Judge:  Hon. Rozella A. Oliver<br><br>**[Exempt From Filing Fees Pursuant To Government Code § 6103]**<br><br>**CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Separate Statement of Uncontroverted Facts/Evidence; Declarations of Christopher D. Glos and Vickie Kroneberger]; Notices of Lodging; [Proposed] Statement of Uncontroverted Facts/Conclusions of Law; and [Proposed] Judgment lodged herewith]<br><br>[FRCP Rule 56]<br><br>Date:      August 21, 2017<br>Time:     10:00 a.m.<br>Ctrm.:    10C; Hon. S. JAMES OTERO<br><br>Complaint Filed: March 29, 2016<br>Trial:        November 7, 2017 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 21, 2017, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 10C of the above-entitled Court, Defendants City of Palos Verdes Estates (the "City") and Chief of Police Jeff Kepley ("Chief Kepley") will and hereby do jointly move the Court for an Order granting summary judgment or, in the alternative, summary adjudication pursuant to Rule 56 of the Federal Rules of Civil Procedure as to Plaintiffs Cory Spencer, Diana Milena Reed, and Coastal Protection Rangers, Inc.'s (collectively, "Plaintiffs") Third Cause of Action entitled 42 U.S.C. § 1983 – Equal Protection. In the alternative, the City and Chief Kepley seek an Order denying injunctive relief and Chief Kepley seeks an Order dismissing him as a redundant party to the action.

This Motion is based on the attached Memorandum of Points and Authorities, Proposed Statement of Uncontroverted Facts and Law, Declarations of Christopher D. Glos and Vickie Kroneberger, the Excepts of Deposition Transcripts, together with the pleadings and other documents on file with the Court in this action, and upon such oral and documentary evidence as may be presented at the hearing of this motion.

This Motion is made following the conference of counsel pursuant to U.S.D.C. Local Rule 7-3 which took place on June 5, 2017.  [Declaration of Christopher D. Glos, ¶ 10].

Dated:  July 14, 2017                KUTAK ROCK LLP


By:  /s/ *Christopher D. Glos*
Edwin J. Richards
Antoinette P. Hewitt
Christopher D. Glos
Attorneys for Defendants
CITY OF PALOS VERDES ESTATES
and CHIEF OF POLICE JEFF KEPLEY

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 1 -                2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................... 2

    A.   Factual Events Specific to Plaintiff Spencer ........................................ 2

    B.   Factual Events Specific to Plaintiff Reed ............................................ 4

    C.   Factual Events Specific to Plaintiff CPR ............................................. 6

III.  PROCEDURAL BACKGROUND .............................................................. 7

IV.  STANDARD FOR SUMMARY JUDGMENT ........................................... 7

V.   ARGUMENT .............................................................................................. 9

    A.   The City Defendants Do Not Have a Duty to Protect Plaintiffs from the Alleged Criminal Acts of Third Parties ................................................................... 9

    B.   Plaintiffs Cannot Establish the Essential Elements of a *Monell* Claim Against the City .................................. 12

    C.   No Basis for Injunctive Relief ........................................... 18

    D.   Alternatively, Chief Kepley Should Be Dismissed ........................... 19

VI.  CONCLUSION ......................................................................................... 20

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- i -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

# TABLE OF AUTHORITIES

<u>Cases:</u>                                                                                                                        <u>Pages</u>

Anderson v. Liberty Lobby, Inc. (1986)
    477 U.S. 242 .......................................................................................... 7, 8

Celotex Corp. v. Catrett (1986)
    477 U.S. 317 .......................................................................................... 7, 8

City of Canton, Ohio v. Harris (1989)
    489 U.S. 378 ............................................................................................. 13

Daniels v. Williams (1986)
    474 U.S. 327 ............................................................................................. 12

Davis v. Fulton County, Arkansas (8th Cir. 1996)
    90 F.3d 1346 ............................................................................................. 11

De Shaney v. Winnebago County Department of Social Services (1988)
    489 U.S. 189 ................................................................................... 9, 10, 12

Doe v. Wright (8th Cir. 1996)
    82 F.3d 265 ............................................................................................... 11

Fairbank v. Wunderman Cato Johnson (9th Cir. 2000)
    212 F.3d 528 ............................................................................................... 8

Foy v. City of Berea (6th Cir. 1995)
    58 F.3d 227 ............................................................................................... 11

Gable v. City of Chicago (7th Cir. 2002)
    296 F.3d 531 ............................................................................................. 14

Gillette v. Delmore (9th Cir. 1992)
    979 F.2d 1342, cert. denied (1993) 510 U.S. 932 ........................................ 13

Guillory v. County of Orange (9th Cir. 1984)
    731 F.2d 1379 ........................................................................................... 13

Huffman v. County of Los Angeles (9th Cir. 1998)
    147 F.3d 1054 ........................................................................................... 10

In re Lewis (9th Cir. 1996)
    97 F.3d 1182 ............................................................................................... 8

Jones v. City of Carlisle (6th Cir. 1993)
    3 F.3d 945 ................................................................................................. 11

Kahin v. United States (S.D. Cal. 2000)
    101 F. Supp. 2d 1299 .................................................................................. 8

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- ii -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

Ketchum v. County of Alameda (9th Cir. 1987)
    811 F.2d 1243 ........................................................................................ 9

L.W. v. Grubbs (9th Cir. 1992)
    974 F.2d 119 ....................................................................................... 10

Luke v. Abbot (1997)
    954 F.Supp. 202 ................................................................................... 20

Kentucky v. Graham (1985)
    473 U.S. 159 ........................................................................................ 20

Mark v. Borough of Hatboro (3rd Cir. 1995)
    51 F.3d 1137 ....................................................................................... 11

Matsushita Elec. Indus. Co. v. Zenith Radio Corp. (1986)
    475 U.S. 574 .......................................................................................... 8

Monell v. Dep't. of Soc. Servs. (1978)
    436 U.S. 658 ................................................................................. 13, 19

O'Shea v. Littleton (1974)
    414 U.S. 488 ....................................................................................... 19

Pinder & Johnson (4th Cir. 1995)
    54 F.3d 1169 ....................................................................................... 11

Rutherford v. the City of Newport News, Virginia (E.D.Va. 1996)
    919 F.Supp. 885 ................................................................................. 11

Stevens v. Umstead (7th Cir. 1997)
    131 F.3d 697 ....................................................................................... 10

Van Ort v. Estate of Stanewich (9th Cir. 1996)
    92 F.3d 831 ......................................................................................... 11

Wang v. Reno (9th Cir. 1996)
    81 F.3d 808 ..................................................................................... 9, 10

Wood v. Ostrander (9th Cir. 1989)
    879 F.2d 583 ....................................................................................... 10

**Statutes:**

42 U.S.C. § 1983 ...................................................................................... 6, 20

FED. R. CIV. P. 56(c) ................................................................................... 7

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- iii -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs Cory Spencer, Diana Milena Reed, and Coastal Protection Rangers, Inc. (collectively, "Plaintiffs") complain that they have been prevented from access to and surfing at the beach in Lunada Bay in the City of Palos Verdes Estates by a group of local Palos Verdes Estates residents allegedly known as "The Lunada Bay Boys" ("LBB Defendants"). They assert that Defendant City of Palos Verdes Estates ("the City") and its Chief of Police Jeff Kepley, in his representative capacity ("Chief Kepley") (collectively, "City Defendants") have permitted the LBB Defendants to engage in a campaign of intimidation tactics against non-residents who want to use the beach at Lunada Bay, so as to deter them from using the beach at Lunada Bay.

The evidence shows that there is no genuine issue as to any material fact and that the City Defendants are entitled to judgment as a matter of law. First, Plaintiffs' remaining sole claim under Section 1983 fails because the Fourteenth Amendment does not impose an obligation upon public authorities to protect them from alleged third-party behavior. Section 1983 claims are designed to protect individuals from the abuses of government, not each other. Second, the Fourteenth Amendment does not transform every tort allegedly committed by a governmental entity into a constitutional violation. A municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. A plaintiff must show that an alleged constitutional violation was the product of a governmental policy, custom, or practice. Plaintiffs lack any evidence to meet this burden.

For the above reasons, as discussed in detail herein, Plaintiffs' sole claim against the City Defendants should be dismissed. In the alternative, the Court should issue an Order barring Plaintiffs from their claim for injunctive relief and dismiss Chief Kepley as redundant to the litigation.

///

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 1 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

## II.     FACTUAL BACKGROUND

### A.     Factual Events Specific to Plaintiff Spencer.

Before the age of 20, Spencer visited Lunada Bay on four or five occasions. [Separate Statement of Uncontroverted Facts ("SSUF") 1].  He never experienced intimidation, vandalism, or any other harmful act.  [SSUF Spencer 1].  After age 20, but before January 2016, Spencer visited Lunada Bay another four or five times. [SSUF Spencer 2].  No individual approached him or spoke to him, but he "believes" he experienced localism on one of the visits because there was "a group of guys at their local spot being locals".  [SSUF 2].

On January 29, 2016, Spencer decided to surf at Lunada Bay with a group of other surfers.  [SSUF 3].  Prior to the visit, he emailed Chief Kepley and a Police Captain to request extra police patrols of Lunada Bay.  [SSUF Spencer 4].  The extra police patrols were provided.  [SSUF 5].  Spencer recalls an unidentified individual telling him, "You can't surf here kook."[1]   [SSUF 6].  Spencer also recalled statements like "How many other places did you pass to get here to surf?" and "Why don't you fucking go home, you fucking kook."  [SSUF 7].  Another unidentified individual made similar comments.  [SSUF 8].

In the water, Spencer testified that an alleged unidentified LBB Defendant crossed surf boards with him and left a half-inch cut on his right wrist.  [SSUF 9]. Spencer believed the incident was intentional, but the purported LBB Defendant claimed that Spencer was paddling in the sun glare and that he had not seen Spencer.  [SSUF 10].  Spencer claimed to be fearful, but continued to surf at least one more wave before leaving the water because he was "getting a little ///

---

[1] "Kook" is a derogatory term within the surf community used toward someone who does not surf well, does not belong at the surf location, or just doesn't like the receiver of the word.

1  hypothermic" and his wrist was bleeding. [SSUF Spencer 11]. His companion,
2  Taloa, continued to surf. [SSUF 12].

3      Upon returning to the top of the Lunada Bay bluff, Spencer encountered five
4  or six police officers, three police vehicles, and a motorcycle. [SSUF 13]. His
5  requested extra patrol. [SSUF 5]. Spencer approached the officers to thank them
6  for showing up and to express his appreciation. [SSUF 14]. He told one of them
7  about his incident, including stating "[t]he guy is going to claim sun glare and
8  whatnot" caused the collision. [SSUF 14]. Spencer, a police officer himself, did
9  not tell the police officer that what happened was a crime. [SSUF 15]. He also did
10 not ask for a police investigation or even follow up on the matter. [SSUF 16].
11 Thereafter, he never communicated to anyone at the City about the incident. [SSUF
12 17]. Spencer's surf companion, Taloa, testified that the City police "ha[s] been
13 nothing but good to me. They have been there for us and I am so thankful and
14 grateful on that aspect in that matter." [SSUF 18].

15     Spencer returned to Lunada Bay in February not to surf, but to observe for
16 incidents, as well as to watch the other surfers' property. [SSUF 19]. He again
17 contacted the Police Department about his planned trip and remembers seeing two
18 or three police vehicles and two patrolmen and a sergeant. [SSUF 20]. He
19 remembers unidentified individuals (some driving by and some standing on the
20 bluffs) calling him "kook" and asking "what are you doing?" [SSUF 21]. The only
21 individual he recognized was Defendant Blakeman, who stood between 5 and 50
22 feet away filming him and the other surfers. [SSUF 22]. Spencer encountered no
23 other action that he viewed as harassment or violence. [SSUF 23]. There is no
24 evidence that he reported any of the incidents to the police present at Lunada Bay
25 on this visit.

26     On March 4, 2016, Spencer emailed Chief Kepley to thank him and the
27 Police Department for providing the extra police patrols. [SSUF 24].

28 ///

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 3 -                                    2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

In subsequent months, Spencer visited Lunada Bay between three to five times. [SSUF 25]. He observed unidentified individuals slowly drive by while using cell phones and then later observed more unidentified individuals showing up. [SSUF 26]. However, Spencer confirmed that nothing happened on these subsequent visits. [SSUF 26]. Spencer does not recall any police officer ever asking him where he lived. [SSUF 27].

### B.   Factual Events Specific to Plaintiff Reed.

Reed's first visit to Lunada Bay was on January 6, 2016. [SSUF 28]. She was there for two hours and no one harassed, intimidated or otherwise caused her or her property harm. [SSUF 29]. On January 29, 2016 (same date as Spencer's visit), Reed returned to Lunada Bay to surf with her boyfriend. [SSUF 30]. Unidentified individuals in automobiles drove around their vehicle and yelled "kooks", "you can't surf here" and profanities at them. [SSUF 31]. Other unidentified individuals videotaped them. [SSUF 31]. After descending to the beach, an unidentified individual purportedly called her a "whore" and then returned to yell profanities at them. [SSUF 32]. A police officer walked over and asked her what was going on. [SSUF 32]. Reed described the incident and he inquired whether she wanted to file a police report, which she did. [SSUF 32]. The police detained a suspect but informed Reed that because they did not overhear the words yelled, they could not arrest the individual. [SSUF 33]. The police counseled Reed on filing a citizen's arrest, including the possible civil ramifications if she were found wrong in making the arrest. [SSUF 34]. The police told Reed that the outcome would be the same whether she filed a police report or undertook a citizen's arrest (absent the civil liability exposure). [SSUF 35]. She declined to make a citizen's arrest and filed a report. Reed did not know whether the police officer asked where she was from. [SSUF 36].

///

///

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 4 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

On February 5, 2016, Reed returned to Lunada Bay.  [SSUF 37].  She could not recall whether police were present, but did remember her boyfriend surfed without incident.  [SSUF 38].

On February 13, 2016, Reed again returned to Lunada Bay.  [SSUF 39]. Spencer had separately gone to Lunada Bay on this date and, as noted above, requested and received extra police patrols.  Reed could not recall the specific chain of events, but remembers "various profanities of various instances".  [SSUF 40]. She also recalled a middle-aged male and teenage boy filming her and her boyfriend, attempting to block their path, and telling them they were "done". [SSUF 41].

At the base of the Lunada Bay, Reed was approached by Defendants Blakeman and Johnston.  [SSUF 42].  Reed testified they "rushed" her in a hostile manner and asked whether she wanted a beer.  [SSUF 42].  Blakeman got close to her face and filmed her.  [SSUF 42].  Johnston "opened a can of beer in a way that sprayed on [her] arm and camera."  [SSUF 42].  He also acted in a sexual manner toward her and another woman by "grunting and making – making moans and noises resembling [ ] an orgasm.  [SSUF 43].  He was thrusting and rubbing his torso in a sexual manner."  [SSUF 43].  Reed asked why she was being filmed and the alleged response was because she was sexy.  [SSUF 43].  Johnston allegedly told her he's "big enough to get the job done" while grunting and moaning.  [SSUF 43].  Reed attempted to call the police, but was unable to receive cell phone reception.  [SSUF 44].  In addition, Reed believes Johnston, while changing out of his wetsuit, intentionally permitted the towel wrapped around him to open such that he exposed his penis.  [SSUF 45].

Reed returned to the top of the bluff and approached a police officer to explain what had occurred.  [SSUF 46].  The officer listened and then escorted Reed back down the bluff to identify the men.  [SSUF 47].  They were gone. [SSUF 47].  The officer purportedly told Reed that the Police Department kept LBB

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE
4823-0346-1960.1
11317-242
- 5 -
2:16-cv-02129-SJO-RAO
CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

Defendants' photos and offered her an opportunity to review them.  [SSUF 48].  Reed became upset when she had difficulty scheduling an appointment to review the photos, which she was allegedly made to believe existed.  [SSUF 49].  In reality, the City does not maintain a LBB Defendants' photobook.  [SSUF 50].  The alleged delay was because an officer had to create a "six pack" photo lineup from prior known arrest photos during a time the City was combatting a residential burglary crime wave.  [SSUF 51].

Reed ultimately identified Defendant Johnston from the police six-pack and an arrest was made.  [SSUF 52].  The Police Department sent a police report to the District Attorney, who declined to press criminal charges.  [SSUF 53].

Reed returned to Lunada Bay at least twice since February 13, 2016.  [SSUF 54].  She claims to have been harassed on each visit, but does not recall particulars beyond being called a "bitch", being photographed and recorded, and told she should not be there and to leave.  [SSUF 55].  She did not recall whether she reported any of these incidents.  [SSUF 55].  Reed recalls that on at least one other subsequent visit she encountered no harassment.  [SSUF 56].

## C.   Factual Events Specific to Plaintiff CPR.

CPR makes no specific allegations nor does it provide any facts to support a claim for violation of Equal Protection under Section 1983.  [Docket No. 1, *in passim*].  CPR appears to base its claim as a representative of others, which is impermissible for a 42 U.S.C. § 1983 claim.  A representative of CPR submitted a declaration in support of the motion for class certification; however, that declaration did not allege any harm specific to the declarant or CPR.  [SSUF 57].  Rather, the declaration simply made broad assertions about localism and access to Lunada Bay.  CPR failed to delineate any specific harm to the entity or anyone associated with the entity.  This makes little sense, since CPR has maintained that it has standing to sue the City Defendants for violations of Equal Protection in response to the City Defendants' discovery requests.

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 6 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

III.   **PROCEDURAL BACKGROUND**

Plaintiffs' class action complaint was filed on March 29, 2016.  [Docket No. 1].  The complaint alleged three causes of action against the City Defendants, including for violation of the Equal Protection Clause of the Fourteen Amendment to the United States Constitution, the Privileges and Immunities Clause of Article IV of the United States Constitution, and the various provisions of the California Coastal Act.   [Docket No. 1].   On July 11, 2016, this Court issued an Order granting the City Defendants' Motion to Dismiss the Privileges and Immunities and the California Coastal Act claims.  [Docket No. 84].

On February 21, 2017, this Court issued an Order denying Plaintiffs' Motion for Class Action Certification.   [Docket No. 225].   On or about March 7, 2017, Plaintiffs filed a Petition for Permission to Appeal with the United States Court of Appeals for the Ninth Circuit under Federal Rule 23(f).   The Petition was summarily denied. [Glos Decl., ¶ 8].   Trial in is matter is set for November 7, 2017.

IV.   **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(c).  Judgment for the moving party must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 250.

The party seeking summary judgment bears the initial responsibility of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323.  This burden may be met "merely by showing –

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 7 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

1   that is, pointing out through argument – the absence of evidence to support

2   plaintiff's claim." *Fairbank v. Wunderman Cato Johnson* (9th Cir. 2000) 212 F.3d

3   528, 532.  In other words, the moving party does not need to produce any evidence

4   or prove the absence of a genuine issue of material fact when the nonmoving party

5   bears the burden of proving the claim or defense.  *Celotex Corp., supra,* 477 U.S. at

6   325.

7        Once the moving party has met its initial burden, Rule 56(e) requires the

8   nonmoving party having the ultimate burden of proof to go beyond the pleadings

9   and identify facts which show a genuine issue for trial.  *Id.* at 531.  The nonmoving

10  party must present evidence, and may not rely upon the mere allegations or denials

11  of its pleadings.  *Id.*  Conclusory arguments unsupported by factual statements or

12  evidence do not meet this burden.  *In re Lewis* (9th Cir. 1996) 97 F.3d 1182, 1187.

13  Moreover, "[t]he mere existence of a scintilla of evidence in support of the

14  [nonmoving party]'s position will be insufficient; there must be evidence on which

15  the jury could reasonably find for the [nonmoving party]."  *See Anderson v. Liberty*

16  *Lobby, Inc.* (1986) 477 U.S. 242, 252; *accord Matsushita Elec. Indus. Co. v. Zenith*

17  *Radio Corp.* (1986) 475 U.S. 574, 586 ("[O]pponent must do more than simply

18  show that there is some metaphysical doubt as to the material facts.").  Further,

19  "[o]nly disputes over facts that might affect the outcome of the suit … will properly

20  preclude the entry of summary judgment [and] [f]actual disputes that are irrelevant

21  or unnecessary will not be counted."  *See Anderson, supra,* 477 U.S. at 248.

22       A dispute is "genuine" only if the evidence is such that a reasonable jury

23  could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248; *Kahin*

24  *v. United States* (S.D. Cal. 2000) 101 F. Supp. 2d 1299, 1302.

25  ///

26  ///

27  ///

28  ///

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 8 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

## V. **ARGUMENT**

### A. **The City Defendants Do Not Have a Duty to Protect Plaintiffs from the Alleged Criminal Acts of Third Parties.**

In *De Shaney v. Winnebago County Department of Social Services* (1988) 489 U.S. 189, the guardian of a child brought an action under section 1983 after the Department of Social Services failed to take action despite its knowledge that the child's parents were abusive. The Court held that the due process clause of the Fourteenth Amendment does not impose an obligation upon public authorities to protect children from parental abuse, even when they know that a child is threatened with harm and have taken some protective measures. *Id.* at 196. Relying upon the language, history, and purpose of the due process clause, the Court held that the due process clause protected people from abuses of government power; "It did not ensure that the State protected them from each other." *Id.* The Court therefore held that the due process clause does not impose upon a state an affirmative obligation to protect an individual from the harmful conduct of another, even if that conduct itself works a deprivation of life, liberty or property. *See also, Ketchum v. County of Alameda* (9th Cir. 1987) 811 F.2d 1243, 1247 (as a general rule, members of the public have no constitutional right to sue state employees who fail to protect them from harm inflicted by third parties).

The only two exceptions that exist to the general rule that there is no constitutional duty on the part of the government officials to protect members of the public against harm inflicted by third parties are when the government assumes the constitutional duty to protect a person and it (1) creates a "special relationship" with that person ["the 'special relationship' exception"]; or (2) affirmatively places that person in danger ["the 'danger creation' exception"]. *See Wang v. Reno* (9th Cir. 1996) 81 F.3d 808, 818. Neither exception applies in this case.

In *De Shaney*, the Court declined to find that a special relationship existed as a result of the State's knowledge that a danger existed with respect to the child or as

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 9 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

1   a result of the State's expression of an intent to help him.  Instead, the Court held

2   that a "special relationship" only arises when the person in danger is taken into

3   custody:

> The affirmative duty to protect arises not from the States' knowledge
> of the individual's predicament or from its expressions of intent to help
> him, but from the limitations which it has imposed on his freedom to
> act on his own behalf.

7   *De Shaney, supra,* 489 U.S. at 197.

8       Unlike situations in which a governmental entity merely has knowledge that

9   an individual may be in danger, "when the State takes a person into its custody and

10  holds him there against his will, the Constitution imposes some responsibility for

11  [that person's] safety and general well-being."  *See Wang, supra,* 881 F.3d at 818,

12  *quoting, De Shaney,* 489 U.S. at 199-200.  No such situation exists in this case.

13      The second exception is likewise inapplicable because, as addressed below,

14  the City had no policy, custom or practice encouraging violence against Plaintiffs.

15  "In order for the state created danger theory to be available, the 'state [must]

16  affirmatively place a particular individual in a position of danger the individual

17  would not have otherwise faced…."  *See Stevens v. Umstead* (7th Cir. 1997) 131

18  F.3d 697, 705.  "The 'danger creation' basis for a claim … necessarily involves

19  affirmative conduct on the part of the state in placing the plaintiff in danger."  *See*

20  *L.W. v. Grubbs* (9th Cir. 1992) 974 F.2d 119, 121.  "When 'danger creation' forms

21  the basis of the claim, it necessarily involves proof of affirmative conduct on the

22  part of the state in placing the plaintiff in danger."  *See Wood v. Ostrander* (9th Cir.

23  1989) 879 F.2d 583, 588-90.  "[T]he danger-creation plaintiff must demonstrate, at

24  the very least, that the state acted affirmatively and with deliberate indifference in

25  creating a foreseeable danger to the plaintiff…."  *See Huffman v. County of Los*

26  *Angeles* (9th Cir. 1998) 147 F.3d 1054, 1061.

27  ///

28  ///

4823-0346-1960.1
11317-242

- 10 -                              2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

Courts across the country are in accord.  *See Mark v. Borough of Hatboro* (3rd Cir. 1995) 51 F.3d 1137, 1153 ("When the alleged unlawful act is a policy directed at the public at large, the rationale for the ["danger creation"] rule disappears."); *Jones v. City of Carlisle* (6th Cir. 1993) 3 F.3d 945, 949 ("The proper analysis … is whether there is some showing that the victim, as distinguished from the public at large, … faces a special danger…"); *Doe v. Wright* (8th Cir. 1996) 82 F.3d 265, 268 (For the "danger creation" exception to apply, the plaintiff must show that that particular plaintiff "as distinguished from the public at large" faced a special danger which was caused by the State); *Davis v. Fulton County, Arkansas* (8th Cir. 1996) 90 F.3d 1346, 1351 ("For such a duty to arise, the actions of the State must create a unique risk of harm to the plaintiff that is greater than the risk faced by the general public.").  There is no evidence that the City Defendants put any Plaintiff in danger.

Moreover, a governmental entity may only be liable under the "danger creation" theory if it is established that the governmental entity's affirmative acts reduced the plaintiffs' ability to protect themselves.  "Mere knowledge of danger to a plaintiff does not create an affirmative duty to act on his own behalf." *Foy v. City of Berea* (6th Cir. 1995) 58 F.3d 227, 231.  *See also*, *Pinder & Johnson* (4th Cir. 1995) 54 F.3d 1169 (Knowledge of threats by itself insufficient to create basis for liability).  Plaintiffs have no evidence that the City affirmatively placed them in a position of danger that effectively stripped them of an ability to defend themselves.

Further, proximate cause is a prerequisite to the existence of the "danger creation" exception.  A plaintiff must establish not only that the state's affirmative actions were "but for" cause of that plaintiff's alleged injuries, but also that the actions were the proximate cause of the injuries.  "[T]he conduct by the state actor must directly cause the harm to the plaintiff by his 'immediate interaction' with the plaintiff." *Rutherford v. the City of Newport News, Virginia* (E.D.Va. 1996) 919 F.Supp. 885, 895.  In *Van Ort v. Estate of Stanewich* (9th Cir. 1996) 92 F.3d 831,

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 11 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

the victims of an assault and attempted robbery by an off-duty San Diego County
sheriff's deputy sued the county under Section 1983.  The Court held that,

> pointing to a municipal policy action or inaction as a 'but-for' cause is
> not enough to prove a causal connection… Rather, the policy must be
> the proximate cause of the section 1983 injury.

*Id.* at 837.

No act or omission to act by the City Defendants contributed to Plaintiffs'
alleged injuries.   Accordingly, the Constitution does not impose upon the City
Defendants the responsibility for ensuring Plaintiffs' safety and general well-being
against third parties and the exceptions to *De Shaney* do not apply.

**B.**   **Plaintiffs Cannot Establish the Essential Elements of a *Monell*
Claim Against the City.**

Plaintiffs Section 1983 claim in the Complaint asserts that "[b]y knowingly
allowing the LUNADA BAY BOYS to exclude non-residents from Lunada Bay, a
public beach, through violence, harassment, vandalism, threats, and intimidation,
and by ignoring non-residents' and Plaintiffs' complaints of such exclusion and
violence, [the City], as a municipality acting under color of law, has created an
unlawful and irrational policy, custom, or practice of exclusion of others on the
basis of their status as non-residents."  [Docket No. 1, ¶ 62].  It is further claimed
that Chief Kepley "enforces this fundamentally unfair policy, custom, or practice of
exclusion of non-residents by irrationally and arbitrarily discriminating against
Plaintiffs and in favor of [the City] and the LUNADA BAY BOYS in violation of
Plaintiffs' right to equal protection of the laws."  [Docket No. 1, ¶ 63].  The City's
purported policy, custom or practice allegedly allows the LBB Defendants to
threaten, intimidate, harass, and exclude non-residents from Lunada Bay bears no
rational connection to public health, safety, or welfare.  [Docket No. 1, ¶ 64].

However, the Due Process Clause does not transform every tort allegedly
committed by a state actor into a constitutional violation.  *See Daniels v. Williams*

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 12 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

1   (1986) 474 U.S. 327, 335-336.  In the landmark decision *Monell v. Dep't. of Soc.*

2   *Servs.* (1978) 436 U.S. 658, 691, the United States Supreme Court established that

3   local government bodies are not liable for damages under Section 1983 "unless

4   action pursuant to official municipal policy of some nature caused a constitutional

5   tort."   The Court "conclude[d] that a municipality cannot be held liable solely

6   because it employs a tortfeasor – or, in other words, a municipality cannot be held

7   liable under § 1983 on a *respondeat superior* theory."  *See Monell, supra,* 436 U.S.

8   at 691 (emphasis omitted).  *See also, Guillory v. County of Orange* (9th Cir. 1984)

9   731 F.2d 1379, 1381.    Thus, a government entity "itself must cause the

10  constitutional deprivation".  *See Gillette v. Delmore* (9th Cir. 1992) 979 F.2d 1342,

11  1246, cert. denied (1993) 510 U.S. 932.  Because liability of a governmental entity

12  must rest on its actions, not the actions of its employees, a plaintiff must go beyond

13  the *respondeat superior* theory and demonstrate the alleged constitutional violation

14  was the product of a policy or custom of the entity.  *City of Canton, Ohio v. Harris*

15  (1989) 489 U.S. 378, 385.

16        To maintain a Section 1983 claim against a local governmental entity, a

17  plaintiff must establish the requisite culpability (a policy or custom attributable to

18  municipal policymakers) and the requisite causation (the policy or custom as the

19  "moving force" behind the constitutional deprivation).  *Monell, supra,* 436 U.S. at

20  691-694.  There are three ways to meet the policy, practice, or custom requirement

21  for municipal liability under Section 1983:  (1) the plaintiff may prove that a public

22  entity employee committed the alleged constitutional violation pursuant to a formal

23  policy or a longstanding practice or custom, which constitutes the standard

24  operating procedure of the local government entity, (2) the plaintiff may establish

25  that the individual who committed the constitutional tort was an official with final

26  policy-making authority and that the challenged action itself thus constituted an act

27  of official government policy, or (3) the plaintiff may prove that an official with

28  final policy-making authority ratified a subordinate's unconstitutional decision or

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 13 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

1    action.  *Gable v. City of Chicago* (7th Cir. 2002) 296 F.3d 531, 537.  Plaintiffs

2    cannot establish the elements necessary to meet any of the three methods to find

3    municipal liability under Section 1983.

4           First, Plaintiffs are unable to identify any formal policy prohibiting beach

5    access or permitting harassment.  In fact, City Municipal Code section 9.16.030

6    prohibits blocking the access to any City beach.  It provides:

7           A.     No person shall stand, sit, lie, or congregate on any path, trail, or
8           other way providing access to or from any beach in such a manner as
            to interfere with or impede the free flow of travel along such
9           accessway.

10
11          B.     Unless the prior consent of the city is first received, no person
            shall place, throw, leave, keep or maintain any object of any type upon
12          any path, trail, or other way which provides access to or from any
            beach.
13

14   [SSUF 58].

15          City Municipal Code section 9.16.010 also requires surfers (and others) to

16   engage in surfing with due regard to others, including but not limited to

17   "accommodating other persons utilizing the beach and/or water to the extent

18   feasible."  [SSUF 59].  Chief Kepley testified that police officers are directed to

19   enforce the municipal code.  [SSUF 60].  In addition, the City also has an anti-

20   harassment policy.  [SSUF 61].  It takes allegations of intimidation very seriously

21   and responds to it.  [SSUF 62].

22          Second, there is no evidence of a custom or practice to deny beach access or

23   permit harassment.  In fact, the evidence shows just the opposite - a custom and

24   practice by the Police Department to increase law enforcement activities to try and

25   control localism in the year before Plaintiffs alleged incidents.

26   ///

27   ///

28   ///

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 14 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

Chief Kepley joined the Police Department in June 2014.[2]  [SSUF 63].  In or around May 2015, Chief Kepley became aware of a website published video that showed several reporters being harassed at Lunada Bay.  [SSUF 65].  He initiated a criminal investigation and assigned extra police patrols to patrol Lunada Bay.  [SSUF 65].  The extra police patrols continued from approximately May 2015 and remained in place at the time of Plaintiffs alleged personal incidents at Lunada Bay.  [SSUF 66].  There have been more than 400 or 500 police patrols of Lunada Bay, whereby a police officer parks at the top of the bluff, exits a police vehicle and observes the surf below for any criminal activity, as well as to show a police presence and provide a deterrent.  [SSUF 67].  In addition, police officers descend the bluff and patrol the beach.  [SSUF 68].

In addition to extra police patrols, Chief Kepley, who was previously employed by a landlocked city, educated himself on the rumors and claims that localism at Lunada Bay had existed for as many as 50 years.  [SSUF 69].  The City also spent a significant amount of time before, during and after the video posting to understand localism, including collecting information from various sources and holding meetings.  [SSUF 70].  Chief Kepley learned that although the Police Department had worked for years to address and combat localism, the public perception was that it was tolerated.  [SSUF 71].

On May 15, 2015, Chief Kepley sent a memorandum to the City Mayor and Council regarding localism in Lunada Bay.  [SSUF 72].  He identified measures taken by the Police Department in the preceding past several years, including:  (1) extra patrols with uniformed officers on high surf days; (2) utilizing ATVs to patrol the cliff's edge; (3) having officers dress in plain clothes and drive unmarked vehicles to observe and interact with people along the cliffs and bluffs; (4)

---

[2]    Prior to employment Chief Kepley did not know anyone at the City or in the Police Department other than a former lieutenant, who had been deceased for a number of years, and he had never lived in the City.   [SSUF 64].

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 15 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

undercover operations; and (5) boat patrols in Lunada Bay.  [SSUF 73].   In addition, Chief Kepley spoke about creating a police presence on the water by replacing the City's old ocean patrol boat and establishing Parkland Rangers as another resource to patrol and maintain a visible presence.  [SSUF 74].  Although Chief Kepley had not been employed at the City back then, he was now and intended to change the perception, address localism, protect the public and ensure access to Lunada Bay remained open and free of harassment.  [SSUF 75].

Again prior to Plaintiffs' incidents, Chief Kepley directed the police captains to actively engage the surfers to express the City's position that Lunada Bay was a public beach, everyone was expected to be civil, and the City would not tolerate the type of harassment seen in the published video.  [SSUF 76].  The Police Department then began to make a number of regular contacts with surfers at Lunada Bay.  [SSUF 77].  Chief Kepley also made a public announcement that he hoped to make an arrest of one of the harassing individuals in the video.  [SSUF 78].  He wanted the publicity from an arrest to change perceptions and show the public that improper behavior at Lunada Bay would not be tolerated.  [SSUF Kepley 79].  In fact, from May 2015 until present, Chief Kepley believes he has communicated in "101 conversations" with Police Department personnel that the City did not tolerate localism.   [SSUF Kepley 80].

Chief Kepley also reached out to other law enforcement agencies in other beach cities to discuss best practices and to collaborate on surf localism challenges.  [SSUF 81].  He even put together an undercover operation with assistance from a different law enforcement agency, but it was compromised when surfers found out about it.  [SSUF 82].  The City Manager also reached out to other city managers on how they deal with issues of public access to beaches.  [SSUF 83].

The City also conducted a "listening tour" to understand the localism issues and to address them.  One of the meetings requested by the City was with the Surf Rider Foundation to understand their perspective on the localism issues and to

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 16 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

determine how to work to address the issue.  [SSUF 84].  The City also requested and met with the Coastal Commission regarding the structures at the foot of the Lunada Bay bluff.[3]  [SSUF 85].  The City followed up with both the Surf Rider Foundation and the Coastal Commission.  [SSUF 87].  In addition, the City Manager visited Lunada Bay on a number of occasions and met with surfers there to understand the issues.  [SSUF 88].  The City also met with the Lunada Bay Homeowner's Association.  [SSUF 89].  The City also initiated contact with Heal the Bay as part of its "listening tour" to understand perspectives, perceptions, and history on the issues.  [SSUF 90].  Chief Kepley attended many, if not all these meetings.  [SSUF 91].

Again prior to Plaintiffs' incidents, the City had started an educational campaign about localism.  [SSUF 92].  Hundreds of cardboard fliers encouraging surfers or others to feel comfortable and to report crimes or incidents that may have occurred in surfing areas were distributed by police officers at Lunada Bay and around the City.  [SSUF 93].  The City also parked a patrol car in Lunada Bay with a LED display message in the rear window requesting anyone with information, or anyone victimized, or otherwise encountering an incident, to report it.  [SSUF 94].  The City also posted content on its website stating the City does not tolerate localism.  [SSUF 95].  The website includes a directory and permits individuals to send e-mails to anyone at the City that that individual believes should receive their message or complaint.  [SSUF 96].  If individuals call the City with complaints, the City receptionist will help in determining where to direct a complaint.  [SSUF 97].

On or about December 31, 2015, Chief Kepley posted a message on the social media website Next Door about the City's efforts to address localism.  [SSUF 98].  A couple months later, on or about February 8, 2016, the City

---

[3]     The Coastal Commission informed the City that it could permit or remove the structures.  [SSUF 86].  The City removed them in November 2016.

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 17 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

1  developed and later posted a statement on its website about localism, the Police

2  Department's investigation and evaluation of the situation and the potential for

3  increased police patrols at the beach areas.  [SSUF 99].

4      A number of the above-described events (as well as Plaintiff Spencer and

5  Reed's alleged incidents discussed under the factual background above) took place

6  during a time the City was experiencing a substantial increase in residential

7  burglaries by organized gangs or gang-affiliated criminal group from south Los

8  Angeles.  [SSUF 100].  It is typical for the City to have zero to three burglaries per

9  month, but in December 2015 the City experienced 20 to 25 burglaries.  [SSUF

10 101].  In fact, a number of residents complained about the amount of law

11 enforcement resources allocated toward patrolling Lunada Bay, as well as the tough

12 stance Chief Kepley took against local surfers harassing or intimidating other

13 surfers.  [SSUF 102].  Nonetheless, the City directed law enforcement resources to

14 ensuring access to Lunada Bay and preventing harassment.  Chief Kepley opined

15 that given so few incidents at Lunada Bay and the burglary spree in the City that the

16 Police Department efforts were appropriate and reasonable in scope and size.[4]

17 [SSUF 103].

18      Third, there is no evidence that any City official with final policy-making

19 authority ratified any subordinate's unconstitutional decision or action.  In fact,

20 there is no evidence that any subordinate acted in an unconstitutional manner to

21 even potentially result in ratification.

22      **C.    No Basis for Injunctive Relief.**

23      An injunction is only available when there is a real or immediate threat that

24 Plaintiffs will be harmed again, which is not present in this case.  To obtain an

25 injunction, Plaintiffs must show they are in immediate danger of sustaining some

26 _____

27 [4]    The Police Department has 25 full-time sworn police officers.  [SSUF 104].
In October 2016 the City had six reserve police officers.  [SSUF 105].  There are 12

28 non-sworn officers (or police service officers). [SSUF 106].

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 18 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

1   direct injury as the result of the challenged official conduct, and that the injury must

2   be real and immediate, not conjectural or hypothetical.  In fact, "past exposure to

3   illegal conduct does not in itself show a present case or controversy regarding

4   injunctive relief … if unaccompanied by any continuing present adverse effects."

5   *See O'Shea v. Littleton* (1974) 414 U.S. 488, 496.

6       Plaintiffs are legally precluded from obtaining injunctive relief.  Plaintiffs

7   seek an injunction requiring the City to investigate complaints against the LBB

8   Defendants, and prosecute the complaints if the LBB Defendants "harass, attack,

9   injure, threaten, intimidate, extort, or coerce visiting beachgoers to Lunada Bay".

10  Such a requirement is antithetical to injunctive relief requirements.  The position

11  fails for two primary reasons.  First, neither the City Defendants nor any City-

12  affiliated persons or entities prosecute criminal actions.  The City Defendants will

13  (and do) *investigate* complaints and incidents, and then submit their investigative

14  findings to a district attorney.  It is the district attorney who then holds discretion to

15  either prosecute the matter or decline to prosecute.  Second, Plaintiffs fail to show

16  the City has failed to investigate complaints to warrant such an injunction.  In fact,

17  evidence and Plaintiffs' own statements demonstrate that the City already

18  investigates all complaints and incidents that occur in and around Lunada Bay.

19  Thus, to the extent that Plaintiffs seek injunctive relief, such drastic relief is not

20  warranted by the facts of this case and is also precluded based on an application of

21  applicable legal standards.

22       **D.     Alternatively, Chief Kepley Should Be Dismissed**

23       Chief Kepley and the City are named defendants in the Equal Protection

24  claim.  When both a local government officer and the government entity are named

25  in an action under Section 1983, and the government officer is named in his official

26  capacity, the officer is a redundant defendant and should be dismissed.  The proper

27  *Monell* defendant in a civil rights case is the local government entity, and not the

28  local government officer sued in his official capacity on behalf of the local

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 19 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

government entity.  *See Luke v. Abbot* (1997) 954 F.Supp. 202; *Kentucky v. Graham* (1985) 473 U.S. 159, 167 n. 14.  The City is a defendant in this case, therefore Chief Kepley is redundant as to entity liability and dismissal is proper.

## VI.     **CONCLUSION**

For the foregoing reasons, the City Defendants respectfully request that the Court enter summary judgment in their favor and against Plaintiffs on the Third Cause of Action entitled 42 U.S.C. § 1983 – Equal Protection.  In the alternative, the City Defendants request an Order denying injunctive relief and Chief Kepley respectfully requests the Claim be dismissed against him in his representative capacity.

Dated:  July 14, 2017                     KUTAK ROCK LLP

                                          By: /s/ *Christopher D. Glos*
                                              Edwin J. Richards
                                              Antoinette P. Hewitt
                                              Christopher D. Glos
                                              Rebecca L. Wilson
                                              Attorneys for Defendants
                                              CITY OF PALOS VERDES ESTATES
                                              and CHIEF OF POLICE JEFF KEPLEY

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4823-0346-1960.1
11317-242

- 20 -

2:16-cv-02129-SJO-RAO

CITY & CHIEF KEPLEY'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION