Mark C. Fields (#100668)
Law Offices of Mark C. Fields, APC
333 So. Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 617-5225
Fax: (213)629-4520
Email: fields@markfieldslaw.com

Attorney for Defendants
N.F. and Angelo Ferrara

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation;<br><br>     Plaintiffs,<br><br>  v.<br><br>LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON aka JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N.F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1 – 10,<br><br>     Defendants. | Case No. 2:16-cv-02129-SJO-RAO<br><br>Assigned to District Judge:<br>Hon. S. James Otero; Courtroom: 10C @ 350 W. First Street, L.A., CA 90012<br><br>Assigned Discovery:<br>Magistrate Judge: Hon. Rozella A. Oliver<br><br>**DECLARATION OF MARK C. FIELDS IN SUPPORT OF DEFENDANT ANGELO FERRARA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Notice, Motion and Points and Authorities For Partial Summary Judgment; [Proposed] Separate Statement of Uncontroverted Facts; [Proposed] Order]<br><br>Date:  August 21, 2017<br>Time:  10:00 a.m.<br>Ctrm:  10C; Hon. S. JAMES OTERO<br><br>Complaint Filed: March 29, 2016<br>Trial:     November 7, 2017 |

# DECLARATION OF MARK C. FIELDS

I, Mark C. Fields, do hereby declare and state as follows:

1.      I am an attorney duly admitted to practice in all courts of the State of California. I am a member of Law Offices Of Mark C. Fields, APC, attorney of record for Angelo Ferrara. I submit this Declaration in support of the Motion by Angelo Ferrara for Partial Summary Judgment. I have personal knowledge of the following facts, and could and would competently testify thereto.

2.      Please find attached hereto as Exhibit A true and correct copies of select excerpts of the deposition transcript of Plaintiff Cory Eldon Spender's deposition conducted on October 11, 2016.

3.      Please find attached hereto as Exhibit B true and correct copies of select excerpts of the deposition transcript of Plaintiff Diana Milena Reed's deposition conducted on October 24, 2016.

4.      Please find attached hereto as Exhibit C true and correct copies of select excerpts of the deposition transcript of Plaintiff Diana Milena Reed's deposition conducted on October 25, 2016.

5.      Pursuant to Local Rule 7-3, I meet on July 14, 2017 with Plaintiffs' counsel Kurt Franklin, Samantha Wolff, and Vic Otten and discussed the substance of this Motion and potential resolution. Also participating were other counsel for other of the Individual Defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on July 24, 2017 at Los Angeles, California.

 /s/ Mark C. Fields
Mark C. Fields

# EXHIBIT A

1　　　　　　　UNITED STATES DISTRICT COURT
2　　　　　　CENTRAL DISTRICT OF CALIFORNIA
3　　　　　　　　WESTERN DIVISION
4
5　CORY SPENCER, an individual;　) Case No.
　　DIANA MILENA REED, an　　　　) 2:16-cv-02129-SJO-RAO
6　individual; and COASTAL　　　)
　　PROTECTION RANGERS, INC., a　)
7　California non-profit public )
　　benefit corporation,　　　　 )
8　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiffs,　　)
9　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　 )
10　　　　　　　　　　　　　　　 )
　　LUNADA BAY BOYS; THE　　　　 )
11　INDIVIDUAL MEMBERS OF THE　　)
　　LUNADA BAY BOYS, including　 )
12　but not limited to SANG LEE, )
　　BRANT BLAKEMAN, ALAN JOHNSTON )
13　aka JALIAN JOHNSTON, MICHAEL )
　　RAE PAPAYANS, ANGELO FERRARA, )
14　FRANK FERRARA, CHARLIE　　　　)
　　FERRARA and N.F.; CITY OF　　 )
15　PALOS VERDES ESTATES;　　　　 )
　　CHIEF OF POLICE JEFF KEPLEY, )
16　in his representative　　　　 )
　　capacity; and DOES 1-10,　　 )
17　　　　　　　　　　　　　　　 )
　　　　　　　　　Defendants.　　)
18　_____)
19　　　　　DEPOSITION OF CORY ELDON SPENCER
20　　　　　　　Los Angeles, California
21　　　　　　Tuesday, October 11, 2016
22
23　Reported by:
24　Carmen R. Sanchez
25　CSR No. 5060

　　　　　　　　　　　　　　　　　　　　　　Page 1

Exhibit A, Page 4

1       A     Yes.

2       Q     Okay.

3            How many times?

4       A     I can't recall a specific number, but I

5 can tell you that, of course, you see it in magazines.

6 You want to see it in person; and, you know, you want

7 to go and investigate, I guess, for lack of a better

8 term; so, you just drive up and check it out.

9       Q     Are you able to estimate for me how many

10 times you went to Lunada Bay before you turned 20?

11       A     Oh, before I turned 20?  If I were to

12 give you an estimation, probably four to five times.

13       Q     Okay.

14            During any of the four or five times you

15 went there before you turned 20, did you experience

16 anything that made you fearful of Lunada Bay?

17     MR. FRANKLIN:  Vague and ambiguous.

18     THE WITNESS:  Fearful?  Just going there I was

19 in fear.  Just driving up the Palos Verdes Peninsula

20 road, you know, or whatever road it is to get up there,

21 you're a little afraid because you've heard stories.

22     MS. HEWITT:  Okay.

23       Q     During the four or five times you went

24 to Lunada Bay before you turned 20, did you experience

25 anything that made you fearful of Lunada Bay?

Hahn & Bowersock, A Veritext Company
800.660.3187

```
 1          A       Let me back up.

 2          Q       Sure.

 3          A       I had my boards each time but ...

 4          Q       When you were -- before you were 20?

 5          A       Yes.

 6          Q       Okay.  So you had your boards, but you

 7  didn't surf?

 8          A       Correct.

 9          Q       That's fine.  And between that time and

10  January 2016, did you ever surf at Lunada Bay?

11          A       No.

12          Q       Okay.

13                  Between those four to five times and

14  January 2016, did you go to Lunada Bay?

15          A       Yes.

16          Q       Okay.

17                  About how many times?

18          A       Four to five.

19          Q       Between the time you were 20 and the

20  time January 2016?

21          A       Oh, oh, I'm sorry.

22          Q       That's okay.

23          A       I thought we were back.

24          Q       No.

25          A       How many times after I was 20 and, then,
```

Page 64

```
1    on the board or something like that, and I don't know
2    who that was.  From what I remember, I don't think they
3    were currently a member of them, but they used to be.
4    I don't remember who it was.
5         .Q    Okay.
6               Put that right to the side because I'm
7    going to ask you some more questions about this E-mail.
8         A    Which one?
9         Q    The one we just looked at.  Yeah, put
10   that off, because I'm going to come back to that.
11   Going back real briefly to the complaint on page 13,
12   following the February 2016 visit to Lunada Bay, did
13   you ever return to Lunada Bay and attempt to surf?
14        A    No.
15        Q    Did you ever return to Lunada Bay and --
16   at all after that time?
17        A    I have, yes.
18        Q    All right.
19              How many times?
20        A    Anywhere from three to five.
21        Q    Okay.
22              On each of those visits, did you go down
23   to the beach?
24        A    No.  Up on the bluff only.
25        Q    Okay.
```

Page 170

Exhibit A, Page 7

```
 1                          EXAMINATION

 2   BY MR. FIELDS:

 3          Q      My name is Mark Fields.   I represent

 4   Angelo Ferrara and N.F.  Let's talk about

 5   Angelo Ferrara first.  Of all the types of wrongful

 6   conduct that you've alleged, whether it's physical

 7   harassment, yelling, screaming, throwing dirt,

 8   videoing, or intimidating in any fashion, are you aware

 9   of any incidents where Angelo Ferrara has done that?

10          MR. FRANKLIN:  Vague and ambiguous; compound.

11          THE WITNESS:  Well, I mean, you know, I don't

12   know specifically quite how to answer that in

13   specifics, other than to say that, you know, he's been

14   identified as a Bay Boy through investigation counsel's

15   done; and whether or not he's part of that concerted

16   effort that I spoke about earlier today, either on the

17   phone, if he was on the other end of the phone, I don't

18   know if he's one of the Bay Boys that contributed to

19   any of that.

20   BY MR. FIELDS:

21          Q      So you have no personal knowledge of

22   that, of Angelo engaging in any of those activities?

23          A      Well, like I said, I don't know if he

24   was one on the phone or on the other end of the line

25   that contributed, you know, to when they would show up

                                              Page 217
```

```
 1    and get in your face with a video or yell at you.  I
 2    don't know if he was one that would show up.  I don't
 3    know.
 4             Q       Would you recognize him if you saw him?
 5             A       I would not.
 6             Q       How about N.F.? Do you have any
 7    knowledge, personal knowledge, of him engaging in any
 8    of those types of activities you've alleged?
 9             A       Again, my same answer.
10             Q       Now, going beyond personal knowledge,
11    other than what you've learned from your counsel, have
12    you had any discussions with anyone else regarding any
13    type of wrongful activity by Angelo Ferrara?
14             A       All I can tell you is this, that on more
15    than one occasion even in uniform on duty I've had
16    people come up to me -- I don't know who they are.  The
17    last time was on a burglary call in a perimeter where I
18    was standing on a street corner.  Somebody came up to
19    me on a bike.  I don't know who he was.  Thanked me up
20    and down.  As, you know, I'm telling the guy, "Hey, I'm
21    busy here," you know, he's thanking me for what I've
22    been doing on the lawsuit.  This has been going on too
23    long.  All of those guys you got named in there are --
24    and even more are dirty involved in it.
25             Q       Do you know who?
```

Page 218

Exhibit A, Page 9

```
 1           A       That was the last time, and there's been
 2     a few of those.
 3           Q       Do you know the names of any of those
 4     people who gave you those "kudos," for lack of a better
 5     word?
 6           MR. FRANKLIN:  Asked and answered.
 7           THE WITNESS:  I do not.
 8     BY MR. FIELDS:
 9           Q       Of the people who gave you those kudos
10     and said, "Thank you for doing this.  The Bay Boys are
11     bad," however you want to phrase it, did any of them
12     specifically mention Angelo Ferrara?
13           A       That's a name that keeps coming up as
14     one of the more prominent names who has been involved
15     over the years.  Like I said, I can't identify to you a
16     Ferraro -- Ferrara from the next Ferrara, but that is a
17     very popular name associated with the Bay Boys through
18     casual conversations that I have had from people
19     thanking me in the surfing community for doing what I'm
20     doing.
21           Q       And the people who thanked you, they
22     haven't distinguished one Ferrara from the next to you?
23           A       No.  Just the name.  It's synonymous
24     with that place.
25           Q       With -- take a look at the supplemental
```

Page 219

1    disclosures.  I forget what exhibit that is.  It was

2    marked, I think, before I got here.

3            MR. WORGUL:  Thirty-four.

4    BY MR. FIELDS:

5            Q    Thirty-four, plaintiff's supplemental

6    disclosures, No. 28 makes a reference to "the

7    Ferraras."

8            A    We're on page 28?

9            Q    No, Witness 28.  We're on page 10.

10           MR. FRANKLIN:  The number.

11   BY MR. FIELDS:

12           Q    And it's regarding reference to

13   Jim Russi, R-u-s-s-i.

14           A    Do you want me to read that section?

15           Q    I'll read it.  I have a question about

16   in that paragraph, it says (as read):

17                   "Plaintiffs are informed and

18           believe and on that basis allege that

19           this witness [Jim Russi] has information

20           regarding the illegal activities of the

21           Lunada Bay Boys including the Ferraras."

22                   Do you know what information Mr. Russi

23   has regarding the Ferraras?

24           A    I personally don't.  Through

25   investigation through counsel, what they learned, that

                                        Page 220

1    information.

2         Q    And you don't know which Ferrara it is

3    referenced in 28?

4         A    In reference to what you just read?

5         Q    Yes.

6         A    I do not specifically, no.

7         Q    Now, I think the only other time that I

8    noticed a Ferrara being mentioned is on 60, the

9    Witness 60 page 19.

10        A    Okay.

11        Q    And Ken Claypool, that's someone who you

12   know; correct?

13        A    That is one who I had met two times and

14   just on a very informal basis, when you say, "know";

15   so, it's relative.

16        Q    I appreciate that.

17             Then it says (as read):

18             "This witness will testify about

19        several incidents of harassment at

20        Lunada Bay involving Individuals such as

21        Brant Blakeman and possibly one or more of

22        the Ferraras."

23             Do you know what information

24   Ken Claypool has regarding the Ferraras?

25        A    I do not.

Page 221

Hahn & Bowersock, A Veritext Company
800.660.3187

1        Q       Other than what you've heard sort of

2    informally from people that you've met who haven't

3    identified themselves and information you have received

4    from your counsel, do you have any information

5    regarding wrongful conduct by Angelo Ferrara or N.F.?

6            MR. FRANKLIN:  Vague and ambiguous.

7    BY MR. FIELDS:

8        Q       Wrongful conduct of the type alleged in

9    this complaint?

10       A       Again, it goes back to original, when we

11   started out.  I don't know if they were on the other

12   end of that phone or if they were the ones showing up

13   in those numbers on the bluff.  So, I -- I can't give

14   you an answer "Yes" or "No."  I don't know.

15           MR. FIELDS:  I have no further questions.

16

17                         EXAMINATION

18   BY MR. WORGUL:

19       Q       Mr. Spencer, my name is John Worgul.

20   I'm counsel for Brant Blakeman.

21               Just real quickly, what's your height

22   and weight?

23       A       My height and weight?

24       Q       Yeah.

25       A       Five-two, 115 at my last physical.

                                           Page  222

# EXHIBIT B

1     UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA

3      WESTERN DIVISION

4

5 CORY SPENCER, an individual; DIANA )

  MILENA REED, an individual; and   )

6 COASTAL PROTECTION RANGERS, INC., a )

  California non-profit public benefit)

7 corporation,          ) Case No.

                 ) 2:16-cv-02129-SJO-RAO

8       Plaintiffs,    )

                 )

9     vs.         )

                 )

10 LUNADA BAY BOYS, et al.,    )

                 )

11       Defendants.    )

  ——————————————————————————————)

12

13

14

15

16

17   VIDEOTAPED DEPOSITION OF DIANA MILENA REED

18      Santa Monica, California

19      Monday, October 24, 2016

20

21

22

23

24 REPORTED BY:

  Jimmy S. Rodriguez

25 CSR No. 13464

                   Page 1

| | | |
|---|---|---|
| 1 | sentence it says you wanted to paddle out to | 11:49 |
| 2 | experience the large waves found off Lunada Bay. | 11:49 |
| 3 | In this sentence in your complaint here, | 11:49 |
| 4 | did you mean that you wanted to go out and try to | 11:49 |
| 5 | surf or you just wanted to paddle off to -- paddle | 11:49 |
| 6 | out to see what the waves looked like? | 11:49 |
| 7 | MR. FRANKLIN:  Vague and ambiguous. | 11:49 |
| 8 | THE WITNESS:  I wanted to paddle out to | 11:49 |
| 9 | surf. | 11:49 |
| 10 | BY MS. HEWITT: | 11:49 |
| 11 | Q     Did you intend to surf? | 11:49 |
| 12 | A     I did intend to surf, yes. | 11:49 |
| 13 | Q     Did you feel prepared that day to catch a | 11:49 |
| 14 | big wave, whatever you thought was a big wave that | 11:49 |
| 15 | day? | 11:49 |
| 16 | A     I felt prepared that day to attempt to | 11:49 |
| 17 | catch some of the waves on the inside for the | 11:49 |
| 18 | conditions that were out that day. | 11:49 |
| 19 | Q     How did you decide to go to Lunada Bay | 11:49 |
| 20 | that day? | 11:49 |
| 21 | A     I don't remember specifically how I | 11:49 |
| 22 | decided to go to Lunada Bay that day.  I would | 11:50 |
| 23 | assume that the swell -- there was a good swell and | 11:50 |
| 24 | it wasn't, you know, too big, you know, and it was a | 11:50 |
| 25 | size that was something that I could try and | 11:50 |

Page 103

```
 1    attempt.                                              11:50

 2         Q     I think earlier we decided that we weren't  11:50

 3    sure whether or not you'd been to Lunada Bay before   11:50

 4    that day.                                             11:50

 5         A     I didn't say that.                         11:50

 6         Q     My fault.                                  11:50

 7               Had you been to Lunada Bay before          11:50

 8    January 29, 2016?                                     11:50

 9         A     I had been to the top of the bluff.        11:50

10         Q     Top of the bluff, okay.                    11:50

11               Do you remember -- is it like towards the  11:50

12    beginning of January, middle of January?              11:50

13         A     It was towards the beginning of January.   11:50

14    I think that it was around the 6th of January         11:50

15    approximately.                                        11:50

16         Q     And before that time on approximately the  11:50

17    6th of January, had you ever been to the top of the   11:50

18    bluff at Lunada Bay before?                           11:50

19         A     I don't think so.  I may have at one point 11:51

20    driven up the coast looking at the coast, but I       11:51

21    don't know if I stopped at Lunada Bay or not.  And    11:51

22    that wasn't for surfing.  It was for scenic reasons.  11:51

23         Q     Okay.  Just to be clear so I don't get it  11:51

24    wrong again:  Before January 6, 2016, had you ever    11:51

25    been down to the beach at Lunada Bay?                 11:51
```

Page 104

| | | |
|---|---|---|
| 1 | A     I didn't go down to the beach on | 11:51 |
| 2 | January 6th. | 11:51 |
| 3 | Q     I understand that, I'm just making sure | 11:51 |
| 4 | before that date you had never gone to the beach | 11:51 |
| 5 | there? | 11:51 |
| 6 | A     No. | 11:51 |
| 7 | Q     And had you ever stopped at Lunada Bay at | 11:51 |
| 8 | all before January 6, 2016? | 11:51 |
| 9 | MR. FRANKLIN:  Asked and answered. | 11:52 |
| 10 | THE WITNESS:  Yeah, I may have when I was | 11:52 |
| 11 | looking at the coast, I don't know. | 11:52 |
| 12 | BY MS. HEWITT: | 11:52 |
| 13 | Q     Okay.  So in January 6, 2016, where did | 11:52 |
| 14 | you stop on the bluff? | 11:52 |
| 15 | A     I went there to watch my friend surf. | 11:52 |
| 16 | Q     Who was that? | 11:52 |
| 17 | A     It was a big day.  Much too big for me. | 11:52 |
| 18 | So I just went there to watch. | 11:52 |
| 19 | Q     Who was your friend? | 11:52 |
| 20 | A     Well, my friend Jordan Wright, boyfriend, | 11:52 |
| 21 | and his friends. | 11:52 |
| 22 | Q     Who was his friends that you went to | 11:52 |
| 23 | watch? | 11:52 |
| 24 | A     One of them was my friend Preston, I don't | 11:52 |
| 25 | remember his last name.  A friend of Jordan's called | 11:52 |

Page 105

```
 1        A     So I can't say one way or the other.       13:10
 2        Q     I'm not asking you to say one way or the   13:10
 3   other.  I'm asking you to state if right now you      13:10
 4   have a memory of being intimidated by someone on top  13:10
 5   of the bluff.                                          13:10
 6             MR. FRANKLIN:  Vague and ambiguous.          13:10
 7             THE WITNESS:  I would have to think about    13:10
 8   it more, I just don't know.                            13:10
 9   BY MS. HEWITT:                                         13:10
10        Q     Do you remember that right now?            13:10
11             MR. FRANKLIN:  Vague and ambiguous.          13:10
12             THE WITNESS:  Right now, I don't remember    13:10
13   what happened on top of the bluff much, so it would    13:10
14   be hard for me to make that -- sorry.                  13:10
15   BY MS. HEWITT:                                         13:10
16        Q     Do you recall any vandalism that day?      13:10
17        A     I don't recall vandalism on February 5th.  13:10
18        Q     Did the police escort you down the bluff   13:10
19   that day?                                              13:10
20        A     I don't know.                               13:10
21        Q     You don't remember?                        13:10
22        A     I don't remember.                           13:10
23        Q     Okay.  Going to February 13th, as          13:10
24   described in your complaint, why did you decide to     13:11
25   go to Lunada Bay on February 13th?                     13:11
```

Page 156

# EXHIBIT C

1                  UNITED STATES DISTRICT COURT

2                 CENTRAL DISTRICT OF CALIFORNIA

3                      WESTERN DIVISION

4

5    CORY SPENCER, an individual; DIANA  )

     MILENA REED, an individual; and     )

6    COASTAL PROTECTION RANGERS, INC., a )

     California non-profit public benefit)

7    corporation,                        ) Case No.

                                         ) 2:16-cv-02129-SJO-RAO

8                  Plaintiffs,           )

                                         )

9          vs.                           )

                                         )

10   LUNADA BAY BOYS, et al.,            )

                                         ) .

11                 Defendants.           )

     _____    )

12

13

14

15

16

17

18     VIDEOTAPED DEPOSITION OF DIANA MILENA REED

19                      VOLUME II

20               Santa Monica, California

21             Tuesday, October 25, 2016

22

23

24   REPORTED BY:

     Jimmy S. Rodriguez

25   CSR No. 13464

                                          Page 187

Exhibit C, Page 21

| | | |
|---|---|---|
| 1 | Q    It's F-a-l-k?  Spelled F-a-l-k, Falk? | 13:24 |
| 2 | A    No, Fox, like the animal fox, F-o-x. | 13:24 |
| 3 | Yeah, Tyler Fox, he got fourth place in Mavericks, I | 13:24 |
| 4 | believe, this year. | 13:24 |
| 5 | MR. DIEFFENBACH:  Thanks.  That's all I | 13:24 |
| 6 | have, thanks. | 13:24 |
| 7 | MR. FIELDS:  Briefly. | 13:24 |
| 8 | Off the record. | 13:25 |
| 9 | THE VIDEOGRAPHER:  We are now off the | 13:25 |
| 10 | record.  The time is 1:25 p.m. | 13:25 |
| 11 | (Break taken.) | 13:30 |
| 12 | THE VIDEOGRAPHER:  We're now back on the | 13:32 |
| 13 | record.  The time is 1:32 p.m. | 13:32 |
| 14 | | 13:32 |
| 15 | EXAMINATION | 13:32 |
| 16 | BY MR. FIELDS: | 13:32 |
| 17 | Q    Good afternoon, Ms. Reed, you realize | 13:32 |
| 18 | you're still under oath? | 13:32 |
| 19 | A    Yes. | 13:32 |
| 20 | Q    Have you ever met Angelo Ferrara? | 13:32 |
| 21 | A    I don't recall if I've met him.  And, | 13:32 |
| 22 | again, I'm not sure what you mean by "meet," do you | 13:32 |
| 23 | mean by seeing him? | 13:32 |
| 24 | Q    Let's start with that, have you ever seen | 13:32 |
| 25 | him? | 13:32 |

Page 343

| | | | |
|---|---|---|---|
| 1 | A | I'm not sure if I've seen him or not. | 13:32 |
| 2 | Q | If you were to walk into the room, would | 13:32 |
| 3 | you recognize him? | | 13:32 |
| 4 | A | Yeah, I know what he looks like. | 13:32 |
| 5 | Q | What does he look like? | 13:32 |
| 6 | A | An older man, middle-aged man, not very | 13:32 |
| 7 | distinguishable, grayish hair. | | 13:32 |
| 8 | Q | Any sense of his height? | 13:32 |
| 9 | A | I don't know his height. | 13:32 |
| 10 | Q | Do you know whether he's closer to 5-5 or | 13:32 |
| 11 | 6-5? | | 13:32 |
| 12 | A | I would assume that he's probably closer | 13:32 |
| 13 | to like 5-10 -- not 5-10, but 5-11 to six-foot, I'm | | 13:33 |
| 14 | not sure, that's a guess. | | 13:33 |
| 15 | Q | How do you know that anyone that you've | 13:33 |
| 16 | seen is Angelo Ferrara; has he ever introduced | | 13:33 |
| 17 | himself to you? | | 13:33 |
| 18 | A | He has not introduced himself to me. | 13:33 |
| 19 | Q | Has anyone pointed him out and said, | 13:33 |
| 20 | That's Angelo Ferrara? | | 13:33 |
| 21 | A | I don't recall anyone doing that. | 13:33 |
| 22 | Q | So what makes you think that if someone | 13:33 |
| 23 | walked in the door you would know whether he'd be | | 13:33 |
| 24 | Angelo Ferrara versus any other member of the human | | 13:33 |
| 25 | race? | | 13:33 |

Page 344

Exhibit C, Page 23

| | | |
|---|---|---|
| 1 | A    I don't know, I would do my best. | 13:33 |
| 2 | Q    Have you ever -- have you ever personally | 13:33 |
| 3 | been harassed by in any manner by Angelo Ferrara? | 13:33 |
| 4 | A    I don't think I've had any personal | 13:33 |
| 5 | interactions with him that I know of. | 13:33 |
| 6 | Q    Have you ever heard of -- has anyone told | 13:33 |
| 7 | you that they either have been harassed by | 13:33 |
| 8 | Angelo Ferrara or have known of situations where | 13:33 |
| 9 | Angelo Ferrara harassed anybody? | 13:34 |
| 10 | MR. FRANKLIN:  Vague, ambiguous. | 13:34 |
| 11 | THE WITNESS:  I've heard various things in | 13:34 |
| 12 | the surf community.  You know, I've also relied on | 13:34 |
| 13 | the investigation of my attorneys. | 13:34 |
| 14 | BY MR. FIELDS: | 13:34 |
| 15 | Q    Other than what your attorneys have told | 13:34 |
| 16 | you, what have you heard in the surf community about | 13:34 |
| 17 | what Angelo Ferrara may have done whether it's | 13:34 |
| 18 | harassing or assault or any type of the wrongful | 13:34 |
| 19 | acts alleged in the complaint? | 13:34 |
| 20 | A    I mean, I've talked to Charlie Ferrara and | 13:34 |
| 21 | I've had several conversations with him.  Charlie | 13:34 |
| 22 | told me that the harassment has been continuing for | 13:34 |
| 23 | a very long time.  He told me that -- that Angelo | 13:34 |
| 24 | and his brother were some of the original Bay Boys | 13:34 |
| 25 | and that they're all a family and that they're all, | 13:34 |

Page 345

Exhibit C, Page 24