1  Alison K. Hurley, State Bar No. 234042
   ahurley@bremerwhyte.com
2  Tiffany L. Bacon, State Bar No. 292426
   tbacon@bremerwhyte.com
3  BREMER WHYTE BROWN & O'MEARA LLP
   20320 S.W. Birch Street
4  Second Floor
   Newport Beach, California 92660
5  Telephone: (949) 221-1000
   Facsimile: (949) 221-1001
6
   Attorneys for Defendants,
7  FRANK FERRARA and CHARLIE FERRARA

8              **UNITED STATES DISTRICT COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11 CORY SPENCER, an individual; DIANA      ) Case No. 2:16-cv-2129
   MILENA REED, an individual; and         )
12 COASTAL PROTECTION RANGERS,            ) Judge:   Hon. S. James Otero
   INC., a California non-profit public    ) Dept:    Courtroom 10C
13 benefit corporation,                    )
                                           ) Magistrate Judge:
14              Plaintiff,                  ) Hon. Rozella A. Oliver
                                           )
15        vs.                              ) **REQUEST FOR JUDICIAL
                                           ) NOTICE OF ADJUDICATIVE
16 LUNADA BAY BOYS; THE                    ) FACTS IN SUPPORT OF
   INDIVIDUAL MEMBERS OF THE              ) DEFENDANT FRANK
17 LUNADA BAY BOYS, including but not      ) FERRARA'S MOTION FOR
   limited to SANG LEE, BRANT             ) SUMMARY JUDGMENT OR, IN
18 BLAKEMAN, ALAN JOHNSTON AKA           ) THE ALTERNATIVE, PARTIAL
   JALIAN JOHNSTON, MICHAEL RAE          ) SUMMARY JUDGMENT**
19 PAPAYANS, ANGELO FERRARA,             )
   FRANK FERRARA, CHARLIE                ) [*Filed concurrently with Notice of
20 FERRARA; CITY OF PALOS VERDES         ) Motion; Memorandum of Points and
   ESTATES; CHIEF OF POLICE JEFF         ) Authorities; Declaration of Tiffany
21 KEPLEY, in his representative capacity; ) Bacon; Notices of Lodging; proposed
   and DOES 1-10,                        ) Statement of Uncontroverted Facts
22                                        ) and Conclusions of Law and
              Defendants.                  ) [Proposed] Judgment lodged
23 _____) herewith*]

24                                         Date: August 21, 2017
                                           Time: 10:00 a.m.
25                                         Dept: Courtroom 10C

26                                         Complaint Filed:  March 29, 2016
                                           Trial Date:       November 7, 2017
27

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Defendant FRANK FERRARA ("Defendant" or "Frank Ferrara") respectfully requests this Court take judicial notice, pursuant to *Federal Rules of Evidence*, Rule 201, of the following Court records and facts in support of Frank Ferrara's Motion for Summary Judgment against Plaintiffs CORY SPENCER ("Spencer"), DIANA MILENA REED ("Reed") and COASTAL PROTECTION RANGERS, INC. ("CPR") (collectively, "Plaintiffs") or, in the alternative, partial summary judgment.

1.      Class Action Complaint ("Complaint") filed on March 29, 2016 in United States District Court for the Central District of California, Case No. 2:16-cv-02129-SJO (RAOx). A true and correct copy of the Complaint is attached hereto as **Exhibit A** and incorporated herein by this reference.

2.      Frank Ferrara's Answer to Complaint ("Answer") filed on September 2, 2016 in United States District Court for the Central District of California, Case No. 2:16-cv-02129-SJO (RAOx). A true and correct copy of the Answer is attached hereto as **Exhibit B** and incorporated herein by this reference.

3.      Order Granting in Part and Denying in Part Defendants City of Palos Verdes Estates and Chief of Police Jeff Kepley's Motion to Dismiss Complaint entered on July 11, 2016, Document 84, in United States District Court for the Central District of California, Case No. 2:16-cv-02129-SJO (RAOx). A true and correct copy of the Court's Order is attached hereto as **Exhibit C** and incorporated herein by this reference.

4.      Scheduling Conference Order entered on August 29, 2016, Document 120, in United States District Court for the Central District of California, Case No. 2:16-cv-02129-SJO (RAOx). A true and correct copy of the Scheduling Conference Order is attached hereto as **Exhibit D** and incorporated herein by this reference.

5.      Plaintiffs' Supplemental Disclosures filed on November 9, 2016, Document 138-1, in United States District Court for the Central District of

1  California, Case No. 2:16-cv-02129-SJO (RAOx).  A true and correct copy of

2  Plaintiffs' Supplemental Disclosures is attached hereto as **Exhibit E** and

3  incorporated herein by this reference.

4        5.      Order Denying Motion for Class Certification entered on February 21,

5  2017, Document 225, in United States District Court for the Central District of

6  California, Case No. 2:16-cv-02129-SJO (RAOx).  A true and correct copy of the

7  Court's Order is attached hereto as **Exhibit F** and incorporated herein by this

8  reference.

9        6.      Order denying petition for permission to appeal the district court's

10  February 21, 2017 order denying class action certification, entered on May 18, 2017

11  in the United States Court of Appeals for the Ninth Circuit, No. 17-80033.  A true

12  and correct copy of the Order is attached hereto as **Exhibit G** and incorporated

13  herein by this reference.

14        7.      Plaintiff Spencer's Declaration in support of Plaintiffs' Motion for Class

15  Certification, filed on December 29, 2016, Document 159-4, in United States District

16  Court for the Central District of California, Case No. 2:16-cv-02129-SJO (RAOx).

17  A true and correct copy of Plaintiff Spencer's Declaration is attached hereto as

18  **Exhibit H** and incorporated herein by this reference.

19        8.      Plaintiff Reed's Declaration in support of Plaintiffs' Motion for Class

20  Certification, filed on December 29, 2016, Document 159-5, in United States District

21  Court for the Central District of California, Case No. 2:16-cv-02129-SJO (RAOx).

22  A true and correct copy of Plaintiff Reed's Declaration is attached hereto as **Exhibit**

23  **I** and incorporated herein by this reference.

24        9.      Order re: Defendant Blakeman's Motion to Compel Discovery

25  Responses and Plaintiffs' Motion to Compel Production by Defendant Blakeman

26  entered in January 25, 2017, Document 212, in United States District Court for the

27  Central District of California, Case No. 2:16-cv-02129-SJO (RAOx).  A true and

28

1  correct copy of the Court's Order is attached hereto as **Exhibit J** and incorporated

2  herein by this reference.

3      10.   Declaration of Mark Slatten, President of Plaintiff CPR, in support of

4  Plaintiffs' Motion for Class Certification, filed on December 29, 2016, Document

5  159-6, in United States District Court for the Central District of California, Case No.

6  2:16-cv-02129-SJO (RAOx).  A true and correct copy of the Court's Order is

7  attached hereto as **Exhibit K**.

8  Dated:  July 24 2017            BREMER WHYTE BROWN & O'MEARA
                                    LLP
9

10                                By: _____

11                                    Alison K. Hurley
                                      Tiffany L. Bacon
12                                    Attorneys for Defendants
                                      FRANK FERRARA and CHARLIE
13                                    FERRARA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

4

# Exhibit A

1   HANSON BRIDGETT LLP
    KURT A. FRANKLIN, SBN 172715
2   kfranklin@hansonbridgett.com
    TYSON SHOWER, SBN 190375
3   tshower@hansonbridgett.com
    SAMANTHA WOLFF, SBN 240280
4   swolff@hansonbridgett.com
    CAROLINE LEE, SBN 293297
5   clee@hansonbridgett.com
    425 Market Street, 26th Floor
6   San Francisco, California 94105
    Telephone: (415) 777-3200
7   Facsimile:  (415) 541-9366

8   OTTEN LAW, PC
    VICTOR OTTEN, SBN 165800
9   vic@ottenlawpc.com
    KAVITA TEKCHANDANI, SBN 234873
10  3620 Pacific Coast Highway, #100
    Torrance, California 90505
11  Telephone: (310) 378-8533
    Facsimile:  (310) 347-4225

12
    Attorneys for Plaintiffs
13  CORY SPENCER, DIANA MILENA
    REED, and COASTAL PROTECTION
14  RANGERS, INC.

15

16              **UNITED STATES DISTRICT COURT**

17   **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

18

19  | CORY SPENCER, an individual; | CASE NO. 2:16-cv-2129 |
    | DIANA MILENA REED, an |
20  | individual; and COASTAL |
    | PROTECTION RANGERS, INC., a |
21  | California non-profit public benefit |
    | corporation, |
22  |                                      | **CLASS ACTION COMPLAINT AND** |
    |                                      | **JURY DEMAND** |
23  |              Plaintiffs, |
    | vs. |
24  | |
    | LUNADA BAY BOYS; THE |
25  | INDIVIDUAL MEMBERS OF THE |
    | LUNADA BAY BOYS, including but |
26  | not limited to SANG LEE, BRANT |
    | BLAKEMAN, ALAN JOHNSTON |
27  | AKA JALIAN JOHNSTON, |
    | MICHAEL RAE PAPAYANS, |
28  | ANGELO FERRARA,  FRANK |

1 FERRARA, CHARLIE FERRARA, and NICOLAS FERRARA; CITY OF
2 PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his
3 representative capacity; and DOES 1-10,
4
5        Defendants.
6

7        Plaintiffs Cory Spencer, Diana Milena Reed, and Coastal Protection

8 Rangers, Inc. (collectively referred to as "Plaintiffs"), by and through their

9 attorneys, allege based upon their own personal knowledge as to their own

10 acts, upon information and belief, and upon their attorneys' investigation as

11 to all other facts.

12                        <u>THE PARTIES</u>

13    <u>Plaintiffs</u>

14    (1)    Plaintiff Cory Spencer is a 45-year old resident of Norco,

15 California, an El Segundo police officer, experienced surfer, and avid

16 beachgoer.  On behalf of himself and on behalf of a class of visiting

17 beachgoers to the City of Palos Verdes Estates, Spencer alleges that he has

18 been unlawfully excluded from recreational opportunities at Palos Verdes

19 Estates parks, beaches, and access to the ocean.

20    (2)    Plaintiff Diana Milena Reed is a 29-year old resident of Malibu,

21 filmmaker, photographer, aspiring big wave surfer, and avid beachgoer.  She

22 surfs and trains extensively with the goal of becoming a competitive big

23 wave surfer.  On behalf of herself and on behalf of a class of visiting

24 beachgoers to the City of Palos Verdes Estates, Reed alleges that she has

25 been unlawfully excluded from recreational opportunities at Palos Verdes

26 Estates parks, beaches, and access to the ocean.

27    (3)    Plaintiff Coastal Protection Rangers, is dedicated to enforcing

28 the California Coastal Act and protecting California's beaches and ensuring

1  that they are safe and accessible to all visitors.  The Coastal Protection

2  Rangers alleges that non-resident, non-local visiting beachgoers to Palos

3  Verdes Estates have been unlawfully excluded from recreational

4  opportunities at Palos Verdes Estates parks, beaches, and access to the

5  ocean.  Plaintiff Coastal Protection Rangers also alleges that Defendant

6  LUNADA BAY BOYS, with the okay of Defendant PALOS VERDES

7  ESTATES which owns the beach-park area, knowingly built and maintains

8  an unpermitted masonry-rock-and-wood fort and seating area ("Rock Fort")

9  in violation of the California Coastal Act.

10     Defendants

11     (4)    Defendant LUNADA BAY BOYS was, and at all times mentioned

12  herein is, an unincorporated association within the meaning of Code of Civil

13  Procedure § 369.5 acting by and through its respective members and

14  associates.  Defendant LUNADA BAY BOYS acts by and through its

15  respective members, individually, collectively, and in concert, and conducts

16  its affairs and activities in the City of Palos Verdes Estates, County of Los

17  Angeles, State of California.  Defendant LUNADA BAY BOYS claims gang

18  territory, or "turf" within the City of Palos Verdes Estates' Lunada Bay

19  neighborhood (Lunada Bay) depicted in Exhibit 1, which is attached and

20  incorporated herein.

21     (5)    Defendant LUNADA BAY BOYS is, and at all times mentioned

22  herein was, a criminal street gang as defined in California Penal Code

23  § 186.22, subdivision (f), in as much as it is a group of three or more

24  individuals with a common name or common symbol and whose members,

25  individually or collectively, engage in or have engaged in a pattern of

26  criminal gang activity, and has as one of its primary activities the

27  commission of enumerated "predicate crimes," including but not limited to

28  assault, battery, vandalism, intimidation, harassment, extortion, and, upon

CLASS ACTION COMPLAINT AND JURY DEMAND

1 | information and belief, the sale and use of illegal controlled substances.
2 | Upon information and belief, Defendant LUNADA BAY BOYS uses the
3 | unpermitted Rock Fort to conduct criminal activity.

4 |      (6)    Defendant LUNADA BAY BOYS is, and at all times mentioned
5 | herein is, also an unincorporated association within the meaning of
6 | Corporations Code § 18035, subdivision (a), inasmuch it consists of two or
7 | more individuals joined by mutual consent for some common lawful
8 | purposes, such a attending social gatherings, and recreational events.
9 | However, notwithstanding any common lawful purpose, Defendant LUNADA
10 | BAY BOYS is a criminal gang whose members are primarily engaged in
11 | criminal and nuisance activities which constitute Bane Act violations and a
12 | public nuisance.

13 |      (7)    Defendant LUNADA BAY BOYS is comprised of members
14 | including, but not limited to Sang Lee, Brant Blakeman, Angelo Ferrara,
15 | Frank Ferrara, Nicholas Ferrara, Charlie Ferrara, Michael Rae Papayans,
16 | Alan Johnston aka Jalian Johnston (collectively hereinafter known as
17 | "Designated Lunada Bay Boys Gang Members" or "the Individual
18 | Defendants"), each of whom has been within the Lunada Bay and is
19 | responsible in some manner for the Bane Act violations and public nuisance
20 | described in this Complaint.

21 |      (8)    Defendant PALOS VERDES ESTATES is a general law city
22 | bound by the State's general law.  By its policies, customs, and practices,
23 | and in deliberate indifference to Plaintiffs' rights under state and federal law,
24 | PALOS VERDES ESTATES has excluded Plaintiffs, and persons like them,
25 | from their right to recreational opportunities at Palos Verdes Estates' parks,
26 | beaches, and access to the ocean.

27 |      (9)    Defendant Jeff Kepley, named in his representative capacity,
28 | serves as the Chief of Police of Defendant PALOS VERDES ESTATES.

1 Defendant Kepley has failed to enforce the State's laws when it comes to
2 crimes committed by Defendant LUNADA BAY BOYS against visiting
3 beachgoers like Plaintiffs.

4     (10) Defendants Does 1 through 10 are individuals, the true identities
5 of whom are presently unknown to Plaintiffs, who therefore sue these
6 defendants by such fictitious names. The Plaintiffs will amend this complaint
7 to allege their true names when such information is ascertained. The
8 Plaintiffs are informed and believes that each of the defendants designated
9 as Does 1 through 10, inclusive, as well as others to be named, is a member
10 of Defendant Lunada Bay Boys and is responsible in some manner for the
11 Bane Act violations and public nuisance described in this Complaint.

12 **JURISDICTION AND VENUE**

13     (11) Against Defendant PALOS VERDES ESTATES and Defendant
14 Kepley, this Court has original jurisdiction under 42 U.S.C. § 1983. Against
15 Defendants LUNADA BAY BOYS and certain Individual Defendants, this
16 Court has original jurisdiction under 28 U.S.C. § 1333, and Article III, § 2 of
17 the U.S. Constitution. *See Davis v. City of Jacksonville Beach*, 251 F.Supp.
18 327 (MD Fla. 1965) (surfboard hitting swimmer in ocean falls under
19 admiralty jurisdiction).

20     (12) This Court has supplemental jurisdiction for claims brought under
21 California law that arise from the same nucleus of operative facts predicated
22 upon 28 U.S.C. § 1367.

23     (13) The Court may grant declaratory and other relief pursuant to 28
24 U.S.C. §§ 2201 and 2202. Money damages alone are inadequate, and
25 Plaintiffs and class members suffer and will continue to suffer irreparable
26 injury.

27     (14) All action complained of herein takes place within the jurisdiction
28 of the United States District Court, Central District of California and venue is

1 | invoked under 28 U.S.C. § 1391(b), (c).

2 | **STATEMENT OF FACTS**

3 |     (15)  Incorporated in 1939, Defendant PALOS VERDES ESTATES is

4 | a city of approximately 13,500 residents. Its median household income is

5 | more than $170,000. The City's natural beauty is a unique respite from

6 | nearby Long Beach, Los Angeles, and the other Los Angeles industrialized

7 | and flatland communities. Protected by more than 40 police personnel,[1]

8 | residents enjoy the rugged ocean-cliff views, parklands, pathways,

9 | magnificent views of the Los Angeles Basin and Pacific Ocean, low density,

10 | rural character, and preserved open space. The beaches, shoreline, and

11 | surfing areas along the Palos Verdes Estates coastline are open to the

12 | public. But the police department of PALOS VERDES ESTATES has a long

13 | history of deliberate indifference in not investigating or otherwise policing

14 | acts of violence and vandalism against visiting beachgoers. For many

15 | decades, victims of the LUNADA BAY BOYS have complained to Defendant

16 | PALOS VERDES ESTATES police and city officials. The response is

17 | always the same: City leaders acknowledge the problem, promise to do

18 | something, and then do little or nothing. DEFENDANT PALOS VERDES

19 | ESTATES' complicity, custom, policy, and deliberate indifference amounts to

20 | illegal municipal exclusivity. Defendant PALOS VERDES ESTATES' police

21 | force tolerates the unlawful activity of the LUNADA BAY BOYS against non-

22 | local beachgoers because the 40-member police force is designed to keep

23 | PALOS VERDES ESTATES for locals only. Along with the DEFENDANT

24 | LUNADA BAY BOYS and the Individual Defendants, Defendant PALOS

25 |

26 | [1] In 2014, Palos Verdes Estates employed 3 different chiefs, 4 sergeants,

27 | 2 captains, 3 corporals, 12 officers, 9 reserve officers, 1 traffic control officer, 9 service officers, 1 police intern, and 1 police cadet.

28 |

VERDES ESTATES considers non-residents "riffraff." Moreover, because of Defendant PALOS VERDES ESTATES' complicit approval and deliberate indifference to enforcing state, federal, and local laws in crimes committed against non-residents and other visitors, Plaintiffs and similarly situated beachgoers suffer exclusion from the city's public parks, beaches, and waters, and do not enjoy equal access to the city's public parks, beaches, waters, and surf in the area.

(16) Lunada Bay is a rugged bay located on the northwest tip of the Palos Verdes Peninsula in the City of Palos Verdes Estates – between Resort Point on the south, and Palos Verdes Point on the north. It has been described as "a gleaming stretch of polished pewter spotlighted by large areas of sparkling silver," its beach stones tumbled smooth by the sea nestled against its 100 foot cliffs.[2] The beach, surrounding bluffs, and access points are public and owned by Defendant PALOS VERDES ESTATES. By law, Lunada Bay is open to all. In reality, it is open to few.

(17) Beyond its beauty, Lunada Bay is Southern California's premier big-wave break. It is also the State's, and perhaps the surfing world's, best-known area for localism.[3] Localism is a territorial practice whereby resident surfers attempt to exclude nonresident beachgoers and surfers through threats, intimidation, and violence.[4] "Lunada Bay in Southern California is generally recognized as the surfing world's most localized break."[5] In

---

[2] *See*, Michael Goodman, Los Angeles Magazine, Palos Verdes Surf Wars (June 1996, Vol. 41, No. 6). *See also*, Exhibits 2, 3, & 4.

[3] *See*, Warshaw, Matt, *The Encyclopedia of Surfing*, p. 445 (2003); Warshaw, Matt, *The History of Surfing*, p. 263 (2010).

[4] *See*, Warshaw, Matt, *The Encyclopedia of Surfing*, p. 340 (2003).

[5] *See*, Warshaw, Matt, *The Encyclopedia of Surfing*, p. 341 (2003).

1 essence, severe localism initiated by Defendant LUNADA BAY BOYS and
2 the Individual Defendants, combined with PALOS VERDES ESTATES'
3 historic disinterest in investigating and prosecuting crimes against visiting
4 beachgoers, has created a private beach on public property that denies
5 Plaintiffs and the members of the class their state and federal constitutional
6 rights.

7       (18) On the north side of Lunada Bay nearest Palos Verdes Point, the
8 LUNADA BAY BOYS, its members, and the Individual Defendants have built
9 and maintain an illegal rock-masonry-and-wood fort structure at the base of
10 the 100 foot bluff.[6] LUNADA BAY BOYS and the Individual Defendants
11 congregate here to recreate, drink beer, eat, store food, and both plan and
12 conduct illegal activity. In the middle of Lunada Bay, LUNADA BAY BOYS
13 and the Individual Defendants have built and maintain a steep trail down the
14 100 foot bluff called the Goat Trail.[7] Next, Defendant LUNADA BAY BOYS
15 and Individual Defendants have built a campfire ring with seating in the
16 middle of Lunada Bay, near the base of the Goat Trail.[8] Further, Defendant
17 LUNADA BAY BOYS and Individual Defendants store sea kayaks, crab
18 pots, lobster traps, coolers, and other recreational items near the base of the
19 Goat Trail.[9] On the south side of Lunada Bay, there is another trail down to
20 Lunada Bay ("South Trail"),[10] and additional sea kayaks and items stored in
21 / / /
22
23   [6] *See*, Exhibits 5, 6, 7, & 8.
24   [7] *See*, Exhibit 9.
25   [8] *See*, Exhibit 10.
26   [9] *See*, Exhibits 11, 12, 13, & 14.
27   [10] *See*, Exhibit 15.
28

1  this area.[11]  DEFENDANT LUNADA BAY BOYS and its members frequently
2  invoke the gang name "Bay Boys," and upon information and belief wear
3  inscribed clothing with the gang name "Bay Boys," as they commit their
4  criminal and nuisance activities.  Upon information and belief, certain
5  Individual Defendants of the gang sell market and use illegal controlled
6  substances from the Lunada Bay bluffs and the Rock Fort.  Upon
7  information and belief, members of the gang use the gang's name to
8  confront, threaten, intimidate, and harass non-local beachgoers (surfers,
9  boaters, sunbathers, fisherman, picnickers, kneeboarders, stand-up paddle
10 boarders, boogie boarders, bodysurfers, windsurfers, kite surfers, kayakers,
11 dog walkers, walkers, hikers, beachcombers, photographers, sightseers,
12 etc.), and other individuals who work in, visit and pass through Palos Verdes
13 Estates and Lunada Bay.  On top of the 100-foot bluff, LUNADA BAY BOYS,
14 its members, and the Individual Defendants intimidate visiting beachgoers
15 with threats and taunts, by taking photos and video of beachgoers, and by
16 congregating near the entrances to both the Goat Trail and South Trail.
17 Upon information and belief, when out-of-town visitors arrive by boat to
18 avoid the bluff side attacks, the LUNADA BAY BOYS impede boat traffic
19 with threats and by circling the boats on surfboards, kneeboards, boogey
20 boards, kayaks, rowboats, and other manual powered vessels.  These
21 vessels are operated in a dangerous and negligent manner.  The LUNADA
22 BAY BOYS enforce localism by targeting out-of-town beachgoers to prevent
23 them from enjoying the local waters.  Upon information and belief, their
24 assaults (throwing rocks, running people over with surfboards, shoves,
25 slaps, punches, etc.), thefts (wallets, wetsuits, and surfboards), vandalism to
26 
27 [11]  *See*, Exhibit 16.
28

1  vehicles and personal property, and threats are for the purpose of
2  establishing a curtain of intimidation to drive out-of-area beachgoers, which
3  they label riffraff, away from the coastal area of Lunada Bay. Indeed, upon
4  information and belief, since the early 1970s, visiting surfers and other
5  beachgoers have had rocks thrown at them while walking down the 100-foot
6  cliff-side Lunada trails, have been shot by pellet guns, have returned to find
7  their car windows waxed with the word "kook" or windows broken, their tires
8  slashed or air let out, barefoot trails covered in glass, property stolen
9  (wallets, wetsuits, surfboards), and beach towels, backpacks, and bags
10 dumped in the water. In the water, the LUNADA BAY BOYS dangerously
11 disregard surfing rules when it comes to visitors, threaten visitors with
12 violence,[12] run over visitors with their surfboards, push visitors, hit visitors,
13 slap visitors, harass visitors by circling them, and hold visitors underwater.
14 Upon information and belief, the LUNADA BAY BOYS have posted a
15 discrete municipal-style sign at the top of the bluff that stated "Unlocals Will
16 Be Hassled." Upon information and belief, members of the LUNADA BAY
17 BOYS coordinate their attacks on visitors by sharing photographs and video
18 that they take of visitors, monitoring police and fire radios to learn if the
19 police may start to enforce the laws or visit the bluff, communicating via
20 walkie talkies, text message group chats, email, mobile phones, and other
21 electronic devices.[13]

22

23

[12] *See, e.g.*, police reports from January 21, 2014, November 15, 2014,
July 31, 2015, and August 24, 2015, attached as Exhibit 17, describing non-
residents' complaints of assault, vandalism, and criminal threats by the
LUNADA BAY BOYS.

[13] *See*, Warshaw, Matt, *The Encyclopedia of Surfing* (2003); *Surfer
Magazines Guide to Southern California Surf Spots*, pp. 92-96 (2006).

(19)   On or about May 2015, a reporter, Rory Carroll and his friend Noah Smith went to Lunada Bay with a hidden video to document their experience.  The video shows what happened to these to individuals as they approached the beach on this particular day.  One of the LUNADA BAY BOYS, who Plaintiffs contend on information and belief, is Defendant Sang Lee.  Defendant Lee made the following comments to Carrol and Smith:[14]

    i.    "You shouldn't fucking come down here. Stay away from this area, this bay right here."

    ii.    "The Reason there's a lot of space is because we keep it like that. We fucking hassle people."

    iii.    "We'll burn you every single wave."

    iv.    "There's still fights down here. People will just fucking duke it out, fucking work your car and get in fights."

(20)   After receiving the harassment and threats from the LUNADA BAY BOYS, Rory Carrol and his friend reported the incident to the City of Palos Verdes Police Department.[15]  In response to their report, the following comment was made by a Defendant PALOS VERDES ESTATE  officer, transcribed  in the video as follows:[16] <u>Officer</u>: "We know all of them.  They are infamous around here.  They are pretty much grown men in little men's

---

[14]   The video can be viewed at http://www.theinertia.com/surf/palos-verdes-police-respond-to-lunada-bay-localism/

[15]   http://www.theinertia.com/surf/palos-verdes-police-respond-to-lunada-bay-localism/

[16]   http://www.theinertia.com/surf/palos-verdes-police-respond-to-lunada-bay-localism/

CASE NO. 2:16-cv-2129

mindset. They don't like anyone that's not one of The Bay Boys, surfing down there. It literally is like a game with kids on a school yard to them and they don't want you playing on their swing set, but, you know, it is what it is. If you feel uncomfortable, you know, then don't do it."[17]

(21)   Plaintiff Spencer has worked as a police officer for the City of Los Angeles Police Department in the South Central Division. Presently, he works as a police officer for the City of El Segundo. For more than 30 years, he has wanted to surf the waves off the coast of the City of Palos Verdes Estates – specifically Lunada Bay. But Spencer – who has worked gang-infested neighborhoods in the toughest parts of Los Angeles – had avoided Palos Verdes Estates' Lunada Bay because of fear, intimidation, vandalism, and Lunada Bay's well-known reputation for violence and beach localism. But in January 2016, Spencer worked up his courage to surf Lunada Bay during a large winter swell. To surf Lunada Bay, even though Palos Verdes Estates is an exclusive community with more than 40 police personnel, Spencer and other surfers had to pay a security guard $100 to watch their vehicles to protect the vehicles from vandalism while they surfed. Upon arrival, members of the Defendant LUNADA BAY BOYS told him "you can't surf here kook."[18] Once in the water, on his second wave at Lunada Bay, a member of Defendant LUNADA BAY BOYS intentionally ran Spencer over with his surfboard and sliced open Spencer's hand. In February, Spencer returned a second time with Jordan Wright and others to observe and watch

---

[17]   http://www.theinertia.com/surf/palos-verdes-police-respond-to-lunada-bay-localism/

[18]   The word "kook" is a derogatory surfing term, generally **applied to the** rank beginners or any surfer thought to be in violation of **surfing's codes.** *See*, Warshaw, Matt, *The Encyclopedia of Surfing* (2003).

1 the outsiders' cars parked on the bluff. Spencer observed Defendant
2 LUNADA BAY BOYS threaten and taunt surfers. Spencer has complained
3 to PALOS VERDES ESTATES police officers. Later, on March 4, 2014,
4 Spencer wrote to Defendant Chief of Police Kepley and encouraged an
5 undercover investigation. Upon information and belief, Defendant Chief of
6 Police Kepley did not take the complaint seriously and took no action. He
7 said that they have considered various enforcement strategies. And, he
8 said: "I have been down the patio on several occasions and talked with
9 various surfers in an effort to educate them on the position we are all in, and
10 what needs to change in terms of acceptable behavior on their part." That's
11 it. Defendants' conduct has caused Spencer pain and suffering, loss of
12 sleep, emotional distress, and mental anguish.

13      (22) On January 29, 2016, Plaintiff Diana Milena Reed, who is an
14 aspiring big wave surfer, wanted to paddle out to experience the large
15 waves found off Lunada Bay. She was accompanied by her friend Jordan
16 Wright. Reed and Wright encountered members of the LUNADA BAY
17 BOYS who screamed profanities at them and said words to the effect "you
18 can't surf here." As Reed and Wright made their way down the trail, they
19 were approached by a short, 45-50-year old man who yelled various
20 profanities and insults at them. Reed was extremely frightened and felt
21 endangered and in fear of assault. Never in her life had she been screamed
22 and yelled at in such a manner. The man called her a whore. A group of
23 men were watching, along with police in the distance. PALOS VERDES
24 ESTATES police witnessed the harassment, but rather than take action,
25 they approached Reed after the incident asked whether Reed and Wright
26 / / /
27 / / /
28 / / /

1  would like to make a "citizen's arrest."[19]  Reed declined to make the arrest

2  and instead chose to file a report, having been assured by the police that the

3  case would be handled by the District Attorney with the same result.  Reed

4  was surprised that the police did not arrest the man, especially because they

5  had witnessed the incident.

6       (23)  On or about February 5, 2016, Reed and Wright returned to

7  Lunada Bay with a photographer and writer from *The Los Angeles Times.*

8  There were no other surfers at Lunada Bay that day.  Subsequently, the *Los*

9  *Angeles Times* printed a newspaper story on February 13, 2016, that

10  contained several photographs of Reed, including one that showed her in

11  "the locals hangout fort" and stated that she was an "outsider" who had filed

12  a police report for harassment against the LUNADA BAY BOYS.  The

13  newspaper reported that LUNADA BAY BOYS "bombard outsiders with dirt

14  clods, slash their car tires, and assault them in the water – sometimes

15  coordinating the attacks with walkie talkies…**Surfers who say they have**

16  **been victimized over the years have accused local authorities of**

17  **complacency, cowardice, and even complicity.**"[20]

18  _____

19  [19]  Citizens' arrests are permitted under California Penal Code § 837.  It is a

20  process whereby a person who is not acting as a sworn law-enforcement

  official may arrest a person who committed a crime.  The citizen tells the

21  offender that she is making a "citizen's arrest" and that she is holding him

  until police have arrived.  Here, PALOS VERDES ESTATES unreasonably

22  asked Reed to detain a known gang member – with other members of the

23  LUNADA BAY BOYS nearby – when police were already on the scene.

24  [20]  Garrett Therolf, *'Bay Boys' surfer gang cannot block access to upscale*

  *beach, Coastal Commission says,* L.A. Times, Feb. 12, 2016.

25  (http://www.latimes.com/local/california/la-me-surfer-gang-enforcement-

26  20160211-story.html).  Defendants allege based on information and belief

  that this story was first published online on February 11, 2016, may have

27  been revised on February 12, 2016, and was printed on February 13, 2016.

28

(24)  Reed and Wright returned to Lunada Bay on February 13, 2016. While walking across Lunada Beach to the fort, LUNADA BAY BOYS called her a "bitch" and told "fuck you" and "you are a liar" – in reference to the *Los Angeles Times* article which had been printed that day.  Reed was also told to "keep walking."  After arriving at the fort, Reed was approached by a brown-haired man in his late 40s or early 50s.  The man started asking her various questions, including why she was there, what was her motivation, and what was her mission objective.  The man told her that the LUNADA BAY BOYS were mad at her.  Reed told the man that she was simply there to take photos of Wright and to watch him surf and enjoy the beach.  The man eventually left the fort.

(25)  About two hours later, certain Individual Defendants approached Reed with a case of beer and feigned celebration of the *Los Angeles Times* article.  But they blamed Reed for unwanted attention the article brought upon the LUNADA BAY BOYS and PALOS VERDES ESTATES.  In an attempt to intimidate Reed, the Individual Defendants, including Brant Blakeman and Jalian Johnston, asked Reed to drink with them. When she declined, Johnston shook up a can of beer and sprayed Reed and her camera with it, and poured beer on Reed's arm.  They filmed the incident.  Reed asked them to stop filming her.  They told her they thought she was "sexy," and filmed her while they told her she "excited them."  Defendant Johnston then made comments about his penis, stating that it was big enough to "get the job done," and he rubbed his torso and belly in a sexually-suggestive manner, telling Reed that she made him "excited" and "hard," which made it easier for him to get into his wetsuit. Defendant Johnston briefly exposed himself to Reed while he was changing into his wetsuit before Reed quickly turned away.  Defendant Charlie Ferrara witnessed the entire event from the roof of the fort.  Reed attempted to

1  contact the police from her cell phone during the incident but was unable to
2  obtain a signal.  Reed had requested a police escort to the beach upon her
3  arrival at Lunada Bay earlier that day because of her previous experiences
4  but the police refused her request.

5  (26)  After walking back up the cliff following this incident, Reed was in
6  tears and visibly upset.  Reed saw a police officer sitting inside a patrol car
7  on the side of the road.  The officer was completely unaware of the events
8  occurring below the cliff in the fort and on the beach.  Reed complained to
9  Defendant PALOS VERDES ESTATES and told the police officer what
10  happened.  The police officer proceeded to take Reed's information. After
11  approximately 30 minutes, the police officer walked down the cliff with Reed
12  but the LUNADA BAY BOY aggressors were gone.  Only Defendant Charlie
13  Ferrara remained, but he refused to cooperate with the police and told them
14  he did not see anything, though he apologized to Reed.

15  (27)  PALOS VERDES ESTATES initially attempted to investigate the
16  incident.  A police officer identified the man who was videoing her as
17  LUNADA BAY BOY Individual Member and Defendant Brant Blakeman, a
18  local resident who owns a home in Palos Verdes Estates.  The PALOS
19  VERDES ESTATES police officer then offered to allow Reed to identify the
20  other men from photos that the police kept on all the members of LUNADA
21  BAY BOYS.  But ultimately, PALOS VERDES ESTATES police showed no
22  interest or ability in following up on Reed's complaint.  They would not
23  commit to a date to identify the other member of the LUNADA BAY BOYS
24  who poured beer on her, and exposed himself to her, or other Individual
25  Defendants who had harassed her.  Indeed, PALOS VERDES ESTATES
26  police detective Venegas said words to the effect, "Why would a woman
27  want to go to that beach and the Rock Fort anyways?  There are only rocks
28  down there."  When PALOS VERDES ESTATES failed to return Reed's calls

12074575.1                                    -16-                          CASE NO. 2:16-cv-2129

1  to set a time to identify the LUNADA BAY BOY member who poured beer on

2  her and exposed himself to her, as well as identify the other Individual

3  Defendants who had harassed her, she had her lawyer write a letter on

4  March 10, 2016.  Defendant PALOS VERDES ESTATES finally agreed to a

5  meeting on March 21, 2016, in which Reed and her lawyer met with

6  Defendant Chief of Police Kepley and Captain Tony Best.  Defendant Chief

7  of Police Kepley and Captain Best were friendly and respectful.  But it

8  appeared that Chief Kepley and Captain Best knew little about Reed's

9  complaint and the incident; and they claimed that while they had

10  photographs of the LUNADA BAY BOYS members, they would not permit

11  Reed to review their photos so she could identify the man that assaulted her

12  in the Rock Fort, stating only that they would speak to the detective in

13  charge of the investigation.  Defendant Kepley said words to the effect that

14  there was "little we can do because we only have 25 full-time POST[21]

15  certified staff," and that PALOS VERDES ESTATES could only afford to

16  send two officers at a time to inspect Lunada Bay.  While cell phones do not

17  work well at the Rock Fort, Defendant Chief of Police Kepley and Captain

18  Best encouraged Reed to carry a cell phone and travel in large groups.

19  Captain Best stated that there are judges and lawyers that surf out there" –

20  the implication being that made the situation even more difficult to remedy.

21  Reed asked Defendant Chief Kepley:  "Is it safe for me to go down there?"

22  Defendant Chief Kepley responded with the following:  "I wish it was safe,

23  but it's not.  I wouldn't even tell a man to go down there."  Defendant Chief

24  Kepley also said words to the effect, "If I could fix this, I would.  I view this as

25

26
27  [21]  POST is an acronym for "Police Officer Standards and Training."  It is a
       minimum educational requirement for law enforcement officers.

28

12074575.1

1   a long term problem." The conduct of Defendants has caused Reed pain
2   and suffering, loss of sleep, emotional distress, and mental anguish.

3   (28) With more than 40 police personnel and its own jail, PALOS
4   VERDES ESTATES is aware of the LUNADA BAY BOYS' criminal activity
5   against visiting beachgoers, but has a policy, custom, and practice of taking
6   no action when it involves the LUNADA BAY BOYS and the Individual
7   Defendants.

8   (29) Upon information and belief, over the last 40 years, Plaintiffs
9   estimate that several hundreds of beachgoers have attempted to recreate in
10  and near Lunada Bay, and like Spencer and Reed, all have suffered similar
11  encounters with Defendants. Upon information and belief, these persons
12  have suffered loss of sleep, emotional distress, and mental anguish.
13  Moreover, upon information and belief, many thousands of beachgoers want
14  to visit Lunada Bay to enjoy its beauty and recreational activities but are
15  afraid to do so because of Defendants' conduct.

16  **CLASS ACTION ALLEGATIONS**

17  (30) Plaintiffs seek to maintain this action as a class action under
18  Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.
19  The class consists of all visiting beachgoers to Lunada Bay who do not live
20  in Palos Verdes Estates, as well as those who have been deterred from
21  visiting Lunada Bay because of the LUNADA BAY BOYS' actions, the
22  Individual Defendants' actions, PALOS VERDES ESTATES' action and
23  inaction, and Defendant Chief of Police Kepley's action and inaction, and
24  subsequently denied during the liability period, or are currently being denied,
25  on the basis of them living outside of Palos Verdes Estates, full and equal
26  enjoyment of rights under the state and federal constitution, to services,
27  facilities, privileges, advantages, or recreational opportunities at Lunada
28  Bay. For purposes of the class, visiting beachgoers includes persons who

do not reside in the City of Palos Verdes Estates, and who are not members of the LUNADA BAY BOYS, but want lawful, safe, and secure access to Lunada Bay to engage in recreational activities, including, but not limited to surfers, boaters, sunbathers, fisherman, picnickers, kneeboarders, stand-up paddle boarders, boogie boarders, bodysurfers, windsurfers, kite surfers, kayakers, dog walkers, walkers, hikers, beachcombers, photographers, and sightseers.

(31)  The class identified in paragraph 30 is believed to consist of at least several thousand members who are dispersed across the State of California, as well outside California.  Joinder of all of such class members in this lawsuit is impracticable.

(32)  The Plaintiffs will fairly and adequately protect the interests of the class because they have retained counsel with extensive experience in litigation, including class action litigation, and because Plaintiffs have no interests that conflict in any way with those of the class.

(33)  There are numerous questions of law and fact common to the class, including without limitation, the following:

a.  Whether LUNADA BAY BOYS is a criminal street gang as defined in Penal Code § 186.22, subdivision (f).

b.  Whether LUNADA BAY BOYS was, and at all times mentioned herein is, also an unincorporated association within the meaning of Corporations Code § 18035, subdivision (a).

c.  Whether the Individual Defendants are members or associated with LUNADA BAY BOYS.

d.  Whether the LUNADA BAY BOYS individually or collectively, engage in or have engaged in a pattern of criminal gang activity, and has as one of its primary activities the commission of enumerated "predicate crimes," including but not limited to assault, battery, vandalism,

1 | intimidation, harassment, and extortion, and, on information and belief, the
2 | sale and use of illegal controlled substances.

3 |         e.      Whether the LUNADA BAY BOYS, through unlawful
4 | conduct, have claimed the Lunada Bay area as their "turf" and attempt to
5 | unlawfully dissuade beachgoers that live outside of Palos Verdes Estates
6 | from recreating in the park, bluff, beach, and ocean areas in and around
7 | Lunada Bay.

8 |         f.      Whether the LUNADA BAY BOYS individually or
9 | collectively, have been negligent in their operation of surfboards, boats, and
10 | other vessels in the navigable waters of Lunada Bay.

11 |         g.      Whether LUNADA BAY BOYS, and the Individual
12 | Defendants, have built and maintain the illegal Rock Fort at the base of the
13 | 100-foot bluff of Lunada Bay.

14 |         h.      Whether LUNADA BAY BOYS, and the Individual
15 | Defendants, have built and maintain illegal trails down the 100 foot bluff of
16 | Lunada Bay.

17 |         i.      Whether LUNADA BAY BOYS, and the Individual
18 | Defendants, have illegal fires, illegally store boats and fishing equipment,
19 | and illegally drink alcohol in Lunada Bay.

20 |         j.      Whether the LUNADA BAY BOYS, and the Individual
21 | Defendants, have illegally extorted money from beachgoers who wish to use
22 | Lunada Bay for recreational purposes.

23 |         k.      Whether the LUNADA BAY BOYS, and the Individual
24 | Defendants, have civilly conspired in their intimidating threats, and follow
25 | through on these threats.

26 |         l.      Whether the beaches, shoreline, bluff, park, street, and
27 | surfing areas in Palos Verdes Estates, specifically Lunada Bay, are open to
28 | the public.

1          m.    Whether the beaches, shoreline, bluff, park, street, and
2 surfing areas along Lunada Bay are owned by PALOS VERDES ESTATES.

3          n.    Whether, acting under color of law, by its policies,
4 customs, and/or longstanding practices, and in deliberate indifference
5 towards Plaintiffs' rights under state and federal law, PALOS VERDES
6 ESTATES has, under the laws of the United States and/or the United States
7 Constitution, unlawfully excluded Plaintiffs, and persons like them, from their
8 right to recreational opportunities at Palos Verdes Estates' parks, beaches,
9 and access to the ocean.

10        o.    Whether Defendant Chief of Police Kepley had final policy-
11 making authority from PALOS VERDES ESTATES concerning
12 investigations and policing activities related non-resident beachgoer
13 complaints against LUNADA BAY BOYS, and the Individual Defendants.

14        p.    Whether in his representative capacity, Defendant Chief of
15 Police Kepley has failed to enforce the State's laws when it comes to crimes
16 committed by Defendant LUNADA BAY BOYS against visiting non-resident
17 beachgoers.

18    (34)   The Plaintiffs' claims are typical of the claims of the members of
19 the class. Like all other members of the class, Plaintiffs are beachgoers who
20 do not reside in Palos Verdes Estates who want to safely visit the Lunada
21 Bay area. Plaintiffs desire to lawfully use the Lunada Bay Area for
22 recreational purposes, free from the assault, battery, vandalism, intimidation,
23 harassment, and extortion by LUNADA BAY BOYS and the Individual
24 Defendants.

25    (35)   The Plaintiffs' claims are typical of the claims of the members of
26 the class. Like all other members of the class, Plaintiffs are beachgoers who
27 desire requisite permitting of the Rock Fort and bluff trails to Lunada Bay by
28 the California Coastal Commission, in addition to any other equitable relief

1 appropriate to ensure access to Lunada Bay, which may include improved
2 trails, restrooms, parking, lighting, and the installation of 24-hour video
3 cameras.

4     (36) The Plaintiffs' claims are typical of the claims of the members of
5 the class. Like all other members of the class, Plaintiffs are beachgoers who
6 desire PALOS VERDES ESTATES and Chief of Police Kepley to investigate
7 and prosecute crimes committed by the LUNADA BAY BOYS and/or the
8 Individual Defendants against non-resident beachgoers.

9     (37) This action may be maintained as a class action pursuant to
10 Rule 23(b)(2) because Defendants' unlawful activity is applicable to all
11 members of the class. Therefore, an injunction requiring compliance with
12 state and federal law is appropriate – namely access to Lunada Bay for
13 recreational purposes – and the primary relief sought is injunctive relief.

14     (38) This action may be maintained as a class action pursuant to
15 Rule 23(b)(3) because the many questions of law and fact that are common
16 to class members clearly predominate over individual questions affecting
17 members of the class. The common issues of law and fact relate to issues
18 central to the case, such as whether LUNADA BAY BOYS and PALOS
19 VERDES ESTATES have unlawfully denied members of the class full and
20 equal access to the coast, and to recreate in Lunada Bay, as well as
21 whether Defendants maintain longstanding customs, policies and practices
22 and other measures intended to deny non-resident beachgoers full and
23 equal access to Lunada Bay and the surrounding areas, as provided by the
24 state and federal constitutions and laws.

25     (39) Judicial economy will be served by maintenance of this lawsuit
26 as a class action in that it is likely to avoid the burden that would be
27 otherwise placed upon the judicial system by the filing of numerous similar
28 suits by beachgoers who have been denied full and equal access to Lunada

1 | Bay.

2 |     (40)  Maintaining this lawsuit as a class action will also avoid the risk
3 | of inconsistent outcomes if class members were forced to bring individual
4 | actions in various forums.

5 |     (41)  There are no obstacles to effective and efficient management of
6 | this lawsuit as a class action by this Court.

7 |     (42)  Plaintiffs contemplate notice to the class by news media
8 | publication, including (1) social networking sites, such as Facebook and
9 | Twitter, (2) ocean-oriented Internet sites such as Surfline.com,
10 | Magicseaweed.com, Surfingmagazine.com, Surfermagazine.com,
11 | Worldsurfleague.com, Surfertoday.com, and Sufersjournal.com; (3) a
12 | California newspaper such as *The Los Angeles Times*; and (4) a
13 | coordinated email campaign with a non-profit ocean advocacy group such
14 | as Surfrider Foundation, and Surfrider Southbay.

15 | **FIRST CAUSE OF ACTION**

16 | **(Bane Act – Against LUNADA BAY BOYS and the Individual**
17 | **Defendants)**

18 |     (43)  Plaintiffs repeat, re-allege and incorporate herein by this
19 | reference each and every allegation contained in Paragraphs 1 through 42,
20 | inclusive.

21 |     (44)  In addition to being personally victimized by Defendants' crimes
22 | and other gang-related activities, Plaintiffs, and the class members, have
23 | observed violent crimes committed against others. Throughout the Lunada
24 | Bay area, Defendants' members not only confront and attack other beach-
25 | going class members, but also confront, threaten to kill, assault, vandalize
26 | property, extort, and bring harm to other persons who live in, work in, or
27 | pass through the Lunada Bay area. Defendants' criminal and other gang-
28 | related activities against visiting beachgoers to Lunada Bay violates the

1   Bane Act. Defendants' activities create a threatening and intimidating
2   atmosphere for visiting beachgoers, and therefore, infringe upon their
3   constitutional right to recreate on California's public beaches.

4       (45)   Defendants' activities attempt to interfere with and do interfere
5   with Plaintiffs' and class members' constitutional rights by creating a
6   dangerous, threatening, and intimidating environment in the Lunada Bay
7   area. Their conduct brings potential and actual harm to the Lunada Bay
8   area, and to the visiting beachgoers that would like to visit.

9       (46)   Throughout the Lunada Bay area, Defendants, individually,
10  collectively, and in concert, also vandalize public and private property, sell
11  and use narcotics, loiter, and drink alcohol on the beach and bluff. These
12  activities occur throughout the day and evening. Such activities create and
13  foster an atmosphere of fear and intimidation. Out of fear for their safety
14  and lives, Plaintiffs and many other visiting beachgoers travel to and from
15  Lunada Bay in groups, rather than alone, in an effort to decrease the
16  likelihood of becoming a victim of a gang attack. Defendants by their
17  threatening, intimidating and coercive actions have attempted to interfere
18  with, and do interfere with the constitutional rights of Plaintiffs and class
19  members.

20      (47)   To perpetuate their desire to unlawfully intimidate Plaintiffs and
21  members of the class from lawfully using Lunada Bay, Defendants
22  coordinate their efforts using lookouts, by yelling, signaling, whistling, and
23  use of cell phones. Moreover, Defendants monitor police and fire radios, in
24  addition to the lookouts, to warn each other of approaching law enforcement.

25      (48)   Under the Bane Act (Cal. Civ. Code § 52.1(b)), any person
26  whose exercise or enjoyment of the rights secured by the California
27  Constitution, or the United States Constitution, has been interfered with, or
28  attempted to be interfered with, may institute a civil action for damages,

1 injunctive relief, and other appropriate equitable relief to protect the
2 peaceable exercise and enjoyment of rights.

3     (49)   Plaintiffs and the class members have no plain, speedy, or
4 adequate remedy at law.  Many victims and witness to criminal activities
5 committed by LUNADA BAY BOYS feel the gang's constant, pervasive, and
6 menacing presence in Lunada Bay, and thus refuse to cooperate with law
7 enforcement.  Defendants threaten basic public order with their oppressive
8 and widespread witness intimidation.  Traditional law enforcement methods
9 and criminal prosecution has not deterred Defendants from pursuing their
10 criminal activities, and Plaintiffs and other visiting beachgoers to Lunada Bay
11 are at continued risk to their safety, lives and property.

12     (50)   Unless restrained by this Court, Defendant LUNADA BAY BOYS
13 acting through their respective membership, will continue to violate the rights
14 of Plaintiffs and members of the class, as protected by the Bane Act.  Unless
15 restrained by this Court, Defendant LUNADA BAY BOYS will continue to
16 harass, attack, injure, and threaten visiting beachgoers to Lunada Bay.
17 Unless restrained by this Court, Defendant LUNADA BAY BOYS will
18 continue to intimidate visiting beachgoers from reporting and prosecuting
19 criminal activities committed by LUNADA BAY BOYS.  Unless restrained by
20 this Court, Defendants will continue to build and maintain illegal structures in
21 Lunada Bay, and vandalize visiting beachgoer property.  Unless restrained
22 by this Court, LUNADA BAY BOYS gang members will continue to engage
23 in violent activities in Lunada Bay area.  Unless restrained by this Court,
24 Defendant LUNADA BAY BOYS gang members will continue to drink in
25 public. Unless restrained by this Court, members of Defendant LUNADA
26 BAY BOYS gang will continue to loiter in the Lunada Bay area, blocking
27 Plaintiffs and the class of beachgoers from using the trails to gain ocean
28 access to Lunada Bay.  Unless restrained by this Court, Defendant LUNADA

1  BAY BOYS will continue to threaten, intimidate, and coerce Plaintiffs and the
2  visiting beach-going class so that they will not exercise their state and
3  federal rights to recreate in Lunada Bay, in a peaceful, safe, and secure
4  environment.

5       WHEREFORE, Plaintiffs pray for relief as set forth below.

6  ## CIVIL CONSPIRACY ALLEGATIONS

7       (51)  Plaintiffs repeat, re-allege and incorporate herein by this
8  reference each and every allegation contained in Paragraphs 1 through 50,
9  inclusive.

10      (52)  Defendant LUNADA BAY BOYS is a criminal gang whose
11  members are primarily engaged in criminal and nuisance activities which
12  constitute Bane Act violations and a public nuisance.  Defendants' members
13  regularly confront, attack, harass and assault people attempting to access
14  the beach, but also confront, threaten to kill, assault, vandalize property,
15  extort, and bring harm to other persons who live in, work in, or pass through
16  the Lunada Bay area for the primary purpose of preventing those people
17  from accessing the beach area and for the purpose of committing torts and
18  other wrongs on them.  Defendants' criminal and other gang-related
19  activities against visiting beachgoers to Lunada Bay violates the Bane Act
20  and other laws.  Defendants' activities create a threatening and intimidating
21  atmosphere for visiting beachgoers, and therefore, infringe upon their rights
22  constitutional right to recreate on California's public beaches.

23      (53)  Each Individual Member of LUNADA BAY BOYS is aware that
24  people attempting to access the beach at Lunada Bay will be confronted,
25  attacked, harassed, assaulted by other LUNADA BAY BOY Individual
26  Members.

27  / / /

28  / / /

## SECOND CAUSE OF ACTION

**(Public Nuisance - LUNADA BAY BOYS and the Individual Defendants)**

(54)  Plaintiffs repeat, re-allege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 53, inclusive.

(55)  The activities of Defendants the LUNADA BAY BOYS, acting through their respective members, and the Individual Defendants, constitute a public nuisance pursuant to Civil Code sections 3479 and 3480. Defendants, individually, collectively, and in concert, confront, threaten to kill, assault, vandalize public and private property, extort, loiter, drink alcohol in public areas and bring harm to other persons who work in, visit or pass through the Lunada Bay area.  In addition, Defendants' activities obstruct the free passage and use of the public park and ocean access.

(56)  Many of the acts committed by Defendants, individually, collectively, and in concert, constitute a nuisance per se.  The City of Palos Verdes Estates Municipal Code ("PVE Code") section 8.48.015 provides that any violation of Title 8, Health and Safety, Title 12, Streets, Sidewalks and Public Places, Title 15, Building and Construction, and Title 19, Coastal Regulations, is declared a public nuisance per se and may be abated as such.  Defendants, individually, collectively, and in concert, have committed numerous PVE Code violations including, but not limited to, the following: smoking in undeveloped public place (PVE Code section 8.56.020); erecting, placing, constructing, establishing, or maintaining any structure or object on public property without a permit (PVE Code section 12.04.020); making or causing to be made any excavation, cut, or fill in any public place in the city without a permit (PVE Code section 12.12.020); violating city rules and regulations governing use and enjoyment by the public of any park or grounds (PVE Code section 12.24.020); disorderly conduct in parkland,

1 including but not limited to disrobing, urinating, displaying any lewd act, and
2 throwing stones, in any park or grounds (PVE Code section 12.24.100);
3 violating of building codes (PVE Code section 15.08.130); and failing to
4 obtain a coastal development permit (PVE Code section 19.020.030).

5     (57)  In addition to these PVE Code violations, Defendants,
6 individually, collectively, and in concert, obstruct the free passage and use,
7 in the customary manner, of a navigable bay and public park, which is
8 deemed a public nuisance per se under Civil Code section 3479.

9     (58)  Defendants, individually, collectively, and in concert, annoy,
10 harass, and confront individuals who live in, work in, and pass through
11 Lunada Bay area, causing victims to fear for their safety and the safety of
12 their families and friends.  Because of Defendants' criminal and nuisance
13 activities, law-abiding people are forced to avoid the Lunada Bay area and
14 parklands, to avoid being confronted, harassed, or assaulted.
15 Consequently, Defendants' behavior is injurious to the health, is indecent
16 and is offensive to the sense and interferes with the free use and
17 comfortable enjoyment of life and property by the people in the Lunada Bay
18 area.

19     (59)  Defendants, individually, collectively, and in concert, proclaim
20 their ownership of the Lunada Bay area by coordinating their efforts to
21 prevent public access by using lookouts, yelling, signaling, whistling, and cell
22 phones.  Defendants' activity intimidates and dissuades people from
23 speaking out and is offensive to the senses and interferes with the
24 comfortable enjoyment of public property for those who work in, visit and
25 travel through the Lunada Bay Area.

26     (60)  Unless restrained by this Court, Defendants will continue to
27 cause great and irreparable damage, injury, and harm the individuals who
28 work in, visit and pass through Lunada Bay area.  Unless restrained by this

1 Court, Defendants will continue to maintain the public nuisance in the
2 Lunada Bay area, by participating in and promoting the above-described
3 activities, including but not limited to assault, harass, threaten, intimidate,
4 and prevent individuals who work in, visit, and pass through Lunada Bay
5 area. Each activity has been, and will continue to be, without the consent,
6 against the will, and in violation of the rights of the community in the Lunada
7 Bay area. The peace, safety, and comfortable enjoyment of the life and
8 property by the community members in the Lunada Bay area are being, and
9 will continue to be, disturbed and threatened, unless equitable relief in the
10 form of an injunction as prayed for against Defendants LUNADA BAY
11 BOYS, acting through their respective members, and the Individual
12 Defendants is granted.

13 WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION

### (42 U.S.C. § 1983 – Equal Protection – PALOS VERDES ESTATES and Defendant Chief of Police Kepley)

17 (61) Plaintiffs repeat, re-allege and incorporate herein by this
18 reference each and every allegation contained in Paragraphs 1 through 60,
19 inclusive.

20 (62) By knowingly allowing the LUNADA BAY BOYS to exclude non-
21 residents from Lunada Bay, a public beach, through violence, harassment,
22 vandalism, threats, and intimidation, and by ignoring non-residents' and
23 Plaintiffs' complaints of such exclusion and violence, PALOS VERDES
24 ESTATES, as a municipality acting under color of law, has created an
25 unlawful and irrational policy, custom, or practice of exclusion of others on
26 the basis of their status as non-residents.

27 (63) Defendant Chief of Police Kepley, acting under color of law,
28 enforces this fundamentally unfair policy, custom, or practice of exclusion of

1 non-residents by irrationally and arbitrarily discriminating against Plaintiffs
2 and in favor of PALOS VERDES ESTATES and the LUNADA BAY BOYS in
3 violation of Plaintiffs' right to equal protection of the laws.

4     (64)  Defendants PALOS VERDES ESTATES and Chief of Police
5 Kepley's acts of allowing the LUNADA BAY BOYS to threaten, intimidate,
6 harass, and exclude non-residents from Lunada Bay bears no rational
7 connection to public health, safety, or welfare.

8     (65)  An actual controversy exists between the parties, and Plaintiffs
9 are suffering an ongoing and irreparable harm, including loss of sleep,
10 emotional distress, and mental anguish as a direct and proximate result of
11 PALOS VERDES ESTATES and Defendant Chief of Police Kepley's
12 deliberate indifference to Plaintiffs' rights under the Fourteenth Amendment.
13 The harm will continue unless the custom, policy, or practice of exclusion is
14 declared unlawful and enjoined by this Court.

15     WHEREFORE, Plaintiffs pray for relief as set forth below.

16                 **FOURTH CAUSE OF ACTION**

17     **(42 U.S.C. § 1983 – Privileges and Immunities – PALOS VERDES**
18         **ESTATES and Defendant Chief of Police Kepley)**

19     (66)  Plaintiffs repeat, re-allege and incorporate herein by this
20 reference each and every allegation contained in Paragraphs 1 through 65,
21 inclusive.

22     (67)  By implementing and carrying out a policy, custom or practice of
23 prohibiting non-residents from accessing Lunada Bay, Defendants PALOS
24 VERDES ESTATES and Chief of Police Kepley, acting under color of state
25 law, arbitrarily and unreasonably interfere with Plaintiffs' constitutional right
26 to enter public lands in violation of the Privileges and Immunities Clause of
27 Article IV of the U.S. Constitution.

28     (68)  Defendants PALOS VERDES ESTATES and Chief of Police

1 Kepley's policy, custom or practice of allowing the LUNADA BAY BOYS to
2 deny non-residents access to Lunada Bay, which is public land, bears no
3 rational connection to public health, safety, or welfare.

4    (69)   An actual controversy exists between the parties, and Plaintiffs
5 are suffering ongoing and irreparable harm, including loss of sleep,
6 emotional distress, and mental anguish as a direct and proximate result of
7 PALOS VERDES ESTATES and Defendant Chief of Police Kepley's
8 deliberate indifference to Plaintiffs' rights under the Privileges and
9 Immunities Clause of the U.S. Constitution.  The harm will continue unless
10 Defendants' policy, custom or practice of preferential treatment of residents
11 and exclusion of non-residents is declared unlawful and enjoined by this
12 Court.

13    WHEREFORE, Plaintiffs pray for relief as set forth below.

14              **FIFTH CAUSE OF ACTION**

15      **(Violation of California Coastal Act – All Defendants)**

16    (70)   Plaintiffs repeat, re-allege and incorporate herein by this
17 reference each and every allegation contained in Paragraphs 1 through 69,
18 inclusive.

19              CALIFORNIA COASTAL ACT

20    (71)   The California legislature adopted the Coastal Act in 1976 to
21 protect and enhance California's natural and scenic coastal resources. The
22 California Coastal Act created the California Coastal Commission (hereafter,
23 "the Commission") in addition to an elaborate planning process to ensure
24 that development in the "coastal zone" is consistent with and reflects the
25 findings and declarations made by the Legislature as stated clearly in Public
26 Resources Code Section 30001:

27         (a)   That the California coastal zone is a distinct
             and valuable natural resource of vital and enduring
28

interest to all the people and exists as a delicately balanced ecosystem.

(b) That the permanent protection of the state's natural and scenic resources is a paramount concern to present and future residents of the state and nation.

(c) That to promote the public safety, health, and welfare, and to protect public and private property, wildlife marine fisheries, and other ocean resources, and the natural environment, it is necessary to protect the ecological balance of the coastal zone and prevent its deterioration and destruction.

(d) That existing developed uses, and future developments that are carefully planned and developed consistent with the policies of [the Coastal Act], are essential to the economic and social well-being of the people of this state and especially to working persons employed within the coastal zone.

(72) The Coastal Act provides that the Act "shall be liberally construed to accomplish its purposes and objectives." Cal. Pub. Resources Code §30009.

(73) The "Coastal Zone" is that land specified on maps identified and set forth in section 17 of Chapter 1330 of the Statutes of 1975-1976 Regular Session enacting Division 20 of the Public Resources Code and subsequent amendments. In significant coastal estuarine, habitat, and recreational areas it extends inland to the first major ridgeline paralleling the sea of five miles from the mean high tide line of the sea, whichever is less, and in developed urban areas the zone generally extends inland less than 1,000 yards. Cal. Pub. Resources Code § 30103(a). The section of Ocean Beach which is the subject of these proceedings is located within the Coastal Zone.

(74) The Coastal Act requires that "**any person...wishing to perform or undertake any development in the coastal zone... shall obtain a coastal development permit.**" Cal. Pub. Resources Code § 30600(a).

1   (75)   The California Coastal Act defines "person" as "any person, firm,

2   association, organization, partnership, business, trust, corporation, limited

3   liability company, company, district, county, city and county, city, town, the

4   state, and any of the agencies and political subdivisions of those entities,

5   and, to the extent permitted by federal law, the United States, or any of its

6   agencies or political subdivisions."  Cal. Pub. Resources Code § 30111.

7   Defendants are persons under the California Coastal Act.

8   (76)   The Coastal Act defines "development" as:

> [O]n land, in or under water, the placement or erection of any solid material or structure; discharge or disposal or any dredged material or any gaseous, liquid, solid, or thermal waste; grading, removing, dredging, mining, or extraction of any materials; change in the density or intensity of use of land, including, but not limited to, subdivision pursuant to the Subdivision Map Act… and any other division of land, including lot splits, except where the land division is brought about in the connection with the purchase of such land by a public agency for public recreational use; change in the intensity use of water, or of access thereto; construction, reconstruction, demolition, or alteration of the size of any structure, including any facility of any private, public, or municipal utility; and the removal or harvesting of major vegetation other than for agricultural purposes, kelp harvesting, and timber operations which are in accordance with a timber harvesting plan… As used in section, 'structure' includes, but is not limited to, any building, road, pipe, flume, conduit, siphon, aqueduct, telephone line, and electrical power transmission and distribution line.

25   Cal. Pub. Resources Code § 30106.

26   (77)   The Municipal Code for Palos Verdes Estates defines

27   "development" as:

28

12074575.1

-33-

CASE NO. 2:16-cv-2129

CLASS ACTION COMPLAINT AND JURY DEMAND

Whether lying on land outside of the water, or in or under water, each of the following shall be a 'development' for purposes of this chapter:

A. The placement or erecting of any solid material or structure;

B. The discharge or disposal of any dredged material or any gaseous, liquid, solid or thermal waste;

C. Grading, removing, dredging, mining or extraction of any materials;

D. A change in density or intensity of the use of any land, including but not limited to (1) any subdivision created pursuant to the Subdivision Map Act commencing with Cal. Gov. Code § 66410, (2) any other division of land, including lot splits; provided, however, that where a land division is brought in connection with the purchase of said land by a public agency for public recreational use, such division shall not constitute a development for purposes of this chapter.

## UNPERMITTED DEVELOPMENTS

(78)  On the north side of Lunada Bay nearest Palos Verdes Point, the LUNADA BAY BOYS, its members, and the Individual Defendants have built and maintain an illegal rock-masonry-and-wood fort structure at the base of the 100-foot bluff.  Plaintiffs are informed and believe and thereon alleged that this structure is on property owned by PALOS VERDES ESTATES.

(79)  In the middle of Lunada Bay, LUNADA BAY BOYS and the Individual Defendants have built and maintain a steep trail down the 100-foot bluff called the Goat Trail.  Plaintiffs are informed and believe and thereon alleged that this trial is on property owned by PALOS VERDES ESTATES.

(80)  Defendant LUNADA BAY BOYS and Individual Defendants have built a campfire ring with seating in the middle of Lunada Bay, near the base of the Goat Trail.  Plaintiffs are informed and believe and thereon alleged that this trail is on property owned by PALOS VERDES ESTATES.

(81)  On the south side of Lunada Bay, there is another trail down to

1  Lunada Bay ("South Trail"). Plaintiffs are informed and believe and thereon

2  alleged that this trail is on property owned by PALOS VERDES ESTATES.

BLOCKING FULL PUBLIC ACCESS TO COAST

4  (82)  Defendants' members regularly confront, attack, harass and

5  assault people attempting to access the beach, but also confront, threaten to

6  kill, assault, vandalize property, extort, and bring harm to other persons who

7  work in, visit or pass through the Lunada Bay area for the primary purpose

8  of preventing those people from accessing the beach area and for the

9  purpose of committing torts and other wrongs on them.  Defendants' criminal

10 and other gang-related activities against visiting beachgoers to Lunada Bay

11 violates the Bane Act and other laws.  Defendants' activities create a

12 threatening and intimidating atmosphere for visiting beachgoers, and

13 therefore, infringe upon their rights constitutional right to recreate on

14 California's public beaches.

15 (83)  By letter dated January 21, 2016, enforcement analyst Jordan

16 Sanchez of the California Coastal Commission notified Chief Jeff Kepley of

17 the Palos Verdes Police Department that, among other things:

18      Precluding full public use of the coastline at Palos
         Verdes Estates, including the waters of Lunada Bay,
19      whether through physical devices, such as
         construction of a fence, or nonphysical impediments,
20      such as threatening behavior intended to discourage
         public use of the coastline, represents a change of
21      access to water, and, thus, constitutes development
22      under the Coastal Act and the Palos Verdes Estates
         LPC [Local Coastal Program].  No coastal
23      development permit has been issued to authorize
24      this activity, therefore, it is a violation of the LCP. . .
         We have also received reports of unpermitted
25      structures, including stone forts, constructed on the
26      shoreline of Lunada Bay . . . the construction of a
         structure is also development that is within the power
27      of the City to address . . .
28

1 (Attached and incorporated herein as Exhibit 18.)

2 (Declaratory Relief)

3 (84) Pursuant to California Public Resources Code Section 30803(a),
4 the California Coastal Act provides, in relevant part that, "any person may
5 maintain an action for declaratory and equitable relief to restrain any
6 violation of this division…"

7 (85) An actual controversy exists between the Plaintiffs and the
8 Defendants in that these Defendants have violated and are violating the
9 California Coastal Act but refuse to admit the illegal nature of their activities.

10 (86) Because of the controversy that exists among the parties, a
11 declaration of the rights and responsibilities of the parties with respect to the
12 California Coastal Act is necessary. Specifically, Plaintiffs seek a
13 declaration from this Court that the Defendants' acts as alleged herein are
14 separate and continuing violations of the California Coastal Act.

15 (Injunctive Relief)

16 (87) Plaintiffs have no adequate remedy at law to require the
17 Defendants to obtain a coastal development permit as alleged in this
18 Complaint and, therefore, civil fines alone will not remedy the wrongs about
19 which Plaintiffs complain.

20 (88) Unless this Court grants the equitable relief sought by Plaintiffs
21 and the public generally, they will be irreparably harmed in that it will be
22 deprived of both the aesthetic enjoyment and environmental protection of
23 the natural resources in this part of the California Coastal Zone.

24 (89) Pursuant to California Public Resources Code Section 30803(a),
25 the Coastal Act provides in relevant part: "…On a prima facie showing of a
26 violation of this division, preliminary equitable relief shall be issued to
27 restrain any further violation of the division. No bond shall be required for an
28 action under this section."

1    (90)  As a consequence of the Defendants' activities, Plaintiffs are

2  entitled to a temporary restraining order to prevent any further development

3  in the affected area while the Court considers any application by Plaintiffs for

4  preliminary and permanent injunctive relief.

5                                (Civil Fines)

6    (91)  Pursuant to California Public Resources Code section 30820(a),

7  the California Coastal Act provides in relevant part for civil fines as follows:

8          Any person who violates any provision of this division
9          may be civilly liable in accordance with this
            subdivision as follows:

10        Civil liability may be imposed by the superior court in
           accordance with this article on any person who
11       performs or undertakes development that is in
           violation of this division … in an amount that shall not
12       exceed thirty thousand dollars ($30,000) and shall
           not be less than five hundred dollars ($500) . . . Civil
13       liability may be imposed for any violation of this
           division other than that specified in paragraph (1) in
14       an amount that shall not exceed thirty thousand
           dollars ($30,000).

15

16    (92)  Plaintiffs are informed and believe and on such information and

17  belief allege that the Defendants are liable for civil fines by virtue of the fact

18  that they have failed to obtain and comply with the terms and conditions of a

19  Coastal Development Permit as alleged herein.

20                                (Daily Fines)

21    (93)  Pursuant to California Public Resources Code section 30820(b),

22  the California Coastal Act provides in relevant part for additional civil fines as

23  follows:

24          Any persons who performs or undertakes
           development that is in violation of this division …
25       when that person intentionally and knowingly
           performs or undertakes the development in violation
26       of this division … may, in addition to any other
           penalties, be civilly liable in accordance with this
27       subdivision. Civil liability may be imposed by the
           superior court in accordance with this article for a
28       violation as specified in this subdivision in an amount

> which shall not be less than one thousand dollars ($1,000.00), nor more than fifteen thousand dollars ($15,000.00), per day for each day in which the violation persists.

4    (94)  Plaintiffs are informed and believe and on such information and

5 belief allege that the Defendants, by virtue of their knowing, intentional, and

6 continuing violation(s) of the California Coastal Act, are liable for daily fines

7 of up to $15,000.00 for each day in which the alleged violations(s) have

8 occurred and continue without abatement.

9    WHEREFORE, Plaintiffs pray for relief as set forth below

10    **SIXTH CAUSE OF ACTION**

11    **(Assault - LUNADA BAY BOYS and the Individual Defendants)**

12    (95)  Plaintiffs repeat, re-allege and incorporate herein by this

13 reference each and every allegation contained in Paragraphs 1 through 94,

14 inclusive.

15    (96)  At all relevant times the LUNADA BAY BOYS and the Individual

16 Defendants acted with the intent to cause harmful and/or offensive contact

17 to Plaintiffs and the class members.

18    (97)  Plaintiffs reasonably believed that they were about to be touched

19 in a harmful offensive manner. It reasonably appeared to Plaintiffs that the

20 LUNADA BAY BOYS and the Individual Defendants were about to carry out

21 the threat.

22    (98)  Plaintiffs did not consent to the LUNADA BAY BOYS and the

23 Individual Defendants' conduct.

24    WHEREFORE, Plaintiffs pray for relief as set forth below.

25    **SEVENTH CAUSE OF ACTION**

26    **(Battery - LUNADA BAY BOYS and the Individual Defendants)**

27    (99)  Plaintiffs repeat, re-allege and incorporate herein by this

28 reference each and every allegation contained in Paragraphs 1 through 98,

1  inclusive.

2  (100) As set forth previously, the LUNADA BAY BOYS and the
3  Individual Defendants at various different times touched Plaintiffs and
4  various class members with the intent to harm or offend.

5  (101) Plaintiffs and various class members did not consent to the
6  touching and were harmed and/or offended by the LUNADA BAY BOYS and
7  its Individual Defendants' conduct. A reasonable person in Plaintiff's'
8  situation would have been offended by the touching.

9  **EIGHTH CAUSE OF ACTION**

10  **(Negligence - LUNADA BAY BOYS and the Individual Defendants)**

11  (102) Plaintiffs repeat, re-allege and incorporate herein by this
12  reference each and every allegation contained in Paragraphs 1 through 101,
13  inclusive.

14  (103) Defendants LUNADA BAY BOYS and the Individual Defendants
15  breached their legal duty by acting as heretofore alleged. As described
16  herein and alleged above, Defendants failed to exercise ordinary and
17  reasonable care in complying with the aforementioned statutorily imposed
18  duties, and, therefore, breached the same, proximately resulting in general
19  and special damages to Plaintiffs according to proof.

20  (104) It was reasonably foreseeable that Defendants' conduct, as
21  herein alleged, would give rise to Plaintiffs' severe emotional distress
22  because Defendants had actual knowledge of the conditions and the
23  consequences to Plaintiffs but nevertheless disregarded the rights, health
24  and safety of Plaintiffs.

25  (105) At the time Defendants acted as heretofore alleged, Defendants
26  knew, or reasonably should have known, that Plaintiffs would suffer extreme
27  mental distress, embarrassment, frustration, annoyance, inconvenience,
28  anger, shame, physical pain and discomfort, and grief. Plaintiffs suffered

1 extreme emotional distress, anger, frustration, fear and inconvenience all
2 based on Defendants' negligent conduct.

3     (106) As a direct and proximate result of Defendants' negligent
4 conduct, Plaintiffs suffered actual, general, and special damages including
5 extreme emotional distress as set forth herein.

6     WHEREFORE, Plaintiffs pray for relief as set forth below.

7 **RELIEF**

8     WHEREFORE, Plaintiffs respectfully request:

9     1.    That this Court assume jurisdiction.

10     2.    That this Court certify the class identified in paragraph 30.

11     3.    That this Court certify that Plaintiffs Spencer and Reed are
12 representative of this class.

13     4.    That this Court declare LUNADA BAY BOYS to be a criminal
14 street gang as defined in California Penal Code § 186.22(f), and an
15 unincorporated association within the meaning of California Corporations
16 Code § 18035(a). Further, that this Court declare the Individual Defendants
17 are members or associated with LUNADA BAY BOYS. And, that this Court
18 declare LUNADA BAY BOYS and the Individual Defendants have engaged
19 in predicate crimes under California Civil Code § 52.1.

20     5.    That this Court issue an injunction under California Civil Code
21 § 52.1, ordering LUNADA BAY BOYS and the Individual Defendants to
22 refrain from the unlawful conduct and activities described in this action,
23 further enjoining LUNADA BAY BOYS and the Individual Defendants from
24 congregating, recreating (including but not limited to any beachgoer activity)
25 or otherwise using the Lunada Bay area between Resort Point to the south
26 and Palos Verdes Point to the north, including the Rock Fort, the ocean,
27 beach, bluff, and street areas surrounding Lunada Bay.

28     6.    That this Court award minimum statutory damages, defined as

1 | $4,000 per incident of under California Civil Code §§ 52.1(b), and 52(a) to
2 | each Plaintiff and member of the proposed class for violations of their rights
3 | under state law, as well as any other damages that may be appropriate.

4 |    7.    That this Court declare PALOS VERDES ESTATES, and Chief
5 | of Police Kepley in his representative capacity, to have has engaged in
6 | unlawful municipal exclusion under 42 U.S.C. § 1983 by their policies,
7 | customs, and/or longstanding practices, and in deliberate indifference
8 | towards Plaintiffs' rights under the laws of the United States and/or the
9 | United States Constitution unlawfully excluded Plaintiffs, and persons like
10 | them, from their right to recreational opportunities at Palos Verdes Estates'
11 | parks, beaches, and access to the ocean on the basis of their status as non-
12 | residents.

13 |    8.    That this Court issue an injunction requiring PALOS VERDES
14 | ESTATES and Chief of Police Kepley to investigate complaints against the
15 | LUNADA BAY BOYS and the Individual Defendants, and prosecute these
16 | complaints as appropriate, if the LUNADA BAY BOYS and/or the Individual
17 | Defendants harass, attack, injure, threaten, intimidate, extort, or coerce
18 | visiting beachgoers to Lunada Bay.

19 |    9.    For an award of general damages against the LUNADA BAY
20 | BOYS and the Individual Defendants.

21 |    10.    For an award of special damages against the LUNADA BAY
22 | BOYS and the Individual Defendants.

23 |    11.    For an award of exemplary damages against the LUNADA BAY
24 | BOYS and the Individual Defendants.

25 |    12.    With respect to the Fifth Cause of Action, for a declaration of the
26 | rights and responsibilities of the parties with respect to the California Coastal
27 | Act. Specifically, Plaintiffs seek a declaration from the Court that the
28 | Defendants' actions as set forth in this Complaint are separate and

1 continuing violations of the California Coastal Act.

2     13. With respect to the Fifth Cause of Action, for preliminary and
3 permanent injunctive relief mandating the Defendants to refrain from any
4 further activities in the affected area without first complying with the
5 provisions of the Coastal Act and for a permanent injunction requiring the
6 Defendants to obtain a lawfully issued Coastal Development Permit.

7     14. With respect to the Fifth Cause of Action, for a civil fine of up to
8 $30,000.00 against each Defendant for each act authorizing or engaging in
9 or performing activities in violation of the California Coastal Act.

10     15. With respect to the Fifth Cause of Action, for a civil fine of up to
11 $15,000.00 per day against each Defendant for each day from the
12 commencement of the violation(s) of the California Coastal Act to the date
13 each Defendant complies with the requirements of the California Coastal
14 Act.

15     16. For costs and attorney's fees incurred by Plaintiffs in prosecuting
16 the instant action as allowed by Code of Civil Procedure section 1021.5
17 and/or any other applicable provision(s) of law.

18     17. That this Court award Plaintiffs' reasonable attorneys' fees and
19 costs pursuant to federal and California law.

20     18. That this Court award such additional or alternative relief as may
21 be just, proper and equitable.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

1

# __DEMAND FOR JURY TRIAL__

2    Plaintiffs demand a jury on all issues which can be heard by a jury.

3

4    DATED:  March 29. 2016          HANSON BRIDGETT LLP

5

6                                    By:_____/s/ Kurt A. Franklin_____
                                         KURT A. FRANKLIN
7

8    DATED:  March 29. 2016          OTTEN LAW. PC
9

10                                   By:_____/s/ Victor Otten_____
11                                       VICTOR OTTEN

12                                   Attorneys for Plaintiffs
                                     CORY SPENCER, DIANA MILENA
13                                   REED, and COASTAL PROTECTION
                                     RANGERS, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# L.R. 5-4.3.4(A)(2) ATTESTATION

I, Kurt A. Franklin, am the ECF User whose ID and password are being used to file the following: **Class Action Complaint and Jury Demand**. In compliance with Civil L.R. 5-4.3.4(a)(2), I hereby attest that I have obtained concurrence in this filing and authorization to file from co-counsel, Victor Otten.

DATED:  March 29. 2016                    HANSON BRIDGETT LLP


By:_____*/s/ Kurt A. Franklin*_____
KURT A. FRANKLIN

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

# Exhibit B

1  Patrick Au, State Bar No. 174327
   pau@bremerwhyte.com
2  Laura L. Bell, State Bar No. 134276
   lbell@bremerwhyte.com
3  BREMER WHYTE BROWN & O'MEARA LLP
   21271 Burbank Boulevard
4  Suite 110
   Woodland Hills, California 91367
5  Telephone: (818) 712-9800
   Facsimile: (818) 712-9900
6
   Attorneys for Defendants,
7  FRANK FERRARA and CHARLIE FERRARA

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

10

11 CORY SPENCER, an individual; DIANA       ) Case No. 2:16-cv-2129
   MILENA REED, an individual;             )
12 COASTAL PROTECTION RANGERS,             ) Judge: Hon. S. James Ontero
   INC. et al,                             ) Dept:  1
13                                         )
              Plaintiff,                   ) **DEFENDANT, FRANK**
14                                         ) **FERRARA'S ANSWER TO THE**
       vs.                                 ) **CLASS ACTION COMPLAINT**
15                                         )
   LUNADA BAY BOYS; THE                    )
16 INDIVIDUAL MEMBERS OF THE               )
   LUNADA BAY BOYS, including but not      )
17 limited to SANG LEE, BRANT              )
   BLAKEMAN, ANGELO FERRARA,               )
18 FRANK FERRARA, CHARLIE                  )
   FERRARA, et al,                         )
19                                         )
              Defendants.                  )
20 _____ )

21          **ANSWER TO CLASS ACTION COMPLAINT**

22          Pursuant to Rule 8 of the Federal Rules of Civil Procedures, Defendant,

23 FRANK FERRARA, by and through his attorneys, hereby answers the unverified

24 Class Action Complaint (hereinafter "Complaint") filed by Plaintiffs, CORY

25 SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL

26 PROTECTION RANGERS, INC. et al. (herein collectively known as "Plaintiffs") as

27 follows:

28 ///

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

## **THE PARTIES**

1. Answering paragraph 1, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

2. Answering paragraph 2, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

3. Answering paragraph 3, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

4. Answering paragraph 4, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

5. Answering paragraph 5, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

6. Answering paragraph 6, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

7. Answering paragraph 7, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

8. Answering paragraph 8, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

9. Answering paragraph 9, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

1     10.    Answering paragraph 10, FRANK FERRARA is without sufficient

2 information and knowledge to admit or deny the allegations in the paragraph, and on

3 that basis denies each and every allegation contained therein.

### JURISDICTION AND VENUE

5     11.    Answering paragraph 11, FRANK FERRARA is without sufficient

6 information and knowledge to admit or deny the allegations in the paragraph, and on

7 that basis denies each and every allegation contained therein.

8     12.    Answering paragraph 12, FRANK FERRARA is without sufficient

9 information and knowledge to admit or deny the allegations in the paragraph, and on

10 that basis denies each and every allegation contained therein.

11     13.    Answering paragraph 13, FRANK FERRARA is without sufficient

12 information and knowledge to admit or deny the allegations in the paragraph, and on

13 that basis denies each and every allegation contained therein.

14     14.    Answering paragraph 14, FRANK FERRARA is without sufficient

15 information and knowledge to admit or deny the allegations in the paragraph, and on

16 that basis denies each and every allegation contained therein.

### STATEMENT OF FACTS

18     15.    Answering paragraph 15, FRANK FERRARA is without sufficient

19 information and knowledge to admit or deny the allegations in the paragraph, and on

20 that basis denies each and every allegation contained therein.

21     16.    Answering paragraph 16, FRANK FERRARA is without sufficient

22 information and knowledge to admit or deny the allegations in the paragraph, and on

23 that basis denies each and every allegation contained therein.

24     17.    Answering paragraph 17, FRANK FERRARA is without sufficient

25 information and knowledge to admit or deny the allegations in the paragraph, and on

26 that basis denies each and every allegation contained therein.

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

3

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

18.     Answering paragraph 18, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

19.     Answering paragraph 19, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

20.     Answering paragraph 20, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

21.     Answering paragraph 21, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

22.     Answering paragraph 22, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

23.     Answering paragraph 23, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

24.     Answering paragraph 24, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

25.     Answering paragraph 25, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

26.     Answering paragraph 26, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

4
FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

1     27.    Answering paragraph 27, FRANK FERRARA is without sufficient

2 information and knowledge to admit or deny the allegations in the paragraph, and on

3 that basis denies each and every allegation contained therein.

4     28.    Answering paragraph 28, FRANK FERRARA is without sufficient

5 information and knowledge to admit or deny the allegations in the paragraph, and on

6 that basis denies each and every allegation contained therein.

7     29.    Answering paragraph 29, FRANK FERRARA is without sufficient

8 information and knowledge to admit or deny the allegations in the paragraph, and on

9 that basis denies each and every allegation contained therein.

10 **CLASS ACTION ALLEGATIONS**

11     30.    Answering paragraph 30, FRANK FERRARA is without sufficient

12 information and knowledge to admit or deny the allegations in the paragraph, and on

13 that basis denies each and every allegation contained therein.

14     31.    Answering paragraph 31, FRANK FERRARA is without sufficient

15 information and knowledge to admit or deny the allegations in the paragraph, and on

16 that basis denies each and every allegation contained therein.

17     32.    Answering paragraph 32, FRANK FERRARA is without sufficient

18 information and knowledge to admit or deny the allegations in the paragraph, and on

19 that basis denies each and every allegation contained therein.

20     33.    Answering paragraph 33, FRANK FERRARA is without sufficient

21 information and knowledge to admit or deny the allegations in the paragraph, and on

22 that basis denies each and every allegation contained therein.

23     34.    Answering paragraph 34, FRANK FERRARA is without sufficient

24 information and knowledge to admit or deny the allegations in the paragraph, and on

25 that basis denies each and every allegation contained therein.

26     35.    Answering paragraph 35, FRANK FERRARA is without sufficient

27 information and knowledge to admit or deny the allegations in the paragraph, and on

28 that basis denies each and every allegation contained therein.

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

5

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

36.     Answering paragraph 36, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

37.     Answering paragraph 37, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

38.     Answering paragraph 38, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

39.     Answering paragraph 39, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

40.     Answering paragraph 40, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

41.     Answering paragraph 41, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

42.     Answering paragraph 42, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

## **FIRST CAUSE OF ACTION**

### **(Bane Act - Against LUNADA BAY BOYS and the Individual Defendants**

43.     Answering paragraph 43, FRANK FERRARA admits that Plaintiffs repeat, re-allege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 42, inclusive.

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

6

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

44. Answering paragraph 44, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

45. Answering paragraph 45, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

46. Answering paragraph 46, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

47. Answering paragraph 47, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

48. Answering paragraph 48, FRANK FERRERA admits the allegations contained therein.

49. Answering paragraph 49, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

50. Answering paragraph 50, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

## CIVIL CONSPIRACY ALLEGATIONS

51. Answering paragraph 51, FRANK FERRARA admits that Plaintiffs repeat, re-allege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 50, inclusive.

52. Answering paragraph 52, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

BREMER WHYTE BROWN & O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

7

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

53.     Answering paragraph 53, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

## SECOND CAUSE OF ACTION

## (Public Nuisance- LUNADA BAY BOYS and the Individual Defendants)

54.     Answering paragraph 54, FRANK FERRARA admits that Plaintiffs repeat, re-allege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 53, inclusive.

55.     Answering paragraph 55, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

56.     Answering paragraph 56, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

57.     Answering paragraph 57, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

58.     Answering paragraph 58, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

59.     Answering paragraph 59, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

60.     Answering paragraph 60, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

8
FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

## **THIRD CAUSE OF ACTION**

## **(42 U.S.C. § 1983 - Equal Protection - PALOS VERDES ESTATES and Defendant, Chief of Police Kepley)**

61.     Answering paragraph 61, FRANK FERRARA admits that Plaintiffs repeat, re-allege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 60, inclusive.

62.     Answering paragraph 62, FRANK FERRARA responds that the paragraph is part of a claim that is not asserted against FRANK FERRERA, and therefore, no response is required.

63.     Answering paragraph 63, FRANK FERRARA responds that the paragraph is part of a claim that is not asserted against FRANK FERRERA, and therefore, no response is required.

64.     Answering paragraph 64, FRANK FERRARA responds that the paragraph is part of a claim that is not asserted against FRANK FERRERA, and therefore, no response is required.

65.     Answering paragraph 65, FRANK FERRARA responds that the paragraph is part of a claim that is not asserted against FRANK FERRERA, and therefore, no response is required.

## **FOURTH CAUSE OF ACTION**

## **(42 U.S.C. § 1983 - Privileges and Immunities - PALOS VERDES ESTATES and Defendant, Chief of Police Kepley)**

66.     Answering paragraph 66, FRANK FERRARA admits that Plaintiffs repeat, re-allege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 65, inclusive.

67.     Answering paragraph 67, FRANK FERRARA responds that the paragraph is part of a claim that is not asserted against FRANK FERRERA, and therefore, no response is required.

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

BREMER WHYTE BROWN & O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

1     68.    Answering paragraph 68, FRANK FERRARA responds that the

2    paragraph is part of a claim that is not asserted against FRANK FERRERA, and

3    therefore, no response is required.

4     69.    Answering paragraph 69, FRANK FERRARA responds that the

5    paragraph is part of a claim that is not asserted against FRANK FERRERA, and

6    therefore, no response is required.

7                          **FIFTH CAUSE OF ACTION**

8              **(Violation of California Coastal Act- All Defendants)**

9     70.    Answering paragraph 70, FRANK FERRARA admits that Plaintiffs

10   repeat, re-allege and incorporate herein by this reference each and every allegation

11   contained in Paragraphs 1 through 69, inclusive.

12                          **CALIFORNIA COASTAL ACT**

13    71.    Answering paragraph 71, FRANK FERRERA admits the allegations

14   contained therein.

15    72.    Answering paragraph 72, FRANK FERRERA admits the allegations

16   contained therein.

17    73.    Answering paragraph 73, FRANK FERRERA is without sufficient

18   information and knowledge to admit or deny the allegations in the paragraph, and on

19   that basis denies each and every allegation contained therein.

20    74.    Answering paragraph 74, FRANK FERRERA admits the allegations

21   contained therein.

22    75.    Answering paragraph 75, FRANK FERRERA denies the allegations

23   contained therein.  California Public Resources Code, Section 30111 defines

24   "Person" as "any individual, organization, partnership, limited liability company, or

25   other business association or corporation, including any utility, and any federal, state,

26   local government, or special district or an agency thereof".

27    76.    Answering paragraph 76, FRANK FERRERA admits the allegations

28   contained therein.

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

10

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

77. Answering paragraph 77, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

## UNPERMITTED DEVELOPMENTS

78. Answering paragraph 78, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

79. Answering paragraph 79, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

80. Answering paragraph 80, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

81. Answering paragraph 81, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

## BLOCKING FULL PUBLIC ACCESS TO COAST

82. Answering paragraph 82, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

83. Answering paragraph 83, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

### (Declaratory Relief)

84. Answering paragraph 84, FRANK FERRARA admits the allegations contained therein.

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

11

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

85.    Answering paragraph 85, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

86.    Answering paragraph 86, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

**(Injunctive Relief)**

87.    Answering paragraph 87, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

88.    Answering paragraph 88, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

89.    Answering paragraph 89, FRANK FERRARA admits the allegations contained therein.

90.    Answering paragraph 90, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

**(Civil Fines)**

91.    Answering paragraph 91, FRANK FERRARA admits the allegations contained therein.

92.    Answering paragraph 92, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

**(Daily Fines)**

93.    Answering paragraph 93, FRANK FERRARA admits the allegations contained therein.

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

12

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

94.     Answering paragraph 94, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

## SIXTH CAUSE OF ACTION

### Assault - LUNADA BAY BOYS and the Individual Defendants

95.     Answering paragraph 95, FRANK FERRARA admits that Plaintiffs repeat, re-allege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 94, inclusive.

96.     Answering paragraph 96, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

97.     Answering paragraph 97, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

98.     Answering paragraph 98, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

## SEVENTH CAUSE OF ACTION

### Battery- LUNADA BAY BOYS and the Individual Defendants

99.     Answering paragraph 99, FRANK FERRARA admits that Plaintiffs repeat, re-allege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 98, inclusive.

100.    Answering paragraph 100, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

101.    Answering paragraph 101, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

13

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

## EIGHTH CAUSE OF ACTION

## Negligence- LUNADA BAY BOYS and the Individual Defendants

102. Answering paragraph 102, FRANK FERRARA admits that Plaintiffs repeat, re-allege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 101, inclusive.

103. Answering paragraph 103, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

104. Answering paragraph 104, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

105. Answering paragraph 105, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

106. Answering paragraph 106, FRANK FERRARA is without sufficient information and knowledge to admit or deny the allegations in the paragraph, and on that basis denies each and every allegation contained therein.

## PRAYER FOR RELIEF

107. Answering the Prayer for Relief, FRANK FERRARA denies that Plaintiffs are entitled to any reliefs sought in its Prayer for Relief, and denies that Plaintiffs are entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

108. FRANK FERRARA pleads the following affirmative defenses and expressly reserves the right to assert additional affirmative defense as the case progresses.

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

109. The Complaint fails to state a claim upon which relief can be granted.

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

BREMER WHYTE BROWN & O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA  91367
(818) 712-9800

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

**SECOND AFFIRMATIVE DEFENSE**

(Failure to Mitigate Damages)

110.   The Complaint and each Claim for Relief therein, is barred, in whole or in part, by Plaintiffs' failure to mitigate any alleged damages.

**THIRD AFFIRMATIVE DEFENSE**

(Unclean Hands)

111.   The Complaint and each Claim for Relief therein, is barred, in whole or in part, by the doctrine of unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**

(Laches)

112.   The Complaint and each Claim for Relief therein, is barred, in whole or in part, by the doctrine of laches.

**FIFTH AFFIRMATIVE DEFENSE**

(Estoppel)

113.   The Complaint and each Claim for Relief therein, is barred, in whole or in part by, the Doctrine of Estoppel.

**SIXTH AFFIRMATIVE DEFENSE**

(Waiver)

114.   The Complaint and each Claim for Relief therein, is barred, in whole or in part by, the Doctrine of Waiver.

**SEVENTH AFFIRMATIVE DEFENSE**

(Compromise of Claims)

115.   FRANK FERRARA alleges that if it should be found that it is in any manner legally responsible for the damages, if any, sustained by Plaintiffs, which FRANK FERRARA specifically denies, then said damages must be reduced by virtue of Plaintiffs' compromise of its purported claims against others.

///

///

BREMER WHYTE BROWN & O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

15
FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

## EIGHTH AFFIRMATIVE DEFENSE

### (Liability of Others)

116.   FRANK FERRARA alleges that if it is determined that Plaintiffs sustained any damages as alleged in the Complaint, such damage was legally caused or contributed to by persons and/or entities other than FRANK FERRARA.  The liability of FRANK FERRARA and other responsible parties, named or unnamed, must be apportioned according to the relative degree of fault between them, if any, and the liability of FRANK FERRARA reduced accordingly.

## NINTH AFFIRMATIVE DEFENSE

### (Intervening/Superseding Cause)

117.   FRANK FERRARA alleges that the damages sustained by Plaintiffs, if any were proximately caused by the intervening and superseding acts of Plaintiffs, its agent/employee and/or others, which acts bar and/or diminish Plaintiffs' recovery, if any, against FRANK FERRARA.

## TENTH AFFIRMATIVE DEFENSE

### (Reasonableness of Conduct)

118.   FRANK FERRARA alleges that its conduct was, at all times relevant herein, reasonable and in good faith based on the material facts and circumstances known to FRANK FERRARA.

## ELEVENTH AFFIRMATIVE DEFENSE

### (No Damages Proximately Caused)

119.   FRANK FERRARA alleges that Plaintiffs have not sustained any damages which have been proximately caused by any purported act, omission or breach of any duty on the part of FRANK FERRARA.

///
///
///
///

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA  91367
(818) 712-9800

16

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

## TWELFTH AFFIRMATIVE DEFENSE

(Indemnity)

120.   FRANK FERRARA alleges that Plaintiffs have not sustained any damages which have been proximately caused by any purported act, omission or breach of any duty on the part of FRANK FERRARA

## THIRTEENTH AFFIRMATIVE DEFENSE

(Indemnity)

121.   FRANK FERRARA alleges that if Plaintiffs sustained any damages, which FRANK FERRARA specifically denies, FRANK FERRARA is entitled to indemnity from other parties to the extent that such parties contributed to Plaintiffs' damages, if any.

## FOURTEENTH AFFIRMATIVE DEFENSE

(Reservation of Right to Amend)

122.   FRANK FERRARA alleges that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, Affirmative Defense available. Accordingly, FRANK FERRARA reserves herein the right to assert additional defenses in the event that discovery indicates they would be appropriate.

///
///
///
///
///
///
///
///
///
///

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

17

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

# **REQUEST FOR RELIEF**

WHEREFORE, the Defendant requests:

1.  Dismissal of Plaintiffs' action with prejudice;

2.  An order that Plaintiffs shall take no relief from the Complaint;

3.  The costs of suit incurred, including attorneys' fees, if authorized by law; and

4.  Such further relief the Court deems fair and just.

Dated:  September 1, 2016

BREMER WHYTE BROWN & O'MEARA

By: _____
    Patrick Au, Esq.
    Laura L. Bell, Esq.
    Attorneys for Defendants,
    FRANK FERRARA and CHARLIE
    FERRARA

BREMER WHYTE BROWN &
O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA 91367
(818) 712-9800

18

FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT

H:\1178\176\PLD\Frank Ferrara Answer to Complaint.docx

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 21271 Burbank Boulevard, Suite 110, Woodland Hills, California 91367.

On September 1, 2016, I served the within document(s) described as:  **DEFENDANT, FRANK FERRARA'S ANSWER TO THE CLASS ACTION COMPLAINT** on the interested parties in this action as stated on the attached mailing list.

[X]  (BY ELECTRONIC SERVICE) Complying with Code of Civil Procedure § 1010, I caused such document(s) to be Electronically Filed and Served through the United States District Court for the above-entitled case.  Upon completion of transmission of said document(s), a filing receipt is issued to the filing party acknowledging receipt, filing and service by 's system.  A copy of the filing receipt page will be maintained with the original document(s) in our office.

Executed on September 1, 2016, at Woodland Hills, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____          _____
Shawn Reutter                                              (Signature)
(Type or print name)

BREMER WHYTE BROWN & O'MEARA LLP
21271 Burbank Blvd.
Suite 110
Woodland Hills, CA  91367
(818) 712-9800

1

H:\1178\176\PROOF OF SERVICE.docx

1  <u>Cory Spencer v. Lunada Bay Boys et al.,</u>

2  Case No. 2:16-cv-2129-SJO

3  **BWB&O CLIENT:    Frank and Charlie Ferrara**
   **BWB&O FILE NO.:   1178.176**

4

   <u>SERVICE LIST</u>

5

| | | |
|---|---|---|
| Samantha Wolff, Esq. **HANSON BRIDGETT** 425 Market Street 26th Floor San Francisco, CA 94105 (415) 777-3200 (415) 541-9366 Fax Attorneys For **PLAINTIFF** swolff@hansonbridgett.com | Tyson M. Shower, Esq. **HANSON BRIDGETT** 500 Capitol Mall Suite 1500 Sacramento, CA 95814 (916) 442-3333 (916) 442-2348 Fax Attorneys For **PLAINTIFFS** tshower@hansonbridgett.com | Victor Otten, Esq. **OTTEN LAW, PC** 3620 Pacific Coast Highway Suite 100 Torrance, CA 90505 (310) 378-8533 (310) 347-4225 Fax Attorneys For **PLAINTIFFS** vic@ottenlawpc.com |
| Jacob Song, Esq. **KUTAK ROCK LLP** 5 Park Plaza Suite 1500 Irvine, CA 92614 (949) 417-0999 (949) 417-5639 Attorney For **CITY OF PALOS VERDES ESTATES and JEFF KEPLEY, in his representative capacity, serves as the Chief of Police Department of Defendant City of Palos Verdes Estates.** jacob.song@kutakrock.com | J. Patrick Carey, Esq. **LAW OFFICE OF PATRICK CAREY** 1230 Rosecrans Avenue Suite 300 Manhattan Beach, CA 90266 (310) 526-2237 (310) 526-2237 Fax Attorney For **ALAN JOHNSTON individual membeer of LUNADA BAY BOYS aka JALIAN JOHNSTON** | Aaron G. Miller, Esq. **THE PHILIPS FIRM** 800 Wilshire Boulevard Suite 1550 Los Angeles, CA 90017 (213) 244-9913 (213) 244-9915 Fax Attorneys For **ANGELO FERRARA** amiller@thephillipsfirm.com |
| Mark Fields, Esq. **LAW OFFICES OF MARK C. FIELDS** 333 So. Hope Street Suite 3500 Los Angeles, CA 90071 (213) 617-5225 (213) 629-2420 Fax Attorney For **ANGELO FERRARA an individual member of LUNADA BAY BOYS and N.F. an individual member of LUNADA BAY BOYS** fields:markfieldslaw.com | Peter R. Haven, Esq. **HAVEN LAW** 1230 Rosecrans Avenue Suite 300 Manhattan Beach, CA 90266 (310) 272-5353 (213) 477-2137 Fax Attorneys For **MICHAEL RAY PAPAYANS** peter@havenlaw.com | Dana Alden Fox, Esq. **LEWIS BRISBOIS BISGAARD & SMITH, LLP** 633 W. 5th Street Site 4000 Los Angeles, CA 90071 (213) 580-3858 (213) 250-7900 Fax Attorneys For **SANG LEE** Dana.Fox@lewisbrisbois.com |

BREMER WHYTE BROWN & O'MEARA LLP 21271 Burbank Blvd. Suite 110 Woodland Hills, CA 91367 (818) 712-9800

2

H:\1178\176\PROOF OF SERVICE.docx

# Exhibit C

Case 2:16-cv-02129-SJO-RAO   Document 84   Filed 07/11/16   Page 1 of 13   Page ID #:1236

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

================================================================

**CASE NO.:**   CV 16-02129 SJO (RAOx)          **DATE:** July 11, 2016

**TITLE:**      Spencer et al. v. Lunada Bad Boys et al.

================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                          Not Present
Courtroom Clerk                           Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**       **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                               Not Present

================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOTION TO DISMISS COMPLAINT** [Docket No. 30]

This matter is before the Court on Defendants City of Palos Verdes Estates ("City") and Chief of Police Jeff Kepley's (together, "City Defendants") Motion to Dismiss Complaint ("Motion"), filed June 3, 2016. Plaintiffs Cory Spencer ("Spencer"), Diana Milena Reed ("Reed"), and Coastal Protection Rangers, Inc. ("CPRI") (together, "Plaintiffs") opposed the Motion ("Opposition") on June 20, 2016, and City Defendants replied ("Reply") on June 27, 2016. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for July 11, 2016. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants' Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege the following in their Class Action Complaint ("Complaint"), filed March 29, 2016. California residents Spencer and Reed are, among other things, experienced surfers and avid beachgoers who have been unlawfully excluded from recreational opportunities at Palos Verdes Estates parks, beaches, and access to the ocean. (*See* Compl. ¶¶ 1-2, ECF No. 1.) CPRI is a California non-profit entity "dedicated to enforcing the California Coastal Act and protecting California's beaches and ensuring that they are safe and accessible to all visitors." (Compl. ¶ 3; Request for Judicial Notice ("RJN"), Ex. A, ECF No. 31.[1])

_____

[1] City Defendants filed a Request for Judicial Notice in tandem with their Motion, asking the Court to take judicial notice of the California Secretary of State's Business Entity Detail report for CPRI, among other materials. (*See* RJN.) Plaintiffs do not challenge the RJN, and the Court finds that judicial notice of this publicly available document to be proper pursuant to Federal Rule of Evidence 201(b).

Case 2:16-cv-02129-SJO-RAO   Document 84   Filed 07/11/16   Page 2 of 13   Page ID #:1237

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>July 11, 2016</u>

The City, renowned for its natural beauty, is home to approximately 13,500 residents and more than 40 police personnel.  (Compl. ¶ 15.)  The City owns Lunada Bay, a public beach that constitutes Southern California's "premier big-wave break."  (Compl. ¶¶ 16-17.)  Lunada Bay is also, however, one of the surfing world's "best-known area[s] for localism," a territorial practice whereby resident surfers attempt to exclude nonresident beachgoers and surfers through threats, intimidation, and violence.  (Compl. ¶ 17.)

Defendant Lunada Bay Boys ("LBB") is a criminal street gang that has practiced a particularly "severe" form of localism since the early 1970s.  (Compl. ¶¶ 3-5, 17-18.)  LBB "knowingly built and maintains an unpermitted masonry-rock-and-wood fort and seating area ('Rock Fort') in violation of the California Coastal Act," where it conducts criminal activity.  (Compl. ¶¶ 3-5.)  Moreover, LBB has built and maintains a steep trail from a 100-foot bluff called the "Goat Trail," and stores recreational items and maintains a campfire ring with seating near the base of this trail.  (Compl. ¶ 18.)  LBB sells, markets, and uses illegal controlled substances from the Lunada Bay bluffs and the Rock Fort, and uses the gang's name to confront, threaten, intimidate, and harass non-local beachgoers through a variety of tactics.  (Compl. ¶ 18.)  Some of the more egregious tactics include (1) throwing rocks; (2) running people over with surfboards; (3) punching non-locals; (4) shooting surfers and beachgoers with pellet guns; (5) stealing wallets, wetsuits and surfboards; (6) vandalizing vehicles and personal property, including by slashing tires and waxing ethnic slurs onto windows; (7) levying threats against non-locals; and (8) sharing photographs and videos that they take of visitors.  (Compl. ¶ 18.)

LBB is not unfamiliar to the City's Police Department, but "[f]or many decades" complaints made by victims of LBB have gone unanswered.  (Compl. ¶ 15.)  For example, several of the aforementioned tactics were caught on camera and shown to officers of the City's Police Department.  (Compl. ¶¶ 19-20.)  In response to this report, one officer stated the following:

> We know all of them.  They are infamous around here.  They are pretty much grown men in little men's mindset.  They don't like anyone that's not one of The Bay Boys, surfing down there.  It literally is like a game with kids on a school yard to them and they don't want you playing on their swing set, but, you know, **it is what it is.  If you feel uncomfortable, you know, then don't do it.**

(Compl. ¶ 20 (emphasis added).)  Spencer and Reed have also been victimized by LBB, but their reports to the police department fell on deaf ears.  (Compl. ¶¶ 21-27.)  When Spencer complained to Chief Kepley and encouraged an undercover investigation after he was verbally and physically assaulted by members of the LBB, Chief Kepley responded merely by noting that the City's police department had considered various enforcement strategies, and "had talked with various surfers in an effort to educate them on the position we are in, and what needs to change in terms of acceptable behavior on their part."  (Compl. ¶ 21.)  Similarly, after Reed was verbally assaulted by members of LBB in the presence of a police officer, the officer asked her if she wanted to make a "citizen's arrest," which is permitted under California Penal Code section 837, notwithstanding that police were already on the scene and that other members of LBB were nearby.  (Compl. ¶ 22,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>        **DATE:** <u>July 11, 2016</u>

n. 19.) Chief Kepley has described LBB as "a long term problem," and stated that "[i]f I could fix this, I would." (Compl. ¶ 27.)

Plaintiffs seek to represent a class of at least several thousand members who reside outside the City and who desire "lawful, safe, and secure access to Lunada Bay to engage in recreational activities." (Compl. ¶ 30.) Plaintiffs assert the following eight causes of action against defendants: (1) violation of the Bane Act, California Civil Code § 52.1(b), against LBB and ceratin members of the group ("Individual Defendants");[2] (2) public nuisance pursuant to California Civil Code §§ 3479 and 3480 against LBB and Individual Defendants; (3) violation of the Equal Protection Clause of the Fourteen Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983") against City Defendants ("Equal Protection Claim"); (4) violation of the Privileges and Immunities Clause of Article IV of the United States Constitution pursuant to § 1983 against City Defendants ("P&I Claim"); (5) violation of various provisions of the California Coast Act against all defendants ("Coastal Act Claim"); (6) assault against LBB and Individual Defendants; (7) battery against LBB and Individual Defendants; and (8) negligence against LBB and Individual Defendants. (*See generally* Compl. ¶¶ 43-106.) Plaintiffs allege this Court has subject-matter jurisdiction over Individual Defendants under 28 U.S.C. § 1333 (admiralty or maritime jurisdiction), Article III, § 2 of the United States Constitution, and 28 U.S.C. § 1367 (supplemental jurisdiction). (Compl. ¶¶ 11-12.)

II.     <u>DISCUSSION</u>

City Defendants ask the Court to dismiss Plaintiffs' Equal Protection, P&I, and Coastal Act Claims—the sole claims asserted against the them—for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (*See generally* Mot., ECF No. 30.) With respect to both the **Equal Protection** and **P&I Claims**, City Defendants argue (1) that liability does not attach to a city official or to the city based on a theory of respondeat superior; (2) that events that occurred more than two years prior to the filing of the Complaint are time-barred; and (3) that CPRI, which is not an individual, lacks standing to pursue these claims. (*See generally* Mot.) With respect to the **Equal Protection Claim**, City Defendants further argue that Plaintiffs allege no facts to establish an equal protection claim because they have not alleged (1) that they are members of a protected class; (2) that either the City or Chief Kepley acted with discriminatory intent; (3) that a governmental action cause any violation; (4) that any specific federal or constitutional right has been violated; (5) that they were treated differently from other similarly situated individuals to establish a "class of one" equal protection claim; or (6) that the City or Chief Kepley acted with malice, which is required to satisfy a "class of one" equal protection claim. (*See generally* Mot.) With respect to the **P&I Claim**, City Defendants contend that Plaintiffs fail to state a claim because (1) they are not out-of-state residents; (2) they have failed to identify a protectable right; and (3) no duty to protect applies because there is no allegation that the City or

---

[2] The Individual Members identified in the Complaint are Alan Johnston, Sang Lee, Brant Blakeman, Angelo Ferrara, Frank Ferrara, Charlie Ferrara, N. F., and Michael Rae Papayans. (Compl. ¶ 7.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 16-02129 SJO (RAOx)**          **DATE:  July 11, 2016**

Chief Kepley affirmatively created a dangerous environment that would not otherwise have existed.  (*See generally* Mot.)  Finally, with respect to the **Coastal Act Claim**, City Defendants argue dismissal is warranted (1) because *Burford* abstention applies; (2) the claim is not ripe because Plaintiffs have failed to exhaust their administrative remedies; (3) no basis for injunctive relief has been sufficiently pled; (4) there is no basis for fines and penalties for any violation occurring more than three years before Plaintiffs knew of the alleged violation; and (5) any administrative fines under the California Coastal Act would not be payable to Plaintiffs.  (*See generally* Mot.)

Plaintiffs respond by arguing that courts should not apply a heightened pleading standard to civil rights complaints against municipalities, and that the bulk of City Defendants' cases concerned the summary judgment stage.  (Opp'n 2, ECF No. 48.)  Plaintiffs further contend that City Defendants fail to address Plaintiffs' § 1983 claims which are based on (1) a policy, practice, or custom of the City that distinguishes one group of persons (residents) from another (non-residents) without any rational basis; and (2) that such policy, practice or custom arbitrarily and unreasonably interferes with Plaintiffs' right to enter public lands. (Opp'n 2.)  Plaintiffs additionally argue that the City's arguments concerning statutes of limitations ignore the continuing violations doctrine.  (Opp'n 2.)  Finally, Plaintiffs argue that (1) the Coastal Act invites citizens' lawsuits like this one; (2) the City has failed to obtain coastal development permits for structures in the coastal zone; and (3) the City's response has encouraged the Bay Boys to block access to the beach. (Opp'n 2.)

    A.    <u>Legal Standards</u>

        1.    <u>Rule 12(b)(6)</u>

"Rule 12(b)(6), which tests the legal sufficiency of the claims asserted in the complaint, must be read in conjunction with Rule 8, which requires a 'short and plain statement showing that the pleader is entitled to relief . . .'"  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Although the pleader is not required to plead "detailed factual allegations" under Rule 8, this standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Pleadings that contain nothing more than legal conclusions or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Id.*  (citation and quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Where a complaint pleads sufficient facts "to raise a right to relief above the speculative level," a court may not dismiss the complaint under Rule 12(b)(6).  *See Twombly*, 550 U.S. at 545.  In reviewing a motion to dismiss under Rule 12, a court may only consider the complaint, documents incorporated by reference in the complaint, and matters of judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Federal courts may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil

Case 2:16-cv-02129-SJO-RAO   Document 84   Filed 07/11/16   Page 5 of 13   Page ID #:1240

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  __CV 16-02129 SJO (RAOx)__        DATE:  __July 11, 2016_____

rights cases alleging municipal liability." *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

> 2.      § 1983 and Municipal Liability

42 U.S.C. § 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).  Moreover, local governments "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 691.  That said, "a municipality cannot be held liable **solely** because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a **respondeat superior** theory." *Id.* (emphasis in original).

> 3.      The Equal Protection Clause of the Fourteenth Amendment

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1).  "Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection." *Id.* at 439-40.  "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* (citations omitted).  "When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude . . . and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process." *Id.* (citations omitted).  Where, however, a statute classifies by race, alienage, national origin, gender, or other "suspect statuses," a heightened standard of review is applied.  *Id.* at 440-42 (noting that laws classifying by race, alienage, and national origin "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest," while those classifying based on gender "will survive equal protection scrutiny to the extent they are substantially related to a legitimate state interest").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**   <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>July 11, 2016</u>

"Although *City of Cleburne* involved a challenge to legislation, the rational basis test is equally applicable to an unwritten policy or practice." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1111-12 (E.D. Cal. 2012). For example, in *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008), the Ninth Circuit Court of Appeals applied a rational basis analysis to an applicant's challenge to an Idaho land management agency's unwritten practice of requiring more specific grazing management plans from permit applicants associated with conservation interests than from those without such associations. California district courts adhere to this principle. *See O'Haire v. Napa State Hosp.*, No. C 07-00002 RMW (PR), 2009 WL 2447752 (N.D. Cal. Aug. 7, 2009) (challenge to unwritten policy intentionally discriminating against homosexuals without rational basis stated valid equal protection claim).

An equal protection claim can lie where plaintiff can establish that he is a "class of one" in that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

        4.    <u>The Privileges and Immunities Clause of the Fourteenth Amendment</u>

The Privileges and Immunities Clause of Article IV of the United States Constitution provides that "[t]he citizens of each State shall be entitled to all the Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. "Application of the Privileges and Immunities Clause to a particular instance of discrimination against out-of-state residents entails a two-step inquiry." *United Bldg. & Constr. Trades Council of Camden County and Vicinity v. Mayor & Council of City of Camden* ("*Camden*"), 465 U.S. 208, 218 (1984). "As an initial matter, the court must decide whether the ordinance burdens one of those privileges and immunities protected by the Clause." *Id.* (citing *Baldwin v. Montana Fish and Game Comm'n*, 436 U.S. 371, 383 (1978)). If the court finds that the contested restriction falls within the Clause's ambit, the court will deem the restriction unconstitutional if the state cannot show that it is "'closely related to the advancement of a substantial state interest.'" *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 936 (9th Cir. 2008) (quoting *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988)).

    B.    <u>Analysis</u>

        1.    <u>Plaintiffs Have Adequately Alleged an Equal Protection Claim</u>

In their Motion, City Defendants first argue that Plaintiffs' Equal Protection Claim must be dismissed because Plaintiffs fail to allege (1) that they are members of a protected class; (2) that any of their fundamental rights have been violated; or (3) that they are a "class of one." (*See* Mot. 3-9.) City Defendants also contend that Plaintiffs' Equal Protection Claim is time-barred as to events occurring prior to March 29, 2014. (Mot. 12.)

In response, Plaintiffs admit that their Equal Protection Claim, as currently pled, "is not borne out of their membership in a protected class, a fundamental right, or a 'class of one' theory." (Opp'n 7.) Rather, they contend that their claim arises from the premise "when a policy [practice, or

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>July 11, 2016</u>

custom] distinguishes one group of persons from another, that distinction must be rationally related to a legitimate governmental purpose," citing *Sanchez v. City of Fresno.* (Opp'n 7.)

The Court agrees with Plaintiffs that the only the "rational basis" test is being invoked in the Complaint, and concludes that Plaintiffs have succeeded in alleging their Equal Protection Claim to the satisfaction of Rule 8(a), *Twombly*, and *Iqbal*. "The first step in equal protection analysis is to identify the [defendants'] classification of groups." *Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). "To accomplish this, a plaintiff can show that the law is applied in a discriminatory manner or imposes different burdens on different classes of people." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

The Ninth Circuit has held that "in an equal protection claim based on selective enforcement of the law, a plaintiff can show that a defendant's alleged rational basis for his acts is a pretext for an impermissible motive." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007) (citing *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004)). Moreover, in *Romer v. Evans*, 517 U.S. 620 (1996), the United States Supreme Court found that an amendment to the Colorado Constitution prohibiting all legislative, executive, or judicial action designed to protect homosexual individuals from discrimination violated the Equal Protection Clause of the Fourteenth Amendment. The Court held that such a law "raise[d] the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected." *Id.* at 634. The Court went on to note that "if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Id.*

In this case, Plaintiffs allege that the City Defendants treat one group—residents of the City—differently than they treat another group—nonresidents visiting the City's beaches, including Lunada Bay. In particular, Plaintiffs allege that the City has a "long history of deliberate indifference of not investigating or otherwise policing acts of violence and vandalism against visiting beachgoers." (Compl. ¶ 15.) Plaintiffs also allege that the City "tolerates the unlawful activity of the LUNADA BAY BOYS against nonlocal beachgoers because the 40-member police force is designed to keep [the City] for locals only." (Compl. ¶ 15.) Other allegations in the Complaint detail with some particularity the police departments' refusals to respond to attacks by members of the LBB upon nonresident beachgoers. (*See* Compl. ¶¶ 19-22, 24-27.) Indeed, Plaintiffs allege that one officer, after admitting that the police department "know[s] all" of the "infamous" LBB members, who famously "don't like anyone that's not one of The Bay Boys," stated that "it is what it is," and "[i]f you feel uncomfortable, you know, then don't do it." (Compl. ¶ 20.) Plaintiffs additionally allege that a group officers, after witnessing Plaintiff Reed being assaulted by members of the LBB, (1) declined to arrest the assailant; (2) asked her if she would like to make a "citizen's arrest;" and (3) mistakenly assured her that her case "would be handled by the District Attorney with the same result." (Compl. ¶ 22.) When Reed returned to Lunada Bay to document the LBB's activities, an officer asked her "[w]hy would a woman want to go to that beach and the Rock Fort anyways," and the police thereafter failed to return her calls to set a time to identify the LBB members who had harassed her. (Compl. ¶ 27.) When Reed was finally

Case 2:16-cv-02129-SJO-RAO    Document 84    Filed 07/11/16    Page 8 of 13    Page ID #:1243

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**CASE NO.: CV 16-02129 SJO (RAOx)**          **DATE: July 11, 2016**

granted an audience with the police department, Chief Kepley stated that he "wish[ed] it was safe [at Lunada Bay], but it's not," and another officer stated that "there are judges and lawyers that surf out there." (Compl. ¶ 27.)

Even after removing the conclusory language from these allegations, the factual content contained therein is sufficient to provide City Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although City Defendants bemoan the absence of allegations regarding how members of the LBB and residents of the City are treated by City Defendants, in light of the nature of the charges in this case, such allegations are not required. Plaintiffs allege that members of the LBB are dedicated to keeping nonresidents away from Lunada Bay, and that the City tolerates this behavior with the like-minded intent "to keep [the City] for locals only." (Compl. ¶ 15.)

Plaintiffs have thus plausibly alleged an Equal Protection Claim against City Defendants, and the Court **DENIES** City Defendants' Motion on this basis.[3, 4]

///
///
///
///
///
///

---

[3] City Defendants argue that Plaintiffs' Equal Protection and Privileges and Immunities Claims "are time-barred for any claimed violation occurring two years before March 4, 2016." (Mot. 12.) City Defendants do not, however, dispute that the vast majority of the allegations in Plaintiffs' Complaint occurred within the past two years, and thus do not contend that Plaintiffs cannot seek declaratory and injunctive relief based upon such alleged conduct. (*See generally* Mot. 12; Reply 3-4, ECF No. 74.) Rather, they appear to request summary adjudication that Plaintiffs cannot recover against City Defendants for events occurring prior to this critical date. (*See* Reply 4.) Plaintiffs, however, do not seek monetary relief from City Defendants for their alleged violations of the Equal Protection and Privileges and Immunities Clauses. (*See* Compl. pp. 40-42.) Accordingly, the Court **DENIES** City Defendants' Motion as to this issue.

[4] The Court also rejects City Defendants' Article III standing argument, (*see* Mot. 12-13), both because Article III standing is not among the bases on which City Defendants moved for dismissal, (*see* Mot. 2-3), and because the cases they cite are inapposite to this case, in which Plaintiffs allege that they have been and will continue to be directly harmed by City Defendants' selective enforcement of their laws vis-a-vis residents and nonresidents, (*see* Compl. ¶¶ 1-2, 18-28, 61-69). To the extent City Defendants' challenge is predicated on a belief that Plaintiffs have not suffered an "actual injury," such an argument concerns the merits of Plaintiffs' claims. The Court thus **DENIES** City Defendants' Motion on this basis.

Case 2:16-cv-02129-SJO-RAO   Document 84   Filed 07/11/16   Page 9 of 13   Page ID #:1244

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>July 11, 2016</u>

2.     <u>Plaintiffs' Privileges and Immunities Claim Fails for Two Reasons</u>

City Defendants next challenge Plaintiffs' Privileges and Immunities Claim, arguing (1) that
Plaintiffs Spencer and Reed lack standing because they are residents of California; (2) that the
right to recreate is not a protected right; and (3) that the City Defendants have no duty to protect
Plaintiffs. (*See* Mot. 9.) Plaintiffs respond by arguing (1) that "the fact that Plaintiffs are in-state
residents nonetheless entitles them to the protection of the Privileges and Immunities Clause of
Article IV of the U.S. Constitution just the same as if they were out-of-state residents;" (2) that their
right to enter public lands is a protectable interest; and (3) that City Defendants' "duty to protect"
argument is misplaced.

Plaintiffs misunderstand the purpose and scope of the Privileges and Immunities Clause.
*Camden*, a case cited by both Plaintiffs and City Defendants, concerned an ordinance adopted
by the city of Camden, New Jersey, that required at least 40% of the employees of contractors and
subcontractors working on city construction projects be Camden residents. The United States
Supreme Court began by "quickly reject[ing]" the respondents' argument that the "Clause only
applies to laws passed by a **State**." 465 U.S. 208, 214 (1984) (emphasis in original). The Court
held that "[t]he fact that the ordinance in question is a municipal, rather than a state, law does not
somehow place it outside the scope of the Privileges and Immunities Clause." *Id.*

The Court also rejected respondents' effort to have the "Clause only appl[y] to laws that
discriminate on the basis of **state** citizenship." *Id.* (emphasis in original). In rejecting such a literal
interpretation, the Court noted that "the terms 'citizen' and 'resident' are 'essentially
interchangeable' . . . for purposes of analysis of most cases under the Privileges and Immunities
Clause." *Id.* at 216. The Court noted, however, that although "New Jersey citizens not residing
in Camden will be affected by the ordinance as well as out-of-state citizens," such
**"disadvantaged New Jersey residents have no claim under the Privileges and Immunities
Clause**." *Id.* at 217 (emphasis added) (citing *The Slaughter-House Cases*, 16 Wall. 36, 77, 21
L.Ed. 394 (1872)). This is because such residents "at least have a chance to remedy at the polls
any discrimination against them," while "[o]ut-of-state citizens have no similar opportunity." *Id.*
Thus, the Court "conclude[d] that Camden's ordinance is not immune from constitutional review
**at the behest of out-of-state residents** merely because some in-state residents are similarly
disadvantaged." *Id.* (emphasis added).

Plaintiffs allege that Spencer and Reed are residents of California. (Compl. ¶¶ 1-2.) As such, they
are not capable of challenging a California municipality's policy or practice under the Privileges
and Immunities Clause. Moreover, because CPRI is a corporation, (RJN, Ex. A), it is not
considered a "citizen" within the meaning of the Privileges and Immunities Clause, and therefore
is not entitled "to all privileges and immunities . . . in the several states." *Blake v. McClung*, 172
U.S. 239, 19 S. Ct. 165 (1898); *see also Pelican Chapter, Associated Builders & Contractors, Inc.
v. Edwards*, 901 F. Supp. 1125, 1133 (M.D. La. 1995).

Moreover, Plaintiffs assert in their Opposition that "the right to enter public lands, including tidal
lands, is a well-established protectable right in California." (Opp'n 12 (citing Cal. Const., art. X § 4;

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  __CV 16-02129 SJO (RAOx)__        **DATE:** __July 11, 2016__

Cal. Gov't Code § 66478.3; *Gion v. Santa Cruz*, 2 Cal.3d 29, 42 (1970)).)  Section 1983, however, "safeguards certain rights conferred by federal statutes," and "in order to seek redress through § 1983 . . ., a plaintiff must assert the violation of a federal **right**, not merely a violation of federal **law**." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original).  Plaintiffs have not identified a federal right that is protectable under the Privileges and Immunities Clause

The Court therefore **GRANTS IN PART** the City Defendants' Motion and **DISMISSES** Plaintiffs' Privileges and Immunities Claim **without leave to amend**.

3.    <u>The Court Abstains from Hearing Plaintiffs' California Coastal Act Claim</u>

City Defendants raise five arguments in support of their Motion as to why Plaintiffs' California Coastal Act Claim should be dismissed.  First, City Defendants contend that the Court should apply the *Burford* abstention doctrine and abstain from exercising jurisdiction as to this cause of action.  (Mot. 13-15.)  City Defendants next argue that this cause of action is not ripe and that there is no definite and concrete controversy to adjudicate.  (Mot. 16-18.)  They further contend that Plaintiffs have not demonstrated a basis for injunctive relief, both because they have not alleged facts regarding how they would be irreparably injured by the continued existence of the structures on the beach at Lunada Bay and because they have an adequate remedy at law that has not been exhausted.  (Mot. 18.)  Fourth and fifth, City Defendants argue that Plaintiffs' request for civil fines or penalties are time-barred, and in any event, any administrative fines would not be payable to Plaintiffs.  (Mot. 18-19.)  Plaintiffs respond in kind.  (Opp'n 16-20.)  Because the Court concludes that abstention under *Burford* is appropriate in this case, it need not consider City Defendants' subsidiary arguments.

a.    <u>*Burford* Abstention</u>

The *Burford* abstention doctrine stems from *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), a case in which the United States Supreme Court held that "[a]lthough a federal equity court does have jurisdiction over a particular proceeding, it may, in its sound discretion . . . refuse to enforce or protect legal rights, the exercise of which may be prejudicial interest; for it is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy."  319 U.S. 315, 317-18 (1943) (internal citations and quotation marks omitted).  In *New Orleans Public Service, Inc. v. Council of City of New Orleans* ("*NOPSI*"), the Supreme Court summarized the requirements of the *Burford* abstention doctrine as follows:

Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies:  (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>July 11, 2016</u>

491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).  The Court of Appeals for the Ninth Circuit takes a slightly more restrictive approach, requiring showings "(1) that the state has concentrated suits involving the local issue in a particular court; (2) that the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) that federal review might disrupt state efforts to establish a coherent policy."  *Tucker v. First Md. Savings & Loan, Inc.*, 942 F.2d 1401, 1405 (9th Cir. 1991).  Application of these factors "only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'"  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (quoting *Colorado River*, 424 U.S. at 813).

The parties dispute the applicability of *Beck v. State of California*, 479 F. Supp. 392 (C.D. Cal. 1980), to the instant case.  In *Beck*, the plaintiff, an individual desiring to construct a single-family residence on his Malibu real property, brought a challenge to the then-recently enacted California Coastal Act of 1976 after his applications to construct the residence were denied by both the Regional and State Commissions.  Plaintiff argued that various defendants (1) deprived him of all use and enjoyment of his property in violation of the Fourteenth Amendment's Due Process Clause; (2) deprived him under § 1983 of a valuable civil right; and (3) acting in concert, conspired under 42 U.S.C. section 1985 to deprive him of his civil rights.  *Id.* at 395.  The district court in *Beck* found that abstention under the *Burford* doctrine was appropriate in light of the following:

> The California coastline is a unique and valuable resource of that state.  In order to protect that resource, the people of that state enacted extensive legislation providing for a complex system of regulation with state controls ultimately yielding to local control with state supervision through the local adoption and state approval of local coastal plans.  The legislation provides for an interim permit procedure until those local plans are adopted and approved.  The coastal acts specifically provide a system of recourse for the permit applicant and a particularized system of review.  Furthermore, the California Supreme Court in *Agins v. City of Tiburon*, 23 Cal.3d 605, 157 Cal. Rptr. 372, 598 P.2d 25 (1979), in holding that a plaintiff may not recover damages on the theory of inverse condemnation, has established a policy in the state which dictates that "taking" actions must be handled in a particularized fashion.

*Id.* at 400.  Plaintiffs attempt to distinguish *Beck* by noting that the district court in that case (1) considered a pending parallel state court action; (2) was dealing with a then-new California regulatory scheme; (3) was evaluating California land use issues; and (4) noted that the dispute was primarily about money, and that an action seeking prospective injunctive relief if the state proceedings were stayed would be appropriate.  (Opp'n 17.)

The Court does not find any of these arguments to be persuasive.  First, the district court in *Beck* did not rely on either the first or fourth point in reaching its conclusion as to the appropriateness of abstaining on *Burford* grounds.  Accordingly, that Plaintiffs seek only injunctive, rather than monetary, relief is inapposite to the *Burford* abstention inquiry.  Nor did the Court in *Beck* suggest

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 16-02129 SJO (RAOx)**          **DATE:   July 11, 2016**

that the "newness" of the California Coastal Act bore any relation to its decision whether to abstain; indeed, the notion that California "enacted **extensive legislation** providing for a **complex system of regulation** with state controls ultimately yielding to local control with state supervision through the local adoption and state approval of local coastal plans" has not changed since the enactment of the California Coastal Act. *Beck*, 479 F. Supp. at 400 (emphasis added). Plaintiffs' unsupported assertion that "these Coastal Act claims are not complex or controversial" in light of allegations contained in a letter sent by one California Coastal Commission employee thus misses the mark. (*See* Opp'n 17.)

Moreover, Plaintiffs ask the Court in this case to "evaluat[e] California land use issues," including (1) whether the City should have required members of the LBB to obtain a coastal development permit before constructing the Rock Fort; (2) whether the Rock Fort is exempt from these permitting requirements as an "excluded development;" (3) whether the LBB's conduct toward non-residents constitutes "development" under the Coastal Act and the Palos Verdes Estates' Local Coastal Program; and (4) whether the Rock Fort should be demolished. Plaintiffs allege that on January 21, 2016, an enforcement analyst for the California Coastal Commission sent Chief Kepley a letter noting that "[p]recluding full public use of the coastline . . . whether through physical devices . . . or nonphysical impediments, such as threatening behavior intended to discourage public use of the coastline, . . . constitutes development under the Coastal Act and the Palos Verdes Estates LCP." (Compl., Ex. 18.) The letter also states that the Commission has received reports of unpermitted structures, including stone forts, constructed on the shoreline of Lunada Bay, and invites Chief Kepley to "meet to discuss this matter and collaborate with the City in their efforts to ensure enjoyment of the coastline by all Californians and visitors alike." (Compl. Ex. 18.) The possibility that the City, Chief Kepley, and the Commission might come together to address access issues and Lunada Bay and determine which permits are or are not required under the Act and the City's LCP—as part of the Commission's administrative process or otherwise—underscores both the importance of the administrative process to the City's efforts to "establish a coherent policy" and the intricate relationship between the federal and state issues presented in this case—namely, providing nonresidents access to public waters. *Tucker*, 942 F.2d at 1405. Notably, although Plaintiffs correctly state that California Public Resources Code section 30803 authorizes "[a]ny person [to] maintain an action for declaratory and equitable relief to restrain any violation of this division," Cal. Pub. Res. Code § 30803, they cite no authority indicating that an individual or group may challenge a municipality's failure to require others' obtaining a coastal development permit prior to constructing a "development" in a coastal zone.

Here, as in *Beck*, the Court concludes that *Burford* abstention is appropriate given the Court's reticence "to interfere with the local administration of local laws." *Beck*, 479 F. Supp. at 400. Unlike in *Beck*, however, the Court concludes that dismissal of Plaintiffs' Coastal Act Claim—the typical remedy in *Burford* abstention cases—is appropriate, particularly given the uncertainty surrounding enforcement efforts that might be taken by the Commission and/or the City itself vis-a-vis the Rock Fort and the actions of the LBB. The Court accordingly **DISMISSES** Plaintiffs' fifth cause of action for violation of the California Coastal Act as to the City Defendants **without leave to amend**.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>July 11, 2016</u>

III.     <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants City of Palos Verdes Estates and Chief of Police Jeff Kepley's Motion to Dismiss Complaint.  Plaintiffs' fourth cause of action for violation of the Privileges and Immunities Clause pursuant to 42 U.S.C. § 1983 and fifth cause of action for violation of the California Coastal Act are **DISMISSED without leave to amend** as to Defendants City of Palos Verdes Estates and Chief of Police Jeff Kepley, in his representative capacity.  Defendants City of Palos Verdes Estates and Chief of Police Jeff Kepley have fourteen (14) days from the issuance of this Order to respond to the remainder of Plaintiffs' Complaint.

IT IS SO ORDERED.

# Exhibit D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*previously filed*
*& served initial*
*disclosures.*

**CIVIL MINUTES - GENERAL**

Case No.   CV 16-02129 SJO (RAOx)                    Date   August 29, 2016

Title   Cory Spencer et al v. Lunada Bay Boys et al

| Present: The Honorable | S. JAMES OTERO | |
|---|---|---|
| Victor Paul Cruz | Carol Zurborg | |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Kurt A. Franklin | Tera A. Lutz |
| Victor J. Otten | John P. Worgul |
| | Richard P. Dieffenbach |
| | Peter T. Haven |
| | Mark Fields |
| | Edwin J. Richards, Jr. |
| | L. William Locke |

**Proceedings:**       SCHEDULING CONFERENCE

Matter called.

Counsel for Defendant Alan Johnston is not present.

Attorney William Locke advises the Court that his firm will represent defendants Frank Ferrara and Charlie Ferrara.  The Court Orders that two said defendants will file an answer to the complaint by Friday, September 2, 2016.

The parties stipulate that the Court's order of 7/11/16 shall apply to all defendants.

The Court sets the following schedule:

The filing of a Motion for Class Certification shall be Friday, December 30, 2016; Opposition shall be due by January 13, 2017; Reply due Friday, January 20, 2017; Hearing on motion shall be set for Tuesday, February 21, 2017 @ 10:00 a.m.

Jury Trial:                    Tuesday, November 7, 2017  @ 9:00 a.m.

Pretrial Conference:       Monday, October 23, 2017 @ 9:00 a.m.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 16-02129 SJO (RAOx)                     Date   August 29, 2016

Title   Cory Spencer et al v. Lunada Bay Boys et al

Motion Cutoff:          Monday, August 21, 2017 @ 10:00 a.m.

Discovery Cutoff:       Monday, August 7, 2017

Last Date to Amend:     Not provided

Reference of the above case to the Alternative Dispute Resolution Program is vacated. Settlement is referred to Private Mediation for all further proceedings.

All discovery disputes are to be brought before the Magistrate Judge assigned to the case. The parties are reminded of their obligations under Fed. R. Civ. P. 26-1(a) to disclose information without a discovery request.

Court advises counsel that all Pretrial documents must be filed in compliance with the Court's standing order, including but not limited to:

1.   All Jury Instructions, agreed and opposed;
2.   Verdict Forms;
3.   Proposed Voir Dire Questions;
4.   Agreed-To Statement of Case;
5.   Witness List, listing each witness and time estimates to conduct direct, cross, redirect and recross;
6.   Trial Brief and Memorandum of Contentions;
7.   Joint Rule 26(f) Report;
8.   If Court Trial, file Findings of Fact and Conclusions of Law and summaries of direct testimony at Pretrial Conference;
9.   Motions in Limine are to be filed according to Local Rule 7 and will be heard at 9:00 a.m. the first day of trial;
10.  Exhibits properly labeled, tagged, and in binders.

cc:   ADR Coordinator

                                                                        :        0/23

                                        Initials of Preparer            vpc

# Exhibit E

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 89 of 144   Page ID
#:7030
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 17 of 87   Page ID
#:1789

1  HANSON BRIDGETT LLP
   KURT A. FRANKLIN, SBN 172715
2  kfranklin@hansonbridgett.com
   SAMANTHA WOLFF, SBN 240280
3  swolff@hansonbridgett.com
   CAROLINE LEE, SBN 293297
4  clee@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, California 94105
   Telephone: (415) 777-3200
6  Facsimile:  (415) 541-9366

7  HANSON BRIDGETT LLP
   TYSON M. SHOWER, SBN 190375
8  tshower@hansonbridgett.com
   LANDON D. BAILEY, SBN 240236
9  lbailey@hansonbridgett.com
   500 Capitol Mall, Suite 1500
10 Sacramento, California 95814
   Telephone: (916) 442-3333
11 Facsimile:  (916) 442-2348

12 OTTEN LAW, PC
   VICTOR OTTEN, SBN 165800
13 vic@ottenlawpc.com
   KAVITA TEKCHANDANI, SBN 234873
14 kavita@ottenlawpc.com
   3620 Pacific Coast Highway, #100
15 Torrance, California 90505
   Telephone: (310) 378-8533
16 Facsimile:  (310) 347-4225

17 Attorneys for Plaintiffs
   CORY SPENCER, DIANA MILENA
18 REED, and COASTAL PROTECTION
   RANGERS, INC.

19

20              **UNITED STATES DISTRICT COURT**

21      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

22

23  CORY SPENCER, an individual;          CASE NO. 2:16-cv-02129-SJO (RAOx)
    DIANA MILENA REED, an
24  individual; and COASTAL               **PLAINTIFFS' SUPPLEMENTAL**
    PROTECTION RANGERS, INC., a           **DISCLOSURES**
25  California non-profit public benefit
    corporation,
26
27
28              Plaintiffs,

1     v.

2

3   LUNADA BAY BOYS; THE

4   INDIVIDUAL MEMBERS OF THE
LUNADA BAY BOYS, including but

5   not limited to SANG LEE, BRANT
BLAKEMAN, ALAN JOHNSTON

6   AKA JALIAN JOHNSTON,
MICHAEL RAE PAPAYANS,

7   ANGELO FERRARA, FRANK

8   FERRARA, CHARLIE FERRARA,
and N.F.; CITY OF PALOS

9   VERDES ESTATES; CHIEF OF

10  POLICE JEFF KEPLEY, in his

11  representative capacity; and DOES
1-10,

12

13        Defendants.

14

15      Plaintiffs CORY SPENCER, DIANA MILENA REED, and COASTAL

16  PROTECTION RANGERS, INC. (collectively, "Plaintiffs") make the following

17  supplemental initial disclosures pursuant to F.R.C.P. 26(a)(1).  As permitted

18  under Rule 26(e)(1), Plaintiffs reserve the right to clarify, amend, modify or

19  furthrt supplement the information contained in these Supplemental

20  Disclosures if and when they obtain additional supplemental information.  In

21  addition, Plaintiffs may rely on any persons or documents identified by any

22  party as part of their disclosures or during discovery.

23      Plaintiffs' Initial Disclosures are made without waiver of, or prejudice

24  to, any objections Plaintiffs may assert or have previously asserted.

25  Plaintiffs expressly reserve all objections, including, but not limited to:

26  (a) attorney-client privilege; (b) work-product doctrine; and (c) any other

27  applicable privilege or protection under federal or state law.  Plaintiffs

28  reserve the right to retract any inadvertent disclosures of information or

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 91 of 144   Page ID
#:7032
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 19 of 87   Page ID
#:1791

1   documents that are protected by the attorney-client privilege, the work
2   product doctrine, or any other applicable protection.
3          Without waiving any objections, Plaintiffs make the following
4   disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil
5   Procedure:

6   **A.    Witnesses**

7          Plaintiffs are in the process of identifying witnesses who are likely to
8   have discoverable information. However, at this early stage, Plaintiffs
9   identify the following person(s) they may use to support their claims:

10          1)      Plaintiff class representative, Cory Spencer, who may be
11                  reached via counsel for Plaintiffs, on the subjects set forth in
12                  the Complaint, to which he was a percipient witness.

13          2)      Plaintiff class representative, Diana Milena Reed, who may be
14                  reached via counsel for Plaintiffs, on the subjects of set forth
15                  in the Complaint, to which she was a percipient witness.

16          3)      Defendant, Sang Lee, on the allegations set forth in the
17                  Complaint related to Defendant Lunada Bay Boys and the
18                  Individual Members of the Lunada Bay Boys.

19          4)      Defendant, Brant Blakeman, on the allegations set forth in the
20                  Complaint related to Defendant Lunada Bay Boys and the
21                  Individual Members of the Lunada Bay Boys.

22          5)      Defendant, Michael Rae Papayans, on the allegations set
23                  forth in the Complaint related to Defendant Lunada Bay Boys
24                  and the Individual Members of the Lunada Bay Boys.

25          6)      Defendant, Angelo Ferrara, on the allegations set forth in the
26                  Complaint related to Defendant Lunada Bay Boys and the
27                  Individual Members of the Lunada Bay Boys.

28          7)      Defendant, Charlie Ferrara, on the allegations set forth in the

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 92 of 144   Page ID
#:7033
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 20 of 87   Page ID
#:1792

1    Complaint related to Defendant Lunada Bay Boys and
2    Individual Members of the Lunada Bay Boys.

3    8)    Defendant, N.F., on the allegations set forth in the Complaint
4          related to Defendant Lunada Bay Boys and Individual
5          Members of the Lunada Bay Boys.

6    9)    Defendant Frank Ferrara, on the allegations set forth in the
7          Complaint related to Defendant Lunada Bay Boys and
8          Individual Members of the Lunada Bay Boys.

9    10)   Defendant, Chief of Police, Jeff Kepley, on the allegations set
10         forth in the Complaint related to Defendant City of Palos
11         Verdes Estates, Defendant Lunada Bay Boys and Individual
12         Members of the Lunada Bay Boys.

13   11)   Tim Browne, address unknown, on the allegations set forth in
14         the Complaint related to Defendant City of Palos Verdes
15         Estates, Defendant Lunada Bay Boys and Individual
16         Members of the Lunada Bay Boys.

17   12)   Daniel Dreiling, contact information unknown, on the
18         allegations set forth in the Complaint related to Defendant
19         City of Palos Verdes Estates, Defendant Lunada Bay Boys
20         and Individual Members of the Lunada Bay Boys.

21   13)   Defendant in the state court action, Los Angeles Superior
22         Court Case No. BC629596, David Melo, on the allegations set
23         forth in the Complaint related to Defendant Lunada Bay Boys
24         and Individual Members of the Lunada Bay Boys.

25   14)   Defendant in the state court action, Los Angeles Superior
26         Court Case No. BC629596, Mark Griep, on the allegations set
27         forth in the Complaint related to Defendant Lunada Bay Boys
28         and Individual Members of the Lunada Bay Boys.

15)   Peter Babros, 316 Via Pasqual, Redondo Beach, CA 90277, on the allegations set forth in the Complaint related to Defendant Lunada Bay Boys and Individual Members of the Lunada Bay Boys. Plaintiffs are informed and believe that Mr. Babros is a former resident of the City of Palos Verdes Estates having graduated PV High School in 1988 and maintains strong connections to the community. Plaintiffs believe that Mr. Babros is a Lunada Bay Local and is being listed as a potential percipient witness.

16)   Cassidy Beukema, 2817 Palos Verdes Drive West, Palos Verdes Estates, CA, on the allegations set forth in the Complaint related to Defendant Lunada Bay Boys and Individual Members of the Lunada Bay Boys. Plaintiffs are informed and believe that Ms. Beukema is the step daughter to Defendant Angelo Ferraro and step sister to defendant N.F. Plaintiffs anticipate that this witness has information related to (a) the inner workings of the Lunada Bay Boys and the methods to keep non-locals from the beach, (b) illegal activities at Lunada Bay, (c) the January 20, 2014 incident, at a public surfing event at Lunada on Martin Luther King, Jr. Day,  where a Lunada Bay Boy  had his face painted in black makeup and wore a black Afro wig.  Plaintiffs' list this witness as a percipient witness.

17)   Ron Bornstein, contact information unknown. Plaintiffs are informed and believe that Mr. Bornstein is a longtime resident of the City of Palos Verdes Estates. Plaintiffs are informed and believe that Mr. Bornstein or "Borno" is a resident of the City of Palos Verdes Estates having graduated PV High

Case 2:16-cv-02129-SJO-RAO  Document 286-6  Filed 07/24/17  Page 94 of 144  Page ID
#:7035
Case 2:16-cv-02129-SJO-RAO  Document 138-1  Filed 11/09/16  Page 22 of 87  Page ID
#:1794

1    School and maintains strong connections to the community.

2    Plaintiffs believe that Mr. Bornstein is a Lunada Bay Local and

3    is being listed as a potential percipient witness and possible

4    defendant.

5    18)  Joel Milam, 30571 Rue De La Pzerre, Rancho Palos Verdes,

6    CA 90275, on the allegations set forth in the Complaint

7    related to Defendant Lunada Bay Boys and Individual

8    Members of the Lunada Bay Boys. Plaintiffs are informed and

9    believe that Mr. Milam was a former resident of the City of

10   Palos Verdes Estates having graduated PV High School and

11   maintains strong connections to the community. Plaintiffs

12   believe that Mr. Milam is a Lunada Bay Local and is being

13   listed as a potential percipient witness.

14   19)  Charles Thomas Mowatt, ███████████ Palos Verdes

15   Peninsula, CA 90274-2725; █████████6600, on the

16   allegations set forth in the Complaint related to Defendant

17   Lunada Bay Boys, Individual Members of the Lunada Bay

18   Boys and communications with Defendant City of Palos

19   Verdes Estates. Plaintiffs believe that Mr. Mowatt is a Lunada

20   Bay Local and is being listed as a potential percipient witness

21   and possible defendant.

22   20)  James Reinhardt, contact information unknown. Plaintiffs are

23   informed and believe that Mr. Reinhardt is a longtime resident

24   of the City of Palos Verdes Estates having graduated from

25   Palos Verdes High School in 1978. Plaintiffs believe that Mr.

26   Reinhardt is a Lunada Bay Local and is being listed as a

27   potential percipient witness. Plaintiffs believe that Mr.

28   Reinhardt is a Lunada Bay Local and is being listed as a

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 95 of 144   Page ID
#:7036
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 23 of 87   Page ID
#:1795

1    potential percipient witness and possible defendant.

2    21)    Fred Strater, contact information unknown, on the allegations

3    set forth in the Complaint related to Defendant Lunada Bay

4    Boys and the Individual Members of the Lunada Bay Boys.

5    Mr. Strater is a former resident of the City of Palos Verdes

6    Estates and maintains strong connections to the community.

7    Plaintiffs believe that Mr. Strater is a Lunada Bay Local.

8    Specifically, it is anticipated that Mr. Strater's testimony will

9    include but not be limited to the following: (a) information

10   regarding his former roommate, Charles Mowatt, as an

11   enforcer and one of the worst Lunada Bay Locals, (b)

12   information regarding the relationship between Michael S.

13   Papayans, Charles Mowatt and the people "running the bay,"

14   (c) tactics used to keep non-locals from coming to Lunada

15   Bay, and (d) other illegal activities.

16   22)    Mark Bonney, contact information unknown, on the

17   allegations set forth in the Complaint related to Defendant

18   Lunada Bay Boys and the Individual Members of the Lunada

19   Bay Boys. Plaintiffs are informed and believe that Mr. Bonney

20   is a former resident of the City of Palos Verdes Estates and

21   graduate of PV High School and maintains strong

22   connections to the community. Plaintiffs are informed and

23   believe that Mr. Bonney has information regarding the

24   activities of the Lunada Bay Boys by comments made in

25   social media defending the actions of the Lunada Bay Locals.

26   Mr. Bonney is being listed as a potential percipient witness

27   and possible defendant.

28   23)    David Hilton, a longtime resident of Palos Verdes Estates, on

1    the allegations set forth in the Complaint related to Defendant
2    Lunada Bay Boys, the Individual Members of the Lunada Bay
3    Boys and communications with Defendant City of Palos
4    Verdes Estates. Plaintiffs are informed and believe that this
5    witness is a long time surfer of Lunada Bay. It is anticipated
6    that this percipient witness has information regarding: (a)
7    January 22, 1995 incident where a surfer from Brazil
8    (documented in Incident Report 95-0062) went to Lunada Bay
9    to surf and was confronted by David Hilton and several other
10   Bay Boys who made threats of violence against him causing
11   him to reasonably believe that if he exercised his right surf at
12   a public beach, Hilton and/or the Lunada Bay Boys would
13   commit violence against him or his car and that Hilton and/or
14   the Lunada Bay Boys with him had the apparent ability to
15   carry out the threats, (b) the inner workings of the Lunada Bay
16   Boys and the methods to keep non-locals from the beach, (c)
17   illegal activities at Lunada Bay. Mr. Hilton is being listed as a
18   potential percipient witness and possible defendant.

19   24)   Eric Hilton, a longtime resident of Palos Verdes Estates, on
20         the allegations set forth in the Complaint related to Defendant
21         Lunada Bay Boys, the Individual Members of the Lunada Bay
22         Boys and communications with Defendant City of Palos
23         Verdes Estates. Plaintiffs are informed and believe that this
24         witness is a long time surfer of Lunada Bay. It is anticipated
25         that this percipient witness has information regarding: (a) the
26         inner workings of the Lunada Bay Boys and the methods to
27         keep non-locals from the beach, (b) illegal activities at Lunada
28         Bay. Mr. Hilton is being listed as a potential percipient witness

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 97 of 144   Page ID
#:7038
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 25 of 87   Page ID
#:1797

1    and possible defendant.

2    25)    Kelly Logan, ███████████, Venus, CA 90291-4919, on the

3    allegations set forth in the Complaint related to Defendant

4    Lunada Bay Boys and the Individual Members of the Lunada

5    Bay Boys. Plaintiffs are informed and believe that Mr. Logan

6    is a former resident of the City of Palos Verdes Estates but

7    maintains strong connections to the community. Plaintiffs are

8    informed and believe that Mr. Logan was involved in the

9    assault by Peter McCollum against Geoff Hagins and several

10   others reflected in Incident Report 95-0381. Plaintiffs believe

11   that Mr. Logan is a Lunada Bay Local and is being listed as a

12   potential percipient witness and possible defendant.

13   26)    John Rall, contact information unknown, on the allegations set

14   forth in the Complaint related to Defendant Lunada Bay Boys

15   and the Individual Members of the Lunada Bay Boys.

16   Plaintiffs are informed and believe that Mr. Rall graduated PV

17   High School 1991 and maintains strong connections to the

18   community. Plaintiffs believe that Mr. Rall is a Lunada Bay

19   Local and is being listed as a potential percipient witness and

20   possible defendant.

21   27)    Michael S. Papayans, aka "Paps," a longtime resident of

22   Palos Verdes Estates, on the allegations set forth in the

23   Complaint related to Defendant Lunada Bay Boys, the

24   Individual Members of the Lunada Bay Boys and

25   communications with Defendant City of Palos Verdes Estates.

26   Plaintiffs are informed and believe that he is the uncle of

27   Defendant Michael Rae Papayans. This witness surfs Lunada

28   Bay on a regular basis. It is anticipated that this witness has

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 98 of 144   Page ID
#:7039
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 26 of 87   Page ID
#:1798

1        information regarding: (a) a meeting that he had with Chris

2        Taloa in 2014, (b) the inner workings of the Lunada Bay Boys

3        and the methods to keep non-locals from the beach, (c) illegal

4        activities at Lunada Bay. Plaintiffs believe that Mr. Papayans

5        is a Lunada Bay Local and is being listed as a potential

6        percipient witness and possible defendant.

7   28)   Jim Russi, contact information unknown, on the allegations

8        set forth in the Complaint related to Defendant Lunada Bay

9        Boys and the Individual Members of the Lunada Bay Boys.

10        Plaintiffs are informed and believe that Mr. Russi is a former

11        resident of the City of Palos Verdes Estates and maintains

12        strong connections to the community – possibly still owning a

13        home on the cliff above the bay. Plaintiffs are informed and

14        believe and on that basis allege that this witness has

15        information regarding the illegal activities of the Lunada Bay

16        Boys including the Ferraras. While this witness claims to have

17        moved from the area years ago, he has publicly defended the

18        actions of the Lunada Bay Boys. Plaintiffs believe that Mr.

19        Russi is a Lunada Bay Local and is being listed as a potential

20        percipient witness.

21   29)   Carlos Anorga, ███████████████ Torrance, CA

22        90503; ██████ 7762, on the allegations set forth in the

23        Complaint related to Defendant Lunada Bay Boys and the

24        Individual Members of the Lunada Bay Boys. Plaintiffs

25        consider this person a longtime Lunda Bay local surfer and

26        potentially and is listed as a possible percipient witness.

27   30)   Zen Del Rio, contact information unknown, on the allegations

28        set forth in the Complaint related to Defendant Lunada Bay

1          Boys and the Individual Members of the Lunada Bay Boys.

2          Plaintiffs consider this person a longtime Lunda Bay local and

3          potentially and is listed as a possible percipient witness.

4      31)     Mark Koehler, address unknown, ██████-1668, on the

5          allegations set forth in the Complaint related to Defendant

6          Lunada Bay Boys and the Individual Members of the Lunada

7          Bay Boys. Plaintiffs believe that Mr. Koehler is a Lunada Bay

8          Local and is being listed as a potential percipient witness

9      32)     Chad Beatty, ██████████████, Redondo Beach, CA

10          90277, on the allegations set forth in the Complaint related to

11          Defendant Lunada Bay Boys and the Individual Members of

12          the Lunada Bay Boys. This person has been surfing Lunada

13          Bay for years and is listed as a possible percipient witness. At

14          this time, Plaintiffs do not have any specific information

15          regarding this witness.

16      33)     Joe Bark, address unknown; ██████████2463, on the

17          allegations set forth in the Complaint related to Defendant

18          Lunada Bay Boys and the Individual Members of the Lunada

19          Bay Boys. Plaintiffs believe that Mr. Bark is a Lunada Bay

20          Local and is being listed as a potential percipient witness.

21          Specifically, Plaintiffs believe and anticipate that Mr. Bark will

22          be able to testify to the following: (a) having surfed Lunada

23          Bay since at least 1980, the surfing ability of each named

24          Defendant, (b) as a world known waterman and surfboard and

25          paddleboard maker, the specific dangers related to surfing

26          Lunada Bay, (c) the types of equipment needed to safely surf

27          Lunada Bay during different types of surfing conditions, (d)

28          illegal activities of the Lunada Bay Boys.

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 100 of 144   Page ID
#:7041
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 28 of 87   Page ID
#:1800

34)   Jason Buck, contact information unknown, on the allegations
set forth in the Complaint related to Defendant Lunada Bay
Boys and the Individual Members of the Lunada Bay Boys.
This person has been surfing Lunada Bay for years and is
listed as a possible percipient witness. At this time, Plaintiffs
do not have any specific information regarding this witness.
Plaintiffs believe that Mr. Buck is a Lunada Bay Local and is
being listed as a potential percipient witness.

35)   Tony Pazanowski, contact information unknown. Plaintiffs are
informed and believe that Mr. Pazanowski was a former
resident of the City of Palos Verdes Estates having graduated
PV High School and maintains strong connections to the
community. Several people have reported that this witness
surfs the Bay and has posted comments in social media
supporting Lunada Bay localism. Plaintiffs are listing Mr.
Pazanowski as a potential percipient witness.

36)   Derek Daigneault, contact information unknown, on the
allegations set forth in the Complaint related to Defendant
Lunada Bay Boys and the Individual Members of the Lunada
Bay Boys. Plaintiffs are listing Mr. Daigneault as a potential
percipient witness.

37)   Daniel Dreiling Jr., contact information unknown, on the
allegations set forth in the Complaint related to Defendant
Lunada Bay Boys and the Individual Members of the Lunada
Bay Boys. Plaintiffs are informed and believe that this witness
is the son of the former Chief of Police for Palos Verdes
Estates and because of his father's job was permitted to surf
Lunada Bay. Plaintiffs are informed and believe that Mr.

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 101 of 144   Page ID
#:7042
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 29 of 87   Page ID
#:1801

1      Dreiling built at least one knee board for Defendant Brant

2      Blakeman. Mr. Dreiling is being listed as a potential percipient

3      witness.

4   38)   Danny Ecker, contact information unknown, on the allegations

5      set forth in the Complaint related to Defendant Lunada Bay

6      Boys and the Individual Members of the Lunada Bay Boys.

7      Plaintiffs are informed and believe that this person grew up in

8      Palos Verdes Estates and surfed Lunada Bay for years and is

9      listed as a possible percipient witness. At this time, Plaintiffs

10     do not have any specific information regarding this witness.

11     Plaintiffs believe that Mr. Ecker is being listed as a potential

12     percipient witness.

13  39)   Pat Ecker, contact information unknown, on the allegations

14     set forth in the Complaint related to Defendant Lunada Bay

15     Boys and the Individual Members of the Lunada Bay Boys.

16     This person has been surfing Lunada Bay for years and is

17     listed as a possible percipient witness. At this time, Plaintiffs

18     do not have any specific information regarding this witness.

19     Plaintiffs believe that Mr. Ecker is being listed as a potential

20     percipient witness.

21  40)   Greg Cahill, contact information unknown, on the allegations

22     set forth in the Complaint related to Defendant Lunada Bay

23     Boys and the Individual Members of the Lunada Bay Boys.

24     Plaintiffs were contacted by a witness that stated that Mr.

25     Cahill was one of a group of Bay Boys that approached him

26     on top of the bluff while he was attempting to surf Lunada Bay

27     and threatened him with violence and damage to his car when

28     if he went down the trail. Mr. Cahill is being listed as a

1    percipient witness and possible defendant.

2    41)    Alex Hooks, contact information unknown, on the allegations

3    set forth in the Complaint related to Defendant Lunada Bay

4    Boys and the Individual Members of the Lunada Bay Boys. At

5    this time, Plaintiffs do not have any specific information

6    regarding this witness. Plaintiffs believe that Mr. Hooks may

7    surf the bay and is being listed as a potential percipient

8    witness.

9    42)    Alex Gray, contact information unknown, on the allegations

10    set forth in the Complaint related to Defendant Lunada Bay

11    Boys and the Individual Members of the Lunada Bay Boys.

12    43)    Leonora Beukema, ███████████████, Palos Verdes

13    Estates, CA 90274, on the allegations set forth in the

14    Complaint related to Defendant Lunada Bay Boys and the

15    Individual Members of the Lunada Bay Boys. Plaintiffs are

16    informed and believe that Ms. Beukema is married to

17    Defendant Angelo Ferrara and anticipate that she will testify

18    related to the following: (a) the inner workings of the Lunada

19    Bay Boys and the methods to keep non-locals from the

20    beach; (b) her son, Anthony Beukema's, activities in the

21    Lunada Bay Boys, (c) illegal activities at Lunada Bay, (d)

22    statements she made to the Daily Breeze regarding the

23    January 20, 2014 incident, at a public surfing event at Lunada

24    on Martin Luther King, Jr. Day, where a Lunada Bay Boy that

25    had his face painted in black makeup and wore a black Afro

26    wig left her house to go to the event.  Plaintiffs' list this

27    witness as a percipient witness.

28    44)    Jordan Wright, can be contacted through Plaintiffs' counsel,

1    on the subjects set forth in the Complaint, to which he was a
2    percipient witness. Specifically, Mr. Wright is expected to
3    testify regarding several incidents that he has had with
4    Individual members of the Lunada Bay Boys over the 2 – 3
5    years that he has attempted surf the break, including but not
6    limited to the following: (a) being assaulted on January 29,
7    2016 by David Melo, (b) February 13, 2016 incident with
8    Plaintiff Diana Reed, (c) other incidents when he attempted to
9    surf Lunada Bay.

10    45)    Gavin Heaney, can be contacted through Plaintiffs' counsel,
11    on the allegations set forth in the Complaint related to
12    Defendant Lunada Bay Boys and the Individual Members of
13    the Lunada Bay Boys. It is anticipated that Mr. Heaney will
14    testify that he was denied entrance to Lunada Bay on top of
15    the bluff while attempting to surf there by six or more Bay
16    Boys who threatened him with violence and damage to his
17    property if he went down the trail. Fearing for his safety, he
18    quickly left the area. It is further anticipated this witness will
19    testify that Greg Cahill was one of the people who threatened
20    him.

21    46)    Tyler Canali, can be contacted through Plaintiffs' counsel, on
22    the allegations set forth in the Complaint related to Defendant
23    Lunada Bay Boys and the Individual Members of the Lunada
24    Bay Boys. Canali will testify that he is not from Palos Verdes
25    Estates. It is anticipated that he will testify that was hassled
26    the whole way out by the Lunada Bay Boys. They kept telling
27    him "Don't bother going out, you're not going to get a wave.".
28    He will state that the Individual Bay Boys cut him off on every

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 104 of 144   Page ID
#:7045
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 32 of 87   Page ID
#:1804

1    wave. He will further testify that Individual Bay Boys

2    surrounded him in the water in an effort to intimidate him.

3    They were as close as they could be, no one saying a word,

4    just staring him down. Eventually Canali made his way to

5    shore, where more hecklers awaited. They called him a "kook"

6    told him to leave.

7    47)   Jimmy Conn, can be contacted through Plaintiffs' counsel, on

8    the allegations set forth in the Complaint related to Defendant

9    Lunada Bay Boys and the Individual Members of the Lunada

10   Bay Boys. Specifically, it is anticipated that this witness will

11   testify that he started surfing Lunada Bay around 1976 on

12   really big swells. Because most of the locals are not good

13   surfers, they would not be in the water when he surfed but

14   would still threaten, harass and throw rocks at him. On one

15   occasion, he was hit by a rock and needed 17 stiches in his

16   lip. He still has the scar.

17   48)   Daniel Dorn, can be contacted through Plaintiffs' counsel, on

18   the allegations set forth in the Complaint related to Defendant

19   Lunada Bay Boys and the Individual Members of the Lunada

20   Bay Boys. It is anticipated that Mr. Dorn will testify that he is a

21   semiprofessional body boarder from Redondo Beach and that

22   he had never surfed Lunada Bay for fear of violence. He

23   attended one of Taloa's surfing events at Lunada Bay

24   because he felt it would be safe. It is anticipated that he will

25   testify even though the police where present they would not

26   tell him if it was safe. Upon greeting the pack with a hello, he

27   was assailed by profanities and threats. He will testify that a

28   Bay Boy in a kayak told him to leave and threatened him. It is

1      anticipated that Dorn will testify that Individual Bay Boys

2      dropped in on him and tried to run him over with their

3      surfboards until he left.

4    49)    Derek Ellis, can be contacted through counsel, on the

5      allegations set forth in the Complaint related to Defendant

6      Lunada Bay Boys and the Individual Members of the Lunada

7      Bay Boys.

8    50)    Geoff Hagins, can be contacted through Plaintiffs' counsel, on

9      the allegations set forth in the Complaint related to Defendant

10      Lunada Bay Boys and the Individual Members of the Lunada

11      Bay Boys. Geoff Hagins, John Hagin, Mike Bernard, Mike

12      Bernard, Jr, Charlie Rigano and Doug Disanti were accosted

13      by Peter McCollum and several other Bay Boys as reflected in

14      Incident Report 95-0381.

15    51)    John Hagins, contact information unknown, on the allegations

16      set forth in the Complaint related to Defendant Lunada Bay

17      Boys and the Individual Members of the Lunada Bay Boys.

18      Geoff Hagins, John Hagin, Mike Bernard, Mike Bernard, Jr,

19      Charlie Rigano and Doug Disanti were accosted by Peter

20      McCollum and several other Bay Boys as reflected in Incident

21      Report 95-0381.

22    52) .   Mike Bernard, contact information unknown, on the

23      allegations set forth in the Complaint related to Defendant

24      Lunada Bay Boys and the Individual Members of the Lunada

25      Bay Boys. Geoff Hagins, John Hagin, Mike Bernard, Mike

26      Bernard, Jr, Charlie Rigano and Doug Disanti were accosted

27      by Peter McCollum and several other Bay Boys as reflected in

28      Incident Report 95-0381.

1    53)    Mike Bernard, Jr. contact information unknown, on the

2    allegations set forth in the Complaint related to Defendant

3    Lunada Bay Boys and the Individual Members of the Lunada

4    Bay Boys. Geoff Hagins, John Hagin, Mike Bernard, Mike

5    Bernard, Jr, Charlie Rigano and Doug Disanti were accosted

6    by Peter McCollum and several other Bay Boys as reflected in

7    Incident Report 95-0381.

8    54)    Charlie Rigano, contact information unknown, on the

9    allegations set forth in the Complaint related to Defendant

10    Lunada Bay Boys and the Individual Members of the Lunada

11    Bay Boys. Geoff Hagins, John Hagin, Mike Bernard, Mike

12    Bernard, Jr, Charlie Rigano and Doug Disanti were accosted

13    by Peter McCollum and several other Bay Boys as reflected in

14    Incident Report 95-0381.

15    55)    Doug Disanti, contact information unknown, on the allegations

16    set forth in the Complaint related to Defendant Lunada Bay

17    Boys and the Individual Members of the Lunada Bay Boys.

18    Geoff Hagins, John Hagin, Mike Bernard, Mike Bernard, Jr,

19    Charlie Rigano and Doug Disanti were accosted by Peter

20    McCollum and several other Bay Boys as reflected in Incident

21    Report 95-0381.

22    56)    Kurt Stanphenhorst, contact information unknown, on the

23    allegations set forth in the Complaint related to Defendant

24    Lunada Bay Boys and the Individual Members of the Lunada

25    Bay Boys. It is anticipated that this witness will testify that Got

26    shot at with a pellet gun by an Individual Bay Boy.

27    57)    Randy Clark, contact information unknown, on the allegations

28    set forth in the Complaint related to Defendant Lunada Bay

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 107 of 144   Page ID
#:7048
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 35 of 87   Page ID
#:1807

1    Boys and the Individual Members of the Lunada Bay Boys.

2    58)    John Innis, can be contracted throught Plaintiffs' counsel, on

3    the allegations set forth in the Complaint related to Defendant

4    Lunada Bay Boys and the Individual Members of the Lunada

5    Bay Boys. This witness will testify that he was while trying to

6    take photographs. He made a police report but nothing came

7    of it.

8    59)    Trish Laurie, contact information unknown, on the allegations

9    set forth in the Complaint related to Defendant Lunada Bay

10    Boys and the Individual Members of the Lunada Bay Boys. It

11    is anticipated that Ms. Laurie will testify that she was sexually

12    harassed/assaulted at Lunada Bay.  It is anticipated that she

13    will say that certain individuals dropped "dropped their towels

14    and jerked off to her."  Ms. Laurie is being listed as a possible

15    percipient witness.

16    60)    Ken Claypool, can be contacted through Plaintiffs' counsel, on

17    the allegations set forth in the Complaint related to Defendant

18    Lunada Bay Boys and the Individual Members of the Lunada

19    Bay Boys. This witness will testify about several incidents of

20    harassment at Lunada Bay involving Individuals such as

21    Brant Blakeman and possibly one or more of the Ferraras.

22    61)    Tom Wilson, contact information unknown, on the allegations

23    set forth in the Complaint related to Defendant Lunada Bay

24    Boys and the Individual Members of the Lunada Bay Boys.

25    62)    Martin Tueling, contact information unknown, on the

26    allegations set forth in the Complaint related to Defendant

27    Lunada Bay Boys and the Individual Members of the Lunada

28    Bay Boys.

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 108 of 144   Page ID
#:7049
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 36 of 87   Page ID
#:1808

63)   Bernie Mann, contact information unknown, on the allegations set forth in the Complaint related to Defendant Lunada Bay Boys and the Individual Members of the Lunada Bay Boys.

64)   Dr. Stephen Young, can be contacted through Plaintiffs' counsel, on the allegations set forth in the Complaint related to Defendant Lunada Bay Boys and the Individual Members of the Lunada Bay Boys. It is anticipated that Dr. Stephen Young will testify that while attending Medical school he tried many times to enjoy the break at Lunada Bay and on every occasion I was bullied to leave the area. He will tesify that his vehicle was damaged many times which included slashed tires, scratches on the painted surfaces and broken windows. He will testify that there was a few occasions that he feared for my life. He will state that he filed a police report but nothing was done.

65)   Hagan Kelly, contact information unknown, on the allegations set forth in the Complaint related to Defendant Lunada Bay Boys and the Individual Members of the Lunada Bay Boys.

66)   Sef Krell, may be contacted through Plaintiffs' counsel, on the allegations set forth in the Complaint related to Defendant Lunada Bay Boys and the Individual Members of the Lunada Bay Boys. Specifically, related to the incident that occurred on or around November 15, 2014.

67)   Alan Haven, can be contacted through Plaintiffs' counsel, on the allegations set forth in the Complaint related to Defendant Lunada Bay Boys and the Individual Members of the Lunada Bay Boys. Mr. Haven is a resident of Palos Verdes Estates and will testify regarding the video of an assault that he took

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 109 of 144   Page ID
#:7050
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 37 of 87   Page ID
#:1809

1   on October 10, 2015.

2   68)   Daniel R. Jongeward, can be contacted through Plaintiffs'

3   counsel, on the allegations set forth in the Complaint related

4   to Defendant Lunada Bay Boys and the Individual Members

5   of the Lunada Bay Boys. Specifically, it is anticipated that Mr.

6   Jongeward will testify that: (a) he is not a resident of Palos

7   Verdes Estates, (b) he was a big surfer but rides longboards

8   and guns, (c) he has attempted to surf Lunada Bay on several

9   occasions. Because of the reputation, he went alone and

10   early in the morning. He has had dirt clogs and rocks thrown

11   at him. He has been physically threatened. People threatened

12   to vandalize his car. Because he believes that the Lunada

13   Bay Boys have the ability to physically harm him and his

14   property he made the decision not to return.

15   69)   Patrick Landon, contact information unknown, on the

16   allegations set forth in the Complaint related to Defendant

17   Lunada Bay Boys and the Individual Members of the Lunada

18   Bay Boys.

19   70)   Frank Netto, can be contacted through Plaintiffs' counsel, on

20   the allegations set forth in the Complaint related to Defendant

21   Lunada Bay Boys and the Individual Members of the Lunada

22   Bay Boys.

23   71)   Randy Miestrell, contact information unknown, on the

24   allegations set forth in the Complaint related to Defendant

25   Lunada Bay Boys and the Individual Members of the Lunada

26   Bay Boys. This witness has been quoted in numerus articles

27   over the years and is listed as a possible percipient witness.

28   72)   Sharlean Perez, can be contacted through Plaintiffs' counsel,

1    on the allegations set forth in the Complaint related to

2    Defendant Lunada Bay Boys and the Individual Members of

3    the Lunada Bay Boys. It is anticipated that this witness will

4    testify that she and her boyfriend tried to hike down the trail to

5    Lunada Bay and people started throwing glass bottles "near"

6    and "around" them.  She and her boyfriend at the time were

7    not from PVE.

8    73)    Charles Michael Pinkerton, can be contacted through

9    Plaintiffs' counsel, on the allegations set forth in the

10    Complaint related to Defendant Lunada Bay Boys and the

11    Individual Members of the Lunada Bay Boys. It is anticipated

12    that Mr. Pinkerton will testify that he is an aerospace engineer

13    with a Masters Degree that he has made several attempts to

14    surf Lunada Bay. He will state that he has been harassed

15    (verbal harassments, threats of violence, to throw things in the

16    water). He has had all four tires flattened, his windows waxed;

17    his backpack thrown in the water while he was out surfing.

18    74)    Mike Purpus, contact information unknown, on the allegations

19    set forth in the Complaint related to Defendant Lunada Bay

20    Boys and the Individual Members of The Lunada Bay Boys.

21    This witness is a former professional surfer who has written

22    articles about localism at Lunada Bay and is listed as a

23    possible percipient witness.

24    75)    Mike Stevens, Los Angeles County District Attorney's Office,

25    ██████████████████ Los Angeles, CA 90012, on the

26    allegations set forth in the Complaint related to Defendant

27    Lunada Bay Boys and the Individual Members of the Lunada

28    Bay Boys. Plaintiffs have been informed that Mr. Stevens is

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 111 of 144   Page ID
#:7052
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 39 of 87   Page ID
#:1811

1     an investigator with the Los Angeles District Attorney's Office

2     and that he was hassled by the Bay Boys when attempting to

3     surf Lunada Bay. Neither Plaintiffs nor their attorneys have

4     spoken directly with Mr. Stevens. He is listed as a possible

5     percipient witness.

6  76)  Christopher Taloa, can be contacted through Plaintiffs'

7     counsel, on the allegations set forth in the Complaint related

8     to Defendant Lunada Bay Boys and the Individual Members

9     of the Lunada Bay Boys. Specifically, it is anticipated that Mr.

10     Taloa will testify regarding several incidents.

11  77)  John MacHarg, can be contacted through Plaintiffs' counsel.

12     Plaintiffs anticipate that Mr. MacHard will testify that while

13     visiting Lunada Bay on Feburary 1, 2016 he was standing just

14     under the patio on the rocks and Defendant Sang Lee (local

15     surfer/enforcer) who was standing on top of the patio poured

16     out a portion of the beer he was holding on to his head.  This

17     happened right in front two officers that were standing 6 feet

18     to his right.

19  78)  Tim Tindall, can be contacted through Plaintiffs' counsel, on

20     the allegations set forth in the Complaint related to Defendant

21     Lunada Bay Boys and the Individual Members of the Lunada

22     Bay Boys. It is anticipated that Mr. Tindell will testify about

23     being harassed while attempting to body board Wally's.

24  79)  Rory Carroll, contact information unknown, on the allegations

25     set forth in the Complaint related to Defendant Lunada Bay

26     Boys and the Individual Members of the Lunada Bay Boys.

27     Specifically, Mr. Carroll is expected to testify regarding the

28     contents of the

1          video:https://www.theguardian.com/travel/video/2015/may/18/

2          california-surf-wars-lunada-bay-localism-video

3    80)    Noah Smith, contact information unknown, on the allegations

4          set forth in the Complaint related to Defendant Lunada Bay

5          Boys and the Individual Members of the Lunada Bay Boys.

6          Specifically, Mr. Carroll is expected to testify regarding the

7          contents of the video:

8          https://www.theguardian.com/travel/video/2015/may/18/califor

9          nia-surf-wars-lunada-bay-localism-video

10    81)    Josh Berstein, contact information unknown, on the subject of

11          the declaration submitted to the California Coastal

12          Commission regarding trail access.

13    82)    Karl R. Bingemann, contact information unknown, on the

14          subject of the declaration submitted to the California Coastal

15          Commission regarding trail access.

16    83)    William C. Brand, contact information unknown, on the subject

17          of the declaration submitted to the California Coastal

18          Commission regarding trail access.

19    84)    Kurt Buettgenbach, contact information unknown, on the

20          subject of the declaration submitted to the California Coastal

21          Commission regarding trail access.

22    85)    Sean Criss, contact information unknown, on the subject of

23          the declaration submitted to the California Coastal

24          Commission regarding trail access.

25    86)    Douglas Leach, contact information unknown, on the subject

26          of the declaration submitted to the California Coastal

27          Commission regarding trail access.

28    87)    Ian McDonald, contact information unknown, on the subject of

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 113 of 144   Page ID
#:7054
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 41 of 87   Page ID
#:1813

1        the declaration submitted to the California Coastal

2        Commission regarding trail access.

3    88)   John R. McGrath, Jr., contact information unknown, on the

4        subject of the declaration submitted to the California Coastal

5        Commission regarding trail access.

6    89)   Colin McNany, contact information unknown, on the subject of

7        the declaration submitted to the California Coastal

8        Commission regarding trail access.

9    90)   Bruce V. Rorty, contact information unknown, on the subject

10      of the declaration submitted to the California Coastal

11      Commission regarding trail access.

12   91)   Officers R. Castro / C. Simon, presumably can be contacted

13      through counsel for the City, on the subject regarding Officer

14      Report for Incident 12-11606.

15   92)   Officers Helinga / Wulf, presumably can be contacted through

16      counsel for the City, on the subject regarding Officer Report

17      for Incident 11-10919.

18   93)   Officer Shinowsky, presumably can be contacted through

19      counsel for the City, on the subject regarding Officer Report

20      for Incident 95-0297.

21   94)   Officer Belcher, presumably can be contacted through

22      counsel for the City, on the subject regarding Officer Report

23      for Incidents 95-0281, 95-0381.

24   95)   Officers Velez / John C. Eberhard / Denise L. Allen,

25      presumably can be contacted counsel for the City, on the

26      subject regarding Officer Report(s) for Incidents 95-0418 and

27      97-0042.

28   96)   Officers Denice L. Allen / John C. Eberhard / Steven N.

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 114 of 144   Page ID
#:7055
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 42 of 87   Page ID
#:1814

1            Barber, presumably can be contacted through counsel for the

2            City, on the subject regarding Officer Report for Incident 97-

3            0047.

4   97)   Officers Richard J. Delmont / Patrick L. Hite, can presumably

5            be contacted through counsel for the City, on the subject

6            regarding Officer Report for Incident 98-0301.

7   98)   Officers Cecilia T. Nguyen / Mark A. Velez / Valerie S. Hite,

8            can presumably be contacted through counsel for the City, on

9            the subject regarding Officer Report for Incident 99-0042.

10  99)   Officers E. Gaunt / C. Reed, presumably can be contacted

11           through counsel for the City, on the subject regarding Officer

12           Report for Incident 09-00575.

13  100)  Officers E. Gaunt / C. Reed, presumably can be contacted

14           through counsel for the City, on the subject regarding Officer

15           Report for Incident 09-00562.

16  101)  Officers B. Hernandez / R. Venegas, presumably can be

17           contacted through counsel for the City, on the subject

18           regarding Officer Report for Incident 09-00693.

19  102)  Officer B. Hernandez, presumably can be contacted through

20           counsel for the City, on the subject regarding Officer

21           Report for Incident 09-10183.

22  103)  Officers L. Tejada / R. Delmont, presumably can be contacted

23           through counsel for the City, on the subject regarding Officer

24           Report for Incident 09-08872.

25  104)  Officers C. Eberhard / S. Tomlins, presumably can be

26           contacted through counsel for the City, on the subject

27           regarding Officer Report for Incident 10-00265.

28  105)  Officers B. Hernandez / C. Reed, presumably can be

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 115 of 144   Page ID
#:7056
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 43 of 87   Page ID
#:1815

1          contacted through counsel for the City, on the subject

2          regarding Officer Report for Incident 10-02408.

3  **B.**    **Documents**

4         In accordance with F.R.C.P. 26(a)(1)(A)(ii), Plaintiffs identify the

5  following categories of documents in their possession, custody or control:

6         <u>Police Reports:</u>

7       1.    Palos Verdes Estates Police Department, Officer Report for

8           Incident 16-01360, dated 1/22/95.

9       2.    Palos Verdes Estates Police Department, Officer Report for

10         Incident 95-0219/0381, dated 3/13/95.

11      3.    Palos Verdes Estates Police Department, Officer Report for

12         Incident 95-0297, dated 4/5/95.

13      4.    Palos Verdes Estates Police Department, Officer Report for

14         Incident 95-0381, dated 4/26/95.

15      5.    Palos Verdes Estates Police Department, Officer Report for

16         Incident 95-0381, dated 3/14/95.

17      6.    Palos Verdes Estates Police Department, Officer Report for

18         Incident 95-0418, dated 5/7/95.

19      7.    Palos Verdes Estates Police Department, Officer Report for

20         Incident 96-1037, dated 12/18/96.

21      8.    Palos Verdes Estates Police Department, Officer Report for

22         Incident 97-0002, dated 1/1/97.

23      9.    Palos Verdes Estates Police Department, Officer Report for

24         Incident 97-0042, dated 1/18/97.

25    10.    Palos Verdes Estates Police Department, Officer Report for

26         Incident 97-0047, dated 1/19/97.

27    11.    Palos Verdes Estates Police Department, Officer Report for

28         Incident 98-0301, dated 5/02/98.

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 116 of 144   Page ID
#:7057
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 44 of 87   Page ID
#:1816

1    12.   Palos Verdes Estates Police Department, Officer Report for
2           Incident 99-0042, dated 1/16/99.

3    13.   Palos Verdes Estates Police Department, Officer Report for
4           Incident 99-0077, dated 1/24/99.

5    14.   Palos Verdes Estates Police Department, Officer Report for
6           Incident 09-00562, dated 1/19/09.

7    15.   Palos Verdes Estates Police Department, Officer Report for
8           Incident 09-00693, dated 1/24/09.

9    16.   Palos Verdes Estates Police Department, Officer Report for
10          Incident 09-08872, dated 10/15/09.

11    17.   Palos Verdes Estates Police Department, Officer Report for
12          Incident 09-10183, dated 11/28/09. – Sang Lee

13    18.   Palos Verdes Estates Police Department, Officer Report for
14          Incident 10-00265, dated 1/10/10.

15    19.   Palos Verdes Estates Police Department, Officer Report for
16          Incident 10-02408, dated 3/23/10.

17    20.   Palos Verdes Estates Police Department, Officer Report for
18          Incident 11-10919, dated 12/25/11.

19    21.   Palos Verdes Estates Police Department, Officer Report for
20          Incident 12-11606, dated 11/03/12.

21    22.   Palos Verdes Estates Police Department, Officer Report for
22          Incident 16-0136, dated 1/29/16.

23    Photos:

24    23.   All photos attached as exhibits to the Complaint.

25    24.   All photos attached as exhibits to the State Action BC629596.

26    25.   Photographs of Lunada Bay taken in August 2015 and provided
27          to Plaintiffs by City of Palos Verdes Estates in response to Public
28          Records Act Request, Bates Nos. 1128-1151,1267-1300.

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 117 of 144   Page ID
#:7058
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 45 of 87   Page ID
#:1817

Correspondence:

26. Letter undated from Jim Russi to Ed Jaakola.

27. Letter dated January 21, 2016, from Jordan Sanchez of the California Coastal Commission to Jeff Kepley of the Palos Verdes Police Department.

28. Letter dated June 6, 2016, from Mr. Sanchez of the California Coastal Commission to City Manager Anton Dahlerbruch.

29. Letter dated June 7, 2016, from City Manager Dahlerbruch to Mr. Sanchez.

30. July 12, 2016 Sheri Repp-Loadsmann, Deputy City Manager/Planning and Building Director issued a Memorandum to the City's Mayor and City Council.

31. Email chain dated April 4, 2016 between John MacHarg and Mark Velez.

32. Memo dated 12/31/15 from Chief Jeff Kepley' re PVE Surfing Localism in The Media This Week.

33. Memorandum from Anton Dahlerbruch to Honorable Mayor and City Council dated January 22, 2016, Subject City Managers Report for January 18- January 22, 2016.

34. Memorandum from Anton Dahlerbruch to Honorable Mayor and City Council dated January 29, 2016, Subject City Managers Report for January 25- January 29, 2016.

35. Memorandum from Anton Dahlerbruch to Honorable Mayor and City Council dated March 25, 2016, Subject City Managers Report for March 21 - March 25, 2016.

36. Letter dated January 12, 2016 from Resident to Jeff Kepley.

37. Letter to Surfer Magazine from Frank Ferarra entitled "Today's Lesson Don't Be A Kook.

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 118 of 144   Page ID
#:7059
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 46 of 87   Page ID
#:1818

<u>Videos</u>:

38. Defendant Sang Lee and other Bay Boys caught on video. https://www.theguardian.com/travel/video/2015/may/18/california-surf-wars-lunada-bay-localism-video

39. Peter McCollum assaults Jeff Hagins, John Hagins, Vietnam combat vet Mike Bernard and his son for surfing the public beach telling them, among other things, "you won't come back here again boy". https://www.youtube.com/watch?v=J1Ms0ktOaZs

40. Defendant Michael Papayans - blocking access to the public beach: https://vimeo.com/88394493

41. MLK harassment - https://vimeo.com/85025465

42. Video of David Melo harassing Diana Milena Reed and Jordan Wright and attempting to block their access to public beach taken on 1/29/16.

43. Video of Hank Harper attempting to intimidate Diana Milena Reed and her attorney while being interviewed by the media.

44. The Swell Life, (2001), interview of former Chief of Police Tim Browne.

45. Video taken by Alan Haven on 10-10-16 of six males on the cliffs edge that overlooks Lunada Bay.

**C.   Damages**

A Computation of Damages Claimed by Plaintiff Under Fed. R. Civ. P. 26(a)(1)(A)(iii)

This case is primarily about broad, class-wide injunctive and declaratory relief necessary to redress group-wide injury to visiting beachgoers whom Defendants are denying access to Lunada Bay, whereby a single injunction or declaratory judgment will provide relief to each member

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 119 of 144   Page ID
#:7060
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 47 of 87   Page ID
#:1819

1   of the class.  In addition to equitable relief, on behalf of themselves and the

2   putative class, Plaintiffs Cory Spencer and Diana Milena Read seek uniform

3   and formulaic damages that are incidental to the requested equitable relief.

4   This includes damages under Civil Code section 52 and 52.1(b). Plaintiffs do

5   not have sufficient information at this time to provide an accurate estimate of

6   the incidental damages, however, such amount is to be determined at trial.

7         Plaintiffs also seek attorneys' fees, costs, and interest pursuant to Cal.

8   Civ. Code §§ 52.1 and 1021.5, 42 U.S.C. § 1983, and any other statute or

9   rule of law authorizing such an award.

10         At this early stage of discovery, however, Plaintiffs are unable to

11   provide a full computation of damages they will be seeking.

12   **D.**    **Insurance**

13         Not applicable.

14   **E.**    **Certification**

15         To the best of my knowledge, information, and belief, formed after an

16   inquiry that is reasonable under the circumstances, this disclosure is

17   complete and correct as of the time it is made.

18

19   DATED: October 2, 2016          HANSON BRIDGETT LLP

20

21                     By:*/s/ Kurt A. Franklin*

22                     KURT A. FRANKLIN
                  SAMANTHA D. WOLFF

23                     CAROLINE ELIZABETH LEE
                  TYSON M. SHOWER

24                     LANDON D. BAILEY
                  Attorneys for Plaintiffs

25                     CORY SPENCER, DIANA MILENA
                  REED, and COASTAL PROTECTION

26                     RANGERS, INC.

27

28

Case 2:16-cv-02129-SJO-RAO   Document 286-6   Filed 07/24/17   Page 120 of 144   Page ID
#:7061
Case 2:16-cv-02129-SJO-RAO   Document 138-1   Filed 11/09/16   Page 48 of 87   Page ID
#:1820

1

2   DATED:  October 2, 2016

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OTTEN LAW, PC

By:  _/s/Victor Otten_____
      VICTOR OTTEN
      KAVITA TEKCHANDANI
      Attorneys for Plaintiffs
      CORY SPENCER, DIANA MILENA
      REED, and COASTAL PROTECTION
      RANGERS, INC.

# Exhibit F

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  CV 16-02129 SJO (RAOx)          DATE: <u>February 21, 2017</u>

TITLE:      <u>Spencer et al. v. Lunada Bay Boys et al.</u>

========================================================================
PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                          Not Present
Courtroom Clerk                           Court Reporter

COUNSEL PRESENT FOR PLAINTIFFS:           COUNSEL PRESENT FOR DEFENDANTS:

Not Present                               Not Present


========================================================================
PROCEEDINGS (in chambers):    ORDER DENYING MOTION FOR CLASS ACTION
CERTIFICATION [Docket No. 159]

This matter is before the Court on Plaintiffs Cory Spencer ("Spencer"), Diana Milena Reed
("Reed"), and Coastal Protection Rangers, Inc.'s ("CPRI") (together, "Plaintiffs") Motion for Class
Certification ("Motion"), filed December 29, 2016.  Defendants Sang Lee ("Lee"), Brant Blakeman
("Blakeman"), Alan Johnston ("Johnston"), Michael Rae Papayans ("Papayans"), Angelo Ferrara
("Angelo"), Frank Ferrara ("Frank"), Charlie Ferrara ("Charlie"), N.F. (together, "Individual
Defendants"), the City of Palos Verdes Estates ("City") and Chief of Police Jeff Kepley ("Kepley")
(together, "City Defendants") individually and jointly opposed the Motion ("Opposition") on January
13, 2017.  Plaintiffs replied ("Reply") on January 20, 2017.  The Court found this matter suitable
for disposition without oral argument and vacated the hearing scheduled for February 21, 2017.
*See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court **DENIES** Plaintiffs' Motion.


I.      FACTUAL AND PROCEDURAL HISTORY

Riding the wave of the *Point Break* remake, Plaintiffs initiated this putative class action lawsuit on
March 29, 2016, alleging they and other would-be beach-goers have been unlawfully excluded
from parks, beaches, and ocean access in Palos Verdes Estates.  (*See generally* Compl., ECF
No. 1.)   In particular, Plaintiffs assert that Individual Defendants' long-standing history of
"localism," a "territorial practice whereby resident surfers attempt to exclude nonresident beach-
goers and surfers through threats, intimidation, and violence," at Palos Verdes Estates' infamous
"Lunada Bay" and City Defendants' nonchalance about such localism violate a bevy of federal and
state laws.  (*See* Compl. ¶¶ 1-2, 17.)  Throughout this case, Plaintiffs have referred to Individual
Defendants as members of the "Lunada Bay Boys" ("LBB"), and have asked the Court to declare
the LBB to be a criminal street gang under California Penal Code § 186.22(f) and an
unincorporated association within the meaning of California Corporations Code § 18035(a).  (*See*
Compl. at 40.)  Against this backdrop, the Court examines the evidence submitted by the parties
and then addresses the merits of Plaintiffs' Motion.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>     **DATE:** <u>February 21, 2017</u>

A.     <u>Factual Background</u>

1.     <u>History of Localism in Lunada Bay</u>

The City owns Lunada Bay, a public beach that is renowned for its natural beauty, scenic hiking, and excellent surfing conditions.  (*See* City Defs.' Responses in Opp'n to Separate Statement of Undisputed Facts ("City Defs.' Responses") ¶¶ 1, 5, ECF No. 189; *see also* Expert Decl. Peter Neushul in Supp. Mot ("Neushul Decl.") ¶ 13, ECF No. 159-8.)  Swells in Lunada Bay can reach as high as twenty (20) feet during peak season, making it one of the few big-wave surfing locations in Southern California.  (Neushal Decl. ¶ 17.)  Accordingly, Plaintiffs submit that Lunada Bay should be a popular destination for surfers and recreational beach-goers alike; but because of "concerted efforts" by members of the LBB, all of whom reside in Palos Verdes, to harass visitors, it is not.  (Mot. 3, 14, ECF No. 159; *see also* Neushal Decl. ¶ 13.)

Plaintiffs allege members of the LBB conspire to deter non-locals from both visiting and returning to Lunada Bay through various methods of harassment, including, but not limited to: (1) vandalizing visitors' cars (e.g., slashing tires, sprawling derogatory words in surf wax across windshields, and breaking taillights and mirrors); (2) stealing visitors' property (e.g., wallets, wetsuits, and surfboards); (3) physically assaulting visitors (e.g., throwing rocks, running people over with surfboards, and shoving, slapping, and punching visitors); (4) hurling obscenities at visitors; and (5) blocking visitors from catching waves while in the ocean.  (*See generally* Mot.; *see also* Compl. ¶ 18.)  Plaintiffs have submitted evidence suggesting similar localist practices have been occurring at Lunada Bay for decades.  (Decl. Victor Otten in Supp. Mot. ("Otten Decl.") ¶¶ 4, 12, Exs. 3, 11, ECF No. 159-3.)

2.     <u>Spencer and Reed Are Harassed at Lunada Bay by LBB</u>

Spencer and Reed, who seek to represent a class of desirous non-local beach-goers, claim to have experienced these forms of harassment when they attempted to surf at Lunada Bay in early 2016.  (*See* Compl. ¶¶ 21-27; *see also* Decl. Cory Spencer in Supp. Mot. ("Spencer Decl.") ¶¶ 11-12, ECF No. 159-4; Decl. Diana Milena Reed in Supp. Mot. ("Reed Decl.") ¶ 8, ECF No. 159-5.)  Although Spencer, a former police officer in nearby El Segundo, had wanted to surf Lunada Bay for decades, he avoided it because of its reputation for severe localism.  (Spencer Decl. ¶¶ 3-4.)  The first time he surfed Lunada Bay was in January 2016 when he and a handful of other surfers organized a group to surf at the bay.  (Spencer Decl. ¶¶ 8-11.)  Spencer declares that he even contacted the Palos Verdes Estates Police Department to request additional patrols, and that each of the surfers contributed $20 to hire a security guard to watch their cars while they surfed. (Spenced Decl. ¶¶ 9-10.)

Despite this preparation, Spencer submits that members of the LBB began harassing him and his group "[a]lmost instantly after we arrived at Lunada Bay the morning of January 29, 2016[.]" (Spencer Decl. ¶ 11.)  Spencer avers that members of the LBB (1) verbally harassed and

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**  <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>February 21, 2017</u>

intimidated him and others; (2) impeded his movement in the water; (3) prevented him from catching any waves; and (4) attempted to run him over and slicing open his right wrist, resulting in a half-inch scar.  (Spencer Decl. ¶¶ 11-14, Ex. 1.)  Spencer returned a week later and experienced similar harassment.  (Spencer Decl. ¶¶ 21-23.)

Reed also visited Lunada Bay for the first time in January 2016.  (Reed Decl. ¶ 7.)  Like Spencer, she was verbally harassed and intimidated by Blakeman and other LBB members upon her arrival and while she surfed.  (Reed Decl. ¶¶ 8-11.)  Reed returned to Lunada Bay in February 2016 to take photos of her friends while they surfed, but was again harassed by Blakeman.  (Reed Decl. ¶¶ 18-19.)  Later that day, Blakeman and Johnston approached her in a hostile manner. (Reed Decl. ¶ 21.)  Johnston, who was drinking beer and appeared drunk, made lewd comments about Reed and exposed himself to her while changing into his wetsuit.  (Reed Decl. ¶ 24.)

### 3.     Alleged Police Non-Intervention

Plaintiffs allege that the City's police department, and Chief Kepley in particular, not only are aware of the LBB's harassment of visitors, but also are complicit by allowing such harassment to continue unabated.  (*See* Compl. ¶¶ 15, 23, 28; *see also* Mot. 9.)  Due to Lunada Bay's reputation for localism, Spencer notified the City's police department of his intention to surf Lunada Bay prior to his visit in January 2016.  (Spencer Decl. ¶ 17.)  However, he observed no police officers near the shoreline when he arrived that day.  (Spencer Decl. ¶ 17.)  Despite being harassed and injured during this visit, no officers from the City's police department offered to prepare a report.  (Spencer Decl. ¶¶ 17, 20.)  Reed, on the other hand, reported incidents of harassment to police officers on both of her visits.  (Reed Decl. ¶¶ 13, 27.)  Reed avers that police officers witnessed the January 2016 incident but did not intervene.  (Reed Decl. ¶¶ 11-12.)  Although a police officer asked if she wanted to make a "citizen's arrest" on the aggressors, Reed submits that the officer dissuaded her from doing so because she could face potential civil liability as a result.  (Reed Decl. ¶¶ 13-14.)  After the February 2016 incident, Reed complained to the police, who took a written report from her.  (Reed Decl. ¶¶ 27-29.)  She was informed by one officer that she would be able to view a lineup of potential perpetrators, but was never contacted despite her repeated efforts to follow up. (Reed Decl. ¶¶ 29-30.)  After retaining an attorney, Reed met with a City detective and identified Johnston in a picture lineup.  (Reed Decl., Ex. 4.)  A warrant issued for Johnston's arrest one week later.  (Reed Decl., Ex. 4.)

After extensive media coverage, the City's police department became aware of its reputation for tacitly approving or condoning the behavior of the LBB.  (Otten Decl., Ex. 13.)  As a result, Kepley initiated extra patrols at the shoreline to discourage any local surfers from treating visitors in a hostile manner.  (Otten Decl., Ex. 13.)  Kepley and City Manager Anton Dahlerbruch ("Dahlerbruch") discussed this issue with California State Assembly Member David Hadley ("Hadley").  (Otten Decl., Ex. 14.)  Kepley and Dahlerbruch advised Hadley that bringing the issue up in Sacramento would only bring more unwanted attention with little to no benefit.  (Otten Decl.,

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>February 21, 2017</u>

Ex. 14.)  In an effort to dissuade further harassment of non-locals (or perhaps because of the instant litigation and associated media attention), the City removed an un-permitted structure where the LBB had gathered, known as the "Rock Fort," from Lunada Bay in November of 2016. (Spencer Decl. ¶ 31.)

B.    <u>Procedural History</u>

Plaintiffs assert the following causes of action against Defendants:  (1) violation of the Bane Act, California Civil Code § 52.1(b), against the LBB and Individual Defendants ("Bane Act Claim"); (2) public nuisance pursuant to California Civil Code §§ 3479 and 3480 against the LBB and Individual Defendants ("Public Nuisance Claim"); (3) violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 ("Section 1983"), against City Defendants ("Equal Protection Claim"); (4) violation of the Privileges and Immunities Clause of Article IV of the United States Constitution, pursuant to § 1983, against City Defendants ("P&I Claim"); (5) violation of various provision of the California Coast Act against Defendants ("CCA claim") ; (6) assault against the LBB and Individual Defendants ("Assault Claim"); (7) battery against the LBB and Individual Defendants ("Battery Claim"); and (8) negligence against the LBB and Individual Defendants ("Negligence Claim"). (*See* Compl. ¶¶ 43-106.)  On July 11, 2016, Plaintiffs' P&I and CCA Claims were dismissed with prejudice.  (*See* Order Granting in Part & Den. in Part City Defs.' Mot. to Dismiss Compl., ECF No. 84.)

C.    <u>The Proposed Class</u>

Plaintiffs filed their Motion on December 29, 2016, seeking certification of the following class:

> All visiting beachgoers to Lunada Bay who do not live in Palos Verdes Estates, as well as those who have been **deterred** from visiting Lunada Bay because of the Bay Boys' actions, the Individual Defendants' actions, the City of PVE's actions and inaction, and Defendant Chief of Police Kepley's action and inaction, and **subsequently denied during the Liability Period**, and/or are **currently being denied**, on the basis of them living outside of the City of PVE, full and equal enjoyment of rights under the state and federal constitution, to services, facilities, privileges, advantages, and/or recreational opportunities at Lunada Bay.   For purposes of this class, "visiting beachgoers" includes all persons who do not reside in the City of PVE, and who are not members of the Bay Boys, but want lawful, safe, and secure access to Lunada Bay to engage in recreational activities, including, but not limited to, surfers, boaters, sunbathers, fisherman, picnickers, kneeboarders, stand-up paddle boarders, boogie boarders, bodysurfers, windsurfers, kite surfers, kayakers, walkers, dog walkers, hikers, beachcombers, photographers, and sightseers.

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**  **CV 16-02129 SJO (RAOx)**          **DATE:** **February 21, 2017**

(Mot. 12.)  Plaintiffs note they are "primarily seek[ing] equitable relief," but nevertheless contend that in addition to certification under Rule 23(b)(2), certification under Rule 23(b)(3) would also be proper such that the class would be entitled money damages.  (*See* Mot. 12, 18-19.)

Defendants respond that this proposed class definition is overbroad and actually consists of two separate classes:  (1) non-locals who have visited Lunada Bay and have been denied equal access to the beach; and (2) non-locals who have allegedly been deterred from visiting Lunada Bay because of the reputation of the LBB and City Defendants have earned concerning harassment and lax enforcement, respectively, at Lunada Bay.  (*See generally* City Defs.' Opp'n to Mot. ("City Opp'n."), ECF No. 187.)

II.    DISCUSSION

      A.    Legal Standards Governing Class Certification

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp., v. Behrend*, 133 S. Ct. 1426, 1432 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)).  "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23" of the Federal Rules of Civil Procedure ("Rule 23"). *Id.* (quoting *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011)).  "Rather, a party must not only 'be prepared to prove that there are **in fact** sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Id.* (emphasis in original) (quoting *Dukes*, 564 U.S. at 350).  "The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.*

A class action may only be certified if, "after a rigorous analysis," the trial court determines that the prerequisites of Rule 23(a) have been satisfied. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  The Supreme Court has repeatedly emphasized that it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and that the trial court's "analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Comcast*, 133 S. Ct. at 1432 (quoting *Dukes*, 564 U.S. at 351).

      B.    Related Motions and Evidentiary Objections

Defendants, individually and collectively, have lodged numerous procedural and evidentiary objections concerning declarations submitted by Plaintiffs' experts and by putative class members in support of the Motion.  (*See, e.g.*, Blakeman's Objection to Pls.' Evid. in Supp. Mot. ("Blakeman Obj."), ECF No. 196; City Defs.' Mot. to Strike Decl. of Philip King ("Mot. to Strike"), ECF No. 204.)  The Court addresses these objections in turn.

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>February 21, 2017</u>

1.    <u>Procedural Objections</u>

At the outset, the Court admonishes Plaintiffs for failing to file their opposition to City Defendants' Motion to Strike the Declaration of Philip King ("Strike Opposition") in compliance with Local Rule 7-9.  *See* L.R. 7-9 (requiring that opposing parties shall "not later than twenty-one (21) days before the date designated for the hearing of the motion" file their opposition papers).  City Defendants filed their Motion to Strike on January 20, 2017 with a hearing date set for February 21, 2017, (*see* Mot. to Strike), and therefore Plaintiffs were obligated to file any opposition on or before January 31, 2017, *see* L.R. 7-9.  Nevertheless, Plaintiffs waited to file their opposition until February 3, 2017.  (*See* Strike Opp'n, ECF No. 216.)  Having previously filed opposing papers in this case, Plaintiffs were fully aware of the requirements for timely filing.  Given the evidentiary clarification presented by Plaintiffs in their Strike Opposition, (*see* Suppl. Decl. Philip King in Supp. Strike Opp'n. ("King Supp'l Decl."), ECF No. 216-1), the Court is surprised that Plaintiffs would risk having their Strike Opposition stricken for violating the Local Rules.  Notwithstanding this procedural shortcoming, in light of the prejudice Plaintiffs would face if these papers were stricken, the Court considers the contents of these materials.

In their Motion to Strike, City Defendants object to the admission of the King Declaration on the ground that Plaintiffs failed to disclose the identity of Dr. King as a witness in their responses to the City's interrogatories and in accordance with Rule 26 of the Federal Rules of Civil Procedure. (*See* Mot. to Strike.)  Plaintiffs respond that, at the time they submitted their responses to these interrogatories, they had not yet retained Dr. King as an expert witness.  Plaintiffs note that in their responses to the City's interrogatories, Plaintiffs produced a long list of potential fact witnesses, but were not required to identify expert witnesses.  The Court agrees.  First, the cited interrogatories do not request the disclosure of expert witnesses.  Moreover, because the Court did not set a deadline regarding the disclosure of expert witnesses in its August 29, 2016 scheduling order, (*see* Minutes of Scheduling Conference, ECF No. 120), the parties are not obligated to disclose their respective experts until "at least 90 days before the date set for trial," Fed. R. Civ. P. 26(a)(2)(D)(i).  Accordingly, the Court **DENIES** City Defendants' Motion to Strike on this basis.

2.    <u>Evidentiary Objections</u>

Defendants also raise numerous objections regarding the admissibility of the declarations submitted by Plaintiffs in support of their Motion.

a.    <u>Expert Witness Declarations</u>

The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation, and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597(1993).  In serving this "gatekeeper" function, a district

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>        **DATE:** <u>February 21, 2017</u>

court performs a two-part analysis. *Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002).  First, a district court "must determine nothing less than whether the experts' testimony reflects scientific knowledge, whether their findings are derived by the scientific method, and whether their work product amounts to good science." *Daubert v. Merrell Dow Pharms.* (*Daubert II*), 43 F.3d 1311, 1315 (9th Cir. 1995) (internal quotations and citations omitted).  "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  Second, the court "must ensure that the proposed expert testimony is 'relevant to the task at hand' *i.e.*, that it logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315 (citation omitted).  This evidentiary standard applies to expert testimony offered for the purpose of demonstrating that class certification is appropriate. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (noting that the trial court correctly applied the evidentiary standard set forth in *Daubert* at the certification stage); *see also Dukes*, 564 U.S. at 354 (doubting the trial court's conclusion that *Daubert*'s evidentiary standard does not apply at the certification stage).

When considering whether expert testimony is reliable, a trial court should consider the factors laid out by the United States Supreme Court in *Daubert*, 509 U.S. at 593-595, including:  (1) "whether the theory or technique employed by the expert is generally accepted in the scientific community;" (2) whether "it's been subjected to peer review and publication;" (3) "whether it can be and has been tested;" and (4) "whether the known or potential rate of error is acceptable." *Daubert II*, 43 F.3d at 1316-17 (citing *Daubert*, 509 U.S. at 593-595).  The Supreme Court acknowledged in *Daubert* that the trial judge's reliability inquiry is "flexible," and therefore trial courts are encouraged to consider other factors not specifically mentioned by the Supreme Court in *Daubert*.  *Daubert*, 509 U.S. at 594.  To that end, trial courts have also considered other potentially relevant factors, including (1) "whether the expert is proposing to testify about matters growing directly out of independent research he or she has conducted or whether the opinion was developed expressly for the purposes of testifying;" (2) whether the expert has "unjustifiably extrapolated from an accepted premise to an unfounded conclusion;" (3) "whether the expert has adequately accounted for obvious alternative explanations;" (4) "whether the expert is being as careful as he would be in his regular professional work;" and (5) "whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion offered." *In re Silicone Gel Breast Implants Litigation*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004) (citing Fed. R. Evid. 702 Advisory Committee's Notes).  Trial courts have "broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Ellis*, 657 F.3d at 982.

Plaintiff submits declarations from two experts in support of its Motion:  Dr. Philip King ("Dr. King") and Dr. Peter Neushul ("Dr. Neushul").  Defendants challenged the admissibility of both.  (*See* Blakeman Obj.; Mot. to Strike.)

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  CV 16-02129 SJO (RAOx)          **DATE:** <u>February 21, 2017</u>

i.      <u>The Expert Declaration of Philip King</u>

Dr. King reaches two main conclusions in his declaration.  First, he opines that but for the harassment by the LBB, Lunada Bay would have about 20,000 to 25,000 annual surfers, compared to the current number of 1,460 to 2,920 annual surfers.  Second, he opines that the estimated recreational value of an individual surfing visit to Lunada Bay is between $50 and $80, resulting in a total lost surfing recreational value of $50,000,000 since 1970 due to harassment by the LBB.  (*See* Decl. Philip King in Supp. Mot. ("King Decl.") ¶¶ 17-19, ECF No. 159-7.)  Defendants ask the Court not to consider any portion of Dr. King's declaration because (1) he is not sufficiently qualified to offer these opinions; and (2) his opinions lack factual support, do not utilize a reliable methodology, and are speculative.  (*See* Mot. to Strike.)  The Court agrees in part with Defendants' contentions.

Dr. King received a Bachelor of Arts degree in and economics from Washington University and a Ph.D. in economics from Cornell University.  (King Decl. ¶ 2.)  He has, among other things, authored or co-authored a number of peer-reviewed papers performing economic analyses regarding the impact of climate change, erosion, and beach attendance on Southern California beaches.  (King Decl. ¶ 3.)  He avers that he has served as an expert economist in approximately 40 different legal matters on behalf of both plaintiffs and defendants.  (King Decl. ¶ 4.)  In light of these submissions, the Court rejects Defendants' argument that Dr. King is not qualified to offer opinions regarding the economic impact of beach attendance in California.

The Court now examines Dr. King's methodology and conclusions regarding the estimated annual number of surfers at Lunada Bay and the recreational value of these surf trips.  Dr. King's conclusion regarding the annual number of surfers that would visit Lunada Bay were it not for harassment by the LBB is based on an examination of the unique features of Lunada Bay that make it a desirable surf location and an analysis of a similarly desirable surf location in Southern California.  (King Decl. ¶¶ 15, 18.)  Dr. King describes a litany of features that make Lunada Bay among the most desirable surf locations in Southern California, including that it is home to a bay with deeper water and a shallow rock reef.  (King Decl. ¶ 15.)  To provide a comparison, he analyzes another well-known California surf location:  Trestles Beach in North San Diego County.  (King Decl. ¶ 15; King Suppl. Decl. ¶¶ 10, 15-16.)  Dr. King opines that Trestles Beach serves as a strong comparison because it offers the same level of world-class surfing.  (King Decl. ¶ 15.)

Even assuming Dr. King is correct that Lunada Bay and Trestles are similarly desirable surf locations, the Court has fundamental concerns about the reliability of Dr. King's "comparative analysis" as it pertains to the number of annual surf visits to the respective beaches.  First, Dr. King notes that Trestles actually consists of three beaches:  Lower Trestles, Upper Trestles, and Cotton's.  (King Decl. ¶ 15.)  Lunada Bay, by contrast, is one of many surf locations on the four-and-a-half miles of Palos Verdes' coastline, and itself spans less than half a mile.  (King Decl. ¶ 10.)  Yet Dr. King makes no effort to compare or explain these facially dissimilar qualities.

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**  <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>February 21, 2017</u>

Second, Dr. King relies on different metrics when comparing the annual number of "surf trips" at each location.  Dr. King measures the number of surf trips at Lunada Bay in "annual surfers." (King Decl. ¶¶17-19.)  Using this metric, and without explaining any aspect of his methodology or calculations, he concludes that Lunada Bay currently averages between 4 and 8 surfers per day, resulting in an annual average of between 1,460 and 2,920 surfers.  (King Decl. ¶¶ 17-19.)  Dr. King then concludes that Lunada Bay **should** have an average of between 60 and 75 surfers per day, for an annual average of between 20,000 and 25,000 surfers.  (King Decl. ¶¶ 17-19.)

Although Dr. King opines that these numbers are the result of a "comparative analysis" to Trestles, he does not provide comparable daily or annual figures regarding the number of surfers at Trestles.  Instead, he relies a different metric:  "surf trips per year."  Without defining a "surf trip per year" or explaining how he obtained his data, Dr. King concludes that Trestles averages about 330,000 surf trips per year.  (King Decl. ¶ 15.)  For the sake of argument, dividing 330,000 annual surf trips at Trestles by 365 results in a daily average of approximately 900 surfers; an exceedingly unlikely number of daily surfers at a single beach.  More fundamentally, Dr. King offers no explanation why 900 daily surfers at Trestles would lead one to expect 60-75 daily surfers at Lunada Bay in the absence of harassment by the LBB.  Because the Court cannot determine whether Dr. King's opinions result from the application of reliable principles and methodologies to sufficient data, the Court finds Dr. King's comparison to be an unreliable method for determining the number of "but for" surfers at Lunada Bay.  *See Ellis,* 657 F.3d at 982.

Dr. King's second conclusion—that harassment by the LBB has caused $50,000,000 in lost surfing recreational value over the past 45-plus years—is based on an estimated recreational value of $50 to $80 per person per surf visit during the high season (November to March), and approximately half that the rest of the year.  (King Decl. ¶ 19.)  These per-trip values are based on an economic research method called "benefits transfer."  (King Decl. ¶ 6.)  In essence, "benefits transfer" takes the value of individual surf trips at comparable surf-locations, determined using a more thorough technique called travel cost ("TC") method, and applies this value to surf-locations that have not yet been examined in detail.  (King Suppl. Decl. ¶¶ 3,5.)  According to Dr. King, other experts' TC method calculations revealed that a surf trip was worth between $80 and $140 at Trestles, and about $56 at Mavericks, another comparable California surf-location.  (King Suppl. Decl. ¶¶ 9-10.)  Using benefits transfer, Dr. King concludes that a surf trip at Lunada Bay is worth between $50 and $80.  (King Decl. ¶19.)

The Court does not find the benefits transfer and TC methodologies to be unreliable in a vacuum, it is troubled by the application of these methodologies to the data in this case.  Dr. King arrives at a total of $50,000,000 in lost surfing recreational value by multiplying the value of individual surf trips ($50-$80) by the estimated number of annual surfers at Lunada Bay but-for the LBB (20,000-25,000), extrapolated over fifty years.  There are three problems with this calculation.  First, it extrapolates the estimated recreational value of a 2017 surf trip at Lunada Bay over fifty years

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>February 21, 2017</u>

without taking into account any variable factors (for example, interest) that may have changed since the 1970s. Second, the total lost surfing recreational value is based on an amount of would-be surfers that the Court has deemed unreliable. Finally, this figure fails to take into account the relevant statutes of limitations that significantly minimize the damages exposure in this case. *See* Section II(C)(2), *infra*. For the foregoing reasons, the Court concludes that Dr. King's method of determining the total amount of lost surfing recreational value at Lunada Bay to be unreliable.

Although Dr. King is qualified to offer expert opinions regarding the economic impact of beach attendance in Southern California, the Court finds his conclusions regarding the number of "but for" surfers at Lunada Bay and the total amount of lost surfing recreational value at Lunada Bay attributable to the LBB to run afoul of Rule 702 and *Daubert*. Accordingly, the Court **GRANTS IN PART** City Defendants' Motion to Strike and **STRIKES** paragraphs 17-20 of Dr. King's Declaration and the corresponding paragraphs of Dr. King's Supplemental Declaration.

### ii.    The Expert Declaration of Peter Neushul

City Defendants also object to the admissibility of Dr. Neushul's declaration on the grounds that he is not sufficiently qualified to provide expert testimony. (*See* City Defs.' Evid. Obj. to Mot. ("City Obj."), ECF No. 188) The Court rejects this argument.

Dr. Neushul earned both a bachelor's degree and a doctorate degree in history from the University of California, Santa Barbara ("UCSB"). (Neushul Decl. ¶ 3.) Dr. Neushul was a visiting professor at UCSB for fifteen years and taught a course titled "The History of Surfing" during three of these years. (Neushul Decl. ¶ 1.) Dr. Neushul has written a book on the history of surfing and has published several articles related to surfing topics. (Neushal Decl. ¶ 1.) Furthermore, he claims to be an expert, both generally and in Southern California, on surf history, culture, and etiquette. (Neushul Decl. ¶ 2.) According to Dr. Neushul, this expertise extends to the culture of localism at Southern California beaches, including at Lunada Bay. (Neushul Decl. ¶ 2.) The Court finds that Dr. Neushul is sufficiently qualified to opine on the history of surfing and surf culture in Southern California, which encompasses localist practices in Lunada Bay. The Court therefore **OVERRULES** City Defendants' objections to Dr. Neushul's declaration.

### b.    Putative Class Member Declarations

City Defendants also raise numerous evidentiary objections to the twenty-five declarations filed by putative class members in support of Plaintiffs' Motion. (*See generally* City Obj.) In the interest of judicial efficiency, these objections will be ruled upon generally. *See Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) (quotation omitted) (noting that "in motions . . . with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised"). City Defendants object to these twenty-five declarations on the grounds that they are inadmissible

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>     **DATE:** <u>**February 21, 2017**</u>

hearsay, irrelevant, and speculative.  (*See generally* City Obj.)  The Court finds, however, that each of these declarations either describes the declarant's personal experience of harassment while visiting Lunada Bay or includes a first-hand recounting of the harassment experienced by another person at Lunada Bay.  Accordingly, the Court finds these declarations to be admissible under the Federal Rules of Evidence, and further finds them to be relevant for the purposes of demonstrating whether the prerequisites of Rule 23 are met.  The Court therefore **OVERRULES** City Defendants' objections as to these declarations.

       3.   <u>Judicial Notice</u>

Pursuant to Rule 201(b) of the Federal Rules of Evidence, the Court takes judicial notice of the following adjudicative documents:  (1) Complaint filed on March 14, 2014 in the matter *Eli Rubin v. Gabe Reed, et al.*, Case No. BC539383 (Cal. Super. Ct.); and, (2) a default judgment entered against Gabe Reed, Gabe Reed LLC, and Diana Reed in the amount of $445,727.62 in the above-mentioned case.  *See* Fed. R. Civ. P. 201(b) (providing that a court may take judicial notice of a fact "not subject to reasonable dispute" because it "can accurately and readily [be] determined from sources whose accuracy cannot be questioned").

      C.   <u>Analysis of Plaintiffs' Motion for Class Certification</u>

As a threshold issue, several Defendants argue (1) that certain Plaintiffs lack standing to bring this action or have claims that are not ripe; and (2) that a substantial portion of Plaintiffs' claims are time-barred.  (*See, e.g.*, Def. Brant Blakeman Opp'n to Mot. ("Blakeman Opp'n."), ECF No. 190; Def. Sang Lee's Opp'n to Mot. ("Lee Opp'n"), ECF No. 192.)  The Court addresses these preliminary arguments before turning to the Rule 23 prerequisites.[1]

///

---

[1]  Defendant Blakeman and City Defendants further argue that the proposed class is an impermissible "fail-safe" class.  (Blakeman Opp'n 10; City Opp'n 4.)  This Court has previously declined an "invitation to deny certification on this ground alone" because the Ninth Circuit "has not expressly held that fail-safe classes are impermissible."  *Howard v. CVS Caremark Corp.*, No. CV 13-04748 SJO (PJWx), 2014 WL 11497793, at *3 (C.D. Cal. Dec. 19, 2014).  In light of other significant problems plaguing Plaintiffs' Motion, the Court again declines this invitation, but notes that Plaintiffs' inclusion of the terms "deterred" and "denied" in their proposed class definition raises another set of red flags.  *See Manual for Complex Litigation (Fourth)*, § 21.222 (2004) ("An identifiable class exists if its members can be ascertained by reference to objective criteria.  The order defining the class should avoid **subjective** standards (e.g., a plaintiff's state of mind) or terms that depend on **resolution of the merits** (e.g., persons who were discriminated against).").

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>February 21, 2017</u>

1.    <u>Standing and Ripeness</u>

Defendants Blakeman and Lee raises several arguments regarding whether Plaintiffs have standing to bring their claims and whether their claims are ripe.  Lee first argues that the named Plaintiffs lack standing to bring a class action suit against him because neither of them have suffered any injury as a result of his actions.  (Lee Opp'n 6.)  In support of this argument, Lee attacks the merits of Plaintiffs' claim that he and others are "members" of the allegedly unincorporated association, the LBB.  (Lee Opp'n 3-5.)  Lee, however, cites no evidence in support of his argument that Plaintiffs will be unable to establish the LBB is an association.  In any event, this argument unpersuasively attempts to put the cart before the horse.  (*See* Lee Opp'n 4 [arguing that "Plaintiffs have not established that the [LBB] has meetings, are comprised of a group of unidentifiable members, have by-laws, or pay dues" and thus "have failed **to prove** the [LBB] are an unincorporated association . . . pursuant to Rule 23.2"].)  The Court rejects this merits-based challenge.  *See Kamar v. RadioShack Corp.*, 375 Fed. App'x 734, 736 (9th Cir. 2010) ("A district neither must, nor should, decide the merits of a dispute—legal or factual—before it grants class certification.")

Blakeman and Lee next contend that a large swath of absent class members lack standing to pursue their claims.  "In a class action, the plaintiff class bears the burden of showing that Article III standing exists."  *Ellis*, 657 F.3d at 978 (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)).  "Standing requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision."  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Plaintiffs respond to this argument with the following quotation from *Bates v. United Parcel Service, Inc.*: that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements."  511 F.3d at 985 (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)).  This language is inapposite.  The Court agrees with the reasoning provided in *O'Shea v. Epson America, Inc.* that the Ninth Circuit did not announce a rule in *Bates* that absent class members need not have standing if one or more class representatives have standing.  No. CV 09-8063 PSG (CWx), 2011 WL 4352458 (C.D. Cal. Sept. 19, 2011).  Instead, other decisions, such as *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), *abrogated on other grounds by Comcast*, — U.S. —, 133 S. Ct. 1426, suggest that absent class members must **themselves** satisfy the requirements of Article III in order to pursue claims in federal court.  *O'Shea*, 2011 WL 4352458, at *9-*10; *see also Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC (JCx), 2009 WL 4798873, at *3 (C.D. Cal. Dec. 9, 2009) (distinguishing *Bates* and excluding "those absent class members lacking justiciable claims under Article III").

Perhaps anticipating defeat on the above point, Plaintiffs next contend that all class members, including those who have never visited Lunada Bay, themselves satisfy the requirements of Article III because they have been "injured in fact" by their exclusion from Lunada Bay in light of their

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>     **DATE:** <u>February 21, 2017</u>

present desire to safely visit the bay free from harassment. The Court disagrees. As a threshold matter, individuals who have never suffered actual or threatened physical harm at the hands of Individual Defendants do not have any existing tort claims against these individuals or against the LBB, and Plaintiffs have offered no evidence indicating there is a "real and immediate threat of repeated injury" to such individuals. *Cf. O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Putative class members who have never visited Lunada Bay also have not suffered a "peculiar injury [that] entitles [them] to maintain a separate action for its abatement, or to recover damages therefor" that is "different in kind and not merely in degree from that suffered by the general public" and therefore lack standing to bring public nuisance claims. *See Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1137, 281 Cal. Rptr. 827 (1991) (quoting Cal. Civ. Code § 3493; *Brown v. Rea*, 150 Cal. 171, 174 (1907)).

Moreover, individuals who have not been denied access to Lunada Bay by the LBB or its alleged members do not have a claim against the LBB or its alleged members under the Bane Act, for the Act provides that "[a]ny individual **whose exercise or enjoyment** of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, **has been interfered with**, or **attempted to be interfered with**, as described in subdivision (a) . . ." can pursue a claim for relief in a trial court. Cal. Civ. Code § 52.1(b) (emphasis added); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (holding that, to prevail on a Bane Act claim, a plaintiff must demonstrate, *inter alia*, "intimidation, threats or coercion"); *Campbell v. Feld Entm't, Inc.*, 75 F. Supp. 3d 1193, 1211 (N.D. Cal. 2014) (requiring plaintiffs to prove (1) that defendants interfered with their rights; and (2) that such interference was accompanied by actual or attempted threats, intimidation, or coercion in order to succeed on Bane Act claim). Finally, persons who have never sought the protection of the Palos Verdes Police Department vis-a-vis the LBB do not have viable Equal Protection Claims against City Defendants, for they have not been denied "equal protection of the laws" by the City, its police department, or Kepley. Plaintiffs cite to no authority holding, much less suggesting, that the negative reputation of a person or a group has a "chilling" effect that is cognizable under the Fourteenth Amendment or the Bane Act. Even if such a case were to exist, the Court would nevertheless find that such speculative beach-goers lack standing here, for a bare assertion that one would surf Lunada Bay were it not for the LBB does not constitute a "concrete" and "particularized" harm as demanded by the Supreme Court in *Lujan*. *See* 504 U.S. at 564 (noting that "some day intentions—without any description of concrete plans, or indeed any specification of **when** the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require" (emphasis in original)). A handful of declarations with statements indicating the declarants (1) "would love to do a mass surf-in with 15 or 20 men at Lunada Bay," (Decl. Daniel Jongeward in Supp. Mot. ("Jongeward Decl.") ¶ 12, ECF No. 177); (2) "want to be able to visit Palos Verdes Estates beaches, specifically Lunada Bay, without being intimidated and to be safe in my person or property," (Decl. Ricardo G. Pastor in Supp. Mot. ("Pastor Decl.") ¶ 11, ECF No. 175); or (3) "would likely visit [Lunada Bay] at least two to three times per year" if it were "opened up to the public again," (Decl. Carl Marsch ("Marsch Decl.") in Supp. Mot. ¶ 6, ECF No. 179), are insufficient to satisfy Plaintiffs' burden of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** CV 16-02129 SJO (RAOx)          **DATE:** <u>February 21, 2017</u>

proving absent class members who have not been denied access to Lunada Bay have Article III standing.

This final point merits closer attention, for it implicates a related Article III doctrine: ripeness. Blakeman and Lee argue that putative class members who have never visited Lunada Bay do not have claims that are ripe. (Lee Opp'n 7.) "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). "That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Id.* In this way, ripeness and standing are intertwined. *Id.* Moreover, "[a]s with standing, ripeness is determined on a claim-by-claim basis." *Burdick*, 2009 WL 4798873 at *3 (citations omitted). Absent class members who have never visited Lunada Bay and who have not articulated an immediate desire to approach Lunada Bay do not have claims against Individual Defendants or City Defendants that are ripe. *See Reno v. Catholic Servs., Inc.*, 509 U.S. 43, 66 (1993) (finding that "only those class member (if any) who were [actually harmed] have ripe claims over which the District Courts should exercise jurisdiction").

2. <u>Statutes of Limitations</u>

Defendants also contend that many putative class members' claims are time barred (or "stale") because the injuries they allegedly sustained took place outside the applicable limitations period. (*See, e.g.*, Blakeman Opp'n 14.) In California, the statute of limitations for assault, battery, and negligence claims is **two (2) years**. Cal. Code of Civ. P. § 335.1. For civil rights actions brought under § 1983, the Ninth Circuit applies the forum state's statute of limitations for personal injury actions. *Jonas v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Although California state and federal courts have applied different limitations periods to civil rights claims the two-year limitations period applies in this case because Plaintiffs' claims sound in tort. *Fenters v. Yosemite Chevron*, 761 F. Supp. 2d 957, 996 (E.D. Cal 2010). Therefore, the statute of limitations with respect to Plaintiffs' § 1983 claim is also **two (2) years**.[2] Finally, the statute of limitations for public nuisance claims brought pursuant to California Civil Code §§ 3479 and 3480 is **three (3) years**. *Mangini*, 230 Cal. App. 3d at 1144. Plaintiffs have submitted evidence from a number of putative class members indicating they were harassed by individuals at Lunada Bay well outside the limitations period. (*See, e.g.*, Jongeward Decl. ¶¶ 3-4 [describing events that took place "[o]n a day in early 1980" and between 1980 and 1984, and averring that "[b]y the late 1980s, I chose not to surf at Lunada Bay anymore"]; Marsch Decl. ¶¶ 3-4 [describing an incident "in the winter of 1995" and averring he "ha[s] not returned to surf at Lunada Bay since the verbal assault in 1995"].) Indeed, seven of the declarations submitted by Plaintiffs are from individuals who aver the last time they suffered

---

[2]   Analogous federal civil rights claims are also considered personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 277-280 (1985), *superseded by statute on other grounds*.

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>        **DATE:** <u>**February 21, 2017**</u>

any injury at Lunada Bay was more than ten (10) years ago.  (*See generally* ECF Nos. 161, 163-164, 170, 175, 177, 179.)

Plaintiffs respond by arguing that regardless of when the initial incident of harassment occurred, all putative class members' claims are timely claims because of their **present** desire to surf Lunada Bay free from harassment.  (*See* Pls.' Reply to Individual Defs.' Opp'n ("Individual Reply"), ECF No. 206.)  Plaintiffs cite no legal authority in support of this argument, and the Court concludes that putative class members who claim to have suffered tortious injuries at Lunada Bay more than two years prior to March 29, 2016, the date this action was commenced, are barred from bringing such claims.  Similarly, no one in the proposed class can seek damages under a public nuisance theory for actions occurring more than three years prior to March 29, 2016.

3.    Rule 23(a) Requirements

Courts have "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court."  *Armstrong*, 275 F.3d at 871 n. 28.  A court need only form a "reasonable judgment" on each certification requirement "[b]ecause the early resolution of the class certification question requires some degree of speculation[.]"  *Gable v. Land Rover N. Am., Inc.*, No. SACV 07-0376 AG (RNBx), 2011 WL 3563097, at *3 (C.D. Cal. 2011) (internal quotation marks omitted).  Notwithstanding the above, courts are obligated to exercise their discretion within the framework provided by Rule 23 of the Federal Rules of Civil Procedure.  *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001).  Rule 23 permits a plaintiff to sue as a representative of a class if:

(1)    the class is so numerous that joinder of all members is impracticable;
(2)    there are questions or law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These prerequisites "ensure[ ] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."  *Dukes*, 564 U.S. at 349.  Courts refer to these requirements by the following shorthand:  "numerosity, commonality, typicality and adequacy of representation[.]"  *Mazza v. Am. Honda Motor Co. Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).  The Court addresses these four requirements in turn.

///
///
///
///

a.    Numerosity

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  **CV 16-02129 SJO (RAOx)**          DATE: **February 21, 2017**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  "The numerosity requirement ensures that the class action device is used only where it would be inequitable and impracticable to require every member of the class to be joined individually."  *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007).  There is no numerical cutoff to determine whether a class is sufficiently numerous, though as a general rule, "classes of 20 are too small, class of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *Gen. Tel. Co. of the Nw., Inc., v. EEOC*, 446 U.S. 318, 330 (1980).

In support of Plaintiffs' contention that the proposed class is sufficiently numerous, Plaintiffs rely exclusively on the Declaration of Phillip King.  (*See* Mot. 13.)  The Court has stricken paragraph 19 of Dr. King's declaration, however, and therefore Plaintiffs have no admissible evidence that "this beach-going class is minimally more than 20,000."  (*Cf.* Mot. 13; King Decl. ¶ 19.)  The Court agrees with Blakeman that this case is similar to *Celano v. Marriott International, Inc.*, in which the court found that:

> Plaintiffs' census data and statistics are **too ambiguous and speculative** to establish numerosity.  Plaintiffs first ask the court to infer from them that many mobility impaired individuals who do not currently play golf, would like to.  Then they ask the court to infer that many of the mobility impaired individuals who would like to play golf would play at the Marriott if carts were available, without providing any information about why this inference should be made given that Marriott represents very the high-end of golf courses when compared to public courses.  More significantly, plaintiffs' data provides no insight into how many disabled people who would like to play golf, at Marriott courses, are deterred from doing so because of the absence of single-rider carts.

242 F.R.D. at 549.  Similarly, Dr. King's declaration requires the Court to make far too many inferences and does not take into account important differences between Lunada Bay and other beaches in Southern California.  (*See* King Decl. ¶ 10 [noting Lunada Bay is less than a half-mile of coastline]; Neushul Decl. ¶¶ 12-13 [noting poorly marked trails and poor signage to Lunada Bay, and that "[t]o access Lunada Bay, there are two main trails down cliffs that descend more than 100 feet" in a "steep" path].)  Plaintiffs also fail to provide any evidence that Lunada Bay could support 20,000 beach-goers per year.

///

*Celano* also discussed in detail whether declarations submitted by the plaintiff could satisfy the numerosity requirement of Rule 23.  The court noted that:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>     **DATE:** <u>February 21, 2017</u>

> While the potential class is likely geographically diverse because Marriott has courses throughout the United States, and the class is not readily identifiable, plaintiffs have submitted **declarations of only 21 individuals** in support of numerosity. Assuming these declarations establish that these individuals attempted to play at the Marriott and could not, or wanted to play there but were deterred by the absence of single-rider carts, these facts are still limited to these 21 individuals. This is insufficient for class certification, as it would not be impracticable to join these individuals in suit.

242 F.R.D. at 549 (emphasis added).

Here, too, Plaintiffs have submitted declarations from several non-residents who have, at some point in their lives, attempted to recreate at Lunada Bay. But of the many percipient witness declarations submitted by Plaintiffs, only **nine (9)** are from non-residents who aver they surfed or attempted to surf Lunada Bay within the applicable limitations period but were prevented from doing so by the LBB and its alleged members. (*See generally* Spencer Decl.; Reed Decl.; Decl. Jordan Wright in Supp. Mot. ("Wright Decl."), ECF No. 159-9; Decl. Christopher Taloa in Supp. Mot. ("Taloa Decl."), ECF No. 159-10; Decl. John MacHarg in Supp. Mot. ("MacHarg Decl."), ECF No. 160; Decl. Kenneth Claypool in Supp. Mot. ("K. Claypool Decl."), ECF No. 166; Decl. Chris Claypool in Supp. Mot. ("C. Claypool Decl."), ECF No. 176; Decl. John Geoffrey Hagins in Supp. Mot. ("Hagins Decl."), ECF No. 178; Decl. Sef Krell in Supp. Mot. ("Krell Decl."), ECF No. 180.)[3] Moreover, two of these individuals, Spencer and Reed, are already named plaintiffs in this suit. A class comprised of nine members is not sufficiently numerous to make joinder impractical. The Court therefore concludes that Plaintiffs have not met their burden of demonstrating the proposed class is sufficiently numerous under Rule 23(a)(1).[4] Because "[f]ailure to prove any one of Rule

---

[3] Although Mr. Hagins does not aver he attempted surfed or attempted to surf at Lunada Bay during the limitations period, he avers he "still receive[s] threats" from individuals who surf at Lunada Bay "[t]o this day," and the Court therefore considers him to be a possible class member. (Hagins Decl. ¶ 16.)

[4] Even if the Court were to (impermissibly) overlook the statutes of limitations and consider each of the declarations submitted by Plaintiffs, it would nevertheless conclude that Plaintiffs have failed to meet their burden of demonstrating joinder would be impractical. Plaintiffs, after having the benefit of months of discovery and significant publicity, (*see* Decl. Richard P. Diefenbach in Supp. Blakeman Opp'n ¶¶ 2-6, ECF No. 190-2), could only muster **twenty-two (22) declarations** from individuals who claim to have been harmed by the actions of individuals at Lunada Bay over a forty-plus year span. Without additional evidence indicating why joinder of these identified individuals would be impractical, the Court cannot find the class sufficiently numerous.

| | |
|---|---|
| Priority | |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>      **DATE:** <u>February 21, 2017</u>

23's requirements destroys the alleged class action," the Court denies class certification on this basis alone. *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 675 (S.D. Cal. 1999). Nevertheless, the Court finds occasion to examine several other Rule 23 requirements.

              b.      <u>Commonality</u>

"To show commonality, [p]laintiffs must demonstrate that there are questions of fact and law that are common to the class." *Ellis*, 657 F.3d at 981. However, not every question of law or fact must be common to class; rather, "all that Rule 23(a)(2) requires is a single **significant** question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 53 (2014) (internal quotation marks and citations omitted); *see also Mazza*, 666 F.3d at 589 (characterizing commonality as a "limited burden" and stating that it "only requires a single significant question of law or fact"). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common **answers** apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (citation omitted) (internal quotation marks omitted).

Plaintiffs contend all putative class members have "extensive" questions of law and fact in common; most notably, (1) whether the LBB or its alleged members unlawfully prevented them from accessing the beach at Lunada Bay; and (2) whether City Defendants acted with deliberate indifference toward their rights. (*See* Mot. 13-14.) Defendants respond by noting that Plaintiffs' own evidence indicates these two questions are not common to all of the members of the proposed class. (*See, e.g.*, City Defs.' Opp'n.) The Court agrees with Defendants.

First, the Court examines whether common questions of law or fact exist vis-a-vis the putative class members' claims against City Defendants. In order to prevail on a Section 1983 Equal Protection claim, a plaintiff must prove that (1) a state actor intentionally discriminated against him; (2) because of membership in a protected class; and (3) pursuant to a custom, policy, or practice of the entity. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001); *Monell v. Dep't of Soc. Sers. of N.Y.C.*, 436 U.S. 658, 690 (1978). Plaintiffs allege City Defendants have "unlawfully excluded Plaintiffs, and persons like them, from their right to recreational opportunities at Palos Verdes Estates . . ." (Mot. 14). Yet Plaintiffs offer no explanation as to how this contention can be resolved on a class-wide basis. Indeed, the declarations submitted by Plaintiffs include a wide variety of assertions regarding the conduct of the City of PVE. For example, numerous declarants aver they did not contact the Palos Verdes police department, even informally, regarding their interactions with the LBB. (*See, e.g.*, Decl. Michael Alexander Gero in Supp. Mot. ("Gero Decl.") ¶ 12 [averring he "didn't inform the police of this incident because [he] had heard the police weren't effective . . . ."], ECF No. 170; Decl. Amin Akhavan in Supp. Mot. ("Akhavan Decl.") ¶ 14 ["I did not inform the police of this incident."], ECF No. 171.) One declarant, Christopher Taloa, even

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  <u>CV 16-02129 SJO (RAOx)</u>          DATE: <u>February 21, 2017</u>

testified at his deposition that the Palos Verdes police department "ha[s] been nothing but good to me.  They have been there for us and I am so thankful and grateful on that aspect in that manner."  (Decl. Edwin J. Richards Richards in Supp. City Opp'n ("Richards Decl.") ¶ 2, Ex. A at 6.)  Thus, Plaintiffs' own evidence indicates no "common answer" can be elicited from the putative class members regarding their Equal Protection Claim.

The Court reaches a similar conclusion with respect to whether putative class members have significant common questions of law or fact with respect to their claims against the LBB and Individual Defendants.  As discussed in Sections II(C)(1) and II(C)(2), *supra*, Plaintiffs' proposed class definition includes both individuals who have been harassed in some form by the LBB or its alleged members and those who have not.  These divergent groups do not have "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

For the foregoing reasons, the Court concludes that Plaintiffs have not failed to meet their burden of demonstrating significant questions of law or fact are common to the entire class.

c.    <u>Typicality</u>

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Under Rule 23(a)(3)'s "permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020 (quotation marks omitted).  Typicality tests whether putative class members "have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "Typicality refers to the nature of the claim or defense of the class representative, and not the specific facts from which it arose or the relief was sought."  *Id.*  The purpose of this requirement "is to assure that the interest of the named representative aligns with the interest of the class."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks omitted).

Defendants contend the named Plaintiffs' claims are not typical of those of the putative class members because (1) the class members who have come forth with evidence to support their claims were harmed in different ways by different individuals, and Plaintiffs have failed to demonstrate a conspiracy warranting group treatment, (*see* Lee Opp'n 2, 10-11; Blakeman Opp'n 18-19); (2) certain proposed class members either have moved to Palos Verdes or have affirmatively stated they are not treated poorly by City Defendants because of their non-local status; and (3) Reed and Spencer have claims that are not typical of putative class members who have been "deterred" from visited Lunada Bay.  Although the Court disagrees with the first of these

MINUTES FORM 11
CIVIL GEN                                    Page 19 of  23                        Initials of Preparer ___VPC___

__ : __

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** **CV 16-02129 SJO (RAOx)**      **DATE:** <u>**February 21, 2017**</u>

arguments because such an argument improperly presumes the ultimate merits of Plaintiffs' conspiracy claim, the Court agrees with City Defendants both that Spencer and Reed's claims are not typical of the large swath of putative class members who have never been to Lunada Bay and that Spencer and Reed's Equal Protection Claims against City Defendants are not typical of certain other putative class members.

Although it might be the case that the claims of named Plaintiffs Reed and Spencer are typical of the claims of putative class members who both were harassed at Lunada Bay by the LBB or its alleged members and had their calls for help to City Defendants fall on deaf ears, their claims are **not** typical of putative class members who do not claim to have suffered these injuries. Spencer and Reed allege they visited Lunada Bay and suffered injuries as a result of these visits. As such, they have very different claims from those putative class members who submit they have decided not to visit Lunada Bay due to City Defendants' alleged reputation for passivity. Because of this unique factual background, named Plaintiffs' interests do not "align[ ] with the interests of the class" in a manner that satisfies Rule 23's typicality requirement. *Wolin*, 617 F.3d at 1175.

Moreover, City Defendants point to evidence submitted by Plaintiffs revealing that Spencer and Reed have claims against City Defendants that are not typical of those of several proposed class members. For example, a number of declarants aver that they currently reside in Palos Verdes, and therefore do not share the same Equal Protection Claims that Plaintiffs are asserting. (*See* Neushul Decl. ¶ 6 ["About eight years ago, in 2008, I purchased a home in Palos Verdes Estates near the public library. I knew that Lunada Bay had a 'locals only' reputation but I wanted to surf there and my house was right around the corner from the ocean."]; Akhavan Decl. ¶ 1 ["Since 2001, I have resided in Palos Verdes Estates."]; Decl. Blake Will in Supp. Mot. ("Will Decl.") ["Despite growing up in Palos Verdes, I was not allowed to surf Lunada Bay."], ECF No. 163.) Moreover, Plaintiffs do not dispute that another proposed class member, Christopher Taloa, testified at his deposition that he did not "feel like [he] w[as] treated poorly because [he] was from North Hollywood or [he] w[as]n't from Palos Verdes by the police department[.]" (*See* City Opp'n 11-12.)[5] Plaintiffs argue in their reply that "[o]ne outlier does not dispel commonality" or "negate[ ] typicality," but the two cases they cite in support of this proposition are inapposite. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2009) ("The fact that some class members may have suffered no injury or different injuries . . . does not prevent the class from meeting the requirements of **Rule 23(b)(2)**."); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1094 (C.D. Cal. 2015) ("[I]nclusion of uninjured class members does not necessarily render a class **unascertainable**.").

---

[5] The language City Defendants cite on pages 11 and 12 of their opposition does not appear in any of the pages of Mr. Taloa's deposition transcript that have been provided to the Court. (*See generally* Richards Decl., Ex. A.) That said, Plaintiffs do not dispute this testimony. (*See* Pls.' Reply to City Opp'n 2.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority  ____
Send      ____
Enter     ____
Closed    ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>February 21, 2017</u>

For the foregoing reasons, the Court concludes that Plaintiffs have not met their burden of demonstrating their claims are typical of those of members of the proposed class.

       4.   <u>Rule 23(b) Requirements</u>

"In addition to fulfilling the four prongs of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *Spann v. J.C. Penney Corp.*, 307 F.R.D. 514 (C.D. Cal. 2015) (citing *Dukes*, 564 U.S. at 345). Where a plaintiff seeks certification under Rule 23(b)(2), she must demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory relief warranted—the notion that the conduct is such that it can be enjoined or declared only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). By contrast, where a plaintiff seeks certification under Rule 23(b)(3), the court must find "that questions of law or fact common to the class members **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Here, Plaintiffs seek certification under both Rule 23(b)(2) and 23(b)(3).

Plaintiffs have not met their burden of demonstrating three of the four requirements of Rule 23(a) have been satisfied, and therefore the Court need not reach a conclusion regarding whether certification under Rule 23(b)(2) or 23(b)(3) would be proper. Nevertheless, the Court finds occasion to address glaring flaws with Plaintiffs' request for certification under Rule 23(b)(3). First, the Court finds it exceedingly unlikely that Plaintiffs would be able to demonstrate that common questions of law or fact predominate over any questions affecting only individual members. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 622-23 (1997). The predominance requirement aims to ensure that a class action achieves "economies of time, effort, and expense, and promote[s] . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615. Moreover, the requirement "helps to ensure that certifying a Rule 23(b)(3) class leads to greater economy than conducting many individual actions." *Newberg on Class Actions* § 4:49. In evaluating predominance and superiority, courts must consider: "(1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

As previously discussed, Plaintiffs have failed to demonstrate that there are significant questions

Priority      _____
Send          _____
Enter         _____
Closed        _____
JS-5/JS-6     _____
Scan Only     _____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>February 21, 2017</u>

of law or fact common to the entire class, and therefore have fallen far short of demonstrating that significant common questions of law or fact predominate over any other questions affecting individual members. Furthermore, where each class member would be forced to litigate numerous and substantial separate issues to establish his or her right to recovery, a class action is not a superior method of fairly and efficiently adjudicating the controversy at hand. *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). Here, the facts surrounding each putative class member's claims for assault, battery, and negligence by the LBB and Individual Defendants present a wide array of separate issues necessary to establish liability, including, *inter alia*, determining (1) which Individual Defendant engaged in the challenged conduct; and (2) whether such conduct was tortious, which could require analyzing the class member's own conduct and the Individual Defendant's affirmative defenses.

Furthermore, Rule 23(b)(3) requires courts to consider "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3). Plaintiffs have submitted evidence that two putative class members, John Hagins and Michael Sisson, filed two separate lawsuits, both of which settled, against some of the alleged members of the LBB and the City of Palos Verdes Estates in 1995 and 2002, asserting similar causes of action to those at issue in this litigation. (*See* Hagins Decl. ¶ 11; Decl. Michael Sisson in Supp. Mot. ("Sisson Decl.") ¶¶ 6-7, Exs. 1-3, ECF No. 169.) There is accordingly at least some interest on the part of potential class members in bringing separate litigations.

Finally, even assuming Plaintiffs could establish liability on the part of Defendants, their proposed damage methodology runs afoul of the Ninth Circuit's holding that "a methodology for calculation of damages that could not produce a class-wide result was not sufficient to support certification." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) (citing *Comcast*, 133 S. Ct. at 1434-35). As this Court has recognized,

> While . . . the Court need not decide the precise method for calculating damages at this stage, plaintiffs must still offer a method that tethers their theory of liability to a methodology for determining the damages suffered by the class. Without such a theory, the Court cannot certify plaintiffs' proposed class as to damages, even if such a class could be appropriately certified as to liability only.

*Vaccarino v. Midland Nat. Life Ins. Co.*, No. CV 11-5858 CAS (MANx), 2013 WL 3200500, at *14 (C.D. Cal. June 17, 2013). Here, Dr. King's damage methodology—which the Court has stricken as unreliable under Rule 702 and *Daubert*—is nothing more than an "estimate of the recreational value of the surfing at Lunada Bay" which he opines "is between $50 and $80 per person per visit during the high season (November to March) and approximately half of that during the rest of the year." (King Decl. ¶ 19.) Dr. King not only fails to offer any support as to how he arrived at these figures, but also fails to tie these numbers to the claims of the putative class members. For example, these figures apply only to the recreational value of **surfing**, but the proposed class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 16-02129 SJO (RAOx)</u>          **DATE:** <u>February 21, 2017</u>

includes individuals who seek to engage in a number of activities other than surfing.  (*See, e.g.*, Mot. 12 [including "surfers, boaters, sunbathers, fisherman, picnickers, kneeboarders, stand-up paddle boarders, boogie boarders, bodysurfers, windsurfers, kite surfers, kayakers, walkers, dog walkers, hikers, beachcombers, photographers, and sightseers" in the proposed class definition]; *see also* Decl. Joseph Lanning in Supp. Mot. ("Lanning Decl.") ¶ 3 [describing his desire to hike and walk his dogs at Lunada Bay], ECF No. 172.)  Moreover, Plaintiffs and declarants allege an array of injuries at the hands of Individual Defendants, including those that have caused physical, emotional, and property damage.  Yet Dr. King's proposed damage calculation does not take any of these alleged injuries into account.  For all of these reasons, the Court would be unlikely to find certification under Rule 23(b)(3) appropriate.

III.    <u>RULING</u>

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Class Certification.

IT IS SO ORDERED.