# Exhibit G

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

MAY 18 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CORY SPENCER, an individual; et al., | No.    17-80033 |
| Plaintiffs-Petitioners, | |
| | D.C. No. |
| v. | 2:16-cv-02129-SJO-RAO |
| | Central District of California, |
| LUNADA BAY BOYS; et al., | Los Angeles |
| Defendants-Respondents. | ORDER |

Before: REINHARDT and NGUYEN, Circuit Judges.

The court, in its discretion, denies the petition for permission to appeal (Docket Entry No. 1) the district court's February 21, 2017 order denying class action certification. *See* Fed. R. Civ. P. 23(f); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005).

MAY 2 5 2017

# Exhibit H

HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
JENNIFER ANIKO FOLDVARY, SBN 292216
jfoldvary@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile:  (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone: (916) 442-3333
Facsimile:  (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone: (310) 378-8533
Facsimile:  (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>        Plaintiffs, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**DECLARATION OF CORY SPENCER IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. S. James Otero<br>Date:  February 21, 2017<br>Time:  10:00 a.m.<br>Crtrm.: 10C |

v.

LUNADA BAY BOYS; THE
INDIVIDUAL MEMBERS OF THE
LUNADA BAY BOYS, including but
not limited to SANG LEE, BRANT
BLAKEMAN, ALAN JOHNSTON
AKA JALIAN JOHNSTON,
MICHAEL RAE PAPAYANS,
ANGELO FERRARA, FRANK
FERRARA, CHARLIE FERRARA,
and N. F.; CITY OF PALOS
VERDES ESTATES; CHIEF OF
POLICE JEFF KEPLEY, in his
representative capacity; and DOES
1-10,

          Defendants.

I, Cory Spencer, declare as follows:

1.     I currently live in the city of Norco, California. I first moved to Norco in about 2009 and have lived in Southern California my entire life. I have a bachelor's degree in criminal justice from Union Institute and University in Los Angeles, California. I also attended the Los Angeles Police Department Police Officer Standard and Training Academy and graduated in approximately 1997. I am currently employed by the City of El Segundo, California as a police officer. I have held this position since March 13, 2000. Prior to working in El Segundo, I was a police officer with the Los Angeles Police Department (LAPD), where I worked from October 1996 to March 2000. I have personal knowledge of the matters stated in this declaration and, if called as a witness, could and would testify competently as to its contents.

2.     I grew up in La Mirada, which is located in southeast Los

Angeles County – and more than 20 miles to the nearest surfing beach. I began surfing when I was approximately 11 or 12 years old and instantly fell in love with the sport. I have surfed consistently for over 30 years, am an avid surfer and beachgoer, and I currently surf whenever conditions permit. Through surfing, I am able to express myself, exercise, and enjoy nature. I most often surf El Porto in Manhattan Beach, Oceanside Harbor in San Diego County, and Huntington Beach in Orange County. From the City of El Segundo, where I work, to the nearest edge of Palos Verdes Estates, it is little more than a 10 mile drive. Lunada Bay is a little bit further south.

3. I first became aware of Lunada Bay in Palos Verdes Estates when I was in my mid-teens, probably about 14 or 15 years old. I remember reading a Surfing Magazine that had a small article about the wintertime swells at Lunada Bay and a photo of the surf. The article also made reference to the fact that localism – a practice where local beachgoers exclude nonresident, nonlocal beachgoers through threats, violence, and intimidation – was prevalent at Lunada Bay. It said something to the effect that Lunada Bay has one of the most perfect waves in California in the wintertime but that few were able to enjoy it. The article made an impression on me at the time. I have wanted to surf Lunada Bay from the day I saw that photo but was fearful because of the localism issue described in the article. As an adult, Lunada Bay is unique beyond it being one of Southern California's best big waves that breaks over a rock reef. Lunada Bay is also a public treasure because it is in an unspoiled coastal area of Los Angeles County that offers coastal bluff views, tide pooling and other outdoor activities in the otherwise urbanized Southern California coast.

4. Shortly after seeing the photo and reading the article about Lunada Bay, while I was a teenager, I started asking around in the surfing community about localism there. I heard stories from other surfers about

incidents of localism dating back decades.  I had heard about surfers getting their tires slashed, windows egged, and property thrown into the ocean while surfing.  I was told by other surfers, "oh, you can't go there."  Localism at Lunada Bay was (and is) a widely known fact within the surfing community.  I was afraid to go to Lunada Bay.

5.     But it also bothered me that only a select few could enjoy it.  And I wanted to see Lunada Bay for myself.  So I drove to Lunada Bay approximately 8 to 10 times from the time I was a teenager until approximately January of this year.  I usually brought my surfboards with me though I never did surf on any of those occasions.  I was always afraid of becoming a victim of localism at Lunada Bay.  I didn't want the stories I heard about localism to become true for me.

6.     In approximately 2002 or 2003, my police chief at the time (in El Segundo) was seeking volunteer officers to surf undercover at Lunada Bay as part of a sting operation.  I eagerly volunteered for the assignment.  The goal was to catch the Bay Boys in the act of engaging in unlawful activity and make arrests and issue citations on the spot.  I was excited at the prospect of this because I had wanted to surf there since I was 15 years old.  I knew it would be meaningful and satisfying to be part of the effort that would finally hold the group of men accountable who had made this beach off-limits to me and so many others for decades.  Unfortunately, the operation was called off and nothing ever happened.  I was incredibly disappointed.

7.     In or around 2014, I learned about a movement started by Chris Taloa, a professional bodyboarder and actor.  He wanted to create a peaceful movement to encourage visitors to surf Lunada Bay in large numbers so that it would be safe.  On information and belief, I understand that his movement started as a Facebook page named "Aloha Point," a term

1  Mr. Taloa coined in reference to the "Aloha spirit" of welcoming
2  peacefulness.  I was interested in his movement and supported his goals.
3  The movement resonated with me as a police officer, where my safety is
4  threatened daily, but where there is safety and strength in numbers.  I
5  figured that supporting this movement through a strength-in-numbers
6  approach would be my best opportunity to peacefully surf at Lunada Bay.

7        8.     It wasn't until late January 2016 that I finally contacted Mr. Taloa
8  and suggested that we get a group of people together on January 29, 2016
9  to try and safely surf a swell that was coming to Lunada Bay.  He was
10 enthusiastic and said he would organize a group of people to hopefully have
11 some good, peaceful, clean surfing.  I understood that there would be about
12 6 to 8 surfers, which is the only reason I decided to attempt to surf at Lunada
13 Bay.  Without a group of that size, I never would have tried to surf there.

14       9.     Before surfing Lunada Bay with Mr. Taloa and his acquaintances
15 on January 29, 2016, I decided to contact Palos Verdes Estates' Chief of
16 Police (Jeff Kepley) to request that additional patrols be present while we
17 surfed to ensure our safety.  I don't recall receiving a response from him, so I
18 reviewed the Palos Verdes Estates Police Department's organizational chart
19 and contacted Captain Mark Velez.  We engaged in a dialogue and he
20 thanked me for the request and assured me there would be extra patrols in
21 the area.  Although the police were not present when we arrived the morning
22 of January 29, 2016, I did notice a group of officers present on the bluff top
23 after I got out of the water.

24       10.    In preparation for our outing to Lunada Bay, our group of visitors
25 decided to contribute $20 each so that we could hire a security guard to
26 watch our cars while we surfed.  I had been told by many surfers that the
27 Bay Boys will vandalize your car while you surf, and I would not have felt
28 comfortable leaving my car that morning without someone present to stand

1   guard.  Before our arrival at Lunada Bay, Mr. Taloa and I recommitted

2   ourselves to creating change through peace: we discussed that we would

3   ignore any comments or glares from the Bay Boys – including taunts and

4   threats – and instead would go about our business in order to safely surf.

5   We knew the Bay Boys would try to provoke us into a fight and decided the

6   best way to handle it was to simply ignore it.

7        11.    Almost instantly after we arrived at Lunada Bay the morning of

8   January 29, 2016, we started getting harassed by Bay Boys.  We were told

9   that we couldn't surf there and I was called a "kook," which is a derogatory

10  surfing term.  I was also told: "why don't you fucking go home, you fucking

11  kook" and asked "how many other good places did you pass to come here?"

12  These taunts started while I was on the bluffs getting ready to surf.  One

13  individual in particular continued to heckle Mr. Taloa and I on our way down

14  to the beach and into the water.

15       12.    A man who I now know to be Defendant Brant Blakeman was

16  already in the water and began paddling around Mr. Taloa and me in a tight

17  circle – staying just a few feet away from us.  He impeded our movement in

18  any direction and I believe that he was intentionally blocking us from

19  catching any waves.  It was clear to me that he was not there to surf that

20  morning.  Instead, his mission was to prevent us from surfing, and it felt like

21  he had designated himself to keep us from enjoying our time in the water,

22  the open space, the waves, and nature.  Indeed, in the approximately 90

23  minutes I was in the water that day, I never saw him attempt to catch a

24  single wave.  Instead, he was focused on Mr. Taloa and me.  He never said

25  a word, and just stared at us the entire time.  He would shadow our

26  movements, and sit uncomfortably close.  I have never experienced

27  anything like that before in my life.  It was bizarre but also incredibly

28  frightening and disturbing.  It appeared to me that Mr. Blakeman was

DECL. SPENCER SUPP. PLS.' MOT. FOR CLASS CERTIFICATION

1  coordinating with a group of guys who were standing in the Rock Fort, along
2  with others in the water.  They were all talking to each other and it was clear
3  they all knew each other.

4      13.    At one point while I was in the water, I was paddling west out to
5  the ocean and I saw a man surfing, coming in east towards the shore.  We
6  locked eyes and I watched as he maneuvered his surfboard directly toward
7  me, intending to run me over.  I rolled off the left side of my surfboard and
8  my right hand and wrist held onto the right side of my surfboard.  He ran
9  over my hand/wrist that was holding my surfboard and one of the fins on his
10 surfboard sliced open my right wrist.  I now have about a half-inch scar from
11 where this man ran me over.  Attached as **Exhibit 1** is a true and correct
12 copy of a photograph of my wrist taken during my deposition, with a pen
13 pointing to my scar.

14     14.    As soon as he ran me over, he started berating me, saying
15 things like "what are you fucking doing out here?  I told you to go home.  I
16 should have ran you over.  Why are you paddling in the sun glare where I
17 can't see you?"  He was pretending that he didn't see me but it was obvious
18 that he saw me and intentionally ran me over.  I responded that he did run
19 me over and showed him my wrist.  He said that I shouldn't paddle in the
20 sunlight.  With over 30 years of surfing experience, I knew that this collision
21 was intentional on his part.  I was fearful of being further injured at that point
22 and I didn't want to get into an argument with him so I just paddled away.

23     15.    Mr. Taloa and I caught one more wave after that and then
24 decided it was getting too dangerous to surf.  More men started showing up
25 at the Rock Fort and we were growing increasingly fearful for our safety.  I
26 was also bleeding and in pain.

27     16.    I believe that the man who ran me over with his surfboard was a
28 Bay Boy, like Mr. Blakeman and the other men in the Rock Fort that

DECL. SPENCER SUPP. PLS.' MOT. FOR CLASS CERTIFICATION

1  morning.  It was clear to me that they were all communicating with each

2  other and that they all knew each other.  They were the only surfers who

3  were not getting harassed (and who were doing all of the harassing).

4      17.    Although I had asked for extra police patrols prior to arriving at

5  Lunada Bay, I did not see any police present along the shoreline, at the

6  Rock Fort, or in the water.  Given my advance warning that a group of

7  visitors intended to surf there that morning, the police should have been

8  present where the conflicts were likely to arise – in and around the water.

9  And because there were no police present near the water, no one was there

10 to witness the battery I had suffered.

11     18.     After we got out of the water, we made our way up the trail back

12 to the blufftop.  The other visitors with the Aloha Point movement who were

13 supposed to surf with Mr. Taloa and me were just arriving.  I recall that

14 Diana Milena Reed, Kenny Claypool and Jordan Wright were among the

15 surfers who had just arrived.  I remember showing my hand and describing

16 what had happened to those present.

17     19.    Mr. Taloa and I then went back to our car and started changing

18 out of our wetsuits.  A man approached us and started hassling Mr. Taloa in

19 particular.  I have since learned that the man was Sang Lee.  He kept asking

20 why we keep coming back and telling us that things will never change here,

21 it's the way it's been for years.  He then described how he became a Bay

22 Boy, how things work within their gang, how you work your way into their

23 gang, and why they exclude outsiders from visiting or enjoying Lunada Bay.

24 Mr. Taloa kept trying to walk away, and said "hey, we'll talk another time,"

25 but Mr. Lee just kept coming at him and restating the same dialogue over

26 and over.  The entire conversation lasted approximately 10 minutes.

27     20.    Shortly after we changed back into our clothes, I noticed a group

28 of police officers standing to my south with what appeared to be another

DECL. SPENCER SUPP. PLS.' MOT. FOR CLASS CERTIFICATION

group of newly-arrived Bay Boys. I walked over to the officers to thank them for showing up that morning, even though I had no way of knowing whether they were there as a result of my email request or not. I also told one of the officers what had happened to me in the water and I showed him my hand. The officer did not offer to take a report and he did not ask me to identify the aggressor.

21. I decided to return to Lunada Bay a week later, notwithstanding the assault, battery, intimidation and harassment I had suffered the week prior. Despite my fear in returning, I felt that I had to stand up to bullies like Brant Blakeman who were unlawfully keeping beachgoers away from Lunada Bay. So I planned an outing on February 5, 2016, with Chris Taloa, Kenny Claypool, Jordan Wright, and Diana Milena Reed. I did not intend to surf that day and instead agreed to stay on the bluffs to watch our cars while the others surfed. In advance of our arrival, I emailed Captain Velez to let him know that we were returning to surf.

22. Again, immediately upon my arrival on Paseo Del Mar – the street parking in front of Lunada Bay – I began getting harassed by Bay Boys. I was called a "kook" and asked what I was doing, why I was there, and was told to go home and not to surf there. Some men who I believe to be Bay Boys drove by very slowly in their trucks and cars while others stood watch on the bluffs. I noticed that as they passed by in their vehicles, they would get on their cell phones and then more and more men started to show up. It appeared to be a coordinated effort among members of a gang. I was concerned that the situation would escalate as more Bay Boys began showing up and I grew increasingly fearful for my safety. There were approximately two groups of 15 to 20 men each, stationed on either end of the bluffs – near the two trailheads to the shoreline below.

23. Defendant Blakeman was also present again. He stood on the

1  bluffs with his camera attached to a selfie stick and constantly circled around
2  our group of visitors while sticking his camera in our faces.  He filmed us
3  from the time we arrived and through the time Jordan and Chris got out of
4  the water after they surfed.  It was such odd and harassing behavior and
5  made me feel very threatened, intimidated, and uncomfortable.  I assume he
6  was filming all of us to intimidate us, and so that he could show it to other
7  Bay Boys to identify us.

8        24.    A small group of officers arrived later that morning while I was
9  still there, including a sergeant I recognized from previously working
10  together for the El Segundo Police Department.  I noticed several officers
11  talked with a few members of the Bay Boys but I don't know what was said,
12  or if any type of enforcement action was taken.  I did notice that even though
13  officers were present, Brant Blakeman continued to film throughout the
14  morning.

15        25.    Approximately a month later, on March 4, 2016, I wrote to Chief
16  Kepley via email to provide a suggestion how to address the localism
17  problem at Lunada Bay since it seemed he had been unable to effectively do
18  so up to that point.  It was my intention to collaborate, cop-to-cop, in an effort
19  to take care of the problem together.  I know we would not tolerate the Bay
20  Boys' behavior in my jurisdiction and I wanted to lend a hand.  I encouraged
21  him to plan an undercover operation at Lunada Bay and indicated that I
22  believed the El Segundo Police Department would be willing to assist.  I also
23  told him that while extra patrols at Lunada Bay are appreciated, officers
24  standing along the bluffs cannot observe anything that goes on in the water,
25  along the shore, or in the Rock Fort down below.  I was referencing the
26  assaults, vandalism, batteries, drinking, and alleged drug abuse that has
27  been alleged to run rampant at Lunada Bay for the past 30 or 40 years.  A
28  true and correct copy of my email to Chief Kepley is attached as **Exhibit 2**

DECL. SPENCER SUPP. PLS.' MOT. FOR CLASS CERTIFICATION

1  and is Bates stamped CITY1807.  I received an email in reply, stating that

2  he had been to the Rock Fort on several occasions and talked with surfers

3  "in an effort to educate them on the position we are all in and what needs to

4  change in terms of acceptable behavior on their part."

5    26. The incidents of bullying, intimidation, threats, assault, battery,

6  and harassment that I experienced at Lunada Bay have caused me to suffer

7  loss of sleep, emotional distress, and mental anguish.  I am deeply disturbed

8  and saddened by the Bay Boys' acts of exclusion in that I am not able to

9  enjoy a place that I have a right to enjoy without being harassed and

10  attacked.  I have lost sleep over the incident when Mr. Blakeman circled me

11  in the water and later, when my hand was cut open by a fellow Bay Boy.

12  The January 29, 2016 incident made me feel feeble, humiliated, and

13  intimidated.  I have been distressed by my feelings of anger and resentment

14  toward the Bay Boys, including Brant Blakeman, who have denied me

15  access to a public place.  They have no right to claim a public beach as their

16  turf and enjoy it to their exclusive benefit while denying others the same

17  enjoyment.

18    27. I have been similarly disappointed and upset that the City of

19  Palos Verdes Estates and Chief Kepley have not taken the problem the Bay

20  Boys have created seriously, and have done nothing to remedy this

21  problem.  I believe that the City of Palos Verdes Estates and Chief Kepley

22  have turned a blind eye to the violence, intimidation, vandalism and

23  harassment that goes on at Lunada Bay, both on the bluff top and below on

24  the beach and in the water.  The City allowed an unpermitted Rock Fort to

25  exist along the shore knowing that is only accessible to a select few.  The

26  Lunada Bay Boys use this Rock Fort as a base of operations where they

27  congregate to drink, possibly use drugs, and coordinate their attacks on non-

28  locals.  The City and Police Chief Kepley have done little, if anything, to

DECL. SPENCER SUPP. PLS.' MOT. FOR CLASS CERTIFICATION

1    prevent this unlawful conduct from occurring and the Rock Fort's very

2    existence evidences the City's complicity in the Bay Boys' conduct.

3        28.    The City's complicity in the Bay Boys' exclusion of visitors is

4    further evidenced by their failure to make the area of Lunada Bay visible and

5    accessible to non-residents.  There are no signs alerting visitors that there is

6    a beautiful beach below the bluffs that is open to the public.  Making things

7    more dangerous, there are no signs marking the entrances to the two public

8    trailheads.  There is no information posted about what to do if a visitor

9    encounters a problem – including listing the local police department's direct

10   phone number.  The access to the beach is similarly non-existent.  The

11   "trail" is a steep, precarious, narrow path that should be better maintained by

12   the City so as to provide safe access to the beach.  Each of these factors

13   serves to further intentionally exclude non-residents from accessing Lunada

14   Bay.

15       29.    Further, I believe that Chief Kepley is similarly complicit in the

16   Bay Boys' unlawful exclusion of visitors.  He is the chief law enforcement

17   officer in Palos Verdes Estates but has failed to remedy or even

18   acknowledge and address a serious gang problem within his jurisdiction.  As

19   a fellow law enforcement officer, I am aware of the various tools available to

20   Chief Kepley to address the Bay Boys' unlawful conduct, including making

21   arrests and issuing citations.  But Chief Kepley fails to enforce laws,

22   including City ordinances that are designed specifically to prevent this

23   problem.  Proactive police work – including arresting and citing wrongdoers

24   for violating City ordinances and the California Penal Code – would be

25   effective to take care of a problem that has gone unaddressed for 30 to 40

26   years.  By making a proper arrest or issuing citations, it would send a

27   message to the others that the City does not tolerate a gang in the water

28   and on the beach.  Were this to actually happen, I am confident – based on

1  my many years in law enforcement – that the problem would eventually go
2  away.

3      30.    But I also understand that Chief Kepley and the Palos Verdes
4  Estates Police Department have not engaged in this type of proactive
5  policing.  Instead, I understand that Chief Kepley has attempted to engage in
6  what he calls "community policing" – a system of allocating police officers to
7  particular areas so that they become familiar and friendly with the local
8  inhabitants in the hope of solving any problems that the police need to
9  address.  I understand that Chief Kepley met with members of the Bay Boys
10 and essentially asked them to behave better.  While community policing may
11 be effective for some problems, in my experience it is highly ineffective when
12 it comes to preventing gang violence.  You simply do not tell gang members
13 to behave better – all that means to them is you are going to allow them to
14 continue to operate in anonymity and to behave more secretively.  Instead,
15 in my training, gangs, including turf-based gangs like the Bay Boys, require
16 some type of specific deterrent effort.  It is baffling to me that a seasoned
17 law enforcement officer such as Chief Kepley would conduct himself this
18 way.

19     31.    Through this lawsuit, I hope to open Lunada Bay up to the public
20 so that all who wish to enjoy it can do so freely without illegal discrimination,
21 harassment, intimidation, violence and fear.  Because it is a public beach, all
22 should be able to enjoy Lunada Bay to express themselves and enjoy nature
23 at Lunada Bay.  And all should be able to visit Lunada Bay no matter where
24 they live, where they grew up, where they went to high school, or how much
25 money they make.  If someone is harassed or illegally excluded, I want the
26 police to protect them and their right to visit a public beach.   This is
27 particularly important to me, as someone who has spent his entire
28 professional career as a police officer ensuring the safety and security of

DECL. SPENCER SUPP. PLS.' MOT. FOR CLASS CERTIFICATION

others.  With this lawsuit, I want the Court to oversee an injunction that would enjoin the individual Defendants and other Bay Boys who illegally exclude visitors from using the Lunada Bay for a period that is long enough to return Lunada Bay to the public.  While the City's post-Thanksgiving removal of the unpermitted Rock Fort that served as the base of operations for the Bay Boys may prove helpful, more is needed after decades of the Bay Boys' illegal activity.  Consistent with the California Coastal Act that also protects visitors from illegal discrimination, I would like to see an open and inviting space that includes trail improvements, signage marking existing trails, signage indicating Lunada Bay is a public beach, amenities to demonstrate Lunada Bay is a public beach (e.g., seating, binoculars, an appropriate parking), signage on how to report safety concerns to the City, interpretive signage regarding the activities available to the public at Lunada Bay, an internet map on City website to the two trails at Lunada Bay as well as other trails to Palos Verdes Estates beaches, an internet map on City's website identifying surfing and other recreational opportunities within the City, information on wheelchair accessibility to Palos Verdes Estates beaches, cameras on the blufftop parking areas to record license plates so that gang members cannot operate in anonymity, police wearing body cameras to record interaction with the public that would be downloaded at the end of each day,  the City training its police on gangs (including turf gangs), the City training its police on its local beach-related ordinances and access issues, the police fairly enforcing existing laws related to no-alcohol and beach access, and information on  the location of public restrooms..

32.     I am committed to ensuring all members of the public – no matter where they grew up, went to high school or currently live, their income level, race, color or other protected category – will have safe access to Lunada Bay and other Palos Verdes Estates' beaches.  I understand my obligation

DECL. SPENCER SUPP. PLS.' MOT. FOR CLASS CERTIFICATION

1    as a representative for the plaintiff class to closely monitor this litigation,

2    keep abreast of the status of the proceedings, assist in the prosecution of

3    this case, and supervise my attorneys who are handling this matter on my

4    and the class' behalves.  To that end, I stay in close contact with my

5    attorneys to ensure that the case is on track and that our litigation position is

6    consistent with our goals of providing public access to Lunada Bay.  I ensure

7    that my attorneys' intentions are still pure in that regard and that we are

8    working together to stop the Lunada Bay Boys' culture of bullying and the

9    City of Palos Verdes Estates and Chief Kepley's complicity in the Bay Boys'

10   tactics.

11        33.    I also provided thorough comments to the draft complaint before

12   it was filed, which were incorporated into the final complaint.  I have been

13   extensively involved in preparing, reviewing, revising and finalizing pleadings

14   and discovery in this case, have reviewed deposition transcript(s), and have

15   provided my comments on those documents that I consider relevant.

16   To date, I have responded to multiple discovery requests, including

17   responding to 4 sets of interrogatories, 4 sets of requests for production of

18   documents, and 1 set of requests for admission.  I also appeared for

19   approximately seven hours deposition, on October 11, 2016 in Los Angeles,

20   California.

21

22        I declare under penalty of perjury under the laws of the United States

23   of America that the foregoing is true and correct.

24

25        Executed in El Segundo, California on December 26, 2016.

26

27   _____

28   CORY SPENCER

# Exhibit 1



DEFENDANT'S EXHIBIT NO. 43
For Identification
Witness: C. E. Spencer
Date: 10/11/2016    Page No: 1
Carmen R. Sanchez, CSR No. 5060

Ex. 43

# Exhibit 2

**Mark Velez**

| | |
|---|---|
| **From:** | Jeff Kepley |
| **Sent:** | Saturday, March 05, 2016 9:11 AM |
| **To:** | Mark Velez |
| **Subject:** | Fwd: Lunada UC ops |

REDACTED

FYI.

Jeff Kepley

Begin forwarded message:

**From:** '
**Date:** March 4, 2016 at 10:12:35 PM PST
**To:** jkepley@pvestates.org
**Subject: Lunada UC ops**

Sir, first of all, I'd like thank you and your dept. for the response in extra patrols down at Lunada Bay. I am active law enforcement (ESPD) and have been emailing Capt.  Velez every time we (Aloha point Facebook group-a group of non-locals) venture out to the bay on a big swell day. He has been kind enough to respond, and we've been encouraged to see PV officers.

Anyway, several years ago (around 02' or 03') the then chief of PV asked several surrounding agencies to see if officers who surfed would be willing to paddle out "on duty-undercover."
I was approached along with a few more of our officers and we were excited to help out. For reasons unknown, nothing ever materialized. I think it would be worth another shot and be very effective. I'm sure my chief would assist in letting the few of us that do surf help out should you ever want to try something like that.

It really is too hard to observe anything that really goes on down there from the bluff. Although, I understand two younger officers actually made their way down to the fort and were actually able to finally witness/document a 415. You know, and I know, the DA will most likely reject it, but kudos to them for their descent from the bluff to the beach.

Thanks for reading, and possibly considering a UC operation as I've suggested. As a side issue, I have recently been made aware of, and feel a brotherly sense of duty, to make you aware of some upcoming legal actions in the works by a very large, non-profit foundation heavily invested in coastal matters (this is separate from the coastal commission thing). There are attorneys plotting strategies as we speak, to basically force the city (consent decree type) to make Lunada Bay very "public access." This could mean many things (signage, trail improvement, parking,etc...).  Just wanted to give you a heads up so your not blindsided.

Again, thanks for the response.

DEFENDANT'S EXHIBIT NO. 42
For Identification
Witness C.E. Spencer
Date 10/11/2016  Page No: 105
Carmen R. Sanchez, CSR No. 5060

1

42

CITY1807

# Exhibit I

1   HANSON BRIDGETT LLP
    KURT A. FRANKLIN, SBN 172715
2   kfranklin@hansonbridgett.com
    SAMANTHA WOLFF, SBN 240280
3   swolff@hansonbridgett.com
    JENNIFER ANIKO FOLDVARY, SBN 292216
4   jfoldvary@hansonbridgett.com
    425 Market Street, 26th Floor
5   San Francisco, California 94105
    Telephone: (415) 777-3200
6   Facsimile:  (415) 541-9366

7   HANSON BRIDGETT LLP
    TYSON M. SHOWER, SBN 190375
8   tshower@hansonbridgett.com
    LANDON D. BAILEY, SBN 240236
9   lbailey@hansonbridgett.com
    500 Capitol Mall, Suite 1500
10  Sacramento, California 95814
    Telephone: (916) 442-3333
11  Facsimile:  (916) 442-2348

12  OTTEN LAW, PC
    VICTOR OTTEN, SBN 165800
13  vic@ottenlawpc.com
    KAVITA TEKCHANDANI, SBN 234873
14  kavita@ottenlawpc.com
    3620 Pacific Coast Highway, #100
15  Torrance, California 90505
    Telephone: (310) 378-8533
16  Facsimile:  (310) 347-4225

17  Attorneys for Plaintiffs
    CORY SPENCER, DIANA MILENA
18  REED, and COASTAL PROTECTION
    RANGERS, INC.

19

20              **UNITED STATES DISTRICT COURT**

21      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

22

23  CORY SPENCER, an individual;          CASE NO. 2:16-cv-02129-SJO (RAOx)
    DIANA MILENA REED, an
24  individual; and COASTAL              **DECLARATION OF DIANA MILENA
    PROTECTION RANGERS, INC., a          REED IN SUPPORT OF PLAINTIFFS'
25                                        MOTION FOR CLASS
    California non-profit public benefit  CERTIFICATION**
26  corporation,
                                          Judge: Hon. S. James Otero
27          Plaintiffs,                   Date:  February 21, 2017
                                          Time:  10:00 a.m.
28                                        Crtrm.: 10C

                                    -1-        Case No. 2:16-cv-02129-SJO (RAOx)
12983922.1
         DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.

1

2          v.

3    LUNADA BAY BOYS; THE
     INDIVIDUAL MEMBERS OF THE
4    LUNADA BAY BOYS, including but
     not limited to SANG LEE, BRANT
5    BLAKEMAN, ALAN JOHNSTON
     AKA JALIAN JOHNSTON,
6
     MICHAEL RAE PAPAYANS,
7    ANGELO FERRARA, FRANK
     FERRARA, CHARLIE FERRARA,
8    and N. F.; CITY OF PALOS
9    VERDES ESTATES; CHIEF OF
     POLICE JEFF KEPLEY, in his
10   representative capacity; and DOES
11   1-10,

12
              Defendants.
13

14

15          I, Diana Milena Reed, declare as follows:

16          1.     I am an avid beachgoer and surfer and named Plaintiff in this

17   matter.  I am currently a resident of Malibu, where I have lived for

18   approximately five years.  I have personal knowledge of the matters set forth

19   in this declaration and, if called as a witness, could and would testify

20   competently as to its contents.

21          2.     I lived in Dallas, Texas, from the age of 10, until moving to

22   Malibu approximately in 2011.

23          3.     I studied film production at the University of Southern California.

24   I have worked as a freelance photographer, occasional model, filmmaker,

25   and a surf camp director.

26          4.     I have always loved the water and the ocean.  I grew up as a

27   competitive swimmer and played many sports.  I took up paddle boarding

28   while on a trip to Hawaii and really enjoyed it.  I bought a Surf Diva paddle

12983922.1
DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.

1  board from Focus SUP Hawaii and signed up for paddle boarding and stand
2  up paddle surf lessons from Becker in Malibu.  I decided to try surfing shortly
3  after paddle boarding because it looked like fun, I had enjoyed paddle
4  boarding immensely and wanted to try something more difficult and
5  challenge myself further.  I was inspired to surf after watching Titans of
6  Mavericks on television, the acclaimed and legendary surf contest, pitting
7  elite athletes against the world's most dangerous wave.  It inspired me to try
8  surfing and I knew that one day I wanted to surf big waves.

9       5.     I had my first surf lesson in approximately September 2014.  I
10  immediately fell in love with the sport.  I signed up for private lessons with
11  my coach and began surfing approximately three times a week.  I continued
12  taking three lessons per week, and as my skills improved, I began surfing
13  about every day when conditions permitted.  I enjoyed challenging myself
14  and surfing bigger and bigger waves.  I always went to surf at the beaches
15  that had the biggest waves.  I have surfed many different beaches along the
16  California coast, including various spots throughout Orange County, San
17  Clemente, Huntington Beach, Newport Beach, South Bay, Redondo Beach,
18  Manhattan Beach, Venice Beach, Topanga, Malibu, Oxnard, Ventura, Santa
19  Barbara, Morro Bay, Santa Cruz, and others.

20       6.     I am an aspiring big wave surfer, which means that it is a goal of
21  mine to one day surf big wave spots such as the legendary surf spot
22  Mavericks just off the coastline of Half Moon Bay, California.  I practice and
23  train as hard as I can and am constantly challenging myself to surf the
24  biggest waves possible. As I became more focused on big wave surfing, I
25  heard from various people in the surfing community that Lunada Bay was
26  one of the best big wave surf locations and the only true deep water, big
27  wave surf spot in Southern California. Since learning about Lunada Bay, it
28  has been a goal of mine to surf there, and use Lunada Bay as a big wave

-3-

12983922.1

DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.

1  training ground.  I had heard that localism was prevalent at Lunada Bay,

2  meaning that locals tried to deter nonlocal surfers from accessing the beach

3  through various means, including threats, intimidation, and violence.  If I

4  hadn't heard that localism was such a problem at Lunada Bay, I would have

5  surfed there frequently, and gone to train every day by myself.  But because

6  I was new to surfing and I had never experienced localism, I wasn't sure

7  what to expect.

8        7.       Finally, in or around January 6, 2016, I decided to visit the bluffs

9  at Lunada Bay.  This was my first trip to Lunada Bay.  I went there that day

10  to watch my friends, big wave surfer Jordan Wright and Hawaiian surfer

11  Preston Gazowsky, surf.  It was a stormy day and the conditions were

12  challenging.  The waves were too big for me to go surfing, and I took photos

13  instead.  No one was out surfing that day except Jordan and his friends.

14        8.       I returned to Lunada Bay on January 29, 2016 with Jordan

15  Wright.  I had intended to surf at Lunada Bay that day because the

16  conditions were good and I felt comfortable surfing.  Immediately after we

17  parked our car along the bluffs, the harassment began.  Several men drove

18  by and circled around our car.  One of the men yelled at us and called us

19  "kooks" and told us that we couldn't surf there.  We didn't say anything in

20  response but just got out of the car and prepared to go surfing.

21        9.       There was also a group of men, who I now believe to be Bay

22  Boys, standing along the bluffs.  These men told us that we couldn't surf

23  there and constantly harassed us.  One man who I believe to be Brant

24  Blakeman was recording us on land with his camera.  It was disturbing to me

25  and made me feel very uncomfortable.  The situation felt very tense.

26        10.      At some point while we were still on the bluffs and before we

27  made our way down the trail to the beach, I recall meeting Cory Spencer.  I

28  remember hearing – either directly from Cory or indirectly from another

-4-

12983922.1

DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.

surfer present along the bluffs that morning – that Cory is a police officer and that he had been run over in the water earlier that morning by another surfer who cut Cory's hand.  Hearing that a police officer from outside of the area was not safe in the water surprised me.  The conditions that day were good and I did not understand why the Bay Boys were so aggressive to outsiders. Why couldn't everyone just get along and enjoy the waves? I decided to continue down to the beach despite the harassment and intimidation.  I had come a long way, the surf was good and the conditions were favorable, and it was a great day for me to go out and train and practice big wave surfing.  I had spent the past year training to surf big waves and I had my heart set on surfing Lunada Bay that morning.

11.   Jordan Wright and I walked down the steep trail carrying our surfboards and when we reached the beach, we were approached by a man, whom was later identified as David Mello, who began screaming at us. I heard him yell what sounded like "whore."  I was petrified.  He walked away and I just stood there frozen.  He came back a few minutes later to continue his out-of-control rant.  He started yelling at us again, screaming profanities. I was wearing a purple Roxy wetsuit, with a Patagonia big wave impact suit underneath.  He made fun of my wetsuit because it was purple, and impact suit.  Other Bay Boys watched along the coast, and one younger man told me to "watch out" and "be careful" and "don't smash your pretty little face on the rocks."  There are few women in the surf community, and even fewer women in the big wave surf community.  There were no other women surfing at Lunada Bay that day.  I felt that I was being singled out and harassed and intimidated due to the fact that I was a woman.  I had never been yelled at in a manner like that before and it terrified me.

12.   I could see Palos Verdes Estates Police officers present in the nearby Rock Fort at the north end of the beach.  They did not do anything to

-5-

12983922.1

DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.

1 help me while I was being verbally assaulted, though they witnessed and
2 overheard the incident.

3      13.    After the man walked away, the police ended up coming over to
4 us. They asked us what was going on. I described what had happened and
5 they asked if we wanted to file a report. I stated that I did want to file a
6 report, and the police asked us to accompany them back up the trail to the
7 bluff top.

8      14.    At the top of the bluff, a different, older policeman spoke to me.
9 The policeman told me I could make a citizen's arrest but that if I did, I would
10 be at risk of getting sued because people at Lunada Bay are wealthy and
11 can afford to hire good lawyers. This policeman discouraged me from
12 making a citizen's arrest, told me it wasn't a good idea, and said I risked
13 subjecting myself to liability. He said that he could just write a report
14 (without me pursuing a citizen's arrest) and that it would have the same
15 effect without the personal liability to me. The police detained David Mello
16 for a short period, but did not end up arresting him. The policeman at the
17 top of the bluff who took the report told me that he did not hear what David
18 Mello had said. Because the police officer on top of the bluff who took the
19 report had not heard what Mello was saying, he said that he could not arrest
20 Mello. But the two police officers who were on the shoreline had heard what
21 Mello was saying, and also could observe that Mello was behaving
22 erratically and harassing us. In fact, these officers interceded after Mello
23 screamed at Jordan and I, and talked us into walking up the trail to make a
24 report. Nonetheless, the older police officer refused to arrest Mello. These
25 same officers who had observed Mello were also in the position to notice
26 that the locals in the Rock Fort had beer and were illegally drinking and
27 breaking other laws on the shoreline.

28      15.    I was frustrated that as a visitor, I was talked out of surfing and

-6-

12983922.1

1  that the police did nothing.  Also, I was scared so I changed out of my
2  wetsuit, back into my clothes, and left Lunada Bay without surfing.  Although
3  I had been excited to surf there that morning, I was completely shaken up by
4  this incident – both by the activity of the locals and police complicity – and
5  felt unsafe to go into the water.  I decided to go home.

6      16.    Several days later, on or about February 1, 2016, I broke my arm
7  while snowboarding.  Then, on February 5, 2016, Jordan Wright wanted to
8  attempt to surf at Lunada Bay and I decided to accompany him and
9  photograph him surfing.  I was unable to surf because my arm was in a cast
10  and I was still in a great deal of pain from the injury.  While I stood on the
11  beach taking photos of Jordan surfing, I encountered a photographer from
12  the L.A. Times.  We were both taking photos of the ocean and the beach
13  and we talked about photography and the conditions that day.  I may have
14  also mentioned that Jordan and I weren't locals and that I had experienced
15  harassment there the week prior and filed a police report.  I didn't realize it at
16  the time, but the photographer took pictures of me while I was facing the
17  ocean taking photos of Jordan.  He also spoke with Jordan after he finished
18  surfing, though I did not hear their conversation.

19      17.    On or around February 12, 2016, the L.A. Times published an
20  article entitled "'Bay Boys' surfer gang cannot block access to upscale
21  beach, Coastal Commission says.'"  The article included photographs of me
22  at the beach and in the Rock Fort.  One of the photo captions identified me
23  by name and stated that I " . . . filed a police report for harassment by the
24  Bay Boys."  The article was published online on February 12, 2016 and in
25  hard copy the following day, February 13, 2016.  A true and correct copy of
26  the February 12, 2016 online L.A. Times article and the referenced photo is
27  attached as **Exhibit 1**.

28      18.    I returned to Lunada Bay on February 13, 2016 with Jordan to

DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.

1  watch him surf and take photographs.  Prior to our arrival, I contacted the
2  Palos Verdes Estates Police and requested an escort from the bluffs to the
3  beach.  I was concerned about my safety given the January 29, 2016
4  incident.  I was told that the police were unavailable and no officers were
5  present when we arrived.

6       19.    As we prepared to descend the trail from the bluffs, I remember
7  encountering a middle-aged man with blond hair and a teenage boy who
8  were filming us and attempting to block the pathway.  I now understand that
9  the man was Brant Blakeman.  Mr. Blakeman and the teenager told us that
10  we were "done" and were very hostile and threatening.

11      20.    We walked past them and continued down the trail.  When we
12  reached the beach, we encountered additional angry locals who were yelling
13  at us.  Everyone was incredibly hostile.  Jordan and I ignored the
14  harassment and he got into the water to surf and I made my way to the Rock
15  Fort where I planned to watch Jordan and photograph him.  At some point
16  while I was in the fort, a middle-aged, dark-haired man entered and engaged
17  me in conversation.  He started asking me a lot of questions made me feel
18  uncomfortable, as if he was interrogating me.  He wanted to know what my
19  "mission objective" was and why I was at the beach and what I wanted.  He
20  told me that no other outsiders ever come to Lunada Bay.  I was only there
21  to enjoy the beach and take photos so I didn't understand why he was so
22  interested in asking me questions.  As I was standing in the Rock Fort taking
23  photos, another woman arrived and entered the fort and began taking
24  photos.  I did not know her.  The man also engaged her in conversation.
25  She was visibly shaken and told us that she had been harassed on her way
26  down here.  She told me that she had been sitting on the beach and was
27  asked to leave by the bay boys that were changing into their wetsuits.  They
28  told her that her sitting there was like sitting in a men's locker room.  They

1   yelled at her and she replied that it was a public beach and she had a right
2   to sit wherever she wanted.  They appeared surprised that she had the
3   bravery to stand up to their threats.  She sat at the beach with her camera
4   before making her way into the fort.  The dark haired man questioned her for
5   about 10-30 minutes before he finally left.  I had a brief conversation with the
6   woman.  Her name was Jen and she was at Lunada Bay taking photos of
7   our mutual friend David Sluys.  She was a surf photographer.

8          21.    Later that morning, Charlie Ferrara entered the fort and went to
9   go sit up on the roof.  The woman and I continued taking photos.  Suddenly,
10  two men rushed into the fort and ran towards us in a hostile and aggressive
11  manner.  One was carrying a case of beer and appeared drunk, though it
12  was approximately 9:00 a.m. I later learned the man with the beer was Alan
13  Johnston.  He was very loud, aggressive, and intimidating, saying things like
14  "fuck yeah!" and screaming "Woooooh!" and standing very close to me.  I
15  was terrified.  I recognized one of the men, Brant Blakeman, as the same
16  man who was filming me when I arrived at the bluffs that morning.  He was
17  filming me again and, at times, held his camera right in my face.  It felt very
18  intimidating and harassing and made me fear for my safety.

19         22.    I asked why they were filming me because it made me feel
20  uncomfortable.  Mr. Blakeman responded, "because I feel like it."  Mr.
21  Johnston responded, "because you're hot.  Because you're fucking sexy
22  baby, woooh!"

23         23.    Mr. Johnston opened a can of beer in purposeful way so that it
24  sprayed my arm and my camera.  He was chugging beer and throwing the
25  cans on the ground.  Mr. Johnston then said "didn't I see you guys on the
26  cover of the fucking biggest periodical this morning?"  In retrospect, I believe
27  he was referencing the L.A. Times article, but at the time I had not seen the
28  article and didn't even know that it would be published or that I would be

-9-

Case No. 2:16-cv-02129-SJO (RAOx)

12983922.1

featured prominently in the photos.  It appeared to me that Blakeman and Johnston were pretending to celebrate the L.A. Times article in a sarcastic manner and seemed upset about it.  True and correct copies of video footage taken that day by Brant Blakeman is attached as **Exhibits 2** and **3** and are Bates labeled DFT.BB.000081.MTS and DFT.BB.000082.MTS.

24.    Even worse, Defendant Johnston began acting in a sexually aggressive and suggestive manner.  Johnston told me that he was "big enough to get the job done" and was making grunting noises and moaning as if to mimic an orgasm.  He was simultaneously rubbing his torso with his hands in a sexually suggestive manner and thrusting his torso.  He began changing into his wetsuit in front of me and although he had a towel wrapped around his waist, I believe that he intentionally removed his towel in order to expose his penis to me.

25.    I was not able to exit the Rock Fort during this incident because Blakeman and Johnston were closest to the exit to the fort and I would have had to walk past them.  I was fearful of what more they might do to me if I tried to leave.  I was also frozen with fear.

26.    Defendant Charlie Ferrara was also present during this incident. He was sitting on the roof of the Rock Fort and observed the entire incident and appeared to be complicit in Blakeman and Johnston's behavior.  I tried to call the police on my cell phone during the incident but couldn't get any reception.  The police were parked on the bluffs above the beach but they were unaware of what was going on right below them.

27.    The entire incident with Blakeman, Johnston and Charlie Ferrara lasted between 10 and 20 minutes.  After Blakeman and Johnston left the Rock Fort I finally felt that it would be safe for me to leave.  I made it back up the trail to the bluff top to find the police and report the incident.  When I approached the police officers, I was in tears – visibly shaken and upset.  I

DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.

1  told them what had just happened.  They listened to my account and asked

2  for descriptions.  The police were able to identify the man who was filming

3  me as Brant Blakeman simply by my description.  They told me he was a

4  local resident and owns a home in Palos Verdes Estates.

5      28.    A younger police officer then escorted me back down to the

6  beach to try and identify the other individuals involved.  Both Blakeman and

7  Johnston were gone by that time but Charlie Ferrara was still there.  The

8  police clearly knew him because as they approached, they greeting him by

9  saying, "Hi Charlie."  Also, they told me that they knew him.  Charlie Ferrara

10  refused to cooperate and told the police that he didn't see anything, although

11  he did apologize to me.  As the police stepped away, Charlie told me that he

12  was "sorry" for what happened to me.  The police overheard Charlie and

13  thought that it was strange that he was apologizing to me, and

14  acknowledging what had occured, yet refusing to tell them anything about

15  the incident.

16      29.    A younger police officer took a written report of the incident.  The

17  officer also told me that they have "book containing driver's license

18  photographs of all Lunada Bay Boys" gang members and that I could look

19  through this book to identify the other men who were involved.  He said it

20  wouldn't be a problem to identify the individuals because they know all the

21  people who frequent the area.  He made me believe that it would be easy to

22  identify the others.

23      30.    I left Lunada Bay that day feeling distraught, terrified, and

24  shaken.  But I also hoped that the police would help identify the man who

25  had poured beer on me, exposed himself to me, and acted in a sexually

26  aggressive manner toward me.  Unfortunately, my hope was misplaced.  I

27  was never contacted by the police to identify the other perpetrators.  Instead,

28  after no follow up, I had to call the Palos Verdes Estates Police Department

DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.

1    several times in an effort to set up a time to identify these individuals.  It

2    seemed to me that they were completely disinterested in investigating this

3    incident.  In fact, during a phone call I had with Palos Verdes Estates police

4    detective Venegas, he said words to the effect of "Why would a woman want

5    to go to that beach and the Rock Fort anyways?  There are only rocks down

6    there."

7          31.    I finally felt that I had to consult with an attorney because the

8    police were not helping me.  It was not until I retained counsel, Mr. Otten,

9    who wrote a letter to Chief Kepley, before I was finally permitted to meet with

10   an officer regarding the February 13, 2016 incident.  This meeting occurred

11   on March 21, 2016.  Mr. Otten and I met with Police Chief Kepley and

12   Captain Tony Best.  Chief Kepley and Captain Best said that although they

13   had photographs of the Lunada Bay Boys members, they would not allow

14   me to review the photos – they claimed doing so might impede the

15   investigation or somehow violate the law.  They seemed unfamiliar with the

16   incident and said they would speak to the detective in charge of the

17   investigation.  Chief Kepley and Captain Best also encouraged me to take a

18   cell phone with me to the beach and to travel in large groups.  Further,

19   Captain Best said that there are judges and lawyers who surf there, implying

20   that it was a difficult situation to remedy.  I asked Chief Kepley if it was safe

21   for me to go down there and he replied along the lines that he wished it was

22   safe but it's not.  He said that he wouldn't even tell a man to go down there,

23   and that he viewed it as a long term problem.

24         32.    I learned after the incident from Jen, the woman who had been

25   standing in the Rock Fort at the same time as me, that there was a group

26   email circulated among the Bay Boys immediately after the incident.  I texted

27   with Jen and she referenced the Bay Boys' group email in our text

28   exchange.  Our text exchange is included in attachments to the police report

1  from the incident.  A true and correct copy of the police report detailing the
2  February 13, 2016 incident, including my text exchange which references
3  the Bay Boys' group email, is attached as **Exhibit 4** and is BATES stamped
4  CITY2061-CITY2087.

5      33.    On April 7, 2016, approximately a week after the complaint in
6  this lawsuit was filed, I went to the Palos Verdes Estates police station and
7  reviewed a photo line-up.  I positively identified Defendant Johnston as the
8  man with the beer who had exposed himself to me on February 13, 2016.

9      34.    I spoke to a psychiatrist at UCLA and discussed my loss of
10  sleep.

11      35.    Since the February 13, 2016 incident, I have returned to Lunada
12  Bay on several occasions.  I believe it is important to stand up to bullies and
13  do what is right.  If no one ever goes to Lunada Bay, nothing will ever
14  change.  I cannot allow the Bay Boys to continue their threats of intimidation,
15  sexual assault, harassment, and battery towards people whom they believe
16  are "outsiders."  Lunada Bay is a public beach and I refuse to allow a small
17  group of bullies to prevent the public from enjoying a beautiful natural
18  resource that should be available to all who want to enjoy it.  I want to make
19  a difference and help change things and make Lunada Bay available for all
20  people to enjoy.  During those visits, I was constantly photographed and
21  filmed on the bluff.  I was told by Bay Boys who were present at the time that
22  I shouldn't be there, that I should leave, that no one wanted me there, asking
23  me what I was doing there, calling me a "bitch," and insulting me.  I
24  responded that it is a beautiful public beach and I'm allowed to be there.

25      36.    On one occasion, I recall speaking with Charlie Ferrara after he
26  approached me.  I know it was Charlie Ferrara because I remembered him
27  from the incident on February 13, 2016, and the police identified him as
28  "Charlie" that day.  I have also subsequently looked at photographs of

-13-

12983922.1

DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.

1  Charlie and confirmed that it is the same person I spoke with.  I think he
2  might have felt badly about witnessing the February 13, 2016 incident but
3  not doing anything to stop Blakeman and Johnston.

4       37.    Charlie Ferrara and I had a long conversation about why the Bay
5  Boys act the way they do.  He explained that it's a "fraternity," that they're
6  "family members," and that the Bay Boys will haze you before you're allowed
7  to join them and surf there.  He said that "they want to see how bad you
8  want it" and that they will "make you drink frickin' piss to see how bad you
9  want to be in this fraternity."  He also told me that you have to show respect
10  and that "it's all out of love."  Charlie said that "I can't tell you you can't go
11  surfing, but what I can do is make sure that you don't have fun out there."
12  He explained that it has worked this way for at least 30 years.  He also said
13  that his dad is a surfer who works on cars and has surfed at Lunada Bay
14  since he was a kid.  I understand, based on information and belief, that
15  Charlie Ferrara's father is Frank Ferrara and he is a named defendant in this
16  case.

17       38.    I recorded our conversation on my cell phone, which was sitting
18  face-up and in plain view on a table in the Rock Fort.  I believe Charlie knew
19  I was recording him and that he was simultaneously recording me.  I saw
20  him holding an audio recording device.  At one point during our
21  conversation, he pointed to my Canon camera and asked if I was recording
22  him using that camera.  I was not, and I told him as much.  A true and
23  correct recording of our conversation is attached as **Exhibit 5.**  Also
24  attached as **Exhibit 6** is a transcript of our conversation.

25       39.    I believe that the City of Palos Verdes Estates and Chief Kepley
26  have failed to create safe and public access to Lunada Bay.  My
27  experiences at Lunada Bay have shown me that the City and the Chief have
28  allowed the Bay Boys, including Brant Blakeman, Alan Johnston, Charlie

DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.
Case No. 2:16-cv-02129-SJO (RAOx)

12983922.1

1 Ferrara, and others to intimidate, sexually assault, threaten, harass, and

2 batter people whom they believe are "outsiders."  Drinking is part of the

3 problem and the police simply do not enforce the no-drinking laws.  The

4 police also demonstrate no interest in actually enforcing the law to maintain

5 a safe and secure public beach – and discourage complaints.  Instead, if a

6 visitor insists on complaining, they may write a police report to make it

7 appear as if they are taking the complaint seriously, but then fail to follow-up

8 or investigate the incident.  These actions by the police allow the Bay Boys

9 to illegally keep visitors away from Lunada Bay with acts of intimidation, and

10 violence.

11      40.    People of all races, ethnicities, levels of income, backgrounds,

12 locations, and genders should be able to go to Lunada Bay without fear of

13 being harassed, frightened, intimidated, threatened, assaulted or battered.

14 No one should be made to feel unwelcome at a public beach.

15      41.    The City should take steps to make it clear to everyone that

16 Lunada Bay is a public beach accessible by all who seek to enjoy it.  I

17 believe that the City should also create a safe pathway down to the beach, a

18 path down the cliff where you can go without fear of falling down.  The City

19 should install signs that clearly indicate that it is a public beach and where

20 access trails are located.  Adding seating, trash cans, and other similar

21 improvements to the shoreline and bluff will also make it clear that it is a

22 public beach open to visitors.  The police should also take all complaints

23 pertaining to beach access and violence seriously, including conducting

24 follow-up investigations and holding the perpetrators accountable.

25      42.    I hope that one day Lunada Bay is a place where everyone can

26 enjoy it for its beauty, amazing surf, and all that it has to offer.

27      43.    I understand my duties as a class representative, including my

28 obligation to supervise my attorneys, monitor the case, communicate with

1   my attorneys on an ongoing basis, and stay actively involved in the
2   prosecution of this matter.  I remain in constant contact with my attorneys
3   through phone calls, text messages, emails, and in-person meetings.  The
4   purpose of these communications is to strategize regarding the case,
5   provide information relating to my claims, respond to discovery, and assist
6   any way I can in the litigation of this case.  I am actively engaged in this
7   litigation and have been at all times, and I act diligently to vigorously protect
8   the interests of all putative class members.

9      44.   In addition, I provided thorough and robust comments to the draft
10  complaint before it was filed, which my attorneys incorporated into the final
11  complaint.  I have been extensively involved in preparing, reviewing, revising
12  and finalizing pleadings and discovery in this case, have reviewed
13  deposition transcript(s), and have provided my comments on those
14  documents that I consider relevant.

15     45.   To date, I have responded to multiple discovery requests,
16  including responding to 5 sets of interrogatories, 4 sets of requests for
17  production of documents, and 1 set of requests for admission.

18     46.   I also appeared for two days of deposition, on October 24-25,
19  2016 in Santa Monica, California, while in my third trimester of pregnancy.
20
21     I declare under penalty of perjury under the laws of the United States
22  of America that the foregoing is true and correct.
23
24     Executed in Malibu, California on December 28, 2016.
25
26  *Diana Reed*
27  _____
28  DIANA MILENA REED

DECL. REED SUPP. PLS.' MOT. FOR CLASS CERT.

# Exhibit 1

# 'Bay Boys' surfer gang cannot block access to upscale beach, Coastal Commission says



Visitors have said that a group of locals called the Bay Boys hold forth in this "fort" and discourage outsiders from surfing in Lunada Bay. (Allen J. Schaben / Los Angeles Times)

 By **Garrett Therolf**

FEBRUARY 12, 2016, 9:37 AM

For generations, a small group of locals in wealthy Palos Verdes Estates has maintained a reputation for keeping other surfers off Lunada Bay's well-shaped waves.

The so-called Bay Boys bombard outsiders with dirt clods, slash their car tires and assault them in the water — sometimes coordinating the attacks with walkie talkies — witnesses have said.

ADVERTISING

 Replay

Surfers who say they have been victimized over the years have accused local authorities of complacency, cowardice and even complicity.

Now an unlikely new sheriff of sorts has ridden into town: the California Coastal Commission.

In a letter to Palos Verdes Estates officials, Jordan Sanchez, one of the agency's enforcement officers, wrote that the Bay Boys are so entrenched in this beautiful notch of California coastline that they are subject to the commission's watchdog regulations and permitting processes.

The letter says: "Precluding full public use of the coastline at Palos Verdes Estates, including the waters of Lunada Bay, whether through physical devices ... or impediments, such as threatening behavior intended to discourage public use of the coastline, represents a change of access to water, and, thus, constitutes development."

Sanchez's letter was followed by planning for a meeting with city leaders to discuss stepped-up plans for criminal and code enforcement needed to rid the coast of the Bay Boys' obstruction of access.

"I don't think we've ever seen this level of cooperation on this issue," said Andrew Willis, the commission's top enforcement agent in Southern California.

Willis said the commission has funds available to improve signage for public access and to make improvements to the treacherous pathways from the bluff down to shore where surfers say they are frequently pummeled with dirt clods — but he said that the city will need to take the lead.

"We are not in the position to do a sting operation like the police or tear down structures like a building and safety department," he said, a reference to a stone fort at the water's edge allegedly constructed by the group as a party spot and outpost for coordinating harassment of outsiders.

The fort features stone and cement masonry, and on one recent day it was outfitted with cooking utensils, lighter fluid, trash cans, cushions and an ice chest, as well as a paved step way, seating areas and a fire pit. At the table, someone had etched "Respect this place."

Palos Verdes Estates City Manager Tony Dahlerbruch said he agreed with the commission that the fort — whose construction is said to have begun three decades ago — will now need to undergo the permitting process or come down.

"In the meantime, that structure must be available to be used by all," Dahlerbruch said.

"Lunada has some of the most powerful and perfect big wave spots in California," said Jordan Wright, 31. "It's the wave that is most like Hawaii in Southern California in terms of its strength, power and longevity."

Wright, who has surfed in 13 countries and on waves with 40-foot faces, has had to retreat each time he tried to surf Lunada Bay, even when he went with his father, a detective for the Los Angeles County Sheriff's Department.

"It's run like an organized crime or racketeering outfit," Wright said of the Bay Boys' grip on the slice of public coast.

Cory Spencer, a 44-year El Segundo police officer and surfer, said he has watched the dynamic play out since he was 14.

"I've driven by and looked at the spot probably 10 to 15 times just to see it, but never really took my board out of the car and just traveled on because of the fear, intimidation and vandalism," Spencer said.

In recent months, however, small groups of outsiders have decided to challenge the Bay Boys' grip, and Spencer said he was inspired by Wright to finally give it a try. "I worked South Central for the LAPD, but it took time to gain the courage to go down there," he said.

On his first outing in late January, Spencer said, "immediately, from the time we were on the rocks, we started getting the verbal heckling."

Wright said some of the Bay Boys yelled, "You can't surf here" and "Kooks."

After they paddled out, Spencer said, he caught a wave and locked eyes with one of the Bay Boys who had heckled him on the shore.

"He was 75 yards away on the wave behind me. We had plenty of space, but he tried to spear me with his board ... and he left a nice little slice in my hand," Spencer said. "That was a nice introduction to my second wave at Lunada."

Efforts to end the behavior have been largely ineffective. A former police chief installed a surveillance camera in 2002 to help keep an eye on the less-than-pacific bay. The City Council had it removed three months later.

This summer, a video shot surreptitiously by the Guardian showed local surfers intimidating journalists as they prepare to paddle out.

12/22/2016

Jeff Kepley became Palos Verdes Estates' chief of police a year ago, shortly before the Guardian newspaper caught on tape one of his employees as she dismissed visitors who came to complain after capturing footage of being harassed at Lunada Bay.

------------

**FOR THE RECORD**
**Feb. 11., 10:25 a.m.:** An earlier version of this article misidentified Jeff Kepley as Rancho Palos Verdes' chief of police. He is the police chief of Palos Verdes Estates.
------------

Kepley said he has sent patrols to the bluffs about 400 times and is determined to make an arrest during the current winter season when the waves and tensions are highest.

"It would not be hard," said Spencer, the El Segundo officer, "if they really wanted to take care of this problem. But they need to get out in the water instead of just looking down from the bluff."

For now, the Coastal Commission enforcement officers said, they are not preparing to fine anyone or take other punitive steps.

"If we work cooperatively," Willis said, "we don't need to think of enforcement mechanisms."

*garrett.therolf@latimes.com*

**Follow @gtherolf on Twitter.**

**ALSO**

**Fired California Coastal Commission director speaks out**

**Lawsuit contends the California bullet train project is violating state law**

**Why ex-L.A. Sheriff Lee Baca gets to keep his pension even if he goes to jail for lying**

Copyright © 2016, Los Angeles Times

---

**UPDATED**
9:37 a.m.: Updated with information about the Guardian video.

**This article is related to:** Law Enforcement



7 / 10

**Lunada Bay**

(Allen J. Schaben / Los Angeles Times)

With police watching for trouble from the bluff top, outsider Diana Milena, 28, of Malibu, who filed a police report for harassment by the Bay Boys, stands in the locals' hangout fort.

 

SEE MORE GALLERIES ›



ADVERTISEMENT

# Exhibit 2

**Exhibit 2:** Video footage taken on February 13, 2016 by Brant Blakeman, Bates labeled DFT.BB.000081.MTS, Lodged with Court pursuant to Local Rule 11-5.1.  *See* Notice of Lodging filed herewith.

# Exhibit 3

**Exhibit 3:** Video footage taken on February 13, 2016 by Brant Blakeman, Bates labeled DFT.BB.000082.MTS, Lodged with Court pursuant to Local Rule 11-5.1.  *See* Notice of Lodging filed herewith.

# Exhibit 4



# PALOS VERDES ESTATES POLICE DEPARTMENT

Officer Report for Incident 16-02164

| | | |
|---|---|---|
| **Nature:** SURFING RELATED | | **Address:** LUNADA BAY |
| **Location:** | | |

**Offense Codes:**
**Received By:** C. Placek     **How Received:** O     **Agency:** PVEP
**Responding Officers:**
**Responsible Officers:** S. Crisfield     **Disposition:** ECA 07/07/16
**When Reported:** 10:17:15 02/13/16     **Occurred Between:** 09:40:00 02/13/16 and 10:00:00 02/13/16

**Assigned To:**     **Detail:**     **Date Assigned:** **/**/**
**Status:**     **Status Date:** **/**/**     **Due Date:** **/**/**

**Complainant:**
**Last:**     **First:**     **Mid:**
**DOB:** **/**/**     **Dr Lic:**     **Address:**
**Race:**     **Sex:**     **Phone:**     **City:** ,
**Alert Codes:**

## Offense Codes
**Reported:**     **Observed:**
**Additional Offense:** ASS8 242 Assault, Misdemeanor
**Additional Offense:** SEX5 314 Indecent Exposure

## Circumstances
DAY Day (6 a.m. - 6 p.m.)

**Responding Officers:**     **Unit :**
    S. Crisfield     7L11
    A. Belda     7L9

**Responsible Officer:** S. Crisfield     **Agency:** PVEP
**Received By:** C. Placek     **Last Radio Log:** 12:17:22 02/13/16 CMPLT
**How Received:** O Officer Report     **Clearance:** ICO Investigation Completed
**When Reported:** 10:17:15 02/13/16     **Disposition:** ECA Date: 07/07/16
**Judicial Status:** DONE     **Occurred between:** 09:40:00 02/13/16
**Misc Entry:** Gaunt     **and:** 10:00:00 02/13/16

11/10/16

CITY2061

| Modus Operandi: | Description : | Method : |
| --- | --- | --- |

## Involvements

| Date | Type | Description | |
| --- | --- | --- | --- |
| 04/20/16 | Name | ▓▓▓▓▓▓▓▓ | Suspect |
| 03/09/16 | Name | ▓▓▓▓▓▓ | Mentioned |
| 02/14/16 | Name | ▓▓▓▓▓ | Victim |
| 02/14/16 | Name | ▓▓▓▓▓▓▓ | Witness |
| 02/13/16 | Cad Call | 10:17:15 02/13/16 SURFING RELATED | Initiating Call |

11/10/16

CITY2062

## Narrative

                    Palos Verdes Estates Police Department
Investigation Narrative

SOURCE: On Saturday, 02-13-2016, I (Officer Crisfield #745) was working uniformed patrol in marked police vehicle #726.  At approximately 1015 hours, I was flagged down in the 2300 block of Paseo Del Mar (Lunada Bay) by R-P▮▮▮▮▮▮ ▮▮▮▮ in reference to a surfing related incident.

M.O.: Unknown suspect pours beer on victim and her camera. Suspect then changes into a wetsuit at which time he purposely exposed his penis to the victim.

VICTIM'S STATEMENT: I met and spoke with the victim, ▮▮▮▮▮▮ (DOB: ▮▮▮▮▮▮), and the following is a summary of her statement: On today's date, at approximately 0945 hours, ▮▮▮ and ▮▮▮▮▮▮ were taking pictures of the surf, from the Lunada Bay patio. While on the patio she was confronted by an unknown suspect who shook up a can of beer and opened it in her face, spraying her with its content. The suspect then took the opened beer and poured it on ▮▮▮▮ left arm and camera, however, the camera was not damaged. The suspect then stated, "I saw you on the front page of the LA Times, now you're done." ▮▮▮▮ asked the suspect multiple times to stop harassing her at which time he began to undress and change into his wetsuit. While changing into his wetsuit, the suspect stated, "It's easier to get into my wetsuit because you make me hard." The suspect then asked ▮▮▮▮ "you want to see it", and as she was turning around to see what he was talking about, she saw the suspect's exposed penis. ▮▮▮▮ described the suspect's penis as a white, approximately 3" in length and flaccid at the time of the incident.  During this incident, there was a second subject who was associated with the suspect, who was filming the entire incident. ▮▮▮▮ then became frightened and extremely uncomfortable at which time she walked up the trail back to the top of cliff of Lunada Bay (2300 PDM). ▮▮▮▮ stated she should be able to positively identify the suspect if seen again and if identified, she is desirous of prosecution of the suspect for violation of 314.1 PC - Indecent Exposure and 242 PC - Battery.

▮▮▮▮ described the suspect as:

Adult male, white, mid 20's, 5'9"-5'11", stocky build, medium length light blonde hair, light facial hair, possibly with tattoos on his chest or arms, wearing a black Rip Curl Flash Bomb wetsuit with a hood (NFD). The subject had a white short board style surfboard.

▮▮▮▮ described the subject holding the video camera as:

Adult male, white, mid 50's, 5'7"-5'9", medium build, short blonde hair and clean shaven.

WITNESS STATEMENT: I contacted ▮▮▮▮▮ via telephone ▮▮▮▮▮▮▮ who stated she was on the patio with Reed and witnessed the incident, but was unwilling to provide a statement.

OFFICER'S STATEMENT: After obtaining the victim's statement, Officer Belda (#731), ▮▮▮▮ and I went descended down to the Lunada Bay Patio in an attempt to locate the suspect but she did not recognize anyone. The Lunada Bay Patio is a man-made stone patio / platform located at the shoreline of the north-westernmost corner of Lunada Bay's crescent-shaped cove. While on the patio, ▮▮▮ observed a snapped white Ferrara surfboard that she believed was the

11/10/16

suspects surfboard. I asked the subjects on the patio if they knew who the surfboard belonged to and they were all unsure. I then provided ▮▮▮▮ with a PVEPD card containing this report number.

EVIDENCE: None

ADDITIONAL INFORMATION: In the event the suspect is able to be identified, it is my recommendation this case be forwarded to the district Attorney's Office for filing.

Responsible LEO:

Approved by:

Date

11/10/16

CITY2064

## Supplement

```
CAD Call info/comments
==================================

11:28:45 02/13/2016 - C. Placek
UNITS ARE DOWN IN LUNADA BAY CANYON
11:44:43 02/13/2016 - C. Placek - From: A. Belda
CODE 4
12:16:55 02/13/2016 - C. Placek - From: S. Crisfield
SEE REPORT
```

CITY2065

## Supplement

                        Palos Verdes Estates Police Department
Supplemental Narrative

On 02/16/16, I (Detective Venegas / #733) was assigned to investigate this case.

On 02/17/16, I spoke with V████ and she told me that she had photos of the
suspect and the additional male subject that he was with. She told me that the
photo of the suspect is from his backside and she was unable to get a photo of
his face. However, the photo shows the face of the adult male that was recording
the suspect. V████ told me that she would send the photos to me along with text
messages that she had with "████████" about the incident. Prior to ending the
phone call, I informed ████ to call the PVEPD if she sees the suspect again.

On the same day, 02/17/16, V████ sent me the photos (See attached photos).
While reviewing the photos, the male subject that was recording the suspect was
identified as ████████████ (DOB: ████████████).

On 02/29/16, at approximately 1200 hours, Sgt. Barber (#714) spoke with ████████
at his residence. Sgt. Barber inquired about the incident and ████████ told him
that he did not wish to speak about it.

On 03/28/16, I was informed that Sgt. Barber (#714) had heard a rumor that the
person responsible for the above mentioned crimes was ████████████ (DOB:
████████). I looked at a photo of ████████████ and noticed that he seemed to
match the description of the suspect that was provided by V/████ to Officer
Crisfield. On 03/29/16, I created a 6-pack photo line-up containing a previous
booking photo of ████████. I spoke with V████ on 03/30/16 and informed her of
the 6-pack photo line-up and she agreed to meet with me on 04/05/16. V████
informed me that her attorney was able to find out who the suspect was in the
case. I told V████ that we would talk about that information after the 6-pack
photo line-up was completed. On 04/05/16, V████ contacted me and we agreed to
move our meeting to 04/07/16.

On 04/07/16, V████ met with Detective ████ (#736) and I at the PVEPD. Prior to
showing her the photos, I read to her the Palos Verdes Estates PD Photo Line-up
Admonition. I then showed her the photos and she identified picture #4 ████████
████ as the suspect. After the 6-pack photo line-up was completed, V████
informed Detective Reed and I that her attorney had previously showed her a picture
of ████████████ to her and she recognized him as the suspect.

On 04/13/16, I called the number listed in the report for ████████████
████ and left her a voicemail to call me back.

On 04/14/16, the above information was presented to The Honorable Judge, Allen
B. Honeycutt of the Torrance Courthouse and a Ramey Warrant was issued for
Johnston's Arrest.

On 04/17/16, I was informed that ████████ was arrested by Officer Belda (#731)
on the aforementioned warrant. Officer Belda informed me that he had read
████████ his Miranda Rights. I then interviewed ████████ and the following is a
summary of his statement.

Prior to questioning ████████, I asked him if he recalled his Miranda Rights and
he told me that he did. I asked him if I needed to read them to him again and he
told me that I did not have to. I asked him what happened on the patio and told

CITY2066

me that he saw V█████and another female taking pictures. He wanted to
congratulate V█████on the LA Times article and proceeded to grab a beer. He did
not know the beer had been shaken up. When he opened the beer it exploded on him
and he approximated that two drops of beer landed on V█████ He finished the
beer and then threw it in the trash. I asked him if V█████said anything to him
about the beer hitting her and he told me she did not; however, he sarcastically
apologized for it. V█████then started asking him questions and said "how big is
your stick?" █████told me that he was uncertain if she was referencing his
surfboard or what is "in his pants." He told me their conversation continued and
he then changed into his wetsuit. He told me that he had a towel covering him
when he changed and he never exposed himself. After changing into his wetsuit he
paddled out into the water. He estimated their interaction to be approximately
10-15 minutes. He told me that he believed that V█████made up the allegations
against him.

I asked him if he told her "I saw you on the front of the LA Times, now you're
done." and he responded with "no, absolutely not." I told him that she reported
that he shook up a beer and sprayed it in her face and he said it wasn't true. I
asked him if he poured beer on her left arm and camera and he said "no,
absolutely not." He told me that there was only one beer explosion. I told him
that it was reported that he exposed himself to her while changing and he told
me that it was a lie and that he would never do that. He said he changed with a
"giant blue towel" covering him. I asked him if he told her that "it's easier to
change into my wetsuit because you make me hard" and asked "do you want to see
it?" and he told me that he did not. He told me that while he was changing, she
was facing him and was holding her camera at him. He asked her "you like
watching men change?" and she turned around. He felt like she was trying to film
him as he was changing. I asked him if he had any video or recordings of the
incident and he said "I wish." I asked if █████had any recordings and he
told me that he was unsure but believed he was filming the surf that day and
possibly filming V█████as she was filming them. █████told me that he feels
like he █████did not do anything wrong. I asked him if he knew who V█████
was prior to the incident and he told me that he knew of her from the LA Times
article from the day before. He told me that he believed that she was being
antagonistic by putting cameras in their faces the next morning after the LA
Times article came out. I asked him what else was said about the LA Times
article and he jokingly told her that she was famous and was trying to get her
to party with them and offered her a beer. He told me that incident was "totally
innocent and totally harmless."

I asked █████again about what happened when he was changing and he said
V█████was approximately 15 feet away from him and could not tell if she was
filming him with her camera. He told me that he had a towel around him when he
was changing. I asked him when she asked him how big his stick was and he said
she asked him that prior to him changing as he was waxing his surfboard, which
was after he had opened the beer. I asked if she mentioned him exposing himself
to her and he told me that she did not. He reiterated that he did not expose
himself. He compared her being at the patio to being in a men's locker room
because they all change down there. I asked if her statements were 100% false
and told me they were. He told me that he has not had any contact with her since
that day and is trying to stay as far away from her as possible. I asked if he
had anything else to add and he told me that they are not a gang. He also told
me that people have been down there antagonizing them with cameras.

On 04/18/16, I left an additional voicemail for █████ and she returned my
call later the same day. The following is a summary of her statement:

CITY2067

She informed me that her name is █████████████ I asked her how she knew V/████ and she told me she met V/███ on the day of the incident on the patio. I asked her what happened that day and she told me that she is a surf photographer and she was down there taking pictures of the surf when she met V/████ She told me that she is not friends with V/████ or the local surfers. While they were on the patio, surfers began being rude to them. She told me that she was with V/████ the entire time they were on the patio with the surfers. I asked her about a surfer █████████ spraying beer on V/████ and she told me that one surfer █████████ was partially drinking beers and then throwing them into a nearby trashcan. She told me that beer may have hit V/████ but believes that it was probably done unintentionally. I asked her if a beer was purposely opened to spray in V/████'s face and she told me no. I asked if a beer was poured on V/████ arm and camera and she told me that it did not happen. I told her that it was reported that the same surfer exposed himself to V/████ and she told me that she was standing with █████ the entire time and it did not happen. She told me that the surfer did change into his wetsuit but he did not expose himself to either of them. She told me that after a while, she and V/████ felt uncomfortable being around the surfers so they decided to walk back up to the top of the cliff. I asked her if V/████ mentioned to her that the surfer exposed himself to her and she told me that she did not. She told me that the mentioned crimes did not occur because she would have seen them happen.

Prior to ending the conversation, █████████ told me that she is a neutral party in this incident and does not favor either side; however, she believes that there is definitely an issue with local surfers harassing outsiders down on the beach and something needs to be done. She told me that everyone should be able to surf in the area without feeling intimidated.

On 04/19/16, I spoke with █████████ again and asked about V/████ texting her in regards to the surfer exposing himself to V/████ She acknowledged that she received the text but the incident did not happen. She also reiterated that there is an issue with local surfers harassing outside surfers and that something should be done.

11/10/16

CITY2068

**Supplement**

11/10/16

CITY2069

## Name Involvements:



Witness : 99744
 Last:
 DOB:
 Race:  Sex: F
 First:
 Dr Lic:
 Phone:
 Mid:
 Address:
 City:

Mentioned : 7255
 Last:
 DOB:
 Race:  Sex:
 First:
 Dr Lic:
 Phone:
 Mid:
 Address:
 City:

Victim : 96756
 Last:
 DOB:
 Race:  Sex:
 First:
 Dr Lic:
 Phone:
 Mid:
 Address:
 City:

Suspect : 59217
 Last:
 DOB:
 Race:  Sex:
 First:
 Dr Lic:
 Phone:
 Mid:
 Address:
 City:

11/10/16

CITY2070



●●○○○ Sprint Wi-Fi 🤝   12:33   44% ■

‹ Messages   ████   Details

Message
Saturday

Hey do u have any photos of the guys down there harassing us?

My friend knows the names of those guys. I can probably get his name for you. He asked me if he was short and kind of fat and I would say yeah right about that guy do you think that's the same guy? There's already an email circulating about what happen today with your name in it. My friend just read me the group email and they're saying how they need to do something about these "bad" guys and get cops down closer to the water.



CITY2071



GoPro guy

That's all I have for pics of these assholes



CITY2072

●●○○○ Sprint Wi-Fi 📶    12:34    44% 🔋

‹ Messages    ▬▬▬    Details



**Beer guy**

Saturday

Ok awesome!!

It will help.

If I'm able to get there names I'll let
you know. My friend knows the locals
there that aren't dicks. He had an

CITY2073



•○○○ Sprint Wi-Fi 🤏     12:34     43% ◼️ ›

‹ Messages     ▬▬▬     Details

If I'm able to get there names I'll let you know. My friend knows the locals there that aren't dicks. He had an email about what happen before I even got home, word gets out fast.

> Ok lol

> I told the cops about the beer guy

The GoPro video I hope is deleted but if not its all recorded. They should ask that guy for the footage. Dumbass recorded themselves harassing. Brilliant.

> You have it recorded ?

No the old guy was recording

> They couldn't find the guy with the camera or the younger guy

I wonder how hard they tried. They were there so....probably their friends covering for them. Did the cops actually walk down to the beach?

Saturday



CITY2074



Sprint Wi-Fi  12:34  43%

‹ Messages  Details

The GoPro video I hope is deleted but if not its all recorded. They should ask that guy for the footage. Dumbass recorded themselves harassing. Brilliant.

You have it recorded ?

No the old guy was recording

They couldn't find the guy with the camera or the younger guy

I wonder how hard they tried. They were there so....probably their friends covering for them. Did the cops actually walk down to the beach?

Saturday 16:59



CITY2075



**Sprint Wi-Fi** 🛜     **12:35**     43% 🔋

‹ Messages            Details

Omg. Wow.

> That was on the front page of the LA times today! I went down with the cops. Everyone was gone by then

What???!! Oh shit.

> The younger guy was there but he refused to cooperate as a witness. He denied anything.

How'd they get that on the front page so fast?

> It was an article from last time we were there

The photo is from today? So now you've been on the LA times twice?

> Anyway I gave the police your phone number so they might contact you. I told them that the guy spilled beer on me and my camera on purpose, and then eventually exposed himself as he was changing

> The photo in the la times is from last week



CITY2076



● ○○○○ Sprint Wi-Fi 📶     12:35     43% ■ ›

‹ Messages     Details

> The photo is from today? So now you've been on the LA times twice?

Anyway I gave the police your phone number so they might contact you. I told them that the guy spilled beer on me and my camera on purpose, and then eventually exposed himself as he was changing

The photo in the la times is from last week

It's a coincidence that the article came out today and was featured on the front page.

> Yeah that's crazy.

> But the guys were talking about it, was it a diff article or this one?

> You're famous 😄

Yes it was the article from today that they were talking about

> Ohhhh ok. Was confused for a sec. Got it.

> Did that pudgy little fuck actually



CITY2077



Ohhhh ok. Was confused for a sec. Got it.

Did that pudgy little fuck actually expose his wiener? I missed that.

Yes he did

Gross

Eeewwwww!!!!

He was a disgusting bag of shit. My friend said he sells crack to the neighborhood kids

Really. Do you know his name?

I'm pretty sure my friend knows his name. I think I can get it. My friend has been busy all day but we'll talk later today when he's done. He knows the "good locals" there and is the person who got the group email about us as soon as it happen.

Whoa what did the group email say?

So your friend is a bay boy?

He read it to me but I don't remember



CITY2078



● Sprint Wi-Fi 🛜          12:35                  43% 🔋

‹ Messages                                      Details

He read it to me but I don't remember exactly. I'll see if he'll forward it to me. It mentioned 2 girls being harassed and your name was in it and it was talking about how they need to stop these bully's. My friend told me his buddies already "took out" the worst one. I think they just mean they beat his ass.

My friend surfs there but not often but is good friends with guys that surf there all the time.

> That's so crazy

> Yeah get as much info as you can. See if he'll forward the email to you.

Ok

Saturday

> Hey any word from your friend ?

Saturday

> Hey did you hear back from your friend ?

Sunday

CITY2079



•●○○○ Sprint Wi-Fi 📶     **12:35**     43% ◼ ›

‹ Messages         ▬▬▬         Details

> Hey did you hear back from your friend ?

Sunday

I haven't had the chance to ask him. He's had a lot going on.

Sunday

> Ok no worries

Yesterday

> Hey did you hear back from your friend ? Any way you can ask him to forward you that email? Hopefully we can figure out the name of the beer guy.

Yesterday

Ah I keep forgetting when we talk it's been rushed lately we've both been super busy. I'll try to get the guys name but not sure he'll want to send me the email, who knows.

> Ok. Yeah just ask him and see what he says.

> Thanks for your help. :)

CITY2080

●●●○○ Verizon 📶          1:39 PM          93% 🔋

<Messages          **Group MMS**          Details

To: (213) 447-7607, (213) 842-4935 & 7 more...

Forgot to tell you about that cops hangouts on their bong hit patio the place like some medium type not too low or not too high bring all the foam you have  tell your boys if anyone messes with them say the weasel knows where you live and we know him I   shanked one of the biggest boys 25 years ago still living off the rip There's an Asian guy he'll talk shit his name  is sang know some jujitsu but not really tough tell him to go get some heroin There's a fat thick short guy their toughest his name is grant ████████n tell him to go sell some crystal meth two kids  I heard ████████████ used to live with your boogie friend I used to chase that little bich around If you get the chance say you heard the whole ███████family is nothing but a

Send

CITY2081

●●●○○ Verizon 🤙         1:39 PM              🔋 93% 💬

‹ Messages          **Group MMS**           Details

To: (213) 447-7607, (213) 842-4935 & 7 more…

bich around if you get the chance say you heard the whole ███████family is nothing but a bunch of drug addict losers He's the main shaper and good surfer kids are losers and his brothers kids are all losers One of the ██████kids ██████████ in friends beat up a Persian liquor store guy up the street miners put guy in hos! pital getting them for hate crime One time the ██████ kid talk shit to me one day I said I used to smoke crack with your dad ██████and dead uncle███ I have all the dirt from 1979 up I can make a movie find me somebody

Tell your bros to say even sells weed he lives on 10th Street in San Pedro he'll lose it Come up with all that shit those guys will freak out inside info

          Send

CITY2082



CITY2083



CITY2084



CITY2085



CITY2086

# SUPERIOR COURT OF CALIFORNIA
## County of Los Angeles



### ARREST WARRANT
**Probable Cause Arrest Warrant**
**Ramey Warrant**
[Penal Code § 817]

**THE PEOPLE OF THE STATE OF CALIFORNIA**
To any California peace officer

Warrant No. _____

**Arrestee's name:** ▮▮▮▮▮▮▮▮▮▮, hereinafter "Arrestee"

**Declarant's name and agency:** *Detective Russell Venegas #733*, hereinafter "Declarant"

**ORDER:** Proof by Declaration of Probable Cause having been made to me on this date by Declarant, I find there is probable cause to believe that Arrestee committed the crime(s) listed below. You are therefore ordered to execute this warrant and bring Arrestee before any judge in this county pursuant to Penal Code §§ 821, 825, 826, and 848.

**Crime(s):** *242 PC – Battery*

*314.1 PC – Indecent Exposure*

**Bail:** ☐ No bail ■ Bail is set at: $10,000.00

**Night service authorization** [required only for misdemeanors]

    ☐ Good cause for night service having been established in the supporting Declaration of Probable Cause, this misdemeanor warrant may be executed at any hour of the day or night.

4·14·16    9:06 am

_____
Date and time warrant issued

_____
Judge of the Superior Court

**ALAN B. HONEYCUTT**

---

### ◆ Arrestee Information ◆
*For identification purposes only*

**Name:** ▮▮▮▮▮▮▮▮▮▮▮

**Sex:** ▮▮M  **Race:** W  **Height:** 5'9"  **Weight:** 190  **Color of hair:** Blonde  **Color of eyes:** Green  **CDL** ▮▮▮▮

**D.O.B.:** ▮▮▮▮  **CII** ▮▮▮▮▮

**Last known address(es):** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Vehicle(s) linked to Arrestee:**

**Other information:**

**CITY2087**

# Exhibit 5

**Exhibit 5:** Audio recording of conversation with Charlie Ferrara, Bates labeled PLTF002027.MOV, Lodged with Court pursuant to Local Rule 11-5.1.  *See* Notice of Lodging filed herewith.

# Exhibit 6

| | |
|---|---|
| Man | That's why, that's why people want to come back and like, oh, let's get those fuckers. People take him to the extreme because they got shit for the older people.  Like you know, they wanted to prove themselves because they wanted a surfer, so they had to do things, you know, that were uncalled for, to like show they cared about stuff. |
| Woman | Yeah. |
| Man | Back in the day you could…back in the day, you could drink and drive.  Everyone, you know, things were cooler back the day.  You know, I'm just trying to give examples. |
| Woman | Yeah. |
| Man | The thing, you could get into a fight and not have to deal with the cops.  Now you say something to someone, the wrong words and you're getting sued.  That's all, I'm just trying to say, like, I don't know. |
| Woman | Yeah, you're saying it's not good to take photos of the waves and share 'em with people. |
| Man | Yeah, keep 'em.  I have photos all over my house. |
| Woman | Yeah. |
| Man | But it's in my house. |
| Woman | Believe me, I'm so lazy anyway that I'm like -- |
| Man | -- You seem super cool – you seem so cool – |
| Woman | -- I take photos of all kinds of stuff that I don't post. |
| Man | -- No, no, you seem so cool and it just sucks that like, you know, you got the wrong vibe from everybody.  That's what happens.  Everybody deals with that down here.  Everybody gets the wrong vibe, because that's the hazing, it's like a fraternity.  They're going to be a dick to you because they want to see how bad you want it.  You know what I mean, like a fraternity, they're going to make you drink frickin' piss to see how bad you want to be in this fraternity.  They're gonna make – you get what I'm saying, like? |
| Woman | Yeah. |
| Man | They're going to make you sit down here when it's all sunny or they're gonna make you walk up to a … to the liquor store to go get 'em ice for their beer and you're, you know, tired, but, "oh, you want a slurpy?  You gotta go do that."  You know, just like...it's just respect, and it teaches people respect  and how to be a man and like...they're all, it's all out of love. |
| Woman | But what if you're a girl? |
| Man | The rousting is all out of love. |

1

| | |
|---|---|
| Woman | So that you think they're rousting me out of love? |
| Man | No. |
| Woman | Cuz I don't think -- |
| Man | No, they're rousting you because you're a newcomer. |
| Woman | They're not rousting me out of love. |
| Man | They're rousting you because you're a newcomer.  You don't, you didn't know how to approach it. |
| Woman | Yeah. |
| Man | You didn't know how to approach it.  Did you paddle straight out? |
| Woman | I didn't even paddle out. |
| Man | Exactly. |
| Woman | Cuz I mean, I couldn't, like, I was just hassled so much that I just like had to leave. And that was the day that like the cops were down here and like they saw the whole thing and like they, you know, they went up the hill and like I have to file the report. |
| Man | Well, I'll tell you what it is.  No one here will ever touch you.  They will never touch you.  Ever.  I don't care what they say, what they do, they will never touch you. They're not like that.  They're family members. I promise you on that.  They're good people.  They just want -- |
| Woman | But I'm just saying it's scary being a girl. |
| Man | Well, sure it is. |
| Woman | I'm dealing with that, okay, like, yeah, if you're a guy. |
| Man | But it's also scary being a guy when you have guys barking at you, too, you know. It's scary when you're a guy and you have fuckin' ten guys you know like, you know, gettin' gnarly on you. |
| Woman | Yeah. |
| Man | That's life.  It's not just here.  So many spots in this world you cannot even put your frickin' foot in the water.  So many spots.  Go up to Oregon – oh my gosh, they'll like – there are so many localized spots. |
| Woman | But I mean, do you think that's okay?  If it's like a public place, you know?  I mean, I guess I don't get that, you know. |
| Man | Listen, this is completely open to you.  This is completely open to you.  The surfing is different.  The surfing is…the water, you know, whatever, yeah.  I can't tell you you can't be down here.  I can't tell you that, you know.  I can't tell you you can't go |

2

surfing, but what I can do is make sure you don't have fun out there. You know what I mean? And then what's the point of that? You're going to come here when the surf's good everywhere else and get burned and have a bad day? That's, cuz that's, you know, that's what we're gonna keep on doing. They want to come out we're just gonna on burning them and make them have a bad session because we're going to stick together and like attack cuz we are. We're family. We're all family in this, like, it's really uncool what's going on, how we're getting, you know, the wrap. We don't go bother people. They come to us. And maybe, you know, if they came down and showed some respect when the surf's good without the board, and hung out and got to know people who surf here, know the routes, know the background of the people here, that's a start. That's a start. The ladder's way up here because, like I'm trying to say, this is all they have. Some people don't have families. I'm trying to explain that to you. This right here, that's their god.

| Woman | Wow. |
|---|---|

| Man | Just like how homeless people are homeless. You know, you go wow, that's crazy. This person's homeless and like, wow, isn't it crazy they love this place that much. Yeah, it is crazy, but that's how it is. They love it. It's their getaway. Life's not easy, you know. People go through gnarly things and this is their best outlet. |

| Woman | I thought everyone here though is like really, you know, wealthy and doesn't have any -- |

| Man | No, fuck, people here are…no, these people are, they're not wealthy; they just get by. My dad does pretty good. We live in PV, but we're just getting by. You know, my dad's a surfer. He works on cars. He works his ass off. Hey, and yes, it's a bummer to see waves go like that. It is a bummer. |

| Woman | That are unridden. |

| Man | It is. |

| Woman | Yeah, it's a real bummer. |

| Man | It's a fuckin' bummer. |

| Woman | You should be out there. |

| Man | I know, I just, I just got out. I just got out. And that's why I was calling people get down here. Get the frick out. We need people surfing. |

| Woman | Cuz that's the sad part is like to have such a great wave and then no one is ever -- |

| Man | But that's the thing, that's the thing, one day you see, you know, whoa, it's really good and no one's around, but you guys don't know how many people are tied into this spot. People up north that surfed here for 30 years back in the day that come down and surf, people that live in Torrance that have surfed here there whole life. People from all over, like they, you know and we're…everyone works, you know. So |

3

|         | there's times where people aren't there because of certain things. This place has enough people on it and for how…I mean, I don't know…how do I explain myself. |
|---------|------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Woman   | I get it. I guess my point is like why can't everyone just get along. You know, why can't people --- |
| Man     | The reason is, the reason is one person gets along – oh, they're cool – everyone gets along, and then it turns into Rincon and Malibu. Oh, they got the sweet ticket…why didn't I get the golden ticket? Trust me, it's how it goes. |
| Woman   | But that's just part of dealing with the big city, isn't it? It's like you have to deal with crowds. |
| Man     | City? No, I'm not doing the city or anything. This is -- |
| Woman   | Or, you know, LA. |
| Man     | I'm not dealing with them. I'm just dealing with…I'm not dealing with anybody. I'm not dealing with anything. I'm surfing. I came down here and me and you are having a talk. |
| Woman   | Yeah. |
| Man     | I just came up here to look for my friend's phone. That's what I came up here to do. And that's you know, that's another thing. |
| Woman   | But see, maybe if people were -- |
| Man     | You know, I don't even know that you see, like are you recording? I don't know. |
| Woman   | No, I'm not recording. |
| Man     | You know, like, see I don't know. I don't know. And like, and that's what, that's what's happened to other people. They've been recorded and stuff while they're, you know, rousting them and get recorded and they get in trouble, but it's like… |
| Woman   | Cuz maybe there's better ways of doing it. I don't know. I'm just saying there could be like more peaceful ways. |
| Man     | Well that's why now we're not, you know, doing stuff, and now we're just burning people. Yeah, Joel, yeah, fuck yeah, Joel. He's a very good surfer. |
| Woman   | Yeah, he's great. |
| Man     | And that guy surfs all year. When the waves aren't good, everywhere else, because he … that guy has gotten so much shit, that guy right there who just got that barrel. |
| Woman   | Okay, no one ever surfs there though. No one ever surfs there. |
| Man     | It's called truck drivers. There's a reason why. It's not the spot to sit, okay? |

4

12823269.1

| | |
|---|---|
| Woman | It's good sometimes though. |
| Man | You think you know that, but you know this wave.  I know the wave.  Very well. |
| Woman | All true.  That is true. |
| Man | Okay.  You surf that when it's high tide or deep, and there's reef all along here.  Trust me, people I go, oh, those guys are pussies.  They don't even fucking know.  We charge so hard.  We surf the pipeline.  We surf all the heavy waves.  It's just not a good spot. |
| Woman | Have you surfed pipeline? |
| Man | Yes, I have.  I've surfed pipeline third reef.  Massive. |
| Woman | How was it? |
| Man | As good as it gets.  Fucking insane.  My cousin, my cousin spent three years there.  He taught me a lot about respect.  About the lineup.  About who to stay away from, who to talk to, who to be cool with. |
| Woman | Yeah. |
| Man | You know.  It's all respect, and did you know that this bump was look wise before you came down here?  Did you know?  Be honest, cuz if you knew, then you knew what you were walking into and that was disrespectful.  And that's where you went wrong.  It's disrespectful. |
| Woman | To walk into a place? |
| Man | No.  To walk, to paddle out to what they worked so hard to keep how it is.  That's how they look at it. |
| Woman | Interesting. |
| Man | They cleaned all this shit.  The cleaned from here all the way around, all the trash.  It's called, I forget what they call it.  It's a certain day once a year.  They do a whole cleanup. |
| Woman | Yeah.  I was thinking of helping with that. |
| Man | People are so rude to, people are so rude to you down here you have no idea.  They're so cool.  Like I said, penman, their kids are sitting right here and cooking dogs for the kids.  We're surfing.  It's not…it's just, it is how it is. |
| Woman | Well, yeah, I know what you're saying.  It's that everyone is chilled here.  I just think. |
| Man | No, I'm not saying that.  I'm just saying -- |
| Woman | Well between each other-- |

5

| Man | What I'm saying is it is how it is for specific reasons. Like Rincon and Malibu. Guaranty you it will be like that. Indicator? There's a cliff there. I still see fifty people out. So did I get rid of your cliff theory? A little bit? A little bit? |
| Woman | I don't know, I mean, maybe, yeah. |
| Man | A lot of it? I did. Cuz anybody can walk on a cliff. It's not hard. It's really not hard. |
| Woman | I mean, I get your perspective. I just don't know why --- |
| Man | No, it's not, it's not my perspective. It's the way it's been here for-- |
| Woman | Forever here pretty much. |
| Man | --Forever. As long as, as long as my dad was a kid. My dad's 59 years old. For 59 years it's been like that. Who are you to come here and change something? Get me? |
| Woman | Yeah. |
| Man | I'm sorry to say it like that. I don't, I'm not rude, but that's how they're looking at it, you know, some newcomers come and screw up what we have going on here and, ach! You know, you could have gone about it right and you didn't and I don't know why-- |
| Woman | Well, I don't know, but it's not like I did it on purpose, like I didn't really know. |
| Man | I know, but like, now I don't know if people like, now if you come down without your board like you did right now which was super cool and you come down and like you come sit around here and people are here, I don't know if they're gonna want to talk to you. You know what I mean, because they're hurt, and I'll tell you what that wave back there does. It's only good if it's a deep one. If you're a surfer, man, it's only good if it's a deep one, 'kay, cuz there's the west bowl and the west bowl you won't be able to make it if you're back there. You got me? It's only good if it's a deep one. And there's not many, like only a rare deep one comes in. So this is the main local right here. This is the main local. |
| Woman | That's your buddy? |
| Man | Yup. This is the main local. |
| Woman | And he, is he chill or is he mean? |
| Man | He's pitched…Okay, so what I did was I had a kind talk with you guys and, um… |
| Woman | And I really appreciate it, you know, I've -- |
| Man | No, no, no, he's gonna, and now, I'm gonna get yelled at, okay? You see? |
| Woman | Do you want me to talk to him? |
| Man | No, don't worry about it. I'm just saying, I'm gonna get nailed. |

6

12823269.1

| | |
|---|---|
| Woman | Well then you should tell him that you know it's good you explained things to me because it's…my intention here is not to cause trouble, like I just, honestly, my intention is I just want to be able to come here and surf and like want everyone to be chill and have a good time. |
| Man | Yeah, I appreciate that. |
| Woman | And you know hopefully we can just all get along. That's all I want. |
| Man | I agree with you, but I don't know like I just, you know, I don't know how it's gonna work.  I'm sorry.  I can't do anything.  I didn't do it, you know. |
| Woman | Yeah. |
| Man | You seem really cool.  I don't know, I'm sorry. |
| Woman | What do they do with all the video that they get? Cuz they've taken a lot of videos of me. |
| Man | Oh, because you video them.  [inaudible] |
| Woman | All right, well if you want me to [inaudible] |
| Man | [inaudible] |
| Woman | All right. |
| Man | It really flames the tempers, huh. |
| Woman | What? |
| Man | It really flames the tempers, huh. |
| Woman | Yeah.  I know. |
| Man | That's the way to get somebody to [inaudible] |
| Woman | That's a really good one. |
| Man | 'kay, do it.  Nice. |

12823269.1

# Exhibit J

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No.: | CV 16-02129-SJO (RAOx) | Date: | January 25, 2017 |
| Title: | Cory Spencer, et al. v. Lunada Bay Boys, et al. | | |

Present:      The Honorable   **ROZELLA A. OLIVER, U.S. MAGISTRATE JUDGE**

| Gay Roberson | CS- 01/25/2017 |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiff(s):        Attorneys Present for Defendant(s):

Victor J. Otten

John Peter Worgul
Robert Scott Cooper
Tera A. Lutz
Mark Fields

**Proceedings:**        (In Chambers) **ORDER RE: DEFENDANT BLAKEMAN'S MOTION TO COMPEL DISCOVERY RESPONSES [150] AND PLAINTIFFS' MOTION TO COMPEL PRODUCTION BY DEFENDANT BLAKEMAN [183]**

Before the Court are Defendant Brant Blakeman's ("Defendant's") Motion to Compel Discovery Responses (Dkt. No. 150) and Plaintiffs Cory Spencer, Diana Milena Reed and Coastal Protection Rangers, Inc.'s ("Plaintiffs'") Motion to Compel Production by Defendant Blakeman (Dkt. No. 183). The Court held a hearing for both motions on January 25, 2017.

**I.      Defendant Blakeman's Motion to Compel Discovery Responses**

For the reasons stated on the record, Defendant's Motion to Compel Discovery Responses is GRANTED-IN-PART and DENIED-IN-PART.

A. Interrogatory Nos. 1 through 12

Plaintiffs are ordered to identify witnesses in response to Interrogatory Numbers 1 through 12. For each interrogatory, Plaintiffs shall identify the responsive witnesses by name. For each witness, Plaintiffs shall specify whether that witness is represented by Plaintiffs' counsel, or, if Plaintiffs know, by other counsel. For each witness, Plaintiffs shall provide contact information for that witness or state unambiguously that Plaintiffs do not have contact information for that witness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: CV 16-02129-SJO (RAOx)　　　　　Date:　January 25, 2017
Title:　　　Cory Spencer, et al. v. Lunada Bay Boys, et al.

Defendant's motion is denied at this time to the extent it requests further responses to the interrogatories beyond what the Court has provided in this order.

B.　Document Request Nos. 1 through 9[1]

Plaintiffs are ordered to produce all responsive documents in their possession, custody or control to Document Requests Nos. 1 through 9 by **February 24, 2017**.  Also by February 24, 2017, for each request, Plaintiffs shall provide bates number ranges or otherwise identify with particularity the documents that are responsive to that request, including any documents that may have already been produced to Defendant.  For each request, if Plaintiffs are withholding any responsive documents, Plaintiffs shall assert the objections pursuant to which Plaintiffs are withholding those documents.  Plaintiffs shall provide a privilege log for any documents they are withholding based on privilege.  Plaintiffs shall serve their supplemental responses to the interrogatories and document requests electronically.[2]

## II.　Plaintiffs' Motion to Compel Production by Defendant Blakeman

For the reasons stated on the record, Plaintiffs' Motion to Compel Production by Defendant Blakeman is GRANTED-IN-PART and DENIED-IN-PART.

A.　Document Request Nos. 1, 2, 8 and 9

Counsel for Defendant stated at the hearing that all responsive documents, if any, have been produced with respect to these four requests.  The Court therefore DENIES as MOOT Plaintiffs' motion as to these four requests.

---

[1] Defendant did not move to compel further responses to Document Request Nos. 10 through 12. The Court notes that Plaintiffs responded that they are not presently aware of any responsive documents in their possession, custody or control with respect to these three requests.
[2] To the extent there are issues with producing responses or documents electronically by February 24, 2017, Plaintiffs shall timely inform Defendant's counsel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:   CV 16-02129-SJO (RAOx)                    Date:   January 25, 2017
Title:        Cory Spencer, et al. v. Lunada Bay Boys, et al.

      B.  Document Request Nos. 12, 13, 39 and 40

      Defendant is ordered to produce all responsive documents from December 2013 to the present with respect to these four requests pursuant to the following procedure.[3]  By **February 3, 2017**, the parties are ordered to meet and confer regarding: (1) selection of a third-party forensic examiner or expert; (2) a review protocol that includes the procedure that the third-party forensic expert will follow in conducting its work, the procedure and timeline for Defendant to review the videos for responsiveness and privilege, and the procedure and timeline for responsive videos to be produced to Plaintiffs; and (3) a protective order.

      By **February 24, 2017**, the parties are ordered to submit a joint proposed order that includes the identity of the third-party forensic expert that the parties agreed upon and the review protocol.  Also by February 24, 2017, the parties are ordered to submit a joint proposed protective order.  If the parties cannot agree on either the proposed order or the protective order, each party shall submit their own proposed version of each for the Court to review.

      Plaintiffs' motion is denied at this time to the extent it requests responsive documents prior to December 2013.

      All parties' requests for sanctions for both motions are denied.

      **The parties are directed to meet and confer in good faith to attempt to resolve any further discovery disputes.  If the parties are unable to reach a resolution about any disputes, they are directed to contact the Court's Courtroom Deputy Clerk to schedule a telephonic conference.**

      **IT IS SO ORDERED.**

                                      1    :    07
                             Initials of Preparer        gr

---

[3] Plaintiffs have agreed to limit the geographic scope of these requests, as stated in Plaintiffs' counsel's December 13, 2016 email.  (*See* Joint Stip. at 23, Ex. 1-o.)

# Exhibit K

1 | HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
2 | kfranklin@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
3 | swolff@hansonbridgett.com
CAROLINE LEE, SBN 293297
4 | clee@hansonbridgett.com
JENNIFER ANIKO FOLDVARY, SBN 292216
5 | jfoldvary@hansonbridgett.com
425 Market Street, 26th Floor
6 | San Francisco, California 94105
Telephone: (415) 777-3200
7 | Facsimile:  (415) 541-9366

8 | HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
9 | tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
10 | lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
11 | Sacramento, California 95814
Telephone: (916) 442-3333
12 | Facsimile:  (916) 442-2348

13 | OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
14 | vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
15 | kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
16 | Torrance, California 90505
Telephone: (310) 378-8533
17 | Facsimile:  (310) 347-4225

18 | Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
19 | REED, and COASTAL PROTECTION
RANGERS, INC.

20 |

21 | **UNITED STATES DISTRICT COURT**

22 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

23 |

24 | CORY SPENCER, an individual; | CASE NO. 2:16-cv-02129-SJO (RAOx)

25 | DIANA MILENA REED, an | **DECLARATION OF MARK SLATTEN**
individual; and COASTAL | **IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS**
26 | PROTECTION RANGERS, INC., a | **CERTIFICATION**

27 | California non-profit public benefit
corporation, | **Date**:  February 21, 2017
**Time**:  10:00 a.m.
28 |

12966332.1

DECLARATION OF MARK SLATTEN  IN SUPPORT
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

<table>
<tr><td>1</td><td>Plaintiffs,</td><td><strong>Judge</strong>: Honorable S. James Otero<br><strong>Ctrm</strong>.: 10C</td></tr>
<tr><td>2</td><td>v.</td><td>1st Street Courthouse</td></tr>
<tr><td>3</td><td></td><td></td></tr>
<tr><td>4</td><td>LUNADA BAY BOYS; THE<br>INDIVIDUAL MEMBERS OF THE</td><td>Complaint Filed: March 29, 2016<br>Trial Date: November 7, 2017</td></tr>
<tr><td>5</td><td>LUNADA BAY BOYS, including but<br>not limited to SANG LEE, BRANT</td><td></td></tr>
<tr><td>6</td><td>BLAKEMAN, ALAN JOHNSTON<br>AKA JALIAN JOHNSTON,</td><td></td></tr>
<tr><td>7</td><td>MICHAEL RAE PAPAYANS,</td><td></td></tr>
<tr><td>8</td><td>ANGELO FERRARA, FRANK<br>FERRARA, CHARLIE FERRARA,</td><td></td></tr>
<tr><td>9</td><td>and N. F.; CITY OF PALOS</td><td></td></tr>
<tr><td>10</td><td>VERDES ESTATES; CHIEF OF<br>POLICE JEFF KEPLEY, in his</td><td></td></tr>
<tr><td>11</td><td>representative capacity; and DOES</td><td></td></tr>
<tr><td>12</td><td>1-10,</td><td></td></tr>
<tr><td>13</td><td>Defendants.</td><td></td></tr>
<tr><td>14</td><td></td><td></td></tr>
</table>

15    I, Mark Slatten, declare as follows:

16    1.    I have personal knowledge of the facts set forth herein, except

17  as to those stated on information and belief and, as to those, I am informed

18  and believe them to be true.  If called as a witness, I could and would

19  competently testify to the matters stated herein.

20    2.    I am the President of Plaintiff, Coastal Protection Rangers, which

21  is a California non-profit public benefit corporation (hereafter "CPR"). Prior to

22  incorporation, CPR was an unincorporated membership association. This is

23  a completely volunteer position. I earn a living, however, as a licensed

24  geologist and own a company called Clean Soils Inc. My company is hired to

25  conducted investigations into property impacted by hazardous substances,

26  often chlorinated solvents, and implement systems to remediate the soil and

27  groundwater.

28  ///

3. I grew up in Southern California. As a young boy, my family lived one block off Manhattan Beach, CA. I spent most days at the beach bodysurfing and enjoying the ocean. In junior high school, we moved to Palos Verdes, and I learned to surf. This is back when the surfboards were long, big and heavy. I heard through the "grapevine" to stay away from the southern side of the peninsula. I understood this to mean anything south of Bluff Cove. The "why" made no sense then, but it does now. The people who said to avoid those parts of the Peninsula were referring to the problem with localism.

4. While attending the University of California, Los Angeles (UCLA) I lived in Hermosa Beach and worked in Redondo Beach. Today, I live with my wife -- about 20 miles from the beach at Carlsbad (San Diego County) and go there frequently. To me and CPR, the beach represents many things – it demonstrates the strength of nature, how small we are as humans, freedom, a place to explore, a venue to gather with friends and others, and a place where people can express themselves in activities like surfing. In sum, the beach has always given me great joy. It is a place where I can go to mediate and escape the stress of everyday life, relax and be happy. These are some of the reasons why the coastal areas must be protected from selfish, exclusion-oriented and otherwise mean people.

5. From 1970-72, I studied the geology of the Santa Monica Mountains while attending Moorpark College. During that time, I become an avid hiker. This was sparked by my interest in geology. I have hiked and enjoyed the Coastal Mountain ranges all over the State of California. My love for the natural sciences led me obtain a Master's Degree in science in geology from University of California Riverside and Bachelor of Science, Geology with paleontology minor. I am a Professional Geologist and hold

1  licenses in six states including. I am also a California Certified
2  Hydrogeologist.

3        6.     I decided to start CPR in 2014 after a long discussion with a
4  friend who is an environmental attorney.  I was familiar with the Coastal Act
5  because of some work that I was doing related to the former Halaco refinery
6  that was built on coastal wetlands in the City of Oxnard.  We discussed how
7  the private enforcement provisions of the Coastal Act could be used to
8  ensure existing beach access and open up beaches long denied to the
9  public, to stop illegal developments and to protect the coastal zone. We also
10  discussed how the California coast is one of the largest open spaces near
11  urban areas and how surfing and exposure to beach activities could be used
12  as a tool to help the poor generally, and specifically at-risk youths in
13  communities that have too little access to recreation, parks, nature and the
14  outdoors.

15        7.     In addition, several of CPR's board members and/or volunteers
16  of the organization are surfers and/or enjoy the beach and grew up in areas
17  near Palos Verdes Estates such as Redondo Beach, Rancho Palos Verdes,
18  Hermosa Beach and Torrance. They would have liked to have surfed, dived,
19  taken photographs, hiked, or even just enjoyed nature and the beach at
20  Lunada Bay but were afraid to because of the reputation that it had for
21  localism. For example, board member Dave Leuck grew up in Redondo
22  Beach. Having surfed since the age of 8, lived in Hawaii for two years, and
23  having spent six months surfing Mainland Mexico, he has the skill to surf
24  Lunada Bay on good days.  Yet, he has never been able to surf there
25  because of the problem with localism.  The same is true for Ian Stenehjem
26  who grew up in Rancho Palos Verdes just 2 miles from Lunada Bay and has
27  surfed his entire life. Ian is a pilot for a major airline and has surfed the best

28

-4-

2:16-cv-02129-SJO (RAOx)

DECLARATION OF MARK SLATTEN IN SUPPORT
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  breaks in the world for the last 20 years but has never been able to surf the
2  break closest to where he grew up because of the locals.

3       8.    Around December 2015, I read an article in The Los Angeles
4  Times about a dispute the Coastal Commission was having with the City of
5  Palos Verdes Estates regarding an illegal structure at Lunada Bay and the
6  issue of localism. What was immediately apparent to me was the fact that
7  the City seemed to be challenging the authority of the Coastal Commission.
8  CPR's attorney and I researched bringing a private enforcement action. We
9  looked at various things including past efforts to stop localism at Lunada Bay
10 and other surfing spots in Palos Verdes Estates. Throughout the years, the
11 South Bay Chapter of the Surfrider Foundation seemed dedicated to
12 stopping localism. There are numerous articles showing the efforts made by
13 their volunteers. Yet, the Surfrider Foundation had not been able to solve the
14 problem.   Because beach access is central to CPR's mission, the board
15 voted to become a plaintiff in this case.

16      9.    As part of the investigation in this matter, I have learned how the
17 City of Palos Verdes Estates has not enforced laws against locals, such as
18 the law prohibiting drinking alcohol on public beaches and laws that prohibit
19 people from blocking access to the beach.  And, I learned about historic
20 discrimination in Palos Verdes Estates, including: (a) the Palos Verdes
21 Homes Association and Art Jury designed to "protect this utopian landscape
22 and future property values" that was  established in 1923 as a "high-class
23 residential suburb" limiting 90% of the property to single-family homes; (b)
24 restrictive covenants forbade an owner to sell or rent a house to anyone not
25 of white or Caucasian race and to not permit African-Americans on their
26 property with the exception of chauffeurs, gardeners and domestic servants;
27 (c) in 1960, Palos Verdes Peninsula voters voted to form a unified school
28 district of their own, and not remain under the more diverse Los Angeles

DECLARATION OF MARK SLATTEN IN SUPPORT
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  Unified School District's rule (this avoided desegregation and bussing, which
2  came in later in the 1960's and 1970's); (d) in the 1980's, disproportionately
3  white and affluent communities persuaded the Southern California Rapid
4  Transit District (RTD) to end direct bus service between South Central and
5  beach-front communities to the west, increasing the amount of time it took to
6  reach the beach and effectively deterring people of color from going to the
7  beach at all because of the amount of time and hassle it took to get there,
8  and that RTD granted the request of Palos Verdes Peninsula cities that
9  buses from the inner city not climb the Palos Verdes Hill; (e) in 1991, the
10 cities of Palos Verdes Estates, Rancho Palos Verdes, and Rolling Hills
11 Estates formed their own small transit district called the Palos Verdes
12 Peninsula Transit Authority (PVPTA) that only operates Monday to Friday,
13 and does not stop at Palos Verdes Estates beaches like Lunada Bay; (f) on
14 September 11, 2015, defendant NF in this matter served as a lookout on a
15 crime that took place at the local liquor store where the Bay Boys buy beer,
16 and while the police reported it as a robbery gone awry by high school age
17 kids pulling a prank, the liquor store owner explained it as a hate crime
18 because it happened on 9/11, he is a Pakistani/Muslim immigrant and that
19 the boys swung a baseball bat at him breaking his arm, and the boys didn't
20 attempt to steal anything; (g) when coastal access advocates held a Martin
21 Luther King Day paddle out rally in 2014, several Bay Boys paddled out in
22 blackface in front of police and told the visitors, "you don't pay enough taxes
23 to be here"; (h) that when Plaintiff Diana Milena Reed complained about
24 being sexually harassed at the Rock Fort, that police officers responded with
25 words to the effect, "why would a woman want to visit a beach that only has
26 rocks?" and that the Bay Boy's called her "that Diana bitch" in their texts;
27 and (i) that numerous beachgoers have had the word "faggot" screamed at
28 them by locals as they attempt to visit Lunada Bay.  These protected-

1  category overtones cause me and CPR grave concern, as all beachgoers,
2  no matter their income level, race, color, religion, gender, sexual orientation
3  or other protected category are entitled to coastal access.

4       10.   In September 2016, Gov. Jerry Brown signed legislation
5  amending the Coastal Act which compliments CPRs core mission of open
6  access to the coast for everyone by incorporating the concept of
7  environmental justice into the law.   The Coastal Act now explicitly refers to
8  the statutory definition of environmental justice. "Environmental justice"
9  means the fair treatment of people of all races, cultures, and incomes with
10  respect to environmental laws, regulations, and policies under Government
11  Code Section 65040.12. The governor is now required to appoint a
12  Commissioner experienced in and dedicated to environmental justice. Every
13  Commissioner is required to comply with and enforce the cross-cutting equal
14  justice laws. Finally, the Act explicitly refers to state civil rights law that
15  guarantees equal access to publicly funded resources and prohibits
16  discrimination based on race, color, national origin, and other factors,
17  Government Code 11135. Section 11135 applies to all state agencies and
18  recipients of state funding.

19       11.   The beaches, tide pools and surf on the Palos Verdes Peninsula
20  and at Lunada Bay are truly unique and everyone should be able to enjoy
21  them. On a low tide, you can see octopi, limpets, crabs, sea urchins and
22  other aquatic life living in the tide pools. There are marine mammals such as
23  seals that patrol the shores; occasionally, a whale can be spotted on the
24  horizon. Standing on the bluff the kelp beds are visible- something totally
25  unique to California. And if you grab a mask and snorkel, you will discover
26  one of the most biologically diverse and productive zones on the planet.
27  Exposing people to these ecological areas give life meaning and put things
28  into perspective; everyone, especially the economically challenged and

1  people who live in poorer communities, should be able to have access to

2  this area of the coast without fearing for his or her safety. Specifically, CPR

3  and I believe that without intimidation, school children from poorer inland

4  communities should be able to take field trips to Lunada Bay for educational

5  purposes and to share these experiences with their parents, families, and

6  friends.  Everyone should be able to learn, exercise, enjoy the outdoors and

7  otherwise express themselves in their chosen activities at Lunada Bay.

8       12.    CPR and I would like the public to be able to visit Lunada Bay

9  to surf without fear of physical and verbal attack or the hassle of dealing with

10 the Bay Boy bullies.  CPR and I would like the public to be able to visit the

11 Lunada Bay bluff, shoreline, and water to explore and surf without fear of

12 having their car vandalized.  CPR and I want the Bay Boys and other locals

13 to be barred from using this beach for sufficient time to change attitudes and

14 to give access to the beach back to the public.

15      13.    CPR and I want the City of Palos Verdes Estates to enforce its

16 ordinances fairly and for it to provide signage so people will know Lunada

17 Bay is a public beach.  CPR and I want the City of Palos Verdes Estates to

18 improve amenities in a fashion that makes it safer, provides improved

19 access to all beachgoers, and is both consistent with this rural spot, the

20 California Coastal Act, and state and federal law.  For example, access trails

21 to the shoreline should be clearly marked to make it safer for people visiting

22 to navigate down to the shoreline.  And no person should be allowed to

23 block the access trails or to intimidate visitors on the bluff top, on the

24 shoreline, or in the water.  CPR and I want Palos Verdes Estates police to

25 be available to help when people are unlawfully excluded.  In short, CPR

26 and I want all to be able to visit Lunada Bay without being harassed.  And if

27 someone is harassed, we want the City of Palos Verdes Estates police to

28 take complaints seriously. Finally, we would like to see public transportation

-8-

DECLARATION OF MARK SLATTEN IN SUPPORT
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1 | that makes it easy for people of all walks of live to be able to experience
2 | Lunada Bay.

3 |      I declare under penalty of perjury under the laws of the United States
4 | of America that the foregoing is true and correct.

5 |      Executed on this 28th day of December, 2016, at _Murrieta_, California.

6

7 | _MMSlatten_

8 | MARK SLATTEN

DECLARATION OF MARK SLATTEN IN SUPPORT
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

## PROOF OF SERVICE

2

3        I am employed in the County of Orange, State of California.  I am over the age of 18 and
not a party to the within action.  My business address is 20320 S.W. Birch Street, Second Floor,
4  Newport Beach, California 92660.

5        On July 24, 2017, I served the within document(s) described as:

6        REQUEST FOR JUDICIAL NOTICE OF ADJUDICATIVE FACTS IN SUPPORT OF
DEFENDANT FRANK FERRARA'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
7  ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

8        on the interested parties in this action as stated on the attached mailing list.

9   [X]   (BY ELECTRONIC SERVICE) Complying with Code of Civil Procedure § 1010, I caused
        such document(s) to be Electronically Filed and Served through the _for the above-entitled
10        case.  Upon completion of transmission of said document(s), a filing receipt is issued to the
        filing party acknowledging receipt, filing and service by 's system.  A copy of the [Email
11        receipt System] filing receipt page will be maintained with the original document(s) in our
        office.

12
        Executed on July 24, 2017, at Newport Beach, California.
13
        I declare under penalty of perjury under the laws of the State of California that the
14  foregoing is true and correct.

15
        _____              _____
16              Hailey Williams                                    (Signature)
              (Type or print name)
17

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

1

H:\1178\176\PROOF OF SERVICE.docx

<u>**Cory Spencer v. Lunada Bay Boys et al.,**</u>

**Case No. 2:16-cv-2129-SJO**

**BWB&O CLIENT:     Frank and Charlie Ferrara**
**BWB&O FILE NO.:    1178.176**

<u>**SERVICE LIST**</u>

| | | |
|---|---|---|
| Samantha Wolff, Esq.<br>**HANSON BRIDGETT**<br>425 Market Street<br>26th Floor<br>San Francisco, CA 94105<br>(415) 777-3200<br>(415) 541-9366 Fax<br>Attorneys For **PLAINTIFF**<br><br>swolff@hansonbridgett.com<br>kfranklin@hansonbridgett.com | Tyson M. Shower, Esq.<br>**HANSON BRIDGETT**<br>500 Capitol Mall<br>Suite 1500<br>Sacramento, CA 95814<br>(916) 442-3333<br>(916) 442-2348 Fax<br>Attorneys For **PLAINTIFFS**<br><br>tshower@hansonbridgett.com | Victor Otten, Esq.<br>**OTTEN LAW, PC**<br>3620 Pacific Coast Highway<br>Suite 100<br>Torrance, CA 90505<br>(310) 378-8533<br>(310) 347-4225 Fax<br>Attorneys For **PLAINTIFFS**<br><br>vic@ottenlawpc.com |
| Jacob Song, Esq.<br>**KUTAK ROCK LLP**<br>5 Park Plaza<br>Suite 1500<br>Irvine, CA 92614<br>(949) 417-0999<br>(949) 417-5639<br>Attorney For **CITY OF PALOS VERDES ESTATES and JEFF KEPLEY, in his representative capacity, serves as the Chief of Police Department of Defendant City of Palos Verdes Estates.**<br><br>jacob.song@kutakrock.com | J. Patrick Carey, Esq.<br>**LAW OFFICE OF PATRICK CAREY**<br>1230 Rosecrans Avenue<br>Suite 270<br>Manhattan Beach, CA 90266<br>(310) 526-2237<br>(310) 356-3671 Fax<br>Attorney For **ALAN JOHNSTON individual membeer of LUNADA BAY BOYS aka JALIAN JOHNSTON**<br><br>pat@patcareylaw.com | Aaron G. Miller, Esq.<br>**THE PHILIPS FIRM**<br>800 Wilshire Boulevard<br>Suite 1550<br>Los Angeles, CA 90017<br>(213) 244-9913<br>(213) 244-9915 Fax<br>Attorneys For **ANGELO FERRARA**<br><br>amiller@thephillipsfirm.com |
| Mark Fields, Esq.<br>**LAW OFFICES OF MARK C. FIELDS**<br>333 So. Hope Street<br>Suite 3500<br>Los Angeles, CA 90071<br>(213) 617-5225<br>(213) 629-2420 Fax<br>Attorney For **ANGELO FERRARA an individual member of LUNADA BAY BOYS and N.F. an individual member of LUNADA BAY BOYS**<br><br>fields@markfieldslaw.com | Peter R. Haven, Esq.<br>**HAVEN LAW**<br>1230 Rosecrans Avenue<br>Suite 300<br>Manhattan Beach, CA 90266<br>(310) 272-5353<br>(213) 477-2137 Fax<br>Attorneys For **MICHAEL RAY PAPAYANS**<br><br>peter@havenlaw.com | Dana Alden Fox, Esq.<br>**LEWIS BRISBOIS BISGAARD & SMITH, LLP**<br>633 W. 5th Street<br>Site 4000<br>Los Angeles, CA 90071<br>(213) 580-3858<br>(213) 250-7900 Fax<br>Attorneys For **SANG LEE**<br><br>Dana.Fox@lewisbrisbois.com |