1
2
3
4
5
6

HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
LISA M. POOLEY, SBN 168737
lpooley@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:    (415) 541-9366

7
8
9
10
11

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:   (916) 442-3333
Facsimile:    (916) 442-2348

12
13
14
15
16

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone:   (310) 378-8533
Facsimile:    (310) 347-4225

17
18
19

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

20

**UNITED STATES DISTRICT COURT**

21

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

22

23
24
25
26
27
28

CORY SPENCER, an individual;
DIANA MILENA REED, an
individual; and COASTAL
PROTECTION RANGERS, INC., a
California non-profit public benefit
corporation,

Plaintiffs,

CASE NO. 2:16-cv-02129-SJO (RAOx)

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

Case No. 2:16-cv-02129-SJO (RAOx)

v.

LUNADA BAY BOYS; THE
INDIVIDUAL MEMBERS OF THE
LUNADA BAY BOYS, including but
not limited to SANG LEE, BRANT
BLAKEMAN, ALAN JOHNSTON
AKA JALIAN JOHNSTON,
MICHAEL RAE PAPAYANS,
ANGELO FERRARA, FRANK
FERRARA, CHARLIE FERRARA,
and N. F.; CITY OF PALOS VERDES
ESTATES; CHIEF OF POLICE JEFF
KEPLEY, in his representative
capacity; and DOES 1-10,

                    Defendants.

| | |
|---|---|
| Judge: | Hon. S. James Otero |
| Date: | August 21, 2017 |
| Time: | 10:00 a.m. |
| Crtrm.: | 10C |

| | |
|---|---|
| Complaint Filed: | March 29, 2016 |
| Trial Date: | November 7, 2017 |

Plaintiffs Cory Spencer, Diana Milena Reed, and Coastal Protection Rangers, Inc. ("Plaintiffs") hereby respectfully submit the following Statement of Genuine Disputes of Material Fact in Opposition to Defendants City of Palos Verdes Estates and Chief of Police Jeff Kepley (collectively, "Defendants") in opposition to Defendants' Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

As a preliminary matter, Defendants' Statement of Undisputed Material Facts fails to comply with Rule 27b of Judge Otero's Standing Order.  Specifically, Defendants fail to separate the statements of undisputed material facts such that it is clear which facts allegedly support each claim for relief.

/ / /

/ / /

/ / /

/ / /

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| 1.  Before the age of 20, Spencer visited Lunada Bay on four or five occasions. He never experienced intimidation, vandalism, or any other harmful act.<br><br>October 11, 2016 Deposition of Plaintiff Cory Eldon Spencer ("Spencer Deposition"), 60:10-61.14. | 1.  Disputed in Part.  Defendants' statement is a misrepresentation of the facts.  Plaintiff Cory Eldon Spencer ("Plaintiff Spencer") did not attempt to surf at Lunada Bay on the 4 or 5 occasions that he visited Lunada Bay before the age of 20.  Declaration of Cory Spencer In Support of Plaintiffs' Motion for Class Certification ("Decl. Spencer Supp. Class Cert."), Dkt. No. 159-4, at ¶ 5 ("I usually brought my surfboards with me though I never did surf on any of those occasions.  I was always afraid of becoming a victim of localism at Lunada Bay."); Deposition of Cory Spencer ("Spencer Dep.") at 62:19-23 ("Q: Okay. So when you visited Lunada Bay before you turned 20, you went to Lunada Bay but did not surf, correct? A: That's correct.") |
| 2.  After age 20, but before January 2016, Spencer visited Lunada Bay another four or five times.  No individual approached him or spoke to | 2.  Disputed in Part.  Defendants' statement is a misrepresentation of the facts.  Plaintiff Spencer did not attempt to surf at Lunada Bay until |

-3-

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| him, but he "believes" he experienced localism on one of the visits because there was "a group of guys at their local spot being locals". Spencer Deposition, 82:19-84:3. | approximately January 2016.  Decl. Spencer Supp. Class Cert., ¶ 5. |
| 3.  On January 29, 2016, Spencer decided to surf at Lunada Bay with a group of other surfers. Spencer Deposition, 75:17-76:5. | 3.  Undisputed. |
| 4.  Prior to the January 29, 2016 visit, Spencer emailed Chief Kepley and a Police Captain to request extra police patrols during his visit to Lunada Bay. Spencer Deposition, 78:3-79:8. | 4.  Disputed in Part.  Defendants' statement is a misrepresentation of the facts.  Plaintiff spencer testified that he could not recall whether he initially contacted Chief Kepley and a Police Captain via e-mail or telephone. Spencer Dep. at 78:20-22 (Q" How did you contact him?" A "I don't know if the first time was initially E-mail or a call."). |
| 5.  Extra police patrols were provided. Spencer Deposition, 125:22-127:15, 193:20-194:17. | 5.  Disputed in Part.  Defendants' statement is a misrepresentation of the facts.  Plaintiff Spencer did not testify that extra patrols were provided.   In |

-4-

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES
ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | response to being asked whether extra patrols were provided, he stated "I can only tell you what I experienced, there was a group of officers that was there *after* I was out of the water."  Spencer Dep. 85:12-21. |
| 6.  On January 29, 2016, Spencer recalls an unidentified individual telling him "You can't surf here kook." Spencer Deposition, 98:5-100:6. | 6.  Undisputed. |
| 7.  Spencer also recalled statements like "How many other places did you pass to get here to surf?" and "Why don't you fucking go home, you fucking kook." Spencer Deposition, 102:12-103:3. | 7.  Undisputed. |
| 8.  Another unidentified individual made similar comments. Spencer Deposition, 103:21-104:24. | 8.  Undisputed. |
| 9.  In the water, Spencer testified that an unidentified LBB Defendant crossed surf boards with him and left a half-inch | 9.  Disputed in Part.  Defendants' statement is a misrepresentation of the facts.  Plaintiff Spencer testified that an |

-5-

13644581.2

| | Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|---|
| 3 4 5 6 7 | cut on his right wrist.<br><br>Spencer Deposition, 106:17-107:6. | unidentified Bay Boy "intentionally ran [him] over with his surfboard and sliced open [his] hand."  Spencer Dep. at 106:16-107:1. |
| 8 9 10 11 12 13 14 15 16 17 | 10. Spencer believed the incident was intentional, but the purported LBB Defendant claimed that Spencer was paddling in the sun glare and that he had not seen Spencer.<br><br>Spencer Deposition, 109:10-22. | 10.  Disputed in Part.  Defendants' statement is a misrepresentation of the facts.  The Lunada Bay Boy Defendant stated to Plaintiff Spencer "… I should have ran you over. Why are you paddling in the sun glare where I can't see you? … I should have ran you over."  Spencer Dep. at 109:4-22. |
| 18 19 20 21 22 23 24 25 26 27 | 11. Spencer claimed to be fearful, but continued to surf at least one more wave before leaving the water because he was "getting a little hypothermic" and his wrist was bleeding.<br><br>Spencer Deposition, 110:9-24; 114:24-115:14. | 11. Disputed.  Plaintiff Spencer testified that he left the water that day because he and his friend decided it was "getting too crazy" in the water and because more Bay Boys "started showing up on the fort."  Spencer Dep. at 113:24-114:1.  Plaintiff Spencer had decided to stay *in* the water initially after being injured "to let the cold help with the cut." *Id.* at 115:8-9. |

13644581.2

| | Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|---|
| | | |
| | 12. Spencer's companion continued to surf.<br><br>Spencer Deposition, 115:2-5. | 12. Disputed in Part.  Defendants' statement is a misrepresentation of the facts.  Plaintiff Spencer's companion continued to surf after Plaintiff Spencer was injured, but while Plaintiff Spencer was still in the water.  Spencer Dep. at 115:2-14.  Spencer and his companion exited the water at the same time. *Id.* at 114:17-23. |
| | 13. Upon returning to the top of the Lunada Bay bluff, Spencer encountered five or six police officers, three police vehicles, and a motorcycle.<br><br>Spencer Deposition, 130:23-132:15. | 13.  Undisputed. |
| | 14. Spencer approached the police officers to thank them for showing up and to express his appreciation.  He also told a police officer about his incident, including stating "[t]he guy is going to claim sun glare and whatnot" caused the collision. | 14.  Undisputed. |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| Spencer Deposition, 125:22-127:15. | |
| 15. Spencer, a police officer himself, did not tell the police officer that what happened was a crime.<br><br>Spencer Deposition, 111:5-112:1; 279:2-280:14; 128:4-17. | 15.  Disputed.  Defendants' statement is a misrepresentation of the facts. Plaintiff Spencer did not testify that he did not tell the police officer that what happened was a crime.  Rather, Plaintiff Spencer testified that, although it was a crime, he did not tell the Lunada Bay Boy who ran over him with the surfboard that his actions were a crime.  Spencer Dep. 111:5-112:1. |
| 16. Spencer did not ask for a police investigation or follow up on the matter.<br><br>Spencer Deposition, 125:22-127:15. | 16.  Disputed in Part.  Plaintiff Spencer did not testify that he did not ask for a police investigation.  Rather, he testified that he did not ask for a "formal report."  Spencer Dep. 127:6-8. |
| 17. After January 29, 2016, Spencer never communicated to anyone at the City about the incident.<br><br>Spencer Deposition, 132:25-134:11. | 17.  Undisputed. |
| 18. Christopher Taloa testified that the City police "ha[s] been nothing but | 18.  Disputed in Part.  Defendants' statement is a misrepresentation of the |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| | Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|---|
| 1 2 | | |
| 3 4 5 6 7 8 9 10 | good to me. They have been there for us and I am so thankful and grateful on that aspect in that matter."<br><br>January 5, 2017 Deposition of Christopher Taloa, 303:19-25 | facts. Mr. Taloa's cited testimony and comment regarding the City police was in response to a question asking how he felt about the City's police presence solely during the "MLK paddle out" (on January 20, 2014). Taloa Dep. at 303:19-20. |
| 11 12 13 14 15 16 | 19. Spencer returned to Lunada Bay in February not to surf, but to observe for incidents, as well as to watch the other surfers' property.<br><br>Spencer Deposition, 137:16-138:5. | 19. Undisputed. |
| 17 18 19 20 21 22 23 24 | 20. Spencer again contacted the Police Department about his planned trip and remembers seeing two or three police vehicles and two patrolmen and a sergeant on this date.<br><br>Spencer Deposition, 139:2-140:2; 184:13-185:6. | 20. Undisputed. |
| 25 26 27 | 21. Spencer remembers unidentified individuals (some driving by and some standing on the bluffs) calling him | 21. Disputed in Part. Plaintiff Spencer identified Defendant Blakeman as one of the individuals who harassed him |

28

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| "kook" and asking "what are you doing?"<br><br>Spencer Deposition, 142:24-144:19. | during his February 2016 visit to Lunada Bay.  Spencer Dep. 143:13-24. |
| 22. Spencer recognized Defendant Blakeman, who stood between 5 and 50 feet away filming him and the other surfers.<br><br>Spencer Deposition, 143:13-144:16. | 22.   Disputed in Part. Plaintiff Spencer testified that Defendant Blakeman "constantly circled [them]…sticking his GoPro in [their] faces." He further testified that when Defendant Blakeman stuck his GoPro in their faces he was between 5-30, 40 or 50 feet away.  Spencer Dep. at 143:13-144:16. |
| 23. Spencer encountered no other action that he viewed as harassment or violence.<br><br>Spencer Deposition, 146:18-19. | 23.  Disputed.  Plaintiff Spencer identified other actions that he found harassing and threatening. Specifically, Plaintiff Spencer testified that he found the fact that individuals called him "kook" and asked "what are you doing" was harassing.  Spencer Dep. at 142:24-143:4.  He further testified that he found the name calling he experienced harassing.  Spencer |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | Dep. at 143:5-10.  He also testified that he found Defendant Blakeman's actions of constantly circling him and sticking a GoPro in his face to be threatening.  Spencer Dep. 143:13-144:19.  He also testified that the Local Bay Boys repeatedly passed by and "more and more" started to show up, with groups of 15 to 20 on each end of the trail to get to the beach, who were yelling at him "to fucking get out of there," "why are you here?," "Go home," and "Don't surf here."  Spencer Dep. 146: 21-149:23. |
| 24. On March 4, 2016, Spencer emailed Chief Kepley to thank him and the Police Department for providing the extra police patrols.<br><br>Spencer Deposition, 158:9-159:14; 160:7-12; Spencer Deposition, Exhibit 42. | 24.  Disputed in Part.  While Plaintiff Spencer thanked Chief Kepley for providing extra police patrols, he also provided "a suggestion how to address the localism problem at Lunada Bay since it seemed he had been unable to effectively do so up to that point."  Decl. Spencer Supp. Class Cert., ¶ 25. |
| 25. In subsequent months, Spencer | 25.  Undisputed. |

Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES
ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| visited Lunada Bay between three to five times.<br><br>Spencer Deposition, 170:9-24. | |
| 26. Spencer observed unidentified individuals slowly drive by while using cell phones and then later observed more unidentified individuals showing up.  However, Spencer confirmed that nothing happened on these subsequent visits.<br><br>Spencer Deposition, 173:5-174:14. | 26.  Disputed.  Defendants' statement is a misrepresentation of the facts.  Nowhere in the cited testimony does Plaintiff Spencer confirm that nothing happened on subsequent visits and instead explains his worry that he would experience violence and bodily harm.  Spencer Dep. at 173:8-16. |
| 27. Spencer does not recall any City police officer ever asking him where he lived.<br><br>Spencer Deposition, 305:17-23. | 27.  Disputed in Part.  While Plaintiff Spencer did not recall whether a City police officer ever asked him where he lived, he also testified that he didn't have to tell the City police officers that he was an El Segundo Police Officer because he "used to work with one of them."  Spencer Dep. at 341:21-342:2. |
| 28. Reed's first visit to Lunada Bay was | 28.  Disputed.  Plaintiff Reed testified |

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| on January 6, 2016.<br><br>October 24, 2016 Deposition of Diana Milena Reed ("10/24/16 Reed Deposition"), 104:7-105:6. | that she may have been to Lunada Bay prior to January 6, 2016.  Reed Dep. at 105:7-11 ("Q: And had you ever stopped at Lunada Bay at all before January 6, 2016? A: Yeah, I may have when I was looking at the coast, I don't know.") |
| 29. Reed was there for two hours and no one harassed, intimidated or otherwise caused her or her property harm.<br><br>10/24/16 Reed Deposition, 108:22-109:19. | 29.  Disputed in Part.  Defendants' statement is a misrepresentation of the facts.  Plaintiffs do not dispute that Plaintiff Reed did not experience harassment, intimidation, or vandalism when she visited Lunada Bay on January 6, 2016.  However, Plaintiffs dispute this fact to the extent it suggests that individuals were present to engage in harassment, intimidation, or vandalism on January 6, 2016.  Plaintiff Reed testified that no local surfers were present at Lunada Bay on January 6, 2016.  Reed Dep. at 108:22-109:19. |
| 30. On January 29, 2016, Reed returned | 30.  Undisputed. |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| to Lunada Bay to surf with her boyfriend.<br><br>10/24/16 Reed Deposition, 101:22-103:18. | |
| 31. Unidentified individuals in automobiles drove around Reed's vehicle and yelled "kooks", "you can't surf here" and profanities at her.  Other unidentified individuals videotaped her.<br><br>10/24/16 Reed Deposition, 119:25-121:1; 129:18-23; 130:8-14. | 31.  Undisputed. |
| 32. After a descending to the beach, an unidentified individual purportedly called her a "whore" and then returned to yell profanities at them. A police officer walked over and asked her what was going on. Reed described the incident and he inquired whether she wanted to file a police report, which she did.<br><br>10/24/16 Reed Deposition, 130:17-25; 134:5-24. | 32.  Undisputed. |

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
| --- | --- |
| 33. The police detained a suspect but informed Reed that because they did not overhear the words yelled, they could not arrest the individual.<br><br>10/24/16 Reed Deposition, 135:14-25. | 33.  Undisputed. |
| 34. The police counseled Reed on filing a citizen's arrest, including the possible civil ramifications if she were found wrong in making the arrest.<br><br>10/24/16 Reed Deposition, 135:14-136:17; 141:3-11. | 34.  Disputed in Part.  Defendants' statement is a misrepresentation of the facts.  Plaintiff Reed testified that the police dissuaded her from filing a citizen's arrest by telling her that it was "not a good idea to file a citizen's arrest" because she is at risk of getting sued because "people at Lunada Bay have a lot of money and can hire good lawyers and that will put [her] in a risk of getting into a lawsuit."  Reed Dep. at 135:14-136:11. |
| 35. The police told Reed that the outcome would be the same whether she filed a police report or undertook a citizen's arrest (absent the civil liability exposure). | 35.  Undisputed. |

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| 10/24/16 Reed Deposition, 135:14-136:17. | |
| 36. Reed did not know whether the police officer asked where she was from.<br><br>10/24/16 Reed Deposition, 138:19-139:3. | 36. Disputed in Part.  Plaintiff Reed testified that she did not know whether the police asked her where she was from when she was down on the beach, but she had to provide her address when she filed the police report.  Reed Dep. at 138:19-139:3. |
| 37. On February 5, 2016, Reed returned to Lunada Bay.<br><br>10/24/16 Reed Deposition, 146:11-20. | 37.  Undisputed. |
| 38. Reed could not recall whether police were present, but did remember her boyfriend surfed without incident.<br><br>10/24/16 Reed Deposition, 154:24-155:18; 156:16-17. | 38.  Disputed in Part.  Defendants' statement is a misrepresentation of the facts to the extent it suggests local surfers were present but did not harass Plaintiff Reed's boyfriend.  Plaintiff Reed testified that her boyfriend "was the only person out there surfing." Reed Dep. at 155: 8-11. |
| 39. On February 13, 2016, Reed returned to Lunada Bay. | 39.  Undisputed. |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| 10/24/16 Reed Deposition, 156:23-157:5. | |
| 40. Reed could not recall the specific chain of events, but remembers "various profanities of various instances". 10/24/16 Reed Deposition, 167:10-168:2. | 40. Disputed. Plaintiff Reed testified that she did not "remember the specific insults, the specific words of the insults that were yelled," but that she remembered various profanities of various instances. Reed Dep. at 167:10-168:2. |
| 41. Reed also recalled a middle-aged male and teenage boy filming her and her boyfriend, attempting to block their path, and telling them they were "done". 10/24/16 Reed Deposition, 167:10-168:2. | 41. Undisputed. |
| 42. At the base of the Lunada Bay bluff, Reed was approached by Defendants Blakeman and Johnston. Reed testified they "rushed" her in a hostile manner and asked whether she wanted a beer. Defendant Blakeman got close to her face and filmed her. Defendant | 42. Disputed in Part. Plaintiff Reed was approached by Defendants Blakeman and Johnston while inside the Rock Fort. Reed Dep. at 171:4-5 (Q "Where did this take place?" A "These events took place in the fort."). |

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| Johnston "opened a can of beer in a way that sprayed on [her] arm and camera." <br><br> 10/24/16 Reed Deposition, 170:5-173:17. | |
| 43. Defendant Johnston also acted in a sexual manner toward her and another woman by "grunting and making – making moans and noises resembling [ ] an orgasm. He was thrusting and rubbing his torso in a sexual manner." Reed asked why she was being filmed and the alleged response was because she was sexy. Defendant Johnston allegedly told her he's "big enough to get the job done" while grunting and moaning. <br><br> 10/24/16 Reed Deposition, 177:14-178:2. | 43. Undisputed. |
| 44. Reed attempted to call the police, but was unable to receive cell reception. <br><br> 10/24/16 Reed Deposition, 175:8-15; October 25, 2016 Deposition of Diana | 44. Undisputed. |

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| Milena Reed ("10/25/16 Reed Deposition") 203:7-12. | |
| 45. Reed believes Defendant Johnston, while changing out of his wetsuit, intentionally permitted the towel wrapped around him to open such that he exposed his penis.<br><br>10/25/16 Reed Deposition, 358:18-360:23. | 45.  Undisputed. |
| 46. Reed returned to the top of the bluff and approached a police officer to explain what had occurred.<br><br>10/24/16 Reed Deposition, 181:16-183:12; 10/25/16 Reed Deposition, 216:20-25; 218:15-220:4. | 46.  Undisputed. |
| 47. The police officer listened and then escorted Reed back down the bluff to identify the men.  They were gone.<br><br>10/24/16 Reed Deposition, 181:16-183:12. | 47.  Disputed in Part.  Plaintiff Reed testified only that the man who had acted in a sexually aggressive manner toward her and sprayed beer on her was no longer present.  Reed Dep. at 182:21-183:4.  Plaintiff Reed did testify that Charlie Ferrara, who had been present during the incident, was |

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | present in the Rock Fort when she returned with the police officer.  Reed Dep. at 183:8-12. |
| 48. The police officer purportedly told Reed that the Police Department kept LBB Defendants' photos and offered her an opportunity to review them.<br><br>10/25/16 Reed Deposition, 221:7-225:24. | 48.  Disputed in Part.  Plaintiff Reed testified that the police officer said there was a book of photographs with all the Lunada Bay Boy Defendants' photographs, but did not offer her an opportunity to review them.  10/25/16 Reed Dep. at 223:10-18. |
| 49. Reed became upset when she had difficulty scheduling an appointment to review the photos, which she was allegedly made to believe existed.<br><br>10/25/16 Reed Deposition, 237:16-22; 239:11-19. | 49.  Disputed.  Plaintiff Reed did not testify that she became upset.  Plaintiff Reed stated that after attempting approximately three times to contact a detective to schedule an appointment, she "eventually [] proceeded to retain [her] attorneys because [she] felt like that was the only course of action [she] could take because the police weren't helping [her]."  10/25/16 Reed Dep. at 239:15-19. |
| 50. The City does not maintain a LBB | 50.  Disputed.  Chief Kepley testified |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| Defendants' photobook.<br><br>October 10, 2016 Deposition of Jeff Kepley ("Kepley Deposition"), 153:10-13; 183:12-17. | that he had no knowledge of such a photobook.  Kepley Dep. at 153:10-13.  Plaintiff Reed, however, testified that she was told by a police officer that such a photo book existed.  10/24/16 Reed Dep. at 221:24-222:9. |
| 51. The "delay" in showing Reed photos was because a police officer had to create a "six pack" photo lineup from prior known arrest photos during a time the City was combatting a major residential burglary crime wave.<br><br>Kepley Deposition, 71:14-72:23; 188:14-189:13; 200:19-24. | 51.  Disputed.  Chief Kepley testified that "the reason [Plaintiff Reed] wasn't able to view a lineup of pictures, one of which was a suspect, for her to identify the suspect, [was] because the process just hadn't happened yet . . . the process had to take its course of a normal criminal follow up investigation."  Kepley Dep. at 200:21-24, 201:9-10.  Chief Kepley did not testify that the delay in creating a photo lineup was related to a residential burglary crime wave.  *See id.* |
| 52. Reed ultimately identified Defendant Johnston from the police six-pack and an arrest was made. | 52.  Disputed in Part.  The evidence cited does not support the fact stated.  The testimony cited concerns an arrest that was made and makes no mention |

Case No. 2:16-cv-02129-SJO (RAOx)

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| Kepley Deposition, 55:9-22. | of Plaintiff Reed's identification of an individual from a lineup.  Indeed, Chief Kepley testified that he "didn't recall the arrestee or the defendant's name."  Kepley Dep. at 55:18-19.  Plaintiff Reed testified that she circled a photo during the photo lineup of a person that she now knows to be Jalian Johnston, but she did not provide any names to the police at the time of the lineup, nor was she asked to do so.  10/25/16 Reed Dep. at 230:10-14. |
| 53. The Police Department sent a police report to the District Attorney, who declined to press criminal charges.<br><br>Kepley Deposition, 55:9-56:11; 201:11-24. | 53.  Disputed in Part.  Chief Kepley did not testify that the Police Department sent the District Attorney a police report.  Instead, he testified that the District Attorney declined to file charges because of the "totality of the information" that was presented to the district attorney.  Kepley Dep. at 56:4-11. |
| 54. Reed returned to Lunada Bay at least | 54.  Undisputed. |

-22-

Case No. 2:16-cv-02129-SJO (RAOx)

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| twice since February 13, 2016.<br><br>10/25/16 Reed Deposition, 247:22-248:4. | |
| 55. Reed claims to have been harassed on each visit, but does not recall particulars beyond being called a "bitch", being photographed and recorded, and told she should not be there and to leave. She did not recall whether she reported any of these incidents.<br><br>10/25/16 Reed Deposition, 248:5-8; 251:2-252:7; 259:7-18. | 55. Disputed in Part. Plaintiff Reed recalled, in addition to the conduct referenced by Defendants, the following additional particulars: she was told "you're coming here again, no one wants you here, what are you doing here. And, you know, I tell them, well, it's beautiful, public beach, and I'm allowed to be here. They would say offensive things to me. They would, you know, call me a bitch, and they would say stuff to me after I had passed – if I was with a friend, then they would, you know, say insults about me to my friend. They – yeah, they kept basically telling me that I shouldn't be there and that I'm not welcome. And I also remember talking to Charlie a few times and he approached me. I feel like maybe he felt bad that he didn't do anything |

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | regarding the beer incident to help, so maybe it was his way of saying sorry to kind of try to talk to me and explain who the Bay Boys are and how they work and – I don't know, so I've had various discussions with him. I had discussions with people in the fort and, you know, I also unfortunately experienced harassment in the way that I was told I'm not welcomed there." Reed Dep. at 251:2-252:7. |
| 56. Reed recalls that on at least one other subsequent visit she encountered no harassment.<br><br>10/25/16 Reed Deposition, 259:19-260:11. | 56.  Disputed in Part.  Plaintiffs do not dispute that Plaintiff Reed did not experience harassment, intimidation, or vandalism when she visited Lunada Bay on one occasion after February 13, 2016, however this fact is misleading because no local surfers were present when she visited Lunada Bay on this occasion.  Reed Dep. at 259:23-260. |
| 57. A representative of CPR submitted a declaration in support of Plaintiffs' | 57.  Disputed.  This is impermissible legal argument and is not a "fact." |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| motion for class certification; however, that declaration did not allege any harm specific to the declarant or CPR.<br><br>Declaration of Christopher D. Glos ("Glos Decl."), ¶ 9; Glos Decl., Exhibit H. | Further, the CPR representative, Mark Slatten, did describe harm suffered by CPR and/or its members.  For instance, he stated: "several of CPR's board members and/or volunteers . . . would have liked to have surfed, dived, taken photographs, hiked, or even just enjoyed nature and the beach at Lunada Bay but were afraid to because of the reputation that it had for localism." Slatten Dec., Dkt. No. 159-6 at ¶ 7.  He also stated that Dave Leuck (board member) and Ian Stenehjem both have never been able to surf at Lunada Bay because of localism.  *Id.* |
| 58. City Municipal Code section 9.16.030 prohibits blocking the access to any City beach.  It provides:<br><br>    A. No person shall stand, sit, lie, or congregate on any path, trail, or other way providing access to or from any beach in such a manner as to interfere with or impede the free flow of | 58. Undisputed. |

Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| travel along such accessway.<br><br>    B. Unless the prior consent of the city is first received, no person shall place, throw, leave, keep or maintain any object of any type upon any path, trail, or other way which provides access to or from any beach.<br><br>Declaration of Vickie Kroneberger ("Kroneberger Decl."), ¶¶ 1-4; Kroneberger Decl., Exhibit A. | |
| 59. City Municipal Code section 9.16.010 also requires surfers (and others) to engage in surfing with due regard to others, including but not limited to "accommodating other persons utilizing the beach and/or water to the extent feasible."<br><br>Kroneberger Decl., ¶¶ 1-4; Kroneberger Decl., Exhibit A. | 59. Undisputed. |
| 60. City police officers are directed to enforce the municipal code. | 60. Disputed. Chief Kepley testified that he "normally expect[ed]" officers enforce the municipal code, but never |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| Kepley Deposition, 143:13-18. | testified that officers are directed to do so.  Kepley Dep. 143:13-18. |
| 61. The City has an anti-harassment policy.<br><br>November 18, 2016 Deposition of Anton Dahlerbruch ("Dahlerbruch Deposition"), 45:11-16. | 61. Undisputed. |
| 62. The City takes allegations of intimidation very seriously and responds to it.<br><br>Dahlerbruch Deposition, 155:25-156:3. | 62.  Disputed.  Mr. Dahlerbruch stated that he "would defer to the Police Department for what violation of law took place and they would handle it." 11/18/16 Dahlerbruch Dep. at 155:21-22.  Further, Plaintiff Reed testified that she did complain of intimidation and harassment to the Police Department, but the police were not responsive to her complaint and were not helping her.  10/25/16 Reed Dep. at 239:15-240:4.  Plaintiff Spencer similarly testified that he told a police officer that he had been attacked in the water by a surfer and showed the |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | officer his injury, but the officer did not pursue it further.  Spencer Dep. at 126:6-23. |
| 63. Chief Kepley joined the Police Department in June 2014.<br><br>Kepley Deposition, 33:18-20. | 63.  Undisputed. |
| 64. Prior to employment Chief Kepley did not know anyone at the City or in the Police Department other than a former lieutenant, who had been deceased for a number of years, and he had never lived in the City.<br><br>Kepley Deposition, 19:8-20:1. | 64.  Disputed.  Chief Kepley testified that he knew Palos Verdes Estates Police Department's prior interim police chief, Dave Winneg, though they never worked together.  Kepley Dep. at 112:6-10. |
| 65. In or around May 2015, Chief Kepley became aware of a website published video that showed several reporters being harassed at Lunada Bay. He initiated a criminal investigation and assigned extra police patrols to patrol Lunada Bay.<br><br>Kepley Deposition, 29:22-32:14. | 65.  Disputed.  Chief Kepley testified that he did not know whether any effort was made by his department to identify the people who harassed the reporters. Kepley Dep. at 29:19-21.  Further, Chief Kepley testified that he looked into whether or not the reporters had committed a crime by recording a police dispatcher on video.  Kepley |

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | Dep. at 30:9-18.  Plaintiffs do not dispute that Chief Kepley testified that he assigned extra police patrols to Lunada Bay. |
| 66. Extra police patrols continued from approximately May 2015 and remained in place at the time of Plaintiffs Spencer and Reed alleged personal incidents at Lunada Bay.<br><br>Kepley Deposition, 32:4-14. | 66.  Disputed in Part.  Chief Kepley testified that extra patrols began after May 20, 2015 and were in place as of October 10, 2016.  Kepley Dep. at 32:9-14.  But Chief Kepley did not testify whether extra patrols were in effect on the specific dates of the incidents involving Plaintiffs at Lunada Bay. |
| 67. There have been more than 400 or 500 police patrols of Lunada Bay, whereby a police officer parks at the top of the bluff, exits a police vehicle and observes the surf below for any criminal activity, as well as to show a police presence and provide a deterrent.<br><br>Kepley Deposition, 97:14-24; 98:20- | 67.  Undisputed. |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
| --- | --- |
| 99:7; 109:21-110:12; 111:10-12. | |
| 68. In addition, police officers descended the bluff and patrolled the beach.<br><br>Kepley Deposition, 99:8-16. | 68. Disputed. Chief Kepley testified that "[i]t's more typical for them to stand at the top. They have gone down to the beach. I don't know how many times." Kepley Dep. at 99:14-16. Additionally, Cory Spencer testified that "while extra patrols at Lunada Bay are appreciated, officers standing along the bluffs cannot observe anything that goes on in the water, along the shore, or in the Rock Fort down below." Spencer Decl. Supp. Class Cert., Dkt. No. 159-4 at ¶ 25. Defendant N.F. testified that in the approximately 12 years he has surfed at Lunada Bay, he has seen police officers on the beach "about three" times. 7/6/17 Deposition of N.F. ("N.F. Dep.") at 30:24-31:12. Defendant Charlie Ferrara testified that "through all [his] years" surfing at Lunada Bay (since October 16, 1994), he has seen police officers at the beach approximately six or seven times. 7/7/17 Deposition of Charlie Ferrara |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | ("Charlie Ferrara Dep.") at 63:12-64:5, 23:22-24. |
| 69. Chief Kepley educated himself on the rumors and claims that localism at Lunada Bay had existed for as many as 50 years.<br><br>Kepley Deposition, 51:6-52:5. | 69.  Undisputed. |
| 70. The City spent a significant amount of time before, during and after the video posting to understand localism, including collecting information from various sources and holding meetings.<br><br>Dahlerbruch Deposition, 69:22-70:7. | 70.  Disputed.  Mr. Dahlerbruch does not testify when, in relation to the Guardian's video posting, the City spent a "significant amount of time" "trying to understand" localism. Rather, he testifies the City's efforts in this regard occurred "before, during, and after" the time the City's website was updated.  Dahlerbruch Dep. at 69:25-70:6 ("that may have been before, during or after the website was updated."). |
| 71. Chief Kepley learned that although the Police Department had worked for | 71.  Disputed.  The evidence cited does not establish that the Police |

-31-

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| years to address and combat localism, the public perception was that it was tolerated.<br><br>Kepley Deposition, 52:6-53:21. | Department has worked for years to address localism; rather, the evidence merely establishes that to be Chief Kepley's perception or opinion based on hearsay.  Kepley Dep. at 53:11-54:6.  Further, Chief Kepley testified that the fact that a video showed bullies confronting a perceived outsider at Lunada Bay demonstrates that "more work probably needs to be done." Kepley Dep. at 69:9-17.  Chief Kepley also wrote in an online post to the Pals Verdes Estates Community that he "acknowledge[s] we have work to do here with these bullies, and this has been going on intermittently for probably fifty years."  Kepley Dep., Ex. 4 at Bates No. CITY 1083.  He also stated that "[w]hile this police department has been criticized for not taking [surfing localism] seriously, we have over the years done much to address the problem before I took over as Chief.  Likely not enough though." *Id.* |

Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES
ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | |
| 72. On May 15, 2015, Chief Kepley sent a memorandum to the City Mayor and Council regarding localism in Lunada Bay.<br><br>Kepley Deposition, 210:2-17. | 72.  Undisputed. |
| 73. Chief Kepley identified measures taken by the PVE Police Department in the preceding past several years, including:  (1) extra patrols with uniformed officers on high surf days; (2) utilizing ATVs to patrol the cliff's edge; (3) having officers dress in plain clothes and drive unmarked vehicles to observe and interact with people along the cliffs and bluffs; (4) undercover operations; and (5) boat patrols in Lunada Bay.<br><br>Kepley Deposition, 210:2-212:3; Kepley Deposition, Exhibit 25. | 73.  Disputed in Part.  Chief Kepley testified, with respect to the measures identified, that none of the measures were currently employed by his police department to address localism. Kepley Dep. at 211:6-14. Additionally, the City's boat was declared "unseaworthy due to age and condition" shortly after June of 2014. *Id.* at 38:1-4. |
| 74. Chief Kepley spoke about creating a police presence on the water by replacing the City's old ocean patrol | 74.  Disputed in Part.  Chief Kepley testified that, while he believes a boat would be helpful to the City's policing |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| boat and establishing Parkland Rangers as another resource to patrol and maintain a visible presence.<br><br>Kepley Deposition, 210:2-212:3 & Exh. 25. | efforts, "the cost of the boat is cost prohibitive at this point in time." Kepley Dep. at 39:18-21. |
| 75. Although Chief Kepley had not been employed at the City until June 2014, he was in 2015 and intended to change the perception, address localism, protect the public and ensure access to Lunada Bay remained open and free of harassment.<br><br>Kepley Deposition, 51:6-53:21. | 75. Disputed. Chief Kepley's initial response to the Guardian video was to address perception by stating publicly that he hoped to make an arrest and an example of anyone who behaved criminally at Lunada Bay. Kepley Dep. at 54:8-59:1. But significant community backlash followed Chief Kepley's comments, and so in response, Chief Kepley sought to address the perception that the police department was "a little bit off balance, maybe the perception was we are heavy handed or too eager to make an arrest for self[-]promotion reasons." *Id.* at 88:14-89:3. So Chief Kepley stated in a periodical interview that "threatening arrests in Lunada Bay would be inflammatory to the surfers |

-34-

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES
ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | and would cause a rift.  And you can't have that right now." *Id.* at 90:14-25. Chief Kepley wanted to focus on building relationships with the surfers instead.  *Id.* at 93:2-9, 86:4-11.  Chief Kepley was motivated in part to address the community backlash and tone down his initial rhetoric after a conversation with the City Manager. *Id.* at 91:19-92:2.  The Palos Verdes Police Department never announced any arrests or publicized any police action with respect to Lunada Bay localism.  Kepley Dep. at 61:13-15. |
| 76. Prior to Plaintiffs' incidents, Chief Kepley directed the police captains to actively engage the surfers to express the City's position that Lunada Bay was a public beach, everyone was expected to be civil, and the City would not tolerate the type of harassment seen in the published video.<br><br>Kepley Deposition, 33:25-34:13. | 76.  Disputed in Part.  Chief Kepley further stated that, "at the same time, we do not want to alienate many of our long-term residents," meaning he did not want "anyone, particularly our residents" to view the police as being "so overbearing and so aggressive." Kepley Dep. at 34:15-20 & Exh. 2. |

Case No. 2:16-cv-02129-SJO (RAOx)

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| 77. Prior to Plaintiffs' incidents, the Police Department began to make a number of regular contacts with surfers at Lunada Bay.<br><br>Kepley Deposition, 35:10-37:13. | 77. Disputed. Chief Kepley was unsure whether anyone from the Palos Verdes Estates Police Department made contact with local surfers. Kepley Dep. at 35:10-13 (Q "So did anyone from the Palos Verdes Estates Police Department make contact with local surfers? A "I believe they did."). |
| 78. Prior to Plaintiffs' incidents, Chief Kepley made a public announcement that he hoped to make an arrest of one of the harassing individuals in the video.<br><br>Kepley Deposition, 54:8-55:2. | 78. Undisputed. |
| 79. Chief Kepley wanted the publicity from an arrest to change perceptions and show the public that improper behavior at Lunada Bay would not be tolerated.<br><br>Kepley Deposition, 58:22-60:1. | 79. Disputed. Initially, Chief Kepley wanted to address perception by stating publicly that he hoped to make an arrest and an example of anyone who behaved criminally at Lunada Bay. Kepley Dep. at 54:8-59:1. But significant community backlash followed Chief Kepley's comments, and Chief Kepley was concerned that the police department appeared "a little |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | bit off balance . . . [that] we are heavy handed or too eager to make an arrest for self[-]promotion reasons." *Id.* at 88:14-89:3.  As a result, Chief Kepley stated in a periodical interview that "threatening arrests in Lunada Bay would be inflammatory to the surfers and would cause a rift.  And you can't have that right now." *Id.* at 90:14-25.  Chief Kepley wanted to focus on building relationships with the surfers instead. *Id.* at 93:2-9, 86:4-11.  The Palos Verdes Police Department never announced any arrests or publicized any police action with respect to Lunada Bay localism.  Kepley Dep. at 61:13-15. |
| 80. From May 2015 until at least the date of Chief Kepley's October 10, 2016 Deposition, he believes he has communicated in "101 conversations" with Police Department personnel that the City did not tolerate localism. | 80.  Disputed.  Chief Kepley testified that he believes he has communicated in "101 conversations" with staff and department individuals that localism is not *condoned* by his department.  Chief Kepley made no mention of localism not being "tolerated" by the City. |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| Kepley Deposition, 48:16-49:8. | Kepley Dep. at 48:16-49:5. |
| 81. Chief Kepley reached out to other law enforcement agencies in other beach cities to discuss best practices and to collaborate on surf localism challenges.<br><br>Kepley Deposition, 203:3-12. | 81. Disputed in Part. Although Chief Kepley reached out to other law enforcement agencies to collaborate on localism challenges, the other chiefs of police did not "have any information for me to consider best practices" because they "did not believe they had a localism problem in their jurisdictions." Kepley Dep. at 203:3-20. |
| 82. Chief Kepley put together an undercover operation with assistance from a different law enforcement agency, but it was compromised when surfers found out about it.<br><br>Kepley Deposition, 40:3-43:7. | 82. Undisputed. |
| 83. The City Manager reached out to other city managers on how they deal with issues of public access to beaches.<br><br>Dahlerbruch Deposition, 260:7-11. | 83. Disputed. Mr. Dahlerbruch did not testify that he reached out to more than one City Manager. He testified that he talked to a single City Manager, for the City of Malibu, about Lunada Bay's patio structure but Malibu did not have |

-38-

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
|  | a similar public access issue. 11/18/17 Dahlerbruch Dep. at 260:9-13. Further, Mr. Dahlerbruch testified that the City has not "investigated with other cities what signage they have" in terms of warnings to surfers to respect people or share waves, for instance. 11/18/17 Dahlerbruch Dep. at 259:1-14. |
| 84. The City conducted a "listening tour" to understand the localism issues and to address them.  One of the meetings requested by the City was with the Surf Rider Foundation to understand their perspective on the localism issues and to determine how to work to address the issue.<br><br>Dahlerbruch Deposition, 70:8-73:7; 85:9-15; 91:19-22. | 84.  Disputed.  Mr. Dahlerbruch did meet with Surf Rider Foundation, but it was to understand localism, not to address it.  11/18/16 Dahlerbruch Dep. at 70:8-10.  Additionally, Mr. Dahlerbruch testified that he did not learn much from this meeting. *Id.* at 72:24-73:9.  He also stated that he asked if Surf Rider Foundation would send members to surf at Lunada Bay to "experience it for themselves, to draw their own conclusion," but they refused because they did not want to put their members in harm's way. *Id.* at 73:12-24. |

13644581.2

| | Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|---|
| | 85. The City requested and met with the Coastal Commission regarding the structures at the foot of the Lunada Bay bluff.<br><br>Dahlerbruch Deposition, 74:16-19; 94:19-95:5; 96:10-13. | 85.  Undisputed. |
| | 86. The Coastal Commission informed the City that it could permit or remove the structures.<br><br>Dahlerbruch Deposition, 97:2-7; 106:7-10. | 86.  Disputed in Part.  The Coastal Commission informed the City that they *had to* either obtain permits to maintain the structure or remove it. Plaintiffs dispute this fact to the extent Defendants imply that doing nothing with respect to the structure was an option.  11/18/16 Dahlerbruch Dep. at 97:2-7. |
| | 87. The City followed up with both the Surf Rider Foundation and the Coastal Commission.<br><br>Dahlerbruch Deposition, 85:9-15; 96:10-13. | 87.  Disputed in Part.  Mr. Dahlerbruch testified that the City followed up with the Surf Rider Foundation, but only stated that he believed his staff had telephone calls with the Coastal Commission after the initial meeting. 11/18/16 Dahlerbruch Dep. at 85:9-11; |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
|  | 96:10-13.  Thus Plaintiffs dispute this statement to the extent it implies that the City reached out to the Coastal Commission on its own initiative following its meeting. |
| 88. The City Manager visited Lunada Bay on a number of occasions and met with surfers there to understand the issues.<br><br>Dahlerbruch Deposition, 72:4-23. | 88.  Disputed in Part.  Mr. Dahlerbruch testified only that he has walked down to Lunada Bay but did not specify how many times he visited or when these visits occurred.  11/18/16 Dahlerbruch Dep. at 72:4-19. |
| 89. The City met with the Lunada Bay Homeowner's Association.<br><br>Dahlerbruch Deposition, 70:8-17; 124:14-22. | 89.  Undisputed. |
| 90. The City initiated contact with Heal the Bay as part of its "listening tour" to understand perspectives, perceptions, and history on the issues.<br><br>Dahlerbruch Deposition, 112:24-114:11. | 90.  Undisputed. |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| 91.Chief Kepley attended many, if not all these meetings.<br><br>Dahlerbruch Deposition, 93:18-94:13; 97:23-98:8; 113:22-25. | 91.  Disputed in Part. Mr. Dahlerbruch testified that the Police Chief attended only the meetings with the Coastal Commission and a meeting with Heal the Bay.  Dahlerbruch Dep. 61:25-70:7; 260:22-261:10. |
| 92.Prior to Plaintiffs' incidents, the City had started an educational campaign about localism.<br><br>Dahlerbruch Deposition, 61:25-70:7; 260:22-261:10. | 92.  Disputed.  Mr. Dahlerbruch testified only that the website was updated to add a statement related to localism.  11/18/16 Dahlerbruch Dep. at 63:23.  The evidence cited by Defendants does not establish when the statement on localism was placed on the City's website, nor does it discuss an "educational campaign," either directly or indirectly. |
| 93.Hundreds of cardboard fliers encouraging surfers or others to feel comfortable and to report crimes or incidents that may have occurred in surfing areas were distributed by police officers at Lunada Bay and around the | 93. Disputed in Part.  Plaintiffs dispute this statement only to the extent it implies that these cardboard fliers were distributed outside of the Palos Verdes Estates community.  *See* Kepley Dep. at 100:19-20 ("There was no effort to |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| City.<br><br>Dahlerbruch Deposition, 99:10-17; Kepley Deposition, 97:24-98:2; 99:17-100:15. | distribute them outside of the community."). |
| 94. The City parked a patrol car in Lunada Bay with a LED display message in the rear window requesting anyone with information, or anyone victimized, or otherwise encountering an incident, to report it.<br><br>Kepley Deposition, 98:3-13. | 94. Disputed in Part.  Chief Kepley testified that "[w]e have received feedback that [the LED sign is] a little difficult to read.  So we don't rely on it as much as we once did."  Kepley Dep. at 102:2-4. |
| 95. The City posted content on its website stating the City does not tolerate localism.<br><br>Dahlerbruch Deposition, 61:25-70:7. | 95.  Undisputed. |
| 96. The City website includes a directory and permits individuals to send e-mails to anyone at the City that that individual believes should receive their message or complaint.<br><br>Dahlerbruch Deposition, 260:22-261:10. | 96.  Undisputed. |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| 97. If individuals call the City with complaints, the City receptionist will help in determining where to direct a complaint.<br><br>Dahlerbruch Deposition, 260:22-261:10. | 97. Undisputed. |
| 98. On or about December 31, 2015, Chief Kepley posted a message on the social media website Next Door about the City's efforts to address localism.<br><br>Kepley Deposition, 62:2-21; Kepley Deposition, Exhibit 4. | 98. Undisputed. |
| 99. On or about February 8, 2016, the City developed and later posted a statement on its website about localism, the Police Department's investigation and evaluation of the situation and the potential for increased police patrols at the beach areas.<br><br>Kepley Deposition, 95:23-97:13; 112:14-113:13; Kepley Deposition, Exhibits 11 and 13. | 99. Disputed in Part. City Manager Anton Dahlerbruch testified that it is possible that a public relations firm retained by the City, the Wolcott Company, developed the statement about localism that was later posted to the City's website. Dahlerbruch Dep. at 69:6-12. |
| 100.   Plaintiff Spencer and Reed's | 100.   Disputed. Chief Kepley testified |

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| alleged incidents discussed under the factual background above took place during a time the City was experiencing a substantial increase in residential burglaries by organized gangs or gang-affiliated criminal group from south Los Angeles.<br><br>Kepley Deposition, 71:14-72:23; 188:14-189:13. | that the alleged "crime spree" took place from mid-October 2015 to December 2015. Kepley Dep. at 71: 17-14. Both Plaintiff Spencer and Plaintiff Reed testified they were harassed and assaulted outside of this brief three-month timeframe. Spencer Dep. at 137:16-138:5, 142:24-144:19, 170:9-24, 173:5-174:14; Reed Dep. at 101:22-103:18, 119:25-121:1, 129:18-23, 130:8-14, 130:17-25, 134:5-24. |
| 101.   It is typical for the City to have zero to three burglaries per month, but in December 2015 the City experienced 20 to 25 burglaries.<br><br>Kepley Deposition, 71:14-72:23. | 101.    Undisputed. |
| 102.   A number of residents complained about the amount of law enforcement resources allocated toward patrolling Lunada Bay, as well as the tough stance Chief Kepley took against local surfers harassing or intimidating other surfers. | 102.   Disputed in Part.  Residents complained about Chief Kepley's *statements* with respect to localism. Kepley Dep. at 83:5-8 ("some residents . . . expressed disagreement with the way in which I was publicly addressing the issue at hand.")  There is no |

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| Kepley Deposition, 76:17-84:16. | evidence that residents complained because Chief Kepley or the police department actually was tough on local surfers who harassed and intimidated others.  Indeed, Chief Kepley stated that the police department never did publicize an arrest of a local surfer.  Kepley Dep. at 61:13-15. |
| 103.   Chief Kepley opined that given so few incidents at Lunada Bay and the burglary spree in the City that the Police Department efforts were appropriate and reasonable in scope and size.<br><br>Kepley Deposition, 114:21-115:9; 187:13-189:13. | 103.   Undisputed |
| 104.   The Police Department has 25 full-time sworn police officers.<br><br>Kepley Deposition, 121:5-7. | 104.   Undisputed. |
| 105.   In October 2016 the City had six reserve police officers.<br><br>Kepley Deposition, 121:8-13. | 105.   Undisputed. |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| 106.   There are 12 non-sworn officers (or police service officers).<br><br>Kepley Deposition, 121:14-22. | 106.   Undisputed. |

DATED:  July 31, 2017                     HANSON BRIDGETT LLP


                                    By:     /s/ *Kurt A. Franklin*

                                         KURT A. FRANKLIN
                                         LISA M. POOLEY
                                         SAMANTHA D. WOLFF
                                         TYSON M. SHOWER
                                         LANDON D. BAILEY
                                         Attorneys for Plaintiffs
                                         CORY SPENCER, DIANA MILENA
                                         REED, and COASTAL PROTECTION
                                         RANGERS, INC.

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644581.2