HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
LISA M. POOLEY, SBN 168737
lpooley@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:    (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:   (916) 442-3333
Facsimile:    (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone:   (310) 378-8533
Facsimile:    (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>Plaintiffs, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANTS CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S EVIDENCE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |

|  | |
|---|---|
| v.<br><br>LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N. F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10,<br><br>        Defendants. | Judge:      Hon. S. James Otero<br>Date:       September 5, 2017<br>Time:       10:00 a.m.<br>Crtrm.:    10C<br><br><br>Complaint Filed:   March 29, 2016<br>Trial Date:       November 7, 2017 |

Plaintiffs Cory Spencer, Diana Milena Reed and Coastal Protection Rangers, Inc. (collectively "Plaintiffs") object to the following evidence presented by Defendants City of Palos Verdes Estates and Chief of Police Jeff Kepley ("City Defendants") in connection with the City Defendants' Motion for Summary Judgment or, in the Alternative, Summary Adjudication set for hearing on September 5, 2017, before this Court.

**A.** **Objections To Exhibit C (Deposition of Cory Spencer) to The Declaration Of Christopher D. Glos In Support Of City Of Palos Verdes Estates And Chief Of Police Jeff Kepley's Motion For Summary Judgment Or, In The Alternative, Summary Adjudication And Exhibits Attached Thereto**

| Evidence: | Objections: |
|---|---|
| 1.  Q:  Okay. And the first sentence says (as read):  "Sir, first of all, I'd like to thank you and your department for the response in extra patrols down at | 1.  This evidence is inadmissible because Mr. Spencer has not stated facts to establish that he has personal knowledge of whether the police department |

13654393.4

| Evidence: | Objections: |
|---|---|
| Lunada Bay." | provided extra police patrols.  FRE 602. |
| A:  Correct. | |
| Q:  All right. Did you feel thankful for | |
| extra patrols down at Lunada Bay? | |
| A:  Of course. | |
| | |
| Spencer Depo. 159:4-14. | |
| 2.  Q:  All right. So, each time you E-mailed them, is it correct that you witnessed extra patrols being provided?<br>A:  Yes. In my opinion, that's what they were. The officers were there because, hopefully, in response to my E-mail.<br><br>Spencer Depo. 160:7-12. | 2.  This evidence is inadmissible because Mr. Spencer has not stated facts to establish that he has personal knowledge of whether the police department provided extra police patrols.  FRE 602. |
| 3.  Q:  You would agree that extra patrols were provided in January and February of 2016 when you asked for them; right?<br>A:  Wholeheartedly agree.<br>Mr. Franklin:  Vague and ambiguous; calls for speculation; move to strike.<br>Ms. Hewitt:  Did you move to strike, | 3.  This evidence is inadmissible because Mr. Spencer has not stated facts to establish that he has personal knowledge of whether the police department provided extra police patrols.  FRE 602. To the extent his testimony is based on what others told him, it is based on inadmissible hearsay.  FRE 802. |

13654393.4

| Evidence: | Objections: |
|---|---|
| counsel? | |
| Mr. Franklin:  I did. | |
| Ms. Hewitt:  On what basis? | |
| Mr. Franklin:  Lack of foundation. It was vague and ambiguous and calls for speculation. | |
| Ms. Hewitt:  Okay. | |
| Q:  So is it true that you believe that extra patrols were provided at the January 2016 visit to Lunada Bay? | |
| Mr. Franklin:  Same objection. | |
| A:  I believe extra patrol was sent down there, yes. | |
| Q:  All right. Same question for the February 2016 visit. | |
| Mr. Franklin:  Same objection. | |
| A:  Yes. | |
| | |
| Spencer Depo. 193:20-194;17. | |

**B.    Objections To Exhibit E (Deposition of Jeff Kepley) To Declaration Of Christopher D. Glos In Support Of City Of Palos Verdes Estates And Chief Of Police Jeff Kepley's Motion For Summary Judgment Or, In The Alternative, Summary Adjudication And Exhibits Attached Thereto**

| Evidence: | Objections: |
|---|---|
| 4.  Q:  Okay. So did anyone from the Palos Verdes Estates Police Department | 4.  This testimony is inadmissible because Mr. Kepley does not state facts |

| Evidence: | Objections: |
|---|---|
| make contact with local surfers? | demonstrating that he has personal |
| A:  I believe they did. | knowledge of the Police Department's |
| Q:  Do you know who made that | contacts with local surfers.  FRE 602.  To |
| contact? | the extent Mr. Kepley is basing his |
| A:  No. Because it wasn't a singular | testimony on what others told him, his |
| contact. It was an ongoing effort. I | testimony is based on inadmissible |
| know the captains were active. Many | hearsay.  FRE 802. |
| members of the staff were engaged | |
| down in Lunada Bay and contacted as | |
| many people as we could. I know it | |
| wasn't just one contact, but many. | |
| Q:  When did this contact begin? | |
| A:  Probably shortly following this | |
| email. | |
| Q:  Was there not regular contact with | |
| local surfers before that? | |
| A:  I don't know. I would characterize it | |
| as there was contact. But the degree to | |
| which it was considered regular, I just | |
| don't know. | |
| Q:  Where did the contact generally | |
| occur? Was it at the beach or elsewhere | |
| in the community? | |
| A:  That, I don't know. Beyond, I know | |
| that efforts were made to contact suffers | |
| down there that were surfing. And when | |

| Evidence: | Objections: |
|---|---|
| I say down there, I'm referring to Lunada Bay.<br>Q:  Sure. Do you know what the content of the conversation was? In other words, did you have any discussions with the people in your department who were relaying this message to the surfers before they relayed the message? That's a yes or no question. Did you or did you not?<br>A:  Can you repeat that, please?<br>Q:  Sure. Do you know what the content of the conversation was between the officers and the local surfers?<br>A:  No.<br>Q:  Did you have any conversations with the officers before they engaged with the local surfers?<br>A:  Not all of the patrol officers. But the captains.<br>Q:  And what were those conversations? What did you—I'm sorry, let me start over. Did you give them any guidance as to what the conversations should be?<br>A:  I relayed my expectations, that I expect them to have their staff engage | |

| Evidence: | Objections: |
|---|---|
| and address this. I didn't go into extreme level of detail, because they are division commanders. They know what's to take place. All I did was give them direction.<br><br>Q:  What was the direction?<br><br>A:  To have officers proactively engage in this issue and attempt to resolve it by proactively engaging with the surfers, the community, being present, and extra patrols et cetera.<br><br><br>Kepley Depo. 35:10-37:13. | |
| 5.  Q:  So were you unaware of this history before you became chief?<br>A:  That's correct.<br>Q:  So you believe that a certain level of localism was tolerated before you become Chief?<br>A:  I think my understanding of localism, as we have established by definition, I believe occurs everywhere around the world where there is surf and surfing.  And I believe that also occurred in Lunada Bay as part of this | 5.  This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge of what actions the Police Department took to combat localism prior to him being employed by the City. FRE 602.  To the extent Mr. Kepley is basing his testimony on what others told him, his testimony is based on inadmissible hearsay.  FRE 802. |

| Evidence: | Objections: |
|---|---|
| surfing culture. And so that's what I was trying to address. Q: Do you think it was tolerated by previous chiefs and previous administration, city council and the mayor? A: No, I had heard that there was that perception. But I was aware of the police department for many years working very proactively to address and combat localism and ensure safety down in Lunada Bay… Q: But you thought the police had done something about it in the past? A: well, I knew they had. Because I had, you know, seen files, and had talked to staff and learned as much as I could after this video came out. And so I knew the police department had done some very good work in the past on this. Q: And you said you spoke with community members and others in the department to learn the history about the issue of localism at Lunada Bay; is that right? | |

| Evidence: | Objections: |
|---|---|
| A:  Yes.<br><br>Kepley Depo. 52:6-53:1; 53:11-21. | |
| 6.  Q:  Do you know if the arrest resulted in a conviction?<br>A:  It did not.<br>Q:  Why was that?<br>A:  The district attorney refused or declined to file charges or prosecute the case.<br>Q:  Do you know why the district attorney declined?<br>A:  It's my understanding that the totality of the information that was presented to the district attorney included some witness statements that refuted the victim's account of the way in which incidents occurred on that particular day.<br><br>Kepley Depo. 55:25-56:11. | 6.  This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge of why the arrestee was not convicted of a crime.  FRE 602.  To the extent Mr. Kepley is basing his testimony on a briefing he received from other officers or the District Attorney, his testimony is based on inadmissible hearsay.  FRE 802. |
| 7.  Q:  Was anything else done in addition to occasional police patrols to ensure the safety of Lunada Bay?<br>A:  Yes, but I don't want to minimize | 7.  This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge of how many times police |

PLTFS.' OBJECTIONS TO CITY DEFTS.' EVIDENCE ISO MSJ OR, IN THE ALT., MSA

13654393.4

| Evidence: | Objections: |
|---|---|
| the benefit or value of those extra patrols.  Because we have, over 500 times, a police officer has parked and stood over and looked down the ledge to the surfers to provide oversight and police the area, if you will. And so we did that, and continue to do that. And not just in Lunada Bay, but all of our coastline surf areas.  We also produced a cardboard flier, if you will, that encouraged surfers or others to feel comfortable and report crimes or incidents that may have occurred in the surfing areas.<br><br>Kepley Depo. 97:14-98:2 | officers have parked and stood over and looked down the ledge to the surfers to provide oversight, in what locations they allegedly do that, and what fliers these officers may or may not have handed out. FRE 602. |
| 8.  Q:  was there anything else? A:  We parked a police car in the area of Lunada Bay with the LED display message in the rear window that displayed a similar localism message requesting anyone with information, or had been victimized, or otherwise had incidents occur to them, we encouraged them to report it to the police | 8.  This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge a police car being parked in Lunada Bay or what complaints the department has received historically. FRE 602. |

| **Evidence:** | **Objections:** |
|---|---|
| department. Again, we historically have had very few reports. Here, these things happen. So we are trying to encourage those to be reported so that we can investigate them and ensure public safety.<br><br>Kepley Depo. 98:3-13. | |
| 9. Q: I'm just following up. When you say it happened about 500 times where the police officers have gone out there and pared on the ledge and patrolled the bluffs. I'm wondering, you said 500 times, what's the time frame for that. A: That would be since The Guardian video, whatever date that was, and this became an identified issue for us today. And further, with respect to time frame, those occurred throughout each day. Not once per day. Sometimes, multiple times per day. Obviously during daytime hours, when there is some benefit to look over the ledge and see who might be down below. It's not lighted at night. | 9. This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge of what his officers were doing outside his presence or what they were doing to patrol Lunada Bay, let alone how many times they did so or the timeframe for doing so. FRE 602. |

13654393.4

| Evidence: | Objections: |
|---|---|
| Kepley Depo. 98:20-99:7. | |
| 10. Q:  Do you know if officers went down to the beach on any of those occasions?<br>A:  Yes.<br>Q:  Do you know, approximately, how many times they would do that? Was it more typical for them to just stand at the top? Or would they go down every time?<br>A:  It's more typical for them to stand at the top. They have gone down to the beach. I don't know how many times.<br><br>Kepley Depo. 99:8-16. | 10. This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge of what his officers were doing outside his presence or what they were doing to patrol Lunada Bay, let alone how many times they did so.  FRE 602.  This testimony is also based on inadmissible hearsay.  FRE 802. |
| 11. Q:  Now you said that you also had officers distributing cards to encourage surfers to report crimes. When did that happen?<br>A:  About the same time that this became---we became aware of as a result of The Guardian video, we formulated somewhat of a response | 11. This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge of what the officers did with the fliers.  FRE 602.  Furthermore, this testimony is also based on inadmissible hearsay.  FRE 802. |

Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' OBJECTIONS TO CITY DEFTS.' EVIDENCE ISO MSJ OR, IN THE ALT., MSA

13654393.4

| Evidence: | Objections: |
|---|---|
| plan. And that was included in that response plan.<br><br>Q:  Do you know how many cards were distributed?<br><br>A:  Hundreds. But I don't know how many.<br><br>Q:  Do you know on how many occasions they were distributed?<br><br>A:  I do not. Because they were distributed to the police officers to pass out to folks in the community when they were on their patrols and doing their bay checks. So I don't. I never received a report of how many per day or per month were passed out.<br><br>Kepley Depo. 99:17-100:7. | |
| 12.Q:  You also referenced results of the patrol checks as part of your belief that perhaps there is media hype to this issue. What were the results of the patrol checks that led you to believe this.<br><br>A:  Well, at some point in time, fairly recently, within the last six months or | 12.This testimony is inadmissible because it is based on inadmissible hearsay in that Chief Kepley is discussing a report that he reviewed.  FRE 802.  This testimony is also inadmissible because an original writing – here, the report referenced by Chief Kepley – is required in order to prove its content.  FRE 1002. |

13654393.4

| Evidence: | Objections: |
|---|---|
| so, I received a report that our patrol officers had checked the bay 400 times and have not had any, during those incidents, had not had one incident where they observed suspicious or criminal activity, or had anything reported to them.<br><br>Kepley Depo. 109:21-110:12. | |
| 13. Q:  Has the city made any other efforts, aside from posting this message, handing out the cards that we discussed, to distribute the message regarding localism and how it won't be tolerated at Palos Verdes Estates?<br>A:  And the LED message board.<br>Q:  Yes. Thank you.<br>A:  There may be other components of our public outreach campaign. Off the top of my head, that seems to be most of them. And I think, to me, it's commensurate with the issue at hand. Meaning that, with so few incidents occurring down there, and with the burglary spree, and everything else we | 13. This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge of the facts on which he bases his opinion.  FRE 602.  As a result, his testimony in the form of an opinion is inadmissible.  FRE 701. |

| Evidence: | Objections: |
|---|---|
| were doing, I think our efforts were appropriate and reasonable in scope and size.<br><br>Kepley Depo. 114:21-115:9. | |
| 14. Q: And have you given any direction, to any officers, regarding enforcement of this ordinance as it relates to any alcohol consumption on that structure?<br>A: I don't recall giving any, like additional direction, above and beyond what we normally expect them to do, which is enforce the municipal code.<br><br>Kepley Depo. 143: 13-18. | 14. This testimony is inadmissible because it lacks foundation. Chief Kepley does not state facts demonstrating that he has personal knowledge of the fact that his expectation with respect to enforcement of the municipal code was ever communicated to any police officers. FRE 602. |
| 15. Q: To your knowledge the department doesn't keep any sort of database or file on known or any known suspects who are members of the bay boys?<br>A: that's correct.<br><br>Kepley Depo. 153:10-13. | 15. This testimony is inadmissible to the extent Chief Kepley is basing his testimony on a briefing he received from other officers, and is therefore considered inadmissible hearsay. FRE 802. |

13654393.4

| Evidence: | Objections: |
|---|---|
|  |  |
| 16. Q:  Now, at the third paragraph, on that first page, you acknowledge that the police department has dealt with localism in the early '90s.  And you described the complaints—the types of complaints that were received. Looking at this paragraph, and the type of complaints, do those seem similar to the complaints that have been received more recently from your department? A:  Yes and no. I made reference to letting the sir out of the tires. That wasn't a recent complaint. That was in the past. But stealing property, no, but we did have property damage. So similar, but not quite the same. Q:  And you outline measures that the department has taken to address localism in Lunada Bay, including extra patrol on high surf days, using ATVs, having officers dress in plain clothes and interact with cliffs and bluffs, undercover operations and boat patrols. Are any of these measures currently employed by your department to | 16. This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge of what actions the Police Department took to combat localism prior to him being employed by the City. FRE 602.   To the extent Mr. Kepley is basing his testimony on what others told him, his testimony is based on inadmissible hearsay.  FRE 802. |

| Evidence: | Objections: |
|---|---|
| address localism?<br><br>A:  No. These measures were in that period of time.<br><br><br>Kepley Depo. 210:18-211:10. | |
| 17. Kepley Deposition, Exhibit 4. | 17. This testimony is inadmissible to the extent Chief Kepley discusses matters for which he lacks personal knowledge.  For instance, page 2 of this exhibit (Bates CITY 1083), Chief Kepley lists the steps that have been purportedly taken to improve safety, though he does not state facts demonstrating that he has personal knowledge of the fact that these steps have indeed been taken. *See* Kepley Depo. 62:2-21, Exh. 4.  Furthermore, the exhibit itself is inadmissible hearsay and contains inadmissible hearsay.  FRE 802. |
| 18. Kepley Deposition, Exhibit 11. | 18. This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge of the statements included in Exhibit 11.  Furthermore, the exhibit itself is inadmissible hearsay and contains inadmissible hearsay.  FRE 802. |

13654393.4

| Evidence: | Objections: |
|---|---|
| 19.Kepley Deposition, Exhibit 13. | 19.This testimony is inadmissible because Mr. Kepley does not state facts demonstrating that he has personal knowledge of the statements included in Exhibit 13.  Furthermore, the exhibit itself is inadmissible hearsay and contains inadmissible hearsay.  FRE 802. |

**C.** **Objections Exhibit F (Deposition of Anton Dahlerbruch) To Declaration Of Christopher D. Glos In Support Of City Of Palos Verdes Estates And Chief Of Police Jeff Kepley's Motion For Summary Judgment Or, In The Alternative, Summary Adjudication And Exhibits Attached Thereto**

| Evidence: | Objections: |
|---|---|
| 20. A:  We spent a significant amount of time trying to understand what the situation was and collected and had meetings and collected information, collected verbal information from people to have an understanding of what the concerns are. And I don't, and part of that may have been before, during or after the website was updated. And I just don't remember the dates.<br><br>Dahlerbruch Depo. (11/18/16) 69:22-70:7. | 20.This testimony is inadmissible because Mr. Dahlerbruch does not state facts demonstrating that he has personal knowledge of what the City did with respect to localism.  To the extent Mr. Dahlerbruch bases his testimony on a briefing he received from others, his testimony is inadmissible hearsay. FRE 802. |

| Evidence: | Objections: |
|---|---|
| 21. Q: And prior to trying to understand the issue with Surf Rider, the Coastal Commission, Heal The Bay, and the Lunada Bay Homeowner's Association, have you done any other independent investigation in terms of the issue of localism?<br><br>A: I have walked down there.<br><br>Q: When did you walk down there after this in terms of localism being an issue, when did you walk down there?<br><br>A: I don't have the dates.<br><br>Q: Was it this year of 2016?<br><br>A: I've been down there in 2016, yes.<br><br>Q: Would those be on your calendar, too, in terms of walking down there?<br><br>A: I don't know that they would be.<br><br>Q: In terms of trying to understand the issue, did you go down and talk to any surfers down there or beach goers?<br><br>A: Yeah, I have.<br><br>Q: Who did you talk to?<br><br>A: I don't remember their names.<br><br>Q: Do you remember -- you don't | 21. This testimony is inadmissible to the extent it purports to offer for the truth of the matter asserted hearsay statements made by local beachgoers.  FRE 802. |

13654393.4

| Evidence: | Objections: |
|---|---|
| remember any of their names? | |
| A: No. | |
| Q: Did you take any notes of who you talked to? | |
| A: No. | |
| Q: And what was the discussion that you had with them? | |
| A: Just learning about or hearing about their perception of what's going on. | |
| Q: And what was their perception? | |
| A: Their perceptions were that the space down at the coastline is available for everybody. | |
| Q: Anything else? | |
| A: No. | |
| | |
| Dahlerbruch Depo. (11/18/16) 71:14-72:23. | |
| | |
| 22. Q: And what was the discussion that you had with them? A: Just learning about or hearing about their perception of what's going on. Q: And what was their perception? | 22. This testimony is inadmissible to the extent it purports to offer for the truth of the matter asserted hearsay statements made by local beachgoers. FRE 802. |

| Evidence: | Objections: |
|---|---|
| A:  Their perceptions were that the space down at the coastline is available for everybody.<br>Q:  Anything else?<br>A:  No.<br><br>Dahlerbruch Depo. (11/18/16) 72:15-23. | |
| 23. Q:  And the Coastal Commission how many times, what did the Coastal Commission, what do you recall of that meeting and their interests and the issue of localism?<br>A:  They were interested in the patio structure.<br><br>Dahlerbruch Depo. (11/18/16) 74:16-19. | 23. This testimony is based on inadmissible hearsay. FRE 802. |
| 24. Q:  Did your staff have any telephone calls to your knowledge with the Coastal Commission following that first in-person meeting in Long Beach?<br>A:  I believe so. | 24. This evidence is inadmissible because Mr. Dahlerbruch does not state facts demonstrating that he has personal knowledge of whether his staff had telephone calls with the Coastal Commission.  FRE 602. |

13654393.4

| Evidence: | Objections: |
|---|---|
| Dahlerbruch Depo. (11/18/16) 96:10-13. | |
| 25. Q:  Did the Coastal Commission say that it had to be removed?<br>A:  They have consistently told us that the City Council has the option of permitting it or removing it.<br><br>Dahlerbruch Depo. (11/18/16) 106:7-10. | 25. This testimony is based on inadmissible hearsay.  FRE 802. |
| 26. Q:  And what did the, as part of your listening tour, what did the Lunada Bay Homeowner's Association tell you; what did you gather from their sentiments?<br>A:  They were equally concerned about the behavior in the area and wanted it changed. They felt that the area is open to the public and wanted it that way. And they conveyed that to us. It's kind of the essence of what we are talking about. | 26. This testimony is based on inadmissible hearsay.  FRE 802. |

13654393.4

| Evidence: | Objections: |
|---|---|
| Dahlerbruch Depo. (11/18/16) 124:14-22. | |
| 27.Q:  What did you learn from Heal the Bay meeting?<br><br>A:  They made suggestions about communicating with the public and more from a public relations perspective how we might illustrate to people through communications that, you know, the space is accessible to everybody and safe for everybody. And that ended up being the primary point of the discussion from their perspective.<br><br>Dahlerbruch Depo. (11/18/16) 113:3-11. | 27.This testimony is based on inadmissible hearsay.  FRE 802. |

**D.    Objections Exhibit H (Declaration of Mark Slatten) To Declaration Of Christopher D. Glos In Support Of City Of Palos Verdes Estates And Chief Of Police Jeff Kepley's Motion For Summary Judgment Or, In The Alternative, Summary Adjudication And Exhibits Attached Thereto**

| Evidence: | Objections: |
|---|---|
| 28.A representative of CPR submitted a declaration in support of Plaintiffs' | 28.This testimony is inadmissible because an original writing – here, the |

13654393.4

| Evidence: | Objections: |
|---|---|
| motion for class certification; however, that declaration did not allege any harm specific to the declarant or CPR.<br><br>Declaration of Christopher D. Glos ("Glos Decl."), ¶9; Glos Decl., Exhibit H. | Declaration of Mark Slatten – is required in order to prove its content.  FRE 1002.  Mr. Glos's summary of its contents is not evidence and is inadmissible because the City Defendants have not demonstrated that the writing he purports to summarize cannot be conveniently examined by the Court, nor did the city Defendants make the originals available for examination.  FRE 1006. |

DATED:  July 31, 2017                    HANSON BRIDGETT LLP


                                By:   /s/ *Kurt A. Franklin*

                                       KURT A. FRANKLIN
                                       LISA M. POOLEY
                                       SAMANTHA D. WOLFF
                                       TYSON M. SHOWER
                                       LANDON D. BAILEY
                                       Attorneys for Plaintiffs
                                       CORY SPENCER, DIANA MILENA
                                       REED, and COASTAL PROTECTION
                                       RANGERS, INC.