KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
LISA M. POOLEY, SBN 168737
lpooley@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:   (916) 442-3333
Facsimile:   (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone:   (310) 378-8533
Facsimile:   (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>Plaintiffs, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**DECLARATION OF ALICIA APOSTOL IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |

Case No. 2:16-cv-02129-SJO (RAOx)

DECL. OF M. SLATTEN ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644961.2

v.

LUNADA BAY BOYS; THE
INDIVIDUAL MEMBERS OF THE
LUNADA BAY BOYS, including but
not limited to SANG LEE, BRANT
BLAKEMAN, ALAN JOHNSTON
AKA JALIAN JOHNSTON,
MICHAEL RAE PAPAYANS,
ANGELO FERRARA, FRANK
FERRARA, CHARLIE FERRARA,
and N. F.; CITY OF PALOS VERDES
ESTATES; CHIEF OF POLICE JEFF
KEPLEY, in his representative
capacity; and DOES 1-10,

        Defendants.

| | |
|---|---|
| Judge: | Hon. S. James Otero |
| Date: | September 5, 2017 |
| Time: | 10:00 a.m. |
| Crtrm.: | 10C |

| | |
|---|---|
| Complaint Filed: | March 29, 2016 |
| Trial Date: | November 7, 2017 |

I, ALICIA APOSTOL, declare as follows:

1.     I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.     I am the Chief Operating Officer of Plaintiff, Coastal Protection Rangers, which is a California non-profit public benefit corporation (hereafter "CPR").  Mark Slattan founded CPR in 2014.  Prior to incorporation, CPR was an unincorporated membership association.  All officers of CPR are volunteers.  The other officers are (a) President Mark Slattan, (b) Secretary David Leuck, and (c) Resident Scientist and Board Member Dr. Mario Tamburri.  As a newer coastal advocacy organization, we are lean and do not have paid staff.  We are not tied to the surf industry, or any other industry. We stand against corporate and individual bullies who exploit California's coast for selfish purposes.  We welcome volunteers.

13644961.2

3.      CPR's mission is simple: We are advocates of coastal access for all, with an emphasis on inclusion and diversity.  We are passionate about protecting, preserving and enhancing the coastline, beaches and coastal zones of California for access and use by all members of the public.  And, given the underfunding of State agencies and potential for money-backed interests intent on harming coastal access, we believe it is up to CPR, other coastal advocacy groups, and grassroots volunteers to take the lead in preserving and protecting our coast for the benefit of all for the generations to come.  We are purposefully broadening the coastal advocacy movement by focused outreach and engagement. Environmental justice and civil rights organizations are top of mind in our efforts.  We believe a diverse population should use and have equal access to the California Coast, and believe that historical discrimination and its remnants keep diverse communities from using our beaches.  And, we are committed to the proposition that California's coast belongs to all and that no one should be excluded as an "outsider" because of (i) the persons race, color, or ethnicity, (ii) the persons gender, (iii) the persons sexual orientation, (iv) the persons financial means or income, and (v) where a person grew up, or currently lives.

4.      CPR's board members and/or volunteers of the organization are surfers and/or enjoy the beach and grew up in areas near Palos Verdes Estates such as Redondo Beach, Rancho Palos Verdes, Hermosa Beach and Torrance.  They would have liked to have surfed, dived, taken photographs, hiked, or even just enjoyed nature and the beach at Lunada Bay but were afraid to because of the reputation that it had for localism.  For example, board member Dave Leuck grew up in Redondo Beach.  Having surfed since the age of 8, lived in Hawaii for two years, and having spent six months surfing Mainland Mexico, he has the skill to surf Lunada Bay on good days.  Yet, until the CPR sponsored its Martin Luther King Day event on January 16, 2017, he had never been able to surf there because of the problem with localism.  The same is true for Ian Stenehjem who grew up in Rancho Palos Verdes

Case No. 2:16-cv-02129-SJO (RAOx)

DECL. OF A. APOSTOL ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644961.2

(a different city than Palos Verdes Estates) just 2 miles from Lunada Bay and has surfed his entire life.  Ian is a pilot for a major airline and has surfed the best breaks in the world for the last 20 years but had never been able to surf the break closest to where he grew up because of the locals.

5.      Upon information and belief, around December 2015, CPR President Mark Slattan read an article in *The Los Angeles Times* about a dispute the Coastal Commission was having with the City of Palos Verdes Estates regarding an illegal structure at Lunada Bay and the issue of localism.  Mr. Slattan was surprised that about the fact that the City seemed to be challenging the authority of the Coastal Commission.  CPR's attorney and Mr. Slattan researched bringing a private enforcement action, looking at various things including past efforts to stop localism at Lunada Bay and other surfing spots in Palos Verdes Estates.  Throughout the years, the South Bay Chapter of the Surfrider Foundation seemed dedicated to stopping localism.  There are numerous articles showing the efforts made by their volunteers.  Yet, the Surfrider Foundation had not been able to solve the problem. Because beach access is central to CPR's mission, the board voted to become a plaintiff in this case.

6.      As part of the investigation in this matter, CPR has learned how the City of Palos Verdes Estates police rely on "officer discretion" and have not enforced laws against locals, such as the law prohibiting drinking alcohol on public beaches, laws against open fires, leash laws, and its laws that regulate surf-riding and that prohibit people from blocking access to the beach.  And,  CPR has learned about historic discrimination in Palos Verdes Estates, including:  (a) the Palos Verdes Homes Association and Art Jury designed a community to "protect this utopian landscape and future property values" that was established in 1923 as a "high-class residential suburb" limiting 90% of the property to single-family homes; (b) restrictive covenants forbade an owner to sell or rent a house to anyone not of white or Caucasian race and to not permit African-Americans on their property with

-4-

Case No. 2:16-cv-02129-SJO (RAOx)

DECL. OF A. APOSTOL ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644961.2

the exception of chauffeurs, gardeners and domestic servants; (c) the Palos Verdes Estates Homes Association did not repeal this illegal covenant until 2000, and when it did so it used "white out" rather than print new materials, (d) in 1960, Palos Verdes Peninsula voters voted to form a unified school district of their own, and not remain under the more diverse Los Angeles Unified School District's rule (this avoided desegregation and bussing, which came in later in the 1960's and 1970's); (e) in the 1980's, disproportionately white and affluent communities persuaded the Southern California Rapid Transit District (RTD) to end direct bus service between South Central Los Angeles and beach-front communities to the west, increasing the amount of time it took to reach the beach and effectively deterring people of color from going to the beach at all because of the amount of time and hassle it took to get there, and that RTD granted the request of Palos Verdes Peninsula cities that buses from the inner city not climb the Palos Verdes Hill; (f) in 1991, the cities of Palos Verdes Estates, Rancho Palos Verdes, and Rolling Hills Estates formed their own small transit district called the Palos Verdes Peninsula Transit Authority (PVPTA) that  operates Monday to Friday, and does not stop at Palos Verdes Estates beaches like Lunada Bay; (g) in 1995, an adult Bay Boy Peter McCollum threatened a 14-year old boy named Hagins Kelley in front of local television cameras for daring to surf Lunada Bay, and explained to the Los Angeles Times that "It's not just a barbaric thing, it is done for a purpose… The crowds are so intense these days, you can't have your own little sanctuary. But we do." "We protected this beach for years. This is why. So we can have driftwood on the beach rather than Kentucky Fried Chicken boxes.  If the beach opened up it would be packed with low riders….the rocks would be marked with graffiti.";  (h) when coastal access advocates held a Martin Luther King, Jr. Day paddle out rally in 2014, several Bay Boys paddled out in blackface in front of police and told the visitors, "you don't pay enough taxes to be here"; (i) that when Plaintiff Diana Milena Reed complained about being sexually harassed at the Rock Fort, that police officers responded with words to the

effect, "why would a woman want to visit a beach that only has rocks?" and that the Bay Boy's called her "that Diana bitch" in their texts;  and (j) that numerous beachgoers have had the word "faggot" screamed at them by locals as they attempt to visit Lunada Bay.  These protected category overtones cause CPR grave concern, as all beachgoers, no matter their income level, race, color, religion, gender, sexual orientation or other protected category are entitled to coastal access.  This discrimination deters a diverse and inclusive beach, and denies people access.

7.     Attached hereto as <u>Exhibit 1</u> and <u>Exhibit 2</u>, are a true and correct copies of the unlawful covenant CPR obtained in person from the Palos Verdes Home Association (http://pvha.org/).  <u>Exhibit 1</u> shows the covenant with white out, as received from the Homes Association.  <u>Exhibit 2</u> shows the covenant with the white out removed.  Attached hereto as <u>Exhibit 3</u>, is a trued and correct copy of a resolution from 2000 where the Palos Verdes Homes Association finally eliminated the illegal covenant.  The Palos Verdes Homes Association is located 320 Palos Verdes Dr W, Palos Verdes Estates, CA, adjacent to City Hall and the Police Department for the City of Palos Verdes Estates City which are located at 340 Palos Verdes Dr. W.  Attached hereto as <u>Exhibit 4</u>, is a true and correct copy of a Google Map printout of the Palos Verdes Estates civic center area showing the proximity of City Hall, the Police Department, and the Palos Verdes Homes Association. They're in an adjoining facility.

8.     In September 2016, Gov. Jerry Brown signed legislation amending the Coastal Act which compliments CPRs core mission of open access to the coast for everyone by incorporating the concept of environmental justice into the law.  The Coastal Act now explicitly refers to the statutory definition of environmental justice. "Environmental justice" means the fair treatment of people of all races, cultures, and incomes with respect to environmental laws, regulations, and policies under Government Code section 65040.12.  The governor is now required to appoint a Commissioner experienced in and dedicated to environmental justice.  Every

-6-

Case No. 2:16-cv-02129-SJO (RAOx)

DECL. OF A. APOSTOL ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644961.2

1   Commissioner is required to comply with and enforce the cross-cutting equal justice

2   laws.  Finally, the Act explicitly refers to state civil rights law that guarantees equal

3   access to publicly funded resources and prohibits discrimination based on race,

4   color, national origin, income, and other factors, Government Code section 11135.

5   Section 11135 applies to all state agencies and recipients of state funding.

6       9.    CPR believes the beaches, tide pools and surf on the Palos Verdes

7   Peninsula and at Lunada Bay are truly unique and everyone should be able to enjoy

8   them.  On a low tide, upon information and belief, there are octopi, limpets, crabs,

9   sea urchins and other aquatic life living in the tide pools.  There are marine

10  mammals, such as seals that patrol the shores; occasionally, a whale can be spotted

11  on the horizon.  Standing on the bluff the kelp beds are visible - something totally

12  unique to California.  And if you grab a mask and snorkel, you will discover one of

13  the most biologically diverse and productive zones on the planet.  Both the sunsets

14  and waves are world class.  CPR believes that exposing people to these ecological

15  areas give life meaning and put things into perspective; everyone, especially the

16  economically challenged and people who live in poorer communities, should be able

17  to have access to this area of the coast without fearing for his or her safety.

18  Specifically, CPR believes that if Lunada Bay were free from illegal exclusivity,

19  school children from poorer inland communities would take field trips to Lunada

20  Bay for educational purposes and to share these experiences with their parents,

21  families, and friends.  CPR believes everyone should be able to learn, exercise,

22  enjoy the outdoors and otherwise express themselves in their chosen activities at

23  Lunada Bay.

24      10.   CPR wants the public to be able to visit Lunada Bay to recreate there

25  without fear of physical and verbal attack or the hassle of dealing with bullying Bay

26  Boys and other locals.  CPR wants the public to be able to visit the Lunada Bay

27  bluff, shoreline, and water to explore and surf without fear of having their car

28  vandalized.  CPR wants the Bay Boys and other bullying locals to be barred from

-7-          Case No. 2:16-cv-02129-SJO (RAOx)
DECL. OF A. APOSTOL ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644961.2

using this beach for sufficient time to change attitudes and to give access to the beach back to the public. CPR believes all Californians including those from lower income, inland and racially diverse communities, should be able to freely travel to and visit Lunada Bay and other Palos Verdes Estates beaches. CPR believes no person should be required to undergo a hazing process as a prerequisite to use a California beach. Further, CPR believes as surf communities are primarily white and middle-class, exclusion from surf breaks on the basis of where a person lives or grew up emerges as a method of racial segregation.

11. On January 16, 2017, in celebration of Martin Luther King Day, CPR sponsored an event at Lunada Bay to encourage people who may benefit from the environmental justice movement, as well as others who have been deterred from accessing Lunada Bay, to enjoy a day at the beach. The intent was (a) to honor Martin Luther King, (b) to encourage diverse beachgoers to explore and visit Palos Verdes Estates beaches, (c) to allow people to visit Lunada Bay in a planned event where CPR anticipated there should be improved safety given media attention and numbers, (d) to celebrate efforts to end localism, (e) to celebrate removal of the illegal rock fort that was a symbol of illegal bullying and alcohol use at Lunada Bay, (f) to re-dedicate Lunada Bay as a welcoming spot with aloha spirit, and (g) to celebrate CPR's success in bringing attention to illegal exclusivity at Lunada Bay. While the Martin Luther King Day event officially started at 9:00 a.m., with early morning surfers this event lasted from sunrise to sunset. The event concluded with Hawaiian-style hula and ukulele as the sun was setting. I planned and worked the entire event, helping coordinate other volunteers and communication with the media.

12. During the Martin Luther King Day event, we were successful in bringing diverse beachgoers to Lunada Bay, and bringing attention to our cause of open beach access free from localism and discrimination. Attached hereto as Exhibit 5, are true and correct copies of photos of the event printed in the Los

Angeles Times.  While many of the Bay Boys stayed away from Lunada Bay on January 16 (they moved a few blocks away to a neighboring beach), unfortunately, we received complaints that two associates of the Bay Boys (a step daughter of one defendant, and girlfriend of another defendant) were intentionally attempting to harm CPR volunteers and guests by dropping in on them in waves – violating the City's surf-riding ordinance.  Volunteers and participants stated that they complained about this dangerous activity to the police indicated, but that the police were not well trained on their own surf-riding ordinance and did not take the complaints seriously.  Indeed, some felt the police were protective of the locals.  Attached as <u>Exhibit 6</u>, is a true and correct copy of a video explaining the January 16, 2017 Martin Luther King Day event.

13.     During the event, I was also approached by a young male, he parked his car and walked straight up to me at the table and said "What is this?" I informed him that CPR was a non-profit that helps with protecting the coastlines and providing beach access. He said "Yeah but what are you doing here?" I explained it was a peaceful gathering to promote safe beach access for all at Lunada Bay without the fear of violence. He laughed, put his phone about 12" from my face and took photos of me and then said "Yeah good luck with that" and walked off snapping a few more photos as he walked back to his car. As I have been told that at a prior event in 2014 celebrating Martin Luther King and public access to Lunada Bay there was an individual taking pictures of visiting surfers and making statements like "Now we know who you are," I was intimidated. I reported this incident to one of the officers as I was frightened and concerned. One officer pointed out one of the older Bay Boys to me to make me aware that they were watching him. The Bay Boy did not approach me directly but did come to the tent and was talking to people and making his presence known.

14.     CPR has received complaints from its members, volunteers and event participants of unlawful discrimination.  CPR wants non-resident visitors to be able

13644961.2

to visit Lunada Bay without needing to announce themselves in advance to the police so as to ensure their safety from the bullying locals.  CPR wants women to be able to use the beach at Lunada Bay without being questioned about their desire to engage in recreational activities, without fear of being sexually harassed, and without feeling like they are in a men's locker room.  CPR wants people of diverse backgrounds to be able to travel to Lunada Bay and other Palos Verdes Estates beaches freely, without fear of being unlawfully pulled over by the City of Palos Verdes Estates police, without being asked their "purpose" for being in the City and their travel plans, without fear of being treated differently when it comes to traffic citations and parking tickets, without fear of having their vehicle being unlawfully towed, and without fear of being treated differently when it comes to enforcement of the law and/or detainment.   CPR wants Palos Verdes Estates to provide its employees adequate training on coastal access laws, the local surf-riding ordinance, surfing etiquette and safety, and on non-discrimination laws.   CPR wants Palos Verdes Estates to enforce its ordinances fairly and for it to provide signage and maps so people will know Lunada Bay is a public beach.  CPR wants the City of Palos Verdes Estates to improve amenities in a fashion that makes it safer, provides improved access to all beachgoers, and is both consistent with this rural spot, the California Coastal Act, and state and federal law.  For example, access trails to the shoreline should be clearly marked for the safety of visitors so the visitors do not head down a false trail.  And no person should be allowed to block the access trails or to intimidate visitors on the bluff top, on the shoreline, or in the water.  CPR wants Palos Verdes Estates police to be trained to help when people are unlawfully excluded.  In short, CPR wants all to be able to visit Lunada Bay without being harassed.  And if someone is harassed, we want the City of Palos Verdes Estates police to take the complaints seriously.  Finally, we would like to see public transportation that makes it easy for people of all walks of life to be able to

DECL. OF A. APOSTOL ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

1 head down a false trail.  And no person should be allowed to block the access trails

2 or to intimidate visitors on the bluff top, on the shoreline, or in the water.  CPR

3 wants Palos Verdes Estates police to be trained to help when people are unlawfully

4 excluded.  In short, CPR wants all to be able to visit Lunada Bay without being

5 harassed.  And if someone is harassed, we want the City of Palos Verdes Estates

6 police to take the complaints seriously.  Finally, we would like to see public

7 transportation that makes it easy for people of all walks of life to be able to

8 experience Lunada Bay.  CPR does not seek damages in their lawsuit against the

9 City, and instead seeks declaratory and injunctive relief.

10      15.   CPR has diverted its resources and volunteer time to achieve open

11 access for all at Lunada Bay, including extensive research, educational efforts,

12 promotional efforts, media outreach, and the Martin Luther King Day event.  Had

13 these resources not been diverted to achieve open access at Lunada Bay, they could

14 have been used for coastal education, and other coastal access projects.

15      16.   Because there is a long custom and practice of discrimination that starts

16 at the City of Palos Verdes Estate's border, beachgoers of diverse backgrounds, poor

17 beachgoers, and women beachgoers are deterred.  The illegal exclusion at Lunada

18 Bay, and related police efforts that keep outsiders away from Palos Verdes Estates

19 streets and beaches, has turned a public beach into the exclusive club for a

20 privileged few.  This frustrates the purpose of CPR, which is open access to the

21 California coast for all.

22      I declare under penalty of perjury under the laws of the United States of

23 America that the foregoing is true and correct.

24      Executed on this 30ᵗʰ day of July, 2017, at Hermosa Beach,

25 California.

26

27                                   ALICIA APOSTOL

28

-11-                    Case No. 2:16-cv-02129-SJO (RAOx)

DECL. OF A. APOSTOL ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644961.2

# EXHIBIT 1

Tracts 6887 and 7143

VALMONTE

# PROTECTIVE RESTRICTIONS PALOS VERDES ESTATES

LOS ANGELES
CALIFORNIA



BANK OF AMERICA, *Trustee*

HENRY CLARKE, *Director of Sales*
501 LANE MORTGAGE BUILDING
LOS ANGELES, CALIF.

strictly limited, and the project will control their architectural design in such a way as to make them distinctive, attractive and convenient without in any way detracting from, but rather supplementing, the fine and extensive residential neighborhood surrounding them.

There are also established as a matter of convenience additional small business building groups at local centers about a mile apart, as at Monte Malaga, Zurita, Margate, etc., to serve areas that would otherwise be inconveniently far from a neighborhood store and market.

Industries, asylums, or nuisance businesses are prohibited in all parts of the Estates.

No billboards, advertising signs or "For Sale" signs can be erected in Palos Verdes, and the few store and business signs necessary must meet with the approval of the Art Jury.

The character of the property is such as to preclude the keeping of live stock, which includes rabbits, pigeons, chickens and other poultry, except where there is no residence within a considerable distance when they may be allowed in special cases, for private use only, by a special permit from the Palos Verdes Homes Association. Likewise, on the larger lots, a special permit may also be given for the keeping of horses and cows.

No outhouses, private garages or tents may be erected prior to the erection of the dwelling house or principal building on the lot.

The minimum cost of houses that may be erected ranges from a fairly low amount in areas where there are cheaper lots to considerably higher restrictions along the ocean bluffs and at special points, the amount being determined by the size, value and neighborhood of the lot.

But more important than any specific requirement as to the minimum cost of houses is the provision in the restrictions for the approval by Palos Verdes Homes Association and the Art Jury of the plans and specifications of all buildings prior to the beginning of construction, and of inspection during construction. This will be done from

[ 4 ]

DECLARATION NO. 1

# DECLARATION OF ESTABLISHMENT

OF

BASIC PROTECTIVE RESTRICTIONS, CONDITIONS, COVENANTS, RESERVATIONS, LIENS AND
CHARGES AFFECTING THE REAL PROPERTY TO BE KNOWN AS

## PALOS VERDES ESTATES—PARCELS A AND B

WHICH IS SITUATED IN THE COUNTY OF LOS ANGELES, IN THE STATE OF CALIFORNIA.

DATED JUNE 26, 1923.

(Recorded July 5, 1923, in Book 2360, Page 231, Official Records of Los Angeles County; as amended by
Amendment No. 1 dated Nov. 26, 1923, recorded Dec. 5, 1923, in Book 2940, Page 27, Official
Records of Los Angeles County; and as amended by Amendment No. 3 dated
June 16, 1924, recorded June 25, 1924, in Book 4019, Page 274,
Official Records of Los Angeles County.)

DECLARATION, made and dated this 26th day of June, 1923, by Commonwealth Trust Company, a corporation organized and existing under and by virtue of the laws of the State of California.

WHEREAS, Commonwealth Trust Company is the owner of a certain tract of land in the County of Los Angeles, State of California, described as follows:

Those portions of Lot "H," as shown on map of Rancho Los Palos Verdes, in the County of Los Angeles, State of California, as partitioned in case No. 2373, in the District Court of the 17th Judicial District, in and for said County, and entered in Book 4, Page 57, of Judgments in the Superior Court of said County and particularly described as follows:

Parcel "A." Beginning at an angle point in the Easterly line of said Lot "H," which angle point is North 26½°, East One Hundred Forty-nine and Nineteen Hundredths (149.19) chains from the most Southerly corner of Lot "H."

Thence along the Easterly line of said Lot "H," South Twenty-six degrees (26°), Forty-six Minutes (46'), Fifty-four and Five-tenths Seconds (54.5"), West Fifteen Hundred and Fifty-one and Six Hundredths (1551.06) feet.

Thence West Seven Hundred Seventeen and Eleven Hundredths (717.11) feet.

Thence North Thirty-six Degrees (36°), Twenty-three Minutes (23'), Three and Seven-tenths Seconds (03.7"), West Fourteen Hundred Sixteen and Five Hundredths (1416.05) feet.

Thence North Twenty-eight Hundred Sixty (2860) feet.

Thence East Twenty-two Hundred Seventy and Six Hundredths (2270.06) feet more or less to a point in the Easterly line of said Lot "H."

Thence South no Degrees (0°), Eighteen Minutes (18'), Twenty-eight and One-tenth Seconds (28.1"), West Twenty-six Hundred Fifteen and Thirty-six Hundredths (2615.36) feet more or less to the place of beginning.

Parcel "B." Beginning at a point at high tide on the Shore of the Pacific Ocean at the South West corner of Lot "A," shown on said partition map.

Thence along the North line of said Lot "H," South Eighty-nine Degrees (89°), Forty-five Minutes (45'), Twenty-one and Three-tenths Seconds (21.3"), East Two Hundred Thirty and Six-tenths (230.6) feet more or less to a Two (2) inch capped iron pipe.

Thence along the North line of said Lot "H," South Eighty-nine Degrees (89°), Forty-five Minutes (45'), Twenty-one and Three-tenths Seconds (21.3"), East Ninety-six Hundred Forty-three and Fifty-one Hundredths (9643.51) feet to a Two (2) inch capped iron pipe; thence along the Northerly line of said Lot "H," South Forty-four Degrees (44°), Forty-one Minutes (41'), Twelve and Two-tenths Seconds (12.2"), East Forty-five Hundred Eighty-seven and Nine Hundredths (4587.09) feet to a point on said Northerly line of Lot "H."

Thence West Ninety-nine Hundred Thirty-five and Twenty-two Hundredths (9935.22) feet.

Thence South Eleven Degrees (11°), Forty-eight Minutes (48'), Twenty and Eight-tenths Seconds (20.8"), West Forty-nine Hundred Eighty-five and Forty-five Hundredths (4985.45) feet.

Thence West Fifty Hundred Forty (5040) feet.

Thence South Sixty-three Hundred Seventy (6370) feet.

Thence South Eighty-one Degrees (81°), Seven Minutes (07'), Thirty Seconds (30"), West Forty-four Hundred Twenty-eight (4428) feet, more or less to a point in the high tide line of the Pacific Ocean.

Thence along said high tide line of the Pacific Ocean in a general North Westerly and North Easterly direction to the place of beginning;

Saving and excepting therefrom that portion thereof described as follows:

Beginning at a point in the North Easterly boundary line of Lot "H," which is South 44 Degrees, 41 Minutes, 12.2 Seconds East, and 3883.42 feet South Easterly from an original corner of Lots "H" and "B," said original corner being marked by a two-inch capped iron pipe; thence South 49 Degrees and 30 Minutes West, a distance of 770.34 feet to a point in the South line of parcel "B"; thence Easterly on the Southerly line of parcel "B," a distance of 1080.62 feet to a point in the North Easterly line of Lot "H," said point being the South Easterly corner of parcel "B"; thence on a course beginning North 44 Degrees, 41 Minutes, 12.2 Seconds West, a distance of 703.67 feet to the point of beginning, the whole inclosing an area of 6.21 acres.

WHEREAS, the said Commonwealth Trust Company is about to sell, dispose of or convey in portions said hereinabove described property which it desires to subject to certain basic protective restrictions, conditions, covenants, reservations, liens and charges between it and the acquirers or users of said property as hereinafter set forth;

[ 16 ]

Now, Therefore, Know All Men By These Presents: that the Commonwealth Trust Company hereby certifies and declares that it has established and does hereby establish the general plan for the protection, maintenance, improvement and development of said property, and has fixed and does hereby fix the protective restrictions, conditions, covenants, reservations, liens and charges upon and subject to which all lots, parcels and portions of said property shall be held, leased or sold and/or conveyed by it as such owner, each and all of which is and are for the benefit of said property and of each owner of land therein and shall inure to and pass with said property and each and every parcel of land therein and shall apply to and bind the respective successors in interest of the present owner thereof, and are and each thereof is imposed upon said realty as a servitude in favor of said property, and each and every parcel of land therein as the dominant tenement or tenements, as follows, to-wit:

## ARTICLE I

### GENERAL BASIC RESTRICTIONS

**USES OF PROPERTY PROHIBITED** *Section 1.* There shall never at any time be erected, permitted, maintained or carried on upon said property or any part thereof any saloon or place for the sale or manufacture for sale of malt, vinous or spirituous liquors; any foundry, brickyard, cemetery, columbarium, crematory; any establishment for the care or cure of persons afflicted with tuberculosis, or for the care, cure or restraint of the mentally impaired or of victims of drink or drugs or any detention home, detention or reform school, asylum or institution of like or kindred nature; any building for the manufacture of gun powder or explosives, any product or by-product of kelp, fish meal, stock food made of fish, fish oil or fertilizer or for carrying on any copper or other smelting or for conducting a slaughter house, stock yard, tannery, oil refinery or fish cannery; or a building for any other business or industrial use not specifically mentioned herein unless such use is approved by the Board of Directors of the Palos Verdes Homes Association hereinafter referred to and is located in a use district permitting the same as provided in Article IV hereof, or any noxious trade or business or use of the property whatsoever.

**DRILLING FOR OIL PROHIBITED** *Section 3.* No derrick or other structure designed for use in boring for oil or natural gas shall be erected, placed or permitted upon any part of said property, nor shall any oil, natural gas, petroleum, asphaltum, or hydro-carbon products or substances be produced or extracted therefrom.

**ENFORCEMENT BY PALOS VERDES HOMES ASSOCIATION AND PALOS VERDES ART JURY** *Section 4.* There is hereby conferred upon Palos Verdes Homes Association, a non-profit, co-operative corporation, organized and existing under and by virtue of the laws of the State of California, hereinafter referred to as the "Homes Association," and upon Palos Verdes Art Jury, appointed by Commonwealth Trust Company April 12, 1923, hereinafter referred to as the "Art Jury," the right and power as in this declaration provided to interpret and enforce the restrictions, conditions, covenants, reservations, liens and charges im-

[ 17 ]

# EXHIBIT 2

Now, Therefore, Know All Men By These Presents: that the Commonwealth Trust Company hereby certifies and declares that it has established and does hereby establish the general plan for the protection, maintenance, improvement and development of said property, and has fixed and does hereby fix the protective restrictions, conditions, covenants, reservations, liens and charges upon and subject to which all lots, parcels and portions of said property shall be held, leased or sold and/or conveyed by it as such owner, each and all of which is and are for the benefit of said property and of each owner of land therein and shall inure to and pass with said property and each and every parcel of land therein and shall apply to and bind the respective successors in interest of the present owner thereof, and are and each thereof is imposed upon said realty as a servitude in favor of said property, and each and every parcel of land therein as the dominant tenement or tenements, as follows, to-wit:

## ARTICLE I

### GENERAL BASIC RESTRICTIONS

USES OF PROPERTY PROHIBITED

*Section 1.* There shall never at any time be erected, permitted, maintained or carried on upon said property or any part thereof any saloon or place for the sale or manufacture for sale of malt, vinous or spirituous liquors; any foundry, brickyard, cemetery, columbarium, crematory; any establishment for the care or cure of persons afflicted with tuberculosis, or for the care, cure or restraint of the mentally impaired or of victims of drink or drugs or any detention home, detention or reform school, asylum or institution of like or kindred nature; any building for the manufacture of gun powder or explosives, any product or by-product of kelp, fish meal, stock food made of fish, fish oil or fertilizer or for carrying on any copper or other smelting or for conducting a slaughter house, stock yard, tannery, oil refinery or fish cannery; or a building for any other business or industrial use not specifically mentioned herein unless such use is approved by the Board of Directors of the Palos Verdes Homes Association hereinafter referred to and is located in a ... district permitting the same as provided in Article IV hereof, or any noxious trade or business ... of ... property whatsoever.

*Section 2.* (a) No part of said property shall be sold, conveyed, rented or leased in whole or in part to any persons of African or Asiatic descent or to any person not of the white or Caucasian race.

(b) No part of said property shall be used or occupied or permi... no case ... occupied in ... the po... ... as ... of Afric... ... white or Caucasian any person ... enforce the white or Caucasian race, except domestic servants, chauffeurs, or gardeners of other than the white or

Caucasian race may live on or occupy the premises where their employer resides or with the written approval of Palos Verdes Homes Association hereinafter referred to, may reside in such hotel, club, student boarding house, hospital or other building as it may approve under uniform regulation; provided that the provisions of this paragraph may be temporarily waived by Commonwealth Trust Company during ... original development and street construction work on said property as to any laborers or workers of other than of the white or Caucasian race while employed on the said work; and provided further, that pending development, cultivation and sale, co-operative agreements or farming leases for per... not to exceed ... years each ... ay with the approval of Palos Verdes Homes Association hereinafter referred to be executed by Commonwealth Trust Company to persons other than of the white or Caucasian race.

DRILLING FOR OIL PROHIBITED

*Section 3.* No derrick or other structure designed for use in boring for oil or natural gas shall be erected, placed or permitted upon any part of said property, nor shall any oil, natural gas, petroleum, asphaltum, or hydro-carbon products or substances be produced or extracted therefrom.

ENFORCEMENT BY PALOS VERDES HOMES ASSOCIATION AND PALOS VERDES ART JURY

*Section 4.* There is hereby conferred upon ... Palos Verdes Homes Association, a non-profit, co-operative corporation, organized and existing under and by virtue of the laws of the State of California, hereinafter referred to as the "Homes Association" and upon Palos Verdes Art Jury, appointed by Commonwealth Trust Company April 12, 1923, hereinafter referred to as the "Art Jury," the right and power as in this declaration provided to interpret and enforce the restrictions, conditions, covenants, reservations, liens and charges im-

[ 17 ]

# EXHIBIT 3

Branch :O40   User :GPOR

00-0110718

RECORDING REQUESTED BY
and
WHEN RECORDED MAIL TO

Name          Palos Verdes Homes Assoc
Address       P O Box 188
City, State   Palos Verdes Estates,
              California
Zip Code      90274

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

AMENDMENT NO. 214 TO DECLARATION NO  1 OF DECLARATION OF ESTABLISHMENT OF
BASIC RESTRICTIONS, CONDITIONS, COVENANTS, RESERVATIONS, LIENS AND CHARGES

RESOLVED, that pursuant to California Civil Code § 1352.5(b), the Board of
Directors of the Palos Verdes Homes Association hereby amends Declaration No  I of
the Declaration of Establishment of Basic Protective Restrictions, Conditions,
Covenants, Reservations, Liens and Charges dated June 26, 1923 (Recorded July 5,
1923, in Book 2360, Page 231, Official Records of Los Angeles County, as amended by
Amendment No  1 dated November 26, 1923, recorded December 5, 1923, in Book 2940,
Page 27, Official Records of Los Angeles County, and as amended by Amendment No  3
dated June 16, 1924 recorded June 25, 1924 in book 4019, Page 274, Official Records
of Los Angeles County) to delete Article 1, Section 2

RESOLVED FURTHER, that pursuant to California Government Code § 12956 1(c), the
Board of Directors of the Palos Verdes Homes Association hereby applies to the Los
Angeles County Recorder to remove the racial restrictive covenant set forth in
Article 1, Section 2

Dated   January 18, 2000

                              PALOS VERDES HOMES ASSOCIATION

                              _____
                              Linwood Melton, President

                              _____
                              Susan M Van Every, Secretary

STATE OF CALIFORNIA   |
                      | ss
COUNTY OF LOS ANGELES |

    On this 18th day of January, 2000, before me, a Notary Public in and for said
County and State, personally appeared Linwood Melton and Susan M  Van Every, proved
to me on the basis of satisfactory evidence to be the persons whose names are
subscribed to the within instrument and acknowledged to me that they executed the
same in their authorized capacities, and that by their signatures on the instrument
the persons, or the entity upon behalf of which the persons acted, executed the
instrument

WITNESS my hand and official seal

_____
Susan C  Hall

[Notary Seal]
SUSAN C. HALL
Commission # 1180373
Notary Public - California
Los Angeles County
My Comm. Expires May 15, 2002

# EXHIBIT 4





# EXHIBIT 5









#7889



# EXHIBIT 6

**Exhibit 6:**  A true and correct copy of a video explaining the January 16, 2017 Martin Luther King Day event is lodged with the Court pursuant to Rule 11-5-1.  *See* Notice of Lodging filed herewith.