# EXHIBIT 11

Atkinson-Baker Court Reporters
www.depo.com

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3                      WESTERN DIVISION

 4                          - - -

 5   CORY SPENCER, AN INDIVIDUAL;    )
     DIANA MILENA REED, AN           )
 6   INDIVIDUAL; AND COASTAL         )
     PROTECTION RANGERS, INC.,       )
 7   A CALIFORNIA NON-PROFIT PUBLIC  )
     BENEFIT CORPORATION,            )
 8                                   )
                   Plaintiffs,       )
 9                                   )
         vs.                         ) No.:  2:16-cv-02129-SJO
10                                   )       (RAOx)
     LUNADA BAY BOYS; THE INDIVIDUAL )
11   MEMBERS OF THE LUNADA BAY BOYS, )
     INCLUDING BUT NOT LIMITED TO    )
12   SANG LEE, BRANT BLAKEMAN, ALAN  )
     JOHNSTON AKA JALIAN JOHNSTON,   )
13   MICHAEL RAE PAPAYANS, ANGELO    )
     FERRARA, FRANK FERRARA,         )
14   CHARLIE FERRARA, ET AL.,        )
                                     )
15                 Defendants.       )
     _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ )
16

17              VIDEOTAPED DEPOSITION OF

18                   CATHERINE PLACEK

19                   IRVINE, CALIFORNIA

20                    JUNE 23, 2017

21   Atkinson-Baker, Inc.
     Court Reporters
22   www.depo.com
     (800) 288-3376
23

24   REPORTED BY:  ANGELIQUE MELODY FERRIO, CSR NO. 6979

25   FILE NO:      AB064C6
```

1

Catherine Placek
June 23, 2017

Atkinson-Baker Court Reporters
www.depo.com

```
 1    varies depending on the week.                    11:10:35
 2         Q.  How about by year, there would be a number  11:10:37
 3    somewhere that you can ask for it and someone could 11:10:42
 4    provide exactly how many arrestees there have been  11:10:46
 5    and --                                              11:10:49
 6              MR. FLAUTT:  Argumentative, calls for     11:10:49
 7    speculation.                                        11:10:50
 8              MR. FRANKLIN:  If you let me finish the    11:10:51
 9    question, then you can object.  I would appreciate  11:10:53
10    it.                                                 11:10:57
11    BY MR. FRANKLIN:                                    11:10:57
12         Q.  If someone wanted to know how many arrestees 11:10:57
13    were in the City of Palos Verdes Estates jail       11:11:02
14    facility in 2016, that information could be gathered 11:11:08
15    from the booking folders?                           11:11:12
16         A.  You would have to contact the administrative 11:11:14
17    captain.                                            11:11:16
18         Q.  Who is that?                               11:11:17
19         A.  That's currently Captain Best.             11:11:18
20         Q.  And I'm just asking for your experience.   11:11:28
21              Can you estimate how many people are, have 11:11:32
22    been in detained as an arrestee in 2016 that you    11:11:37
23    observed?                                           11:11:42
24         A.  No.  I can't estimate that.                11:11:42
25         Q.  Is it because there are too many?          11:11:44
```

49

Catherine Placek
June 23, 2017

Atkinson-Baker Court Reporters
www.depo.com

| | | |
|---|---|---|
| 1 | A.   Yeah.   I don't know the exact number, sir.   I | 11:11:47 |
| 2 | don't want to make assumptions. | 11:11:50 |
| 3 | Q.   This would not be an assumption.   You show up | 11:11:51 |
| 4 | at work every day.   And so I'm asking for your best | 11:11:54 |
| 5 | estimate. | 11:11:57 |
| 6 | Are you able to give a best estimate? | 11:11:57 |
| 7 | MR. FLAUTT:   Misstates prior testimony.   She | 11:12:00 |
| 8 | did not say that she shows up to work every day. | 11:12:02 |
| 9 | THE WITNESS:   I'm not sure. | 11:12:04 |
| 10 | BY MR. FRANKLIN: | 11:12:05 |
| 11 | Q.   You're not sure. | 11:12:05 |
| 12 | You're unable to give an estimate of how many | 11:12:07 |
| 13 | people were detained while you worked in 2016? | 11:12:10 |
| 14 | MR. FLAUTT:   Vague and ambiguous. | 11:12:16 |
| 15 | THE WITNESS:   I can give you a number, sir, | 11:12:17 |
| 16 | but I have no idea how accurate it would be. | 11:12:19 |
| 17 | BY MR. FRANKLIN: | 11:12:22 |
| 18 | Q.   I'm asking for your best estimate.   I'm not | 11:12:23 |
| 19 | asking you to guess, but your best estimate. | 11:12:25 |
| 20 | A.   Probably, 200 people. | 11:12:30 |
| 21 | Q.   The estimate would be 200 people have been | 11:12:35 |
| 22 | detained in the City jail in 2016; is that fair? | 11:12:39 |
| 23 | A.   No.   That's not what you asked me.   You asked | 11:12:44 |
| 24 | when I was there. | 11:12:47 |
| 25 | Q.   So, you think 200 people over ten years? | 11:12:47 |

50

Catherine Placek
June 23, 2017

Atkinson-Baker Court Reporters
www.depo.com

| | | |
|---|---|---|
| 1 | A.  No.  From when I was there within that past | 11:12:50 |
| 2 | year is what you asked me, sir. | 11:12:53 |
| 3 | Q.  So your estimate, the caveat is someone could | 11:12:55 |
| 4 | have been there outside of your shift or have been | 11:12:58 |
| 5 | days that you weren't working; is that why you're | 11:13:02 |
| 6 | qualifying the 200? | 11:13:04 |
| 7 | A.  Correct. | 11:13:05 |
| 8 | Q.  So, it could be more, but those would be 200 | 11:13:06 |
| 9 | that you estimate while you were working? | 11:13:10 |
| 10 | A.  Correct. | 11:13:13 |
| 11 | Q.  And if you were working, would you have been | 11:13:17 |
| 12 | the one that processed those 200 people? | 11:13:28 |
| 13 | A.  It depends on which duty I was assigned to | 11:13:30 |
| 14 | that day. | 11:13:33 |
| 15 | Q.  If you were assigned to dispatch, if you were | 11:13:33 |
| 16 | assigned to jail duty, would you have been one to | 11:13:37 |
| 17 | process them? | 11:13:41 |
| 18 | A.  If they came in on my shift, yes. | 11:13:42 |
| 19 | Q.  For 2016 for the 200 people that you estimate | 11:13:44 |
| 20 | were detained during your shifts, can you estimate | 11:13:58 |
| 21 | how many were residents of Palos Verdes Estates? | 11:14:03 |
| 22 | A.  I have no idea. | 11:14:06 |
| 23 | MR. FLAUTT:  Calls for speculation, not | 11:14:07 |
| 24 | reasonably calculated to lead to the discovery of | 11:14:09 |
| 25 | admissible evidence. | 11:14:12 |

51

Catherine Placek
June 23, 2017

| | | |
|---|---|---|
| 1 | BY MR. FRANKLIN: | 11:14:13 |
| 2 | Q.  You have no way of remembering that? | 11:14:13 |
| 3 | A.  No. | 11:14:16 |
| 4 | Q.  But the booking folders would be able to | 11:14:17 |
| 5 | gather that information from there; is that fair to | 11:14:23 |
| 6 | say? | 11:14:26 |
| 7 | A.  Yes. | 11:14:26 |
| 8 | Q.  And of the 200 people that were detained in | 11:14:27 |
| 9 | the City jail when you were working in 2016, what's | 11:14:32 |
| 10 | your estimate of how many were Caucasian? | 11:14:40 |
| 11 | MR. FLAUTT:  Lacks foundation, calls for | 11:14:44 |
| 12 | speculation, not reasonably calculated to lead to the | 11:14:45 |
| 13 | discovery of admissible evidence.  Please answer. | 11:14:48 |
| 14 | THE WITNESS:  I'm not sure. | 11:14:51 |
| 15 | BY MR. FRANKLIN: | 11:14:52 |
| 16 | Q.  Is it -- so, as you sit here today, you have | 11:14:52 |
| 17 | no way to give me an estimate of how many were | 11:14:56 |
| 18 | Caucasian? | 11:14:59 |
| 19 | A.  No. | 11:14:59 |
| 20 | Q.  That would be in the booking information? | 11:15:01 |
| 21 | A.  Yes, sir. | 11:15:04 |
| 22 | Q.  Is there one reason that stands out why | 11:15:06 |
| 23 | people were booked in the jail more than others, that | 11:15:21 |
| 24 | you can say most of them were outstanding for | 11:15:26 |
| 25 | immunity, as an example, you know; there was a | 11:15:30 |

Atkinson-Baker Court Reporters
www.depo.com

| | | |
|---|---|---|
| 1 | duties that you can think of besides process reports | 11:23:23 |
| 2 | and distributing them and releasing some reports? | 11:23:26 |
| 3 | A.  Data entry. | 11:23:30 |
| 4 | Q.  What type of data entry would you do? | 11:23:33 |
| 5 | A.  Impounded vehicles. | 11:23:37 |
| 6 | Q.  And when a vehicle is impounded, there's a | 11:23:44 |
| 7 | towing company that picks it up? | 11:23:48 |
| 8 | A.  Yes. | 11:23:50 |
| 9 | Q.  What towing company? | 11:23:50 |
| 10 | A.  We contract through Van Lingen Tow, V-a-n, | 11:23:52 |
| 11 | L-i-n-g-e-n, Tow. | 11:23:59 |
| 12 | Q.  And did you -- was there a Van Lingen that | 11:24:01 |
| 13 | used to work as a reserve officer for Palos Verdes | 11:24:07 |
| 14 | Estates? | 11:24:11 |
| 15 | A.  Yes. | 11:24:11 |
| 16 | Q.  What was his name? | 11:24:11 |
| 17 | A.  I want to say Rob, but I'm not sure. | 11:24:13 |
| 18 | Q.  How many days, in your estimation, how many | 11:24:18 |
| 19 | days did Mr. Lingen work? | 11:24:23 |
| 20 | MR. FLAUTT:  Calls for speculation, lacks | 11:24:26 |
| 21 | foundation. | 11:24:28 |
| 22 | THE WITNESS:  I don't know.  I don't have the | 11:24:28 |
| 23 | reserve schedule. | 11:24:30 |
| 24 | BY MR. FRANKLIN: | 11:24:32 |
| 25 | Q.  Okay.  As an employee have you ever had to | 11:24:33 |

59

Catherine Placek
June 23, 2017

Atkinson-Baker Court Reporters
www.depo.com

| | | |
|---|---|---|
| 1 | is an impound and then a different type of tow? | 11:27:33 |
| 2 | A.  I'm sure there are numerous ones. | 11:27:36 |
| 3 | Q.  If the car is not evidence, does that vehicle | 11:27:39 |
| 4 | go somewhere else than Van Lingen or does it go to | 11:27:42 |
| 5 | the same spot? | 11:27:47 |
| 6 | A.  Any vehicles that are towed goes to | 11:27:47 |
| 7 | Van Lingen. | 11:27:50 |
| 8 | Q.  And that's city-wide? | 11:27:50 |
| 9 | A.  Correct. | 11:27:52 |
| 10 | Q.  What other type of data entry do you do as | 11:27:53 |
| 11 | part of the miscellaneous? | 11:28:13 |
| 12 | A.  Restraining orders. | 11:28:15 |
| 13 | Q.  I didn't hear that one. | 11:28:16 |
| 14 | A.  Restraining orders. | 11:28:17 |
| 15 | Q.  Restraining orders. | 11:28:19 |
| 16 | And is that a restraining order that you | 11:28:21 |
| 17 | receive from the court that's input into the system | 11:28:24 |
| 18 | or how does that work? | 11:28:27 |
| 19 | A.  Yes. | 11:28:28 |
| 20 | Q.  Are most of those -- are most of those | 11:28:28 |
| 21 | domestic violence related or what type of restraining | 11:28:40 |
| 22 | orders come in that you input? | 11:28:44 |
| 23 | A.  There are numerous types. | 11:28:47 |
| 24 | Q.  And if there's a restraining order received | 11:28:48 |
| 25 | that goes into the system so it might be available to | 11:28:55 |

62

Catherine Placek
June 23, 2017

```
 1        Q.  So, to use your estimate, I'm going to      11:36:33
 2   represent that those are two-foot tiles on the       11:36:36
 3   ceiling; those are two-foot squares?                 11:36:38
 4        A.  You're going to make me count the tiles, one,  11:36:41
 5   two, three, four, five, six.                         11:36:45
 6        Q.  How big is the lobby?                        11:36:48
 7        A.  So, I guess that would be 12 feet, 12 square  11:36:49
 8   feet.                                                11:36:51
 9        Q.  About a 12 square foot room then?            11:36:51
10        A.  I'm not a contractor, but that's my estimate. 11:36:54
11        MR. FLAUTT:  Lacks foundation, calls for         11:36:57
12   speculation, not reasonably calculated to lead to the 11:37:07
13   discovery of admissible evidence.                    11:37:11
14   BY MR. FRANKLIN:                                     11:37:22
15        Q.  Is there any furniture in that room?         11:37:22
16        A.  There's one table and three or four chairs.  11:37:28
17        Q.  And when you enter that room, do you enter    11:37:38
18   directly from the outside?                           11:37:45
19        A.  Yes.                                         11:37:46
20        Q.  What's the address where you would go if      11:37:46
21   someone wanted to go to the lobby; what's the        11:37:51
22   address?                                             11:37:54
23        A.  The station address is 340 Palos Verdes Drive 11:37:54
24   West, in Palos Verdes Estates, zip code 90274.       11:37:58
25        Q.  And then once somebody walks in from the     11:38:06
```

69

Catherine Placek
June 23, 2017

Atkinson-Baker Court Reporters
www.depo.com

```
 1     it relates to surfing?                                 11:54:18
 2          A.  I don't understand the question.              11:54:20
 3          Q.  Have you ever heard of the term "localism"    11:54:22
 4     with respect to the surfers in Lunada Bay?             11:54:26
 5          A.  I've heard the term "localism" before.        11:54:29
 6          Q.  Where did you hear the term "localism"?       11:54:32
 7          A.  The Chief said it.                            11:54:34
 8          Q.  And did the Chief speak to the whole          11:54:36
 9     department about localism or was there any             11:54:39
10     communication from the Chief to you and other members 11:54:42
11     of the Police Department related to localism?         11:54:45
12          MS. BACON:  Compound.                             11:54:48
13          THE WITNESS:  An E-Mail was sent out.             11:54:49
14     BY MR. FRANKLIN:                                       11:54:52
15          Q.  And that E-Mail was sent to everybody in the  11:54:53
16     department?                                            11:54:57
17          A.  I believe so.                                 11:54:58
18          Q.  What's your work E-Mail address?              11:54:59
19          A.  cplacek@pvestates.org.                        11:55:03
20          Q.  Do you know when that E-Mail was sent?        11:55:11
21          A.  My best estimate would probably be about two  11:55:15
22     to three years ago.                                    11:55:20
23          Q.  And when was the last time you reviewed that  11:55:22
24     E-Mail?                                                11:55:25
25          A.  I'm pretty sure the server automatically      11:55:27
```

74

Atkinson-Baker Court Reporters
www.depo.com

```
 1    deleted that.                                          11:55:34

 2         Q.  How do you know that?                         11:55:34

 3         A.  The City enacted, I believe that it's a purge 11:55:35

 4    after trying to get down to every 30 days.             11:55:38

 5         Q.  And have you ever had occasion to review the  11:55:51

 6    City website to related to localism?                   11:55:54

 7         A.  I've not seen it.                              11:55:57

 8         Q.  What do you remember the Chief telling you in 11:55:58

 9    an E-Mail about localism?                              11:56:03

10         A.  Encouraging the patrol officer to handout     11:56:04

11    fliers.                                                11:56:08

12         Q.  Anything else?                                11:56:12

13         A.  I can't recall.                               11:56:14

14         Q.  Is that the first time you ever heard of the  11:56:17

15    word "localism" in Palos Verdes Estates?               11:56:21

16         A.  Yes.                                          11:56:24

17         Q.  How about the term "Bay Boys", when was the   11:56:24

18    first time you heard that phrase?                      11:56:32

19         A.  This is an estimate, I would probably say in  11:56:41

20    2011.                                                  11:56:48

21         Q.  And do you remember what the occasion was     11:56:51

22    that you heard it?                                     11:56:55

23         A.  I do not.                                     11:56:56

24         Q.  And what does that term mean to you?          11:56:57

25         A.  The term "Bay Boys", what does that mean to   11:57:03
```

75

```
 1    me; is that what you're asking?                    11:57:06

 2           MR. FRANKLIN:  Yes.                          11:57:08

 3           MS. BACON:  No foundation.                   11:57:09

 4           MR. DIEFFENBACH:  Join, no foundation.       11:57:14

 5           THE WITNESS:  To me, it's a group of people  11:57:16

 6    that surf at Lunada Bay.                            11:57:18

 7    BY MR. FRANKLIN:                                    11:57:23

 8       Q.  And was that something that you heard from   11:57:25

 9    other officers, someone on the Police Department or 11:57:29

10    community members?                                  11:57:33

11       A.  I don't remember.                            11:57:33

12       Q.  And have you heard that phrase used within   11:57:34

13    the department?                                     11:57:36

14       A.  Yes.                                         11:57:37

15       Q.  By whom?                                     11:57:38

16       A.  The Chief.                                   11:57:40

17       Q.  Anybody besides the Chief?                   11:57:42

18       A.  Miscellaneous administration people.         11:57:45

19       Q.  And who might some of those be?              11:57:49

20       A.  Possibly the patrol captain which would be   11:57:52

21    Captain Velez.                                      11:57:57

22       Q.  Anybody else?                                11:58:01

23       A.  I'd also say possibly Captain Best as well   11:58:05

24    because he was the patrol captain then at that point. 11:58:16

25       Q.  Anybody else?                                11:58:19
```

Catherine Placek
June 23, 2017

| | | |
|---|---|---|
| 1 | I'm trying to understand what you meant by | 12:05:54 |
| 2 | the incident that had transpired? | 12:05:56 |
| 3 | A.  The recording. | 12:05:57 |
| 4 | Q.  And how did it document the recording? | 12:06:02 |
| 5 | MR. FLAUTT:  Vague and ambiguous, calls for | 12:06:05 |
| 6 | speculation, lacks foundation, misstates prior | 12:06:06 |
| 7 | testimony. | 12:06:10 |
| 8 | THE WITNESS:  It stated that, if I remember | 12:06:11 |
| 9 | correctly, that there was a recording that had been | 12:06:16 |
| 10 | published.  And it was a written documentation | 12:06:24 |
| 11 | reminding me to be tactful when speaking to the | 12:06:34 |
| 12 | public. | 12:06:39 |
| 13 | BY MR. FRANKLIN: | 12:06:43 |
| 14 | Q.  Was that something that went into a personnel | 12:06:44 |
| 15 | file; is that what the written documentation was for? | 12:06:49 |
| 16 | A.  Yes. | 12:06:53 |
| 17 | Q.  Did you think that you had done anything | 12:06:53 |
| 18 | wrong? | 12:06:57 |
| 19 | A.  No.  The statement was also taken out of | 12:06:57 |
| 20 | context. | 12:07:04 |
| 21 | Q.  What statement is that? | 12:07:05 |
| 22 | A.  The statement was recorded, the clip. | 12:07:05 |
| 23 | Q.  What's the context that you would put it in? | 12:07:09 |
| 24 | A.  My statement was geared towards the subject's | 12:07:14 |
| 25 | mindset.  I can't change someone's mindset. | 12:07:17 |

84

Catherine Placek
June 23, 2017

```
 1         Q.  What subjects were you talking about?        12:07:21

 2         A.  The subjects that frequent Lunada Bay and     12:07:23

 3    surf there.                                            12:07:27

 4         Q.  Yeah.                                         12:07:28

 5         A.  When he was talking about people and asking   12:07:28

 6    if it's okay that they say that they can't be here,    12:07:31

 7    I'm stating that I can't change someone's mindset if   12:07:36

 8    they want somebody else not to be there.               12:07:39

 9         Q.  Okay.  Is there any greater context that      12:07:43

10    would be helpful to understand that video?             12:07:47

11         MR. FLAUTT:  Vague and ambiguous as to            12:07:51

12    greater context.                                       12:07:53

13         THE WITNESS:  I don't understand what you         12:07:53

14    mean.                                                  12:07:55

15    BY MR. FRANKLIN:                                       12:07:56

16         Q.  You said that the statement was taken out of  12:07:56

17    context.  And I asked you to give me some context.     12:07:59

18         Is there anything that you can add to provide     12:08:01

19    context to that conversation?                          12:08:04

20         A.  The context to the statement of, that was     12:08:05

21    recorded and published was geared towards me saying    12:08:08

22    that I can't change someone's mindset.                 12:08:14

23         MR. FLAUTT:  Belated objection, vague and         12:08:17

24    ambiguous, compound, calls for speculation, calls for  12:08:20

25    someone else's state of mind.                          12:08:22
```

| | | |
|---|---|---|
| 1 | A.  I don't recall. | 12:09:29 |
| 2 | Q.  And other than the Chief of Police, did any | 12:09:30 |
| 3 | other sworn officer speak to you about this? | 12:09:39 |
| 4 | A.  No. | 12:09:41 |
| 5 | Q.  Did any other employees at Palos Verdes | 12:09:41 |
| 6 | Estates speak to you about this? | 12:09:46 |
| 7 | A.  No. | 12:09:47 |
| 8 | Q.  Did any elected officials speak to you about | 12:09:48 |
| 9 | this? | 12:09:51 |
| 10 | A.  No. | 12:09:51 |
| 11 | Q.  I'm going to play a copy of this audio for | 12:09:52 |
| 12 | you.  And I'll play it once -- actually, I'll play it | 12:10:05 |
| 13 | once so the videographer can capture it. | 12:10:11 |
| 14 | I just want you to listen to it once.  And | 12:10:17 |
| 15 | then I'm going to flip it around so you can see it, | 12:10:21 |
| 16 | too. | 12:10:25 |
| 17 | So, the first time it's just to hear it and | 12:10:25 |
| 18 | so we can capture it.  And then I'm going to flip it | 12:10:29 |
| 19 | around and then I'll ask you questions about it -- | 12:10:32 |
| 20 | A.  Okay. | 12:10:38 |
| 21 | Q.  -- is that okay? | 12:10:38 |
| 22 | A.  Yes. | 12:10:39 |
| 23 | MR. FRANKLIN:  And so this is Plaintiffs' | 12:10:40 |
| 24 | Exhibit 002054. | 12:10:50 |
| 25 | MR. FLAUTT:  I'm going to object on | 12:10:51 |

87

Atkinson-Baker Court Reporters
www.depo.com

| | | |
|---|---|---|
| 1 | foundation grounds.  The video yesterday was unedited | 12:10:53 |
| 2 | and compromised and it's not.  That's my objection, | 12:10:58 |
| 3 | foundation. | 12:11:04 |
| 4 | MS. BACON:  Join. | 12:11:05 |
| 5 | MS. PROBST:  Join. | 12:11:06 |
| 6 | MR. FLAUTT:  Join.  Also, calls for | 12:11:08 |
| 7 | speculation on her part.  She may not know what the | 12:11:10 |
| 8 | document is or if it's authentic.  And also she | 12:11:12 |
| 9 | doesn't have a basis to form this opinion. | 12:11:16 |
| 10 | MR. FRANKLIN:  That's why I'm going to ask | 12:11:18 |
| 11 | her about it. | 12:11:20 |
| 12 | MR. WARD:  Let's make sure what's happening | 12:11:22 |
| 13 | right now.  You're just playing the video? | 12:11:24 |
| 14 | MR. FRANKLIN:  Initially, I'll just play the | 12:11:26 |
| 15 | video so we can capture it and then I'll flip it | 12:11:28 |
| 16 | around.  And then I'll ask her questions about the | 12:11:31 |
| 17 | video. | 12:11:34 |
| 18 | MR. WARD:  So, the litany of objections that | 12:11:36 |
| 19 | we all heard are just to what, the video itself? | 12:11:38 |
| 20 | MR. FLAUTT:  Yes. | 12:11:45 |
| 21 | MR. WARD:  There we go, just to make sure | 12:11:46 |
| 22 | that we're clear here. | 12:11:47 |
| 23 | MS. PROBST:  It's to 002054. | 12:11:53 |
| 24 | MR. DIEFFENBACH:  Correct, and also to its | 12:12:02 |
| 25 | use. | 12:12:04 |

Catherine Placek
June 23, 2017

Atkinson-Baker Court Reporters
www.depo.com

```
 1    BY MR. FRANKLIN:                                   12:12:11
 2         Q.  And have you not heard the video before?  12:12:11
 3         A.  If this is the same video that I think it is,  12:12:16
 4    I've heard it once.                               12:12:18
 5         Q.  One time, okay.                          12:12:19
 6             And did you hear it with the part down on the  12:12:21
 7    beach, too, or just you?                          12:12:23
 8         A.  I'm not sure which one you're talking about.  12:12:26
 9    I'd have to hear it.                              12:12:29
10             MR. FRANKLIN:  Okay.  We'll play it all the  12:12:31
11    way through, the whole Guardian video.            12:12:32
12             THE WITNESS:  Okay.                       12:12:36
13             THE VIDEOGRAPHER:  Okay, standby, just a   12:12:43
14    moment.                                           12:12:45
15                                                       12:13:04
16             (Discussion held off the record.)         12:13:04
17                                                       12:14:35
18    BY MR. FRANKLIN:                                   12:14:35
19         Q.  And in terms of the --                    12:14:35
20             THE VIDEOGRAPHER:  Just a minute; okay.   12:14:38
21    BY MR. FRANKLIN:                                   12:14:56
22         Q.  And in terms of the female voice heard at the  12:14:57
23    end of that, is that your voice?                  12:15:01
24         A.  Yes.                                      12:15:03
25         Q.  And does that refresh your memory in terms of  12:15:04
```

89

Catherine Placek
June 23, 2017

Atkinson-Baker Court Reporters
www.depo.com

```
 1    that entire video; had you heard the first part of     12:15:13
 2    the video before?                                        12:15:16
 3           MR. FLAUTT:  Vague and ambiguous, assumes        12:15:17
 4    facts not in evidence, lacks foundation, calls for       12:15:19
 5    speculation.  She doesn't even know that it's a          12:15:22
 6    complete video.  Please answer.                          12:15:25
 7           THE WITNESS:  I'm not sure.  I think it           12:15:26
 8    sounds somewhat familiar.                                12:15:29
 9    BY MR. FRANKLIN:                                         12:15:30
10       Q.  But you think that you might have just           12:15:31
11    listened to it one time before?                          12:15:33
12       A.  Possibly, yes.                                    12:15:34
13       Q.  More than one time, do you know?                 12:15:35
14       A.  No.  It wouldn't have been more than one         12:15:37
15    time.                                                    12:15:39
16       Q.  Okay.  Did you have an occasion to listen to     12:15:39
17    it with Mr. Wellington Hengst?                           12:15:43
18       A.  No.                                               12:15:45
19       Q.  How about did you have an occasion to listen     12:15:46
20    to it with the Chief of Police Jeff Kepley?              12:15:49
21       A.  No.                                               12:15:52
22       Q.  In terms of the phrase, we know all of them,     12:15:52
23    in terms of your understanding, do you know what you     12:16:06
24    meant by that?                                           12:16:08
25       A.  What I meant is that we're a small community      12:16:10
```

90

Catherine Placek
June 23, 2017

| | | |
|---|---|---|
| 1 | and we know a lot of residents within the City.  And | 12:16:14 |
| 2 | we know people that frequently surf the area. | 12:16:19 |
| 3 | Q.  And were you referring to anybody in | 12:16:27 |
| 4 | particular when you said that? | 12:16:29 |
| 5 | A.  Pertaining to what? | 12:16:31 |
| 6 | Q.  We know all of them? | 12:16:32 |
| 7 | MS. BACON:  Lacks foundation, calls for | 12:16:36 |
| 8 | speculation. | 12:16:38 |
| 9 | THE WITNESS:  I'm confused.  Are you asking | 12:16:41 |
| 10 | about the "we" or the "them" part? | 12:16:42 |
| 11 | BY MR. FRANKLIN: | 12:16:44 |
| 12 | Q.  I guess it's both. | 12:16:44 |
| 13 | What were you referring to when you say "we"? | 12:16:46 |
| 14 | MR. FLAUTT:  Vague and ambiguous, lacks | 12:16:48 |
| 15 | foundation, calls for speculation.  Please answer. | 12:16:50 |
| 16 | THE WITNESS:  Certain people in the | 12:16:52 |
| 17 | department are familiar with people that surf in that | 12:16:54 |
| 18 | area. | 12:16:57 |
| 19 | BY MR. FRANKLIN: | 12:16:57 |
| 20 | Q.  Were you including yourself as part of that | 12:16:57 |
| 21 | "we"? | 12:17:00 |
| 22 | A.  No. | 12:17:01 |
| 23 | Q.  And so are you referring to the Police | 12:17:02 |
| 24 | Department? | 12:17:05 |
| 25 | A.  Certain members of the Police Department. | 12:17:05 |

91

Atkinson-Baker Court Reporters
www.depo.com

```
 1    some familiarity with people that surf Lunada Bay?      12:18:09
 2         MR. FLAUTT:  Objection, vague and ambiguous,       12:18:13
 3    lacks foundation, calls for speculation, calls for      12:18:16
 4    double hearsay.                                         12:18:19
 5         THE WITNESS:  I know that he knows a lot of        12:18:20
 6    people around that area.                                12:18:22
 7    BY MR. FRANKLIN:                                        12:18:23
 8         Q.  And when it was "them", what were you          12:18:23
 9    referring to when you said "them"; were those the       12:18:29
10    people that surf Lunada Bay?                            12:18:32
11         A.  Yes.                                           12:18:35
12         Q.  And when you said they're infamous around      12:18:35
13    here, what did you mean with "they"; would it be the    12:18:42
14    surfers again around Lunada Bay?                        12:18:45
15         A.  Yes.                                           12:18:48
16         Q.  And infamous, what did you mean my infamous?   12:18:48
17         A.  A lot of people know that area as a surf       12:18:52
18    spot --                                                 12:18:57
19         Q.  Okay.                                          12:18:57
20         A.  -- and that people surf there.                 12:18:58
21         Q.  Anything else?                                 12:19:00
22         A.  No.                                            12:19:01
23         Q.  And you used infamous as opposed to famous;    12:19:02
24    is there a reason that you used infamous?               12:19:06
25         A.  Just poor word choice.                         12:19:08
```

93

Catherine Placek
June 23, 2017

1    Q.  Around here, what were you referring to, the          12:19:11

2    City of Palos Verdes Estates or the police                12:19:14

3    department?                                               12:19:17

4    A.  The City of Palos Verdes Estates.                     12:19:17

5    Q.  So, you were saying that they are well-known          12:19:20

6    in the City of Palos Verdes Estates?                      12:19:22

7    A.  Yes.                                                  12:19:25

8    Q.  When you say, they're pretty much grown men,          12:19:25

9    what were you referring to when you said "they", what    12:19:28

10   was "they" in that context?                              12:19:31

11        MS. BACON:  Lacks foundation, calls for             12:19:33

12   speculation.                                             12:19:35

13        THE WITNESS:  People that surf in that area.        12:19:36

14   BY MR. FRANKLIN:                                         12:19:40

15   Q.  And then later you said in the next sentence,        12:19:40

16   they don't like anyone that's not one of the Bay Boys    12:19:44

17   surfing down there.                                      12:19:50

18        When you say that "they", does that refer to        12:19:51

19   the surfers from Lunada Bay?                             12:19:55

20   A.  Yes.                                                 12:19:57

21        MS. BACON:  Same objection.                         12:19:59

22   BY MR. FRANKLIN:                                         12:20:00

23   Q.  And not one of the Bay Boys, were you               12:20:00

24   referring to the Bay Boys being the surfers from         12:20:02

25   Lunada Bay?                                              12:20:05

94

Atkinson-Baker Court Reporters
www.depo.com

```
 1         A.  The people that frequently surf in Lunada     12:20:05

 2    Bay.                                                    12:20:09

 3         MR. FLAUTT:  Belated objection, vague and          12:20:09

 4    ambiguous, compound, lacks foundation.                  12:20:10

 5         MS. BACON:  Join.                                  12:20:13

 6    BY MR. FRANKLIN:                                        12:20:14

 7         Q.  When you said it's literally like a game with  12:20:14

 8    kids on a school yard to them, is that "them" also      12:20:20

 9    referring to the surfers that regularly surf Lunada     12:20:23

10    Bay?                                                    12:20:27

11         A.  Yes.                                           12:20:27

12         Q.  And they don't want you playing on their       12:20:28

13    swing set, that "they" you were referring to the        12:20:32

14    surfers that regularly frequent Lunada Bay again?       12:20:34

15         A.  Yes.                                           12:20:38

16         MS. BACON:  Same objection.                        12:20:39

17    BY MR. FRANKLIN:                                        12:20:40

18         Q.  When you said, but you know it is what it is,   12:20:40

19    what did that phrase mean to you?                       12:20:44

20         MR. FLAUTT:  Vague and ambiguous, lacks            12:20:46

21    foundation, calls for speculation.                      12:20:48

22         MS. BACON:  Join.                                  12:20:50

23         THE WITNESS:  As I said previously, it was         12:20:52

24    geared towards their mindset.  Their mindset of them    12:20:54

25    not wanting to, you know, as I quoted there, their      12:20:58
```

95

Atkinson-Baker Court Reporters
www.depo.com

```
 1    mindset is what it is.  I can't change someone's        12:21:01

 2    mindset.                                                12:21:06

 3    BY MR. FRANKLIN:                                        12:21:06

 4        Q.  So, you were referring to the surfers from      12:21:07

 5    Lunada Bay or the man that came in; whose mindset        12:21:09

 6    were you talking about?                                  12:21:13

 7            MR. FLAUTT:  Objection, compound, vague and     12:21:14

 8    ambiguous.                                               12:21:16

 9            THE WITNESS:  The people that surf there.        12:21:17

10    BY MR. FRANKLIN:                                        12:21:20

11        Q.  Okay.  If you feel uncomfortable, were you      12:21:20

12    referring to the man that came in and was asking you    12:21:24

13    questions?                                               12:21:28

14            MR. FLAUTT:  Vague and ambiguous, compound.     12:21:28

15            THE WITNESS:  In this particular statement,     12:21:32

16    yes.                                                     12:21:34

17    BY MR. FRANKLIN:                                        12:21:34

18        Q.  And if you feel uncomfortable, what did you     12:21:34

19    mean by uncomfortable?                                   12:21:38

20        A.  I don't know how to elaborate on feeling         12:21:39

21    uncomfortable, sir.                                      12:21:43

22        Q.  Did you have the impression that the man was    12:21:45

23    afraid to go down there?                                 12:21:48

24        A.  No.                                              12:21:49

25        Q.  Why did you use the word "uncomfortable"?       12:21:50
```

96

Catherine Placek
June 23, 2017

Atkinson-Baker Court Reporters
www.depo.com

| | | |
|---|---|---|
| 1 |       MR. FLAUTT:  Vague and ambiguous, calls for | 12:21:55 |
| 2 | speculation, lacks foundation. | 12:21:56 |
| 3 |       THE WITNESS:  It would be more geared to the | 12:21:59 |
| 4 | other question that I remember the subject asking if, | 12:22:02 |
| 5 | you know, is it okay for people to say that they're | 12:22:05 |
| 6 | not allowed to surf there or they're not welcome | 12:22:08 |
| 7 | there. | 12:22:12 |
| 8 | BY MR. FRANKLIN: | 12:22:12 |
| 9 |    Q.  And so when you said that, if someone is, one | 12:22:12 |
| 10 | of the local surfers down there said they weren't | 12:22:18 |
| 11 | welcome, is that what you're referring to | 12:22:24 |
| 12 | uncomfortable? | 12:22:28 |
| 13 |    A.  Yes. | 12:22:30 |
| 14 |       MR. FLAUTT:  Lacks foundation, calls for | 12:22:30 |
| 15 | speculation. | 12:22:33 |
| 16 | BY MR. FRANKLIN: | 12:22:33 |
| 17 |    Q.  When you said, you know then, don't do it | 12:22:33 |
| 18 | what were you referring to? | 12:22:35 |
| 19 |    A.  I don't encourage anyone to do something that | 12:22:36 |
| 20 | they feel uncomfortable in doing.  That puts | 12:22:41 |
| 21 | liability on the City; however, what you did not see | 12:22:45 |
| 22 | in that recording, you can see that its clipped and | 12:22:48 |
| 23 | it's not a full recording because you didn't hear the | 12:22:51 |
| 24 | question that he asked me prior is I encouraged him | 12:22:53 |
| 25 | pretty much for the remainder of the nine minutes and | 12:22:57 |

Catherine Placek
June 23, 2017

Atkinson-Baker Court Reporters
www.depo.com

```
 1          MR. FLAUTT:  Vague and ambiguous, lacks          14:18:53
 2    foundation.                                            14:18:55
 3    BY MR. FRANKLIN:                                       14:18:55
 4          Q.  Have you ever had to direct someone to the   14:18:55
 5    Homes Association or you don't do that, it's a         14:18:58
 6    different number?                                      14:19:01
 7          A.  It's a different number.  That number would  14:19:01
 8    be provided to them.                                   14:19:04
 9          Q.  Do you have that number?                     14:19:05
10          A.  I believe I would provide that number to     14:19:06
11    City Hall and they can transfer internally.            14:19:09
12          Q.  Is there a community watch program in        14:19:12
13    Palos Verdes Estates?                                  14:19:22
14          A.  Are you referring to neighborhood watch?     14:19:24
15          Q.  Yes.                                         14:19:27
16          A.  Yes.                                         14:19:28
17          Q.  And do you interact with anybody in the      14:19:28
18    neighborhood watch program?                            14:19:31
19          A.  Not unless they call to report something.    14:19:33
20          Q.  And in terms of reports, is there a program  14:19:35
21    called next-door neighbor?                             14:19:41
22          A.  Are you talking about the website Next Door? 14:19:42
23          Q.  Yes, Next Door?                              14:19:49
24          A.  I've heard of it.                            14:19:50
25          Q.  Is there an E-Mail that goes out to Next     14:19:51
```

144

Catherine Placek
June 23, 2017

```
  1    Door?                                               14:19:54

  2         A.  I don't have access to Next Door.          14:19:54

  3         Q.  And in terms of neighborhood watch; is that 14:19:57

  4    what you call it?                                   14:20:04

  5         A.  Yes.                                        14:20:06

  6         Q.  Are there statistics on crime reports that 14:20:06

  7    are made available to neighborhood watch?           14:20:12

  8         MR. FLAUTT:  Lacks foundation, calls for        14:20:14

  9    speculation.                                        14:20:16

 10         THE WITNESS:  I'm not sure.                     14:20:16

 11    BY MR. FRANKLIN:                                    14:20:25

 12         Q.  Do you work with the C.E.R.T. program at all? 14:20:25

 13         A.  I do not.                                   14:20:27

 14         Q.  C.E.R.T., County Emergency Response Team.   14:20:33

 15         Have you heard any persons in your department   14:20:44

 16    calling localism in Palos Verdes Estates a myth?    14:20:50

 17         MR. FLAUTT:  Vague and ambiguous, lacks         14:20:56

 18    foundation, calls for speculation.                  14:20:58

 19         THE WITNESS:  Yes.                              14:20:59

 20    BY MR. FRANKLIN:                                    14:21:00

 21         Q.  Who have you heard say that?                14:21:00

 22         A.  I don't remember the names.                 14:21:02

 23         Q.  More than one person?                       14:21:03

 24         A.  Possibly.                                   14:21:05

 25         Q.  Would they have been sworn personnel?       14:21:09
```

145

Atkinson-Baker Court Reporters
www.depo.com

| | | |
|---|---|---|
| 1 | A.  Yes. | 14:21:13 |
| 2 | Q.  Would it have been Steve Barber? | 14:21:14 |
| 3 | A.  I'm not sure.  Again I don't know the name. | 14:21:16 |
| 4 | Q.  Velez? | 14:21:19 |
| 5 | A.  Again, sir, I don't know the name. | 14:21:22 |
| 6 | Q.  Would it have been recently? | 14:21:24 |
| 7 | A.  No. | 14:21:26 |
| 8 | Q.  When would you have heard this? | 14:21:26 |
| 9 | A.  Probably two years ago. | 14:21:28 |
| 10 | Q.  Have you heard any elected officials call it | 14:21:32 |
| 11 | a myth? | 14:21:36 |
| 12 | A.  No. | 14:21:37 |
| 13 | Q.  What about the phrase urban legend, have you | 14:21:37 |
| 14 | heard that? | 14:21:40 |
| 15 | A.  No. | 14:21:41 |
| 16 | Q.  Do you know where you would have heard that | 14:21:41 |
| 17 | localism at Lunada Bay was a myth? | 14:21:48 |
| 18 | A.  No. | 14:21:51 |
| 19 | Q.  Would it have been during work time? | 14:21:52 |
| 20 | A.  I would assume so.  I don't hang out with | 14:21:54 |
| 21 | them on my off time. | 14:21:57 |
| 22 | Q.  Do you think that's accurate? | 14:21:58 |
| 23 | A.  I don't understand your question. | 14:22:04 |
| 24 | Q.  That localism at Lunada Bay is a myth? | 14:22:05 |
| 25 | MR. FLAUTT:  Vague and ambiguous, lacks | 14:22:09 |

146

1              REPORTER'S CERTIFICATION OF CERTIFIED COPY

2

3

4              I, ANGELIQUE MELODY FERRIO, CSR No. 6979, a

5    Certified Shorthand Reporter in the State of California,

6    certify that the foregoing pages are a true and correct

7    copy of the original deposition of CATHERINE PLACEK,

8    taken on Friday, June 23, 2017.

9              I declare under penalty of perjury under the

10   laws of the State of California that the foregoing is

11   true and correct.

12             Dated this 23rd day of June, 2017.

13        (SIGNATURE WAIVED)

14

15

16

17

18        Angelique Melody Ferrio
          CSR No. 6979

19

20

21

22

23

24

25