# EXHIBIT 14

Christopher Taloa
January 05, 2017

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

Cory Spencer, et al.,

    Plaintiffs,

vs.

Lunada Bay Boys, et al.,

    Defendants.

Case No.
2:16-CV-02129-SJO
(RAOx)

VIDEOTAPED DEPOSITION OF CHRISTOPHER TALOA

January 5, 2017

10:03 a.m.

1055 Wilshire Boulevard, 11th Floor

Los Angeles, California

REPORTED BY:

Angela M. Schubert

CSR No. 12027, CSR

Christopher Taloa
January 05, 2017

```
 1  APPEARANCES:
 2
 3              For Plaintiffs:
 4                  LAW OFFICE OF VICTOR OTTEN
                    VICTOR OTTEN
 5                  3620 Pacific Coast Highway
                    Suite 100
 6                  Torrance, California  90505
                    310.378.8533
 7                  310.347.4225   fax
                    Vic@OttenLawPC.com
 8
 9              For Defendant Brant Blakeman:
10                  VEATCH CARLSON
                    JOHN P. WORGUL
11                  1055 Wilshire Boulevard, 11th Floor
                    Los Angeles, California  90017
12                  213.381.2861
                    213.383.6370   fax
13                  JWorgul@VeatchFirm.com
14
                For Defendant Sang Lee:
15
                    BOOTH, MITCHEL & STRANGE
16                  JACKIE K. VU
                    707 Wilshire Boulevard, Suite 3000
17                  Los Angeles, California  90017
                    213.738.0100
18                  213.380.3308 fax
                    JKVu@BoothMitchel.com
19
20              For Defendant Angelo Ferrara and NF:
21                  LAW OFFICE OF MARK C. FIELDS
                    MARK C. FIELDS
22                  333 South Hope Street, 35th Floor
                    Los Angeles, California  90071
23                  213.617.5225
                    213.629.4520 fax
24                  Fields@MarkFieldsLaw.com
25
```

Christopher Taloa
January 05, 2017

```
 1  APPEARANCES: (Cont.)

 2
            For Defendant Sang Lee:
 3
                LEWIS, BRISBOIS, BISGAARD & SMITH
 4              TERA A. LUTZ
                633 West 5th Street, Suite 4000
 5              Los Angeles, California   90071
                213.680.5004
 6              213.250.7900 fax
                Tera.Lutz@LewisBrisbois.com
 7

 8          For Defendants Alan Johnston aka Jalian
            Johnston:
 9
                LAW OFFICE OF J. PATRICK CAREY
10              J. PATRICK CAREY
                1230 Rosecrans Avenue, Suite 300
11              Manhattan Beach, California   90266
                310.526.2237
12              310.526.2237 fax
                Pat@PatCareyLaw.com
13

14          For Defendants City of Palos Verdes
            Estates and Chief of Police Jeff Kepley:
15
                KUTAK ROCK, LLP
16              JACOB SONG
                5 Park Plaza, Suite 1500
17              Irvine, California   92614
                949.417.0999
18              949.417.0979 fax
                Jacob.Song@KutakRock.com
19

20          For Defendant Michael Ray Papayans:

21              HAVEN LAW
                PETER T. HAVEN
22              1230 Rosecrans Avenue, Suite 300
                Manhattan Beach, California   90266
23              213.842.4617
                213.477.2137  fax
24              Peter@HavenLaw.com

25
```

Christopher Taloa
January 05, 2017

```
 1  APPEARANCES:   (Cont.)

 2
            For Defendants Frank Ferrara and Charlie
 3          Ferrara:

 4              BREMER, WHYTE, BROWN & O'MEARA
                LAURA L. BELL
 5              21271 Burbank Boulevard, Suite 100
                Woodland Hills, California   91367
 6              818.712.9800
                818.712.9900   fax
 7              LBell@BremerWhyte.com

 8
            For Defendant Brant Blakeman: (Telephonic
 9          appearance)

10              BUCHALTER NEMER
                ROBERT S. COOPER
11              1000 Wilshire Boulevard, Suite 1500
                Los Angeles, California   90017
12              213.891.5230
                213.630.5609   fax
13              RCooper@Buchalter.com

14
            Also Present:
15
                STAN BEVERLY, Videographer
16

17

18

19

20

21

22

23

24

25
```

Christopher Taloa
January 05, 2017

```
 1                LOS ANGELES, CALIFORNIA;
 2          THURSDAY, JANUARY 5, 2017, 10:03 A.M.
 3
 4                   CHRISTOPHER TALOA,
 5       having been first duly sworn, was examined and
 6                    testified as follows:
 7
 8                        EXAMINATION
 9
10  BY MR. WORGUL:
11       Q.  Mr. Taloa, could you tell me your full legal
12  name?
13       A.  Christopher Bachmann Taloa.
14       Q.  Could you spell that for us?
15       A.  Christopher, C-h-r-i-s-t-o-p-h-e-r, Bachmann,
16  B-a-c-h-m-a-n-n, Taloa, T-a-l-o-a.
17       Q.  Okay.  What I'm going to do is attach as
18  Exhibit 190 the deposition notice for you to be here
19  today and Exhibit 191 is a copy of the subpoena with
20  the attached proof of service for here today.
21          (Exhibits 190 and 191 marked)
22          MR. WORGUL:  Do you need the notice, Victor?
23          MR. OTTEN:  I'm okay.
24  BY MR. WORGUL:
25       Q.  Mr. Taloa, I'm going to place those exhibits
```

U.S. LEGAL SUPPORT
(800) 993-4464

Exhibit D, page 151

9

```
 1       Q.  Going onto the next page, page five?
 2       A.  Yeah.
 3       Q.  Paragraph ten, the incident with your friends
 4   Keola Sakima and Theodore Encarnado?
 5       A.  Yeah.
 6       Q.  Was that incident ever reported to the Palos
 7   Verdes Estates police?
 8       A.  Not that I know of.
 9       Q.  Skipping ahead to page seven, that's the next
10   page.  It's a couple pages ahead.
11       A.  Okay.
12       Q.  So looking at paragraph 16?
13       A.  Okay.  Go for it.
14       Q.  Can you read that first sentence?
15       A.  "My friends and I began researching Lunada Bay
16   localism and police involvement.  I had heard that some
17   Bay Boys had connections in the police department and
18   that some police officers were racist.  On December 30,
19   2000 and --
20       Q.  You can stop.  Just the first sentence.  Thank
21   you.
22       A.  Okay.
23       Q.  So again, where did you hear the Bay Boys had
24   connections to the police department or that officers
25   were racist?  Who did you hear that from?
```

```
 1       A.   Several individuals who tried to surf up
 2   there.
 3       Q.   Do you have names?
 4       A.   I can give you a Dave Moore, a Greg Gonzales,
 5   Chris Peterson, the Guardian, and Dennis Martinez, and
 6   a couple of the guys that surf in the Manhattan Beach
 7   area, body boarders and surfers.  I wish I could give
 8   you all the names.
 9       Q.   Okay.
10       A.   It was a random consensus of a lot of
11   individuals saying don't go up there, black flag.
12       Q.   Saying don't go up there because of the
13   localism or don't go up there because of the police?
14       A.   It was a tie in between the both.
15       Q.   And do you have any personal experiences with
16   racism from police officers in Palos Verdes Estates?
17       A.   No.  I don't.  Huh-uh.
18       Q.   And then other than what people have told you,
19   are you personally aware of what you call connections
20   between the Lunada Bay Boys and the Palos Verdes
21   Estates Police Department?
22       A.   Just when I was told I was going to get raped
23   in the butt.
24       Q.   Yes.  That's unpleasant.
25            MR. HAVEN:  So stipulated.
```

```
 1            THE WITNESS:  I don't doubt it.  I'd rather go
 2   in the gym have you kick me in the head with your legs
 3   and have that than have that happen any day.  I'll get
 4   up and you knock me out daily for that.
 5            MR. SONG:  Okay.
 6   BY MR. SONG:
 7       Q.   So moving on to the 2014 MLK Day -- enough
 8   laughter.
 9       A.   Yeah.  I know.  I'm sorry.
10       Q.   So going back to the 2014 MLK Day, I mean can
11   I call it like a protest paddle out?  Is that fair?
12       A.   Yeah.  Safe, peaceful, protest paddle out.
13       Q.   So you mentioned a conversation with a Palos
14   Verdes Police Department officer on the water on a
15   boat?
16       A.   Yeah.  This is what I was told.
17       Q.   Oh, you were told that?
18       A.   I didn't have it personally.  No.
19       Q.   And do you know who that conversation was --
20       A.   Man, I'll get you that name because it's right
21   on the tip of my tongue.  He's a loose weirdo body
22   boarder kid.
23       Q.   Okay.
24       A.   He started quoting Tupac and all kinds of
25   whacky stuff.  He's out of his mind.
```

```
 1        Q.   And that whacky friend talked to the police
 2   officer?
 3        A.   Yeah.
 4        Q.   Correct me if I'm wrong but you described him
 5   as telling him -- they're telling him those were good
 6   cops?
 7        A.   He didn't feel that comfort from the cops.
 8        Q.   Oh, he didn't?
 9        A.   He did not feel the comfort from the cop.  The
10   cop told him -- from what I was told, the cop told him,
11   oh, he asked the police officer because he paddled his
12   kayak all the way out there from Redondo.  He didn't
13   want to drive up there.  He was worried about his car.
14   So he took his kayak.  Parked the kayak out there.
15   Started piling in inward and he asked the cop on the
16   boat if it was okay to surf and he said, well, we'll
17   see how you get along with the locals and I saw him --
18   I couldn't believe that anybody even showed.  I was so
19   happy.  So happy they showed up.
20             I felt like a donkey by myself and he was
21   shadowed by a stand up paddler and the guy just kind of
22   like right in front of him and the police boat circled
23   him.  Circled, I don't mean like circles but like
24   around him and all the way till he got in more and then
25   he had another group of guys paddle over to him and
```

Christopher Taloa
January 05, 2017

```
 1       A.   No.  I didn't get physically hurt.  That's the
 2  most important thing.  If I can go home without the
 3  stitches, I don't want to go to the cop shop and do all
 4  that.  These are young cops and I sent them over to my
 5  friend's house, my friend's restaurant, and my aunt --
 6  she's not my real aunt but a friend of mine to go there
 7  and stuff your face.  Go there and stuff your face.
 8  She really liked them up there.
 9       Q.   Okay.  So the police officers approached you
10  asked if you wanted to press charges?
11       A.   Officer Gonzales.  I thought you'd like that.
12       Q.   Officer Gonzales approached you, asked you
13  based on anything that happened that day if you wanted
14  to move forward with any sort of law enforcement action
15  and you declined?
16       A.   Yes.
17       Q.   That's correct?
18       A.   Yes.
19       Q.   Okay.  And how did you feel about the police
20  presence during the MLK paddle out?
21       A.   Every time I come in and said anything about
22  the cops up there -- I said everything that had
23  happened and they have been nothing but good to me.
24  They have been there for us and I am so thankful and
25  grateful on that aspect in that manner.
```

1    A.    That statement -- my belief -- that's my
2  belief.  Yes.  It was my belief.  I never said that to
3  anybody out there because I thought that was like -- I
4  wasn't sure, you know, but that's my belief.
5    Q.    Okay.  But you said the cops have been there
6  for you or the police have been there for you and
7  you're thankful for it?
8    A.    Oh, yes.  Yes.  Trust, I feel what you're
9  saying right now.  It's like contradictory.
10   Q.    A little bit.
11   A.    I feel you.  But like I said, I don't know
12 who's real and who's not so I'm very cautious about
13 where I'm going and what I'm approaching.  I don't want
14 to be down some cliff and get arrested and thrown in a
15 holding cell like that.  That was the scariest SOB-ish
16 thing I've ever heard and I was scared sideways on
17 that.
18   Q.    But the statement that you said the locals
19 claim to own the police --
20   A.    Yeah.
21   Q.    -- it's based on this statement, We own the
22 cops from this person; right?
23   A.    Him and also from Michael Ray Papayans.
24 Michael Ray Papayans told me straight.
25        MR. CAREY:  I'm sorry .  Just to interrupt.

U.S. LEGAL SUPPORT
(800) 993-4464

306

1  I don't want to always be the guy calling.  It sounds
2  like I'm a just -- between -- like honestly, I don't
3  want to be this whiny little asshole harassing the
4  police to go take care of this.  I think it's wrong in
5  a lot of ways and I don't want to be the bad guy in
6  their eyes.
7      Q.  So each time you've gone to Lunada Bay, you've
8  either called the police yourself to let them know
9  you're going to be going or ahead of time or you've had
10 someone act on your proxy and call on your behalf?
11     A.  One of us.  If we all were going out, one of
12 us has to call.
13     Q.  Okay.
14     A.  We need to make sure we're safe and legal.
15     Q.  So have you called the police and told them?
16     A.  I think I told them once or twice but we
17 always spread it out so everyone has an opportunity to
18 call in.
19     Q.  So when you called and said, hey, I'm going to
20 be going to Lunada Bay, did they provide extra patrols?
21     A.  Yes.  They have been on it with me.
22     Q.  And other times when other people called on
23 your behalf, did the police also provide extra patrols?
24     A.  100 percent.  It seems that they had been
25 there every time we called.

Christopher Taloa
January 05, 2017

1  because of the older incident with the guy -- that guy
2  getting beat up by the Venice guys on the North Shore.
3      Q.  So when he made that comment to you, you
4  thought he thought you were someone else?
5      A.  Totally.
6      Q.  Thank you.  All done.
7          MR. OTTEN:  We reserve our right.  We want to
8  review it.
9          MR. WORGUL:  We're done.
10         MS. REPORTER:  Stip?
11         MR. HAVEN:  There's no stip.  It is Federal.
12         MS. REPORTER:  Copies?
13         MR. WORGUL:  Of course, the original and one.
14 Need it expedited by Monday morning.
15         MR. SONG:  I would also like an expedited copy
16 please.
17         MR. HAVEN:  A copy please but not expedited.
18         (Deposition concluded at 7:22 p.m.)
19
20
21
22
23
24
25

Christopher Taloa
January 05, 2017

```
 1              DECLARATION UNDER PENALTY OF PERJURY
 2
 3         I, Christopher Taloa, do hereby certify under
 4   penalty of perjury that I have read the foregoing
 5   transcript of my deposition taken on January 5, 2017;
 6   that I have made such corrections as appear noted
 7   herein in ink, initialed by me; that my testimony as
 8   contained herein, as corrected, is true and correct.
 9
10         Dated this _____ day of _____,
11   2017, at _____,
12   California.
13
14
15
16
17   _____
18   Christopher Taloa
19
20
21
22
23
24
25
```

Christopher Taloa
January 05, 2017

| | |
|---|---|
| 1 | DEPOSITION ERRATA SHEET |
| 2 | Page No._____ Line No._____ |
| 3 | Change:_____ |
| 4 | Reason for change:_____ |
| 5 | Page No._____ Line No._____ |
| 6 | Change:_____ |
| 7 | Reason for change:_____ |
| 8 | Page No._____ Line No._____ |
| 9 | Change:_____ |
| 10 | Reason for change:_____ |
| 11 | Page No._____ Line No._____ |
| 12 | Change:_____ |
| 13 | Reason for change:_____ |
| 14 | Page No._____ Line No._____ |
| 15 | Change:_____ |
| 16 | Reason for change:_____ |
| 17 | Page No._____ Line No._____ |
| 18 | Change:_____ |
| 19 | Reason for change:_____ |
| 20 | Page No._____ Line No._____ |
| 21 | Change:_____ |
| 22 | Reason for change:_____ |
| 23 | |
| 24 | _____  _____ |
| 25 | CHRISTOPHER TALOA           Dated |

Christopher Taloa
January 05, 2017

| | |
|---|---|
| 1 | REPORTER'S CERTIFICATE |
| 2 | I, Angela Schubert, CSR No. 12027, Certified |
| 3 | Shorthand Reporter, certify: |
| 4 | That the foregoing proceedings were taken |
| 5 | before me at the time and place therein set forth, at |
| 6 | which time the witness was put under oath by me; |
| 7 | That the testimony of the witness, the |
| 8 | questions propounded, and all objections and statements |
| 9 | made at the time of the examination were recorded |
| 10 | stenographically by me and were thereafter transcribed; |
| 11 | That a review of the transcript by the |
| 12 | deponent was required; |
| 13 | That the foregoing is a true and correct |
| 14 | transcript of my shorthand notes so taken. |
| 15 | I further certify that I am not a relative or |
| 16 | employee of any attorney of the parties, nor |
| 17 | financially interested in the action. |
| 18 | I declare under penalty of perjury under the |
| 19 | laws of California that the foregoing is true and |
| 20 | correct. |
| 21 | |
| 22 | Dated this 9th day of 2017 |
| 23 | *Angela Schubert* |
| 24 | |
| 25 | ANGELA SCHUBERT, CSR NO. 12027 |