# EXHIBIT 25

```
 1  HANSON BRIDGETT LLP
    KURT A. FRANKLIN, SBN 172715
 2  kfranklin@hansonbridgett.com
    SAMANTHA WOLFF, SBN 240280
 3  swolff@hansonbridgett.com
    JENNIFER ANIKO FOLDVARY, SBN 292216
 4  jfoldvary@hansonbridgett.com
    425 Market Street, 26th Floor
 5  San Francisco, California 94105
    Telephone: (415) 777-3200
 6  Facsimile:  (415) 541-9366

 7  HANSON BRIDGETT LLP
    TYSON M. SHOWER, SBN 190375
 8  tshower@hansonbridgett.com
    LANDON D. BAILEY, SBN 240236
 9  lbailey@hansonbridgett.com
    500 Capitol Mall, Suite 1500
10  Sacramento, California 95814
    Telephone: (916) 442-3333
11  Facsimile:  (916) 442-2348

12  OTTEN LAW, PC
    VICTOR OTTEN, SBN 165800
13  vic@ottenlawpc.com
    KAVITA TEKCHANDANI, SBN 234873
14  kavita@ottenlawpc.com
    3620 Pacific Coast Highway, #100
15  Torrance, California 90505
    Telephone: (310) 378-8533
16  Facsimile:  (310) 347-4225

17  Attorneys for Plaintiffs
    CORY SPENCER, DIANA MILENA
18  REED, and COASTAL PROTECTION
    RANGERS, INC.
19
```

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>Plaintiffs, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**DECLARATION OF CORY SPENCER IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. S. James Otero<br>Date:  February 21, 2017<br>Time:  10:00 a.m.<br>Crtrm.: 10C |

| | |
|---|---|
| 1 | |
| 2 | v. |
| 3 | LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N. F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10, |
| 13 | Defendants. |

I, Cory Spencer, declare as follows:

1. I currently live in the city of Norco, California. I first moved to Norco in about 2009 and have lived in Southern California my entire life. I have a bachelor's degree in criminal justice from Union Institute and University in Los Angeles, California. I also attended the Los Angeles Police Department Police Officer Standard and Training Academy and graduated in approximately 1997. I am currently employed by the City of El Segundo, California as a police officer. I have held this position since March 13, 2000. Prior to working in El Segundo, I was a police officer with the Los Angeles Police Department (LAPD), where I worked from October 1996 to March 2000. I have personal knowledge of the matters stated in this declaration and, if called as a witness, could and would testify competently as to its contents.

2. I grew up in La Mirada, which is located in southeast Los

1 Angeles County – and more than 20 miles to the nearest surfing beach. I
2 began surfing when I was approximately 11 or 12 years old and instantly fell
3 in love with the sport. I have surfed consistently for over 30 years, am an
4 avid surfer and beachgoer, and I currently surf whenever conditions permit.
5 Through surfing, I am able to express myself, exercise, and enjoy nature. I
6 most often surf El Porto in Manhattan Beach, Oceanside Harbor in San
7 Diego County, and Huntington Beach in Orange County. From the City of El
8 Segundo, where I work, to the nearest edge of Palos Verdes Estates, it is
9 little more than a 10 mile drive. Lunada Bay is a little bit further south.

10     3. I first became aware of Lunada Bay in Palos Verdes Estates
11 when I was in my mid-teens, probably about 14 or 15 years old. I remember
12 reading a Surfing Magazine that had a small article about the wintertime
13 swells at Lunada Bay and a photo of the surf. The article also made
14 reference to the fact that localism – a practice where local beachgoers
15 exclude nonresident, nonlocal beachgoers through threats, violence, and
16 intimidation – was prevalent at Lunada Bay. It said something to the effect
17 that Lunada Bay has one of the most perfect waves in California in the
18 wintertime but that few were able to enjoy it. The article made an
19 impression on me at the time. I have wanted to surf Lunada Bay from the
20 day I saw that photo but was fearful because of the localism issue described
21 in the article. As an adult, Lunada Bay is unique beyond it being one of
22 Southern California's best big waves that breaks over a rock reef. Lunada
23 Bay is also a public treasure because it is in an unspoiled coastal area of
24 Los Angeles County that offers coastal bluff views, tide pooling and other
25 outdoor activities in the otherwise urbanized Southern California coast.

26     4. Shortly after seeing the photo and reading the article about
27 Lunada Bay, while I was a teenager, I started asking around in the surfing
28 community about localism there. I heard stories from other surfers about

incidents of localism dating back decades. I had heard about surfers getting their tires slashed, windows egged, and property thrown into the ocean while surfing. I was told by other surfers, "oh, you can't go there." Localism at Lunada Bay was (and is) a widely known fact within the surfing community. I was afraid to go to Lunada Bay.

5. But it also bothered me that only a select few could enjoy it. And I wanted to see Lunada Bay for myself. So I drove to Lunada Bay approximately 8 to 10 times from the time I was a teenager until approximately January of this year. I usually brought my surfboards with me though I never did surf on any of those occasions. I was always afraid of becoming a victim of localism at Lunada Bay. I didn't want the stories I had heard about localism to become true for me.

6. In approximately 2002 or 2003, my police chief at the time (in El Segundo) was seeking volunteer officers to surf undercover at Lunada Bay as part of a sting operation. I eagerly volunteered for the assignment. The goal was to catch the Bay Boys in the act of engaging in unlawful activity and make arrests and issue citations on the spot. I was excited at the prospect of this because I had wanted to surf there since I was 15 years old. I knew it would be meaningful and satisfying to be part of the effort that would finally hold the group of men accountable who had made this beach off-limits to me and so many others for decades. Unfortunately, the operation was called off and nothing ever happened. I was incredibly disappointed.

7. In or around 2014, I learned about a movement started by Chris Taloa, a professional bodyboarder and actor. He wanted to create a peaceful movement to encourage visitors to surf Lunada Bay in large numbers so that it would be safe. On information and belief, I understand that his movement started as a Facebook page named "Aloha Point," a term

Mr. Taloa coined in reference to the "Aloha spirit" of welcoming peacefulness. I was interested in his movement and supported his goals. The movement resonated with me as a police officer, where my safety is threatened daily, but where there is safety and strength in numbers. I figured that supporting this movement through a strength-in-numbers approach would be my best opportunity to peacefully surf at Lunada Bay.

8. It wasn't until late January 2016 that I finally contacted Mr. Taloa and suggested that we get a group of people together on January 29, 2016 to try and safely surf a swell that was coming to Lunada Bay. He was enthusiastic and said he would organize a group of people to hopefully have some good, peaceful, clean surfing. I understood that there would be about 6 to 8 surfers, which is the only reason I decided to attempt to surf at Lunada Bay. Without a group of that size, I never would have tried to surf there.

9. Before surfing Lunada Bay with Mr. Taloa and his acquaintances on January 29, 2016, I decided to contact Palos Verdes Estates' Chief of Police (Jeff Kepley) to request that additional patrols be present while we surfed to ensure our safety. I don't recall receiving a response from him, so I reviewed the Palos Verdes Estates Police Department's organizational chart and contacted Captain Mark Velez. We engaged in a dialogue and he thanked me for the request and assured me there would be extra patrols in the area. Although the police were not present when we arrived the morning of January 29, 2016, I did notice a group of officers present on the bluff top after I got out of the water.

10. In preparation for our outing to Lunada Bay, our group of visitors decided to contribute $20 each so that we could hire a security guard to watch our cars while we surfed. I had been told by many surfers that the Bay Boys will vandalize your car while you surf, and I would not have felt comfortable leaving my car that morning without someone present to stand

1 guard. Before our arrival at Lunada Bay, Mr. Taloa and I recommitted
2 ourselves to creating change through peace: we discussed that we would
3 ignore any comments or glares from the Bay Boys – including taunts and
4 threats – and instead would go about our business in order to safely surf.
5 We knew the Bay Boys would try to provoke us into a fight and decided the
6 best way to handle it was to simply ignore it.

7     11. Almost instantly after we arrived at Lunada Bay the morning of
8 January 29, 2016, we started getting harassed by Bay Boys. We were told
9 that we couldn't surf there and I was called a "kook," which is a derogatory
10 surfing term. I was also told: "why don't you fucking go home, you fucking
11 kook" and asked "how many other good places did you pass to come here?"
12 These taunts started while I was on the bluffs getting ready to surf. One
13 individual in particular continued to heckle Mr. Taloa and I on our way down
14 to the beach and into the water.

15     12. A man who I now know to be Defendant Brant Blakeman was
16 already in the water and began paddling around Mr. Taloa and me in a tight
17 circle – staying just a few feet away from us. He impeded our movement in
18 any direction and I believe that he was intentionally blocking us from
19 catching any waves. It was clear to me that he was not there to surf that
20 morning. Instead, his mission was to prevent us from surfing, and it felt like
21 he had designated himself to keep us from enjoying our time in the water,
22 the open space, the waves, and nature. Indeed, in the approximately 90
23 minutes I was in the water that day, I never saw him attempt to catch a
24 single wave. Instead, he was focused on Mr. Taloa and me. He never said
25 a word, and just stared at us the entire time. He would shadow our
26 movements, and sit uncomfortably close. I have never experienced
27 anything like that before in my life. It was bizarre but also incredibly
28 frightening and disturbing. It appeared to me that Mr. Blakeman was

1  coordinating with a group of guys who were standing in the Rock Fort, along
2  with others in the water. They were all talking to each other and it was clear
3  they all knew each other.

4     13.    At one point while I was in the water, I was paddling west out to
5  the ocean and I saw a man surfing, coming in east towards the shore. We
6  locked eyes and I watched as he maneuvered his surfboard directly toward
7  me, intending to run me over. I rolled off the left side of my surfboard and
8  my right hand and wrist held onto the right side of my surfboard. He ran
9  over my hand/wrist that was holding my surfboard and one of the fins on his
10 surfboard sliced open my right wrist. I now have about a half-inch scar from
11 where this man ran me over. Attached as **Exhibit 1** is a true and correct
12 copy of a photograph of my wrist taken during my deposition, with a pen
13 pointing to my scar.

14     14.    As soon as he ran me over, he started berating me, saying
15 things like "what are you fucking doing out here? I told you to go home. I
16 should have ran you over. Why are you paddling in the sun glare where I
17 can't see you?" He was pretending that he didn't see me but it was obvious
18 that he saw me and intentionally ran me over. I responded that he did run
19 me over and showed him my wrist. He said that I shouldn't paddle in the
20 sunlight. With over 30 years of surfing experience, I knew that this collision
21 was intentional on his part. I was fearful of being further injured at that point
22 and I didn't want to get into an argument with him so I just paddled away.

23     15.    Mr. Taloa and I caught one more wave after that and then
24 decided it was getting too dangerous to surf. More men started showing up
25 at the Rock Fort and we were growing increasingly fearful for our safety. I
26 was also bleeding and in pain.

27     16.    I believe that the man who ran me over with his surfboard was a
28 Bay Boy, like Mr. Blakeman and the other men in the Rock Fort that

1  morning. It was clear to me that they were all communicating with each
2  other and that they all knew each other. They were the only surfers who
3  were not getting harassed (and who were doing all of the harassing).
4      17. Although I had asked for extra police patrols prior to arriving at
5  Lunada Bay, I did not see any police present along the shoreline, at the
6  Rock Fort, or in the water. Given my advance warning that a group of
7  visitors intended to surf there that morning, the police should have been
8  present where the conflicts were likely to arise – in and around the water.
9  And because there were no police present near the water, no one was there
10 to witness the battery I had suffered.
11     18. After we got out of the water, we made our way up the trail back
12 to the blufftop. The other visitors with the Aloha Point movement who were
13 supposed to surf with Mr. Taloa and me were just arriving. I recall that
14 Diana Milena Reed, Kenny Claypool and Jordan Wright were among the
15 surfers who had just arrived. I remember showing my hand and describing
16 what had happened to those present.
17     19. Mr. Taloa and I then went back to our car and started changing
18 out of our wetsuits. A man approached us and started hassling Mr. Taloa in
19 particular. I have since learned that the man was Sang Lee. He kept asking
20 why we keep coming back and telling us that things will never change here,
21 it's the way it's been for years. He then described how he became a Bay
22 Boy, how things work within their gang, how you work your way into their
23 gang, and why they exclude outsiders from visiting or enjoying Lunada Bay.
24 Mr. Taloa kept trying to walk away, and said "hey, we'll talk another time,"
25 but Mr. Lee just kept coming at him and restating the same dialogue over
26 and over. The entire conversation lasted approximately 10 minutes.
27     20. Shortly after we changed back into our clothes, I noticed a group
28 of police officers standing to my south with what appeared to be another

1  group of newly-arrived Bay Boys. I walked over to the officers to thank them
2  for showing up that morning, even though I had no way of knowing whether
3  they were there as a result of my email request or not. I also told one of the
4  officers what had happened to me in the water and I showed him my hand.
5  The officer did not offer to take a report and he did not ask me to identify the
6  aggressor.

7      21. I decided to return to Lunada Bay a week later, notwithstanding
8  the assault, battery, intimidation and harassment I had suffered the week
9  prior. Despite my fear in returning, I felt that I had to stand up to bullies like
10 Brant Blakeman who were unlawfully keeping beachgoers away from
11 Lunada Bay. So I planned an outing on February 5, 2016, with Chris Taloa,
12 Kenny Claypool, Jordan Wright, and Diana Milena Reed. I did not intend to
13 surf that day and instead agreed to stay on the bluffs to watch our cars while
14 the others surfed. In advance of our arrival, I emailed Captain Velez to let
15 him know that we were returning to surf.

16     22. Again, immediately upon my arrival on Paseo Del Mar – the
17 street parking in front of Lunada Bay – I began getting harassed by Bay
18 Boys. I was called a "kook" and asked what I was doing, why I was there,
19 and was told to go home and not to surf there. Some men who I believe to
20 be Bay Boys drove by very slowly in their trucks and cars while others stood
21 watch on the bluffs. I noticed that as they passed by in their vehicles, they
22 would get on their cell phones and then more and more men started to show
23 up. It appeared to be a coordinated effort among members of a gang. I was
24 concerned that the situation would escalate as more Bay Boys began
25 showing up and I grew increasingly fearful for my safety. There were
26 approximately two groups of 15 to 20 men each, stationed on either end of
27 the bluffs – near the two trailheads to the shoreline below.

28     23. Defendant Blakeman was also present again. He stood on the

1 bluffs with his camera attached to a selfie stick and constantly circled around
2 our group of visitors while sticking his camera in our faces. He filmed us
3 from the time we arrived and through the time Jordan and Chris got out of
4 the water after they surfed. It was such odd and harassing behavior and
5 made me feel very threatened, intimidated, and uncomfortable. I assume he
6 was filming all of us to intimidate us, and so that he could show it to other
7 Bay Boys to identify us.

24. A small group of officers arrived later that morning while I was still there, including a sergeant I recognized from previously working together for the El Segundo Police Department. I noticed several officers talked with a few members of the Bay Boys but I don't know what was said, or if any type of enforcement action was taken. I did notice that even though officers were present, Brant Blakeman continued to film throughout the morning.

25. Approximately a month later, on March 4, 2016, I wrote to Chief Kepley via email to provide a suggestion how to address the localism problem at Lunada Bay since it seemed he had been unable to effectively do so up to that point. It was my intention to collaborate, cop-to-cop, in an effort to take care of the problem together. I know we would not tolerate the Bay Boys' behavior in my jurisdiction and I wanted to lend a hand. I encouraged him to plan an undercover operation at Lunada Bay and indicated that I believed the El Segundo Police Department would be willing to assist. I also told him that while extra patrols at Lunada Bay are appreciated, officers standing along the bluffs cannot observe anything that goes on in the water, along the shore, or in the Rock Fort down below. I was referencing the assaults, vandalism, batteries, drinking, and alleged drug abuse that has been alleged to run rampant at Lunada Bay for the past 30 or 40 years. A true and correct copy of my email to Chief Kepley is attached as **Exhibit 2**

and is Bates stamped CITY1807. I received an email in reply, stating that he had been to the Rock Fort on several occasions and talked with surfers "in an effort to educate them on the position we are all in and what needs to change in terms of acceptable behavior on their part."

26. The incidents of bullying, intimidation, threats, assault, battery, and harassment that I experienced at Lunada Bay have caused me to suffer loss of sleep, emotional distress, and mental anguish. I am deeply disturbed and saddened by the Bay Boys' acts of exclusion in that I am not able to enjoy a place that I have a right to enjoy without being harassed and attacked. I have lost sleep over the incident when Mr. Blakeman circled me in the water and later, when my hand was cut open by a fellow Bay Boy. The January 29, 2016 incident made me feel feeble, humiliated, and intimidated. I have been distressed by my feelings of anger and resentment toward the Bay Boys, including Brant Blakeman, who have denied me access to a public place. They have no right to claim a public beach as their turf and enjoy it to their exclusive benefit while denying others the same enjoyment.

27. I have been similarly disappointed and upset that the City of Palos Verdes Estates and Chief Kepley have not taken the problem the Bay Boys have created seriously, and have done nothing to remedy this problem. I believe that the City of Palos Verdes Estates and Chief Kepley have turned a blind eye to the violence, intimidation, vandalism and harassment that goes on at Lunada Bay, both on the bluff top and below on the beach and in the water. The City allowed an unpermitted Rock Fort to exist along the shore knowing that is only accessible to a select few. The Lunada Bay Boys use this Rock Fort as a base of operations where they congregate to drink, possibly use drugs, and coordinate their attacks on non-locals. The City and Police Chief Kepley have done little, if anything, to

prevent this unlawful conduct from occurring and the Rock Fort's very existence evidences the City's complicity in the Bay Boys' conduct.

28. The City's complicity in the Bay Boys' exclusion of visitors is further evidenced by their failure to make the area of Lunada Bay visible and accessible to non-residents. There are no signs alerting visitors that there is a beautiful beach below the bluffs that is open to the public. Making things more dangerous, there are no signs marking the entrances to the two public trailheads. There is no information posted about what to do if a visitor encounters a problem – including listing the local police department's direct phone number. The access to the beach is similarly non-existent. The "trail" is a steep, precarious, narrow path that should be better maintained by the City so as to provide safe access to the beach. Each of these factors serves to further intentionally exclude non-residents from accessing Lunada Bay.

29. Further, I believe that Chief Kepley is similarly complicit in the Bay Boys' unlawful exclusion of visitors. He is the chief law enforcement officer in Palos Verdes Estates but has failed to remedy or even acknowledge and address a serious gang problem within his jurisdiction. As a fellow law enforcement officer, I am aware of the various tools available to Chief Kepley to address the Bay Boys' unlawful conduct, including making arrests and issuing citations. But Chief Kepley fails to enforce laws, including City ordinances that are designed specifically to prevent this problem. Proactive police work – including arresting and citing wrongdoers for violating City ordinances and the California Penal Code – would be effective to take care of a problem that has gone unaddressed for 30 to 40 years. By making a proper arrest or issuing citations, it would send a message to the others that the City does not tolerate a gang in the water and on the beach. Were this to actually happen, I am confident – based on

DECL. SPENCER SUPP. PLS.' MOT. FOR CLASS CERTIFICATION

my many years in law enforcement – that the problem would eventually go away.

30. But I also understand that Chief Kepley and the Palos Verdes Estates Police Department have not engaged in this type of proactive policing. Instead, I understand that Chief Kepley has attempted to engage in what he calls "community policing" – a system of allocating police officers to particular areas so that they become familiar and friendly with the local inhabitants in the hope of solving any problems that the police need to address. I understand that Chief Kepley met with members of the Bay Boys and essentially asked them to behave better. While community policing may be effective for some problems, in my experience it is highly ineffective when it comes to preventing gang violence. You simply do not tell gang members to behave better – all that means to them is you are going to allow them to continue to operate in anonymity and to behave more secretively. Instead, in my training, gangs, including turf-based gangs like the Bay Boys, require some type of specific deterrent effort. It is baffling to me that a seasoned law enforcement officer such as Chief Kepley would conduct himself this way.

31. Through this lawsuit, I hope to open Lunada Bay up to the public so that all who wish to enjoy it can do so freely without illegal discrimination, harassment, intimidation, violence and fear. Because it is a public beach, all should be able to enjoy Lunada Bay to express themselves and enjoy nature at Lunada Bay. And all should be able to visit Lunada Bay no matter where they live, where they grew up, where they went to high school, or how much money they make. If someone is harassed or illegally excluded, I want the police to protect them and their right to visit a public beach. This is particularly important to me, as someone who has spent his entire professional career as a police officer ensuring the safety and security of

others. With this lawsuit, I want the Court to oversee an injunction that would enjoin the individual Defendants and other Bay Boys who illegally exclude visitors from using the Lunada Bay for a period that is long enough to return Lunada Bay to the public. While the City's post-Thanksgiving removal of the unpermitted Rock Fort that served as the base of operations for the Bay Boys may prove helpful, more is needed after decades of the Bay Boys' illegal activity. Consistent with the California Coastal Act that also protects visitors from illegal discrimination, I would like to see an open and inviting space that includes trail improvements, signage marking existing trails, signage indicating Lunada Bay is a public beach, amenities to demonstrate Lunada Bay is a public beach (e.g., seating, binoculars, an appropriate parking), signage on how to report safety concerns to the City, interpretive signage regarding the activities available to the public at Lunada Bay, an internet map on City website to the two trails at Lunada Bay as well as other trails to Palos Verdes Estates beaches, an internet map on City's website identifying surfing and other recreational opportunities within the City, information on wheelchair accessibility to Palos Verdes Estates beaches, cameras on the blufftop parking areas to record license plates so that gang members cannot operate in anonymity, police wearing body cameras to record interaction with the public that would be downloaded at the end of each day, the City training its police on gangs (including turf gangs), the City training its police on its local beach-related ordinances and access issues, the police fairly enforcing existing laws related to no-alcohol and beach access, and information on the location of public restrooms..

32. I am committed to ensuring all members of the public – no matter where they grew up, went to high school or currently live, their income level, race, color or other protected category – will have safe access to Lunada Bay and other Palos Verdes Estates' beaches. I understand my obligation

as a representative for the plaintiff class to closely monitor this litigation, keep abreast of the status of the proceedings, assist in the prosecution of this case, and supervise my attorneys who are handling this matter on my and the class' behalves. To that end, I stay in close contact with my attorneys to ensure that the case is on track and that our litigation position is consistent with our goals of providing public access to Lunada Bay. I ensure that my attorneys' intentions are still pure in that regard and that we are working together to stop the Lunada Bay Boys' culture of bullying and the City of Palos Verdes Estates and Chief Kepley's complicity in the Bay Boys' tactics.

33. I also provided thorough comments to the draft complaint before it was filed, which were incorporated into the final complaint. I have been extensively involved in preparing, reviewing, revising and finalizing pleadings and discovery in this case, have reviewed deposition transcript(s), and have provided my comments on those documents that I consider relevant. To date, I have responded to multiple discovery requests, including responding to 4 sets of interrogatories, 4 sets of requests for production of documents, and 1 set of requests for admission. I also appeared for approximately seven hours deposition, on October 11, 2016 in Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in El Segundo, California on December 26, 2016.

*[signature]*

CORY SPENCER

# Exhibit 1



# Exhibit 2

## Mark Velez

**From:** Jeff Kepley
**Sent:** Saturday, March 05, 2016 9:11 AM
**To:** Mark Velez
**Subject:** Fwd: Lunada UC ops

REDACTED

FYI.

Jeff Kepley

Begin forwarded message:

**From:**
**Date:** March 4, 2016 at 10:12:35 PM PST
**To:** jkepley@pvestates.org
**Subject: Lunada UC ops**

Sir, first of all, I'd like thank you and your dept. for the response in extra patrols down at Lunada Bay. I am active law enforcement (ESPD) and have been emailing Capt. Velez every time we (Aloha point Facebook group-a group of non-locals) venture out to the bay on a big swell day. He has been kind enough to respond, and we've been encouraged to see PV officers.

Anyway, several years ago (around 02' or 03') the then chief of PV asked several surrounding agencies to see if officers who surfed would be willing to paddle out "on duty-undercover."
I was approached along with a few more of our officers and we were excited to help out. For reasons unknown, nothing ever materialized. I think it would be worth another shot and be very effective. I'm sure my chief would assist in letting the few of us that do surf help out should you ever want to try something like that.

It really is too hard to observe anything that really goes on down there from the bluff. Although, I understand two younger officers actually made their way down to the fort and were actually able to finally witness/document a 415. You know, and I know, the DA will most likely reject it, but kudos to them for their descent from the bluff to the beach.

Thanks for reading, and possibly considering a UC operation as I've suggested. As a side issue, I have recently been made aware of, and feel a brotherly sense of duty, to make you aware of some upcoming legal actions in the works by a very large, non-profit foundation heavily invested in coastal matters (this is separate from the coastal commission thing). There are attorneys plotting strategies as we speak, to basically force the city (consent decree type) to make Lunada Bay very "public access." This could mean many things (signage, trail improvement, parking,etc...). Just wanted to give you a heads up so your not blindsided.

Again, thanks for the response.

DEFENDANT'S EXHIBIT NO. 42
For Identification
Witness: C.E. Spencer
Date: 10/11/20 Page No: 105
Carmen R. Sanchez, CSR No. 5060

1

42

**CITY1807**