# EXHIBIT 5

MINUTE ITEM

This Calendar Item No. 17
was approved as Minute Item
No. 17 by the State Lands
Commission by a vote of 2
to 0 at its 8/20/81
meeting.

CALENDAR ITEM

17

8/20/81
G 05-06.2
Rasmussen
Scott

# CITY OF PALOS VERDES ESTATES
## SUBSTANTIAL COMPLIANCE INVESTIGATION

BACKGROUND: The City of Palos Verdes Estates is located in Los Angeles County on the rocky Palos Verdes Peninsula. The shoreline is composed of vertical cliffs 100 to 200 feet in height. In some areas the terrain is very steep and access to the tide and submerged lands is difficult and dangerous. Below the bluffs, the shoreline is primarily rocky tide pools with a rich and delicate marine environment.

In 1963, the Legislature passed Chapter 1975 which granted tide and submerged lands within the City boundaries (about 4.6 shoreline miles long) for such purposes as a harbor and related facilities, an airport and related facilities, highways and utilities, public buildings, playgrounds, marinas, restaurants, motels, etc. The City was given authority to lease the lands for periods not to exceed 66 years. The State Lands Commission was required to survey and map the grant. This was completed in 1965 and the map was recorded in June, 1966.

In addition to this requirement, the 1963 statute states that "Within 10 years from the effective date of this act the granted lands shall be substantially improved by the City without expense to the State..." If the State Lands Commission determines that the City has not improved the lands as required, all rights, title and interest in and to the lands shall revert and rest in the State.

Chapter 316 of the Statutes of 1968 amended the 1963 statute. This statute added purposes of preservation, restoration and maintenance of the biological resources of the area to the allowable uses. Specifically, the additional language reads:

A 51
S 27

-1-

CALENDAR PAGE 70
MINUTE PAGE 1656

## CALENDAR ITEM NO. 17 (CONTD)

"For the establishment, preservation, restoration, improvements or maintenance of intertidal and subtidal marine biological reserves, restoration and maintenance of kelp forests, abalone and other shellfish and related fishery resources, development of nature study trails and areas, exhibits, research projects, preservation of areas of unique ocean phenomena for activities such as surfing and other water sports, and the natural beauty and biological resources and activities related thereto, subject to the prior approval of the Fish and Game Commission as to those matters which are subject to regulations by the Commission, pursuant to the Fish and Game Code."

Both granting statutes explicitly state that the lands are to be used "....for purposes in which there is a general statewide interest" rather than for local benefit.

The 1968 statutes also changed the wording of the substantial improvement clause to read "Within 10 years from the effective date of this act the granted lands shall be substantially improved, <u>restored, preserved, or maintained</u> by the City without expense to the State..." (emphasis added). If the State Lands Commission determines that the City has not improved, restored, preserved, or maintained the lands as required, all right, title and interest in and to the lands shall revert and rest in the State.

INVESTIGATION: On July 3, 1978, Commission staff notified the City that it was commencing a study to verify the City's compliance with the terms of the substantial improvement, restoration, preservation and maintenance clause of the grant. The City was told that the study would consist of a collection and comparison of data, an on-site inspection to verify facts and, finally, a recommendation to the Commission regarding compliance with the statute. To this end, the City was asked to provide a report with support data outlining the ways and means in which the City has complied with the statute.

-2-

| CALENDAR PAGE | 71 |
|---|---|
| MINUTE PAGE | 1657 |

## CALENDAR ITEM NO. 17 (CONTD)

No acknowledgement or data was received from the City, and so on October 3, 1978, staff reminded the City of the July letter and the investigation for substantial compliance. The City called on November 3, 1978 to ask if the report could be coordinated with the City's Local Coastal Plan (LCP). Staff agreed to this delay as long as the LCP covered the areas of concern to the substantial compliance investigation.

The LCP was finally certified in late 1979 and describes the current state of the granted area and surroundings and plans for the future of the area. It did not, however, adequately deal with the improvement, restoration, preservation or maintenance of the granted lands during the substantial compliance period of 1968 to 1978. The LCP refers several times to a 1970 Shoreline Preserve Master Plan, and this Plan was, therefore, also included in staff's review. In addition, staff made two on-site visits to the area and met with City officials to gather information.

SHORELINE PRESERVE:
In January 1969, soon after the grant of sovereign tide and submerged lands was amended to allow "preservation" purposes for the lands, the City of Palos Verdes Estates established the Palos Verdes Estates Shoreline Preserve in response to the grant (City Council Resolution 648, dated January 28, 1969). The Preserve includes City-owned parkland parcels containing approximately one-hundred-thirty acres contiguous with the City's four and one-half mile shoreline along with the tide and submerged area granted to the City by the State. The upland parcels have been "improved" very little. They primarily serve as large open areas providing view sites and access to the tide and submerged lands.

The resolution creating the reserve also specifically directed that the Shoreline Preserve Master Plan be prepared to satisfy the conditions of the grant.

-3-

| CALENDAR PAGE | 72 |
| MINUTE PAGE | 1658 |

CALENDAR ITEM NO. 17 (CONTD)

The master plan was completed by the City Planning Commission and adopted by the City Council in March 1970. The cover letter accompanying the plan and the plan itself state that the plan was prepared in response to the grant.

"In accordance with the direction to the Council in its Resolution No. 648 (designating the Palos Verdes Estates Shoreline Preserve), the Planning Commission submits herewith a master plan for development of the City's coastline area in a manner that will, insofar as possible, accomplish two objectives that appear at first glance to be contradictory:

1. to 'preserve and maintain its natural state' and

2. to undertake both short- and long-term improvements designed to increase safety of access, enhance the appearance, and satisfy the requirements of the State's grant of the submerged lands to the City."

The plan itself states:

"Under the terms of the legislation, as amended, that grants to the City the right of the State of California to the submerged lands incorporated in the Shoreline Preserve, if the State Lands Commission should after September 20, 1973, determine that the City has not substantially improved, restored, preserved or maintained the lands as required by such grant, all rights thereto would revert to the State. Reversion of these lands to the State would defeat the objective of local control of submerged land uses. <u>A program intended to preclude such reversion is herein proposed. It is in the best interests of the City to assure that our shoreline preserve plan satisfies the requirements of this Legislation.</u>" (Note that the actual deadline for substantial compliance was 1978 not 1973 as stated above.)

The plan proposed "... a program for the shoreline that will preserve and maintain its natural state; favor current limited

-4-

CALENDAR PAGE  73
MINUTE PAGE   1659

CALENDAR ITEM NO. 17 (CONTD)

recreational uses; and support expanded educational and scientific activities." All of these uses are consistent with the granting statutes and the Common Law Public Trust for Commerce, Navigation and Fishing. As developed, the program included specific recommendations for regulation of uses, clean-up, access improvements, and cooperative efforts with organizations interested in shoreline activities and preservation to further the City's interest in conservation and compatible uses.

GOAL ACHIEVEMENT:
Creation of a Shoreline Preserve was intended to passively improve, preserve and maintain the granted area as required in the granting statute. The City Planning Commission designed and improved the preserve area in compliance with the natural layout of the land so that the highest intensity use was at the northeasterly end adjacent to Torrance Beach. The use becomes progressively less intensive as one moves southwesterly along the coastline.

The area closest to Torrance features a paved parking lot and view area and a paved walkway to the beach. The bluff in this area is not as high or steep and a wide, sandy beach lies at the bottom. The bluff tends to get higher and steeper and the shore becomes rockier, the further one moves in a southwesterly direction along the shoreline. Here the access ways are steeper and less improved and the environment is more delicate. Again, the City has chosen to take advantage of these natural features and conditions in planning for use of the area. The beach user has easy access to the sandy beach area at the Torrance end and those more interested in tidepool and nature study can take advantage of the less accessible and more protected southwest end.

The master plan recommendations support passive use of the area. Specifically, the recommendations of the master plan were:

-5-

CALENDAR PAGE 74
MINUTE PAGE 1660

CALENDAR ITEM NO. 17 (CONTD)

1. **Conservation: Preservation and Maintenance**

    A. Post shoreline preserve signs.

    B. Institute a shoreline clean-up program.

    C. Establish a Palos Verdes Estates Marine Life Refuge.

    D. Institute sea projects for kelp reforestation and tidepool rejuvenation.

    E. Establish manipulative zones to control certain delicate shoreline areas by periodically closing these to the public.

    F. Provide selected landscaping.

    G. Control erosion.

2. **Recreation**

    A. Promote shoreline nature trails.

    B. Designate and improve view sites and associated parking.

3. **Educational and Scientific**

    A. Promote shoreline nature trails.

    B. Encourage a subtidal trail.

    C. Establish a botanical area.

    D. Cooperate with interested oceanographic organization.

    E. Encourage scientific research.

The City has erected two different types of signs for the preserve. One sign type indicates the existence of the preserve, and is posted at several places on the upland parcels in the preserve. The other signs provide information about the protection of flora and fauna in the preserve.

-6-

| CALENDAR PAGE | 75 |
|---|---|
| MINUTE PAGE | 1661 |

CALENDAR ITEM NO. 17 (CONTD)

These informative signs are purposely located down the bluff trails which lead to the preserve.

The purpose of these sign locations is to not be overly intensive and yet inform the more committed preserve-goer.

Policing the area is difficult but relatively, little litter is strewn about the area. Periodic clean-up projects are sponsored by the City with various civic and youth groups.

Data on file with the Commission shows that an attempt was made in the late 1960's and early 1970's to create a Department of Fish and Game "marine life refuge" off the Palos Verdes peninsula as recommended in the master plan. This was not accomplished, however. Officials at the State Department of Fish and Game stated that this was not done because the local residents were against the idea. Local opinion feared the increased use of the area if Fish and Game made the area a refuge. Also, the Department priorities were such that the area was not needed when another area south of Palos Verdes area was made into a preserve. All of the City's policemen are authorized to make arrests and enforce the laws affecting the preserve.

The County funded a program to rejuvenate the kelp beds off of the Palos Verdes peninsula. Professor Wheeler North of California Institute of Technology directed the kelp project beginning in 1967. There apparently had been an ongoing problem with divers and beach combers removing or killing flora and fauna in the area. This is discussed in the Master Plan. Again, all of the City's policemen are authorized to make arrests and enforce the laws affecting the preserve. There has been no need so far to use the manipulative zone concept and periodically close certain areas. Overall, the kelp rejuvenation project seems to be working.

-7-

| CALENDAR PAGE | 76 |
|---|---|
| MINUTE PAGE | 1662 |

## CALENDAR ITEM NO. 17 (CONTD)

Little landscaping exists or is planned. The City has made a concerted effort to preserve the area in as natural a condition as possible. Erosion has not been a serious problem. City building regulations require that residents build with the natural setting. The few residences which are located at the top of the bluff are set back and built in non-eroding areas.

There are three improved accesses and many more unimproved. The most improved access is paved and is located at the north end of the city near Torrance. It leads to the beach and a city-operated swim club. Parking is available here. Another access is a wide and lengthy dirt road built originally to service the battery emplacements during the war. Street parking is available along the entire length of the shoreline.

A third access was improved by a group of local surfers by adding steps. The area is used by various groups at most times of the year for purposes of nature study primarily but also for some recreational use.

The City's local coastal program encourages only passive use of the area with a few conditions to encourage more public accessibility. One condition was that open areas remain so and no obstacles be placed on them or the existing accessways. Also, more adequate signing of the preserve was called for and has been done.

In summary then, staff believes that the tide and submerged lands have been enhanced for use by the general public. The area has been protected and preserved in a very natural state. Its value as a natural, coastal ecological system is incalculable largely because of the efforts of the City. Public use of the area has been successfully balanced with preservation of the area.

CALENDAR ITEM NO. 17 (CONTD)

SUMMARY OF FACTS AND FINDINGS:
1. The City received its original grant of tide and submerged lands in 1963 for purposes of a harbor and other public facilities. The grant was amended in 1968 to add purposes of preservation, restoration and maintenance of the lands in the statewide public's interest.

2. In response to staff inquiries in the process of determining substantial compliance as required in the granting statute, the City asked that the LCP be used. Therefore, this document, along with a 1970 Master Plan regularly referred to in the LCP were used to determine substantial compliance. Staff also participated in two on-site visits to the area.

3. The 1970 Master Plan was prepared specifically in response to the 1968 grant and provided a definite program for preserving and maintaining the tide and submerged lands such as regulation of uses, beach clean-up, access improvements, etc.

4. The tide and submerged lands are used passively by a large segment of the regional public. School groups and scientists are able to use and enjoy the area as well as those interested in the various recreational activities which are possible.

AB 884:      N/A.

EXHIBITS:    A. Site Map of Grant.

IT IS RECOMMENDED THAT THE COMMISSION:

1. FIND THE THE CITY OF PALOS VERDES ESTATES HAS SUBSTANTIALLY COMPLIED WITH THE TERMS OF ITS GRANT OF TIDE AND SUBMERGED LANDS AND HAS FULFILLED THE CONDITIONS OF SECTION 1(j) OF CHAPTER 316, STATUTES OF 1968.

2. AUTHORIZE THE EXECUTIVE OFFICE TO NOTIFY THE CITY OF PALOS VERDES ESTATES, THE SECRETARY OF THE SENATE,

-9-

CALENDAR PAGE  78
MINUTE PAGE    1664

CALENDAR ITEM NO. 17 (CONTD)

AND THE CHIEF CLERK OF THE ASSEMBLY THAT THE COMMISSION HAS MADE AN INVESTIGATION OF SUBSTANTIAL IMPROVEMENT, AS REQUIRED BY THE GRANT STATUTE, AND HAS FOUND THAT THE CITY OF PALOS VERDES ESTATES HAS SUBSTANTIALLY COMLIED WITH THE TERMS OF ITS GRANT OF TIDE AND SUBMERGED LANDS AND HAS FULFILLED THE CONDITIONS OF SECTION 1(j) OF CHAPTER 316, STATUTES OF 1968.

-10-

| CALENDAR PAGE | 79 |
| MINUTE PAGE | 1665 |

