# EXHIBIT 6

STATE OF CALIFORNIA—THE RESOURCES AGENCY                                   PETE WILSON, *Governor*

# CALIFORNIA COASTAL COMMISSION

SOUTH COAST AREA
245 W. BROADWAY, STE. 380
P.O. BOX 1450
LONG BEACH, CA  90802-4416
(213) 590-5071

COMMISSION ACTION ON

☐ Approved as Recommended
☐ Denied as Recommended
☑ Approved with Changes
☐ Denied
☐ Other

July 1, 1991

TO:            Commissioners and Interested Persons

FROM:          Peter Douglas, Executive Director
               Charles Damm, District Director, South Coast District
               John Ainsworth, Coastal Program Analyst, South Coast District.

SUBJECT:       Staff Report and Recommendation on the City of Palos Verdes
               Estates Local Coastal Program for public hearing and action at
               the July 16-19, 1991 Commission meeting.

## SYNOPSIS

The City of Palos Verdes Estates is located on the north-westerly portion of
the Peninsula.  The City is bounded by the City of Torrance on the north, the
City of Rancho Palos Verdes to the east and south and the Pacific Ocean on the
west.  On March 11, 1991 the City resubmitted a total Local Coastal Program
(LCP) which includes, a Land Use Plan (LUP) and Local Implementation Program
(LIP).

On August 21, 1978 the Commission approved The Palos Verdes Estates LCP
submittal with suggested modifications, however, the City never officially
adopted the suggested modifications and certification of the LCP lapsed.

## SUMMARY OF STAFF RECOMMENDATION

Staff is recommending that the Commission deny the City of Palos Verdes
Estates Land Use Plan and implementing program as submitted, certify the Land
Use Plan and Implementing Action Plan with suggested modifications.

## ADDITIONAL INFORMATION

Copies of the staff report are available upon request at the south Coast
District Office located at 245 West Broadway, Suite 380, Long Beach.  To
obtain copies of the report by mail, or for additional information, contact
John (Jack) Ainsworth in the Long Beach Office at (213) 590-5071.

Page 2
Palos Verdes Estates LUP & LIP

## TABLE OF CONTENTS

I.      LOCAL COASTAL PROGRAM AREA DESCRIPTION AND BACKGROUND...............3
        A.   Area Description.....................................3
        B.   LCP Background and Previous Commission Action................4
        C.   Description of Plan Submittal.........................4
        D.   Summary of Public Participation.............................7

II      DENIAL OF LUP AS SUBMITTED......................................7
        A.   Motion and Staff Recommendation...........................7
        B.   Findings for Denial of LUP as Resubmitted....................8

III     APPROVAL OF THE LUP WITH SUGGESTED MODIFICATIONS...................12
        A.   Motion and Staff Recommendation.........................12
        B.   Suggested Modifications to the LUP.......................13
        C.   Findings For Approval of the LUP With Suggested
             Modifications..........................................13

IV      CEQA FINDINGS...............................................14

V.      CERTIFICATION OF THE IMPLEMENTATION PROGRAM......................14
        A.   Motion and Staff Recommendation.........................14
        B.   Findings for Rejection of the Implementation Program..........14

VI.     APPROVAL OF THE IMPLEMENTATION PROGRAM IF IT IS MODIIFED
        IN CONFORMITY WITH THE MODIFICATIONS............................15
        A.   Motion and Staff Recommendation........................16
        B.   Suggested Modifications................................16
        C.   Findings For Approval Of The Implementation Program
             If Modified............................................19

Page 3
Palos Verdes Estates LUP & LIP

# I.  LOCAL COASTAL PROGRAM AREA DESCRIPTION

## A.  Area Description

The City of Palos Verdes Estates is situated at the north-westerly portion of
the peninsula.  The configuration of the City and its coastal zone is shown in
Exhibit 1.  Of the total acreage of 382 acres in the coastal zone, 130 acres,
or 34 percent, is publicly owned.  In the early 1960's the City acquired the
state-owned tidelands; a significant modification which allowed for
preservation as a development purpose, was obtained in 1968.  The shoreward
lands and adjacent to the granted submerged lands are the city-owned
parklands, the same 130 acres noted above.

The remaining area is zoned and developed in single- and multiple-residential
use, with the exception of one intermediate grade school owned by the Palos
Verdes Peninsula Unified School District.  There are only 3 undeveloped
residential lots in the entire coastal zone.  These 3 lots are scattered
through the zone and are zoned for single family residences.

The City's shoreline is composed of vertical cliffs 100 to 200 feet in
height.  The City is free of known active fault and major slide areas.
However, ocean bluff erosion and rock falls have occurred in the past and
probably will occur again in the future.  Geologic studies are currently
required by the City prior to development in the bluff areas.  Public access
to the base of the cliffs is provided on the shoreline preserve land.  At the
intersection of Paseo del Mar and Via Arroyo, one of two city owned parking
lots in the coastal zone provides parking for ninety cars.  This area also has
a paved access trail to the beach.  The other lot is located at the
intersections of Paseo del Mar and Palos Verdes Drive and contains
approximately 20 spaces.  In addition to the parking lots, on street parking
along Paseo del Mar, the first public coastal road, is available for access to
the shoreline preserve lands.  Paseo del Mar offers uninterrupted coastal
views of Santa Monica Bay and the Park land on the bluff tops offers passive
recreation opportunities for the public.

Below the bluffs, the shoreline is primarily rocky tide pools with a rich
marine environment.  In the past, the kelp bed has suffered substantially from
sewer outfalls from neighboring cities and other man-made activities.  An
experimental project for restoring the kelp beds has been going on for some
time in collaboration with Dr. Wheeler North of Cal Tech and the Department of
Fish and Game.  The results are positive.

The shoreline is most heavily used by surfers, fishermen and sightseers.
Intense use of the shoreline by swimmers and sunbathers is limited by the
rocky tidal area and often hazardous descent from bluff top to shoreline.

Development in the coastal zone is residential and zoned R-1 and is governed
by both the local zoning ordinance and deed restrictions of the Palos Verdes
Homes Association.  The parklands and shoreline areas are zoned open space.
The homeowners association's objectives, as stated in the summary of
protective restrictions, are: "1) to preserve the fine views ot the ocean,
mountains and parks, and, 2) to increase the wonderful natural beauty of the
property, to enhance it with fine planting, so that every purchaser in Palos
Verdes may be sure when building his home that his neighbor will have to build

Page 4
Palos Verdes Estates LUP & LIP

an equally attractive type of building." These restrictions and zoning
ordinance have resulted in the development of an expensive and well maintained
community.


B.   LCP Background and Previous Commission Action

In January of 1978, the LCP Issue Identification Report was drafted by the
City based on the Shoreline Preserve Master Plan and Tidelands Grant
Document.  Surveys were taken of those visiting the coastal areas and the
results incorporated into the report.  The purpose of these documents was to
preserve and maintain the natural state of the coastal areas. The City ws way
ahead of other coastal cities and had essentially completed all LCP leg work
by employing the Shoreline Preserve Master Plan.

Public hearings on the final Issue Identification Report were held by the
Planning Commission in the Spring of 1978.  On May 9, 1978, the City Council
adopted the Issue Identification report and directed staff to proceed with the
processing of the LCP.

In June of 1978, a complete LCP packet consisting of the City's Issue
Identification Report, Zoning Ordinance, Shoreline Preserve Master Plan,
Tidelands Grant and General Plan was submitted to the Commission for
certification.  A hearing was held on August 21, 1978 to consider
certification of Palos Verdes Estates LCP.  The Commission staff recommended
approval of the LCP with suggested modifications.  The Commission approved the
LCP with suggested modifications.

In February of 1980, the City received notification from the Commission that
certification of the LCP would become effective upon submittal by the City of
the amendments and legally adequate measures to carry out the conditions of
certification.  The City incorrectly assumed that certification of the LCP was
complete and began the coastal development permit process.  In August of 1981,
the City received notice that the LCP was indeed not effective until submittal
of amendments and legally adequate measures to carry out the conditions of
certification.  The City then began the process of amending its existing
ordinances to comply with the Commission's suggested modifications requiring
General Plan and zoning ordinance amendments.

The city received an extension to comply with recommended modifications of the
LCP until April 1, 1983.  City staff attempted to draft implementing
ordinances that were acceptable to the Commission as well as the City.  The
Commission staff reviewed the draft set of ordinances and advised the City
staff that the ordinances were still not acceptable.  Certification of the LCP
lapsed and the City is now resubmitting the LCP with the suggested
modifications originally added by the Commission.


C.   Description Of Plan Submittal

1.   Shoreline Preserve

In January, 1969, the City established the Shoreline Preserve by City Council
Resolution in which the City dedicated 130 acres of city-owned open space
together with the adjacent graded submerged tidelands out to the three mile

Page 5
Palos Verdes Estates LUP & LIP

limit to create the preserve (Exhibit 2).  The shoreline city–owned open space area is a band which runs the full length of the City's 4 1/2 mile shoreline and approximately 50 percent of the bluff top and steeply sloping cliffs seaward of the first coastal road.  This entire preserve area is zoned as open space.

In March, 1970, the City formulated a Shoreline Preserve Master Plan.  The primary objective according to the document "is to preserve the shoreline...in its natural state as nearly as possible, while at the same time provide for the use and maintenance of the area in a manner and under conditions which will not conflict with that primary objective."

Specific recommendations for implementation were made.  These relate to three categories of use:  Conservation, Preservation and Maintenance, Recreation and Education.  In terms of the Coastal Act policies, the most important of these proposed measures are:

    A.   The protection and restoration of the indigenous ecology.

    B.   Maintain and enhance existing recreation uses.

    C.   Establish sign posting program(for access and educational purposes).

    D.   Establish marine life refuge (this would enable the City to adopt an ordinance prohibiting collection of marine life from tide pools).

    E.   Support sea projects (this would include kelp reforestation, rejuvenation of tide pools, etc.).

    F.   Improvement of access trails.

    G.   Designate and improve view sites and associated parking.

    H.   Establish shoreline nature trails.

    I.   Establish subtidal trails.

## 2.   Tidelands Grant

The City received a Tidelands Grant in 1963 with the intent "to preserve and maintain the unique rugged shoreline."  The grant was amended in 1968 to explicitly incorporate conservation and preservation elements.

Although the provisions of the grant permit the City to construct harbors, airports and utility facilities, etc., the City has indicated in its Shoreline Preservation Element that it wished to maintain control of its tidelands area for preservation and conservation reasons.  The State Lands Commission will initiate a substantial compliance investigation to determine if the granted lands have been substantially improved, restored, preserved and maintained.

## 3.   General Plan

The General plan includes the following elements: Land Use, Circulation, Scenic Highways, Noise, Safety, Seismic Safety, Housing and Conservation and Open Space.  The trust of the various elements is the retention of the beauty

Page 6
Palos Verdes Estates LUP & LIP

and open space of the City. A change of use of parcels within the City cannot
be approved without changes in both the zoning and deed restrictions, and the
General Plan constituting the Coastal Land Use Plan, which is the policy
document against which zoning must be evaluated.

4.  Zoning Ordinance

There are four zoning classifications in the City; single family residential
(R-1), Multiple residential, commercial and open space. The majority of land
within the coastal zone falls under the classification of open space and R-1.
A very small portion of land consists of 6 parcels in zoned multi-family
(M-2). These parcels are built-out with apartment units. There are no areas
within the coastal zone designated as commercial. The City's entire shoreline
and approximately 50 percent of the bluff area is zoned open space. The
City's implementing ordinance, is typical of most others since it contains the
following: a declaration of purpose, definition of terms, other general
provisions, and the specifications for single family residential and
multi-family residential construction.

Uses permitted in the R-1 zone include a single family dwelling, agriculture,
horticulture (non-retail), accessory structures, places of public worship, and
public utilities. Specifications include height limits, limits on lighting,
required front, side and rear yard setbacks, and minimum structure size.
Minimum house size is 1,200 sq. ft. with lot coverage of 30 percent. The
maximum height limit is 2 1/2 stories or 30 feet above natural grade. Each
home is to have at least one garage with a minimum of two parking spaces.

Uses permitted in the multiple-family zone include any use permitted in the
R-1 zone, two family and multiple family dwellings. Specifications include
height limits, parking requirements, building heights, building setbacks,
maximum lot coverage, minimum lot area allowable floor area and landscaping.
The maximum height limit is two stories excluding garage space, and not exceed
35 feet in height from natural grade. Each development is required to have
two covered parking spaces per one bedroom unit, and one-half covered space
for each additional bedroom.

Uses permitted in the open space zone include undeveloped open space available
for visual and physical enjoyment of the public and classroom facilities for
public schools.

5.  Protective Restrictions

In the early 1920's the Palos Verdes Association was established. Its
objectives are enumerated in a proceeding section. Since its charter provides
for automatic renewal of the Association, it is still in existence. The
functions of the association have devolved to its "Art Jury" which passes on
the acceptability of new construction. Although the association restrictions
are not part of the certification, the restrictions are a prime determinant of
land use.

Although many of the Association's functions were taken over by the City at
incorporation in 1939, the Association still holds a great deal of power. For
instance, rezoning may not occur if two-thirds of the property owners within
300 feet have not assented. The Association sets the minimum cost of housing
and construction details, such as roof colors.

Page 7
Palos Verdes Estates LUP & LIP

D.    Summary of Public Participation

On January 15, 1991 the City Council held hearings on the Palos Verdes Estates
Local Coastal Program and referred to the planning Commission for review and
recommendation of amendments and adoption of a Coastal Overlay Zone and
amendments to Chapters 18.04 and 18.16 of the Municipal Code.  On January 18,
1991 the Planning Commission held hearing on the Local Coastal Program and
adopted recommended ordinances to City Council.  On February 12, 1991 the City
Council held Public Hearings for the Local Coastal Program and adopted
resolution R91-90, certifying Negative Declaration, and Ordinance O91-525
amending the General Plan and Ordinance O91-526 amending the Municipal Code to
include the Coastal Zone Overlay.  On January 26, 1991 the City Council
adopted Ordinance O91-525 (Coastal Zone Overlay) and Ordinance O91-526
(activities permitted in the Coastal Zone) amended the Municipal Code to add
notice, hearing and appeal procedures for coastal zone permits, and amended
the open space zone to include certain limitations on construction within
coastal zone.

II.    DENIAL OF THE LUP AS SUBMITTED

A.  Motion and Staff Recommendation

Motion 1

I move that the Commission certify the Land Use Plan as resubmitted by the
City of Palos Verdes Estates.

Staff Recommendation

Staff recommends a no vote, and adoption of the following resolution and
findings.  An affirmative vote by a majority of the appointed Commissioners is
need to pass the motion.

Resolution to Deny Certification

The Commission hereby denies certification of the Land Use Plan for the
Palos Verdes Estates Local Coastal Program for reasons discussed below and
because the City of Palos Verdes Estates Land Use Plan fails to meet the
requirements of and does not conform to the policies of Chapter 3 of the
Coastal Act (commencing with Sections 30200) to the extent necessary to
archive the basic state goals specified in Section 30001.5 of the Coastal
Act; is not consistent with applicable decisions of the Commission which
shall guide the local government in their future action under Section
30625(c) of the Coastal Act; and does not meet the requirements of Section
21080.5(d)(2)(i) of the California Environmental Quality Act because there
are feasible alternatives or mitigation measures available which would
substantially lessen any significant adverse impact which the Land Use
Plan may have on the environment.

Page 8
Palos Verdes Estates LUP & LIP

B.      Findings for Denial of The Land Use Plan as Resubmitted

1.   Introduction

Staff recommendation to deny the LUP as resubmitted is based upon the
continued inconsistency of certain plan policies with the Coastal Act Sections
related to development.  Analysis of these policies and findings for denial of
the LUP follows herein; this report suggests modification to these policies
which, if adopted by the City, will render them consistent with the Coastal
Act.  Findings to support approval of the LUP as modified also follow.

2.   Purpose of LUP

The City of Palos Verdes Estates has amended their General Plan to include the
Coastal Zone Overlay Zone (CZ-O).  The CZ-O and its application  protects the
public health, safety and general welfare by:

   A.   Protecting the Coastal bluffs as a natural resource:

   B.   Assuring that the bluff can support proposed development (as defined
        in Title 19, Chapter 19.01, 19.01.070);

   C.   Protecting parklands within the coastal zone for park purposes.

3.   Public Access

Section 30500 (a) of the Coastal Act requires that a Local Coastal Program
contain specific access component to assure that maximum public access to the
coast and public recreation areas is provided.  The documents the City has
resubmitted provided fulfill the objectives of an access component for the
Land Use Plan (see also implementing sections below).  Access & recreation
policies of the Act dictate the requirements of the Access component.  These
include Sections 30210 through 30244 of the Coast  Act.

Palos Verdes Estates 4 1/2 mile shoreline and approximately 50 percent of the
bluff top and steeply sloping cliffs seaward of the first road are publicly
owned by the City.  Under the the Shoreline Master Plan, Tide Lands Grant and
General Plan the shoreline, bluff top, bluff face and submerged lands are to
preserved and maintained in their natural state.  The entire shoreline
preserve area is open to the public.  Access to the shoreline is hindered by
the extremely high steep coastal bluffs that characterize the coastline in
this area.  The City has provided the general location of 16 accessways in the
Shoreline Preserve Master Plan (Exhibits 3-4).  The City's mapping provides
beachgoers a good idea of the location of each accessway.

Two accessways in the City are receiving the most use.  The first is swim Club
Road which is adjacent to 90-car parking lot at Malaga Cove School.  The
access road leads to RAT Beach which is adjacent to Torrance.  Rat Beach is
the only sandy beach in Palos Verdes Estates.  The second heavily used
accessway is Flat Rock Point which is wider and less steep than other
accessways.  The accessway leads to Bluff Cove which host a multiplicity of
uses including viewing, surfing, fishing, sunbathing and swimming.  A third
accessway is Lunda Bay which, because of its steepness, is less heavily used

Page 9
Palos Verdes Estates LUP & LIP

than the other two but more than the rest.

Of the 16 mapped accessways, four were on private land, zoned R-1; under the City's plan. These accessways have been eliminated due to development of single family residences. The Commission has previously found that these accessways were not viable for the following reasons or a combination thereof: safety, physical blockage of some kind preclude use of accessway, adequate access existed nearby, and access would have jeopardized valuable marine life.

In acting on the previous Land Use Plan, the Commission found that, although the LUP contained several general policies which were intended to maintain and enhance public access, such as maintenance and enhancement of existing recreation uses which included maintaining accessways, and maintaining and preserving the <u>public</u> shoreline preserve area, the LUP was not consistent with the access policies of the Coastal Act. It did not provide for maximum access to the shoreline (30210) and did not contain sufficient policies for the provision of public access from the nearest public roadway to the shoreline subject to certain limitations (30212). In particular, the Commission found that the following suggested modifications were necessary to bring the document into conformance with the applicable Coastal Act policies:

A. <u>Public Access & Recreational Opportunities</u>

(1) Public use of all existing accessways and scramble ways, including informal access paths not included on the City maps, shall not be impaired by the placement on trails or rocks, vegetation, or any other substance or structure which hinders full passage.

(2) The City shall <u>adopt a policy that supports appropriate public actions to retain and improve</u> where feasible, the City's public park land and accessways including the erection of signs to inform the public of the existence and nature of the shoreline Preserve and locations of improved public accessways to the shore, including two or more signs each on Palos Verdes Drive West and Paseo del Mar Channeling the majority of the public use to the accessways at Flat Rock (bluff Cove) and Swim Club Road.

(3) The City shall adopt as part of the land use plan, a policy that existing on-street parking near the shore or bluffs shall not be reduced, nor shall any use or time restrictions be placed on such parking that would hinder or discourage public use for recreational purposes during daytime hours.

The City has adopted the suggested modifications and have included the adopted resolutions in the resubmitted Land Use Plan. In addition, the City has also incorporated a previously suggested modification to the implementation plan into a LUP policy:

City parks located within the Coastal Zone shall remain public parklands in perpetuity.

Therefore, the Commission finds that the resubmitted the LUP is consistent with public access policies of Sections 30210, 30211, 30212, 30212.5 and 30213 of the Coastal Act.

Page 10
Palos Verdes Estates LUP & LIP

4. Recreation

Due to the topography, fragility of marine resources, long time zoning and the
residential nature of development adjacent to the shoreline, no support or
commercial recreation facilities exists.  However, none are needed because of
the limited use of the shoreline.  The Palos Verdes Estates shoreline is most
heavily used by surfers, fishermen, sightseers and to a lesser extent swimmers
and scuba divers.  The shoreline preserve and open space designations of the
publicly owned shoreline will ensure these activities will not be hindered in
any way.  The Commission therefore, finds that the re-submitted LUP is
consistent with Sections 30213, 30221, and 30223 of the Coastal Act.

5. Marine Resources and Environmentally Sensitive Habitat Areas

Sections 30230, 30231 and 30240 are the relevant sections of the Coastal Act
relating to the existing marine and environmentally sensitive resource areas
of the Palos Verdes Shoreline and area within the Tidelands Preserve.  The
beach, with its tidepools and the nearby sensitive kelp, are the valuable
environmentally sensitive habitat areas (ESHAs).  The tidepools and coastal
bluffs are within the the shoreline preserve while the kelp beds are within
the Tidelands Grant.  These resources and the applicable City documents have
been noted above.  Staff recommends that these resources and their areas are
adequately protected.

Since the bluff topography and existing condition have precluded heavy use of
the shoreline, tide pools are in good condition.  Additionally, the rocky
beach and narrow shoreline preclude most persons from walking long distances.

The Commission must determine an appropriate balance between maximum access,
involving the improvement of more accessways and the posting of additional
signs indicating the existence and location of accessways to the shoreline,
and the maximum protection of the marine resources which would involve less
than maximum access.  The City policy to channel the public to the already
more heavily used accessways will only marginally affect the quality of
existing marine resources of kelp and tidepools.  Usage of the other
accessways, which are generally steep and less accessible, is not expected to
increase significantly and will therefore not disturbed the more fragile
marine and ESHAs.  Therefore, the Commission finds, that as resubmitted the
LUP is consistent with Sections 30230, 30231 and 30240 of the Coastal Act.

6. Geologic Stability and Visual Resources

Section 30251 of the Coastal Act mandates the protection and enhancement of
the visual resources of the Coastal areas while Sections 30253(1) and (2)
require that risks to life and property be minimized and that new development
shall assure stability and shall neither create not contribute significantly
to geologic stability.

In acting on the previous submittal of the City's Land Use Plan the Commission
found that the City did not have specific policies prohibiting the the
erection of structures or development down the bluff face.  The Commission
found that the following suggested modification was necessary to bring the
document into conformance with the applicable Coastal Act policies:

Page 11
Palos Verdes Estates LUP & LIP

The City shall prohibit the construction on private land of buildings,
stairways, pools, tennis courts, spas, or solid fences on or down the
bluff face or within 25 feet of the bluff edge without a geologic report
and a finding that the improvement would not be visually intrusive from
public view points.

The Commission found that the coastal bluffs within the region have been
historically subject to erosion and a 25 foot setback has been required by the
Commission in other areas along the south coast, both to prevent and protect
development from erosion and prevent adverse impacts to visual resources.  The
City adopted this suggested modification refining the wording somewhat in the
resubmitted LUP.

The above policy addresses development on or within within 25 feet of the
bluff edge in relation to geologic stability and visual resources.  However,
the policy does not address development on bluff lots beyond the 25 foot
setback which may also be visually intrusive from public view points and
potentially geologically unstable.  Site visits to the area by commission
staff confirm that development beyond the 25 foot setback has the potential to
be visually intrusive from public view points.  In addition, all of the
private parcels within the Palos Verdes Estates coastal zone are located
between the first public road and the sea, and therefore development on any
parcel has the potential of an adverse visual impact from public view points
within the coastal zone.  Furthermore, the City's Local Implementation Program
requires permits for all development within the Coastal Zone with the
exception of exempt development cited in Section 19.01.080 of the City's
municipal code.  The Local Implementation Program is more restrictive than
California Code of Regulations (Coastal Commission).  Pursuant to Section
30005(a) of the Coastal Act, the Coastal Act is not a limitation on the
ability of a local government to impose further regulations.  Therefore,
requiring coastal permits for all development within the Coastal Zone is not
in conflict with Coastal Act Policy.  Therefore, to be consistent, the Land
Use Plan must include a policy establishing the grounds for permit review in
this area, and the criteria the City will use in evaluating development in the
Coastal Zone.  Presently there is no policy in the LUP that supports the
City's implementation program to regulate all development in the Coastal Zone.

The Commission, therefore, finds that the above stated LUP policy does not
adequately protect the scenic and visual resources along the coast and insure
potential geologic stability questions are adequately addressed, as required
under Coastal Act Sections 30251 and 30253(1)&(2).  Therefore, as resubmitted
LUP is not consistent with Sections 30251 and 30253(1) and (2) of the Coastal
Act.

7.  Dredging, Filling and Shoreline Structures

Currently there are no structures such as breakwaters, jetties, piers,
marinas, in or near the shoreline.  Because of the rocky beach and steep
cliffs immediately landward, no such facilities are anticipated.  Any project
in the future would require a permit from the Commission.

8.  Agriculture

There are no agriculture within the City's Coastal Zone.

Page 12
Palos Verdes Estates LUP & LIP

9. Forestry & Soil Resources

There are none in the City's Coastal Zone.

10. Locating and Planning New Development

As noted above, the only vacant land within the coastal zone is 3 vacant lots which are al zoned R-1, considered infilling, and subject to both zoning ordinance and protective restrictions. Traffic from development will not affect access.

10. Public Works

Although existing storm drains have caused some erosion of the coastal bluffs, this erosion has been minimal. Thus, the economic costs of revamping and relocating current drains would not be outweighed by the possible prevention of further erosion.

The utility infrastructure is adequate to handle new development on existing vacant lots and recycling under the current zoning ordinance. The road capacity is also adequate. No significant new or expanded facilities are planned.

11. Industrial and Energy Development

Both the protective restrictions and zoning ordinances preclude the above development. There is no need for such facilities in the City nor are there any suitable locations for them consistent with Coastal Act Policies. Thus, the Policy group is not applicable to the City.


III.        APPROVAL OF THE LUP WITH SUGGESTED MODIFICATIONS

A. Motion and Staff Recommendation

    Motion 2

    I move that the Commission certify the Palos Verdes Land Use Plan if it is modified in conformity with the suggestions set forth below.

    Staff Recommendation

Staff is recommending a YES vote to the following motion and the adoption of the following resolution and findings. An affirmative vote by a majority of the members of the Commission is needed to pass the resolution.

Resolution to Certify the Land Use Plan if Modified

The Commission hereby certifies the Land Use Plan subject to the following modifications and adopts the findings stated below on the grounds that, if modified as suggested below, the Land Use Plan will meet the requirements of and conform with the policies of Chapter 3 (commencing with Section 30200) of the California Coastal Act to the extent necessary to achieve the basic state goals specified in Section 30001.5 of the Coastal Act; the Land Use Plan will contain a specific access component as required by Section 30500(a) of the

Page 13
Palos Verdes Estates LUP & LIP

Coastal Act; the Land Use Plan will be consistent with applicable decisions of
the Commission that guide local government actions pursuant to Section
30625(c); and Section 21080.5(d)(2)(i) of the Environmental Quality Act
because there are feasible alternatives or mitigation measures available which
would substantially lessen any significant adverse impact which the Land Use
Plan may have on the environment.  The suggested modifications to the
submittal are necessary to achieve the basic state goals set forth in SEction
3001.5 of the Coastal Act.

The Commission further finds that if Palos Verdes Estates adopts and transmits
its revisions to the Land Use Plan in conformity with the suggested
modifications, then the Executive Director shall notify the Commission.

B.  Suggested Modifications to the Land Use Plan

Note:  Where applicable, suggested deletions are indicated by striking out,
while suggested additions are indicated by underlining.

   Geologic Stability and Visual Resources

   1.   Modify Policy D regarding Geologic and Visual Resource as follows:

Construction on private land of buildings, including but not limited to,
buildings, additions to structures, grading, stairways, pools, tennis courts,
spas or solid fences in the Coastal Zone shall require a Coastal Development
Permit and shall be reviewed for impacts on visual resources, public access,
drainage and geologic stability.  Øñ/ǿ/ɏ/ɑǿʋñ/ɓȾʋɟɟ/ɟɑ̸ɕ/ǿɟ/ʋɪ̸Ⱦʜɪ̸ñ/Ƚȼ/ɟ̸ȼ̸ȼȼ
ǿɟ/ɫɦ̸ɕ/ɓȾ̸ʋɟɟ/ɕ̸ɗɗ̸ɕ Buildings, including but not limited to, additions to
structures, grading, stairways, pools, tennis courts, spas or solid fences on
or within 50 of the bluff edge shall be prohibited without a geologic report
and a finding that the improvements would minimize alteration of natural
landforms and shall not be visually intrusive upon public view points.

C.  Findings For Approval Of Suggested Modifications

A.  Introduction

The following findings support the Commission action to approve the Palos
Verdes Estates Land Use Plan.  They explain how the above modifications bring
the City of Palos Verdes Estates LUP into compliance with the Coastal Act.
The Commission's prior more extensive findings relative to Chapter 3 Coastal
Act policies for the denial of th LUP are incorporated herein by reference.

   (6)  Geologic Stability and Visual Resources

As resubmitted, the LUP policy regarding geologic stability and visual quality
does not adequately address potential visual resource impacts of development
from public view points and potential geologic stability questions, as
required under Coastal Act Sections 30251 and 30253(1)&(2).  As modified, the
LUP policy ensures development within 50 feet of the coastal bluff edge will
be analyzed to ensure that scenic and visual resources are protected and
potential geologic stability questions are adequately addressed, as required
under Coastal Act Sections 30251 and 30253(1)&(2).  Therefore, as modified
this policy is consistent with Sections 30251 and 30253(1) and (2) of the
Coastal Act.

IV.    CALIFORNIA ENVIRONMENTAL QUALITY ACT (CEQA)

The Commission finds that, as modified, the City of Palos Verdes Estates LUP is consistent with the requirements of the California Environmental Quality Act.  The LUP policies, and the modifications to them as detailed above, mitigate potential adverse environmental impacts from development in the Palos Verdes Estates Coastal Zone Area.  The Commission considered alternatives to the policies and land use designations submitted in the LUP and modified the City's plan where necessary to ensure that the least environmentally damaging alternatives are incorporated into the plan.

V.    CERTIFICATION OF THE IMPLEMENTATION PROGRAM

A.  Motion and Staff Recommendation

     Motion 2:

I move that the Commission reject the implementation plan of the City of Palos Verdes Estates Local Coastal Plan.

Staff Recommendation:

Staff recommends a YES vote which would result in the adoption of the following resolution and findings.  An affirmative vote of a majority of the Commissioners present is needed to pass the motion.

RESOLUTION TO REJECT THE IMPLEMENTATION PLAN

The Commission hereby rejects the Implementation Program of the City of Palos Verdes Estates on the grounds that the Local Implementation Program including the the associated ordinances, zoning maps, zoning and appendixes do not conform with or are inadequate to carry out the provisions of the Land Use Plan mitigation measures available which would substantially lessen any significant adverse impact which the approval of the Implementation Program would have on the environment.

B.    Findings For Rejection Of The Implementation Program

1.  Summary of Implementation Program Inconsistencies with LUP.

Section 30513 of the Coastal Act states that,

     ...The Commission may only reject zoning ordinances, zoning district maps, or other implementing actions on the grounds that they do not conform with, or are inadequate to carry out, the provisions of the certified Land Use Plan.

The City of Palos Verdes Estates Local Implementation Program (LIP) is inconsistent with the Land Use Plan or inadequate to carry out the policies of the Land Use Plan in several ways that affect the entire plan area.  The LIP

Page 15
Palos Verdes Estates LUP & LIP

is lacking or inadequate in four areas:

A.   Permit Procedures

B.   Definitions of Public View Points and Emergency.

C.   LIP ordinance to implement the Geologic Stability and Visual Resource policy of the LUP

D.   Criteria or standards for the determination of a visually intrusive development.

2.   _Permit Procedures_

The LIP does not have any provisions or procedures for the granting of;

1) Emergency Permits

2) Permit Extensions

3) Revocation of Permit

In addition, the LIP allows for the exemption of certain kinds of development, such as some kinds of public works projects, that are not exempt under Coastal Act Section 30610.

Although the City's permit ordinance is largely consistent with the California Code of Regulations for coastal development permits, the provisions noted above are not included in the LIP. Therefore, the Commission finds that the City's permit ordinances are not consistent with the California Code of Regulations and do not adequately carry out the provisions of the certified Land Use Plan.

3.   _Definitions_

A.   _Public View Points_.– The LIP does not provide a definition of Public View Points as stated in the Geologic Stability and Visual Resource policy of the LUP. Lack of an adequate definition of Public View Points does not adequately carry the intention of the above stated LUP Policy.

B.   _Emergency_.– In order to carry out the procedures and provisions of Emergency Permits, the LIP must provide a definition what constitutes an Emergency. Therefore, because an emergency is not defined in the LIP the City's permit ordinances are not consistent with the California Code of Regulations and do not adequately carry out the provisions of the certified Land Use Plan.

4   _Geologic Stability and Visual Resources_

The LUP requires coastal development permits for all development within the coastal zone and prohibits all development withth in 50 feet of the bluff edge without a geology report and a finding that the improvement will not be visually intrusive upon public view points. However, the LIP allows development on bluff lots without a geology report and a finding that the

Page 16
Palos Verdes Estates LUP & LIP

improvement would not be visually intrusive upon public view points, except
for development within 25 feet of the bluff edge.  Therefore, the Commission
finds that the LIP does not adequately carry out the provisions of the
Certified LUP.

The LIP does not provide standards or criteria that would determine if a
development has minimized to the maximum extent feasible potential adverse
visual impacts or visual intrusiveness.  These criteria and standards are
necessary to adequately carry out the provision and intent of the Certified
LUP.  Therefore, as submitted the Commission finds that the LIP does not
adequately carry out the provisions of the Certified LUP.


VI.   APPROVAL THE IMPLEMENTATION PROGRAM IF IT IS MODIFIED IN CONFORMITY
      WITH THE MODIFICATIONS  SUGGESTED BELOW:

A.   Motion and Staff Recommendation

     MOTION 3:

I move that the Commission approve the Implementation Program of the City of
Palos Verdes Estates Local Coastal Program if it is modified in conformity
with the suggested modifications below.

     STAFF RECOMMENDATION:

Staff recommends a YES vote for the adoption of the following resolution.  The
motion requires an affirmative vote of a majority of the Commissioners present
to pass the motion.


RESOLUTION TO CERTIFY THE IMPLEMENTATION PROGRAM IF MODIFIED:

The Commission hereby approves certification of the zoning and implementation
portion of the City of Palos Verdes Estates on the grounds that the Local
Implementation Program, zoning ordinance, associated zoning, zoning map, and
other implementing materials conform with and are adequate to carry out the
provisions of the Land Use Plan as certified.  There are no feasible
alternatives or mitigation measures available which would substantially lessen
any significant adverse impact which the approval of Zoning and Implementation
Program, if modified, would have on the environment.


B.   Suggested Modifications

     NOTE:  Modifications are listed under the City's Municipal Code Number.
     Additions are either referenced in exhibits or underlined and deletions
     are ~~scored~~.

1.   Permit Procedures

     19.02.120  Extension of Permits

     Add procedures for the Extension of Coastal Developement Permits as found
     in Exhibit 5.

Page 17
Palos Verdes Estates LUP & LIP

### 19.02.130  Revocation of Permits

Add procedures for Revocation of Coastal Development Permits as found in Exhibit 6.

### 19.02.140  Emergency Permits

Add procedures for Emergency Permits as found in Exhibit 7.

### 19.01.080 Excluded Development

(A)  Any improvements to an existing structure, including replacement of a structure destroyed by a natural disaster, other than a major public works facility, which is in conformity with requirements of 30610(g) of the Public Resources Code, and any repairs or maintenance of an existing structure which do not result in an addition to, enlargement of, the structure, unless any of the following apply:

   (1)  There exists a risk of an adverse environmental impact or impacts.

   (2)  There will be an adverse impact on public access to the coast.

   (3)  The improvement, repair or maintenance constitute a change in use which is not in conformity with the City's certified LCP.

(B)  Any Category of development determined by the <u>Coastal Commission Planning Director</u> to have no potential for any significant impact on the environment, coastal resources or public access to the coast, <u>unless any of the following apply:</u>

   <u>(1)</u>  <u>There exists a risk of an adverse environmental impact or impacts.</u>

   <u>(2)</u>  <u>There will be an adverse impact on public access to the coast.</u>

   <u>(3)</u>  <u>The improvement, repair or maintenance constitute a change in use which is not in conformity with the City's certified LCP.</u>

(C)  The installation, testing and placing in service or the replacement of any necessary utility connection between an approved CDP and an existing service facility which conforms in all respects to the requirements of the City's Code and ordinances; provided, however, that the City may where necessary, require reasonable conditions to mitigate any adverse impacts on coastal resources, including but not limited to, scenic resources, unless any of the following apply:

   <u>(1)</u>  <u>There exists a risk of an adverse environmental impact or impacts.</u>

   <u>(2)</u>  <u>There will be an adverse impact on public access to the coast.</u>

Page 18
Palos Verdes Estates LUP & LIP

    (3)  The improvement, repair or maintenance constitute a change in
      use which is not in conformity with the City's certified LCP.

(D)  (a)  Minor public works projects, ~~including but not limited to, the erection of public signs, the planting or removing of street striping, installation of parking spaces designations, painting or removing paint from curbs, maintenance and repair of public streets and sidewalks, installation and maintenance of landscaping, materials and facilities, used or owned by the City, the repair, maintenance, replacement or development of public facilities in emergency circumstances, and construction, repair, or addition to public works projects and energy facilities for which the cost is less than fifty thousand dollars ($50,000),~~ including those listed
in the Repair, Maintenance and Utility Hook-up Exclusions from Permit
Requirements, including Appendix I thereto, adopted by the California
Coastal Commission on September 5, 1978, which is incorporated herein
by reference, and pertaining to excluded activity with regard to
roads, public utilities and miscellaneous alterations;
(b)  Maintenance and repair of public facilities in an emergency as
permitted by Section 19.02.140 of this Code.

2.  Definitions

   19.01.105  Emergency

   An "Emergency" means a sudden, unexpected occurrence demanding immediate
   action to prevent or mitigate loss or damage to life, health, property or
   essential public services.

   19.01.145  Public View Point

   "Public View Point" means any publicly owned beach, park, bluff area or
   other location in the Coastal Zone to which the public has access and from
   which it can view Development in the Coastal Zone.

3.  Geologic Stability and Visual Resources

   18.04.160, 18.16.50, and 19.02.020  Coastal Zone Limitations On
   Development in Bluffs.

   Construction on private land of buildings, including but not limited to;
   buildings, additions to structures, grading, stairways, pools, tennis
   courts, spas or solid fences in the Coastal Zone shall require a Coastal
   Development Permit and be reviewed for impacts on visual resources,
   drainage and geological stability.  Structures, additions to structures,
   grading, stairways, pools, tennis courts, spas or solid ~~wood~~ fences may
   be constructed on private property on, or within ~~25~~ 50 feet of, the
   Bluff Edge in the Coastal Zone only after preparation of a geologic report
   and findings by the City that the proposed structure, addition(s) to
   structure, grading, stairway, pool, tennis court, or solid ~~wood~~ fence
   (1) poses no threat to the health, safety, and general welfare to persons

in the area by reason of identified geologic conditions which cannot be mitigated and (2) the proposed structure, addition, stairway, pool, tennis court or solid ~~wood~~ fence will minimize alteration of natural landforms and shall not be visually intrusive from public view points in the Coastal Zone. (3) A structure, addition(s) to structure, grading, stairway, pool, tennis court, spa, or fence will not be considered visually intrusive if the permitted development incorporates the following to the maximum extent feasible:

    1)   There are no alternative locations for proposed development on the site which are less visually intrusive from Public View Points.

    2)   Reduction in the scale of development to conform with scale of existing adjacent development.

    3)   Use of landscaping to soften or screen development.

    4)   Use of material, colors, and/or designs which are more compatible with natural surroundings.

## C. FINDINGS FOR APPROVAL OF THE IMPLEMENTATION PROGRAM IF MODIFIED

As modified, the Palos Verdes Estates Proposed Local Implementation Program is consistent with the Land Use Plan and adequate to carry the policies of the Land Use Plan. The basic structure and organization of the implementation program will adequately carry out the Land Use Plan. As modified, the ordinance is consistent with the California Code of Regulations for coastal development permits, and has additional clear definitions and procedures for review of development on coastal bluffs.

As Modified with the additional permit procedures for the granting of permit extensions, revocations of coastal development permits, emergency permits and modification of procedures for development exempt from permit requirements, the LIP permit ordinance is consistent with the California Code of Regulations for coastal development permits. Therefore, the permit ordinance is adequate to carry out the policies of the LUP.

The LIP, as modified, provides standards for bluff development to ensure geologic hazards are minimized and geologic stability of building sites is assured, and visual resources along the coast are protected. As modified, the ordinance regarding geologic and visual resources is adequate to carry out the policies of the the LUP.

Therefore, as modified, the Local Implementation ordinance is consistent with the Certified Palos Verdes Estates Land Use Plan and is adequate to carry out its provisions.

1002E



EXHIBIT 1



EXHIBIT 2

Locations of Coastal Zone Boundary,
Shoreline Preserve, Public Land &
Remaining Vacant Lots within
Coastal Zone

LEGEND

PUBLIC LAND — 175 acres

SHORELINE PRESERVE — 130 acres

UNDEVELOPED PRIVATE PROPERTY

A-2

## BEACH ACCESS TRAILS

| Map Key | | Ownership | Bluff Height | Public Frontage Parking | Trail Difficulty | View Site |
|---|---|---|---|---|---|---|
| 1. | Torrance Beach | Public | * | | 3 | |
| 2. | Rosita Place | Private | 125 | 0 | 10 | |
| 3. | Swim Club Road | Public | 85 | 50 | 2 | X |
| 4. | "Haggarty's" | Public | 75 | 12 | 6 | |
| 5. | Via Chino | Public | 80 | 30 | 6 | |
| 6. | Flat Rock Point | Public | 175 | 40 | 4 | X |
| 7. | Bluff Cove | Public | 300 | 20+ | 8 | X |
| 8. | Margate Canyon | Public | 230 | 20+ | 8 | |
| 9. | Chiswick North | Public | 205 | 20+ | 8 | |
| 10. | Chiswick Road | Public | 200 | 20+ | 7 | |
| 11. | Cloyden Road | Private | 175 | 0 | 7 | |
| 12. | Lunada Bay | Public | 160 | 30+ | 7 | X |
| 13. | Via Oleadas | Private | 145 | 0 | 6 | |
| 14. | Resort Point South | Public | 165 | 10 | 8 | |
| 15. | Via Neve | Public | 170 | 20+ | 7 | |
| 16. | Southern Boundary | Private | * | | 10 | |

Difficulty: 1 = excellent, 10 = very poor

\* Access from adjacent beaches

Source: Shoreline Preserve Plan, City of Palos Verdes Estates

A-2

EXHIBIT 3

BEACH ACCESS TRAILS

Source: City of Palos Verdes Estates, Shoreline Preserve Plan

EXHIBIT 4

SECTION D:     Amendment to Chapter 19.02 of the Municipal
Code

(1)  The caption to Chapter 19.02 of the Municipal Code
is deleted and in its place shall be inserted the following.

"Chapter 19.02 - Exemption, Notice, Hearing, Appeal,
Extension, Revocation and Emergency Procedures for
Coastal Development Permits"

(2)  The following Sections are added to Chapter 19.02
of the Municipal Code:

"Section 19.02.120 - Extension of Permits

(a)  No later than 45 days prior to the time that
construction must commence on a Development to which the City has
granted a Coastal Development Permit, the applicant may, upon
payment of a fee ($50 for all Developments other than
residential, $25 for all residential Development), apply to the
Planning Director of the City for an extension of time within
which to commence and/or complete construction of the
Development.  The application shall be accompanied by evidence of
a valid, unexpired Coastal Development Permit granted by the
City.

If the Planning Director determines that there are no
changed circumstances which are inconsistent with the California
Coastal Act of 1976, as amended, and Title 14 California Code of
Regulations, Section 13000, et seq., his determination of
consistency shall be conclusive and he may extend the term of the

(1)  Notice, including a summary of the procedures
set forth in this section, has been given by the
Planning Director of his determination that the
application is consistent by (i) posting said
notice at the project site and (ii) mailing said
notice to all parties the Director has reason to
know may be interested in the application,
including all parties who participated in the
initial permit hearing; and

(2)  If no written objection has been received
within ten working days of publishing the
aforedescribed notice.

(b)  In the event that the Planning Director determines
that the application for extension is not consistent, or that he
receives timely written objection, the Planning Director shall
report the application to the City Council.  If a majority of the
Council object to the extension on the grounds that it may be
inconsistent with the California Coastal Act and/or the
applicable Code of Regulations, the application shall be set for
a full hearing, pursuant to Section 19.02.060 of this Code,
before the Planning Commission as though it were a new
application for a Coastal Development Permit.  If there is not an
objection to the determination of the Planning Director by a
majority of the City Council, the Planning Director shall issue
the extension for a period not to exceed one (1) year.

EXHIBIT 5  1 OF 2

(c) Any valid, unexpired Coastal Development Permit for which application for an extension is timely made, shall be automatically extended for the period of time during which the City is considering the requested extension; provided, however, that if construction has not commenced at the time of said application, no construction may commence until the City has made its determination on the extension.

EXHIBIT 5  2 OF 2

Section 19.02.130 - Revocation of Permits.

(a)  Scope of Article.

The provisions of this Section shall govern proceedings for revocation of a Coastal Development Permit previously granted by the City.

(b)  Grounds for Revocation.

Grounds for revocation of a permit shall be:

(1)   Intentional inclusion of inaccurate, erroneous or incomplete information in connection with a Coastal Development Permit application, where the City finds that accurate and complete information would have caused the City to require additional or different conditions on a permit or deny an application;

(2)   Failure to comply with the notice provisions of Section 19.02.070 of this Code where the views of the person(s) not notified were not otherwise made known to the City and could have caused the City to require additional or difference conditions on a permit of deny an application.

(c)  Initiation of Proceedings to Revoke.

Any person who did not have an opportunity to fully participate in the original permit proceeding by reason of the permit applicant's intentional inclusion of inaccurate information or failure to provide adequate public notice as specified in Section 19.02.070 may request revocation of a permit by application to the Planning Director of the City, specifying, with particularity, the grounds for revocation. The Planning Director shall review the stated grounds for revocation and, unless the request is patently frivolous and without merit, shall intitiate revocation proceedings. The Planning Director may initiate revocation proceedings on his or her own motion when the grounds for revocation have been established pursuant to the provisions of Sub-Section (b), above.

EXHIBIT 6

## Section 19.02.140 - Emergency Permits.

The following procedures shall apply to the issuance of a Coastal Development Permit in the event of an Emergency as defined in Section 19.01.105 of Chapter 19.01 of this Code.

(a)  Applications.

(1) Applications in case of Emergency shall be made by letter to the Planning Director or in person or by telephone, if time does not allow a written request.

(2)  The following information should be included in the request:

(i)  Nature of the Emergency;

(ii)  Cause of the Emergency, insofar as this can be established;

(iii)  Location of the Emergency;

(iv)  The remedial, protective, or preventive work required to deal with the Emergency; and

(v)  The circumstance during the Emergency that appeared to justify the cause(s) of action taken, including the probabe consequences of failing to take action.

(b)  Criteria for Granting Permit.

(a) The Planning Director shall provide public notice of the Emergency work, with the extent and type of notice determined by the Planning Director on the basis of the nature of Emergency.

(b) The Planning Director may grant an Emergency permit upon reasonable terms and conditions, including an expiration date and the necessity for a regular permit application later, if the Planning Director finds that:

(i)  An Emergency exists that requires action more quickly than permitted by the procedures for administrative permits or for regular permits administered pursuant to this Code, and the work can and will be completed within 30 days unless otherwise specified by the terms of the permit.

(ii)  Public comment on the proposed Emergency action has been reviewed, if time allows; and

EXHIBIT 7  1 OF 2

(iii) The work proposed would be consistent with the Certified Land Use Plan portion of the LCP.

(3) The Planning Director shall not issue an Emergency permit for any work that falls within the provisions of Public Resources Code Sections 30519(b) which requires review by the California Coastal Commision.

(c) Report to the Governing Body of the Local Government and to the Coastal Commission.

(1) The Planning Director shall report, in writing, to the City Council at its first scheduled meeting after the Emergency permit has been issued, the nature of the Emergency and the work involved. Copies of this report shall be available at the meeting and shall be mailed to all persons who have requested such notification in writing.

(2) The report of the Planning Director shall be informational only; the decision to issue an emergency permit is solely at the discretion of the Planning Director subject to the provisions of this Section."

[Appropriate closing sections for an Ordinance ar being inserted.]

EXHIBIT 7 2 OF 2

LAW OFFICES
BURKE, WILLIAMS & SORENSEN
2310 PONDEROSA DRIVE
SUITE I
CAMARILLO, CALIFORNIA 93010
(805) 987-3468
TELECOPIER: (805) 482-9834

ORANGE COUNTY OFFICE
3200 BRISTOL STREET
SUITE 640
COSTA MESA, CALIFORNIA 92626
(714) 545-5559

LOS ANGELES OFFICE
611 WEST SIXTH STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017
(213) 236-0600
TELECOPIER: (213) 236-2700



MAR 1 1 1991

CALIFORNIA
COASTAL COMMISSION
SOUTH COAST DISTRICT

March 8, 1991

Direct Line:       805-987-3468
File Number:       00282-114

John Ainsworth, Coastal Program Analyst
California Coastal Commission - South
    Coast District
P. O. Box 1450
245 Broadway, Suite 380
Long Beach, California 90802-4458

        Re:   Palos Verdes Estates Local Coastal Plan; City
              Council Action; Coastal Commission Agenda

Dear Jack,

        The Planning Commission and City Council have acted
on the requisite resolution and ordinances related to
establishing a Local Coastal Plan for the City.  Under cover
of this letter are certified copies of the three documents
enacted by the City:

        1.    Planning Commission Resolution PCR 91-01
        recommending the ordinances to the City Council;

        2.    City Council Ordinance No. 091-525 amending
        the General Plan and adding to the Municipal Code
        to include the Coastal Zone Overlay;

        3.    City Council Ordinance No. 091-526 making the
        required findings regarding activities permitted in
        the Coastal Zone and amending the Municipal Code to
        add notice, hearing and appeal procedures for
        Coastal Zone permits and to amend the open space
        zone to include certain limitations on construction
        within the Coastal Zone.

EXHIBIT 8

Palos Verdes Estates  - Ainsworth
March 8, 1991
Page 2


        If you need any additional materials related to
this matter, please call Tim D'Zmura or me.
        We respectfully request that you place the matter
of the Palos Verde Estates Coastal Plan on the agenda for
Coastal Commission hearing in April of 1991.

        Tim D'Zmura and I will make ourselves available to
meet with you prior to the Commission hearing at a time
convenient to you.  I believe you indicated that such a
meeting would be necessary in order to respond to any
questions or comments you may have and to coordinate our
presentation before the Commission.

        I look forward to hearing from you in the near
future regarding these matter.


                        Cordially,

                        Mary Redus Gayle
                        of BURKE, WILLIAMS & SORENSEN

MRG:lvc
Enclosures

cc:   James Hendrickson
      Tim D'Zmura
      Cathy Reed
      C. Douglas Holland, Esq.

ORDINANCE NO. O91-525

AN ORDINANCE OF THE CITY COUNCIL OF THE CITY
OF PALOS VERDES ESTATES AMENDING THE GENERAL
PLAN TO ADD A COASTAL OVERLAY DESIGNATION AND
AMENDING THE MUNICIPAL CODE OF THE CITY OF
PALOS VERDES ESTATES, CALIFORNIA, BY ADDING
CHAPTER 18.37 TO TITLE 18 RELATIVE TO THE
ESTABLISHMENT OF A COASTAL ZONE OVERLAY ZONE.

WHEREAS, the California Coastal Commission is
anticipated to make its certification of the proposed Palos
Verdes Estates Local Coastal Program ("LCP") contingent upon
certain amendments to the City's General Plan to establish a
Coastal Zone Overlay and to the Zoning Ordinance applying certain
special requirements for property lying in the Coastal Zone
Overlay Zone; and

WHEREAS, on January 15, 1991, the City of Palos Verdes
Estates Planning Commission held public hearings on a proposed
resolution to amend the General Plan to add a Coastal Zone
Overlay and a proposed ordinance to amend the Municipal Code to
add a Coastal Zone Overlay Zone and adopted Resolution No. PCR
91-01 recommending to the City Council that it certify the
Negative Declaration and adopt the appropriate ordinances to so
amend the General Plan and the Municipal Code;

WHEREAS, the City Council of the City of Palos Verdes
Estates has adopted Resolution R91-09 certifying the Negative
Declaration and Ordinance O91-526 of even date herewith amending
its Municipal Code to add procedures and definitions for notice,
hearing and appeal of projects within the Coastal Zone, amending
the Open Space Zone and adding certain building restrictions in
the Coastal Zone; and

NOW THEREFORE, the City Council of the City of Palos
Verdes Estates DOES ORDAIN as follows:

SECTION ONE.    The General Plan of the City of Palos Verdes
Estates is hereby amended to add a Coastal Overlay Designation in
those areas shown on Exhibit "A" attached hereto and incorporated
herein in the area within the Coastal Zone as defined in Title
19, Chapter 19.01, §19.01.060 of the Municipal Code.

SECTION TWO.    The Code of the City of Palos Verdes Estates is
hereby amended by adding Chapter 18.37 "Coastal Zone Overlay
Zone" to Title 18, which shall apply to all applications for a
Coastal Development Permit in the Coastal Zone Overlay, and which
shall read as follows:

CHAPTER 18.37

CZ-O COASTAL ZONE OVERLAY ZONE

Section 18.37.010 Purpose.

The CZ-O Coastal Zone Overlay Zone and its application
is for the purpose of protecting the public health, safety and
general welfare by:

I hereby certify that the foregoing document is a full, true and
correct copy of_____
on file in the office of the City Clerk of the City of Palos
Verdes Estates.

_____
CITY CLERK

by:_____
DEPUTY

Ordinance O91-525

     A.    Protecting the coastal bluffs as a natural resource;

     B.    Assuring that the bluff can support proposed Development (as defined in Title 19, Chapter 19.01, §19.01.070);

     C.    Protecting parklands within the Coastal Zone for park purposes.

Section 18.37.020 Application.

     The Coastal Zone Overlay Zone ("CZ-O") shall be superimposed over the zoning designation of lands within the Coastal Zone as defined in Title 19, Chapter 19.01, §19.01.060 of this Code. The official zoning map shall be amended to apply the Coastal Zone Overlay to all areas of the City which are included in said Overlay and shall indicate the designation "CZ-O" after the zoning designation of the district over which it is superimposed and the regulations of the CZ-O zone shall apply in addition to the regulations of the underlying zoning of the district.

Section 18.37.030 Uses Permitted.

     A.    Except as prohibited by this section, real property in the CZ-O zone may be used for any use permitted in the zone over which the CZ-O zone designation is superimposed.

     B.    City parklands in the CZ-O zone may be used only for public park purposes.

     C.    No building, stairway, pool, tennis court, spa or solid fence shall be constructed on, or down the face of any bluff on private land or within 25 feet of such bluff's edge without meeting the requirements of Title 19, Chapter 19.02, §19.02.02.D of this Code ("Precise Plan Approval").

Section 18.37.040 Precise Plan Procedure.

     A.    Applicant. The applicant for Precise Plan Approval shall be those persons designated in Title 19, Chapter 19.02, §19.02.030 of this Code.

     B.    Application. The application for Precise Plan Approval shall include the following information and documents required by Title 19, Chapter 19.02, §19.02.030 of this Code.

     C.    Application fee. The application shall be accompanied by the payment of a filing fee, as established by resolution of the City Council.

     D.    Findings for Precise Plan Approval. No precise plan shall be recommended for approval or approved except upon the affirmative findings that:

     (1)    The Precise Plan complies with the requirements of this article;

     (2)    The proposed use is consistent with the General Plan, the LCP, Title 19 of this Code, all zoning regulations for the underlying zone, and any applicable specific plan.

Ordinance 091-525

     E.  Conditions of Precise Plan Approval.  Precise approval may be recommended and granted upon conditions that are necessary and reasonable to insure that the proposed use will be designed, located, developed and maintained in accordance with the findings required by this article, Title 19 of this Code, the LCP and any applicable specific plan.

     F.  Procedures for notice and hearing of Precise Plan Approval by City shall be those procedures set forth in Title 19, Chapter 19.02, §19.02.070 of this Code.

SECTION THREE.  If any section, subsection, sentence, clause, phrase, part or portion of this Ordinance is for any reason held to be invalid or unconstitutional by any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance.  The City Council declares it would have adopted this Ordinance and each section, subsection, sentence, clause, phrase, part or portion thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses, phrases, parts or portions be declared invalid or unconstitutional.

SECTION FOUR.  The Mayor shall sign and the City Clerk shall certify to the passage and adoption of this Ordinance.  The City Clerk shall make a minute of the passage and adoption thereof in the records of the proceedings of the City Council in the minutes of the meeting, at which the same is passed and adopted and shall cause the same to be posted once in three (3) conspicuous public places within the corporate limits of the City within the time and manner as prescribed by law.  This Ordinance shall take effect and be in full force and effect upon the later of  (1) thirty (30) days after adoption thereof or  (2) certification of the LCP by the California Coastal Commission.

     PASSED, APPROVED AND ADOPTED this 26th day of February, 1991.

JAMES R. NYMAN, MAYOR

ATTEST:

BARBARA CULVER, CITY CLERK

APPROVED AS TO FORM:

MARY REDUS GAYLE, ACTING CITY ATTORNEY

Ordinance O91-525

STATE OF CALIFORNIA        )
COUNTY OF LOS ANGELES      )  ss.
CITY OF PALOS VERDES ESTATES )

     I, BARBARA CULVER, City Clerk of the City of PALOS VERDES ESTATES, do hereby certify that the foregoing Ordinance O-91-525 was regularly introduced and placed upon its first reading at a regular meeting of the City Council on February 12, 1991. That thereafter, said Ordinance was duly adopted and passed upon the motion of Councilmember ___Ruth Gralow___ and the second of Councilmember ___Mattingly___, at a regular meeting of the City Council on the 26th day of February, 1991, by the following vote, to wit:

    AYES:    Mayor Nyman, Councilmembers Mattingly, Gralow, Moody, Humphrey

    NOES:    None.

    ABSTAIN:    None.

    ABSENT:    None.

Dated: February ___, 1991

                      BARBARA CULVER, CITY CLERK

ORDINANCE NO. 091-526

AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF PALOS VERDES ESTATES, CALIFORNIA, MAKING CERTAIN FINDINGS REGARDING PERMITTED ACTIVITIES IN THE COASTAL ZONE WHICH LIES WITHIN THE CITY OF PALOS VERDES ESTATES; AMENDING THE MUNICIPAL CODE OF THE CITY OF PALOS VERDES ESTATES, CALIFORNIA, BY ADDING CHAPTER 19.01 AND 19.02 RELATIVE TO DEFINITIONS AND PROCEDURES FOR NOTICE, HEARING AND APPEAL OF DEVELOPMENT PROJECTS IN THE COASTAL ZONE; AND AMENDING THE R-1 ZONING ORDINANCE, CHAPTER 18.04 OF THE MUNICIPAL CODE, TO ADD §18.04.160 AND AMENDING THE OPEN SPACE ZONING ORDINANCE, CHAPTER 18.16 OF THE MUNICIPAL CODE TO ADD §18.16.050, ALL PERTAINING TO LIMITATIONS WHICH PROHIBIT CONSTRUCTION OF CERTAIN IMPROVEMENTS ON, OR DOWN THE BLUFF AND WITHIN TWENTY-FIVE (25) FEET OF THE BLUFF EDGE IN THE COASTAL ZONE UNDER CERTAIN CIRCUMSTANCES

WHEREAS, the City of Palos Verdes Estates (hereinafter, "City") has adopted a Local Coastal Plan (the "LCP") pursuant to the California Coastal Act, commencing with Public Resources §30000, and is required by Title 14 of the California Code of Administrative Regulations, §13565, 13568, et seq., to adopt notice, hearing and appeals procedures in accordance with the minimum standards as set forth therein; and

WHEREAS, the California Coastal Commission is expected to certify the LCP pursuant to the authority granted it by Public Resources Code §§30501, 30513, 30610 and 21080.5 and in conformity with the requirements of Title 14 of the California Code of Adminsitrative Regulations §13542; and

WHEREAS, the City anticipates that it will be required by the Coastal Commission, pursuant to Public Resources Code §30600.5, to adopt procedures for processing a coastal development permit (a "CDP") in conformity with, and adequate to implement, the Coastal Commission's regulations on post-certification permit appeals; and

WHEREAS, the City is required by its LCP to keep all City land lying within that portion of the Open Space Zone which is within the Coastal Zone in permanent public park land; and

WHEREAS, the City is required by its LCP to prohibit construction on private land of buildings, stairways, pools, tennis courts, spas and solid wood fencing on or down the bluff or within twenty-five (25) feet of the bluff edge without a geologic report and to make a finding that the construction would not be visually intrusive from the public view points in the Coastal Zone; and

WHEREAS, the City is required by its LCP to permit recreational use, including picnicking, in the City's public parks which lie within the Coastal Zone; and

WHEREAS, the "Planning Commission" of the City held a duly noticed public hearing on Ordinance 091-526, on January 15, 1991, at which time all interested parties were given an opportunity to be heard and present evidence; and

I hereby certify that the foregoing document is a full, true and correct copy of _____ on file in the office of the City Clerk of the City of Palos Verdes Estates.

CITY CLERK

by: _____

DEPUTY

O-PVE-CC5                    Page 1 of 15

CITY COUNCIL ORDINANCE O91-525

WHEREAS, the Planning Commission has recommended that the City Council certify the negative declaration for this matter and approve Ordinance O-91-526; and

WHEREAS, the City Council held a public hearing on Ordinance O91-526, on February 12, 1991, at which time all interested parties were given an opportunity to be heard and present evidence; and

NOW, THEREFORE, the City Council does hereby ordain as follows:

SECTION A.    FINDINGS

1.    The City Council has reviewed its adopted General Plan, LCP and zoning ordinances and finds that the code amendments contained within this Ordinance O-91-526 will have no significant impact on the environment and that this Ordinance O-91-526 is consistent with the Negative Declaration previously certified (Resolution R91-09) by the City Council on this date.

2.    The City Council has reviewed the LCP, the General Plan and the zoning ordinances of the City and finds that the code amendments contained in this Ordinance O91-09 are consistent with the City's adopted LCP, General Plan and zoning ordinances, as amended by Ordinance O-91-525 which has been adopted simultaneously with this Ordinance.

3.    The City Council has reviewed Ordinance No. 362 adopted on November 24, 1981 and finds that, pursuant to that Ordinance, picnicking is permitted in all parklands located within the Coastal Zone.

SECTION B.    AN AMENDMENT TO TITLE 19 TO ADD CHAPTERS 19.01 and 19.02 TO THE MUNICIPAL CODE TO PROVIDE PROCEDURES FOR NOTICE, HEARING AND APPEAL OF COASTAL DEVELOPMENT PERMITS, AS FOLLOWS:

The City Council hereby amends the Municipal Code of the City (hereinafter, the "Code") by adding Chapter 19.01, Sections 19.01.010 through 19.01.160 and Chapter 19.02, Sections 19.02.010 through 19.02.110 to Title 19 to the Code, to read as follows:

Chapter 19.01 - Definitions

For purposes of this Title 19, and unless the context otherwise requires, the following definitions shall govern Title 19 of this Code:

SECTION 19.01.010    Aggrieved Person.    An "Aggrieved Person" shall be any person, including the applicant, who:

(A) testified personally, or through a representative, or submitted written testimony at a hearing on an application for an Appealable Coastal Development Permit (as hereinafter defined); or

(B) who by other appropriate means prior to the hearing informed the City of the nature of his or her concerns; or

O-PVE-CC5                          Page 2 of 15

CITY COUNCIL ORDINANCE 091-525

(C) for good cause was unable to do either of the acts required by Subparagraph 1 or 2, above; or

(D) submitted written testimony at least twenty-four (24) hours prior to such a hearing, if no appearance is made by that person at said public hearing, and requested that that testimony be made a part of the public record for such hearing, or,

(E) when no hearing is required, informed the Director of Planning, either in writing or personally, of an interest in the subject of an Appealable Coastal Development Permit at least five (5) days prior to the date upon which action is taken upon an Appealable Coastal Development Permit.

SECTION 19.01.020    Appealable Coastal Development and Grounds for Appeal.

(A) Any action taken by the City to approve a CDP within the Coastal Zone which meets the criteria of Sections (a) through (d), below, shall be an Appealable Coastal Development (hereinafter, an "ACDP") and may be appealed to the Coastal Commission only after exhaustion of all City appeal remedies, if any:

(1) An approval by the City for a Development (as hereinafter defined) which  (i) lies between the sea and the first public road paralleling the sea; or  (ii) within three hundred (300) feet of the inland extent of any beach, or of the mean high tide line of the sea where there is no beach, whichever is the greater distance.

(2) An approval by the City for a Development and not included in subsection (a), above, but which is located on tidelands, submerged lands, public trust lands; or, within one hundred (100) feet of any wetland, estuary or stream; or within three hundred (300) feet of the top of the seaward face of any coastal bluff (as hereinafter defined).

(3) An approval by the City for a Development which is not included in subsection (a) and (b), above, but which is located in a sensitive Coastal resource area.

(4) Any Development approved by the City for any major public works project and any major energy facility for which the estimated cost is greater than Fifty Thousand Dollars ($50,000).

(B) The "Grounds for Appeal" shall be limited to one or more of the following allegations:

(1) For Developments described in subparagraph (A)(1), above:

(a)    The Development interferes with, or fails to provide adequate physical access to a public or private commercial use.

O-PVE-CC5                    Page 3 of 15

CITY COUNCIL ORDINANCE O91-525

(b)     The Development fails to protect public views from any public road or from a recreational area to, and along the Coast.

(c)     The Development is not compatible with the established physical scale of the area.

(d)     The Development may significantly alter existing natural landforms.

(e)     The Development does not comply with shoreline erosion and geologic setback requirements.

(f)     The Development does not comply with the public access and public recreational policies and requirements of the California Coastal Act, as contained in Chapter 3, commencing with §30200, of the California Public Resources Code.

(2) For all Developments described in subparagraphs (A)(2) through (A)(4), above, an allegation that the Development does not conform with the City's certified LCP.

SECTION 19.01.030   Bluff.   A "Bluff" is any scarp or steep face of rock, decomposed rock, sediment or soil resulting from erosion, faulting, folding or excavation of the land mass. A Bluff may be a simple planar, a curved surface or a steplike section.  For purposes of this Chapter, Bluff is limited to those features having vertical relief of ten (10) feet or more.

SECTION 19.01.040   Bluff Edge.   A "Bluff Edge" is the upper termination of a Bluff.  When the top edge of a Bluff is rounded away from the face of the Bluff as a result of erosion related to the presence of a steep Bluff face, the edge shall be defined as that point nearest the Bluff beyond which the downward gradient of the surface increases more or less continuously until it reaches the general gradient of the Bluff below such rounding.  In a case where the Bluff contains a series of steplike features at the top of the Bluff face, the Bluff Edge shall be the edge of the topmost riser on the Bluff.

SECTION 19.01.050   Coastal Development Permit. "Coastal Development Permit" means a permit for any development within the Coastal Zone which is required pursuant to Public Resources Code §30600(a).

SECTION 19.01.060   Coastal Zone.   The "Coastal Zone" is that land and water area of the City as described and shown on the maps required and identified in the Coastal Act of 1976, as amended, by §30103 of the Public Resources Code §30000.

SECTION 19.01.070   Development.

Whether lying on land outside of the water, or in or under water, each of the following shall be a "Development" for purposes of this Chapter:

(A)  The placement or erecting of any solid material or structure.

O-PVE-CC5                          Page 4 of 15

CITY COUNCIL ORDINANCE O91-525

(B)  The discharge or disposal of any dredged material or any gaseous, liquid, solid or thermal waste.

(C)  Grading, removing, dredging, mining or extraction of any materials.

(D)  A change in density or intensity of the use of any land, including but not limited to  (a) any subdivision created pursuant to the Subdivision Map Act commencing with Government Code §66410,  (b) any other division of land, including lot splits; provided, however, that where a land division is brought in connection with the purchase of said land by a public agency for public recreational use, such division shall not constitute a "Development" for purposes of this Chapter.

(E)  Any change in the intensity of the use of water, or access thereto.

(F)  Construction, reconstruction, demolition or any alteration of the size of any structure, including but not limited to any private, public or municipal utility.

(G)  The removal or harvesting of major vegetation other than for agricultural purposes.

SECTION 19.01.080   Development, Excluded   An "Excluded Development" shall mean

(A)  Any improvements to an existing structure, including replacement of a structure destroyed by a natural disaster, other than a major public works facility, which is in conformity with requirements of §30610(g) of the Public Resources Code, and any repairs or maintenance of an existing structure which do not result in an addition to, or enlargement of, the structure, unless any of the following apply:

(1)  There exists a risk of an adverse environmental impact or impacts.

(2)  There will be an adverse impact on public access to the Coast.

(3)  The improvement, repair or maintenance constitutes a change in use which is not in conformity with the City's certified LCP.

(B)  Any category of Development determined by the Coastal Commission to have no potential for any significant impact on the environment, Coastal resources or public access to the Coast.

(C)  The installation, testing and placing in service, or the replacement of any necessary utility connection between an approved CDP and an existing service facility which conforms in all respects to the requirements of the City's Code and ordinances; provided, however, that the City may where necessary, require reasonable conditions to mitigate any adverse impacts or coastal resources, including but not limited to, scenic resources.

O-PVE-CC5                     Page 5 of 15

CITY COUNCIL ORDINANCE O91-525

(D)  Minor public works projects, including but not limited to, the erection of public signs; the painting or removing of street striping; installation of parking space designations; painting or removing paint from curbs; maintenance and repair of public streets and sidewalks; installation and maintenance of landscaping; maintenance of City utilities; repair and improvements to structures maintained, used or owned by the City; the repair, maintenance, replacement or development of public facilities in emergency circumstances; and, construction, repair, or addition to public works projects and energy facilities for which the cost is less than Fifty Thousand Dollars ($50,000).

SECTION 19.01.090   Development, Non-Appealable.   A "Non-Appealable Development" shall be any Development in the Coastal Zone which is not an Appealable Development or an Excluded Development.

SECTION 19.01.100   Disaster.   "Disaster" means any situation in which the force or forces which destroyed the structure to be replaced was (were) beyond the control of its owners.

SECTION 19.01.110   Final Decision.   A decision made by the City to approve a CDP, whether after hearing by the City's Planning Commission, City Council or a Hearing Officer (as hereinafter defined) for any application seeking approval to construct, erect or install a Development, which is other than an Excluded Development, and for which all (1) required findings supporting the legal conclusion that the proposed Development is, or is not, in conformity with the City's certified LCP and the public access and recreation policies of Chapter 3 of the Coastal Act, commencing with §30200 of the Public Resources Code, and (2) for which all rights of appeal to the City, if any, have been exhausted.

SECTION 19.01.120   Hearing Officer.   The "Hearing Officer" for Developments which are heard by other than the Planning Commission and/or the City Council shall be the Director of Planning or his or her designee.

SECTION 19.01.130   Open Space.   "Open Space" shall mean land in the Coastal Zone which is designated on the zoning map, pursuant to Chapter 18.16, as an Open Space (OS) Zone.

SECTION 19.01.140   Parks.   A "Park" for purposes of this Chapter shall have the same meaning as that set forth in Chapter 12.24, Section 12.24.010.A of this Code; i.e., any grounds, avenues, parkways and areas under the control, management and direction of the City.

SECTION 19.01.150   Public Works Project.   A "Public Works Project" for purposes of this Chapter shall mean any action undertaken by the City or by any other governmental entity to construct or alter any public structure, utility right-of-way, including but not limited to, improvement of public streets and development of public utilities.

SECTION 19.01.160   Structure.   "Structure" as used in this Chapter shall include, but shall not be limited to, any building, road, pipe, pipeline, flume, conduit, siphon, aqueduct, telephone line or electrical power transmission and distribution

CITY COUNCIL ORDINANCE O91-525

line provided, however, that for purposes of the replacement of a
Structure destroyed by a Disaster, "Structure" shall also include
landscaping and erosion control devices.

### Chapter 19.02 - Notice, Hearing and Appeal Procedures for Coastal Development Permits

#### Section 19.02.010 - Purpose

The following shall be the procedures for notice and
hearing for, and appeal of any final decision on, an application
for any proposed development in the Coastal Zone which requires a
Coastal Development Permit and which is consistent with the
City's certified LCP, the City's General Plan and zoning
ordinances and State law.  The purpose of this Chapter 19.02 is
to protect the public health, safety and general welfare by:

A.   Protecting the coastal Bluffs and the marine
environment as delicate natural resources;

B.   Protecting undeveloped natural land in open space
available for visual and physical enjoyment by the public;

C.   Assuring that the coastal Bluffs can support
proposed private development; and

D.   Preserving parklands within the Coastal Zone for
public park use.

#### Section 19.02.020 - Permitted Use

A.   Except as prohibited by this Section, real property
in the Coastal Zone may be used for any purpose which is
permitted by the City zoning code and which is consistent with
the City's LCP.

B.   Parks in the Coastal Zone may be used only for the
purposes set forth in Chapter 12.24 of this Code, as amended by
Ordinance No. 362.

C.   Open Space in the Coastal Zone may be used only for
the purposes set forth in Chapter 18.16 of this Code.

D.   Structures, stairways, pools, tennis courts, spas
or solid wood fences may be constructed on private property on,
or within 25 feet of, the Bluff Edge only after preparation of a
geologic report and findings by the City that the proposed
structure, stairway, pool, tennis court, spa and/or solid wood
fence (1) poses no threat to the health, safety and general
welfare of persons in the area by reason of identified geologic
conditions which cannot be mitigated and (2) the proposed
structure, stairway, pool, tennis court, spa and/or solid wood
fence will not be visually intrusive from public view points in
the Coastal Zone.

#### Section 19.02.030 - Applicant for a Coastal Development Permit

An application for a CDP shall be accepted only from the
owner of record of the real property on which the proposed
Development will occur, or the authorized agent of said owner, or
the Developer of the proposed Development.  An application for a
CDP which is made by a person other than the property owner shall

CITY COUNCIL ORDINANCE O91-525

be signed by both the applicant and the property owner. Each application shall include the following information and documents in addition to any other information or documents which would otherwise be required by the City for the same type of Development were it to lie outside of the Coastal Zone:

A.   A site plan, drawn to scale, showing the location and proposed use of each existing Structure to remain, each new Structure which is proposed to be built and the relationship of all remaining and proposed Structures to the Bluff and to public view points.

B.   A plan showing elevations for each existing Structure which is proposed to remain on the property and for each proposed new Structure in relationship to the elevation of the Bluff and public view points; elevations shall indicate the height of all Structures shown, the structural features proposed, types of materials of construction and the contours of the Bluff.

C.   Engineering and geology reports which consider, describe and analyze the following:

1.   Cliff geometry and site topography, extending the survey work beyond the site of the proposed Development as needed to depict any unusual geomorphic conditions which might affect the site; and

2.   Historic, current and foreseeable cliff erosion, including but not limited to, investigation of recorded land surveys and tax assessment records, the use of historic maps and photographs where available, and possible changes in shore configuration and sand transport; and

3.   Geologic conditions, including but not limited to, soil, sediment and rock types and characteristics and structural features such as bedding, joints and faults; and

4.   Evidence of past or potential landslide conditions, the implications of such conditions for the proposed Development, and the potential effects of the Development on landslide activity; and

5.   The impact of the proposed construction activity on the stability of the site and adjacent area; and

6.   The potential for erosion of the site and mitigation measures to be used to ensure minimized erosion problems during and after construction, including but not limited to plans for landscaping and drainage design.

7.   The effects of, and the potential for, marine erosion on seacliffs; and

8.   The potential effects of seismic forces resulting from a maximum credible earthquake; and

9.   Analysis of any other factors which might affect slope stability; and

CITY COUNCIL ORDINANCE O91-525

10.   An evaluation of  (a) existing on and off-site conditions which, when the proposed Development is completed, could result in geologic instability on off-site facilities, including but not limited to, roads, public pedestrian and bicycle accessways, and  (b) the additional impacts which could occur due to the Development, including but not limited to, increased erosion along a footpath, erosion of roads, buildings and bikeways.

11.   A detailed report including mitigation measures for any potential impacts and including  alternative solutions and appropriate measures for monitoring those mitigations as required and consistent with Public Resources Code §21081.6.  The report shall contain the professional opinion of a California certified civil engineer and a California certified geologist as to whether the Development can be designed so that it will neither be subject nor contribute to significant geologic instability on-site and off-site through the lifespan of the proposed Development.  The report shall use a currently acceptable engineering stability analysis method and shall also describe the degree of uncertainty of analytical results predicated on assumptions and unknowns.  The degree of analysis required shall be that degree appropriate to the degree of potential risk presented by the site and the proposed Development.

12.   If the City so requires, in the City's sole discretion, a waiver of, and a hold harmless from the applicant, including both the Developer and the property owner and their successors and assigns, for any and all claims against the City, the County, the State and other public agencies involved in the Development, for future liability or damage resulting from the CDP and the Development when completed.  All such waivers and hold harmless clauses shall be recorded with the Office of the County Recorder for the County of Los Angeles.

13.   Other information and requirements as the Director of Planning and the City Engineer, in their sole discretion, may deem necessary to processing the application.

Section 19.02.040 Findings for Approval

A.   A CDP shall be approved by the City Council only upon affirmative findings that:

1.   The plans for the proposed Development and the CDP comply with all of the requirements of this Ordinance and other relevant City ordinances and development standards; and

CITY COUNCIL ORDINANCE O91-525

2.  The proposed use is consistent with the certified LCP, the General Plan, any applicable specific plan, and the applicable zoning ordinance or ordinances; and

3.  The proposed use will not be visually intrusive from public view points; and

4.  The required reports and plans demonstrate to the satisfaction of the City, in its sole discretion, that the proposed use can be supported by the Bluff and that the proponent has demonstrated that proposed use will not increase any existing geologic hazards; and

5.  The proposed Development, when located between the sea and the first public road inland from the sea, is in conformance with the public access and recreation policies of the California Coastal Act as contained in Chapter 3, §30200 through 30224 of the California Public Resources Code, the applicable sections of the California Administrative Code and the LCP; and

B.  Approval may be recommended and/or granted upon conditions that are necessary and reasonable to ensure that the proposed use will be designed, located, developed and maintained in accordance with the findings required by this Section, the LCP, the General Plan, any applicable specific plan and the applicable zoning ordinance or ordinances.

### SECTION 19.02.050 - Action by the Planning Commission

All applications for a CDP shall be referred to the Planning Commission for public hearing and a written report to be submitted to the City Council, with the Planning Commission's recommendation to approve or deny the application, or any portions thereof, within seven (7) calendar days after the Planning Commission completes its hearing on the application and approves the written report.

### SECTION 19.02.060 - Action by the City Council

At the second regular City Council meeting following the action taken by the Planning Commission to approve its written report, the recommendations of the Planning Commission shall be deemed filed with the City Council.  Within thirty (30) calendar days thereafter, the City Council shall hold a public hearing on the application.

### SECTION 19.02.070 - Notice of Hearing by Planning Commission and/or the City Council and/or Hearing Officer

The provisions of this Section shall constitute the minimum notice requirements for any application for a Coastal Development Permit, whether appealable or non-appealable.

A.  Excluded Developments Exempt From Notice Requirements.  Applications for Excluded Developments shall not be subject to the requirements for notice and hearing otherwise required by this Chapter.

B.  Notice for Appealable Developments, Non-Appealable Developments with Hearing and Non-Appealable Developments without Hearing.  At least fifteen (15) calendar days prior to any

O-PVE-CC5                     Page 10 of 15

CITY COUNCIL ORDINANCE O91-525

required public hearing by the Planning Commission or the City Council on an application for an appealable or non-appealable CDP, the City shall provide notice by first class mail, postage prepaid, of the pending application. The notice prior to hearing shall be provided to:

    1. All persons who have supplied self-addressed, stamped envelopes for receipt of notice (a) regarding the property upon which the CDP is sought, or (b) for all decisions regarding the Coastal Zone which lies within the City; and

    2. All property owners within three hundred (300) feet and all tenants within one hundred (100) feet of the perimeter of the property upon which the CDP is sought; and

    3. The California Coastal Commission.

Additionally, notice shall be published in a newspaper of general circulation at least fifteen (15) calendar days prior to a public hearing required by this Chapter.

    C. <u>Contents of the Notice</u>. The notice of hearing shall contain the following information:

    1. A statement that the Development is within the Coastal Zone; and

    2. The name and address of the applicant and the date upon which the application was filed with the City; and

    3. The case number assigned to the application; and

    4. A description of the property upon which the application is sought, including any proposed or existing tract number, the nearest cross streets, the name of the street on which the project is proposed with a street number if existent and an assessor's parcel number or numbers, if known; and

    5. The date, time and place upon which the application will be heard or otherwise acted upon by the Planning Commission or City Council; and

    6. A brief description of (i) the rights of the recipient to present testimony, written or oral, as set forth in Chapter 19.01, Section 19.01.010, and (ii) the procedures to be followed in conduct of the hearing; and

    7. The appeal procedures for the City and the California Coastal Commission.

    D. <u>Notice Required for Continued Hearings</u> If a decision on an application for a CDP is continued by the City upon its own motion or upon motion made at the request of the applicant, and the hearing is continued to a time and date which has not (i) previously been stated in the original notice, or (ii) is not announced at the hearing which is being continued, the City shall provide notice of the further hearing in the same manner and to the same persons as set forth above in Sections A through C of this Section 19.02.070.

CITY COUNCIL ORDINANCE O91-525

E.   Notice of Final Action   Within seven (7) calendar days of a final action by the City Council on an application for a CDP, the City shall provide notice of that action by first class mail, postage prepaid, to (1) the applicant,  (2) the California Coastal Commission and  (3) to any persons who specifically request notice of such final action by submitting a self-addressed, stamped envelope to the City prior to the date when the notice is required to be sent.  Such notice shall contain the conditions of approval, if any, written findings as required by the California Coastal Act, applicable sections of the California Administrative Code, this Chapter, and a summary of the procedures for appeal of the City's decision to the California Coastal Commission.

SECTION 19.02.080 - Effective Date of City Council Action for Purposes of Appeal to the California Coastal Commission and Termination of the Appeal Period

The action of the City Council to grant or deny a Coastal Development Permit shall become effective on the tenth (10th) working day after the appeal period of the California Coastal Commission has expired unless  (1) an appeal is filed in accordance with California Code of Administrative Regulations §13111, or  (2) the Notice of Final Action required by the California Code of Administrative Regulations § 13571 and Subsection E of Section 19.02.070, below, has been rejected by the California Coastal Commission (the "Effective City Date"). The final action of the City may be appealed to the Coastal Commission at any time within ten (10) working day after the Effective City Date by an Aggrieved Person (as defined in Chapter 19.01, Section 19.01.010) who has exhausted all City appeals, if any.

SECTION 19.02.090 - Failure to Act

When the City determines that the time limits established by Government Code §65950, et seq., have expired, the City shall, within seven (7) calendar days of such determination, notice any person or entity entitled to receive notice pursuant to subsection 19.02.080.E, above, that it has taken final action by operation of law pursuant to Government Code §65950, et seq. Such notice shall, to the extent applicable, include the information required by subsection 19.02.070.E, above.

SECTION 19.02.100 - DETERMINATION OF APPLICABLE PROCEDURES

A.   The determination of the "Type" of Development, i.e., whether a Development is categorically exempt, appealable or non-appealable, shall be made by the Director of Planning at the time the application for a CDP is submitted to the City. That determination shall be made with reference to the City's LCP, including any maps, exclusions, land use designations and this Chapter.

B.   Upon reaching his determination, the Director of Planning shall inform the applicant and any other party requesting said information of his determination and of the notice and hearing requirements for the Type of Development determined by the Director to apply to the proposed Development.

C.   Where an applicant  or an interested person challenges the determination of the Planning Director, or the

O-PVE-CC5                    Page 12 of 15

CITY COUNCIL ORDINANCE 091-525

City has a question as to the appropriate designation for the proposed application, the following procedures shall establish whether a Development is categorically exempt, appealable or non-appealable:

    1.    The Planning Director shall request an opinion from the Executive Director of the California Coastal Commission; and

    2.    When the Executive Director's determination is, after investigation of the facts, not in accordance with the City's determination, the City shall request that the Coastal Commission hold a hearing for the purpose of determining the appropriate Type for the proposed Development.

SECTION 19.02.110 - Penalties for Violation(s)

    Any person who violates any provision of this Chapter of the Code shall be subject to the penalties described in Article 2, Chapter 9, commencing with §30820, of the Public Resources Code.

SECTION C.    AN AMENDMENT TO CHAPTER 18.04 OF THE MUNICIPAL CODE TO ADD SECTION 18.04.160 PERTAINING TO LIMITATIONS WHICH PROHIBIT CERTAIN DEVELOPMENTS WITHIN THE COASTAL ZONE, AS FOLLOWS:

    The City Council hereby amends Chapter 18.04 of the Code by adding §18.04.160, "Limitations in Bluff Areas of the Coastal Zone, to read as follows:

SECTION 18.04.160 - Coastal Zone Limitations on Development in Bluffs.

    Structures, stairways, pools, tennis courts, spas or solid wood fences may be constructed on private property on, or within 25 feet of, the Bluff edge in the Coastal Zone only after preparation of a geologic report and findings by the City that the proposed structure, stairway, pool, tennis court or solid wood fence (1) poses no threat to the health, safety, and general welfare to persons in the area by reason of identified geologic conditions which cannot be mitigated and (2) the proposed structure, stairway, pool, tennis court or solid wood fence will not be visually intrusive from public view points in the Coastal Zone.

SECTION D.    AN AMENDMENT TO CHAPTER 18.16 OF THE MUNICIPAL CODE TO ADD SECTION 18.04.50 PERTAINING TO LIMITATIONS WHICH PROHIBIT CERTAIN DEVELOPMENTS WITHIN THE COASTAL ZONE, AS FOLLOWS:

    The City Council hereby amends Chapter 18.16 of the Code by adding §18.16.50, "Limitations in Bluff Areas of the Coastal Zone, to read as follows:

SECTION 18.16.50 - Coastal Zone Limitations on Development in Bluffs.

    The provisions of §18.16.020 and 18.16.030 nothwithstanding, a structure, stairway, pool, tennis court, spa or solid wood fence may be constructed on private property on, or within 25 feet of, the Bluff edge in the Coastal Zone only after preparation of a

CITY COUNCIL ORDINANCE O91-525

geologic report and findings by the City that the proposed structure, stairway, pool, tennis court or solid wood fence  (1) poses no threat to the health, safety, and general welfare to persons in the area by reason of identified geologic conditions which cannot be mitigated and  (2) the proposed structure, stairway, pool, tennis court or solid wood fence will not be visually intrusive from public view points in the Coastal Zone.

SECTION E.    If any section, subsection, sentence, clause, phrase, part or portion of this Ordinance is for any reason held to be invalid, unconstitutional or null and void by any Court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance.  The City Council declares that it would have adopted this Ordinance and each section, subsection, sentence, clause, phrase, part or portion thereof, irrespective of the fact any any one or more sections, subsections, sentences, clauses, phrases, part or portion be declared invalid, unconstitutional or null or void.

SECTION F.    The Mayor shall sign and the City Clerk shall certify to the passage and adoption of this Ordinance.  The City Clerk shall make a minute of the passage and adoption thereof in the records of the proceedings of the City Council in the minutes of the meeting, at which the same is passed and adopted and shall cause the same to be posted one (1) time in three (3) conspicuous public places within the corporate limits of the City within the time and manner as prescribed by law.  This Ordinance shall take effect and be in full force and effect thirty (30) days after the adoption thereof.

APPROVED AND ADOPTED on the 26th day of February, 1991.

City of Palos Verdes Estates

_____
James R. Nyman, Mayor

ATTEST:

_____
Barbara Culver, City Clerk

APPROVED AS TO FORM:

_____
~~MARY REBUS GAYLE~~, ACTING CITY ATTORNEY

CITY COUNCIL ORDINANCE O91-525

STATE OF CALIFORNIA        )
COUNTY OF LOS ANGELES      )   ss.
CITY OF PALOS VERDES ESTATES )

    I, BARBARA CULVER, City Clerk of the City of Palos Verdes Estates, California, do hereby certify that the foregoing Ordinance O91-525 was introduced by the City Council of the City of Palos Verdes at its regular meeting of February 12, 1991 and was adopted by the City Council of the City of Palos Verdes Estates, at a regular meeting thereof, held on the 26th day of February, 1991. and that the same was adopted by the following vote, on motion made by Councilmember ___Ruth Gralow___ and seconded by Councilmember ___Raymond Mattingly___:

| | |
|---|---|
| AYES: | Mayor Nyman, Councilmembers Mattingly, Gralow, Moody, Humphrey |
| NOES: | None. |
| ABSTAIN; | None. |
| ABSENT: | None. |

    WITNESS, my hand and the official seal of said City this ___ day of February, 1991.

*Barbara J. Culver*
Barbara Culver, City Clerk

(SEAL)

O-PVE-CC5                    Page 15 of 15

RESOLUTION NO. PCR 91-01

A RESOLUTION OF THE CITY OF PALOS VERDES
ESTATES PLANNING COMMISSION RECOMMENDING TO
THE CITY COUNCIL THAT THE PALOS VERDES ESTATES
GENERAL PLAN AND MUNICIPAL CODE BE AMENDED TO
INCLUDE POLICY STATEMENTS, A COASTAL ZONE
OVERLAY ZONE, A PROHIBITION ON CONSTRUCTION
ON, OR DOWN COASTAL BLUFFS AS REQUIRED BY THE
CALIFORNIA COASTAL COMMISSION.

WHEREAS, the California Coastal Commission has indicated
it intention to make its certification of the Palos Verdes
Estates Local Coastal Plan ("LCP") contingent upon certain
amendments to the City's General Plan and Municipal Code; and

WHEREAS, the Palos Verdes City Council at its meeting on
January 9, 1991 adopted Resolution No. R91-02 declaring its
intention to adopt and add appropriate sections to the General
Plan and Municipal Code pertaining to procedures for
notification, hearing and appeals on application for Coastal
Development Permit pursuant to the proposed Local Coastal Program
and to amend the General Plan and the City's zoning code to add a
Coastal Zone Overlay Zone and certain prohibitions on
construction on, or down coastal bluffs and to adopt policy
statements as required by the California Coastal Act and the
Coastal Commission; and

WHEREAS, the Palos Verdes Estates Planning Commission
has held a duly noticed public hearing on January 15, 1991
regarding the foregoing amendments referred to it by the City
Council;

NOW, THEREFORE, The Palos Verdes Estates Planning
Commission DOES RESOLVE as follows:

SECTION ONE:   The Planning Commission recommends to the City
Council that the Land Use Element of the City's General Plan and
the appropriate sections of the City's Municipal Code be amended
to include a section entitled "Coastal Zone" that would contain
the following policy statements and be substantially in
conformity with a draft ordinance hereby attached to this
resolution and made a part hereof:

A.   Public use of all existing accessways and
scrambleways, including informal access paths not included on
City maps, shall not be impaired by the placement on trails of
rocks, vegetation, or any other substance or structure which
hinders full passage.

B.   City public parkland and accessways shall be
retained and improved where feasible by appropriate public
actions, including the erection of signs to inform the public of
the existence and nature of the City's Shoreline Preserve and of
the locations of improved public accessways to the shore and the
erection of two or more signs each on Palos Verdes Drive West and
Paseo del Mar channeling the majority of public use to the
accessways at Flat Rock (Bluff Cove) and Swim Club Road.

C.   Existing on-street parking near the shore and bluff
shall not be reduced, nor shall any use or time restriction be

R-PVE-PC1                    Page 1 of

I hereby certify that the foregoing document is a full, true and
correct copy of Resolution No. PCR 91-01
on file in the office of the City Clerk of the City of Palos
Verdes Estates.

CITY CLERK
by: _____
DEPUTY

PLANNING COMMISSION RESOLUTION NO. PCR 91-01

placed on such parking that would hinder or discourage public use for recreational purposes during the day time hours.

D.    Construction on private land of buildings, stairways, pools, tennis courts, spas, or solid fences on, or down the bluff face or within 25 feet of the bluff edge shall be prohibited without a geologic report and a finding that the improvement would not be visually intrusive upon public view points.

E.    City parks located within the coastal zone shall remain public parklands in perpetuity.

SECTION TWO.    The Planning Commission recommends to the City Council that Chapter 19 of the Municipal Code be amended to add procedures for notice, hearings and appeals for projects requesting a Coastal Development Permit in the Coastal Zone which are consistent with a draft ordinance hereby attached to this resolution and made a part hereof.

SECTION THREE.    The Planning Commission recommends to the City Council that the City Council certify the negative declaration and that all elements of the City's General Plan and Municipal Code be amended as necessary to bring about consistency between those elements and the Land Use Element as amended and specifically recommends to the City Council those draft ordinances attached to this resolution.

SECTION FOUR.    The Planning Commission recommends that the amendments recommended to the City Council be adopted to become effective upon certification of the Local Coastal Program for the City of Palos Verdes Estates by the California Coastal Commission.

SECTION FIVE:    The Planning Commission directs the Planning Director to certify the passage and adoption of this Resolution, shall enter the same in the records of the Planning Commission, and shall make a minute of the passage and adoption of this Resolution in the records of the meeting at which the same is passed and adopted; and authorizes the Planning Director to forward a copy of this resolution and all attachments to the California Coastal Commission if so requested.

PASSED, APPROVED AND ADOPTED this 15th day of January, 1991.

DON PEDERSEN, CHAIRMAN,
PLANNING COMMISSION

ATTEST:

CATHY REED, PLANNING DIRECTOR

APPROVED AS TO FORM:

MARK RADUS GAYLE, ACTING CITY ATTORNEY

R-PVE-PC1                          Page 2 of 3

PLANNING COMMISSION RESOLUTION NO. PCR 91-01

I, MICHAEL WILLIAMS, SECRETARY FOR THE PLANNING COMMISSION OF THE CITY OF PALOS VERDES ESTATES, HEREBY CERTIFY that the foregoing Resolution was duly adopted by the Planning Commission of the City of Palos Verdes Estates at a regular meeting thereof, held on the 15th day of January, 1991, on motion made by Commissioner Barnett and seconded by Commissioner Williams, and upon the following roll call vote of the Commission:

AYES:   Chairman Pedersen, Commissioners Barnett, Neopolitan, Flood and Williams

NOES:    None

ABSTAIN: None

ABSENT:  None

MICHAEL WILLIAMS, SECRETARY