HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
LISA M. POOLEY, SBN 168737
lpooley@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:   (916) 442-3333
Facsimile:   (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone:   (310) 378-8533
Facsimile:   (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>Plaintiffs, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**PLAINTIFFS' ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANTS CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |

Case No. 2:16-cv-02129-SJO (RAOx)

13672333.1

1

2          v.

3   LUNADA BAY BOYS; THE                    Judge:      Hon. S. James Otero
    INDIVIDUAL MEMBERS OF THE               Date:       September 5, 2017
4   LUNADA BAY BOYS, including but          Time:       10:00 a.m.
    not limited to SANG LEE, BRANT          Crtrm.:     10C
5   BLAKEMAN, ALAN JOHNSTON
6   AKA JALIAN JOHNSTON,
    MICHAEL RAE PAPAYANS,                    Complaint Filed:   March 29, 2016
7   ANGELO FERRARA, FRANK                    Trial Date:        November 7, 2017
8   FERRARA, CHARLIE FERRARA,
    and N. F.; CITY OF PALOS VERDES
9   ESTATES; CHIEF OF POLICE JEFF
10  KEPLEY, in his representative
    capacity; and DOES 1-10,
11

12          Defendants.

13

14

15      Plaintiffs Cory Spencer, Diana Milena Reed and Coastal Protection Rangers,

16  Inc. (collectively referred to as "Plaintiffs") hereby submit these Additional Material

17  Facts in Opposition to Defendants City of Palos Verdes Estates and Chief of Police

18  Jeff Kepley ("Defendants") Motion for Summary Judgment or, in the Alternative,

19  Summary Adjudication set for hearing on September 5, 2017, before this Court:

20

21

22

23

24

25

26

27

28
Case No. 2:16-cv-02129-SJO (RAOx)
    PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
    CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

**Issue #1:** **Lunada Bay Is A Unique Part Of The California Coast And A Public Beach Owned By The City, And Under A Grant From The State Of California, Is Reserved To The People Of California.**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 107.   Palos Verdes Estates Shoreline Preserve and specifically Lunada Bay constitute an asset of priceless value, and exceptional and dramatic beauty. Lunada Bay is owned by the City and is a world class wave. | 107.   City Responses to Plaintiff's Separate Statement.  Undisputed Material Facts ISO Class Certification [Docket No. 189] Nos. 1 ("Lunada Bay is owned by the City of Palos Verdes Estates and is a public beach") ("Lunada Bay is a unique world class surfing site, and offers many recreational opportunities"), 5; Willis Decl. ISO Opp. to City MSJ, ¶¶8, 9, 10, 11. 15 ("Lunada Bay is a world class wave . . ") and Ex. 4 ("Palos Verdes Estates Shoreline Preserve constitutes an asset of priceless value." p. 87) (Palos Verdes "has a shoreline of exceptional and dramatic scenic beauty . . .") (p. 115); Barber Depo. 112:18-22, Ex. 263 ("Q:  And I'm going to – 263 I'm going to put in front of you, Sergeant Barber.  Do you recognize that as being a map of the general Lunada Bay coastal area? A:  Yes.") |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 108.   The State of California granted Lunada Bay and the rest of the Palos Verdes Estates Shoreline Preserve to the City, but it is reserved for the People of California. | 108.   Willis Decl., ¶¶8-11. |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

**Issue #2:** **Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Seek Equitable Relief Against The City Under Section 1983**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 109.   Coastal Protection Rangers (CPR) is California non-profit public benefit corporation whose mission is dedicated to ensuring public access to the California coast. | 109.   City Response to Plaintiff's Separate Statement of Undisputed Facts ISO Class Certification No. 14 ("The Coastal Protection Rangers, Inc. is a nonprofit dedicated to ensuring beach access and environmental justice.  CPR believes all visitors should be able to visit Lunada Bay without fear of attack or vandalism.  Undisputed")  [Docket No. 189]; M. Slattan Decl. ISO Motion for Class Certification ¶2 [Docket No. 159-6]; A. Apostol Decl. ISO Opp. City MSJ ¶¶2,3. |
| 110.   Non-profit coastal advocacy groups like CPR provide important support to the California Coastal Commission. | 110.   A. Willis Decl. ISO Opp. City MSJ ¶¶3, 4, 5, 6, 7, 11, 12. |
| 111.   To CPR, the beach represents freedom, a place to gather with friends, and a place for people to express themselves. | 111.   M. Slattan Decl. ISO Motion for Class Certification ¶4.  [Docket No. 159-6] |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 112.   To CPR, the California coast is the largest open space near urban areas that have too little access to recreation, parks, nature and the outdoors. | 112.   M. Slattan Decl. ISO Motion for Class Certification ¶4.  [Docket No. 159-6] |
| 113.   Beach access is central to CPR's mission. | 113.   M. Slattan Decl. ISO Motion for Class Certification ¶8 [Docket No. 159-6]; A. Apostol Decl. Opp. ISO City MSJ ¶¶2, 3, 4, 8, 9, 10, 11,14,16. |
| 114.   CPR board members, members, and/or volunteers have suffered from unlawful exclusion by the City at Lunada Bay, including exclusion based on where they live, race and gender. | 114.   M. Slattan Decl. ISO Motion for Class Certification ¶7 [Docket No. 159-6]; A. Apostol Decl. Opp. ISO City MSJ ¶¶4,6,9,1012,13,14, 16. |
| 115.   CPR's members, volunteers and the people it helps include people of color, people with disabilities, women, and people of different sexual orientations who are concerned about illegal exclusion from the coast. | 115.   A. Apostol Decl. Opp. ISO City MSJ ¶¶3,6,8,9,10,11, 12, 14, 16. |

-6-                                 Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 116.   CPR has investigated illegal exclusion by the City of Palos Verdes Estates, and on behalf of its members and volunteers wants to remedy unequal treatment against persons of color, women, the poor, and other protected categories – and on behalf of its members and volunteers specifically desires to address civil rights issues as they relate to beach access. | 116.   M. Slattan Decl. ISO Motion for Class Certification ¶¶9,10, 11, 13 [Docket No. 159-6]; A. Apostol Decl. Opp. ISO City MSJ ¶¶3,5, 6, 7, 8, 10, 11, 12, 14. |
| 117.   CPR has diverted resources to achieve open access for all at Lunada Bay, and if it were not for the illegal exclusivity by the City these resources could be used for other important CPR projects related to coastal access. | 117.   A. Apostol Decl. Opp. ISO City MSJ ¶15. |
| 118.   The City is causing CPR's members and volunteers irreparable harm. | 118.   A. Willis Decl. ISO Opp. to City MSJ ¶4 ("Without judicial assistance, I am of the opinion that the potential remains that beachgoers are being denied access to Lunada Bay in violation of the law, and, thus, are continuing to suffer irreparable harm."). |

Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 119.   Diana Reed is a female outsider who has been harassed at Lunada Bay with City complicity, and is deterred from visiting Lunada Bay. | 119.   D. Milena Reed Decl. ISO Motion for Class Certification ¶¶1, 5, 6, 7, 8, 9, 10, 11, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28 [Docket No. 159-5]; Franklin Decl., ¶25 Ex. 17 ("fucking sexy baby…want to film it?"; "I seen you and I think I touched myself a little bit"; "I can do whatever I want."  Reed Depo. (Vol. II) 204:15-20 ("I witnessed Mr. Johnston moaning towards her, oscillating his body in a sexual manner, you know, other things, but it's hard for me to remember because I was mostly focused on what was happening to me and I was so scared that I, you know, I wasn't thinking very clearly."); Reed Depo. (Vol. II) 207: 1:5 ("I think that I wanted an escort at the time because of the previous incident in January where I was yelled at by the other individual [David Melo].  Q:  Okay.  What did you want the escort for?  A:  For safety."); Reed Depo. (Vol. II) 207:21-23 ("Q:  Did you want the escort to go to the fort with you?  A:  I did want them to |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | escort me there."); Reed Depo. (Vol. II) 208: 9-13 ("I just remember -- yeah, I just remember speaking to the police and requesting someone to escort me.  I remember, you know, the idea of doing that, but it's hard for me to remember, you know, anything that was said specifically."); Reed Depo. (Vol. II) 211:18-20 ("Did they tell you they weren't available or did they refuse your request?  A:  Is there a difference between that?"); Reed Depo. (Vol. II) 300:15-25, 301:1-25, 302:1-7 ("Q:  Did you ever see Brant Blakeman do anything besides filming or speaking to you as you told us at the bay area? A:  Well, during the incident that occurred on February 13th, it appeared as though he had orchestrated that event with Mr. Jalian Johnston.  Q:  What specifically did he do that made you think that he had orchestrated that? A:  It appeared as though they had planned the event out in an attempt to try to ruin my camera and in an attempt to |

-9-

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | try to intimidate me.  Q:  What specifically was done or did you see that caused you to believe that?  A:  The fact that when they entered the fort it seemed like all of their actions were orchestrated, they immediately rushed towards me. Johnston immediately opened the can of beer and, you know, sprayed it on me and on my camera in what I believe they intended to appear as an accident but to me it felt very intentional.  The way that, you know, he was -- he was filming Johnston as though it was like a planned performance it seemed like, you know. The fact that he was holding the camera just right, right next to my face in a way that made me feel threatened or intimidated.  Q:  Go ahead.  A:  A lot of the actions at Lunada Bay between the locals all appeared to be orchestrated based on what I've seen and what I've heard in the surf community.  Q:  Can you give me any specifics as to why you thought the February 13th episode was orchestrated or scripted or somehow |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | created by Mr. Blakeman or with his direction?  A:  I don't know who planned it.  I don't know who planned it but it appeared that they were following a very distinct plan to try to intimidate me and try to ruin my camera.  Q:  Can you give me any specifics as to why you think that?  A:  I think that because of the way that that the actions unfolded that I just described.");  Reed Depo. (Vol. II) 305:12-24 ("Q:  Was Mr. Blakeman doing anything as he entered?  A:  Yes, as I was saying, he was holding the camera on some kind of tripod device recording, very menacing, threatening look on his face that made me extremely fearful.  Mr. Johnston was -- also had a very menacing and fearful expression. The way that they walked and their body language also appeared threatening. They were making big, loud steps and just a lot of heavy, you know, frightening movements that made me feel that they were there in an aggressive and hostile way.");  Reed Depo. (Vol. II) |

-11-

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | 307:14-25 ("Yes, Mr. Johnston appeared to be forging a celebration, and, you know, he was raising his voice and saying woo-hoo, you know, L.A. Times, and he was -- as I can assume now, attempting to celebrate the fact that the L.A. Times had published an article about Lunada Bay and it was on the front page that day.  And I was unaware of that fact at the time.  Q:  When you say "forging a celebration," what do you mean?  A:  What I mean is that they were obviously there to intimidate and harass me, and the way that they wanted to do it, I guess, was to pretend that they were celebrating the fact that the article came out but clearly they were upset about the article."); Reed Depo. (Vol. II) 308: 1-7 ("When you say "rushing towards me," what do you mean?  A:  By that, I mean I remember him walking, you know, moving towards me quickly, I wouldn't say walking, but moving towards me in an extremely quick and frightening way to where he was in my |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | personal space, very close."); Reed Depo. (Vol. II) 319: 17-25, 320:1-11 ("Q: I wasn't there so I don't know what to ask you except to ask you to tell me what other things you can recall about the episode on the 13th specifically with regard to Mr. Blakeman that you haven't told me about already. You told me that he had a camera, that he took videos, that he looked menacing to you, that he videotaped or whatever? A: Yeah, I remember that he wouldn't stop videotaping me. I think I might have asked him to stop -- I mean, I definitely asked him why they're doing that. I feel like his role was to record 4 rather than to speak and to intimidate through his camera. So I remember him, like I said, getting very close to me and being -- felt like he was right in my face with the camera. I remember asking them why they're filming me and they said they're filming me because I'm sexy and because I turn them on and that was what Mr. Johnston was saying."); Reed Depo. |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | (Vol. II) 321: 13-23 ("Q:  What is a menacing expression to you, what does that mean? A: A I mean, he looked like -- I mean, he was -- obviously, he was scowling, he was -- his body language conveyed that he was hostile, he -- I mean, they were making -- he was making sexual comments, Mr. Johnston was.  And I just felt very frightened like anything could happen, you know."); Reed Depo. (Vol. II) 276:13-25, 277:1-3 ("Q:  Now, the pain and suffering that you attribute, how have you experienced pain and suffering?  Describe your symptoms with the pain and suffering you suffered?  A:  I've had loss of sleep -- you mean the entire -- the entire course of events that happened to me at the fort was extremely traumatic, you know, I felt -- felt like I could have even been raped.  I mean, it was incredibly frightening,  I felt helpless.  Just that whole memory of the event has caused me to be fearful and just really affected my  piece of mind.  Q:  Did it cause you |

-14-

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | to be fearful of going to Lunada Bay after February 13th?  A:  Of course.  Yeah, it caused that as well, hmm-mm.  Q:  Okay.  And you did go to Lunada Bay after that, February 13th; right?  A:  I did go back.  And the reason why is because I don't believe in bullying.  I will stand up to bullies.  I will do what's right, it's a public beach, and if I don't go then who else will go.  And, you know, I just, you know, I don't believe in them bullying me into being fearful of going somewhere that's beautiful and should be accessible to all people."); Reed Depo. (Vol. I), 170:9-25 ("Q:  What do you remember about being approached by individual defendants with a case of beer?  A:  I remember that they approached me very rapidly and I was caught by surprise.  I remember that they rushed towards me in a hostile manner.  I remember, you know, declining that I wanted to drink beer.  I remember being videotaped by Brant Blakeman.  I remember there were times when I was |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | being videotaped very close to my face and it felt very intimidating and definitely felt like I was being harassed. And I think that I asked them, you know, why they're videotaping me because it made me very uncomfortable.  I remember Mr. Johnston opening the can of beer in a way that sprayed my arm and my camera.  I remember him chucking beer and throwing beer cans on the floor. I remember him being very loud and very scary, very intimidating, and acting in a sexual manner."); Reed Depo. (Vol. I) 175:8-14 ("Q:  Do you recall trying to leave the fort and being unable to do so because you were blocked? MR. FRANKLIN:  Vague and ambiguous.  A:  I recall them standing in front of me, and the way to leave would be to go, you know, to get close to them. And I do recall attempting to call the police but not having cell phone service.") |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 120.   Reed's complaint and plea to the City for help were disregarded, and the City made it hard for her to lodge complaints in the first place and asked her:  "Why would a woman want to go to that beach and the Rock Fort anyways?  There are rocks down there." | 120.   D. Milena Reed Decl. ISO Motion for Class Certification ¶30.  [Docket No. 159-5] |
| 121.   After being first harassed, on February 13, 2016, Reed returned to Lunada Bay and asked the police for an escort from the bluffs to the beach but was told no officers were available. | 121.   D. Milena Reed Decl. ISO Motion for Class Certification ¶18 [Docket No. 159-5]; *see* PAMF 119. |
| 122.   On February 13, 2016, the day Reed is harassed a second time, (i) the City had a cancelled a planned undercover operation at Lunada Bay because it was "leaked" to the Bay Boys the day before, (ii) Reed was sexually harassed by Bay Boys Alan Johnston and Brant Blakeman, and (iii) the day before Bay Boy Michael Thiel directs the City Manager to not hold an undercover operation. | 122.   D. Milena Reed Decl. ISO Motion for Class Certification ¶¶18-27 [Docket No. 159-5]; Best Depo. 169:16-25, 170:1-10, 20-25, 171:1-4, 172:9-25, 173:1-25, 174:1-5; Kepley Depo. 184:7-25, 185:1-16.  Franklin Decl.,¶25 Ex. 17 ("fucking sexy baby…want to film it?"; "I seen you and I think I touched myself a little bit"; "I can do whatever I want." *See,* PAMF 119 and 185. |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| | Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|---|
| 123. | When Reed finally had the attention of the Chief of Police Jeff Kepley and Captain Tony Best, they said that although they had photographs of the Lunada Bay Boys members, they would not allow her to view the photos because it would impede the investigation. | 123.   D. Milena Reed Decl. ISO Motion for Class Certification ¶31.  [Docket No. 159-5] |
| 124. | In response to her desire to return, the City told her to carry a cell phone and travel in a large group.  The Chief of Police told her it was not safe to go to Lunada Bay, that he wouldn't even tell a man to go down there, and that he viewed it as a long term problem. | 124.   D. Milena Reed Decl. ISO Motion for Class Certification ¶31.  [Docket No. 159-5] |
| 125. | Reed suffers irreparable harm: As an outsider, she is denied access to a public area granted to the City from the State, and forced to announce her coming in advance only to be harassed.  Rather than promote public access with simple things like a park bench, seating, trail markers and maps, trail improvements, and signs, | 125.   D. Milena Reed Decl. ISO Motion for Class Certification ¶¶ 9, 11, 12, 14, 15, 18, 19, 20, 21, 22, 24, 27, 30, 31, 40, 41 [Docket No. 159-5]; A. Willis Decl. ISO Opp. to City MSJ ¶¶3, 4. |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| the City's failed response was to make it hard to file a complaint, and tell her it is not safe and that she should bring a cell phone and travel in a group. | |
| 126.   Cory Spencer is an outsider who lives in the inland community of Norco, California more than 60 miles from Palos Verdes Estates.  Like Reed, he has been harassed by outsiders with City complicity.  He grew up in La Mirada, more than 30 miles Palos Verdes Estates. | 126.   C. Spencer Decl. ISO Motion for Class Certification ¶¶1, 2.  [Docket No. 159-4] |
| 127.   Because of its reputation for localism, Spencer is afraid to surf Lunada Bay. | 127.   C. Spencer Decl. ISO Motion for Class Certification ¶¶3, 4, 5.  [Docket No. 159-4] |
| 128.   Supported by other outsiders, Spencer decided to address his fear and attempt to surf Lunada Bay in 2016. | 128.   C. Spencer Decl. ISO Motion for Class Certification ¶¶8, 9, 10.  [Docket No. 159-4] |
| 129.   Upon arrival at Lunada Bay, Spencer was intimidated and harassed as an outsider on land, blocked from surfing (in water granted to the City from the State) and run over in the water.  Even though Spencer had | 129.   C. Spencer Decl. ISO Motion for Class Certification ¶¶11-31 [Docket No. 159-4]; Spencer Depo. 39:1-18 ("A:  Let me just say this.  Around 2002 or 2003, somewhere in the early 2000s, I was almost ecstatic when my police |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| given the City advance notice that he and other outsiders would be coming to use Lunada Bay, the City failed to arrive as requested and failed to patrol the shoreline near the water. Moreover, even though he had been purposefully run over by a local and attempted to tell a City policeman, the City showed no interest in an investigation of a crime against an outsider, even though Spencer himself is a police officer but from another jurisdiction. | chief was looking for volunteers of officers to go surf at Lunada Bay to take care of a problem that supposedly either the police chief or the city at the time wanted to take care of, and I was going to go in the capacity of a police officer; be able to undercover surf in a place that I wanted to surf since I was probably 15 years old and take care of a bullying problem.  I thought at that time, hey, these guys are going to do it.  You know, this is -- this is going to happen, and I'm going to be a part of it.  And that was -- that was exciting to me.  Yeah, I was excited.  I thought at that time it was going to be taken care of.  But, for whatever reason, that undercover operation, or whatever they were planning on doing with us, was called off; and, again, nothing happened.  That was a letdown."); Spencer Depo. 44:4-16 ("Q:  And 'cause I don't know.  I don't understand undercover operations. A:  Well, I think the expectation speaks for itself on the undercover operation. |

-20-

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | You go in undercover expecting that things that have been reported for the last 30 or 40 years would happen to you as an undiscovered outsider; and you, being an on-duty police officer, would be able to make and effect a proper arrest or a citation and send a message that -- when I say, 'we,' meaning 'we' as the Palos Verdes Estates police are not going to tolerate a gang in the water and on the beach, and the problem would go away. Almost instantaneously within a couple weeks this could be cleared up.  We would not be sitting here today.")'; Spencer Depo. 56:5-14 ("A:  Let's go back to that.  When you see --you question why you can't go there; and, then, you start inquiring in the surfing world why you can't go there, and you hear the stories that have gone on for as long as they have up into that point.  You immediately get fearful.  You don't want to go somewhere where you're going to get your tires slashed; your windows egged; your property thrown in the |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | ocean.  Those were the stories that you get; so, you become fearful right away, right?  Or I did."); Spencer Depo. 59:18-21 ("Fearful?  Just going there I was in fear.  Just driving up the Palos Verdes Peninsula road, you know, or whatever road it is to get up there, you're a little afraid because you've heard stories."); Spencer Depo. 60:2-8 ("I don't know how to answer that any other way than I already did.  When you drive up, you -- because of the lure, the stories, you feel fearful of, hey, is this real?  Is this -- is this place really like they say it is?  Am I going to get my property vandalized?  Am I going to get, you know, in some type of confrontation?  That's a fear."); Spencer Depo. 103:11-25 ("Q:  Did these statements cause fear for you?  A:  Yeah.  Q:  Okay.  A:  Yes.  Sorry.  Q:  Did anything else occur in the 20 minutes that caused fear for you?  A:  Yes.  Q:  What was that?  A:  More -- more of the same statements by a specific individual, who I could identify.  I don't |

-22-                Case No. 2:16-cv-02129-SJO (RAOx)

13672333.1          PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | know his name.  Same things.  It was more of a – more of a closer, I guess, encounter with the same language all the way down the trail; jumping into the water; same individual just keep, you know, heckling."); Spencer Depo. 105:12-21 ("A:  A very uncomfortable feeling when the -- who I now know -- did not know at the time -- was Defendant Blakeman paddling around myself and Chris and, more specifically, Chris in a very tight circle; blocking Chris from getting any waves; never saying a word; just looking -- staring at both he and I. That was a little weird; fearful. I've never experienced that before in my life in the water like -- kind of like a circling you like a shark. You know, it was weird -- just weird."); Spencer Depo. 106:21-25, 107:1-9 ("Q:  Once in the water, on his second wave at Lunada Bay, a member of Defendant LUNADA BAY BOYS intentionally ran Spencer over with his surfboard and sliced open Spencer's |

-23-

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | hand." Is that true? A: Yes. Q: All right. Which hand was that? A: The right wrist. Q: Okay. A: With about a half-inch scar. Q: Do you mind showing it to me? A: Right there."); Spencer Depo. 108:4-17 ("Q: Well, that's a bad question. How do you know that the person who ran you over with the surfboard intentionally did that? A: I'm not in his brain; but I have surfed for, you know, 30 years, and you can tell when somebody locks eyes with you and is on one path, and they specifically move their board and maneuver their body to make their board go in another path that's directly at you when they could go the more safer, more better part of the wave being closer to the more critical part of the wave, which is more enjoyable to surf than aiming towards somebody paddling out to get back out to the lineup. In my mind, I determined that, hey, this guy tried to run me over."); Spencer Depo. 109:17-22 ("A: With that individual who ran -- just |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
| --- | --- |
| | ran me over; start berating me with comments of, you know, 'What are you' – 'What are you fucking doing out here?' I told you to go home.  I should have ran you over.  Why are you paddling in the sun glare where I can't see you?"  And that's it.  'I should have ran you over.'"); Spencer Depo. 110:12-25, 111:1-4, 9-25, 112:1 ("Q:  Did you say anything to the person whose surfboard cut your hand? A:  After he made the comment that, 'I should have ran you over,'  I says, 'Well, you did,' and I held up my hand and showed him, and that's when he said, you know, 'Why are you paddling where I can't see you?  You shouldn't paddle in the sunlight,' stuff like that.  Then I kept paddling off.  Q:  Were you fearful of being further injured after that point? A:  That's an understatement.  Q:  So is the answer yes?  A:  Yes.  Q:  Okay.  Did you feel that what had occurred to you getting your hand cut and the way it happened was a crime?  A:  I know it was a crime.…  A:  The way his |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | explanation was going down the road of, basically, avoiding taking any responsibility for his actions; blaming it on the sun; blaming, you know, me paddling where I'm not supposed to be paddling -- I was paddling exactly where you're supposed to paddle to avoid injury; to avoid conflict with any other surfers.  I was paddling back to the channel, which basically gets away from the critical part of the wave, which is where he should have been surfing when he redirected his path to run me over.  You know, in my opinion, yeah, it was a crime.  Did I report it?  It's going to be with no witnesses there; no police officers in the water, as there could have been; no police officers down on the beach, as there could have been; on the fort, as there could have been; nothing to corroborate my story, it would have been a 'He said ...'; 'He said ...' go nowhere thing."); Spencer Depo. 112:25, 113:1-25, 114:1 ("Q:  Did you, at that point, have any fear that the same thing would |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| | Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | happen to your friend, Chris? |
| 4 | | A:  Yeah -- yes.  Q:  Okay.  A:  It came |
| 5 | | alive.  All those stories of 30 or 40 years |
| 6 | | just happened.  Q:  And given that you |
| 7 | | had that fear, did you consider that in |
| 8 | | order to avoid it potentially happening to |
| 9 | | Chris, that, perhaps, you should take |
| 10 | | some actions as a police officer -- and I |
| 11 | | think you said that you felt it was a |
| 12 | | crime -- to prevent that from happening |
| 13 | | to Chris?  [OBJECTION]  A:  I felt the |
| 14 | | best plan of action was to stay clear of |
| 15 | | these guys, especially since they just |
| 16 | | assaulted us.  I've got no radio.  I've got |
| 17 | | no handcuffs.  I've got no gun; no bullet- |
| 18 | | proof vest.  I'm not a police officer out |
| 19 | | there.  I'm a citizen; okay?  And the best |
| 20 | | plan of action was to avoid them; and |
| 21 | | that was almost, I mean, impossible, |
| 22 | | when you got a guy circling around |
| 23 | | you -- not the guy that ran me over but |
| 24 | | they're all -- they all know each other, |
| 25 | | and here's the guy that just injured me. |
| 26 | | He knows his buddy is circling my |
| 27 | | friend; and, so, it's like let's get out of |
| 28 | | | |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | here; so we caught one more wave after that; and, then, we decided that was -- it's getting too crazy out here, and more and more [Bay Boys] started showing up on the fort."); Spencer Depo. 149:7-23 ("We discussed Mr. Blakeman's actions. Other than Mr. Blakeman's actions, did you witness any other incidents of the Lunada Bay Boys threatening or taunting surfers that day in February 2016? MR. FRANKLIN: Asked and answered. THE WITNESS: Well, I mean, how do I know who's doing the taunting and threatening when it could be all of them, when they're on their phones, and more and more groups, you know, show up to kind of put this stranglehold on the area, in my opinion? That's taunting and threatening in itself when you have a little goat trail one way to go down there, and you've got two groups of 15 to 20 on each end, and you got a guy going around with a selfie stick and a camera, people -- people yelling at you to fucking get out of there; 'Why are you |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | here?  Go home.  Don't surf here.'  I don't know who they are specifically."); Spencer Depo. 125:10-25, 126:1-25, 127:1 ("Q:  Yes, or anything that happened to you that day?  A:  I did not request a formal police report, no. I did not.  Q:  Okay.  Did you communicate to anybody at the City of Palos Verdes Estates Police Department with regard to what occurred to you that day at Lunada Bay?  [OBJECTION]  A:  Yes. Q:  Okay.  When was that?  A:  So, shortly after getting changed, I noticed the group of police officers standing to my south talking with what appeared to be another group of newly-formed Bay Boys.  So, the bay is a bay.  There's a north and a south end.  The south group had, you know, trucks and cars and guys standing kind of huddled around in a group of guys, and the police officers were kind of towards the south.  They weren't right up next to the group.  And I did notice that a couple of police officers appeared to be talking with a few |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | members of the group; and, so, I made a point, because there was, in my opinion -- and I don't know if it was directed by my contacts with the captain or whatnot, but I noticed the group of police officers; so, I personally wanted to go over and tell them, you know, 'Hey, thanks for showing up,' you know.  'We appreciate it.'  You know, and the one younger officer -- I don't know his name. I didn't get any of their names. I, basically, you know, told him what happened to me down there, you know; showed him my hand and -- and I told him,  I says, you know, 'The guy is going to claim sun glare and whatnot.'  I just didn't want to -- I knew where it was going to go. 'He said …'"; 'He said ...'; and, no, he [the officer] didn't offer to take a report. You know, he didn't ask me to point anybody out.  I know you're going to ask all these questions; so, we'll just cut to the chase.  Q:  He did not offer to take a report?  A:  Right."); Spencer Depo. 187:22-25, 188:1-9, 188:22-23 |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | ("Q:  With regard to the pain and suffering that you allege, can you describe how you have suffered that pain and suffering?  A:  Yeah, it's kind of a letdown.  You just feel sad that, you know, things that maybe you'd hoped as a human that really weren't happening down there, actually, when they did happen to you, kind of -- don't know.  I don't want to say a depression 'cause -- but just a sadness, you know, that, hey, it actually happened; and kind of suffered, in the sense of, you know, it just kind of a -- it's kind of a bummer that it happened.  You know, I'm -- in my sense, I'm suffering that I'm not able to go enjoy a place that I have a God-given right to go enjoy without being run over; called names; told to leave; so, in that sense, yeah, that's a suffering to me, I mean…..  Q:  Did you experience any loss of sleep?  A:  Yes.”); Spencer Depo. 193:10-25 ("Q:  Do you attribute any of those specifically to the actions of Chief Kepley?  A:  Yes.  I'm disappointed in |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | him.  I'm disappointed that him and his department are not taking care of the problem, yes.  Q:  And you're disappointed because Chief Kepley has not eliminated the problem, or do you mean something else by taking care of it?  A:  Yes, eliminated the problem. Q:  All right.  You would agree that extra patrols were provided in January and in February of 2016 when you asked for them; right?  A:  Wholeheartedly agree. MR. FRANKLIN:  Vague and ambiguous; calls for speculation; move to strike.  Q:  Okay.  Go ahead.  And what are those?  They haven't -- here's the deal.  They haven't provided access to an area that is popular for a recreational sport for the public to enjoy. They haven't provided any signage; notifications on what to do if there's any type of problems.  There's nothing down there except a set of rocks that divide the asphalt from the dirt.  They're very ineffective in providing access down there, signage, which, in turn, would |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | automatically make it easy to patrol and enforce laws and things that go on down there.  And let me just say they had an opportunity to go through the permitting process.  They've chose to tear down the fort when they could have permitted it.  Whatever they want to do, but just make it accessible to any human being that wants to go enjoy it; not let it be controlled by a bunch of pack animals that are acting like bullies.  It's crazy."); Spencer Depo. 274:3-10 ("Q:  What is it about right now that you don't feel comfortable about?  A:  I don't feel the problem has been addressed by the police; by the city.  I believe that there's still Bay Boy members that are going to be there, and I don't want to get into any type of confrontation.") |
| 130.   Given the long-established custom and practice of discrimination by the City against outsiders, Spencer is afraid to return to Lunada Bay to recreate in a public area. | 130.   C. Spencer Decl. ISO Motion for Class Certification ¶¶4, 5, 26 [Docket No. 159-4]; A. Willis Decl. ISO Opp. to City MSJ, ¶¶5, 12; *see* PAMF 129. |

-33-

13672333.1

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

**Issue #3:**   **Palos Verdes Estates Has A Long-Established Custom Or Practice Of Unlawful Exclusion Of So-Called Undesirables From Its Boundaries, And Otherwise Discouraging Undesirable Outsiders From Coming To The City.**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 131.   As community founded in 1923, Palos Verdes Homes Association deed restrictions barred people of color from the City.  The Palos Verdes Home Association did not repeal the illegal deed restriction until 2000, and even after doing so, it still handing out copies of its restrictions with the illegal provisions merely "whited out." | 131.   A. Apostol Decl. ISO Opp. to City MSJ ¶ 7; RJN ¶ 4; Dahlerbruch Depo. (11/18/16) 41:1-10; Dahlerbruch PMK Depo. (7/13/17) 12:20-25, 13:1-21. |
| 132.   The City, took no action requiring the Palos Verdes Home Association to repeal the illegal deed restriction, nor did it pass a resolution or take other action condemning the illegal restriction. | 132.   Dahlerbruch Depo. (11/18/16) 41:16-19, 43:13-21; Dahlerbruch PMK Depo. (7/13/17) 14:5-19. |
| 133.   The Palos Verdes Homes Association still enforces deed restrictions in the City, and all homeowners in the City must abide under its jurisdiction. | 133.   Dahlerbruch Depo. (11/18/16) 40:5-7. |
| 134.   The Homes Association pre-dates the City, works closely with the | 134.   Dahlerbruch Depo. (11/18/16) 102:23-25, 103:1-10 ("Q:  And the |

-34-

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| City, and is located adjacent to City Hall in an adjoining building. | shoreline, does it wraparound even the areas where there are homes around the base of the bluff; that's my understanding is that there's some shoreline at the base of the bluff that the City park actually wraps around between the bluff and the - A: I couldn't tell you that. Q: Who would know that at the City A: Palos Verdes Estates Homes Association. Q: They would know that; and why would they know that? A: They have the deeds that identify the actual lot lines and parameters of all the properties.") Dahlerbruch Depo. (11/18/16) 45:17-20 ("Q: So, is the Palos Verdes Homes Association, do they have oversight over restrictive covenants; is that fair? A: Yes.") Dahlerbruch Depo. (11/18/16) 103:17-25, 104:1-2) ("Q: If someone wanted to define City owned open space, how would they do that? A: What do you mean by define? Q: I'd like a tour of Palos Verdes Estates' open space, Mr. Dahlerbruch, can you tell me does |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | the City have a map where I can go visit? A: We would probably send them over to the Homes Association to look at their original documents. Q: And the Homes Association they would have the original deeds too? A: Correct.") Best Depo. 241:25, 242:1-16; Placek Depo. 69:20-24, 144: 4-11 ("Q: Have you ever had to direct someone to the Homes Association or you don't do that, it's a different number? A: It's a different number. The number would be provided to them. Q: Do you have the number? A: I believe I would provide the number to City Hall, and they can transfer internally."); P. Neushul Decl. ISO Motion for Class Certification ¶7 [Docket No. 184-1] ("[T]he City of Palos Verdes Estates had a covenant that forbade home owners to sell or rent a house to anyone who was not white or Caucasian or to allow African-Americans on their property, with the exception of chauffeurs, gardeners and domestic servants.") |

Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 135.   Many Palos Verdes Estates residents want a segregated neighborhood. | 135.   A. Akhavan Decl. ISO Motion for Class Certification ¶15 [Docket No. 171] ("In my experience as a longtime Palos Verdes Estates resident, many of my neighbors enjoy the exclusive nature of our neighborhood and like it segregated. I believe that many residents do not want people coming to our neighborhood.") |
| 136.   To deter outsiders away from its streets and beaches, the City has targeted outsiders with unfavorable treatment for traffic citations, parking tickets, and towed vehicles. | 136.   Siounit Decl. ¶6 ("Beyond Lunada Bay, I observed unfair treatment against other visitors to the City by police officers, which started upon entry into the City."); Siounit Decl. ¶7 ("On one occasion around 2010 or 2011, the Officer that I was on patrol with observed a Hispanic man driving a pickup truck that appeared to be used for gardening.  The Officer said to me, 'I guarantee that guy has no license and is an illegal from Mexico.'  This was enough for the Officer to pull this man over…. The Officer made it clear to me that he did not like Hispanic or African American people in the City, and that he liked to profile people.  And, the Officer |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | laughed about impounding the work truck."); Siounit Decl.¶9 ("When I worked for the City, I also observed a different Officer search for non-resident cars that were parked illegally so he could have them towed."); Siounit Decl. ¶12 ("In discussions with some of my fellow officers I learned that some residents did not want an African American police officer patrolling their city."); Siounit Decl.¶17 ("In my almost five years working as a reserve police officer for Palos Verdes Estates, I came to believe that certain officers make every effort to discourage non-residents from visiting the City, including by looking the other way when residents like the local surfers break the law.") Claypool Depo. 145:5-22 ("I was pulled over by a Palos Verdes police officer for nothing, out of the blue, and I was coming from a job estimate or a job that that I was on.  He asked me for my license and registration and asked me what I was doing there and there was no |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | reason – he didn't give me any reason to pull me over or nothing.  He just asked me what I was doing there and didn't write me a ticket.  Went back to his car and ran my plates and said, okay, on your way.  But halfway between by window and his car, he says, fix that trailer hitch.  It's [the ball] blocking your license plate."). |
| 137.   The City stated that it has data on traffic citations issued to non-residents versus residents and that statistics are readily available, but its 30(b)(6)[1] deponent did not know the | 137.   Best Depo. 127:14-25, 128:1-25, 129:1-13 |

---

[1]  The City designated Captain Tony Best as the Person Most Knowledgeable Under 30(b)(6) to testify on behalf of the City for the topics of (1) Beaches and Surfing within Palos Verdes Estates, (2) Policing within the City, and (3) Non-Discrimination Efforts within the City as it Relates to Policing.  Best Depo. 9:10-25, 10:1-25, 11:1-5.  Captain Best has worked for the Palos Verdes Estates Police Department for 21.5 years, and has served as a Community Services Officer, Patrol Officer, Motor Officer, K-9 Officer, Professional Standards Sargent, Watch Commander Sargent, Patrol Captain, Support Services Captain, and Interim Chief of Police.  Best Depo. 11: 10-25, 12:1-3 16:16-24; 17:3-12; 19:11-17; 20:8-13; 23:23-25, 24:1-4; 25:23-25, 26:1-5. While understanding his role as the City's 30(b)(6) designee, Captain Best said he did not do talk to others or do research to familiarize himself with 30(b)(6) topics before the deposition, including topic of localism.  Best Depo. 248:5-16.

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| exact answer and refused to provide an estimate. | |
| 138.   The City said that data is readily available on the number of traffic citations issued to persons of color versus Caucasians, its 30(b)(6) deponent did not know the exact answer and refused to provide an estimate in response to this question. | 138.   Best Depo. 130:13-22. |
| 139.   For at least 10 years, outsiders who dare to come to Palos Verdes Estates risk having their vehicle towed by a towing company owned by a City police officer, Robert Vanlingen. | 139.   Siounit Decl. ¶8; Barber Depo. 241:16-25, 242:1-25; 243:1-25. |
| 140.   After towing an outsider's vehicle, the police would leave them stranded without a way to get home. | 140.   Siounit Decl. ¶11. |
| 141.   Similarly, on one occasion, when an outsider was stranded because he had run out of gas an officer responded by saying "You should have thought about that before you left your town." | 141.   Siounit Decl. ¶10. |
| 142.   Reserve Officer-owned Vanlingen towing company and the | 142.   Best Depo. 179:17-25, 180:1-25, 181:1-25, 182:1-25, 183:1-25, 184:1-7; |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| City profit from towing outsiders' vehicles. | Placek Depo. 59: 4-17, 62:3-9; Barber Depo. 243:15-24. |
| 143.   Chief of Police Kepley did not know Vanlingen Towing is owned by a reserve officer, but says it would cause him concern if it turned out to be true. | 143.   Kepley Depo. 250:5-23. |
| 144.   The City of just 13,500 residents has its own 24-hour seven-day-per-week city jail. | 144.   City Response to Plaintiff's Separate Statement of Undisputed Facts ISO Class Certification Nos. 3 and 4 [Docket No. 189]. |
| 145.   The City averages between 350 and 400 bookings into its city jail each year. | 145.   Best Depo. 205:25, 206:1-25, 207:1-14; Placek Depo. 49:12-18, 50:13-25, 51:1-10. |
| 146.   In its deposition, the City stated that it had data on bookings of non-residents versus residents available, but even though its 30(b)(6) witness had worked for the City for 21.5 years and was the Captain who oversaw jail operations, the City refused to estimate what percentage of jail bookings are residents of the City versus non-residents (outsiders). | 146.   Best Depo. 207:15-25, 208:1-10; Placek Depo. 51:19-22. |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 147.   In its deposition, the City 30(b)(6) witness refused to estimate how many bookings in the City jail involve persons of color versus Caucasians. | 147.   Best Depo. 208: 11-25, 209: 1-25, 210:1-8; Placek Depo. 52:8-21. |
| 148.   Nationwide, Bureau of Justice incarceration rates in county and city jails is 230 inmates per 100,000 residents. | 148.   Franklin Decl., ¶ 24; RJN, ¶3, Ex. C, Bureau of Justice Statistics, Jail Inmates in 2015. |
| 149.   Residents of Palos Verdes Estates have objected to having African American officers on patrol. | 149.   Siounit Decl. ¶12 ("In discussions with some of my fellow officers I learned that some residents did not want an African American police officer patrolling their city.") |
| 150.   Since incorporation in 1939, the City has had just two African American police officers.  Both were terminated. | 150.   Best Depo. 239:24-25, 240:1-10; Barber Depo. 78:2-7. |
| 151.   Among the two African American officers since 1939, Captain Kevin Scroggins was terminated after he complained the Chief called him "boy" and that at a retirement party City police projected a slide of a white | 151.   Best Depo. 237:1-13 (the Chief "used that with everybody" and the phrase was "buddy boy), 237:14-25, 238: 1-14 ("And the two officers who were white officers not in black painted face with a noose around the other white officer's neck…it was a negative taken of |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| officer with a noose around his neck and as African American. | the actual photo…so black was white, and white was black."); Barber Depo. 78:21-22 (That ["buddy boy"] was a little name for, like, every male officer there."); Barber Depo. 80:4-14 ("No, I think Strahan [the retiring Sergeant] was maybe in the picture, but it wasn't – from what I heard, it wasn't black-faced. Somehow they got the negative of the picture and produced that as being black face, and when you see a negative of a photo, it may appear like that, so that's all I know about that….I remember it was something with a noose around the neck of somebody, but I don't know."); Kepley Depo. 122:19-25, 123:1-2 ("Q:  Of the 25 full-time sworn officers, how many are woman?  A:  Two. Q:  And how many are African American?  A:  None.   Q:  How many are Latino?  A:  Of all the officers? Q:  Just of the 25.  A:  Okay, I don't know the number.") |
| 152.   In 1995, Bay Boy Peter McCollum used a racist comment to | 152.   RJN, ¶2, Ex. B; Franklin Decl.¶¶ 21,23. |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| Los Angeles Times to explain why the Bay Boys exclude others:  "We protected this beach for years.  This is why.  So we can have driftwood on the beach rather than Kentucky Fried Chicken boxes.  If the beach opened up it would be packed with low riders….the rocks would be marked with graffiti." | |
| 153.   Veteran City police officers had knowledge of McCollum's "protective" actions toward outsiders and persons they viewed as undesirables coming to Lunada Bay: "You're not surfing here again, got it?  Got it?  You got it son?  I'm not touch'n no one.  Nothing.  But you won't surf here again.  Fuck that.  Fuck you guys.  I've been here too long for this shit." | 153.   Barber Depo. 184:22-25, 185:1-9 ("Q:  Well, of course, you heard about Mr. McCollum, who said something similar to that?  A:  Well, yeah, okay, that's the other case, yeah, but besides that, nothing."); Hagins Decl., ¶¶3, 6 and 7; RJN, ¶¶1, 2, Exs. A and B; Franklin Decl.¶17 EX. 16,¶¶1819. |
| 154.   Beach communities in Los Angeles County have a long history of discriminating against African Americans. | 154.   P. Neushul Decl. ISO Motion for Class Certification ¶7 [Docket No. 184-1] ("[E]xclusionary practices towards African-Americans extended to the beach.  In Southern California, for |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | example, cities took measures to keep African-Americans from the beach….eminent domain [was used] to evict African-Americans from a beachfront neighborhood known as Bruce's Beach.  Given the hostility displayed towards them elsewhere, African-Americans began surfing at a polluted beach in Santa Monica, which later became known as the Ink Well. Back in the 1970s, as today, few African-Americans surf.  In fact, 58 percent of African-American children do not know how to swim, compared to 31 percent of white children…") |
| 155.   During the first Lunada Bay Martin Luther King, Jr. Day event on January 20, 2014, with City police present, a native Hawaiian (and later Coastal Protection Ranger volunteer) Christopher Taloa was told by a local wearing blackface and an afro wig: "You don't pay enough taxes to be here." | 155.   C. Taloa Decl. ISO Motion for Class Certification ¶17 [Docket No. 159-10]. |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 156.   When Taloa attempted to surf Lunada Bay, he was asked: "Who are the black guys on the cliff?"  And then he was told by a local surfers that they owned the local police and judges. Taloa was threatened with this: ""I'm going to have you arrested and have you f*@#&% in the ass by a black or Mexican in the holding cell." | 156.   C. Taloa Decl. ISO Motion for Class Certification ¶18 [Docket No. 159-10]; Taloa Depo. 299:18-25, 300:1-5 ("Q:  And then other than what people have told you, are you personally aware of what you call connections between the Lunada Bay Boys and the Palos Verdes Estates Police Department?  A.  Just when I was told I was going to get raped in the butt.  Q:  Yes.  That's unpleasant.  Mr. Haven:  So stipulated.  A.  I don't doubt it."); Taloa Depo. 306:11-17 ("I don't know who's real and who's not so I'm very cautious about where I'm going and what I'm approaching.  I don't want to be down some cliff and get arrested and thrown in a holding cell like that.  That was the scariest SOB-ish thing I've ever heard and was scared sideways on that."); Taloa Depo. 298:15-25, 299:1-14 ("A:  My friends and I began researching Lunada Bay localism and police department.  I had heard that some Bay Boys had connections in the police department and that some police officers |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
| --- | --- |
| | were racist.  On December 2000 and – Q:  You can stop.  Just the first sentence. Thank you.  A:  Okay.  Q:  So again, where did you hear the Bay Boys had connections to the police department or that officers were racist?  Who did you hear that from?  A:  Several individuals who tried to surf up there.  Q:  Do you have names?  A:  I can give you a Dave Moore, a Greg Gonzales, Christ Peterson, the Guardian, and Dennis Martinez, and a couple of the guys that surf in the Manhattan Beach area, body boarders and surfers.  I wish I could give you all the names.  Q:  Okay.  A:  It was a random consensus of a lot of individuals saying don't go up there, black flag.  Q:  Saying don't go up there because of the police?  A:  It was a tie in between both [the police and the Bay Boys]; Taloa Depo. 301:4-19 ("Q:  Correct me if I'm wrong but you described him as telling him – they're telling him those were good cops? A:  He didn't feel that comfort from the |

-47-

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | cops.  Q:  Oh, he didn't?  A:  He did not feel the comfort from the cop.  The cop told him  – from what I was told, the cop told him, oh, he asked the police officer because he paddled his kayak all the way out there from Redondo.  He didn't want to drive up there.  He was worried about his car.  So he took his kayak.  Parked the kayak out there.  Started piling [sic] [paddling] in inward and he asked the cop on the boat if it was okay to surf and he said, we'll, we'll see how you get along with the locals and I saw him.  I couldn't believe that anybody showed up [to the 2014 Martin Luther King Day protest].  I was so happy.  So happy they showed up.  I felt like a donkey myself and he was shadowed by a stand up paddler and the guys just kind of right in front of him and the police boat circled him.  Circled, I don't mean like circles but like around him and all the way till he going in more and then he had another group of guys paddle over to him and then he went all the way to the |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | beach.  He just went in."); Taloa Depo. 311:7-18 ("Q:  So each time you've gone to Lunada Bay, you've either called the police yourself to let them know you're going to be going or ahead of time or you've had someone act on your proxy and call on your behalf?  A:  <u>One of us. If we all were going out, one of us has to call</u>.  Q:  Okay.  A:  We need to make sure we're safe and legal.") |
| 157.   In an effort to deter outsiders, local surfers direct pejoratives at them like "kook," "gook," or "fucking faggots." | 157.   J. Wright Decl. ISO Motion for Class Certification ¶13 [Docket No. 159-9]; R. Pastor Decl. ISO Motion for Class Certification ¶5 [Docket No. 175] ("Get your fucking brown ass out of here.") |
| 158.   City admits few persons of color and few others in protected categories use Lunada Bay. | 158.   Best Depo. 212: 17-25, 213:9-25, 214:1-25 (over 21.5 years, aware of two occasions of African Americans using Lunada Bay); Barber Depo. 259:19-25, 26:1-5 ("Q:  How frequently have you see[n] African-Americans use Lunada Bay beach?  A:  Very rarely.  Q:  How about in Palos Verdes Estates generally?  A:  Rarely.  Q:  How about Latinos?  Is it |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | that a common experience to see Latinos using Lunada Bay?  A:  Not Lunada Bay.  Q:  How about other beaches in Palos Verdes?  A:  Some other ones.  Q:  Which ones?  A:  They use Malaga Cove or Rat Beach a lot."). |
| 159.   City states in its observation fewer woman use Lunada Bay than men. | 159.   Best Depo. 215:2-5. |
| 160.   City states it has never seen a person that uses a wheelchair using Lunada Bay. | 160.   Best Depo. 215: 7-24. |
| 161.   During second Martin Luther King, Jr. Day celebration, which Plaintiff Coastal Protection Rangers sponsored on January 16, 2017, associates of the Bay Boy's endangered event participants.  And when event participants complained to the police, the police made it difficult on them and acted uninterested. | 161.   A. Apostol Decl. ISO Opp. City MSJ ¶¶ 11,12,13; Claypool Depo. 116:12-25, 117:1-25, 118:1-25, 119:1-25, 120:1-25; 121:1-25, 122:1-3. |
| 162.   The California Coastal Commission is concerned about impediments to people from inland communities using the coast, | 162.   A. Willis Decl. ISO Opp. City MSJ ¶¶5, 6, 7, 12. |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| providing coastal experiences to lower-income as well as impediments to other underserved populations, improving barriers-free access to persons with disabilities, and mitigating discriminatory impacts to other protected-category beachgoers. | |

-51-                    Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

**Issue #4:** **Palos Verdes Estates Admits It Does Not Want Outsiders Coming To The City.**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 163.   Chief of Police Timm Browne, who was the Chief of Police of Palos Verdes Estates from 1998-2004, admits exclusive history of City and that residents do not want outsiders in the City. | 163.   Best Depo. 124:22-25, 125:1-25, 126:1-25, 127:1-13 ("In 1995, there were some incidents actually provoked by outsiders who brought news crews with them.  Umm, they had it planned and then provoked incidents that are actually captured on local television news spots. People here do not like outsiders in general.  Umm, I mean, they pay a price to live here.  Umm, they have beautiful views of the ocean from most of the homes in the City.  Umm, so, uh, they are protective of their community as a whole, umm, I mean surfers or non-surfers."; Franklin Decl. ¶17, Ex. 16,¶¶ 18, 20. |
| 164.   In the City, the Chief of Police speaks for it in terms of all police-related issues. | 164.   Best Depo. 27:18-25, 28:1-6; 30:5-15; Franklin Decl. ¶29, attaching City Doc. No. 152 "Summary of Palos Verdes Estates PD Administrative Investigation" marked "CONFIDENTIAL", City Doc. No. 185, |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | 7087 to 7096.  ("Chief Kepley told me that shortly after he was hired as Chief of Police he learned of a long history of alleged "bullying and hazing" of out-of-town surfers at Lunada Bay by local surfers, often referred to as the "Bay Boys".  Kepley said there is a masonry and stone patio located on the public coastline; however, this structure is widely viewed as being owned or controlled by the Bay Boys.") |
| 165.   City 30(b)(6)[2] witness on the City's coastal programs admits the Planning Commission has declined certain Coastal Commission recommendations, and that comments include a reluctance and not wanting to be "too welcoming" to outsiders. | 165.   Repp Loadsman Depo. 26:21-25, 27:1-8 ("Q:  Do you recall, was there a resident and I'm trying to – was it a parklands committee member or a resident that may have sad we don't want to be too welcoming in Lunada Bay.  Do you recall that?  A:  I don't remember exactly who said something similar to that but I know a number of residents did not like the idea of having the boulders [for seating] there….I think it's basically |

---

[2]  The City designated Deputy City Manager Sheri Repp Loadsman as the person most knowledgeable on the City's local coastal program, the Coastal Act, and certain areas covering the city's beaches and surfing.

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | the consideration of loitering."); Repp Loadsman Depo. 9:7-20 ("Q:  Are there some things in beach and surfing 4 that you're knowledgeable about?  A:  I'm familiar with the posting on the city's website.  I'm familiar with various access points and  recreational opportunities on the beaches.  Limited familiarity with surfing beaches.  No knowledge on the surfers.  No knowledge on the police officers.  Knowledge about the city's coastal regulations.  Limited knowledge on training for the police officers.  Knowledge on the historical and current unpermitted structures along the coastline.  I do have information on the patio, the rock fort on Lunada Bay.  Familiar with communications with the Coastal Commission.  I kept wanting to say communication.  And then familiar with some communication with the Coastal Commission as well."); Repp Loadsman Depo. 31:14-25, 32:1-2 ("Q:  Has the city done any investigation in terms of how long the rock fort |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | structure had been in its current condition prior to demolition?  A:  Well, when you use the term, current condition, it's been modified over the years.  Q:  Can you tell me how the city understands it's been modified over the years?  A:  We've seen historical photographs.  In fact, I've looked at a lot of photographs so I've seen it basically transform from a fairly simple platform and ultimately a bench being added, then a shade structure, then a table, a barbecue, then an annex.  Then the annex got a shade structure, right.  So, it just seemed to continue to grow."); Repp Loadsman Depo. 33:8-14 ("Q:  And did the city do any investigation in terms of who may have modified or built that structure over the years?  A:  Oh, there were a lot of questions asked and, you know, it was probably a team effort and it was probably many people over many years because it looks like the structure was at least over 30 years old."); Repp Loadsman Depo. 50:22-25, 51:1-25, |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | 52:1-9 ("Q:  In terms of the process to remove the rock fort, was that bid out?  A:  Yes.  Q:  Were there many responders to that request for proposal?  A:  Gosh, I don't remember how many responders there were, but that was handled through engineering.  Q:  Do you remember the name of the company that responded to that?  A:  Oh, good question.  No, I don't.  I remember watching.  Q:  I saw a video.  A:  Helicopter was interesting.  Q:  Yes.  Do you recall, related to that, I understand some of the contractor's equipment was vandalized or destroyed or do you have that understanding or would that have come to you?  A:  Yes, that is my understanding.  I actually saw it.  Q:  And what had happened?  A:  The generator had been lowered to the shoreline and somebody had decided to set it alight.  Q:  So, sounds like there was an arsonist that burned this generator?  A:  Yeah, sounds like a little bit of vandalism going on.  Q:  Do you |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | have any information on whether they determined who had done that?  A:  No.  Q:  Was there any other vandalism to the contracting company's equipment, whether it be cars or -- that you're aware of?  A:  I think there was another piece of vehicle that I think was scratched and I remember the vandalism primarily to the generator because that was the big ticket item.  Q:  Was it destroyed?  A:  Likely.") |
| 166.   Admission by Catherine Placek, a Community Services Officer for Palos Verdes Estates, that locals within the City called the Bay Boys do not want outsiders using Lunada Bay and that if an outsider is uncomfortable facing the locals they should go somewhere else. | 166.   Placek Depo. 87:23-25, 88:1-25, 89:1-24 ("We know all of them.  They are infamous around here.  They are pretty much grown men in little mens' mindset.  They don't like anyone that's not one of the Bay Boys surfing down there.  It literally is like a game with kids on a schoolyard to them.  And they don't want you playing on their swing set.  But, you know, it is what it is.  *If you feel uncomfortable, you know, then don't do it."*); Placek Depo. 84:23-25, 85:1-8 ("My statement [in the Guardian video] was geared towards the subjects [Bay |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
|  | Boys] mindset…I can't change someone's mindset if they want somebody else not to be there."), Placek Depo. 95:18-25, 96:1-9; 97:17-21. |

-58-                    Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

**Issue #5:**  **Lunada Bay Is "Inexplicably" An Underutilized Los Angeles Beach: Lunada Bay Should Have Far More People From The Outside Using It Given Its Proximity To Densely Populate Los Angeles, And Illegal Exclusion Is A Reason Few People Are There.**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 167.  Outsiders avoid Lunada Bay because of the Bay Boys' successful campaign to exclude them and City complicity in the problem and, but for this deterrent, Lunada Bay would otherwise have more people using it. | 167.  P. Neushul Decl. ISO Motion for Class Certification ¶18 [Docket No. 184-1] ("Because of its reputation, most non-City-residents and visiting surfers avoid Lunada Bay.  This is because of the Bay Boys' efforts to discourage visitors from coming to Lunada Bay is a deterrent.  Indeed, while it's a prized wave, Lunada Bay is known to only have a few surfers using it."); A. Willis Decl. ISO Opp. to City MSJ ¶5 ("My staff have received complaints about localism at Lunada Bay, and that beachgoers are deterred from visiting out of fear for safety to themselves, their families and friends, and their property."), ¶12 ("Moreover, along with my staff, I have come to the conclusion that Lunada Bay is underutilized by surfers and other beachgoers compared to similar prized California coastal- |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | zones."), ¶¶3, 13-15; P. King Decl. ISO Motion for Class Certification ¶¶8, 9, 10, 11, 12, 13, 15, 16,  and 17 [Docket No. 184-2] ; P. King Decl. ISO Opposition to City Motion to Strike Decl. P. King ¶¶13, 14, 15, 16, 17, 18, and 19 [Docket No. 216-1]. |
| 168.   The actions of the City and the Bay Boys combined have a deterrent effect where Lunada Bay is underutilized and State Coastal Commission concerns have not been abated. | 168.   A. Willis Decl. ISO Opp. to City MSJ ¶1 ("I am the Southern California Enforcement Supervisor for the California Coastal Commission"), ¶3 ("I am not satisfied with the City's efforts to address the illegal exclusionary activity on a publicly owned beach.  The City has not remedied the situation, and steps remain that the City must take to improve access to Lunada Bay."), ¶4 ("Without judicial assistance, I am of the opinion that the potential remains that beachgoers are being denied access to Lunada Bay in violation of the law, and, thus, are continuing to suffer irreparable harm."). |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 169.   City cannot provide accurate use of Lunada Bay by overall beach goers and does not rebut low counts. | 169.   Best Depo. 62:2-25, 63:1-23. |
| 170.   Since 2016, City police have kept beach count logs but have not produced them.  Still, the City's best estimate without its logs is only between 5 to 15 surfers use Lunada Bay when the surf is good. | 170.   Best Depo. 51:23-25, 52:1-15, 53:10-25, 54:2-8, 57:7-8, 59:3-7, 62:2-25, 63:1-23. |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

1   **Issue #6:      Illegal Exclusion Is A Longstanding Problem In Lunada Bay.**

2

3

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 171.   Illegal exclusivity in the form of "localism" is a longstanding issue at Lunada Bay and long known by the City and Bay Boys. | 171.   Best Depo. 30:16-25, 31:1-17; 150:1-25, 151:1-25; 152:1-6.; 124:22-25, 125:1-25, 126:1-25, 127:1-13; Kepley Depo. 51:19-24 ("When this Guardian video came out, it caused a quick steep learning curve for me to learn some of the history.  And I had heard people from the community and staff members, and all, tell me that there have been conflicts and issues in the surfing culture for many, many years, as many as 50 years or more."); Kepley Depo. 220:2-7 ("Q:  Sure.  Do you think localism has been a problem at Lunada Bay this year? A:  Yes.  Q:  Do you think localism was a problem at Lunada Bay last year? A:  Yes); Placek Depo. 74:5-13; Siounit Decl. ¶4; P. Neushul Decl. ISO Motion for Class Certification ¶16 [Docket No. 184-1]  ("Throughout the surf community, the City of Palos Verdes Estates has the reputation for not taking |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | complaints against the Bay Boys seriously and allowing its beaches to become too exclusive for locals' use only.  By reputation, the City of Palos Verdes Estates allows illegal exclusivity and has done nothing to stop the Bay Boys for decades."); P. Neushul Decl. ISO Motion for Class Certification ¶17 [Docket No. 184-1]  ("Today, Lunada Bay in Palos Verdes Estates is known as one of the most localized surf spots in the world."); P. Neushul Decl. ISO Motion for Class Certification ¶18 [Docket No. 184-1] ("Because of its reputation, most non-City-residents and visiting surfers avoid Lunada Bay.  This is because of the Bay Boys' efforts to discourage visitors from coming to Lunada Bay is a deterrent.  Indeed, while it's a prized wave, Lunada Bay is known to only have a few surfers using it."); P. Neushul Decl. ISO Motion for Class Certification ¶19 [Docket No. 184-1]  ("I have long known of the reputation of the Bay Boys as a longtime resident of |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Southern California, surfer, and a surf historian."); Barber Depo. 101:8-22 ("Q:  How about a name, Peter McCollum?  Do you know that name?  A:  I know the name.  Q:  How do you know the name?  A:  He was involved in an incident – '95.  I don't know.  I has just gotten on, I believe.  There was a – an argument, and it made the news.  I know he was on it.  I know the video shows him kid of yelling on the video, but that's all.  I've never met Mr. McCollum in my life, though.  Q:  Okay.  So the video of Mr. McCollum yelling on the top of the bluff – I think it's a Mr. Hagens and Hamboy [sic] [a boy].  Do you recall seeing the video?  A:  Yes, I did see that.  Q:  When did you see that?  A:  Probably not long after it happened."); Franklin Decl.¶17, Ex. 16,¶¶ 18,19 ("'You got it son?  You got it?  Hey, I'm not touch'n nobody.  Nothing.  But you won't surf here again boy.  You won't surf here again.  Fuck that.  Fuck you guys.  I've |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | lived here too long for this shit."); Blakeman Depo. 230: 16-25 ("Q:  Have you ever heard of someone standing at the top of either the Middle trail or the Point trail questioning why they're there, in terms of using Lunada Bay?  A:  I'm aware of the Peter McCollum incident."). And, *see, e.g.,* Bacon Decl. ISO Motion for Class Certification [Docket No. 168]; Carpenter Decl. ISO Motion for Class Certification [Docket No. 161]; C. Claypool Decl. ISO Motion for Class Certification [Docket No. 176]; K. Claypool Decl. ISO Motion for Class Certification [Docket No. 166]; Conn Decl. ISO Motion for Class Certification [Docket No. 174]; Gero Decl. ISO Motion for Class Certification [Docket No. 170]; Gersch Decl. ISO Motion for Class Certification [Docket No. 162]; Hagins Decl. ISO Motion for Class Certification [Docket No. 178]; Innis Decl. ISO Motion for Class Certification [ Docket No. 165]; Jongeward Decl. ISO Motion for Class Certification [Docket |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | No. 177]; Krell Decl. ISO Motion for Class Certification [Docket No. 180]; Lanning Decl. ISO Motion for Class Certification [Docket No. 172]; MacHarg Decl. ISO Motion for Class Certification [Docket No. 160]; Marsch Decl. ISO Motion for Class Certification [Docket No. 179]; Neushul Decl. ISO Motion for Class Certification [Docket No. 173]; Otten Decl. ISO Motion for Class Certification [Docket No. 159-3]; Perez Decl. ISO Motion for Class Certification [Docket No. 164]; Sisson Decl. ISO Motion for Class Certification [Docket No. 169]; Will Decl. ISO Motion for Class Certification [Docket No. 163]; Young Decl. ISO Motion for Class Certification [Docket No. 167]. |
| 172.   City admits that the Lunada Bay locals have a gang mentality, and attempt to dissuade outsiders from coming to City.  They are territorial, discourage outsiders from using the beach, and intimidate outsiders. | 172.   Best Depo. 157:22-25, 158: 1-25, 159:1-21; Kepley Depo. 67:15-27, 68:1-12 ("Q:  Now, you said that the Bay Boys have a gang like mentality or a gang mentality, what did you mean by that?..[objections and colloquially]… A:  Okay.  So the gang like mentality |

Case No. 2:16-cv-02129-SJO (RAOx)

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | that I referred to was the way in which gangs, street gangs, often claim a territory.  And will confront people who come into their territory, where you from, what are you doing, type of thing.  Some of what was relayed to me with respect to those involved in disputes down on Lunada Bay in dissuading them from coming to surf there, because they are not from there.  That was a similarity to how some gang members might speak to a person coming into a particular area."); Kepley Depo. 221:4-8 ("Q:  Earlier you said you thought they had a gang mentality, but they are not a gang because they are not shooting people and they are not stabbing people; is that right?  A:  I did make statements like that, yes.); Franklin Decl. ¶26, Ex. 18. |
| 173.   The City admits that it is not capturing all of the complaints regarding illegal exclusivity at Lunada Bay. | 173.   Best Depo. 151:8-25, 152:1-6; Kepley Depo. 108:21-25, 109:1-8). |

13672333.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

**Issue #7:     The City Does Not Take Seriously The Problem Of Illegal Exclusion At Lunada Bay.**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 174.   For about a decade, the City has had two written ordinances related to its localism problem. | 174.   City MPA ISO MSJ 14:5-18. |
| 175.   The first ordinance to address the localism problem makes it illegal to block access to the beach, and the second makes it illegal to dangerously operate a surfboard (surf-riding or "dropping in") ordinance.  But the blocking access to the beach ordinance has *never been used* and the surf-riding ordinance was *used for the first time a few months ago* (Spring 2017) – and only after a CPR volunteer insisted on follow up. | 175.   Best Depo. 38:21-25, 39:1; 86:20-25, 87:1-25, 88:1-9, 90:8-23, 91:24-25, 92:1-7, 93:11-18; 130:23-25, 131:1-3, 15-25, 132:1-25, 133:1-25, 134:1-16; Barber Depo. 210:19-23 ("Q:  Have you ever heard of there being a citation issued related to that ordinance [surf-riding] in your 20 years [with the department]?"…. A:  I don't recall."), 211:18-22 ("Q:  Have you ever heard of anyone in the police department enforcing that ordinances [blocking access to the beach]?  A:  I don't recall anybody doing that."); Kepley Depo. 135:7-18 ("Q:  Okay.  So that's relating to surf riding and requires surfers, among others, to have due regard to safety for others nearby.  Do you know if anyone has ever been cited at Lunada |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Bay for violating this ordinance, in the last two years?  A:  I don't know that.  Q:  Would your department keep any statistics on that?  A:  We would be able to retrieve statistics on that for tickets that were issued for that, just like we would a stop sign or speeding.  But they don't notify me about those either."); Kepley Depo. 140:14-20 ("Q:  Okay.  Now, Palos Verdes Estates ordinance 9:16:030 essentially states that no one shall interfere or impede the flow of travel to any area providing access to the beach.  Do you know if anyone has been cited at Lunada Bay for violating this ordinance in the past two years?  A:  No, I don't know."). |
| 176.   While it has a known problem with illegal localism, the City has failed to train its personnel on coastal access laws, including its own municipal ordinances. | 176.   Barber Depo. 175: 2-7 ("Q:  In terms of – does the City do any training of officers on coastal access laws?  A:  Coastal access laws? … I have never had any training involving coastal access laws, no."), 176:4-25, 177:1-25, 178:1-10.); Best Depo. 154:4-25,155:1-25,156:1-25,157:1-21;  Repp Loadsman |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Depo. 13:15-17, 66:11-25, 67:1-3; Kepley Depo. 136:12-25 ("Q:  Do officers receive any training to know what they're looking for in terms of what a violation would be?  A:  Specific to that statute?  Q:  Yes.   A:  The officer when they are newly trained they spend six months with a training officer.  And they cover the gamut of traffic, criminal law, DUIs, domestic violence.  They cover everything.  And I would expect they would also cover some of the surfing  enforcement, if you will.  But whether or not they get absolute specific information about that particular section and the enforcement of those specific elements, I cannot say.") |
| 177.   The City – through its City Manager, election officials, and certain members of the police department - do not take efforts to stop illegal exclusivity seriously, and have called it a "myth" or "urban legend." | 177.   Placek Depo. 145:15-25, 146:1 ("Q:  "Have you heard any persons in your department calling localism in Palos Verdes Estates a myth?" A:  "Yes." Q:  "Would they have been sworn personnel?" A:  "Yes.")  Barber Depo. 235:11-18 ("Q:  Okay.  And do you – I think it was the mayor that called the |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | issue of localism an urban legend.  Do you recall ever hearing that?  A:  Yeah, I think I recall her saying that.  Q:  Is that your understanding too?  A:  Is that my understanding?  No, I wouldn't say an urban legend.  That's not – I just said there is – I don't believe there is a localism issue.")  Siounit Decl. ¶4 ("During the five years I worked for the City, I did not observe the police department take the issue of localism seriously and doubt that they do today.")  Kepley Depo. 21:18-25, 23:1 ("Q:  So then it's your position that the beaches at Palos Verdes Estates, should be open and accessible to everybody?  A:  Absolutely.  Q:  Regardless of whether or not they live in Palos Verdes Estates?  A:  That's correct.  *Q:  Do you know if this belief is shared by all members of the city council?  [objections and colloquially]  A:  I don't know."),*  Kepley Depo. 23:6-25, 24:1-8 ("Q:  Do you regularly meet with the city manager?  A:  I do.  Q:  Have you |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
|---|---|
| | discussed localism with him?  A:  Yes. *Q:  And to your knowledge, does he generally believe that Palos Verdes Estates beaches should be open to the anyone? [objections and colloquially] A:  It's my belief that, no, he doesn't no.").* |
| 178.   When the Coastal Commission asked the City to address its concerns, their requests were not followed. Thus, it supports the *Spencer* litigation. | 178.   Willis Decl. ¶3.  ("Here, the overall situation in the City of Palos Verdes Estates ("City") still requires change and improvements to ensure public access to Lunada Bay is available to all.  More specifically, I am not satisfied that the City's efforts to address the illegal exclusivity activity on a publicly-owned beach has fully remedied the situation.") ¶4 ("I am of the opinion that the potential remains that beachgoers are being denied access to Lunada Bay in violation of the law, and thus are continuing to suffer irreparable harm.") ¶4 ("Plaintiffs' efforts may continue to work as a catalyst to encourage to survey its options to ensure compliance with respect to laws that |

-73-

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | support access to California's coast.") Best Depo. 229:2-25, 230:1-12, 233:6-8. |
| 179.   City's claimed efforts to train and learn about illegal exclusivity are few to nonexistent.  There is no training for officers on surfing etiquette, little training on diversity issues. | 179.   Barber Depo. 193:6-13 ("Q: Have you had any training on surfing etiquette or rules in your time as a police officer? … A:  Never.  Q:  Do you have any understanding of what surfing etiquette or rules might exist generally?  A:  No, I'm not a surfer."), 203: 11-15 ("Q: So you've not had any training in surfing etiquette?  A:  No.  Q:  Or the dangers of surfing?  A:  No."); Best Depo. 154:4-25, 155:1-25, 156:1-25, 157:1-21; Dahlerbruch Depo. (11/18/16) 250:8-18, 258:20-25, 259:1-25, 260:1-13.  (City Manager has not reached out to other local agencies about problem of localism.)  Dahlerbruch Depo. (11/18/16) 75:6-25, 76:1-23 (efforts to understand problem of localism was limited, and no surveys were done). |
| 180.   City's police officers generally do not go down to beach to enforce its laws. | 180.   Barber Depo. 197:16-23, ("There are two trails that most people use, but in my mind, I don't think either one is safe to traverse down there…it's not safe to |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | get down there, if you know what I mean.  The trails are slippery, and it's—I mean, that's why a lot of officers, I mean – we don't want to traverse those trails, because we may fall and break our necks, and that's the only thing I would tell people."); Kepley Depo. 99:14-16 ("It's more typical for them [police officers on patrol] to stand at the top. They have gone down to the beach.  I don't know how many times.") |
| 181.   The City's claimed effort to stop localism are stale, ineffective, or otherwise overstated:  (1) it had boat patrols, (2) had undercover operations, (3) printed localism fliers, (4) placed an LED message board on the bluff, and (5) started community outreach to learn about the problem. | 181.   City MPA MSJ, pp. 15-17. |
| 182.   According to the City 30(b)(6) deponent, (1) the City's boats have not worked in about four years, (2) the City has had just two undercover operations in about 17 years, (3) it printed somewhere between hundreds | 182.   Best Depo. 39:11-13 ("Q:  When was the last time that the city had an operational boat?  A:  Three or four years ago."), Best Depo. 114: 5-9 ("Q:  And in terms of undercover operations between the one in '99 or |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| to 1,000 localism fliers, but does not know how many were distributed, let alone distributed to outsiders, (4) the LED message board was ineffective and only used about 10 times over 18 months, and (5) the community outreach program was not directed to the people being denied access, but to locals. | 2000 and the one that was on Martin Luther King, Jr. Day in 2015, were there any other undercover operations that you're aware of?  A:  No."), Best Depo. 71:4-10 ("Q:  So how many cards would you estimate – how many cards would the City estimate it has handed out to beachgoers?  A:  It's a good question. Lots of them.  Cause I'm the one that printed them.  I create them, I print them up.  I would estimate over hundreds, if not a thousand cards."), Kepley Depo. 99:24-25, 100:1-7 ("Q:  Do you know how many cards were distributed? A:  Hundreds.  But I don't know how many.  Q:  Do you know on how many occasions they were distributed?  A:  I do not.  Because they are distributed to the police officers to pass out to folks in the community when they were on patrols and doing their checks.  So I don't.  I never received a report of how many per day or month were passed out."), Best Depo. 72:21-25, 73:1 ("Q:  And was there a follow-up in terms |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | of how many had actually been distributed?  A:  They were not numbered.  I believe Captain Velez now has started tracking how many officers respond back and how many they've distributed, but I'm not exactly sure of when he started doing that."), Best Depo. 74:18-25, 75:1-5 ("Q:  Were the display board used with the same information? A:  We have in one of the patrol cars a blue message sign that scrolls, that we could tailor messages.  And we parked that vehicle in Lunada Bay with a blue scrolling message that something to the effect:  Report localism to the police department.  And that vehicle is parked out in Lunada Bay with the sign running. Q:  And how long was that vehicle parked at Lunada Bay with the sign scrolling about report localism?  A:  We would – I don't know how many days it was actually displayed out there."); Best Depo. 76:6-8, 13-18 ("Q:  How long was this – how long has this been used at Lunada Bay?  A:  I'd say, a year and a |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | half, two years. … Q: What's your best estimate in terms of how often it's been deployed at Lunada Bay on the localism issue? A: I'd estimate about ten times."), Kepley Depo. 102:2-9 ("It's still in use. We have received feedback that it's a little difficult to read. So we don't rely on it as much as we once did. But it does go out occasionally. It's used for other messages in the community, as well, traffic safety messages. Q: That's just one cruiser that has the LED display? A: Yes."); Best Depo. 69:18-25, 70:1-2 ("Q: And in terms of community outreach, do you know is there community outreach to beachgoers who might not be from Palos Verdes Estates? A: Beachgoers – well, anybody who is in the area we would contact them and provide them that information. So I imagine not everybody that goes to the beach in Palos Verdes Estates is from Palos Verdes Estates. But if you're asking if we go to Hermosa Beach or Redondo |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Beach or Huntington Beach to pass those out, the answer would be no."), Best Depo. 70:13-25, 71:1-3 ("Q:  And the question is a simple one:  Are you aware of Palos Verdes Estates doing any direct mail or outreach on its own as to its beaches or attempting to purchase mailing lists so it could do a community outreach?  A:  No.  Q:  Are you aware of Palos Verdes Estates doing an electronic, whether it's a social media or otherwise outreach to try to reach people from outside the community?  A:  For what purpose?  Q:  To talk about the issue of localism and issue with crimes.  The same purpose that you were talking about those cards you handed out, so it be a broader net to capture more people?  A:  No."), Kepley Depo. 116:10-23. |

13672333.1

**Issue #8:     The City Police Are Complicit In The Problem With The Bay Boys Illegal Activity.**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 183.   For about five years, the City permitted Lunada Bay Boy and Defendant Brant Blakeman to use a City-owned phone to coordinate efforts to exclude outsiders, including the harassment of Plaintiffs Reed and Spencer. | 183.   Blakeman Depo. 14:9-25, 15:1-22; Best Depo. 14:10-25, 15:1-11, 174:6-25, 175:1-25, 176:1-25, 177:1-2, 178: 6-25,179:1-8. |
| 184.   The City failed to preserve data on this City-owned phone in response to discovery request. | 184.   Dahlerhbruch Depo. (11/18/16) 70:15-25, 71:1-2, 71:11-18; 88-94; Best Depo. 174:6-25, 175:1-25, 176:1-25, 177:1-16, 178:6-25; 179:1-7. |
| 185.   Bay Boy Michael Thiel directed the City to not hold an undercover investigation, and the City listened. Moreover, it was the very same day that Plaintiff Diana Reed requested extra assistance (was provided none), and sexually harassed by Bay Boys. | 185.   Dahlerbruch Depo. (11/18/16) 138:21-25, 139:11-21 ("Q:  Do you recall there being an undercover operation set for January 2016 to try to ferret out the issue of violence on the beach?  A:  At one point I was aware from the Chief of Police that they had planned some type of operation….  Q:  Did you receive an in-person visit from anybody relating to an undercover operation planned for Lunada Bay? |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | A:  One of the folks that had reached out to the City shared an in-person meeting that he was aware that there might be something planned.  Q:  And who was that?  A:  I think his name was Thiel was his last name.  I don't remember his first name.");  Kepley Depo. 42:10-23 ("Q:  And you said the operation was compromised, how was it compromised?  A:  It was brought to my attention that the city manager had received a  phone call from someone claiming to be a surfer in Lunada Bay that was questioning why the cops are coming out undercover tomorrow.  So the caller appeared to have information that he knew that our operation was the following day.  So upon hearing that from the city manager, it was clear to me, the information had been leaked out to the community somehow or to surfers, whoever that might have been on the phone.  And to protect the officers, I decided to cancel the operation.");  Best Depo. 169: 20-25, 170:1-11 ("Q:  And |

-81-

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | what is your understanding of that undercover operation that was set for February 13th, 2016?  A:  My understanding of it was through coordination with the detective bureau and Captain Mark Velez and the chief, they planned the undercover operation with outside resources from another department.  And I didn't know when that was to take place, what time.  It was kind of – information that wasn't distributed about.  And I learned about its canceling when the chief called me and he – he was – he said the operation at Lunada Bay is cancelled and he was not happy.  And I was going to – okay.  I wasn't part of the planning or execution of this, so I don't know if was trying to get a hold of Mark, but he told me it was canceled and I said okay.  That's the extent of the information that I had on that operation."; Franklin Decl. ¶31, attaching ""Summary of Palos Verdes Estates Administrative Investigation" marked "CONFIDENTIAL" (City Doc. |

-82-

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Nos. 7087-7096) ("Mr. Mowat frequented Lunada Bay . . . .  Mr. Mowat was critical of Chief Kepley's efforts and what Mr. Mowat viewed as inappropriate use of police resources at Lunada Bay.") (City Doc. No. 7088); (In an in-person meeting on February 12, 2016, "Mr. Thiel said something like [this to Mr. Dahlerbruch], 'I hope tomorrow isn't the sting . . . better not be doing this tomorrow.'")  (City Doc. No. 7089); Franklin Decl. ¶16, Ex. 15 attaching Defendant Johnston Cell Record Detail SMS Messages #766 from Charlie "Moet" [sic] on 3/29/2016 ("My source tells me that a class action lawsuit is in the works against the "bay boys" and the Chief of PVE.  Probably that Diana bitch.  Watch out for subpoenas.  Great time to be on the ultra downlow.") |
| 186.    While the City is strict in enforcing its laws against outsiders, it is lenient when locals break the law. | 186.    Barber Depo. 214:9-25, 215:1-15 (has not cited locals for drinking alcohol in Lunada Bay nor taken other action), 218: 7-25, 219:1-16 (would instruct a family that attempts to cook outdoors |

-83-                     Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | with a small contained grill that it is against the law to do so on City park land); Kepley Depo. 143:13-22); Franklin Decl. ¶16, Ex. 15 attaching Defendant Johnston Cell Record Detail (Call Log #753 1:17 minute phone call to Charlie Moet [sic] at 2:15 p.m. from Defendant Johnston Chat Message #2046 2/13/2016 "Nothing happened really couple trolls they got nothing."; (Chat Messages 1032-1037 2/12/2016 "No fucking way Taloa is back this year;" "If you wanna be a bay boy we might need help Tomm" "Could be a great help if ur there!!!  Supposed to be a police set up at our spot – calling all gards"; SMS Message #1056 2/13/2016 "Don't see any cops at the top"; SMS Messages #1607 7/26/15 "beers at bay are you around," #1748-1751 6/4/15 "I will by [sic] beer," "meet u at point trail," "on my way to LB," #1195 3/2/16 "Epic patio rager.  Got wood and beer. Not leaving.  Get down here," #3654 8/9/16 "VanDine and I are raging patio |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | tonight campfire style for all the good times ever …. spread the word!!!" |
| 187.   When outsiders complain to the City police about locals breaking the law, they're first met with a response of: "I'm not a surfer."  Next, they are discouraged from making complaints, and the complaints they do file are not followed up on but merely logged as "incidents." | 187.   Barber Depo. 193:6-13 ("Q:  Have you had any training on surfing etiquette or rules in your time as a police officer? … A:  Never.  Q:  Do you have any understanding of what surfing etiquette or rules might exist generally?  A:  No, I'm not a surfer.");  Best Depo. 130:23-25, 131:1-3, 13-24, citing to A. Belda video ("I'm not a surfer so I don't understand surf etiquette, and I don't even know what dropping in is."). |
| 188.   Police Officer Association President Sergeant Steve Barber is friends with several Bay Boys, goes to barbecues and parties with them, communicates with them on his personal phone.  This includes Charles Mowat, who had informed Barber that he complained directly to the City's elected officials about Chief Kepley enforcing surfing-related rules in Lunada Bay.  Barber communicates | 188.   Barber Depo. 90:13-15, 246:1-16. |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| with Bay Boy Mowat on his cell phone. | |
| 189.   However, Barber "investigates" his friends when they're accused of wrongdoing.  Further, the City did not search Sergeant Barber's phone in response to Plaintiffs' discovery requests. | 189.   Barber Depo.  221:1-25, 222:1-22 ("Q:  Has anyone from the City asked you to provide them your cell phone related to this case?  A:  My personal? Q:  Yes.  A:  No.  Q:  So no one has approached you and said we need your cell phone with related to any surfing incidents at Lunada Bay.  A:  No.") |
| 190.   And, Sergeant Barber refused to provide his phone number or provide documents relevant to this case off his personal phone. | 190.   Blakeman Depo. 150:4-25, 151:25, 153:1-8; Barber Depo. 90:13-15, 246:1-16. |
| 191.   And when asked if anyone asked him preserve data on his personal phone, he answered "no" and refused to provide further information based on an instruction from his lawyer.  When asked if he deleted information off his personal phone since the filing of this lawsuit, he was instructed not to answer. | 191.   Barber Depo. 237:25, 238:1-20. |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 192.   City Manager Dahlerbruch, City Council members and Captain Best meet Bay Boys at Rock Fort. | 192.   Dahlerbruch Depo. (11/18/16) 221:7-25, 222:1-21. |
| 193.   Further Bay Boys offer them beer. | 193.   Dahlerbruch Depo. (11/18/16) 131:10-25, 132:1-25; 133:1-11; 136:22-25, 137:1-4 (in person meeting with Charlie Mowat). |
| 194.   City police officers know and socialize with Lunada Bay locals that exclude outsiders from the City. | 194.   Kepley Depo. 40:8-10 ("Because we are a small city, in the context, that many of our officers know the surfers and the surfers know our officers."); Barber Depo. 24:24-25, 25:1-16; Barber Depo. 147:7-16 ("Q:  Is Charlie [Mowat] friends with anybody else in the police department?  A:  Probably not as close as I am.  Q:  How about – are there some other he's friends with?  A:  He may know or be familiar with other officers. Q:  Who do you think – who would you estimate that he's familiar with?  A:  To tell you the truth, maybe Rick Delmont, who used to work for us."); Best Depo. 190:20-25, 191:1-25, 192:1 (Brant Blakeman and Steve Eberhard); Kepley Depo. 152:9-25, 153:1-6 (Corporal |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Hellinga and Officer Reed have familiarity with the Bay Boys); K. Franklin Decl. ¶31, Ex. 21 "Summary of Palos Verdes Estates Administrative Investigation" marked "CONFIDENTIAL" (City Doc. Nos. 7087-7096) ("Chief Kepley mentioned Sergeant Steve Barber and Officer Ken Ackert as long-term employees who might interface with some of the Bay Boys.") (City Doc. No. 7093); Franklin Decl. ¶16, Ex. 15 attaching Defendant Johnston Cell Record Detail SMS Message #617-#618 ("Got to tell my side of story to detective [regarding Reed harassment complaint].  Cops were being cool was only there for 2 hours.") |
| 195.   The City can identify the Lunada Bay locals (aka "Bay Boys") who attempt to dissuade others from using the beach. | 195.   Best Depo. 161:4-11 (identifying Charles Mowat), 162:20-25, 163:1 (identifying Brant Blakeman, Bill Kamerle, Alan Johnston, Michael Papayans, Angelo Ferrara, Frank Ferrara, Charlie Ferrara, NF, Leo Ferrara), 171:24-25, 172:1-3 (Michael Thiel is associated with Lunada Bay); Placek |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Depo. 75:17-20, 24-25, 76:1-6, 12-24; Placek Depo. 90:22-25, 91:1-2 ("What I meant is we're a small community and we know a lot of residents within the City.  And we know people that frequently surf the area."), 91:13-17 ("Certain people in the department are familiar with people that surf in that area."), 91:23-25, 92:1-15 ("Certain members of the Police Department….Specifically, Sergeant Barber….He was the subject that I believe knows a lot of the subjects that surf in that area….My understanding is that he grew up around the area.  So, he would know people that live in this area."); Placek Depo. 93:8-15 ("Q:  And when it was 'them', what were you referring to when you said 'them'; were those the people that surf Lunada Bay? A:  Yes."); Placek Depo. 94:1-25, 95:1-15; D. Milena Reed Decl. ISO Motion for Class Certification ¶29 [Docket No. 159-5] (an officer told Reed they have a "book containing driver's license |

-89-

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | photographs of all Lunada Bay Boys" and it would be a problem to identify the individuals because they know all the people who frequent the area.); Barber Depo. 161:24-25, 162: 1-9 ("Q: Have you ever heard of the persons that surf Lunada Bay referred to as quote 'Bay Boys,' close quote? A: I have heard that term. Q: Where have you heard that term? A: When – well, that was a term that I heard when I was just starting off as a dispatcher in 1994. Q: And did you hear that in the community or in the police department? A: Both. Q: And what does the term, 'Bay Boys' refer to? A: The surfers who surf Lunada Bay." Barber Depo. 25: 19-24 ("Q: Do you know – related to your police work in Palos Verdes Estates, can you recall names of any other Ferraras? A: Angelo, Leo, and NF, and I know the name, Frank Ferrara, but I'm not real – I – I'm not familiar – I've really never talked to Frank too often. I think maybe once in my career there.") Barber Depo. |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | 26: 3-7 ("Q:  And what was the most recent – what was the purpose, if you can recall, in your first speaking with Angelo?  A:  Well, without going into too much detail, because his son is a juvenile and, his son ran into some legal problems."), Barber Depo. 40:15-18 ("Q:  And have you had occasion to interact with Leo Ferrara related to work?  A:  Yes, I know that he – I've seen him frequently in the Lunada Bay area.  I believe he – he surfs down there."); Barber Depo. 69: 9-16 ("Q:  And how do you know Joe Bark?  A:  I've known Joe though not only through work….I also know Joe from the years of working in PV Estates.   He surfs, he paddle boards, does all kinds of stuff.  So professionally and personally I've just gotten to know Joe throughout the years.")  Barber Depo. 71: 5-18 ("I've probably gotten to know Charlie just over the years of seeing him around in the city.  He went to – he's a local guy. He went to Palos Verdes High |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | School…Just became friendly with him over the years.  Nice guy, and so I consider him a friend."), Barber Depo. 71: 24-25, 72:1-3 ("Q:  Okay.  But over to his house for events and that type of thing?  A:  I have been, yes. Q:  Okay. Barbecues?  A:  Yes."), Barber Depo. 71: 5-7 ("Charlie has probably made a donation [to the police union] in the past. He's a resident."), Barber Depo. 90:13-15 ("Q:  And have you – have you ever communicated with Mr. Mowat on your personal phone?  A: Yes."), Barber Depo. 93:1-8 ("Q:  How do you know John Camplin?  A:  He is a resident or live in PV – I don't know if he lives in PV Estates anymore.  He is a surfer who surfs Lunada Bay.  I've gotten to know John a little bit through Charlie Mowat, but that the extent of John.  Q:  A barbecue or something?  A:  Yeah, yeah, he's been around for a long time though…"); Barber Depo. 93:16-21 ("Q:  How do you know Michael Thiel? A:  He's a resident of PV Estates, who, |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | also, frequents Lunada Bay, but I don't even know if he surfs."); Barber Depo. 94: 1-4 ("Q:  Do you know Mark Griep?  A:  I know who Mark Griep is.  Q:  Who is Mark Griep?  A:  He is just a guy who comes to Lunada Bay to surf."; Barber Depo 94:13-16 ("Q:  Do you know David Mellow [sic]?  A: Yes.  Q:  How do you know David Mellow [sic]?  A:  He is known to surf the Lunada Bay area."); Barber Depo. 95:7-14 ("Q:  Do you remember – what do you know about Dan Dreiling Junior?  Do you know, does he surf Lunada Bay?  A:  I don't know if Dan – D.J. – that's his name.  I don't think he surfs Lunada Bay very often now.  He may have in the past.  Q:  Do you – D.J. or Dan Dreiling, Junior, he's the former chief's son; is that right?  A:  Correct."); Barber Depo. 95:23-25 ("Q:  How about Pete Bavros [sic]?  Do  you know that name?  A:  I know that name, yes.  Q:  How do you know that name?  A:  He's a – I believe he grew up in PV Estates and surfs |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Lunada Bay."); Barber Depo. 97:10-14 ("Q: How do you know Fred Straeter? A: Fred Straeter is a – live with Charlie for a little bit, and he was an artist – or is an artist. He likes to do paintings of, like, Lunada Bay and stuff like that."), Barber Depo. 99:4-9 ("Q: Zen Del Rio? Do you know that name? A: I've heard that name. I believe I've heard that name brought up as being a surfer from Lunada Bay. Q: Do you know how you – who would you have heard that from? A: Just I – probably from Charlie Mowat."); Barber Depo. 99:22-25, 100:1-5 ("Q: Tony Pazanowski, do you know that name? A: I know Tony, yes. Q: How do you know Mr. Pazanowski? A: Through just having – he grew up in Palos Verdes Estates, surfed Lunada Bay, friends with Charlie Mowat. That's about it. Q: Have you been to barbecues with Mr. Pazanowski in attendance? A: Maybe at Charlie Mowat's house."), Barber Depo. 100:23-25, 101:1-3 ("Q: How do you know Alex Gray? |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | A:  Alex is a friend of Charlie's.  He also a professional surfer, and he grew up in Palos Verdes and surfs in Lunada Bay. Q:  And have you socialized with Alex? A:  At one of Charlie's barbecues."), Barber Depo. 124:5-8 ("Q:  How do you know Tom Sullivan?  A:  Tom I've known for, gosh, since I started.  He's frequented Lunada Bay for a long time. I do know he surfs down there, so I've just been familiar with Tom for a while. Q:  And have you – are you friends Mr. Sullivan outside of work?  A:  No, but I've have seen him at the party at Charlie Mowat's."), Barber Depo. 124:21-25, 125:1-4 ("Q:  Jason Safford? A:  Yes. Q:  How do know that name? A:  Jason has lived in PV Estates for a long time.  He does hang around with a lot of the guys that surf Lunada Bay, but I'm not sure if he's an actual surfer himself.  Q:  So you would say that [he] hangs around with Mr. Mowat? A:  Mr. Mowat and some of the other names you've mentioned before."), |

13672333.1

| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
|---|---|
| | Barber Depo. 127:2-6 ("Q: How about Eric Lamers? A: Yes, I know Eric. Q: How do you know Eric? A: Eric has live in PV Estates for years. I believe he grew up there. I've seen him in the Lunada Bay area….Q: And have you seen him at one of Mr. Mowat's parties? A: Yes."), Barber Depo. 128:12-16 ("Q: I forget. Do you know Sang Lee? A: I know Sang Lee, yes. Q: How do you know Sang Lee? A: Sang Lee, I believe was born and raised in PV and he surfs Lunada Bay."); Barber Depo. 130:1-6 ("Q: How about someone named Paul Hudabil [sic]? A: I know Paul Hudabil [sic], yes. Q: How do you know Paul Hudabil [sic]? A: Paul lives in PV Estates. He – I think he's a L.A. County lifeguard part-time, and he does surf in Lunada Bay."); Barber Depo. 130:17-24 ("Q: What are the Caldwells that you know? A: Matt Caldwell and Reno, Steven Reno Caldwell. Q: And how do you know Reno surfs? A: I've seen him in Lunada Bay before."), |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Barber Depo. 131:14-20 ("Q: How do you know Robert Bacon? A: Robert Bacon was born and raised in PV Estates. He own a little roofing company, also, and he surfs in Lunada Bay. I've seen him down there, and, yeah, I've seen him with a surf board [sic]. Q: Have you seen him at one of Mr. Mowat's parties? A: Yes."), Barber Depo. 132:15-23 "[W]hat were the reasons you've encountered Mr. [Alan] Johnston? A: I honestly can't remember the first time I've ever encountered Mr. Johnston, but it was early on in my career….maybe alcohol, marijuana, and then the most recent one was, obviously, because he was investigated for the incident with Diana Reed."), 142:19-24 ("Q: Have you talked to Charlie about surfing in Lunada Bay? A: Yeah, I've talked to him about surfing. Q: And what, if anything, do you remember talking to him about surfing in Lunada Bay? A: I asked him who he thought the best surfers were."); Barber Depo. |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | 143:16-25 ("Q:  Have you ever had any conversation with Mr. Mowat about the issues of localism?  A:  I have talked to him a little bit about the localism issue.  Charlie is a guy that seems to – I've never heard of him saying or doing anything to anybody, but, you know, when these incidents come up, talking to somebody who does surf down there helps us better understand what exactly is going on."), Barber Depo. 107:1, 108:1-13 ("Q:  What do you know about Danny's Day?  A:  I forget who Danny exactly was, but I guess he used to live in Palos Verdes Estates, and he was killed, and that was their celebration for him."  Q:  Who is "they"?  A:  That was the surfers who surf Lunada Bay.  Those were their memorial.  Q:  So the surfers that surf Lunada Bay have a memorial? Is that your understanding?  A: From what I gather, yeah.  Q:  Had you heard about that from anybody else other than Charlie Mowat?  A:  I don't – I probably maybe Brant Blakeman had mentioned it |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | before." Barber Depo. 72:16-18 ("Q: And I'm going to ask about a few – how about Mr. Papayans? Do you know the Papayans family? A: I do.") Barber Depo. 271:2-7 ("Q: Okay. And is the older Papayans, is he referred to as 'Paps' sometimes? A: Yes. Q: And who refers to him as Paps? A: Most of the guys from the people who do surf Lunada Bay."); Blakeman Depo. 243: 3-25 ("Q: And how long have you known Mr. Barber? A: Eight years maybe. Q: You said you knew him from the community? A: Yes. Q: Did you know him from your work in your volunteer work? A: No through that, no. Q: How did you know him? A: Just the community. He's a really good officer. He keeps in touch with the community, you know. And I know – I know a lot of police officers, PV police officers. Q: Besides Mr. Barber and Mr. Eberhard, who are the other – you said you knew lots of PV police officers? A: I know Ken Eckhart (Phonetic). |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND
CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Q: Ken Eckhart? A: Yeah. Q: How long have you know Mr. Eckhart? A: 10-12 years. Q: So Mr. Barber, Mr. Eberhard, Mr. Eckhart. Who else do you know? A: Rick Delmont (Phonetic), who's no longer a police officer there. He's retired. Q: Mr. Barber, Mr. Eckhart, Mr. Delmont. Anybody else? A: Aaron [Belda] – I don't know his last name. Q: Valez? Do you know officer Valez? A: Oh Yea. Let's see. He's a captain or something…..I know Luke Halinga (Phonetic) too."); Kepley Depo. 265:12-20 ("And then Dan Dreiling Jr. Q: Why is it that you recognize his name? A. I know him to be the son of the former police chief. Q: Are you aware that he used to surf Lunada Bay? A: Junior? Q: Correct. A: I am."); Franklin Decl. ¶16, Ex. 15 attaching Defendant Johnston Cell Record Detail SMS #760-#762 (3/29/16 "Read it you're being fingered broham"; "Yea saw that super gay!! Who narked my name!! So |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | lame!!"; "I bet it was police chief he has photos of all of us she probably just picked from a line up don't trip to hard she has nothin it's not illegal to be annoying. .just be prepared for shit show . . ."). |
| 196.   Sergeant Barber, friend of the local surfers, is the policeman whom the City asks to investigate the illegal activity of the Bay Boys. | 196.   Barber Depo. 150: 4-21 ("Q:  Do you recall going out to Mr. Blakeman's house on February 29, 2016 about noon to talk to him about what happened down – between him and Mr. Johnston and Diana Milena Reed?  A:  Yes. Q:  What do you recall?  A:  Sergeant Coalinga [sic] knew that I knew Brant, had – I guess, during their course of the investigation, they had found out that Mr. Blakeman had possibly videotaped the incident, so because I have a better rapport with Brant Blakeman, I Lou Coalinga [sic] asked me to go and ask if he had a copy of it.  Q:  And do you know what happened?  A:  Brant said, 'I don't have anything.  I'm sorry.'  Q:  He wouldn't – well, I mean, I wouldn't say he wouldn't cooperate, but he just said, |

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | 'No, I have nothing.  I really don't want to comment on it.'"); Blakeman Depo. 242: 1-8 ("Q:  Palos Verdes Police never talked to you about that day [February 13, 2016]?  A:  They asked me – they actually did.  They came over to my house.  I didn't go down there for an interrogation or whatever.  They came over to my house.  And he asked me if I poured beer on her and exposed himself and those are both no, no.") 242: 18-22 ("Q:  Who came over to your house?  Do you know what officer?  A:  Yes. Q: Who?  A:  Steve Barber.  Q:  How long did Mr. Barber spend at your house?  A:  Five minutes.") |
| 197.    The City's Police Officers Association (POA) solicits donations from residents in exchange for decals with a badge that can be placed on a resident's car and a coin with a badge that can be carried in a person's pocket if he/she is pulled over. | 197.    Barber Depo. 60:11-25 to 62:1-24 ("Q:  [I]f you make a contribution do you get something in return?  A:  You get a sticker.  Q:  What does the sticker say? A:  Supporter of the Palos Verdes Police Officers Association . . .   It's a square with our badge design in the middle.  Q:  And are those – where do people put those stickers?  Do |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | they put them on their cards? A:  We have seen them on cars."); Barber Depo. 63:18-22 ("Q:  How about something for the highest level I think called a challenge coin?  Have you heard of that? A:  Yeah, the challenge coin, that's pretty popular now with law enforcement agencies"); Barber Depo. 64:12-17 ("Q:  How much money does the fund-raiser bring in?  A:  They do it twice a year, and, on average, it's – I'd say it's a little less now – about $20,000, $25,000 . . ."); Barber Depo. 70:21-25 71:1 ("Q:  How about in terms of amounts?  Do you – what's the largest amount that you know has been donated?  A:  I don't know the exact large – I mean largest amount.  Q:  More than a thousand dollars?  A:  I'm sure."); 71:5-7 ("Q:  How about someone named Charlie Mowat?  A:  Charlie has |

13672333.1

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
|  | probably made a donation in the past.  He's a resident.") |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

**Issue #9:     City Provides No Rational Basis For Treating Outsiders Differently.**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 198.   In response to Plaintiffs' request for admission, the City did not provide any rational basis for treating outsiders differently in access to the beach and enforcement of City laws. | 198.   Franklin Decl. ¶44, Ex. 33, citing to City's Response to Interrogatory Nos. 1 and 2. ("Q:  Do you contend that a RATIONAL BASIS exists for YOU to treat RESIDENTS of the CITY with regard to facilitating lawful, safe and secure access to LUNADA BAY? A:  No…"  In the follow-up interrogatory asking the City to explain the nature of its rational basis for the disparate treatment, the City responded "Not applicable." |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1

1     DATED:  July 31, 2017          HANSON BRIDGETT LLP

2

3

4                                 By:      /s/ Kurt A. Franklin

5                                       KURT A. FRANKLIN
                                      LISA M. POOLEY

6                                       SAMANTHA D. WOLFF
                                      TYSON M. SHOWER

7                                       LANDON D. BAILEY

8                                       Attorneys for Plaintiffs
                                      CORY SPENCER, DIANA MILENA

9                                       REED, and COASTAL PROTECTION

10                                       RANGERS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS.' ADDITIONAL MATERIAL FACTS IN OPP. TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDG. OR, IN THE ALT., SUMM. ADJUD.

13672333.1