# EXHIBIT 21

# NORMAN A. TRAUB ASSOCIATES

5409 Via Fonte, Yorba Linda, CA 92886-5006

(714) 693-3428 • (714) 200-0310 Fax

Email: ntraub2@gmail.com

June 13, 2016

Scott Tiedemann
Managing Partner
Liebert Cassidy Whitmore
6033 W. Century Blvd., 5th Floor
Los Angeles, CA 90045-6415

Christi Hogin
Jenkins & Hogin
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, CA 90266

RE: Summary of Palos Verdes Estates PD Administrative Investigation

Scott and Christi:

As you know, on May 5, 2016, Liebert Cassidy Whitmore retained my services on behalf of the City of Palos Verdes Estates ("City") to investigate whether any City employee compromised a police investigation into potential criminal activity by the so-called "Lunada Bay Boys" by releasing confidential information concerning a planned undercover operation at Lunada Bay.

I reviewed media coverage of the ongoing concerns at Lunada Bay so as to familiarize myself with the problems occurring at that location, and on May 10, 2016, conducted in-person interviews with City Manager Tony Dahlerbruch and Police Chief Jeff Kepley. Both interviews were recorded and subsequently transcribed.

The following is a brief synopsis of the interviews and my limited investigation to date.

Mr. Dahlerbruch told me that about a week prior to when the sting operation was scheduled to take place at Lunada Bay, Chief Kepley informed him of the planned operation; however, at the time he was not told of the actual date (February 13, 2016). Mr. Dahlerbruch said he was supportive of the planned sting operation and assured me that he did not tell any of the city council

Scott Tiedemann and Christi Hogin
Summary of Palos Verdes Estates PD Administrative Investigation
June 13, 2016
Page 2

members, his administrative assistant, or anyone else about the upcoming event.

Mr. Dahlerbruch told me that on February 5, 2016, he and the city council members received an e-mail from local resident Charlie Mowat.  Mr. Dahlerbruch said this was the first occasion wherein he has had any communication/contact with Mr. Mowat, but the contents of the e-mail suggested that Mr. Mowat frequented Lunada Bay.  Mr. Dahlerbruch told me that Mr. Mowat's e-mail was critical of Chief Kepley's efforts and what Mr. Mowat viewed as an inappropriate use of police resources at Lunada Bay.  Mr. Dahlerbruch told me that Mr. Mowat further stated in the e-mail that he does not support sting operations; however, he made specific reference to being aware that such an operation was scheduled to occur soon.

In reviewing the referenced e-mail, I pointed out to Mr. Dahlerbruch that I was unable to locate any reference to a sting operation, which he subsequently conceded to be the case.

However, Mr. Dahlerbruch then told me of a chance encounter he had with Mr. Mowat on February 11, 2016, at the stone patio at Lunada Bay.  Mr. Dahlerbruch said City Councilmen James Goodhart and John Rea had accompanied him down to the shoreline and the three of them were introducing themselves to the people present.  Mr. Dahlerbruch said when he introduced himself to Mr. Mowat, Mr. Mowat referred to having sent Mr. Dahlerbruch the February 5, 2016, e-mail noted above.

Mr. Dahlerbruch told me that Mr. Mowat did not allege he was aware of the upcoming sting operation.  However, Mr. Dahlerbruch told me, "I think it came up in the course of the conversation, his not supporting doing something like that."  When asked if the phrase "sting operation" was mentioned, Mr. Dahlerbruch told me he does not know.  (Note: I later sent an e-mail to Mr. Mowat asking that he contact me at his earliest convenience.  To date, he has not responded.)

Mr. Dahlerbruch then provided me with a series of e-mails he exchanged with local resident Michael Thiel between January 27, 2016 and February 8, 2016. I noted that none of the communications make any reference to a sting operation.  However, I saw that Mr. Thiel complained of seeing a uniformed officer parked all day on January 22, 2016, in an unmarked vehicle on the bluff at Lunada Bay.

CITY7088

Scott Tiedemann and Christi Hogin
Summary of Palos Verdes Estates PD Administrative Investigation
June 13, 2016
Page 3

Mr. Dahlerbruch told me that on February 12, 2016, Mr. Thiel came to an arranged meeting in his office and Mr. Thiel further elaborated on his belief that Chief Kepley was inappropriately utilizing police resources at Lunada Bay. Mr. Dahlerbruch told me, "I don't know how it came up, but in the course of the conversation he brought up that he was aware that the next day, and again I didn't even know it was gonna be the next day, but the next day that there was gonna be a sting operation." Upon further discussion, Mr. Dahlerbruch told me that Mr. Thiel said something like, "I hope tomorrow isn't the sting…better not be doing this tomorrow."

Mr. Dahlerbruch told me that he pretended to be surprised and told Mr. Thiel he was not aware of any such operation. Mr. Dahlerbruch told me that Mr. Thiel did not elaborate on what he meant by a sting operation, nor did he ask Mr. Thiel for more specific information.

Mr. Dahlerbruch told me that upon concluding his meeting with Mr. Thiel, he called Chief Kepley. Mr. Dahlerbruch said he informed Chief Kepley of the meeting with Mr. Thiel, and that based on their conversation, Mr. Thiel "seems to know that there's a sting operation and he thinks it's tomorrow."

Mr. Dahlerbruch told me that he has no idea who might have divulged the information about the planned sting operation. Mr. Dahlerbruch told me that he has heard Chief Kepley being interviewed on the radio and has seen written media coverage of interviews with Chief Kepley; however, he has never heard nor seen Chief Kepley make any reference to the planned sting operation.

I, too, was unable to find any reference by Chief Kepley to a sting operation in the articles I located and reviewed. I located a March 4, 2016, e-mail sent to Chief Kepley by an El Segundo police officer who surfs at Lunada Bay. I saw that the officer referred to an offer allegedly made in about 2002 by off-duty officers from surrounding communities to "paddle out on-duty undercover." However, this e-mail is after the fact.

However, I located a February 12, 2016, *Los Angeles Times* article titled, "Bad Boys surfer gang cannot block access to upscale beach, Coastal Commission says." I noted that in the article reporter Garrett Therolf refers to a letter (date not provided) that California Coastal Commission Enforcement Officer Jordan Sanchez directed to "Palos Verdes Estates officials." I saw that Mr. Sanchez is quoted as saying, "We are not in the position to do a sting operation like the

CITY7089

Scott Tiedemann and Christi Hogin
Summary of Palos Verdes Estates PD Administrative Investigation
June 13, 2016
Page 4

police or tear down structures like a building and safety department." The reporter does not elaborate on this issue nor provide any further clarification from Mr. Sanchez. In context, it appears that Mr. Sanchez was referring to the police department's authority to conduct sting operations in general; however, absent interviewing Mr. Sanchez, I do not know if he had knowledge of the operation planned for the following day. Although conjecture, it is possible that someone who read this article on February 12, 2016, interpreted it to say the police department was going to conduct a sting operation.

Although authored by Chief Kepley about seven months prior to the date of the planned sting operation, I saw a July 17, 2015, e-mail he sent to Mr. Dahlerbruch, Velez, Best, and the city council members listing proposed future strategies to respond to the Lunada Bay issue. Chief Kepley did not utilize the term sting operation in the communication; however, the language he used is synonymous with that term. Chief Kepley wrote, "A surveillance operation is planned for the peak of the surfing season (Nov-Feb) as there is little surfing activity there now" and "Mutual aide *(sic)* officers (outside agencies) may be deployed on surf boards during peak season..."

I found that on July 17, 2015, Chief Kepley was interviewed on the radio talk program *Air Talk* regarding the alleged localism issue at Lunada Bay. Chief Kepley told the host, "We have conducted surveillance operations in the past including putting officers out on surfboards." However, Chief Kepley did not indicate that any such undercover operation was planned for the future (as he did in the above-referenced e-mail), nor did he or the talk show host ever use the term "sting operation."

Chief Kepley told me that shortly after he was hired as chief of police he learned of a long history of alleged "bullying and hazing" of out-of-town surfers at Lunada Bay by local surfers, often referred to as the "Bay Boys." Kepley said there is a masonry stone patio located on the public coastline; however, this structure is widely viewed as being owned or controlled by the Bay Boys.

Chief Kepley described the situation as a "sore spot for many years," which drew increased media coverage (in May 2015) after the *Guardian Media Group* conducted a video-recorded quasi undercover operation at Lunada Bay and thereafter surreptitiously recorded a non-professional comment from a department dispatcher regarding the issues at Lunada Bay. Kepley told me:

CITY7090

Scott Tiedemann and Christi Hogin
Summary of Palos Verdes Estates PD Administrative Investigation
June 13, 2016
Page 5

> The allegations are that those Bay Boys um, intimidate others from coming down there, and that the police department knows about it, condones it, and supports them.  So that was my mission.  To convey to the community that we do not support or condone that unlawful behavior…we have been doing a lot down there to proactive police it and become visible and to attend to the issues down there.  But the one component that was missing was to really get a good sense of what's going on.

Therefore, Chief Kepley said in November or December 2015 he asked Captain Mark Velez to organize a sting operation to see if they could find "evidence of dissuasion" similar to that as previously reported by the *Guardian Media Group*.  Kepley said:

> He wasn't quick to respond to that and over the next month or two I, I would you know, ask him again, and I think he was having difficulty organizing that.  So I, I know you're gonna talk to him about that.  So ultimately I, wanting to further this goal, I went to uh, the LA chief's (January 2016) meeting and I kinda, in a roundtable with all the LA chiefs said, 'Hey, here's my situation.  I need to put a sting operation together, I need some help.'

Referring to a January 21, 2016, e-mail from Santa Monica Police Department (SMPD) Chief Jackie Seabrooks, Kepley told me that following the above-referenced meeting, she offered the assistance of some of her officers to participate in a sting operation.

It is important to note that Chief Seabrooks' e-mail states, "We have as many as five people who are potentially interested; however, more information is needed as to the scope of work, hours, expectations, etc.…"  To date I have not spoken to Chief Seabrooks to determine how the potential participants were identified.  However, given my law enforcement experience, it is likely that these officers responded to a memorandum posted in the department, discussions in briefings, or similar efforts to solicit volunteers for this operation.  Regardless, it is reasonable to assume that many, if not all, SMPD employees were thus aware of the planned sting operation.

Chief Kepley said on January 22, 2016, he forwarded Chief Seabrooks' e-mail to Captain Mark Velez.  I noted that in that same communication Chief Kepley told Captain Velez, "Sounds like Redondo Chief and Hermosa PD has some

CITY7091

Scott Tiedemann and Christi Hogin
Summary of Palos Verdes Estates PD Administrative Investigation
June 13, 2016
Page 6

interest in helping too." Given Chief Kepley's comments at the Los Angeles County Police Chief's Association meeting, coupled with the resulting in-house communications at SMPD and perhaps other departments, suffice it to say that likely hundreds of individuals were aware of the pending sting operation and could have purposely or inadvertently divulged this information to others.

Chief Kepley told me that on January 25, 2016, Captain Velez notified him by e-mail that he had spoken to SMPD staff and was in the process of developing a written operations plan for a sting operation for the morning of Saturday, February 13, 2016. Via Chief Kepley, I determined that the Los Angeles County District Attorney's office was also consulted in advance of the sting operation; therefore, adding to the extensive list of individuals who had knowledge of this undercover operation.

Chief Kepley told me that he informed Mr. Dahlerbruch of the planned sting operation; however, to the best of his recollection, Chief Kepley said he did not tell anyone else other than his other captain, Tony Best. However, Chief Kepley said he believes Captain Velez briefed the sergeant, officers and dispatchers who would be on duty on February 13, 2016, as well as additional officers who were scheduled to work overtime as support staff. Chief Kepley did not have the names of these employees, but told me Captain Velez should be able to provide that information. Chief Kepley told me that from his perspective, Dahlerbruch, Velez and Best were supportive of the planned sting operation and he has no reason to suspect that any of the three compromised the sting operation.

Chief Kepley told me that on Friday, February 12, 2016 (the day prior to the planned sting operation), he received a telephone call from Mr. Dahlerbruch informing him that the operation had been compromised. Chief Kepley said Mr. Dahlerbruch told him that he had just received a phone call from one of the Bay Boys who said the Bay Boys were aware of the sting operation planned for the following day. Chief Kepley said he does not recall if Mr. Dahlerbruch identified the caller by name, but recalls Mr. Dahlerbruch telling him that the caller was not pleased with the planned sting operation. Chief Kepley said it was his impression that the caller considered himself a target of the operation.

Given that it appeared as if someone had divulged the planned sting operation, Kepley said he directed his captains to cancel the operation for "officer safety reasons." When asked if he knows who leaked the information about the sting operation, Kepley told me, "No, I know of no one outside the department that I

CITY7092

Scott Tiedemann and Christi Hogin
Summary of Palos Verdes Estates PD Administrative Investigation
June 13, 2016
Page 7

suspect leaked information to the Bay Boys, nor do I know anybody inside the department.  I don't know who communicated, or, or leaked this information."

Chief Kepley told me that he does not have any "strong suspicions" as to who might be responsible, but pointed out that PVEPD is a small department with many long-tenured officers who police this small community.  Chief Kepley told me, "I would like to think it's only a handful of those officers that are um, senior enough that could be in the position to have a long-standing working relationship with the residents that are also known as Bay Boys."  As an example, Chief Kepley mentioned Sergeant Steve Barber and Officer Ken Ackert as long-term employees who might interface with some of the Bay Boys.  However, Kepley said, "I don't suspect anyone in particular for releasing information, I just, I'm trying to identify long-term employees here."

Absent any evidence as to who was responsible, Chief Kepley said at the time he opted not to initiate an administrative investigation.  However, Chief Kepley said he addressed this issue at a February 2016 supervisory staff meeting and voiced his disappointment over the sting operation having been compromised.

After concluding the interview, Chief Kepley told me that he recalled something that might be of value.  Chief Kepley told me that somewhat recently he thinks Captain Best told him of a post-incident conversation that took place between Detective Sergeant Luke Hellinga and other detectives wherein they were theorizing who might be responsible for leaking the information about the sting operation.  Chief Kepley said in the course of the discussion they recalled that Property Clerk Jaylin Albao, who has an office in the detective bureau, was present during pre-incident planning discussions.

Chief Kepley said Albao is a trusted employee; however, Sergeant Hellinga brought up an alleged relationship between Albao and former Palos Verdes Estates PD Officer Rick Delmont.  Chief Kepley said Delmont separated his employment from the police department in 2015 and "may be not held in high regard by some employed here."  Chief Kepley said:

> According to Luke, for those who know Rick had a close relationship with the Bay Boys.  And it's just a theory I think maybe Luke was thinking of that's worthy of investigating that, you know, perhaps Jaylin overheard something that either intentionally or accidentally conveyed it to Rick Delmont, and then he somehow maybe leaked out to a Bay Boy."

CITY7093

Scott Tiedemann and Christi Hogin
Summary of Palos Verdes Estates PD Administrative Investigation
June 13, 2016
Page 8

However, it is important to note that Chief Kepley was not told, nor is he personally aware of any evidence suggesting that Albao and/or Delmont were responsible for compromising the sting operation.

On May 12, 2016, I spoke to Mr. Thiel on the telephone in an effort to schedule an in-person interview with him. Mr. Thiel was polite, but was very reluctant to speak with me. I took a few minutes to explain who I was, my background, and to assure him that he was being contacted merely as a potential witness regarding a City administrative matter. Judging from his apprehensive responses, it was apparent to me that this might be the only opportunity to ask Mr. Thiel about the matter of concern. Therefore, I asked Mr. Thiel if he met with Mr. Dahlerbruch on or about February 12, 2016, at Dahlerbruch's office. Thiel acknowledged the meeting and told me that he voiced his concerns about the manner in which Chief Kepley was allocating police department resources at Lunada Bay instead of deploying those resources to address burglaries and other crime issues within the city.

Thiel pointed out that his conversation with Mr. Dahlerbruch took place several months ago, but told me he does not recall mentioning a sting operation or using the word sting during the discussion. Mr. Thiel told me that no one had informed him of a sting operation; therefore, there would have been no reason for him to ask about any such operation. Mr. Thiel did not ask me if a sting operation had in fact been planned, nor did I share this information with him.

The previously referenced *Los Angeles Times*' article is noted to have been available online at 9:37 a.m. on February 12, 2016, and Mr. Thiel and Mr. Dahlerbruch met later that day at 2:00 p.m. With this in mind, I asked Mr. Thiel if he had read a *Los Angeles Times*' article that addressed the situation at Lunada Bay and in any manner alluded to a sting operation. Mr. Thiel told me that he does not read the *Los Angeles Times,* and did not read or view any news media coverage suggesting a sting operation was going to take place at Lunada Bay.

On May 13, 2016, I briefed Mr. Tiedemann on the status of the investigation and he asked that I postpone any further interviews/investigation until he was able to brief and consult with Ms. Hogin.

On June 8, 2016, Mr. Tiedemann contacted me and asked that I provide him and Ms. Hogin with a written summary of the investigation completed thus far.

CITY7094

Scott Tiedemann and Christi Hogin
Summary of Palos Verdes Estates PD Administrative Investigation
June 13, 2016
Page 9

## **Recommendation**

Given the information obtained to date, it is apparent that there are likely hundreds of individuals who had knowledge of the planned sting operation and any one of them could be responsible for intentionally or inadvertently sharing the information with others. Although current and/or former Palos Verdes Estates PD employees cannot be ruled out, the investigation thus far has not identified any evidence to suggest any of these individuals are responsible for compromising the sting operation.

Initially it appeared as if Mr. Thiel would be the best witness, so to speak, and would hopefully identify who informed him of the sting operation. However, given that Mr. Thiel said he does not recall the conversation as referenced by Mr. Dahlerbruch, the responsible party remains unknown.

Further, Mr. Dahlerbruch's recollection of exactly what Mr. Thiel said to him leaves open the possibility that he might have misinterpreted what Mr. Thiel said. As previously noted, Mr. Dahlerbruch told me that he does not recall how the conversation came up, but said his best recollection is that Mr. Thiel said, "I hope tomorrow isn't the sting…better not be doing this tomorrow." If someone had informed Mr. Thiel of the planned operation, one would think that he would have postured his comment in a confident, verses inquisitive, manner.

Mr. Thiel was very outspoken about his displeasure with Chief Kepley's allocation of department resources and did not come across as someone who would be reluctant to acknowledge the alleged remark if he in fact had made it. However, based on a short phone interview with Mr. Thiel, I do not feel that I can speak to his credibility. It is also possible that Thiel feigned a lack of recall rather than being placed in a position to identify the individual who informed him of the sting operation.

Further, beyond those individuals it was intended for, I do not know how many other people ultimately ended up viewing or being told of Chief Kepley's July 17, 2015, e-mail. While the e-mail is dated, it is certainly possible that this communication was a factor in the comment Thiel made to Dahlerbruch on February 12, 2016.

CITY7095

Scott Tiedemann and Christi Hogin
Summary of Palos Verdes Estates PD Administrative Investigation
June 13, 2016
Page 10

While additional interviews could be conducted, it is highly unlikely that anyone is going to accept responsibility for compromising the sting operation, particularly in the absence of any supporting evidence. Therefore, it would be my recommendation that no further investigation be undertaken at this time.

Respectfully submitted,

Ed McErlain (CA P.I. License #22898)
Associate/Investigator
Norman A. Traub Associates