HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
LISA M. POOLEY, SBN 168737
lpooley@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:    (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:   (916) 442-3333
Facsimile:    (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone:   (310) 378-8533
Facsimile:    (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>Plaintiffs, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**PLAINTIFFS' OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Judge:  Hon. Hon. S. James Otero<br>Date:    September 5, 2017<br>Time:    10:00 am<br>Crtrm.: 10C |

Case No. 2:16-cv-02129-SJO (RAOx)

13675145.11        PLTFS.' OPP'N TO INDIVIDUAL DEFS.' MOTS. FOR SUMM. J.

1

2          v.

3    LUNADA BAY BOYS; THE                    Complaint Filed:    March 29, 2016
     INDIVIDUAL MEMBERS OF THE               Trial Date:         November 7, 2017
4    LUNADA BAY BOYS, including but
5    not limited to SANG LEE, BRANT
     BLAKEMAN, ALAN JOHNSTON
6    AKA JALIAN JOHNSTON,
7    MICHAEL RAE PAPAYANS,
     ANGELO FERRARA, FRANK
8    FERRARA, CHARLIE FERRARA,
9    and N. F.; CITY OF PALOS VERDES
     ESTATES; CHIEF OF POLICE JEFF
10   KEPLEY, in his representative
11   capacity; and DOES 1-10,

12              Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................... 1

II.   STANDARD ............................................................................ 3

III.  STATEMENT OF FACTS ...................................................... 3

    A.    Lunada Bay Is A "Priceless" Beach And "World Class" Wave Reserved For The People of California—Not Just The Locals. ............ 3

    B.    The Bay Boys Have A Decades-Long History Of Excluding "Outsiders" From Lunada Bay Through Harassment, Intimidation, And Worse ........................................................ 3

    C.    The Bay Boys' More Recent History, Including Through The Individual Defendants, Has Continued The Exclusion Of "Outsiders" From Lunada Bay Through Harassment, Intimidation, And Worse ........................................................ 4

    D.    The Bay Boys Act In Concert, Including Through The Individual Defendants—Encouraging, Facilitating, And Coordinating The Harassment And Intimidation of "Outsiders" Who Try To Visit Or Surf At Lunada Bay. ........................................... 6

    E.    The Individual Defendants Worked Together As Part Of The Bay Boys To Harass, Intimidate, And Commit Torts Against Plaintiffs Spencer And Reed To Exclude Them From Lunada Bay. ................................................................................ 7

    F.    Defendants' Discussions Of The Evidence Are Incomplete At Best. .................................................................................... 9

IV.   ARGUMENT ......................................................................... 10

    A.    There Is Sufficient Evidence To Find That Each Individual Defendant Is Liable Under Civil Conspiracy, Or At a Minimum, There Is A Genuine Issue Of Material Fact That Should Go To The Jury. .............................................................................. 10

    B.    There Is Sufficient Evidence To Find That Each Individual Defendant Is Liable For Public Nuisance, Or At a Minimum, There Is A Genuine Issue Of Material Fact That Should Go To The Jury. .............................................................................. 13

        1.    Each Of The Individual Defendants' Conduct Contributes To Or Causes The Public Nuisance At Luanda Bay. ................. 14

        2.    Plaintiffs Have Standing to Abate This Public Nuisance. .......... 14

    C.    There Is Sufficient Evidence To Find That Each Individual Defendant Is Liable For Violations Of The Bane Act, Or At a Minimum, There Is A Genuine Issue Of Material Fact That

|  |  | Should Go To The Jury. | 15 |
| D. |  | There Is Sufficient Evidence To Find That Each Individual Defendant Is Liable For Assault And Battery, Or At a Minimum, There Is A Genuine Issue Of Material Fact That Should Go To The Jury. | 17 |
| E. |  | Plaintiffs Already Offered To Dismiss The Negligence Claim. | 18 |
| F. |  | Plaintiff Coastal Protection Rangers Has Standing. | 18 |
| G. |  | With The Evidence That The Individual Defendants Intentionally Destroyed Material Evidence, An Adverse Inference Must Be Drawn In Plaintiffs' Favor—Generating At A Minimum Additional Disputes Of Material Fact. | 19 |
| V. | CONCLUSION | | 20 |

13675145.11

PLTFS.' OPP'N TO INDIVIDUAL DEFS.' MOTS. FOR SUMM. J.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................. 3

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med Bd.*,
  627 F.3d 547 (5th Cir. 2010) ................................................................... 18

*Assoc. Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*,
  159 F.3d 1178 (9th Cir. 1998) ................................................................. 18

*Austin v. Terhune*,
  367 F.3d 1167 (9th Cir. 2004) ................................................................. 17

*In re B.L.*,
  239 Cal. App. 4th 1491 (Ct. App. 2015) ................................................ 17

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
  243 F.3d 93 (2nd Cir. 2001) .................................................................... 19

*Carlsen v. Koivumaki*,
  227 Cal. App. 4th 879 (Ct. App. 2014) .................................................. 17

*Coppola v. Smith*,
  935 F.Supp.2d 993 (E.D. Cal. 2013) ...................................................... 14

*Cornwell v. Electra Central Credit Union*,
  439 F.3d 1018 (9th Cir. 2006) ................................................................... 3

*Favila v. Katten Muchin Rosenman, LLP*,
  188 Cal. App. 4th 189 (Ct. App. 2010) .................................................. 10

*People ex rel. Gallo v. Acuna*,
  14 Cal. 4th 1090 (Cal. 1997) ............................................................ 13, 14

*Gilbrook v. City of Westminster*,
  177 F.3d 839 ............................................................................... 10, 12, 13

*Jones v. Kmart Corp.*,
  17 Cal.4th 329 (1998) ....................................................................... 15, 16

13675145.11

*Keum v. Virgin Am. Inc.*,
   781 F. Supp. 2d 944 (N.D. Cal. 2011)...................................................................17

*Kidron v. Movie Acquisition Corp.*,
   40 Cal.App.4th 1571 (Cal. 1995) .........................................................................10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................3

*Medical Lab Mgmt. Consultants v. American Broadcasting Cos., Inc.*,
   306 F.3d 806 (9th Cir. 2002) ...............................................................................19

*Melton v. Boustred*,
   183 Cal.App.4th 521 (Ct. App. 2010) ..................................................................14

*Mount Vernon Fire Insurance Co. v. Oxnard Hospitality Enterprise, Inc.*,
   219 Cal. App. 4th 876 (Ct. App. 2013) ...........................................................17, 18

*Muhammad v. Garrett*,
   66 F. Supp. 3d 1287 (E.D. Cal. 2014) ..................................................................16

*Navarette v. Meyer*,
   237 Cal. App. 4th 1276 (Ct. App. 2015) ..............................................................13

*Novartis Vaccines and Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
   143 Cal.App.4th 1284 (Ct. App. 2006) ...........................................................10, 11

*O'Toole v. Superior Court*,
   140 Cal. App. 4th 488 (Ct. App. 2006) ................................................................16

*People v. Colantuono*,
   7 Cal. 4th 206 (Cal. 1994) ....................................................................................17

*Project Inform v. Swindell*,
   Case Nos. A094099, A096376, 2002 WL 31677174 (S.F. Super. Nov. 27, 2002).....................................................................................................11

*Prop. Owner of Whispering Palms, Inc. v. Newport Pac., Inc.*,
   12 Cal. App. 4th 666 (Ct. App. 2005) ..................................................................18

*Ragin v. MacKlow Real Estate Co.*,
   6 F.3d 898 (2nd Cir. 1993) ...................................................................................19

*Richardson v. City of Antioch*,
   722 F. Supp. 2d 1133 (N.D. Cal. 2010)...................................................................16

*Scarff v. Wells Fargo Bank, N.A.*,
   Case No. C03-03394, 2005 WL 3454136 (N.D. Cal. Dec. 16, 2005) .................13

*Sebastian Int'l, Inc. v. Russolillo*,
   162 F. Supp. 2d 1198 (C.D. Cal. 2001).............................................................10, 12

*Shoyoye v. County of L.A.*,
   203 Cal. App. 4th 947 (Ct. App. 2012) ..................................................................15

*Smith v. Pac. Props. & Dev. Corp.*,
   358 F.3d 1097 (9th Cir. 2004) ................................................................................18

*Tennison v. City and County of San Francisco*,
   Case No. 04-0574, 2006 WL 733470 (N.D. Cal. 2006)..........................................19

*U.S. v. Iriarte-Ortega*,
   113 F. 3d 1022 (9th Cir. 1997) ...............................................................................10

*Venegas v. County of Los Angeles*,
   32 Cal.4th 820 (Cal. 2004) .....................................................................................16

*Venuto v. Owens-Corning Fiberglas Corp.*,
   22 Cal. App. 3d 116 (Ct. App. 1971) .....................................................................15

*Waters v. Kohl's Department Stores, Inc.*,
   Case No. 14-cv-00043, 2015 WL 124618 (N.D. Cal., 2015)..................................19

*Wyatt v. Union Mortgage Co.*,
   24 Cal.3d 773 (Cal. 1979) ......................................................................................11

**Statutes**

CAL. CIV. CODE
   § 52.1(a)-(b)......................................................................................................15, 16
   § 3480 .....................................................................................................................14
   §§ 3493-3494 ..........................................................................................................15

CAL. CIVIL CODE § 3479....................................................................................................14

CAL. PUB. RESOURCES CODE § 30001.5.............................................................................16

**Other Authorities**

FED. R. CIV. P. 37(e) ............................................................................... 19

PALOS VERDES ESTATES CODE § 12.24.100 ............................................. 14

13675145.11

# I.   INTRODUCTION

1
2      The Individual Defendants' motions for summary judgment make it clear:
3  they would like to recast their behavior with Plaintiffs as isolated incidents to be
4  considered in a vacuum, with no reference to greater context, history, motive, or
5  coordination.  They omit material facts and evidence; they assert that disputed facts
6  should be deemed undisputed because only their witnesses should be believed; they
7  insist a victim cannot be a victim based on their interpretation of her facial
8  expressions.  In short, the same impunity with which the Bay Boys have operated
9  for so long has led Defendants to try to take from the jury the job of weighing
10  credibility of witnesses and drawing inferences from facts and circumstances.

11      For decades, with help from the City, the Bay Boys have stolen Lunada Bay
12  from the public by implementing the rules—the "terms of engagement"—that their
13  older members established.  Their plan was started by the Bay Boys forefathers like
14  Defendants Frank and Angelo Ferrara—and continues today through current-day
15  enforcers like Defendants Brant Blakeman, Alan Johnston, Sang Lee, Michael
16  Papayans, and Charlie Ferrara.  For the Bay Boys, the end—having a priceless
17  location to themselves—justifies the means: unlawful bullying, threats, assault,
18  battery, property damage, and racial and other forms of bigotry.

19  **Peter McCollum, July 1991**—"It's not just a barbaric thing, it is done for a
20  purpose." "The crowds are so intense these days, you can't have your own
    little sanctuary. But we do." (RJN ISO Opp. CITY MSJ, EX. A [Docket No.
21  303].)

22  **Frank Ferrara, December 1991**—"Look what happened to Malibu, Trestles,
    Rincon; there's five or six guys on every wave.  The guy's [sic] who surf out
23  in Palos Verdes area – guys who've been there 20 years – they've seen what
    happens.  One guy comes and surfs it, and the he brings two or three guys,
24  and they bring three or four of their friends and it snowballs and gets out of
    hand.  That's exactly why we protect it…." "I am a protector of Palos Verdes.
25  It's also protected by the pirates that surf there.  That's why there are no
    kooks…" (PAMF 31.)

26  **Peter McCollum,  May 1995**—"We protected this beach for years. This is
    why. So we can have driftwood on the beach rather than Kentucky Fried
27  Chicken boxes.  If the beach opened up it would be packed with low
    riders….the rocks would be marked with graffiti." "How many guys are at
28  Malibu right now, huh? How many [expletive] guys are at Malibu? Did you

PLTFS.' OPP'N TO INDIVIDUAL DEFS.' MOTS. FOR SUMM. J.

13675145.11

ever notice we've done a good thing here, haven't we? It's pretty nice and pretty, huh? It's beautiful…."  Noticed Errata to Franklin Decl. ISO Opp. City MSJ ¶ 1 attaching revised declaration and revised EX 16  [Docket No. 314] (RJN ISO Opp. CITY MSJ, EX. B [Docket No. 303-1].)

**Sang Lee, January 2011**—"i[sic] am who i[sic] am (with the terms of being a solid person, friend n a pirate) because I was brought up this way by u guys (the older boys)…u guys made up the rules n terms of engagement n I WILL DIE BY THESE RULES…what we have in our backyard is priceless n u cant put a price on it…I want to keep this place sacred like its [sic] supposed to be…this place is not just a surf spot… its [sic] our home n I am not going to share it …." (PAMF 29.)

**Charlie Ferrara, March 2016** —"You're going to come here when the surfs good everywhere else and get burned and have a bad day? That's cuz that's, you know, that's what we're just gonna keep on burning them and make them have a bad session because we are gonna stick together like a pack. We are family….that's why now we're not, you know, doing stuff, and now we're just burning people." (PAMF 25, 35.)

**Sang Lee, June 2017**—"[E]verything would get destroyed" and it would "ruin everything" if outsiders were allowed to surf at Lunada Bay. (PAMF 33.)

And with decades to perfect it, the Bay Boys' well-designed plan has worked.

**Sang Lee, May 2015**—"[T]he reason there's a lot of space is because we keep it like that, we fucking hassle people…we'll burn you every single wave…there are still fights down here. People will just fucking duke it out." (PAMF 69.)

Indeed, even though it is surrounded by urban Los Angeles—and world class in beauty—outsiders stay away from Lunada Bay in comparison to other coastal areas. (PAMF 12, 24; PAMF ISO Opp. City MSJ 167 to 173 [Docket No. 323].) Nevertheless, there is a flaw in the Bay Boys' decades-perfected plan: (1) their actions violate the California Constitution, the sovereign tide and submerged lands grant of 1963, coastal access law, municipal ordinances, and the penal code (PAMF 2; PAMF ISO Opp. City MSJ 108 [Docket No. 323]); and (2) with smart phones with cameras and social media support, Plaintiffs Spencer, Reed, CPR and others have lawfully challenged the bullies. Since bravery alone is not enough, the Plaintiffs now come to this Court seeking help—injunctive relief and appropriate damages to discourage future wrongful conduct.

Plaintiffs offer evidence sufficient to establish their claims on public

1  nuisance, the Bane Act, assault and battery and under conspiracy—or at a minimum
2  establish genuine disputes of material fact that should go the jury. Plaintiffs ask the
3  Court to deny each of the Individual Defendant's motions in their entirety.

4  ## II.   STANDARD

5  In opposing summary judgment, Plaintiffs need only show specific facts that
6  present a genuine issue worthy of trial. *Lujan v. Defenders of Wildlife*, 504 U.S. 555
7  (1992).  The Court must view Plaintiffs' evidence in the most favorable light and
8  draw all justifiable inferences in Plaintiffs' favor. *Anderson v. Liberty Lobby, Inc*.,
9  477 U.S. 242, 255 (1986).  Indeed, circumstantial evidence alone may create a
10  genuine issue of material fact to defeat summary judgment. *Cornwell v. Electra*
11  *Central Credit Union*, 439 F.3d 1018, 1029-1030 (9th Cir. 2006).

12  ## III.   STATEMENT OF FACTS

13  As demonstrated in Plaintiffs' Statements of Genuine Disputes of Material
14  Fact and Plaintiffs' Additional Material Facts ("PAMF"), filed herewith, many of
15  the Defendants' purportedly "undisputed" facts are disputed; and Defendants fail to
16  mention significant facts and evidence of which they are well aware.

17  **A.   Lunada Bay Is A "Priceless" Beach And "World Class" Wave Reserved**
18  **For The People of California—Not Just The Locals.**

19  Palos Verdes Estates Shoreline Preserve and specifically Lunada Bay
20  constitute an asset of priceless value—and exceptional and dramatic beauty.
21  (PAMF 1.)  Lunada Bay is also a world class wave.  (*Id*.)  The State of California
22  granted Lunada Bay and the rest of the Palos Verdes Estates Shoreline Preserve in
23  trust to the City, but it is reserved for the people of California.  (PAMF 2; PAMF
24  ISO Opp. City MSJ 108 [Docket No. 323].)

25  **B.   The Bay Boys Have A Decades-Long History Of Excluding "Outsiders"**
26  **From Lunada Bay Through Harassment, Intimidation, And Worse.**

27  The Bay Boys have long acted to obstruct the public's free access to Lunada
28  Bay.  (PAMF 35; PAMF ISO Opp. City MSJ 167 to 173 [Docket No. 323])

13675145.11

Defendant Police Chief Kepley acknowledges that localism is a problem at Lunada Bay and that "[he] had heard people from the community and staff members, and all, tell me that there have been conflicts and issues in the surfing culture for many, many years, as many as 50 years or more." (PAMF 24, 34, 66, 68.) News reports and other accounts going back to at least as early as the 1990s indicate that "outsiders" who try to surf in Lunada Bay face verbal threats, rocks thrown at them, vandalism to their cars, and even violence. (PAMF 35.) In 2002, *Surfing Magazine* named Lunada Bay one of five surfing Meccas to avoid. (RJN ISO Opp. Individual Defs.' Mots., Ex. A.) In 2010, LASurfSpots.com ranked Lunada Bay #1 in its list of the top five places in Los Angeles to get "punched out in the surf." (*Id.*) The Bay Boys cultivate this reputation openly and intentionally: a Bay Boy is quoted in one article describing "the law of Lunada Bay" as "If you don't live here, don't surf here. Not if you know what's good for you." (*Id.*)

Past general localism, the Bay Boys have openly called out their desire to exclude racial minorities. As one Bay Boy explained to the *Los Angeles Times*, "We protected this beach for years.  This is why.  So we can have driftwood on the beach rather than Kentucky Fried Chicken boxes.  If the beach opened up it would be packed with low riders . . . the rocks would be marked with graffiti." (PAMF ISO Opp. City MSJ 152 [Docket No. 323].)

**C.  The Bay Boys' More Recent History, Including Through The Individual Defendants, Has Continued The Exclusion Of "Outsiders" From Lunada Bay Through Harassment, Intimidation, And Worse.**

The Individual Defendants are members of the Bay Boys. (PAMF 24-88.) They think of themselves and act as a close-knit group, referring to the Bay Boys as a "fraternity," "brotherhood," and "family." (PAMF 25.)  And they continue the Bay Boys' decades-long unity of purpose and common design to exclude the general public, particularly "outsiders" or "non-locals" (whom they call "kooks"—and much worse names), from visiting or surfing at Lunada Bay. (PAMF 35, 39, 40, 50, 52, 54, 56, 58, 60, 62, 72.)  This purpose is well-known. A police dispatcher stated, "We

1 know all of them. They're infamous around here. . . . They don't like anyone that's

2 not one of the Bay Boys surfing down there." (PMF ISO City MSJ 166 [Docket No.

3 323]; Franklin Decl., Ex. 37 [Docket No. 324].)

4      The ways in which the Bay Boys pursue this purpose are also well-known.

5 These are their "rules"—their "terms of engagement."  (PAMF 26, 29-32 34, 35, 77,

6 84, 87.)  The Bay Boys harass and intimidate "outsiders" who visit or try to surf at

7 Lunada Bay, from the moment they arrive, including by ensuring large numbers of

8 Bay Boys are present when visitors come, surrounding and blocking paths to the

9 shoreline, approaching visitors aggressively, calling visitors derogatory names like

10 "kook," "gook," and "fucking faggot," telling visitors they cannot or should not be

11 coming to Lunada Bay, heckling, starting or trying to start fights, throwing rocks at

12 visitors, vandalizing cars, circling surfers in the water so that they cannot catch

13 waves, and dangerously "dropping in" on or "burning" surfers.  (PAMF 35.)

14      Threats and coercion are their calling card. The evidence includes: a video

15 recording with recent and current Bay Boys saying: "If you come out here, you're

16 going to get a lot of shit."; "The reason there's a lot of space is because we keep it

17 like that. We fucking hassle people."; "People will just . . . duke it out, . . . work

18 your car and get in fights."; and "We'll burn you every single wave." (PAMF 69);

19 an audio recording of a Bay Boy describing how they are "not going to share"

20 Lunada Bay and have for many years discouraged "non-locals" from visiting or

21 surfing at Lunada Bay—" "What I can do is I can make sure you don't have fun out

22 there." (PAMF 36, 69, 75); and evidence of Bay Boys telling people they shouldn't

23 go in the water or "see what happens." (PAMF 35.)

24      As illustration, during the first Lunada Bay Martin Luther King, Jr. Day event

25 on January 20, 2014, with City police present, a native Hawaiian (and later CPR

26 volunteer) Christopher Taloa was approached by a Bay Boy wearing blackface and

27 an afro wig and told, "You don't pay enough taxes to be here."  (PAMF 35.)  When

28 Taloa attempted to surf Lunada Bay, he was asked:  "Who are the black guys on the

PLTFS.' OPP'N TO INDIVIDUAL DEFS.' MOTS. FOR SUMM. J.
13675145.11

1  cliff?"  (PAMF 35.)  And then he was told by Bay Boys that they owned the local

2  police and judges.  (*Id.*)  One of them told Taloa:  "I'm going to have you arrested

3  and have you f*@#&% in the ass by a black or Mexican in the holding cell."  (*Id.*)

4        Indeed, there is ample evidence that each of the Individual Defendants

5  subscribes to the Bay Boys' purpose and design—and participates in and facilitates

6  the Bay Boys' harassment and intimidation of outsiders.  (PAMF 24-87.)

7

8  **D.    The Bay Boys Act In Concert, Including Through The Individual**
   **Defendants—Encouraging, Facilitating, And Coordinating The**
   **Harassment And Intimidation of "Outsiders" Who Try To Visit Or Surf**

9  **At Lunada Bay.**

10       The Bay Boys perpetuate and enforce their rules and practices of harassing

11  and intimidating "outsiders." The evidence includes: a recording in which a Bay

12  Boy discusses that there is hazing and pressure to do things that are "uncalled for" to

13  prove that they belong (PAMF 36); text messages demanding participation, e.g., "If

14  you really want to be a Bay Boy, you'll show up" (PAMF 38, 39); and e-mails

15  stating, "I WILL DIE BY THESE RULES," and urging others who see outsiders,

16  "DON'T THINK TWICE N LETS TAKE BACK WHAT THEY R TAKING

17  FROM US," and "DO NOT FEEL GUILTY WHEN TAKING BACK WHAT WAS

18  OURS IN THE FIRST PLACE." (PAMF 36- 42.)

19       Moreover, the Bay Boys are organized, using e-mail, mobile phone calls, and

20  text messages to coordinate.  Bay Boys patrol Paseo Del Mar in their cars or trucks

21  while on their cell phones. (PAMF 30-63.)  Moments after they see a visitor along

22  the bluffs, additional gang members arrive as reinforcements.  (*Id.*)  Messages are

23  also relayed from Bay Boys at the top of the bluffs to those down below on the

24  shore regarding approaching visitors.  (PAMF 40.)  As one observer put it, "They

25  use walkie-talkies, they whistle, they have spotters, they delegate duties about who

26  does what. It was run like an organized gang."  (Pltfs.' RJN, Ex. C.)

27       The Bay Boys follow social media to keep watch for any attempts by

28  outsiders who try to organize surf outings to Lunada Bay.  (PAMF 38.)  Upon

13675145.11

PLTFS.' OPP'N TO INDIVIDUAL DEFS.' MOTS. FOR SUMM. J.

1   learning of any such outings, they use e-mail and text messages to ensure presence

2   in large numbers and harassment of the "outsiders."  (PAMF 36, 38, 75.)  For

3   example, upon learning of an event in which visitors planned to come to Lunada

4   Bay, Bay Boy Charlie Mowat responded to the others: "I will be on the patio

5   allllllllllll day on Monday throwing out heckles and sporting a BBQ.  I'm already

6   warming up.  Don't miss the fun."  (PAMF 38.)  With regard to other occasions,

7   Defendant Charlie Ferrara admitted, "I was calling people to get down here.  Get the

8   frick out.  We need people surfing," and Defendant Alan Johnston texted, "If u

9   really wanna be a bay boy we might meet [sic] your help tomm."  (PAMF 38.)

10   **E.    The Individual Defendants Worked Together As Part Of The Bay Boys
11          To Harass, Intimidate, And Commit Torts Against Plaintiffs Spencer
          And Reed To Exclude Them From Lunada Bay.**

12          Plaintiffs Spencer and Reed experienced the Bay Boys' systematic exclusion

13   firsthand—and under the Bay Boys mantra, Defendants made sure they had a bad

14   time at Lunada Bay.  Spencer is a police officer in El Segundo and an experienced

15   over-30 year-surfer, and Reed is a resident of Malibu who has been training to surf

16   big waves.  (PAMF 13, 19; PAMF ISO Opp. City MSJ 119, 126.)  Both had wanted

17   to surf at Lunada Bay but avoided it based on its reputation.  (PAMF 13, 19; PAMF

18   ISO Opp. City MSJ 119, 126.)  Both finally mustered the courage and came to

19   Lunada Bay on January 29, 2016.  (PAMF 13, 21, 22, 39, 42, 69, 70, 72.)

20          Spencer came as part of a small group with professional bodyboarder Chris

21   Taloa, who had been promoting a peaceful movement to open access to Lunada

22   Bay.  (PAMF 21.)  Whether the Bay Boys were tipped off about these visitors or just

23   found them in their patrols, they did what they do: they organized the Bay Boys en

24   masse.  On that January 29, 2016 date, Defendant Lee made a significant number of

25   phone calls to Bay Boys, including Charlie Mowat and David Melo.  (PAMF 42.)

26   In fact, during just one 30-minute timespan that day, Lee called Defendant

27   Blakeman at least **62 times**.  (*Id.*)

28          The Bay Boys started in on Spencer and his group as soon as they arrived at

Lunada Bay. Spencer was told, "why don't you fucking go home, you fucking kook." (PAMF 22.)  In the water, he was closely shadowed by Defendant Blakeman who impeded his movement in any direction and intentionally blocked him from catching any waves. (PAMF 69, 77.)  Another Bay Boy maneuvered his surfboard directly toward Spencer and ran him over, slicing Spencer's wrist. (PAMF 22.)  Blakeman and the Bay Boy who cut Spencer were communicating with each other and other Bay Boys stationed on the shore. (PAMF 22, 41.)  More and more Bay Boys arrived during Spencer's visit, and Spencer was fearful he would be further injured. (PAMF 22, 82.)

Reed arrived at Lunada Bay later that day. (PAMF 13.)  She, too, was immediately harassed upon her arrival at Lunada Bay on January 29, 2016, called a "kook," and told she couldn't surf there. (PAMF 13.)  Blakeman filmed Reed on the bluffs and made her feel uncomfortable. (PAMF 13, 72, 73.)  When she walked down to the beach, Bay Boy David Melo screamed "whore" and other profanities at Reed. (PAMF 72, 73.)  Reed also met Spencer and was alarmed to learn that even a police officer from outside the area had been harassed and injured. (PAMF 72.)  Reed ultimately felt intimidated and did not try to surf. (PAMF 72.)

In February 2016, Reed returned to Lunada Bay—though her arm was in a cast, she accompanied a friend who was seeking to surf. (PAMF 73.)  Upon her arrival, she was again filmed by Blakeman and told that she was "done." (PAMF 73.)  She went down to the beach and stood in the rock fort near the shoreline while taking photos. (PAMF 73.)  A man entered the fort and interrogated her, asking what her "mission objective" was and why she was there. (*Id.*)  Later that morning, Defendant Charlie Ferrara observed while Defendants Blakeman and Johnston rushed into the rock fort toward Reed in a hostile and aggressive manner. (PAMF 73.)  Defendant Johnston was loud, appeared drunk, sprayed beer on Reed, said she was "fucking sexy baby" and that he was "big enough to get the job done," and began making grunting noises and moaning as if to mimic an orgasm. (PAMF 73.)

1   He began changing into his wetsuit in front of Reed and intentionally removed his
2   towel to expose his penis to her.  (PAMF 73.)  Blakeman filmed the incident,
3   keeping the camera close to Reed and declining Reed's request that he stop.  (PAMF
4   73.)  Reed found the experience "incredibly frightening" and felt like she was in
5   danger of being raped.  (PAMF 13, 79.)  Acknowledging that Reed was "scared" by
6   the Bay Boys, Charlie Ferrara told her, "It's also scary being a guy when you have
7   guys barking at you, too, you know.  It's scary when you're a guy and you have
8   fuckin' ten guys you know like, you know, getting' gnarly on you."  (PAMF 80.)

9   **F.     Defendants' Discussions Of The Evidence Are Incomplete At Best.**

10         While detailed refutation of Defendants' "undisputed" facts is in Plaintiff's
11   accompanying Statements, examples illustrate how Defendants claim disputed facts
12   are undisputed and how they selectively omit evidence in their discussion:

13   •     Plaintiffs produced a recording of a person that witnesses identify as
14         Defendant Charlie Ferrara. (*See* Wolff Decl. ¶ 39, Exs. 38 & 43.)
15         Defendant Charlie Ferrara argues that this recording should be
16         disregarded because he says it is not him and his cousin non-party Leo
17         Ferrara says he is the one on the recording—and that it is therefore
18         "indisputabl[y]" not Charlie. (*See* Def't C. Ferrara Memo in support of
19         Motion at 3:10-:15, 4:26-:28, 6:3-:5, 6:16-:19, 6:21-:24, 8:26-9:2, 13:8-
20         :10 (using variations of the word "indisputable" at least five times).)  In
21         other words, Defendant Charlie Ferrara is arguing that the jury is not
22         entitled to disbelieve him or his cousin—or to believe other witnesses.

23   •     Defendant Brant Blakeman lists two text messages and some e-mails
24         from Defendant Sang Lee as "the totality of the evidence . . . linking
25         Blakeman . . ." (Def't B. Blakeman Memo in support of Motion at
26         14:18-:27).  He declines to mention there is other evidence—such as 62
27         calls from Defendant Lee to him, within a 30-minute span, on the day
28         Plaintiffs both visited Lunada Bay. (See PAMF 42.)

1  There are similar examples for each of the Individual Defendants: Defendants point

2  out disputes in the evidence but argue the jury should not be allowed to disbelieve

3  Defendants (or their relatives)—or they simply omit significant evidence in the case.

4                              **IV.    ARGUMENT**

5  **A.    There Is Sufficient Evidence To Find That Each Individual Defendant Is
       Liable Under Civil Conspiracy, Or At a Minimum, There Is A Genuine**

6  **    Issue Of Material Fact That Should Go To The Jury.**

7          Under civil conspiracy, liability may be imposed on "persons who, although

8  not actually committing a tort themselves, share with the immediate tortfeasors a

9  common plan or design . . . ." *Sebastian Int'l, Inc. v. Russolillo,* 162 F. Supp. 2d

10  1198, 1207 (C.D. Cal. 2001). Plaintiffs must show the conspiring parties reached a

11  "unity of purpose or common design"—and given the nature of conspiracies,

12  Plaintiffs are entitled to rely on circumstantial evidence. As the Ninth Circuit puts it:

13
        To prove a civil conspiracy, the plaintiff must show that the conspiring parties
14      "reached a unity of purpose or a common design and understanding, or a
        meeting of the minds in an unlawful arrangement." [] ". . .[E]ach participant
15      in the conspiracy need not know the exact details of the plan, but each
        participant must at least share the common objective of the conspiracy." [] A
16      defendant's knowledge of and participation in a conspiracy may be inferred
        from circumstantial evidence and from evidence of the defendant's actions.
17

18

19  *Gilbrook v. City of Westminster,* 177 F.3d 839. 856-57 (9th Cir. 1999) (citations

20  omitted). *See also , e.g., Favila v. Katten Muchin Rosenman, LLP,* 188 Cal. App. 4th

21  189, 206 (Ct. App. 2010) ("Knowledge and intent 'may be inferred from the nature

22  of the acts done, the relation of the parties, the interest of the alleged conspirators,

23  and other circumstances'") (quoting *Kidron v. Movie Acquisition Corp.*, 40

24  Cal.App.4th 1571, 1582 (Cal. 1995)); *Novartis Vaccines and Diagnostics, Inc. v.*

25  *Stop Huntingdon Animal Cruelty USA, Inc.,* 143 Cal.App.4th 1284, 1300 (Ct. App.

26  2006) ("[A] finder of fact may infer the requisite concurrence and knowledge from

27  the nature of the acts done, the parties' relations to each other, and the common

28  interest of the alleged conspirators."); *U.S. v. Iriarte-Ortega,* 113 F. 3d 1022, 1024

1  (9th Cir. 1997) ("Coordination between conspirators is strong circumstantial proof

2  of agreement . . . .") (discussing criminal conspiracy) (internal quotation marks and

3  citations omitted).

4       Defendants' unity of purpose and common design has been and remains the

5  exclusion of the general public—particularly "outsiders"—from what should be a

6  public beach at Lunada Bay. This purpose and design is laid out expressly and

7  repeatedly in the evidence available in the case to date, including testimony and

8  recorded statements of Bay Boys and other party, non-party, and published news

9  accounts. Moreover, the evidence shows how the Bay Boys organize their efforts to

10 exclude "outsiders" and pressure their members to participate. These are consistent

11 with other cases in which courts have found sufficient evidence for conspiracy.

12      For instance, the Bay Boys' long-established rules and their "family"

13 closeness are comparable to *Wyatt*—in *Wyatt,* the California Supreme Court found

14 that evidence of "company policy" to engage in complained-of activity, an

15 individual conspirator encouraging the policy and the outcome of the complained-of

16 activity, and the conspirators being "a tightly-knit, family-oriented business

17 operation" were sufficient to support the verdict.  *Wyatt v. Union Mortgage Co.,* 24

18 Cal.3d 773, 781, 784–785 (Cal. 1979). The Bay Boys' disseminating dates when

19 "outsiders" were expected to visit Lunada Bay and discussing harassing them is

20 comparable to *Novartis*—in *Novartis,* evidence of defendant giving "essential

21 information for carrying out attacks" including "nam[ing] dates and gathering

22 places" and "ratify[ing the attacks] by praising them" was sufficient to support

23 conspiracy with direct actors who committed attacks.  *Novartis Vaccines, supra,* 143

24 Cal.App.4th at 1296, 1300. And the Bay Boys' coordination through phones and e-

25 mail, including concerted action at the beach and in the water, likewise shows

26 knowledge and concurrence in the conspiracy.  *Cf. Project Inform v. Swindell,* Case

27 Nos. A094099, A096376, 2002 WL 31677174 at *6 (S.F. Super. Nov. 27, 2002)

28 (testimony that defendants actions appeared as if "everyone had a particular role"

1   was sufficient evidence of knowledge and concurrence in conspiracy).

2   Indeed, each of the individual Defendants played roles and undertook

3   activities from which their knowledge and concurrence in the conspiracy is

4   justifiably inferred—among other things including sending and receiving texts

5   advising when "kooks" were at Lunada Bay, numerous phone calls in compact

6   timeframes specifically when "kooks" were at Lunada Bay, sending and receiving e-

7   mails or texts calling for the Bay Boys to show up in great numbers when "kooks"

8   were expected—and actually participating in harassing "kooks."  Again, these levels

9   of participation compare favorably to other court cases.  For instance:

10  [T]here is sufficient evidence in the record to connect those defendants to a
    retaliatory scheme or plan. Each of those defendants was present during the
11  closed-door City Council meetings, during which Demonaco discussed what
    disciplinary actions should be taken against plaintiffs. Additionally, Smith,
12  Schweisinger, and Lam each made several hostile statements about the City's
    firefighters, including threats of political retribution and accusations of
13  criminal conduct, from which the jury could have inferred that those
14  defendants shared a unity of purpose with Demonaco and Anderson.

15

16  *Gilbrook, supra,* 177 F.3d at 857. And in the *Sebastian* case cited by several

17  Defendants, the evidence of conspiracy included **no** evidence of communications

18  among the defendants; and the Court still ruled conspiracy would go the jury. *See*

19  *Sebastian Int'l, supra,* 162 F. Supp. 2d at 1207-08.

20  Tellingly, Defendants spend little or no time discussing the evidence in their

21  moving papers. Six of the seven Individual Defendants list no facts in their

22  Statements of Uncontroverted Facts relating to conspiracy; five of the seven do not

23  discuss the meaning of any evidence and instead only assert that there is no

24  evidence; and **all** ignore evidence in the case, such as set forth in Plaintiff's

25  Statements filed herewith. *See* Def't A. Ferrara Motion at 8:2-:3; Def't C. Ferrara

26  Motion at 13:8-:13; Def't F. Ferrara Motion at 11:21-26; Def't A. Johnston Motion

27  at 7:15-:17; Def't M. Papayans Motion at 10:13-:15. Several also seem to believe

28

13675145.11

PLTFS.' OPP'N TO INDIVIDUAL DEFS.' MOTS. FOR SUMM. J.

1   conspiracy requires that they have met or interacted with one of the Plaintiffs. *See*

2   Def't C. Ferrara Motion at 13:8-:10; Def't F. Ferrara Motion at 11:21-25; M.

3   Papayans Motion at 10:13-:14. But the case law is clear that a conspiracy does **not**

4   require interaction between a co-conspirator and a plaintiff—and a conspiracy need

5   not even be directed to a particular person or specific injury. *See Navarette v.*

6   *Meyer,* 237 Cal. App. 4th 1276, 1293-94 (Ct. App. 2015) (Defendant "does not cite,

7   nor have we found authority requiring the participants to a conspiracy to possess the

8   specific intent to harm a particular person or commit a specific injury.")

9       In sum, the evidence shows that each individual Defendant participated to

10  varying degrees in events furthering their unity of purpose and common design. This

11  level of evidence demands that the jury be allowed to weigh the credibility of the

12  Defendants and other witnesses and make their own conclusions:

13          To varying degrees, each defendant participated in the events surrounding the
            adverse [] actions taken against plaintiffs. From that participation, the jury
14          could have inferred that defendants reached a "unity of purpose or a common
            design" to retaliate against plaintiffs for exercising their constitutionally
15          protected rights.
16

17  *Gilbrook, supra,* 177 F.3d at 857. *Cf. Scarff v. Wells Fargo Bank, N.A.,* Case No.

18  C03-03394, 2005 WL 3454136 at *5-*6 (N.D. Cal. Dec. 16, 2005) (noting, "A

19  reasonable jury could conclude that [defendants] are not being truthful in their

20  statements that [they] did not have knowledge of [the] scheme," in denying

21  defendant's motion for summary judgment on conspiracy). Accordingly, the

22  Individual Defendants' motions on the issue of conspiracy should be denied.

23  **B.   There Is Sufficient Evidence To Find That Each Individual Defendant Is**
        **Liable For Public Nuisance, Or At a Minimum, There Is A Genuine Issue**
24      **Of Material Fact That Should Go To The Jury.**

25      "The public nuisance doctrine is aimed at the protection and redress of

26  community interests and . . . ." *People ex rel. Gallo v. Acuna,* 14 Cal. 4th 1090,

27  1103 (Cal. 1997).  The statutory definition of a nuisance includes the obstruction of

28

PLTFS.' OPP'N TO INDIVIDUAL DEFS.' MOTS. FOR SUMM. J.

1  "the free passage or use, in the customary manner, of . . . any public park." CAL.

2  CIVIL CODE § 3479.  A nuisance affecting "an entire community or neighborhood, or

3  any considerable number of persons" is a public nuisance. CAL. CIV. CODE § 3480.

### 1.     Each Of The Individual Defendants' Conduct Contributes To Or Causes The Public Nuisance At Luanda Bay.

6       Nuisance claims require "a showing of substantial and unreasonable

7  interference . . . with a public right." *Coppola v. Smith,* 935 F.Supp.2d 993 (E.D.

8  Cal. 2013).  "[T]he critical question is whether [each Defendant] created or *assisted*

9  *in* the creation of the nuisance." *Melton v. Boustred,* 183 Cal.App.4th 521, 542 (Ct.

10  App. 2010) (internal citations omitted) (emphasis added).

11      While Defendants try to downplay their individual conduct, it is not only

12  individual actions in isolation that are at issue.  *People ex rel. Gallo, supra,* 14 Cal.

13  4th at 1103.  There is no requirement that every defendant engage in every act that

14  creates the nuisance:

> The many declarations . . . meet these criteria. Gang members not only routinely obstruct Rocksprings residents' use of their own property . . . but habitually obstruct the "free passage or use, in the customary manner," of the public streets of Rocksprings. It is likewise clear from this record that the conduct of gang members qualifies as "indecent or offensive to the senses" of reasonable area residents. . . .

19  *See id.* at 1120.  Defendants act in concert with each other (and other Bay Boys) to

20  interfere with Plaintiffs' and the public's "free passage or use" of Lunada Bay.

21  Additionally, even under their own minimized portrayals of their conduct,

22  Defendants each violated one or more local ordinances by interfering with

23  Plaintiffs' "use and enjoyment" of "any park or grounds" and by being "disorderly."

24  *See* PALOS VERDES ESTATES CODE § 12.24.100.  At the least, there are triable issues

25  of fact as to each Defendant's contribution to the public nuisance.

### 2.     Plaintiffs Have Standing to Abate This Public Nuisance.

27      Actions to abate a public nuisance may be maintained either by an authorized

28  public body or by a private party who has been specially injured by the nuisance.

PLTFS.' OPP'N TO INDIVIDUAL DEFS.' MOTS. FOR SUMM. J.

1  CAL. CIV. CODE §§ 3493-3494.  The special injury must be of a character different

2  in kind—not merely in degree—from that suffered by the general public. *Venuto v.*

3  *Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 122-125 (Ct. App. 1971).

4  The delta between the harm necessary above and beyond that of the general public

5  to confer standing to sue on individual plaintiffs is not wide—a private citizen needs

6  to show only something more.[1]  While the general public avoids Lunada Bay given

7  the conditions there, Plaintiffs here have suffered individualized harms.  They have

8  been harassed, photographed, assaulted, intimidated, and battered.  The generalized

9  nuisance keeps others from going to Lunada Bay, while Plaintiffs suffered more

10  specific and serious injuries.

11  **C.    There Is Sufficient Evidence To Find That Each Individual Defendant Is
12  Liable For Violations Of The Bane Act, Or At a Minimum, There Is A
        Genuine Issue Of Material Fact That Should Go To The Jury.**

13      The Bane Act provides a civil claim for "[a]ny individual whose exercise or

14  enjoyment of rights secured by the Constitution or laws of the United States, or of

15  rights secured by the Constitution or laws of [California], has been interfered with,

16  or attempted to be interfered with" through actual or attempted "threats,

17  intimidation, or coercion." CAL. CIV. CODE § 52.1(a)-(b).  The essence of the claim

18  is that the defendant "tried to or did prevent the plaintiff from doing something he or

19  she had the right to do under the law…." by the specified improper means.  *Jones v.*

20  *Kmart Corp.*, 17 Cal.4th 329, 334 (1998). *See also Shoyoye v. County of L.A.*, 203

21  _____

22  [1] While Defendants now argue that Plaintiffs have suffered no "special injury," they
    sang a different tune in their oppositions to Plaintiffs' class certification motion.
23  (See Dkt. 190 (Blakeman) at p. 18:7-8 ("[h]ere, every class member will be subject
    to a fact-specific analysis as to the specific harm they suffered and whether they
24  were unlawfully 'deterred' by defendants."); *see also* Dkt. 192 (Lee) at p. 11:9-10
    ("Plaintiffs' injuries are not typical of the class because it is unclear who harmed
25  members of the class"); Johnston - Joinder (Dkt. 195 at p. 2:5-6); Papayans - Joinder
    (Dkt. 186 at p. 2:4-5); Ferrara - Joinder (Dkt. 185 at p. 2:5-7); Frank Ferrara -
26  Joinder (Dkt. 197 at p. 1:22-24); Charlie Ferrara – Joinder (Dkt. 197 at p. 1:22-24).)
27
28

Case No. 2:16-cv-02129-SJO (RAOx)
PLTFS.' OPP'N TO INDIVIDUAL DEFS.' MOTS. FOR SUMM. J.

13675145.11

1   Cal. App. 4th 947, 955–56 (Ct. App. 2012); *Venegas v. County of Los Angeles*, 32

2   Cal.4th 820, 842-43 (Cal. 2004).

3         The rights at issue here are Plaintiffs' (and the public's) right to access the

4   coast.  The California State Constitution underscores the broad public purpose that

5   "access to the navigable waters of this State shall always be attainable for the people

6   thereof." Similarly, the California Public Resources Code provides that:

7         The Legislature further finds and declares that the basic goals of the state for
       the coastal zone are to: . . . (c) Maximize public access to and along the coast
8       and maximize public recreational opportunities in the coastal zone . . . . CAL.
       PUB. RESOURCES CODE § 30001.5
9

10  As described above and in Plaintiff's Additional Facts, each of the Individual

11  Defendants engaged in, or conspired to engage in, "actual or attempted threats,

12  intimidation, or coercion" specifically intended to interfere with Plaintiffs' legal

13  right to access the public beach at Lunada Bay. CAL. CIV. CODE § 52.1(a)-(b).

14        In evaluating threatening or coercive conduct under the Bane Act, the court

15  must consider whether a reasonable person, standing in the shoes of the plaintiff,

16  would have been intimidated by the actions of the defendants and would have

17  perceived a threat of violence.   *Muhammad v. Garrett*, 66 F. Supp. 3d 1287 (E.D.

18  Cal. 2014); *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133 (N.D. Cal. 2010).

19  Courts have interpreted the "threat, intimidation or coercion" requirement broadly,

20  finding it satisfied without any actual violence or threat of violence.  *See Venegas*,

21  *supra*, 32 Cal.4th at 850-851 (conc. opn.) (noting the broad scope of the "threat,

22  intimidation or coercion" requirement); *see also Jones v. Kmart Corp.*, *supra*, 17

23  Cal.4th at 334; *O'Toole v. Superior Court*, 140 Cal. App. 4th 488 (Ct. App. 2006)

24  (upholding violation of Bane Act where officers demanded, without use of force,

25  that plaintiffs leave campus in violation of their free speech rights). As described,

26  the evidence shows many examples of Defendants interfering with, attempting to

27  interfere with, and conspiring to interfere with access to the coast at Lunada Bay—

28  and coercing Plaintiffs in the exercise of their rights of access.

**D.     There Is Sufficient Evidence To Find That Each Individual Defendant Is Liable For Assault And Battery, Or At a Minimum, There Is A Genuine Issue Of Material Fact That Should Go To The Jury.**

To establish assault, a plaintiff need only show the defendant intended to cause and caused imminent apprehension of offensive or harmful contact. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004). Battery is any unconsented touching that harmed or offended the plaintiff. *Carlsen v. Koivumaki*, 227 Cal. App. 4th 879, 890 (Ct. App. 2014). Such touching need not be severe or cause harm. *In re B.L.*, 239 Cal. App. 4th 1491, 1495–96 (Ct. App. 2015). Nor need the touching be direct. *Mount Vernon Fire Insurance Co. v. Oxnard Hospitality Enterprise, Inc.*, 219 Cal. App. 4th 876, 881 (Ct. App. 2013). Additionally, every battery necessarily includes assault. *People v. Colantuono*, 7 Cal. 4th 206, 216–17, 26 (Cal. 1994); *Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 953–54 (N.D. Cal. 2011).

The evidence shows that the Individual Defendants committed assault and battery—or conspired to do so—against Plaintiffs Spencer and Reed. Defendant Blakeman and other Bay Boys aggressively approached Plaintiff Spencer, causing his imminent apprehension of offensive contact. (PAMF 22, 82.) The Bay Boys also committed battery against Plaintiff Spencer, with Defendant Blakeman present and directly participating when a Bay Boy intentionally collided with Plaintiff Spencer while surfing, leaving him with a laceration on his hand. (PAMF 22, 83, 86.) Likewise, Defendants Blakeman and Johnston "rushed" Plaintiff Reed, approached her in a menacing manner, harassed her with sexually aggressive comments (including while one showed his penis), and intentionally sprayed beer on her and her camera. (PAMF 13, 19, 80.) Several Bay Boys, including Defendant Charlie Ferrara, were present when Plaintiff Reed was being assaulted, intentionally contributing to the intimidating presence and Plaintiff Reed's apprehension and fear, and behaving in a manner showing that they were complicit in, and supported, the assault and threatening behavior. (PAMF 13, 80.) Defendant Johnston also committed battery on Plaintiff Reed when he sprayed beer on her and her camera.

(PAMF 13, 85.)  *See Mount Vernon Fire Insurance Co.*, *supra,* 219 Cal. App. 4th at 881 ("[One] is liable [for battery] … if [one] throws a substance, such as water, upon the other").

### E.    Plaintiffs Already Offered To Dismiss The Negligence Claim.

Plaintiffs already offered dismissal of the negligence claim as to all, but several Defendants declined.  Wolff Decl., ¶ 49.  In any event, for those Defendants moving on the negligence claim, Plaintiffs do not oppose it.

### F.    Plaintiff Coastal Protection Rangers Has Standing.

Some Defendants make a short-shrift argument that Plaintiff CPR lacks standing to pursue this action.  But an association, like CPR, has standing under both federal and state law if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members." *Assoc. Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998);  *Prop. Owner of Whispering Palms, Inc. v. Newport Pac., Inc.,* 12 Cal. App. 4th 666, 672-673 (Ct. App. 2005) (associational standing upheld even if some members would lack individual standing).  Further, an entity has direct organizational standing if it proves "(1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [problem] in question." *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004).

CPR satisfies these requirements. The rights that CPR seeks to vindicate relief it seeks are not merely "germane" but are central to its mission, i.e., to ensure public access to the California coast free without fear of attack or vandalism.  (PAMF 3 to 12.)  Its members have standing to the assert claims against the abusive conduct. (PAMF 3-23.)  And the participation of all members in this suit is not necessary.  An association may support its claims through a sampling of evidence from representative members. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med*

1   *Bd.*, 627 F.3d 547, 552 (5th Cir. 2010).  Notably, CPR is not seeking monetary

2   damages based on individual torts, but injunctive relief under its public nuisance and

3   Banes Act claims.  As for direct standing, Defendants' conduct undeniably frustrates

4   CPR's stated mission, and has diverted its resources, including those expended in

5   pursuing this action.  *Ragin v. MacKlow Real Estate Co.,* 6 F.3d 898, 905 (2nd Cir.

6   1993) (diverted resources include litigation expenses).

7   **G.    With The Evidence That The Individual Defendants Intentionally
            Destroyed Material Evidence, An Adverse Inference Must Be Drawn In**

8   **Plaintiffs' Favor—Generating At A Minimum Additional Disputes Of
            Material Fact.**

9
            [A]n inference of spoliation, in combination with "some (not insubstantial)
10          evidence" for the plaintiff's cause of action, can allow the plaintiff to survive
            summary judgment…. Because we are dealing with destroyed evidence, we
11          adhere to *Kronisch*, where we held that a plaintiff had "produced enough
            circumstantial evidence to support the inference that the destroyed [evidence]
12          may have contained documents supporting (or potentially proving) his claim,
            and that the possibility that a jury would choose to draw such an inference,
13          combined with plaintiff's circumstantial evidence, is enough to entitle
            plaintiff to a jury trial.

14

15   *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 107, 110 (2nd Cir. 2001)

16   (cited by *Medical Lab Mgmt. Consultants v. American Broadcasting Cos., Inc.,* 306

17   F.3d 806, 825 (9th Cir. 2002)) (superseded in part by Fed. R. Civ. P. 37(e)).  Here,

18   evidence points to Defendants' intentional destruction of critical evidence, including

19   additional phone records and text messages. (PAMF 88.)  Other evidence already

20   shows that the Bay Boys, including Defendants, used phones and text messages to

21   coordinate their exclusion of "outsiders" from Lunada Bay.  Plaintiffs are therefore

22   entitled to the inference that the destroyed evidence would have further supported

23   them—and should be allowed to reach the jury.  *See Tennison v. City and County of*

24   *San Francisco,* Case No. 04-0574, 2006 WL 733470, at *38 (N.D. Cal. 2006);

25   *Waters v. Kohl's Department Stores, Inc.,* Case No. 14-cv-00043, 2015 WL 124618,

26   at *5 (N.D. Cal., 2015) ("[A]n adverse inference instruction may be appropriate to

27   explain the absence of additional surveillance video. . . . since all evidence must be

28   viewed in the light most favorable to the nonmoving party, and all inferences must

be drawn in Plaintiff's favor, [summary judgment] must be denied…").

## V.   CONCLUSION

The evidence shows that the Bay Boys, including the Individual Defendants, have a history, purpose and motive, and coordinated plans and activities, to exclude the general public—the hated outsider, non-local "kooks"—from visiting or surfing at Lunada Bay—so that they can keep this priceless State treasure to themselves. This is no case of mere suspicion.  There is ample evidence of the Bay Boys publicly declaring this purpose and motive—and openly and notoriously executing their plans to fulfill them.  Accordingly, Defendants cannot be allowed to take from the jury the job of weighing the evidence and circumstances, evaluating the credibility of witnesses, and drawing inferences.  Plaintiffs ask the Court to deny the Individual Defendants' Motions in their entirety.

DATED:  August 7, 2017                     HANSON BRIDGETT LLP


By:    _/s/ Kurt A. Franklin_
       KURT A. FRANKLIN
       Attorneys for Plaintiffs