HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
LISA M. POOLEY, SBN 168737
lpooley@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:    (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:   (916) 442-3333
Facsimile:    (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone:   (310) 378-8533
Facsimile:    (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>Plaintiffs, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**PLAINTIFFS' ADDITIONAL MATERIAL FACTS IN OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |

v.

LUNADA BAY BOYS; THE
INDIVIDUAL MEMBERS OF THE
LUNADA BAY BOYS, including but
not limited to SANG LEE, BRANT
BLAKEMAN, ALAN JOHNSTON
AKA JALIAN JOHNSTON,
MICHAEL RAE PAPAYANS,
ANGELO FERRARA, FRANK
FERRARA, CHARLIE FERRARA,
and N. F.; CITY OF PALOS VERDES
ESTATES; CHIEF OF POLICE JEFF
KEPLEY, in his representative
capacity; and DOES 1-10,

                    Defendants.

Judge:       Hon. S. James Otero
Date:        September 5, 2017
Time:        10:00 a.m.
Crtrm.:      10C


Complaint Filed:   March 29, 2016
Trial Date:        November 7, 2017

        Plaintiffs Cory Spencer, Diana Milena Reed and Coastal Protection Rangers,

Inc. (collectively referred to as "Plaintiffs") submit these Additional Material Facts

in Opposition to Defendants Sang Lee, Brant Blakeman, Alan Johnston aka Jalian

Johnston, Michael Rae Papayans, Angelo Ferrara, Frank Ferrara, and Charlie

Ferrara's (hereinafter "Individual Defendants") Motions for Summary Judgment or,

in the Alternative, Summary Adjudication set for hearing on September 5, 2017,

before this Court.

13663319.10

**Issue #1:      Lunada Bay Is A Unique Part Of The California Coast And A Public Beach Owned By The City, And Under A Grant From The State Of California, Is Reserved To The People Of California.**

| Issue #1:      Lunada Bay Is A Unique Part Of The California Coast And A Public Beach Owned By The City, And Under A Grant From The State Of California, Is Reserved To The People Of California. | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 1.  Palos Verdes Estates Shoreline Preserve and specifically Lunada Bay constitute an asset of priceless value, and exceptional and dramatic beauty. Lunada Bay is owned by the City and is a world class wave. | 1.  City Responses to Plaintiffs' Separate Statement.  Undisputed Material Facts ISO Class Certification [Docket No. 189] Nos. 1 ("Lunada Bay is owned by the City of Palos Verdes Estates and is a public beach") ("Lunada Bay is a unique world class surfing site, and offers many recreational opportunities"), 5; Willis Decl. ISO Opp. to City MSJ, ¶¶ 8, 9, 10, 11, 15 [Docket No. 309] ("Lunada Bay is a world class wave . . ") and Ex. 4 ("Palos Verdes Estates Shoreline Preserve constitutes an asset of priceless value." p. 87) (Palos Verdes "has a shoreline of exceptional and dramatic scenic beauty . . .") (p. 115); Johnston Depo. 44:10-25. ("Q. If Ms. Lawry quoted you in an article as saying that a good day surfing with my friends is like 5 grand to |

13663319.10

| Issue #1: | Lunada Bay Is A Unique Part Of The California Coast And A Public Beach Owned By The City, And Under A Grant From The State Of California, Is Reserved To The People Of California. |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | me, do you have any reason to doubt that she accurately quoted you? A. I might have said that. I mean, now that I -- now that I'm thinking about it, it's worth more than that, and it's worth less than that. You can't put a monetary value on surfing, you know. It cost money to travel and stay in hotels and surfboards cost money and stuff, but the feeling is -- you can't equate like to anything financial. "); Lee Depo. 88:22-25, 89:("[I] am not a rich person , all [I] have is my word , my good friends ( who back me up 110% n not 98 % ), [I] am not going to have a mansion on the cliff or drive a $ 100,000 car but what [but what I] have is priceless ….. this place has given me soooooooooo much [I] cant even start....." ); Barber Depo. 112:18-22, Ex. 263 ("Q:  And I'm going to – 263 I'm going to put in front of you, Sergeant Barber.  Do you recognize that as being a map of the general Lunada |

13663319.10

| Issue #1: | Lunada Bay Is A Unique Part Of The California Coast And A Public Beach Owned By The City, And Under A Grant From The State Of California, Is Reserved To The People Of California. |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Bay coastal area?  A:  Yes."). |
| 2.  The State of California granted Lunada Bay and the rest of the Palos Verdes Estates Shoreline Preserve to the City, but it is reserved for the People of California. | 2.  Willis Decl., ¶¶ 8-11[Docket No. 309]. |

**Issue #2:    Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants**

| Issue #2: | Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |

Case No. 2:16-cv-02129-SJO (RAOx)
PLAINTIFFS' ADDITIONAL MATERIAL FACTS

13663319.10

| Issue #2: **Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 3.   Coastal Protection Rangers (CPR) is a California non-profit public benefit corporation whose mission is dedicated to ensuring public access to the California coast. | 3.   City Responses to Plaintiffs' Separate Statement of Undisputed Facts ISO Class Certification No. 14 ("The Coastal Protection Rangers, Inc. is a nonprofit dedicated to ensuring beach access and environmental justice.  CPR believes all visitors should be able to visit Lunada Bay without fear of attack or vandalism.  Undisputed")  [Docket No. 189]; Slatten Decl. ISO Motion for Class Certification ¶ 2 [Docket No. 159-6]; Apostol Decl. ISO Opp. City MSJ, ¶¶ 2,3 [Docket No. 304]. |
| 4.   Non-profit coastal advocacy groups like CPR provide important support to the California Coastal Commission. | 4.   Willis Decl. ISO Opp. City MSJ, ¶¶ 3, 4, 5, 6, 7, 11, 12 [Docket No. 309]. |
| 5.   To CPR, the beach represents freedom, a place to gather with friends, and a place for people to express themselves. | 5.   Slatten Decl. ISO Motion for Class Certification ¶ 4 [Docket No. 159-6]. |

| | |
|---|---|
| 6.  To CPR, the California coast is the largest open space near urban areas that have too little access to recreation, parks, nature and the outdoors. | 6.  Slatten Decl. ISO Motion for Class Certification ¶ 4 [Docket No. 159-6]. |
| 7.  Beach access is central to CPR's mission. | 7.  Slatten Decl. ISO Motion for Class Certification ¶ 8 [Docket No. 159-6]; Apostol Decl. Opp. ISO City MSJ, ¶¶ 2, 3, 4, 8, 9, 10, 11,14,16 [Docket No. 304]. |
| 8.  CPR board members, members, and/or volunteers have suffered from unlawful exclusion by the City (and by the Bay Boys and its members, including the individual Defendants) at Lunada Bay, including exclusion based on where they live, race and gender. | 8.  Slatten Decl. ISO Motion for Class Certification ¶ 7 [Docket No. 159-6]; Apostol Decl. Opp. ISO City MSJ, ¶¶ 4, 6, 9, 10, 12, 13, 14, 16 [Docket No. 304]. |
| 9.  CPR's members, volunteers and the people it helps include people of color, people with disabilities, women, and people of different sexual orientations who are concerned about illegal exclusion from the coast. | 9.  Apostol Decl. Opp. ISO City MSJ, ¶¶ 3, 6, 8, 9, 10, 11, 12, 14, 16 [Docket No. 304]. |

13663319.10

PLAINTIFFS' ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 10. CPR has investigated illegal exclusion by the Bay Boys and the City, and on behalf of its members and volunteers wants to remedy unequal treatment against persons of color, women, the poor, and other protected categories – and on behalf of its members and volunteers specifically desires to address civil rights issues as they relate to beach access. | 10. Slatten Decl. ISO Motion for Class Certification ¶¶ 9,10, 11, 13 [Docket No. 159-6]; Apostol Decl. Opp. ISO City MSJ, ¶¶ 3, 5, 6, 7, 8, 10, 11, 12, 14 [Docket No. 304]. |
| 11. CPR has diverted resources to achieve open access for all at Lunada Bay, and if it were not for the illegal exclusivity by the Bay Boys and City, these resources could be used for other important CPR projects related to coastal access. | 11. Apostol Decl. Opp. ISO City MSJ, ¶ 15 [Docket No. 304]. |
| 12. The Bay Boys, along with the City, are causing CPR's members and volunteers irreparable harm. | 12. Willis Decl. ISO Opp. to City MSJ, ¶ 4 [Docket No. 309] ("Without judicial assistance, I am of the opinion that the potential remains that beachgoers are being denied access to Lunada Bay in violation of the law, and, thus, are continuing to suffer irreparable harm."). |
| 13. Diana Reed is a female outsider who has been harassed at Lunada Bay by the Bay Boys, and is deterred from visiting | 13. Reed Decl. ISO Motion for Class Certification ¶¶ 1, 5-11, 17-28 [Docket No. 159-5]; Franklin Decl., ¶ 25, Ex. 17 |

Case No. 2:16-cv-02129-SJO (RAOx)
**PLAINTIFFS' ADDITIONAL MATERIAL FACTS**

13663319.10

| **Issue #2:     Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| Lunada Bay. | [Docket No. 324] ("fucking sexy baby…want to film it?"; "I seen you and I think I touched myself a little bit"; "I can do whatever I want."); Reed Depo. (Vol. II) 204:15-20 ("I witnessed Mr. Johnston moaning towards her, oscillating his body in a sexual manner, you know, other things, but it's hard for me to remember because I was mostly focused on what was happening to me and I was so scared that I, you know, wasn't thinking very clearly."); Reed Depo. (Vol. II) 207: 1:5 ("I think that I wanted an escort at the time because of the previous incident in January where I was yelled at by the other individual [David Melo]. Q:  Okay.  What did you want the escort for?  A:  For safety."); Reed Depo. (Vol. II) 207:21-23 ("Q:  Did you want the escort to go to the fort with you?  A:  I did want them to escort me there."); Reed Depo. (Vol. II) 208: 9-13 ("I just remember -- yeah, I just remember |

13663319.10

| Issue #2: | Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | speaking to the police and requesting someone to escort me.  I remember, you know, the idea of doing that, but it's hard for me to remember, you know, anything that was said specifically."); Reed Depo. (Vol. II) 211:18-20 ("Did they tell you they weren't available or did they refuse your request?  A:  Is there a difference between that?"); Reed Depo. (Vol. II) 300:15-25, 301:1-25, 302:1-7 ("Q:  Did you ever see Brant Blakeman do anything besides filming or speaking to you as you told us at the bay area?  A:  Well, during the incident that occurred on February 13th, it appeared as though he had orchestrated that event with Mr. Jalian Johnston.  Q:  What specifically did he do that made you think that he had orchestrated that?  A:  It appeared as though they had planned the event out in an attempt to try to ruin my camera and in an attempt to try to intimidate me.  Q:  What specifically was done or did you |

| Issue #2:   Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | see that caused you to believe that? A:  The fact that when they entered the fort it seemed like all of their actions were orchestrated, they immediately rushed towards me.  Johnston immediately opened the can of beer and, you know, sprayed it on me and on my camera in what I believe they intended to appear as an accident but to me it felt very intentional.  The way that, you know, he was -- he was filming Johnston as though it was like a planned performance it seemed like, you know.  The fact that he was holding the camera just right, right next to my face in a way that made me feel threatened or intimidated.  Q:  Go ahead.  A:  A lot of the actions at Lunada Bay between the locals all appeared to be orchestrated based on what I've seen and what I've heard in the surf community. Q:  Can you give me any specifics as to why you thought the February 13th episode was orchestrated or scripted or |

| Issue #2: Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | somehow created by Mr. Blakeman or with his direction?  A:  I don't know who planned it.  I don't know who planned it but it appeared that they were following a very distinct plan to try to intimidate me and try to ruin my camera.  Q:  Can you give me any specifics as to why you think that?  A:  I think that because of the way that that the actions unfolded that I just described."); Reed Depo. (Vol. II) 305:12-24 ("Q:  Was Mr. Blakeman doing anything as he entered?  A:  Yes, as I was saying, he was holding the camera on some kind of tripod device recording, very menacing, threatening look on his face that made me extremely fearful.  Mr. Johnston was -- also had a very menacing and fearful expression.  The way that they walked and their body language also appeared threatening.  They were making big, loud steps and just a lot of heavy, you know, frightening movements that made me feel that they |

13663319.10

| Issue #2: | Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | were there in an aggressive and hostile way."); Reed Depo. (Vol. II) 307:14-25 ("Yes, Mr. Johnston appeared to be forging a celebration, and, you know, he was raising his voice and saying woo-hoo, you know, L.A. Times, and he was -- as I can assume now, attempting to celebrate the fact that the L.A. Times had published an article about Lunada Bay and it was on the front page that day.  And I was unaware of that fact at the time.  Q:  When you say "forging a celebration," what do you mean?  A:  What I mean is that they were obviously there to intimidate and harass me, and the way that they wanted to do it, I guess, was to pretend that they were celebrating the fact that the article came out but clearly they were upset about the article."); Reed Depo. (Vol. II) 308: 1-7 ("When you say "rushing towards me," what do you mean?  A:  By that, I mean I remember him walking, you know, moving towards me quickly, I |

| Issue #2: Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | wouldn't say walking, but moving towards me in an extremely quick and frightening way to where he was in my personal space, very close."); Reed Depo. (Vol. II) 319: 17-25, 320:1-11 ("Q: I wasn't there so I don't know what to ask you except to ask you to tell me what other things you can recall about the episode on the 13th specifically with regard to Mr. Blakeman that you haven't told me about already. You told me that he had a camera, that he took videos, that he looked menacing to you, that he videotaped or whatever? A: Yeah, I remember that he wouldn't stop videotaping me. I think I might have asked him to stop -- I mean, I definitely asked him why they're doing that. I feel like his role was to record rather than to speak and to intimidate through his camera. So I remember him, like I said, getting very close to me and being -- felt like he was right in my face with the |

| Issue #2: | Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | camera.  I remember asking them why they're filming me and they said they're filming me because I'm sexy and because I turn them on and that was what Mr. Johnston was saying."); Reed Depo. (Vol. II) 321: 13-23 ("Q:  What is a menacing expression to you, what does that mean? A: I mean, he looked like -- I mean, he was -- obviously, he was scowling, he was -- his body language conveyed that he was hostile, he -- I mean, they were making -- he was making sexual comments, Mr. Johnston was.  And I just felt very frightened like anything could happen, you know."); Reed Depo. (Vol. II) 276:13-25, 277:1-3 ("Q:  Now, the pain and suffering that you attribute, how have you experienced pain and suffering?  Describe your symptoms with the pain and suffering you suffered? A:  I've had loss of sleep -- you mean the entire -- the entire course of events that happened to me at the fort was extremely |

13663319.10

| Issue #2:     Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | traumatic, you know, I felt -- felt like I could have even been raped.  I mean, it was incredibly frightening,  I felt helpless.  Just that whole memory of the event has caused me to be fearful and just really affected my piece of mind.  Q:  Did it cause you to be fearful of going to Lunada Bay after February 13th?  A:  Of course.  Yeah, it caused that as well, hmm-mm.  Q:  Okay.  And you did go to Lunada Bay after that, February 13th; right?  A:  I did go back.  And the reason why is because I don't believe in bullying.  I will stand up to bullies.  I will do what's right, it's a public beach, and if I don't go then who else will go.  And, you know, I just, you know, I don't believe in them bullying me into being fearful of going somewhere that's beautiful and should be accessible to all people.");  Reed Depo. (Vol. I), 170:9-25 ("Q:  What do you remember about being approached by individual defendants with a case of beer?  A:  I |

13663319.10

| Issue #2:    **Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | remember that they approached me very rapidly and I was caught by surprise.  I remember that they rushed towards me in a hostile manner.  I remember, you know, declining that I wanted to drink beer.  I remember being videotaped by Brant Blakeman.  I remember there were times when I was being videotaped very close to my face and it felt very intimidating and definitely felt like I was being harassed.  And I think that I asked them, you know, why they're videotaping me because it made me very uncomfortable.  I remember Mr. Johnston opening the can of beer in a way that sprayed my arm and my camera.  I remember him chucking beer and throwing beer cans on the floor.  I remember him being very loud and very scary, very intimidating, and acting in a sexual manner."); Reed Depo. (Vol. I) 175:8-14 ("Q:  Do you recall trying to leave the fort and being unable to do so because you were blocked? |

13663319.10

| Issue #2: | Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | MR. FRANKLIN:  Vague and ambiguous. A:  I recall them standing in front of me, and the way to leave would be to go, you know, to get close to them.  And I do recall attempting to call the police but not having cell phone service."); Johnston Depo. 148:19-21 (admitting he said he touched himself and that he drank three beers during his interaction with Reed); Frank Ferrara Depo. 208:6-9 (questioning why an outsider woman would be at Lunada Bay) ("And I know that Diana talked about she wants to be an accomplished big wave surfer.  And she has got her makeup and she's looking like she's ready to go out on a date and she's on the patio."); Mowat Depo. 190:12-14 (stating in reference to Reed, "I could tell people's body language and the way people are and she just looked like a bitch to me and a liar."); Blakeman Mot. Summ. J. at 4:17-18 [Docket No. 284] (trivializing Plaintiff Reed's assault and |

| **Issue #2:** **Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | victim-blaming her, stating: "Reed can be seen throughout the video smiling, smirking, and in no apparent distress."); Blakeman Depo. 196:24-197:10 (Blakeman acknowledging the men's locker-room atmosphere at Lunada Bay and authenticating a photo of him changing at the shoreline), Ex. 178. |
| 14. After being first harassed, on February 13, 2016, Reed returned to Lunada Bay and asked the police for an escort from the bluffs to the beach but was told no officers were available. | 14. Reed Decl. ISO Motion for Class Certification ¶18 [Docket No. 159-5]; *see* Plaintiffs Additional Material Facts Opposition to City Defendants Motion for Summary Judgment [Docket No. 323] No. 119. |
| 15. On February 13, 2016, the day Reed is harassed a second time, (i) the City had cancelled a planned undercover operation at Lunada Bay because it was "leaked" to the Bay Boys the day before, (ii) Reed was sexually harassed by Bay Boys Alan Johnston and Brant Blakeman, and (iii) the day before Bay Boy Michael Thiel directs the City | 15. Reed Decl. ISO Motion for Class Certification ¶¶18-27 [Docket No. 159-5]; Best Depo. 169:16-25, 170:1-10, 20-25, 171:1-4, 172:9-25, 173:1-25, 174:1-5; Kepley Depo. 184:7-25, 185:1-16; Franklin Decl., ¶25 Ex. 17 [Docket No. 324] ("fucking sexy baby…want to film it?"; "I seen you and I think I touched myself a little bit"; "I can do whatever I |

| Issue #2:    **Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| Manager to not hold an undercover operation. | want." *See also* Plaintiffs' Additional Material Facts Opposition to City Defendant's Motion for Summary Judgment [Docket No. 323] Nos. 119 and 185. |
| 16. Unbeknownst to Reed at the time, the individual defendants and the rest of the Bay Boys had conspired to assault outsiders like Reed on February 13, 2016 to deter her and others from returning to Lunada Bay. | 16. See PAMF 24 to 63. |
| 17. In response to her desire to return, the City told her to carry a cell phone and travel in a large group.  The Chief of Police told her it was not safe to go to Lunada Bay, that he wouldn't even tell a man to go down there, and that he viewed it as a long term problem. | 17. Reed Decl. ISO Motion for Class Certification ¶31.  [Docket No. 159-5] |
| 18. Reed suffers irreparable harm:  As an outsider, she is denied access to a public area granted to the City from the State. | 18. Reed Decl. ISO Motion for Class Certification ¶¶ 9, 11, 12, 14, 15, 18, 19, 20, 21, 22, 24, 27, 30, 31, 40, 41 [Docket No. 159-5]; Willis Decl. ISO Opp. to City MSJ ¶¶ 3, 4 [Docket No. 309]. |

| **Issue #2:** | **Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants** |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 19. Cory Spencer is an outsider who lives in the inland community of Norco, California more than 60 miles from Palos Verdes Estates.  Like Reed, he has been harassed by outsiders with City complicity.  He grew up in La Mirada, more than 30 miles Palos Verdes Estates. | 19. Spencer Decl. ISO Motion for Class Certification ¶¶1, 2.  [Docket No. 159-4] |
| 20. Because of its reputation for localism, Spencer is afraid to surf Lunada Bay. | 20. C. Spencer Decl. ISO Motion for Class Certification ¶¶3, 4, 5.  [Docket No. 159-4] |
| 21. Supported by other outsiders, Spencer decided to address his fear and attempt to surf Lunada Bay in 2016. | 21. C. Spencer Decl. ISO Motion for Class Certification ¶¶8, 9, 10.  [Docket No. 159-4] |
| 22. Upon arrival at Lunada Bay, Spencer was intimidated and harassed as an outsider on land, blocked from surfing (in water granted to the City from the State) and run over in the water – all of this was planned and coordinated by the Bay Boys.  *See* PAMF 24 to 63.  Even though Spencer had given the City advance notice that | 22. C. Spencer Decl. ISO Motion for Class Certification ¶¶11-31 [Docket No. 159-4]; Wolff Decl., ¶ 35 & Ex 34; Spencer Depo. 39:1-18 ("A:  Let me just say this. Around 2002 or 2003, somewhere in the early 2000s, I was almost ecstatic when my police chief was looking for volunteers of officers to go surf at Lunada Bay to take care of a problem that |

| Issue #2:      Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| he and other outsiders would be coming to use Lunada Bay, the City failed to arrive as requested and failed to patrol the shoreline near the water.  Moreover, even though he had been purposefully run over by a local and attempted to tell a City policeman, the City showed no interest in an investigation of a crime against an outsider, even though Spencer himself is a police officer but from another jurisdiction. | supposedly either the police chief or the city at the time wanted to take care of, and I was going to go in the capacity of a police officer; be able to undercover surf in a place that I wanted to surf since I was probably 15 years old and take care of a bullying problem.  I thought at that time, hey, these guys are going to do it.  You know, this is -- this is going to happen, and I'm going to be a part of it.  And that was -- that was exciting to me.  Yeah, I was excited.  I thought at that time it was going to be taken care of.  But, for whatever reason, that undercover operation, or whatever they were planning on doing with us, was called off; and, again, nothing happened.  That was a letdown."); Spencer Depo. 44:4-16  ("Q: And 'cause I don't know.  I don't understand undercover operations. A:  Well, I think the expectation speaks for itself on the undercover operation. You go in undercover expecting that |

13663319.10

| Issue #2:     Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | things that have been reported for the last 30 or 40 years would happen to you as an undiscovered outsider; and you, being an on-duty police officer, would be able to make and effect a proper arrest or a citation and send a message that -- when I say, 'we,' meaning 'we' as the Palos Verdes Estates police are not going to tolerate a gang in the water and on the beach, and the problem would go away. Almost instantaneously within a couple weeks this could be cleared up.  We would not be sitting here today."); Spencer Depo. 56:5-14 ("A:  Let's go back to that.  When you see -- you question why you can't go there; and, then, you start inquiring in the surfing world why you can't go there, and you hear the stories that have gone on for as long as they have up into that point.  You immediately get fearful.  You don't want to go somewhere where you're going to get your tires slashed; your windows |

PLAINTIFFS' ADDITIONAL MATERIAL FACTS

13663319.10

| **Issue #2:     Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | egged; your property thrown in the ocean. Those were the stories that you get; so, you become fearful right away, right?  Or I did."); Spencer Depo. 59:18-21 ("Fearful?  Just going there I was in fear. Just driving up the Palos Verdes Peninsula road, you know, or whatever road it is to get up there, you're a little afraid because you've heard stories."); Spencer Depo. 60:2-8 ("I don't know how to answer that any other way than I already did.  When you drive up, you -- because of the lure, the stories, you feel fearful of, hey, is this real?  Is this -- is this place really like they say it is?  Am I going to get my property vandalized?  Am I going to get, you know, in some type of confrontation? That's a fear."); Spencer Depo. 103:11-25 ("Q:  Did these statements cause fear for you?  A:  Yeah. Q:  Okay.  A:  Yes. Sorry.  Q:  Did anything else occur in the 20 minutes that caused fear for you? A:  Yes.  Q:  What was that?  A:  More -- |

13663319.10

| Issue #2:      Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | more of the same statements by a specific individual, who I could identify.  I don't know his name.  Same things.  It was more of a – more of a closer, I guess, encounter with the same language all the way down the trail; jumping into the water; same individual just keep, you know, heckling."); Spencer Depo. 105:12-21 ("A:  A very uncomfortable feeling when the -- who I now know -- did not know at the time -- was Defendant Blakeman paddling around myself and Chris and, more specifically, Chris in a very tight circle; blocking Chris from getting any waves; never saying a word; just looking -- staring at both he and I. That was a little weird; fearful. I've never experienced that before in my life in the water like -- kind of like a circling you like a shark. You know, it was weird -- just weird."); Spencer Depo. 106:20-25, 107:1-9 ("Q:  Once in the water, on his second wave at Lunada Bay, a member of |

| Issue #2:     Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Defendant LUNADA BAY BOYS intentionally ran Spencer over with his surfboard and sliced open Spencer's hand." Is that true?  A:  Yes.  Q:  All right.  Which hand was that?  A:  The right wrist.  Q:  Okay.  A:  With about a half-inch scar.  Q:  Do you mind showing it to me?  A:  Right there."); Spencer Depo. 108:4-17 ("Q:  Well, that's a bad question.  How do you know that the person who ran you over with the surfboard intentionally did that?  A:  I'm not in his brain; but I have surfed for, you know, 30 years, and you can tell when somebody locks eyes with you and is on one path, and they specifically move their board and maneuver their body to make their board go in another path that's directly at you when they could go the more safer, more better part of the wave being closer to the more critical part of the wave, which is more enjoyable to surf than aiming towards somebody paddling |

13663319.10

| Issue #2:    Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | out to get back out to the lineup.  In my mind, I determined that, hey, this guy tried to run me over."); Spencer Depo. 109:17-22 ("A:  With that individual who ran -- just ran me over; start berating me with comments of, you know, 'What are you' – 'What are you fucking doing out here?' I told you to go home.  I should have ran you over.  Why are you paddling in the sun glare where I can't see you?" And that's it.  'I should have ran you over.'"); Spencer Depo. 110:12-25, 111:1-4, 9-25, 112:1 ("Q:  Did you say anything to the person whose surfboard cut your hand?  A:  After he made the comment that, 'I should have ran you over,'  I says, 'Well, you did,' and I held up my hand and showed him, and that's when he said, you know, 'Why are you paddling where I can't see you?  You shouldn't paddle in the sunlight,' stuff like that.  Then I kept paddling off.  Q:  Were you fearful of being further injured after that point? |

| Issue #2: Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | A: That's an understatement. Q: So is the answer yes? A: Yes. Q: Okay. Did you feel that what had occurred to you getting your hand cut and the way it happened was a crime? A: I know it was a crime…. A: The way his explanation was going down the road of, basically, avoiding taking any responsibility for his actions; blaming it on the sun; blaming, you know, me paddling where I'm not supposed to be paddling -- I was paddling exactly where you're supposed to paddle to avoid injury; to avoid conflict with any other surfers. I was paddling back to the channel, which basically gets away from the critical part of the wave, which is where he should have been surfing when he redirected his path to run me over. You know, in my opinion, yeah, it was a crime. Did I report it? It's going to be with no witnesses there; no police officers in the water, as there could have been; no police officers down on the beach, as there could |

| Issue #2:  Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | have been; on the fort, as there could have been; nothing to corroborate my story, it would have been a 'He said ...'; 'He said ...' go nowhere thing."); Spencer Depo. 112:25, 113:1-25, 114:1 ("Q:  Did you, at that point, have any fear that the same thing would happen to your friend, Chris?  A:  Yeah -- yes.  Q:  Okay.  A:  It came alive.  All those stories of 30 or 40 years just happened.  Q:  And given that you had that fear, did you consider that in order to avoid it potentially happening to Chris, that, perhaps, you should take some actions as a police officer -- and I think you said you felt it was a crime -- to prevent that from happening to Chris? [OBJECTION]  A:  I felt the best plan of action was to stay clear of these guys, especially since they just assaulted us. I've got no radio.  I've got no handcuffs. I've got no gun; no bullet-proof vest.  I'm not a police officer out there.  I'm a citizen; okay?  And the best plan of action |

13663319.10

| Issue #2: | Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | was to avoid them; and that was almost, I mean, impossible, when you got a guy circling around you -- not the guy that ran me over but they're all -- they all know each other, and here's the guy that just injured me.  He knows his buddy is circling my friend; and, so, it's like let's get out of here; so we caught one more wave after that; and, then, we decided that was -- it's getting too crazy out here, and more and more [Bay Boys] started showing up on the fort."); Spencer Depo. 149:7-23 ("We discussed Mr. Blakeman's actions.  Other than Mr. Blakeman's actions, did you witness any other incidents of the Lunada Bay Boys threatening or taunting surfers that day in February 2016?  MR. FRANKLIN: Asked and answered.  THE WITNESS: Well, I mean, how do I know who's doing the taunting and threatening when it could be all of them, when they're on their phones, and more and more groups, you |

13663319.10

| Issue #2: | Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | know, show up to kind of put this stranglehold on the area, in my opinion? That's taunting and threatening in itself when you have a little goat trail one way to go down there, and you've got two groups of 15 to 20 on each end, and you got a guy going around with a selfie stick and a camera, people -- people yelling at you to fucking get out of there; 'Why are you here?  Go home.  Don't surf here.'  I don't know who they are specifically."); Spencer Depo. 125:10-25, 126:1-25, 127:1 ("Q:  Yes, or anything that happened to you that day?  A:  I did not request a formal police report, no. I did not.  Q:  Okay.  Did you communicate to anybody at the City of Palos Verdes Estates Police Department with regard to what occurred to you that day at Lunada Bay?  [OBJECTION] A:  Yes.  Q:  Okay.  When was that?  A:  So, shortly after getting changed, I noticed the group of police officers standing to my south |

| Issue #2:    Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | talking with what appeared to be another group of newly-formed Bay Boys.  So, the bay is a bay.  There's a north and a south end.  The south group had, you know, trucks and cars and guys standing kind of huddled around in a group of guys, and the police officers were kind of towards the south.  They weren't right up next to the group.  And I did notice that a couple of police officers appeared to be talking with a few members of the group; and, so, I made a point, because there was, in my opinion -- and I don't know if it was directed by my contacts with the captain or whatnot, but I noticed the group of police officers; so, I personally wanted to go over and tell them, you know, 'Hey, thanks for showing up,' you know.  'We appreciate it.'  You know, and the one younger officer -- I don't know his name. I didn't get any of their names. I, basically, you know, told him what happened to me down there, you know; |

13663319.10

| Issue #2: | Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | showed him my hand and -- and I told him, I says, you know, 'The guy is going to claim sun glare and whatnot.' I just didn't want to -- I knew where it was going to go. 'He said …'"; 'He said ...'; and, no, he [the officer] didn't offer to take a report. You know, he didn't ask me to point anybody out. I know you're going to ask all these questions; so, we'll just cut to the chase. Q: He did not offer to take a report? A: Right."); Spencer Depo. 187:22-25, 188:1-9, 188:22-23 ("Q: With regard to the pain and suffering that you allege, can you describe how you have suffered that pain and suffering? A: Yeah, it's kind of a letdown. You just feel sad that, you know, things that maybe you'd hoped as a human that really weren't happening down there, actually, when they did happen to you, kind of -- don't know. I don't want to say a depression 'cause -- but just a sadness, you know, that, hey, it actually happened; |

13663319.10

| Issue #2: | Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | and kind of suffered, in the sense of, you know, it just kind of a -- it's kind of a bummer that it happened.  You know, I'm -- in my sense, I'm suffering that I'm not able to go enjoy a place that I have a God-given right to go enjoy without being run over; called names; told to leave; so, in that sense, yeah, that's a suffering to me, I mean…..  Q:  Did you experience any loss of sleep?  A:  Yes."); Spencer Depo. 193:10-25 ("Q:  Do you attribute any of those specifically to the actions of Chief Kepley?  A:  Yes.  I'm disappointed in him.  I'm disappointed that him and his department are not taking care of the problem, yes.  Q:  And you're disappointed because Chief Kepley has not eliminated the problem, or do you mean something else by taking care of it?  A:  Yes, eliminated the problem.  Q:  All right.  You would agree that extra patrols were provided in January and in February of 2016 when you asked for them; right? |

| **Issue #2:**  **Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | A:  Wholeheartedly agree.  MR. FRANKLIN:  Vague and ambiguous; calls for speculation; move to strike. 196:2-19Q:  Okay.  Go ahead.  And what are those?  A. They haven't -- here's the deal.  They haven't provided access to an area that is popular for a recreational sport for the public to enjoy.  They haven't provided any signage; notifications on what to do if there's any type of problems. There's nothing down there except a set of rocks that divide the asphalt from the dirt. They're very ineffective in providing access down there, signage, which, in turn, would automatically make it easy to patrol and enforce laws and things that go on down there.  And let me just say they had an opportunity to go through the permitting process.  They've chose to tear down the fort when they could have permitted it.  Whatever they want to do, but just make it accessible to any human being that wants to go enjoy it; not let it |

13663319.10

| **Issue #2:     Plaintiffs Coastal Protection Rangers, Reed And Spencer Have Standing To Obtain Relief Against The Individual Defendants** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | be controlled by a bunch of pack animals that are acting like bullies.  It's crazy."); Spencer Depo. 274:3-10 ("Q:  What is it about right now that you don't feel comfortable about?  A:  I don't feel the problem has been addressed by the police; by the city.  I believe that there's still Bay Boy members that are going to be there, and I don't want to get into any type of confrontation."). |
| 23. Given the long-established custom and practice of discrimination by the City against outsiders, Spencer is afraid to return to Lunada Bay to recreate in a public area. | 23. Spencer Decl. ISO Motion for Class Certification ¶¶ 4, 5, 26 [Docket No. 159-4]; A. Willis Decl. ISO Opp. to City MSJ, ¶¶ 5, 12 [Docket No. 304]; Plaintiffs' Additional Material Facts Opposition to City Defendant's Motion for Summary Judgment [Docket No. 323] Nos. 129, 130. |

**Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.**

| **Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** |
|---|
| |

13663319.10

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| 24. The individual defendants are members of a group known as the "Bay Boys," who bully, threaten, intimidate, and harass "outsiders" to keep them away from Lunada Bay. Beyond camaraderie -- and a chance to enjoy a world class beach and wave with few others -- the group provides its members an avenue for status, prestige, and respect. Their main objective is to maintain a takeover of a public beach for private use, preserving it for themselves and their children. | 24. Franklin Decl. Supp. Pls.' Opp to City Defendants' MSJ. ("Franklin Decl."), Ex. 21, Bates CITY7090 ("Chief Kepley told me that shortly after he was hired as chief of police he learned of a long history of alleged 'bullying and hazing' of out-of-town surfers at Lunada Bay by local surfers, often referred to as the 'Bay Boys.'"); See Plaintiff's Additional Material Facts Opposition to City Defendants Motion for Summary Judgment [Docket No. 323] Nos. 163, 164, 166-168, 171, 172; RJN, Ex. A. |
| 25. The Bay Boys stick together, and refer to themselves as a "fraternity," a "brotherhood," and "family." Their illegal purpose includes the objective to deter outsiders from using the coastal area and submerged tidelands so that they can have it for themselves. | 25. Lee Dep., 88:18 to 93:7, Ex. 222 ("Q. Mr. Lee, you've been handed what has been marked as Exhibit 222 which is a three-page bates document, bates number Lee 00001 through 00003. (Deposition Exhibit 222 was marked for identification and is attached hereto.) Q. Have you ever seen Exhibit 222 before? A. Have I seen this? Q. Yes. A. Yes. Q. And Exhibit 222 contains E-Mails that you sent on January 7th and 8th of 2011? A. What now? Q. Excuse me. A. What now? Q. |

| Issue #3: | The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Does Exhibit 222 contain E-Mails that you sent on January 7th and 8th of 2011? A. It just says, yeah, 7th and 8th, yeah. Q. Yes? A. Yes. Q. And the E-Mail that's dated January 7, 2011, it begins on the bottom of the second page, yeah, the second page? A. Uh-huh. Q. Can you identify who you sent that E-Mail to? A. That's Brad Ringer, I believe that one might be Charlie Beukema. Q. The Roxy Quinn is Brad? A. Excuse me? Q. You're saying the Roxy -- A. Roxy Quinn, yeah. Q. That's who? A. I think that's Charlie Beukema. Q. And who's next? A. Colm. Q. Collin? A. Colm, C-o-l-m. Q. Oh, before that isn't there one? A. Charlie Mowatt. Q. Charlie Mowatt, and then Colm, and who is that? A. Just another guy that surfs there. Q. What's his last name? A. I believe it's Gallagher. Q. Is his first name C-o-l-m? A. Yes. Q. Colm Gallagher, okay, who else? A. I think that next one was David Camplin. |

| Issue #3:  The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Q. Okay, and L.B. Control Agency? A. Yeah, he just makes it. Q. That's David? A. Yeah. Q. And who's next? A. Dave Mello. Q. Okay. Who's next? A. David Millcreek. Q. Okay. Who's next? A. Derek Debraal. Q. Who's next? A. Eric Binz. Q. All right. Who's next? A. Geoff Dsena. Q. Okay. Who's next? A. Greg Jehelkas. Q. Who's next? A. Jay Duston. Q. Who's next? A. Joe Bark. Q. Who's next? A. John Camplin. Q. Who's next? A. Andy Patch. Q. Okay. Who's next? A. Art Rozzi. Q. Who's next? A. Mark Griep. Q. Does Mark spell his name with a "K" or a "C"? A. I don't know. Q. Okay. A. And Michael Papayans. Q. Who's next? A. I don't know who that one is, Woody. Q. Woody Ris at Yahoo Dot Com, you don't know? A. Yeah. Q. Who's the next one? A. The next one could be Peter Babros. Q. Spell his last name. A. B-a-b-r-o-s. Q. Okay. Who's next? A. I don't know that one, Redondo |

| **Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Beach.  don't know that one.  Q. Who's next?  A. Reno Caldwell.  Q. Who's next? A. Steve Fairbrother. Q. Who's next?  A. Tom Sullivan. Q. That's quite a list. Go ahead.  A. And one thing I think that you asked me about  the ashes, I think there has been one time that they  spread the ashes of Danny [Camplin], I think. Q. Were you present for that?  A. Yeah, but there were a lot of people there.  So, it was like, you know.  Q. So, you were present when Danny Camplin's  ashes were spread in the water at Lunada Bay; is that  correct?  A. I was there for the ceremony, yeah.  Q. And when was that? A. I think he died in '96. So, it was probably in '96 I think or maybe the following year in '97, but maybe in '96. "); Lee Dep., 158:3 to 165:11, Ex. 224  (" MS. POOLEY: Mr. Lee, you've been handed a  one-page document that has been marked as Exhibit 224  to your deposition and is bates stamped Lee |

13663319.10

| Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | 00000591. Deposition Exhibit 224 was marked for identification and is attached hereto.) Q. Have you seen Exhibit 224 before? A. Yes. Q. And Exhibit 224 contains an E-Mail that you sent on January 2nd, 2011, on the lower portion; correct? A. Yes. Q. And who did you send that E-Mail to? A. The one on the bottom? Q. Yes. A. That's the New Year's resolution. This is the one I believe that you guys -- I believe this is the one that started the chain of E-Mails. This is the first one. Q. And so who did you send it to? A. I don't know exactly, but it was a group, I believe. Q. The same group that's listed on the second page of Exhibit 222? A. I couldn't tell you, but it was a group, yeah. Q. There's a reference to, at least not in a peak; what is the peak? A. That's the furthest out. Q. The furthest out from where? A. Further, like if here's this land, and the waves break this way. The guy sitting the |

13663319.10

| Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | furthest out on the peak.  Q. At Lunada Bay?  A. Yeah.  Q. Okay.  A. Peak means where the wave starts to break.  Q. And then you say, to tell you the truth, I would rather see an empty unridden wave at the point then to see certain people riding them.  And where is the point?  A. That's the right, where we surf.  Q. At Lunada Bay?  A. Yeah.  Q. And who are the certain people you would not  like to see riding a wave and prefer an unridden wave?  A. I wouldn't really care, but if I was there, just the takers, you know.  Q. And who are the takers that you were referring to here?  A. Like Troy, you know.  Q. Anyone else?  A. There was Chris, but he really doesn't surf  there.  Q. So, were you only referring to Chris?  A. Chris, me and him have personal kind of issues, not in the water. So, I just feel like he's not a real good person, you know. Other people might differ. So, me and him have a difference. It has nothing to do |

13663319.10

| | |
|---|---|
| **Issue #3:** **The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | with surfing. Q. When you say certain people, on this E-Mail of Exhibit 224, were you referring to anyone other than Troy? A. No, no. Q. Because it reads as more than one person when you say people. So, that's why I'm asking. A. No. You've got to understand, I wrote this like kind of like you get all, obviously, you can listen to me, I'm not the best grammar, not talking stuff. So, I'm just punching stuff in. It might not be perfect grammar. I might use words that mean differently, but so. Q. So, Buffalo head is Troy? A. Yes. Q. And then there's a reference to a faggot knee boarder who rides a Stavros surfboard; is that Troy? A. No, that's Chris. Q. Chris -- A. Peterson. Q. So, you were referring to Chris Peterson as well? A. Yeah. Q. Is Chris Peterson gay? A. No. And I have to say that I was ignorant. I should not say that calling him a faggot. I'm not. I should not have said that. He's not gay Q. And then |

13663319.10

| Issue #3: | The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | you say, and does Chris Peterson ride a knee boarder? A. Yes. Q. And it's a Stavros knee boarder? A. That's the person who made it. Q. Okay. And you say, nothing against Mike; who are you referring to; who is Mike? A. That's Mike Stavros, that's the guy. Q. You weren't calling Mike Stavros a taker, he's just the one who made the knee board; is that correct? A. No. Mike doesn't live in P.V. He lives in San Pedro. That's a totally different group. Q. You weren't referring to Mike as someone you didn't want to see riding the wave; is that correct? A. Mike Stavros? Q. Yes. A. No. I get along with Mike. Q. And then there's a reference to, one who makes millions and drives around in his $100,000 car, but never gives -- A. Uh-huh. Q. -- who is that? A. Yeah, Mark Aricco. Q. Mark who? A. Mark Aricco. Q. Spell his last name. A. A-r-i-c-c-o. Q. Okay. And then were you referring to him |

13663319.10

| | |
|---|---|
| **Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | as some of the certain people that you would rather not see riding the wave? A. No, me and Mark we have our ups and downs.  I've known him since we were in high school. He makes a lot of money. I wish that he would do more to help out the community. Show up for trash pickup. Q. In your view is Mark Aricco a taker? A. It's hard to say because he's a nice guy. I get along with Mark, if I saw him right now even  though I wrote this. I'm totally cordial with Mark, you know.  Q. That's not really my question.  Do you consider Mark Aricco to be a taker?  A. Sometimes when he acts like it, but lately he has been, he's trying to change, I think. Q. So, in January of 2011 did you think of Mike Aricco as a taker?  A. Yes.  Q. And he grew up where?  A. He grew up in Palos Verdes, also. It's Mark Aricco.  Q. Thank you. So, next you wrote, next time you're out in the water and you see one of these takers taking another wave from |

13663319.10

| Issue #3: | The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | your promised land, our church, slash, home, slash, sanctuary, slash, temple, paren, don't think twice and let's take back what they're taking from us; do you see that?  A. Yes. Q. And what did you mean by taking back what they're taking from us? A. Well, I just, nothing specific. I just feel  that they could do more, you know. They just take  waves. They grew up there. They should appreciate  it. So, that's what I basically.  Q. When you say that, that you and the people that you're sending this E-Mail to, let's take back what they're taking from us, how would you take back?  A. Oh, I just mean maybe ride together. We'll just burn them.  Q. So, drop in on them and burn them on their wave?  A. Yeah, that was my suggestion, but understand that the people don't because I said that, they don't do what -- everybody is an individual.  Q. So then you wrote, do not feel guilty when taking back what was ours in the first |

| Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | place.  What were you referring to as yours in the first place?  A. Well, I just feel like, I keep it clean. I feel that it's my home. I feel close to it, you know. I put in a lot of time and I put in a lot of effort to keep it clean. Keep it, you know, semi, keep it all respectful and stuff. I have a deep feeling for the place. So, that's what I meant.  Q. And you are referring to Lunada Bay in  particular --  A. Yes.  Q. -- as your home --  A. Yes.  Q. -- and your church and your sanctuary and your temple?  A. Sure, yes, yes."); Pltfs.' RJN Supp. Opp to City MSJ., Exs. A & B [7/5/91 & 5/8/95 LA Times Articles]; Wolff Decl., ¶ 39, Exs. 43 [Transcript of C. Ferrara Audio Recording] and 38 [PLTF002027: "it's like a fraternity. They're going to be a dick to you because they want to see how bad you want it. You know what I mean, like a fraternity, they're going to make you drink frickin' piss to see how bad you want to be in this |

13663319.10

| Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | fraternity"; also stating "we are family"]; RJN, Ex. A; see also, PAMF 31. |
| 26. The Bay Boys have a pecking order, where: (a) the veterans are older Bay Boys who helped shape the rules and have the greatest status and privileges, (b) the hardcore are those who enforce the rules, and (c) the associates are those hoping to move up in status, or alternatively, those who are alumni who have moved away and return occasionally.  Wannabes must earn a position, and outsiders have no place. | 26. Lee Depo., 211:8-12 (explaining "a pecking order" among the surfers at Lunada Bay and "no one really goes beyond it.  Lunada Bay people that surf there regularly . . .  pretty much know[] where they sit."), 44:3-7 ("Q. When you say – when you talk about paying dues, what do you mean?  A.  Just like what I just explained, just putting in your time in a place.  Respecting the people that were there before you, you know, just little things."; Wolff Decl., Ex. 8 at Lee 00000001 [Sang Lee email January 8, 2011: "i [sic] was brought up this way by u [sic] guys (the older boys ( [sic] not the fluffy powder puff ones but the real solid ones . . . . . . . . . . [sic] u [sic] guys made up the rules n [sic] term[s] of engagement n [sic] I WILL DIE BY THESE RULES" (emphasis in original), Lee 00000595 [email from Bay Boy Tom Sullivan to |

| Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Sang Lee dated January 16, 2014, directing Defendant Lee to alert "the whole crew" to a surfing event scheduled to occur at Lunada Bay which was organized by outsiders "so everyone knows and we can all be on the same page", with Bay Boy Charlie Mowat responding "I will be on the patio alllllllll [sic] day on Monday throwing out heckles and sporting a BBQ."; Johnson Depo., 26:16-27. |
| 27. At about 60 years old, Defendants Frank Ferrara, and Angelo Ferrara are among the older members who sit at the top of the Bay Boys' hierarchy. Defendants Brant Blakeman, Sang Lee, and Alan Johnston are part of the hardcore enforcers. Charlie Ferrara and Michael Rae Papayans are second generation associates. | 27. Lee Depo., 212:16-213:24, 76:18-77:15 (Frank Ferrara has "priority" over a wave because he's been there longer); A. Ferrara Depo. 117:13-19 (identifying Brant Blakeman, Frank Ferrara, Sang Lee, and Alan Johnston as several of "the top ten people that surf [Lunada Bay] regularly for big waves"); F. Ferrara Depo.42:7-25, 43:1-25, 56:8-10, 87:10-13, 202:11-25, 203:1-2, 235:25, 236:1-2, 262:2-22, 264:23-25, 265:1-3; *see* Plaintiffs' Statement of Additional |

| Issue #3:      The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Material Facts ISO City Defendants' Motion for Summary Judgment, No. 195; Wright Decl. ISO Motion for Class Certification ¶¶ 11, 17, 18 [Docket No. 159-9] |
| 28. The Bay Boys started as schoolmates, neighbors and extended family, but it grew into criminal activity when they made concerted effort to block outsiders from constitutionally-protected submerged tidelands.  As a general rule, all Bay Boys are "born-and-raised" local: The individual defendants grew up in Palos Verdes Estates, and most of them attended Palos Verdes High School – which is a few blocks away from Lunada Bay. (A few attended Rolling Hills High School, aka, Rancho Palos Verdes High School because Palos Verdes High School had closed for a few years due to a lack of high school age students in the area.) . | 28. Barber Depo. 71:8-72:3 (Charlie Mowat attended high school in Palos Verdes Estates); Blakeman Depo. 49:5-9 (attended Palos Verdes High School ), 72:24-73:2 (Defendant Alan Johnston grew up approximately three blocks away from Blakeman), 103:23-24 (Defendants Blakeman and Lee have known each other for approximately 25 years); A. Ferrara Depo. 27:2-3 (attended Palos Verdes High School); C. Ferrara Depo. 19:14-20 (attended Palos Verdes Peninsula High School); F. Ferrara Depo. 21:12-13 (attended Palos Verdes High School); Johnston Depo. 17:24-18:5 (graduated from Palos Verdes Peninsula High School); Lee Depo. 27:14-15 (attended Palos Verdes High School), 127:10-14 |

| Issue #3:      The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | (explaining that a non-local is someone who did not grow up in Palos Verdes Estates or attend a high school); N.F. Depo. 93:9-18 (stating his family, including his father, Defendant Angelo Ferrara, grew up together with the family of a current PVE Police Officer, Sean Crisfield); Johnston Depo. 42:20-43:1 (Johnston has surfed at Lunada Bay "with pretty much everyone on the defendant list"); RJN, Ex. A. |
| 29.The Bay Boys have established rules, terms, or practices that its members must follow. The foremost rule is come alone and don't bring a friend.  And the second most important rule is deter outsiders from coming, i.e., deter them, block them, threaten them, "bark" or yell at them, provoke them, hurl pejoratives at them, damage property, surf recklessly near them, do not follow surfing etiquette near them, fight them if necessary, film them, | 29.Lee Depo. 118:10-20, 119:14-15, 120:24-121:1, 123:7-8, 22-23 (although there is no "written rule book" there is "an understanding" among local surfers at Lunada Bay as to the ground rules for surfing there); Johnston Depo. 63:20-64:2; Wolff Decl., Ex. 8 at Lee 00000001 [Def. Sang Lee Deposition Exhibit 222] ("i[sic] am who i[sic] am (with the terms of being a solid person, friend n a pirate) because I was brought up this way by u guys (the older boys)…u guys made up the rules n |

| **Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| sexually harass them, and otherwise make them uncomfortable.  Other rules include (a) show deference to the Bay Boy hierarchy, (b) maintain secrecy, (c) don't share surfing photos of Lunada Bay, (d) be respectful to neighbors and where you park your car, and (e) don't change in your wetsuit on top of the bluff. | terms of engagement n I WILL DIE BY THESE RULES … what we have in our backyard is priceless n u cant put a price on it…I want to keep this place sacred like its [sic] supposed to be….this place is not just a surf spot… its [sic] our home n I am not going to share it ….".). |
| 30. The Bay Boys perpetuate and enforce their rules, terms, or practices by hazing and pressuring newer members and potential members to prove their willingness to follow these rules, terms, or practices. | 30. Wolff Decl., ¶ 39 & Exs. 43[Transcript of C. Ferrara Audio Recording] and 38 [PLTF002027: they will "make you sit down here [at the beach] when it's all sunny or they're gonna make you walk up to a . . . to the liquor store to go get 'em ice for their beer and you're, you know, tired, but 'oh, you want a slurpy?  You gotta go do that.'"]; "if they came down and showed some respect when the surf's good without the board, and hung out and got to know people who surf here, know the routes, know the background of the people here, that's a start.  That's a start. |

13663319.10

| Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | The ladder's way up here because, like I'm trying to say, this is all they have."; hazing is "just respect, and it teaches people respect and how to be a man and . . . it's all out of love."]; Spencer Depo., 311:4-15 (Defendant Sang Lee had to "start bringing beer for an amount of time . . . to basically get friendly with the guys down at the fort and eventually . . . [there's] an amount of beer that lets you get in."); Lee Depo., 44:20-45:2, 44:5-23 (new surfers must "pay their dues" by showing respect to the people who have been there longer, including by "not paddling deeper than them, getting out of their way when riding waves, you know."), Lee Depo., 122:18-8, 123:13-23; 137:6-11; 138:4-15 (Sang Lee showed respect for the older surfers by "not paddling deeper than them, getting out of their way when they're riding waves," "know[ing] [his] place in the line-up," come by himself, wait for hours for a |

| Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | wave and tolerate locals dropping in on him, and say nothing and have a "smiling happy face" when someone dropped in on him.  It took him "years to gradually little bit get further up, further up, further up" in the line-up and 5 to 10 years before locals would stop dropping in on him; Johnston Depo. 26:16-27:8 (when Defendant Johnston grew up, he would get heckled from sun up to sun down and it molded him into the person he is today). |
| 31. The Bay Boys' rules, terms, or practices include the rule of "no outsiders" at Lunada Bay and respect those above you in the Bay Boys' hierarchy. | Lee Depo. 86:6-11 ("it's kind of like the etiquette up in the area" to not bring friends), 114:19-25 (younger locals must be deferential to and respectful of the older locals, meaning, "just being out of their way."), 118:10-20, 119:14-15, 120:24-121:1, 123:7-8, 22-23, 189:8-12 ("Q. Did you say, you can't have friends outside here because they're going to want to come out here and surf and you have to pick and choose like FaceBook?  A. Yes."); Blakeman Depo. 158:7-12 (surfers |

| Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | at Lunada Bay nee189:8-12 ' to "stay[] out of the way of people."), 234:1-8 (Blakeman doesn't "invite anyone to surf the Bay" because "[i]f someone invited someone, then they invited someone."); Hagins Decl. Supp. Pls.' Mot. Class Cert ("Hagins Decl."), Ex. 6 [Surfer Magazine interviewed Frank Ferrara in 1991 and published the following statement by Frank Ferrara, stating in part: "One guy comes and surfs it, and then he brings two or three guys and they bring three or four of their friends and it snowballs and gets out of hand. That's exactly why we want to protect it," he is quoted as saying. "I've got two little boys who are 7 and 5 and I hope one day they they'll be out there shralping and tearing it up without a crowd."); Franklin Decl., Ex. 37 [Docket No. 324] [The Guardian Video of Sang Lee stating, "[Y]ou can't have friends outside here because they're going to want to come out here and surf and you have to |

| Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | pick and choose like FaceBook."; F. Ferrara Depo. 149:21-25, 150:1- 22, Ex. 285, ("MR. OTTEN: Let's mark that document as Exhibit 285. [OBJECTION] Q. This was the article that you were mentioning earlier; is that correct? A. Yes. Q. Do you know who did the interview? A. I don't remember the guy's name, but they called me several times. Q. Okay. A. They called me several times to do an interview. And I declined a couple of times. And  then when Jim had called me, hey, would you do this, I said all right.  Q. Right. A. So then I agreed to do it. Q. And when you say Jim, that's Jim Russi; is that correct?  A. Yes. Q. Was Jim working for, is it Surfer?  A. Yeah, Surfer. Q. Was Jim working for Surfer? A. Yeah. I believe that Jim worked for about  Surfer and Surfing at the same time, both magazines."), 156:11-25, 157:1-2, 159:23-25, 160:1-3, 160:9-25, 161:1-4 ("Q. Okay. So, he says to you in this article, 14:15:38 |

13663319.10

| | |
|---|---|
| **Issue #3:**    **The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | what is your -- A. I know it by heart. Q. What's your local spot. And you say, just call it a secret spot. A. Uh-huh. Q. What did you mean by that? .A It's none of anyone's business where I surf. If the article was about me, why would they talk 14:16:08 about the surfing spot. Q. I don't know. A. I'm just sharing with you. That's why he didn't need the name of it. Q. Why not just say Lunada Bay? A. It doesn't need to be exposed. [OBJECTION] A: That was my choice. Q. When you say, the people who have come up there in the past haven't really respected it, excuse  me, what did you mean by that? A. Probably people that don't surf there on a  regular basis is maybe what I meant at that time. Remember, it's 1991. Q. And have your opinions with respect to anything about Lunada Bay changed as you've gotten older? [OBJECTION] A. Well, I'm glad that they got rid of the patio. Q. I figured |

| Issue #3: | The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
|  | you would be; right? A. That's how it was when I started surfing there. There was no patio. It seems like it's brought back to the same environment. Q. That was the idea. A. You guys did it, so, there it is.  Q. And that's a good thing for you; right, I mean, who wants to go party at the beach if you're there to go surfing; right. [OBJECTION] A: I didn't care, either way, but that's how it was when I started surfing there. So, me personally, that's how it was when I started, so, it's nice."), F. Ferrara Depo. 166:11-25  167:1-11 ("Q. All right. We're almost at the end of this. Do you see where it says, as far as pecking order goes at Palos Verdes, are you on the upper ring. You say there are some older guys that surf there, but we're still fanatics; what did you mean by that? A. Well, the older guys that surf there now live in Hawaii. They were from, believe it or not, Hermosa. They were Hermosa guys that were the older guys. And then |

13663319.10

| | |
|---|---|
| **Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | the guys like three to five years above me that I started surfing with, it was like the wave at Lunada Bay, you kind of find a spot where you would like to sit. And that's where you would want to sit. And that's where they would call it kind of the pecking order.  If you want to choose the most critical or non-critical, towards the end of the wave or deep spot on the wave. That's what we meant by the pecking order. Q. So, the younger people give deference to the older folks that have been surfing there longer?  A. I believe it's the older folks have found a spot in the line-up where they like to sit and takeoff."), 168:22-25; 169:1-25; 170:1-25; 171:1-10; 174:18-25; 175:1-7 ("(Deposition Exhibit 287 was marked for identification and is attached hereto.) Q. This is entitled, Today's Lesson: Don't Be A Kook. And I think that you said that this was what you wrote in response to the last exhibit which was called, Teach the Children Well? A. |

| Issue #3: | The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Yes.[OBJECTION] Q. And you wrote this; correct? A. Yes. Q. And did you write it in the year of 1992? A. Whenever the date was. Q. So, this is responding, it says, responding to Teach The Children Well letter, February of 1992; it would have been in that time frame? A. Yeah. Q. You say responding to the Teach The Children Well letter, February of 1992 by the Kook, Don Boller, of Long Beach, California. I know there's no surf in Long Beach, Don. So now I know why you have to travel to surf. That's your problem, not mine. Q:What did you mean by that? A. Just what it says." F. Ferrara Depo., 220:1-16; "Ferrara acknowledged that he was quoted Surfer Magazine in 1991, explaining that the Peninsula surfers, quote, protect the break so it can be enjoyed by them and their children without a crowd.  A. I didn't state that like that. Q. Okay. What's wrong with the way that she wrote it? A. Well, she said Ferrara |

13663319.10

| | |
|---|---|
| **Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | acknowledged he was quoted in Surfer Magazine in 1991 explaining that Peninsula surfers protect the break so it can be enjoyed by them and their children without a crowd. She missed shralping it up without a crowd. Q. Okay. A. It sounds a little fun. Lighten it up. You got the shralping; right." ); Johnston Depo. 35:3-10 (Johnston has never brought any friends from outside the area to surf at Lunada Bay because he thinks "it's just disrespectful just for everyone that has paid dues to grow up there or just – it's just something that you don't do in the surfing world."); A. Ferrara Depo. 64:24-65:2 ("Yeah, that's always kind of etiquette, you know.  Like, wait your turn. A lot of people don't understand that. They just keep coming back for another wave everywhere."), 140:11-13 ("Do other people that surf Lunada Bay welcome outsiders? No."). |
| 32. Defendants Angelo Ferrara and | 32. Lee Depo. 121:5-16, 107:17-24; Wolff |

| | |
|---|---|
| **Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| Frank Ferrara (father to Defendant Charlie Ferrara), "made up the rules [and] terms of engagement" decades ago. | Decl., Exs. 8 [Def. Sang Lee Deposition Exhibit 222, Lee 00000001]; 43 [Transcript of C. Ferrara Audio Recording], & 37 [PLTF002027: "It's the way it's been here for . . . as long as my dad was a kid.  My dad's 59 years old.  For 59 years it's been like that.  Who are you to come here and change something?"]; Wright Decl. ISO Motion for Class Certification ¶17 [Docket No. 159-9]. |
| 33. The Bay Boys' purpose and common effort is to exclude "outsiders" or "non-locals" from visiting or surfing at Lunada Bay. | 33. Wolff Decl., Exs. 8 [Def. Sang Lee Deposition Exhibit 222, Lee 00000001] (Lunada Bay "is not just a surf spot" but instead "its [sic] our home . . . n [sic] I am not going to share it with people who r [sic] selfish n [sic] not understanding of their surroundings."; "I want to keep our home the way it should be kept (nice n [sic] clean with no takers).")]; Lee Depo., 93:8-24; 125:21-126:3 ("everything would get destroyed" and it would "ruin everything" if outsiders were allowed to |

13663319.10

| Issue #3:      The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | surf at Lunada Bay); Wolff Decl., ¶ 39 & Exs. 43[Transcript of C. Ferrara Audio Recording] and 38 [PLTF002027: [Charlie Ferrara stating "the reason is one person gets along – oh, they're cool – everyone gets along, and then it turns into Rincon and Malibu.  Oh, they got the sweet ticket . . . why didn't I get the golden ticket?  Trust me, it's how it goes."]; RJN, Ex. B & Wolff Decl. ¶ 45 [5/8/95 LA Times Article] (the exclusion of outsiders is "not just a barbaric thing, it is done for a purpose."); Blakeman Depo. 298:20-299:7; 301:19-24; 307:14-21 ("Q. Would it be, in your opinion, safer if there were trail improvement? . . . A. I think it'd be more dangerous because more people would access it"); Pltfs.' RJN Supp. Opp to City MSJ., Ex. A [7/5/91 LA Times Article (The Bay Boys exclude outsiders so they can "have [their] own little sanctuary" while other beaches are filled with intense crowds.)]; Johnston Depo. |

13663319.10

| Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | 26:16-28:2 (Johnston believes that the Lunada Bay "surf break is just really crowded and there isn't any excess waves for outsiders"), 28:2-15 (outsiders are "people who don't know everybody at the surf break," referring to Lunada Bay). |
| 34. The Lunada Bay locals have a gang mentality, and attempt to dissuade outsiders from coming to City.  They are territorial, discourage outsiders from using the beach, and intimidate outsiders. | 34. Best Depo. 157:22-25, 158: 1-25, 159:1-21; Kepley Depo. 67:15-27, 68:1-12 ("Q:  Now, you said that the Bay Boys have a gang like mentality or a gang mentality, what did you mean by that?..[objections and colloquially]… A:  Okay.  So the gang like mentality that I referred to was the way in which gangs, street gangs, often claim a territory.  And will confront people who come into their territory, where you from, what are you doing, type of thing.  Some of what was relayed to me with respect to those involved in disputes down on Lunada Bay in dissuading them from coming to surf there, because they are not from there.  That was a similarity to how some gang |

| Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | members might speak to a person coming into a particular area."); Kepley Depo. 221:4-8 ("Q:  Earlier you said you thought they had a gang mentality, but they are not a gang because they are not shooting people and they are not stabbing people; is that right?  A:  I did make statements like that, yes.); Franklin Decl. ¶26, Ex. 18; see also Plaintiffs' Additional Material Facts ISO Opp. to City's MSJ.  Plaintiffs' Additional Material Facts [Docket No. 323] Nos. 163, 166, 171, 172. |
| 35. The Bay Boys' longstanding rules, terms, or practices include harassing and intimidating "outsiders"  who visit or try to surf at Lunada Bay, including through seeking to have large numbers of Bay Boys present when visitors come to Lunada Bay, directing pejoratives at outsiders ("faggot" "bitch" "whore" "kook" and even dressing in black face on Martin Luther King Jr. Day), approaching visitors | 35. Neushul Decl. ISO Motion for Class Certification ¶18 [Docket No. 184-1] ("Because of its reputation, most non-City-residents and visiting surfers avoid Lunada Bay.  This is because of the Bay Boys' efforts to discourage visitors from coming to Lunada Bay is a deterrent.  Indeed, while it's a prized wave, Lunada Bay is known to only have a few surfers using it."); Neushul Decl. ISO Motion for Class Certification ¶19 [Docket No. 184- |

| **Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| aggressively, blocking paths to the shoreline, telling visitors they cannot or should not be coming to Lunada Bay, heckling, starting or trying to start fights, throwing rocks, vandalizing cars, circling surfers in the water so that they cannot catch waves, and "dropping in" on or "burning" surfers. | 1] ("I have long known of the reputation of the Bay Boys as a longtime resident of Southern California, surfer, and a surf historian."); Barber Depo. 101:8-22 ("Q: How about a name, Peter McCollum?  Do you know that name? A:  I know the name.  Q:  How do you know the name?  A:  He was involved in an incident – '95.  I don't know.  I has just gotten on, I believe.  There was a – an argument, and it made the news.  I know he was on it.  I know the video shows him kid of yelling on the video, but that's all.  I've never met Mr. McCollum in my life, though.  Q:  Okay.  So the video of Mr. McCollum yelling on the top of the bluff – I think it's Mr. Hagens and Hamboy [sic] [a boy].  Do you recall seeing the video?  A.  Yes, I did see that.  Q.  When did you see that?  A.  Probably not long after it happened."); Franklin Decl.¶17, Ex. 16,¶ ¶ 18,19 ("'You got it son?  You got it?  Hey, I'm not touch'n nobody.  Nothing.  But you |

| Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | won't surf here again boy.  You won't surf here again.  Fuck that.  Fuck you guys.  I've lived here too long for this shit."); Blakeman Depo. 230: 16-25 ("Q: Have you ever heard of someone standing at the top of either the Middle trail or the Point trail questioning why they're there, in terms of using Lunada Bay?  A:  I'm aware of the Peter McCollum incident."); Johnston Depo. 212:20-213:8 (saying that circling another surfer is the worst thing you could do to someone and likely to make them mad.  And, see, e.g., Bacon Decl. ISO Motion for Class Certification [Docket No. 168]; Carpenter Decl. ISO Motion for Class Certification [Docket No. 161]; C. Claypool Decl. ISO Motion for Class Certification [Docket No. 176]; K. Claypool Decl. ISO Motion for Class Certification [Docket No. 166], Claypool Decl. Supp. Pls.' Mot. Class Cert. ("Claypool Decl."), ¶¶ 12 ("On November 5, 1995, I attended "Take Back Our Public |

13663319.10

| Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Beaches Day -- Surf Lunada Bay Peaceful Protest," a public protest of localism in Palos Verdes which was organized by Geoff Hagins.  There were people on each side yelling at each other and lots of screaming.  But a few Lunada Bay locals were becoming extra aggressive…. with the Bay Boys screaming and demonstrating physically threatening behavior. It seemed like the locals wanted to start a fight …. someone called in a bomb threat and the police made the visitors and others on the shoreline leave the beach."), ¶ 14 ("The first time that I attempted to surf the point where the Lunada Bay locals primarily surf, however, was quite a different experience. …As soon as I reached the lineup, the person began to hassle me.  He paddled over and stated: 'So you are bringing the whole circus?'  He was about 45 years old.  Even though it was not crowded, this person purposefully and dangerously |

13663319.10

| | Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. |
|---|---|
| | **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | proceeded to drop in on me on about five waves.  I am confident he was attempting to discourage me from returning by trying to make my experience that day completely miserable."), ¶ 19 ("One morning in February 2014, I went to surf Lunada Bay and arrived at 4:45 am.  I walked to an area of the cliff north of the trail to check the waves.  Suddenly two guys walked up to me - one on each side. They stood unusually close to me, particularly since I did not know them, and stared at me in an effort to intimidate me.  I was so frightened that I walked back to my truck but the two men followed me. The guy on my left was large with sandy blond hair and looked middle aged. The guy on my right and had brown or black hair and was thinner and younger.  I did not feel safe so I got in my car and left."); 20-21 ("March 11, 2014 was the first time that I surfed Lunada Bay since ….many years before….  I drove |

| 1 | **Issue #3:** **The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| 2 | | |
| 3 | **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 4 | | |
| 5 | | there with my friend Tom Wolley who |
| 6 | | stayed on the top of the bluff with a |
| 7 | | camera and cell phone.  As I walked down |
| 8 | | the 'goat trial' nearest the point in front of |
| 9 | | the Rock Fort, a teenager passed me and |
| 10 | | turned around.  I think it was Angelo |
| 11 | | Ferrara's son.  Slowly walking backwards, |
| 12 | | the teenager said: 'You are the one |
| 13 | | posting on Facebook.  You shouldn't be |
| 14 | | here.  Kook.  You are starting shit on FB.' |
| 15 | | Around this time, people were posting |
| 16 | | things on the Aloha Point Facebook to |
| 17 | | encourage outsiders to surf at Lunada |
| 18 | | Bay.  I guess this kid thought I had |
| 19 | | something to do with it.  I then attempted |
| 20 | | to make my way down the goat trail to the |
| 21 | | water, but because I had never proceeded |
| 22 | | down the trail before and because it is not |
| 23 | | marked, I accidentally took a turn down a |
| 24 | | wrong extension and could have fallen.  It |
| 25 | | was extremely frightening.  When I |
| 26 | | eventually made it to the bottom and |
| 27 | | started putting on my wetsuit, one of the |
| 28 | | |

13663319.10

| | Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|---|
| | **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | | local surfers immediately got in my face. He was about 5'10 and wearing faded jeans. He was within inches of my face yelling how stupid I was and that I had no business being down there. I could feel spit from his mouth hit my face as he screamed: Go out in the water and see what happens. You should just go now. Get out of here now. You're lucky you did not have to be rescued. After that guy left, another local came over and made similar comments. One after another, still more locals would come over and say the same thing: You shouldn't be here – you are not going to catch a wave, go out there and see what happens. I ended up paddling out but never went to the peak in an effort to avoid them. I caught a few smaller waves while sitting in the water close to the beach."), 23 (in January 2015, Brant Blakeman yelled at K. Claypool while he was in the water at Lunada Bay, stating "Try and catch a wave and see |

PLAINTIFFS' ADDITIONAL MATERIAL FACTS

13663319.10

| Issue #3:      The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | what happens.  There is no fucking way you're getting a wave."); Wright Decl. ISO Motion for Class Certification ¶ 4 [Docket No. 159-9] (When Wright visited Lunada Bay with a friend when he was about 16 years old, "two men in their 30s or 40s who were on the bluff walked over to us and said things including: (a) 'You can't surf here;' (b) 'You will have a terrible time if you paddle out here;' (c) 'If you try to go out, everyone will drop in on you;' and (d) 'You won't catch any waves if you try to paddle out here.' These men, whom I believe to be Bay Boys, followed us back to the car where my friend's mother waited, and escalated their verbal threats."); Wright Decl. ISO Motion for Class Certification ¶ 9 [Docket No. 159-9] (On January 6, 2012, when Wright visited Lunada Bay and was harassed by Bay Boys upon approaching the shoreline, he got in the water and "was verbally accosted by a new group of Bay |

| Issue #3:   The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Boys, who yelled at me and called me a 'fucking kook.'  They said, 'What the fuck are you doing surfing here?' Any time I attempted to paddled to the main break, they also said, 'Get the fuck back on the inside. You can't surf out here.'  I was dangerously dropped in on several times, which forced me go left towards the rocks and away from the breaking waves. The Bay Boys also shot their surfboards at me in an attempt to knock me off waves as I was catching them."); Wright Decl. ISO Motion for Class Certification ¶ 12 [Docket No. 159-9] (Wright "had been waiting my turn for waves and was the deepest outside and closest to the peak when a set wave came through. By regular surfing norms, I had priority. I caught the 10- to 12-foot-high wave and was up riding for several seconds. A person whom I now understand to be Alan Johnston paddled the wrong way on this wave, dropped in on me going the wrong |

13663319.10

| Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | way on the wave, and yelled, 'Oh no, you don't!'  Dropping in on a surfer while going the wrong way is well known to be against normal surf etiquette. Alan Johnston then collided with me, and our leashes got tangled. After we surfaced from the collision, Johnston then got close to me and yelled, 'You had to fucking take that wave, didn't you!'  I took off my leash to get untangled as we were still in the surf and held the leash close to my board. Because there was no flex in my leash since I was holding it close to the board, the next wave that came through then broke my leash plug and the board was carried into the rocks, breaking my board up badly— essentially ruining a new board.  I had to swim in over rocks to get my board and cut my hands on the rocks doing so.  In my more than 20 years of surfing, I'm confident that Johnston was attempt[ing] to purposefully injure me."); Wright Decl. ISO Motion for Class |

13663319.10

| **Issue #3:** **The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Certification ¶ 13 [Docket No. 159-9] (A Bay Boy yelled "fucking faggots" as Wright was getting ready to go down to surf with Ken Claypool. "The person who called us 'faggots' later returned when I was leaving and attempted to tell me how I could surf Lunada Bay: 'Go early, come alone, and don't bring a GoPro or you will be a target to be hassled.'"); Wright Decl. ISO Motion for Class Certification ¶ 15 [Docket No. 159-9] (After a devising a system to arrive early to avoid the Bay Boys' harassment, on one early morning, "two younger surfers, who I understand to be Bay Boys, were already in the water. These two were in their mid-to-late 20s. I believe one of them could have been one of the younger Ferrara boys. They said words to the effect of, 'You think you can sneak up on us by paddling across the bay from Middles and surf here?  No way. You can't surf today.'  I explained that I'd talked to Zen Del Rio and that he said it |

| | |
|---|---|
| **Issue #3:** | **The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** |

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | was okay if I came alone and came out early.  They said, 'Don't name-drop out here.' And then, they paddled up within a few feet of me. They yelled, 'We can do this the easy way—you paddle in right now. Or we do it the hard way, and you paddle in with a broken nose.'  They raised their arms like they were going to hit me; I believed they  intended to carry out their threat to harm me.  I paddled in because I felt they would make good on their threat to cause me harm."); Conn Decl. ISO Motion for Class Certification [Docket No. 174]; Gero Decl. ISO Motion for Class Certification [Docket No. 170]; Gersch Decl. ISO Motion for Class Certification [Docket No. 162]; Hagins Decl. ISO Motion for Class Certification [Docket No. 178]; Innis Decl. ISO Motion for Class Certification [ Docket No. 165]; Jongeward Decl. ISO Motion for Class Certification [Docket No. 177]; Krell Decl. ISO Motion for Class Certification |

13663319.10

| | | |
|---|---|---|
| **Issue #3:** | **The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | | [Docket No. 180]; Lanning Decl. ISO Motion for Class Certification [Docket No. 172]; MacHarg Decl. ISO Motion for Class Certification [Docket No. 160]; Marsch Decl. ISO Motion for Class Certification [Docket No. 179]; Neushul Decl. ISO Motion for Class Certification [Docket No. 173]; Otten Decl. ISO Motion for Class Certification [Docket No. 159-3]; Perez Decl. ISO Motion for Class Certification [Docket No. 164]; Sisson Decl. ISO Motion for Class Certification [Docket No. 169]; Will Decl. ISO Motion for Class Certification [Docket No. 163]; Young Decl. ISO Motion for Class Certification [Docket No. 167]; Ollinger Decl. ISO Opp to City MSJ, ¶¶ 6, 8, 9, 10; Pinkerton Decl. ¶¶ 5-7; *see also* Plaintiffs' Statement of Additional Material Facts ISO Opposition to City Defendants' Motion for Summary Judgment [Docket No. 323] 155 ("During the first Lunada Bay Martin Luther King, |

13663319.10

| Issue #3: | The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** | |
| | Jr. Day event on January 20, 2014, with City police present, a native Hawaiian (and later Coastal Protection Ranger volunteer) Christopher Taloa was told by a local wearing blackface and an afro wig: 'You don't pay enough taxes to be here.'), 156 ("When Taloa attempted to surf Lunada Bay, he was asked: 'Who are the black guys on the cliff?' And then he was told by a local surfers that they owned the local police and judges. Taloa was threatened with this: 'I'm going to have you arrested and have you f*@#&% in the ass by a black or Mexican in the holding cell.' ) 157 ( "In an effort to deter outsiders, local surfers direct pejoratives at them like 'kook,' 'gook,' or 'fucking faggots.'), 158 ("City admits few persons of color and few others in protected categories use Lunada Bay. "), C. Ferrara Depo. 84:6-7 ("I feel like prejudices over in Hawaii. They really didn't like white people."); Johnston Depo. 100:1-25 | |

| Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | (Johnston says the word "gay" means "lame" in surfer talk, which is how he uses it.),  100:13-14; 103:8-14 (Johnston says "super gay" he means "super lame."), 101:5-10 (Johnston wears a shirt with "LGBT" on it, with pictures depicting "liberty, guns, beer, and tits" as the true meaning for him.). |
| 36. Over the years, the Bay Boys have revised and perfected their strategy of exclusion, aiming to make outsiders' experiences at Lunada Bay so miserable that they won't come back. | 36. Wolff Decl., ¶ 39 & Exs. 43 [Transcript of C. Ferrara Audio Recording] and 38 [PLTF002027 (Charlie Ferrara, stating: "I can't tell you you can't be down here.  I can't tell you that, you know.  I can't tell you you can't go surfing, but what I can do is make sure you don't have fun out there.  You know what I mean?  And then what's the point of that?  You're going to come here when the surf's good everywhere else and get burned and have a bad day?  That's, cuz that's, you know, that's what we're gonna keep on doing.  They want to come out we're just gonna keep on burning them |

| | |
|---|---|
| **Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | and make them have a bad session because we're going to stick together and like attack cuz we are.  We are family"; "They've been recorded and stuff while they're, you know, rousting [outsiders] and get recorded and they get in trouble . . . that's why now we're not, you know, doing stuff, and now we're just burning people."]; Wolff Decl., Exs. 8 [Exhibit 223 to Lee Deposition, Bates Lee 000000015 (Defendant Sang Lee reminded other Bay Boys in an email of their preferred strategy to exclude outsiders: "[I] do NOT want to see my friends get in trouble with the law / theres [sic] other options to deterr [sic] outsiders from surfing our home such as we can ride together or its [sic] a long walk up the trail in bare feet."  Defendant Lee further explained that he did not want to see other Bay Boys "so fired up on trolls" that they "immediately get[] into fights or threaten[] the outsiders n [sic] get into |

13663319.10

| | |
|---|---|
| **Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | trouble."  Instead, he explained "THERES [sic] OTHER OPTIONS THAN THREATS N [sic] VIOLENCE TO MAKE THEIR TIME IN OUR HOME A BUMMER.")]. |
| 37.Exclusion of nonlocals by the Bay Boys takes many forms.  The Bay Boys will hurl pejoratives, heckle, and hassle outsiders who try to surf at Lunada Bay. The Bay Boys will violate the local surf-riding ordinance, block outsiders movements, and will also drop in on the outsiders putting them at serious risk of harm.  The Bay Boys expect the outsiders to "take it, deal with it, and just don't mouth out." | 37.Lee Depo. 137:8-137:3, 138:4-15; 83:16-18, 84:5-17, 85:2-3, 155:7-16 (Lee admits to heckling nonlocals at Lunada Bay between 10 and 30 times because he "just felt like it."  He also recalls hearing others yelling "boo" at outsiders), 225:4-13 (Lee admits there is "maybe a little bit [of Localism]" at Lunada Bay because "people get heckled and [he] heckle[s] people."), 152:17-25, 153:11-13 (explaining that the Bay Boys have a variety of means of making outsiders' time in "their home" a "total bummer," like by dropping in on them or heckling them), 75:3-7 (if someone is not following proper surfing etiquette, Lee "might drop in on them . . . yeah, I'm going to go."); Blakeman Depo. 167:17-21, 169:4-9 |

| Issue #3:   The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | (stating it is okay to drop in on a surfer who doesn't wait his or her turn and that he has seen it happen); *see also* Pltfs.' RJN Supp. Opp to City MSJ., Ex. B [5/8/95 LA Times Article]. |
| 38. The Bay Boys seek to discover plans of "outsiders to visit or surf at Lunada Bay, such as by looking for references to Lunada Bay in social media, and then coordinate to be present in large numbers to harass the visitors. They coordinate by e-mail and text messages, among other things. | 38. Wolff Decl., Exs. 8 [Exhibits 225, Bates Lee 00000595 & 226, Bates Lee 000000596] (On January 16, 2014, Bay Boy Tom Sully emailed Defendant Sang Lee and asked him to forward an email "to the whole crew so everyone knows and we can all be on the same page."  The email related to a Monday, January 20, 2014 Martin Luther King, Jr. Celebration event that was planned to take place at Lunada Bay, much to the Bay Boys' chagrin.  Defendant Sang Lee dutifully passed along Tom Sully's email to "the whole crew."  Bay Boy Charlie Mowat responded to Defendant Lee's email by stating "I will be on the patio alllllllllll day on Monday throwing out heckles and sporting a BBQ.  I'm already warming up. |

| Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Don't miss the fun."  Recipients of this email included Andy Patch, Charlie Beukema (Defendant Angelo Ferrara's stepson), David Melo, Mark Griep, and Zen Del Rio, among many others.  Charlie Mowat again wrote to Defendant Lee, Tom Sully, and several others, to say "[h]ope you're off Monday for the fiasco. I'm going to sponsor a BBQ and be on the patio all day."); Johnston Depo. 74:6-77:21, Ex. 342 (Cell Record Detail) (texts referring to outsiders as "trolls" and confirming that they didn't get to surf); Johnston Depo. 156:18-22,  Ex. 344 (Phone Bill Records); Johnston Depo. 157:1-12 Ex. 345 (Text Messages). |
| 39. When Bay Boys find "outsiders" at Lunada Bay, they coordinate to have more Bay Boys come to Lunada Bay in large numbers. They coordinate by mobile phone calls and text messages, among other things. | 39. Wolff Decl., ¶ 39 & Exs. 43 [Transcript of C. Ferrara Audio Recording] and 38 [PLTF002027 (Charlie Ferrara, stating: "I was calling people to get down here.  Get the frick out.  We need people surfing.")]; Wolff Decl., Ex. 6 (Johnston Depo., Ex. 342) [Alan |

13663319.10

| | |
|---|---|
| **Issue #3:** **The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Johnston Chat Messages at entries 1036-1038: "If u really wanna be a bay boy we might meet [sic] your help tomm," "Could be a great help if ur there !!! Supposed to be a police setup at our spot calling all gards [sic]."]; Wolff Decl., ¶¶ 40 & Ex. 39 [Defendant Lee Cell Phone Records at 0273-0275, indicating Sang Lee called Defendant Blakeman 62 times on January 29, 2016, the day Plaintiff Spencer was attacked]; ¶ 42 & Ex. 41 [Alan Johnston Chat Messages at entries 1033 and 1036 (On February 12, 2016, Defendant Johnston sent a text message to a friend, stating: "If u really wanna be a bay boy we might meet [sic] your help tomm," to which his friend responded "Anywhere in Pv especially your home break is special to me")]. |
| 40. When Bay Boys find "outsiders" at Lunada Bay, they coordinate their harassment and intimidation of such visitors. | 40. Reed Depo. 300:18-25 ("Well, during the incident that occurred on February 13th, it appeared as though he had orchestrated that event with Mr. Jalian |

| Issue #3: | The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Johnston.  Q. What specifically did he do that made you think that he had orchestrated that?  A. It appeared as though they had planned the event out in an attempt to try to ruin my camera and in an attempt to try to intimidate me."), 320:3-5 ("I feel like [Blakeman's] role in the attack was to record rather than to speak and to intimidate through his camera."); Wright Decl. ISO Motion for Class Certification ¶ 8 [Docket No. 159-9] (When Wright tried to visit Lunada Bay on January 6, 2012 with his father and a friend, he borrowed a board from Kennedy Surf Shop where he was warned by another surfer "words to the effect of 'I grew up in Palos Verdes. Don't go there. The Bay Boys protect that place and you can't surf there.'"  When Wright's group arrived at Lunada Bay, they "walked to the bluff and were approached by a person whom I believe to be a Bay Boy, who said, 'It's really dangerous here today, you |

| Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | shouldn't surf here.' I responded by saying, I surf Mav's and have surfed waves twice this big. This is no problem.' After this, the man became more confrontational and said things in a raised voice like: (a) 'It's still dangerous out there, and you could get hurt;' (b) 'No one out there will let you catch waves if you paddle out;' and (c) 'If you go out, the people out there will make sure you don't have fun.'" Wright's group decided to go down to the water, and "men who I believe are Bay Boys surrounded the entrance to the trail. They were extremely aggressive and angry, and even though I had not spoken to them and neither had Nurnur nor my dad, they said things about me being from Maverick's. They filmed and photographed us, and called us kooks. I saw others pull out phones, and what I believed to be a walkie talkie or other type of communication device, and I observed them calling and texting. At the bottom of |

| Issue #3: The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | the bluff on the shoreline, different men who I believe to be Bay Boys were visibly angry and approached us. They repeated the exchange we had with the men at the top of the bluff, even though we had not spoken with any of these men.  As an example, one of them said, 'Oh, you're that guy from Maverick's, huh?'  This leads me to believe the men on the bluff and the men on the shoreline were coordinating their efforts.  Then, the men below yelled things including: (a) 'It's dangerous out here and someone might get hurt!'; (b) 'You should not be here!' (c) 'You won't have any fun!'; (d) 'It's too crowded for you to go out!'; and (e) 'Nobody is going to let you catch a wave!' One of the men saw my dad's [Los Angeles County Sheriff's] badge around his neck and said, "Oh, you're the muscle, huh? That's some fucking bullshit.'  Then, another surfer who I believe to be a Bay Boy approached me—he was less overtly |

13663319.10

| Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | hostile in his tone and body language. This person [said]: 'I will probably get hassled and in trouble just for talking to you. I'm just out of prison and don't like the drama of the other guys. But those guys may attack you. They will drop in on you. They will harass you, and you won't get any waves. It's the way it is.'" I asked, "If we paddle out and sit on the inside, won't that be okay? Isn't that good enough?" He said, "No. Just being here is too much. But if you insist on going out, stay on the inside or there will be a fight."). |
| 41. The Bay Boys also conspire to exclude outsiders while they are in the water at Lunada Bay. | 41. Blakeman Depo. 215:6-12 (surfers on the shore whistle at surfers in the water); Spencer Depo., 105:12-20, 106:6-12 (Spencer observed that men in the water, including Defendant Blakeman, were coordinating with each other and with other men in the Rock Fort on the shore and "could tell they knew each other."); Wright Decl. ISO Motion for Class |

13663319.10

| **Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Certification ¶ 18 [Docket No. 159-9] ("I've seen Brant Blakeman, whom I understand to be a Bay Boy, surfing Lunada Bay on many occasions. …  In the water, he seems to direct other Bay Boys to sit close to visiting surfers. I've observed Bay Boys who seem to be assigned to visiting surfers—they'll sit too close to the visitors, impede their movements, block their surfing, kick at them, splash water at them, and dangerously drop in on them. On one occasion, I saw people whom I believe to be Bay Boys in a boat with surfboards threatening visitors.  In addition to Blakeman, I've seen Michael Papayans, Sang Lee, Alan Johnston, Charlie Ferrara, and David Mello engage in this activity."). |
| 42. The Bay Boys conspired on and before January 29, 2017 to coordinate an attack on Plaintiff Spencer. Defendant Blakeman and others participated. | 42. Wolff Decl., Ex. 40 [Defendant Lee Cell Phone Records at 0267-0269 (On January 29, 2016, Defendant Sang Lee made a significant number of phone calls to Bay Boys, including Charlie Mowat |

13663319.10

| Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | and David Melo.  Defendant Lee contacted Mr. Mowat no less than 15 times before 5:30 a.m. that morning.  Defendant Lee and Mr. Mowat exchanged another 11 calls later that same day), 0273-0275 (Defendant Lee contacted or attempted to contact Defendant Brant Blakeman 62 times on January 29, 2017 during an approximately 30-minute timespan.  These calls were between Defendant Lee's cell phone and Defendant Blakeman's cell phone and home phone. |
| 43. The Bay Boys conspired on and before February 12, 2017 – the day before Plaintiff Diana Milena Reed was sexually harassed by Defendants Blakeman, Johnston, and Charlie Ferrara. | 43. Wolff Decl., ¶ 42 & Ex. 41 [Alan Johnston Chat Messages at entries 1037 and 1038 (Defendant Johnston informed a friend on February 12, 2016 that he had heard about the City's undercover operation planned for the next day, stating: "Could be a great help if ur there !!! Supposed to be a police setup at our spot calling all gards [sic]."  Defendant Johnston's friend responded "Fuck ok |

| Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | well I am gunna get up and try to crack it at BA cuz we're short on crew as well but tide could very well plug it and I'll shoot over.  Either way I'll hit u up in the morning early to see what's the haps")]. |
| 44. The Bay Boys have developed a close friendship with City police officers, who look the other way when the Bay Boys break the law. Some Bay Boys make contributions to the Police Officers Association, in exchange for "badge" challenge coins that can be carried, and "badge" decals that can be placed on cars. | 44. Blakeman Depo. 243:3-244:17 (Blakeman knows Sergeant Barber, Mr. Eberhard, Mr. Ackert, Mr. Hellinga, Captain Velez, and Rick Delmont; Blakeman has known Sergeant Barber for approximately 8 years and Mr. Ackert approximately 10 or 12 years); Barber Depo. 19:10, 25:1-6, 40:2-5 (attended high school in Rancho Palos Verdes with Angelo Ferrara's wife, Leonora), 93:14-21 (knows Michael Thiel), 124:5-12 (knows Tom Sullivan), 129:12-16 (knows Sang Lee); 71:8-72:3 (considers Charlie Mowat to be a friend; they've gotten to know each other over the years because Mr. Mowat "is a local guy" who went to Palos Verdes High School; Sergeant Barber has socialized at Mr. Mowat's house for |

| Issue #3:      The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | barbecues and other events). |
| 45. The City helps facilitate the Bay Boys' exclusion of outsiders from Lunada Bay. | 45. Defendant Blakeman's Response to Plaintiff Spencer's First Set of Requests for Admissions to Defendant Blakeman ("Blakeman RFAs"), RFA Nos. 1, 2, 3, 6 (though not a City employee, Defendant Blakeman used a City-issued cell phone for personal purposes from at least October 1, 2015 through April 30, 2016); Blakeman Depo., 14:10-11 (Q: "How long have you had your flip phone?  A. Approximately, five years."), 15:9-17 (his phone is provided by the City but he's not an employee); City's Responses to Plaintiff Spencer's Second Set of Requests for Admission ("City RFA"), RFA Nos. 6 (no City emergency would have warranted use of the cell phone), 7 (City paid the cell phone bill); Blakeman Interrogatories, Interrogatory No. 14 (Blakeman only recently returned the cell phone to the City - within 7 or 8 months of July 27, 2017); Barber Depo. 197:16- |

| Issue #3:      The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | 23 ("we don't want to traverse those trails [from the bluffs down to the shoreline], because we may fall and break our necks"), 105:25-10 ("Q. About how many times had you been down there [to the Rock Fort]?  A. Maybe a handful.  Maybe four or five times.  Q. Four or five times in 20 years or so?  A. Yes."). |
| 46. With help from the City, the Bay Boys act with impunity. | 46. Kepley Depo., 40:3-41:13 (PVE police planned an undercover operation with the Santa Monica Police Department where Santa Monica officers agreed to pose as surfers); 41:17-42:23 (the undercover operation was canceled because the Bay Boys learned about the operation the day before it was supposed to occur and called the City Manager to question why the police would be undercover at Lunada Bay); Franklin Decl., Ex. 21, Bates CITY7087-CITY7096 (the undercover operation scheduled for February 13, 2016 was compromised when, on February 12, 2016, Bay Boy Michael Thiel met with |

13663319.10

| Issue #3: | The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | the City Manager and complained that Chief Kepley was "inappropriately utilizing police resources at Lunada Bay" and that he was aware the next day there was to be a "sting operation," stating "something like, 'I hope tomorrow isn't the sting . . . better not be doing this tomorrow.'"  The City Manager called Chief Kepley, informed him of his meeting with Mr. Thiel, after which time the undercover operation was canceled. Chief Kepley noted that "PVEPD is a small department with many long-tenured officers who police this small community."  Chief Kepley "mentioned Sergeant Steve Barber and Officer Ken Ackert as long-term employees who might interface with some of the Bay Boys."  An investigator hired by the City to determine the source of the leak noted that the PVEPD Property Clerk, Jaylin Albao, was in a relationship with former PVEPD officer Rick Delmont, who "'had a close |

13663319.10

| Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | relationship with the Bay Boys . . . perhaps Jaylin overheard something that either intentionally or accidentally conveyed it to Rick Delmont, and then he somehow maybe leaked out to a Bay Boy.'"); Johnston Depo. 80:15-83:13 (admits he knew in advance of the scheduled sting at Lunada Bay on February 13, 2016); Reed Decl., ¶¶ 14-15 (the police witnessed Plaintiff Reed get verbally attacked by David Melo but did not intervene and instead refused to arrest him; the officers talked Plaintiff Reed out of surfing that morning and did nothing to David Melo); Reed Depo. 227:13-18 (Reed tried multiple times to contact the police and set up a time to identify the individuals who attacked her on February 13, 2016, but she had to "keep calling the police over and over . . . [and] it took a really long time and I felt like, you know, they weren't doing enough to help me with this."); 238:9-18 ("I do remember |

13663319.10

| | |
|---|---|
| **Issue #3:   The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | speaking to someone from the police department, you know, telling me that it's not safe at Lunada Bay and why would I want to go back, it's a rocky beach and why would a woman want to go to a rocky beach, and it just seemed like they weren't doing much to help the situation.  I was also surprised that they were, you know – they told me that – I mean, they implied that women shouldn't go down to rocky beaches; I found that comment a little bit strange."); 239:15-19 ("I probably called maybe three times, and, you know, I remember then eventually I proceeded to retain my attorneys because I felt like that was the only course of action I could take because the police weren't helping me"); Taloa Depo. 306:18-307:2 (Defendant Papayans told Taloa the locals own the police). |
| 47.The Bay Boys continued to conspire after this lawsuit was filed. | 47.Wolff Decl., ¶ 42 & Ex. 41 [Johnston Text Messages at entries 759-761 (upon being informed that a lawsuit had been |

| Issue #3:      The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | filed against him, Defendant Johnston texted several Bay Boys, including Michael Thiel, and stated: "Yeah saw that super gay!! Who narked my name!! So lame!!," to which his Bay Boy friend, Tom Sullivan, responded "I bet it was police chief he has photos of all of us she probably just picked from a line up don't trip to [sic] hard she has nothin it's not illegal to be annoying . . just be prepared for shit show . . ."), Chat Message at entry 1836 (Defendant Johnston texted a friend approximately a week after this lawsuit was filed, on April 6, 2016, with the following admission: "Haha stir the pot with heckling!! Bra us locs are getting sued over here for being locs")]. |
| 48. The Bay Boys conspired to withhold evidence in this case. | 48. Blakeman Depo. 14:23-25 (Defendant Blakeman claimed he could not remember his cell phone number at his deposition and provided Plaintiffs' counsel with an incorrect phone number, identifying the last four digits of his cell phone number as |

13663319.10

| | |
|---|---|
| **Issue #3:     The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | "7634"); Wolff Decl., ¶ 43 & Ex. 42 (Defendant Blakeman's Response to Plaintiff Diana Reed's First Set of Interrogatories, Interrogatory No. 1, identifying the last four digits of his cell phone number as "7934"); Wolff Decl., ¶¶ 50 (In response to a request for production of documents seeking text messages with co-Defendants, Defendants Charlie and Frank Ferrara claimed not to possess any such evidence, whereas Defendant Sang Lee produced a privilege log showing a number of texts between himself and Defendants Charlie and Frank Ferrara during the relevant time period); Decl. Pooley, ¶¶ 21-22 (Defendant Johnston refused to make himself available for deposition until four days after filing a summary-judgment motion), 23-25 (counsel for Defendant Blakeman failed to provide Plaintiffs with evidence submitted to the Court in support of his motion for summary judgment). |

| Issue #3: | The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay. |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 49. Each of the Individual Defendants is a member of the Bay Boys. | 49. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 50. Defendant Sang Lee is aware of and agrees with the Bay Boys' purpose or design to exclude the general public, particularly "outsiders" (or "kooks"), from visiting or surfing at Lunada Bay. | 50. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 51. Defendant Sang Lee undertook actions to further the Bay Boys' purpose and design, including following the Bay Boys' rules, terms, or practices, harassing and intimidating "outsiders," and/or encouraging, facilitating, or coordinating with other Bay Boys regarding such actions. | 51. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 52. Defendant Brant Blakeman is aware of and agrees with the Bay Boys' purpose or design to exclude the general public, particularly "outsiders" (or "kooks"), from visiting or surfing at Lunada Bay. | 52. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 53. Defendant Brant Blakeman undertook actions to further the Bay | 53. See PAMF 12, 13, 15, 16, 22, 24-48. |

13663319.10

**Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| Boys' purpose and design, including following the Bay Boys' rules, terms, or practices, harassing and intimidating "outsiders," and/or encouraging, facilitating, or coordinating with other Bay Boys regarding such actions. | |
| 54. Defendant Alan Johnston is aware of and agrees with the Bay Boys' purpose or design to exclude the general public, particularly "outsiders" (or "kooks"), from visiting or surfing at Lunada Bay. | 54. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 55. Defendant Alan Johnston undertook actions to further the Bay Boys' purpose and design, including following the Bay Boys' rules, terms, or practices, harassing and intimidating "outsiders," and/or encouraging, facilitating, or coordinating with other Bay Boys regarding such actions. | 55. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 56. Defendant Michael Papayans is aware of and agrees with the Bay Boys' purpose or design to exclude the general public, particularly "outsiders" | 56. See PAMF 12, 13, 15, 16, 22, 24-48. |

Case No. 2:16-cv-02129-SJO (RAOx)

13663319.10

| | |
|---|---|
| **Issue #3:   The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| (or "kooks"), from visiting or surfing at Lunada Bay. | |
| 57. Defendant Michael Papayans undertook actions to further the Bay Boys' purpose and design, including following the Bay Boys' rules, terms, or practices, harassing and intimidating "outsiders," and/or encouraging, facilitating, or coordinating with other Bay Boys regarding such actions. | 57. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 58. Defendant Angelo Ferrara is aware of and agrees with the Bay Boys' purpose or design to exclude the general public, particularly "outsiders" (or "kooks"), from visiting or surfing at Lunada Bay. | 58. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 59. Defendant Angelo Ferrara undertook actions to further the Bay Boys' purpose and design, including following the Bay Boys' rules, terms, or practices, harassing and intimidating "outsiders," and/or encouraging, facilitating, or coordinating with other | 59. See PAMF 12, 13, 15, 16, 22, 24-48. |

13663319.10

| **Issue #3:** **The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| Bay Boys regarding such actions. | |
| 60. Defendant Frank Ferrara is aware of and agrees with the Bay Boys' purpose or design to exclude the general public, particularly "outsiders" (or "kooks"), from visiting or surfing at Lunada Bay. | 60. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 61. Defendant Frank Ferrara undertook actions to further the Bay Boys' purpose and design, including following the Bay Boys' rules, terms, or practices, harassing and intimidating "outsiders," and/or encouraging, facilitating, or coordinating with other Bay Boys regarding such actions. | 61. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 62. Defendant Charlie Ferrara is aware of and agrees with the Bay Boys' purpose or design to exclude the general public, particularly "outsiders" (or "kooks"), from visiting or surfing at Lunada Bay. | 62. See PAMF 12, 13, 15, 16, 22, 24-48. |
| 63. Defendant Charlie Ferrara undertook actions to further the Bay Boys' purpose and design, including | 63. See PAMF 12, 13, 15, 16, 22, 24-48. |

13663319.10

| **Issue #3:    The Individual Defendants Are Engaged in a Conspiracy to Exclude Outsiders from Lunada Bay.** | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| following the Bay Boys' rules, terms, or practices, harassing and intimidating "outsiders," and/or encouraging, facilitating, or coordinating with other Bay Boys regarding such actions. | |

**Issue #4:    Public Nuisance**

| **Issue #4:    Public Nuisance** | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 64. Palos Verdes Estates Shoreline Preserve and specifically Lunada Bay constitute an asset of priceless value, and exceptional and dramatic beauty. Lunada Bay is owned by the City and is a world class wave. | 64. City Responses to Plaintiffs' Separate Statement Undisputed Material Facts ISO Class Certification [Docket No. 189] Nos. 1 ("Lunada Bay is owned by the City of Palos Verdes Estates and is a public beach") ("Lunada Bay is a unique world class surfing site, and offers many recreational opportunities"), 5; Willis Decl. ISO Opp. to City MSJ, ¶¶8, 9, 10, 11. 15 ("Lunada Bay is a world class wave . . .") and Ex. 4 ("Palos Verdes |

13663319.10

**Issue #4:     Public Nuisance**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Estates Shoreline Preserve constitutes an asset of priceless value." p. 87) (Palos Verdes "has a shoreline of exceptional and dramatic scenic beauty . . .") (p. 115); Barber Depo. 112:18-22, Ex. 263 ("Q:  And I'm going to – 263 I'm going to put in front of you, Sergeant Barber.  Do you recognize that as being a map of the general Lunada Bay coastal area? A:  Yes.") |
| 65. The State of California granted Lunada Bay and the rest of the Palos Verdes Estates Shoreline Preserve to the City, but it is reserved for the People of California. | 65. Willis Decl. Supp. Pltfs.' Opp to City Defs.' MSJ. ("Willis Decl."), ¶¶ 8-11. |
| 66. The Bay Boys have long acted to obstruct the public's free access to Lunada Bay with the City's knowledge. | 66. Franklin Decl., Ex. 21 at bates CITY7090 ("Chief Kepley told me that shortly after he was hired as chief of police he learned of a long history of alleged 'bullying and hazing' of out-of-town surfers at Lunada Bay by local surfers, often referred to as the 'Bay Boys.'"), CITY7091 (Chief Kepley asked |

| **Issue #4:   Public Nuisance** | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | Captain Velez to organize a sting operation at Lunada Bay in November or December 2015, but "[h]e wasn't quick to respond to that and over the next month or two I, I would you know, ask him again, and I think he was having difficulty organizing that."); 171; Best Depo.30:16-25, 31:1-17; 150:1-25, 151:1-25; 152:1-6.; 124:22-25, 125:1-25, 126:1-25, 127:1-13; Kepley Depo. 51:19-24 ("When this Guardian video came out, it caused a quick steep learning curve for me to learn some of the history.  And I had heard people from the community and staff members, and all, tell me that there have been conflicts and issues in the surfing culture for many, many years, as many as 50 years or more."); Kepley Depo. 220:2-7 ("Q:  Sure.  Do you think localism has been a problem at Lunada Bay this year?  A:  Yes.  Q:  Do you think localism was a problem at Lunada Bay last year?  A:  Yes); Placek Depo. 74:5-13; Siounit Decl. |

**Issue #4:     Public Nuisance**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | ¶ 4 [Docket No. 308]; Franklin Decl., Ex. 21 at Bates CITY7090 [Docket No. 324] ("Chief Kepley told me that shortly after he was hired as chief of police he learned of a long history of alleged 'bullying and hazing' of out-of-town surfers at Lunada Bay by local surfers, often referred to as the 'Bay Boys.'"); Spencer Depo., 55:11-56:17, 67:8-10, 79:19-20 (for more than 30 years, Plaintiff Spencer, who lives in the City of Norco, wanted to surf at Lunada Bay but avoided it due to fear of Lunada Bay and its reputation of violence toward outsiders); |
| 67. The Bay Boys exclude outsiders the moment they step onto the bluffs, making it known outsiders are not welcome through their words and acts. | 67. Blakeman Depo. 25:25-26:2; Spencer Depo. 98:8-15 (almost instantaneously after arriving, Bay Boys called Spencer a "kook" and told him he couldn't surf there), 102:12-25 (Spencer was told "'Why don't you fucking go home, you fucking kook'" and "'How many other good places did you pass to come here?'"), 103:21-104:5 ("Q. Did anything |

| Issue #4:      Public Nuisance | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
|  | else occur in the 20 minutes [after your arrival] that caused fear for you? A. Yes . . . It was more of a – more of a closer, I guess, encounter with the same language all the way down the trail; jumping into the water; [the] same individual just keep, you know, heckling."),143:1-4, 9-22 (while standing on the bluff, Bay Boys drove by real slowly, called him names like "kook," and Defendant Blakeman circled him while "sticking his GoPro in our faces for reasons we could only determine were to identify us to their group so that they would know who we are."), 144:21-25 (Spencer explained Blakeman's behavior and its impact: "When you show up to a beach and someone that you know is one of the little – the local controllers/harassers of that place sticking a camera in your face, why is he doing that?  To intimidate you and to make you feel uncomfortable."); Spencer Decl. Supp. Pls.' Mot. Class Cert. |

**Issue #4:     Public Nuisance**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | ("Spencer Decl.") ¶ 11; Wolff Decl., ¶ 47 & Ex. 44 [Los Angeles Times photograph of Defendant Blakeman on the bluff video recording outsiders Ken Claypool and Chris Taloa]. |
| 68. Using the Rock Fort as a base, the Bay Boys restrict outsiders' access to the shoreline and the water. | 68. Franklin Decl., Ex. 21 at Bates CITY7090 ("Kepley said there is a masonry stone patio located on the public coastline; however this structure is widely viewed as being owned or controlled by the Bay Boys."); Spencer Depo., 198:25-199:8 (The Rock Fort "provides an operations point for [the Bay Boys] to congregate and to prevent people from using the beach; [] its very existence prevents access."); Lee Depo., 53:17-20 (Defendant Lee helped improve the Rock Fort by adding "a little roofing on the garage door.  I put a cover on like a – like a roofing material so that it's waterproof."). |
| 69. The Bay Boys admit they obstruct nonlocals' free use of Lunada Bay. | 69. Lee Depo., 143:9-12 (Sang Lee deters outsiders by "discourag[ing] them" from |

13663319.10

| Issue #4: **Public Nuisance** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | surfing), 125:21-126:3, 68:16-18 ("personally, I probably would not like to see other people"), 69:4-5 ("I probably wouldn't be happy about it"), 69:13 ("it just ruins everything"), 185:12-15 (Sang Lee explained that the reason there's "a lot of space" at Lunada Bay "is because we keep it like that.  We fucking hassle people"), 186:11-22 (Sang Lee thinks he may have told reporters at Lunada Bay that they "shouldn't fucking come down here.  Stay away from this area."), 192:3-5 ("I just wanted to discourage people, outsiders coming in with no etiquette that take, that type"), 199:22-200:23 ("Q. Okay.  The reason was to discourage people from coming to Lunada Bay and surfing; is that correct?" "A. Yeah yeah."); Wolff Decl., ¶ 39 & Exs. 43 [Transcript of C. Ferrara Audio Recording] and 38 [PLTF002027: "some newcomers come and screw up what we have going on here and, ach!"]; Blakeman |

**Issue #4:   Public Nuisance**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | Depo. 220:13-25 (Defendant Blakeman believes it is acceptable to block someone from catching a wave at Lunada Bay), 222:19-223:2 (Defendant Blakeman admits that on January 29, 2017, he got within two or three feet of Mr. Taloa and intentionally blocked him from catching waves at Lunada Bay), 223:8-11 (Blakeman admits to "shadowing" or following Mr. Taloa while in the water on January 29, 2017.  Blakeman admits that Mr. Taloa was "trying to get away" Blakeman but Blakeman continued to follow him); Franklin Declaration, Ex. 37 [The Guardian Video]; Wolff Decl., ¶ 39 & Exs. 43 [Transcript of C. Ferrara Audio Recording] and 38 [PLTF002027 (Charlie Ferrara, stating: "I can't tell you you can't be down here.  I can't tell you that, you know.  I can't tell you you can't go surfing, but what I can do is make sure you don't have fun out there.  You know what I mean?  And then what's the point |

13663319.10

| Issue #4:      Public Nuisance | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | of that?  You're going to come here when the surf's good everywhere else and get burned and have a bad day?  That's, cuz that's, you know, that's what we're gonna keep on doing.  They want to come out we're just gonna keep on burning them and make them have a bad session because we're going to stick together and like attack cuz we are.  We are family"; "They've been recorded and stuff while they're, you know, rousting [outsiders] and get recorded and they get in trouble . . . that's why now we're not, you know, doing stuff, and now we're just burning people."]; Wolff Decl., Ex. 8 [Exhibit 223 to Lee Deposition, Bates Lee 000000015 (Defendant Sang Lee reminded other Bay Boys in an email of their preferred strategy to exclude outsiders: "[I] do NOT want to see my friends get in trouble with the law / theres [sic] other options to deterr [sic] outsiders from surfing our home such as we can ride together or its |

13663319.10

| Issue #4:    Public Nuisance | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | [sic] a long walk up the trail in bare feet." Defendant Lee further explained that he did not want to see other Bay Boys "so fired up on trolls" that they "immediately get[] into fights or threaten[] the outsiders n [sic] get into trouble."  Instead, he explained "THERES [sic] OTHER OPTIONS THAN THREATS N [sic] VIOLENCE TO MAKE THEIR TIME IN OUR HOME A BUMMER.")]. |
| 70. Defendants prevented Plaintiff Spencer from enjoying the free use of Lunada Bay on January 29, 2016. | 70. Spencer Decl. ¶ 12; Spencer Depo., 105:7-20 (Blakeman paddled around Spencer), 229:11-230:14 ("you're alleging that Mr. Blakeman was circling you?  A. I'm not alleging.  He did circle me – yes, I am alleging in the complaint, yes.  So, he did circle us. He did circle me.  Q.  What's 'circle'? What do you mean when he circles you?  Is he going a complete 360-degree circle around you?  A. Complete 360 in front; blocking; obstructing.  Q. What's he obstructing you from?  A. |

**Issue #4:     Public Nuisance**

| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
|---|---|
| | Catching the waves.  Q.  Well, why do you believe he's obstructing you from catching a wave?  . . . So, when someone is that close to you in front of you when you're trying to paddle forward, you don't want to paddle and hit them; so when they're in front of you, they're trying to prevent you from catching waves.  BY MR. WORGUL: Q. Could they be trying to catch a wave as well? . . . THE WITNESS: On that day, in my opinion, Mr. Blakeman was obstructing us from catching waves."), 259:24-260:24 (Blakeman circled Plaintiff Spencer in the water, stared him down, prevented him from surfing, and thrust his "camera in [the] face" of those who attempt to access the beach, among other things); |
| 71. Defendants prevented Plaintiff Spencer from enjoying the free use of the public bluffs atop Lunada Bay on February 5, 2016. | 71. Spencer Decl. ¶ 23; Spencer Depo., 143:17-21 ("Defendant Blakeman [was] constantly circling us, everybody who was out there to surf that was not from |

| **Issue #4:      Public Nuisance** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | there; that's not a Bay Boy; sticking his GoPro in our faces for reasons we could only determine were to identify us to their group so that they would know who we are."), 144:17-19 ("Q. Did you feel threatened by [Blakeman's] behavior?  A. Of course."), 142:20-143:7 ("Were you harassed while you were watching the property?  A.  You could – yes.  When people call you the same things they called on the first visit, 'kook,' and, you know, 'What are you doing?' Same stuff, that's harassment.  I feel I was harassed."), 145:5-146:9 (while Spencer stood on the bluff, Bay Boys drove by slowly and called Spencer names); Wolff Decl., ¶ 47 & Ex. 44 (A photographer from the LA Times was present and took a photo of Defendant Blakeman following Plaintiff Spencer's friends, Jordan Wright and Christopher Taloa, with his camera along the bluffs)]. |

13663319.10

| **Issue #4:      Public Nuisance** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 72. Defendants prevented Plaintiff Reed from enjoying free use of the bluffs and public area surrounding Lunada Bay on January 29, 2016. | 72. Reed Depo. 119:25-120:16 ("Q. So at some point did you experience any harassment or intimidation when you were there on January 29th? A. Yes. Q. What was that? A. From what I recall when, you know, from the moment that we arrived we were experiencing harassment.  Q. Okay, can you describe what the harassment was?  A. I remember that people were circling around the car when we parked and, you know, some people yelled at us and said that we we're kooks.  And there were other people, other bay boys on the bluff that were looking at us and there were people recording us.  So the situation there seemed very tense.", 121:10-11 ("I remember at some point people telling us that we can't surf there"), 130:11-14 ("I believe there was an instance of people telling us that we can't surf there while we were on the bluff.  There was the constant |

13663319.10

**Issue #4:      Public Nuisance**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | harassment of video cameras everywhere, recording everything."); Reed Decl., ¶ 8 (Plaintiff Reed was harassed by Bay Boys almost immediately after parking her car along the bluffs; she was called a "kook" and told she couldn't surf there), 9 (a group of Bay Books were standing on the bluffs and told Plaintiff Reed should couldn't surf there; Defendant Blakeman was recording Plaintiff Reed while she was on the bluffs), 10 (Plaintiff Reed met Plaintiff Spencer and recalls learning that he is a police officer and was run over in the water by another surfer that morning), 11 (after making her way down to the beach, Plaintiff Reed was verbally accosted by David Melo, who called her a "whore" and continued to yell and scream profanities at Plaintiff Reed; another Bay Boy told Reed to "watch out" and "be careful" and "don't smash your |

13663319.10

**Issue #4:      Public Nuisance**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | pretty little face on the rocks."), 15 (after being attacked by David Melo, Plaintiff reed was scared and changed out of her wetsuit into her clothes and left Lunada Bay without surfing because she was "completely shaken up" and "felt unsafe to go into the water" so she "decided to go home." |
| 73. Defendants prevented Plaintiff Reed from enjoying free use of Lunada Bay on February 13, 2016 | 73. Reed Depo. 167:17-168:2 ("I remember when we were preparing to walk down the trail, there was a man, middle-aged blond haired man, and a teenage boy that were filming us and they were attempting to block the pathway, and they were telling us that we were done, whatever that means.  I do remember some people yelling at us when we were on the bluff . . . I remember once we were at the bottom of the hill on the beach, I remember, you know, people yelling at us, yeah, everyone seemed pretty hostile."), 170:12-171:5 ("I remember that |

13663319.10

| **Issue #4:    Public Nuisance** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | [Defendants Blakeman and Johnston] approached me very rapidly and I was caught by surprise.  I remember that they rushed towards me in a hostile manner.  I remember, you know, declining that I wanted to drink beer.  I remember being videotaped by Brant Blakeman.  I remember there were times when I was being videotaped very close to my face and it felt very intimidating and definitely felt like I was being harassed.  And I think that I asked them, you know, why they're videotaping me because it made me very uncomfortable.  I remember Mr. Johnston opening the can of beer in a way that sprayed my arm and my camera.  I remember him chucking beer and throwing beer cans on the floor.  I remember him being very loud and very scary, very intimidating, and acting in a sexual manner.  Q. Where did this take place?  A. These events took place in |

13663319.10

| Issue #4: | Public Nuisance |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | the [rock] fort."), 175:8-15 (because of where Blakeman and Johnston were standing, Plaintiff Reed could not leave the rock fort), 177:7-8 ("I was not able to exit the fort, I was frozen in fear"), 216:10-12 ("I remember at some point after that Jalian paddled out and left and I felt like it was safe to go back up the hill"), 177:19-178:2 ("I do remember asking, you know, why I was being filmed and, you know, being told that they're filming me because I'm sexy. I remember Mr. Johnston saying that he's big enough to get the job done while, you know, also, you know, he was also grunting and making – making moans and noises resembling, you know, an orgasm. He was, you know, thrusting and rubbing his torso in a sexual manner, just acting in a very – very frightening way."), 219:15-18 (Blakeman was trying to intimidate Plaintiff Reed by holding his camera |

**Issue #4:     Public Nuisance**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | "right up to [her] face, you know, two feet from [her] face"), 358:23-359:1 ("I do remember . . . while he had a towel on himself there was a moment when it seemed that he intentionally exposed his penis to me while he was changing"); Reed Decl. ¶¶ 16-18 (unable to surf because her arm was in a cast so she decided to go to Lunada Bay to take photographs of a friend while he surfed), 20 (while she was in the fort, a man entered and interrogated Plaintiff Reed, asking what her "mission objective" was and why she was there). |
| 74. Defendants have continued to obstruct Plaintiff Reed's free passage at Lunada Bay since February 13, 2016. | 74. Reed Depo. 251:2-252:7 (Reed has been harassed from the trail to the shore, told "no one wants you here" and that she "should leave", she is told she shouldn't be there, and has "experienced harassment in the way that I was told I'm not welcomed [at Lunada Bay].") |
| 75. Over the years, the Bay Boys have | 75. Wolff Decl., ¶ 39 & Exs. 43 |

13663319.10

| **Issue #4:    Public Nuisance** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| revised and perfected their strategy of exclusion, aiming to make outsiders' experiences at Lunada Bay so miserable that they won't come back. | [Transcript of C. Ferrara Audio Recording] and 38 [PLTF002027 (Charlie Ferrara, stating: "I can't tell you you can't be down here. I can't tell you that, you know. I can't tell you you can't go surfing, but what I can do is make sure you don't have fun out there. You know what I mean? And then what's the point of that? You're going to come here when the surf's good everywhere else and get burned and have a bad day? That's, cuz that's, you know, that's what we're gonna keep on doing. They want to come out we're just gonna keep on burning them and make them have a bad session because we're going to stick together and like attack cuz we are. We are family"; "They've been recorded and stuff while they're, you know, rousting [outsiders] and get recorded and they get in trouble . . . that's why now we're not, you know, doing stuff, and now we're just burning people."]; Wolff Decl., Ex. 8 [Exhibit 223 |

PLAINTIFFS' ADDITIONAL MATERIAL FACTS

13663319.10

| **Issue #4:     Public Nuisance** | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | to Lee Deposition, Bates Lee 000000015 (Defendant Sang Lee reminded other Bay Boys in an email of their preferred strategy to exclude outsiders: "[I] do NOT want to see my friends get in trouble with the law / theres [sic] other options to deterr [sic] outsiders from surfing our home such as we can ride together or its [sic] a long walk up the trail in bare feet." Defendant Lee further explained that he did not want to see other Bay Boys "so fired up on trolls" that they "immediately get[] into fights or threaten[] the outsiders n [sic] get into trouble."  Instead, he explained "THERES [sic] OTHER OPTIONS THAN THREATS N [sic] VIOLENCE TO MAKE THEIR TIME IN OUR HOME A BUMMER.")]. |

**Issue #5:    Bane Act**

| Issue #5:    Bane Act | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 76. The Lunada Bay shoreline and bluffs is City-owned land which may be accessed by the Public. | 76. Willis Decl. Supp. Pltfs.' Opp to City Defs.' MSJ. ("Willis Decl."), ¶¶ 8-11. |
| 77. The Bay Boys united – through common goals, symbols, and practices – to deprive Plaintiffs of their right to access the bluffs and shoreline through interference, intimidation, threats and coercion. | 77. Lee Depo., 31:19-32:6 (Defendant Sang Lee has a "Lunada Bay" tattoo with a Trident head); 46:2-11, 47:10-14 (When it was in existence, Bay Boys would spend time together barbequing, drinking beer, and hanging out at the Rock Fort), 118:10-20, 119:14-15, 120:24-121:1, 123:7-8, 22-23 (although there is no "written rule book" there is "an understanding" among local surfers at Lunada Bay as to the ground rules for surfing there),  276:9-23 (Sang Lee admits to pouring beer on John MacHarg's head one day at the Rock Fort), 285:18-26 (Bay Boys think of themselves as "pirates"); Wolff Decl., Ex. 8 [Exhibit 222 to Lee Deposition, Bates Lee 00000001]; Johnston Depo. |

13663319.10

| Issue #5:    Bane Act | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | 63:20-64:2, 166:21-167:7 (Lunada Bay tattoo); Spencer Decl. ¶ 12; Spencer Depo., 113:21 ("they all know each other"), 198:25-199:8 (The Rock Fort "provides an operations point for [the Bay Boys] to congregate and to prevent people from using the beach; [] its very existence prevents access."); Spencer Depo., 259:24-260:24 (Blakeman circled Plaintiff Spencer in the water, stared him down, prevented him from surfing, and thrust his "camera in [the] face" of those who attempt to access the beach, among other things), 142:20-21, 146:23-147:14, 149:12-23; Blakeman Depo. 223:8-11 (shadowed Mr. Taloa's movements and intentionally prevented him from catching waves); Spencer Decl. ¶ 22; Claypool Decl. ¶ 25 (when he finished surfing at Lunada Bay in January 2015, he saw Bay Boys gathering at the top of the bluff near the two trailheads and they were impeding |

| **Issue #5:      Bane Act** | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | movement); Taloa Depo., 354:17-355:3 (Defendant Papayans harassed Taloa at the bluff when he came to Lunada Bay to surf). |
| 78. The PVE PD officers rarely police along the shoreline at Lunada Bay or in the Rock Fort. | 78. Barber Depo. 105:25-106:10 ("Q. About how many times had you been down there [to the Rock Fort]?  A. Maybe a handful.  Maybe four or five times.  Q. Four or five times in 20 years or so?  A. Yes."); Johnston Depo. 111:25-113:3 (police tell the Bay Boys not to open their beer when the police are down at the Rock Fort). |

13663319.10

**Issue #6:      Assault**

| Issue #6:      Assault | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 79. Plaintiff Reed was directly assaulted (sexually and otherwise) by Defendants Blakeman and Johnston. | 79. Reed Depo. 219:9-21, 295:1-296:11, 299:2-300:5, 304:13-317:19, 318:7-322:21, 329:7-10, 359:22-25; Reed Depo. 276:20-24 ("I felt – felt like I could have even been raped.  I mean, it was incredibly frightening.  I felt helpless.  Just that whole memory of the event has caused me to be fearful and just really affected my piece of mind."), 329:7-10 ("through [Blakeman's] behavior of being incredibly hostile and intimidating and frightening, he's evoked a lot of fear in me, you know."); 359:22-25 ("I remember there was a moment when he seemed like he purposefully removed his towel in order to expose himself"); Reed Decl. ISO Motion for Class Certification, ¶ 19; 21-23; 27-28 (among other things, Defendants Blakeman and Johnston "rushed" Plaintiff Reed, approached her |

13663319.10

**Issue #6:     Assault**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| | in a menacing manner, harassed her with sexually aggressive comments, and intentionally sprayed beer on her and her camera.); Franklin Decl., ¶ 25, Ex. 17 [Docket No. 324] ("fucking sexy baby…want to film it?"; "I seen you and I think I touched myself a little bit"; "I can do whatever I want."). |
| 80. Several Bay Boys, including Defendant Charlie Ferrara, were present when Plaintiff Reed was being assaulted, intentionally contributing to the intimidating presence and Plaintiff Reed's apprehension and fear, and behaving in a manner showing that they were complicit in, and supported, the assault and threatening behavior. | 80. Reed Depo., 317:25-318:6; Reed Decl. ISO Motion for Class Certification, ¶¶ 21-25; Blakeman Depo. 78:2-9, 101:11-16, 238:23-239:9; Frank Ferrara Depo. 217:2-9 (Q. Did you ever talk to your son Charlie about what happened at the fort that day?  A. At the patio, yes.  Q.  And what did he say?  A.  He said he was, um – he said he was a little discouraged by how they talked to Diana.  And he didn't agree with it.  And he went surfing."; C. Ferrara Depo. 118:15-11; Wolff Decl., ¶ 39 & Exs. 43 [Transcript of C. Ferrara Audio Recording] and 38 [PLTF002027 |

| Issue #6:    Assault | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | (Charlie Ferrara explaining to Plaintiff Reed that she was "roust[ed]" by the Bay Boys "because you're a newcomer. You don't, you didn't know how to approach it."; Charlie Ferrara also explained that "it's also scary being a guy when you have guys barking at you, too, you know.  It's scary when you're a guy and you have fuckin' ten guys you know like, you know, getting' gnarly on you.")]. |
| 81. Defendant Blakeman withheld evidence of the attack from the police. | 81. Barber Depo. 150:11-21 ("they had found out that Mr. Blakeman had possibly videotaped the incident, so because I have a better rapport with Brant Blakeman, [Luke Hellinga] asked me to go and ask him if he has a copy of it. Q. And do you know what happened?  A. Brant said, 'I don't have anything.  I'm sorry.'  Q. So he told you, 'I don't have any video of that'? A. He wouldn't – well, I mean, I wouldn't say he wouldn't cooperate, |

| Issue #6:     Assault | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | but he just said, 'No, I have nothing. I really don't want to comment on it.'"); Blakeman Depo. 241:25-242:24; *see also* Franklin Decl., Ex. 17 [video of 2/13/16 incident, Bates No. DEFT.BB081 and DEFT.BB082] [Docket No. 324]. |
| 82. Plaintiff Spencer was also directly assaulted by Defendant Blakeman, along with other Bay Boys. | 82. Spencer Depo. at 98:5-117:5; 142:24-144:19; 172:13-175:12; 223:8-11 (Plaintiff Spencer recounting being assaulted and battered by Bay Boys, including Defendant Blakeman); 110:20-24 ("Q. Were you fearful of being further injured after that point?  A That's an understatement.  Q  So is the answer yes?  A Yes."); 113:25-114:1 ("we decided that was – it's getting too crazy out here, and more and more [Bay Boys] started showing up on the fort."). Spencer Decl. ISO Motion For Class Certification, ¶¶ 11-23 (same); Spencer Decl. ISO Class Cert. ¶ 12; Blakeman Depo. 223:8-11. |

**Issue #6:     Assault**

| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| --- | --- |
| 83. The Bay Boys also committed battery against Plaintiff Spencer, with Defendant Blakeman present and directly participating, when a Bay Boy intentionally collided with Plaintiff Spencer while surfing, leaving him with a serious laceration on his hand. | 83. Spencer Depo. at 98:5-117:5; 142:24-144:19; 172:13-175:12; 223:8-11 (Plaintiff Spencer recounting being assaulted and battered by Bay Boys, including Defendant Blakeman); Spencer Decl. ISO Motion For Class Certification, ¶¶ 11-23 (same). |
| 84. There is ample evidence that the Bay Boys, including each of the Individual Defendants, acted with a common scheme and design to utilize intimidation, threats, and physical violence when necessary to enforce unwritten rules in Lunada Bay, including the exclusion of perceived "outsiders" like Plaintiffs. | 84. Lee Depo. 118:10-20, 119:14-15, 120:24-121:1, 123:7-8, 22-23 (although there is no "written rule book" there is "an understanding" among local surfers at Lunada Bay as to the ground rules for surfing there); Johnston Depo. 63:20-64:2; Spencer Decl. ¶ 12; Spencer Depo., 113:21 ("they all know each other"). |

**Issue #7:     Battery**

| **Issue #7:     Battery** | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 85. Defendant Johnston directly | 85. Reed Depo. 170:23-24 ("I remember |

**Issue #7:    Battery**

| Plaintiffs' Additional Material Facts: | Evidence in Support of Plaintiffs' Additional Material Facts: |
|---|---|
| committed battery on Plaintiff Reed when he intentionally sprayed beer on her and her camera | Mr. Johnston opening the can of beer in a way that sprayed my arm and my camera."); 218:15-22; 301:1-15; 313:13-317:19; Franklin Decl., Ex. 17 [video of incident filed by Defendant Blakeman] [Docket No. 324]. |
| 86. The Bay Boys also committed battery against Plaintiff Spencer, with Defendant Blakeman present and directly participating, when a Bay Boy intentionally collided with Plaintiff Spencer while surfing, leaving him with a serious laceration on his hand. | 86. Spencer Depo. at 98:5-117:5; 142:24-144:19; 172:13-175:12; 223:8-11 (Plaintiff Spencer recounting being assaulted and battered by Bay Boys, including Defendant Blakeman); Spencer Decl. ISO Motion For Class Certification, ¶¶ 11-23 (same). |
| 87. Each of these attacks on Plaintiffs Spencer and Reed were coordinated and carried out with assistance from other Bay Boys. | 87. Lee Depo. 118:10-20, 119:14-15, 120:24-121:1, 123:7-8, 22-23 (although there is no "written rule book" there is "an understanding" among local surfers at Lunada Bay as to the ground rules for surfing there); Johnston Depo. 63:20-64:2); Spencer Decl. ¶ 12; Spencer Depo., 113:21 ("they all know each other"). |

**Issue #8:      Spoliation—Defendants' Destruction of Evidence**

| Issue #8:      Spoliation—Defendants' Destruction of Evidence | |
| --- | --- |
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| 88. Defendants Charlie Ferrara and Frank Ferrara ignored their duty to preserve evidence in this matter, resulting in the spoliation of critical evidence. | 88. Wolff Decl., ¶¶ 51 (Despite being served with document requests for cell phone records in November 2016, neither Charlie Ferrara nor Frank Ferrara attempted to obtain documents until approximately June or July 2017), 52 (despite being ordered by Magistrate Judge Oliver to produce all cell phone bills and text messages, counsel for Defendants Charlie and Frank Ferrara ignored the Court's order and failed to produced Defendant Charlie Ferrara's cell phone data), 53 (due to Defendants Charlie and Frank Ferrara's failure to preserve evidence, their cell phone records only date back to February 21, 2016, and are missing critical data from the dates the Plaintiffs were harassed and attacked – January 29, 2016, February 5, 2016 and February 13, |

| **Issue #8:    Spoliation—Defendants' Destruction of Evidence** | |
|---|---|
| **Plaintiffs' Additional Material Facts:** | **Evidence in Support of Plaintiffs' Additional Material Facts:** |
| | 2016) & Ex. 4 at 164:13-165:7 (Charlie Ferrara testified that he hasn't "really tried that hard" to locate his cell phone bills), 172:25-4 (Charlie Ferrara has not done anything to preserve the information that is on his phone, including photographs and text messages); *see also* Docket No. 267 (ordering Defendants Charlie and Frank Ferrara to produce documents). |

DATED:  August 7, 2017            HANSON BRIDGETT LLP


                                  By:      */s/ Kurt A. Franklin*
                                      KURT A. FRANKLIN
                                      LISA M. POOLEY
                                      SAMANTHA D. WOLFF
                                      TYSON M. SHOWER
                                      LANDON D. BAILEY
                                      Attorneys for Plaintiffs
                                      CORY SPENCER, DIANA MILENA
                                      REED, and COASTAL PROTECTION
                                      RANGERS, INC.