HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
LISA M. POOLEY, SBN 168737
lpooley@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:    (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:   (916) 442-3333
Facsimile:    (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone:   (310) 378-8533
Facsimile:    (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>Plaintiffs, | CASE NO. 2:16-cv-02129-SJO (RAOx)<br><br>**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT BRANT BLAKEMAN MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |

Case No. 2:16-cv-02129-SJO (RAOx)

13660193.1

v.

LUNADA BAY BOYS; THE
INDIVIDUAL MEMBERS OF THE
LUNADA BAY BOYS, including but
not limited to SANG LEE, BRANT
BLAKEMAN, ALAN JOHNSTON
AKA JALIAN JOHNSTON,
MICHAEL RAE PAPAYANS,
ANGELO FERRARA, FRANK
FERRARA, CHARLIE FERRARA,
and N. F.; CITY OF PALOS VERDES
ESTATES; CHIEF OF POLICE JEFF
KEPLEY, in his representative
capacity; and DOES 1-10,

Defendants.

| | |
|---|---|
| Judge: | Hon. S. James Otero |
| Date: | September 5, 2017 |
| Time: | 10:00 a.m. |
| Crtrm.: | 10C |

| | |
|---|---|
| Complaint Filed: | March 29, 2016 |
| Trial Date: | November 7, 2017 |

Plaintiffs Cory Spencer, Diana Milena Reed, and Coastal Protection Rangers, Inc. ("Plaintiffs") hereby respectfully submit the following Statement of Genuine Disputes of Material Fact in Opposition to Defendant Brant Blakeman's ("Defendant")  Motion for Summary Judgment or, in the Alternative, Summary Adjudication.

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| 1.     Cory Spencer alleges that he and Chris Taloa went to surf at Lunada Bay on January 29, 2016.  a.     Declaration of Richard P. Dieffenbach ("Dieffenbach Decl.") | 1.     Disputed in Part.  Plaintiffs do not dispute that Plaintiff Spencer and Christopher Taloa went to surf at Lunada Bay on January 29, 2016. However, the cited evidence does not support the asserted fact.  The cited |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S
MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| (filed concurrently herewith), Ex. B, Corey Spencer's Supplemental Responses to Special Interrogatories, Set One ("Spencer Sup. Resp."), p. 5:19-21.<br>b.      Dieffenbach Decl., Ex. E, Deposition of Corey Spencer ("Spencer Depo."), taken on October 11, 2016, pp. 62:15-18, 85:23-24.<br>c.      Dieffenbach Decl., Ex. F., Deposition of Christopher Taloa ("Taloa Depo."), taken on January 5, 2017, p. 204:15-17. | portion of Plaintiff Spencer's interrogatory response states: "Plaintiffs are also informed and believe that Bernstein told several people after he photographed them 'now we know who you are.' The specific acts directed against Spencer include but are not limited …." (Deiffenbach Dec., Ex. B, p. 5, lines 19-20.) The cited portion of Plaintiff Spencer's deposition testimony states: "Q: Going to a time period before January 2016, is it true that you had never surfed Lunada Bay before that time? A: That's true. … Q: On January 2016? A: January 29, 2016." (Deiffenbach Dec., Ex. E, p. 62, lines 15-18, p. 85, lines 23-24.) The cited portion of Mr. Taloa's deposition testimony does not and cannot reflect an "allegation" by Plaintiff Spencer. |
| 2.      Corey Spencer claims that he and Chris Taloa were harassed by unknown individuals when they arrived at Lunada | 2.      Disputed In Part.  Plaintiffs do not dispute that Plaintiff Spencer and Christopher Taloa were harassed by individuals when they arrived at |

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| Bay on January 29, 2016.<br><br>a. Dieffenbach Decl., Ex. B, Spencer Sup. Resp., p. 5:19-21. | Lunada Bay on January 29, 2016. However, the cited evidence does not support the asserted fact. The cited portion of Plaintiff Spencer's interrogatory response states: "Plaintiffs are also informed and believe that Bernstein told several people after he photographed them 'now we know who you are.' The specific acts directed against Spencer include but are not limited …." (Deiffenbach Dec., Ex. B, p. 5, lines 19-21.) |
| 3.      While Spencer and Taloa were surfing, Spencer claims, "Blakeman was already in the water and began paddling around Spencer and Taloa in a tight circle – staying just a few feet away from them." During the 90-minute surf session, he claims "Blakeman was focused on Spencer and Taloa and continued to shadow their movements, and sit uncomfortably close to them." Spencer described Blakeman as paddling in a "very tight circle" and | 3.      Disputed in Part.  Defendant's asserted fact misrepresents the cited evidence.  The cited portion of Plaintiff Spencer's interrogatory response states: "… Spencer and Taloa on their way down to the beach and into the water. …people from surfing at Lunada Bay. In the approximately 90 minutes that Spencer was in the water that day, Blakeman was focused on Spencer and Taloa and continued to shadow their movements, and sit uncomfortably…" |

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| blocking Taloa from getting any waves.<br><br>a.      Dieffenbach Decl., Ex. B, Spencer Sup. Resp., p. 6:4-5, 6:15-17.<br>b.      Dieffenbach Decl., Ex. E, Spencer Depo., p. 105:11-21. | (Deiffenbach Dec., Ex. B, p. 6, lines 4-5, p.6, lines 15-17.)  The cited portion of Plaintiff Spencer's deposition testimony states:  "Q: Okay.  What was that?  A: A very uncomfortable feeling when the – who I know – did not know at the time – was Defendant Blakeman paddling around myself and Chris, more specifically, Chris in a very tight circle; blocking Chris from getting any waves; never saying a word; just looking – staring at both he and I.  That was a little weird; fearful.  I've never experienced that before in my life in the water like – kind of like a circling you like a shark.  You know, it was weird – just weird."  (Deiffenbach Dec., Ex. E, p. 105, lines 11-21.) |
| 4.      Spencer alleges that an unidentified surfer ran him over and sliced open his right wrist.<br><br>a. Dieffenbach Decl., Ex. B, Spencer Sup. Resp., p. 7:1-4. | 4.      Disputed in Part.  Plaintiffs do not dispute that Plaintiff Spencer was run over by a surfer and his right wrist was sliced open.  However, he identified the surfer as a Bay Boy and therefore Defendant's asserted fact |

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | misrepresents the cited evidence. The cited portion of Plaintiff Spencer's interrogatory response states: "…each other.  At one point while Spencer was in the water and was paddling west out to the ocean, he saw a man surfing, coming in east towards the shore.  The Bay Boy ran over his hand/wrist that was holding his surfboard and one …" …"  (Deiffenbach Dec., Ex. B, p. 7, lines 1-4.) |
| 5.      Taloa referred to Blakeman's conduct as "severe shadowing."<br><br>a. Dieffenbach Decl., Ex. F, Taloa Depo., p. 198:16-22. | 5.      Undisputed. |
| 6.      Taloa did not see Blakeman do anything to Spencer.<br><br>a. Dieffenbach Decl., Ex. F, Taloa Depo., p. 205:1-21. | 6.      Disputed.  Defendant's asserted fact misrepresents the cited evidence. The cited portion of Mr. Taloa's deposition testimony states: "Q: Did you seem him do anything to Mr. Spencer?  A: I saw him paddle over towards Spencer.  We were sitting deep.  It was Cory our police officer man.  I saw him paddle over next to |

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | him and I saw Cory look at him and keep himself calm through the position.  And instead of like – Cory didn't have my water expertise moving around with the current, just stuff like that. as I do, and you know, he works a lot.  He doesn't get to surf as much as he would want to.  Being a police officer, you don't get the skill sets so he wasn't as strong as I was to get away from this guy so he just kind of sat right there with him.  Q: Okay. Did you see Mr. Blakeman do anything in particular to Mr. Spencer?  A: No way. Too close but that's about it that I can say.  Q: You didn't hear him speak to Mr. Spencer?  A: None of that." (Deiffenbach Dec., Ex. F, p. 205, lines 1-21.) |
| 7.     Spencer and Taloa admit Blakeman did not say any words to Spencer.<br><br>a. Dieffenbach Decl., Ex. E, Spencer | 7.     Disputed. Defendant's asserted fact misrepresents the cited evidence. The cited portion of Plaintiff Spencer's deposition testimony reflects only that during a small portion of time on a |

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| Depo., p. 105:11-21<br><br>b. Dieffenbach Decl., Ex. F, Taloa Depo., p. 205:1-21. | particular occasion, Mr. Blakeman did not say anything while he was paddling around Plaintiff Spencer and Mr. Taloa.  (Deiffenbach Dec., Ex. E, p. 105, lines 11-21.) The cited portion of Mr.Taloa's deposition testimony provides that he did not *hear* Defendant Blakeman speak to Plaintiff Spencer on a particular occasion, not that Defendant Blakeman did not speak to Plaintiff Spencer. (Dieffenbach Decl., Ex. F, p. 205, lines 1-21.) |
| 8.      Spencer described the interaction as "weird – just weird."<br><br>a.      Dieffenbach Decl., Ex. E, Spencer Depo., p. 105:11-21.<br>b.      Dieffenbach Decl., Ex. F, Taloa Depo., p. 205:1-21. | 8.      Disputed in part. Defendant's asserted facts misrepresents the cited evidence. The cited portion of Plaintiff Spencer's deposition testimony states: "Q: Okay.  What was that?  A: A very uncomfortable feeling when the - - who I now know - - did not know at the time - - was Defendant Blakeman paddling around myself and Chris and, more specifically, Chris in a very tight circle; blocking Chris from getting any waves; never saying a word; just looking - - staring at both he and I. |

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | That was a little weird; fearful. I've never experienced that before in my life in the water like - - kind of like circling you like a shark. You know, it was weird - - just weird." (Dieffenbach Decl., Ex. E, p. 105, lines 7-21.) The cited portion of Mr. Taloa's depositon testimony does not in any way evince Plaintiff Spencer's description of his encounter with Defendant Blakeman. (Dieffenbach Decl., Ex. F, p. 205, lines 1-21.) |
| 9.      Reed alleges that she was an aspiring big wave surfer who "wanted to paddle out to experience the large waves found off Lunada Bay." She went to Lunada Bay with her friend Jordan Wright. She was encountered by an unidentified 40 to 50-year-old man who yelled at her and she left. She reported this incident to the police. She returned on February 5, 2015, with a photographer from the Los Angeles Times, but there were no surfers there so they left. The LA Times | 9.      Disputed in part. Defendant's multiple asserted facts misrepresent the cited evidence. The cited portion of the Complaint states:  "(22)   On January 29, 2016, Plaintiff Diana Milena Reed, who is an aspiring big wave surfer, wanted to paddle out to experience the large waves found off Lunada Bay. She was accompanied by her friend Jordan Wright.  Reed and Wright encountered members of the LUNADA BAY BOYS who screamed profanities at them and said words to the effect |

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| subsequently reported a story regarding Lunada Bay. There was no interaction with Blakeman on either of these days.<br><br>a. Complaint, Doc. 1, ¶22-23 | "you can't surf here."  As Reed and Wright made their way down the trail, they were approached by a short, 45-50-year old man who yelled various profanities and insults at them.  Reed was extremely frightened and felt endangered and in fear of assault. Never in her life had she been screamed and yelled at in such a manner.  The man called her a whore. A group of men were watching, along with police in the distance.  PALOS VERDES ESTATES police witnessed the harassment, but rather than take action, they approached Reed after the incident asked whether Reed and Wright would like to make a "citizen's arrest."   Reed declined to make the arrest and instead chose to file a report, having been assured by the police that the case would be handled by the District Attorney with the same result. Reed was surprised that the police did not arrest the man, especially because they had witnessed the incident. |

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
| --- | --- |
| | (23)   On or about February 5, 2016, Reed and Wright returned to Lunada Bay with a photographer and writer from The Los Angeles Times.  There were no other surfers at Lunada Bay that day.  Subsequently, the Los Angeles Times printed a newspaper story on February 13, 2016, that contained several photographs of Reed, including one that showed her in "the locals hangout fort" and stated that she was an "outsider" who had filed a police report for harassment against the LUNADA BAY BOYS.  The newspaper reported that LUNADA BAY BOYS "bombard outsiders with dirt clods, slash their car tires, and assault them in the water – sometimes coordinating the attacks with walkie talkies…Surfers who say they have been victimized over the years have accused local authorities of complacency, cowardice, and even complicity." (Comp., ¶22-23.)  The cited portion of the Complaint does not |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | state whether or not there was interaction with Blakeman on either of these days.  (*Id.*) |
| 10.      On February 13, 2016, Reed and Wright returned to Lunada Bay and were allegedly hassled by an unidentified man. Two hours later, she was approached by defendants Jalian Johnston and Brant Blakeman. She alleges that Johnston "shook up a can of beer and sprayed Reed and her camera with it, and poured beer on Reed's arm." She further alleges that Johnston exposed himself to her. She reported the incident to the police.<br><br>a. Complaint, Doc. 1, ¶¶24, 26 | 10.      Disputed in part. Defendant's multiple asserted facts misrepresent the cited evidence.  The cited portion of the Complaint states: "(24)      Reed and Wright returned to Lunada Bay on February 13, 2016.  While walking across Lunada Beach to the fort, LUNADA BAY BOYS called her a "bitch" and told "fuck you" and "you are a liar" – in reference to the Los Angeles Times article which had been printed that day.  Reed was also told to "keep walking."  After arriving at the fort, Reed was approached by a brown-haired man in his late 40s or early 50s. The man started asking her various questions, including why she was there, what was her motivation, and what was her mission objective.  The man told her that the LUNADA BAY BOYS were mad at her.  Reed told the man that she was simply there to take |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S
MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | photos of Wright and to watch him surf and enjoy the beach.  The man eventually left the fort. |
| | (26)    After walking back up the cliff following this incident, Reed was in tears and visibly upset.  Reed saw a police officer sitting inside a patrol car on the side of the road.  The officer was completely unaware of the events occurring below the cliff in the fort and on the beach.  Reed complained to Defendant PALOS VERDES ESTATES and told the police officer what happened.  The police officer proceeded to take Reed's information. After approximately 30 minutes, the police officer walked down the cliff with Reed but the LUNADA BAY BOY aggressors were gone.  Only Defendant Charlie Ferrara remained, but he refused to cooperate with the police and told them he did not see anything, though he apologized to Reed.  (Comp., ¶¶ 24, 26.)  Nowhere in the cited portion of the Complaint are |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | Defendants Blakeman or Johnston mentioned, nor does it include an allegation that Defendant "Johnston exposed himself to her." (*Id*.)  That allegation and other descriptions of Defendants Johnston's and Blakeman's behavior toward Plaintiff Reed, however, is included in Paragraph 25 of the Complaint, which states: "About two hours later, certain Individual Defendants  approached Reed with a case of beer and feigned celebration of the Los Angeles Times article.  But they blamed Reed for unwanted attention the article brought upon the LUNADA BAY BOYS and PALOS VERDES ESTATES.  In an attempt to intimidate Reed, the Individual Defendants, including Brant Blakeman and Jalian Johnston, asked Reed to drink with them. When she declined, Johnston shook up a can of beer and sprayed Reed and her camera with it, and poured beer on Reed's arm.  They filmed the incident.  Reed asked |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| | them to stop filming her.  They told her they thought she was "sexy," and filmed her while they told her she "excited them."  Defendant Johnston then made comments about his penis, stating that it was big enough to "get the job done," and he rubbed his torso and belly in a sexually-suggestive manner, telling Reed that she made him "excited" and "hard," which made it easier for him to get into his wetsuit. Defendant Johnston briefly exposed himself to Reed while he was changing into his wetsuit before Reed quickly turned away.  Defendant Charlie Ferrara witnessed the entire event from the roof of the fort.  Reed attempted to contact the police from her cell phone during the incident but was unable to obtain a signal.  Reed had requested a police escort to the beach upon her arrival at Lunada Bay earlier that day because of her previous experiences but the police refused her request. (Comp., ¶25.) |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S
MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| 11.    According to Reed's interrogatory response, Johnson simply "opened a can of beer in a purposeful way so that it sprayed Reed's arm and her camera" instead of the shaking, spraying and pouring alleged in the complaint.<br><br>a. Dieffenbach Decl., Ex. C, Diana Milena Reed's Supplemental Responses to Special Interrogatories, Set One ("Reed Sup. Resp."), p. 7:18-21 | 11.    Disputed in part. Defendant's asserted fact  misrepresents the cited evidence  The cited portion of Plaintiff Reed's interrogatory response states: "… sexy baby, woooh.  Johnston then opened a can of beer of in a purposeful way so that it sprayed Reed's arm and her camera."  (Dieffenbach Decl., Ex. C, p. 7, lines 18-21.). The remainder of the asserted fact, which is improper argument, is not supported by citation to any evidence.  (Dieffenbach Decl., Ex. F, p. 100, lines 1-3; p. 101, lines 9-20; p. 104, line 16 – p. 105, line 6.) |
| 12.    According to her deposition testimony, Reed had only been surfing for two years and being a big wave surfer was just a goal – she was not a big wave surfer yet. She further admits that she has never actually surfed at Lunada Bay or even paddled out there.<br><br>a. Dieffenbach Decl., Ex. F, Taloa Depo., pp. 100:1-3; 101:9-20; 104:16-105:6 | 12.    Disputed in Part.  Plaintiffs do not dispute that Plaintiff Reed had only surfed for two years and was an aspiring big wave surfer, and that Reed had never previously surfed or paddled out at Lunada Bay.  However, the cited evidence -- Mr. Taloa's deposition testimony -- does not support the asserted fact. |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S
MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| 13.     Reed testified that although she remembers the events that occurred, it was very traumatic so she has "blocked out certain small details" and, due to her pregnancy at the time of the deposition, certain things were hard to remember.<br><br>a. Dieffenbach Decl., Ex. D, Deposition of Diana Milena Reed ("Reed Depo."), taken on October 24 and 25, 2016, p. 169:13-23 | 13.     Disputed in part.  The asserted fact misrepresents the cited evidence. The cited portion of Plaintiff Reed's deposition testimony states:  "Q: The complaint indicates at some point you were – let's see – you had spent about two hours at Lunada Bay and then certain individual defendants approached you with a case of beer. Do you recall that?  A: I do, but again, that event was very traumatic to me so I do remember what happened but I have blocked out certain small details of it and, you know, with my pregnancy, my memory right now, certain things are hard to remember but I'm doing my best to remember." (Dieffenbach Decl., Ex. D, p. 169, lines 13-23.) |
| 14.     Reed testified Blakeman filmed her and Johnson "opening a can of beer in a way that sprayed my arm and my camera." During this encounter, she testified she was "frozen in fear." | 14.     Disputed in part.  The asserted fact misrepresents the cited evidence. The cited portion of Plaintiff Reed's deposition testimony states:  "Q: What do you remember about being approached by individual defendants |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| | Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | a. Dieffenbach Decl., Ex. D, Reed | with a case of beer?  A: I remember |
| 4 | Depo., pp.170:9-171:3; 177:2-8. | that they approached me very rapidly |
| 5 | | and I was caught by surprise.  I |
| 6 | | remember, you know, declining that I |
| 7 | | wanted to drink beer.  I remember |
| 8 | | being videotaped by Brent Blakeman. |
| 9 | | I remember that there were times when |
| 10 | | I was being videotaped very close to |
| 11 | | my face and it felt very intimidating |
| 12 | | and definitely felt like I was being |
| 13 | | harassed.  And I think that I asked |
| 14 | | them, you know, why they're |
| 15 | | videotaping me because it made me |
| 16 | | very uncomfortable.  [¶] I remember |
| 17 | | Mr. Johnston opening the can of beer |
| 18 | | in a way that sprayed my arm and |
| 19 | | camera.  I remember him chucking |
| 20 | | beer and throwing beer cans on the |
| 21 | | floor.  I remember him being very loud |
| 22 | | and very scary, very intimidating, and |
| 23 | | acting in a sexual manner. … Q: Okay. |
| 24 | | Okay.  At any point, did you walk |
| 25 | | away when they were making this, I |
| 26 | | think you said, sexual references to |
| 27 | | you; were you able to walk away at |
| 28 | | | |

Case No. 2:16-cv-02129-SJO (RAOx)

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S
MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| | Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|---|
| 1<br>2 | | |
| 3<br>4<br>5<br>6<br>7 | | that point and exit the fort? [Objection] A: I was not able to exit the fort,I was frozen in fear." (Dieffenbach Decl., Ex. D, p. 170, line 9 – p. 171, line 3; p. 177, lines 2-8.) |
| 8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21 | 15.     Summary of Video: The rock patio next to the surf where Reed was standing was very small. When Johnson opened the beer, only a few drops of landed on her arm. During the entire encounter, Reed is in no apparent distress. She is either smiling or smirking the entire time. Her voice is strong and unaffected by the actions around her. She never asks to leave nor does she attempt to remove herself from the patio.<br><br>a. Dieffenbach Decl., Ex. A. | 15.     Disputed. The multiple asserted facts, which include improper argument, are not supported by the cited evidence.  Further, these statements constitute improper opinion testimony by a lay witness – here, counsel for Defendant Blakeman.  FRE 701.  Moreover, this statement lacks personal knowledge that would support the declarant's statement as to Plaintiff Reed's state of mind.  FRE 602. |
| 22<br>23<br>24<br>25<br>26<br>27 | 16.     Plaintiffs allege the following conspiracy: "Blakeman engaged in a concerted effort with other Bay Boys to obstruct the plaintiffs' and the publics' free passage and use in the customary manner of a public space. Reed also | 16.     Disputed in Part.  Plaintiffs do not dispute that they allege Defendant Blakeman is part of a conspiracy.  However, the cited portion of Plaintiff Spencer's interrogatory responses, which does not at all support the |
| 28 | | |

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| believes that Blakeman coordinated with other Bay Boys to harass and assault the plaintiffs and the public when they were visiting Lunada Bay. Reed believes that the conduct directed at the plaintiffs and others trying to surf Lunada Bay is part of an agreement among Blakeman and the other Bay Boys, which at a minimum, may be implied by the conduct of the parties and other members of the Bay Boys."<br><br>a.      Dieffenbach Decl., Ex. B, Spencer Sup. Resp., pp. 35:26-36:1<br>b.      Dieffenbach Decl., Ex. C, Reed Sup. Resp., p. 43:19-27 | asserted fact, states:  "Responding Party further objects to the extent that this interrogatory invades attorney-client privilege and/or violates the work product doctrine by compelling Responding Party to disclose privileged communications and/or litigation strategy.  Responding Party will not provide any such information." (Dieffenbach Decl., Ex. B,  p. 35, line26 – p. 36, line1.) Plaintiffs do not dispute the quoted portion of Plaintiff Reed's interrogatory responses, but dispute Defendant's argumentative characterization of that response. |
| 17.      Plaintiffs' evidence of conspiracy is limited to the following:<br>"On February 5, 2015, Charles Mowat [a non-party] sent a text message to Defendant Brant Blakeman, Tom Sullivan [a non-party], David Yoakley [a non- party], Andy Patch [a non-party], Defendant Michael Papayans and several others that said 'There are 5 kooks standing on the bluff taking pictures ... I think that same Taloa guy. Things could get ugly.'"<br>Dieffenbach Decl., Ex. C, Reed Sup. Resp., p 44:3-7 | 17. Disputed. The cited evidence does not support the asserted fact about the limitations of Plaintiffs' evidence of conspiracy.  See Plaintiffs' Statement of Additional Material Facts In Opposition to Individual Defendants' Motion for Summary Judgment. Additionally, Defendant misquotes the interrogatory responses of Plaintiff |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| "[A] text message was sent to Defendant Papayans on February 7, 2016, by a Bay Boy inquiring "How was all that Taloa shit? Charley called me and my dad said why weren't you down there?"<br><br>Dieffenbach Decl., Ex. B, Spencer Sup. Resp., pp. 35:26-36:1<br><br>"[T]here are emails from Sang Lee discussing the Bay Boys concerted efforts to stop the public from accessing the beach."<br><br>Dieffenbach Decl., Ex. B, Spencer Sup. Resp., p. 36:7-8<br><br>"A Los Angeles Times photographer captured a picture of Defendant Blakeman of [sic] the bluff filming plaintiffs."<br><br>Dieffenbach Decl., Ex. C, Reed Sup. Resp., p. 44:7-9<br><br><br>a.      Dieffenbach Decl., Ex. C, Reed Sup. Resp., pp. 44:3-7; 44:7-9<br><br>b.      Dieffenbach Decl., Ex. B, Spencer Sup. Resp., pp. 35:26-36:1, 36:7-8 | Spencer.  First, Defendant cites to an objection to Defendants' interrogatory based on the attorney-client privilege and work product doctrine. (Dieffenbach Decl., Ex. B,  p. 35, line 26 – page 36, line.  The cited interrogatory response is Similarly, Defendant cites to language: "… investigate the facts. As discovery is continuing, Spencer reserves the right to update this response."  (Dieffenbach Decl., Ex. B,  p. 36, lines 7-8.) |
| 18.     Reed believes that Blakeman "planned the event out of an attempt to try to ruin my camera and in an attempt to try to intimidate me."  She believes this because it "seemed like all of their | 18. Disputed in part. Defendant has quoted additional deposition testimony of Plaintiff Reed that he has not cited. (*See* Dieffenbach Decl., Ex. D, p. 300, line 25 – p. 301, line 2.)  Additionally, |

PLTFS.' STMT. OF GENUINE DISPUTES OF MATERIAL FACT IN OPP. TO DEFT BRANT BLAKEMAN'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13660193.1

| Defendants' Statement of Uncontroverted Facts and Evidence in Support | Plaintiffs' Response in Opposition |
|---|---|
| actions were orchestrated, they immediately rushed towards me. Johnson immediately opened the can of beer and, you know, sprayed t on my arm and on my camera in what I believe they intended to appear as an accident but to me it felt very intentional." <br><br> a.    Dieffenbach Decl., Ex. D, Reed Depo., p. 300:21-25.) <br> b.    Dieffenbach Decl., Ex. D, Reed Depo., p. 301:1-2.) | Defendant has misquoted Plaintiff Reed's deposition testimony. Plaintiff Reed testified that ". . . Johnson immediately opened the can of beer and, you know, sprayed it on **me and** my arm and on my camera . . . ." (Dieffenbach Decl., Ex. D, p. 301, line7 (emphasis added)). |

DATED:  August 7, 2017                    HANSON BRIDGETT LLP


By:    _/s/ Samantha Wolff_____
                KURT A. FRANKLIN
                LISA M. POOLEY
                SAMANTHA D. WOLFF
                TYSON M. SHOWER
                LANDON D. BAILEY
                Attorneys for Plaintiffs
                CORY SPENCER, DIANA MILENA
                REED, and COASTAL PROTECTION
                RANGERS, INC.