# EXHIBIT 36

1  HANSON BRIDGETT LLP
   KURT A. FRANKLIN, SBN 172715
2  kfranklin@hansonbridgett.com
   LISA M. POOLEY, SBN 168737
3  lpooley@hansonbridgett.com
   SAMANTHA WOLFF, SBN 240280
4  swolff@hansonbridgett.com
   JENNIFER ANIKO FOLDVARY, SBN 292216
5  jfoldvary@hansonbridgett.com
   425 Market Street, 26th Floor
6  San Francisco, California 94105
   Telephone: (415) 777-3200
7  Facsimile: (415) 541-9366

8  HANSON BRIDGETT LLP
   TYSON M. SHOWER, SBN 190375
9  tshower@hansonbridgett.com
   LANDON D. BAILEY, SBN 240236
10 lbailey@hansonbridgett.com
   500 Capitol Mall, Suite 1500
11 Sacramento, California 95814
   Telephone: (916) 442-3333
12 Facsimile: (916) 442-2348

13 OTTEN LAW, PC
   VICTOR OTTEN, SBN 165800
14 vic@ottenlawpc.com
   KAVITA TEKCHANDANI, SBN 234873
15 kavita@ottenlawpc.com
   3620 Pacific Coast Highway, #100
16 Torrance, California 90505
   Telephone: (310) 378-8533
17 Facsimile: (310) 347-4225

18 Attorneys for Plaintiffs
   CORY SPENCER, DIANA MILENA
19 REED, and COASTAL PROTECTION
   RANGERS, INC.

20

21        UNITED STATES DISTRICT COURT

22  CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

23

24 CORY SPENCER, an individual;          CASE NO. 2:16-cv-02129-SJO (RAOx)
   DIANA MILENA REED, an
25 individual; and COASTAL              DECLARATION OF ANDREW
                                        WILLIS IN SUPPORT OF
26 PROTECTION RANGERS, INC., a         PLAINTIFFS' OPPOSITION TO
                                        DEFENDANTS CITY OF PALOS
27 California non-profit public benefit VERDES ESTATES AND CHIEF OF
   corporation,                         POLICE JEFF KEPLEY'S MOTION
28                                      FOR SUMMARY JUDGMENT OR IN

Case No. 2:16-cv-02129-SJO (RAOx)

13644907.2

| | | |
|---|---|---|
| 1 | Plaintiffs, | **THE ALTERNATIVE SUMMARY ADJUDICATION** |
| 2 | v. | |
| 3 | LUNADA BAY BOYS; THE | |
| 4 | INDIVIDUAL MEMBERS OF THE | Judge: Hon. S. James Otero |
| 5 | LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT | Date: August 21, 2017 Time: 10:00 a.m. Crtrm.: 10C |
| 6 | BLAKEMAN, ALAN JOHNSTON | |
| 7 | AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, | |
| 8 | ANGELO FERRARA, FRANK | Complaint Filed: March 29, 2016 |
| 9 | FERRARA, CHARLIE FERRARA, and N. F.; CITY OF PALOS VERDES | Trial Date: November 7, 2017 |
| 10 | ESTATES; CHIEF OF POLICE JEFF | |
| 11 | KEPLEY, in his representative capacity; and DOES 1-10, | |
| 12 | | |
| 13 | Defendants. | |

14

15     I, ANDREW WILLIS, declare as follows:

16     1.     I am the Southern California Enforcement Supervisor for the California

17 Coastal Commission.  As such, I oversee Coastal Act enforcement for the portion of

18 the Coastal Zone, as that phrase is defined in Public Resources Code section 30103,

19 that extends from the northern Santa Barbara County line south to the international

20 border.  I have worked in enforcement for the California Coastal Commission since

21 November 1, 2004.  I have personal knowledge of the facts set forth herein, except

22 as to those stated on information and belief and, as to those, I am informed and

23 believe them to be true.  If called as a witness, I could and would competently testify

24 to the matters stated herein.

25     2.     As background, as noted above, my employer is the California Coastal

26 Commission (the "Commission").  It is my understanding that its predecessor was

27 established by voter initiative in 1972 (Proposition 20), with a sunset provision, and

28 the Commission itself was established and made permanent by the Legislature

-2-                          Case No. 2:16-cv-02129-SJO (RAOx)

DECL. OF A. WILLIS ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF
OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644907.2

through adoption of the California Coastal Act of 1976, Cal. Pub. Res. Code §§ 30000 *et seq.*. The Commission's express mission is to protect and enhance California's coast and ocean for present and future generations.[1] It does so through careful planning and regulation of development, rigorous use of science, facilitation of strong public participation, education, effective intergovernmental coordination, and enforcement efforts.

3. While Commission enforcement staff like me endeavor to actively monitor activities within California's coastal zone insofar as possible, we have limited staffing, a limited budget, and very limited resources. In fact, to cover more than 1,250 shoreline miles, investigate and pursue violations administratively, and support enforcement pursued in litigation, there are just 14 enforcement personnel statewide. The enforcement team is supported by a single in-house lawyer who also represents other divisions of the Commission and is represented in litigation by the California Attorney General's Office. Thus, given our limited resources that must be used to cover the Coastal Zone of the entire State of California, cooperating coastal access organizations and private citizen lawsuits that seek to enforce coastal access laws, or that otherwise support open access to the state's beaches, can also play an important role in coastal protection in California. Here, while counsel in the *Spencer* matter do not represent the Commission, as the Commission's Southern California Enforcement Supervisor, I continue to monitor the litigation, and I am supportive of Plaintiffs' efforts, because of the value assigned to public coastal access by the State, including Plaintiffs' effort to make Palos Verdes Estates beaches more accessible to all people, regardless of where they live or their income level. I am also supportive of Plaintiffs' efforts because my office has limited resources to

---

[1] See the Coastal Commission's mission statement at https://www.coastal.ca.gov/whoweare.html.

13644907.2

1    quickly resolve every violation of law related to access to the coast, and the

2    Commission enforcement staff is generally limited to enforcement of the Coastal

3    Act, while Plaintiffs' causes of action are more diverse, and these other ways to

4    protect and ensure access to the States' coastal resources can provide an important

5    complement to my role that furthers the Commission's objectives. Here, the overall

6    situation in the City of Palos Verdes Estates ("City") still requires change and

7    improvements to ensure public access to Lunada Bay is available to all. More

8    specifically, I am not satisfied that the City's efforts to address the illegal

9    exclusionary activity on a publicly owned beach has fully remedied the situation,

10    and steps remain that the City should take to improve access to Lunada Bay.

11       4.      My office has been in communication with counsel in the *Spencer*

12    matter. As the Southern California Enforcement Supervisor for the Commission,

13    given the potential for ongoing preclusion of coastal access at Lunada Bay, I believe

14    the *Spencer* litigation presents important issues under the law. Moreover, Plaintiffs'

15    efforts may continue to work as a catalyst to encourage the City to survey its options

16    to ensure compliance with respect to laws that support access to California's coast.

17    Without judicial assistance, I am of the opinion that the potential remains that

18    beachgoers are being denied access to Lunada Bay in violation of the law, and, thus,

19    are continuing to suffer irreparable harm.

20       5.      The Coastal Commission supports equal justice requirements that

21    promote equal access to the beach and coastal zones regardless of where a person

22    lives, and that prohibit discrimination based on income, wealth, race, color, national

23    origin, and other protected categories.[2] My staff have received complaints about

24    localism at Lunada Bay, and that beachgoers are deterred from visiting out of fear

25

26

27    [2] See for instance section 30013 (Environmental Justice) of the California Public
Resources Code.

28

13644907.2

1  for safety to themselves, their families and friends, and their personal property.

2  These complaints cause the Commission grave concern.

3       6.    In my job as the Southern California Enforcement Supervisor for the

4  Commission, I support efforts that (a) provide coastal experiences to lower-income

5  or other underserved populations, (b) increase the number of people visiting the

6  coast, including people from inland and poor communities, (c) improve barrier-free

7  access to persons with disabilities, (d) provide valuable recreational, environmental,

8  cultural or historical learning experiences, (e) mitigate discriminatory impact to

9  beachgoers, and ensure access to the coast without discrimination based on income,

10  wealth, race, ethnicity, sexual orientation, culture, or other protected categories;

11  (f) increase stewardship of coastal resources, and (g) enhance the public's coastal

12  experience in a way that does not currently exist. In this effort, in addition to

13  working with non-profit and other coastal advocacy groups, the Coastal

14  Commission occasionally teams up with the California State Coastal Conservancy,

15  and the State Lands Commission.

16       7.    In my work as Southern California Enforcement Supervisor for the

17  Commission, I understand that the State Coastal Conservancy commissioned

18  Probolsky Research on Public Policy early this year to conduct a survey of 1,200

19  California residents, which survey was conducted between March 23 and March 29,

20  2017. This research is valuable to my work for the Coastal Commission. This

21  survey found that 71.1% of Californians from inland areas state they wish they

22  could visit the coast more often. Attached here to as Exhibit 1 is a true and correct

23  copy of what I understand to be the California State Coastal Conservancy Statewide

24  Survey.

25       8.    In my job as the Southern California Enforcement Supervisor for the

26  California Coastal Commission, I have reviewed State Lands Commission and

27  Coastal Commission records, and I understand from those records that Lunada Bay

28  is public trust land legislatively granted from the State of California to the City of

-5-    Case No. 2:16-cv-02129-SJO (RAOx)

DECL. OF A. WILLIS ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644907.2

1  Palos Verdes Estates.  More specifically, the State of California granted the City of
2  Palos Verdes Estates a sovereign tide and submerged lands trust in 1963, which was
3  amended in 1968.  This grant requires and was conditioned upon the granted land to
4  be used for statewide interests, including for "preservation of areas…for activities
5  such as surfing and other water sports, and the natural beauty and biological
6  resources and activities related thereto…" (Chap. 1975, Stats. 1963; Chap. 316,
7  Stats. 1968)  Further, the City cannot at any time grant, convey, give or alienate
8  such lands, or any part thereof, to any individual, firm or corporation for any
9  purposes whatever….."  And, "[i]n the management, conduct, operation and control
10 of said lands or any improvements, betterments, or structures thereon, the city or its
11 successors shall make no discrimination in rates, tolls or charges for any use or
12 service in connection therewith."  And, the State "reserve[s] to the people of
13 California the right to fish in the waters on said lands with the right of convenient
14 access to said water over said lands for said purpose."  Attached hereto as Exhibits 2
15 and 3 are true and correct copies of Statutes of 1963 relating to tide and submerged
16 lands granted in trust to the City of Palos Verdes Estates, and the 1968 amendment.

17        9.     Upon information and belief, the "Master Plan for Palos Verdes Estates
18 Shoreline Preserve" was adopted by the City on March 10, 1970.  The Master Plan
19 recognizes certain recreational opportunities on the Palos Verdes Estates coastline,
20 including surfing, scuba diving, swimming, and boating.  Further, it recommended
21 delineation and improvement of access trails to encourage the activities while
22 promoting public safety – and identified Lunada Bay as being an area where
23 reasonably safe trails should be improved and provided.  And Lunada Bay was to be
24 considered as an improved viewing site.  Attached hereto as Exhibit 4 is a true and
25 correct cope of the City of Palos Verdes Estates Shoreline Preserve Master Plan.

26        10.    Upon information and belief, after the State's substantial-compliance
27 investigation, the State confirmed that the grant to the City including Lunada Bay
28 was to be used "…for purposes in which there is a general statewide interest."

-6-                        Case No. 2:16-cv-02129-SJO (RAOx)

DECL. OF A. WILLIS ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644907.2

1  Attached hereto as Exhibit 5 is a Staff Report from the State Lands Commission

2  dated 8/20/1981. Also, according to a 1991 Coastal Commission Staff Report,

3  "[t]he city has provided the general location of 16 accessways in the Shoreline

4  Preserve Master Plan (Exhibits 3-4)". But the City was to "adopt a policy that

5  supports appropriate public action to retain and improve....the City's accessways

6  including the erection of signs to inform the public of the existence and nature of the

7  Shoreline Preserve and locations of improved public accessways to the shore..."

8  Attached hereto as Exhibit 6 is a July 1, 1991 Staff report to the California Coastal

9  Commission on the Palos Verdes Estates' Local Coastal Program (LCP), which

10  includes a Land Use Plan (LUP) and Local Implementation Program (LIP).

11       11.   In addition to the Coastal Act, the California Constitution provides that

12  no individual, partnership or corporation possessing frontage or tidal lands of any

13  navigable water in the State shall be permitted to exclude the right of way to such

14  waterway whenever it is required for any public purpose and that the State shall

15  enact laws that give the "most liberal construction" to this provision so that "access

16  to navigable waters of this State shall be always attainable for the people thereof."

17  Attached here to as Exhibit 7 is a true and correct copy of "Article X Water," Sec. 4,

18  of the California Constitution.

19       12.   As noted above, my office and staff have received complaints that

20  locals at Lunada Bay are deterring visitors to this area of the California coast, which

21  causes the Coastal Commission substantial concern. Moreover, along with my staff,

22  I have come to the conclusion that Lunada Bay is underutilized by surfers and other

23  beachgoers compared to similar prized areas of the California coastal zone.

24       13.   The Coastal Commission has relied on reports prepared by Dr. Philip

25  King at various times related to issues of beach valuation and beach counts. Further,

26  I have reviewed Dr. Philip King's declarations (Doc. Nos. 182-4 and 216-1) in

27  support of the Plaintiffs' motion to support class certification. In terms of Dr. King

28  using the Trestles coastal area in his comparator analysis, Trestles is within my

-7-    Case No, 2:16-cv-02129-SJO (RAOx)

DECL. OF A. WILLIS ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644907.2

1 | jurisdiction.  I know the Trestles area coastal zone well, including from in-person
2 | visits: Trestles is located at the northern end of Camp Pendleton Marine Base in San
3 | Diego County abutting the City of San Clemente at the Orange County border, and
4 | is a long beach with several distinct areas/breaks – from north to south these are
5 | Cottons, Upper Trestles, Barbwires, Lower Trestles, Middles and Church.  It is
6 | common for surfers to report that they have driven long distances, or even flown
7 | from other countries, to surf and visit Trestles areas/breaks.

8 |       14.    The Trestles areas/breaks regularly have a large number of surfers
9 | using them, and Cottons, Upper Trestles, and Lower Trestles are typically the most
10 | heavily used.  In reviewing Dr. King's declarations, in my experience I concur that
11 | the Trestles areas/breaks may receive up to about 330,000 surf trip visits annually.  I
12 | understand this number comes from a study that Dr. Chad Nelson conducted, who
13 | cites to annual attendance records generated by State Park lifeguards for this
14 | number.  https://www.surfrider.org/coastal-blog/entry/the-economics-of-surfing
15 | ftp://reef.csc.noaa.gov/pub/socioeconomic/NSMS/California/Literature/Nelsen_200
16 | 7.pdf.  In addition to travel, to use the Trestles areas/breaks, a surfer or other
17 | beachgoer is required to make a long walk or bike ride from the parking area – a
18 | majority of which requires an annual $195 State Park's parking pass or payment of
19 | $15 a day to use.

20 |       15.    While Lunada Bay is a world class wave like Trestles, unlike Trestles,
21 | Lunada Bay has ample free nearby public parking.  And unlike Trestles, Lunada
22 | Bay is not bordered by a military base, but is fully surrounded by a more densely
23 | populated area.  Thus, in consultation with my staff, we concur with Dr. King that
24 | absent the issue of localism, Lunada Bay should have on average between 60-75
25 | surfers per day using it during periods of good waves and a commensurate number
26 | of surfers using it annually.  Our experience is that Lunada Bay has far fewer
27 | visitors than this, and because of localism, far fewer than we would otherwise
28 | expect.

DECL. OF A. WILLIS ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF
OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644907.2

1       I declare under penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct.

3       Executed on this 25th day of July, 2017, at Long Beach,

4   California.

5

6                                   ANDREW WILLIS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:16-cv-02129-SJO (RAOx)

DECL. OF A. WILLIS ISO PLTFS.' OPPOSITION TO DEFTS. CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S MOT. FOR SUMM. JUDGMENT OR, IN THE ALT., SUMM. ADJUD.

13644907.2

# EXHIBIT 1

# Coastal Conservancy Statewide Survey

## - Report on Results -

April 24, 2017



Opinion Research
on Public Policy

Probolsky Research | San Francisco   (415) 870-8150
20 2nd Street 3rd Floor #3172 | Newport Beach   (949) 855-0400
San Francisco CA 94105 | Washington DC   (202) 559-0270

# Coastal Conservancy – Statewide Survey

## Report on results

From Thursday, March 23 to Wednesday, March 29, 2017, Probolsky Research conducted a telephone survey of California residents.

A total of 1200 residents were surveyed. A survey of this size yields a margin of error of +/- 3.2% with a confidence level of 95%. Interviews were conducted with residents on both landline and mobile phones (30%) and were offered in English and Spanish languages.

Probolsky Research specializes in in opinion research on behalf of business, government, non-profit and special interest clients.



**Probolsky Research**
28 2nd Street 3rd Floor #8172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

2

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 4 of 57   Page ID #:8979

# Sizes of Demographic/Geographic
## Categories Snapshot

Gender



* Male 48.0%
* Female 52.0%

Age



* 18-34  27.8%
* 35-54  32.0%
* 55-64  17.5%
* 65+  22.8%

Household Income



* Under $25K 15.6%
* $25K-$50K 19.3%
* $51K-$75K 14.3%
* $76K-$100K 13.1%
* $101K-$200K 13.6%
* Over $200K 5.5%
* Refused 18.7%

Geographic: County Groupings



* Los Angeles County 27.0%
* Other Southern California 31.2%
* Central Valley 16.6%
* San Francisco Bay Area 20.4%
* Other Northern California 4.9%

Geographic: Coastal Region



* North Coast 3.0%
* Bay Area 16.5%
* Central Coast 5.8%
* South Coast 46.5%

Geographic: Distance from Coast



* Coastal 5  11.3%
* Coastal 10  7.8%
* Inland  83.0%



**Probolsky Research**
22 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

3



Coastal Conservancy
Statewide Survey

Legend
— U.S. Network

Probolsky Research

San Francisco      (415) 870-8150
Newport Beach     (949) 855-6400
Washington DC     (202) 558-0270



4



Coastal Conservancy
Statewide Survey

Legend

Probolsky Research


PROBOLSKY
RESEARCH

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

# Top Issues

## Open-ended question



ProbolSky Research
29 2nd Street St., Ste #372
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

9

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 8 of 57   Page ID
#:8983

# Public Safety is the Most Important Issue
Among California residents

Question:   What is the most important issue facing your community today?



| Issue | Percentage |
|---|---|
| Public safety | 22.4% |
| Jobs and the economy | 11.1% |
| Poverty | 9.8% |
| Transportation | 8.4% |
| Healthcare | 8.1% |
| Government | 8.0% |
| Education/schools/higher education | 6.8% |
| Affordable housing | 5.9% |
| Environmental issues | 5.5% |
| Water/drought | 2.8% |
| Moral issues | 2.2% |
| Overpopulation/controlling growth/development | 1.5% |
| None/nothing | 4.0% |
| Other | 2.3% |
| Don't know/refused | 17.8% |



Probolsky Research
23 2nd Street 3rd Floor 18172
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

7

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 9 of 57   Page ID #:8984

# Overall Coastal Experience



**Probolsky Research**
26 2nd Street 3rd Floor #C172
San Francisco CA 94105

San Francisco     (415) 870-8150
Newport Beach     (949) 855-6400
Washington DC     (202) 559-0270

8

# 79.2% of Respondents Say that California
Beaches are clean and safe places to visit

Statement:    California beaches are clean and safe places to visit.





**Probolsky Research**          San Francisco   (415) 870-8150
26 2nd Street 3rd Floor #3172    Newport Beach   (949) 855-6400
San Francisco CA 94105           Washington DC   (202) 559-0270

9

# 89.3% of Respondents Agree that the
California coast, including beaches and the ocean, are personally important to them

Statement:    The California coast, including beaches and the ocean are personally important to me.



89.3%



9.2%

1.5%

Agree                          Disagree                    Unsure/Refused



**Probolsky Research**
26 2nd Street 3rd Floor #372
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

# 75.6% Agree that Even When They are Not

Visiting the California coast, they feel a strong connection to it

Statement:    Even when I am not visiting the California coast, I feel a strong connection to it.





**Probolsky Research**
25 2nd Street 3rd Floor #8172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

11

# Latino/Hispanic and White/Caucasian

Respondents feel a strong connection to the CA coast, even when they are not visiting

Statement:     Even when I am not visiting the California coast, I feel a strong connection to it.





**Probolsky Research**
29 2nd Street 3rd Floor #8172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

12

# 94.3% Agree that People of All Backgrounds
## Are welcome at the California coast

Statement:   People of all backgrounds are welcome at the California coast.



94.3%

2.7%

3.0%

Agree

Disagree

Unsure/Refused



**Probolsky Research**
26 2nd Street 3rd Floor #8172
San Francisco CA 91105

San Francisco   (415) 670-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

13

# 81.7% of Respondents Say They are

## Familiar with California's beaches and their amenities

Statement:    I am familiar with California's beaches and their amenities.





**Probolsky Research**
23 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

14

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 16 of 57   Page ID
#:8991

# Childhood Memories of the CA Coast



**Probolsky Research**
25 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

15

# 49.9% of Respondents Say They Have

Fond memories of visiting the CA coast on school field trips when they were kids

Statement:    I have fond memories of visiting the California coast on school field trips when I was a kid.





**Probolsky Research**
22 2nd Street, Suite 431/72
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

16

# Younger Respondents Agree the Most that
They have fond memories of visiting the CA coast on school field trips when they were kids

Statement:      I have fond memories of visiting the California coast on school field trips when I was a kid.




**Probolsky Research**
25 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

17

# Latino/Hispanic and Asian Respondents
Agree almost equally that they have fond memories of visiting the CA coast when they were kids

**Statement:**   I have fond memories of visiting the California coast on school field trips when I was a kid.





**Probolsky Research**
26 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco   (415) 670-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

18

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 20 of 57   Page ID #:8995

# How Often do California Residents Visit the Coast?



**Probolsky Research**
20 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

19

# Over 70% of Respondents Say They Visited
## The coast within the last year

Question:     When was the last time you went to the coast in California?



Within the last week      19.6%

Within the last month     19.8%

Within the last year      30.9%

Over one year ago         21.8%

Don't know/Refused        7.9%



PROBOLSKY RESEARCH

**Probolsky Research**
23 2nd Street 3rd Floor 90170
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

# 42.9% of Central Coast Respondents

## Report that the last time they've been to the coast was within the last week

Question:     When was the last time you went to the coast in California?



North Coast
- 27.8%
- 30.6%
- 27.8%
- 2.8%

Bay Area
- 12.6%
- 20.7%
- 39.9%
- 19.2%

Central Coast
- 42.9%
- 20.0%
- 21.4%
- 10.0%

South Coast
- 27.5%
- 21.8%
- 24.7%
- 17.6%

Legend:
- Within the last week
- Within the last month
- Within the last year
- Over one year ago



**Probolsky Research**
26 2nd Street 3rd Floor #G172
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 569-0270

21

# More Respondents Go to the Coast
## "At least once per year" (37.9%) than any other frequency

Question:     How often do you go the to the coast in California?



| | |
|---|---|
| Daily | 3.6% |
| Weekly | 9.3% |
| Monthly | 22.2% |
| At least once per year | 37.9% |
| Less than once per year | 17.6% |
| Never been | 7.3% |
| Don't know/Refused | 2.3% |



**Probolsky Research**
28 2nd Street 3rd Floor #172
San Francisco CA 94105

San Francisco     (415) 870-8150
Newport Beach    (949) 855-8400
Washington DC    (202) 559-0270

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 24 of 57   Page ID #:8999

# Traveling to the CA Coast



**Probolsky Research**
26 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

# 62.8% of Respondents Agree that

Transportation to the CA coast is convenient and affordable

Statement:    Transportation to the California coast is convenient and affordable.



| Agree | Disagree | Unsure/Refused |
|-------|----------|----------------|
| 62.8% | 25.0% | 12.2% |



**Probolsky Research**
28 2nd Street, 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

24

# Respondents of All Income Brackets Agree

That transportation to the CA coast is convenient and affordable

Statement:    Transportation to the California coast is convenient and affordable.



| Income | Agree | Disagree |
| --- | --- | --- |
| Under $25K | 63.1% | 24.1% |
| $25K-$50K | 67.5% | 25.1% |
| $51K-$75K | 60.5% | 25.3% |
| $76K-$100K | 64.3% | 24.2% |
| $101K-$200K | 66.9% | 23.3% |
| Over $200K | 63.6% | 30.3% |



**Probolsky Research**
28 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco   (415) 570-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

25

# Arriving to the CA Coast (Parking)



**Probolsky Research**
28 2nd Street 3rd Floor #6172
San Francisco CA 94105

San Francisco    (415) 670-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

26

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 28 of 57   Page ID
#:9003

# 54.3% of Respondents Agree that Parking
## Is convenient and generally available at the California coast

Statement:    Parking is convenient and generally available at the California coast.





Probolsky Research
23 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

27

# 62.5% of Respondents Agree that Parking
## Is affordable at the California coast

Statement:  Parking is affordable at the California coast.





**Probolsky Research**
26 2nd Street 3rd Floor #5172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

28

# A Majority Among All Income Brackets
## Agree that parking is affordable at the CA coast

Statement:    Parking is affordable at the California coast.



Under $25K — 52.4% / 31.0%
$25K-$50K — 61.5% / 29.4%
$51K-$75K — 66.9% / 30.2%
$76K-$100K — 63.1% / 23.0%
$101K-$200K — 70.6% / 21.5%
Over $200K — 77.3% / 18.2%

Agree
Disagree


PROBOLSKY
RESEARCH

**Probolsky Research**
28 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

29

# Experience at the Coast



**Probolsky Research**
23 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

30

# 35% of Respondents Cite Walking/Hiking
## As their main activity when they visit the coast

Question:     In your own words, please tell me what do you do when you get to the coast in California?

| Activity | Percentage |
|---|---|
| Walking/hiking | 35.0% |
| Water activities (i.e. swimming, fishing, kayaking, surfing, boating, rowing, etc.) | 21.0% |
| Relaxing/sit on the beach | 16.7% |
| Eating/dining/looking for food/go to the restaurants | 16.2% |
| Visit/going to the beach | 15.8% |
| Sightseeing/enjoying the view/scenery/looking around | 15.4% |
| Looking/watching/enjoying the waves/water | 11.5% |
| Visiting/spending time with family/friends | 10.2% |
| Playing | 6.2% |
| Biking/driving/skate boarding along the coast | 4.9% |
| Enjoy the sun/sunset | 4.8% |
| Having fun/enjoying | 4.7% |
| Shopping | 4.6% |
| Hanging out | 4.5% |
| Picnic | 4.0% |
| Enjoy the sand/make sand castles | 3.4% |
| Camping | 2.5% |
| Taking pictures | 2.1% |
| Feel the air/catch some fresh air | 2.0% |
| Visiting/going to the port/pier | 1.9% |
| Tidepooling/collecting shells | 1.9% |
| Observing the wildlife/animals | 1.7% |
| Go to the park/amusements/museum | 1.4% |
| I live/work near the coast | 1.3% |
| Observing/watching the people around | 1.3% |
| Go to the boardwalk | 0.9% |
| Doing bonfire | 0.8% |
| For vacation | 0.7% |
| Went to an event (i.e. party, conventions, etc.) | 0.6% |
| Visit places/different destinations | 0.6% |
| Exercise | 0.5% |
| Looking/collecting rocks | 0.5% |
| Cleaning/pick up trash | 0.4% |
| Fly a kite | 0.4% |
| Nothing/don't go to the beach/busy/no time for it/Other/Don't know/Refused | 3.6% |

*ASKED OF THOSE WHO HAVE VISITED THE COAST*



**Probolsky Research**
3990 Westerly Place Suite 185
Newport Beach CA 92660 USA

Newport Beach    (949) 855-6400
San Francisco    (415) 870-8150
Washington DC    (202) 559-0270

31

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 33 of 57   Page ID #:9008

# 64.6% Do Not Wish There were More
## Things to do at the CA coast when they get there

Statement:    I wish there were more things to do at the California coast when I get there.





**Probolsky Research**
28 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

32

# A Majority of Latino/Hispanic Residents
## Wish there were more things to do at the CA coast

Statement:   I wish there were more things to do at the California coast when I get there.





**Probolsky Research**
26 2nd Street 3rd Floor #2172
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

33

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 35 of 57   Page ID
#:9010

# 47.6% of Respondents with an Income Under
$25K wish there were more things to do at the CA coast when they get there

Statement:   I wish there were more things to do at the California coast when I get there.



Under $25K — 47.6% / 44.9%

$25K-$50K — 41.6% / 55.8%

$51K-$75K — 28.5% / 70.9%

$76K-$100K — 23.6% / 75.2%

$101K-$200K — 16.0% / 82.2%

Over $200K — 19.7% / 80.3%

Agree
Disagree



**Probolsky Research**
28 2nd Street 3rd Floor #S172
San Francisco CA 94105

San Francisco    (415) 870-6150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

34

35

# Staying Overnight at the Coast



**Probolsky Research**
26 2nd Street 3rd Floor 92172
San Francisco CA 94105

San Francisco      (415) 870-8150
Newport Beach     (949) 855-6400
Washington DC     (202) 559-0270

# 58.3% Do Not Stay Overnight When They
## Visit the California coast

Question:   Do you ever stay overnight when you visit the California coast?



*ASKED OF ALL EXCEPT THOSE WHO RESPONDED "NEVER BEEN"*



**Probolsky Research**
26 2nd Street 3rd Floor NO172       San Francisco    (415) 870-8150
San Francisco CA 94105              Newport Beach    (949) 855-6400
                                    Washington DC    (202) 559-0270

36



Legend

Coastal Conservancy
Statewide Survey



Probolsky Research
28 2nd Street 3rd Floor #3172
San Francisco, CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

37

# Californians 65 and older are the only
Age group (majority) that stays overnight when visiting the CA coast

Question:   Do you ever stay overnight when you visit the California coast?



18-34 — 28.6% / 70.4%
35-54 — 42.5% / 57.5%
55-64 — 44.8% / 54.6%
65 and older — 52.1% / 46.6%

Yes
No

*ASKED OF ALL EXCEPT THOSE WHO RESPONDED "NEVER BEEN"*



**Probolsky Research**
20 2nd Street 3rd Floor #8172
San Francisco CA 91105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

38

# A Majority of White/Caucasian Residents
Say they stay overnight when they visit the California coast

Question:    Do you ever stay overnight when you visit the California coast?



*ASKED OF ALL EXCEPT THOSE WHO RESPONDED "NEVER BEEN"



**Probolsky Research**
25 2nd Street 3rd Floor #6112
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

39

# 74.8% of Those with a Household Income
## Under $25K do not stay overnight at the CA coast

Question:     Do you ever stay overnight when you visit the California coast?





**PROBOLSKY RESEARCH**
23 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco     (415) 870-8150
Newport Beach     (949) 855-6400
Washington DC     (202) 559-0270

40

# 25% of Respondents Note Financial
## Reasons as a barrier to staying overnight at the CA coast

Question:    In your own words, please tell me what are the barriers to staying overnight at the California coast.

| Barrier | Percentage |
|---|---|
| Financial reasons | 25.0% |
| Live near at the coast/have family/friends live nearby | 13.9% |
| No time/busy at work/busy in school | 11.0% |
| Not interested/don't want to stay overnight | 8.8% |
| Accommodation issues/no place to stay | 4.2% |
| Inconvenient location/far from the coast | 3.0% |
| Health conditions | 2.8% |
| Camping not allowed on the beach | 2.4% |
| Not safe/dangerous | 2.1% |
| Weather issues | 1.8% |
| Haven't been there | 1.8% |
| Too crowded/not enough camp grounds/space to camp | 1.7% |
| Have obligations at home/family issues/taking care with the kids/loved one | 1.6% |
| Transportation issues | 1.5% |
| Prefer to stay at home | 1.3% |
| Difficult to get reservations/hassle for booking | 1.2% |
| Don't have equipment for camping | 0.7% |
| Traffic issues | 0.4% |
| Parking issues | 0.4% |
| There is not much to do there | 0.3% |
| Beach facilities issues | 0.3% |
| None/no barriers/always go there | 15.3% |
| Other | 3.3% |
| Don't know/Refused | 9.3% |

*ASKED OF ALL EXCEPT THOSE WHO RESPONDED "NEVER BEEN"*



**Probolsky Research**
23 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

41

# Hotel Accommodations are Most Common
## Among respondents when they visit the California coast

Question:   What kind of accommodations do you stay at when you visit the California coast?



| | |
|---|---|
| Hotel | 40.7% |
| Camp ground such as sleeping in a tent, sleeping bag or RV | 18.6% |
| With friends and family | 12.5% |
| Motel | 11.4% |
| Your own vacation home or time share | 7.0% |
| Short-term rental (AirBnb, VRBO, HomeAway) | 5.0% |
| Indoor camping such as staying in a cabin, cottage or bunkhouse | 3.1% |
| Somewhere else | 1.1% |
| Don't know/Refused | 2.4% |

*ASKED ONLY OF THOSE WHO RESPOND "YES" TO STAYING OVERNIGHT AT THE COAST



**Probolsky Research**      San Francisco   (415) 670-8150
28 2nd Street 3rd Floor #3172   Newport Beach   (949) 855-6400
San Francisco CA 94105      Washington DC   (202) 559-0270

PROBOLSKY
RESEARCH

42

# 59.5% of Respondents Would Not Stay in
## College dorms, or other similar accommodations, near the coast

Question:     If there was an option to stay in college dorms near the coast, or other similar accommodations with shared bathrooms, for a modest per night price, would you ever choose to stay there?



59.5%

37.8%

2.7%

Yes                              No                         Unsure/Refused



**Probolsky Research**
23 2nd Street 3rd Floor #8172     San Francisco     (415) 870-8150
San Francisco CA 94105            Newport Beach     (949) 855-6400
                                  Washington DC     (202) 559-0270

# Respondents 18-34 Show More Inclination
In choosing to stay in college dorms near the coast, or other similar options

Question:   If there was an option to stay in college dorms near the coast, or other similar accommodations with shared bathrooms, for a modest per night price, would you ever choose to stay there?





**Probolsky Research**
28 2nd Street 3rd Floor #9172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC    (202) 559-0270

44

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 46 of 57   Page ID #:9021

# A Majority of Respondents Across All Income

Brackets would not choose to stay in college dorms/similar accommodations near the coast

Question: If there was an option to stay in college dorms near the coast, or other similar accommodations with shared bathrooms, for a modest per night price, would you ever choose to stay there?



Under $25K — 47.1% / 49.7%
$25K-$50K — 42.4% / 55.8%
$51K-$75K — 40.1% / 58.7%
$76K-$100K — 43.3% / 56.7%
$101K-$200K — 28.8% / 69.3%
Over $200K — 33.3% / 63.6%

Yes / No



**Probolsky Research**
28 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

45

# Overnight Accommodations



**Probolsky Research**
28 2nd Street 3rd Floor #272
San Francisco CA 94105

San Francisco  (415) 870-8150
Newport Beach  (949) 855-6400
Washington DC  (202) 558-0270

46

# 45.3% of Respondents Disagree that
Finding overnight accommodations at the CA coast is convenient and affordable

Statement:     Finding overnight accommodations at the California coast is convenient and affordable.



**Probolsky Research**
28 2nd Street 3rd Floor #372     San Francisco     (415) 870-8150
San Francisco CA 94105           Newport Beach     (949) 855-6400
                                 Washington DC     (202) 559-0270

47

# Latino/Hispanic Residents Agree the

## Most that finding overnight accommodations at the CA coast is convenient, affordable

Statement:     Finding overnight accommodations at the California coast is convenient and affordable.





**Probolsky Research**
28 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

# A Majority of Respondents Across All Income

Brackets disagree that finding overnight accommodations at the CA coast is convenient and affordable

Statement:   Finding overnight accommodations at the California coast is convenient and affordable.





**Probolsky Research**
23 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco   (415) 870-6150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 51 of 57   Page ID #:9026

# Desire to Visit the Coast More Often



**Probolsky Research**
20 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

50

# 68.9% Say They Wish They Could Visit the
## California coast more often

Question:     Do you wish you could visit the coast in California more often?



68.9%

29.7%

1.4%

Yes

No

Unsure/Refused

*ASKED OF ALL EXCEPT THOSE WHO RESPONDED "DAILY"*



**Probolsky Research**
23 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco     (415) 870-8150
Newport Beach     (949) 855-6400
Washington DC     (202) 559-0270

51

Case 2:16-cv-02129-SJO-RAO   Document 309-1   Filed 07/31/17   Page 53 of 57   Page ID
#:9028

# 71.1% of Respondents from Inland Area
## Wish they could visit the coast in California more often

Question:     Do you wish you could visit the coast in California more often?



Coastal 5 — 58.1% / 39.3%

Coastal 10 — 56.3% / 41.4%

Inland — 71.1% / 27.6%

Yes / No

*ASKED OF ALL EXCEPT THOSE WHO RESPONDED "DAILY"



**Probolsky Research**
25 2nd Street 3rd Floor 46172
San Francisco CA 94105

San Francisco     (415) 870-8150
Newport Beach     (949) 855-6400
Washington DC     (202) 559-0270

52

# 60.2% Say They Have No Time or are
## Too busy with work or school to visit the coast more often

Question:       In your own words, please tell me what are the barriers to your visiting the coast more often.

| | |
|---|---|
| No time/too busy | 33.9% |
| Working/busy at work | 23.0% |
| Distance/too far/hard to get there | 20.3% |
| Road condition/too much traffic/congested | 13.3% |
| Transportation issues | 11.7% |
| Financial reasons | 10.0% |
| Family issues/taking care with the kids/loved one | 5.6% |
| Parking lot is expensive/too hard to park | 5.3% |
| Health problems | 4.4% |
| Age/too old | 3.9% |
| Busy in school | 3.3% |
| Weather condition | 2.8% |
| Overpopulated/too crowded | 2.1% |
| Prefer to go to somewhere else/have other priorities/plans | 1.9% |
| The water/beach is undesirable/not clean | 1.6% |
| Don't like to go there/not interested | 1.3% |
| Companion/social contact/need someone to go with | 1.3% |
| It is not safe/dangerous | 0.8% |
| None/no barriers/always go there | 2.4% |
| Other | 1.0% |
| Don't know/Refused | 2.6% |

| Too Busy |
|---|
| Work/School/General: |
| 60.2% |

*ASKED ONLY OF THOSE WHO WISH THEY COULD VISIT THE COAST MORE OFTEN



**Probolsky Research**
28 2nd Street 3rd Floor #31 72
San Francisco CA 94105

| | |
|---|---|
| San Francisco | (415) 870-8150 |
| Newport Beach | (949) 855-6400 |
| Washington DC | (202) 559-0270 |

53

# Next Steps



**Probolsky Research**
28 2nd Street 3rd Floor #3172
San Francisco CA 94105

San Francisco   (415) 870-8150
Newport Beach   (949) 855-6400
Washington DC   (202) 559-0270

54

# Next Steps
## For the Coastal Conservancy

- CHALLENGE: Concern over transportation and distance cause more people not to visit the coast than any other reason.

  - SOLUTION:  Address this with new transportation options, such as partnerships with transit agencies or private enterprise.

- CHALLENGE: Cost is the top reason that prevents people from staying overnight at the coast.

  - Find ways of offering low-cost options for overnight stays, such as the partnering with state universities. Increase/preserve the overall availability of overnight accommodations to drive down/stabilize costs.

- IMPORTANT: Californians have a strong connection to the coast; they appreciate it and want to visit it more. The coast has a different meanings to different people, including some who have fond memories of visiting as a child and others who simply like that the coast is there. Some people want a more active experience when visiting the coast, but most people like it the way it is now. It is important to recognize that even if people are not visiting the coast, they still **highly** value it.

  - Measuring "coastal engagement" is not just about how many people physically visit the coast.



**Probolsky Research**
25 2nd Street, 3rd Floor #3172
San Francisco CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

55

# Thank You.



## Opinion Research on Public Policy

Probolsky Research
28 2nd Street, 3rd Floor #C172
San Francisco, CA 94105

San Francisco    (415) 870-8150
Newport Beach    (949) 855-6400
Washington DC    (202) 559-0270

# EXHIBIT 2

## CHAPTER 1975

*An act conveying in trust certain tidelands and submerged lands lying under the waters of the Pacific Ocean to the City of Palos Verdes Estates in furtherance of navigation and commerce and the fisheries and providing for the government, management and control thereof and reserving rights to the State.*

[Approved by Governor July 19, 1963. Filed with
Secretary of State July 24, 1963.]

*The people of the State of California do enact as follows:*

SECTION 1. There is hereby granted to the City of Palos Verdes Estates, a municipal corporation of the State of California, and to its successors, all the right, title and interest of the State of California held by said State by virtue of its sovereignty in and to all tidelands and submerged lands, whether filled or unfilled, which are described as follows:

That part of State owned tide and submerged land which lies directly joining the Mean High Tide Line of the Pacific Ocean along the City of Palos Verdes Estates, California, and is limited to the following extent:

In the south by a line which is a westerly prolongation of the southerly boundary of Tract 4400, as recorded in Book 72, pages 95-96 of Maps in the office of the Recorder of Los Angeles County.

In the north by a line which is a westerly prolongation of the northerly boundary of Tract 4400 as recorded in Book 72, pages 95-96 of Maps in the office of the Recorder of Los Angeles County.

In the east by the Mean High Tide Line of the Pacific Ocean between the above described southerly and northerly limits.

In the west by the southwesterly boundary of the County of Los Angeles between the above described southerly and northerly limits.

To be forever held by said city and by its successors in trust for the use and purposes, and upon the express conditions following, to wit:

(a) That said lands shall be used by said city and its successors for purposes in which there is a general statewide interest as follows:

(1) For the establishment, improvement and conduct of a harbor, and for the construction, reconstruction, repair, maintenance, and operation of wharves, docks, piers, slips, quays, and all other works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of commerce and navigation.

(2) For the establishment, improvement and conduct of an airport and heliport or aviation facilities, including but not limited to approach, takeoff and clear zones in connection with airport runways, and for the construction, reconstruction, re-

pair, maintenance and operation of terminal buildings, runways, roadways, aprons, taxiways, parking areas, and all other works, building, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of air commerce and air navigation.

(3) For the construction, reconstruction, repair and maintenance of highways, streets, roadways, bridges, belt line railroads, parking facilities, power, telephone, telegraph or cable lines or landings, water and gas pipelines, and all other transportation and utility facilities or betterments incidental, necessary or convenient for the promotion and accommodation of any of the uses set forth in this Section 1.

(4) For the construction, reconstruction, repair, maintenance and operation of public buildings, public assembly and meeting places, convention centers, parks, playgrounds, bathhouses and bathing facilities, recreation and fishing piers, public recreation facilities, including but not limited to public golf courses, and for all works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of any such uses.

(5) For the establishment, improvement and conduct of small boat harbors, marinas, aquatic playgrounds and similar recreational facilities, and for the construction, reconstruction, repair, maintenance and operation of all works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of any of such uses, including but not limited to snackbars, cafés, restaurants, motels, hotels, apartments, residences, launching ramps and hoists, storage sheds, boat repair facilities with cranes and marine ways, administration buildings, public restrooms, bait and tackle shops, chandleries, boat sales establishments, service stations and fuel docks, yacht club buildings, parking areas, roadways, pedestrian ways and landscaped areas.

(b) Said city, or its successors shall not, at any time, grant, convey, give or alienate said lands, or any part thereof, to any individual, firm or corporation for any purposes whatever; provided, that said city, or its successors, may grant franchises thereon for limited periods, not exceeding 66 years, for wharves and other public uses and purposes, and may lease said lands, or any part thereof, for limited periods, not exceeding 66 years, for purposes consistent with the trusts upon which said lands are held by the State of California, and with the requirements of commerce and navigation, and collect and retain rents and other revenues from such leases, franchises and privileges. Such lease or leases, franchises and privileges may be for any and all purposes which shall not interfere with commerce and navigation.

Nothing contained in this paragraph (a) shall be deemed to affect the validity or term of any franchise previously granted by said city under the Franchise Act of 1937 (Chapter 2 (commencing at Section 6101), of Division 3 of the Pub-

lic Utilities Code), and any such franchise shall be effective with respect to said land when title thereto passes to said city hereunder.

(c) Said lands shall be improved without expense to the State; provided, however, that nothing contained in this act shall preclude expenditures for the development of said lands for any public purpose not inconsistent with commerce, navigation and fishery, by the State, or any board, agency or commission thereof, when authorized or approved by the city, nor by the city of any funds received for such purpose from the State or any board, agency or commission thereof.

(d) In the management, conduct, operation and control of said lands or any improvements, betterments, or structures thereon, the city or its successors shall make no discrimination in rates, tolls or charges for any use or service in connection therewith.

(e) The State of California shall have the right to use without charge any transportation, landing or storage improvements, betterments or structures constructed upon said lands for any vessel or other watercraft or railroad owned or operated by the State of California.

(f) There is hereby reserved to the people of the State of California the right to fish in the waters on said lands with the right of convenient access to said water over said lands for said purpose.

(g) There is hereby excepted and reserved in the State of California all deposits of minerals, including oil and gas, in said lands, and to the State of California, or persons authorized by the State of California, the right to prospect for, mine, and remove such deposits from said lands.

(h) Said lands are granted subject to the express reservation and condition that the State may at any time in the future use said lands or any portion thereof for highway purposes without compensation to the city, its successors or assigns, or any person, firm or public or private corporation claiming under it, except that in the event improvements, betterments or structures have been placed upon the property taken by the State for said purposes, compensation shall be made to the person entitled thereto for the value of his interest in the improvements, betterments or structures taken or the damages to such interest.

(i) The State Lands Commission shall, at the cost of the city, survey and monument the granted lands and record a description and plat thereof in the office of the County Recorder of Los Angeles County.

(j) Within 10 years from the effective date of this act the granted lands shall be substantially improved by the city without expense to the State and if the State Lands Commission determines that the city has failed to improve said lands as herein required, all right, title, and interest of said city in

4056        STATUTES OF CALIFORNIA        [Ch. 1976

and to all lands granted by this act shall cease and all said
right, title and interest in the granted lands shall revert and
rest in the State.

Case 2:16-cv-02129-SJO-RAO   Document 309-2   Filed 07/31/17   Page 5 of 5   Page ID
#:9037

# EXHIBIT 3

Case 2:16-cv-02129-SJO-RAO   Document 309-3   Filed 07/31/17   Page 2 of 8   Page ID #:9039

CHAPTER 316

*An act to amend Section 1 of Chapter 1975 of the Statutes of 1963, relating to tide and submerged lands granted in trust to the City of Palos Verdes Estates.*

[Approved by Governor June 17, 1968. Filed with Secretary of State June 17, 1968.]

*The people of the State of California do enact as follows:*

SECTION 1. Section 1 of Chapter 1975 of the Statutes of 1963 is amended to read:

Section 1. There is hereby granted to the City of Palos Verdes Estates, a municipal corporation of the State of California, and to its successors, all the right, title and interest of the State of California held by said state by virtue of its sovereignty in and to all tidelands and submerged lands, whether filled or unfilled, which are described as follows:

That part of state-owned tide and submerged land which lies directly joining the Mean High Tide Line of the Pacific Ocean along the City of Palos Verdes Estates, California, and is limited to the following extent:

In the south by a line which is a westerly prolongation of the southerly boundary of Tract 4400, as recorded in Book 72, pages 95–96 of Maps in the office of the Recorder of Los Angeles County.

In the north by a line which is a westerly prolongation of the northerly boundary of Tract 4400 as recorded in Book 72, pages 95–96 of Maps in the office of the Recorder of Los Angeles County.

In the east by the Mean High Tide Line of the Pacific Ocean between the above described southerly and northerly limits.

In the west by the southwesterly boundary of the County of Los Angeles between the above described southerly and northerly limits.

To be forever held by said city and by its successors in trust for the use and purposes, and upon the express conditions following, to wit:

(a) That said lands shall be used by said city and its successors for purposes in which there is a general statewide interest as follows:

(1) For the establishment, improvement and conduct of a harbor, and for the construction, reconstruction, repair, maintenance, and operation of wharves, docks, piers, slips, quays, and all other works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of commerce and navigation.

(2) For the establishment, improvement and conduct of an airport and heliport or aviation facilities, including but not limited to approach, takeoff and clear zones in connection with airport runways, and for the construction, reconstruction, repair, maintenance and operation of terminal buildings, runways, roadways, aprons, taxiways, parking areas, and all other works, building, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of air commerce and air navigation.

(3) For the construction, reconstruction, repair and maintenance of highways, streets, roadways, bridges, belt line railroads, parking facilities, power, telephone, telegraph or cable lines or landings, water and gas pipelines, and all other transportation and utility facilities or betterments incidental, necessary or convenient for the promotion and accommodation of any of the uses set forth in this Section 1.

(4) For the construction, reconstruction, repair, maintenance and operation of public buildings, public assembly and meeting places, convention centers, parks, playgrounds, bathhouses and bathing facilities, recreation and fishing piers, public recreation facilities, including but not limited to public golf courses, and for all works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of any such uses.

(5) For the establishment, improvement and conduct of small boat harbors, marinas, aquatic playgrounds and similar recreational facilities, and for the construction, reconstruction, repair, maintenance and operation of all works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of any of such uses, including but not limited to snackbars, cafés, restaurants, motels, hotels, launching ramps and hoists, storage sheds, boat repair facilities with cranes and marine ways, administration buildings, public restrooms, bait and tackle shops, chandleries, boat sales establishments, service stations

and fuel docks, yacht club buildings, parking areas, roadways, pedestrian ways and landscaped areas.

(6) For the establishment, preservation, restoration, improvement, or maintenance of intertidal and subtidal marine biological reserves, restoration and maintenance of kelp forests, abalone and other shellfish and related fishery resources, development of nature study trails and areas, exhibits, research projects, preservation of areas of unique ocean phenomena for activities such as surfing and other water sports, and the natural beauty and biological resources and activities related thereto, subject to the prior approval of the Fish and Game Commission as to those matters which are subject to regulation by the commission, pursuant to the Fish and Game Code.

(b) Said city, or its successors shall not, at any time, grant, convey, give or alienate said lands, or any part thereof, to any individual, firm or corporation for any purposes whatever; provided, that said city, or its successors, may grant franchises thereon for limited periods, not exceeding 66 years, for wharves and other public uses and purposes, and may lease said lands, or any part thereof, for limited periods, not exceeding 66 years, for purposes consistent with the trusts upon which said lands are held by the State of California, and with the requirements of commerce and navigation, and collect and retain rents and other revenues from such leases, franchises and privileges. Such lease or leases, franchises and privileges may be for any and all purposes which shall not interfere with commerce and navigation.

Nothing contained in this paragraph (a) shall be deemed to affect the validity or term of any franchise previously granted by said city under the Franchise Act of 1937 (Chapter 2 (commencing at Section 6101), of Division 3 of the Public Utilities Code), and any such franchise shall be effective with respect to said land when title thereto passes to said city hereunder.

(c) Said lands shall be improved without expense to the state; provided, however, that nothing contained in this act shall preclude expenditures for the development of said lands for any public purpose not inconsistent with commerce, navigation and fishery, by the state, or any board, agency or commission thereof, when authorized or approved by the city, nor by the city of any funds received for such purpose from the state or any board, agency or commission thereof.

(d) In the management, conduct, operation and control of said lands or any improvements, betterments, or structures thereon, the city or its successors shall make no discrimination in rates, tolls or charges for any use or service in connection therewith.

(e) The State of California shall have the right to use without charge any transportation, landing or storage improvements, betterments or structures constructed upon said lands for any vessel or other watercraft or railroad owned or operated by the State of California.

1968 REGULAR SESSION 689

(f) There is hereby reserved to the people of the State of California the right to fish in the waters on said lands with the right of convenient access to said water over said lands for said purpose.

(g) There is hereby excepted and reserved in the State of California all deposits of minerals, including oil and gas, in said lands, and to the State of California, or persons authorized by the State of California, the right to prospect for, mine, and remove such deposits from said lands.

(h) Said lands are granted subject to the express reservation and condition that the state may at any time in the future use said lands or any portion thereof for highway purposes without compensation to the city, its successors or assigns, or any person, firm or public or private corporation claiming under it, except that in the event improvements, betterments or structures have been placed upon the property taken by the state for said purposes, compensation shall be made to the person entitled thereto for the value of his interest in the improvements, betterments or structures taken or the damages to such interest.

(i) The State Lands Commission shall, at the cost of the city, survey and monument the granted lands and record a description and plat thereof in the office of the County Recorder of Los Angeles County.

(j) Within 10 years from the effective date of this act the granted lands shall be substantially improved, restored, preserved, or maintained by the city without expense to the state and if the State Lands Commission determines that the city has failed to improve, restore, preserve, or maintain said lands as herein required, all right, title, and interest of said city in and to all lands granted by this act shall cease and all said right, title and interest in the granted lands shall revert and rest in the state.

Case 2:16-cv-02129-SJO-RAO Document 309-3 Filed 07/31/17 Page 5 of 8 Page ID #:9042

Case 2:16-cv-02129-SJO-RAO Document 309-3 Filed 07/31/17 Page 6 of 8 Page ID #:9043

Senate Bill No. 844

Passed the Senate May 13, 1968

---

*Secretary of the Senate*

---

Passed the Assembly June 10, 1968

---

*Chief Clerk of the Assembly*

---

This bill was received by the Governor this \_\_\_\_ /7 \_\_\_\_

day of \_\_\_\_ June _____, 1968, at_____o'clock\_\_\_\_M.

---

*Private Secretary of the Governor*

Compliments of

— 2 —

CHAPTER_____

*An act to amend Section 1 of Chapter 1975 of the Statutes of 1963, relating to tide and submerged lands granted in trust to the City of Palos Verdes Estates.*

*The people of the State of California do enact as follows:*

SECTION 1. Section 1 of Chapter 1975 of the Statutes of 1963 is amended to read:

Section 1. There is hereby granted to the City of Palos Verdes Estates, a municipal corporation of the State of California, and to its successors, all the right, title and interest of the State of California held by said state by virtue of its sovereignty in and to all tidelands and submerged lands, whether filled or unfilled, which are described as follows:

That part of state-owned tide and submerged land which lies directly joining the Mean High Tide Line of the Pacific Ocean along the City of Palos Verdes Estates, California, and is limited to the following extent:

In the south by a line which is a westerly prolongation of the southerly boundary of Tract 4400, as recorded in Book 72, pages 95–96 of Maps in the office of the Recorder of Los Angeles County.

In the north by a line which is a westerly prolongation of the northerly boundary of Tract 4400 as recorded in Book 72, pages 95–96 of Maps in the office of the Recorder of Los Angeles County.

In the east by the Mean High Tide Line of the Pacific Ocean between the above described southerly and northerly limits.

In the west by the southwesterly boundary of the County of Los Angeles between the above described southerly and northerly limits.

To be forever held by said city and by its successors in trust for the use and purposes, and upon the express conditions following, to wit:

(a) That said lands shall be used by said city and its successors for purposes in which there is a general statewide interest as follows:

(1) For the establishment, improvement and conduct of a harbor, and for the construction, reconstruction, repair, maintenance, and operation of wharves, docks, piers, slips, quays, and all other works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of commerce and navigation,

Case 2:16-cv-02129-SJO-RAO   Document 309-3   Filed 07/31/17   Page 7 of 8   Page ID #:9044

— 3 —

(2) For the establishment, improvement and conduct of an airport and heliport or aviation facilities, including but not limited to approach, takeoff and clear zones in connection with airport runways, and for the construction, reconstruction, repair, maintenance and operation of terminal buildings, runways, roadways, aprons, taxiways, parking areas, and all other works, building, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of air commerce and air navigation.

(3) For the construction, reconstruction, repair and maintenance of highways, streets, roadways, bridges, belt line railroads, parking facilities, power, telephone, telegraph or cable lines or landings, water and gas pipelines, and all other transportation and utility facilities or betterments incidental, necessary or convenient for the promotion and accommodation of any of the uses set forth in this Section 1.

(4) For the construction, reconstruction, repair, maintenance and operation of public buildings, public assembly and meeting places, convention centers, parks, playgrounds, bathhouses and bathing facilities, recreation and fishing piers, public recreation facilities, including but not limited to public golf courses, and for all works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of any such uses.

(5) For the establishment, improvement and conduct of small boat harbors, marinas, aquatic playgrounds and similar recreational facilities, and for the construction, reconstruction, repair, maintenance and operation of all works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of any of such uses, including but not limited to snackbars, cafés, restaurants, motels, hotels, launching ramps and hoists, storage sheds, boat repair facilities with cranes and marine ways, administration buildings, public restrooms, bait and tackle shops, chandleries, boat sales establishments, service stations and fuel docks, yacht club buildings, parking areas, roadways, pedestrian ways and landscaped areas.

(6) For the establishment, preservation, restoration, improvement, or maintenance of intertidal and subtidal marine biological reserves, restoration and maintenance of kelp forests, abalone and other shellfish and related fishery resources, development of nature study trails and areas, exhibits, research projects, preservation of areas of unique ocean phenomena for activities such as surfing and other water sports, and the natural beauty and biological resources and activities related thereto, subject to the prior approval of the Fish and Game Commission as to those matters which are subject to regulation by ... commission pursuant to the Fish and Game Code.

— 4 —

(b) Said city, or its successors shall not, at any time, grant, convey, give or alienate said lands, or any part thereof, to any individual, firm or corporation for any purposes whatever; provided, that said city, or its successors, may grant franchises thereon for limited periods, not exceeding 66 years, for wharves and other public uses and purposes, and may lease said lands, or any part thereof, for limited periods, not exceeding 66 years, for purposes consistent with the trusts upon which said lands are held by the State of California, and with the requirements of commerce and navigation, and collect and retain rents and other revenues from such leases, franchises and privileges. Such lease or leases, franchises and privileges may be for any and all purposes which shall not interfere with commerce and navigation.

Nothing contained in this paragraph (a) shall be deemed to affect the validity or term of any franchise previously granted by said city under the Franchise Act of 1937 (Chapter 2 (commencing at Section 6101), of Division 3 of the Public Utilities Code), and any such franchise shall be effective with respect to said land when title thereto passes to said city hereunder.

(c) Said lands shall be improved without expense to the state; provided, however, that nothing contained in this act shall preclude expenditures for the development of said lands for any public purpose not inconsistent with commerce, navigation and fishery, by the state, or any board, agency or commission thereof, when authorized or approved by the city, nor by the city of any funds received for such purpose from the state or any board, agency or commission thereof.

(d) In the management, conduct, operation and control of said lands or any improvements, betterments, or structures thereon, the city or its successors shall make no discrimination in rates, tolls or charges for any use or service in connection therewith.

(e) The State of California shall have the right to use without charge any transportation, landing or storage improvements, betterments or structures constructed upon said lands for any vessel or other watercraft or railroad owned or operated by the State of California.

(f) There is hereby reserved to the people of the State of California the right to fish in the waters on said lands with the right of convenient access to said water over said lands for said purpose.

(g) There is hereby excepted and reserved in the State of California all deposits of minerals, including oil and gas, in said lands, and to the State of California, or persons authorized by the State of California, the right to prospect for, ... and remove such deposits from said lands.

Case 2:16-cv-02129-SJO-RAO   Document 309-3   Filed 07/31/17   Page 8 of 8   Page ID #:9045

— 5 —

(h) Said lands are granted subject to the express reservation and condition that the state may at any time in the future use said lands or any portion thereof for highway purposes without compensation to the city, its successors or assigns, or any person, firm or public or private corporation claiming under it, except that in the event improvements, betterments or structures have been placed upon the property taken by the state for said purposes, compensation shall be made to the person entitled thereto for the value of his interest in the improvements, betterments or structures taken or the damages to such interest.

(i) The State Lands Commission shall, at the cost of the city, survey and monument the granted lands and record a description and plat thereof in the office of the County Recorder of Los Angeles County.

(j) Within 10 years from the effective date of this act the granted lands shall be substantially improved, restored, preserved, or maintained by the city without expense to the state and if the State Lands Commission determines that the city has failed to improve, restore, preserve, or maintain said lands as herein required, all right, title, and interest of said city in and to all lands granted by this act shall cease and all said right, title and interest in the granted lands shall revert and rest in the state.

*JEW WORDS*

_President of the Senate_

_Speaker of the Assembly_

Approved _JUNE 17_, 1968

_Governor_

# EXHIBIT 4



INCORPORATED 1939

CALIFORNIA

# SHORELINE PRESERVE
# MASTER PLAN

MASTER PLAN FOR PALOS VERDES ESTATES


**SHORELINE** PRESERVE


March 10, 1970

March 9, 1970.

MEMO TO:     Mayor and City Council

FROM:        Anne F. Leeper, Chairman, Planning Commission

RE:          Master Plan for Palos Verdes Estates Shoreline Preserve.

    In accordance with the direction of the Council in its Resolution No. 648 (designating the Palos Verdes Estates Shoreline Preserve), the Planning Commission submits herewith a master plan for development of the City's coastline area in a manner that will, insofar as possible, accomplish two objectives that appear at first glance to be contradictory:

    (1)  to "preserve and maintain its natural state" and

    (2)  to undertake both short- and long-term improvements designed to increase safety of access, enhance the appearance, and satisfy the requirements of the State's grant of the submerged lands to the City.

    The attached report, as prepared by Mr. Smalley and Mr. Coakley, has been considered in detail by the entire Planning Commission. At its meeting of March 2, 1970, the Commission gave unanimous approval to the final draft, and directed that the report be forwarded for Council consideration. Please advise if any further information is required.

*Anne F. Leeper*

MASTER PLAN FOR PALOS VERDES ESTATES

SHORELINE PRESERVE

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I | INTRODUCTION | 1 |
| II | EXISTING PATTERNS OF PUBLIC USE | 2 |
| III | OBJECTIVES | 3 |

Protect and Restore the Indigenous Ecology
Maintain and Enhance Existing Recreation Uses
Retain Local Control of Submerged Land Uses
Deter Adverse Developments of Adjacent State and Federal
    Submerged Lands
Preserve Residential Character of Adjacent Property
Perfect Tideland Grant

| IV | CURRENT USAGE AND RECOMMENDATIONS FOR FUTURE CONSERVATION AND USE | 6 |
|---|---|---|

Conservation:  Preservation and Maintenance    6

    Present Status
    Recommendations

Recreation    10

    Present Status
    Recommendations

Education    13

    Present Status
    Recommendations

| V | SUMMARY OF RECOMMENDATIONS | 17 |

VI   APPENDICES

PVE Tideland Grant ------------------------------------------------------- I

City Resolution Establishing PVE Shoreline Preserve --------------- II

Shoreline Sign Program -------------------------------------------------- III

Codes Establishing Marine Life Refuges ------------------------------ IV

    State Fish & Game Code

    Pacific Grove City Code

    Some Comments by PVE City Attorney on Possible
    PVE Marine Life Refuge

Background on Precedent Setting Laguna Beach Marine Life Refuges -- V

Some Ecological Aspects of the PVE Shoreline ---------------------- VI

Boating Report----------------------------------------------------------- VII

Sample Use Agreement -------------------------------------------------- VIII

See map of Shoreline Preserve in rear pocket.

### I. INTRODUCTION

Established by Resolution of the City Council, dated January 28, 1969, the "Palos Verdes Estates Shoreline Preserve" (Exhibit I), constitutes an asset of priceless value. It consists of two major portions: (a) a continuous strip of City owned parkland containing one hundred thirty acres contiguous with and running the full length of the City's four and one-half mile shoreline; and (b) submerged lands extending from the City mean-high tide boundary to the county boundary in the ocean.

Palos Verdes Estates has the rather unique opportunity to develop long range plans for the Preserve from the position of direct ownership. As our population increases, we will be subject to intense pressures from both within and outside of our City for undesirable improvements within the area included in the Preserve. The Planning Commission understands that the majority of residents would like to see the natural beauty of our shores protected. In the absence of any plan, small increment by small increment, the shoreline is losing the very values the residents would like to see preserved.

Accordingly, the Planning Commission proposes for City Council consideration a program for the shoreline that will preserve and maintain its natural state; favor current limited recreational uses; and support expanded educational and scientific activities. The program, as developed in detail in the following report, includes specific recommendations for regulation of uses, clean-up, access improvements, and cooperative efforts with organizations interested in shoreline activites and preservation that will further the City's interests in conservation and compatible uses.

1

II.   EXISTING PATTERNS OF PUBLIC USE

For the most part, our shoreline is in a relatively natural condition,
and uncontrolled use by the general public has produced difficulties.  A spider-
web of trails descends most of the precipitous cliffs that edge the Peninsula
and many of these are hazardous in the extreme.  Every year accidents occur
and injured people must be hauled up from the shore or from perilous locations
on the cliff itself.  The public has strewn much of our cliffland, beaches and
intertidal zone with debris of one sort or another, ranging from papers and
broken bottles to automobiles which have been pushed off of cliffs where there
is easy road access.  All of this is unsightly and some a health hazard.  In
some places along the cliff, developments have caused erosion to occur at a
much more rapid rate than it normally does, resulting in coverage of beaches
with rocks, mud, and gravel and also resulting in the localized retrenchment
of the cliffs themselves.  Thus far, there have been no dangerous developments
from the retrenchment that have seriously threatened property, but it is not
beyond possibility that this could occur.

Among the visitors to our shoreline, we have long had educators; stu-
dents, and scientists who have used the remarkable fauna and flora of our
shores for teaching and research purposes.  To a lesser degree, our own
school system has used the shoreline for its purposes though, for the most
part, classes from the Palos Verdes School District have been unable to reach
the intertidal zone because of the hazards of trails descending
the cliffsides.  The scientific use of the intertidal zone is on the increase and
though it is completely admirable in its ends, it too needs to be controlled so

that fauna and flora do not become decimated.

Other visitors to the shoreline are fishermen, swimmers, skin divers, surfers, and picknickers, and those who gather intertidal animals such as the octopus and owl limpets for food. Often these latter animals are collected by poisons such as chlorox or copper sulfate which kill considerable areas around their point of application. Together these activities place the shoreline under severe pressure at several points. Every new development in the shoreline can be expected to increase foot traffic unless it is specifically controlled, and these problems can be expected to increase. In particular, it has been difficult to control the passage of the public across private lands at the top of the cliffs with consequent damage of gardens, hedges, and so forth. Parking and traffic on the streets during weekends has become a problem in some area.

## III.   OBJECTIVES

The primary objective in planning for the future is to preserve the shoreline of Palos Verdes Estates in its natural state as nearly as is possible, while at the same time providing for the use and maintenance of the area in a manner and under conditions which will not conflict with that primary objective. Toward this end, the recommendations made by the Commission are set out below in three categories:

A.   Conservation: Preservation and Maintenance

B.   Recreation

C.   Education

In developing its recommendations, the Commission also took note of

the many secondary or corollary objectives in the light of which each suggestion should be evaluated:

Protect and Restore the Indigenous Ecology - The seemingly modest plants and animals living in the unique intertidal zone of Palos Verdes are a priceless resource for scientific research. Several unique indigenous plants occur in several cliff areas. The ecological balance on the shoreline is relatively delicate and is easily disrupted by man's indiscriminate abuse. These resources should be maintained and guarded so that it may continue to be available for the scientist, educator and layman, but without decimating the environment through overuse.

Maintain and Enhance Existing Recreation Uses - The access trails and parking improvements recommended in this report favor current recreation uses as well as educational and scientific uses and conservation objectives. It is not believed that the regenerative program proposed or the establishment of limited closed areas for research would adversely affect recreation uses.

Retain Local Control of Submerged Land Uses - A most vital requirement of any proposed improvement is the ability of the City to maintain effective control of all parts of the Shoreline Preserve.

Deter Adverse Developments of Adjacent State and Federal Submerged Lands - Only if the City has taken positive steps to insure that the scenic beauty and wildlife environment of the PVE coastline will be preserved as an asset of immeasurable value to the people of the City, the Peninsula

community and of the State of California is it likely that any unacceptable County, State or Federal use of adjacent submerged lands can be successfully deterred. Even with the declaration of a conservatory zone - as in the case of Santa Barbara - unacceptable uses may be authorized on Federal lands. Nonetheless, the first step to State and eventual Federal legislative action to protect our coastline is necessarily commitment of local government to conservation uses in the public interest.

Preserve Residential Character of Adjacent Property - Conservation oriented improvements of our tidelands will satisfy the requirements of the PVE Tideland Grant. Much more than construction oriented improvements, they will enable us to maintain the residential character of our City. As a residential community it is logical to minimize the promotion of activities which would develop high foot and automobile traffic densities.

Perfect Tideland Grant - Under the terms of the legislation, as amended, that grants to the City the rights of the State of California to the submerged lands incorporated in the Shoreline Preserve, if the State Lands Commission should after September 20, 1973 determine that the City has not "substantially improved restored, preserved or maintained the lands as required by such grant, all rights thereto would revert to the State. Reversion of these lands to the State would defeat the objective of local control of submerged land uses. A program intended to preclude such reversion is herein proposed. It is in the best interests of the City to assure that our shoreline preserve plan satisfies the requirements of this Legislation.

IV.   CURRENT USAGE AND RECOMMENDATIONS FOR FUTURE
      CONSERVATION AND USE

In line with the primary objectives stated above, the Commission developed its study of the Shoreline Preserve area as it presently exists, and its recommendations for the future of this area, under the following general headings:

A.   Conservation:  Preservation and Maintenance.

Present Status:- Present activities tend to debilitate the natural resources and erode the land.  There is no formal program for either conservation or maintenance.  Trash accumulates.  New trails are cut by use indiscriminately.  Visitors are not even urged by appropriate posting not to litter or in any other way despoil the natural beauty.

Recommendations:

1.   Establish Sign Posting Program - The City should post signs identifying the Shoreline Preserve.  Uniform signs containing suitable symbols as well as the name should be utilized.  Appendix III  describes how a neptune theme might be incorporated.  This approach would enhance the image of an integrated and well coordinated shoreline program.

In addition to the basic identification signs, a number of instructional signs should be posted.  These would request visitors to cooperate in shoreline preservation by not removing sealife; returning shoreline rocks to their original positions; carrying litter out when leaving and not cutting new cliffside trails.

2.   Expand Shoreline Clean-up Program - The City should encourage

repeated clean-up programs by interested groups such as the Oceano-
graphic Society, Sierra Club, Boy and Girl Scouts, church groups and
other organizations.

Clean-up should be promoted by the City designating and pub-
licizing an annual Shoreline Clean-up Day. The City should continue
its past practice of providing sacks for collecting trash and a city truck
to collect the filled sacks at designated pick-up points.

"Bear Proof" trash containers should be installed immediately
at the improved Bluff Cove viewing site on Paseo Del Mar and P.V.
Drive West, the Bluff Cove access area and Malaga Cove. It would
be inconsistent for the City to sponsor a Shoreline Clean-up Program without
providing permanent refuse containers in these areas of heavy existing
usage. Responsibility for regular emptying of these containers should
be assumed by the City.

3. <u>Establish Marine Life Refuge</u> - The City should consider
proposing legislation whereby the State would establish a subtidal area
(exclusive of parkland) as a Marine Life Refuge as has been done at
Laguna Beach, Newport Beach, and South Laguna Refuge. This step
would make it a misdemeanor under the Fish and Game Code of California
to disturb or remove any plant or animal with a few exceptions within
the Refuge. The net effect of such legislation would be to qualify the
State's reservation of fishing rights in the tideland grant. See Appendix VII
(Laguna Beach Marine Life Refuge) and Appendix VIII (PVE Marine Life

Refuge) for background materials including comments by the PVE City
Attorney.  The State of California pre-empts the City in regulation
of fishing and fishery resources so it would not be possible for the City
to adopt an ordinance prohibiting collecting of marine life from tidepools.

    4.  <u>Support Sea Projects</u> - In a continuing effort to improve and
maintain the biological resource of our tidelands, the City should initiate
or cooperate with interested groups in projects such as kelp reforesta-
tion which in turn would improve the fishing resource and, thereby,
also enhance the interests of the sports fisherman and skin diver which
is a statewide purpose.  See Appendix IX for a discussion of kelp and
its disappearance.      Kelp reforestation should be pursued in concert
with interested groups such as the Department of Fish & Game, the
P.V. Oceanography Society, the Sierra Club, the TRW Divers, the
L.A. County Department of Parks and Recreation, and possibly others.

    Another sea project would be an effort to rejuvenate selected
tidepool areas.  This might ultimately require reintroduction of certain
species, but initially, as a pilot program, the City could post signs
advising that parkland access is closed for a limited period of time and
let nature perform the restoration.  The closing of parkland access
would not conflict with California Fish and Game Regulations.  Selected
areas could be alternately opened and closed in a rotating fashion.  This
method would also support certain research activities where it is desirable
to measure the regenerative effects.

5.  <u>Consider Establishment of Manipulative Zones</u> - Future

consideration should be given to creating several manipulative zones.

Such shoreline zones could be selected because of their natural life

and would be periodically closed to the public, perhaps for several

years, for purposes of life regeneration.  Such a shoreline practice

would probably be coordinated with educational or research oriented

groups and our own tidepool regeneration program.

6.  <u>Provide Landscaping</u> - Locations attracting major foot traffic

should receive landscaping attention.  Selected low maintenance plantings

would serve to promote safety, slow erosion and enhance the natural

beauty of the tidelands setting; i. e., of the shoreline.  Volunteer groups

may be willing to provide such plantings if the City will provide the

necessary landscape plan.

7.  <u>Control Erosion</u> - Nowhere along the coastline has

greater erosion occurred than where storm drain outfalls have

been projected over the cliffside and not piped to the sea

as required of private owners of shoreline properties.  The first com-

mitment of the City to the preservation program herein proposed should

be immediate attention to this condition at every location where this

erosion problem has not yet been corrected.  Further, by such admin-

istrative or other means as are necessary, the City should assure

that future residential developments and street construction does not

involve the massive dumping of rock and soil off the cliffsides as occurre

since the Tideland Grant in the construction of Resort Point improvements.

B.   Recreation.

Present Status:

1.   Surfing - Surfing appears to be the most popular current use of our tidelands.   The usage exists primarily at Haggarty's Pier in Malage Cove, Bluff Cove and Lunada Bay.

2.   Scuba Diving - Discussions with local divers and scuba shops indicate usage is quite generalized on our coastline.   A considerable number of divers utilize boats for access.   Utilization of tidelands by divers would undoubtedly increase moderately if shoreline access were improved.

3.   Beach and Swim - Some usage currently exists for purposes of swimming and beach visiting.   There is already located on parkland within the Shoreline Preserve a City owned and operated swim facility and recreation center.   A consulting geologist indicates that if sand were introduced into Bluff Cove, Lunada Bay, and Honeymoon Cove, it would likely stay for some years.   Sand would tend to wash northward from Malaga Cove, and hence, that location would appear to be a poor candidate for a sandy beach.

4.   Boating - Malaga Cove is occasionally used as a launching site for small boats.   The Palos Verdes Yacht Club holds an annual

small boat race at Malaga Cove; launching the small boats over the

rocks on improvised wooden tracks.   See Appendix VII   for description

of past interests and notes on activity regarding boating facilities.

Recommendations:

1.   Improve Access Trails - Access trails should be delineated

so as to direct the public to those areas where appropriate activities

are to be encouraged while at the same time promote public safety

and reduce the assistance required of police, Coast Guard and the fire

department.   To encourage attentiveness on the part of those using

trails, they should all be appropriately posted as to risk.   Exhibits II

and III identify most existing trails.   Existing and future trails may be

discussed in three categories:

a.   Existing Improved Trails:

Malaga Cove - Swim Club Road

Bluff Cove - path to Flat Rock Point

These trails are the most heavily used.   No immediate

improvements are recommended.

b.   Existing Improvable Trails:

"Haggarty's"
Margate Canyon
Chiswick Road
Via Neve
Lunada Bay

Home construction has now blocked off the two trails
most frequently used in the past at Lunada Bay and currently the
only accesses are very  hazardous and heavily traveled.   A reasonably
safe access trail should be provided at Lunada Bay.   Improvable
trails should be scheduled for improvement.   Trail improvements
might be accomplished in coordination with a trail committee of the
Sierra Club or Oceanographic Society, or, alternatively in connection
with storm drain or other related improvements.

See map of topography and trail locations in rear pocket.

BEACH ACCESS TRAILS

| Map Key | | Ownership | Bluff Height | Public Frontage Parking | Trail Difficulty | View Site |
|---|---|---|---|---|---|---|
| 1. | Torrance Beach | Public | * | | 3 | |
| 2. | Rosita Place | Private | 125 | 0 | 10 | |
| 3. | Swim Club Road | Public | 85 | 50 | 2 | X |
| 4. | "Haggarty's" | Public | 75 | 12 | 6 | |
| 5. | Via Chino | Public | 80 | 30 | 6 | |
| 6. | Flat Rock Point | Public | 175 | 40 | 4 | X |
| 7. | Bluff Cove | Public | 300 | 20+ | 8 | X |
| 8. | Margate Canyon | Public | 230 | 20+ | 8 | |
| 9. | Chiswick North | Public | 205 | 20+ | 8 | |
| 10. | Chiswick Road | Public | 200 | 20+ | 7 | |
| 11. | Cloyden Road | Private | 175 | 0 | 7 | |
| 12. | Lunada Bay | Public | 160 | 30+ | 7 | X |
| 13. | Via Oleadas | Private | 145 | 0 | 6 | |
| 14. | Resort Point South | Public | 165 | 10 | 8 | |
| 15. | Via Neve | Public | 170 | 20+ | 7 | |
| 16. | Southern Boundary | Private | * | | 10 | |

Difficulty: 1 = excellent, 10 = very poor

* Access from adjacent beaches

EXHIBIT IV

4    Sunday        PALOS VERDES PENINSULA NEWS
     Feb. 25, 2968      and ROLLING HILLS HERALD

# Dangerous Coastline

The front page of Wednesday's issue of this newspaper this week told the dramatic story of two rescue operations along the Palos Verdes Peninsula coastline last Sunday.

The two rescues — which fortunately turned out happily — were fairly routine for the rescue crews from Palos Verdes Estates Police and Los Angeles County Sheriff's office who participated. Making rescues and climbing up and down the Palos Verdes Peninsula cliffs are all in a days work for the rescue crews.

The rescues may all be in a day's work for the men involved, but they certainly aren't for the persons saved from bodily harm or death.

Last Sunday the lure of the Dominator sent three persons hurtling through the rocky surf when their boat was overturned by a huge wave. If one of the young women aboard the boat had given in to her husband and brought along their 18-month old child there probably would have been a disaster.

At almost the same instant, a mile or two down the coastline, a young fisherman was being dashed on the rocks by another huge wave. It took a Coast Guard helicopter to start him on the first leg of his journey to the hospital for care of a broken ankle.

We repeat this detail about both rescue operations to record the danger of our coastline. Hardle a week goes by without someone being rescued from the cliffs or from the water along this fabulous Palos Verdes Peninsula coastline. Not infrequently the Coast Guard helicopter is dispatched from International Airport to tote a basket case to a waiting ambulance or nearby hospital.

Our immediate gratitude must go to the men who staff these crew operations. Often they risk their lives to snatch a person from possible death or further injury at the hands of the elements.

The Peninsula coastline, like a magnet, attracts the unwary to its fascinations. In most places the descent is treacherous; in many places the drop is straight down. At such well known tourist spots as the Grand Canyon equally dangerous cliffs are protected with railings and signs. Yet along the Palos Verdes Peninsula shore there are few, if any, warnings of the danger.

The cost of roping off or controlling public access to the coastline would be prohibitive, yet at some time consideration must be given to alerting the public to the danger of the high cliffs and the rocky shore. As population increases and as persons living in other areas learn of our attractive features there will be greater and greater numbers climbing the rugged cliffs.

A comparison of the number of people along the shoreline on any given Sunday afternoon five and ten years ago with the traffic today tells the story of increased traffic.

Local police and sheriff's deputies are equipped to handle today's emergencies, but will they be able to handle tomorrow's?

Involved in the study of the future of the shoreline must be consideration of public safety and minimizing the harm that can come to unsuspecting visitors.

c. <u>Dangerous Trails:</u>

Via Chino
Cloyden Road
Others less commonly used

Future use of very dangerous trails should be discouraged
by fencing camouflaged with barrier type shrubbery.

2.  <u>Designate and Improve View Sites and Associated Parking</u> -
View sites permit viewing of the scenic values of the tidelands.  Such
viewing of tidelands is a purpose in which there is local and statewide
interest.  View sites will require some parking area.  We believe
limited and carefully controlled parking areas are preferable to either
major shoreline developments with large parking and traffic require-
ments, or reversion of tidelands to the State.  All existing view sites
should be posted as such.

a.  <u>Bluff Cove North</u> - The Bluff Cove access area is now
being used as a view site and parking currently is on an "informal"
basis.  An improved and landscaped view site with appropriate
parking facilities would present a much better appearance and
greater safety than the uncontrolled offstreet parking now practiced.

The northern edge of Bluff Cove contains two possible
parking areas in the Paseo Del Mar right-of-way with minimal

-12-

use of parkland.   The larger area should be developed initially with the other developed as needed at a later date.

    b.   <u>Bluff Cove South View Site</u> - The view site on the south side of Bluff Cove should be further developed to provide an area for viewing by pedestrians.   Parking has already been provided near the intersection of P.V. Drive West and Paseo Del Mar.

    c.   <u>Malaga Cove</u> - The Gazebo at Malaga Cove exists already as a viewing site.   It should be identified as a view site and receive some repair attention.   A parking area already exists here in the center of the street right-of-way.   Paving, curbs striping and proper landscape development should be provided.   This improvement would also benefit the summer program at the Roessler Memorial Swim facility.

    d.   <u>Lunada Bay</u> - A fourth view site should be considered a future possibility at one of the Lunada Bay trail access points. Designation of such a site would warrant offstreet landscaped parking to accommodate both viewers and trail users.

C.   <u>Education.</u>

<u>Present Status:</u>  Various portions of our intertidal zones have provided a research laboratory for graduate university students for many years.   There is very little grade school and high school class utilization of the tidelands because of the hazardous accesses.   The Palos Verdes Oceanographic Society has for the past two years held

SUMMARY

Appendix VIII contains a sample copy of one of their use
agreements for Ano Nuevo Island.  Any agreement reached with the
City of Palos Verdes Estates presumably would be similar.

SUMMARY OF RECOMMENDATIONS

| ACTION | ADOPT NOW | | LONG |
|---|---|---|---|
| | X | APPROX. COST | WHEN |
| A. CONSERVATION: PRESERVATION & MAINTENANCE | | | |
| 1. Post Shoreline Preserve Signs: | | | |
|    Identification Signs (12) | X | $ 400 | |
|    Instructional Signs (6) | X | 600 | |
| 2. Shoreline Clean-up Program: | | | |
|    Adopt policy of Annual Clean-up Day | X | 100 per day | |
|    Trash containers (3 locations) | X | 300 | |
|    City pick-up of trash in containers | X | 100 per year | |
| 3. Establishment of a PVE Marine Life Refuge | X | Nil | |
| 4. Sea Projects: | | | |
|    Kelp Reforestation | | | 1-3 years |
|    Pilot Tidepool Rejuvenation Program | | | 1-3 years |
| 5. Manipulative Zones | | | 1-5 years |
| 6. Selected Landscaping | | | 1-5 years |
| 7. Erosion Control | X | In part 3500[a] | Balance 1-5 years |

[a] Currently budgeted as storm drain control

17

SUMMARY OF RECOMMENDATIONS

| ACTION | ADOPT NOW | | LONG RANGE |
|---|---|---|---|
| | X | APPROX. COST | WHEN |
| **B.  RECREATION:** | | | |
| 1.  Access Trails & Safety | | | |
| Existing Improvable Trails | | | 1-3 years |
| Lunada Bay Access Trail | | | 2-5 years [a] |
| Control Current Dangerous Trails | X | $1000 | |
| 2.  View Sites & Parking | | | |
| Post 3 Existing View Sites | | | |
| Bluff Cove North | X | ) | |
| Bluff Cove South (at Paseo Del Mar) | X | )-200 | |
| Malage Cove Gazebo | X | ) | |
| Improve View Site and Parking at Bluff Cove North | X | In part 8000 | Balance 3-5 years |
| Improve View Site at Bluff Cove South | X | 2000 | |
| Improve View Site at Malage Cove as follows: | | | |
| Repair Gazebo | X | 600 | |
| Improve Parking | | | 1-3 years |

[a] Possible to develop access trail as part of storm drain improvement project.

18

SUMMARY OF RECOMMENDATIONS

| ACTION | ADOPT NOW | | LONG T'M |
|---|---|---|---|
| | X | APPROX. COST | WHEN |
| **C. EDUCATION** | | | |
| 1. Promote Shoreline nature trails | | | 1-7 years |
| 2. Encourage a subtidal trail | | | 1-5 years |
| 3. Establish Botanical Area | | | 1-7 years |
| 4. Cooperate with the Palos Verdes Oceanographics Society and other interested groups | X | None Identified as yet | |
| 5. Encourage scientific research. Further explore the possibilities of a 1/2 mile Shoreline educational use agreement with the Inter-University Natural Lands and Waters Committee headed by UCLA. | X | None | |

19

APPENDICES

APPENDIX I


PVE TIDELANDS GRANT

Senate Bill No. 844

Passed the Senate May 13, 1968

_____

_Secretary of the Senate_

Passed the Assembly June 10, 1968

_____

_Chief Clerk of the Assembly_

This bill was received by the Governor this _____ 17 _____

day of _____ JUNE _____, 1968, at _____ o'clock _____ M.

_____

_Private Secretary of the Governor_

Compliments of

— 2 —

CHAPTER _____

_An act to amend Section 1 of Chapter 1975 of the Statutes of 1963, relating to tide and submerged lands granted in trust to the City of Palos Verdes Estates._

_The people of the State of California do enact as follows:_

SECTION 1. Section 1 of Chapter 1975 of the Statutes of 1963 is amended to read:

Section 1. There is hereby granted to the City of Palos Verdes Estates, a municipal corporation of the State of California, and to its successors, all the right, title and interest of the State of California held by said state by virtue of its sovereignty in and to all tidelands and submerged lands, whether filled or unfilled, which are described as follows:

That part of state-owned tide and submerged land which lies directly joining the Mean High Tide Line of the Pacific Ocean along the City of Palos Verdes Estates, California, and is limited to the following extent:

In the south by a line which is a westerly prolongation of the southerly boundary of Tract 4400, as recorded in Book 72, pages 95–96 of Maps in the office of the Recorder of Los Angeles County.

In the north by a line which is a westerly prolongation of the northerly boundary of Tract 4400 as recorded in Book 72, pages 95–96 of Maps in the office of the Recorder of Los Angeles County.

In the east by the Mean High Tide Line of the Pacific Ocean between the above described southerly and northerly limits.

In the west by the southwesterly boundary of the County of Los Angeles between the above described southerly and northerly limits.

To be forever held by said city and by its successors in trust for the use and purposes, and upon the express conditions following, to wit:

(a) That said lands shall be used by said city and its successors for purposes in which there is a general statewide interest as follows:

(1) For the establishment, improvement and conduct of a harbor, and for the construction, reconstruction, repair, maintenance, and operation of wharves, docks, piers, slips, quays, and all other works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of commerce and navigation,

Case 2:16-cv-02129-SJO-RAO   Document 309-4   Filed 07/31/17   Page 32 of 48   Page ID #:9077

— 3 —

(2) For the establishment, improvement and conduct of an airport and heliport or aviation facilities, including but not limited to approach, takeoff and clear zones in connection with airport runways, and for the construction, reconstruction, repair, maintenance and operation of terminal buildings, runways, roadways, aprons, taxiways, parking areas, and all other works, building, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of air commerce and air navigation.

(3) For the construction, reconstruction, repair and maintenance of highways, streets, roadways, bridges, belt line railroads, parking facilities, power, telephone, telegraph or cable lines or landings, water and gas pipelines, and all other transportation and utility facilities or betterments incidental, necessary or convenient for the promotion and accommodation of any of the uses set forth in this Section I.

(4) For the construction, reconstruction, repair, maintenance and operation of public buildings, public assembly and meeting places, convention centers, parks, playgrounds, bathhouses and bathing facilities, recreation and fishing piers, public recreation facilities, including but not limited to public golf courses, and for all works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of any such uses.

(5) For the establishment, improvement and conduct of small boat harbors, marinas, aquatic playgrounds and similar recreational facilities, and for the construction, reconstruction, repair, maintenance and operation of all works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of any of such uses, including but not limited to snackbars, cafés, restaurants, motels, hotels, launching ramps and hoists, storage sheds, boat repair facilities with cranes and marine ways, administration buildings, public restrooms, bait and tackle shops, chandleries, boat sales establishments, service stations and fuel docks, yacht club buildings, parking areas, roadways, pedestrian ways and landscaped areas.

(6) For the establishment, preservation, restoration, improvement, or maintenance of intertidal and subtidal marine biological reserves, restoration and maintenance of kelp forests, abalone and other shellfish and related fishery resources, development of nature study trails and areas, exhibits, research projects, preservation of areas of unique ocean phenomena for activities such as surfing and other water sports, and the natural beauty and biological resources and activities related thereto, subject to the prior approval of the Fish and Game Com̃ ̃ion as to those matters which are subject to regulation by ᵗ̲ ̲ ̲ ̲ᵐ̲ᵐ̲ ̲ ̲ ̲ ̲ion pursuant to the Fish and Game Code.

— 4 —

(b) Said city, or its successors shall not, at any time, grant, convey, give or alienate said lands, or any part thereof, to any individual, firm or corporation for any purposes whatever; provided, that said city, or its successors, may grant franchises thereon for limited periods, not exceeding 66 years, for wharves and other public uses and purposes, and may lease said lands, or any part thereof, for limited periods, not exceeding 66 years, for purposes consistent with the trusts upon which said lands are held by the State of California, and with the requirements of commerce and navigation, and collect and retain rents and other revenues from such leases, franchises and privileges. Such lease or leases, franchises and privileges may be for any and all purposes which shall not interfere with commerce and navigation.

Nothing contained in this paragraph (a) shall be deemed to affect the validity or term of any franchise previously granted by said city under the Franchise Act of 1937 (Chapter 2 (commencing at Section 6101), of Division 3 of the Public Utilities Code), and any such franchise shall be effective with respect to said land when title thereto passes to said city hereunder.

(c) Said lands shall be improved without expense to the state; provided, however, that nothing contained in this act shall preclude expenditures for the development of said lands for any public purpose not inconsistent with commerce, navigation and fishery, by the state, or any board, agency or commission thereof, when authorized or approved by the city, nor by the city of any funds received for such purpose from the state or any board, agency or commission thereof.

(d) In the management, conduct, operation and control of said lands or any improvements, betterments, or structures thereon, the city or its successors shall make no discrimination in rates, tolls or charges for any use or service in connection therewith.

(e) The State of California shall have the right to use without charge any transportation, landing or storage improvements, betterments or structures constructed upon said lands for any vessel or other watercraft or railroad owned or operated by the State of California.

(f) There is hereby reserved to the people of the State of California the right to fish in the waters on said lands with the right of convenient access to said water over said lands for said purpose.

(g) There is hereby excepted and reserved in the State of California all deposits of minerals, including oil and gas, in said lands, and to the State of California, or persons authorized by the State of California, the right to prospect for, ̲ ̲ ̲, and remove such deposits from said lands.

EW
TION

— 5 —

(h) Said lands are granted subject to the express reservation and condition that the state may at any time in the future use said lands or any portion thereof for highway purposes without compensation to the city, its successors or assigns, or any person, firm or public or private corporation claiming under it, except that in the event improvements, betterments or structures have been placed upon the property taken by the state for said purposes, compensation shall be made to the person entitled thereto for the value of his interest in the improvements, betterments or structures taken or the damages to such interest.

(i) The State Lands Commission shall, at the cost of the city, survey and monument the granted lands and record a description and plat thereof in the office of the County Recorder of Los Angeles County.

(j) Within 10 years from the effective date of this act the granted lands shall be substantially improved, restored, preserved, or maintained by the city without expense to the state and if the State Lands Commission determines that the city has failed to improve, restore, preserve, or maintain said lands as herein required, all right, title, and interest of said city in and to all lands granted by this act shall cease and all said right, title and interest in the granted lands shall revert and rest in the state.

*IEW*
*WORDS*

*President of the Senate*

*Speaker of the Assembly*

Approved ___JUNE___ /7 ___, 1968

*Governor*

RESOLUTION NO: ___648___

A RESOLUTION OF THE CITY COUNCIL OF
THE CITY OF PALOS VERDES ESTATES,
CALIFORNIA, DESIGNATING THE PALOS
VERDES ESTATES SHORELINE PRESERVE
AND DIRECTING THE CITY PLANNING
COMMISSION TO PREPARE AND SUBMIT
A REPORT

WHEREAS, the City of Palos Verdes Estates since March
20, 1963, by authority of Section 1 of Chapter 1975 of the Statutes of 1963,
has held in trust all the right, title and interest of the State of California
in and to all the tidelands and submerged lands (herein collectively called
"tidelands"), described in said Section 1, that directly join the Mean
High Tide Line of the Pacific Ocean at the westernmost boundary of the
City; and

WHEREAS, the City's right, title and interest to such lands
will cease and revert to and rest in the State of California on March 20,
1973, unless the tidelands, without expense to the State, shall have been
substantially improved, restored, preserved or maintained by the City;
and

WHEREAS, it is the declared objective and intent of the
City to take all action necessary to assure that title to the tidelands shall
continue in the City and not revert to the State; and

WHEREAS, the City, under various deeds from the Palos
Verdes Homes Association, also holds title to all the property (herein
called "parklands") bordering the tidelands at the City's westernmost
boundary, including the beaches and cliffsides of the shoreline and several
lots along the cliffs (totaling approximately 130 acres), for park and/or
recreational purposes; and

WHEREAS, in combination, the tidelands and parklands
constitute a singular natural asset of the City and of the State of California

APPENDIX II

CITY RESOLUTION DESIGNATING

PVE SHORELINE PRESERVE

as a shoreline of exceptional and dramatic scenic beauty and of significant

geological, botanical and biological interest; and

WHEREAS, there is the clear and present danger that the

unique marine life and other natural features, including even the physical

appearance and formation of the tidelands and parklands, will be irre-

trievably impaired by unrestricted use, unregulated access and private

appropriation;

NOW, THEREFORE, the City finds it to be in the public

interest that the City take immediate action to preserve and maintain the

tidelands and parklands as a natural preserve and recreational area and

accordingly:

1. Said tidelands and parklands, all as described in

Schedule A hereto, are hereby designated and shall hereafter be known as

the "Palos Verdes Estates Shoreline Preserve;"

2. The City's Planning Commission is hereby authorized

and directed to prepare and submit to the City Council, as soon as reason-

ably possible and in at least preliminary fashion within not more than six

(6) months from the date of this Resolution, an appropriate and detailed

master plan for the Palos Verdes Estates Shoreline Preserve that will

satisfy the conditions of the State of California's grant of the tidelands to

the City and comply with the conditions of the Palos Verdes Homes Associa-

tion's grant of the parklands to the City.

APPROVED and ADOPTED this _28th_ day of _January_ .

1969.

JOSEPH T. BARNETT, Mayor
Palos Verdes Estates, California

ATTEST:

BETTY STOFFERS, City Clerk

SCHEDULE A

PROPERTY DESCRIPTION

There shall be included in the Palos Verdes Shoreline
Preserve the following:

(A)       That part of state-owned tide and submerged land
which lies directly joining the Mean High Tide Line of the
Pacific Ocean along the City of Palos Verdes Estates,
California, and is limited to the following extent:

In the south by a line which is a westerly prolongation
of the southerly boundary of Tract 4400, as recorded in
Book 72, Pages 95-96 of Maps in the office of the Recorder
of Los Angeles County.

In the north by a line which is a westerly prolongation
of the northerly boundary of Tract 4400 as recorded in Book
72, Pages 95-96 of Maps in the office of the Recorder of
Los Angeles County.

In the east by the Mean High Tide Line of the Pacific
Ocean between the above-described southerly and northerly
limits.

In the west by the southwesterly boundary of the County
of Los Angeles between the above-described southerly and
northerly limits.

(B)       That part of the parklands west of the right-of-way of
Paseo del Mar from the City's northern boundary to its
southern boundary, including, without limiting the generality
of the foregoing, all the following numbered lots:

Lots B and C, Tract No. 6886; F and G, Tract No. 6888;
C and D, Tract No. 7140; B and C, Tract No. 7144; E, Tract
No. 7331; A and G, Tract No. 7536; A, Tract No. 10170; and
F, Tract No. 10624.

BACKGROUND

## 1963 Chapel Bill (Assembly Bill 2002)

Assembly Bill No. 2002 was passed by the California Legislature March 20, 1963; was signed by the Governor July 19, 1963 and became effective September 20, 1963.

The law granted in trust the title to the PVE Submerged Tidelands and provided that if said Tidelands were not "Substantially Improved" within ten years that title would revert to the State. The "substantial improvements" were incompletely delineated so in 1968, the act was amended.

## 1968 Tideland Grant Amendment (Senate Bill No. 844)

On May 13, 1968, the City Tideland Grant was amended to incorporate conservation as a legitimate use of the Tidelands. The City of PVE has until September 20, 1973 to show that it has "substantially improved, restored, preserved or maintained" the Granted Lands. If the State Lands Commission determines that the City has failed to do so by that date, title shall revert to the State.

APPENDIX III

SHORELINE SIGN PROGRAM

Some Possible Sign Styles

Possible Uses:

   Identification of Preserve
   Education
   Marine Life Refuge Designation
   View Site
   Hazard Area

# Marine Refuge



# Palos Verdes Estates
# Shoreline Preserve

3





# Palos Verdes Estates Shoreline Preserve

## Marine Refuge

The Palos Verdes Estates Shoreline Preserve

The rocky shoreline and coves of this Preserve are an important recreational, aesthetic, and scientific resource. These areas, rich in marine flora and fauna, play an important part in the activities of marine biologists and others from all educational levels. Because of their accessibility, these areas have been greatly depleted in recent years by unrestricted collecting activities.

(In 1970 the California Legislature established the Palos Verdes Marine Refuge under the California Fish and Game Code, sections 10664 and 1090X, to protect these marine resources for future study and enjoyment by the people.) The Preserve area is a park where living things are protected to perpetuate the plant and animal life within the boundaries of the Preserve for the public of today and tomorrow. Given a rest, this area will come back to nearly its original lushness of biota.

The boundaries of the Preserve are posted. The map adjacent shows the extent of the Preserve, view points and access trails.

*Sample wording*



## PALOS VERDES MARINE RESERVE

"Take nothing but pictures; leave nothing but footprints."  This

is a living marine reserve.  Please:

1. Always return tide pool animals to their original habitat
   after studying them.

2. Take nothing from the preserve.  All animals, algae, shells,
   etc., must be left in place.

3. Return rocks to their original position after you have
   finished observing their undersides.

4. Carry no glass or other containers with you into the
   marine reserve.

5. Practice conservation - it is a good habit to acquire.
   Carry all of your litter back to a trash can.

(Instructional Sign Comments now used at Point Fermin Marine Life Refuge)

APPENDIX IV


CODES ESTABLISHING MARINE LIFE REFUGES

Section

State Fish & Game Code ----------------------------- A

Pacific Grove City Code ----------------------------- B

Some Comments by PVE City Attorney
on Possible PVE Marine Life Refuge------------------- C

Special Rules

Please do not disturb, injure, or remove any
plant or animal life of any description.

Fishing is permitted as licensed by the
California Fish and Game Code. (The following may
be taken: abalone, lobster, bonita, rock fish
(sebastodes), mackeral, perch, kelp bass, sand
bass, spotted bass, corbina, croaker, and halibut.
All other fish and forms of marine life are protected.)

The Shoreline Preserve habitat should not be
destroyed by relocating or repositioning of large rocks.
The quantity of non-living plants and animals, shells,
and pebbles taken and possessed is restricted to small
amounts.

Fires are prohibited above the mean high tide
line (Palos Verdes Estates City Code, section 4.4).

Please carry out all refuse, bottles, cans, and
paper.

Violation of the Fish and Game Code or the City
Code is a misdemeanor.

This is your park for the enjoyment of all the
people. Please protect this natural heritage for future
generations.

*Sample Wording*

# EXHIBIT 5

MINUTE ITEM

This Calendar Item No. 17
was approved as Minute Item
17 by the State Lands
Commission by a vote of 2
to 0 at its 8/20/81
meeting.

CALENDAR ITEM

1 7

8/20/81
G 05-06.2
Rasmussen
Scott

## CITY OF PALOS VERDES ESTATES
## SUBSTANTIAL COMPLIANCE INVESTIGATION

BACKGROUND:

The City of Palos Verdes Estates is located
in Los Angeles County on the rocky Palos
Verdes Peninsula. The shoreline is composed
of vertical cliffs 100 to 200 feet in height.
In some areas the terrain is very steep
and access to the tide and submerged lands
is difficult and dangerous. Below the bluffs,
the shoreline is primarily rocky tide pools
with a rich and delicate marine environment.

In 1963, the Legislature passed Chapter 1975
which granted tide and submerged lands
within the City boundaries (about 4.6 shoreline
miles long) for such purposes as a harbor
and related facilities, an airport and
related facilities, highways and utilities,
public buildings, playgrounds, marinas,
restaurants, motels, etc. The City was
given authority to lease the lands for
periods not to exceed 66 years. The State
Lands Commission was required to survey
and map the grant. This was completed in
1965 and the map was recorded in June,
1966.

In addition to this requirement, the 1963
statute states that "Within 10 years from
the effective date of this act the granted
lands shall be substantially improved by
the City without expense to the State..."
If the State Lands Commission determines
that the City has not improved the lands
as required, all rights, title and interest
in and to the lands shall revert and rest
in the State.

Chapter 316 of the Statutes of 1968 amended
the 1963 statute. This statute added purposes
of preservation, restoration and maintenance
of the biological resources of the area
to the allowable uses. Specifically, the
additional language reads:

A  51
S  27

-1-

CALENDAR PAGE 70

MINUTE PAGE 1656

"For the establishment, preservation, restora-
tion, improvements or maintenance of intertidal
and subtidal marine biological reserves,
restoration and maintenance of kelp forests,
abalone and other shellfish and related
fishery resources, development of nature
study trails and areas, exhibits, research
projects, preservation of areas of unique
ocean phenomena for activities such as
surfing and other water sports, and the
natural beauty and biological resources
and activities related thereto, subject
to the prior approval of the Fish and Game
Commission as to those matters which are
subject to regulations by the Commission,
pursuant to the Fish and Game Code."

Both granting statutes explicitly state
that the lands are to be used "...for purposes
in which there is a general statewide interest"
rather than for local benefit.

The 1968 statutes also changed the wording
of the substantial improvement clause to
read "Within 10 years from the effective
date of this act the granted lands shall
be substantially improved, restored, preserved,
or maintained by the City without expense
to the State..." (emphasis added). If the
State Lands Commission determines that
the City has not improved, restored, preserved,
or maintained the lands as required, all
right, title and interest in and to the
lands shall revert and rest in the State.

INVESTIGATION: On July 3, 1978, Commission staff notified
the City that it was commencing a study
to verify the City's compliance with the
terms of the substantial improvement, restora-
tion, preservation and maintenance clause
of the grant. The City was told that the
study would consist of a collection and
comparison of data, an on-site inspection
to verify facts and, finally, a recommendation
to the Commission regarding compliance
with the statute. To this end, the City
was asked to provide a report with support
data outlining the ways and means in which
the City has complied with the statute.

-2-

CALENDAR PAGE 71

MINUTE PAGE 1657

## CALENDAR ITEM NO. 17 (CONTD)

No acknowledgement or data was received
from the City, and so on October 3, 1978,
staff reminded the City of the July letter
and the investigation for substantial com-
pliance. The City called on November 3,
1978 to ask if the report could be coordinated
with the City's Local Coastal Plan (LCP).
Staff agreed to this delay as long as the
LCP covered the areas of concern to the
substantial compliance investigation.

The LCP was finally certified in late 1979
and describes the current state of the
granted area and surroundings and plans
for the future of the area. It did not,
however, adequately deal with the improvement,
restoration, preservation or maintenance
of the granted lands during the substantial
compliance period of 1968 to 1978. The
LCP refers several times to a 1970 Shoreline
Preserve Master Plan, and this Plan was,
therefore, also included in staff's review.
In addition, staff made two on-site visits
to the area and met with City officials
to gather information.

SHORELINE PRESERVE:

In January 1969, soon after the grant of
sovereign tide and submerged lands was
amended to allow "preservation" purposes
for the lands, the City of Palos Verdes
Estates established the Palos Verdes Estates
Shoreline Preserve in response to the grant
(City Council Resolution 648, dated January 28,
1969). The Preserve includes City-owned
parkland parcels containing approximately
one-hundred-thirty acres contiguous with
the City's four and one-half mile shoreline
along with the tide and submerged area
granted to the City by the State. The upland
parcels have been "improved" very little.
They primarily serve as large open areas
providing view sites and access to the
tide and submerged lands.

The resolution creating the reserve also
specifically directed that the Shoreline
Preserve Master Plan be prepared to satisfy
the conditions of the grant.

-3-

CALENDAR PAGE 72
MINUTE PAGE 1658

Case 2:16-cv-02129-SJO-RAO   Document 3809-5 filed 08/07/17/1 Page 133 of 195   Page ID #:192869

CALENDAR ITEM NO. **17** (CONTD)

The master plan was completed by the City Planning Commission and adopted by the City Council in March 1970. The cover letter accompanying the plan and the plan itself state that the plan was prepared in response to the grant.

"In accordance with the direction to the Council in its Resolution No. 648 (designating the Palos Verdes Estates Shoreline Preserve), the Planning Commission submits herewith a master plan for development of the City's coastline area in a manner that will, insofar as possible, accomplish two objectives that appear at first glance to be contradictory:

1.  to 'preserve and maintain its natural state' and

2.  to undertake both short- and long-term improvements designed to increase safety of access, enhance the appearance, and satisfy the requirements of the State's grant of the submerged lands to the City."

The plan itself states:

"Under the terms of the legislation, as amended, that grants to the City the right of the State of California to the submerged lands incorporated in the Shoreline Preserve, if the State Lands Commission should after September 20, 1973, determine that the City has not substantially improved, restored, preserved or maintained the lands as required by such grant, all rights thereto would revert to the State. Reversion of these lands to the State would defeat the objective of local control of submerged land uses. A program intended to preclude such reversion is herein proposed. It is in the best interests of the City to assure that our shoreline preserve plan satisfies the requirements of this Legislation." (Note that the actual deadline for substantial compliance was 1978 not 1973 as stated above.)

The plan proposed ".... a program for the shoreline that will preserve and maintain its natural state; favor current limited

-4-

## CALENDAR ITEM NO. 17 (CONTD)

recreational uses; and support expanded educational and scientific activities." All of these uses are consistent with the granting statutes and the Common Law Public Trust for Commerce, Navigation and Fishing. As developed, the program included specific recommendations for regulation of uses, clean-up, access improvements, and cooperative efforts with organizations interested in shoreline activities and preservation to further the City's interest in conservation and compatible uses.

GOAL ACHIEVEMENT:

Creation of a Shoreline Preserve was intended to passively improve, preserve and maintain the granted area as required in the granting statute. The City Planning Commission designed and improved the preserve area in compliance with the natural layout of the land so that the highest intensity use was at the northeasterly end adjacent to Torrance Beach. The use becomes progressively less intensive as one moves southwesterly along the coastline.

The area closest to Torrance features a paved parking lot and view area and a paved walkway to the beach. The bluff in this area is not as high or steep and a wide, sandy beach lies at the bottom. The bluff tends to get higher and steeper and the shore becomes rockier, the further one moves in a southwesterly direction along the shoreline. Here the access ways are steeper and less improved and the environment is more delicate. Again, the City has chosen to take advantage of these natural features and conditions in planning for use of the area. The beach user has easy access to the sandy beach area at the Torrance end and those more interested in tidepool and nature study can take advantage of the less accessible and more protected southwest end.

The master plan recommendations support passive use of the area. Specifically, the recommendations of the master plan were:

-5-

| CALENDAR PAGE | 74 |
|---|---|
| MINUTE PAGE | 1660 |

CALENDAR ITEM NO. 17 (CONTD)

1. Conservation: Preservation and Maintenance

   A. Post shoreline preserve signs.

   B. Institute a shoreline clean-up program.

   C. Establish a Palos Verdes Estates Marine Life Refuge.

   D. Institute sea projects for kelp reforestation and tidepool rejuvenation.

   E. Establish manipulative zones to control certain delicate shoreline areas by periodically closing these to the public.

   F. Provide selected landscaping.

   G. Control erosion.

2. Recreation

   A. Promote shoreline nature trails.

   B. Designate and improve view sites and associated parking.

3. Educational and Scientific

   A. Promote shoreline nature trails.

   B. Encourage a subtidal trail.

   C. Establish a botanical area.

   D. Cooperate with interested oceanographic organization.

   E. Encourage scientific research.

The City has erected two different types of signs for the preserve. One sign type indicates the existence of the preserve, and is posted at several places on the upland parcels in the preserve. The other signs provide information about the protection of flora and fauna in the preserve.

| CALENDAR PAGE | 75 |
| MINUTE PAGE | 1661 |

CALENDAR ITEM NO. 17 (CONTD)

These informative signs are purposely located
down the bluff trails which lead to the
preserve.

The purpose of these sign locations is
to not be overly intensive and yet inform
the more committed preserve-goer.

Policing the area is difficult but relatively,
little litter is strewn about the area.
Periodic clean-up projects are sponsored
by the City with various civic and youth
groups.

Data on file with the Commission shows
that an attempt was made in the late 1960's
and early 1970's to create a Department
of Fish and Game "marine life refuge" off
the Palos Verdes peninsula as recommended
in the master plan. This was not accomplished,
however. Officials at the State Department
of Fish and Game stated that this was not
done because the local residents were against
the idea. Local opinion feared the increased
use of the area if Fish and Game made the
area a refuge. Also, the Department priorities
were such that the area was not needed
when another area south of Palos Verdes
area was made into a preserve. All of the
City's policemen are authorized to make
arrests and enforce the laws affecting
the preserve.

The County funded a program to rejuvenate
the kelp beds off of the Palos Verdes peninsula.
Professor Wheeler North of California Institute
of Technology directed the kelp project
beginning in 1967. There apparently had
been an ongoing problem with divers and
beach combers removing or killing flora
and fauna in the area. This is discussed
in the Master Plan. Again, all of the City's
policemen are authorized to make arrests
and enforce the laws affecting the preserve.
There has been no need so far to use the
manipulative zone concept and periodically
close certain areas. Overall, the kelp
rejuvenation project seems to be working.

-7-

| CALENDAR PAGE | 76 |
| MINUTE PAGE | 1662 |

CALENDAR ITEM NO. **17** (CONTD)

Little landscaping exists or is planned.
The City has made a concerted effort to
preserve the area in as natural a condition
as possible. Erosion has not been a serious
problem. City building regulations require
that residents build with the natural setting.
The few residences which are located at
the top of the bluff are set back and built
in non-eroding areas.

There are three improved accesses and many
more unimproved. The most improved access
is paved and is located at the north end
of the city near Torrance. It leads to
the beach and a city-operated swim club.
Parking is available here. Another access
is a wide and lengthy dirt road built originally
to service the battery emplacements during
the war. Street parking is available along
the entire length of the shoreline.

A third access was improved by a group
of local surfers by adding steps. The area
is used by various groups at most times
of the year for purposes of nature study
primarily but also for some recreational
use.

The City's local coastal program encourages
only passive use of the area with a few
conditions to encourage more public accessi-
bility. One condition was that open areas
remain so and no obstacles be placed on
them or the existing accessways. Also,
more adequate signing of the preserve was
called for and has been done.

In summary then, staff believes that the
tide and submerged lands have been enhanced
for use by the general public. The area
has been protected and preserved in a very
natural state. Its value as a natural,
coastal ecological system is incalculable
largely because of the efforts of the City.
Public use of the area has been successfully
balanced with preservation of the area.

-8-

| CALENDAR PAGE | 77 |
| MINUTE PAGE | 1663 |

CALENDAR ITEM NO. 17 (CONTD)

SUMMARY OF FACTS AND FINDINGS:

1. The City received its original grant
   of tide and submerged lands in 1963
   for purposes of a harbor and other
   public facilities. The grant was amended
   in 1968 to add purposes of preservation,
   restoration and maintenance of the
   lands in the statewide public's interest.

2. In response to staff inquiries in the
   process of determining substantial
   compliance as required in the granting
   statute, the City asked that the LCP
   be used. Therefore, this document,
   along with a 1970 Master Plan regularly
   referred to in the LCP were used to
   determine substantial compliance. Staff
   also participated in two on-site visits
   to the area.

3. The 1970 Master Plan was prepared specifi-
   cally in response to the 1968 grant
   and provided a definite program for
   preserving and maintaining the tide
   and submerged lands such as regulation
   of uses, beach clean-up, access improve-
   ments, etc.

4. The tide and submerged lands are used
   passively by a large segment of the
   regional public. School groups and
   scientists are able to use and enjoy
   the area as well as those interested
   in the various recreational activities
   which are possible.

AB 884:       N/A.

EXHIBITS:     A. Site Map of Grant.

IT IS RECOMMENDED THAT THE COMMISSION:

1. FIND THE THE CITY OF PALOS VERDES ESTATES HAS SUBSTANTIALLY
   COMPLIED WITH THE TERMS OF ITS GRANT OF TIDE AND SUBMERGED
   LANDS AND HAS FULFILLED THE CONDITIONS OF SECTION 1(j)
   OF CHAPTER 316, STATUTES OF 1968.

2. AUTHORIZE THE EXECUTIVE OFFICE TO NOTIFY THE CITY OF
   PALOS VERDES ESTATES, THE SECRETARY OF THE SENATE,

-9-

| CALENDAR PAGE | 78 |
|---|---|
| MINUTE PAGE | 1664 |

## CALENDAR ITEM NO. 17 (CONTD)

AND THE CHIEF CLERK OF THE ASSEMBLY THAT THE COMMISSION
HAS MADE AN INVESTIGATION OF SUBSTANTIAL IMPROVEMENT,
AS REQUIRED BY THE GRANT STATUTE, AND HAS FOUND THAT
THE CITY OF PALOS VERDES ESTATES HAS SUBSTANTIALLY
COMLIED WITH THE TERMS OF ITS GRANT OF TIDE AND SUBMERGED
LANDS AND HAS FULFILLED THE CONDITIONS OF SECTION 1(j)
OF CHAPTER 316, STATUTES OF 1968.

| CALENDAR PAGE | 79 |
| MINUTE PAGE | 1665 |



EXHIBIT "A"
G 05-06.2

CALENDAR PAGE
MINUTE PAGE 1666

# EXHIBIT 6

STATE OF CALIFORNIA—THE RESOURCES AGENCY                                                          PETE WILSON, *Governor*

## CALIFORNIA COASTAL COMMISSION

SOUTH COAST AREA
245 W. BROADWAY, STE. 380
P.O. BOX 1450
LONG BEACH, CA 90802-4416
(213) 590-5071

July 1, 1991

COMMISSION ACTION ON _____

☐ Approved as Recommended
☐ Denied as Recommended
☑ Approved with Changes
☐ Denied
☐ Other

TO:        Commissioners and Interested Persons

FROM:      Peter Douglas, Executive Director
           Charles Damm, District Director, South Coast District
           John Ainsworth, Coastal Program Analyst, South Coast District..

SUBJECT:   Staff Report and Recommendation on the City of Palos Verdes
           Estates Local Coastal Program for public hearing and action at
           the July 16-19, 1991 Commission meeting.

### SYNOPSIS

The City of Palos Verdes Estates is located on the north-westerly portion of
the Peninsula. The City is bounded by the City of Torrance on the north, the
City of Rancho Palos Verdes to the east and south and the Pacific Ocean on the
west. On March 11, 1991 the City resubmitted a total Local Coastal Program
(LCP) which includes, a Land Use Plan (LUP) and Local Implementation Program
(LIP).

On August 21, 1978 the Commission approved The Palos Verdes Estates LCP
submittal with suggested modifications, however, the City never officially
adopted the suggested modifications and certification of the LCP lapsed.

### SUMMARY OF STAFF RECOMMENDATION

Staff is recommending that the Commission deny the City of Palos Verdes
Estates Land Use Plan and implementing program as submitted, certify the Land
Use Plan and Implementing Action Plan with suggested modifications.

### ADDITIONAL INFORMATION

Copies of the staff report are available upon request at the south Coast
District Office located at 245 West Broadway, Suite 380, Long Beach. To
obtain copies of the report by mail, or for additional information, contact
John (Jack) Ainsworth in the Long Beach Office at (213) 590-5071.

Page 2
Palos Verdes Estates LUP & LIP


## TABLE OF CONTENTS

I.      LOCAL COASTAL PROGRAM AREA DESCRIPTION AND BACKGROUND...............3
        A.   Area Description...............................................3
        B.   LCP Background and Previous Commission Action.................4
        C.   Description of Plan Submittal.................................4
        D.   Summary of Public Participation..............................7


II      DENIAL OF LUP AS SUBMITTED.........................................7
        A.   Motion and Staff Recommendation..............................7
        B.   Findings for Denial of LUP as Resubmitted....................8


III     APPROVAL OF THE LUP WITH SUGGESTED MODIFICATIONS..................12
        A.   Motion and Staff Recommendation.............................12
        B.   Suggested Modifications to the LUP..........................13
        C.   Findings For Approval of the LUP With Suggested
             Modifications...............................................13


IV      CEQA FINDINGS.....................................................14


V.      CERTIFICATION OF THE IMPLEMENTATION PROGRAM.......................14
        A.   Motion and Staff Recommendation.............................14
        B.   Findings for Rejection of the Implementation Program........14


VI.     APPROVAL OF THE IMPLEMENTATION PROGRAM IF IT IS MODIIFED
        IN CONFORMITY WITH THE MODIFICATIONS..............................15
        A.   Motion and Staff Recommendation.............................16
        B.   Suggested Modifications.....................................16
        C.   Findings For Approval Of The Implementation Program
             If Modified.................................................19

Page 3
Palos Verdes Estates LUP & LIP

## I. LOCAL COASTAL PROGRAM AREA DESCRIPTION

### A. Area Description

The City of Palos Verdes Estates is situated at the north-westerly portion of
the peninsula. The configuration of the City and its coastal zone is shown in
Exhibit 1. Of the total acreage of 382 acres in the coastal zone, 130 acres,
or 34 percent, is publicly owned. In the early 1960's the City acquired the
state-owned tidelands; a significant modification which allowed for
preservation as a development purpose, was obtained in 1968. The shoreward
lands and adjacent to the granted submerged lands are the city-owned
parklands, the same 130 acres noted above.

The remaining area is zoned and developed in single- and multiple-residential
use, with the exception of one intermediate grade school owned by the Palos
Verdes Peninsula Unified School District. There are only 3 undeveloped
residential lots in the entire coastal zone. These 3 lots are scattered
through the zone and are zoned for single family residences.

The City's shoreline is composed of vertical cliffs 100 to 200 feet in
height. The City is free of known active fault and major slide areas.
However, ocean bluff erosion and rock falls have occurred in the past and
probably will occur again in the future. Geologic studies are currently
required by the City prior to development in the bluff areas. Public access
to the base of the cliffs is provided on the shoreline preserve land. At the
intersection of Paseo del Mar and Via Arroyo, one of two city owned parking
lots in the coastal zone provides parking for ninety cars. This area also has
a paved access trail to the beach. The other lot is located at the
intersections of Paseo del Mar and Palos Verdes Drive and contains
approximately 20 spaces. In addition to the parking lots, on street parking
along Paseo del Mar, the first public coastal road, is available for access to
the shoreline preserve lands. Paseo del Mar offers uninterrupted coastal
views of Santa Monica Bay and the Park land on the bluff tops offers passive
recreation opportunities for the public.

Below the bluffs, the shoreline is primarily rocky tide pools with a rich
marine environment. In the past, the kelp bed has suffered substantially from
sewer outfalls from neighboring cities and other man-made activities. An
experimental project for restoring the kelp beds has been going on for some
time in collaboration with Dr. Wheeler North of Cal Tech and the Department of
Fish and Game. The results are positive.

The shoreline is most heavily used by surfers, fishermen and sightseers.
Intense use of the shoreline by swimmers and sunbathers is limited by the
rocky tidal area and often hazardous descent from bluff top to shoreline.

Development in the coastal zone is residential and zoned R-1 and is governed
by both the local zoning ordinance and deed restrictions of the Palos Verdes
Homes Association. The parklands and shoreline areas are zoned open space.
The homeowners association's objectives, as stated in the summary of
protective restrictions, are: "1) to preserve the fine views of the ocean,
mountains and parks, and, 2) to increase the wonderful natural beauty of the
property, to enhance it with fine planting, so that every purchaser in Palos
Verdes may be sure when building his home that his neighbor will have to build

Page 4
Palos Verdes Estates LUP & LIP

an equally attractive type of building." These restrictions and zoning ordinance have resulted in the development of an expensive and well maintained community.

B. LCP Background and Previous Commission Action

In January of 1978, the LCP Issue Identification Report was drafted by the City based on the Shoreline Preserve Master Plan and Tidelands Grant Document. Surveys were taken of those visiting the coastal areas and the results incorporated into the report. The purpose of these documents was to preserve and maintain the natural state of the coastal areas. The City ws way ahead of other coastal cities and had essentially completed all LCP leg work by employing the Shoreline Preserve Master Plan.

Public hearings on the final Issue Identification Report were held by the Planning Commission in the Spring of 1978. On May 9, 1978, the City Council adopted the Issue Identification report and directed staff to proceed with the processing of the LCP.

In June of 1978, a complete LCP packet consisting of the City's Issue Identification Report, Zoning Ordinance, Shoreline Preserve Master Plan, Tidelands Grant and General Plan was submitted to the Commission for certification. A hearing was held on August 21, 1978 to consider certification of Palos Verdes Estates LCP. The Commission staff recommended approval of the LCP with suggested modifications. The Commission approved the LCP with suggested modifications.

In February of 1980, the City received notification from the Commission that certification of the LCP would become effective upon submittal by the City of the amendments and legally adequate measures to carry out the conditions of certification. The City incorrectly assumed that certification of the LCP was complete and began the coastal development permit process. In August of 1981, the City received notice that the LCP was indeed not effective until submittal of amendments and legally adequate measures to carry out the conditions of certification. The City then began the process of amending its existing ordinances to comply with the Commission's suggested modifications requiring General Plan and zoning ordinance amendments.

The city received an extension to comply with recommended modifications of the LCP until April 1, 1983. City staff attempted to draft implementing ordinances that were acceptable to the Commission as well as the City. The Commission staff reviewed the draft set of ordinances and advised the City staff that the ordinances were still not acceptable. Certification of the LCP lapsed and the City is now resubmitting the LCP with the suggested modifications originally added by the Commission.

C. Description Of Plan Submittal

1. Shoreline Preserve

In January, 1969, the City established the Shoreline Preserve by City Council Resolution in which the City dedicated 130 acres of city-owned open space together with the adjacent graded submerged tidelands out to the three mile

Page 5
Palos Verdes Estates LUP & LIP

limit to create the preserve (Exhibit 2). The shoreline city-owned open space area is a band which runs the full length of the City's 4 1/2 mile shoreline and approximately 50 percent of the bluff top and steeply sloping cliffs seaward of the first coastal road. This entire preserve area is zoned as open space.

In March, 1970, the City formulated a <u>Shoreline Preserve Master Plan</u>. The primary objective according to the document "is to preserve the shoreline...in its natural state as nearly as possible, while at the same time provide for the use and maintenance of the area in a manner and under conditions which will not conflict with that primary objective."

Specific recommendations for implementation were made. These relate to three categories of use: Conservation, Preservation and Maintenance, Recreation and Education. In terms of the Coastal Act policies, the most important of these proposed measures are:

A. The protection and restoration of the indigenous ecology.

B. Maintain and enhance existing recreation uses.

C. Establish sign posting program(for access and educational purposes).

D. Establish marine life refuge (this would enable the City to adopt an ordinance prohibiting collection of marine life from tide pools).

E. Support sea projects (this would include kelp reforestation, rejuvenation of tide pools, etc.).

F. Improvement of access trails.

G. Designate and improve view sites and associated parking.

H. Establish shoreline nature trails.

I. Establish subtidal trails.


2. <u>Tidelands Grant</u>

The City received a Tidelands Grant in 1963 with the intent "to preserve and maintain the unique rugged shoreline." The grant was amended in 1968 to explicitly incorporate conservation and preservation elements.

Although the provisions of the grant permit the City to construct harbors, airports and utility facilities, etc., the City has indicated in its Shoreline Preservation Element that it wished to maintain control of its tidelands area for preservation and conservation reasons. The State Lands Commission will initiate a substantial compliance investigation to determine if the granted lands have been substantially improved, restored, preserved and maintained.


3. <u>General Plan</u>

The General plan includes the following elements: Land Use, Circulation, Scenic Highways, Noise, Safety, Seismic Safety, Housing and Conservation and Open Space. The trust of the various elements is the retention of the beauty

Page 6
Palos Verdes Estates LUP & LIP

and open space of the City. A change of use of parcels within the City cannot
be approved without changes in both the zoning and deed restrictions, and the
General Plan constituting the Coastal Land Use Plan, which is the policy
document against which zoning must be evaluated.

4. Zoning Ordinance

There are four zoning classifications in the City; single family residential
(R-1), Multiple residential, commercial and open space. The majority of land
within the coastal zone falls under the classification of open space and R-1.
A very small portion of land consists of 6 parcels in zoned multi-family
(M-2). These parcels are built-out with apartment units. There are no areas
within the coastal zone designated as commercial. The City's entire shoreline
and approximately 50 percent of the bluff area is zoned open space. The
City's implementing ordinance, is typical of most others since it contains the
following: a declaration of purpose, definition of terms, other general
provisions, and the specifications for single family residential and
multi-family residential construction.

Uses permitted in the R-1 zone include a single family dwelling, agriculture,
horticulture (non-retail), accessory structures, places of public worship, and
public utilities. Specifications include height limits, limits on lighting,
required front, side and rear yard setbacks, and minimum structure size.
Minimum house size is 1,200 sq. ft. with lot coverage of 30 percent. The
maximum height limit is 2 1/2 stories or 30 feet above natural grade. Each
home is to have at least one garage with a minimum of two parking spaces.

Uses permitted in the multiple-family zone include any use permitted in the
R-1 zone, two family and multiple family dwellings. Specifications include
height limits, parking requirements, building heights, building setbacks,
maximum lot coverage, minimum lot area allowable floor area and landscaping.
The maximum height limit is two stories excluding garage space, and not exceed
35 feet in height from natural grade. Each development is required to have
two covered parking spaces per one bedroom unit, and one-half covered space
for each additional bedroom.

Uses permitted in the open space zone include undeveloped open space available
for visual and physical enjoyment of the public and classroom facilities for
public schools.

5. Protective Restrictions

In the early 1920's the Palos Verdes Association was established. Its
objectives are enumerated in a proceeding section. Since its charter provides
for automatic renewal of the Association, it is still in existence. The
functions of the association have devolved to its "Art Jury" which passes on
the acceptability of new construction. Although the association restrictions
are not part of the certification, the restrictions are a prime determinant of
land use.

Although many of the Association's functions were taken over by the City at
incorporation in 1939, the Association still holds a great deal of power. For
instance, rezoning may not occur if two-thirds of the property owners within
300 feet have not assented. The Association sets the minimum cost of housing
and construction details, such as roof colors.

Case 2:16-cv-02129-SJO-RAO   Document 3879-6 Filed 08/07/17   Page 148 of 195   Page ID #:128884

## D.    Summary of Public Participation

On January 15, 1991 the City Council held hearings on the Palos Verdes Estates Local Coastal Program and referred to the planning Commission for review and recommendation of amendments and adoption of a Coastal Overlay Zone and amendments to Chapters 18.04 and 18.16 of the Municipal Code. On January 18, 1991 the Planning Commission held hearing on the Local Coastal Program and adopted recommended ordinances to City Council. On February 12, 1991 the City Council held Public Hearings for the Local Coastal Program and adopted resolution R91-90, certifying Negative Declaration, and Ordinance O91-525 amending the General Plan and Ordinance O91-526 amending the Municipal Code to include the Coastal Zone Overlay. On January 26, 1991 the City Council adopted Ordinance O91-525 (Coastal Zone Overlay) and Ordinance O91-526 (activities permitted in the Coastal Zone) amended the Municipal Code to add notice, hearing and appeal procedures for coastal zone permits, and amended the open space zone to include certain limitations on construction within coastal zone.

## II.    DENIAL OF THE LUP AS SUBMITTED

### A.  Motion and Staff Recommendation

#### Motion 1

I move that the Commission certify the Land Use Plan as resubmitted by the City of Palos Verdes Estates.

#### Staff Recommendation

Staff recommends a no vote, and adoption of the following resolution and findings. An affirmative vote by a majority of the appointed Commissioners is need to pass the motion.

#### Resolution to Deny Certification

The Commission hereby denies certification of the Land Use Plan for the Palos Verdes Estates Local Coastal Program for reasons discussed below and because the City of Palos Verdes Estates Land Use Plan fails to meet the requirements of and does not conform to the policies of Chapter 3 of the Coastal Act (commencing with Sections 30200) to the extent necessary to archive the basic state goals specified in Section 30001.5 of the Coastal Act; is not consistent with applicable decisions of the Commission which shall guide the local government in their future action under Section 30625(c) of the Coastal Act; and does not meet the requirements of Section 21080.5(d)(2)(i) of the California Environmental Quality Act because there are feasible alternatives or mitigation measures available which would substantially lessen any significant adverse impact which the Land Use Plan may have on the environment.

**B.**      <u>Findings for Denial of The Land Use Plan as Resubmitted</u>

**1.**   <u>Introduction</u>

Staff recommendation to deny the LUP as resubmitted is based upon the continued inconsistency of certain plan policies with the Coastal Act Sections related to development. Analysis of these policies and findings for denial of the LUP follows herein; this report suggests modification to these policies **which,** if adopted by the City, will render them consistent with the Coastal **Act.** Findings to support approval of the LUP as modified also follow.

**2.**   <u>Purpose of LUP</u>

The City of Palos Verdes Estates has amended their General Plan to include the Coastal Zone Overlay Zone (CZ-O). The CZ-O and its application protects the public health, safety and general welfare by:

**A.**     Protecting the Coastal bluffs as a natural resource:

**B.**     Assuring that the bluff can support proposed development (as defined in Title 19, Chapter 19.01, 19.01.070);

**C.**     Protecting parklands within the coastal zone for park purposes.

**3.**   <u>Public Access</u>

Section 30500 (a) of the Coastal Act requires that a Local Coastal Program contain specific access component to assure that maximum public access to the coast and public recreation areas is provided. The documents the City has resubmitted provided fulfill the objectives of an access component for the Land Use Plan (see also implementing sections below). Access & recreation policies of the Act dictate the requirements of the Access component. These include Sections 30210 through 30244 of the Coast Act.

Palos Verdes Estates 4 1/2 mile shoreline and approximately 50 percent of the bluff top and steeply sloping cliffs seaward of the first road are publicly owned by the City. Under the the Shoreline Master Plan, Tide Lands Grant and General Plan the shoreline, bluff top, bluff face and submerged lands are to preserved and maintained in their natural state. The entire shoreline preserve area is open to the public. Access to the shoreline is hindered by the extremely high steep coastal bluffs that characterize the coastline in this area. The City has provided the general location of 16 accessways in the Shoreline Preserve Master Plan (Exhibits 3-4). The City's mapping provides beachgoers a good idea of the location of each accessway.

Two accessways in the City are receiving the most use. The first is swim Club Road which is adjacent to 90-car parking lot at Malaga Cove School. **The** access road leads to RAT Beach which is adjacent to Torrance. Rat Beach is the only sandy beach in Palos Verdes Estates. The second heavily used accessway is Flat Rock Point which is wider and less steep than other accessways. The accessway leads to Bluff Cove which host a multiplicity of uses including viewing, surfing, fishing, sunbathing and swimming. **A third** accessway is Lunda Bay which, because of its steepness, is less heavily used

than the other two but more than the rest.

Of the 16 mapped accessways, four were on private land, zoned R-1; under the
City's plan. These accessways have been eliminated due to development of
single family residences. The Commission has previously found that these
accessways were not viable for the following reasons or a combination thereof:
safety, physical blockage of some kind preclude use of accessway, adequate
access existed nearby, and access would have jeopardized valuable marine life.

In acting on the previous Land Use Plan, the Commission found that, although
the LUP contained several general policies which were intended to maintain and
enhance public access, such as maintenance and enhancement of existing
recreation uses which included maintaining accessways, and maintaining and
preserving the <u>public</u> shoreline preserve area, the LUP was not consistent with
the access policies of the Coastal Act. It did not provide for maximum access
to the shoreline (30210) and did not contain sufficient policies for the
provision of public access from the nearest public roadway to the shoreline
subject to certain limitations (30212). In particular, the Commission found
that the following suggested modifications were necessary to bring the
document into conformance with the applicable Coastal Act policies:

A. <u>Public Access & Recreational Opportunities</u>

(1)   Public use of all existing accessways and scramble ways, including
informal access paths not included on the City maps, shall not be
impaired by the placement on trails or rocks, vegetation, or any
other substance or structure which hinders full passage.

(2)   The City shall <u>adopt a policy that supports appropriate public
actions to retain and improve</u> where feasible, the City's public park
land and accessways including the erection of signs to inform the
public of the existence and nature of the shoreline Preserve and
locations of improved public accessways to the shore, including two
or more signs each on Palos Verdes Drive West and Paseo del Mar
Channeling the majority of the public use to the accessways at Flat
Rock (bluff Cove) and Swim Club Road.

(3)   The City shall adopt as part of the land use plan, a policy that
existing on-street parking near the shore or bluffs shall not be
reduced, nor shall any use or time restrictions be placed on such
parking that would hinder or discourage public use for recreational
purposes during daytime hours.

The City has adopted the suggested modifications and have included the adopted
resolutions in the resubmitted Land Use Plan. In addition, the City has also
incorporated a previously suggested modification to the implementation plan
into a LUP policy:

City parks located within the Coastal Zone shall remain public parklands
in perpetuity.

Therefore, the Commission finds that the resubmitted the LUP is consistent
with public access policies of Sections 30210, 30211, 30212, 30212.5 and 30213
of the Coastal Act.

Page 10
Palos Verdes Estates LUP & LIP

## 4.  Recreation

Due to the topography, fragility of marine resources, long time zoning and the
residential nature of development adjacent to the shoreline, no support or
commercial recreation facilities exists.  However, none are needed because of
the limited use of the shoreline.  The Palos Verdes Estates shoreline is most
heavily used by surfers, fishermen, sightseers and to a lesser extent swimmers
and scuba divers.  The shoreline preserve and open space designations of the
publicly owned shoreline will ensure these activities will not be hindered in
any way.  The Commission therefore, finds that the re-submitted LUP is
consistent with Sections 30213, 30221, and 30223 of the Coastal Act.

## 5.  Marine Resources and Environmentally Sensitive Habitat Areas

Sections 30230, 30231 and 30240 are the relevant sections of the Coastal Act
relating to the existing marine and environmentally sensitive resource areas
of the Palos Verdes Shoreline and area within the Tidelands Preserve.  The
beach, with its tidepools and the nearby sensitive kelp, are the valuable
environmentally sensitive habitat areas (ESHAs).  The tidepools and coastal
bluffs are within the the shoreline preserve while the kelp beds are within
the Tidelands Grant.  These resources and the applicable City documents have
been noted above.  Staff recommends that these resources and their areas are
adequately protected.

Since the bluff topography and existing condition have precluded heavy use of
the shoreline, tide pools are in good condition.  Additionally, the rocky
beach and narrow shoreline preclude most persons from walking long distances.

The Commission must determine an appropriate balance between maximum access,
involving the improvement of more accessways and the posting of additional
signs indicating the existence and location of accessways to the shoreline,
and the maximum protection of the marine resources which would involve less
than maximum access.  The City policy to channel the public to the already
more heavily used accessways will only marginally affect the quality of
existing marine resources of kelp and tidepools.  Usage of the other
accessways, which are generally steep and less accessible, is not expected to
increase significantly and will therefore not disturbed the more fragile
marine and ESHAs.  Therefore, the Commission finds, that as resubmitted the
LUP is consistent with Sections 30230, 30231 and 30240 of the Coastal Act.

## 6.  Geologic Stability and Visual Resources

Section 30251 of the Coastal Act mandates the protection and enhancement of
the visual resources of the Coastal areas while Sections 30253(1) and (2)
require that risks to life and property be minimized and that new development
shall assure stability and shall neither create not contribute significantly
to geologic stability.

In acting on the previous submittal of the City's Land Use Plan the Commission
found that the City did not have specific policies prohibiting the the
erection of structures or development down the bluff face.  The Commission
found that the following suggested modification was necessary to bring the
document into conformance with the applicable Coastal Act policies:

Page 11
Palos Verdes Estates LUP & LIP

The City shall prohibit the construction on private land of buildings,
stairways, pools, tennis courts, spas, or solid fences on or down the
bluff face or within 25 feet of the bluff edge without a geologic report
and a finding that the improvement would not be visually intrusive from
public view points.

The Commission found that the coastal bluffs within the region have been
historically subject to erosion and a 25 foot setback has been required by the
Commission in other areas along the south coast, both to prevent and protect
development from erosion and prevent adverse impacts to visual resources.  The
City adopted this suggested modification refining the wording somewhat in the
resubmitted LUP.

The above policy addresses development on or within within 25 feet of the
bluff edge in relation to geologic stability and visual resources.  **However,**
the policy does not address development on bluff lots beyond the 25 foot
setback which may also be visually intrusive from public view points and
potentially geologically unstable.  Site visits to the area by commission
staff confirm that development beyond the 25 foot setback has the potential to
be visually intrusive from public view points.  In addition, all of the
private parcels within the Palos Verdes Estates coastal zone are located
between the first public road and the sea, **and,** therefore development on any
parcel has the potential of an adverse visual impact from public view points
within the coastal zone.  Furthermore, the City's Local Implementation Program
requires permits for all development within the Coastal Zone with the
exception of exempt development cited in Section 19.01.080 of the City's
municipal code.  The Local Implementation Program is more restrictive than
California Code of Regulations (Coastal Commission).  Pursuant to Section
30005(a) of the Coastal Act, the Coastal Act is not a limitation on the
ability of a local government to impose further regulations.  Therefore,
requiring coastal permits for all development within the Coastal Zone is not
in conflict with Coastal Act Policy.  Therefore, to be consistent, the Land
Use Plan must include a policy establishing the grounds for permit review in
this area, and the criteria the City will use in evaluating development in the
Coastal Zone.  Presently there is no policy in the LUP that supports the
City's implementation program to regulate all development in the Coastal Zone.

The Commission, therefore, finds that the above stated LUP policy does not
adequately protect the scenic and visual resources along the coast and insure
potential geologic stability questions are adequately addressed, as required
under Coastal Act Sections 30251 and 30253(1)&(2).  Therefore, as resubmitted
LUP is not consistent with Sections 30251 and 30253(1) and (2) of the Coastal
Act.

7.  Dredging, Filling and Shoreline Structures

Currently there are no structures such as breakwaters, jetties, piers,
marinas, in or near the shoreline.  Because of the rocky beach and steep
cliffs immediately landward, no such facilities are anticipated.  Any project
in the future would require a permit from the Commission.

8.  Agriculture

There are no agriculture within the City's Coastal Zone.

Page 12
Palos Verdes Estates LUP & LIP

9. Forestry & Soil Resources

There are none in the City's Coastal Zone.

10. Locating and Planning New Development

As noted above, the only vacant land within the coastal zone is 3 vacant lots
which are al zoned R-1, considered infilling, and subject to both zoning
ordinance and protective restrictions.  Traffic from development will not
affect access.

10. Public Works

Although existing storm drains have caused some erosion of the coastal bluffs,
this erosion has been minimal.  Thus, the economic costs of revamping and
relocating current drains would not be outweighed by the possible prevention
of further erosion.

The utility infrastructure is adequate to handle new development on existing
vacant lots and recycling under the current zoning ordinance.  The road
capacity is also adequate.  No significant new or expanded facilities are
planned.

11. Industrial and Energy Development

Both the protective restrictions and zoning ordinances preclude the above
development.  There is no need for such facilities in the City nor are there
any suitable locations for them consistent with Coastal Act Policies.  Thus,
the Policy group is not applicable to the City.


III.        APPROVAL OF THE LUP WITH SUGGESTED MODIFICATIONS

A.  Motion and Staff Recommendation

    Motion 2

    I move that the Commission certify the Palos Verdes Land Use Plan if it is
    modified in conformity with the suggestions set forth below.

    Staff Recommendation

Staff is recommending a YES vote to the following motion and the adoption of
the following resolution and findings.  An affirmative vote by a majority of
the members of the Commission is needed to pass the resolution.

Resolution to Certify the Land Use Plan if Modified

The Commission hereby certifies the Land Use Plan subject to the following
modifications and adopts the findings stated below on the grounds that, if
modified as suggested below, the Land Use Plan will meet the requirements of
and conform with the policies of Chapter 3 (commencing with Section 30200) of
the California Coastal Act to the extent necessary to achieve the basic state
goals specified in Section 30001.5 of the Coastal Act; the Land Use Plan will
contain a specific access component as required by Section 30500(a) of the

Page 13
Palos Verdes Estates LUP & LIP

Coastal Act; the Land Use Plan will be consistent with applicable decisions of the Commission that shall guide local government actions pursuant to Section 30625(c); and Section 21080.5(d)(2)(i) of the Environmental Quality Act because there are feasible alternatives or mitigation measures available which would substantially lessen any significant adverse impact which the Land Use Plan may have on the environment. The suggested modifications to the submittal are necessary to achieve the basic state goals set forth in SEction 3001.5 of the Coastal Act.

The Commission further finds that if Palos Verdes Estates adopts and transmits its revisions to the Land Use Plan in conformity with the suggested modifications, then the Executive Director shall notify the Commission.

B. Suggested Modifications to the Land Use Plan

Note: Where applicable, suggested deletions are indicated by striking out, while suggested additions are indicated by underlining.

Geologic Stability and Visual Resources

1. Modify Policy D regarding Geologic and Visual Resource as follows:

Construction on private land of buildings, including but not limited to, buildings, additions to structures, grading, stairways, pools, tennis courts, spas or solid fences in the Coastal Zone shall require a Coastal Development Permit and shall be reviewed for impacts on visual resources, public access, drainage and geologic stability.  ǿn̸/ǿf̸/dǿẃn̸/b̸l̸ǔf̸f̸/f̸ǽćé/ǿf̸/ẃi̸t̸h̸i̸n̸/Z̸5̸/f̸éét̸ ǿf̸/t̸h̸é/b̸l̸ǔf̸f̸/édǵé Buildings, including but not limited to, additions to structures, grading, stairways, pools, tennis courts, spas or solid fences on or within 50 of the bluff edge shall be prohibited without a geologic report and a finding that the improvements would minimize alteration of natural landforms and shall not be visually intrusive upon public view points.

C. Findings For Approval Of Suggested Modifications

A. Introduction

The following findings support the Commission action to approve the Palos Verdes Estates Land Use Plan. They explain how the above modifications bring the City of Palos Verdes Estates LUP into compliance with the Coastal Act. The Commission's prior more extensive findings relative to Chapter 3 Coastal Act policies for the denial of th LUP are incorporated herein by reference.

(6) Geologic Stability and Visual Resources

As resubmitted, the LUP policy regarding geologic stability and visual quality does not adequately address potential visual resource impacts of development from public view points and potential geologic stability questions, as required under Coastal Act Sections 30251 and 30253(1)&(2). As modified, the LUP policy ensures development within 50 feet of the coastal bluff edge will be analyzed to ensure that scenic and visual resources are protected and potential geologic stability questions are adequately addressed, as required under Coastal Act Sections 30251 and 30253(1)&(2). Therefore, as modified this policy is consistent with Sections 30251 and 30253(1) and (2) of the Coastal Act.

Page 14
Palos Verdes Estates LUP & LIP

## IV.    CALIFORNIA ENVIRONMENTAL QUALITY ACT (CEQA)

The Commission finds that, as modified, the City of Palos Verdes Estates LUP
is consistent with the requirements of the California Environmental Quality
Act.   The LUP policies, and the modifications to them as detailed above,
mitigate potential adverse environmental impacts from development in the Palos
Verdes Estates Coastal Zone Area.   The Commission considered alternatives to
the policies and land use designations submitted in the LUP and modified the
City's plan where necessary to ensure that the least environmentally damaging
alternatives are incorporated into the plan.

## V.    CERTIFICATION OF THE IMPLEMENTATION PROGRAM

### A.  Motion and Staff Recommendation

Motion 2:

I move that the Commission reject the implementation plan of the City of Palos
Verdes Estates Local Coastal Plan.

Staff Recommendation:

Staff recommends a YES vote which would result in the adoption of the
following resolution and findings.   An affirmative vote of a majority of the
Commissioners present is needed to pass the motion.

### RESOLUTION TO REJECT THE IMPLEMENTATION PLAN

The Commission hereby rejects the Implementation Program of the City of Palos
Verdes Estates on the grounds that the Local Implementation Program including
the the associated ordinances, zoning maps, zoning and appendixes do not
conform with or are inadequate to carry out the provisions of the Land Use
Plan mitigation measures available which would substantially lessen any
significant adverse impact which the approval of the Implementation Program
would have on the environment.

### B.      Findings For Rejection Of The Implementation Program

### 1.  Summary of Implementation Program Inconsistencies with LUP.

Section 30513 of the Coastal Act states that,

...The Commission may only reject zoning ordinances, zoning district maps,
or other implementing actions on the grounds that they do not conform
with, or are inadequate to carry out, the provisions of the certified Land
Use Plan.

The City of Palos Verdes Estates Local Implementation Program (LIP) is
inconsistent with the Land Use Plan or inadequate to carry out the policies of
the Land Use Plan in several ways that affect the entire plan area.   The LIP

Page 15
Palos Verdes Estates LUP & LIP

is lacking or inadequate in four areas:

A.  Permit Procedures

B.  Definitions of Public View Points and Emergency.

C.  LIP ordinance to implement the Geologic Stability and Visual Resource policy of the LUP

D.  Criteria or standards for the determination of a visually intrusive development.

2.  Permit Procedures

The LIP does not have any provisions or procedures for the granting of;

1) Emergency Permits

2) Permit Extensions

3) Revocation of Permit

In addition, the LIP allows for the exemption of certain kinds of development, such as some kinds of public works projects, that are not exempt under Coastal Act Section 30610.

Although the City's permit ordinance is largely consistent with the California Code of Regulations for coastal development permits, the provisions noted above are not included in the LIP. Therefore, the Commission finds that the City's permit ordinances are not consistent with the California Code of Regulations and do not adequately carry out the provisions of the certified Land Use Plan.

3.  Definitions

A.  Public View Points.- The LIP does not provide a definition of Public View Points as stated in the Geologic Stability and Visual Resource policy of the LUP.  Lack of an adequate definition of Public View Points does not adequately carry the intention of the above stated LUP Policy.

B.  Emergency.- In order to carry out the procedures and provisions of Emergency Permits, the LIP must provide a definition what constitutes an Emergency.  Therefore, because an emergency is not defined in the LIP the City's permit ordinances are not consistent with the California Code of Regulations and do not adequately carry out the provisions of the certified Land Use Plan.

4  Geologic Stability and Visual Resources

The LUP requires coastal development permits for all development within the coastal zone and prohibits all development withth in 50 feet of the bluff edge without a geology report and a finding that the improvement will not be visually intrusive upon public view points.  However, the LIP allows development on bluff lots without a geology report and a finding that the

Page 16
Palos Verdes Estates LUP & LIP

improvement would not be visually intrusive upon public view points, except for development within 25 feet of the bluff edge. Therefore, the Commission finds that the LIP does not adequately carry out the provisions of the Certified LUP.

The LIP does not provide standards or criteria that would determine if a development has minimized to the maximum extent feasible potential adverse visual impacts or visual intrusiveness. These criteria and standards are necessary to adequately carry out the provision and intent of the Certified LUP. Therefore, as submitted the Commission finds that the LIP does not adequately carry out the provisions of the Certified LUP.

VI. APPROVAL THE IMPLEMENTATION PROGRAM IF IT IS MODIFIED IN CONFORMITY WITH THE MODIFICATIONS SUGGESTED BELOW:

A. Motion and Staff Recommendation

MOTION 3:

I move that the Commission approve the Implementation Program of the City of Palos Verdes Estates Local Coastal Program if it is modified in conformity with the suggested modifications below.

STAFF RECOMMENDATION:

Staff recommends a YES vote for the adoption of the following resolution. The motion requires an affirmative vote of a majority of the Commissioners present to pass the motion.

RESOLUTION TO CERTIFY THE IMPLEMENTATION PROGRAM IF MODIFIED:

The Commission hereby approves certification of the zoning and implementation portion of the City of Palos Verdes Estates on the grounds that the Local Implementation Program, zoning ordinance, associated zoning, zoning map, and other implementing materials conform with and are adequate to carry out the provisions of the Land Use Plan as certified. There are no feasible alternatives or mitigation measures available which would substantially lessen any significant adverse impact which the approval of Zoning and Implementation Program, if modified, would have on the environment.

B. Suggested Modifications

NOTE: Modifications are listed under the City's Municipal Code Number. Additions are either referenced in exhibits or underlined and deletions are stcbred.

1. Permit Procedures

19.02.120 Extension of Permits

Add procedures for the Extension of Coastal Developement Permits as found in Exhibit 5.

Page 17
Palos Verdes Estates LUP & LIP

19.02.130  Revocation of Permits

Add procedures for Revocation of Coastal Development Permits as found in
Exhibit 6.

19.02.140  Emergency Permits

Add procedures for Emergency Permits as found in Exhibit 7.

19.01.080 Excluded Development

(A)  Any improvements to an existing structure, including replacement of a
     structure destroyed by a natural disaster, other than a major public
     works facility, which is in conformity with requirements of 30610(g)
     of the Public Resources Code, and any repairs or maintenance of an
     existing structure which do not result in an addition to, enlargement
     of, the structure, unless any of the following apply:

     (1)  There exists a risk of an adverse environmental impact or
          impacts.

     (2)  There will be an adverse impact on public access to the coast.

     (3)  The improvement, repair or maintenance constitute a change in
          use which is not in conformity with the City's certified LCP.

(B)  Any Category of development determined by the <u>Coastal Commission
     Planning Director</u> to have no potential for any significant impact on
     the environment, coastal resources or public access to the coast,
     <u>unless any of the following apply:</u>

     <u>(1)  There exists a risk of an adverse environmental impact or
          impacts.</u>

     <u>(2)  There will be an adverse impact on public access to the coast.</u>

     <u>(3)  The improvement, repair or maintenance constitute a change in
          use which is not in conformity with the City's certified LCP.</u>

(C)  The installation, testing and placing in service or the replacement
     of any necessary utility connection between an approved CDP and an
     existing service facility which conforms in all respects to the
     requirements of the City's Code and ordinances; provided, however,
     that the City may where necessary, require reasonable conditions to
     mitigate any adverse impacts on coastal resources, including but not
     limited to, scenic resources, unless any of the following apply:

     <u>(1)  There exists a risk of an adverse environmental impact or
          impacts.</u>

     <u>(2)  There will be an adverse impact on public access to the coast.</u>

Page 18
Palos Verdes Estates LUP & LIP

(3) The improvement, repair or maintenance constitute a change in
use which is not in conformity with the City's certified LCP.

(D) (a) Minor public works projects, ~~including but not limited to, the erection of buildings, the painting or renovating of street striping, installation of parking space designations, painting or renovating paint from curbs, maintenance and repair of public streets and sidewalks, installation and maintenance of landscaping, maintenance of City utilities, repair, and improvements to structures, maintained, used or owned by the City, the repair, maintenance, replacement or development of public facilities in emergency circumstances, and, construction, repair, or addition to public works, projects and energy facilities for which the cost is less than fifty thousand dollars ($50,000)~~, including those listed
in the Repair, Maintenance and Utility Hook-up Exclusions from Permit
Requirements, including Appendix I thereto, adopted by the California
Coastal Commission on September 5, 1978, which is incorporated herein
by reference, and pertaining to excluded activity with regard to
roads, public utilities and miscellaneous alterations;
(b) Maintenance and repair of public facilities in an emergency as
permitted by Section 19.02.140 of this Code.

2. Definitions

19.01.105 Emergency

An "Emergency" means a sudden, unexpected occurrence demanding immediate
action to prevent or mitigate loss or damage to life, health, property or
essential public services.

19.01.145 Public View Point

"Public View Point" means any publicly owned beach, park, bluff area or
other location in the Coastal Zone to which the public has access and from
which it can view Development in the Coastal Zone.

3. Geologic Stability and Visual Resources

18.04.160, 18.16.50, and 19.02.020 Coastal Zone Limitations On
Development in Bluffs.

Construction on private land of buildings, including but not limited to:
buildings, additions to structures, grading, stairways, pools, tennis
courts, spas or solid fences in the Coastal Zone shall require a Coastal
Development Permit and be reviewed for impacts on visual resources,
drainage and geological stability.  Structures, additions to structures,
grading, stairways, pools, tennis courts, spas or solid ~~wood~~ fences may
be constructed on private property on, or within ~~25~~ 50 feet of, the
Bluff Edge in the Coastal Zone only after preparation of a geologic report
and findings by the City that the proposed structure, addition(s) to
structure, grading, stairway, pool, tennis court, or solid ~~wood~~ fence
(1) poses no threat to the health, safety, and general welfare to persons

Page 19
Palos Verdes Estates LUP & LIP

in the area by reason of identified geologic conditions which cannot be mitigated and  (2) the proposed structure, <u>addition</u>, stairway, pool, tennis court or solid w̶o̶o̶d̶ fence will <u>minimize alteration of natural landforms and shall</u> not be visually intrusive from public view points in the Coastal Zone.  <u>(3) A structure, addition(s) to structure, grading, stairway, pool, tennis court, spa, or fence will not be considered visually intrusive if the permitted development incorporates the following to the maximum extent feasible:</u>

    <u>1)</u>   <u>There are no alternative locations for proposed development on the site which are less visually intrusive from Public View Points.</u>

    <u>2)</u>   <u>Reduction in the scale of development to conform with scale of existing adjacent development.</u>

    <u>3)</u>   <u>Use of landscaping to soften or screen development.</u>

    <u>4)</u>   <u>Use of material, colors, and/or designs which are more compatible with natural surroundings.</u>

## C.  <u>FINDINGS FOR APPROVAL OF THE IMPLEMENTATION PROGRAM IF MODIFIED</u>

As modified, the Palos Verdes Estates Proposed Local Implementation Program is consistent with the Land Use Plan and adequate to carry the policies of the Land Use Plan.  The basic structure and organization of the implementation program will adequately carry out the Land Use Plan.  As modified, the ordinance is consistent with the California Code of Regulations for coastal development permits, and has additional clear definitions and procedures for review of development on coastal bluffs.

As Modified with the additional permit procedures for the granting of permit extensions, revocations of coastal development permits, emergency permits and modification of procedures for development exempt from permit requirements, the LIP permit ordinance is consistent with the California Code of Regulations for coastal development permits.  Therefore, the permit ordinance is adequate to carry out the policies of the LUP.

The LIP, as modified, provides standards for bluff development to ensure geologic hazards are minimized and geologic stability of building sites is assured, and visual resources along the coast are protected.  As modified, the ordinance regarding geologic and visual resources is adequate to carry out the policies of the the LUP.

Therefore, as modified, the Local Implementation ordinance is consistent with the Certified Palos Verdes Estates Land Use Plan and is adequate to carry out its provisions.

1002E

CITY OF PALOS VERDES ESTATES
FIRE DEPARTMENT
OFFICIAL MAP

Coastal Zone

Coastal Zone

Boundary

EXHIBIT 1

EXHIBIT 2

Locations of Coastal Zone Boundary, Shoreline Preserve, Public Land : & Remaining Vacant Lots within Coastal Zone

LEGEND

■ PUBLIC LAND — 175 acres

▨ SHORELINE PRESERVE — 150 acres

▦ UNDEVELOPED PRIVATE PROPERTY

A-2

## BEACH ACCESS TRAILS

| Map Key | | Ownership | Bluff Height | Public Frontage Parking | Trail Difficulty | View Site |
|---|---|---|---|---|---|---|
| 1. | Torrance Beach | Public | * | | 3 | |
| 2. | Rosita Place | Private | 125 | 0 | 10 | |
| 3. | Swim Club Road | Public | 85 | 50 | 2 | X |
| 4. | "Haggarty's" | Public | 75 | 12 | 6 | |
| 5. | Via Chino | Public | 80 | 30 | 6 | |
| 6. | Flat Rock Point | Public | 175 | 40 | 4 | X |
| 7. | Bluff Cove | Public | 300 | 20+ | 6 | X |
| 8. | Margate Canyon | Public | 230 | 20+ | 8 | |
| 9. | Chiswick North | Public | 205 | 20+ | 8 | |
| 10. | Chiswick Road | Public | 200 | 20+ | 7 | |
| 11. | Cloyden Road | Private | 175 | 0 | 7 | |
| 12. | Lunada Bay | Public | 160 | 30+ | 7 | X |
| 13. | Via Oleadas | Private | 145 | 0 | 6 | |
| 14. | Resort Point South | Public | 165 | 10 | 8 | |
| 15. | Via Neve | Public | 170 | 20+ | 7 | |
| 16. | Southern Boundary | Private | * | | 10 | |

Difficulty: 1 = excellent, 10 = very poor

* Access from adjacent beaches

Source: Shoreline Preserve Plan, City of Palos Verdes Estates

A-2

EXHIBIT 3



BEACH ACCESS TRAILS

Source: City of Palos Verdes Estates, Shoreline Preserve Plan

EXHIBIT 4

SECTION D:     Amendment to Chapter 19.02 of the Municipal
               Code

(1)  The caption to Chapter 19.02 of the Municipal Code
is deleted and in its place shall be inserted the following.

"Chapter 19.02 - Exemption, Notice, Hearing, Appeal,
Extension, Revocation and Emeregency Procedures for
Coastal Development Permits"

(2)  The following Sections are added to Chapter 19.02
of the Municipal Code:

"Section 19.02.120 - Extension of Permits

(a)  No later than 45 days prior to the time that
construction must commence on a Development to which the City has
granted a Coastal Development Permit, the applicant may, upon
payment of a fee ($50 for all Developments other than
residential, $25 for all residential Development), apply to the
Planning Director of the City for an extension of time within
which to commence and/or complete construction of the
Development.  The application shall be accompanied by evidence of
a valid, unexpired Coastal Development Permit granted by the
City.

If the Planning Director determines that there are no
changed circumstances which are inconsistent with the California
Coastal Act of 1976, as amended, and Title 14 California Code of
Regulations, Section 13000, et seq., his determination of
consistency shall be conclusive and he may extend the term of the

(1)  Notice, including a summary of the procedures
set forth in this section, has been given by the
Planning Director of his determination that the
application is consistent by (i) posting said
notice at the project site and (ii) mailing said
notice to all parties the Director has reason to
know may be interested in the application,
including all parties who participated in the
initial permit hearing; and

(2)  If no written objection has been received
within ten working days of publishing the
aforedescribed notice.

(b)  In the event that the Planning Director determines
that the application for extension is not consistent, or that he
receives timely written objection, the Planning Director shall
report the application to the City Council.  If a majority of the
Council object to the extension on the grounds that it may be
inconsistent with the California Coastal Act and/or the
applicable Code of Regulations, the application shall be set for
a full hearing, pursuant to Section 19.02.060 of this Code,
before the Planning Commission as though it were a new
application for a Coastal Development Permit.  If there is not an
objection to the determination of the Planning Director by a
majority of the City Council, the Planning Director shall issue
the extension for a period not to exceed one (1) year.

EXHIBIT 5   1 OF 2

(c)  Any valid, unexpired Coastal Development Permit for which application for an extension is timely made, shall be automatically extended for the period of time during which the City is considering the requested extension; provided, however, that if construction has not commenced at the time of said application, no construction may commence until the City has made its determination on the extension.

EXHIBIT 5  2 OF 2

## Section 19.02.130 - Revocation of Permits.

(a) Scope of Article.

The provisions of this Section shall govern proceedings for revocation of a Coastal Development Permit previously granted by the City.

(b) Grounds for Revocation.

Grounds for revocation of a permit shall be:

(1) Intentional inclusion of inaccurate, erroneous or incomplete information in connection with a Coastal Development Permit application, where the City finds that accurate and complete information would have caused the City to require additional or different conditions on a permit or deny an application;

(2) Failure to comply with the notice provisions of Section 19.02.070 of this Code where the views of the person(s) not notified were not otherwise made known to the City and could have caused the City to require additional or difference conditions on a permit of deny an application.

(c) Initiation of Proceedings to Revoke.

Any person who did not have an opportunity to fully participate in the original permit proceeding by reason of the permit applicant's intentional inclusion of inaccurate information or failure to provide adequate public notice as specified in Section 19.02.070 may request revocation of a permit by application to the Planning Director of the City, specifying, with particularity, the grounds for revocation. The Planning Director shall review the stated grounds for revocation and, unless the request is patently frivolous and without merit, shall intitiate revocation proceedings. The Planning Director may initiate revocation proceedings on his or her own motion when the grounds for revocation have been established pursuant to the provisions of Sub-Section (b), above.

EXHIBIT 6

Section 19.02.140 - Emergency Permits.

The following procedures shall apply to the issuance of
a Coastal Development Permit in the event of an Emergency as
defined in Section 19.01.105 of Chapter 19.01 of this Code.

(a)  Applications.

(1) Applications in case of Emergency shall be
made by letter to the Planning Director or in person or
by telephone, if time does not allow a written request.

(2)  The  following  information  should  be
included in the request:

(i)      Nature of the Emergency;

(ii)     Cause of the Emergency, insofar as
this can be established;

(iii)    Location of the Emergency;

(iv)     The   remedial,   protective,   or
preventive  work  required  to  deal  with  the
Emergency; and

(v)      The   circumstance   during   the
Emergency  that  appeared  to  justify  the
cause(s)  of  action  taken,  including  the
probabe  consequences  of  failing  to  take
action.

(b)      Criteria for Granting Permit.

(a)  The Planning Director shall provide public
notice of the Emergency work, with the extent and type
of notice determined by the Planning Director on the
basis of the nature of Emergency.

(b)  The Planning Director may grant an Emergency
permit upon reasonable terms and conditions, including
an expiration date and the necessity for a regular
permit application later, if the Planning Director finds
that:

(i)      An Emergency exists that requires
action  more  quickly  than  permitted  by  the
procedures  for  administrative  permits  or  for
regular permits administered pursuant to this Code,
and the work can and will be completed within 30
days unless otherwise specified by the terms of the
permit.

(ii)     Public  comment  on  the  proposed
Emergency action has been reviewed, if time allows;
and

EXHIBIT 7 1 OF 2

(iii)    The    work    proposed    would    be consistent with the Certified Land Use Plan portion of the LCP.

(3)   The Planning Director shall not issue an Emergency permit for any work that falls within the provisions of Public Resources Code Sections 30519(b) which requires review by the California Coastal Commision.

(c)  Report  to  the  Governing  Body  of  the  Local Government and to the Coastal Commission.

(1) The Planning Director shall report, in writing, to the City Council at its first scheduled meeting after the Emergency permit has been issued, the nature of the Emergency and the work involved. Copies of this report shall be available at the meeting and shall be mailed to all persons who have requested such notification in writing.

(2) The report of the Planning Director shall be informational only; the decision to issue an emergency permit is solely at the discretion of the Planning Director subject to the provisions of this Section."

[Appropriate closing sections for an Ordinance ar being inserted.]

EXHIBIT 7   2 OF 2

LAW OFFICES
BURKE, WILLIAMS & SORENSEN
2310 PONDEROSA DRIVE
SUITE I
CAMARILLO, CALIFORNIA 93010
(805) 987-3468
TELECOPIER: (805) 482-9834

ORANGE COUNTY OFFICE
3800 BRISTOL STREET
SUITE 640
COSTA MESA, CALIFORNIA 92626
(714) 545-5559

LOS ANGELES OFFICE
611 WEST SIXTH STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017
(213) 236-0600



RECEIVED

MAR 11 1991

CALIFORNIA
COASTAL COMMISSION
SOUTH COAST DISTRICT

March 8, 1991

Direct Line:        805-987-3468
File Number:        00282-114

John Ainsworth, Coastal Program Analyst
California Coastal Commission - South
    Coast District
P. O. Box 1450
245 Broadway, Suite 380
Long Beach, California 90802-4458

Re:  Palos Verdes Estates Local Coastal Plan; City
     Council Action; Coastal Commission Agenda

Dear Jack,

The Planning Commission and City Council have acted
on the requisite resolution and ordinances related to
establishing a Local Coastal Plan for the City.  Under cover
of this letter are certified copies of the three documents
enacted by the City:

1.    Planning Commission Resolution PCR 91-01
recommending the ordinances to the City Council;

2.    City Council Ordinance No. 091-525 amending
the General Plan and adding to the Municipal Code
to include the Coastal Zone Overlay;

3.    City Council Ordinance No. 091-526 making the
required findings regarding activities permitted in
the Coastal Zone and amending the Municipal Code to
add notice, hearing and appeal procedures for
Coastal Zone permits and to amend the open space
zone to include certain limitations on construction
within the Coastal Zone.

EXHIBIT 8

Palos Verdes Estates  – Ainsworth
March 8, 1991
Page 2

If you need any additional materials related to this matter, please call Tim D'Zmura or me.

We respectfully request that you place the matter of the Palos Verde Estates Coastal Plan on the agenda for Coastal Commission hearing in April of 1991.

Tim D'Zmura and I will make ourselves available to meet with you prior to the Commission hearing at a time convenient to you.  I believe you indicated that such a meeting would be necessary in order to respond to any questions or comments you may have and to coordinate our presentation before the Commission.

I look forward to hearing from you in the near future regarding these matter.

Cordially,

Mary Redus Gayle
of BURKE, WILLIAMS & SORENSEN

MRG:lvc
Enclosures

cc:   James Hendrickson
      Tim D'Zmura
      Cathy Reed
      C. Douglas Holland, Esq.

ORDINANCE NO. O91-525

AN ORDINANCE OF THE CITY COUNCIL OF THE CITY
OF PALOS VERDES ESTATES AMENDING THE GENERAL
PLAN TO ADD A COASTAL OVERLAY DESIGNATION AND
AMENDING THE MUNICIPAL CODE OF THE CITY OF
PALOS VERDES ESTATES, CALIFORNIA, BY ADDING
CHAPTER 18.37 TO TITLE 18 RELATIVE TO THE
ESTABLISHMENT OF A COASTAL ZONE OVERLAY ZONE.

WHEREAS, the California Coastal Commission is
anticipated to make its certification of the proposed Palos
Verdes Estates Local Coastal Program ("LCP") contingent upon
certain amendments to the City's General Plan to establish a
Coastal Zone Overlay and to the Zoning Ordinance applying certain
special requirements for property lying in the Coastal Zone
Overlay Zone; and

WHEREAS, on January 15, 1991, the City of Palos Verdes
Estates Planning Commission held public hearings on a proposed
resolution to amend the General Plan to add a Coastal Zone
Overlay and a proposed ordinance to amend the Municipal Code to
add a Coastal Zone Overlay Zone and adopted Resolution No. PCR
91-01 recommending to the City Council that it certify the
Negative Declaration and adopt the appropriate ordinances to so
amend the General Plan and the Municipal Code;

WHEREAS, the City Council of the City of Palos Verdes
Estates has adopted Resolution R91-09 certifying the Negative
Declaration and Ordinance O91-526 of even date herewith amending
its Municipal Code to add procedures and definitions for notice,
hearing and appeal of projects within the Coastal Zone, amending
the Open Space Zone and adding certain building restrictions in
the Coastal Zone; and

NOW THEREFORE, the City Council of the City of Palos
Verdes Estates DOES ORDAIN as follows:

SECTION ONE. The General Plan of the City of Palos Verdes
Estates is hereby amended to add a Coastal Overlay Designation in
those areas shown on Exhibit "A" attached hereto and incorporated
herein in the area within the Coastal Zone as defined in Title
19, Chapter 19.01, §19.01.060 of the Municipal Code.

SECTION TWO. The Code of the City of Palos Verdes Estates is
hereby amended by adding Chapter 18.37 "Coastal Zone Overlay
Zone" to Title 18, which shall apply to all applications for a
Coastal Development Permit in the Coastal Zone Overlay, and which
shall read as follows:

CHAPTER 18.37

CZ-O COASTAL ZONE OVERLAY ZONE

Section 18.37.010 Purpose.

The CZ-O Coastal Zone Overlay Zone and its application
is for the purpose of protecting the public health, safety and
general welfare by:

I hereby certify that the foregoing document is a full, true and
correct copy of_____
on file in the office of the City Clerk of the City of Palos
Verdes Estates.

                                              CITY CLERK
                            by:_____
                                              DEPUTY

Ordinance O91-525

A.  Protecting  the  coastal  bluffs  as  a  natural
resource;

B.  Assuring  that  the  bluff  can  support  proposed
Development (as defined in Title 19, Chapter 19.01, §19.01.070);

C.  Protecting parklands within the Coastal Zone for
park purposes.

Section 18.37.020 Application.

The  Coastal  Zone  Overlay  Zone  ("CZ-O")  shall  be
superimposed  over  the  zoning  designation  of  lands  within  the
Coastal Zone as defined in Title 19, Chapter 19.01, §19.01.060 of
this Code.  The official zoning map shall be amended to apply the
Coastal Zone Overlay to all areas of the City which are included
in said Overlay and shall indicate the designation "CZ-O" after
the  zoning  designation  of  the  district  over  which  it  is
superimposed and the regulations of the CZ-O zone shall apply in
addition  to  the  regulations  of  the  underlying  zoning  of  the
district.

Section 18.37.030 Uses Permitted.

A.  Except as prohibited by this section, real property
in the CZ-O zone may be used for any use permitted in the zone
over which the CZ-O zone designation is superimposed.

B.  City parklands in the CZ-O zone may be used only
for public park purposes.

C.  No building, stairway, pool, tennis court, spa or
solid fence shall be constructed on, or down the face of any
bluff on private land or within 25 feet of such bluff's edge
without meeting the requirements of Title 19, Chapter 19.02,
§19.02.02.D of this Code ("Precise Plan Approval").

Section 18.37.040 Precise Plan Procedure.

A.  Applicant.  The applicant for Precise Plan Approval
shall be those persons designated in Title 19, Chapter 19.02,
§19.02.030 of this Code.

B.  Application.  The application for Precise Plan
Approval shall include the following information and documents
required by Title 19, Chapter 19.02, §19.02.030 of this Code.

C.  Application fee.  The application shall be
accompanied by the payment of a filing fee, as established by
resolution of the City Council.

D.  Findings for Precise Plan Approval.  No precise
plan shall be recommended for approval or approved except upon
the affirmative findings that:

(1)  The Precise Plan complies with the requirements of
this article;

(2)  The proposed use is consistent with the General
Plan, the LCP, Title 19 of this Code, all zoning
regulations  for  the  underlying  zone,  and  any
applicable specific plan.

Ordinance 091-525

     E.   Conditions of Precise Plan Approval. Precise approval may be recommended and granted upon conditions that are necessary and reasonable to insure that the proposed use will be designed, located, developed and maintained in accordance with the findings required by this article, Title 19 of this Code, the LCP and any applicable specific plan.

     F.   Procedures for notice and hearing of Precise Plan Approval by City shall be those procedures set forth in Title 19, Chapter 19.02, §19.02.070 of this Code.

SECTION THREE.  If any section, subsection, sentence, clause, phrase, part or portion of this Ordinance is for any reason held to be invalid or unconstitutional by any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance. The City Council declares it would have adopted this Ordinance and each section, subsection, sentence, clause, phrase, part or portion thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses, phrases, parts or portions be declared invalid or unconstitutional.

SECTION FOUR.  The Mayor shall sign and the City Clerk shall certify to the passage and adoption of this Ordinance. The City Clerk shall make a minute of the passage and adoption thereof in the records of the proceedings of the City Council in the minutes of the meeting, at which the same is passed and adopted and shall cause the same to be posted once in three (3) conspicuous public places within the corporate limits of the City within the time and manner as prescribed by law.  This Ordinance shall take effect and be in full force and effect upon the later of (1) thirty (30) days after adoption thereof or (2) certification of the LCP by the California Coastal Commission.

     PASSED, APPROVED AND ADOPTED this 26th day of February, 1991.

                             JAMES R. NYMAN, MAYOR

ATTEST:

BARBARA CULVER, CITY CLERK

APPROVED AS TO FORM:

MARY REOUS GATES, ACTING CITY ATTORNEY

Ordinance O91-525

```
STATE OF CALIFORNIA      )
COUNTY OF LOS ANGELES    )   ss.
CITY OF PALOS VERDES ESTATES )
```

I, **BARBARA** CULVER, City Clerk of the City of PALOS VERDES ESTATES, do hereby certify that the foregoing Ordinance O-91-525 was regularly introduced and placed upon its first reading at a regular meeting of the City Council on February 12, 1991. That thereafter, said Ordinance was duly adopted and passed upon the motion of Councilmember ___Ruth Gralow___ and the second ·of Councilmember ___Mattingly___, at a regular meeting of the City Council on the 26th day of February, 1991, by the following vote, to wit:

| | |
|---|---|
| AYES: | Mayor Nyman, Councilmembers Mattingly, Gralow, Moody, Humphrey |
| NOES: | None. |
| ABSTAIN: | None. |
| ABSENT: | None. |

Dated: February ___, 1991

BARBARA CULVER, CITY CLERK

ORDINANCE NO. 091-526

AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF PALOS
VERDES ESTATES, CALIFORNIA, MAKING CERTAIN FINDINGS
REGARDING PERMITTED ACTIVITIES IN THE COASTAL ZONE WHICH
LIES WITHIN THE CITY OF PALOS VERDES ESTATES; AMENDING
THE MUNICIPAL CODE OF THE CITY OF PALOS VERDES ESTATES,
CALIFORNIA, BY ADDING CHAPTER 19.01 AND 19.02 RELATIVE
TO DEFINITIONS AND PROCEDURES FOR NOTICE, HEARING AND
APPEAL OF DEVELOPMENT PROJECTS IN THE COASTAL ZONE; AND
AMENDING THE R-1 ZONING ORDINANCE, CHAPTER 18.04 OF THE
MUNICIPAL CODE, TO ADD §18.04.160 AND AMENDING THE OPEN
SPACE ZONING ORDINANCE, CHAPTER 18.16 OF THE MUNICIPAL
CODE TO ADD §18.16.050, ALL PERTAINING TO LIMITATIONS
WHICH PROHIBIT CONSTRUCTION OF CERTAIN IMPROVEMENTS ON,
OR DOWN THE BLUFF AND WITHIN TWENTY-FIVE (25) FEET OF
THE BLUFF EDGE **IN THE** COASTAL ZONE UNDER CERTAIN
CIRCUMSTANCES

WHEREAS, the City of Palos Verdes Estates (hereinafter,
"City") has adopted a Local Coastal Plan (the "LCP") pursuant to
the California Coastal Act, commencing with Public Resources
§30000, and is required by Title 14 of the California Code of
Administrative Regulations, §13565, 13568, et seq., to adopt
notice, hearing and appeals procedures in accordance with the
minimum standards as set forth therein; and

WHEREAS, the California Coastal Commission is expected
to certify the LCP pursuant to the authority granted it by Public
Resources Code §§30501, 30513, 30610 and 21080.5 and in
conformity with the requirements of Title 14 of the California
Code of Adminsitrative Regulations §13542; and

WHEREAS, the City anticipates that it will be required
by the Coastal Commission, pursuant to Public Resources Code
§30600.5, to adopt procedures for processing a coastal
development permit (a "CDP") in conformity with, and adequate to
implement, the Coastal Commission's regulations on post-
certification permit appeals; and

WHEREAS, the City is required by its LCP to keep all
City land lying within that portion of the Open Space Zone which
is within the Coastal Zone in permanent public park land; **and**

WHEREAS, the City is required by its LCP to prohibit
construction on private land of buildings, stairways, pools,
tennis courts, spas and solid wood fencing on or down the bluff
or within twenty-five (25) feet of the bluff edge without a
geologic report and to make a finding that the construction would
not be visually intrusive from the public view points in the
Coastal Zone; and

WHEREAS, the City is required by its LCP to permit
recreational use, including picnicking, in the City's public
parks which lie within the Coastal Zone; and

WHEREAS, the "Planning Commission" of the City held a
duly noticed public hearing on Ordinance 091-526, on January 15,
1991, at which time all interested parties were given an
opportunity to be heard and present evidence; and

I hereby certify that the foregoing document is a full, true and
correct copy of_____
on file in the office of the City Clerk of the City of Palos
Verdes Estates.

CITY CLERK

by:_____

DEPUTY

O-PVE-CC5                    Page 1 of 15

CITY COUNCIL ORDINANCE O91-525

WHEREAS, the Planning Commission has recommended that the City Council certify the negative declaration for this matter and approve Ordinance O-91-526; and

WHEREAS, the City Council held a public hearing on Ordinance O91-526, on February 12, 1991, at which time all interested parties were given an opportunity to be heard and present evidence; **and**

NOW, THEREFORE, the City Council does hereby ordain as follows:

SECTION A. __FINDINGS__

1. The City Council has reviewed its adopted General Plan, LCP and zoning ordinances and finds that the code amendments contained within this Ordinance O-91-526 will have no significant impact on the environment and that this Ordinance O-91-526 is consistent with the Negative Declaration previously certified (Resolution R91-09) by the City Council on this date.

2. The City Council has reviewed the LCP, the General Plan and the zoning ordinances of the City and finds that the code amendments contained in this Ordinance O91-09 are consistent with the City's adopted LCP, General Plan and zoning ordinances, as amended by Ordinance O-91-525 which has been adopted simultaneously with this Ordinance.

3. The City Council has reviewed Ordinance No. 362 adopted on November 24, 1981 and finds that, pursuant to that Ordinance, picnicking is permitted in all parklands located within the Coastal Zone.

SECTION B. __AN AMENDMENT TO TITLE 19 TO ADD CHAPTERS 19.01 and 19.02 TO THE MUNICIPAL CODE TO PROVIDE PROCEDURES FOR NOTICE, HEARING AND APPEAL OF COASTAL DEVELOPMENT PERMITS, AS FOLLOWS:__

The City Council hereby amends the Municipal Code of the City (hereinafter, the "Code") by adding Chapter 19.01, Sections 19.01.010 through 19.01.160 and Chapter 19.02, Sections 19.02.010 through 19.02.110 to Title 19 to the Code, to read as follows:

__Chapter 19.01 - Definitions__

For purposes of this Title 19, and unless the context otherwise requires, the following definitions shall govern Title 19 of this Code:

SECTION 19.01.010 __Aggrieved Person.__ An "Aggrieved Person" shall be any person, including the applicant, who:

(A) testified personally, or through a representative, or submitted written testimony at a hearing on an application for an Appealable Coastal Development Permit (as hereinafter defined); or

(B) who by other appropriate means prior to the hearing informed the City of the nature of his or her concerns; or

CITY COUNCIL ORDINANCE 091-525

(C) for good cause was unable to do either of the acts required by Subparagraph 1 or 2, above; or

(D) submitted written testimony at least twenty-four (24) hours prior to such a hearing, if no appearance is made by that person at said public hearing, and requested that that testimony be made a part of the public record for such hearing, **or,**

(E) when no hearing is required, informed the Director of Planning, either in writing or personally, of an interest in the subject of an Appealable Coastal Development Permit at least five (5) days prior to the date upon which action is taken upon an Appealable Coastal Development Permit.

SECTION 19.01.020   Appealable Coastal Development and Grounds for Appeal.

(A) Any action taken by the City to approve a CDP within the Coastal Zone which meets the criteria of Sections (a) through (d), below, shall be an Appealable Coastal Development (hereinafter, an "ACDP") and may be appealed to the Coastal Commission only after exhaustion of all City appeal remedies, **if any:**

(1) An approval by the City for a Development (as hereinafter defined) which  (i) lies between the sea and the first public road paralleling the sea; or  (ii) within three hundred (300) feet of the inland extent of any beach, or of the mean high tide line of the sea where there is no beach, whichever is the greater distance.

(2) An approval by the City for a Development and not included in subsection (a), above, but which is located on tidelands, submerged lands, public trust lands; or, within one hundred (100) feet of any wetland, estuary or stream; or within three hundred (300) feet of the top of the seaward face of any coastal bluff (as hereinafter defined).

(3) An approval by the City for a Development which is not included in subsection (a) and (b), above, but which is located in a sensitive Coastal resource area.

(4) Any Development approved by the City for any major public works project and any major energy facility for which the estimated cost is greater than Fifty Thousand Dollars ($50,000).

(B) The "Grounds for Appeal" shall be limited to one or more of the following allegations:

(1) For Developments described in subparagraph (A)(1), above:

(a)    The Development interferes with, or fails to provide adequate physical access to a public or private commercial use.

O-PVE-CC5                      Page 3 of 15

(b)     The Development fails to protect
public views from any public road or from a
recreational·area to, and along the ·Coast.

(c)     The Development is not compatible with
the established physical scale of the area.

(d)     The Development may significantly
alter existing natural landforms.

(e)     The Development does not comply with
shoreline erosion and geologic setback
requirements.

(f)     The Development does not comply with
the public access and public recreational
policies and requirements of the California
Coastal Act, as contained in Chapter 3,
commencing with §30200, of the California
Public Resources Code.

(2) For all Developments described in subparagraphs
(A)(2) through (A)(4), above, an allegation that
the Development does not conform with the City's
certified ·LCP.

SECTION 19.01.030   <u>Bluff</u>.   A "Bluff" is any scarp or
steep face of rock, decomposed rock, sediment or soil resulting
from erosion, faulting, folding or excavation of the land mass.
A Bluff may be a simple planar, a curved surface or a steplike
section.  For purposes of this Chapter, Bluff is limited to those
features having vertical relief of ten (10) feet or more.

SECTION 19.01.040   <u>Bluff Edge</u>.   A "Bluff Edge" is the
upper termination of a Bluff.  When the top edge of a Bluff is
rounded away from the face of the Bluff as a result of erosion
related to the presence of a steep Bluff face, the edge shall be
defined as that point nearest the Bluff beyond which the downward
gradient of the surface increases more or less continuously until
it reaches the general gradient of the Bluff below such
rounding.  In a case where the Bluff contains a series of
steplike features at the top of the Bluff face, the Bluff Edge
shall be the edge of the topmost riser on the Bluff.

SECTION 19.01.050   <u>Coastal Development Permit</u>.
"Coastal Development Permit" means a permit for any development
within the Coastal Zone which is required pursuant to Public
Resources Code §30600(a).

SECTION 19.01.060   <u>Coastal Zone</u>.   The "Coastal Zone"
is that land and water area of the City as described and shown on
the maps required and identified in the Coastal Act of 1976, as
amended, by §30103 of the Public Resources Code §30000.

SECTION 19.01.070   <u>Development</u>.

Whether lying on land outside of the water, or in or
under water, each of the following shall be a "Development"· for
purposes of this Chapter:

(A) The placement or erecting of any solid material or
structure.

(B)  The discharge or disposal of any dredged material or any gaseous, liquid, solid or thermal waste.

(C)  Grading, removing, dredging, mining or extraction of any materials.

(D)  A change in density or intensity of the use of any land, including but not limited to  (a) any subdivision created pursuant to the Subdivision Map Act commencing with Government Code §66410,  (b) any other division of land, including lot splits; provided, however, that where a land division is brought in connection with the purchase of said land by a public agency for public recreational use, such division shall not constitute a "Development" for purposes of this Chapter.

(E)  Any change in the intensity of the use of water, or access thereto.

(F)  Construction, reconstruction, demolition or any alteration of the size of any structure, including but not limited to any private, public or municipal utility.

(G)  The removal or harvesting of major vegetation other than for agricultural purposes.

SECTION 19.01.080   Development, Excluded   An "Excluded Development" shall mean

(A)  Any improvements to an existing structure, including replacement of a structure destroyed by a natural disaster, other than a major public works facility, which is in conformity with requirements of §30610(g) of the Public Resources Code, and any repairs or maintenance of an existing structure which do not result in an addition to, or enlargement of, the structure, unless any of the following apply:

(1)  There exists a risk of an adverse environmental impact or impacts.

(2)  There will be an adverse impact on public access to the Coast.

(3)  The improvement, repair or maintenance constitutes a change in use which is not in conformity with the City's certified LCP.

(B)  Any category of Development determined by the Coastal Commission to have no potential for any significant impact on the environment, Coastal resources or public access to the Coast.

(C)  The installation, testing and placing in service, or the replacement of any necessary utility connection between an approved CDP and an existing service facility which conforms in all respects to the requirements of the City's Code and ordinances; provided, however, that the City may where necessary, require reasonable conditions to mitigate any adverse impacts or coastal resources, including but not limited to, scenic resources.

(D)  Minor public works projects, including but not
limited to, the erection of public signs; the painting
or removing of street striping; installation of parking
space designations; painting or removing paint from
curbs; maintenance and repair of public streets and
sidewalks; installation and maintenance of landscaping;
maintenance of City utilities; repair and improvements
to structures maintained, used or owned by the City; the
repair, maintenance, replacement or development of
public facilities in emergency circumstances; and,
construction, repair, or addition to public works
projects and energy facilities **for which the** cost is
less than Fifty Thousand Dollars ($50,000).

SECTION 19.01.090   Development, Non-Appealable.   A
"Non-Appealable Development" shall be any Development in the
Coastal Zone which is not an Appealable Development or an
Excluded Development.

SECTION 19.01.100   Disaster.   "Disaster" means any
situation in which the force/or forces which destroyed the
structure to be replaced was (were) beyond the control of its
owners.

SECTION 19.01.110   Final Decision.   A decision made by
the City to approve a CDP, whether after hearing by the City's
Planning Commission, City Council or a Hearing Officer (as
hereinafter defined) for any application seeking approval to
construct, erect or install a Development, which is other than an
Excluded Development, and for which all (1) required findings
supporting the legal conclusion that the proposed Development is,
or is not, in conformity with the City's certified LCP and the
public access and recreation policies of Chapter 3 of the Coastal
Act, commencing with §30200 of the Public Resources Code, **and**
(2) for which all rights of appeal to the City, if any, have been
exhausted.

SECTION 19.01.120   Hearing Officer.   The "Hearing
Officer" for Developments which are heard by other than the
Planning Commission and/or the City Council shall be the Director
of Planning or his or her designee.

SECTION 19.01.130   Open Space.   "Open Space" shall
mean land in the Coastal Zone which is designated on the zoning
map, pursuant to Chapter 18.16, as an Open Space (OS) Zone.

SECTION 19.01.140   Parks.   A "Park" for purposes of
this Chapter shall have the same meaning as that set forth in
Chapter 12.24, Section 12.24.010.A of this Code; i.e., any
grounds, avenues, parkways and areas under the control,
management and direction of the City.

SECTION 19.01.150   Public Works Project.   A "Public
Works Project" for purposes of this Chapter shall mean any action
undertaken by the City or by any other governmental entity to
construct or alter any public structure, utility right-of-way,
including but not limited to, improvement of public streets and
development of public utilities.

SECTION 19.01.160   Structure.   "Structure" as used in
this Chapter shall include, but shall not be limited to, any
building, road, pipe, pipeline, flume, conduit, siphon, aqueduct,
telephone line or electrical power transmission and distribution

CITY COUNCIL ORDINANCE 091-525

line provided, however, that for purposes of the replacement of a
Structure destroyed by a Disaster, "Structure" shall also include
landscaping and erosion control devices.

### Chapter 19.02 – Notice, Hearing and Appeal Procedures for Coastal Development Permits

#### Section 19.02.010 – Purpose

The following shall be the procedures for notice and
hearing for, and appeal of any final decision on, an application
for any proposed development in the Coastal Zone which requires a
Coastal Development Permit and which is consistent with the
City's certified LCP, the City's General Plan and zoning
ordinances and State law.  The purpose of this Chapter 19.02 is
to protect the public health, safety and general welfare by:

A.  Protecting the coastal Bluffs and the marine
environment as delicate natural resources;

B.  Protecting undeveloped natural land in open space
available for visual and physical enjoyment by the public;

C.  Assuring that the coastal Bluffs can support
proposed private development; and

D.  Preserving parklands within the Coastal Zone for
public park use.

#### Section 19.02.020 – Permitted Use

A.  Except as prohibited by this Section, real property
in the Coastal Zone may be used for any purpose which is
permitted by the City zoning code and which is consistent with
the City's LCP.

B.  Parks in the Coastal Zone may be used only for the
purposes set forth in Chapter 12.24 of this Code, as amended by
Ordinance No. 362.

C.  Open Space in the Coastal Zone may be used only for
the purposes set forth in Chapter 18.16 of this Code.

D.  Structures, stairways, pools, tennis courts, spas
or solid wood fences may be constructed on private property on,
or within 25 feet of, the Bluff Edge only after preparation of a
geologic report and findings by the City that the proposed
structure, stairway, pool, tennis court, spa and/or solid wood
fence (1) poses no threat to the health, safety and general
welfare of persons in the area by reason of identified geologic
conditions which cannot be mitigated and (2) the proposed
structure, stairway, pool, tennis court, spa and/or solid wood
fence will not be visually intrusive from public view points in
the Coastal Zone.

#### Section 19.02.030 – Applicant for a Coastal Development Permit

An application for a CDP shall be accepted only from the
owner of record of the real property on which the proposed
Development will occur, or the authorized agent of said owner, or
the Developer of the proposed Development.  An application for a
CDP which is made by a person other than the property owner shall

O-PVE-CC5                    Page 7 of 15

CITY COUNCIL ORDINANCE 091-525

be signed by both the applicant and the property owner.  Each application shall include the following information and documents in addition to any other information or documents which would otherwise be required by the City for the same type of Development were it to lie outside of the Coastal Zone:

A.   A site plan, drawn to scale, showing the location and proposed use of each existing Structure to remain, each new Structure which is proposed to be built and the relationship of all remaining and proposed Structures to the Bluff and to public view points.

B.   A plan showing elevations for each existing Structure which is proposed to remain on the property and for each proposed new Structure in relationship to the elevation of the Bluff and public view points; elevations shall indicate the height of all Structures shown, the structural features proposed, types of materials of construction and the contours of the Bluff.

C.   Engineering and geology reports which consider, describe and analyze the following:

1.   Cliff geometry and site topography, extending the survey work beyond the site of the proposed Development as needed to depict any unusual geomorphic conditions which might affect the site; and

2.   Historic, current and foreseeable cliff erosion, including but not limited to, investigation of recorded land surveys and tax assessment records, the use of historic maps and photographs where available, and possible changes in shore configuration and sand transport; and

3.   Geologic conditions, including but not limited to, soil, sediment and rock types and characteristics and structural features such as bedding, joints and faults; and

4.   Evidence of past or potential landslide conditions, the implications of such conditions for the proposed Development, and the potential effects of the Development on landslide activity; **and**

5.   The impact of the proposed construction activity on the stability of the site and adjacent area; and

6.   The potential for erosion of the site **and** mitigation measures to be used to ensure minimized erosion problems during and after construction, including but not limited to plans for landscaping and drainage design.

7.   The effects of, and the potential for, marine erosion on seacliffs; and

8.   The potential effects of seismic forces resulting from a maximum credible earthquake; and

9.   Analysis of any other factors which might affect slope stability; and

CITY COUNCIL ORDINANCE O91-525

10. An evaluation of (a) existing on and off-site
conditions which, when the proposed Development is
completed, could result in geologic instability on off-
site facilities, including but not limited to, roads,
public pedestrian and bicycle accessways, and (b) the
additional impacts which could occur due to the
Development, including but not limited to, increased
erosion along a footpath, erosion of roads, buildings
and bikeways.

11. A detailed report including mitigation measures for
any potential impacts and including alternative
solutions and appropriate measures for monitoring those
mitigations as required and consistent with Public
Resources Code §21081.6. The report shall contain the
professional opinion of a California certified civil
engineer and a California certified geologist as to
whether the Development can be designed so that it will
neither be subject nor contribute to significant
geologic instability on-site and off-site through the
lifespan of the proposed Development. The report shall
use a currently acceptable engineering stability
analysis method and shall also describe the degree of
uncertainty of analytical results predicated on
assumptions and unknowns. The degree of analysis
required shall be that degree appropriate to the degree
of potential risk presented by the site and the proposed
Development.

12. If the City so requires, in the City's sole
discretion, a waiver of, and a hold harmless from the
applicant, including both the Developer and the property
owner and their successors and assigns, for any and all
claims against the City, the County, the State and other
public agencies involved in the Development, for future
liability or damage resulting from the CDP and the
Development when completed. All such waivers and hold
harmless clauses shall be recorded with the Office of
the County Recorder for the County of Los Angeles.

13. Other information and requirements as the Director
of Planning and the City Engineer, in their sole
discretion, may deem necessary to processing the
application.

Section 19.02.040 Findings for Approval

A. A CDP shall be approved by the City Council only
upon affirmative findings that:

1. The plans for the proposed Development and the CDP
comply with all of the requirements of this Ordinance
and other relevant City ordinances and development
standards; and

CITY COUNCIL ORDINANCE 091-525

2.    The proposed use is consistent with the certified LCP, the General Plan, any applicable specific plan, and the applicable zoning ordinance or ordinances; and

3.    The proposed use will not be visually intrusive from public view points; **and**

4.    The required reports and plans demonstrate to the satisfaction of the City, in its sole discretion, that the proposed use can be supported by the Bluff and that the proponent has demonstrated that proposed use will not increase any existing geologic hazards; and

5.    The proposed Development, **when** located between the sea and the first public road inland from the sea, is in conformance with the public access and recreation policies of the California Coastal Act as contained in Chapter 3, §30200 through 30224 of the California Public Resources Code, the applicable sections of the California Administrative Code and the LCP; and

B.    Approval may be recommended and/or granted upon conditions that are necessary and reasonable to ensure that the proposed use will be designed, located, developed and maintained in accordance with the findings required by this Section, the LCP, the General Plan, any applicable specific plan and the applicable zoning ordinance or ordinances.

### SECTION 19.02.050 - Action by the Planning Commission

All applications for a CDP shall be referred to the Planning Commission for public hearing and a written report to be submitted to the City Council, with the Planning Commission's recommendation to approve or deny the application, or any portions thereof, within seven (7) calendar days after the Planning Commission completes its hearing on the application and approves the written report.

### SECTION 19.02.060 - Action by the City Council

At the second regular City Council meeting following the action taken by the Planning Commission to approve its written report, the recommendations of the Planning Commission shall be deemed filed with the City Council. Within thirty (30) calendar days thereafter, the City Council shall hold a public hearing on the application.

### SECTION 19.02.070 - Notice of Hearing by Planning Commission and/or the City Council and/or Hearing Officer

The provisions of this Section shall constitute the minimum notice requirements for any application for a Coastal Development Permit, whether appealable or non-appealable.

A.    Excluded Developments Exempt From Notice Requirements.  Applications for Excluded Developments shall not be subject to the requirements for notice and hearing otherwise required by this Chapter.

B.    Notice for Appealable Developments, Non-Appealble Developments with Hearing and Non-Appealable Developments without Hearing.  At least fifteen (15) calendar days prior to any

CITY COUNCIL ORDINANCE O91-525

required public hearing by the Planning Commission or the City Council on an application for an appealable or non-appealable CDP, the City shall provide notice by first class mail, postage prepaid, of the pending application.  The notice prior to hearing shall be provided to:

> 1.    All persons who have supplied self-addressed, stamped envelopes for receipt of notice (a) regarding the property upon which the CDP is sought, or (b) for all decisions regarding the Coastal Zone which lies within the City; and

> 2.    All property owners within three hundred (300) feet and all tenants within one hundred (100) feet of the perimeter of the property upon which the CDP is sought; and

> 3.    The California Coastal Commission.

Additionally, notice shall be published in a newspaper of general circulation at least fifteen (15) calendar days prior to a public hearing required by this Chapter.

C.    <u>Contents of the Notice</u>.  The notice of hearing shall contain the following information:

> 1.    A statement that the Development is within the Coastal Zone; and

> 2.    The name and address of the applicant and the date upon which the application was filed with the City; and

> 3.    The case number assigned to the application; and

> 4.    A description of the property upon which the application is sought, including any proposed or existing tract number, the nearest cross streets, the name of the street on which the project is proposed with a street number if existent and an assessor's parcel number or numbers, if known; **and**

> 5.    The date, time and place upon which the application will be heard or otherwise acted upon by the Planning Commission or City Council; and

> 6.    A brief description of  (i) the rights of the recipient to present testimony, written or oral, as set forth in Chapter 19.01, Section 19.01.010, and  (ii) the procedures to be followed in conduct of the hearing; and

> 7.    The appeal procedures for the City and the California Coastal Commission.

D.    <u>Notice Required for Continued Hearings</u>  If a decision on an application for a CDP is continued by the City upon its own motion or upon motion made at the request of the applicant, and the hearing is continued to a time and date which has not  (i) previously been stated in the original notice, or (ii) is not announced at the hearing which is being continued, the City shall provide notice of the further hearing in the same manner and to the same persons as set forth above in Sections A through C of this Section 19.02.070.

CITY COUNCIL ORDINANCE O91-525

E.   Notice of Final Action   Within seven (7) calendar
days of a final action by the City Council on an application for
a CDP, the City shall provide notice of that action by first
class mail, postage prepaid, to (1) the applicant,   (2) the
California Coastal Commission and   (3) to any persons who
specifically request notice of such final action by submitting a
self-addressed, stamped envelope to the City prior to the date
when the notice is required to be sent.   Such notice shall
contain the conditions of approval, if any, written findings as
required by the California Coastal Act, applicable sections of
the California Administrative Code, this Chapter, and a summary
of the procedures for appeal of the City's decision to the
California Coastal Commission.

SECTION 19.02.080 - Effective Date of City Council
Action for Purposes of Appeal to the California Coastal
Commission and Termination of the Appeal Period

The action of the City Council to grant or deny a
Coastal Development Permit shall become effective on the tenth
(10th) working day after the appeal period of the California
Coastal Commission has expired unless   (1) an appeal is filed in
accordance with California Code of Administrative Regulations
§13111, or   (2) the Notice of Final Action required by the
California Code of Administrative Regulations § 13571 and
Subsection E of Section 19.02.070, below, has been rejected by
the California Coastal Commission (the "Effective City Date").
The final action of the City may be appealed to the Coastal
Commission at any time within ten (10) working day after the
Effective City Date by an Aggrieved Person (as defined in Chapter
19.01, Section 19.01.010) who has exhausted all City appeals, if
any.

SECTION 19.02.090 - Failure to Act

When the City determines that the time limits
established by Government Code §65950, et seq., have expired, the
City shall, within seven (7) calendar days of such determination,
notice any person or entity entitled to receive notice pursuant
to subsection 19.02.080.E, above, that it has taken final action
by operation of law pursuant to Government Code §65950, et seq.
Such notice shall, to the extent applicable, include the
information required by subsection 19.02.070.E, above.

SECTION 19.02.100 - DETERMINATION OF APPLICABLE
PROCEDURES

A.   The determination of the "Type" of Development,
i.e., whether a Development is categorically exempt, appealable
or non-appealable, shall be made by the Director of Planning at
the time the application for a CDP is submitted to the City. That
determination shall be made with reference to the City's LCP,
including any maps, exclusions, land use designations and this
Chapter.

B.   Upon reaching his determination, the Director of
Planning shall inform the applicant and any other party
requesting said information of his determination and of the
notice and hearing requirements for the Type of Development
determined by the Director to apply to the proposed Development.

C.   Where an applicant  or an interested person
challenges the determination of the Planning Director, or the

City has a question as to the appropriate designation for the
proposed application, the following procedures shall establish
whether a Development is categorically exempt, appealable or non-
appealable:

   1. The Planning Director shall request an opinion from
   the Executive Director of the California Coastal
   Commission; **and**

   **2.** When the Executive Director's determination is,
   after investigation of the facts, not in accordance with
   the City's determination, the City shall request that
   the Coastal Commission hold a hearing for the purpose of
   determining the appropriate Type for the proposed
   Development.

### SECTION 19.02.110 - Penalties for Violation(s)

   Any person who violates any provision of this Chapter of
the Code shall be subject to the penalties described in Article
2, Chapter 9, commencing with §30820, of the Public Resources
Code.

SECTION C. AN AMENDMENT TO CHAPTER 18.04 OF THE MUNICIPAL CODE
TO ADD SECTION 18.04.160 PERTAINING TO LIMITATIONS WHICH PROHIBIT
CERTAIN DEVELOPMENTS WITHIN THE COASTAL ZONE, AS FOLLOWS:

   The City Council hereby amends Chapter 18.04 of the Code
by adding §18.04.160, "Limitations in Bluff Areas of the Coastal
Zone, to read as follows:

### SECTION 18.04.160 - Coastal Zone Limitations on Development in Bluffs.

   Structures, stairways, pools, tennis courts,
spas or solid wood fences may be constructed on private
property on, or within 25 feet of, the Bluff edge in the
Coastal Zone only after preparation of a geologic report
and findings by the City that the proposed structure,
stairway, pool, tennis court or solid wood fence (1)
poses no threat to the health, safety, and general
welfare to persons in the area by reason of identified
geologic conditions which cannot be mitigated and (2)
the proposed structure, stairway, pool, tennis court or
solid wood fence will not be visually intrusive from
public view points in the Coastal Zone.

SECTION D. AN AMENDMENT TO CHAPTER 18.16 OF THE MUNICIPAL CODE
TO ADD SECTION 18.04.50 PERTAINING TO LIMITATIONS WHICH PROHIBIT
CERTAIN DEVELOPMENTS WITHIN THE COASTAL ZONE, AS FOLLOWS:

   The City Council hereby amends Chapter 18.16 of the Code
by adding §18.16.50, "Limitations in Bluff Areas of the Coastal
Zone, to read as follows:

### SECTION 18.16.50 - Coastal Zone Limitations on Development in Bluffs.

   The provisions of §18.16.020 and 18.16.030
nothwithstanding, a structure, stairway, pool, tennis
court, spa or solid wood fence may be constructed on
private property on, or within 25 feet of, the Bluff
edge in the Coastal Zone only after preparation of a

CITY COUNCIL ORDINANCE O91-**525**

geologic report and findings by the City that the
proposed structure, stairway, pool, tennis court or
solid wood fence  (1) poses no threat to the health,
safety, and general welfare to persons in the area by
reason of identified geologic conditions which cannot be
mitigated and  (2) the proposed structure, stairway,
pool, tennis court or solid wood fence will not be
visually intrusive from public view points in the
Coastal Zone.

SECTION E.    If any section, subsection, sentence, clause,
phrase, part or portion of this Ordinance is for any reason held
to be invalid, unconstitutional or null and void by any Court of
competent jurisdiction, such decision shall not affect the
validity of the remaining portions of this Ordinance.  The **City**
Council declares that it would have adopted this Ordinance and
each section, subsection, sentence, clause, phrase, part or
portion thereof, irrespective of the fact any any one or more
sections, subsections, sentences, clauses, phrases, part or
portion be declared invalid, unconstitutional or null or void.

SECTION F.    The Mayor shall sign and the City Clerk shall
certify to the passage and adoption of this Ordinance.  The City
Clerk shall make a minute of the passage and adoption thereof in
the records of the proceedings of the City Council in the minutes
of the meeting, at which the same is passed and adopted and shall
cause the same to be posted one (1) time in three (3) conspicuous
public places within the corporate limits of the City within the
time and manner as prescribed by law.  This Ordinance shall take
effect and be in full force and effect thirty (30) days after the
adoption thereof.

APPROVED AND ADOPTED on the 26th day of February,
1991.

City of Palos Verdes Estates

James R. Nyman, Mayor

ATTEST:

Barbara Culver, City Clerk

APPROVED AS TO FORM:

~~MARY REDUS GAYLE~~, ACTING CITY ATTORNEY

O-PVE-CC5                    Page 14 of 15

CITY COUNCIL ORDINANCE O91-525

STATE OF CALIFORNIA      )
COUNTY OF LOS ANGELES    )  ss.
CITY OF PALOS VERDES ESTATES )

    I, **BARBARA** CULVER, City Clerk of the City of Palos Verdes Estates, California, do hereby certify that the foregoing Ordinance O91-525 was introduced by the City Council of the City of Palos Verdes at its regular meeting of February 12, 1991 and was adopted by the City Council of the City of Palos Verdes Estates, at a regular meeting thereof, held on the 26th day of February, 1991. and that the same was adopted by the following vote, on motion made by Councilmember ___Ruth Gralow___ and seconded by Councilmember ___Raymond Mattingly___:

| | |
|---|---|
| **AYES:** | Mayor Nyman, Councilmembers Mattingly, Gralow, Moody, Humphrey |
| **NOES:** | None. |
| ABSTAIN; | None. |
| ABSENT: | None. |

    WITNESS, my hand and the official seal of said City this ____ day of February, 1991.

Barbara Culver, City Clerk

(SEAL)

O-PVE-CC5                    Page 15 of 15

RESOLUTION NO. PCR 91-01

A RESOLUTION OF THE CITY OF PALOS VERDES
ESTATES PLANNING COMMISSION RECOMMENDING TO
THE CITY COUNCIL THAT THE PALOS VERDES ESTATES
GENERAL PLAN AND MUNICIPAL CODE BE AMENDED TO
INCLUDE POLICY STATEMENTS, A COASTAL ZONE
OVERLAY ZONE, A PROHIBITION ON CONSTRUCTION
ON, OR DOWN COASTAL BLUFFS AS REQUIRED BY THE
CALIFORNIA COASTAL COMMISSION.

WHEREAS, the California Coastal Commission has indicated
it intention to make its certification of the Palos Verdes
Estates Local Coastal Plan ("LCP") contingent upon certain
amendments to the City's General Plan and Municipal Code; and

WHEREAS, the Palos Verdes City Council at its meeting on
January 9, 1991 adopted Resolution No. R91-02 declaring its
intention to adopt and add appropriate sections to the General
Plan and Municipal Code pertaining to procedures for
notification, hearing and appeals on application for Coastal
Development Permit pursuant to the proposed Local Coastal Program
and to amend the General Plan and the City's zoning code to add a
Coastal Zone Overlay Zone and certain prohibitions on
construction on, or down coastal bluffs and to adopt policy
statements as required by the California Coastal Act and the
Coastal Commission; and

WHEREAS, the Palos Verdes Estates Planning Commission
has held a duly noticed public hearing on January 15, 1991
regarding the foregoing amendments referred to it by the City
Council;

NOW, THEREFORE, The Palos Verdes Estates Planning
Commission DOES RESOLVE as follows:

SECTION ONE:   The Planning Commission recommends to the City
Council that the Land Use Element of the City's General Plan and
the appropriate sections of the City's Municipal Code be amended
to include a section entitled "Coastal Zone" that would contain
the following policy statements and be substantially in
conformity with a draft ordinance hereby attached to this
resolution and made a part hereof:

A.   Public use of all existing accessways and
scrambleways, including informal access paths not included on
City maps, shall not be impaired by the placement on trails of
rocks, vegetation, or any other substance or structure which
hinders full passage.

B.   City public parkland and accessways shall be
retained and improved where feasible by appropriate public
actions, including the erection of signs to inform the public of
the existence and nature of the City's Shoreline Preserve and of
the locations of improved public accessways to the shore and the
erection of two or more signs each on Palos Verdes Drive West and
Paseo del Mar channeling the majority of public use to the
accessways at Flat Rock (Bluff Cove) and Swim Club Road.

C.   Existing on-street parking near the shore and bluff
shall not be reduced, nor shall any use or time restriction be

R-PVE-PC1                          Page 1 of

I hereby certify that the foregoing document is a full, true, and
correct copy of _Resolution No._ PCR 91-
on file in the office of the City Clerk of the City of Palos
Verdes Estates.

CITY CLERK

by: _____
                          DEPUTY

PLANNING COMMISSION RESOLUTION NO. PCR 91-01

placed on such parking that would hinder or discourage public use for recreational purposes during the day time hours.

**D.** Construction on private land of buildings, stairways, pools, tennis courts, spas, or solid fences on, or down the bluff face or within 25 feet of the bluff edge shall be prohibited without a geologic report and a finding that the improvement would not be visually intrusive upon public view points.

**E.** City parks located within the coastal zone shall remain public parklands in perpetuity.

SECTION TWO. The Planning Commission recommends to the City Council that Chapter 19 of the Municipal Code be amended to add procedures for notice, hearings and appeals for projects requesting a Coastal Development Permit in the Coastal Zone which are consistent with a draft ordinance hereby attached to this resolution and made a part hereof.

SECTION THREE. The Planning Commission recommends to the City Council that the City Council certify the negative declaration and that all elements of the City's General Plan and Municipal Code be amended as necessary to bring about consistency between those elements and the Land Use Element as amended and specifically recommends to the City Council those draft ordinances attached to this resolution.

SECTION FOUR. The Planning Commission recommends that the amendments recommended to the City Council be adopted to become effective upon certification of the Local Coastal Program for the City of Palos Verdes Estates by the California Coastal Commission.

SECTION FIVE: The Planning Commission directs the Planning Director to certify the passage and adoption of this Resolution, shall enter the same in the records of the Planning Commission, and shall make a minute of the passage and adoption of this Resolution in the records of the meeting at which the same is passed and adopted; and authorizes the Planning Director to forward a copy of this resolution and all attachments to the California Coastal Commission if so requested.

PASSED, APPROVED AND ADOPTED this 15th day of January, 1991.

DON PEDERSEN, CHAIRMAN,
PLANNING COMMISSION

ATTEST:

CATHY REED, PLANNING DIRECTOR

APPROVED AS TO FORM:

MARY RADUS GAYLE, ACTING CITY ATTORNEY

R-PVE-PC1                                    Page **2 of 3**

PLANNING COMMISSION RESOLUTION NO. PCR 91-01

I, MICHAEL WILLIAMS, SECRETARY FOR THE PLANNING COMMISSION OF THE CITY OF PALOS VERDES ESTATES, HEREBY CERTIFY that the foregoing Resolution was duly adopted by the Planning Commission of the City of Palos Verdes Estates at a regular meeting thereof, held on the 15th day of January, 1991, on motion made by Commissioner Barnett and seconded by Commissioner Williams, and upon the following roll call vote of the Commission:

AYES: Chairman Pedersen, Commissioners Barnett, Neopolitan, Flood and Williams

NOES: None

ABSTAIN: None

ABSENT: None

MICHAEL WILLIAMS, SECRETARY

R-PVE-PC1                    **Page 3 of 3**

# EXHIBIT 7


STATE OF CALIFORNIA
AUTHENTICATED
ELECTRONIC LEGAL MATERIAL

CONSTITUTION OF THE STATE OF CALIFORNIA

ARTICLE X  WATER

## Section  4

SEC. 4.  No individual, partnership, or corporation, claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this State, shall be permitted to exclude the right of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the Legislature shall enact such laws as will give the most liberal construction to this provision, so that access to the navigable waters of this State shall be always attainable for the people thereof.

(Sec. 4 added June 8, 1976, by Prop. 14. Res.Ch. 5, 1976.)