# Exhibit 15

1

2

3                    UNITED STATES DISTRICT COURT

4                    CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION
5

6    CORY SPENCER, ET AL.,           )
                                     )
7                                    )
                   PLAINTIFFS,       )
8                                    )
                   V.                )   CV 16-2129-SJO(RAO)
9                                    )
                                     )   LOS ANGELES, CALIFORNIA
10   LUNADA BAY BOYS, ET AL.,        )
                                     )
11                                   )   JULY 26, 2017
                                     )   (3:03 P.M. TO 3:45 P.M.)
12                 DEFENDANTS.       )
    ─────────────────────────────────)
13

14                         TELEPHONIC HEARING

15            BEFORE THE HONORABLE ROZELLA A. OLIVER
                  UNITED STATES MAGISTRATE JUDGE
16

17   APPEARANCES:              SEE NEXT PAGE

18   COURT REPORTER:           RECORDED:  COURTSMART

19   COURTROOM DEPUTY:         SANDRA BUTLER

20   TRANSCRIBER:              DOROTHY BABYKIN
                               COURTHOUSE SERVICES
21                             1218 VALEBROOK PLACE
                               GLENDORA, CALIFORNIA  91740
22                             (626) 963-0566

23

24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF CORY SPENCER, ET AL.:

 3               HANSON BRIDGETT LLP
                 BY:  SAMANTHA D. WOLFF
 4                   ATTORNEY AT LAW
                 425 MARKET STREET
 5               26TH FLOOR
                 SAN FRANCISCO, CALIFORNIA  94105
 6
                 OTTEN LAW PC
 7               BY:  VICTOR J. OTTEN
                     ATTORNEY AT LAW
 8               3620 PACIFIC COAST HIGHWAY
                 SUITE 100
 9               TORRANCE, CALIFORNIA  90505

10
     FOR THE DEFENDANTS CHARLIE AND FRANK FERRARA:
11
                 BREMER WHYTE BROWN & O'MEARA
12               BY:  TIFFANY LYON BACON
                     ATTORNEY AT LAW
13               20320 SW BIRCH STREET
                 2ND FLOOR
14               NEWPORT BEACH, CALIFORNIA  92660

15
     FOR DEFENDANTS ANGELO FERRARA AND N.F.:
16
                 LAW OFFICES OF MARK C. FIELDS APC
17               BY:  MARK FIELDS
                     ATTORNEY AT LAW
18               333 SOUTH HOPE STREET
                 SUITE 3500
19               LOS ANGELES, CALIFORNIA  90071

20   FOR DEFENDANT SANG LEE:

21               LEWIS BRISBOIS BISGAARD & SMITH LLP
                 BY:  TERA A. LUTZ
22                   ATTORNEY AT LAW
                 633 WEST 5TH STREET
23               SUITE 4000
                 LOS ANGELES, CALIFORNIA  90071
24

25
```

3

1    APPEARANCES:  (CONTINUED)

2    FOR DEFENDANTS CITY OF PALOS VERDES ESTATES AND CHIEF KEPLEY:

3              KUTAK ROCK LLP
               BY:  JACOB SONG
4                   ATTORNEY AT LAW
               5 PARK PLAZA
5              SUITE 1500
               IRVINE, CALIFORNIA  92614

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

I N D E X

CV 16-2129-SJO(RAO)                                           JULY 26, 2017

PROCEEDINGS:    TELEPHONIC HEARING RE DISCOVERY DISPUTE BETWEEN
                PLAINTIFFS AND DEFENDANTS FRANK FERRARA AND
                CHARLIE FERRARA; SETTING BRIEFING SCHEDULE FOR
                MOTION FOR SANCTIONS

1          LOS ANGELES, CALIFORNIA; JULY 26, 2017; 3:03 P.M.

2          THE CLERK:  THIS COURT IS NOW IN SESSION.

3          THE HONORABLE ROZELLA A. OLIVER, UNITED STATES

4    MAGISTRATE JUDGE, PRESIDING.

5          CALLING CASE NUMBER CV 16-2129, SPENCER VERSUS LUNADA

6    BAY BOYS.

7          COUNSEL, PLEASE ENTER YOUR APPEARANCE FOR THE RECORD.

8          MS. WOLFF:  GOOD AFTERNOON, YOUR HONOR.

9          THIS IS SAMANTHA WOLFF FOR THE PLAINTIFFS.

10         MR. OTTEN:  GOOD AFTERNOON, YOUR HONOR.

11         VIC OTTEN FOR PLAINTIFFS.

12         MS. BACON:  GOOD AFTERNOON, YOUR HONOR.

13         TIFFANY BACON FOR DEFENDANTS FRANK FERRARA AND

14   CHARLIE FERRARA.

15         MR. FIELDS:  MARK FIELDS FOR DEFENDANTS ANGELO

16   FERRARA AND N.F.

17         MS. LUTZ:  TERA LUTZ FOR DEFENDANT SANG LEE.

18         MR. SONG:  JACOB SONG FOR THE CITY OF PALOS VERDES

19   ESTATES AND CHIEF KEPLEY.

20         THE COURT:  ALL RIGHT.  GOOD AFTERNOON, EVERYBODY.

21         WE'RE HERE TODAY TO DISCUSS THE PENDING DISCOVERY

22   DISPUTE BETWEEN THE PLAINTIFFS AND I BELIEVE CHARLIE AND FRANK

23   FERRARA.

24         IS THAT CORRECT, MS. WOLFF?

25         MS. WOLFF:  CORRECT.

1        THE COURT:  ALL RIGHT.

2        MS. WOLFF, WHY DON'T YOU BEGIN.

3        MS. WOLFF:  THANK YOU, YOUR HONOR.

4        SO, AS YOU KNOW, THIS COURT ORDERED CHARLIE AND FRANK

5   FERRARA TO PRODUCE RESPONSIVE DOCUMENTS FROM THEIR CELL PHONE

6   IMAGING AND THEIR CELL PHONE BILLS BY 5:00 P.M. ON JULY 17TH,

7   WHICH WAS LAST MONDAY.

8        WE RECEIVED A PARTIAL PRODUCTION SHORTLY AFTER 5:00

9   ON MONDAY, THE 17TH, AND, THEN, AN ADDITIONAL PRODUCTION AFTER

10  5:00 P.M. FOUR DAYS LATER ON FRIDAY THE 21ST.

11       AND ASIDE FROM THE FACT THAT THAT FAILED TO MEET THE

12  COURT'S DEADLINE AND, PARTICULARLY, WITH RESPECT TO THE SECOND

13  PRODUCTION, THERE ARE SEVERAL SERIOUS ISSUES WITH RESPECT TO

14  THESE PRODUCTIONS.

15       FIRST IS THAT BOTH PRODUCTIONS ARE HEAVILY REDACTED.

16  AND I WOULD ESTIMATE THAT 90 PERCENT OF THE PRODUCTIONS ARE

17  EITHER FULLY OR PARTIALLY REDACTED.  THERE'S NO LOG OR ANY WAY

18  FOR US TO CONFIRM THAT THE REDACTIONS ARE APPROPRIATE.

19       AND BY WAY OF REMINDER, THERE'S NO BASIS FOR

20  ASSERTING ANY PRIVILEGE BECAUSE PRIVILEGE WAS NOT CLAIMED AT

21  THE TIME EITHER DEFENDANT SUBMITTED HIS RESPONSES TO THE

22  DISCOVERY REQUESTS.

23       THE SECOND ISSUE IS THAT THE PRODUCTION ONLY CONTAINS

24  CELL PHONE BILLS FROM FEBRUARY 21ST, 2016 TO THE PRESENT.  AND

25  THE REQUEST SOUGHT THE CELL PHONE BILLS FROM JANUARY 1, 2013 TO

1    PRESENT.  SO, WE ARE MISSING OVER THREE YEARS' WORTH OF BILLS.

2              I UNDERSTAND FROM PRIOR CONVERSATIONS WITH MS. BACON

3    THAT THE DEFENDANTS CAN ONLY OBTAIN 18 MONTHS' WORTH OF CELL

4    PHONE BILLS ON LINE.  BUT HAD THEY STARTED THIS PROCESS WHEN

5    THEY RECEIVED THE DISCOVERY REQUESTS BACK IN NOVEMBER, WE WOULD

6    LIKELY HAVE AT LEAST EIGHT ADDITIONAL MONTHS' WORTH.

7              BUT MORE THAN THAT, I'M NOT AWARE THAT THEY'RE REALLY

8    MAKING ANY EFFORT TO OBTAIN THESE BILLS ANY OTHER WAY.  WHEN I

9    ASKED CHARLIE FERRARA AT HIS DEPOSITION WHAT EFFORTS HE'S MADE

10   TO OBTAIN THESE BILLS FROM HIS CELL PHONE CARRIER, HE SAID, AND

11   I QUOTE, I HAVEN'T REALLY TRIED THAT HARD HONESTLY.

12             THE THIRD ISSUE IS THAT SANG LEE'S PRIVILEGE LOG

13   REFERENCES TEXT COMMUNICATIONS THAT HE HAD WITH FRANK AND/OR

14   CHARLIE FERRARA FROM APPROXIMATELY MARCH 2016 THROUGH JULY

15   2016.  BUT THESE PRODUCTIONS THAT WE RECEIVED DO NOT INCLUDE

16   ANY OF THESE TEXT MESSAGES.  AND I DON'T KNOW IF OR WHEN THESE

17   TEXTS WERE DELETED OR IF THEY WERE REDACTED OR WHAT HAPPENED.

18   I SIMPLY CAN'T TELL FROM THIS PRODUCTION.

19             AND THE FOURTH ISSUE, WHICH IS A SIGNIFICANT ONE, IS

20   THAT THE PRODUCTION DOESN'T CONTAIN ANY OF CHARLIE FERRARA'S

21   CELL PHONE DATA, INCLUDING HIS TEXT MESSAGES.

22             I SPOKE WITH COUNSEL -- WITH MS. BACON ON MONDAY, THE

23   24TH, AND SHE STATED THAT THE EXTRACTION REPORT FOR CHARLIE

24   FERRARA'S CELL PHONE WAS MASSIVE, AND THAT IT WOULD TAKE A LOT

25   OF TIME TO GO THROUGH IT.  SO, IT HASN'T BEEN PRODUCED.

8

1          AND THIS IS SIMPLY UNACCEPTABLE.  WE WERE SUPPOSED TO

2    HAVE THIS INFORMATION OVER A WEEK AND A HALF AGO.

3          AND, THEN, WE RECEIVED CHARLIE AND FRANK'S SUMMARY

4    JUDGMENT MOTIONS ON MONDAY EVENING.  AND IN THE MOTIONS THAT

5    THEY EACH FILED THEY BOTH ARGUE, FOR INSTANCE, THAT PLAINTIFFS

6    CAN PROFFER NO ADMISSIBLE EVIDENCE THAT CHARLIE FERRARA OR

7    FRANK FERRARA, AS IS THE CASE IN HIS MOTION, WAS INVOLVED IN

8    ANY ACTION OR INACTION UNDERTAKEN BY THE PURPORTED SURF GANG OR

9    ANY OTHER ACT OR OMISSION CAPABLE OF SUPPORTING JUDGMENT IN

10   FAVOR OF ANY PLAINTIFF.

11         THERE'S EVEN A HEADING IN THEIR MSJS THAT DISCOVERY

12   DEMONSTRATES AN UTTER DEARTH OF EVIDENCE SUPPORTING PLAINTIFFS'

13   CLAIMS.

14         AND THEY ALSO ARGUE THAT CHARLIE AND SANG LEE HAVE

15   COMMUNICATED ON SEVERAL OCCASIONS, BUT THAT BOTH OF THESE

16   DEFENDANTS CLAIM THAT THOSE COMMUNICATIONS WERE UNRELATED TO

17   THE CLAIMS ALLEGED IN THIS CASE.  AND THAT THE PLAINTIFFS HAVE

18   NO EVIDENCE TO THE CONTRARY.

19         SO, THE PREJUDICE HERE IS OVERWHELMING.  THESE

20   DEFENDANTS HAVE SPOLIATED EVIDENCE, WHETHER IT'S INTENTIONAL OR

21   NEGLIGENT.

22         AND IT WOULD ALSO APPEAR THAT THEY'RE NOW

23   INTENTIONALLY WITHHOLDING EVIDENCE.  GIVEN THE TIMING OF THEIR

24   WITHHOLDING, AND IN LIGHT OF THE SUMMARY JUDGMENT ARGUMENTS,

25   IT'S GAMESMANSHIP.  EVEN IF THEY WERE ORDERED TO PRODUCE

9

1   EVERYTHING TODAY, AND I DON'T EVEN KNOW THAT THEY COULD MEET

2   THAT DEADLINE, WE WOULD STILL BE SEVERELY DISADVANTAGED IN

3   HAVING TO REVIEW THOUSANDS OF PAGES OF DOCUMENTS AND OPPOSE

4   THEIR MOTIONS AND THE MOTIONS OF THEIR SIX CODEFENDANTS WITH

5   VERY LITTLE TIME.

6           THIS IS NEW TERRITORY FOR ME IN MY TEN-PLUS YEARS OF

7   PRACTICE.  I'VE NEVER FOUND MYSELF DEALING WITH NEGLIGENT OR

8   INTENTIONAL SPOLIATION OR WITHHOLDING OF EVIDENCE.  AND I'M

9   TRYING TO DETERMINE WHAT SANCTIONS OR REMEDIES ARE APPROPRIATE

10  HERE AND WHAT I SHOULD BE ASKING FOR HONESTLY BUT, AT THE VERY

11  LEAST, IT WOULD SEEM AN ADVERSE INFERENCE INSTRUCTION THAT

12  THESE DEFENDANTS WERE INVOLVED IN THIS CONSPIRACY TO COMMIT THE

13  ACTS IN VIOLATIONS THAT WE'VE ALLEGED IN THE COMPLAINT OR,

14  PERHAPS, EVEN STRIKING THEIR MOTIONS FOR SUMMARY JUDGMENT.  AND

15  SANCTIONS IN THE FORM OF REIMBURSEMENT FOR PLAINTIFFS'

16  COUNSEL'S TIME IN DEALING WITH THESE ISSUES ALSO WOULD SEEM

17  APPROPRIATE UNDER THE FEDERAL RULES.

18          SO, I GUESS I'M LOOKING TO YOU FOR GUIDANCE HERE AS

19  TO HOW TO BEST REMEDY THIS SITUATION AND HOW WE CAN LEVEL THE

20  PLAYING FIELD AS IT WERE.

21          THE COURT:  ALL RIGHT.

22          MS. BACON, DO YOU WANT TO RESPOND TO WHAT MS. WOLFF

23  HAS LAID OUT.

24          I LIKE THE WAY THAT SHE STRUCTURED IT, THE FOUR

25  POINTS -- THE HEAVY REDACTION, PRODUCTION INCOMPLETE, HOW

10

1    THERE'S NOT A LINING UP WITH WHAT WAS CONTAINED IN DEFENDANT

2    LEE'S PRIVILEGE LOG AND, THEN, FINALLY, THE PRODUCTION NOT

3    INCLUDING THE EXTRACTION REPORT FOR CHARLIE FERRARA.

4              MS. BACON: YES, YOUR HONOR.  I WILL ADDRESS ALL OF

5    THOSE POINTS.

6              FIRST, WITH RESPECT TO CHARLIE FERRARA, MS. WOLFF IS

7    RIGHT, THAT THE EXTRACTION REPORTS ARE SUBSTANTIALLY LONG.

8    FRANK FERRARA'S EXTRACTION REPORT IS OVER 2,400 PAGES.  AND

9    CHARLIE FERRARA'S EXTRACTION REPORT IS OVER 800 PAGES.

10             PURSUANT TO THE COURT'S ORDER TO PRODUCE RESPONSIVE

11   DOCUMENTS BY THAT MONDAY, WE ABSOLUTELY DID PRODUCE RESPONSIVE

12   DOCUMENTS INCLUDING ALL OF THE CELL PHONE RECORDS THAT WE WERE

13   ABLE TO OBTAIN.

14             IN ADDITION TO THAT, MY CLIENTS HAVE MADE SEVERAL

15   EFFORTS IN ORDER TO OBTAIN OTHER CELL PHONE RECORDS AND HAS

16   SIMPLY NOT BEEN GIVEN THE RECORDS BY THEIR CELL PHONE

17   COMPANIES.

18             AND MY CLIENTS ARE WILLING TO SIGN A DECLARATION TO

19   THAT FACT REGARDING ALL THE EFFORTS THEY HAVE MADE TO OBTAIN

20   THOSE RECORDS.

21             IN TERMS OF THE REDACTIONS THAT HAVE BEEN MADE,

22   REDACTIONS WERE MADE FOR THE PURPOSE OF PRODUCING RESPONSIVE

23   INFORMATION.  THERE HAS BEEN NO PRIVILEGED INFORMATION THAT HAS

24   BEEN REDACTED.  IT'S ONLY INFORMATION THAT IS SIMPLY NOT

25   RESPONSIVE TO THE DISCOVERY REQUESTS.

1      I'M NOT GOING TO PRODUCE AN ENTIRE REPORT, WASTE

2   INFORMATION THAT IS COMPLETELY IRRELEVANT TO THIS CASE AND THAT

3   IS INVOLVING COMMUNICATIONS WITH MY CLIENT AND HIS CLIENTS THAT

4   ARE RELATED TO HIS JOB.

5      AND WITH RESPECT TO CHARLIE FERRARA AND HIS

6   EXTRACTION REPORT, THERE ARE VERY, VERY INTIMATE COMMUNICATIONS

7   BETWEEN HIM AND HIS WIFE THAT ARE SIMPLY NOT RELEVANT AND

8   SIMPLY AN INVASION OF HER PRIVACY BECAUSE THERE ARE PHOTOS ON

9   THERE THAT INVOLVE HER.

10      WITH RESPECT TO SANG LEE, PLAINTIFFS KEEP BRINGING UP

11   THE ISSUE OF MR. LEE AND THE COMMUNICATIONS THAT HE HAS HAD

12   WITH MY CLIENTS.  AND, FRANKLY, NONE OF THE OTHER DEFENDANTS I

13   DON'T BELIEVE HAVE PRODUCED ANY INFORMATION RELATING TO

14   COMMUNICATIONS THEY'VE HAD WITH MY CLIENTS IN THIS CASE.  AND

15   BOTH MY CLIENTS AND SANG LEE HAVE TESTIFIED TO THE FACT THAT

16   THESE COMMUNICATIONS ARE SIMPLY UNRELATED TO THIS CASE AND NOT

17   RESPONSIVE TO WHAT PLAINTIFFS ARE SEEKING.

18      THE COURT:  I GUESS THE PROBLEM IS THAT IT SOUNDS

19   LIKE THEY'RE SHOWING UP ON A PRIVILEGE LOG.

20      MS. BACON:  I DIDN'T PRODUCE THE PRIVILEGE LOG.  I

21   UNDERSTAND THAT SANG LEE'S COUNSEL DID PRODUCE THE PRIVILEGE

22   LOG.  AND I ALSO UNDERSTAND THAT NOW HE HAS PRODUCED THE ENTIRE

23   EXTRACTION REPORT, WHICH WOULD PRESUMABLY INCLUDE THOSE

24   COMMUNICATIONS BETWEEN MY CLIENTS AND SANG LEE.

25      AND IN FRANK FERRARA'S EXTRACTION REPORT I KNOW THAT

1    I INTENTIONALLY LEFT THAT PERIOD OPEN WHERE PLAINTIFFS HAVE

2    ALLEGED THAT THERE WERE COMMUNICATIONS BETWEEN SANG LEE AND MY

3    CLIENTS FOR THE PURPOSE OF SHOWING THEM THAT THERE ARE SIMPLY

4    NO COMMUNICATIONS THAT WERE RECOVERABLE IN MY CLIENT'S

5    EXTRACTION REPORT.

6              THE COURT:  OKAY.

7              ALL RIGHT.  SO, GOING IN THE ORDER THAT MS. WOLFF

8    LAID THINGS OUT, SO YOU'RE SAYING THAT THERE IS NO ASSERTION OF

9    PRIVILEGE.  IT'S SIMPLY THAT WHAT YOU REDACTED IS NOT

10   RESPONSIVE.

11             IS THAT CORRECT, MS. BACON?

12             MS. BACON:  PRECISELY.  YES, YOUR HONOR.

13             THE COURT:  OKAY.

14             AND, THEN, WITH RESPECT TO THE CELL PHONE BILL

15   PRODUCTION -- THE PRODUCTION OF CELL PHONE BILLS, IT SOUNDS

16   LIKE YOU'RE REPRESENTING THAT YOUR CLIENTS WOULD DECLARE THAT

17   THEY'VE UNDERTAKEN -- WHAT EFFORTS THEY'VE UNDERTAKEN TO OBTAIN

18   THE CELL PHONE RECORDS FOR THE REQUESTED PERIOD.

19             NOW, WHAT ABOUT -- I MEAN, IT SOUNDS LIKE THESE

20   REQUESTS WERE PROPOUNDED IN NOVEMBER.  AND WHAT ABOUT

21   MS. WOLFF'S ARGUMENT THAT HAD THERE -- HAD THIS BEEN UNDERTAKEN

22   IN NOVEMBER, YOU WOULD HAVE HAD THE ADDITIONAL TIME GOING

23   BACKWARDS THAT WOULD HAVE BEEN RECOVERABLE.

24             DO YOU  --

25             MS. BACON:  I -- AS I SAID DURING THE LAST HEARING, I

13

1  WAS NOT INVOLVED IN THE CASE DURING THAT TIME.  SO, I WAS

2  UNABLE TO MEET AND CONFER WITH MS. WOLFF DURING THAT PERIOD OF

3  TIME AFTER THE DISCOVERY RESPONSES WERE PRODUCED.

4          HOWEVER, I KNOW THAT AS SOON AS MS. WOLFF REACHED OUT

5  TO ME -- I BELIEVE IT WAS IN JUNE OF THIS YEAR -- TO FOLLOW UP

6  ON THE DISCOVERY REQUESTS, I IMMEDIATELY DISCUSSED THIS ISSUE

7  WITH MY CLIENTS.  AND I KNOW THAT THEY BEGAN EFFORTS THEN.

8          I CAN -- I'M HAPPY TO SPEAK WITH THEM REGARDING

9  EFFORTS THAT THEY MADE PRIOR TO THAT, BUT I ONLY KNOW RIGHT NOW

10  OF THE SEVERAL OFFERS THAT THEY HAVE MADE SINCE I STARTED ON

11  THIS CASE.

12          THE COURT:  SO, IN -- I MEAN, I RECOGNIZE THIS COULD

13  SKATE INTO A PRIVILEGED AREA, BUT AS YOU SIT HERE -- YOU KNOW,

14  AS WE TALK TODAY, YOU DON'T KNOW WHAT -- WHAT EFFORTS THEY TOOK

15  PRIOR TO YOUR COMING ON THE CASE?

16          MS. BACON:  I CANNOT SPEAK TO THAT RIGHT NOW, NO,

17  YOUR HONOR.

18          THE COURT:  OKAY.

19          I MEAN, THAT'S -- YOU CAN RECOGNIZE THAT THAT'S

20  FRUSTRATING.

21          MS. BACON:  I UNDERSTAND.  AND I KNOW THAT THE

22  PLAINTIFFS ARE TRYING TO MAKE THE ALLEGATION THAT THERE HAS

23  BEEN A SPOLIATION OF EVIDENCE.  BUT MY CLIENTS WERE NOT SERVED

24  IN THIS CASE UNTIL, I BELIEVE, SOME TIME IN JULY AND DID NOT

25  SERVE THEIR ANSWER IN THIS CASE UNTIL SOME TIME IN SEPTEMBER.

1          AND I KNOW THAT THE RECORDS THAT HAVE BEEN PRODUCED

2     GO BACK TO THAT TIME FRAME.  SO, THE EXTRACTION REPORTS DO

3     COVER THE PERIOD OF TIME MY CLIENTS HAVE BEEN INVOLVED IN THIS

4     CASE.

5          THE COURT:  WELL, BUT I -- WHAT I -- AGAIN, I'M STILL

6     -- I'M STILL ON THE SECOND POINT ABOUT THE CELL PHONE BILLS.

7     IT SOUNDS LIKE AFTER THEY WERE SERVED, AFTER THEY ANSWERED,

8     DISCOVERY WAS PROPOUNDED ASKING FOR THESE CELL PHONE RECORDS,

9     WHICH CAN EVAPORATE, RIGHT?  THE ONLY -- THERE'S A RETENTION

10    POLICY THAT THE PHONE COMPANIES HAVE.  AND I STILL HAVEN'T

11    HEARD A GREAT ANSWER.  AND I JUST DON'T THINK IT'S SATISFACTORY

12    TO SAY, I'M SORRY, THAT PREDATES MY INVOLVEMENT IN THE CASE.

13         I'M NOT SAYING THAT TO YOU.  I'M NOT ADDRESSING THAT

14    TO YOU, MS. BACON.  I MEAN, JUST MORE GENERALLY THAT THERE ARE

15    OBLIGATIONS HERE.  AND IT SIMPLY CAN'T BE THAT PEOPLE CAN JUST

16    AVOID DISCOVERY REQUESTS BY SAYING, I'M SORRY.  THAT PREDATES

17    ME.  I DON'T KNOW WHEN -- I DON'T REALLY KNOW WHAT HAPPENED.

18    SO, THIS IS ALL I'M GIVING YOU.

19         SO, I GUESS WHEN I SAID FRUSTRATING, I THINK THERE

20    ARE A LOT OF OTHER WORDS THAT CAN BE USED.  SO, I'M WONDERING

21    -- I KIND OF LIKE THE IDEA OF EXPLORING SOME MORE AS TO WHAT

22    STEPS WERE UNDERTAKEN.  BECAUSE -- MAYBE IT'S THE CASE THAT THE

23    ATTORNEY NEVER COMMUNICATED IT TO YOUR CLIENTS THAT THEY WERE

24    SUPPOSED TO DO THIS.

25         BUT IT IS BAFFLING.

1      OKAY.  THEN, MOVING ON TO THE THIRD POINT REGARDING

2  THE PRIVILEGE LOG.  IT SOUNDS LIKE YOU'RE SAYING -- YOU'RE NOT

3  -- NUMBER ONE, YOU'RE NOT ASSERTING ANY PRIVILEGED

4  COMMUNICATIONS.  EVERYTHING THAT YOU HAVE THAT YOU DEEM TO BE

5  RESPONSIVE TO THE REQUESTS HAS, IN FACT, BEEN PRODUCED.  KIND

6  OF GOING BACK TO THE FIRST POINT.

7      AND, THEN, NOW WITH THE SECOND POINT, IT SOUNDS LIKE

8  FOR CHARLIE FERRARA'S EXTRACTION REPORT, THE REPORT IS

9  APPROXIMATELY 2,400 PAGES.

10      MS. BACON:  NO, YOUR HONOR.  FRANK'S REPORT IS

11  APPROXIMATELY 2,400 PAGES.  CHARLIE FERRARA'S IS APPROXIMATELY

12  800 PAGES OR I BELIEVE 820 PAGES.

13      THE COURT:  OH, OKAY.

14      MS. BACON:  AND I'M PREPARED TO PRODUCE THAT TODAY TO

15  PLAINTIFF'S COUNSEL.  I HAVE GONE THROUGH IT.  I HAVE REDACTED

16  THE INFORMATION THAT IS NOT RESPONSIVE TO THE REQUEST.  AND I'M

17  PREPARED TO PRODUCE THAT AT THE CONCLUSION OF THIS CALL.

18      THE COURT:  YEAH, BUT I THOUGHT THAT YOU WERE ORDERED

19  TO PRODUCE THAT ON THE 17TH.

20      MS. BACON:  I PRODUCED RESPONSIVE INFORMATION

21  PURSUANT TO THE COURT'S ORDER.  I COULD NOT PRODUCE CHARLIE

22  FERRARA'S REPORT BECAUSE IT WAS SIMPLY NOT READY.  AND THERE

23  WAS INFORMATION IN THERE THAT IS NOT RESPONSIVE TO THE REQUEST.

24  AS I SAID THERE ARE SEVERAL -- I MEAN, THE MAJORITY OF THE

25  REPORT ARE INCREDIBLY INTIMATE CONVERSATIONS THAT HE HAS HAD

16

1   WITH HIS WIFE, INCLUDING PHOTOS OF HER.

2           THE COURT:  SO -- NO, I CAN APPRECIATE THAT.  I JUST

3   -- OKAY.  SO, I COULD BE MISTAKEN, BUT MY RECOLLECTION IS THAT

4   THERE WAS AN ORDER TO PRODUCE THIS INFORMATION ON MONDAY, JULY

5   17TH.

6           MS. BACON:  THERE WAS AN ORDER TO PRODUCE RESPONSIVE

7   INFORMATION, WHICH IS PRECISELY WHAT I DID.

8           THE COURT:  SO, THEN WHAT ARE YOU PRODUCING TODAY?

9           MS. BACON:  THAT IS ADDITIONAL RESPONSIVE

10  INFORMATION.

11          THE COURT:  OKAY.  WHERE DID THAT COME FROM?

12          MS. BACON:  FROM THE EXTRACTION REPORTS.

13          THE COURT:  DID YOU HAVE THAT ON THE 17TH OR BEFORE?

14          MS. BACON:  I BELIEVE -- I BELIEVE THE EXTRACTION

15  REPORT WE RECEIVED I THINK IT WAS THE SAME DAY.  SO, THERE WAS

16  -- THERE WAS NO ABILITY TO GO THROUGH IT AND PRODUCE THE

17  RESPONSIVE INFORMATION.

18          THE COURT:  SO -- YOU KNOW, I JUST -- I DON'T -- HELP

19  ME UNDERSTAND THIS.  WHEN I LITIGATED, IF I HAD AN ORDER AFTER

20  A CONFERENCE DIRECTING ME TO PRODUCE SOMETHING, AND I COULD NOT

21  COMPLY WITH THAT ORDER, I WOULD RACE TO FILE SOMETHING WITH THE

22  COURT SAYING I AM NOT ABLE TO COMPLY WITH YOUR ORDER, YOUR

23  COURT ORDER.

24          MS. BACON:  I PRODUCED RESPONSIVE INFORMATION

25  PURSUANT TO THE COURT'S ORDER.  I DON'T RECALL THAT THE COURT'S

17

1    ORDER SAID I WAS REQUIRED TO PRODUCE ALL RESPONSIVE

2    INFORMATION.

3              (BRIEF PAUSE.)

4              MS. BACON:  I UNDERSTAND.  I UNDERSTAND, YOUR HONOR.

5    I PRODUCED RESPONSIVE INFORMATION ON THE DAY THAT IT WAS -- THE

6    ORDER TO BE PRODUCED.

7              THE COURT:  YOU JUST CHOSE NOT TO PRODUCE ALL OF IT.

8              MS. BACON:  THE INFORMATION THAT I WOULD HAVE

9    OTHERWISE PRODUCED WOULD NOT HAVE BEEN RESPONSIVE.

10             THE COURT:  I DON'T -- YOU KNOW, THERE'S SO MANY

11   MOVING PARTS ON THIS CASE.  AND I WANT TO MAKE SURE THAT I

12   TRACK EVERYTHING.  BUT IT SOUNDS, MS. BACON, LIKE YOU'RE SAYING

13   YOU HAVE RESPONSIVE DOCUMENTS THAT YOU'RE GOING TO PRODUCE

14   AFTER THIS CONFERENCE CALL.

15             MS. BACON:  YES.  I DO HAVE RESPONSIVE INFORMATION

16   NOW THAT I'M ABLE TO PRODUCE.

17             THE COURT:  OKAY.

18             WELL, YOU KNOW, I -- YOU KNOW, MAYBE IT'S JUST PEOPLE

19   HAVE DIFFERENT EXPERIENCES.  BUT I DO THINK, MS. BACON, WHEN A

20   COURT SAYS TO PRODUCE RESPONSIVE INFORMATION, IT'S NOT

21   SATISFACTORY TO SAY YOU PRODUCED SOME RESPONSIVE AND THAT

22   YOU'RE GOING TO GET AROUND -- I'M NOT SAYING YOU'RE SAYING

23   THIS, BUT THEN YOU ARE ABLE TO THEN PRODUCE THE REMAINDER OF

24   THAT, THAT KIND OF -- WHEN YOU'RE READY OR WHEN YOU'VE HAD MORE

25   OPPORTUNITY TO REVIEW THE INFORMATION.

1           I THOUGHT IT WAS PRETTY CLEAR THAT -- FROM MS. WOLFF

2     AND MR. OTTEN THAT PART OF WHY THEY WERE BECOMING INCREASINGLY

3     CONCERNED WAS THE FILING OR THE ANTICIPATED FILINGS OF THE

4     SUMMARY JUDGMENT MOTIONS.  AND I JUST DON'T UNDERSTAND HOW NOT

5     FILING SOME -- OR, EXCUSE ME, NOT PRODUCING SOME INFORMATION

6     AND THEN -- YOU KNOW, I DIDN'T WRITE DOWN EVERYTHING, BUT IT

7     SOUNDS LIKE MS. WOLFF IS CHARACTERIZING THE SUMMARY JUDGMENT

8     MOTION THAT YOU FILED IS SAYING THERE'S NO EVIDENCE, THAT THE

9     PLAINTIFFS --

10          MS. BACON:  AND THE COMMUNICATIONS THAT WILL BE

11    PRODUCED IN THEIR ENTIRETY THAT ARE NOW DEEMED RELEVANT TO THIS

12    CASE BETWEEN THE PARTIES THAT THEY HAVE REQUESTED EVIDENCE THAT

13    FACT, THERE ARE NO COMMUNICATIONS RELATING TO THE ALLEGATIONS

14    MADE IN THIS CASE.

15          THE COURT:  SO, YOU'RE SAYING THAT WHAT YOU'RE

16    PRODUCING LATER TODAY IS NOT RELEVANT?

17          MS. BACON:  I'M SAYING IT'S RESPONSIVE IN TERMS OF

18    THE FACT THAT IT ASKED FOR COMMUNICATIONS RELATING TO THE

19    PARTICULAR INDIVIDUALS THAT THEY ASKED FOR IN THEIR REQUESTS.

20    AND THAT I'VE GONE THROUGH THIS LIST THAT WAS PRODUCED BY MR.

21    OTTEN WITH RESPECT TO THE ISSUE RELATING TO SANG LEE'S

22    DISCOVERY.  AND I BELIEVE THAT ALL OF THE INDIVIDUALS THAT ARE

23    ON THIS LIST HAVE BEEN INCLUDED IN THAT EXTRACTION REPORT AND

24    HAVE NOT BEEN REDACTED.

25          THE COURT:  AND THAT'S ALREADY IN THEIR POSSESSION?

1          MS. BACON:  NO.  THAT'S WHAT WILL BE PRODUCED TO THEM

2    TODAY.

3          THE COURT:  MS. BACON, I JUST --

4          MS. BACON:  BUT I DIDN'T HAVE THIS LIST -- I DIDN'T

5    HAVE THIS LIST UNTIL HE JUST PRODUCED IT THIS WEEK.  AND THESE

6    INDIVIDUALS WERE NOT INCLUDED IN THE DISCOVERY REQUESTS THAT

7    WERE ORIGINALLY SERVED BY PLAINTIFFS.

8          THE COURT:  ALL RIGHT.

9          MS. WOLFF, DO YOU WANT TO RESPONSE?

10         MS. WOLFF:  SURE.  THANK YOU, YOUR HONOR.

11         SO -- I GUESS I'M GOING TO -- I'M GOING TO TRY AND

12    ORGANIZE MY THOUGHTS, BUT I MIGHT END UP JUMPING AROUND A

13    LITTLE BIT.

14         BUT TO THE EXTENT THAT MS. BACON HAS SUGGESTED THAT

15    HER CLIENTS COULD DECLARE UNDER OATH WHAT EFFORTS THEY'VE

16    UNDERTAKEN, I'M NOT REALLY INTERESTED IN THAT BECAUSE, FOR

17    INSTANCE, CHARLIE FERRARA HAS ALREADY DECLARED UNDER OATH THAT

18    HE HASN'T REALLY TRIED THAT HARD.  SO, I'M NOT REALLY SURE WHAT

19    A DECLARATION WHICH COULD PRESUMABLY CONTRADICT THIS TESTIMONY

20    WHAT THAT WOULD ADD.

21         AND I -- TO THE EXTENT THAT, YOU KNOW, THEY'VE

22    PRODUCED SOME RESPONSIVE INFORMATION AND THEN THE REST TODAY,

23    THAT'S REALLY -- THAT'S NOT SATISFACTORY TO ME EITHER BECAUSE,

24    YOU KNOW, NOW WE'RE BURDENED WITH DIGGING THROUGH ALL OF THIS

25    INFORMATION AND SIMULTANEOUSLY OPPOSING EIGHT SUMMARY JUDGMENT

20

1   MOTIONS WHEN, IN FACT, WE SHOULD HAVE HAD THIS A WEEK AND A

2   HALF AGO.

3           AND THE COURT DID JUST GRANT OUR REQUEST FOR A

4   SEVEN-DAY EXTENSION.  BUT EVEN STILL, YOU KNOW, WE'RE

5   INCREDIBLY PRESSED FOR TIME HERE.  THIS IS INFORMATION WE

6   SHOULD HAVE HAD IN DECEMBER.  AND IT SHOULDN'T -- IT SHOULDN'T

7   FALL TO US, TO THE PLAINTIFFS, TO HAVE TO NOW BEAR THE BRUNT OF

8   THE DEFENDANTS' FAILURE TO -- FAILURE TO ADEQUATELY RESPOND TO

9   DISCOVERY OR TO DO THEIR DUE DILIGENCE.

10          AND TO MS. BACON'S COMMENT THAT THE EVIDENCE THAT

11  THEY'RE GOING TO BE PRODUCING TODAY IN HER OPINION WHILE IT'S

12  RESPONSIVE, IT STILL DOESN'T DEMONSTRATE EVIDENCE OF THEIR

13  WRONGDOING, I WOULD SAY THAT THE FACT THAT -- THAT THE EVIDENCE

14  -- THAT THE EVIDENCE IS NONEXISTENT DOESN'T MEAN THAT IT NEVER

15  EXISTED.  AND IT SEEMS THAT THESE DEFENDANTS' FAILURE TO

16  ATTEMPT TO OBTAIN THEIR CELL PHONE BILLS SORT OF -- AND THE

17  LOSS OF THAT EVIDENCE AS A RESULT IS SIMILAR TO WHAT NOW EXISTS

18  ON THEIR CELL PHONES SINCE THESE CELL PHONES WERE JUST IMAGED A

19  WEEK AND A HALF AGO OR TWO WEEKS AGO AT MOST.  THESE CELL

20  PHONES SHOULD HAVE BEEN IMAGED WHEN THE LAWSUIT WAS FILED BACK

21  IN MARCH.  AND THERE'S I THINK A VERY LEGITIMATE CONCERN ON

22  THE PLAINTIFFS' BEHALF THAT NOW A SIGNIFICANT AMOUNT OF

23  EVIDENCE HAS EITHER BEEN DELETED OR -- WHETHER INTENTIONALLY OR

24  NEGLIGENTLY.

25          AND TO THE EXTENT THAT MS. BACON HAS STATED THAT

1  FRANK FERRARA'S IMAGING REPORT DOESN'T SHOW THOSE TEXTS THAT HE

2  HAD WITH SANG LEE SHE -- I THINK HER EXACT WORDS WERE THAT

3  THESE -- THERE WAS NO COMMUNICATIONS THAT WERE RECOVERABLE.

4  THAT DOESN'T MEAN THAT THEY NEVER EXISTED.  IT JUST MEANS THAT

5  THEY'RE NOT THERE NOW.

6        AND, YOU KNOW, THERE'S A SIGNIFICANT PREJUDICE TO US

7  IN THE HIDING OF THIS EVIDENCE, THE DESTRUCTION OF THIS

8  EVIDENCE.  AND I'M NOT GOING TO SAY THAT IT WAS INTENTIONAL.  I

9  DON'T KNOW THAT.   I JUST KNOW THAT IT OCCURRED.  SINCE IT'S

10 CLEAR THAT SANG LEE THOUGHT THAT THESE WERE RESPONSIVE SINCE

11 THEY WERE INCLUDED ON A PRIVILEGE LOG, BUT, YET, NOW NO ONE CAN

12 SEEM TO FIND THEM.

13        AND, SO, YOU KNOW, I'M NOT REALLY SURE WHAT MORE WE

14 CAN DO HERE.  IT SEEMS THAT THERE WAS NO EFFORT ON THESE

15 DEFENDANTS' PART TO REALLY MAKE ANY EFFORT TO COMPLY WITH

16 DISCOVERY.  AND THE FACT THAT NOW THEY'RE TRYING TO DO IT AT

17 THE SAME TIME AS FILING A MOTION FOR SUMMARY JUDGMENT THEY'RE

18 GOING TO NOW PRODUCE EVIDENCE IT'S JUST -- IT'S NOT -- IT'S NOT

19 APPROPRIATE.  IT'S NOT PROPER.  AND IT'S INCREDIBLY

20 PREJUDICIAL.

21        THE LAST POINT I WOULD MAKE IS THAT WHILE THEY WERE

22 NOT SERVED IN THIS CASE UNTIL JULY, THEY WERE AWARE OF IT AT

23 THE TIME IT WAS FILED IN MARCH.  THEY'VE MADE COMMENTS TO THE

24 PRESS AT THE TIME.  AND I BELIEVE THERE'S A TEXT MESSAGE THAT

25 WAS PRODUCED BY I THINK ALAN JOHNSTON THAT INCLUDED CHARLIE

22

 1   FERRARA AND IT REFERENCED THE FACT THAT THE LAWSUIT HAD BEEN

 2   FILED.

 3          SO, TO SAY THAT THEY WEREN'T SERVED OR APPEARED IN

 4   THIS CASE UNTIL THE FALL, IT DOESN'T MATTER.  THEY WERE AWARE

 5   OF THE CASE BACK IN MARCH.

 6          THE COURT:  ALL RIGHT.

 7          MS. WOLFF, WHAT ARE YOU -- WHAT ARE YOU ASKING FOR,

 8   OR WHAT REMEDIES ARE YOU SEEKING?

 9          MS. WOLFF:  WELL, I THINK THAT -- I THINK AN ADVERSE

10   INFERENCE INSTRUCTION WOULD BE APPROPRIATE, THAT CHARLIE AND

11   FRANK FERRARA WERE INVOLVED IN THIS CONSPIRACY THAT WE'VE

12   ALLEGED TO COMMIT THE ACTS AND THE VIOLATIONS THAT ARE ALLEGED

13   IN THE COMPLAINT.  PERHAPS EVEN STRIKING THEIR SUMMARY JUDGMENT

14   MOTIONS, WHICH ARE ENTIRELY BASED ON THEIR PREMISE THAT THERE'S

15   NO EVIDENCE TO SUPPORT PLAINTIFFS' CLAIMS.  AND PERHAPS EVEN

16   SANCTIONS FOR THE REIMBURSEMENT OF OUR TIME AND HAVING TO DEAL

17   WITH THIS DISPUTE ON AN ONGOING BASIS.

18          THE COURT:  I THINK WITH RESPECT TO THE ADVERSE

19   INFERENCE AND THE STRIKING OF THE SUMMARY JUDGMENT MOTIONS,

20   THOSE ARE MATTERS THAT YOU HAVE TO TAKE BEFORE JUDGE -- THE

21   DISTRICT JUDGE, JUDGE OTERO.

22          MS. WOLFF:  OKAY.

23          THE COURT:  I THINK IF YOU ARE ASKING FOR SANCTIONS

24   WITH RESPECT TO YOUR TIME, MY PROPOSAL -- BECAUSE IT SOUNDS

25   LIKE MS. BACON IS GOING TO BE PRODUCING THE REMAINDER OR

23

1   ADDITIONAL INFORMATION LATER TODAY.  I GUESS MY PROPOSAL IS TO

2   SET THIS FOR A SANCTIONS MOTION.  AND LET ME JUST SEE WHEN WE

3   CAN DO THAT.

4          NEXT WEEK, AGAIN, IS DIFFICULT.  WE COULD DO IT I

5   SUPPOSE -- WE COULD TRY FOR THE -- WE COULD TRY FOR THE SECOND

6   WEEK OF AUGUST.  AND THAT MIGHT LET YOU CLEAR -- GET YOUR

7   RESPONSES TO THE SUMMARY JUDGMENT MOTIONS ON FILE AND THEN TURN

8   YOUR ATTENTION TO THIS.

9          MS. WOLFF:  SURE, YOUR HONOR.  EVEN PERHAPS EITHER

10  THE END OF THE SECOND WEEK OF AUGUST OR THE THIRD WEEK OF

11  AUGUST.

12         THE COURT:  OKAY.

13         MS. WOLFF:  JUST BECAUSE, YOU KNOW, LIKE YOU'VE SAID,

14  WE'VE GOT ALL THESE OPPOSITIONS ARE DUE ON THE 7TH.

15         THE COURT:  OKAY.

16         HOW ABOUT -- I LIKE THE -- I LIKE THE THIRD WEEK OF

17  AUGUST.

18         MS. WOLFF:  OKAY.

19         THE COURT:  AND, SO, WE CAN -- I TYPICALLY HEAR THE

20  MOTIONS ON WEDNESDAYS.  SO, WE COULD DO IT ON THE 16TH.

21         MS. WOLFF:  OKAY.

22         THE COURT:  AT 10:00 A.M.

23         AND THEN WHAT I'LL DO IS JUST ISSUE A MINUTE ORDER

24  SETTING THE BRIEFING SCHEDULE MAYBE JUST FOR THE WEEK BEFORE

25  FOR THE PARTIES TO FILE.  AND I'LL TRY -- I'LL TRY TO MAKE --

24

1    GIVE CLEAR DIRECTION IN THE MINUTE ORDER AS TO WHAT THE -- WHAT

2    THE COURT IS GOING TO DISCUSS.

3            IT SOUNDS LIKE, MS. WOLFF, WHAT YOU'RE ASKING --

4    SAYING ORALLY HERE IS THAT YOU WANT FEES AND COSTS FOR THE TIME

5    THAT YOU'VE SPENT TO -- WITH RESPECT TO OBTAINING THIS

6    DISCOVERY AS IT PERTAINS TO CHARLIE AND FRANK FERRARA.

7            MS. WOLFF:  THAT'S CORRECT, YOUR HONOR.

8            AND WITH RESPECT TO THE TIMING OF WHAT -- OF ANY

9    WRITTEN SUBMISSIONS, I'M WONDERING IF MAYBE WE EVEN SET IT OUT

10   THE FOLLOWING WEEK BECAUSE --

11           THE COURT:  SURE.

12           MS. WOLFF:  -- IF WE'RE DONE FILING SUMMARY JUDGMENT

13    --

14           THE COURT:  OKAY.

15           MS. WOLFF:  -- MATTERS ON THE 7TH, I'M NOT SURE HOW

16   QUICKLY WE COULD TURN AROUND A BRIEF ON THIS ISSUE --

17           THE COURT:  SURE.

18           MS. WOLFF:  -- IF IT WAS DUE MAYBE EVEN THE 9TH.  I

19   DON'T KNOW IF THAT WOULD GIVE US ENOUGH TIME.

20           THE COURT:  SURE.  SO, WE CAN EITHER DO THE HEARING

21   ON THE 23RD OR THE 30TH AND THEN WORK BACK FROM THERE.

22           MS. WOLFF:  OKAY.

23           THE COURT:  SO, DO YOU --

24           MS. WOLFF:  SO I'M NOT SURE --

25           THE COURT:  MAYBE --

1           MS. WOLFF:  -- HOW MUCH TIME -- LEAD TIME YOU'D LIKE

2      FOR THOSE SUBMISSIONS.

3           THE COURT:  WELL, IT'S ALWAYS -- IT'S ALWAYS NICE TO

4      HAVE A WEEK.

5           MS. WOLFF:  I'M SURE.

6           (LAUGHTER.)

7           THE COURT:  MS. BACON, WHAT IS YOUR SCHEDULE? -- IF

8      YOU'RE LOOKING AT EITHER THE 23RD OR THE 30TH AND THEN WORKING

9      BACK FROM THERE IN TERMS OF FILING SOMETHING.

10          DO YOU HAVE A --

11          MS. BACON:  I'M --

12          THE COURT:  -- PREFERENCE?

13          MS. BACON:  I'M AVAILABLE FOR THE HEARING ON EITHER

14     THE 23RD AND THE 30TH.

15          THE COURT:  OKAY.

16          MS. BACON:  I --

17          THE COURT:  ARE YOU -- ARE YOU THEN --

18          MS. BACON:  I CAN WORK WITH MY SCHEDULE IN TERMS OF

19     --

20          THE COURT:  OKAY.

21          MS. BACON:  -- DOING THE BRIEFING.

22          THE COURT:  OKAY.  OKAY.

23          MR. OTTEN:  YOUR HONOR, THIS IS VIC OTTEN.

24          I DON'T MEAN TO INTERRUPT US PICKING DATES, BUT I

25     WOULD LIKE TO THROW ONE IDEA OUT THERE AS WE SET HEARING DATES.

1        I -- WHAT I'M SEEING IN MY -- IN WHAT LITTLE HAS BEEN

2   PROVIDED TO ME CLEARLY IS EVIDENCE BEING DESTROYED.  AND, SO,

3   WHAT I WOULD LIKE TO DO IN ADDITION TO WHAT MY CO-COUNSEL IS

4   DOING IS I THINK I'D LIKE TO SET A MOTION TO COMPEL WITH

5   RESPECT TO LEE'S RESPONSES AND PERHAPS BRANT BLAKEMAN'S.

6        AND THEN THE COURT COULD HEAR THE ARGUMENTS WITH

7   RESPECT TO PRIVILEGES OR WHATEVER, MAKE THE FINDINGS OF FACT.

8   AND THEN WE COULD GO TO JUDGE OTERO WITH EVIDENTIARY SANCTIONS

9   OF A DIFFERENT NATURE.

10       BUT I'LL GIVE YOU A GREAT EXAMPLE.  WHAT WAS TURNED

11  OVER TO ME IN AN EXTRACTION REPORT THE OTHER DAY, IT DOESN'T

12  CONTAIN SOME THINGS THAT IT SHOULD.  BUT WHAT IS CLEAR IS ON

13  THE 29TH OF JANUARY EVERY CALL THAT WAS MADE TO OR FROM SANG

14  LEE AND BRANT BLAKEMAN WAS -- BLAKEMAN WAS DESTROYED.  AND IF

15  THE COURT -- OR DELETED.

16       AND IF THE COURT RECALLS, THAT THAT'S A VERY

17  SIGNIFICANT DATE.  IT'S A DATE THAT MY CLIENT THAT IS A POLICE

18  OFFICER GOT INTENTIONALLY RUN OVER BY A SURFBOARD.  AND WE

19  DON'T KNOW WHO DID IT.  BUT BLAKEMAN WAS OUT THERE AND SAYS HE

20  CAN'T REMEMBER WHO WAS OUT BECAUSE -- WHICH IS HARD TO IMAGINE

21  WHEN THERE'S ONLY FIVE SURFERS IN THE WATER.

22       IT'S ALSO THE DAY THAT DAVID MELLOW WAS HANGING OUT

23  WITH SANG LEE ON THE PORCH.  WE KNOW THAT BECAUSE THERE'S AN

24  INDEPENDENT WITNESS THAT SAYS SANG LEE POURED A BEER ON HIS

25  HEAD.  AND THEN IT'S THE DAY DAVID MELLOW GOT ARRESTED.

1            AND IT JUST -- IT'S JUST MORE THAN A COINCIDENCE THAT

2     ON THAT DAY EVERY MESSAGE ON THIS CALL LOG BETWEEN BRAD

3     BLAKEMAN -- WHO SAID IN HIS DEPOSITION, BY THE WAY, THAT HE

4     RARELY EVER TEXTS -- USED -- EVER TEXTED PEOPLE -- EVERY ONE OF

5     THOSE IS DELETED.

6            AND THEN WHAT WE WERE GIVEN IN THIS EXTRACTION

7     REPORTS THAT YOUR HONOR JUST ORDERED INDICATES THAT THERE WERE

8     HUNDREDS -- I DON'T KNOW IF HUNDREDS IS THE WORD BUT NUMEROUS

9     TEXT MESSAGES THAT WERE NOT DELETED.  AND WE HAVE NOT BEEN

10    GIVEN THOSE.

11           WE HAVE -- AND I'VE SAID THIS FROM DAY ONE -- AND I

12    KNOW THAT WHAT MAYBE THE COURT THOUGHT WAS IT WAS TOO EARLY --

13    THAT THIS WAS GOING TO HAPPEN.  BECAUSE IT WAS JUST OBVIOUS

14    WITH ALAN JOHNSTON, THIS COMPLETE DISRESPECT OF DISCOVERY OR

15    THE COURT, TO ME, THAT THIS WAS WHAT THESE GUYS WERE GOING TO

16    DO.

17           THEN WE SIT DOWN.  AND WE SPEND THOUSANDS OF DOLLARS

18    IN DEPOSITIONS.  AND YOU ASK THEM QUESTIONS SUCH AS DID YOU

19    HAVE ANY COMMUNICATIONS WITH ANY OF THESE PEOPLE SINCE FILING

20    THE LAWSUIT.

21           NO.  OR I CAN'T REMEMBER.

22           BUT WHAT WE -- WHAT WE CAN SEE NOW VERY, VERY CLEARLY

23    WHEN YOU TRIANGULATE MESSAGES TO PEOPLE, THEY WERE IN --

24    THEY'RE DESTROYED.  THEY'RE DELETED.  AND THEY WERE DELETED

25    AFTER THIS CASE WAS FILED.  WELL, WE DON'T KNOW WHEN BECAUSE

28

1    THE EXTRACTION REPORT CONVENIENTLY LEAVES OUT THE DATE THEY'RE

2    DELETED.

3            AND YOUR HONOR HAD ASKED COUNSEL FOR SANG LEE THE

4    OTHER DAY WHEN DID HE GIVE YOU THE PHONE OR SOMETHING TO THAT

5    EFFECT BECAUSE IT SEEMS LIKE THE COURT WAS GETTING THE SAME

6    FEELING THAT WE WERE.

7            SO, WHAT'S VERY -- I'D LIKE TO SET THIS UP SO I CAN

8    FILE THIS MOTION.  WE CAN PRODUCE EVIDENCE.  AND THIS COURT CAN

9    MAKE RULINGS, NOT JUST ON HOW MUCH MONEY THIS COST US, BUT THAT

10   CAN MAKE FINDINGS OF FACT BASICALLY -- WHEN DID THEY GET THE

11   PHONES, WHEN DID THEY GIVE THEM TO THEIR LAWYERS.  BECAUSE IT'S

12   NOT FAIR FOR ALL OF THEM TO GET TOGETHER AND JUST CONVENIENTLY

13   FORGET ABOUT STUFF AND THEN GET AWAY WITH NOT GIVING US THE

14   INFORMATION.

15           AND, THEN, THAT'S ALL I'M GOING TO SAY BECAUSE -- BUT

16   IF WE SET A DATE -- LET'S SET A DATE THAT I CAN FILE MOTIONS IN

17   ADDITION TO THE MOTIONS FOR SANCTIONS THAT ARE GOING TO BE

18   BROUGHT.  BECAUSE I AM GOING TO BRING THIS BEFORE JUDGE OTERO.

19   IT'S AS CLEAR AS DAY.  EVIDENCE WAS DESTROYED INTENTIONALLY.

20           THE COURT:  SO, I'M JUST LOOKING AT THE -- I'M TRYING

21   TO LOOK AT JUDGE OTERO'S ORDER HERE.  AND I SEE THAT DISCOVERY

22   CUTOFF IS AUGUST 7TH.  AND I DON'T KNOW IF JUDGE OTERO REQUIRES

23   THAT ALL MOTIONS -- ALL DISCOVERY MOTIONS BE FILED BEFORE THE

24   CLOSE OF DISCOVERY.  AND, SO, THAT'S MY ONLY CONCERN THERE, MR.

25   OTTEN.

1          IT SOUNDS LIKE YOU -- THERE'S A LOT GOING ON IN THE

2    CASE THAT -- AND YOU HAVE THIS EXTENSION OF SEVEN DAYS.  BUT I

3    THINK THAT'S GOING TO COINCIDE WITH THE CUTOFF OF DISCOVERY.

4    LET ME JUST --

5               MR. OTTEN:  I MEAN --

6               THE COURT:  I DON'T KNOW IF EITHER -- IF ANYONE KNOWS

7    HOW -- I'M JUST TRYING TO FIND HIS SCHEDULING ORDER, IF IT

8    GIVES ANY GUIDANCE.

9               (PAUSE IN PROCEEDINGS.)

10              MS. WOLFF:  I'M TRYING TO FIND THAT AS WELL, YOUR

11   HONOR.  I BELIEVE IT WAS -- THERE WAS ONE THAT WAS ISSUED ON

12   AUGUST 29TH, I THINK.

13              THE COURT:  OKAY.

14              MS. WOLFF:  AND THEN I THINK THERE WAS ONE ALSO

15   BEFORE THAT.

16              THE COURT:  RIGHT.  I SAW THE -- THE 29TH SETS THE

17   SCHEDULE, BUT SOMETIMES -- IT MIGHT BE ON THE WEBSITE.

18              MS. WOLFF:  HMM.

19              THE COURT:  OH, OKAY.  LET'S SEE.

20              (PAUSE IN PROCEEDINGS.)

21              THE COURT:  OKAY.  LET ME SEE.  LET'S SEE THE

22   INITIAL ORDER.

23              (PAUSE IN PROCEEDINGS.)

24              THE COURT:  I'M LOOKING AT DOCKET NUMBER 9.

25              (PAUSE IN PROCEEDINGS.)

1          THE COURT:  WELL, I'VE JUST GONE THROUGH IT.

2          I DON'T SEE ANY INDICATION -- ANY DIRECTION ABOUT

3    WHEN JUDGE OTERO WANTS THE DISCOVERY ORDER -- ANY MOTIONS

4    REGARDING DISCOVERY TO BE FILED.

5          BUT, MR. OTTEN, I DO THINK THAT YOU'RE GOING TO --

6          (PAUSE IN PROCEEDINGS.)

7          THE COURT:  OKAY.  SO, IT'S ON PAGE 9.  IT LOOKS LIKE

8    PARAGRAPH 19(D).  HE GIVES DIRECTION ABOUT THE -- HOW THE

9    DISCOVERY MOTION HAS TO GO BEFORE THE MAGISTRATE JUDGE, BUT

10   IT'S SILENT AS TO THE TIMING OF IT.

11         SO, I THINK THERE'S BEEN SOME DISCRETION THERE, MR.

12   OTTEN.  BUT I DO THINK THAT YOU WOULD HAVE TO GET A MOTION ON

13   FILE BEFORE THE CUTOFF OF DISCOVERY.  SO, I MEAN, THAT LEAVES

14   YOU -- THAT LEAVES YOU WITH ABOUT A WEEK -- A LITTLE BIT MORE

15   THAN A WEEK.

16         SO, I DON'T KNOW HOW YOU WANT TO PROCEED.

17         MR. OTTEN:  WELL, MAYBE WHAT WE COULD DO IS JUST PLAN

18   ON HAVING IT HEARD ON THE SAME DAY AS THE OTHER ONE THAT YOU'RE

19   SCHEDULING.  AND I'LL JUST GET ONE FILED OR I WON'T.  BUT, YOU

20   KNOW, IF I DON'T, THEN -- THEN WE'LL HAVE TO FIGURE OUT ANOTHER

21   WAY TO TAKE IT UP.

22         BUT I MEAN WHAT'S VERY CLEAR IS EVERYBODY THAT WAS

23   INVOLVED IN THIS AS COMMUNICATIONS GOING BACK AND FORTH TO EACH

24   OTHER ON THE DAYS THAT BAD THINGS HAPPENED.  AND THEY ALL

25   DELETED THE INFORMATION.  SO, I THINK IT'S IMPORTANT, YOU KNOW,

1  TO TEE IT UP.  BUT I GUESS IT'S IN MY HANDS TO SEE WHETHER I

2  CAN DO THAT IN A WEEK AND A HALF.

3            THE COURT:  OKAY.  OKAY.  ALL RIGHT.

4            SO, I DON'T KNOW -- THINK THAT WE SET -- PICKED A

5  DATE.  SO, THE 23RD OR THE 30TH.  EITHER OF THOSE WORKS FOR ME.

6            MS. BACON, DO YOU HAVE A PREFERENCE?

7            MS. BACON:  EITHER ONE WORKS FOR ME, YOUR HONOR.

8            THE COURT:  ALL RIGHT.

9            MS. WOLFF:

10            MS. WOLFF:  I DON'T -- YEAH, EITHER ONE IS FINE.

11            THE COURT:  ALL RIGHT.  LET'S GO AHEAD AND PICK THE

12  23RD --

13            MS. WOLFF:  OKAY.

14            THE COURT:  -- AT 10:00 A.M.

15            ALL RIGHT.  MS. BACON, ARE YOU -- WHERE ARE YOU

16  LOCATED IN LOS ANGELES?  WHERE DO YOU WORK?

17            MS. BACON:  MY OFFICE IS IN NEWPORT BEACH, YOUR

18  HONOR.

19            THE COURT:  OKAY.

20            MS. WOLFF.

21            MS. WOLFF:  I'M IN SAN FRANCISCO, BUT --

22            THE COURT:  OH, OKAY.

23            MS. WOLFF:  -- CERTAINLY IF YOU'D PREFER US TO BE

24  THERE IN PERSON, I CAN MAKE ARRANGEMENTS.

25            THE COURT:  NO, NO.  WE'LL JUST -- WE'LL DO IT

1   TELEPHONICALLY.

2           MS. WOLFF:  OKAY.

3           THE COURT:  OKAY.

4           ALL RIGHT.  AND, SO, THEN WE'LL LAY OUT A BRIEFING

5   SCHEDULE IN THE MINUTE ORDER.

6           IS THERE ANYTHING ELSE, MS. WOLFF?

7           MS. WOLFF:  NOT REALLY.  I MEAN, I GUESS IT'S

8   PROBABLY THE SAME ISSUE.  IT'S JUST THAT, YOU KNOW, I GREATLY

9   APPRECIATE THE COURT HEARING US ON THIS AND SETTING THIS

10  HEARING ON MONETARY SANCTIONS.  BUT IT STILL LEAVES US IN THE

11  PREDICAMENT OF HOW DO WE RESPOND TO THE SUMMARY JUDGMENT MOTION

12  WHEN, YOU KNOW, THEY'VE BEEN WITHHOLDING EVIDENCE ALL ALONG

13  AND, YOU KNOW, APPARENTLY NOW PRODUCING SOMETHING TODAY WHEN IT

14  SHOULD HAVE BEEN PRODUCED TWO -- YOU KNOW, A WEEK AND A HALF

15  AGO.

16          SO -- AND I GUESS -- IT SOUNDS LIKE OUR BEST STEP IS

17  TO SEEK AN ADVERSE INFERENCE INSTRUCTION FROM JUDGE OTERO.  BUT

18  I'M JUST, YOU KNOW, SORT OF WONDERING IF THERE'S ANYTHING --

19  ANY OTHER REMEDY THAT WE CAN OBTAIN FROM YOUR HONOR TO HELP

20  REMEDY THIS CURRENT SITUATION.

21          THE COURT:  WELL, IT SOUNDS LIKE WITH RESPECT TO THE

22  IMMEDIATE ISSUE OF GETTING THE INFORMATION, MS. BACON IS

23  PRODUCING -- MAKING ANOTHER ROUND OF PRODUCTION TODAY.

24          IS THAT CORRECT, MS. BACON?

25          MS. BACON:  YES, YOUR HONOR.

33

1          THE COURT:  OKAY.

2          I DON'T SEE THAT THERE'S ANYTHING ELSE FOR ME --

3          MS. WOLFF:  OKAY.

4          THE COURT: -- RIGHT NOW, MS. WOLFF, SO.

5          MS. WOLFF:  OKAY.

6          THE COURT:  OKAY?

7          MS. WOLFF:  OKAY.  THANK YOU.

8          THE COURT:  ALL RIGHT.

9          ANYTHING ELSE FROM ANYONE ELSE BEFORE WE ADJOURN?

10         OKAY.  ALL RIGHT.

11         THANK YOU, BOTH.

12         THANK YOU, EVERYONE.

13         MS. WOLFF:  THANK YOU.

14         MR. OTTEN:  THANK YOU.

15         (PROCEEDINGS CONCLUDED 3:45 P.M.)

16

17

18

19

20

21

22

23

24

25

34

1

2

3

4                    C E R T I F I C A T E

5

6          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
    FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
7   ABOVE-ENTITLED MATTER.

8

9   /S/ DOROTHY BABYKIN                    7/30/17
    _____      _____
10  FEDERALLY CERTIFIED TRANSCRIBER        DATED
    DOROTHY BABYKIN
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25