# EXHIBIT C

1

```
 1                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
 2                    WESTERN DIVISION - LOS ANGELES

 3

 4    CORY SPENCER, et al.,        )   Case No. CV 16-2129-SJO  (RAOx)
                                   )
 5         Plaintiffs,             )   Los Angeles, California
                                   )   Tuesday, July 25, 2017
 6              v.                 )   9:34 A.M. to 10:12 A.M.
                                   )
 7    LUNADA BAY BOYS, et al.,     )   Telephonic Conference
                                   )
 8         Defendants.             )
      _____)
 9

10

11
                         TRANSCRIPT OF PROCEEDINGS
12          BEFORE THE HONORABLE ROZELLA A. OLIVER,
                  UNITED STATES MAGISTRATE JUDGE.
13

14

15    Appearances:               See Page 2

16    Deputy Clerk:              Sandra L. Butler

17    Court Reporter:            Recorded; CourtSmart

18    Transcription Service:     JAMS Certified Transcription
                                 16000 Ventura Boulevard #1010
19                               Encino, California   91436
                                 (661) 609-4528
20

21

22

23

24
      Proceedings recorded by electronic sound recording;
25    transcript produced by transcription service.
```

```
 1   APPEARANCES:

 2

 3   For the Plaintiffs:        Otten Law PC
                                By:   VICTOR J. OTTEN
 4                              3620 Pacific Coast Highway, Suite 100
                                Torrance, California   90505
 5                              (310) 378-8533
                                vic@ottenlawpc.com
 6
                                Hanson Bridgett LLP
 7                              By:   SAMANTHA D. WOLFF
                                425 Market Street, 26th Floor
 8                              San Francisco, California   94105
                                (415) 777-3200
 9                              swolff@hansonbridgett.com

10

11   For the Defendants:        Veatch Carlson LLP
                                By:   JOHN E. STOBART
12                              1055 Wilshire Boulevard, 11th Floor
                                Los Angeles, California   90017
13                              (213) 381-2861
                                jstobart@veatchfirm.com
14
                                Lewis Brisbois Bisgaard & Smith LLP
15                              By:   TERA A. LUTZ
                                633 West 5th Street, Suite 4000
16                              Los Angeles, California   90071
                                (213) 250-1800
17                              tera.lutz@lewisbrisbois.com

18                              Law Offices of Mark C. Fields APC
                                By:   MARK C. FIELDS
19                              333 South Hope Street, Suite 3500
                                Los Angeles, California   90071
20                              (213) 617-5225
                                fields@markfieldslaw.com
21
                                Booth, Mitchel & Strange LLP
22                              By:   DANIEL M. CROWLEY
                                707 Wilshire Boulevard, Suite 3000
23                              Los Angeles, California   90017
                                (213) 738-0100
24                              dmcrowley@boothmitchel.com

25
```

3

```
 1  For the Defendants:      Bremer Whyte Brown & O'Meara LLP
    (Con't)                  By:   TIFFANY L. BACON
 2                           20320 SW Birch Street, 2nd Floor
                             Newport Beach, California   92660
 3                           (949) 221-1000
                             tbacon@bremerwhyte.com
 4
                             Kutak Rock LLP
 5                           By:   JACOB SONG
                             5 Park Plaza, Suite 1500
 6                           Irvine, California   92614-8595
                             (949) 417-0999
 7                           jacob.song@kutakrock.com

 8                           KEN BACON
                             (Contact information unavailable)
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    LOS ANGELES, CALIFORNIA, TUESDAY, JULY 25, 2017, 9:34 A.M.

2        (Call to Order of the Court.)

3            THE CLERK: Please be seated.

4            Calling Case No. CV 16-2129, *Spencer v. Lunada Bay*

5    *Boys*.

6            Counsel, please enter your appearance for the

7    record.

8            (Multiple speakers.)

9            VICTOR J. OTTEN:  Vic Otten for plaintiffs.

10           SAMANTHA D. WOLFF:  Samantha Wolff for plaintiffs.

11           TERA A. LUTZ:  Tera Lutz for Defendant Sang Lee.

12           DANIEL M. CROWLEY:  Dan Crowley also for Defendant

13   Sang Lee.

14           MARK C. FIELDS:  Mark Fields for Defendant

15   Angelo Ferrara and N.F.

16           JOHN E. STOBART:  John Stobart for Defendant

17   Brant Blakeman.

18           TIFFANY L. BACON:  Tiffany Bacon for defendants

19   Charlie Ferrara and Frank Ferrara.

20           KEN BACON:  Ken Bacon, Gonzales P.O.A. -- excuse me

21   -- Palos Verdes P.O.A.  Sorry.

22           JACOB SONG:  Jacob Song for the City of

23   Palos Verdes Estates and Chief Kepley.

24           THE COURT:  All right.  Good morning, everybody.

25           We are here today for the purpose of discussing the

5

1   in-camera production of the extraction report of the imaged
2   cell phone for Defendant Sang Lee.

3          As a preliminary matter, I -- we received an e-mail
4   yesterday indicating that there were other topics that the
5   parties wanted to discuss.  I am -- unfortunately, I'm not
6   available to do that.  I have a criminal calendar that I have
7   to begin moving on later this morning, but what we -- I
8   propose is that after this conference call that the parties
9   -- the relevant parties meet and confer to propose some
10  dates.  I think the dates are going to have to be for next
11  week, and if you could propose several dates and times, I
12  think that would be helpful, and then we'll just go from
13  there in terms of trying to coordinate a time that works best
14  for everybody.

15         MS. WOLFF:  Your Honor, if I may.  This is
16  Samantha Wolff.

17         THE COURT:  Yes.

18         MS. WOLFF:  So the only problem we have with that
19  is that the -- one of the issues that I wanted to discuss
20  relates to Charlie and Frank Ferrara and the production that
21  was supposed to occur last week, and we didn't receive part
22  of the production, we still haven't, and our summary judgment
23  opposition is due on next Monday, and their motion was filed
24  yesterday.  So we're now trying to oppose a motion without
25  discovery that we were supposed to get by court order.

1          THE COURT:  You said their summary judgment was

2  filed yesterday and your opposition is due Monday?

3          MS. WOLFF:  Uh-huh.  For all of the defendants

4  except for the City and Sang Lee.  We filed a request for an

5  extension of time yesterday, but obviously we haven't heard,

6  and I'm -- we're not going to assume that that will be

7  granted so --

8          THE COURT:  Okay.  Well -- all right.  Well, we

9  will -- we'll take a look at our calendar.  Again, that's --

10 I just -- I'm not in a position to be able to look at that --

11 or to turn to that today given that I have a criminal

12 calendar that I have to move.

13         MS. WOLFF:  Yeah.  I understand.  We had e-mailed

14 the Court on last Thursday in request for a time Monday or

15 Tuesday of this week.

16         THE COURT:  Right.  But that was never going to

17 happen in addition --

18         MS. WOLFF:  Okay.

19         THE COURT:  -- just because -- again, because the

20 calendar --

21         MS. WOLFF:  I had misunderstood the -- I --

22         THE COURT:  Oh.  I'm sorry.

23         MS. WOLFF:  Yeah.

24         THE COURT:  The calendar is Monday and Tuesday --

25 criminal calendar -- and then what happens frequently is that

1   you have continued matters and, as, I mean, you can all

2   appreciate, these are individuals who are detained so --

3           MS. WOLFF:  Yeah.

4           THE COURT:  And under the Rules, I have to turn to

5   those matters within a certain amount of time.

6           MS. WOLFF:  I understand.

7           THE COURT:  So -- okay.  So I guess what we'll just

8   have to do is sort out -- sort that out a little bit later.

9           Okay.  I think I heard Ms. Bacon?  She's -- you're

10  on the call; is that correct?  Ms. Bacon, are you there?

11          MS. BACON:  Yes, Your Honor, I'm here.

12          THE COURT:  Okay.  All right.  So in light of the

13  deadlines that the plaintiff is facing with respect to

14  oppositions, I am going to ask you to work diligently with

15  Ms. Wolff to propose multiple dates and times for the

16  remainder of the week so that the Court can attempt to get

17  this on calendar as quickly as possible.

18          MS. BACON:  Yes, Your Honor.

19          MS. WOLFF:  Thank you, Your Honor.

20          THE COURT:  All right.  Okay.  So -- and, Ms. Lutz,

21  are heard you are there; is that correct?

22          MS. LUTZ:  Yes.  I'm here.

23          THE COURT:  Okay.  Fantastic.

24          All right.  So thank you to everybody for providing

25  the information that the Court requested for the in-camera

8

1  review.

2          One question that I have for you, Ms. Lutz, is,

3  looking at the privilege log of the information that was

4  withheld, I believe that you indicated at our last hearing

5  that where you listed certain individuals, like defendants

6  Alan Johnston, Brant B. as reference points so --

7          MS. LUTZ:  Correct.

8          THE COURT:  Right.  Okay.  Good.  Your -- with

9  respect to what you produced on those pages, did you only

10 produce the information about the reference points -- so, in

11 other words, Brant B. or Alan Johnston -- and was everything

12 else redacted?

13         MS. LUTZ:  From my understanding of the question,

14 it's not just their names that were produced but also the

15 time stamp and all of those things in relation to those

16 names, then, yes.

17         THE COURT:  Okay.  But everything else -- then I

18 can assume that everything else on that particular page of

19 the extraction report was redacted?

20         MS. LUTZ:  Was redacted.

21         THE COURT:  Okay.

22         MS. LUTZ:  Yes.

23         THE COURT:  Okay.  And then let me ask you

24 something -- another question.  For -- let's take, for

25 example, a person by the name of David Melo -- M-e-l-o -- who

 1   I think is listed as "Mel" in Mr. Lee's contacts.

 2           MS. LUTZ:  Uh-huh.

 3           THE COURT:  Did you know -- or -- that -- when you

 4   were looking through the extraction report for responsive

 5   documents, I assume that you understood that "Mel" referred

 6   to David Melo?

 7           MS. LUTZ:  I would -- I would say yes.  I don't --

 8   I believe -- I believe so because I think that his name was

 9   listed on the request.  I would have to go back and review

10   the request, but I believe his name was listed there.  So I

11   would say yes.

12           THE COURT:  Okay.  So I think his name was listed

13   as "David Melo."  So what I'm trying to figure out is if we

14   have a disconnect between, maybe, how the person was listed

15   on the request and then the shorthand or nickname, moniker --

16           MS. LUTZ:  Right.

17           THE COURT:  -- that Mr. Lee has in his contacts for

18   that person.

19           MS. LUTZ:  Right.  I mean, I don't -- at the time

20   -- I don't recall offhand if at the time I knew that they

21   were related to the same person.

22           THE COURT:  Okay.  Because -- well, then you can

23   see where I'm going with that because then --

24           MS. LUTZ:  I can.  I can.

25           THE COURT:  Okay.  Okay.  And then the same --

10

 1              MS. LUTZ:  But --

 2              THE COURT:  Go ahead.  Go Ms. --

 3              MS. LUTZ:  I would -- because I would say there --

 4    that's the case also for, like, "Brant B."  You know, I went

 5    ahead and assumed it was Brant Blakeman because there is -- I

 6    do see there is a disconnect between, you know, the full

 7    names and the shorthand names that are on the phone.

 8              THE COURT:  Okay.  And I guess another individual

 9    who I have listed where that could -- there could, similarly,

10    be a disconnect would be Charlie Mowat -- or Mowat

11    (pronouncing), who I think the contacts is "Chachy,"

12    C-h-a-c-h-y, perhaps?

13              MS. LUTZ:  Oh.  Okay.  Yeah, that one I definitely

14    did not make the connection but --

15              THE COURT:  Okay.  Well, I guess, you know, it --

16    for me, then, it leads to the following question, Ms. Lutz --

17    and it seems like it would be reasonable to -- in evaluating

18    what is responsive, to talk to your clients -- client to say,

19    "Well, who is that?" or

20              MS. LUTZ:  Okay.

21              THE COURT:  -- "Is there another name?"

22              MS. LUTZ:  Okay.

23              THE COURT:  And now my question for -- and,

24    similarly, I think, to sit down with him when looking over

25    the requests -- for example, R.F.P.'s 10 and 11, any text or

1   e-mails with surfers who regularly surf or have regularly

2   surfed Lunada Bay -- to go through contacts in the cell phone

3   -- text messages, e-mails, et cetera -- to discuss with

4   Mr. Lee, "Well, who is this individual?  Is he a contractor?"

5           Okay.

6           "Is he a physician?"

7           All right.  That's not responsive.

8           "Who is this?"

9           "Oh, he's somebody that's" -- "that I go surfing

10  with at the bay."

11          MS. LUTZ:  Uh-huh.

12          THE COURT:  So I don't -- it sounds like that

13  hasn't been done, and I think it is appropriate for you to do

14  that, to look through this and then to talk to Mr. Lee to go

15  over the extraction report.

16          MS. LUTZ:  I agree.  And I think -- I looked over

17  the list of names that Mr. Otten provided to you, and I think

18  that's helpful as well as far as, you know, identifying who

19  are these, you know, surfers who regularly surf at

20  Lunada Bay.

21          THE COURT:  Okay.  All right.  Well, I think -- I

22  think that that's what needs to happen next.  And I think --

23  you have the list.  I'm just going over the list here.

24          I was -- and, Mr. Otten and Mr. Wolff, help me out

25  here.  I thought in looking at the R.F.P.'s, in particular,

1    that Ms. -- well, I mean, all of them but in particular that

2    I thought Ms. Lutz could focus on were R.F.P.'s 10, 11, 12,

3    13, 14 through 27, 30, and then 39 to 54.  And again, for

4    example, 39 to 54, that's where, I think, Mr. Lee can be

5    helpful.  Charles Thomas Mowat, what is his -- it looks like

6    it's "C-h-a-c-h-y" is how he might be referred to in Mr.

7    Lee's contacts.

8              Mr. Otten, Mr. Wolff -- I mean -- excuse me --

9    Ms. Wolff --

10             MR. OTTEN:  Your Honor, this is Vic Otten.

11             In general, the problem with the approach that the

12   Court is suggesting is that Monday we have an opposition to

13   Mr. Lee's summary judgment motion, and what we have found is

14   that we can triangulate phone calls, text messages, and

15   events happening that are the subject matter of our lawsuit,

16   and by even limiting it to this -- the names of this list,

17   there are still people that I don't know who they are.  We

18   have somebody that ran over my client, who is a police

19   officer, and ripped his hand open.  I still don't know who

20   that person is, although I can tell you the defendants know

21   who it is because there was only five people surfing that

22   morning.

23             So this information has been withheld for months,

24   it's relevant, and the privacy objections are ridiculous.  We

25   don't have time for them to go through this.  That was their

 1  opportunity to have done it for months.  We have a motion due
 2  and we've alleged civil conspiracy allegations, and those
 3  civil conspiracy allegations are Sang Lee sending an e-mail
 4  to people saying "Hey, there's a bunch of people coming" --
 5  "outsiders coming up on Monday.  Make sure you're there," or
 6  text messages "Hey, there's five kooks on the bluff.  Let's
 7  get there.  Things could get ugly" -- stuff like that -- and
 8  we don't have the time to sit there and wait for Sang Lee's
 9  lawyers to give us what we're entitled to.  We should just be
10  given the report, and there's protective orders in place in
11  this case, and the main thing is it's being withheld on a
12  privacy objection and there's no privacy between -- with
13  those things except under very rare circumstances, and they
14  didn't list that, like they should have, in the privilege log
15  so that we could have all determined this months ago.
16          I'm -- I have to write a summary judgment motion --
17  in fact, five of them, I think -- and they all relate to the
18  same types of information, and, by the way, which has
19  probably been deleted, as Your Honor pointed out.  I think
20  where we should be headed is towards adverse inferences and
21  spoliation issues because Mr. Lee said in his depo that he
22  was aware that he wasn't supposed to destroy evidence but
23  when -- just looking at the extraction log that we have, from
24  what little information we were given, it appears that he
25  did, and they all did, and I think to make us wait for

14

1  Mr. Lee's lawyers to sit down and go over this is just not

2  fair at this point.

3      We should just be given the information, we're

4  willing to sign a protective order, nothing -- there's -- can

5  almost assure you there's nothing bad in there except, maybe,

6  what his lawyer told me at the meet-and-confer, which is

7  photographs and stuff of him and women, but big deal.  I

8  don't care about those.  I want to see who they were talking

9  to because these people planned what they did, and really a

10  good example would be February 2nd, an *L.A. Times* article

11  comes out; February 3rd there are text messages from

12  Charlie Mowat to most of these guys -- I don't know if

13  Sang Lee was on those or not -- "Get to the bluff.  There's

14  five kooks"; February 3rd, Charlie Mowat and three other

15  individuals also send letters to city councilmembers saying

16  "Fire Chief Kepley"; and then, lo and behold, the *L.A. Times*

17  shows up and takes a picture of two of the defendants on the

18  bluff top.

19      It's coordinated, we're entitled to this

20  information, and I think the Court should maybe

21  (indecipherable) ruling on that -- on the privacy objection.

22  There's no privacy objection.  And then we move into the area

23  of give us the documents and then -- then that and adverse

24  inferences because you don't get to destroy documents,

25  especially in federal court.  I've never seen anything like

1   this in federal court out of 23 years, until this case, where

2   defendants are destroying documents, and that's really -- I

3   mean, that's how I feel.

4           THE COURT:  All right.  So your request, Mr. Otten,

5   is just -- is to have the entire extraction report unredacted

6   produced to you?

7           MR. OTTEN:  I would like it within the next three

8   hours.  It could be e-mailed to us.

9           MS. LUTZ:  Your Honor, may I be heard?

10          THE COURT:  Yes.  Yes, Ms. Lutz.  And in -- if you

11  could focus on -- I guess what concerns me is that the

12  plaintiffs have these deadlines looming, and I do appreciate

13  their argument that there really is not a lot of time left

14  for them because of the deadline and it -- they're -- it's

15  not reasonable for them to hope that there is an extension.

16          MS. LUTZ:  Well --

17          THE COURT:  Go ahead.

18          MS. LUTZ:  Sorry.

19          Your Honor, as I mentioned in the last hearing, you

20  know these documents were produced back in December.

21  Mr. Otten and I exchanged several meet-and-confer letters

22  throughout January, and we met in person on this exact issue

23  on February 1st.  I never heard anything about this until

24  May 25th.  So, you know, to now argue that they don't have

25  enough time to, you know, deal with this discovery issue is a

 1  little ridiculous because we were discussing this issue back

 2  in December, and this could have easily been handled at that

 3  time.

 4        So I don't understand why now, you know, they've

 5  waited to bring this issue to the Court and now they're

 6  claiming that they don't have enough time to review the

 7  documents and file their motion when they've had nearly six

 8  to seven months to do this.  It's been the same issue since

 9  February 1st in the in-person meet-and-confer with Mr. Otten.

10        THE COURT:  Well, but -- I do appreciate that

11  point.  I think I addressed it previously, which is there

12  have been a lot of moving parts on this case -- in this case

13  with respect to discovery, and I guess what concerns me is

14  when we have -- had our conversation earlier about what was

15  done, it sounds like in terms of the diligence there wasn't

16  -- there wasn't a sit down -- was not a sit down with your

17  client to figure out "Okay.  Well, who are these individuals?

18  Let's make sure that we have been comprehensive and thorough

19  in responding to these R.F.P.'s."

20        And if there was, really, kind of, I think, genuine

21  meeting and conferring back in May, it seems to me like this

22  was on the front burner, and I still don't understand --

23  don't understand why, given that Mr. Otten and Ms. Wolff

24  reached out to you in May, it takes until now, after the

25  Court's done an in-camera review and after just, you know, a

17

1   few hours of looking at the extraction report is now

2   concerned about stuff that may not have been produced.

3          MS. LUTZ:  Your Honor, can I be heard on that

4   issue?

5          THE COURT:  Oh, absolutely.  Please.

6          MS. LUTZ:  The reason, I would say, is that, you

7   know, it's such a broad scope, especially in regards to

8   Request for Production 10 and 11.  That list that Mr. Otten

9   provided the Court that I've had a chance to review, I --

10  half of those names I've never seen or heard before, and some

11  of them I heard recently during Mr. Mowat's deposition that

12  took place last Friday, but I think it would have been

13  helpful if there -- you know, a lot of these people my client

14  doesn't know and I -- so it's hard for me to come up with

15  names of people that he doesn't know to ask him whether he

16  knows them or not.

17         I think it would have -- I think this would have

18  been effective to have a list of names that Mr. Otten wanted

19  me to go through the extraction report to find.  Some of

20  those names were provided in their request for production,

21  and those names were produced and were unredacted.  I just --

22  I don't know how --

23         THE COURT:  Well, it's --

24         MS. LUTZ:  -- I could have --

25         THE COURT:  Well, but I think --

 1          MS. LUTZ:  -- communicated with my client about who

 2   these surfers are when sometimes he -- when he doesn't even

 3   know the names of them.

 4          THE COURT:  Well, but --

 5          MS. LUTZ:  I think that's a continual problem in

 6   this case that we've --

 7          THE COURT:  No, Ms. Lutz.  It's --

 8          MS. LUTZ:  -- found over and over again in these

 9   depos --

10          THE COURT:  Ms. Lutz?

11          MS. LUTZ:  -- is that a lot of these people --

12          THE COURT:  Ms. Lutz?

13          MS. LUTZ:  -- testified that --

14          THE COURT:  Ms. Lutz?

15          MS. LUTZ:  -- you know, they know that there's

16   other people surfing in the water --

17          THE COURT:  Ms. Lutz?

18          MS. LUTZ:  -- they can recognize their faces, but

19   they don't know their names.  And so that's the problem, I

20   think, that we've had in this case, and I think that's the

21   problem that it's now --

22          THE COURT:  Ms. Lutz, can you hear me?

23          MS. LUTZ:  I'm sorry?

24          THE COURT:  So I'm not at all persuaded by those

25   arguments for this reason:  It sounds -- they are not asking

19

1   your client or you to identify unidentified people.   As

2   extraction reports go, this is not that long, it's not that

3   dense, and what I haven't heard from you is that you sat down

4   with your client in a good -- to meet the good-faith effort

5   of going through, really, a pretty small document as document

6   reviews go to say, "Well, who is this individual?   Is this

7   someone who you surf with?"   And I think that, had that been

8   done initially, some of the issues that have arisen would

9   have been avoided, and I think that both you and your client

10  would have had a better grasp over the content of the

11  information in this extraction report.

12          So it wasn't done, and I don't take very well the

13  response that, "Well," somehow this is the plaintiffs' fault.

14  You have obligations to -- as an officer of the court to

15  respond to these discovery requests, to exercise due

16  diligence, and to speak to your client.   So -- and I

17  recognize that the discovery in this case has been

18  complicated and it's involved multiple individuals and we've

19  had multiple telephonic conferences on this, but I guess I

20  just -- I don't -- arguments somehow pushing back on the

21  plaintiff are not well received when it looks like there just

22  -- there hasn't been the same -- the thoroughness that, I

23  think, had it been done in the first place, would have

24  avoided some of the issues.

25          So in looking at the extraction report, seeing some

1   of the individuals identified in there -- Joe Bart, Charlie

2   Mowat, David Melo -- it's not clear to me that information in

3   the report relating to those individuals has been produced.

4   It sounds like, I think, you might need to go back and

5   refresh your recollection and talk to Mr. Lee about whether

6   or not that has been produced.  So those things need to

7   happen.

8          Mr. Otten's point that they have a very limited

9   amount of time, I think, does put on my mind why they

10  shouldn't be given the -- why shouldn't be given what they're

11  asking for, which is given that the clock is running out, why

12  not just produce the extraction report in its entirety?  I

13  see that there is sensitive information in there.  We can

14  draft a protective order.  I take Mr. Otten at his word when

15  he says he's not interested in some of the more sensitive

16  personal information contained on the extraction report; he

17  really wants to get to information -- texts, phone calls --

18  with the other individuals, and if it's subject to a

19  protective order, why isn't that sufficient?

20         MS. WOLFF:  Your Honor, if I may add one thing.

21  This is Samantha Wolff.

22         There is a protective order that's in place between

23  Mr. Lee and the plaintiffs and all the --

24         THE COURT:  Right.

25         MS. WOLFF:  -- and, actually, all the individual

1    defendants.

2           THE COURT:  The only thing -- you know I -- I will

3    say that this is -- I appreciate the arguments about the

4    privacy for Mr. Lee for cell phones, and I think all of us

5    can agree that we -- you know, cell phones can have -- you

6    can have pictures of your children, you can -- you can just

7    have personal information that you don't want generally

8    disseminated, even among attorneys, and if Ms. Lutz wanted a

9    more-tailored protective order for this particular document,

10   piece of evidence, I'll hear her on that.

11          Again, I don't want -- my big concern here,

12   Ms. Lutz, is that I hear Mr. Otten and Ms. Wolff saying that

13   they have this deadline of Monday, and so I just -- there's

14   just not enough time -- today is Tuesday -- for you to go

15   back and take a look at this.  Even if you spent 24 hours on

16   this, Ms. Lutz, and then talked to your client, that's

17   24 hours less time that Mr. Otten and Ms. Wolff have on this.

18          MS. LUTZ:  I mean, I can do this as quickly as

19   possible, if you're still considering me speaking with my

20   client and then getting back to you on this.  I mean, I can

21   do that in 24 hours, but if that's not fast enough -- you

22   know, my only hesitation is everything that you just said.

23   You know, there's a lot of very personal things, as there

24   would be in anyone's cell phone.  There may be some text

25   messages not between -- that are even between me and Mr. Lee,

22

1    but that issue is aside.

2          I mean, all -- I guess all I can say is that I'm

3    sure I can speak with my client within the next 24 hours, and

4    if that works, then that would be great.  If -- and that -- I

5    mean, that -- like I said, I can (inaudible) quickly as

6    possible, and if we want to put a 24-hour time limit, I can

7    make that.  If that is too long, then I'll leave that to the

8    Court's discretion.

9          THE COURT:  Okay.  Well, I do think -- Ms. Wolff,

10   Mr. Otten, you said that there's been a request for an

11   extension submitted to Judge Otero?  Was that ex parte or is

12   that a stipulation?

13         MS. WOLFF:  It was ex parte.

14         MR. OTTEN:  We tried to do it through a

15   stipulation, Your Honor, but nobody really called us back

16   except Mark Fields.

17         MS. WOLFF:  And Peter Haven.

18         THE COURT:  Okay.  All right.  Hold on just a

19   minute, please.  If everyone could just stand by.

20         (Pause.)

21         THE COURT:  All right.  Thank you.  I wanted to

22   confer with my law clerk, who has been working very hard and

23   diligently to help me on this.

24         And so, Ms. Lutz, here's what I propose:  With

25   respect to the extraction report, I am going to order that it

1   be produced.  I'm going to give you -- I'll give you until --

2   I'm going to give you until 2:00 o'clock to go through and

3   redact some of the sensitive photos that are on the

4   extraction report.  If you would like a super protective

5   order specifically for this extraction report, then you -- I

6   encourage you to talk to Ms. Wolff and Mr. Otten to get that

7   drafted and to the Court.

8           Ms. Lutz, is there anything else, while we're on

9   this conference call, that you can think of that is

10  particularly sensitive besides the photographs?

11          MS. LUTZ:  I believe there's at least one reference

12  to Mr. Lee's address, and, also, I would ask any

13  communication between me and Mr. Lee can get redacted.

14          THE COURT:  Okay.  All right.  So communications

15  between you -- well, between Mr. Lee and his attorneys, and

16  Mr. Lee's residence, and, then, the photographs.

17          MS. LUTZ:  Yes.

18          THE COURT:  Okay.  Do you know right now, Ms. Lutz,

19  if you -- just because it'll help -- I think help me in

20  planning -- as well as, of course, Ms. Wolff and Mr. Otten --

21  if you're going to want the super protective order?

22          MS. LUTZ:  I will, Your Honor.

23          THE COURT:  Okay.  All right.  So, again, that's

24  something that you're going to have to work on diligently

25  with the plaintiffs and if -- it's got to all happen by 2:00

1  because they need to get this information.  Okay?

2          MS. LUTZ:  Yes, Your Honor.

3          THE COURT:  All right.  Ms. Wolff, Mr. Otten,

4  anything else?

5          MR. OTTEN:  Your Honor, I would also request that

6  to the extent they have the actual text messages that are

7  referred to in that extraction report that they be produced.

8  I don't know what the report -- how much information is in

9  there, because they redacted it all, but to the extent that

10 that report refers to text messages that were withheld for

11 some reason that they be given to us.

12         And one -- you know, the importance of this is, as

13 Ms. Wolff mentioned when she requested a hearing, was the

14 Ferraras have given us nothing.  Even though the Court's

15 ordered it, they had waived all of their objections, and yet

16 we get several-hundred pages of claims of privilege and

17 things like that.  So -- and they've all filed summary

18 judgments.  So it's basically -- the gamesmanship here is not

19 fair.  So any documents they have, we need to get, in

20 addition to the extraction report.

21         And with respect to a super protective order, I can

22 understand the Court's concern, but I can also understand,

23 given the conduct of most of the defense counsel in this

24 case, it'll turn into something nobody can agree on, which

25 will take us past the 2:00 o'clock deadline, and they'll

 1    refuse to give us the information.  I don't see the need for

 2    the super protective order.  We used the Court's protective

 3    order off the court's Web site when -- and started this case,

 4    and we've all signed off to it, and we've all honored it.

 5    And again, like I said, we have no interest in Mr. Sang Lee's

 6    photographs or anything of that personal nature.  We're just

 7    trying to respond to summary judgment motions now, and the

 8    Federal Rules are pretty clear on people that have to

 9    supplement discovery, people that have to, you know,

10    cooperate, and now we're in this situation.

11            So the plaintiffs would request that extraction

12    report.  We don't want to see communications between Mr. Lee

13    and his lawyer, I have absolutely no desire to see naked

14    pictures of Mr. Lee or anybody, if that's what's in there,

15    and to produce the documents that they have.

16            THE COURT:  All right.  Ms. Lutz, so just to be

17    clear, the inability to reach an accord on a stipulated

18    protective order for the extraction report does not relieve

19    you of your obligation to produce the extraction report.

20            MS. LUTZ:  Yes, Your Honor.  And I'm planning on

21    using the original court protective order, primarily the

22    language from that, and just adding a few specific things

23    related to the extraction report.  So I'm not planning on,

24    you know, drafting a whole new document per se --

25            THE COURT:  Okay.

1          MS. LUTZ:  -- just adding a few lines, likely.

2          THE COURT:  Okay.  All right.

3          MS. LUTZ:  But, yes, I do understand that,

4    Your Honor.

5          THE COURT:  Okay.  All right.  And other -- and

6    again, just to be clear, other than what we've itemized, it's

7    going to be an unredacted extraction report.

8          MS. LUTZ:  Correct.

9          THE COURT:  Okay.

10          All right.  Mr. Otten, so the -- everything that

11   you have raised, then -- text messages, et cetera -- if it's

12   in the extraction report, it's going to be there, produced to

13   you, unredacted.

14          All right.  So the next -- Ms. Bacon, I hope that

15   you will keep in mind when -- as you continue to work with

16   plaintiffs' counsel, regarding what they're asking for for

17   the Ferraras, the way this conversation, this conference has

18   gone today.

19          And then what we'll do is look to hear from

20   Ms. Wolff, Mr. Otten, Ms. Bacon for proposed dates and times

21   later this week.

22          MS. WOLFF:  Thank you, Your Honor.

23          MS. BACON:  Yes.  That's fine, Your Honor.

24          THE COURT:  Okay.

25          MS. BACON:  I -- yes.

27

1          THE COURT:  Okay.  Thank you, Ms. Bacon.

2          MR. OTTEN:  Your Honor, if I could say one last

3   thing -- and thank you, by the way -- is I see issues coming

4   up with the City's discovery that we're probably going to

5   want to tee up for a hearing as well.  They still have not

6   produced things that they have to, and they've dumped

7   thousands and thousands of documents on us in the last two

8   weeks.  I've got three people reviewing them now eight hours

9   a day to try and figure out what the issues are, but I can

10  see that I'll be requesting a hearing on that in the next day

11  or so.  So if the City would like to meet and confer with us

12  as well and so we could put these dates on Your Honor's

13  calendar so it's convenient for Your Honor, that would be

14  something I would just request.

15         THE COURT:  All right.  Thank you very much.  We

16  will keep a look out for that and try to work in as much as

17  possible.  And, again, I apologize.  It really is -- the

18  criminal calendar, it eats up a lot of my time.  I have to go

19  someplace else and sit in a different courtroom for that, and

20  I can't leave until it's done so -- so, hopefully, we will be

21  able to schedule these other matters as quickly as possible.

22         Thank you very much, everybody, for participating

23  in today's conference.

24         MR. OTTEN:  Thank you, Your Honor.

25         MS. LUTZ:  Thank you, Your Honor.

28

1          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

2          THE CLERK:  Court is adjourned.

3      (Proceedings adjourned at 10:12 a.m.)

4  ///

5  ///

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

29

1

2

3

4                                CERTIFICATE

5        I certify that the foregoing is a correct transcript

6   from the electronic sound recording of the proceedings in the

7   above-entitled matter.

8

9   /s/ Julie Messa_____          August 18, 2017
    Julie Messa, CET**D-403          Date
10  Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25