HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
LISA M. POOLEY, SBN 168737
lpooley@hansonbridgett.com
SAMANTHA WOLFF, SBN 240280
swolff@hansonbridgett.com
CANDICE P. SHIH, SBN 294251
cshih@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

HANSON BRIDGETT LLP
TYSON M. SHOWER, SBN 190375
tshower@hansonbridgett.com
LANDON D. BAILEY, SBN 240236
lbailey@hansonbridgett.com
500 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone: (916) 442-3333
Facsimile: (916) 442-2348

OTTEN LAW, PC
VICTOR OTTEN, SBN 165800
vic@ottenlawpc.com
KAVITA TEKCHANDANI, SBN 234873
kavita@ottenlawpc.com
3620 Pacific Coast Highway, #100
Torrance, California 90505
Telephone: (310) 378-8533
Facsimile: (310) 347-4225

Attorneys for Plaintiffs
CORY SPENCER, DIANA MILENA
REED, and COASTAL PROTECTION
RANGERS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation, | CASE NO. 2:16-CV-02129-SJO (RAOx)<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS REQUEST FOR RECORDS FROM THE PERSONAL DEVICES OF PALOS VERDES ESTATES POLICE OFFICERS** |

| | | |
|---|---|---|
| Plaintiffs, | FILED CONCURRENTLY WITH DECLARATION OF SAMANTHA WOLFF | |
| v. | | |
| LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N. F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10, | Complaint Filed: | March 29, 2016 |
| | Trial Date: | December 12, 2017 |
| Defendants. | | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND..................................................................................2

    A. Plaintiffs Reminded The City To Preserve ESI And Actively Pursued Discovery From The City, Including Information Held By Police Officers ....................................................................................2

III. ARGUMENT .........................................................................................................5

    A. Plaintiffs Diligently Pursued the Records At Issue ................................5

    B. The City Improperly Refused To Preserve And Produce Police Officers' Personal Cell Phone Data..........................................................7

IV. CONCLUSION......................................................................................................7

## I. INTRODUCTION

Few of Defendants' discovery responses came easy in this matter, with Plaintiffs being forced to seek the Court's help at least 14 times. But Plaintiffs trusted the City to play fair because in California, state law requires transparency in government.[1] Further, courts have articulated higher ethical responsibilities for public lawyers than for members of the private bar.[2] Here, Plaintiffs believed the City would shoot straight as the records sought are obtainable by any member of the public – not just parties to active litigation. Unfortunately, Plaintiffs learned late that the City was negligent in responding to discovery at best, or had strained to interpret its responses in an artificial manner.

It became clear in late July/early August 2017 that the City never intended to comply with its discovery obligations.[3] Although the City boasts of a large production and claimed costs incurred, it dumped nonresponsive information from noncritical personnel while failing to target known critical data sources. Indeed, the City failed to search for relevant discovery at the outset, instead choosing to wait for Plaintiffs to file a motion to compel.

Plaintiffs understood – based upon the City's responses to interrogatories – that officers were not permitted to use personal devices for City business and did not use their devices. Plaintiffs, however, discovered in late June and July 2017 – after depositions and compelling the disclosure of a critical document – that officers do

---

[1] *See, e.g.*, California's sunshine laws (the Ralph M. Brown Act, Gov't Code §§ 54950 *et seq.*) and the California Public Records Act (Gov't Code §§ 6250 *et seq.*).

[2] The heighten ethical responsibilities of government lawyers applies when a private attorney is retained by a city. The special ethical duties require the public lawyer to further justice and not merely to advance the articulated desires of the officers embodying the entity in any particular matter. *See, People ex. rel Clancy v. Superior Court* (1985) 39 Cal. 3d 740, 746; *City of Los Angeles v. Decker* (1977) 18 Cal. 3d 860, 871.

[3] By example, after filing its summary judgment motion, the City produced over 2,900 items (documents, photographs, and videos), including important information produced *after* Plaintiffs' reply brief was filed.

communicate and associate with Bay Boys, and that the City had known this for over a year. Yet the City never searched, much less produced, any police officer's personal cell phone records.

Oddly, the City asserts Plaintiffs should have discovered the City's malfeasance sooner. But Plaintiffs diligently pursued discovery, as demonstrated below, and must not be penalized for the City's utter disregard of its duties.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs Reminded The City To Preserve ESI And Actively Pursued Discovery From The City, Including Information Held By Police Officers

On June 8, 2016 Plaintiffs emailed counsel for the City a litigation hold letter. (Wolff Decl., ¶ 3.) And, on August 5, 2016, during the Rule 26(f) meeting, Plaintiffs reiterated the importance of preserving smart phone information. (*Id.* ¶ 4.)

On October 20, 2016, Plaintiffs served document requests on the City that cover the information on its employees' personal devices. (Wolff Decl., ¶ 6.) After this, while in hindsight the City started its stall, the Plaintiffs met and conferred to obtain responsive records. Important dates include:

- **May 5, 2016:** The City hired an investigator who specializes in police misconduct investigations to evaluate potential City employee misconduct in leaking information that compromised the botched February 13, 2016 undercover operation into the "Bay Boys."[4] This Report identified: (a) Bay Boys Charles Mowat and Michael Thiel, (b) Captains Best and Velez as being part of the inner circle in the planned investigation, (c) that Captain Velez briefed the officers scheduled to work the operation, (d) Sergeant Barber and Officer Ackert as being long-term employees who interface with the Bay Boys, (d) that Detective Hellinga may have knowledge about who leaked the information, and that former officer Delmont had a close relationship with the Bay Boys and was dating Property Clerk Albao who may have overheard information on the planned undercover operation.

---

[4] This report was released to Plaintiffs on June 13, 2017 after Plaintiffs sought the Court's help. (Wolff Decl., ¶ 30.)

- **Oct. 20, 2016:** Plaintiffs serve document requests on the City seeking documents relating to any Plaintiff or any Defendant (Nos. 1, 2); a January 20, 2014 Martin Luther King, Jr. surfing event at Lunada Bay (No. 19); the Bay Boys (No. 21); the investigation into the source of the leak that compromised an undercover operation at Lunada Bay (No. 30); and the police department's efforts to address localism (No. 38).
- **Oct. 21, 2016:** The City writes to Plaintiffs regarding the scope of its ESI collection.
- **Oct. 24, 2016:** Plaintiffs agree to a meet-and-confer call to discuss the scope of discovery and remind the City of its obligation to identify custodians.
- **Nov. 4, 2016:** Plaintiffs and the City meet and confer and discuss the use of personal mobile devices by city employees while acting in the course and scope of their employment. The City states it is making efforts to address voluntary preservation of those devices.
- **Nov. 7, 2016:** The City states it would not produce certain information *without mentioning* personal devices of its police officers.
- **Nov. 8, 2016:** Plaintiffs write to the City regarding the scope of the City's preservation of documents.
- **Nov. 10, 2016:** The City writes to Plaintiffs that it "is not in possession, custody, or control of any personal devices of City police officers."
- **Nov. 18, 2016:** The City responds to Plaintiff Spencer's document requests.
- **Nov. 22, 2016:** Plaintiffs write to the City stating that they do not agree the City was not in possession, custody, or control of employees' personal devices and relevant information should be preserved and produced.
- **Dec. 29, 2016:** The City writes to Plaintiffs that it will not require police officers to produce *or preserve* personal data and includes a Dec. 28, 2016 letter from the Palos Verdes Police Officers' Association's ("POA") counsel.
- **Feb. 17, 2017:** Plaintiffs serve interrogatories to the City asking whether City officers use personal phones on duty.
- **March 6, 2017:** Plaintiffs and the City conferred over the outstanding production. The City claimed the amount of responsive data was "daunting" and again asked Plaintiffs for custodian names.
- **March 30, 2017:** The City responds to Plaintiffs' interrogatories, stating that City policy prohibits use of a personal device for work, so no police officer personal devices contain responsive information.

- **April 11, 2017 – June 2, 2017:** Plaintiffs and the City attempt to mediate their dispute and generally slow discovery efforts.
- **May 12, 2017:** Plaintiffs provided the City with a list of search terms, which the City agreed to run against its ESI. Plaintiffs also asked for the internal investigation report into the botched Feb. 13, 2017 undercover operation.
- **May 30, 2017:** The City claimed that it was still evaluating privileges that may apply to the year-old internal investigation and was awaiting the POA's position on production of the investigation report. Plaintiffs responded the City was obligated to produce the report irrespective of the POA's position.
- **May 31, 2017:** The City finally provides a privilege log in this matter, identifying one document – the investigatory report.
- **June 5, 2017:** The City initiated a call regarding its planned motion for summary judgment. Plaintiffs responded that the City was far behind in providing responses to the Plaintiffs' discovery demands.
- **June 7, 2017:** Plaintiffs sent the City a letter about outstanding discovery.
- **June 8, 2017:** The Court holds a telephonic hearing regarding the City's investigation report and ordered further briefing. (Doc. No. 246)
- **June 13, 2017:** The City produces the investigatory report which identifies officers with a close relationship to the Bay Boys, including Sgt. Barber.
- **June 22, 2017:** Plaintiffs depose Sgt. Barber. The POA and City lawyers instruct him not to answer questions about his cell phone number, data on his phone, and whether he preserved data. He said he communicates with Charles Mowat and Rick Delmont on his phone, both of whom are identified in the investigatory report. He also said it is common for officers to use their personal cell phones in the field. This deposition transcript became available July 10, 2017, but not final until August 16, 2017.
- **June 23, 2017:** Plaintiffs depose City Police Service Officer Placek, who identifies Sgt. Barber as knowing "a lot of the subjects that surf in the area."
- **July 12, 2017:** Plaintiffs depose 30(b)(6) Capt. Best, who states the police department oversees 30 or 40 phones related to its Disaster District Program, and confirmed that Defendant Blakeman used one such phone.
- **July 13, 2017:** Plaintiffs depose 30(b)(6) Anton Dahlerbruch (City Manager) and Sheri Repp Loadsman.
- **July 14, 2017:** City files its motion for summary judgment.
- **July 20, 2017:** Plaintiffs write to the City to demand a police operations plan

relating to a Martin Luther King Day 2014 or 2015 surfing event and police videos and photographs from these events that were mentioned during PMK Best's deposition but not previously produced.

- **July 25, 2017:** During a discovery hearing, Plaintiffs raised the issue of the City's failure to comply with discovery obligations.

- **July 26, 2017:** During another discovery hearing, Plaintiffs requested a date to file remaining discovery motions because evidence had been destroyed, understanding a motion needed to be filed by August 7, 2017.

- **Aug. 3, 2017:** The City finally produces the police operations plan that Cpt. Best prepared for the Martin Luther King Day 2014 surfing event, which was identified by PMK Best during his deposition. Plaintiffs received this document two weeks after demanding its production.[5]

- **Aug. 4, 2017:** The City produces video of the Martin Luther King Day 2014 event.

- **Aug. 7, 2017:** Plaintiffs filed motions to compel (Doc. Nos. 392 and 393), which among other things sought photographs referenced in an incident report, video from Lunada Bay Events, and police officer cell phone records.

- **Aug. 9, 2017:** The Court denied the motion to compel based on timeliness, but noted Plaintiffs' FRCP 56(d) motion, if granted, could allow Plaintiffs additional time to resolve discovery disputes.

(Wolff Decl., ¶¶ 2-43.)

Plaintiffs have acted diligently in pursuing the records of the police officers' personal devices.

### III. ARGUMENT

#### A. Plaintiffs Diligently Pursued the Records At Issue

Although Plaintiffs were informed on December 29, 2016 that the City would

---

[5] Counsel for the City represented to the Court that "the first time the report had been identified" was during PMK Best's deposition. Counsel also stated that the City "used the terms that the Plaintiffs have provided us to do searches electronically." (Wolff Decl., ¶ 43, September 5, 2017 Reporter's Transcript, 27:13-23.) But this report contains numerous responsive search terms, and documents relating to the Martin Luther King Day 2014 surfing event were specifically requested in discovery in October 2016. The City has never offered an explanation why this document was not previously identified or produced. This document was produced *after* Plaintiffs' reply to the City's summary judgment motion was due.

not require its officers to preserve or produce personal cell phone data, Plaintiffs did not become aware that relevant information actually existed until the summer of 2017. Until that time, Plaintiffs had been laboring under the misapprehension that the City would comply with its discovery obligations to investigate whether relevant information existed, and produce it without being compelled to do so.

But slowly over the course of the summer months, Plaintiffs discovered the City had withheld relevant evidence. Indeed, after initiating efforts to compel production, the City belatedly produced the internal investigation report of the botched February 13, 2016 undercover operation. The report, which was produced to Plaintiffs on June 13, 2017 - exactly one year after its completion - provided previously unknown links between officers and Bay Boys, including Sgt. Barber and Officer Delmont. When Sgt. Barber was deposed approximately a week later, on June 22, 2017, Plaintiffs learned that the City had *not* instructed him to preserve relevant data on his cell phone and, when he was instructed by his attorney not to answer whether he had deleted data from his cell phone, Plaintiffs were only left to believe that he had indeed deleted such data. Plaintiffs also began to learn of Sgt. Barber's friendships with the Bay Boys, tying in an "effective relationships" comment made by Chief Kepley. (Wolff Decl., ¶ 5)

Plaintiffs continued to lose faith in the City's candor and intentions when, around this same time, Plaintiffs discovered that the City repossessed Defendant Blakeman's City-issued cell phone, though the City never informed Plaintiffs of this fact. It was not until Plaintiffs demanded Blakeman's cell phone records and data that the City finally produced the responsive information. And in August 2017, the City produced a memorandum identified by Captain Best during his deposition that related to City policing efforts at a Martin Luther King Day 2014 surfing event (only after being prompted by Plaintiffs). Notably, this document was responsive to Plaintiffs' discovery requests and contained relevant search terms that Plaintiffs provided months earlier, yet it had not been produced or included in a privilege log.

1   These facts all led Plaintiffs to the realization that the City had ignored its
2   discovery obligations. Plaintiffs raised this issue at a July 25, 2017 telephonic
3   hearing, filed a motion to compel on August 7, 2017, and filed a motion for
4   administrative relief under FRCP 56(d). Plaintiffs continue to seek the production
5   of data from the police officers' personal devices that are responsive to Spencer's
6   document requests.

**B. The City Improperly Refused To Preserve And Produce Police Officers' Personal Cell Phone Data**

9   The City is obligated to preserve and produce personal phone records of its
10  employees and cannot shield records from search or disclosure under the expedient
11  of storing them in a private account. *City of San Jose v. Superior Court*, 2 Cal.5th
12  608 (2017); *see also*, *Comm'n on Peace Officer Standards and Training v. Superior
13  Court*, 42 Cal.4th 278 (2007). Officer communication with the Bay Boys is a public
14  record. (Wolff Decl., ¶ 5) Further, the City's proffered solution – that Plaintiffs
15  subpoena all 35 officers' records directly – is not permissible under FRCP 45(c)(1).
16  Rather, the burden was the City's to identify the custodians and preserve and collect
17  any relevant data. The City may not shift this burden to Plaintiffs, particularly after
18  withholding evidence and denying its existence.

**IV. CONCLUSION**

20  The City may not shirk its discovery obligations by adopting a wait-and-see
21  approach, hoping Plaintiffs would not discover the City's malfeasance before the
22  close of discovery. Plaintiffs therefore request, at a minimum, that the Court order
23  the City to collect the records of its officers' personal devices and review responsive
24  records *in camera* for potential production.

DATED: September 21, 2017      HANSON BRIDGETT LLP

By: _____
KURT A. FRANKLIN
Attorneys for Plaintiffs