# EXHIBIT 1

1                UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4    CORY SPENCER, an individual; DIANA )
     MILENA REED, an individual; and    )
5    COASTAL PROTECTION RANGERS, INC., a)
     California non-profit public        )
6    benefit corporation,                )
                                          )
7               Plaintiffs,              )
                                          )
8         vs.                            ) Case No.: 2:16-cv-2129
                                          )
9    LUNADA BAY BOYS; THE INDIVIDUAL     )
     MEMBERS OF THE LUNADA BAY BOYS,     )
10   including but not limited to SANG   )
     LEE, BRANT BLAKEMAN, ALAN JOHNSTON,)
11   AKA JALIAN JOHNSTON, MICHAEL RAE    )
     PAPAYANS, ANGELO FERRARA, FRANK     )
12   FERRARA, CHARLIE FERRARA AND CITY   )
     OF PALOS VERDES ESTATES; CHIEF OF   )
13   POLICE JEFF KEPLEY, in his          )
     representative capacity; and DOES   )
14   1-10,                               )
                                          )
15              Defendants.              )
                                          )

16   _____

17                    DEPOSITION

18                    Jeff Kepley

19            Monday, October 10, 2016

20                    Volume 1

21

22   Reported by:  Kathy L. Pa'u

23                    CSR No. 5684

24   Job No.   2454464

25   Pages 1 through 270

                                            Page 1

| | | |
|---|---|---|
| 1 | And so I think, in terms of what I was | 11:11:31 |
| 2 | communicating, at that time, that was my concern. | |
| 3 | Q And why were you concerned about a rift between | 11:11:41 |
| 4 | the police and the surfers? | |
| 5 | A Because I wanted cooperation. I wanted | 11:11:52 |
| 6 | compliance. I wanted safety. I want the beach to be | |
| 7 | open to everyone. And I wanted, if there were to be any | |
| 8 | criminal activity down there, I wanted it to be | |
| 9 | eliminated first through compliance and cooperation. | |
| 10 | And lastly, if need be, through arrests. Whereas, I | |
| 11 | think the articles had that reversed. | |
| 12 | Q And when you said, I can't have that right now, | 11:12:23 |
| 13 | I can't have a rift right now, what did you mean by | |
| 14 | that? | |
| 15 | A Well, we were at the point where, I think, my | 11:12:29 |
| 16 | staff was out there trying to build relationships and | |
| 17 | trying to gain compliance and cooperation. And I didn't | |
| 18 | want to jeopardize that. | |
| 19 | Q And was your desire to clarify the perception, | 11:12:46 |
| 20 | was that based upon the letters that you received from | |
| 21 | the community? Or was it based upon conversations that | |
| 22 | you had with members who were in positions of city | |
| 23 | leadership? | |
| 24 | A I never talked to anyone at city council. But | 11:13:06 |
| 25 | part of that was a result of my conversation with my | |

Page 91

```
 1    city manager, my boss.  It wasn't a direction.  It was

 2    just conversation.

 3             But it was also as a result of reading the      11:13:15

 4    newspaper articles that were focusing on that and

 5    articles on the Internet as far away as Australia,

 6    boasting about this Police Chief can't wait to make an

 7    arrest.  And I thought that's just hype.  The media is

 8    hyping this up.  And I need to put it back into

 9    perspective.

10        Q    What were the conversations with the city        11:13:37

11    manager about?

12        A    Just me expressing my concern to him that, what  11:13:42

13    I believe in, and what I said, and what I'm trying to do

14    is being hyped and spun up and used for publicity.

15        Q    Did he have similar concerns?                    11:13:56

16        A    I think so.                                      11:13:57

17        Q    Did he express that to you?                      11:13:58

18        A    He did.  I don't know specifically what he       11:14:03

19    said, but he concurred.

20        Q    Did he believe it was a problem?                 11:14:08

21        A    I don't know.                                    11:14:12

22        Q    Did he want you to clarify it with the media?    11:14:13

23        A    He concurred with my plan to do so.  He didn't   11:14:18

24    necessarily direct me to do that, or express an order,

25    if you will.  But he concurred that I was doing the
```

Veritext Legal Solutions
866 299-5127

```
 1    right thing.

 2         Q     Okay.  I think you also said in that article      11:14:30

 3    that many of the officers that have been with the Palos

 4    Verdes Estates Police Department have been there over 20

 5    years.  And they know the surfers.  And that

 6    establishing relationships, when possible, is effective

 7    policing.

 8              Do you recall saying that?                         11:14:53

 9         A     No.  But that's something I've said many times.   11:14:55

10         Q     Okay.  And do you think that establishing         11:14:58

11    relationships is more effective policing than arresting

12    someone who has perhaps crossed the line and make an

13    example out of them?

14              MR. WORGUL:  Objection; incomplete                 11:15:14

15    hypothetical.

16              MS. LUTZ:  Join.                                   11:15:23

17              THE WITNESS:  We do both.  We have effective       11:15:23

18    relationships for those that might be engaged in

19    non-public issues.  But when they cross the line and an

20    arrest is appropriate, we make the arrest.  We don't

21    preclude an arrest based on a preexisting relationship.

22    We do the right thing.

23    BY MS. WOLF                                                  11:15:37

24         Q     You said some of these police officers have       11:15:38

25    been with the police department for over 20 years.  To
```

Page 93

| | | |
|---|---|---|
| 1 | your knowledge, had they had preexisting relationships | |
| 2 | with surfers? | |
| 3 | A    Yeah, I believe.  So just based on the fact | 11:15:48 |
| 4 | that they had been there that long.  And some of the | |
| 5 | surfers grew up in that area and had been there that | |
| 6 | long, as well. | |
| 7 | Q    And I think you had said that it can be | 11:15:56 |
| 8 | sometimes unhealthily to establish a relationship.  If | |
| 9 | it's a buddy relationship, it makes it hard for the | |
| 10 | officer to do his job impartially.  Was that a concern | |
| 11 | of yours? | |
| 12 | A    Where did I say that? | 11:16:12 |
| 13 | Q    To the same reporter at The Daily Breeze. | 11:16:14 |
| 14 | A    Okay.  And was that a published article? | 11:16:16 |
| 15 | Q    It was. | 11:16:20 |
| 16 | MR. RICHARDS:  Are we not seeing it? | 11:16:22 |
| 17 | THE WITNESS:  I don't have that. | 11:16:24 |
| 18 | BY MS. WOLF | 11:16:25 |
| 19 | Q    I'm just asking:  Is that something that you | 11:16:25 |
| 20 | remember saying or not? | |
| 21 | A    I think it's fair to say that I had many | 11:16:33 |
| 22 | conversations with many reporters, some of which had to | |
| 23 | do with the finite detail of policing, where the | |
| 24 | relationships, the compliance and the enforcement all | |
| 25 | kind of come together. | |

Page 94

| | | |
|---|---|---|
| 1 | Q    Okay.  And do you, as you sit here now, do you | 11:16:49 |
| 2 | believe that it can be dangerous if police officers | |
| 3 | establish more of a buddy relationship with the people | |
| 4 | they are trying to police? | |
| 5 | MR. WORGUL:  Objection; calls for speculation, | 11:17:07 |
| 6 | incomplete hypothetical. | |
| 7 | THE WITNESS:  Based on my experience, it could | 11:17:13 |
| 8 | represent an increased challenge for that officer to | |
| 9 | make an arrest if he had a buddy relationship.  So in | |
| 10 | that context, yes.  But it's important to have those | |
| 11 | relationships in place. | |
| 12 | BY MS. WOLF | 11:17:31 |
| 13 | Q    And do you think -- do you have any concerns | 11:17:32 |
| 14 | that your officers have established a buddy relationship | |
| 15 | with any of the surfers at Lunada Bay? | |
| 16 | A    I don't have any information that suggests that | 11:17:41 |
| 17 | there is buddy relationships that would inhibit an | |
| 18 | officer's ability to enforce the law. | |
| 19 | MR. WORGUL:  I will interpose a late objection; | 11:17:57 |
| 20 | that it's vague and ambiguous as to what a buddy | |
| 21 | relationship is. | |
| 22 | BY MS. WOLF | 11:18:07 |
| 23 | Q    I'm going to ask that this email be marked | 11:18:27 |
| 24 | Exhibit 11. | |
| 25 | (Exhibit 11  was marked for | |

Page 95

```
 1                    REPORTER'S CERTIFICATE

 2              I, the undersigned, a Certified Shorthand

 3       Reporter of the State of California, do hereby

 4       certify:

 5              That the foregoing proceedings were taken

 6       before me at the time and place herein set forth;

 7       that any witnesses in the foregoing proceedings,

 8       prior to testifying, were administered an oath;

 9              That a record of the proceedings was made by

10       me using machine shorthand which was thereafter

11       transcribed under my direction;

12              That the foregoing transcript is

13       a true record of the testimony given.

14              Further, that if the foregoing pertains to

15       the original transcript of a deposition in a Federal

16       Case, before completion of the proceedings, review

17       of the transcript was not requested.

18              I further certify I am neither financially

19       interested in the action nor a relative or employee.

20              IN WITNESS WHEREOF, I have this date

21       subscribed my name.

22       Dated:   October 27, 2016

23

24                           Kathy L. Pa'u, CSR No. 5684

25


                                          Page 270
```

# EXHIBIT 2

**KUTAK ROCK LLP**

SUITE 1500
5 PARK PLAZA

IRVINE, CALIFORNIA 92614-8595

949-417-0999
FACSIMILE 949-417-5394

www.kutakrock.com

October 21, 2016

ATLANTA
CHICAGO
DENVER
FAYETTEVILLE
KANSAS CITY
LITTLE ROCK
LOS ANGELES
MINNEAPOLIS
OKLAHOMA CITY
OMAHA
PHILADELPHIA
RICHMOND
ROGERS
SCOTTSDALE
SPOKANE
WASHINGTON, D.C.
WICHITA

CHRISTOPHER D. GLOS
christopher.glos@kutakrock.com
(949) 417-0988

**VIA E-MAIL**

William T. Kellerman, ESI Liaison
wkellermann@hansonbridgett.com

Victor Otten, Esq.
vic@ottenlawpc.com
OTTEN LAW PC

Kurt A. Franklin, Esq.
kfranklin@hansonbridgett.com
HANSON BRIDGETT LLP

Samantha Wolff, Esq.
swolff@hansonbridgett.com
HANSON BRIDGETT LLP

Re:    *Spencer v. City of Palos Verdes Estates*

Dear Mr. Kellerman and Counsel:

Please permit this email to meet and confer on issues relating to the preservation, collection, search, review and production of Electronically Stored Information ("ESI").

As you will recall, the parties stipulated to the United States District Court, Northern District of California Guidelines for the Discovery of Electronically Stored Information ("Guidelines"). You indicated a familiarity with these Guidelines so it should come as no surprise that Plaintiffs' June 8, 2016 letter demanding preservation of "all e-mail, instant messaging, text messages, voice mail messages, image files (including PDF, TIFF, JPG, and GIF images), other electronic communications of the persons or entities identified above, word processing documents, spreadsheets, databases, calendars, telephone logs, video or audio files, and all other data or information generated by and/or stored on your existing or prior computers and storage media, or hosted on online storage systems, or existing on an Internet-based application, as well as any other media (e.g., hard disks, flash drives, backup tapes, etc.), as well as any social media posts or comments (e.g., Facebook, Instagram, Snapchat)" is overly broad and unduly prejudicial. The Guidelines specifically state that "...the Court discourages the use of overbroad preservation letters." In addition, the Plaintiffs' letter violates the Federal Rules of Civil Procedure ("FRCP") 34(b) in that Plaintiffs' demand for preservation of "all ESI within City Defendants' possession (including city council members, city commissioners, employees, assistants, agents, secretaries, etc.), as well as all that is under City Defendants' control" is not

4830-4603-0395.1

**KUTAK ROCK LLP**

William T. Kellerman, ESI Liaison
Victor Otten, Esq.
Kurt A. Franklin, Esq.
Samantha Wolff, Esq.
October 21, 2016
Page 2

reasonably particular.  Moreover, it demands ESI from sources that are not reasonably accessible because of undue burden or cost.  See FRCP 26(b)(2)(B).

The stipulated Guidelines require the parties to apply the proportionality standard set forth in FRCP 26(b)(1) to discovery of ESI.   In order to assure reasonableness and proportionality in ESI discovery, Plaintiffs should immediately advise, with as much detail as possible, the names of relevant City employee witnesses, the relevant date ranges, the sources of ESI Plaintiffs know or believe are likely to contain relevant information, and any other information that might assist the defense in determining what information to preserve.  In addition, Plaintiffs should advise us of what ESI sources are not believed relevant to their case so the City need not incur unnecessary expense in preserving difficult to access or irrelevant information.  On Plaintiffs providing the necessary information regarding ESI, we propose the parties meet to discuss developing a scope of preservation that is proportionate and reasonable, and not disproportionately broad, expensive, or burdensome.

We are in receipt of Plaintiffs' Requests for Production Set One, which our office received yesterday evening.   The initial review indicates the ESI requested in the written discovery is also overly broad (e.g., "… any and all miscellaneous files and file fragments and metadata, regardless of the media on which they reside and regardless of whether said ELECTRONICALLY STORED information exists in an active file, deleted file, or file fragment.").  Therefore, although the substantive scope of the documents at issue may have been narrowed, our proportionality concerns and the need for further ESI preservation specificity must still be addressed.

Given the recently served written discovery, we request Plaintiffs provide us with this information by no later than close of business on Thursday, October 27, 2016 and that the parties' meet and confer within shortly thereafter on these matters.

If you have any questions, please do not hesitate to contact us.

Very truly yours,

Christopher D. Glos

CDG:kp

cc:    Edwin J. Richards

# EXHIBIT 3

**SAMANTHA D. WOLFF**
SENIOR COUNSEL
DIRECT DIAL (415) 995-5020
DIRECT FAX (415) 995-3547
E-MAIL swolff@hansonbridgett.com

 HansonBridgett

November 22, 2016

VIA ELECTRONIC MAIL ONLY
jacob.song@kutakrock.com

Jacob Song
Kutak Rock LLP
8 Park Plaza
Suite 1500
Irvine, CA 92614

Re:   *Spencer v. City of Palos Verdes Estates*
      Our File No. 999985.369

Dear Mr. Song,

Thank you for your letter dated November 10, 2016 regarding our November 4, 2016 initial meet and confer call and follow-up letter. While we agree with your characterization that the purpose of the call was to discuss the scope of the City's preservation obligations as well as discuss Plaintiff's Request for Production, Set One, we agree with little else. In fact, the City's cooperative disclosure regarding technical issues may obviate any need for segmenting discovery by custodian, at least for certain classes of discovery.

***Preservation Issues***

First and foremost, the difficulty cooperating on preservation issues came from the City's repeated mantra that it was somehow Plaintiffs' duty to identify custodians *ab initio*. We simply disagree especially at this stage of the discussion. We did suggest that while certain classes of employees would be more likely to be custodians of relevant information, we cannot identify them with greater specificity without better discussion of such mundane details as the types of electronic systems in use by the City and who is authorized to create, send, receive, modify or store information on those systems. Your ESI liaison was not on the call as promised and that information is still not forthcoming. It is extremely relevant to the discussion of proportional preservation. In short, it is Defendants who are not cooperating and thus not complying with the obligations under the ESI Guidelines and the stipulation entered into by the parties to this action.

Communications Systems

The City utilizes various systems for communications and record-keeping that certainly hold relevant evidence. You represented the City managed those systems sufficiently to meet its PRA record retention obligations. Our problem stems from the fact that some of those systems are generally obvious and some aren't. The first step in a cooperative discussion is disclosure of those systems.

**Hanson Bridgett LLP**
425 Market Street, 26th Floor, San Francisco, CA 94105   hansonbridgett.com

12832515.1

Jacob Song
November 22, 2016
Page 2

For example, we can safely agree the City has an email system, however the boundaries of that system, limitations on which individuals are given accounts, the ability of the system to archive messages, the timing of and forms in which message archives occur and the reliability of an archive system to capture every message are hidden from us.  If email messages are properly archived, custodians are generally irrelevant.  If they are not properly archived, then a more detailed discussion of custodians might be appropriate.  As outlined in our prior letter, disclosing the names of user mailboxes the City has put on legal hold would help us help you limit preservation.

Similarly, we did briefly discuss the issues of other electronic messaging systems, such as text messaging and chat, whether based on centralized services (such as Lync, MS Communicator, Jabber, Skype, etc.), as well as mobile device carrier provisioned services.  We have similar issues with respect to what you have not discussed or disclosed as to which, if any, systems are in use, the boundaries of those systems, limitations on which individuals are given accounts, whether systems are city supported, simply allowed or blocked, the ability of those systems to archive messages, the timing and forms in which message archives occur and the reliability of the archive system to capture every message.

In similar light, we also did briefly discuss the issue of SMS and MMS text (carrier-based) mobile device messaging in some detail.  As we discussed on the call, to the extent the City is capturing those messages from the carrier to an archive, we would not need targeted device preservation.  Put another way, we would not need users to preserve messages on their phones where they are highly vulnerable to loss.  Further in such instances, identifying custodians is irrelevant as the data is in centralized control.  In furtherance, you disclosed and we discussed the burden on the City of periodic imaging of the devices to address our request to preserve deleted, but not overwritten relevant information.  This suggests the City is not properly archiving or otherwise meeting PRA retention requirements for those communications, which means any burden is of their own creation.  However, before we can agree to limit preservation in those instances, we need to know which employees are provided with those devices – information which is exclusively within the control of the City.

Further, we did identify and discuss certain web-based communications systems, referring specifically to Nextdoor.com and Nixle.com, that we expected the City to preserve.  The two were discussed as examples – to the extent other cloud, web or social media systems are used and contain relevant data, they should be preserved.  We extensively discussed the City's use of Nextdoor.com – a service of which you were not aware - and the need to preserve the City's relevant communications via that channel.  The fact you were not even aware of Nextdoor, or what it did, gave us grave concern that preservation had not occurred as of the date of either the March filing of the complaint or our subsequent June 8, 2016 preservation request letter.  You assured us the City took appropriate steps to preserve the Nextdoor.com information and that it is ongoing.  But the means by which the City preserves its social media presence has not been disclosed such that identification of relevant custodians is thwarted.  We did request the City preserve information for those city employees that have access to, post to, manage or respond to messages on those systems, and any other social media system leveraged by the city, as relevant custodians.

We also discussed the use of *personal* mobile devices by city employees while acting in the course and scope of their employment.  You indicated you were making efforts to address voluntary preservation of those devices.  However, we certainly did not agree that the City was

Jacob Song
November 22, 2016
Page 3

not in possession, custody or control of those devices.  To the extent the City allows such use to occur by policy (or lack thereof), allows users to connect those devices to city systems or systems under the city's control (such as email, Nextdoor or Nixle, among others) and those devices hold relevant information, the City has sufficient control over those devices such that the relevant information they hold should be preserved and produced in discovery.

Recordkeeping Systems

As discussed on the call, at his deposition, Chief Kepley identified two different record keeping systems in use by the police department.  We did not discuss other records management systems in more general use by the City.  Nor did we discuss details of the two systems Kepley identified.  Full explication of how the City creates and stores electronic documents, and whether or not those systems are centralized or distributed also has great bearing on whether or not information should be segmented by custodian.

**Plaintiffs' Request for Production, Set One**.

First and foremost, a cooperative understanding of the systems in use by the City would go a long way to both narrowing the requests as well as prioritizing the response.  If communications are reliably archived, the need to recover deleted but not yet overwritten messages is greatly attenuated.  It may well be that some systems are reliably archived (email) while others aren't (carrier text messages) such that agreement as to one type of electronic communication may not address deficiencies or limitations self-imposed by the city as to others.  However, at the end of the day, it is the City that selected and implemented these systems, presumably with their recordkeeping obligations in mind when they did so.  As such they bear the full burden for any failure on their part to ensure the information contained in the systems they deploy would be efficiently accessible to respond to requests for information.

We also explained on the call that we would not expect information from systems that pre-dates the adoption of the systems by the city.  Finally, certain of the requests included specific date ranges limiting the scope of production.

Jacob Song
November 22, 2016
Page 4


***Conclusion***

In summary, the need to identify custodians turns in part on the extent the City has taken control and centralized archives of communications and other ESI.  When asked in deposition questions about whether or not the information is held centrally or distributed across user devices, the City Manager deferred the answer to DTI, the company that employs your ESI liaison.  Mr. Dahlerbruch also provided testimony as to certain individuals likely to possess responsive and relevant information.  We therefore suggest that you coordinate with Mr. Dahlerbruch to identify these custodians, as he is in the best position to identify the relevant custodians, not Plaintiffs.   To the extent you believe further discussion is necessary as to the identity of relevant custodians for purposes of preservation, please first provide us a list of the custodians identified by Mr. Dahlerbruch and we can go from there.

Very truly yours,

*/s/ Samantha Wolff*

Samantha Wolff
Hanson Bridgett LLP


SDT:WTK

cc:    Edwin Richards
       Christopher Glos
       Antoinette Hewitt
       Kurt Franklin
       Victor Otten

# EXHIBIT 4

**KUTAK ROCK LLP**

SUITE 1500
5 PARK PLAZA

IRVINE, CALIFORNIA 92614-8595

949-417-0999
FACSIMILE 949-417-5394

www.kutakrock.com

December 29, 2016

ATLANTA
CHICAGO
DENVER
FAYETTEVILLE
KANSAS CITY
LITTLE ROCK
LOS ANGELES
MINNEAPOLIS
OKLAHOMA CITY
OMAHA
PHILADELPHIA
RICHMOND
ROGERS
SCOTTSDALE
SPOKANE
WASHINGTON, D.C.
WICHITA

JACOB SONG
jacob.song@kutakrock.com
(949) 417-0999

**VIA ELECTRONIC MAIL**

Samantha Wolff, Esq.
swolff@hansonbridgett.com
HANSON BRIDGETT LLP

   Re: *Spencer, et al v. City of Palos Verdes Estates, et al.*

Dear Ms. Wolff:

   Please permit this letter to respond to inaccuracies in your November 22, 2016 correspondence relating to your characterization of our communications to date.

   First, we communicated to your office our desire for the City's ESI liaison to listen to our meet-and-confer telephone conference for the purpose of assisting the City. We never made any "promise" as you claim regarding his attendance on the call or that his presence was an invitation for you to obtain information not otherwise permitted. As such, your characterization is grossly inaccurate.

   Second, we specifically communicated to you that we, among other things, preserved City-owned police department phone data and requested its police officers to voluntarily provide access to and preserve all data, if any, on <u>personal</u> electronic devices. We informed you that the City could not compel the officers to do so, because those personal devices are not within the City's control, possession, or custody. Moreover, the City cannot violate an officer's (or any employee's) privacy rights by accessing data on personal electronic devices without any evidence from Plaintiffs that those personal devices even hold work-related data. Further, Plaintiffs have failed to show that even if their personal electronic devices were used in the course and scope of employment, that any of that data is relevant to this lawsuit. As such, we directed you to take whatever action Plaintiffs deemed appropriate with respect to police officer personal electronic devices. You made no objection on the phone.

   I am attaching recent correspondence from Mastagni Holstedt, legal counsel for the Palos Verdes Police Officers' Association ("PVPOA"), wherein they refuse the City's multiple attempts to obtain the data on officers' personal electronic devices. They letter speaks for itself, and it is incumbent on Plaintiffs to obtain whatever information they deem relevant to their

4813-7594-1695.2

**KUTAK ROCK LLP**

Samantha Wolff, Esq.
December 29, 2016
Page 2

lawsuit from any police officers' personal electronic devices.  To reiterate, City is not in custody, control, or possession of the <u>personal</u> devices or the data on those personal devices of its police officers, nor does the City have any ability to compel the officers to provide such access or data. Thus, any request for such access or preservation should be directed to the Mastagni Holstedt as counsel for the PVPOA.  Counsel's contact information is on the letterhead of the attached correspondence.

Third, we did not advise you that we were unaware of Nextdoor, but we did tell you that we were unfamiliar with its application.

Going forward, we request you provide a more accurate account of any verbal discussions.

Sincerely,

Jacob Song

DAVID P. MASTAGNI
JOHN R. HOLSTEDT
MICHAEL D. AMICK
CRAIG E. JOHNSEN
BRIAN A. DIXON
STEVEN W. WELTY
STUART C. WOO
DAVID E. MASTAGNI
RICHARD J. ROMANSKI
PHILLIP R.A. MASTAGNI
KATHLEEN N. MASTAGNI STORM
SEAN D. HOWELL
WILLIAM P. CREGER
SEAN D. CURRIN
ISAAC S. STEVENS
PAUL T. DOLBERG
JEFFREY R.A. EDWARDS
DANIEL L. OSIER
JUDITH A. ODBERT
ANDREW R. MILLER
ERIN M. DERVIN
KYLE A. WENDE
EDWARD W. LESTER
KENNETH A. BACON

Sacramento Office
1912 I Street
Sacramento, CA
95811-3151
(916) 446-4692
Fax (916) 447-4614

Tax ID #94-2678460

KEVIN A. FLAUTT
GREGORY G. GOMEZ
ACE T. TATE
JOHN H. BAKHIT
GRANT A. WINTER
IAN B. SANGSTER
JOSHUA A. OLANDER
KRISTOFOR K. HELM
CAMERON S. HUEY
DUSTIN C. INGRAHAM
LAURIE E. DANIELS
CAROLYN M. ORR
SHAWN B. COLLINS
TASHAYLA D. BILLINGTON
DAVID L. KRUCKENBERG
MATTHEW S. KANE
ANDREW J. COLLINS
HOWARD A. LIBERMAN
CEZAR J. TORREZ
CARL C. LARSON
DANIEL L. RAINSBURY
JOSEPH R. YALON
JOHN J. BOSTANZOGLOU
GREGORY J. THOMING
PHILLIP J. EBSWORTH



**MASTAGNI ☰☰ HOLSTEDT**

*A Professional Corporation*

Ontario Office
3400 Inland Empire Blvd STE 101
Ontario, CA
91764-5577
(909) 476-3560

Chico: (530) 895-3836
San Jose: (408) 292-4802
Stockton: (209) 948-6158

www.mastagni.com
*All Correspondence to Sacramento Office*

December 28, 2016

Christopher D. Glos                    *Via E-Mail* **Christopher.Glos@KutakRock.com**
Kutak Rock, LLP
5 Park Plaza, suite 1500
Irvine, CA 95811

      Re:    Spencer v City of Palos Verdes

Dear Mr. Glos:

As we discussed, my firm has been retained to represent the Palos Verdes Police Officers' Association (PVPOA) regarding the "Data Hold" request in connection with the *Spencer v City of Palos Verdes, et al.* case and discovery of personal electronic devices of its members. In this regard, we have been authorized, if necessary, to intervene in the *Spencer* case to protect the privacy rights of the members of the PVPOA.

As you pointed out in your meet and confer letters with plaintiffs' counsel, their June 8, 2016 letter demanding preservation of evidence, including electronically stored information ("ESI") pertaining to the *Spencer, et al. v City of Palos Verdes, et al.* lawsuit is extremely overbroad and disproportionately burdensome on the City and the Police Department. Plaintiff Spencer's Request for Production of Documents is likewise vague and overbroad with respect to the demand for ESI, particularly as that demand may apply to non-defendant officers employed with the City of Palos Verdes Estates Police Department.

Our concern relates to efforts by the plaintiffs, through a request for production of documents served on the City of Palos Verdes Estates, or by Chief Kepley or the City in connection with their efforts to respond to a request for production, to obtain access to personal electronic devices owned/used by officers employed by the City of Palos Verdes Estates Police Department or to impose improper and burdensome restrictions on their ability to manage personal data on such devices.

None of the officers of the City of Palos Verdes Estates Police Department officers are defendants in the *Spencer* case, or even identified in the complaint. While the complaint refers to a couple of instances where reports of incidents were allegedly made to unidentified officers, nothing in the complaint even remotely suggests that any officers of the City of Palos Verdes

Christopher D. Glos
December 28, 2016
Page - 2 -

Estates Police Department ever used a personal electronic device to communicate regarding any
of the matters alleged in the complaint, much less that they did so during the course and scope of
their employment.

It is our positon that to the extent the request for production of documents or the
preservation letter may be directed to personal electronic devices owned or used by officers of the
City of Palos Verdes Estates Police Department, the requests are clearly overbroad and violate the
privacy rights of the officers with respect to information which may be stored on such devices.
Moreover, disclosure of private information on personal electronic devices could potentially
expose officers to discipline for matters wholly unrelated to the *Spencer* action simply based on
departmental disapproval of the content.

In addition, the demand for preservation of ESI is so broad that when applied to an officer's
personal electronic devices it could potentially expose an officer to disciplinary action simply for
deleting wholly unrelated and irrelevant personal photos, text messages, e-mails or other data and
it also unreasonably would restrict an officer's right and ability to manage their personal electronic
devices.

In this regard, efforts by the City, Chief Kepley or the Department to obtain access to
personal electronic devices owned/used by officers employed by the City of Palos Verdes Estates
Police Department would violate the personal privacy rights of the officers under the State of
California and United States Constitutions as well as their statutory protections under Labor Code
§980, the California Electronic Communications Privacy Act (Penal Code 1546, et seq,), the
Stored Communications Act (18 USC § 2701, et seq.), the California Comprehensive Computer
Data Access and Fraud Act (Penal Code §502) and other state or federal privacy, labor or electronic
data statutes.

It is also our position that personal electronic devices owned/used by officers employed by
the City of Palos Verdes Estates Police Department are not under the care, custody or control of
the City of Palos Verdes Estates or the Department and, therefore, are beyond the proper scope of
a request for production served by plaintiffs. And, even assuming for the sake of argument that
personal electronic are arguably are considered within the care, custody or control of the City or
the Department (which they are not), the information on such devices is protected by the officers'
rights of privacy and statutory protections as discussed above.

The foregoing is not intended to set forth all potential defenses, privileges, rights and issues
regarding attempts to access personal electronic devices and ESI of officers employed at the City
of Palos Verdes Estates Police Department and the Association and its member expressly reserve
any and all rights, privileges and defenses they may have with respect to discovery regarding their
personal information and/or personal electronic devices.

While the PVPOA is open to a solution which does not violate the right of privacy of its
members, we object to the attempts to impose overbroad and burdensome restrictions on the rights
of officers to use their personal electronic devices and the overboard and invasive attempts to gain
access to such devices in violation of the officers' rights of privacy as discussed above. In this

Christopher D. Glos
December 28, 2016
Page - 3 -

regard, we are fully prepared to intervene in the *Spencer* case to protect the privacy rights of the
members of the PVPOA.

     If you and/or plaintiffs' counsel would like to discuss the foregoing and possible resolution
of this dispute regarding access to personal electronic devices, please let me know as we look
forward to the opportunity to resolve this without the necessity of litigation.

     Sincerely,

     MASTAGNI HOLSTEDT
     A Professional Corporation

     KENNETH E. BACON

KEB:ff