EDWIN J. RICHARDS (SBN 43855)
Email: Ed.Richards@kutakrock.com
ANTOINETTE P. HEWITT (SBN 181099)
Email: Antoinette.Hewitt@kutakrock.com
CHRISTOPHER D. GLOS (SBN 210877)
Email: Christopher.Glos@kutakrock.com
KUTAK ROCK LLP
Suite 1500
5 Park Plaza
Irvine, CA 92614-8595
Telephone: (949) 417-0999
Facsimile: (949) 417-5394

Attorneys for Defendants
CITY OF PALOS VERDES ESTATES and
CHIEF OF POLICE JEFF KEPLEY

**[EXEMPT FROM FILING FEES PURSUANT TO GOVERNMENT CODE § 6103]**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA; WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON aka JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA and N.F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10,<br><br>        Defendants. | Case No. 2:16-cv-02129-SJO-RAO<br><br>Assigned to District Judge: Hon. S. James Otero; Ctrm: 10C<br><br>Assigned Discovery: Magistrate Judge: Hon. Rozella A. Oliver<br><br>**DEFENDANTS CITY OF PALOS VERDES ESTATES AND CHIEF OF POLICE JEFF KEPLEY'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>[Filed concurrently with Declarations of Tony Best, Marcelle Herrera, Linda Williams, Gregory Robinson, Wesley Wong, Jacob Song, and Christopher Glos]<br><br>Complaint Filed: March 29, 2016<br>Trial: February 6, 2018 |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  RELEVANT BACKGROUND FACTS ........................................................ 2

    1.  Disaster District Program ................................................................... 2

    2.  Discovery of the DDP Phone in Defendant Blakeman's Possession ........................................................................ 3

    3.  Preservation of the DDP Phone ......................................................... 5

    4.  Plaintiffs Early Knowledge of the DDP Phone ................................. 5

III. PROCEDURAL HISTORY ........................................................................... 8

IV.  ARGUMENT ................................................................................................. 9

    1.  Federal Rule of Civil Procedure 37(e) ............................................... 9

    2.  The Duty to Preserve Arose When the City Knew or Should Have Known the Relevance of the DDP Phone ....................... 9

    3.  The City Defendants Took Reasonable Steps to Preserve the DDP Phone .................................................................. 11

    4.  The Lost Information Was Replaced and Used in Plaintiffs' Supplemental Opposition to the City's Motion for Summary Judgment ........................................................ 12

    5.  Sanctions Are Not Appropriate Against the City Defendants ............ 12

        A.  Plaintiffs' Are Not Prejudiced .................................................. 13

        B.  If there Is Prejudice, Plaintiffs Inflicted it Upon Themselves ................................................................................ 13

        C.  There Is No Intent to Deprive Plaintiffs of Information .......... 15

V.   CITY IS ENTITLED TO ATTORNEYS' FEES ......................................... 16

VI.  CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

**Cases:** **Page**

*Compass Bank v. Morris Cerullo World Evangelism* (S.D. Cal. 2015)
    104 F.Supp.3d 1040 ............................................................................................ 9

*De Shaney v. Winnebago Cty. Dep't. of Soc. Servs.* (1988)
    489 U.S. 189 .................................................................................................... 1

*In re Citric Acid Litig.* (9th Cir. 1999)
    191 F.3d 1090 .................................................................................................. 9

*In re Napster, Inc. Copyright Litig.* (N.D. Cal. 2006)
    462 F.Supp.2d 1060 ........................................................................................ 9

*Leon v. IDX Systems Corp.* (9th Cir. 2006)
    464 F.3d 951 ................................................................................................. 13

*Monell v. Dep't. of Soc. Servs.* (1978)
    436 U.S. 658 .................................................................................................... 1

*Ramos v. Swatzell,*
    2017 Lexis 103014 *16 (C.D.Cal. June 5, 2017)
    Case No. ED CV 12-1089-BRO ................................................................. 13

**Federal Statutes:** **Page**

FED. R. CIV. P. 26(b)(1) ......................................................................................... 14

FED. R. CIV. P. 34(b) .............................................................................................. 13

FED. R. CIV. P. 37(a)(5)(B) ..................................................................................... 16

FED. R. CIV. P. 37(e) ........................................................................... 9, 10, 11, 12, 13

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendants City of Palos Verdes Estates and Chief of Police Jeff Kepley (collectively, the "City") hereby submit their Opposition to Plaintiffs, Cory Spencer, Diana Milena Reed, and Coastal Protection Rangers' (collectively, "Plaintiffs") Sanctions Motion ("Motion").

## I. INTRODUCTION

Plaintiffs complain that they have been prevented access to, and surfing at, Lunada Bay due to the City's discrimination against non-resident surfers. The only remaining claim against the City is for violation of equal protection rights. That claim is currently subject to summary judgment on the basis that Plaintiffs cannot establish liability under *Monell v. Dep't. of Soc. Servs.* (1978) 436 U.S. 658 (discrimination by policy, custom or ratification) and/or *De Shaney v. Winnebago Cty. Dep't. of Soc. Servs.* (1988) 489 U.S. 189 (no duty of state to protect individuals against one another).

Plaintiffs, aware of the lack of evidence against the City, hope to defeat the City's summary judgment by arguing phantom discovery abuses. First, Plaintiffs requested the Court deny summary judgment based on an alleged failure to produce personal data from police officers' personal cell phones. This Court rejected that argument based on Plaintiffs' lack of diligence. Next, Plaintiffs urged the Court in their Supplemental Opposition to deny summary judgment based on a failure to preserve former Defendant N.F.'s cell phone data. The City then reminded Plaintiffs that the N.F. cell phone extraction report had been previously produced in litigation. Now, Plaintiffs demand the Court deny summary judgment because the City allegedly failed to preserve data from a city-owned cell phone.

As will be shown, the City was reasonable in preserving the phone after learning of its potential relevance. The City had no prior knowledge that Defendant Blakeman had possession of the phone. However, when the City learned that Defendant Blakeman had it in his possession, it took immediate steps

1    to recover the device.  The phone was then immediately preserved by the City's
2    forensic consultant.  The text data on the phone was irrelevant to Plaintiffs'
3    discovery; however, when Plaintiffs did request the information on May 25, 2017,
4    the City provided it to them on June 1, 2017.

5    Not only did the City conduct itself reasonably in preserving the phone, but
6    the majority of the deleted information was replaced from other sources and any
7    unrecovered information (texts between purported Bay Boys) is highly unlikely to
8    be relevant to the claim against the City.  Moreover, Plaintiffs were provided an
9    opportunity to address – and, in fact, did address – these issues in their
10   Supplemental Opposition to the City's Summary Judgment Motion (as well as in
11   opposition to the individual defendants' summary judgment motions).  As such,
12   Plaintiffs can demonstrate no prejudice.  But, even if prejudice existed (which it
13   does not), it was self-inflicted by Plaintiffs' continuing lack of diligence.  The City
14   offered to make the physical phone available to Plaintiffs in early June, but they
15   refused and continue to refuse to examine it.  Finally, there is zero evidence of any
16   intent by the City to not preserve or delete information.  As discussed in detail
17   below, Plaintiffs' Motion should be denied.

## II.     RELEVANT BACKGROUND FACTS

### 1.     Disaster District Program.

The City has a comprehensive community based disaster preparedness and response program known as the Palos Verdes Estates Disaster District Program ("DDP"). [Declaration of Marcelle Herrera ("Herrera Decl."), ¶3]. The purpose of the DDP is to increase disaster readiness and survivability at the neighborhood level during an emergency. [*Id.*].

The DDP divides the City into six Disaster Districts, each equipped with a cache of equipment and supplies to support volunteer community responders. [Herrera Decl., ¶4]. The equipment includes approximately 55 Samsung flip-

///

phones (not smart phones)[1]. [*Id.*]. Each flip phone is pre-programmed with the relevant phone numbers to use in the case of a disaster. [*Id.*].

The DDP is run by resident volunteers under the guidance of the City's Emergency Services Coordinator, Marcelle Herrera. [Herrera Decl., ¶5]. The DDP integrates the resources of other disaster services including area Community Emergency Response Team ("CERT") members, Neighborhood Amateur Radio Team ("NART") members, Disaster Service Workers (DSW) and the Palos Verdes Estates Police Department's Reserve Corps. [*Id.*].

Each of the six Disaster Districts is led by a lead volunteer. [Herrera Decl., ¶6]. Each lead volunteer is issued several of the approximate 55 DDP flip-phones to either distribute among the Disaster Districts' group volunteers or to be collectively maintained with the other emergency supplies in pre-positioned locations throughout the City. [*Id.*]. In addition, each lead volunteer is provided a "go bag" for carrying immediate emergency supplies, including a flip-phone. The DDP phones are to be used only in the event of an emergency. [Herrera Decl., ¶7]. In addition, the lead volunteer is requested to provide the City with a roster identifying the assignment of any DDP phone to volunteer members. [*Id.*].

**2.     Discovery of the DDP Phone in Defendant Blakeman's Possession.**

In early 2017, the City, in an audit of its phone bills, learned that one of the DDP phones ("DDP Phone") had excessive billing charges. [Declaration of Tony Best ("Best Decl."), ¶3; Declaration of Gregory Robinson ("Robinson Decl.") ¶3]. The phone records did not indicate the nature of the charges or who was using the phone. [*Id.*]. As such, the City reviewed the DDP phone roster to determine who was using the DDP Phone. [Best Decl., ¶4]. No individual was identified on the roster by the lead volunteer whose group had been assigned the DDP Phone so an

---

[1] The flip-phones are "dumb" or non-featured phones, which means they do not have the same capacity and capability as a "smart" phone.

investigation was undertaken to identify the user. [Best Decl., ¶4; Robinson Decl., ¶4-5]. It was soon determined that Defendant Blakeman had possession of the DDP Phone. [Best Decl., ¶4].

The City had never issued any phone much less the DDP Phone to Defendant Blakeman. [Herrera Decl., ¶8]. The lead volunteer for Defendant Blakeman's Disaster District provided the DDP Phone to Defendant Blakeman. [Herrera Decl., ¶9]. However, for unknown reasons, the lead volunteer did not inform the City that the DDP Phone had been assigned by him to Defendant Blakeman. [*Id.*]. As such, the City had no knowledge that Defendant Blakeman had a DDP Phone until January 2017.[2] [*Id.*].

On learning that Defendant Blakeman was using the DDP Phone the City requested its return. [Herrera Decl., ¶10; Best Decl., ¶5; Robinson Decl., ¶6-7]. Ms. Herrera, the Emergency Services Coordinator, and Police Corporal Greg Robinson met Defendant Blakeman and recovered the DDP Phone on or about January 12, 2017. [Herrera Decl., ¶10; Robinson Decl., ¶6-7]. The DDP Phone was turned over to Captain Best who had it maintained by the Palos Verdes Estates Police Department's Custodian of Records, Linda Williams until the City's forensics consultant DTI imaged it on February 7, 2017. [Declaration of Linda Williams ("Williams Decl."), ¶2-6; Declaration of Wesley Wong ("Wong Decl."), ¶3; Robinson Decl., ¶7-8; Best Decl., ¶6-10].

///
///

---

[2] Plaintiffs state that "Defendant Blakeman admitted to using a City cell phone for personal use, but denied using the phone to receive texts from anyone besides his wife" in his November 21, 2016 deposition. [Dkt. No. 508-3 (1:14-17)]. Thus, although City's lawyers learned on November 21, 2016 that a city-owned phone was in Defendant Blakeman's possession as part of the Disaster District Program the testimony indicated the phone was irrelevant to the litigation. [Declaration of Christopher Glos ("Glos Decl."), ¶10 (Ex. 3)].

### 3. Preservation of the DDP Phone.

DTI imaged the DDP Phone on February 7, 2017. [Wong Decl., ¶3-4, 8]. The Cellebrite software, an industry standard, used to extract and preserve data on the device, as well as the non-featured nature of the DDP Phone (i.e., dumb phone), does not inform nor indicate whether any data has been removed from the device. [Wong Decl., ¶4-6]. Following imaging, DTI returned the DDP Phone to Captain Best who provide it to Ms. Williams, as the Police Department's Custodian of Records, and she secured and preserved the DDP Phone in the same condition it was received. [Wong Decl., ¶7-8; Williams Decl., ¶3-6; Best Decl., ¶9-10]. The DDP Phone remains under lock and key by Ms. Williams. [Williams Decl., ¶3; Best Decl., ¶9].

The City's lawyers were sent a copy of the available data on the DDP Phone on February 13, 2017. [Wong Decl., ¶9]. City lawyers reviewed the information sometime prior to April 12, 2017. [Glos Decl., ¶2]. The information extracted from the DDP Phone contained no responsive information relevant to any of Plaintiffs' written discovery. [*Id.*].

### 4. Plaintiffs Early Knowledge of the DDP Phone.

Plaintiffs learned about the DDP Phone on November 21, 2016, but made no effort to request data from it until May 25, 2017. [Dkt. No. 508-21]. On or about May 25, 2017, Defendant Blakeman's counsel raised privacy objections to the City producing the DDP Phone data so the City arranged for counsel to review the DDP Phone on June 1, 2017. [Glos Decl., ¶3]. Following review, Defendant Blakeman withdrew his objections and the City produced all text data on the DDP Phone on June 1, 2017 as CITY004844-CITY005025. [Glos Decl., ¶3].

On June 5, 2017, the City participated in a Local Rule 7-3 meet-and-confer call with Plaintiffs' counsel regarding the basis for the City's Motion for Summary Judgment. [Glos Decl., ¶4; Declaration of Jacob Song ("Song Decl."), ¶2]. Discovery matters were discussed during the call including the DDP Phone. [Glos

Decl., ¶4; Song Decl., ¶2]. City counsel informed the Plaintiffs' attorney that the DDP Phone had been recovered from Defendant Blakeman in January or February 2017. [Glos Decl., ¶4; Song Decl., ¶2]. The Disaster District Program and the manner in which Defendant Blakeman was believed to have come into possession of the DDP Phone were shared with Plaintiffs' counsel. [Glos Decl., ¶4; Song Decl., ¶2]. The City was requested to provide Plaintiffs with information on the brand/model of the device, the carrier of the device, and the size of the imaged data. [Glos Decl., ¶5; Song Decl., ¶3]. In addition, Plaintiffs requested the City voluntarily produce the billing records for the DDP Phone. [*Id.*]. Plaintiffs' counsel also requested the City make the DDP Phone available for their own forensic expert to examine and the City agreed to do so upon reasonable request. [Glos Decl., ¶5; Song Decl., ¶4].

On June 13, 2017, City counsel met and conferred with Plaintiffs regarding outstanding discovery issues. [Song Decl., ¶5]. During this call, Plaintiffs were informed that the DDP Phone was a Samsung SCH-U680. [*Id.*]. They were also informed that the carrier for the DDP Phone was Verizon. [*Id.*]. City counsel further advised that they were still attempting to ascertain the name of the lead volunteer, as well as obtain the DDP Phone billing records. [*Id.*]. Plaintiffs stated that they were not sure whether they wanted to image the DDP Phone themselves and City counsel directed them to simply provide advance notice if they wanted to image it. [Song Decl., ¶6]. Plaintiffs never followed up to request to image the DDP Phone. [Song Decl., ¶7; Glos Decl., ¶6].

The City produced the DDP Phone billing records on June 22, 2017. [Song Decl., ¶8]. The DDP Phone billing records contain 24 entries showing communications between the DDP Phone and Defendant Lee's phone (x0699), as well as 47 entries between the DDP Phone and purported Lunada Bay Boy (although not a defendant) Charles Mowatt's phone (x9561) between October 25, 2014 and May 25, 2016. [Glos Decl., ¶7 (Ex. 1)]. Thus, a comparison between the

DDP Phone and the DDP Phone billing records show at least 71 communications[3] between Lunada Bay Boy and purported Lunada Bay Boy phones that were not identified in the DDP Phone data. [*Id.*]. In spite of having this information Plaintiffs never followed up on their request to have the DDP Phone examined by their own forensic expert. [Glos Decl., ¶6; Song Decl., ¶7]. Even today, including the several meet-and-confer attempts regarding this Motion, Plaintiffs have not requested to examine the DDP Phone. [Glos Decl., ¶6].

On July 31, 2017, the City responded to Plaintiffs' Second Set of Requests for Admissions and Fourth Set of Interrogatories. [Glos Decl., ¶8]. The City then formally informed Plaintiffs that the DDP lead volunteer had provided Defendant Blakeman with the DDP Phone without the City's knowledge. [*Id.*]. Before then, the City believed the DDP Phone had been in the control of the lead volunteer. [*Id.*]. The City also formally informed Plaintiffs that on learning about the DDP Phone it was acquired and preserved in the condition received. [*Id.*]. The City also formally identified the DDP Phone billing records as CITY7099-7220. [*Id.*].

Plaintiffs never pursued any aspect of the DDP Phone until the post-filing of the City's Motion for Summary Judgment. [Glos Decl., ¶9]. Then, it was only immediately before the September 12, 2017 hearing before Magistrate Oliver that Plaintiffs first requested an extraction report for the DDP Phone. [*Id.*]. On September 12, 2017, the DDP Phone extraction report was discussed and later that same date Magistrate Judge Oliver issued an order denying Plaintiffs' demand. [Dkt. No. 452].

///

///

---

[3] Defendant Sang Lee produced his cell phone billing records on April 21, 2017. [Dkt. No. 508-4 (¶30)]. Those phone records also show communications between the DDP Phone and Defendant Lee phone. [Dkt. No. 508-19].

### III. PROCEDURAL HISTORY.

Plaintiffs' class action complaint was filed on March 29, 2016. [Dkt. No. 1]. The complaint alleged three causes of action against the City, including for violation of the Equal Protection Clause, the Privileges and Immunities Clause, and various provisions of the California Coastal Act. [*Id.*] On July 11, 2016, this Court issued an Order granting the City's Motion to Dismiss the Privileges and Immunities and the California Coastal Act claims. [Dkt. No. 84]. Only the Section 1983 claim remains against the City.

On February 21, 2017, this Court issued an Order denying Plaintiffs' Motion for Class Action Certification. [Dkt. No. 225]. On or about March 7, 2017, Plaintiffs filed a Petition for Permission to Appeal. The Petition was summarily denied.

Discovery ran from August 5, 2016 to August 7, 2017 with a motion cut-off date of August 21, 2017. [Dkt. Nos. 106 and 121]. On August 8, 2017, Plaintiffs filed a Motion for Administrative Relief. [Dkt. No. 397]. Plaintiffs complained about the DDP Phone in a September 12, 2017 hearing on the Motion for Administrative Relief. On October 3, 2017, the Court permitted Plaintiffs to file a 10-page Supplemental Opposition to the City's Motion for Summary Judgment. [Dkt. No. 471]. On October 18, 2017, Plaintiffs filed a Supplemental Opposition arguing, in part, about the failure to preserve the DDP Phone data. [Dkt. No. 492]. Plaintiffs presented a number of texts not on the DDP Phone but recovered from a different cell phone in support of their Supplemental Opposition. [*Id.*] On October 27, 2017, the City filed a Reply to the Supplemental Opposition showing that each purportedly non-preserved text message supported the City's case; not Plaintiffs. [Dkt. No. 502]. On October 30, 2017, Plaintiffs filed this Motion. [Dkt. No. 508].

///

///

///

IV. **ARGUMENT**

1. **Federal Rule of Civil Procedure 37(e).**

Plaintiffs seek sanctions against the City pursuant to Federal Rule of Civil Procedure 37(e), which provides that:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from the loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>     (A) presume that the lost information was unfavorable to the party;
>
>     (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>     (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e).

2. **The Duty to Preserve Arose When the City Knew or Should Have Known of the Relevance of the DDP Phone.**

The duty to preserve attaches when a party knew or should have known the evidence is relevant to a claim or defense.[4] *See Compass Bank v. Morris Cerullo World Evangelism* (S.D. Cal. 2015) 104 F.Supp.3d 1040, 1051-52; *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1069 (N.D. Cal. 2006). As the advisory

---

[4] Plaintiffs' argument that the City controlled the DDP Phone even if it did not know Defendant Blakeman had the device misses the mark. *See In re Citric Acid Litig.* (9th Cir. 1999) 191 F.3d 1090, 1107 ("proof of theoretical control is insufficient; a showing of actual control is required.").

committee Notes point out this is because the ever-increasing volume of electronically stored information and the multitude of devices that generate such information establish that perfection in preserving all relevant electronically stored information is often impossible. Fed. R. Civ. P. 37(e) (2015 Committee Notes).

In this case, the City preserved the DDP Phone immediately after recovering the device from Defendant Blakeman. City counsel first learned about the DDP Phone at Defendant Blakeman's deposition on November 21, 2016. [Glos Decl., ¶10 (Ex. 3, 14:8-15:22, 241:2-11)]. Defendant Blakeman testified he only received text messages from his wife. [*Id.*]. The testimony indicated that the DDP Phone was irrelevant. The lack of relevance at this time is supported by the fact that Plaintiffs did not request the DDP Phone at the deposition or even following the deposition. [Glos Decl., ¶6, 10 (Ex. 3)]. In fact, it was not until May 2017 that Plaintiffs requested the DDP Phone data. [Dkt. No. 508-21]. However, in early January 2017 the City independently discovered Defendant Blakeman had possession of a City-owned cell phone. [Best Decl., ¶4-5; Robinson Decl., ¶5-7]. The DDP Phone had been one of dozens of City flip phones in the Disaster District Program operated by volunteers. [Herrera Decl., ¶4, 6-10]. The lead volunteer with the DDP Phone was requested to notify the City if or when a program phone was assigned to any volunteer. [Herrera Decl., ¶7]. For unknown reasons, the lead volunteer did not inform the City that he had provided the DDP Phone to Defendant Blakeman. [Herrera Decl., ¶9].

On gaining knowledge that the DDP Phone was not in the City's possession, custody or control the City made immediate efforts to identify the holder of the DDP Phone and quickly recovered the same in January 2017. [Best Decl., ¶3-10; Robinson Decl., ¶3-7]. The City properly maintained the DDP Phone from January 2017 until the City's forensic consultant DTI imaged the device on February 7, 2017. [Best Decl., ¶6-10; Williams Decl., ¶2-6]. DTI returned the DDP Phone to the City and it has been properly maintained since then in the condition received

from Defendant Blakeman by the City of Palos Verdes Estates Police Department Custodian of Records. [Wong Decl., ¶7-8; Williams Decl., ¶3-6].

### 3. The City Took Reasonable Steps to Preserve the DDP Phone.

The foundation for Rule 37(e) is whether a party took reasonable steps to preserve evidence. FED. R. CIV. P. 37(e) (2015 Committee Notes). The electronically stored evidence must have been lost because the party "failed to take reasonable steps to preserve them." *Id.*

In this case, the City took reasonable steps to preserve the electronically stored information when it learned that the DDP Phone was in the possession of Defendant Blakeman and potentially relevant to the litigation. In the Report and Recommendation regarding a sanctions motion against several individual defendants in this case, the Court determined that imaging a cell phone in or around two months was "relatively quick preservation" and, therefore, reasonable. [Glos Decl., ¶11 (Ex. 4 (17:4-6, 19:8-11)]. The Court should find the City to have been reasonable in preserving the DDP Phone. Defendant Blakeman's testimony indicated the DDP Phone data was irrelevant to the litigation. Moreover, after obtaining the DDP Phone the data on the device indicated it was irrelevant to this litigation. There was no reasonable way to know information had been deleted. [Wong Decl., ¶ 6]. Plaintiffs, not the City, are responsible for not diligently[5] requesting the irrelevant DDP Phone data until May 2017, failing to connect

---

[5] This follows Plaintiffs lack of diligence on other discovery matters. The Supplemental Opposition to the City's Motion for Summary Judgment accused the City of suppressing evidence "by failing to maintain N.F.'s cell phone in a state that information could be extracted from it". [Dkt. No. 492 (3:18-20)]. However, Plaintiffs failed to recognize that the City had produced a 2080 page extraction report from the N.F. cell phone earlier in the litigation as CITY014121 to CITY016200. [Glos Decl., ¶12]. Plaintiffs were also found to lack diligence in seeking the personal cell phone data from City police officers' personal cell phones. [Dkt. No. 471]. Plaintiffs' attempts to shift blame should be given short shrift.

information available to them in May/June that may have suggested information on DDP Phone had been deleted (particularly given that it is Plaintiffs who seem to believe the Bay Boys may delete information), and refusing then, as now, to have their forensics' expert examine the DDP Phone.

### 4. The Lost Information Was Replaced and Used in the Supplemental Opposition to the City's Motion for Summary Judgment.

In the event the Court determines that the DDP Phone data is lost and the City failed to take reasonable steps to preserve it, Rule 37(e) still directs the initial inquiry to focus on whether the lost information can be restored or replaced. FED. R. CIV. P. 37(e) (2015 Committee Notes). In this case, Plaintiffs – despite ample opportunity and time – have not attempted to restore the information. However, Plaintiffs do admit to replacing all but four text messages from another device by no later than October 2, 2017. [Dkt. No. 508-3 (6:22-7:7)]. Thus, Plaintiffs were not only able to examine the replaced data but had time to use it – and did in fact use it – in their Supplemental Opposition. [Dkt. No. 492].

The Notes on Rule 37(e) provide that "[i]f the information is restored or replaced, no further measures should be taken." FED. R. CIV. P. 37(e) (2015 Committee Notes). The Court granted Plaintiffs an opportunity to file a 10-page Supplemental Opposition to the City's Motion for Summary Judgment. [Dkt. No. 417]. Plaintiffs filed a Supplemental Opposition that focused not on the purported failure by the City to produce videos and photographs (which was the basis of the Motion for Administrative Relief), but on the text messages (recovered from another phone) serving as the basis for this Motion. [Dkt. No. 492].

### 5. Sanctions Are Not Appropriate Against the City.

It is only after exhausting the above avenues that a court should consider resorting to sanctions under Rule 37(e). FED. R. CIV. P. 37(e). In such a situation a court should only consider sanctions on a finding of prejudice and/or intent to

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4813-7051-9124.5
12
2:16-cv-02129-SJO-RAO
CITY'S OPPOSITION TO PLAINTIFFS' SANCTIONS MOTION

1  deprive the other party of the lost information.  *Id.*  The party requesting any
2  sanction based on alleged spoliation must prove that the producing party culpably
3  failed to preserve the subject information by a preponderance of the evidence. *Leon*
4  *v. IDX Systems Corp.* (9th Cir. 2006) 464 F.3d 951, 959; *Ramos v. Swatzell,* 2017
5  Lexis 103014 *16 (C.D.Cal. June 5, 2017) Case No. ED CV 12-1089-BRO.

### A.   Plaintiffs' Are Not Prejudiced.

Rule 37(e) requires an evaluation of the information's importance in the litigation in order to determine prejudice.  FED. R. CIV. P. 37(e) (2015 Committee Notes).  As discussed above, Plaintiffs had the opportunity to present the information that is the subject of this Motion in their Supplemental Opposition to the City's Motion for Summary Judgment.  In fact, Plaintiffs did argue spoliation in their Supplemental Opposition.  However, Plaintiffs could not articulate there, nor can they do so here, how any of the purportedly deleted evidence supports their claim against the City.

As discussed in more detail in the City's Reply to the Supplemental Opposition to the City's Motion for Summary Judgment there is no prejudice to Plaintiffs and, in fact, the replaced texts support the City's position that summary judgment is appropriate. [Dkt. No. 502].  Moreover, Plaintiffs have not produced one document (whether electronic or otherwise) from the thousands of documents produced in this litigation that shows the City discriminated against them.  As such, the four unavailable text messages between Defendant Lee and Defendant Blakeman are highly unlikely to contain evidence relevant to Plaintiffs' claim against the City.

### B.   If there is Prejudice, Plaintiffs Inflicted it Upon Themselves.

To the extent Plaintiffs are prejudiced it is self-inflicted.  The City undertook efforts to preserve relevant information following the filing of the lawsuit.  It

///

///

continued its preservation efforts as the litigation developed.[6] Nonetheless, the City had no knowledge that Defendant Blakeman had the DDP Phone, but when it learned he did immediate measures were taken to recover and preserve it. As discussed above, on June 5, 2017 and June 13, 2017 the City made the physical DDP Phone available to Plaintiffs, but they refused to examine it. Plaintiffs' claim that the sooner one acts to recover potentially deleted data, the better the chances are of recovering that data. [Dkt. No. 496 (18:26-28)]. However, despite having been permitted ample opportunity to examine the physical DDP Phone, Plaintiffs refused and continue to refuse to do so. In fact, to this date Plaintiffs have not sought to examine the physical DDP Phone.[7]

The City, at its own expense, imaged the DDP Phone in early February 2017, and made all text on the device, even though irrelevant to the litigation, available on June 1, 2017. The City cannot be culpable for the fact that none of the text on the DDP Phone were relevant and that the device itself presumably had data deleted prior to the City taking possession of it. On the other hand, Plaintiffs attest to access to Defendant Lee's phone records on April 21, 2017. [Dkt. No. 508-4 (¶30). Those records show that there were communications between the DDP Phone and

---

[6] Plaintiffs, in violation of the parties' Stipulation re ESI and FRCP 34(b), sent an unduly burdensome and overbroad preservation letter to the City. [Dkt. No. 508-6]. Plaintiffs then rebuffed the City's request for more specificity given the proportionality standard in FRCP 26(b)(1). [Glos Decl., ¶13 (Exs. 5, 6)]. It was not until May 12, 2017 that Plaintiffs even provided the City with terms for an electronic search of relevant ESI. [Glos Decl., ¶15]. Then, even after this Court had denied Plaintiffs' class action certification, it continued to demand the City engage in extensive ESI resulting in the production of thousands of documents. [Glos Decl., ¶14-15 (Ex. 7)]. The City has been forced by Plaintiffs to spend more than $250,000 on ESI with the majority of those costs coming after denial of class certification. [Glos Decl., ¶14-15]. Plaintiffs should bear any additional ESI costs.

[7] Plaintiffs did not even request to examine the physical DDP Phone in their purported Local Rule 7-3 meet-and-confer on this Motion. [Glos Decl., ¶6].

Defendant Lee phone. [Dkt. No. 508-19]. As such, Plaintiffs were on notice at least as early as April 2017 about the missing text on the DDP Phone.

In addition, the City produced billing records for the DDP Phone on June 22, 2017. [Glos Decl., ¶7; Song Decl. ¶8]. A comparison between the DDP Phone data, which was produced on June 1, 2017, and the billing records would have informed Plaintiffs months ago that at least 71 communications of potential interest were not part of the June 1, 2017 DDP Phone data. Still Plaintiffs choose to do nothing with this information – just like they did nothing with Defendant Lee's phone records and their earlier claim to entitlement to police officers' personal phone data [Dkt. No. 471] – in an attempt to spring this baseless spoliation issue[8] in the hopes of defeating the City's Summary Judgment Motion.

### C. There Is No Intent to Deprive Plaintiffs of Information.

On the issue of intent, as discussed above, the City had no knowledge that Defendant Blakeman possessed the DDP Phone, but when it discovered the potential relevance of the device the City promptly preserved it. It is also not reasonable to conclude that the City intentionally deleted text messages that support

---

[8] On September 12, 2017, Plaintiffs argued regarding the DDP Phone extraction report. [Glos Decl., ¶9 (Ex. 2, 50:15-51:3; 54:21-55:5)]. The Court then ruled that it declined to hear this and other additional discovery disputes raised by Plaintiffs at that hearing that had not been raised before the discovery cutoff or in relation to the referred matters. [Dkt. No. 452]. It is ironic that Plaintiffs still demand an extraction report when Plaintiffs' counsel argued to the Court that "Extraction reports are problematic that they don't necessarily contain all the information" and "records are better than extraction reports." [Glos Decl., ¶9, (Ex. 2, 18:17-19:12)]. Moreover, in the Report and Recommendation regarding Plaintiffs' Motion for Sanctions against Defendants Charlie Ferrara, Frank Ferrara, and Sang Lee the Court concluded, relying in part on Plaintiffs' own declarations, "that the billing records would contain more accurate information regarding occasions when text messages were exchanged as the extraction report only retrieves data from the cellular phone and such data may be overwritten." [Dkt. No. 496 (17:20-23)].

its position on summary judgment. [Dkt. Nos. 268, 502]. The text messages relied on in the Supplemental Opposition to the City's MSJ show that the purported Lunada Bay Boys were against Chief Kepley's actions to address localism. As such, the deleted text messages re-enforce the City's claims. Moreover, it is not reasonable to conclude that the City deleted texts allegedly showing a conspiracy among the Lunada Bay Boy co-defendants when the City is not even a party to those claims.

## V. CITY IS ENTITLED TO ATTORNEYS' FEES

FRCP 37(a)(5)(B) provides: "[i]f the motion is denied, the Court [ ] must, [ ], require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Plaintiffs' Motion was not substantially justified and no other circumstances make an award of expenses unjust.

## VI. CONCLUSION

For the reasons set forth herein, the City respectfully requests this Court deny Plaintiffs' Motion.

Dated: November 27, 2017    KUTAK ROCK LLP

By: /s/ *Christopher D. Glos*
Edwin J. Richards
Christopher D. Glos
Attorneys for Defendants
CITY OF PALOS VERDES ESTATES
and CHIEF OF POLICE JEFF KEPLEY