1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON aka JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA and N.F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10, <br><br> Defendants. | Case No. CV 16-02129-SJO (RAOx) <br><br><br> AMENDED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON MOTION FOR SANCTIONS AGAINST DEFENDANTS CHARLIE FERRARA, FRANK FERRARA, AND SANG LEE |

This Amended Report and Recommendation ("Amended Report") is submitted to the Honorable S. James Otero, United States District Judge, pursuant

to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California, and pursuant to the District Court's referral order in this matter dated August 28, 2017.  On October 20, 2017, this Court issued a Report and Recommendation addressing Plaintiffs' Motion for Sanctions Against Defendants Charlie Ferrara, Frank Ferrara, and Sang Lee ("October 20 Report").  Dkt. No. 496.  On November 3, 2017, Defendants Charlie Ferrara and Frank Ferrara filed Objections to the October 20 Report.  Dkt. No. 518.  On November 14, 2017, Plaintiffs filed their Response to the Objections.  Dkt. No. 522.  This Amended Report addresses the Objections of Defendants Charlie and Frank Ferrara and Plaintiffs' Response.

## I.   <u>INTRODUCTION</u>

On August 22, 2017, Plaintiffs Coastal Protection Rangers, Inc., Diana Milena Reed, and Cory Spencer (collectively, "Plaintiffs") filed a Motion for Sanctions ("Motion") against Defendants Charlie Ferrara and Frank Ferrara (collectively, the "Ferrara Defendants"), and Defendant Sang Lee.  Dkt. No. 425.  The Motion is based on the alleged failure to preserve or destruction of evidence related to communications between codefendants on their cellular phones.  The Motion was referred to the undersigned by District Judge Otero on August 28, 2017 for a Report and Recommendation.  Dkt. No. 435.

The Court held telephonic hearings regarding the Motion and other referred matters on September 5, 2017 ("September 5 hearing") and September 12, 2017 ("September 12 hearing").  Dkt. Nos. 443, 452.  The Court ordered Plaintiffs to meet and confer with Defendant Lee and the Ferrara Defendants to assess whether the allegedly spoliated evidence could be recovered and to determine the scope of any unrecoverable evidence.  Dkt. No. 452.  The parties submitted joint status reports on their meet and confer efforts, and the Court ordered further briefing on the Motion.  Dkt. Nos. 458, 459, 461.

On September 28, 2017, Plaintiffs filed their supplemental brief in support of their Motion.  Dkt. No. 468.[1]  The MPA is supported by the declaration of William T. Kellerman ("Kellermann Declaration"), Dkt. No. 468-2, and the declaration of Samantha D. Wolff ("Wolff Declaration"), Dkt. No. 468-4.  Plaintiffs contend that Defendant Lee and the Ferrara Defendants spoliated relevant evidence, resulting in the loss of contents of text messages exchanged between Defendant Lee and the Ferrara Defendants and the loss of cellular phone billing records for Defendant Charlie Ferrara.  Plaintiffs request that the Court impose sanctions in the form of an adverse inference or jury instruction and denial of Defendants' motions for summary judgment.

Defendant Lee filed his Opposition to the Motion on October 5, 2017 ("Lee Opposition").  Dkt. No. 472.  The Lee Opposition is supported by the declaration of Giselle Morales ("G. Morales Declaration"), Dkt. No. 472-1, and the declaration of Tera Lutz ("Lutz Declaration"), Dkt. No. 472 at 12-82.  Defendant Lee argues that he did not intentionally delete text messages with codefendants and that Plaintiffs have not been prejudiced by this loss.

The Ferrara Defendants filed their Opposition to the Motion on October 5, 2017 ("Ferrara Opposition").  Dkt. No. 473.  The Ferrara Opposition is supported by the declaration of Courtney Serrato ("Serrato Declaration"), Dkt. No. 473-1, the declaration of Alison K. Hurley ("Hurley Declaration"), Dkt. No. 484-1,[2] and the

---

[1] Plaintiffs filed their brief as a separate motion for sanctions against Defendant Lee and the Ferrara Defendants.  However, the arguments in the supplemental brief build upon the arguments presented in the Motion filed on August 22, 2017.  The Court will refer to Plaintiffs' Memorandum of Points and Authorities ("MPA") attached to the September 28, 2017 filing as the primary moving arguments of Plaintiffs in support of their Motion.

[2] The declaration of Alison K. Hurley attached to the Ferrara Opposition failed to include certain exhibits.  *See* Dkt. No. 473-3.  The Ferrara Defendants filed a notice of errata and re-submitted the Hurley Declaration with all exhibits attached.  Dkt. No. 484.  The Court will refer to the Hurley Declaration found at Dkt. No. 484-1 for purposes of this Report.

declaration of Alex Morales ("A. Morales Declaration"), Dkt. No. 474. The Ferrara Defendants also filed evidentiary objections. Dkt. No. 473-2. In their Opposition, the Ferrara Defendants concede that their initial responses to Plaintiffs' discovery requests did not meet the Court's standards or expectations. But they argue that there was no intentional spoliation of any relevant or admissible evidence.

Plaintiffs filed their Reply to the Lee Opposition ("Lee Reply") and their Reply to the Ferrara Opposition ("Ferrara Reply) on October 9, 2017. Dkt. Nos. 477-478. The Lee Reply and Ferrara Reply are supported by the declaration of Samantha D. Wolff ("Wolff Reply Declaration"). Dkt. No. 477-1. Plaintiffs also filed responses to the Ferrara Defendants' evidentiary objections, Dkt. No. 479, and objections to evidence in the Ferrara Opposition, Dkt. No. 480.

The Ferrara Defendants filed their responses to Plaintiffs' evidentiary objections on October 10, 2017. Dkt. No. 485.

The Court held a hearing for the Motion on October 12, 2017 ("October 12 hearing") and took the matter under submission. Dkt. No. 489.

Having considered the parties' moving and opposing papers and other records in this case, as well as the statements and arguments made during the related telephonic conferences and hearings, for the reasons set forth below, the Court recommends that Plaintiffs' Motion be granted in part.

## II.     BACKGROUND

### A.     Procedural Background

Plaintiffs filed their Complaint on March 29, 2016, against the Lunada Bay Boys, Sang Lee, Brant Blakeman, Alan Johnston, Michael Papayans, Angelo Ferrara, Frank Ferrara, Charlie Ferrara, N.F., City of Palos Verdes Estates, and Chief of Police Jeff Kepley (collectively, "Defendants").[3] Dkt. No. 1. Plaintiffs

---

[3] Defendant N.F. was dismissed from this action without prejudice on July 27, 2017. Dkt. No. 297. The Court will refer to Defendants Lee, Blakeman, Johnston,

assert the following causes of action against Defendants: (1) violation of the Bane Act, California Civil Code § 52.1(b), against the Lunada Bay Boys and Individual Defendants; (2) public nuisance pursuant to California Civil Code §§ 3479 and 3480 against the Lunada Bay Boys and Individual Defendants; (3) violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, against City Defendants; (4) violation of the Privileges and Immunities Clause of Article IV of the United States Constitution, pursuant to § 1983, against City Defendants; (5) violation of various provisions of the California Coast Act against Defendants; (6) assault against the Lunada Bay Boys and Individual Defendants; (7) battery against the Lunada Bay Boys and Individual Defendants; and (8) negligence against the Lunada Bay Boys and Individual Defendants. *See* Compl. ¶¶ 43-106.

Plaintiffs allege that the Individual Defendants and other members of the Lunada Bay Boys have unlawfully interfered with Plaintiffs' usage and enjoyment of Lunada Bay, located in the Palos Verdes Estates area. *See* Compl. ¶¶ 15-26. Plaintiffs allege that Lunada Bay is well-known in the surfing world for localism, a practice whereby resident surfers attempt to exclude outsiders through threats, intimidation, and violence. *See id.* ¶ 17. Plaintiffs allege that Plaintiff Spencer visited Lunada Bay on two occasions in January and February 2016, and was verbally harassed, threatened, and physically injured by members of the Lunada Bay Boys. *Id.* ¶ 21. Plaintiff Reed visited Lunada Bay on January 29, 2016, February 5, 2016, and February 13, 2016, and was allegedly harassed by the Lunada Bay Boys. *Id.* ¶¶ 22-26. Plaintiffs allege that members of the Lunada Bay Boys coordinate their attacks on visitors by, among other actions, communicating via text message group chats, email, mobile phones, and other electronic devices. *See id.* ¶¶ 18, 47, 59.

---

Papayans, Angelo Ferrara, Frank Ferrara and Charlie Ferrara collectively as the "Individual Defendants."

On July 11, 2016, Plaintiffs' claims pursuant to the Privileges and Immunities Clause and the California Coast Act were dismissed with prejudice by the District Judge. *See* Dkt. No. 84. On February 21, 2017, the District Judge denied Plaintiffs' motion for class certification. *See* Dkt. No. 225.

On August 8, 2017, Plaintiffs filed their Motion for Administrative Relief Pursuant to FRCP 56(d) ("Rule 56(d) Motion"). Dkt. No. 397. On August 22, 2017, Plaintiffs filed their Motion for Sanctions. Dkt. No. 425. On August 28, 2017, the District Court referred to the undersigned Plaintiffs' Rule 56(d) Motion for disposition and Plaintiffs' Motion for Sanctions for a Report and Recommendation. Dkt. No. 435 ("Referral Order"). The District Court also authorized the undersigned to consider all pending discovery matters and conduct further hearings and proceedings as may be appropriate or necessary. *Id.*

The parties have been involved in a number of discovery disputes before the undersigned, starting in November 2016. *See, e.g.,* Dkt. Nos. 141, 151, 212, 217. The Court has permitted the parties to contact the Court for discovery disputes so that, when possible, disputes can be resolved informally without extensive briefing. *See, e.g.*, Dkt. No. 212 (directing the parties to contact the Court's Courtroom Deputy Clerk to schedule a telephonic conference if the parties are unable to reach a resolution through meet and confer efforts). The background and proceedings specific to Defendant Lee and the Ferrara Defendants are addressed below.

**B.  Defendant Lee**

Defendant Lee was served with the Complaint on June 21, 2016. *See* Dkt. No. 82. Defendant Lee retained counsel on July 5, 2016. *See id.* On July 6, 2016, Plaintiffs served Defendant Lee with a litigation hold letter. Wolff Reply Decl. ¶ 2 & Ex. 1. Defendant Lee filed his Answer to the Complaint on August 1, 2016. Dkt. No. 94. On August 18, 2016, Defendant Lee submitted his cellular phone to a forensic analyst for imaging and an extraction report. Lutz Decl. ¶ 2.

///

6

On November 7, 2016, Plaintiffs propounded requests for production of documents on Defendant Lee.  Wolff Decl. ¶ 8 & Ex. 7.  The requests sought, among other things, any text messages or records of phone calls with a codefendant in this matter.  Wolff Decl. Ex. 7.  Defendant Lee produced a redacted copy of his 562-page extraction report to Plaintiffs on December 12, 2016.  Lutz Decl. ¶ 3.  The extraction report included 17 occasions of text messages exchanged with codefendants in this matter, including Defendants Blakeman, Johnston, and the Ferrara Defendants, but with no substance of the text messages.  Wolff Decl. ¶ 11; Lee Opp'n at 3; Lutz Decl. ¶¶ 3-4 & Exs. A-B.

At a July 13, 2017 hearing, Plaintiffs raised a dispute with Defendant Lee regarding the heavy redactions in his extraction report and the asserted privileges in his privilege log.  *See* Dkt. No. 267.  The Court directed the parties to meet and confer to schedule a further telephonic conference regarding the dispute and to file the redacted privilege log along with any prior meet and confer documents.  *See id.* On July 19, 2017, the Court held a telephonic hearing for the discovery dispute, and ordered Defendant Lee to lodge an unredacted copy of the extraction report for an *in camera* review.  Dkt. No. 273.  The Court conducted an *in camera* review and held another telephonic hearing on July 25, 2017.  Dkt. No. 290.  The Court ordered Defendant Lee to produce his extraction report, limiting redactions only to sensitive personal photographs, Defendant Lee's residential address, and communications between Defendant Lee and his attorneys.  *Id.*

On August 7, 2017, Plaintiffs filed their motion to compel against Defendant Lee.  Dkt. No. 392.  Plaintiffs requested that Defendant Lee be ordered to produce all documents that had not been turned over, and requested a ruling that the objections and asserted privileges are not proper.  *Id.* at 5.  Plaintiffs also sought an order that Defendant Lee and his attorneys improperly withheld documents and that Defendant Lee destroyed evidence.  *Id.*  On August 9, 2017, the Court denied the motion as untimely.  Dkt. No. 401.  The Court noted that to the extent Plaintiffs'

motion related to alleged spoliation, the Court believed the motion would be properly brought before the District Court. *Id.*

After the Motion for Sanctions was referred to the undersigned, the Court directed Plaintiffs and Defendant Lee to meet and confer regarding the possibility of extracting any further data from Defendant Lee's phone. *See* Dkt. Nos. 443, 452.

On September 18, 2017, Plaintiffs and Defendant Lee filed their joint status report regarding further extraction efforts. Dkt. No. 458. The status report provided that the vendor's tools had not recovered any additional text messages. *Id.* A forensic analyst completed a physical extraction of Defendant Lee's phone, and performed several additional tests. Lee Opp'n at 4; G. Morales Decl. ¶¶ 12-16. Although the contents of some text messages were found, none related to the text messages requested by Plaintiffs. Lee Opp'n at 4; G. Morales Decl. ¶ 16. Because the contents of the text messages at issue could not be recovered, the parties submitted their supplemental briefing on spoliation based on these unrecoverable text messages. Dkt. Nos. 468, 472, 478.

## C.   The Ferrara Defendants

There is no record of when the Ferrara Defendants were served with the Complaint. On July 26, 2016, Plaintiffs filed a proof of service stating that a copy of the Notice of Initial Scheduling Conference was sent to the Ferrara Defendants on July 26, 2016 via UPS. Dkt. No. 91. The Ferrara Defendants first appeared in the case through their counsel's appearance at the August 29, 2016 initial scheduling conference. Dkt. No. 120. The Ferrara Defendants filed their Answers to the Complaint on September 2, 2016. Dkt. Nos. 124-125.

On November 16, 2016, Plaintiffs propounded requests for production on the Ferrara Defendants. Wolff Decl. ¶ 8 & Exs. 3-4. The requests sought, among other things, text messages or records of phone calls with a codefendant. Wolff Decl. Exs. 3-4.

///

The Ferrara Defendants served their responses on December 19, 2016. Wolff Decl. ¶ 9 & Exs. 5-6. In their responses, the Ferrara Defendants stated that they did not possess any responsive text messages or records of phone calls and they objected to the requests as burdensome. *Id.* The Ferrara Defendants did not produce any documents with their responses. Wolff Decl. ¶ 9.

On December 29, 2016, Defendant Lee produced an extraction report evidencing communications with codefendants, including the Ferrara Defendants. *Id.* ¶ 10.

From January to July 2017, Plaintiffs' counsel communicated with the Ferrara Defendants' counsel at least 17 times via phone, email and letter, seeking the production of responsive documents. *Id.* ¶ 12. Defendant Charlie Ferrara was deposed on July 7, 2017. Wolff Decl. ¶ 14 & Ex. 9. At his deposition, Charlie Ferrara stated that he "hadn't tried very hard" to obtain his cell phone bills. *Id.* As late as July 10, 2017, counsel for the Ferrara Defendants responded that they were attempting to obtain phone records and would inquire into imaging the data on the Ferrara Defendants' cellular phones. Wolff Decl. Ex. 10.

The Court held a telephonic hearing on July 13, 2017 regarding production of cellular phone records by the Ferrara Defendants. Dkt. No. 267. The Court ordered the Ferrara Defendants to produce responsive documents by July 17, 2017. *Id.*

The parties participated in another telephonic hearing on July 26, 2017, when the Court was informed that the Ferrara Defendants had not completed their production by the ordered deadline and had yet to complete their production as of the time of the hearing. *See* Dkt. No. 296. The Court ordered briefing on Plaintiffs' request for monetary sanctions for the Ferrara Defendants' failure to comply with the Court's July 13, 2017 order. *Id.*

After the July 26 hearing, the Ferrara Defendants produced additional documents on July 26, 27, and September 1, 2, 5, and 21. Wolff Decl. ¶ 23.

///

Plaintiffs and the Ferrara Defendants filed their briefing on Plaintiffs' request for monetary sanctions and the Court held a hearing on August 23, 2017.  Dkt. Nos. 403, 423, 432.  The Court granted Plaintiffs' request for monetary sanctions as it pertained to the failure to comply with the Court's July 13, 2017 order, but denied it without prejudice to the extent the request was based on the Ferrara Defendants' alleged spoliation of evidence.  *Id.*  The Court directed Plaintiffs' counsel to submit a declaration detailing expenses caused by the failure to comply with the Court's order.  *Id.*  On September 5, 2017, Plaintiffs' counsel filed a declaration stating that the parties agreed to resolve the request for monetary sanctions through the Ferrara Defendants' payment of the amount sought by Plaintiffs in their motion.  Decl. of Samantha Wolff Regarding Pls.' Mot. for Monetary Sanctions, Dkt. No. 444, ¶ 4.  Plaintiffs' counsel stated that Plaintiffs no longer sought the Court's assistance in determining the amount to be awarded for the Ferrara Defendants' failure to comply with the Court's July 13 order and that Plaintiffs would not seek any further monetary sanctions from the Court for the alleged spoliation of evidence raised in their request for monetary sanctions.  *Id.* ¶ 5.

At the September 5 hearing, counsel for the Ferrara Defendants represented that additional documents were still being gathered and produced, including those being located by a cellular service provider.  At the September 12 hearing, counsel for Defendants Charlie and Frank Ferrara stated that with the exception of specific older records that their third-party provider was attempting to locate, all records that exist had been produced.  However, counsel stated that some text message chains had not been recovered.  Plaintiffs and the Ferrara Defendants were directed to submit a status report regarding any unrecoverable data.  *See* Dkt. No. 452.

On September 18, 2017, Plaintiffs and the Ferrara Defendants filed their joint status report.  Dkt. No. 459 ("Ferrara Joint Status Report").  With respect to Frank Ferrara, the joint status report provides that the contents of nine text messages exchanged with Defendant Lee on March 31, 2016, April 18, 2016, and July 29,

2016 are the only requested records that have not been produced. *Id.* at 3. The parties agreed that these messages are not recoverable. *Id.* With respect to Charlie Ferrara, the joint status report provides that the contents of six text messages exchanged with Defendant Lee on June 30, 2016 and July 20, 2016 are not available because Defendant Charlie Ferrara no longer has a cell phone available for extraction predating August 15, 2016. *Id.* at 6. In addition, the missing cell phone billing records from December 15, 2015 through January 11, 2016 and records of text messages from December 15, 2015 to February 24, 2016 had been requested from Sprint, but Sprint had not been able to complete the request at the time of filing. *Id.* at 4. Finally, any data stored on the mobile phone used by Charlie Ferrara prior to August 15, 2016 are no longer available. *Id.* at 5.

As it appeared that there would be text messages and potentially other data that would not be recoverable, the Court set a briefing schedule for Plaintiffs' Motion for Sanctions and the parties filed their supplemental briefs. Dkt. Nos. 468, 473, 477.[4]

### III.   <u>LEGAL STANDARD</u>

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve evidence, in pending or reasonably foreseeable litigation. *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051-

---

[4] The Ferrara Defendants raise numerous objections to evidence Plaintiffs present in support of their Motion. Dkt. No. 473-2. Plaintiffs filed a response to the evidentiary objections and filed objections to evidence in the Ferrara Opposition. Dkt. Nos. 479, 480. The Ferrara Defendants responded to Plaintiffs' objections on October 10, 2017. Dkt. No. 485. The Court has primarily relied on portions of the declarations and exhibits that have not been objected to in arriving at its findings, conclusions and recommendations. To the extent the Court relies on any evidence objected to without addressing the objections, the objections are overruled. All other evidentiary objections raised by either Plaintiffs or the Ferrara Defendants are denied without prejudice as moot, with leave to reassert the objections at a later stage in the proceedings. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 611 n.5 (C.D. Cal. 2013).

52 (S.D. Cal. 2015) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).  The standard of proof for spoliation in the Ninth Circuit "appears to be by a preponderance of the evidence."  *Ramos v. Swatzell*, Case No. ED CV 12-1089-BRO (SPx), 2017 WL 2857253, at *5 (C.D. Cal. June 5, 2017); *see also* Compass Bank, 104 F. Supp. 3d at 1052-53.

Federal Rule of Civil Procedure 37(e) governs the loss of electronically stored information.  Rule 37(e) applies "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."  The advisory committee notes to the 2015 Amendment provide that the amended rule "forecloses reliance on inherent authority or state law to determine when certain measures should be used" for failure to preserve electronically stored information.  Fed. R. Civ. P. 37(e), Committee Notes on Rules—2015 Amendment ("Committee Notes").

The common-law duty to preserve continues to apply even under Rule 37(e). *See* Committee Notes.  "A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence."  *Compass Bank*, 104 F. Supp. 3d at 1051.  This is an objective standard that asks not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation.  *ILWU-PMA Welfare Plan Board of Trustees v. Connecticut General Life Insurance Co.*, No. C 15-02965 WHA, 2017 WL 345988, at *4 (N.D. Cal. Jan. 24, 2017).  "When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry."  *Security Alarm Financing Enterprises, L.P. v. Alarm Protection Technology*, Case No. 3:13-cv-00102-SLG, 2016 WL 7115911, at *3 (D. Alaska ///

12

Dec. 6, 2016) (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).

To satisfy Rule 37(e), the electronically stored information must have been lost because the party "failed to take reasonable steps to preserve them." The Committee Notes advise that courts "should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts," and the resources available to a party.

Rule 37(e) authorizes two tiers of sanctions for spoliation, both of which apply only if information should have been preserved in the anticipation or conduct of litigation, a party failed to take reasonable steps to preserve the information, information was lost as a result, and the information could not be restored or replaced by additional discovery. *See* Committee Notes.

Under Rule 37(e)(1), upon a finding of prejudice to another party from loss of the information, a court may employ measures "no greater than necessary to cure the prejudice." Rule 37(e)(1) does not place a burden of proving or disproving prejudice on one party or the other. *See* Committee Notes. Curative measures under subdivision (e)(1) must not have the effect of measures permitted under subdivision (e)(2). *Id.*

If a court finds that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation," Rule 37(e)(2) permits a court to impose harsh sanctions, including presuming that the lost information was unfavorable to that party, instructing the jury that it may or must presume the information was unfavorable to that party, dismissing the action, or entering a default judgment. However, finding an intent to deprive does not require a court to adopt any of the measures listed in subdivision (e)(2). *Id.* "Rule 37(e) intentionally leaves to the court's discretion exactly what measures are necessary." *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016).

Rule 37(e)(2) does not prohibit a court from allowing the parties, as a measure under subdivision (e)(1), to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision. *See* Committee Notes.

For spoliation of evidence that is not electronically stored, a district court may sanction the offending party pursuant to its inherent powers. *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 678 (W.D. Wash. 2014) (citing *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 371 (9th Cir. 1992)). Courts often apply a three-part test in determining whether sanctions pursuant to the court's inherent authority are warranted for spoliation of evidence: (1) whether the party having control over the evidence was obligated to preserve it when it was destroyed or altered; (2) whether the destruction or loss was accompanied by a culpable state of mind; and (3) whether the evidence that was destroyed was relevant to the claims or defenses of the party seeking discovery of the spoliated evidence. *See, e.g., Zubulake v. UBS Warburg LLD*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003); *Montoya v. Orange County Sheriff's Dep't.*, 2013 WL 6705992, at *7, Case No. SACV 11-1922 JGB (RNBx) (C.D. Cal. Oct. 15, 2013). If the court finds that spoliation occurred, it is tasked with imposing sanctions "commensurate to the spoliating party's motive or degree of fault in destroying the evidence." *Apple, Inc. v. Samsung Electronics Co.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012).

## IV.   DISCUSSION

### A.   Evidence at Issue and Applicability of Rule 37(e)

Plaintiffs contend that 65 text messages exchanged between Defendant Lee and other codefendants have not been produced and are no longer recoverable. MPA at 5-6. Defendant Lee contends that only 17 text messages with codefendants are no longer recoverable. Lee Opp'n at 3. Although there is a discrepancy as to

the number of text messages at issue, the parties agree that the content of at least 17 text messages responsive to Plaintiffs' discovery requests are no longer recoverable.

With respect to Defendant Frank Ferrara, the parties are in agreement that there are nine text messages exchanged with Defendant Lee on March 31, 2016, April 18, 2016, and July 29, 2016, that are not recoverable. Ferrara Joint Status Report at 3.

With respect to Defendant Charlie Ferrara, at least six text messages exchanged with Defendant Lee on June 30, 2016 and July 20, 2016, are no longer recoverable. Ferrara Joint Status Report at 6; MPA at 6.[5] Cellular data stored on Defendant Charlie Ferrara's phone that he traded in on August 15, 2016 is not recoverable. Ferrara Joint Status Report at 4. In addition, billing records for the time period December 15, 2015 through January 11, 2016 and records of text messages exchanged between December 15, 2015 and February 24, 2016 have not been produced. *Id.* at 4. Although Defendant Charlie Ferrara is attempting to locate these records through his cellular phone provider, the provider has not confirmed that the records can be located and has not provided an estimated date of production. *Id.* at 4.

The contents of the unrecoverable text messages were electronically stored on cellular phones. As such, the Court will apply Rule 37(e) to the loss of this evidence. Neither Plaintiffs nor Defendant Charlie Ferrara has represented whether the cellular phone billing records are electronically stored. However, it appears from the Sprint records that have been produced that the information was electronically stored. *See* Hurley Decl. Ex. 16. In addition, counsel for the Ferrara Defendants refers to "tape back-up" in her emails to Sprint, again suggesting that

---

[5] Although Plaintiffs state in their MPA that seven text messages are at issue, Charlie Ferrara contends that the communication on July 19, 2016 between him and Defendant Lee was a phone call. Ferrara Opp'n at 9 n.9; Hurley Decl. ¶ 18 & Ex. 16.

15

the cellular phone records were electronically stored, such that they could be transferred onto a back-up tape.  *See* Hurley Decl. Ex. 15.  The Court will thus apply Rule 37(e) to the loss of the cellular phone billing records.[6]

It is not disputed that the contents of at least some text messages are unrecoverable for Defendant Lee and each of the Ferrara Defendants.  In addition, there are cellular phone billing records that are missing for Defendant Charlie Ferrara and there is no indication if or when the records may be recovered by his cellular service provider.  The Court finds that Rule 37(e)'s requirement that the electronically stored information "cannot be restored or replaced through additional discovery" is satisfied for the evidence at issue.

**B.    Defendant Lee**

     i.    <u>Duty to Preserve</u>

Plaintiffs assert that Defendant Lee's duty to preserve arose in late March or early April 2016, given the significant press attention of the lawsuit and his frequent communications with codefendants during this time.   MPA at 10.  Plaintiffs submit as evidence several articles regarding the lawsuit that were published on or shortly after the date the Complaint was filed. Wolff Decl. ¶ 1 & Ex. 1.  Plaintiffs present evidence that Defendant Johnston was aware of the lawsuit on March 30, 2016,[7] Defendant Lee exchanged text messages with Defendant Johnston on March 31, 2016, and Defendant Lee had an 18-minute phone call with Defendant Johnston on April 6, 2016.  MPA at 2; Wolff Decl. ¶ 6.  Plaintiffs also point to several other communications between codefendants that occurred within a

---

[6] Although the Court applies the Rule 37(e) standard to the alleged spoliation in this Motion, the Court notes that it would arrive at the same findings, conclusions and recommendations had it applied the *Zubulake* standard pursuant to the Court's inherent authority to impose sanctions for spoliation.

[7] Defendant Johnston received a text message from non-party Charlie Mowat alerting Johnston and nine others about the lawsuit and to "[w]atch out for subpoenas [and] be on the ultra down-low."  Wolff Decl. Ex. 2.

few weeks of the filing of the lawsuit as evidence that Defendant Lee should have been aware of the litigation shortly after the filing date.  MPA at 2; Wolff Decl. ¶ 6.

Defendant Lee asserts that he was not aware of the lawsuit until he was served with the complaint on June 21, 2016.[8]  Lee Opp'n at 6.  In addition, Defendant Lee contends that the duty to preserve would not apply to any of the unrecoverable text messages because they occurred months after the alleged incidents, and, for the text messages to be relevant, they must show communications between Defendant Lee and his codefendants prior to or immediately after the January and February 2016 incidents alleged in the Complaint.  Lee Opp'n at 7.  Defendant Lee further argues that there is no evidence to suggest any of the text messages relate to the lawsuit, and not a single defendant or witness has testified they received or sent text messages to Defendant Lee regarding the alleged incidents.  *Id.* at 9; Lutz. Decl. ¶ 9.

The Court finds that Defendant Lee's duty to preserve arose, at the latest, on June 21, 2016, when he was served with the Complaint.  After service, Defendant Lee should have been aware of the pending litigation against him and the allegations involving the use of cellular phones.  The parties do not dispute that there are text messages between Defendant Lee and other codefendants that were exchanged after Defendant Lee was served, and that the contents of these text messages are unrecoverable.  The Court is not persuaded by Defendant Lee's argument that only text messages occurring around the dates of the incidents involving Plaintiffs would be relevant, as text messages exchanged at a later time, especially between codefendants, may still relate to allegations in the lawsuit.

Plaintiffs identify 25 text messages exchanged with codefendants after June 21, 2016 that are no longer recoverable, while Defendant Lee argues there are only eight.  Defendant Lee has not presented any argument to explain the reason for this

---

[8] The Court notes that this assertion is not supported in the Lee Opposition with a declaration of Defendant Lee or his deposition testimony.

1   discrepancy.  It appears to the Court that Plaintiffs identified the 25 text messages

2   from Defendant Lee's and others Defendants' cellular phone billing records, while

3   Defendant Lee has identified the eight text messages from his extraction report.

4   The Court finds that the billing records would contain more accurate information

5   regarding occasions when text messages were exchanged as the extraction report

6   only retrieves data from the cellular phone and such data may be overwritten.

7   Kellerman Decl. ¶¶ 6-7; G. Morales Decl. ¶¶ 19-20.  Therefore, there are at least 25

8   unrecoverable text messages that were exchanged between Defendant Lee and

9   codefendants after Defendant Lee had a duty to preserve the text messages.

10              ii.      Reasonable Steps to Preserve

11        Plaintiffs argue that Defendant Lee deleted the unrecoverable text messages

12   that were exchanged with codefendants between January 2016 and July 2016.

13   MPA at 5; Wolff Decl. ¶ 36.  None of these text messages could be recovered from

14   Defendant Lee's phone, and only three of these text messages were produced by a

15   codefendant.  MPA at 6; Lee Reply at 1.  Plaintiffs confirmed the exchange of these

16   text messages through analysis of Defendants' cellular phone bills.  *Id.*

17        Defendant Lee argues that he took reasonable steps to preserve cellular data.

18   Lee Opp'n at 7.  Defendant Lee submitted his phone for forensic analysis, and an

19   extraction report was completed on August 18, 2017.  *Id.*  Additional tests were

20   also performed on his phone to extract any further data.  *Id.* at 8.  Defendant Lee

21   also maintains that he did not delete any of the lost text messages, and that they

22   were overwritten by a process that is not under his control.  Lee Opp'n at 8.  As

23   evidence, Defendant Lee points to his extraction report, which lists whether a text

24   message has been flagged for deletion.  *Id*.  Although 120 text messages in his

25   extraction report were flagged as deleted, none of those were with codefendants.

26   *Id.*  In addition, Defendant Lee testified at his deposition taken on May 31, 2017

27   that he did not delete evidence related to the case.  Lutz Decl. ¶ 6 & Ex. C.

28   ///

Plaintiffs and Defendant Lee dispute how the contents of the unrecoverable text messages were lost and whether Defendant Lee affirmatively deleted text messages.   Plaintiffs and Defendant Lee each submitted a declaration by an individual with knowledge of computer forensic analysis.  The declarants agree that when a user deletes a text message on a cellular phone, it is flagged as deleted and is recoverable as long as the underlying data is not overwritten.  Kellerman Decl. ¶ 6; G. Morales Decl. ¶ 20.   It also appears undisputed that a typical user cannot control when data is overwritten.  Kellerman Decl. ¶ 8.  Various factors affect when data is overwritten, including the type of operating system of the device, the amount of free storage, the amount of user activity, and the length of time the text message was flagged for deletion.  G. Morales Decl. ¶ 19.  Plaintiffs' declarant states that the sooner one acts to recover deleted data, the better the chances are of recovering that data.  Kellerman Decl. ¶ 8.  Defendant Lee's declarant provides that she cannot make a determination on whether a text message was deleted if the entry for that text message on the extraction report does not have a "Yes" in the "flagged as deleted" column of the report.  G. Morales ¶ 18.

The Court finds that it is indeterminable from the forensic experts' declarations and other evidence whether cellular phone data on Defendant Lee's phone could have been overwritten without being flagged for deletion, or if Defendant Lee was aware that data from his phone was being overwritten even if the data had not been flagged for deletion.  Moreover, Defendant Lee imaged his phone in mid-August of 2016.  Given the relatively quick preservation of his cellular phone after he appeared in the case, the Court cannot conclude at this time that Defendant Lee failed to take reasonable steps to preserve evidence.

However, Plaintiffs, through no fault of their own, have not been able to sufficiently explore and develop the record regarding spoliation.  Defendant Lee's deposition took place in May 2017, before the Court resolved the discovery dispute regarding redactions of Defendant Lee's extraction report and ordered production

1    of an almost completely unredacted report on July 25, 2017.  *See* Dkt. No. 290.  In

2    addition, the number of unrecoverable text messages was only clarified after further

3    testing of Defendant Lee's cellular phone as ordered by the Court at the September

4    5 and September 12 hearings.  Plaintiffs also did not have available to them in May

5    2017 various records and documents evidencing communications with other

6    Defendants due to delays in production, which have since been resolved.  *See, e.g.*,

7    Dkt. Nos. 267, 296 (Ferrara Defendants); Dkt. No. 452 (Defendant Papayans).

8    Given this timeline, the Court finds it would not be fair to expect Plaintiffs to have

9    been able to question Defendant Lee in depth at his deposition on topics relevant to

10   spoliation, such as when he became aware of the litigation, whether he took

11   reasonable steps after he became aware of the litigation, whether he deleted any of

12   the text messages at issue, and whether there was ever an intent to deprive Plaintiffs

13   of their use of the content of text messages in the litigation.

14        Accordingly, the Court recommends that, at this time, no sanctions be

15   imposed upon Defendant Lee.  The Court recommends that Plaintiffs be permitted

16   to present evidence and argument at trial concerning what evidence was lost and the

17   potential relevance of such evidence, when Defendant Lee had notice of the

18   litigation,[9] and how the evidence was lost.  The Court additionally recommends that

19   Plaintiffs be permitted to take a second deposition of Defendant Lee in order to

20   further explore the alleged spoliation of text messages.  Because this additional

21   discovery is not meant to be a sanction against Defendant Lee, it is recommended

22   that the costs for the second deposition be shared equally between Plaintiffs and

23   Defendant Lee.

24   ///

---

[9] Although the Court makes a finding for purposes of this Amended Report that
Defendant Lee had a duty to preserve relevant evidence at the latest by June 21,
2016, the Court does not intend for this finding to preclude Plaintiffs from
presenting evidence or argument at trial that his duty to preserve arose at an earlier
date.

**C.     The Ferrara Defendants**

> i.     <u>Duty to Preserve and Reasonable Steps to Preserve</u>

> > a.     *Defendant Frank Ferrara*

Plaintiffs contend that Defendant Frank Ferrara was aware of the litigation by April 7, 2016, the date an article in the Daily Breeze was published regarding this lawsuit.  MPA at 10.  Plaintiffs also argue that the Ferrara Defendants' knowledge of the lawsuit can be inferred by the fact that they both attempted to dodge service throughout July and August 2016.  MPA at 10-11; Wolff Decl. ¶ 7.  Plaintiffs argue that Frank Ferrara deleted text messages with Defendant Lee, and that the Ferrara Defendants' obstructive conduct evidences their willfulness to destroy evidence. MPA at 11-12.

Defendant Frank Ferrara contends that he did not have a duty to preserve until he made an appearance through counsel at the August 29, 2017 initial scheduling conference.  Ferrara Opp'n at 3.  Defendant Frank Ferrara argues that the quotes in the April 7, 2016 article cannot be identified as attributed to him.  *Id.* at 4.[10]  Defendant Frank Ferrara also contends that there is no evidence that he intentionally destroyed the unrecoverable text messages, and that over the past several months, he has made diligent efforts to produce the requested discovery. Ferrara Opp'n at 5.

The Court finds that Defendant Frank Ferrara had a duty to preserve by April 7, 2016.  On April 7, 2016, an article was published on the Daily Breeze website. Wolff Decl. ¶ 3 & Ex. 1 at 19.  The article quotes Frank Ferrara.  *Id.*  Defendant Frank Ferrara testified at his deposition that he was contacted by Megan Barnes, the author of the Daily Breeze article, and that they had a telephone conversation

---

[10]  Defendant Frank Ferrara also objects to the April 7, 2016 article as hearsay. However, the Court only uses this article to establish that on April 7, 2016, an article was published with quotes from Frank Ferrara.  Because the statements within the article are not being used to prove the truth of the matter asserted therein, the Ferrara Defendants' hearsay objection is overruled.

lasting 20 to 30 minutes regarding the lawsuit, the named individual Plaintiffs of the lawsuit, Lunada Bay, and some of the allegations of the lawsuit.  Wolff Reply Decl. Ex. 3.  Specifically, Defendant Frank Ferrara testified that Ms. Barnes asked him about whether he heard about individuals using walkie-talkies to coordinate efforts or to harass outsiders.  *Id.*  In addition, Defendant Frank Ferrara testified in response to a question about a phone conversation with Defendant Lee around the time the lawsuit was filed that he talked about the lawsuit with Defendant Lee.  Hurley Decl., Ex. 3.

The evidence shows that Defendant Frank Ferrara became aware of the lawsuit, at the latest, when he had the telephone conversation with the Daily Breeze article author regarding the lawsuit, which necessarily was on or before April 7, 2016, the publication date of the article.  Defendant Frank Ferrara became aware at this time that communications between codefendants or other surfers at Lunada Bay were at issue in the lawsuit.  Therefore, at the latest, Defendant Frank Ferrara had a duty to preserve text messages and other communications with codefendants starting on April 7, 2016.

Given this finding, the content of eight text messages exchanged on April 18, 2016, and July 29, 2016 between Defendant Frank Ferrara and Defendant Lee were necessarily lost after Frank Ferrara had a duty to preserve.

The Court also finds that Frank Ferrara did not take reasonable steps to preserve the contents of the text messages at issue.  As with Defendant Lee, Plaintiffs and Frank Ferrara dispute whether the text messages were intentionally deleted.  Plaintiffs and Defendant Frank Ferrara both submit declarations by individuals with knowledge of forensic analysis.  As with Defendant Lee, the Court cannot determine whether Defendant Frank Ferrara intentionally deleted text messages that are now unrecoverable.  However, unlike Defendant Lee, the Court has found that Frank Ferrara was aware of the lawsuit from early April 2016, yet he failed to image his phone or otherwise preserve text messages with codefendants

until a Court order required him to produce the documents to Plaintiffs over a year later.  *See* Dkt. No. 267.  Plaintiffs' forensic analyst declares that "the sooner one acts to recover deleted data, the better the chances are of recovering that data before it is overwritten."   Kellerman Decl. ¶ 8.   The Court finds that Plaintiffs have presented sufficient evidence that the contents of the text messages were lost as a result of Frank Ferrara's failure to take reasonable steps to preserve the evidence for over a year after he had a duty to preserve.

At the October 12 hearing, as an example of how data can be deleted without a user manually flagging the data for deletion, counsel stated that it is possible on an older phone that when the storage capacity is at its limit, the phone may prompt the user to delete older data in order to save new data.  However, in this situation, it appears the user does have control over whether something would be deleted off of that user's phone.  When under a duty to preserve certain evidence on one's phone, the Court finds that it would not be reasonable to allow the phone to overwrite older data that may encompass relevant evidence.  Given the Ferrara Defendants' late compliance with discovery requests, it would not have been reasonable for Defendant Frank Ferrara to continue to have data overwritten on his phone while sitting on his obligation to preserve and produce responsive data from that phone.

### b. *Defendant Charlie Ferrara*

Plaintiffs contend that Defendant Charlie Ferrara must have been aware of the lawsuit in late March or early April 2016 given the significant press attention and his communications with codefendants, including his father, during this time. MPA at 10.   Plaintiffs argue that Charlie Ferrara failed to preserve relevant evidence by trading in his phone after he became aware of the pending litigation. *Id.* at 12.  With respect to the missing cellular phone billing records, Plaintiffs contend that Defendant Charlie Ferrara was not diligent in preserving the records. *Id.*

///

1   Defendant Charlie Ferrara contends that, like Defendant Frank Ferrara, he

2   did not have a duty to preserve until he made an appearance through counsel at the

3   August 29, 2016 initial scheduling conference.   Ferrara Opp'n at 3.   Defendant

4   Charlie Ferrara argues that he traded his phone in on August 15, 2016, before he

5   was under any obligation to preserve evidence from it.  *Id.* at 1, 10.  With respect to

6   the missing cellular phone billing records, Defendant Charlie Ferrara maintains that

7   he has been working diligently to recover these documents, and has made a legal

8   demand from Sprint to retain and produce the records.  *Id.* at 9-10.

9   Although there is no record of when Charlie Ferrara was served with the

10   Complaint, Plaintiffs filed a proof of service that a copy of the Notice of Initial

11   Scheduling Conference ("Notice") was sent to the Ferrara Defendants via UPS on

12   July 26, 2016.  Dkt. No. 91.  Although counsel for the Ferrara Defendants argued at

13   the October 12 hearing that there is no evidence that the Ferrara Defendants even

14   received this document, the fact that they retained counsel who appeared at the

15   Initial Scheduling Conference on their behalf suggests that they did receive the

16   Notice.   The Court finds that the duty to preserve potentially relevant evidence

17   arose for Charlie Ferrara, at the latest, by early August 2016, when he should have

18   received the Notice.

19   Defendant Charlie Ferrara traded his phone in on or around August 15, 2016

20   when he transferred cellular phone service from Sprint to AT&T.   Ferrara Joint

21   Status Report at 4-5.  This took place after he had a duty to preserve potentially

22   relevant evidence, including communications with codefendants.   Defendant

23   Charlie Ferrara did not preserve a backup of his cellular data from his old phone

24   and did not have his text messages properly transferred to his new phone.[11]  The

25   _____

26   [11] Although counsel for the Ferrara Defendants argued that Charlie Ferrara had to
trade in his old phone for a new phone because he could not afford a new phone

27   without the credits for the old phone, this argument is not supported by testimony
or declaration of Charlie Ferrara.  Moreover, there is no explanation or evidence as

28   to why Charlie Ferrara had to switch providers and dispose of his cellular phone at

1    lost data includes six text messages that Defendant Charlie Ferrara exchanged with
2    Defendant Lee.  The Court finds that even for an individual without sophisticated
3    knowledge about litigation or forensic analysis, trading in a phone, without making
4    a backup, and after becoming aware of pending litigation where communications
5    with codefendants were potentially relevant, would constitute a failure to take
6    reasonable steps to preserve evidence.

7         Additionally, Defendant Charlie Ferrara is missing cellular phone billing
8    records that would show whether phone calls were made from December 15, 2015
9    through January 11, 2016, and records that would show whether texts were
10   exchanged from December 15, 2015 through February 24, 2016.  Ferrara Joint
11   Status Report at 4.  Sprint's general policy is to retain only 18 months of billing
12   records.  Wolff Decl. Ex. 15.  Although counsel has submitted a request to Sprint
13   for these records, Sprint has not provided counsel with an estimate or answer as to
14   when or if the records can be located.  Hurley Decl. Ex. 15.  Had Defendant Charlie
15   Ferrara preserved or requested these records when he became aware of the lawsuit
16   in early August 2016, when he retained counsel around the time of his appearance
17   in the case at the August 29, 2016 initial case management conference, when he
18   received the document requests from Plaintiffs in November 2016, or even when
19   his counsel was meeting and conferring with Plaintiffs' counsel from January 2017
20   to June 2017 regarding these very records, the now lost records would have been
21   available to him.  However, it was not until after the Court ordered production of
22   the records on July 13, 2017 that Defendant Charlie Ferrara attempted to locate and
23   produce these records.  By that time, the records from December 15, 2015 through
24   February 24, 2016 no longer had to be retained according to Sprint's policy and
25   were no longer readily available to Defendant Charlie Ferrara.  The Court finds that
26   ///

27
28   this specific time, that is, approximately two weeks after he was mailed the Notice
     and should have been aware of the allegations of the lawsuit.

1  the failure to preserve these records until after the Court ordered production in July

2  2017 was not reasonable.

3       Accordingly, the Court concludes that both Ferrara Defendants failed to take

4  reasonable steps to preserve electronically stored information that should have been

5  preserved in the anticipation or conduct of litigation, and the electronically stored

6  information was lost as a result and cannot be restored or replaced through

7  additional discovery.

8       ii.   Sanctions

9       The spoliation analysis next turns to whether sanctions are warranted, and, if

10  so, the severity of the measures.  The harsh sanctions pursuant to Rule 37(e)(2) are

11  available only upon finding that the Ferrara Defendants acted with the intent to

12  deprive Plaintiffs of the information's use in the litigation, while only a finding of

13  prejudice to Plaintiffs from loss of the information is required for the Court to order

14  measures "no greater than necessary to cure the prejudice" under Rule 37(e)(1).

15       a.   *Intent to Deprive*

16       Plaintiffs argue that because the Ferrara Defendants had a clear awareness of

17  the lawsuit but failed to preserve or destroyed relevant evidence, Defendants acted

18  with the intent to deprive Plaintiffs of their use of this evidence for their litigation.

19  MPA at 11.

20       Defendant Frank Ferrara argues that there is no evidence he intentionally

21  destroyed any of the nine unrecovered messages.  Ferrara Opp'n at 7.  His forensic

22  analyst declares that there was no indication that any software or application was

23  installed to wipe data from his phone.  *Id.*  In addition, hundreds of other text

24  messages from around the same time period as the unrecoverable text messages

25  exchanged with Defendant Lee were also not available for recovery.  *Id.*

26       Defendant Charlie Ferrara contends that because the duty to preserve had not

27  attached when he disposed of his old cellular phone, this action does not rise to

28  even negligence under the circumstances.  Ferrara Opp'n at 17-18.  With respect to

1    the cellular phone bills, counsel is in the process of remedying the situation with the

2    pending request to Sprint.  *Id.* at 17, Hurley Decl. ¶ 17 & Ex. 15.

3          The Court finds that Frank Ferrara's failure to preserve his cellular data,

4    including text messages with codefendants, for well over a year constitutes at least

5    gross negligence.  Similarly, the Court finds that Defendant Charlie Ferrara's

6    disposal of his cellular phone after becoming aware of the lawsuit constitutes at

7    least negligence and Defendant Charlie Ferrara's failure to preserve his cellular

8    phone records for well over a year after he appeared in the action constitutes at least

9    gross negligence.  However, the Court is not persuaded at this time that either of the

10   Ferrara Defendants intentionally deleted text messages or failed to preserve

11   evidence with the intent to deprive Plaintiffs of their use of the evidence in

12   litigation.   At this time, the Court does not find that Plaintiffs have offered

13   sufficient evidence to warrant the severe sanctions that may be imposed under Rule

14   37(e)(2).

15         As with Defendant Lee, the Court finds that Plaintiffs have not had the

16   opportunity to fully develop the record regarding intent and spoliation by the

17   Ferrara Defendants.  Plaintiffs were not aware that there were any unrecoverable

18   text messages until after the Court ordered production of the cellular phone records

19   on July 13, 2017.  Defendant Charlie Ferrara was deposed on July 7, 2017 and

20   Frank Ferrara was deposed on July 10, 2017.  *See* Hurley Decl. Exs. 3, 4.  It would

21   be unfair to expect Plaintiffs to have been able to fully probe spoliation and the

22   intent behind the destruction or failure to preserve evidence when Plaintiffs were

23   unaware that any evidence previously in possession or under the control of the

24   Ferrara Defendants was unrecoverable, and various documents related to the

25   evidence was not available yet to Plaintiffs.  *See supra*, Section IV.B.ii.  Plaintiffs

26   should not be precluded from presenting evidence at trial as to whether the Ferrara

27   Defendants acted with the intent to deprive Plaintiffs of the use of the evidence.

28   ///

b.     *Prejudice*

Because the Court declines to find that the harsh sanctions under Rule 37(e)(2) are warranted at this time, the Court turns to whether less severe measures under Rule 37(e)(1) are necessary to cure any prejudice to Plaintiffs from the loss of the evidence at issue.

Plaintiffs argue that the lost evidence was relevant as Plaintiffs have alleged in their Complaint that Defendants conspired to exclude Plaintiffs and other individuals from accessing and enjoying a public space via phone calls, text messages and email.  MPA at 13.  Although Plaintiffs have not been able to recover any of the lost text messages at issue for the Ferrara Defendants, Plaintiffs have been able to obtain the contents of three text messages exchanged between Defendant Lee and other codefendants.  MPA at 15 n.13; Lee Reply at 1.  At least two of these text messages relate to incidents alleged in the complaint.  *Id.*[12] Plaintiffs argue that have been prejudiced as they have been forced to oppose motions for summary judgment brought by Defendants based on lack of evidence. *Id.* at 13.  In addition, Plaintiffs will be prejudiced at trial in having to establish their claims without the use of the contents of these text messages. *Id.* at 14.

The Ferrara Defendants argue that there is no factual support that the fifteen unrecoverable text messages contain any information that is relevant to the case. Ferrara Opp'n at 18.

///

---

[12] Plaintiffs were able to recover a text message exchanged between Defendant Lee and Defendant Angelo Ferrara on January 29, 2016 that asks locals to come out to Lunada Bay in response to certain individuals coming to the bay to surf.  Wolff Decl. ¶ 36.  In addition, Plaintiffs were able to recover a series of text messages exchanged between Defendant Papayans, Defendant Lee and other individuals on January 29, 2016 which references two individuals at the bay and asks others to join.  Wolff Reply Decl. Ex. 2.  January 29, 2016 is the date Plaintiff Reed allegedly visited Lunada Bay with a friend and when they were allegedly harassed by members of the Lunada Bay Boys.  *See* Compl. ¶ 22.

The Court finds that Plaintiffs have suffered and will continue to suffer prejudice from the loss of these text messages and cellular data.  The text messages at issue were exchanged between codefendants in this lawsuit.   The few text messages exchanged between codefendants that Plaintiffs were able to recover from other sources contain communications that appear to be highly relevant to the action, suggesting that other text messages exchanged between codefendants would also contain relevant content.   The Court finds that Plaintiffs have already been prejudiced in having to oppose motions for summary judgment without this potentially relevant evidence.   In addition, Plaintiffs will be prejudiced at trial by not being able to present or rely on the contents of these text messages.   With respect to Defendant Charlie Ferrara, Plaintiffs are also prejudiced because they are without any records of phone calls or text messages exchanged during a highly relevant period of time surrounding the alleged incidents of harassment of the named Plaintiffs.

### c.   *Appropriate Sanctions to Cure the Prejudice*

Plaintiffs request as sanctions that the jury be instructed that the spoliated evidence was unfavorable to these three defendants and that the Court designate as established the fact that a conspiracy exists between Defendants Lee, Frank Ferrara, and Charlie Ferrara.  MPA at 15. Plaintiffs also request that the Court deny these three Defendants' motions for summary judgment. *Id.*

The Ferrara Defendants contend that the nine text messages exchanged with Defendant Lee form the single thread connecting him to Plaintiffs' claimed harm in the case, and no parties have testified that he participated in any actions or inactions supportive of Plaintiffs claims.   Ferrara Opp'n at 7.   Similarly, the Ferrara Defendants argue that the six text messages Charlie Ferrara exchanged with Defendant Lee form the only basis for Plaintiffs contention that Charlie Ferrara was connected to Plaintiffs' claimed harm. *Id.* at 11.  The Ferrara Defendants argue that because Plaintiffs present no evidence that the text messages or cellular phone

billing records at issue contained any information relevant to the action, Plaintiffs' requested sanction is not justified.  *Id.* at 17.

With respect to Plaintiffs' request that the Ferrara Defendants' motions for summary judgment be denied, counsel for the Ferrara Defendants represented at the October 12, 2017 hearing that they may be amenable to withdrawing their motions for summary judgment and would be willing to meet and confer with Plaintiffs' counsel.  The Court ordered counsel to meet and confer by October 16, 2017.  Dkt. No. 489.  On October 16, 2017, the Ferrara Defendants withdrew their motions for summary judgment.  Dkt. No. 491.

With respect to Plaintiffs' requests for an adverse inference instruction or a designation that a conspiracy is established as a fact, the Court finds that these severe sanctions are not warranted because the Court has not found that the Ferrara Defendants acted with the intent to deprive Plaintiffs of the use of the lost evidence in the litigation.

With respect to monetary sanctions, the Court initially recommended in its October 20 Report that monetary sanctions be imposed against the Ferrara Defendants in the form of attorneys' fees and costs.

The Ferrara Defendants object to the recommendation of monetary sanctions. Dkt. No. 518 at 2.  The Ferrara Defendants assert that counsel for the Ferrara Defendants and counsel for Plaintiffs agreed to a monetary amount to be paid by the Ferrara Defendants to Plaintiffs to fully and finally resolve monetary sanctions related to all discovery disputes between the parties as of August 29, 2017.  *Id.* Specifically, in an August 29, 2017 email, counsel for the Ferrara Defendants asked counsel for Plaintiffs to confirm that the parties agreed to, among other things, the following: "The amount paid by BWBO shall constitute a voluntary settlement of the entirety of Plaintiffs request for monetary sanctions dealing with all existing discovery disputes between the Parties as of today, without an admission by BWBO

1   or its clients of their reasonableness."[13]  Dkt. No. 518-1 at 22.  On August 30, 2017,

2   Plaintiffs' counsel replied to the August 29, 2017 email and agreed to this

3   statement.  *Id.* at 31.  The Ferrara Defendants argue that Plaintiffs have accepted

4   payment in exchange for the release of their right to recover monetary sanctions

5   resulting from this discovery dispute, and the Court's recommendation of a

6   monetary sanction conflicts with the parties' valid agreement.  Dkt. No. 518 at 4.

7        Plaintiffs respond that the Court's authority to award sanctions is broad and

8   Plaintiffs did not agree to limit the Court's authority.  Dkt. No. 522 at 7.

9        The monetary sanctions at issue here are compensatory, as they are meant to

10  "cure the prejudice" to Plaintiffs, and not to punish the Ferrara Defendants.  For

11  that reason, the parties had the right to bargain away these sanctions.  *See HM*

12  *Electronics, Inc. v. R.F. Technologies, Inc.*, 171 F. Supp. 3d 1020, 1028-29 (S.D.

13  Cal. 2016) (collecting cases and finding that compensatory sanctions may be

14  bargained away, while punitive and other non-monetary sanctions may not).  The

15  Court finds that Plaintiffs and the Ferrara Defendants entered into a valid agreement

16  to resolve the issue of compensatory monetary sanctions for all discovery disputes

17  existing between the parties as of August 29, 2017.  This precludes the Court from

18  awarding further compensatory monetary sanctions to cure the prejudice from the

19  Ferrara Defendants' spoliation of evidence, which was the subject of the instant

20  Motion for Sanctions filed on August 22, 2017.  Therefore, the Court recommends

21  that no further monetary sanctions be imposed against the Ferrara Defendants.

22       The Ferrara Defendants did not object to the remainder of the October 20

23  Report, including the recommendation for further discovery and presentation of

24  evidence of spoliation at trial.

25       Because Plaintiffs have not had the opportunity to fully explore the spoliation

26  issues and the level of culpability or intent behind the failure to preserve the text

27

28  [13] BWBO stands for Bremer, Whyte, Brown & O'Meara, LLP, counsel for the Ferrara Defendants.

messages and cellular phone billing records, the Court recommends that Plaintiffs be permitted to depose both of the Ferrara Defendants for a second time, with costs to be shared equally between Plaintiffs and the Ferrara Defendants.

Finally, the Court recommends that Plaintiffs be permitted to submit evidence concerning what evidence was destroyed, when the Ferrara Defendants had notice of the litigation, and the Ferrara Defendants' intent with regard to the destruction of the evidence. Although the Court declines to recommend as a sanction at this time that an adverse inference jury instruction be given at trial, the Court notes that, depending on the sufficiency of Plaintiffs' evidence at trial regarding intent, the District Court may decide at trial whether to give an adverse inference instruction. *See* Committee Notes. Alternatively, if the intent finding is left for the jury, the District Court may instruct the jury that it may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in litigation. *See id.*

## V.   RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the District Court issue an Order approving and accepting this Amended Report and Recommendation, and ordering that Plaintiffs' Motion for Sanctions (Dkt. No. 425) be granted in part as follows:

(1) Plaintiffs be permitted to depose Defendants Charlie and Frank Ferrara regarding issues relevant to spoliation, costs to be shared by Plaintiffs and the Ferrara Defendants;

(2) Plaintiffs be permitted to depose Defendant Lee regarding issues relevant to alleged spoliation, costs to be shared by Plaintiffs and Defendant Lee; and

///

///

///

(3) At trial, the parties be permitted to present evidence and argument related to the unrecoverable text messages for Defendant Lee and the Ferrara Defendants and the unavailable cellular billing records for Charlie Ferrara.

DATED:  November 29, 2017

_Rozella A. Olin_

_____

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### **NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.