**VEATCH CARLSON, LLP**
A Partnership Including Professional Corporations
1055 Wilshire Boulevard, 11th Floor
Los Angeles, California 90017
Telephone (213) 381-2861
Facsimile (213) 383-6370

ROBERT T. MACKEY, State Bar No. 210810
*rmackey@veatchfirm.com*
RICHARD P. DIEFFENBACH, State Bar No. 102663
*rdieffenbach@veatchfirm.com*
JOHN E. STOBART, State Bar No. 248741
*jstobart@veatchfirm.com*

**BUCHALTER, APC**
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017
(213) 891-0700
ROBERT S. COOPER, State Bar No. 158878
*rcooper@buchalter.com*

Attorneys for Defendant,
BRANT BLAKEMAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CORY SPENCER, an individual; DIANA MILENA REED, an individual; and COASTAL PROTECTION RANGERS, INC., a California non-profit public benefit corporation,<br><br>Plaintiffs,<br>vs.<br><br>LUNADA BAY BOYS; THE INDIVIDUAL MEMBERS OF THE LUNADA BAY BOYS, including but not limited to SANG LEE, BRANT BLAKEMAN, ALAN JOHNSTON AKA JALIAN JOHNSTON, MICHAEL RAE PAPAYANS, ANGELO FERRARA, FRANK FERRARA, CHARLIE FERRARA, and N.F.; CITY OF PALOS VERDES ESTATES; CHIEF OF POLICE JEFF KEPLEY, in his representative capacity; and DOES 1-10,<br><br>Defendants. | **CASE NO.: 2:16-CV-2129-SJO-RAO**<br><br>Hon. S. James Otero, Ctrm. 10C<br><br>**DEFENDANT BRANT BLAKEMAN'S BRIEF IN RESPONSE TO PLAINTIFF'S DECLARATION IN SUPPORT OF ATTORNEY FEES RE: MOTION FOR SANCTIONS; DECLARATION OF RICHARD DIEFENBACH; DECLARATION OF ROBERT S. COOPER**<br><br>Action Commenced: 03/29/2016<br>Action Dismissed: 02/12/2018 |

DEFENDANT BLAKEMAN'S REPLY ISO MOTION FOR SUMMARY JUDGMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' counsel have submitted declarations in support of their motion for sanctions against Defendant Blakeman, requesting an incredible $111,513.28. Since the request is the result of duplicative, excessive, and improperly punitive billing tactics, and requests compensation that violates the U.S. Supreme Court's recent decision in *Goodyear Tire & Rubber Company v. Leroy Haeger, et al.*, 137 S. Ct. 1178, 1186-1187 (2017), the Court must drastically reduce this overreaching request.

## II. PURSUANT TO THE U.S. SUPREME COURT'S RECENT HOLDING IN *GOODYEAR TIRE V. HAEGER*, ATTORNEY FEE SANCTIONS MAY BE COMPENSATORY BUT NOT PUNITIVE.

When allowed, monetary sanctions under Fed. Rules Civ. Proc. 37 are imposed for fees actually incurred for work actually done in successfully making the motion. In the civil context, such sanctions are not to be punitive. Nor are such fees imposed where the fees would have been incurred regardless of the alleged discovery misconduct, essentially a "but for" test. "The Complaining party may recover only the portion of his fees that he would not have paid but for the misconduct." *Goodyear Tire & Rubber Company v. Leroy Haeger, et al.*, 137 S. Ct. 1178, 1186-1187 (2017). "<u>If an award extends to fees that would have been incurred without the misconduct, then it crosses the boundary from compensation to punishment</u>." "An attorney fees award as sanctions may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior… If the court, in addition to a compensatory award of fees, also levels a separate penalty as punishment for the sanctioned party's misbehavior, it needs to provide procedural guarantees applicable to criminal cases, such as a "beyond a reasonable doubt" standard of proof, and when those criminal-type protections are missing, a court's shifting of fees is limited to reimbursing the victim." *Id.* When the cost would have been incurred in the absence of a discovery violation, then, in imposing sanctions, a federal court, possessing only the power to compensate for harm the misconduct has caused, must leave it alone and not award the cost." *Id.*

The Court has a great deal of discretion in determining the reasonableness of the fee and, as a general rule [an appellate court] will defer to its determination…regarding the reasonableness of the hours claimed by the [movant]." *Prison Legal News v. Schwarzenegger* 608 F.3d 446, 453 (9th Cir. 2010) quoting *Gates v. Deukmejian* 987 F. 2d 1392, 1398 (9th Cir. 1992).  In reviewing the hours claimed, the Court may exclude hours related to overstaffing, duplication and excessiveness, or that are otherwise unnecessary. *See e.g., Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Cruz v. Alhambra School Dist.,* 601 F. Supp.2d 1183, 1191 (C.D. Cal. 2009) ("…the Court must eliminate from the lodestar time that was unreasonably, unnecessarily or inefficiently spent.")

### III. PLAINTIFF'S REQUEST FOR ATTORNEY FEES ARE PUNITIVE, GROSSLY EXCESSIVE AND IMPROPER.

#### A. PLAINTIFFS' CLAIM OF $82,866 TO FILE A MOTION IS THE PRODUCT OF GOUGING AND DOES NOT COMPLY WITH *GOODYEAR TIRE*.

##### 1. At a Minimum, the Plaintiffs' Claimed Fees Should Be Cut in Half Since The Motion Was Brought and Argued Jointly Against Blakeman and City of Palos Verdes Estates.

Plaintiffs' brought their motion for sanctions jointly against the City of Palos Verdes Estates and Blakeman.  They are claiming an astronomical 159.9 hours to bring the motion only as against Blakeman, when in fact this amount of hours, representing a lawyer working non-stop 8 hours per day for a month was,  if incurred at all, incurred to bring the motion against two entities, not just one. Plaintiffs claim in footnotes of their chart that they "deducted" a mere 21.1 hours to avoid such duplicity of billing, a mere drop in the bucket for them given the gargantuan number of hours claimed. But this approach does not meet the *Goodyear* "but for" test.  Under *Goodyear*, it is not enough to cut out the work which only pertained to the City of Palos Verdes, but rather, Plaintiffs cannot recover against Blakeman, for *any* work done on behalf of the motions against *both* Defendants.   Such a claim is punitive rather than compensatory if the work had to be done anyway with respect to the motion against the City. Plaintiffs have thus proceeded on the incorrect, converse theory that if the work was required against both defendants, they can collect it *solely* against

Blakeman. By Plaintiffs own admission, almost all of the hours pertained jointly to their motions as against both Blakeman and the City, and awarding such would be punitive and would violate Goodyear. *Goodyear, supra,* at pp. 1186-1187.

At a minimum, the grossly inflated, excessive number of hours claimed, (analyzed at greater length below), should as a preliminary matter be cut in half to reflect the reality the Plaintiffs brought this motion against two parties. Cutting a mere 21.1 hours provides a windfall and reflects a punitive measure against Blakeman, forcing him to pay the costs actually incurred against another party, if indeed they were incurred at all.

Moreover, Plaintiffs provide insufficient data to establish whether any of these fanciful, grossly inflated numbers are real. For example, in the footnotes in which Plaintiffs claim to have "deducted" time, they state: "Ms. Wolf *billed* 4.2 hours on 10/26/17 related to drafting the sanctions motion; however, 2.1 hours were deducted to account for time spent on the motion that was related to Plaintiffs' arguments against the City of Palos Verdes Estates." If such time was really "billed," Plaintiffs should produce the actual time records that reflect it, not just a chart created after-the-fact. And if they really do not have such records, then they should so state, that these time records were all just estimated after the fact.

### 2. The Court Must Factor in the Fact That Plaintiffs' Met With Very Limited Success on the Merits of Their Motion.

"If…., a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained…." *Hensley V. Eckerhart* 461 U.S. 424, 436 (1983) 103 S. Ct. 1933.

Here, it cannot be denied that Plaintiffs' met with very limited success on their motions for sanctions. Their motion as against Blakeman sought the harsh remedies set forth under Rule 37(e)(2), which included the denial of Mr. Blakeman's pending motion for summary judgment and

an adverse inference at trial. (See Docket, #523, Blakeman's Reply Brief; # 538, Magistrate's Report and Recommendations,  pg. 11 of 25).  At the hearing, the only remedy sought by Plaintiffs was, rather transparently, a denial of Blakeman's summary judgment motion.  (See Ex. A, attached to Declaration of Robert S. Cooper, Transcript of Proceedings, pp. 54).

The Court properly denied these harsh remedies, properly concluding that Plaintiffs could not establish the prerequisite for such findings, i.e., that Blakeman had an "intent to deprive" Plaintiff of the four unrecovered texts from Sang Lee sent prior to Blakeman being served with the complaint in this matter. In her summation at the hearing, Plaintiffs' counsel Samantha Wolff requested only one remedy, denial of Blakeman's summary judgment motion, which remedy was *no*t awarded.  (*Id.*)

Of course, Plaintiffs' motion as against the City was denied altogether.  And as against Blakeman, the court has awarded the costs for the sanctions motion itself, and, as set forth below, the costs for a further deposition of Blakeman on the issue of sanctions. As set forth under section "B," infra, the deposition remedy awarded was not even sought by Plaintiffs, and is a superfluous and inappropriate remedy now that the case has been dismissed, since this deposition would proceed as a matter of course in the state case.   Since Plaintiffs achieved almost none of their requested remedies, the Court should significantly reduce the award by a factor of 50-75% on that basis alone.

### 3. The Court Must Reduce Plaintiffs' Fees For Unnecessary Duplication of Effort and Excessive Hours Billed.

"Billed time that includes unnecessary duplication of effort should be excluded from the lodestar. *Herrington v. County of Sonoma,* 883 F.2d 739, 747 (9th Cir.1989); *see also Cruz,* 601 F.Supp.2d at 1191. "[C]ourts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do." *Democratic Party of Wash. State v. Reed,* 388 F.3d 1281, 1286 (9th Cir.2004) (internal citations omitted). Of course, some duplication of effort is necessary in any case." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir.2008). Here, as outlined in Defendant's detailed response chart attached to Diefenbach's Declaration as Exhibits "1" and "2",   Plaintiffs' request for fees is fraught with unnecessary duplication of effort and excessive hours billed and re-billed by different lawyers for the same tasks.

As a preliminary matter, attorney Otten requests an award of $5,922.50 for 9.2 hours spent " analyzing discovery responses, meeting and conferring with opposing counsel and reviewing the briefs and the pleadings related to the motion."  (Otten Decl., para. 2, pg. 2-3).  In truth, Otten role was limited to writing one meet and confer letter, which was so incorrect on the law that the explanation as to the basis of Plaintiff's motion given therein was later abandoned by Plaintiffs. (See section A-4, infra.).

In addition to Otten, Plaintiffs are attempting to collect for hours attributed to three different high-level partners at Hanson Bridgett, with high-end billing rates in the $525-$605  (Samantha Wolff, Kurt Franklin, and Lisa Pooley), as well as "Senior Counsel" Russell Peterson, associate Candice Shih and two paralegals, Monette Villavicencio and Samantha Hubley.  As set forth in the response chart attached to the Declaration of Richard Diefenbach as Exhibit "1", according to Plaintiffs' declaration, these lawyers and paralegals strategized, reviewed each other's work and then re-reviewed it again to generate the astronomical 159.9 hours.  The paralegals alone are claiming some 14.9 hours to "gather exhibits" for the motion, at a rate of $275/hr., which rivals most insurance defense firm attorney rates.   Some $2000 is claimed just to "strategize" among the numerous attorneys for writing the motion.  All three partners reviewed and edited nearly every document.  Remarkably, on 12/4/17, Franklin reviewed *his own* revisions of the reply brief to the tune of $230.  Of course, Mssrs. Wolff and Pooley also revised and edited the same reply brief before it was "finalized" by Wolff. All three partners naturally are claiming extensive time to prepare for the hearing, although Pooley (to whom $2,257 is attributed to prepare), was not present at the hearing, and Franklin billed 1.3 hours and 8 hours for travel time although he did not argue the motion either.  Together Wolff and Franklin billed 16 hours of travel time from San Francisco to L.A. for the hearing, in addition to their other travel expenses.

The above only scratches the surface of the excessive duplication and overbilling for which Plaintiffs' are attempting to recover.  As set forth in the response chart prepared by Defendant, Plaintiffs fees for the motion should be reduced by approximately 75%, aside from the other basis for reduction set forth herein.

    4.  <u>Plaintiffs' Counsel Have Failed to Justify The  Hourly Rates Claimed.</u>

Plaintiffs' Counsel have failed to meet their burden of establishing that their hourly rates of $525-$605 are reasonable in light of prevailing rates in the Central District of California. *See Gonzalez*, 729 F.3d at 1206 ("Importantly, the fee applicant has the burden of producing 'satisfactory evidence' that the rates he requests meet these standards."); *Sinanyan v. Luxury Suites Int'l, LLC*, No. 215CV–00225–GMN–VCF, 2016 WL 4394484, at pg. 5 (D. Nev. Aug. 17, 2016) (citing *Camacho*, 523 F.3d at 980) "([A]lthough the declaration claims that '[t]he billing rates applied are reasonable and customary for attorneys engaged in complex class action litigation in federal court,' such cursory averments by the requesting attorney fall short of demonstrating that [c]ounsel's rates are consistent with the prevailing market rate."); *J & J Sports Prods., Inc. v. Diaz*, No. 12–CV–1106–W WMC, 2014 WL 1600335, at pg. 3 (S.D. Cal. Apr. 18, 2014) ("Plaintiff wholly fails to provide any evidence regarding the prevailing rates charged by attorneys of comparable skill, experience, and reputation in this district. ... Without any supporting evidence, [p]laintiff fails to meet its burden to establish that the rates sought are the prevailing market rates for the Southern District of California.").

Here, Plaintiffs' counsel have failed to provide any justification for the high rates at which they are attempting to be compensated, other than stating the number of years of practice and attaching biographies. They make no mention of the prevailing rates in this market, which are significantly lower, or why these attorneys should justify a higher rate. The Court should reduce these rates accordingly.

        5.    <u>Plaintiff's Meet-and-Confer Letters Were Inadequate, Confused and Changed Their Initial Position Twice</u>.

The Meet and Confer letters from Plaintiffs' counsel started with Mr. Otten's October 2, 2017 letter (See Exhibit 3). That letter suggested as its basis Local Rule 37-1 which governs discovery motions, and included references to FRCP 37(b) [violation of a court order] and FRCP 37(d) [failure to attend a deposition, to serve a response to interrogatories or a document request], but failed to specify what order or discovery failures were in dispute.

This shortcoming was pointed out, and clarification requested, by letter of October 9, 2017 (See Exhibit 4). Local Rule 37-1 was quoted to give guidance as to what should be specified.

Plaintiffs' response was to reference Local Rule 7-3, and to withdraw reference to Local Rule 37-1, as the basis for the meet and confer, rendering Mr. Otten's letter a nullity. (See Exhibit 5, final paragraph).

In response, it was pointed out that unless information was requested, it cannot serve as the basis for a failure to disclose. Plaintiffs never asked to see the Blakeman "dumb" phone, never asked to have it forensically examined, and waited nearly a year after learning of the phone's existence to meet and confer, post-discovery-cut-off, on the subject phone's contents. (See Exhibit 6). A face to face meeting was requested.

Next, an email stating "to avoid further confusion, we reiterate that Plaintiffs' contemplated motion will not be brought under FRCP 37" was received from Ms. Pooley October 17, 2017, at 4:00 p.m. (See Exhibit 7, last page).

That email was followed by another email from Ms. Pooley at 5:07 p.m. October 17, 2017, stating the contemplated motion "will be based on FRCP 37, but that the "meet and confer" obligations under Local Rule 37 do not apply." (See Exhibit 7, under header "Samantha Wolff" but appearing to emanate from Ms. Pooley's email address).

Plaintiffs only made reference to the actual basis for their contemplated motion in the very last of their emails. This is "meet and confer" by ambush. By their own acknowledgment the previous correspondence and emails were erroneous, and therefore wasteful or inefficient if not worthless. To claim reimbursement at a rate of $555 to $605 per hour is excessive and unsupportable. The fees for these meet-and-confer letters should be denied.

    **B.**     <u>**ESTIMATED FEES AND COSTS FOR A PROSPECTIVE DEPOSITION OF BLAKEMAN IN STATE COURT CASE ARE NOT LEGALLY RECOVERABLE, AND AGAIN ARE DUPLICATIVE, OVERSTAFFED AND EXCESSIVE.**</u>

        1.    <u>This Court Cannot Award Fees and Costs for A Deposition To be Taken in Another Lawsuit in State Court Which Plaintiff Would Have Taken Anyway</u>.

Plaintiff's counsel deposed Blakeman for seven grueling hours when this lawsuit was pending. As part of the sanctions award for alleged spoliation, which related to Blakeman's failure

7
DEFENDANT BLAKEMAN'S REPLY ISO MOTION FOR SUMMARY JUDGMENT

to preserve four unrecovered texts received from Sang Lee, the Court ruled that Plaintiffs could re-depose Blakeman on the limited issue of spoliation relating to his city-issued flip phone. It is noteworthy that Plaintiff's counsel never requested the remedy of a further deposition of Blakeman, but the Court awarded it anyway. However, the Court subsequently dismissed this case, finding that it has no jurisdiction over Blakeman or the other individually-named defendants. (Docket #545, pp. 17-19)

Clearly, the deposition of Blakeman can no longer be taken in this case, since this lawsuit has been dismissed. Recognizing this fact, the Court, the Hon. Magistrate Oliver, issued an order indicating that the deposition remedy would have to be acted upon in the state action between these parties. However, this Court clearly has no authority to order that a deposition be taken in another lawsuit pending in a state court, over which it does not preside. Nor can it award costs *in this case* for a deposition that never occurred.

Moreover, if and when discovery commences after the pleading stage occurs in the state court action, and if Blakeman has not been dismissed on demurrer, Plaintiffs' counsel will surely elect to re-take Blakeman's deposition. Regardless of the Court's order in this case, Plaintiffs' counsel would undoubtedly have the right to do so, and would be free to ask any questions about spoliation that they desired. (It should also be noted that although the Court declined to hold Plaintiffs' counsel accountable in this matter, they clearly could and should have asked whatever spoliation questions they wanted to ask during the *prior* all-day deposition of Blakeman, at which they learned about his cell phone).

Thus, an award of sanctions for the cost of taking the deposition of Blakeman in the state court action does not meet the *Goodyear* test set forth above, which bears repeating: "If an award extends to fees that would have been incurred without the misconduct, then it crosses the boundary from compensation to punishment." Thus, the court should not order any sanctions relating to re-taking of Blakeman's deposition in the state court action.

### 2. Plaintiffs Attempt to Collect a Windfall of $21,000 to Take a Partial Deposition is Outrageous and Excessive.

True to the form of their entire overreaching, conscience-shocking request for fees and costs

in connection with this sanctions motion, Plaintiffs attempt to fabricate some $21,000 in fees and costs to ask Blakeman questions about the subject of spoliation in the state court case. In order to inflate these fees and costs, Plaintiffs project 17 hours of preparation by four lawyers, (even local counsel Vic Otten is allotted 3 hours and some $2400 in fees to "strategize" in advance of the deposition although he is not deemed worthy of taking the deposition); seven (7) hours of travel time by two lawyers from San Francisco to Los Angeles are included, as well as travel expenses, meals and hotels for two lawyers. However, all of these fees and costs would presumably be incurred already in re-taking Blakeman's deposition in the state court case, and thus are *not* permitted to be awarded at all, notwithstanding how excessive these estimates are. *Goodyear, supra* at pp. 1186-1187.

Even the transcript cost is grossly inflated at an estimate of $2800, which would likely be well more than the cost of an entire transcript, let alone the per-page cost of asking spoliation questions, which at around $2.50 per page in court reporter fees might generously amount to $50.

If the Court were to award anything for deposition costs, which it should not for all of the reasons set forth herein, such an award should be limited to the per-page cost of 20-25 pages of testimony about the issue of spoliation relating to Blakeman's flip phone.

## III.   CONCLUSION

For all the foregoing reasons, Defendant Brant Blakeman respectfully requests that the Court reduce Plaintiffs' request for attorney fees and costs as set forth herein. Defendant requests the Court reduce the attorney fee award to $11,000.

Dated: March 1, 2018          **VEATCH CARLSON, LLP**

By: */s/ Richard Diefenbach*
JOHN E. STOBART
Attorneys for Defendant,
BRANT BLAKEMAN

Dated: March 1, 2018          **BUCHALTER**

By: */s/ Robert S. Cooper*
ROBERT S. COOPER
Attorneys for Defendant,
BRANT BLAKEMAN

9
DEFENDANT BLAKEMAN'S REPLY ISO MOTION FOR SUMMARY JUDGMENT